**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE COMMENCEMENT OF THE CHAPTER 11 CASES.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 (JKS) |
| Debtors. | ) | (Joint Administration Requested) |

**JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**


*/s/ Justin R. Alberto*
**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
preilley@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*


[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

# TABLE OF CONTENTS


ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ..... 1
- A. Defined Terms. ..... 1
- B. Rules of Interpretation. ..... 16
- C. Computation of Time. ..... 16
- D. Governing Law. ..... 17
- E. Reference to Monetary Figures. ..... 17
- F. Reference to the Debtors or the Reorganized Debtors. ..... 17
- G. Controlling Document. ..... 17
- H. Consultation, Information, Notice, and Consent Rights. ..... 17

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND RESTRUCTURING EXPENSES ..... 17
- A. Administrative Claims. ..... 17
- B. DIP Claims. ..... 18
- C. Professional Fee Claims. ..... 18
- D. Priority Tax Claims. ..... 19
- E. Payment of Statutory Fees. ..... 19
- F. Payment of Restructuring Expenses. ..... 20
- G. Payment of Plan Sponsor Fees and Expenses. ..... 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 20
- A. Classification of Claims and Interests. ..... 20
- B. Treatment of Claims and Interests. ..... 21
- C. Special Provision Governing Unimpaired Claims. ..... 25
- D. Elimination of Vacant Classes. ..... 25
- E. Voting Classes, Presumed Acceptance by Non-Voting Classes. ..... 25
- F. Intercompany Interests. ..... 25
- G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ..... 25
- H. Controversy Concerning Impairment. ..... 26
- I. Subordinated Claims. ..... 26
- J. Warrant Claims and Warrant Litigation. ..... 26

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..... 27
- A. General Settlement of Claims and Interests. ..... 27
- B. Restructuring Transactions. ..... 27
- C. The Reorganized Debtors. ..... 27
- D. Sources of Consideration for Plan Distribution. ..... 28
- E. Corporate Existence. ..... 30
- F. Corporate Actions. ..... 30
- G. Vesting of Assets in the Reorganized Debtors. ..... 31
- H. Cancellation of Notes, Instruments, Certificates, and Other Documents. ..... 31
- I. New Organizational Documents. ..... 32
- J. Directors and Officers of the Reorganized Debtors. ..... 32
- K. Indemnification Policies and Indemnification Provisions. ..... 32
- L. Effectuating Documents; Further Transactions. ..... 33
- M. Certain Securities Law Matters. ..... 33
- N. Section 1146 Exemption. ..... 34
- O. Management Incentive Plan. ..... 34
- P. Preservation of Causes of Action. ..... 34

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 35
- A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ..... 35
- B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 36
- C. Cure of Defaults and Objections to Cure and Assumption. ..... 37

D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. 38
E. Employee Matters. 38
F. Director and Officer Liability Insurance. 39
G. Other Insurance Policies. 39
H. Reservation of Rights. 39
I. Nonoccurrence of Effective Date. 40
J. Contracts and Leases Entered Into After the Petition Date. 40
K. Trademark Option Agreement. 40
L. Intellectual Property Licenses. 40

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS 41
A. Distributions on Account of Claims Allowed as of the Effective Date. 41
B. Disbursing Agent. 41
C. Rights and Powers of Disbursing Agent. 42
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. 42
E. Manner of Payment. 43
F. Indefeasible Distributions. 43
G. Section 1145 Exemption. 43
H. Compliance with Tax Requirements. 44
I. Allocations. 44
J. No Postpetition Interest on Claims. 44
K. Foreign Currency Exchange Rate. 44
L. Setoffs and Recoupment. 44
M. Claims Paid or Payable by Third Parties. 45
N. Single Satisfaction of Claims. 45

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS 46
A. Disputed Claims Process. 46
B. Allowance of Claims. 46
C. Claims Administration Responsibilities. 47
D. Estimation of Claims and Interests. 47
E. Adjustment to Claims or Interests without Objection. 47
F. Disallowance of Claims or Interests. 47
G. No Distributions Pending Allowance. 48
H. Distributions After Allowance. 48

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 48
A. Discharge of Claims and Termination of Interests. 48
**B. Release of Liens.** 48
**C. Releases by the Debtors.** 49
**D. Releases by the Releasing Parties.** 50
**E. Exculpation.** 51
**F. Injunction.** 52
G. Protections Against Discriminatory Treatment. 53
H. Document Retention. 53
I. Reimbursement or Contribution. 53

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 53
A. Conditions Precedent to the Effective Date. 53
B. Waiver of Conditions. 54
C. Substantial Consummation. 55
D. Effect of Failure of Conditions. 55

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN 55
A. Modification and Amendments. 55
B. Effect of Confirmation on Modifications. 55

C. Revocation or Withdrawal of Plan. 56

ARTICLE XI. RETENTION OF JURISDICTION 56

ARTICLE XII. MISCELLANEOUS PROVISIONS 58
A. Immediate Binding Effect. 58
B. Additional Documents. 58
C. Statutory Committee and Cessation of Fee and Expense Payment. 58
D. Reservation of Rights. 58
E. Successors and Assigns. 58
F. Notices. 59
G. Enforcement of Confirmation Order. 60
H. Term of Injunctions or Stays. 60
I. Entire Agreement. 60
J. Exhibits. 61
K. Nonseverability of Plan Provisions. 61
L. Votes Solicited in Good Faith. 61
M. Closing of Chapter 11 Cases. 61
N. Waiver or Estoppel. 62
O. Creditor Default. 62

# INTRODUCTION

Getty Images Holdings, Inc. and certain of its Affiliates intend to file voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in the Bankruptcy Court and propose this joint prepackaged plan of reorganization (the "Plan") as debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") for the resolution of the outstanding Claims against and Interests in the Debtors. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries*. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, operations, valuation, projections, risk factors, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "9.75% Notes" means the 9.750% Senior Notes due 2027 issued by Getty Images, Inc., pursuant to the 9.75% Notes Indenture.

2. "9.75% Notes Claims" means any Claim on account of, related to, or in connection with the 9.75% Notes.

3. "9.75% Notes Indenture" means that certain Indenture, dated as of February 19, 2019 (as supplemented by that certain First Supplemental Indenture, dated as of February 19, 2019, that certain Second Supplemental Indenture, dated as of March 29, 2023, and that certain Third Supplemental Indenture, dated as of October 21, 2025), by and among, as applicable, (a) Getty Images, Inc., as issuer, (b) Getty Images Holdings, Inc., Getty Images News Services (PRC), Inc., Getty Images (US), Inc., and Getty Images (Seattle), Inc., as guarantors, and (c) the 9.75% Notes Trustee, as further amended, restated, supplemented, or otherwise modified from time to time.

4. "9.75% Notes Trustee" means Wilmington Trust, National Association, (and any predecessors or successors thereto, as permitted by the terms of the 9.75% Notes Indenture), in its capacities as Trustee, Paying Agent, and Note Registrar (each as defined in the 9.75% Notes Indenture) and in any other capacities under or related to the 9.75% Notes Documents.

5. "11.25% Secured Notes" means the 11.250% Senior Secured Notes due 2030 issued by Getty Images, Inc., pursuant to the 11.25% Secured Notes Indenture.

6. "11.25% Secured Notes Claims" means any Claim on account of, related to, or in connection with the 11.25% Secured Notes.

7. "11.25% Secured Notes Indenture" means that certain Indenture, dated as of May 5, 2025, by and among (a) Getty Images, Inc. as the issuer, (b) Griffey Midco(DE), LLC, Abe Investment Holdings, Inc., Getty Images

News Services (PRC), Inc., Getty Images (US), Inc., and Getty Images (Seattle), Inc. as guarantors, and (c) the 11.25% Secured Notes Trustee, as amended and supplemented from time to time.

8. "11.25% Secured Notes Trustee" means U.S. Bank Trust Company, National Association, in its capacity as the trustee and notes collateral agent under the 11.25% Secured Notes Indenture.

9. "14.00% Notes" means the 14.000% Senior Notes due 2028 issued by Getty Images, Inc., pursuant to the 14.00% Notes Indenture.

10. "14.00% Notes Claims" means any Claim on account of, related to, or in connection with the 14.00% Notes.

11. "14.00% Notes Indenture" means that certain Indenture, dated as of October 21, 2025 (as supplemented by that certain First Supplemental Indenture, dated as of October 21, 2025), by and among (a) Getty Images, Inc., as issuer, (b) Getty Images Holdings, Inc., Getty Images News Services (PRC), Inc., Getty Images (US), Inc., and Getty Images (Seattle), Inc., as guarantors, and (c) the 14.00% Notes Trustee, as further amended and, restated, supplemented, or otherwise modified from time to time.

12. "14.00% Notes Trustee" means Wilmington Trust, National Association (and any predecessors or successors thereto, as permitted by the terms of the 14.00% Notes Indenture), in its capacities as Trustee, Paying Agent, and Note Registrar (each as defined in the 14.00% Notes Indenture) and in any other capacities under or related to the 14.00% Notes Documents.

13. "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; and (b) Allowed Professional Fee Claims.

14. "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if such Entity were a Debtor; *provided* that "Affiliate" of any Debtor shall not, and shall not be deemed to, include any Plan Sponsor or any Affiliate of any Plan Sponsor, and "Affiliate" of any Plan Sponsor shall not, and shall not be deemed to, include any Debtor.

15. "Agents" means, collectively, the Credit Agreement Agent, the DIP Agent, the New Credit Agreement Agent, and any other administrative agent, collateral agent, or similar Entity under the Credit Agreement, DIP Credit Agreement, New Credit Agreement, or similar documents, as applicable, that may exist from time to time, including, in each case, any successors thereto, each in its capacity as such.

16. "Agents/Trustees" means, collectively, each of the Agents and Trustees.

17. "Allowed" means, with respect to a Claim or Interest, any Claim or Interest (or portion thereof) against any Debtor that: (a) is deemed allowed under the Bankruptcy Code; (b) is allowed, compromised, settled, or otherwise resolved pursuant to the terms of this Plan, in any stipulation that is approved by a Final Order of the Bankruptcy Court, or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (c) has been allowed by a Final Order of the Bankruptcy Court. Any Claim or Interest (or portion thereof) that has been disallowed pursuant to a Final Order shall not be an "Allowed" Claim. Except as otherwise specified in this Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date.

18. "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or similar Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies arising under chapter 5 and section 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer Law and other Law.

19. "Bank Product Provider" means each Consenting RCF Lender (or Affiliate thereof) that is party to a Bank Product Agreement, in its capacity as such.

20. "Bank Product Agreement" means any agreement to provide cash management services, including treasury, depository, overdraft, credit, purchasing or debit card, electronic funds transfer or any other cash management arrangement to between any Debtor and any Bank Product Provider.

21. "Bank Product Obligations" means all obligations of the Debtors under or in respect of the Bank Product Agreements.

22. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

23. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

24. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

25. "Blue-Sky Laws" means any local or state securities Law of any securities regulatory authority of any locality or any state.

26. "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

27. "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

28. "Cash Management Orders" means the orders entered by the Bankruptcy Court (a) authorizing the Debtors to (i) continue to operate the cash management system, (ii) honor certain prepetition obligations related thereto, (ii) maintain existing business forms, and (iv) continue intercompany transactions, (b) granting administrative expense status to postpetition intercompany transactions, and (c) granting related relief on an interim or final basis.

29. "Causes of Action" means any and all actions, Claims, interests, remedies, causes of action, controversies, demands, proceedings, agreements, rights, Liens, indemnities, contributions, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any and all rights of setoff, counterclaim, or recoupment, and Claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims against or Interests in the Debtors; (c) any and all Claims pursuant to section 362 or Avoidance Actions; (d) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any and all state or foreign law fraudulent transfer or similar Claims.

30. "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, any case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

31. "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

32. "Claims and Noticing Agent" means Kroll Restructuring Administration LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to an order of the Bankruptcy Court.

33. "Claims Register" means the official register of Claims against the Debtors maintained by the Claims and Noticing Agent.

34. "Class" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

35. "CM/ECF" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

36. "Compensation and Benefits Programs" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

37. "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

38. "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

39. "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court on confirmation of this Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code and if applicable, approval of the Disclosure Statement and Solicitation Materials, as such hearing(s) may be continued from time to time.

40. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which may also be the Disclosure Statement Order.

41. "Consenting Creditor Fees and Expenses" means the reasonable and documented fees and expenses of (a)(i) Gibson, Dunn & Crutcher LLP as counsel to certain Consenting Secured Lenders; (ii) Houlihan Lokey Capital, Inc. as investment banker to certain Consenting Secured Lenders; and (iii) Pachulski Stang Ziehl & Jones LLP as local counsel to certain Consenting Secured Lenders; (b)(i) Milbank LLP as counsel to the Credit Agreement Agent and (ii) one local counsel to the Credit Agreement Agent; (c)(i) Akin Gump Strauss Hauer & Feld LLP as counsel to the Unsecured Noteholders Ad Hoc Committee; (ii) Perella Weinberg Partners as investment banker to the Unsecured Noteholders Ad Hoc Committee; and (iii) Pashman Stein Walder Hayden, P.C. as local counsel to the Unsecured Noteholders Ad Hoc Committee, in each case, whether incurred before, on, or after the Petition Date and in accordance with the applicable engagement letters or fee arrangements.

42. "Consenting RCF Lenders" has the meaning set forth in the Restructuring Support Agreement.

43. "Consenting Secured Lenders" has the meaning set forth in the Restructuring Support Agreement.

44. "Consenting Stakeholders" has the meaning set forth in the Restructuring Support Agreement.

45. "Consenting Unsecured Noteholders" has the meaning set forth in the Restructuring Support Agreement.

46. "Consummation" means the occurrence of the Effective Date.

47. "Credit Agreement" means that certain Credit Agreement, dated as of February 19, 2019, by and among (a) Abe Investment Holdings, Inc. and Getty Images, Inc. as borrowers, (b) Griffey Midco(DE), LLC, Getty Images News Services (PRC), Inc., Getty Images (US), Inc., and Getty Images (Seattle), Inc. as guarantors, (c) the lenders party thereto, (d) the Credit Agreement Agent, and (e) certain other parties thereto, as amended, amended and restated, supplemented, or otherwise modified from time to time.

48. "Credit Agreement Agent" means JPMorgan Chase Bank, N.A., in its capacity as administrative agent and collateral agent under the Credit Agreement, or any successor thereto.

49. "Cure" means all amounts, including an amount of $0, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

50. "D&O Liability Insurance Policies" means all insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers' and/or employees' liability and all agreements, documents, or instruments relating thereto.

51. "Debtor Release" means the releases given on behalf of the Debtors and their Estates as set forth in Article VIII.C of this Plan.

52. "Debtors" has the meaning set forth in the preamble to this Plan.

53. "Definitive Documents" means the documents listed in Section 3.01 of the Restructuring Support Agreement.

54. "DIP Agent" means the administrative agent and collateral agent under the DIP Credit Agreement, in its capacity as such.

55. "DIP Claims" means any Claim on account of, related to, or in connection with the DIP Facility (including, for the avoidance of doubt, all amounts borrowed by the Debtors under the DIP Facility, and all fees, expenses and other amounts owed by the Debtors under or relating to the DIP Documents).

56. "DIP Credit Agreement" means that certain credit agreement by and among certain of the Debtors, the DIP Agent, and the DIP Lenders setting forth the terms and conditions of the DIP Facility, as may be amended, supplemented, or otherwise modified from time to time.

57. "DIP Delayed-Draw Loans" means the term loans in an aggregate principal amount of $30,000,000.00, available under the DIP Facility upon the entry of the Interim DIP Order and other conditions as set forth in the DIP Documents.

58. "DIP Documents" means, collectively, the DIP Term Sheet, DIP Orders, the DIP Credit Agreement, and the related ancillary documents.

59. "DIP Exit Fee" has the meaning set forth in the DIP Term Sheet.

60. "DIP Facility" means the debtor-in-possession multi-draw financing facility in an aggregate principal amount of up to $143,000,000.00.

61. "DIP Initial Loans" means the term loans in an aggregate principal amount of $85,000,000.00 available under the DIP Facility, available upon the entry of the Interim DIP Order.

62. "DIP Final Loans" means the term loans in an aggregate principal amount of $28,000,000.00 available under the DIP Facility, available upon the entry of the Final DIP Order.

63. "DIP Lenders" means any Entity providing commitments and funding the DIP Loans incurred under the DIP Facility, including the Plan Sponsors that provide such commitments and fund such loans.

64. "DIP Loans" means, collectively, the DIP Initial Loans, the DIP Delayed-Draw Loans, and the DIP Final Loans.

65. "DIP New Interests" means the New Interests to be distributed to the DIP Lenders on account of their DIP Claims other than the DIP Claims representing the principal amount of DIP Delayed-Draw Loans, in accordance with the ECL, subject to dilution by the MIP Interests.

66. "DIP Orders" means, collectively, the Interim DIP Order and the Final DIP Order.

67. "DIP Term Sheet" means Exhibit B to the Restructuring Support Agreement.

68. "Disbursing Agent" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to this Plan; *provided* that notwithstanding the foregoing, all distributions on account of the Unsecured Notes Claims shall be made to, or in a manner acceptable to, the applicable Unsecured Notes Trustee for distribution in accordance with the Plan.

69. "Disclosure Statement" means the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries,* including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code and any other applicable Law, as may be amended, supplemented, or otherwise modified from time to time, to be approved by the Disclosure Statement Order.

70. "Disclosure Statement Order" means the order of the Bankruptcy Court approving the Disclosure Statement as a disclosure statement meeting the applicable requirements of the Bankruptcy Code and, to the extent necessary, approving the related Solicitation Materials, which order may be the Confirmation Order.

71. "Disputed" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

72. "Distribution Date" means, except as otherwise set forth in this Plan, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims or Interests entitled to receive distributions under this Plan.

73. "Distribution Record Date" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under this Plan, which date shall be the Confirmation Date, or such other date as may be agreed by the Debtors, the Required Consenting Secured Lenders, each Plan Sponsor, and with respect to the holders of Revolving Loan Claims, the Credit Agreement Agent. The Distribution Record Date shall not apply to distributions in respect of the 11.25% Secured Notes Claims and Unsecured Notes Claims held through the facilities of DTC, the Holders of which shall receive distributions in accordance with the customary procedures of DTC and the provisions of this Plan. Each Unsecured Notes Trustee may, but shall not be required to, establish a record date for distributions on account of the applicable Unsecured Notes Claims.

74. "DTC" means the Depository Trust Company.

75. "ECL" means that certain equity commitment letter, dated as of October 12, 2026 (including all exhibits and schedules thereto), attached to the Restructuring Support Agreement as Exhibit C, by and among the Debtors and the Plan Sponsors (in their capacity as the New Equity Investors) that sets forth the terms and conditions of the New Equity Investment and the Equitization Commitment, as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms and the Restructuring Support Agreement.

76. "Effective Date" means the date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of

this Plan and (b) this Plan is declared effective by the Debtors. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

77. "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

78. "Equitization Commitment" means the commitment by the Plan Sponsors to equitize their Allowed DIP Claims and Allowed Secured Funded Debt Claims in accordance with the ECL.

79. "Equitization New Interests" means the New Interests to be distributed to the Plan Sponsors (or their designees) on account of their EUR Term Loan Claims pursuant to the Equitization Commitment in accordance with the ECL, subject to dilution by the MIP Interests.

80. "Estate" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

81. "EUR Term Loan Claims" means any Claim on account of, related to, or in connection with the EUR Term Loans.

82. "EUR Term Loans" means the "Euro Term B-1 Loans" as defined in the Credit Agreement.

83. "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78pp, or any similar federal Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

84. "Exculpated Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.

85. "Executory Contract" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

86. "Exit Facilities" means, collectively, the New RCF, the New Term Loans, and the New Notes.

87. "Exit Facility Documents" means, collectively, the New Term Loan Documents, the New RCF Documents, and the New Notes Documents.

88. "Exit Term Sheet" means Exhibit D to the Restructuring Support Agreement.

89. "Expense Reimbursement" has the meaning set forth in the ECL.

90. "Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date.

91. "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

92. "Final DIP Order" means an order of the Bankruptcy Court approving the DIP Facility and authorizing the use of cash collateral on a final basis.

93. "Final Order" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter that (a) has not been reversed, stayed, modified, or amended, as entered

on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and (b) as to which (i) the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or (ii) any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

94. "General Unsecured Claim" means any Claim that is not a Secured Claim, other than (a) Administrative Claims, (b) Professional Fee Claims, (c) Priority Tax Claims, (d) Other Priority Claims, (e) Unsecured Notes Claims, (f) Intercompany Claims, or (g) Section 510(b) Claims.

95. "Governing Body" means, in each case in its capacity as such, a board of directors, board of managers, manager, managing member, general partner, special committee, or any other similar governing body of any of the Debtors or Reorganized Debtors.

96. "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

97. "Holder" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

98. "Holdings" means Getty Images Holdings, Inc.

99. "Holdings Interests" means any Interest in Holdings and any options, warrants, or contractual rights to acquire an Interest in Holdings, including the Warrants.

100. "HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

101. "Impaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

102. "Indemnification Provisions" means each of the Debtors' indemnification provisions in place as of the Petition Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment agreements, engagement letters, or other contracts, for the current and former directors, officers, managers, employees, attorneys, investment bankers, other professionals, and agents of the Debtors and such current and former directors', officers', managers', employees', attorneys', investment bankers', other professionals', and agents' respective Affiliates, including, in each case, any such individual or Entity designated by or affiliated with any Plan Sponsor.

103. "Indentures" means, collectively, the 11.25% Secured Notes Indenture, the 14.00% Notes Indenture, and the 9.75% Notes Indenture.

104. "Intercompany Claim" means any Claim against any Debtor held by a Debtor or an Affiliate of a Debtor; *provided* that no DIP Claim or Secured Funded Debt Claim (other than any such Claim held by a Debtor) shall constitute an Intercompany Claim.

105. "Intercompany Interest" means an Interest in any Debtor held by a Debtor or an Affiliate of a Debtor.

106. "Interest" means any equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interest, unit or share in any Debtor and any other rights, options, warrants, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, redemption rights, repurchase rights, stock-settled restricted stock units, cash-settled restricted stock units, other securities, agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity,

ownership, or profits interests of any Debtor or any other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security).

107. "Interim DIP Order" means an order of the Bankruptcy Court approving the DIP Facility and authorizing the use of cash collateral on an interim basis.

108. "Investment New Interests" means the New Interests to be distributed to the New Equity Investors on account of the New Equity Investment in accordance with the ECL, subject to dilution by the MIP Interests.

109. "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

110. "Law" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

111. "License Agreement" means each license, sublicense, or other agreement granting rights in intellectual property to which a Debtor is a party and that is not identified on the Schedule of Rejected Executory Contracts and Unexpired Leases.

112. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

113. "MIP" means an equity-based management incentive plan of the Reorganized Debtors to be established and implemented by the Reorganized Debtors after the Effective Date in accordance with Article IV.O of this Plan.

114. "MIP Interests" means up to 10 percent of New Interests on a fully diluted basis issued or reserved pursuant to the MIP. The MIP Interests shall not dilute the New Preferred Interests.

115. "Moelis Engagement Letter" has the meaning set forth in the Restructuring Support Agreement.

116. "New Board" means the Governing Body of New Getty Images as of the Effective Date.

117. "New Credit Agreement" means that certain credit agreement, to be dated on or around the Effective Date, by and among certain of the Debtors or Reorganized Debtors, the New Credit Agreement Agent, and the lenders party thereto from time to time, that sets forth the terms of the New Term Loans and the New RCF in accordance with the terms of the Exit Term Sheet.

118. "New Credit Agreement Agent" means JPMorgan Chase Bank, N.A., in its capacity as administrative agent and collateral agent under the New Credit Agreement.

119. "New Equity Investment" means the equity investment in New Getty Images by the New Equity Investors in Cash in an aggregate amount of (a) $433,212,922.50 minus the principal amount of (b) DIP Initial Loans and (c) DIP Final Loans (in the case of (b) and (c), outstanding as of the Effective Date and excluding any interest (including capitalized interest), fees, expenses, or other obligations under the DIP Facility) in exchange for the Investment New Interests in connection with the Equitization Commitment and on the terms set forth in the ECL.

120. "New Equity Investors" means each investor of the New Equity Investment party to the ECL, together with its Affiliates, Related Funds, and any trust or similar Entity established by or for the benefit of such investor or any of its Affiliates, in each case, to the extent such Entity funds or holds (or is assigned or designated to fund or hold) any portion of the New Equity Investment in accordance with the ECL.

121. "New EUR Term Loans" means the senior secured term loans denominated in Euros to be incurred by the applicable Reorganized Debtors on the Effective Date pursuant to the New Credit Agreement.

122. "New Getty Images" means the parent of the Reorganized Debtors on and after the Effective Date, which may be a new Entity or the reorganized Holdings.

123. "New Interests" means, subject to the Restructuring Transaction Steps (if applicable), the new common shares or membership interests in New Getty Images. For the avoidance of doubt, the New Interests do not include the New Preferred Interests.

124. "New Notes" means the new senior secured notes to be issued by the applicable Reorganized Debtors on the Effective Date in accordance with the New Notes Indenture.

125. "New Notes Documents" means the New Notes Indenture and all security and other documents related thereto.

126. "New Notes Indenture" means that certain Indenture, dated as of the Effective Date, that sets forth the terms and conditions of the New Notes in accordance with the Exit Term Sheet.

127. "New Notes Trustee" means the indenture trustee and collateral agent under the New Notes Indenture.

128. "New Organizational Documents" means the documents providing for corporate governance of New Getty Images and the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with the Restructuring Support Agreement, this Plan, and section 1123(a)(6) of the Bankruptcy Code (as applicable).

129. "New Preferred Interests" means the preferred interests to be issued by New Getty Images on terms consistent with the Restructuring Term Sheet to be distributed to the DIP Lenders (or their designees) on account of their DIP Claims representing the principal amount of DIP Delayed-Draw Loans outstanding as of the Effective Date in accordance with the ECL. The New Preferred Interests shall not be subject to dilution by the MIP Interests. For the avoidance of doubt, the New Preferred Interests do not include the New Interests.

130. "New Preferred Interests Documents" means the certificate of designation, the applicable provisions of the New Organizational Documents, and any other agreements, instruments, or documents governing the terms of the New Preferred Interests, each of which (or a term sheet in respect thereof) shall be included in the Plan Supplement.

131. "New RCF" means an amended and restated senior secured revolving credit facility with an aggregate commitment of $150,000,000.00 to be incurred by the applicable Reorganized Debtors on the Effective Date pursuant to the New Credit Agreement and in accordance with the terms of the Exit Term Sheet.

132. "New RCF Documents" means the New Credit Agreement and all security and other documents related thereto, to the extent related to or affecting the New RCF.

133. "New Term Loan Documents" means the New Credit Agreement and all security and other documents related thereto, to the extent related to or affecting the New Term Loans.

134. "New Term Loans" means, collectively, the New USD Term Loans and the New EUR Term Loans.

135. "New USD Term Loans" means the senior secured term loans denominated in United States dollars to be incurred by the applicable Reorganized Debtors on the Effective Date pursuant to the New Credit Agreement in accordance with the Exit Term Sheet, solely to the extent that Holders of USD Term Loan Claims do not consent to receive New Notes under this Plan.

136. "Other Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

137. "Other Secured Claim" means any Secured Claim against the Debtors other than the DIP Claims, the Revolving Loan Claims, the Secured Funded Debt Claims, or any Section 510(b) Claim that may be a Secured Claim.

138. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

139. "Petition Date" means the date on which the first of the Debtors commences its Chapter 11 Case.

140. "Plan Distribution" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with this Plan.

141. "Plan Sponsor Fees and Expenses" means all reasonable and documented fees and expenses of the advisors to the Plan Sponsors (including Richards, Layton & Finger, P.A., as local counsel), in each case as properly incurred and invoiced before, on, or after the Petition Date and (a) in the case of Moelis & Company LLC, in accordance with the Moelis Engagement Letter, (b) in the case of Rothschild & Co., in accordance with the Rothschild Engagement Letter, and (c) in the case of each other advisor to the Plan Sponsors, the other applicable fee letters or fee arrangements between such advisor and the Debtors, if any.

142. "Plan Sponsors" means the DIP Lenders and the New Equity Investors, in their capacity as provider of the Equitization Commitment and the New Equity Investment.

143. "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), including the following, as applicable: (a) the New Organizational Documents (if necessary); (b) to the extent known, the identity of the members of the New Board (as designated in accordance with Article IV.J of this Plan); (c) the New Preferred Interests Documents; (d) the Exit Facility Documents; (e) the Restructuring Transaction Steps; (f) the Schedule of Retained Causes of Action; (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; and (h) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as exhibits, supplements, or amendments to the Plan Supplement. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with this Plan, the Restructuring Support Agreement, or such documents included therein on or before the Effective Date. Each document included in the Plan Supplement, and any alteration, amendment, modification, or supplement thereto, shall be subject to the consent rights set forth in the Restructuring Support Agreement. The Plan Supplement shall be deemed incorporated into and part of this Plan as if set forth herein in full.

144. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

145. "Pro Rata" means, unless otherwise indicated, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

146. "Professional" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

147. "Professional Fee Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C of this Plan.

148. "Professional Fee Claim" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

149. "Professional Fee Escrow Account" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

150. "Professional Fee Remaining Amount" means the remaining amount, if any, in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid in full.

151. "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

152. "Quarterly Fees" means fees payable pursuant to section 1930(a) of the Judicial Code, including fees payable to the U.S. Trustee and any interest thereon pursuant to 31 U.S.C. § 3717.

153. "Reinstate," "Reinstated," or "Reinstatement" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

154. "Related Fund" means, with respect to any Entity other than a Debtor, (a) any fund, account, or investment vehicle that is controlled, managed, or advised by (i) such Entity, (ii) an Affiliate of such Entity, (iii) the same investment manager, advisor, or subadvisor that controls or manages such Entity or an Affiliate of such investment manager, advisor, or subadvisor, or (iv) an investment manager or investment advisor that otherwise shares a common investment team with the investment manager or investment advisor of such Entity through secondment, outsourcing, or other similar contractual arrangements, or (b) any investment manager, investment advisor, or subadvisor of such Entity.

155. "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.

156. "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in this Plan by returning an "opt in" form.

157. "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in this Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in this Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is

legally entitled to bind such Related Party to the releases contained in this Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.

158. "Reorganized Debtors" means, collectively, the Debtors as reorganized pursuant to and under this Plan, on and after the Effective Date, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, including New Getty Images and any new Entity established in connection with the implementation of the Restructuring Transactions.

159. "Required Consenting RCF Lenders" has the meaning set forth in the Restructuring Support Agreement.

160. "Required Consenting Secured Lenders" has the meaning set forth in the Restructuring Support Agreement.

161. "Required Consenting Stakeholders" has the meaning set forth in the Restructuring Support Agreement.

162. "Required Consenting Unsecured Noteholders" has the meaning set forth in the Restructuring Support Agreement.

163. "Restructuring Expenses" means, collectively, (a) the Consenting Creditor Fees and Expenses and (b) the reasonable and documented fees and expenses of the Trustees under the Unsecured Notes (including any amounts secured by such Trustees' charging liens) up to the Unsecured Notes Trustee Fee Cap, which shall be paid by the Debtors directly and shall not reduce the Unsecured Notes Recovery.

164. "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of October 12, 2026, by and among the Debtors and the Consenting Stakeholders, as may be further amended, modified, or supplemented from time to time, in accordance with its terms.

165. "Restructuring Term Sheet" means Exhibit A to the Restructuring Support Agreement.

166. "Restructuring Transaction Steps" means, if necessary, the memorandum setting forth transaction steps necessary to implement the Restructuring Transactions, which shall be included in the Plan Supplement.

167. "Restructuring Transactions" means any transaction and any actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Reorganized Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan and the Restructuring Support Agreement, including the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.B of this Plan and consistent with the Restructuring Transaction Steps (if applicable).

168. "Revolving Credit Commitments" has the meaning set forth in the Credit Agreement.

169. "Revolving Loan Claims" means any Claim on account of, related to, or in connection with any Revolving Loans.

170. "Revolving Loans" means the "Revolving Credit Loan" as defined in the Credit Agreement.

171. "Rothschild Engagement Letter" has the meaning set forth in the Restructuring Support Agreement.

172. "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases

that will be rejected by the Reorganized Debtors pursuant to this Plan; *provided* that in no event shall the Trademark Option Agreement, the Moelis Engagement Letter, or the Rothschild Engagement Letter be included on such schedule, and such schedule must be in form and substance acceptable to each Plan Sponsor, not to be unreasonably withheld, conditioned, or delayed.

173. "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to this Plan, which schedule (a) shall be determined by the Special Committee, (b) shall be acceptable to each Plan Sponsor, and (c) shall not include any Claim or Cause of Action against any Released Party (including the Plan Sponsors and their Related Parties) unless with the consent of (i) the Required Consenting Secured Lenders, (ii) the Required Consenting Unsecured Noteholders, (iii) each Consenting RCF Lender, and (iv) each Plan Sponsor, as the same may be amended, modified, or supplemented from time to time in accordance with the foregoing.

174. "SEC" means the Securities and Exchange Commission.

175. "Section 510(b) Claim" means any Claim, including any Secured Claim, subject to subordination pursuant to section 510(b) of the Bankruptcy Code, including any Warrant Claim and any Claim for reimbursement, contribution, or subrogation allowed under section 502 or 509 of the Bankruptcy Code on account of any Warrant Claim.

176. "Secured Claim" means a Claim that is: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the Holder of such a Claim in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured claim.

177. "Secured Funded Debt Claims" means, collectively, the Term Loan Claims and the 11.25% Secured Notes Claims.

178. "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

179. "Security" has the meaning set forth in section 2(a)(1) of the Securities Act.

180. "Solicitation" means the solicitation of votes on this Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

181. "Solicitation Materials" means all documents, forms, and other materials provided in connection with the Solicitation, other than the Disclosure Statement.

182. "Special Committee" means each of the special committees of the Governing Body of the applicable Debtors established to evaluate the Restructuring Transactions.

183. "Term Loan Claims" means, collectively, the EUR Term Loan Claims and the USD Term Loan Claims.

184. "Term Loans" means the EUR Term Loans and the USD Term Loans.

185. "Third-Party Release" means the releases set forth in Article VIII.D of this Plan.

186. "Trademark Option Agreement" means that certain Restated Option Agreement, dated as of February 9, 1998, by and between Getty Investments L.L.C., Getty Images, Inc., and Getty Communications PLC, as amended and restated from time to time, including by that certain letter agreement, dated as of February 19, 2019, by and between Getty Investments L.L.C. and Getty Images, Inc.

187. "Trademarks" means the "Getty Marks" as defined in the Trademark Option Agreement.

188. "Trustees" means, collectively, the 11.25% Secured Notes Trustee, the 14.00% Notes Trustee, the 9.75% Notes Trustee, the New Notes Trustee, and any indenture trustee, collateral trustee, or other trustee or similar entity under the Indentures, the New Notes Indenture, or similar documents, as applicable, that may exist from time to time, including, in each case, any successors thereto, each in its capacity as such.

189. "U.S. Trustee" means the United States Trustee for the District of Delaware.

190. "Unexpired Lease" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

191. "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

192. "Unsecured Noteholders Ad Hoc Committee" means that certain ad hoc committee of holders of Unsecured Notes represented by Akin Gump Strauss Hauer & Feld LLP and Perella Weinberg Partners.

193. "Unsecured Notes" means, collectively, the 14.00% Notes and the 9.75% Notes.

194. "Unsecured Notes Claims" means, collectively, the 14.00% Notes Claims and the 9.75% Notes Claims.

195. "Unsecured Notes Recovery" means Cash in an aggregate amount equal to $170,212,922.50. The Unsecured Notes Recovery shall be paid in full in Cash to, or deposited with, the applicable Unsecured Notes Trustees for distribution to Holders of Allowed Unsecured Notes Claims substantially concurrently with the Effective Date and shall not be subject to any reduction, holdback, setoff, recoupment, or reallocation by the Debtors, the Reorganized Debtors, or any other Entity (other than by the Unsecured Notes Trustees on account of the Unsecured Notes Trustee Charging Liens, which shall not be limited or impaired hereby).

196. "Unsecured Notes Trustee Charging Liens" means any Lien, indemnification, or other priority of payment rights in favor of each Unsecured Notes Trustee under the applicable Unsecured Notes Documents (including Sections 6.10 and 7.6 of the applicable Unsecured Notes Indenture), on or with respect to distributions made on account of the applicable Unsecured Notes Claims.

197. "Unsecured Notes Trustee Fee Cap" means $200,000.00.

198. "Unsecured Notes Trustees" means, collectively, the 9.75% Notes Trustee and the 14.00% Notes Trustee, and "Unsecured Notes Trustee" means either of them, as applicable.

199. "USD Term Loan Claims" means any Claim on account of, related to, or in connection with the USD Term Loans.

200. "USD Term Loans" means the "Dollar Fixed Rate Term B-1 Loans" as defined in the Credit Agreement.

201. "Warrant Agreement" means that certain Warrant Agreement, dated August 4, 2020, that sets forth the terms and conditions of the Warrants.

202. "Warrant Claims" means any Claim on account of, related to, arising from, or in connection with the Warrants, including Holdings's alleged breach of the Warrant Agreement, and the Warrant Litigation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable

Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise. In accordance with section 510(b) of the Bankruptcy Code, Warrant Claims shall have the same priority as Holdings Interests.

203. "Warrant Litigation" means any litigation, arbitration, or other proceeding, pending or threatened, relating to any Warrant or the Warrant Agreement, including any Claim asserted or that could have been asserted therein.

204. "Warrants" means the warrants issued by Holdings pursuant to the Warrant Agreement.

*B. Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (8) subject to the provisions of any contract, certificate of incorporation, charter, limited liability company agreement, operating agreement, by-law, instrument, release, or other agreement or document created or entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (14) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan and the Restructuring Support Agreement all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (16) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (18) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (19) any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D. Governing Law.*

Subject to Article I.B(8), unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

*E. Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*F. Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*G. Controlling Document.*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

*H. Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein. Failure to reference in this Plan any such consultation, information, notice, or consent right shall not impair such right.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A. Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to

the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; or (5) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable.

B. *DIP Claims.*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (i) the principal amount of the outstanding DIP Loans on such date, (ii) all interest, including capitalized interest, accrued and unpaid thereon to the date of payment, and (iii) all accrued and unpaid fees, premiums, expenses, and non-contingent indemnification obligations payable under the DIP Documents and the DIP Orders.

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, each Holder of an Allowed DIP Claim shall receive, in full and final satisfaction of such Allowed DIP Claim, (a)(i) on account of its DIP Claims representing the outstanding principal amount of DIP Delayed-Draw Loans, New Preferred Interests pursuant to the Equitization Commitment in accordance with the ECL, and (ii) on account of its DIP Claims representing all other amounts outstanding under the DIP Documents, including all accrued and unpaid interest on all DIP Loans through the Effective Date, DIP New Interests pursuant to the Equitization Commitment in accordance with the ECL, or (b) such other treatment agreed upon among the Debtors, the Required Consenting Stakeholders, and the Holders of the Allowed DIP Claims (including the treatment of DIP Claims held by the DIP Agent (in such capacity) set forth in the final paragraph of Article II.B of this Plan).

Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of this Plan, or such other treatment as contemplated by this Article II.B of this Plan, the DIP Documents and all related loan documents shall be deemed cancelled, all guarantees provided and all Liens and security interests granted, in each case, to secure such obligations shall be automatically released, discharged, terminated, and of no further force and effect, in each case without any further notice to or action by the DIP Agent or the DIP Lenders and without any further order, or approval of the Bankruptcy Court or any other Entity.

To the extent not already paid during the course of the Chapter 11 Cases, the fees, costs, expenses and other DIP Claims held by the DIP Agent incurred in such capacity, or estimated to be incurred, up to and including the Effective Date and to the extent Allowed under the DIP Documents, shall be paid by the Debtors in full in Cash without any further order, or approval of the Bankruptcy Court or any other Entity.

*C. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount Allowed by the Bankruptcy Court, including from the Professional Fee Escrow Account. Professional Fee Claims Allowed by the Bankruptcy Court shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

2. Professional Fee Escrow Account.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account, and to the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of this Plan. When all such Allowed Professional Fee Claims have been paid in full, the Professional Fee Remaining Amount shall promptly be transferred to the Reorganized Debtors without any further action or order of the Bankruptcy Court. The Professional Fee Escrow Account and any agreement establishing and governing disbursements from, the Professional Fee Escrow Account shall be in form and substance (a) reasonably acceptable to each Plan Sponsor solely with respect to the provision governing the disbursement of the Professional Fee Remaining Amount to the Reorganized Debtors and (b) acceptable to the Debtors in all respects in their sole discretion.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than one day before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*D. Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E. *Payment of Statutory Fees.*

All Quarterly Fees, to the extent applicable, due prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, all Quarterly Fees shall be paid to the U.S. Trustee when due and payable, until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first. Nothing in this Plan shall discharge or release any Quarterly Fees. The U.S. Trustee shall not be required to file a Proof of Claim or request for payment for Quarterly Fees. The Reorganized Debtors shall timely file all required

monthly operating reports and post-confirmation quarterly reports in a form prescribed by the U.S. Trustee until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

*F. Payment of Restructuring Expenses.*

To the extent not previously paid prior to or during the course of the Chapter 11 Cases in accordance with, and subject to, the terms of the Restructuring Support Agreement, the DIP Orders, or any other Final Order of the Bankruptcy Court, and subject to the Debtors' receipt of an invoice with reasonable detail from the applicable Entity entitled to such Restructuring Expenses in accordance with, if applicable, such Entity's respective engagement letter or fee letter, the Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date without any requirement (a) to file a fee application with the Bankruptcy Court or (b) for review or approval by the Bankruptcy Court or any other party. All Restructuring Expenses to be paid on the Effective Date shall be estimated as of the Effective Date and such estimates shall be delivered to the Debtors at least three Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses; *provided, further,* that any difference in (x) the estimated Restructuring Expenses on and including the Effective Date as compared to (y) the Restructuring Expenses actually incurred on and including the Effective Date shall be reconciled following the submission of a final invoice by the relevant Entity no later than three Business Days following the Effective Date, and any Restructuring Expenses that remain unpaid following such reconciliation shall be paid as soon as practicable thereafter.

*G. Payment of Plan Sponsor Fees and Expenses.*

Notwithstanding anything to the contrary herein, after the Effective Date, the Reorganized Debtors shall pay in full in Cash, without any requirement (a) to file a fee application with the Bankruptcy Court, (b) for review or approval by the Bankruptcy Court or any other party, or (c) for any further notice, (i) all Plan Sponsor Fees and Expenses that remain unpaid as of, or are incurred after, the Effective Date, including fees and expenses incurred in connection with the implementation and consummation of the Plan and the Restructuring Transactions, and (ii) any Expense Reimbursement payable under the ECL, without duplication and in each case in accordance with the applicable engagement letters and fee arrangements (including the Moelis Engagement Letter and the Rothschild Engagement Letter), the ECL, and the Restructuring Support Agreement. The obligations under this Article II.G shall not be discharged, released, or otherwise affected by this Plan or the Confirmation Order and shall survive any termination of the Restructuring Support Agreement or the ECL to the extent set forth in the Restructuring Support Agreement or the ECL. The Expense Reimbursement and the indemnification obligations set forth in section 18 of the ECL shall constitute an Allowed Administrative Claim and shall survive the termination of the ECL and the occurrence of the Effective Date. The Expense Reimbursement shall not be subject to any setoff, recoupment, reduction, avoidance, disgorgement, or subordination. Amounts payable under the Moelis Engagement Letter and the Rothschild Engagement Letter shall be paid in accordance with their respective terms.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A. Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan constitutes a separate Plan proposed by each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except for (1) Class 3 Revolving Loan Claims and Class 4 Secured Funded Debt Claims, which shall not apply to Holdings, (2) Class 5 Unsecured Notes Claims, which shall

not apply to Griffey Midco (DE), LLC and Abe Investment Holdings, Inc., and (3) Class 9 Holdings Interests, which shall only apply to Holdings. The groupings of Claims and Interests shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Revolving Loan Claims | Impaired | Entitled to Vote |
| Class 4 | Secured Funded Debt Claims | Impaired | Entitled to Vote |
| Class 5 | Unsecured Notes Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 9 | Holdings Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Reorganized Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter, or, if payment is not then due, in accordance with such Claim's terms in the ordinary course of business.

1. <u>Class 1 - Other Secured Claims.</u>

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor with the consent of each Plan Sponsor, either:

(i) payment in full in Cash of its Allowed Other Secured Claim;

(ii) the collateral securing its Allowed Other Secured Claim;

(iii) Reinstatement of its Allowed Other Secured Claim; or

(iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in

accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under this Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2. Class 2 - Other Priority Claims.

(a) *Classification*: Class 2 consists of all Other Priority Claims.

(b) *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired under this Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3. Class 3 - Revolving Loan Claims.

(a) *Classification*: Class 3 consists of all Revolving Loan Claims.

(b) *Allowance*: The Revolving Loan Claims shall be Allowed and deemed to be Allowed Claims in the aggregate principal amount of $150,000,000.00, *plus* accrued and unpaid interest at the non-default rate, fees, premiums, expenses, costs, non-contingent indemnification obligations, and other amounts owed under the Credit Agreement outstanding as of the Effective Date, and shall not be subject to any objection, reduction, subordination, recharacterization, setoff, challenge, or recoupment.

(c) *Treatment*: Each Holder of an Allowed Revolving Loan Claim shall receive in accordance with and subject to the terms of the Exit Term Sheet (i) on account of its Allowed Revolving Loan Claim representing the outstanding principal amount of Revolving Loans, conversion of the Revolving Loans and Revolving Credit Commitments to revolving loans and revolving commitments, respectively, under the New RCF in an equal amount and (ii) on account of accrued and unpaid interest, fees, and other amounts due on account of its Allowed Revolving Loan Claim as of the Effective Date, payment in full in Cash.

(d) *Voting*: Class 3 is Impaired under this Plan. Holders of Allowed Revolving Loan Claims are entitled to vote to accept or reject this Plan.

4. Class 4 - Secured Funded Debt Claims.

(a) *Classification*: Class 4 consists of all Secured Funded Debt Claims.

(b) *Allowance*: The Secured Funded Debt Claims shall be Allowed and deemed to be Allowed Claims in the aggregate amount of (i) $40,055,569.96, in respect of the outstanding principal amount of USD Term Loans, €407,000,000.00, in respect of the outstanding principal amount of EUR Term Loans, and $539,944,389.00, in respect of the outstanding principal amount of 11.25% Secured Notes, *plus* (ii) accrued and unpaid interest at the non-default rate, fees, costs, and other amounts due and owing under the Credit Agreement and the 11.25% Secured Notes Indenture, as applicable, as of the Effective Date, (but excluding (iii) any prepayment premium, make-whole, call protection, or similar amount), and such

Allowed amounts shall not be subject to objection, reduction, subordination, recharacterization, setoff, challenge, or recoupment.

(c) *Treatment*: Each Holder of an Allowed Secured Funded Debt Claim shall receive:

(i) on account of its 11.25% Secured Notes Claims representing the principal amount of the 11.25% Secured Notes, New Notes in an equal principal amount;

(ii) on account of its USD Term Loan Claims representing the principal amount of the USD Term Loans, New Notes in an equal principal amount or, solely to the extent the Holder of such USD Term Loan Claims does not agree to receive New Notes, New USD Term Loans in an equal principal amount;

(iii) on account of its EUR Term Loan Claims representing the principal amount of EUR Term Loans, if it is not a Plan Sponsor and its EUR Term Loan Claims are not subject to the Equitization Commitment, New EUR Term Loans in an equal principal amount (measured by the principal amount of EUR Term Loans held by such Holder as of the Distribution Record Date);

(iv) on account of its EUR Term Loan Claims representing the principal amount of EUR Term Loans, if it is a Plan Sponsor and its EUR Term Loan Claims are otherwise subject to the Equitization Commitment, the Equitization New Interests in accordance with the Equitization Commitment and the ECL (which treatment each such Holder has agreed to accept in lieu of the treatment set forth in the immediately preceding clause, and which agreement shall constitute such Holder's agreement to less favorable treatment for purposes of section 1123(a)(4) of the Bankruptcy Code); and

(v) on account of its Secured Funded Debt Claims representing accrued and unpaid interest, fees, costs, and other amounts due and owing under the Credit Agreement and the 11.25% Secured Notes Indenture, as applicable, as of the Effective Date, payment in full in Cash.

(d) *Voting*: Class 4 is Impaired under this Plan. Holders of Allowed Secured Funded Debt Claims are entitled to vote to accept or reject this Plan.

5. <u>Class 5 - Unsecured Notes Claims.</u>

(a) *Classification*: Class 5 consists of all Unsecured Notes Claims.

(b) *Allowance*: The Unsecured Notes Claims shall be Allowed and deemed to be Allowed Claims in the aggregate principal amount of $270,000,000.00 plus any accrued and unpaid interest owed under the 9.75% Notes Indenture and the 14.00% Notes Indenture, as applicable, as of the Petition Date, and shall not be subject to objection, challenge, reduction, disallowance, subordination, setoff, or recharacterization.

(c) *Treatment*: Each Holder of an Allowed Unsecured Notes Claim shall receive its Pro Rata share of the Unsecured Notes Recovery.

(d) *Voting*: Class 5 is Impaired under this Plan. Holders of Allowed Unsecured Notes Claims are entitled to vote to accept or reject this Plan.

6. <u>Class 6 - General Unsecured Claims.</u>

(a) *Classification*: Class 6 consists of all General Unsecured Claims.

(b) *Treatment:* Each Holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option with the consent of each Plan Sponsor, (i) payment in full in Cash; (ii) Reinstatement; or (iii) such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 6 is Unimpaired under this Plan. Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

7. Class 7 - Intercompany Claims.

(a) *Classification*: Class 7 consists of all Intercompany Claims.

(b) *Treatment*: On the Effective Date, each Holder of an Allowed Intercompany Claim shall have such Claim (i) Reinstated or (ii) cancelled, released, and extinguished without receiving any distribution on account of such Claim, at the Debtors' election and in their reasonable discretion with the consent of each Plan Sponsor, such that such Allowed Intercompany Claims are treated in a tax-efficient manner to the extent reasonably practicable.

(c) *Voting*: Class 7 is Unimpaired if the Intercompany Claims are Reinstated or Impaired if the Intercompany Claims are cancelled. Holders of Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

8. Class 8 - Intercompany Interests.

(a) *Classification*: Class 8 consists of all Intercompany Interests.

(b) *Treatment*: On the Effective Date, each Holder of an Intercompany Interest shall have such Interest (i) Reinstated or (ii) cancelled, discharged, and extinguished without receiving any distribution on account of such Interest, or such other treatment as reasonably determined by the Debtors, at the Debtors' election and in their reasonable discretion with the consent of each Plan Sponsor, such that Intercompany Interests are treated in a tax-efficient manner to the extent reasonably practicable.

(c) *Voting*: Class 8 is Unimpaired if the Intercompany Interests are Reinstated or Impaired if the Intercompany Interests are cancelled. Holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

9. Class 9 - Holdings Interests.

(a) *Classification*: Class 9 consists of all Holdings Interests.

(b) *Treatment*: On the Effective Date, each Holder of an Allowed Holdings Interest shall have such Interest cancelled, released, discharged, and extinguished without receiving any distribution on account of such Interest.

(c) *Voting*: Class 9 is Impaired under this Plan. Holders of Holdings Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

10. Class 10 - Section 510(b) Claims.

(a) *Classification*: Class 10 consists of all Section 510(b) Claims.

(b) *Treatment*: On the Effective Date, each Holder of an Allowed Section 510(b) Claim shall have its Claim cancelled, released, discharged, and extinguished without receiving any distribution on account of such Claim.

*(c)* *Voting*: Class 10 is Impaired under this Plan. Holders of Section 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

*C. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

*D. Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

*E. Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject this Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted this Plan.

*F. Intercompany Interests.*

To the extent Reinstated under this Plan, for the avoidance of doubt, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but are for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under this Plan to make certain distributions to the holders of Allowed Claims. Unless otherwise set forth in the Restructuring Transaction Steps (if applicable), to the extent Reinstated pursuant to this Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

*G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to Article III.B hereof. The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with Article X hereof, subject to the consent rights set forth in the Restructuring Support Agreement, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to

a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*H. Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date or such other date as fixed by the Bankruptcy Court.

*I. Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto, subject to the consent rights set forth in the Restructuring Support Agreement.

In addition, the Reorganized Debtors reserve the right to assert that certain Claims are Section 510(b) Claims and subject to mandatory subordination under section 510(b) of the Bankruptcy Code, including Claims arising from rescission of, damages arising from, or reimbursement, contribution, or subrogation on account of the purchase or sale of securities of the Debtors or their affiliates. Nothing in this Plan constitutes a waiver of the Debtors' rights to assert subordination under section 510(b) of the Bankruptcy Code with respect to any Claim. The filing of a Proof of Claim does not waive or alter the Debtors' position that any such Claim is subject to subordination under section 510(b) of the Bankruptcy Code. Notwithstanding the foregoing or anything to the contrary in this Plan, neither the Debtors nor the Reorganized Debtors shall assert that any Claim held by any Consenting Stakeholder, DIP Lender, New Equity Investor, or any of their respective Related Parties (including any DIP Claim, Secured Funded Debt Claim, Expense Reimbursement, Claim arising under the ECL, or Claim arising under the Indemnification Provisions) is a Section 510(b) Claim or is otherwise subject to subordination or recharacterization.

*J. Warrant Claims and Warrant Litigation.*

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, each Warrant Claim is a Section 510(b) Claim and is subordinated pursuant to section 510(b) of the Bankruptcy Code to all Claims and Interests senior to or equal to the Interest represented by the applicable Warrant, has the same priority as Holdings Interests, and is classified and treated in Class 10 as provided in Article III.B.10 hereof.

Under section 510(b) of the Bankruptcy Code and Bankruptcy Rule 7001(h), Confirmation constitutes a final determination of the classification, priority, and subordination of each Warrant Claim, including any Claim on account of, related to, or in connection with the Warrant Litigation. Any Holder disputing such classification, priority, or subordination must raise the dispute by Filing a timely objection to Confirmation. Upon entry of the Confirmation Order, each Holder is bound by that determination, whether or not it Filed a Proof of Claim, voted on this Plan, or objected to Confirmation.

All issues related to the classification, priority, or subordination with respect to the Warrant Claims, including pursuant to section 510(b) of the Bankruptcy Code, are finally determined in connection with Confirmation. Thereafter, no Holder may prosecute, continue, or seek or obtain relief in the Warrant Litigation or any other proceeding inconsistent with the classification, priority, subordination, or treatment of Warrant Claims under this Plan or the Confirmation Order.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan. This Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies by and among the Debtors, the Consenting Stakeholders, the DIP Lenders, the New Equity Investors, and each of the Agents/Trustees pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims against and Interests in the Debtors. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*B. Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into and shall take any actions as may be necessary, appropriate, or desirable to effectuate the Restructuring Transactions, including as may be set forth in the Restructuring Transaction Steps (if applicable). The actions to implement the Restructuring Transactions may include but shall not be limited to: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) the execution and delivery of the Exit Facility Documents and any and all related documents, including any related mortgages and/or security documents; (5) the consummation of the New Equity Investment; (6) the adoption of the New Organizational Documents; (7) the issuance, distribution, and reservation of the New Interests and the New Preferred Interests; (8) all other transactions that are required to effectuate the Restructuring Transactions, including any transactions set forth in the Restructuring Transaction Steps (if applicable); and (9) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law in connection with this Plan. The Confirmation Order shall and shall be deemed pursuant to sections 363 and 1123 of the Bankruptcy Code to authorize, among other things, all actions as may be necessary, appropriate, or desirable to effectuate any transaction described in, contemplated by, or necessary to effectuate this Plan.

*C. The Reorganized Debtors.*

On the Effective Date, the New Board shall be established and, if applicable, the Reorganized Debtors shall adopt the New Organizational Documents. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments (including the Exit Facility Documents) and to take any other actions contemplated under this Plan as necessary to consummate this Plan. Cash payments to be made pursuant to this Plan will be made by the Debtors or Reorganized Debtors, as applicable. The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Reorganized Debtors, as applicable, to satisfy their obligations under this Plan. Except as set forth herein or as may be otherwise provided for in the Restructuring Transaction Steps (if applicable), any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, including the New Term Loan Documents, the New RCF Documents, and the New Notes Documents, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Organizational Documents, as the boards of directors or boards of managers of the applicable Reorganized Debtors deem appropriate.

*D. Sources of Consideration for Plan Distribution.*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions and the Restructuring Transactions contemplated under this Plan with: (1) the Debtors' Cash on hand as of the Effective Date; (2) the New Term Loans, the New RCF, and the New Notes under the Exit Facilities; (3) proceeds of the New Equity Investment; (4) the New Interests; and (5) if applicable, the New Preferred Interests.

1. Use of Cash.

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand or the proceeds of the New Equity Investment to fund distributions to Holders of Allowed Claims entitled to receive Cash under this Plan, consistent with the terms of this Plan and pursuant to the terms of the Restructuring Support Agreement, including the Exit Term Sheet.

2. Exit Facilities.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facilities pursuant to the Exit Facility Documents. Confirmation of this Plan shall constitute (a) approval of the Exit Facilities and the Exit Facility Documents; and (b) authorization and direction for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Exit Facilities, including executing and delivering the Exit Facility Documents, in each case, without any further notice to or order of the Bankruptcy Court. On the Effective Date, the New RCF, the New Term Loans, and the New Notes shall be issued and distributed pursuant to this Plan and the outstanding balance of the revolving loans under the New RCF shall be paid in full in Cash, in each case consistent with the Exit Term Sheet and the Restructuring Transaction Steps, if applicable.

As of the Effective Date, all of the Liens, mortgages, encumbrances, and security interests to be granted by the Debtors or Reorganized Debtors, as applicable, in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, first-priority and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facility Documents; and (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law. To the extent provided in the Exit Facility Documents, the New Credit Agreement Agent and the New Notes Trustee, as applicable, are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. On and after the Effective Date, the Debtors and the Reorganized Debtors shall take all steps reasonably necessary to implement the Exit Facilities, enter into the Exit Facility Documents, and grant all security contemplated thereby. The priorities of such Liens and security interests shall be as set forth in the Exit Term Sheet. The New Credit Agreement Agent and the New Notes Trustee shall be authorized to make all filings and recordings necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties. The guarantees granted under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law.

3. New Equity Investment.

On the Effective Date and in connection with the consummation of the Equitization Commitment, the Reorganized Debtors and the New Equity Investors shall consummate the New Equity Investment in accordance with the ECL and the Restructuring Transaction Steps, if applicable. Confirmation of this Plan shall constitute (a) approval of the New Equity Investment and the ECL; and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the New Equity Investment in accordance with the ECL without any further notice to or order of the Bankruptcy Court.

4. New Interests.

On the Effective Date, New Getty Images shall issue, distribute, or reserve the New Interests, including the Equitization New Interests, the DIP New Interests, the Investment New Interests, and the MIP Interests, pursuant to the New Organizational Documents in accordance with this Plan and the Restructuring Transaction Steps, if applicable. The DIP New Interests, the Equitization New Interests, and the Investment New Interests shall be issued to the applicable Entities in accordance with the ECL. Confirmation of this Plan shall constitute (a) authorization for the issuance and distribution of the New Interests, including the reservation of the MIP Interests, without the need for any further corporate action by the Debtors or Reorganized Debtors and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to issue, distribute, or reserve the New Interests, including the execution and delivery of the applicable New Organizational Documents, in each case, without any further notice to or order of the Bankruptcy Court.

All of the shares (or comparable units) of New Interests issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Interests shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents and the ECL, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Interests shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Interests will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of DTC.

The Plan Sponsors (and/or their designees in accordance with the ECL) shall receive 100% of the New Interests issued under this Plan (subject only to dilution by the MIP Interests) and 100% of the New Preferred Interests issued under this Plan (if any), and no other Holder of a Claim or Interest shall receive or retain any New Interests, New Preferred Interests, or other equity interest in New Getty Images on account of such Claim or Interest. Each Entity that receives New Interests or New Preferred Interests under this Plan on account of a Claim shall receive them solely on account of its Allowed DIP Claims or Allowed EUR Term Loan Claims, or otherwise receive such New Interests in exchange for its portion of the New Equity Investment, and not on account of any Holdings Interests, which shall be cancelled and extinguished on the same terms as all other Holdings Interests.

5. New Preferred Interests.

On the Effective Date, New Getty Images shall issue the New Preferred Interests (if any) to the Holders of Allowed DIP Claims (or their designees) representing the principal amount of DIP Delayed-Draw Loans outstanding as of the Effective Date, in the amounts set forth in the ECL and on the terms set forth in the New Preferred Interests Documents. The New Preferred Interests shall not be subject to dilution by the MIP Interests. The Exit Facility Documents shall permit the Reorganized Debtors (through a separate restricted payment basket and otherwise; *provided* such separate basket shall not include basket capacity to pay any PIK interest, dividends, or fees accrued on the New Preferred Interests) to redeem the New Preferred Interests in accordance with the Restructuring Support Agreement. Provisions in the documentation governing the Exit Facilities (including (but not limited to) any general restricted payment basket) that would permit the Reorganized Debtors to pay any accrued PIK interest, dividends, or fees in respect of the New Preferred Interests or any other instrument remain subject to negotiation by and among the Plan Sponsors, the Debtors, the Consenting Secured Lenders, and the Consenting RCF Lenders; *provided* that it is understood and agreed that the Consenting Secured Lenders and Consenting RCF Lenders reserve all rights with respect to such provisions. Subject to approval by the New Board, the Reorganized Debtors shall effectuate such

redemption as soon as reasonably practicable after the Effective Date. Confirmation of this Plan shall constitute authorization for the issuance of the New Preferred Interests and the adoption of the New Preferred Interests Documents without any further corporate action or any further notice to or order of the Bankruptcy Court.

*E. Corporate Existence.*

Except as otherwise provided in this Plan, the Confirmation Order, the Restructuring Transaction Steps (if applicable), the New Organizational Documents, or any agreement, instrument, or other document incorporated therein, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which such Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under this Plan or otherwise. To the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite filings, approvals, or consents required under applicable state, provincial, or federal Law). After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

On or after the Effective Date, subject to Article V.K of this Plan, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*F. Corporate Actions.*

Upon the Confirmation Date, all actions contemplated under this Plan (including the Restructuring Transaction Steps (if applicable) and the other documents contained in the Plan Supplement) shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or Interest Holder action, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the execution, delivery, and filing of any Exit Facility Documents and the incurrence of the Exit Facilities; (3) the consummation of the New Equity Investment; (4) the adoption of the New Organizational Documents; (5) the issuance, distribution, and reservation of the New Interests and the New Preferred Interests; (6) selection of the directors, officers, or managers for the Reorganized Debtors in accordance with the New Organizational Documents; (7) adoption or assumption, as applicable, of the Compensation and Benefits Programs; (8) all other actions contemplated under this Plan (whether to occur before, on, or after the Effective Date); (9) the assumption or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (10) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date).

Upon the Effective Date, all matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Holders of Interests, members, directors, officers, or managers of the Debtors or the Reorganized Debtors, as applicable. On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors and the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Interests, the New Preferred Interests, the Exit Facility Documents, the New Organizational Documents, any other Definitive Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy Law.

*G. Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances (other than the rights of Getty Investments L.L.C. and its Affiliates under or in respect of the Trademark Option Agreement, which are preserved as provided in Article V.K of this Plan). On and after the Effective Date, except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules. No Reorganized Debtor (including any Reorganized Debtor ultimately being wound-down and liquidated in connection with the Restructuring Transactions) shall be treated as being liable on any Claim that is discharged pursuant to this Plan. No Plan Sponsor shall be deemed to assume, agree to perform, pay, or otherwise have responsibility for any liabilities or obligations of any Debtor or other Person relating to or arising from the Debtors' pre-Effective Date operations or assets, and no Plan Sponsor shall be deemed a successor to any Debtor or subject to successor or transferee liability by reason of any theory of law or equity.

*H. Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the Effective Date, unless otherwise specified in the Restructuring Transaction Steps (if applicable), the Exit Facility Documents, or to the extent otherwise provided in this Plan or the Confirmation Order, as applicable, all notes, instruments, certificates, credit agreements, note purchase agreements, indentures, and other documents evidencing Claims (including, for the avoidance of doubt, the 9.75% Notes Indenture, the 11.25% Secured Notes Indenture, the 14.00% Notes Indenture, the Credit Agreement, and all related collateral and credit documentation), and Holdings Interests shall be cancelled, and any rights of any Holder in respect thereof shall be deemed cancelled and of no force or effect, and all prior, present, and future obligations and liabilities, actions, suits, accounts or demands, covenants, and indemnities (both actual and contingent) of the Debtors and any non-Debtor Affiliates, or any other parties thereunder, or in any way related thereto, shall be deemed satisfied in full, released, cancelled, discharged, and of no force or effect, and the applicable Agents/Trustees and each of the lenders and holders and their respective agents, successors and assigns, shall each be automatically and fully released and discharged of and from all duties and obligations thereunder without any need for further action or approval by the Bankruptcy Court or for a Holder to take further action. Notwithstanding the foregoing, nothing in this Article IV.H shall cancel, terminate, release, discharge, or otherwise affect (1) the Trademark Option Agreement (including the letter agreement, dated as of February 19, 2019, between Getty Investments L.L.C. and Getty Images, Inc.) or any right of Getty Investments L.L.C. or any of its Affiliates thereunder or in respect of the Trademarks, (2) the Indemnification Provisions, or (3) any obligation under the DIP Documents that survives as provided in Article II.B of this Plan.

Notwithstanding the foregoing, (i) the Indentures shall remain in effect to the extent necessary to effectuate distributions on account of the Allowed 11.25% Secured Notes Claims and the Allowed Unsecured Notes Claims and to pay, administer, and enforce the Trustees' fees, expenses, and charging liens; *provided* that the Debtors or the Reorganized Debtors shall not be liable for fees, expenses, or charging liens incurred by the 9.75% Notes Trustee and the 14.00% Notes Trustee beyond the Unsecured Notes Trustee Fee Cap; (ii) the Credit Agreement shall remain in effect to the extent necessary to allow and preserve the rights of the Credit Agreement Agent to (a) receive and make distributions on account of Allowed Claims or Allowed Interests, subject to any Credit Agreement Agent charging lien; (b) assert or maintain any rights the Credit Agreement Agent may have against any money or property distributable or allocable to holders of Secured Funded Debt Claims or Revolving Loan Claims, including, without limitation, any Credit Agreement Agent charging lien; (c) receive compensation and reimbursement for its reasonable fees and expenses (including attorneys' fees and expenses) relating to the implementation and consummation of the Plan; (d) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Credit Agreement Agent may have under the Plan or the Loan Documents (as defined in the Credit Agreement); (e) preserve the rights of the Credit Agreement Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce any right or obligation owing to it under the Plan, including but not limited to, enforcing any right of or obligations owed to the Credit Agreement Agent or holders of Secured Funded Debt Claims or Revolving Loan Claims, as applicable, under the Plan, the Plan Supplement, the Confirmation Order, or other

related document; and (f) execute documents pursuant to Article XII.B; and (iii) nothing in this Article IV.H or otherwise in this Plan shall cancel, terminate, release, discharge, or otherwise affect the Bank Product Agreements, the Bank Product Obligations, or any Liens, cash collateral, or other credit support securing the same, each of which shall continue in full force and effect and be deemed assumed by the applicable Reorganized Debtor; *provided* that on the Effective Date, (a) all Bank Product Obligations secured under the Credit Agreement shall be deemed continued as secured obligations under the New Credit Agreement, secured by the Liens granted under the Exit Facility Documents on a pari passu basis with the New RCF, (b) each Bank Product Provider shall be a "Cash Management Bank" (or equivalent) under the New Credit Agreement, and (c) each letter of credit outstanding under the Credit Agreement shall be deemed issued under the New Credit Agreement.

*I. New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted or amended by the Reorganized Debtors. The New Organizational Documents shall be determined by the Plan Sponsors in accordance with the consent rights set forth in the Restructuring Support Agreement. To the extent required under this Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors will file its New Organizational Documents with the Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate Laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document. The New Organizational Documents will, among other things, (a) authorize the issuance of the New Interests and the New Preferred Interests and (b) prohibit the issuance of non-voting equity securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents as permitted by the laws of its jurisdiction of incorporation or formation and in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of the respective states, provinces, or countries of incorporation or formation and the New Organizational Documents, in each case without any need for further action or approval by the Bankruptcy Court.

*J. Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of directors or other Governing Body of each of the Debtors shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board and the other Governing Bodies shall be appointed in accordance with the New Organizational Documents. The initial members of the New Board shall be designated by the Plan Sponsors in accordance with the New Organizational Documents and will be identified in the Plan Supplement, to the extent known and determined at the time of filing and shall be consistent with the New Organizational Documents. Each such member and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

*K. Indemnification Policies and Indemnification Provisions.*

Consistent with applicable law, all Indemnification Provisions in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable (including any such individual or Entity designated by or affiliated with any Plan Sponsor), shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Restructuring Transactions on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the Indemnification Provisions in place immediately prior to the Petition Date, and shall not be discharged, impaired, subordinated, disallowed, or otherwise affected by this Plan (including Article VIII hereof) or the Confirmation Order. The New Organizational Documents shall contain indemnification provisions in favor of such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors no less favorable than the Indemnification Provisions in place immediately prior to the Petition Date.

*L. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the Restructuring Transaction Steps (if applicable), and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

*M. Certain Securities Law Matters.*

Before the Petition Date, the offering, issuance, and distribution of any New Interests and/or the offering, issuance, and distribution of any other debt or equity securities as contemplated herein and/or pursuant to this Plan (any such debt or equity securities, the "Other Securities") shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or other available exemptions from registration under the Securities Act and shall be exempt from any other applicable U.S. federal, state, or local Laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.

After the Petition Date, pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of the New Interests as contemplated herein and/or the offering, issuance, and distribution of Other Securities, if any, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. federal, state, or local Laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.

The offering, issuance, and sale of the Investment New Interests and any Other Securities issued pursuant to the ECL, and the issuance of the New Preferred Interests, shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or other available exemptions from registration under the Securities Act and shall be exempt from any other applicable U.S. federal, state, or local Laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.

The shares of New Interests and the Other Securities, if any, to be issued under this Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities Laws and any rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (ii) any restrictions on the transferability of such New Interests in the New Organizational Documents.

The shares of New Interests and the Other Securities, if any, that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act and subject to any restrictions on the transferability of such New Interests in the New Organizational Documents.

Nothwithstanding the foregoing, the New Notes will be issued in reliance on section 4(a)(2) of the Securities Act under an indenture that provides for resales only in accordance with Rule 144A and Regulation S under the Securities Act.

Recipients of the New Interests and the Other Securities, if any, are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable Blue-Sky Laws for resales of New Interests and Other Securities.

The Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order to any Entity (including DTC or any transfer agent for the New Interests) with respect to the treatment of the New Interests and New Preferred Interests to be issued under this Plan under applicable securities Laws. DTC and any transfer agent for the New Interests and/or New Preferred Interests shall be required to accept and conclusively rely upon this Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Interests to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable). Notwithstanding anything to the contrary in this Plan, no Entity (including DTC and any transfer agent for the New Interests) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including whether the New Interests to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

The Reorganized Debtors (i) shall emerge from these Chapter 11 Cases as a private company on the Effective Date and the New Interests and New Preferred Interests shall not be listed on a public stock exchange, (ii) shall not be voluntarily subjected to any reporting requirements promulgated by the SEC, and (iii) shall not be required to list the New Interests and/or New Preferred Interests on a recognized U.S. stock exchange, except in each case (if at all), as otherwise may be required pursuant to the New Organizational Documents. To the extent not completed on or prior to the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall be and are hereby authorized to (i) take all actions reasonably necessary or desirable to deregister under the Exchange Act as promptly as practicable in compliance with SEC rules, (ii) file post-effective amendments to terminate all of the Debtors' currently effective registration statements under the Securities Act, and (iii) file a Form 15 notifying the SEC of the suspension of the Debtors' duty to file reports under section 15(d) of the Exchange Act, in each case subject to compliance with applicable Law and without further notice to or action, order, or approval of the Bankruptcy Court.

*N.* *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors, including the New Interests, (2) the Restructuring Transactions, (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (4) the making, assignment, or recording of any lease or sublease, (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facilities, or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*O.* *Management Incentive Plan.*

The terms and conditions of the MIP, including with respect to the form, terms, allocation, and vesting of the MIP Interests or other equity-based awards, shall be determined by the New Board in its sole discretion following the Effective Date.

*P.* *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, other than the Causes of Action released or exculpated by the Debtors pursuant to the releases and exculpations contained in this Plan, including in <u>Article VIII</u>

hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before, on, or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Notwithstanding anything to the contrary in this Plan, the Plan Supplement (other than the Schedule of Retained Causes of Action), or the Confirmation Order, no Claim or Cause of Action against any Released Party (including the Consenting Stakeholders and their respective Related Parties) or Exculpated Parties shall be retained, preserved, or vested in the Reorganized Debtors unless set forth in the Schedule of Retained Causes of Action with the consent of (i) the Required Consenting Secured Lenders, (ii) the Required Consenting Unsecured Noteholders, (iii) each Consenting RCF Lender, and (iv) each Plan Sponsor.

The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Released Parties and the Exculpated Parties) may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including <u>Article VIII</u> hereof.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in this Plan, including <u>Article</u> VIII hereof, or pursuant to a Final Order of the Bankruptcy Court. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. The Reorganized Debtors may settle any such retained Cause of Action without further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### *A. Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease of the Debtors is deemed to be assumed by the Debtors or Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) were previously assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) have an ordered or requested effective date of rejection that is after the Effective Date; or (5) expired or terminated pursuant to their own terms prior to the Effective Date. On the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall assume the Trademark Option Agreement in accordance with, and subject to, <u>Article V.K</u> of this Plan. Notwithstanding anything to the contrary herein, (1) entry of the Confirmation Order shall constitute approval of the Debtors' assumption of the Restructuring Support Agreement pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date; and (2) the Bank Product Agreements shall be deemed assumed and shall not be included on the Schedule of Rejected Executory Contracts and Unexpired Leases.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination that the Reorganized Debtors have provided adequate assurance of future performance under each assumed Executory Contract and Unexpired Lease. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing and providing for its assumption (other than the Trademark Option Agreement, which shall be governed by Article V.K of this Plan). Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

Except as otherwise provided herein (including Article V.K of this Plan) or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease (other than the Trademark Option Agreement) assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control," "ipso facto," bankruptcy default or similar provision), then such provision shall be deemed modified or unenforceable such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Plan (but subject to Article V.K of this Plan), the Debtors (with the consent of each Plan Sponsor, not to be unreasonably withheld, conditioned, or delayed) or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, at any time up to forty-five (45) days after the Effective Date, subject to the applicable counterparty's right to object.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to this Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to this Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to this Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to this Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

*B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court and served on the Reorganized Debtors no later

than thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F of this Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of this Plan and may be subject to the Debtors' objection and dispute in accordance with the provisions of Article VII of this Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

*C. Cure of Defaults and Objections to Cure and Assumption*.

The Debtors or the Reorganized Debtors, as applicable, shall pay any undisputed portion of Cure (if any) relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan in the ordinary course of business in accordance with the terms of the applicable Executory Contract or Unexpired Lease, subject to the limitation described below, or on such other terms as the parties thereto may agree. No counterparty to an Executory Contract or Unexpired Lease shall be required to File or otherwise submit a request for payment of Cure. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. The notice of the Confirmation Hearing shall be served on each counterparty to an Executory Contract or Unexpired Lease and shall state that, except as otherwise provided in this Plan, all Executory Contracts and Unexpired Leases will be assumed as of the Effective Date and that any Cure will be paid in the ordinary course of business in accordance with this Article V.C.

Any objection to the assumption of an Executory Contract or Unexpired Lease under this Plan, including any objection regarding Cure, must be Filed with the Bankruptcy Court on or prior to the date that is established by the Bankruptcy Court as the deadline to object to Confirmation of the Plan. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and to the payment of any Cure in accordance with this Article V.C, and any objection shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court**.

If there is a timely Filed objection regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the disputed portion of any Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment); *provided* that the Debtors or the Reorganized Debtors, as applicable (in each case, subject to the applicable consent rights in the Restructuring Support Agreement), and the counterparty to the Executory Contract or Unexpired Lease may settle any such dispute without any further notice to, or action, order, or approval of the Bankruptcy Court. The Debtors and Reorganized Debtors, as applicable, may at any time move to reject any Executory Contract or Unexpired Lease (other than the Trademark Option Agreement) based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount asserted by the Debtors or the Reorganized Debtors, as applicable, the Debtors or the Reorganized Debtors shall have the right (subject to Article V.K of this Plan and, prior to the Effective Date, the applicable consent rights in the Restructuring Support Agreement) to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such

Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise and full payment of any applicable Cure pursuant to this Article V, in the amount and at the time dictated by the Debtors' ordinary course of business, shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease (other than the Trademark Option Agreement) at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

*D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy Law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

*E. Employee Matters.*

1. <u>Compensation and Benefits Programs.</u>

Except as otherwise set forth herein or on the Schedule of Rejected Executory Contracts and Unexpired Leases, on the Effective Date and subject to the provisions of this Plan, the Debtors or Reorganized Debtors, as applicable, shall assume all employment agreements or letters, severance agreements, or other employment-related agreements entered into with current or former employees who are employees as of the Petition Date. Any amendment to, or entry into, any new employment, severance, or similar retention agreement with any officer or other insider of the Debtors shall be subject to the consent of each Plan Sponsor. Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law.

Subject to the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for: (a) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Interests in any of the Debtors and (b) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract.

A counterparty to or participant in a Compensation and Benefits Program assumed pursuant to this Plan shall have the same rights under such Compensation and Benefits Program as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Reorganized Debtor(s)). The Confirmation of this Plan, Consummation of any of the Restructuring Transactions (including the Plan Sponsors' acquisition of New Interests and New Preferred Interests), or any assumption or assumption and assignment of a Compensation and Benefits Program pursuant to the terms herein shall not trigger or be deemed to trigger in such a Compensation and Benefits Program or any other employment agreement or compensation or benefit plan, program, or policy of the Debtors (a) any applicable change of control, sale of business, assignment, vesting, termination, constructive termination, acceleration, or similar provisions or (b) any event of "Good Reason" or a term of like import.

2. Workers' Compensation Program.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation Laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable Law, including non-bankruptcy Law with respect to any such contracts, agreements, policies, programs, and plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable non-bankruptcy Law.

*F. Director and Officer Liability Insurance.*

Notwithstanding anything in this Plan to the contrary and without limiting the coverage or effect of any "tail policy" in effect or purchased as of or after the Petition Date (the "D&O Tail Policy"), the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be Filed.

In addition, after the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies, including the D&O Tail Policy, in effect or purchased as of or after the Petition Date, and all members, managers, directors, and officers of the Debtors (including any such individual designated by or affiliated with any Plan Sponsor) who served in such capacity at any time prior to the Effective Date or any other individuals covered by such insurance policies will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions on or after the Effective Date.

*G. Other Insurance Policies.*

Excluding the D&O Liability Insurance Policies, each of the Debtors' other insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under this Plan. Unless otherwise provided in this Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

*H. Reservation of Rights.*

Nothing contained in this Plan or the Plan Supplement or the service of a notice of the Confirmation Hearing shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under this Plan. Notwithstanding the foregoing, this Article V.H shall not apply to the Trademark Option Agreement, which shall be governed by Article V.K of this Plan.

*I. Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*J. Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

*K. Trademark Option Agreement.*

Notwithstanding anything to the contrary in this Plan, the Plan Supplement, the Confirmation Order, or any other Definitive Document: (1) effective as of, and subject to the occurrence of, the Effective Date, the Trademark Option Agreement shall be assumed by the applicable Reorganized Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code on an "as is" basis, without any amendment, modification, supplement, or waiver, and shall remain in full force and effect in accordance with its terms and be binding on and enforceable against the applicable Reorganized Debtors, New Getty Images, and their respective successors and assigns (including any successor to, or transferee of, any of the Trademarks) that are party to the Trademark Option Agreement; (2) none of the Cure, objection, deemed-consent, or schedule-amendment procedures set forth in this Article V shall apply to the Trademark Option Agreement; (3) none of this Plan, the Confirmation Order, the Restructuring Transactions, or any Definitive Document (including any provision of any of the foregoing deeming modified any "change of control" or similar provision, deeming defaults cured or released, vesting property free and clear, granting or perfecting any Lien, or effecting any discharge, release, injunction, or cancellation) shall amend, modify, supplement, waive, terminate, impair, or otherwise affect the Trademark Option Agreement, the Trademarks, or any right of Getty Investments L.L.C. or any of its Affiliates thereunder or in respect thereof, all of which are expressly preserved; (4) to the extent the Trademark Option Agreement is determined not to be an Executory Contract, it shall nonetheless remain in full force and effect and binding on the applicable Reorganized Debtors party thereto, the Trademarks shall vest in the applicable Reorganized Debtor subject to the rights of Getty Investments L.L.C. and its Affiliates under the Trademark Option Agreement and the applicable Exit Facility Documents, and such rights shall not be discharged, released, enjoined, or otherwise impaired; (5) no Debtor shall reject, or assume and assign, the Trademark Option Agreement, and no sale, assignment, transfer, license, encumbrance, or other disposition of, or Lien on, the Trademarks or any interest therein shall be effected pursuant to this Plan, the Confirmation Order, the Restructuring Transactions, or any Definitive Document (including the Exit Facility Documents), in each case without the prior written consent of Getty Investments L.L.C. and the applicable Plan Sponsors, and any Lien on the Trademarks granted with such consent shall be subject to the rights of Getty Investments L.L.C. and its Affiliates under the Trademark Option Agreement; and (6) if the Effective Date does not occur, or the Restructuring Support Agreement is terminated as to any Plan Sponsor, any consent to the assumption of the Trademark Option Agreement (including pursuant to Section 4.01(a)(viii) of the Restructuring Support Agreement) shall automatically, and without further action, be deemed withdrawn, null and void, and of no force or effect, and all rights, remedies, and consent rights of Getty Investments L.L.C. and its Affiliates under or in respect of the Trademark Option Agreement and the Trademarks are expressly reserved.

*L. Intellectual Property Licenses.*

Each License Agreement shall be assumed by the applicable Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to Article V.C hereof, and entry of the Confirmation Order shall constitute approval of such assumption. Each License Agreement shall be assumed by the same Debtor party to it and shall not be assigned. To the fullest extent permitted by sections 365(e) and (f) of the Bankruptcy Code, none of Confirmation, Consummation, the Restructuring Transactions, the issuance of New Interests, or any change in the ownership or governance of a Reorganized Debtor shall constitute an assignment, change of control, or default under any such License Agreement.

The notice of the Confirmation Hearing shall be served on each counterparty to a License Agreement and shall state that, except as otherwise provided in this Plan, each License Agreement will be assumed as of the Effective Date in accordance with this Article V.L. Any objection to the assumption of a License Agreement under this Plan must be Filed with the Bankruptcy Court on or prior to the date that is established by the Bankruptcy Court as the deadline to object to Confirmation of the Plan. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. **Any counterparty to a License Agreement that fails to timely object to the proposed assumption of any License Agreement will be deemed to have consented to such assumption, including for purposes of section 365(c)(1)(B) of the Bankruptcy Code, and any objection shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**

Nothing in this Plan shall impair any right of a Debtor or Reorganized Debtor under section 365(n) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A. Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as applicable, and the Holder of the applicable Allowed Claim, the Disbursing Agent shall make initial distributions under this Plan on account of Claims Allowed on the Effective Date or as soon as reasonably practicable thereafter subject to the Reorganized Debtors' right to object to Claims. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in this Plan, Holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the preceding paragraph, (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of this Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.6 of this Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

*B. Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

All distributions under this Plan to any Disbursing Agent on behalf of the Holders of Claims listed on the Claims Register shall be deemed completed by the Debtors when received by such Disbursing Agent. Such distributions under this Plan shall be made to any such Holders at the direction of the applicable Disbursing Agent.

*C. Rights and Powers of Disbursing Agent.*

1. Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors without the need for any further application or order of the Bankruptcy Court.

*D. Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2. Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided*, *further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder, if applicable; *provided*, *further*, that distributions on account of Allowed Unsecured Notes Claims shall be made to or at the direction of the applicable Trustees, which shall then make further distributions to Holders of Allowed Unsecured Notes Claims in accordance with the applicable Indenture and customary procedures of DTC.

3. Minimum Distributions.

No fractional shares of New Interests and/or New Preferred Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Interests and/or New Preferred Interests that is not a whole number, the actual distribution of such shares of New Interests or New Preferred Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Interests and New Preferred Interests to be distributed to Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding. The Debtors reserve the right to adjust the rounding conventions discussed herein, including the methods used for allocating through DTC, if applicable.

4. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary). Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing any unclaimed distribution to the contrary.

5. Surrender of Cancelled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.H shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall (a) not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan, charging liens, priority of payment, and indemnification rights, and (b) be subject to Article IV.H in all respects. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under this Plan.

*E. Manner of Payment.*

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated by this Plan or the Plan Supplement, all distributions of New Interests, New Preferred Interests, and Cash to the Holders of the applicable Allowed Claims under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*F. Indefeasible Distributions.*

Any and all distributions made under this Plan shall be indefeasible and not subject to clawback or turnover provisions.

*G. Section 1145 Exemption.*

Prior to the Petition Date, the offering of the New Interests and New Preferred Interests shall be exempt from the registration requirements of the Securities Act pursuant to section 4(a)(2) of the Securities Act, and/or Regulation D promulgated thereunder, and/or other available exemptions. After the Petition Date, pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of the New Interests as contemplated herein and/or the offering, issuance, and distribution of Other Securities, if any, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act. In addition, any Securities issued under section 1145 of the Bankruptcy Code, if any, on account of Allowed Claims will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of (i) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, (ii) compliance with

applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments, and (iii) any restrictions in the New Organizational Documents.

Notwithstanding the foregoing, the New Notes will be issued in reliance on section 4(a)(2) of the Securities Act under an indenture that provides for resales only in accordance with Rule 144A and Regulation S under the Securities Act.

*H. Compliance with Tax Requirements.*

In connection with this Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

*I. Allocations.*

Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

*J. No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, this Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

*K. Foreign Currency Exchange Rate.*

Except with respect to the EUR Term Loan Claims (which shall be treated in accordance with Article III.B.4 of this Plan and the ECL) or as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

*L. Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any distribution under this Plan to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable,

unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment. Nothing in this Article VI.L shall permit any setoff or recoupment against any amount payable under the ECL, except as expressly set forth in the ECL. For the avoidance of doubt, distributions to Holders of Allowed Unsecured Notes Claims pursuant to Article III.B.5 of this Plan are not subject to setoff or recoupment.

Notwithstanding anything to the contrary in this Plan (including this Article VI.L and Article VIII.F) or the Confirmation Order, nothing herein shall impair, limit, or condition upon the filing of any motion or notice the exercise by any Bank Product Provider of any right of setoff, recoupment, chargeback, netting, debit, or recourse to cash collateral under the Bank Product Agreements, the Cash Management Orders, or applicable Law in respect of the Bank Product Obligations.

*M. Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies or surety bonds until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy or surety bond. To the extent that one or more of the Debtors' insurers or sureties agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' or sureties' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy and surety bonds. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance and sureties under any surety bonds, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*N. Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the Debtor(s) obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A. Disputed Claims Process.*

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Allowed General Unsecured Claims under this Plan, there is no requirement to File a Proof of Claim (or move the Bankruptcy Court for allowance) to have a Claim Allowed for the purposes of this Plan, except as provided in Article V.B of this Plan. On and after the Effective Date, except as otherwise provided in this Plan, all Allowed Claims shall be satisfied in the ordinary course of business of the Reorganized Debtors. The Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that any Claim is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan, in each case, subject to the applicable consent rights set forth in the Restructuring Support Agreement. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim, and may administer and adjust the Claims Register to reflect any such settlement or compromise, without any further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or Reorganized Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Debtors or Reorganized Debtors may elect, at their sole option, to object to any Claim (other than Claims expressly Allowed by this Plan) and to have the validity or amount of any Claim adjudicated by the Bankruptcy Court; *provided*, *further*, that any dispute with respect to a Warrant Claim shall be governed by Article III.J hereof. The Allowed amount of any Claim shall (unless expressly waived pursuant to this Plan) be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.

Upon the Effective Date, all Proofs of Claim Filed against the Debtors, whether Filed before or after the Effective Date, other than Proofs of Claim on account of Claims arising from the rejection of Executory Contracts or Unexpired Leases that are timely Filed in accordance with Article V.B of this Plan, shall be deemed withdrawn and expunged from the Claims Register, and any such Proof of Claim Filed after the Effective Date shall also be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, in each case, without the need for any objection by the Debtors or Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors, the Reorganized Debtors, and any other Entity shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment, if any, as to Unimpaired Claims, except as required by order of the Bankruptcy Court. The withdrawal and expungement of any Proof of Claim pursuant to this Article VII.A shall not, in and of itself, constitute a disallowance of, or otherwise impair, any Unimpaired Claim asserted therein, and the Holder of such Unimpaired Claim shall retain all of its rights under applicable Law (to the fullest extent required by section 1124 of the Bankruptcy Code) to pursue such Unimpaired Claim in accordance with this Article VII. Proofs of Claim on account of Claims arising from the rejection of Executory Contracts or Unexpired Leases that are timely Filed in accordance with Article V.B of this Plan shall remain subject to objection and allowance in accordance with this Article VII.

*B. Allowance of Claims.*

After the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy Law.

*C. Claims Administration Responsibilities.*

Except as otherwise specifically provided in this Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

The Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law. If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced. The Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code to the extent applicable.

*D. Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under this Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

*E. Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Debtors or Reorganized Debtors without the Debtors or Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

*F. Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

*G. No Distributions Pending Allowance.*

Notwithstanding any other provision of this Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest. If only part of the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

*H. Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan. On or as soon as reasonably practicable after the next Distribution Date after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A. Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Definitive Documents, this Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims (including any Intercompany Claims that the Reorganized Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever against the Debtors, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date. For the avoidance of doubt, this discharge shall include (a) any liability of the Debtors (including withdrawal liability) to the extent such liability relates to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment of an employee of the Debtors, (b) any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and (c) all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. All of the foregoing Claims, Interests, and Causes of Action shall be discharged regardless of whether (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim or Interest has accepted this Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. Without prejudice to the distributions, rights, and treatment that are provided by this Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims (other than Claims that are Reinstated) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property.

***B. Release of Liens.***

**Except as otherwise provided in or pursuant to the Exit Facility Documents, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created or entered into pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim that is not a Section 510(b) Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims**

**that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor Affiliate shall be fully released and discharged, and all of the right, title, and interest of any Holder (and the applicable Agents of such Holder) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors. Any Holder of such Secured Claim (and the applicable Agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (or the applicable Agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any Agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the applicable Agents for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Agents/Trustees of the Exit Facilities that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

***C. Releases by the Debtors.***

**Except as expressly set forth in this Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor,**

**the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, this Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan and the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under this Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement this Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

***D. Releases by the Releasing Parties.***

**Effective on the Effective Date, except as expressly set forth in this Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under this Plan and the contributions of the Released Parties to facilitate and implement this Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the**

**subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, this Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan and the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under this Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement this Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

***E. Exculpation.***

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, this Plan**

**(including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan and the distribution of property under this Plan or any other related agreement, the solicitation of votes on this Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan, or such distributions made pursuant to this Plan, including the issuance of securities thereunder.**

**This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in this Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

***F. Injunction.***

**Except as otherwise expressly provided in this Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of this Plan), whether or not such Entities vote in favor of, against or abstain from voting on this Plan or are presumed to have accepted or deemed to have rejected this Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in <u>Article VI.L</u>); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to this Plan.**

**By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to this Plan will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, without limitation, the injunctions set forth above.**

**The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.**

**Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under this Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

*G. Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H. Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*I. Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A. Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.BArticle IX.B hereof:

1. the Restructuring Support Agreement shall be in full force and effect;

2. there shall be no breach by the Debtors or the Consenting Stakeholders of the Restructuring Support Agreement or the DIP Credit Agreement which has not been waived or, if subject to cure, cured within the applicable time period;

3. the form and substance of the Definitive Documents shall be acceptable in accordance with the consent rights set forth in Section 3 of the Restructuring Support Agreement;

4. the Bankruptcy Court shall have entered the Final DIP Order, which order shall be in full force and effect, and no stay thereof shall be in effect;

5. no default, event of default, or other breach shall have occurred and be continuing under any of the DIP Documents;

6. the Bankruptcy Court shall have entered the Disclosure Statement Order, which order shall be in full force and effect, and no stay thereof shall be in effect and the same shall not be subject to an appeal;

7. the Bankruptcy Court shall have entered the Confirmation Order, which order shall be in full force and effect, and no stay thereof shall be in effect and the same shall not be subject to an appeal;

8. the Debtors shall have obtained all regulatory authorizations, consents, approvals, rulings, or documents that are necessary to implement and effectuate the Restructuring Transactions and all applicable waiting periods (including under the HSR Act and any applicable foreign antitrust or foreign direct investment laws) shall have expired or been terminated, as determined in good faith by the Debtors in consultation with the Required Consenting Stakeholders;

9. the New Credit Agreement (including any perfection certificates, opinions, certificates, and collateral documents reasonably acceptable to the Required Consenting Secured Lenders and the Required Consenting RCF Lenders) shall have been executed and delivered by each party thereto, and any conditions precedent related thereto, other than the occurrence of the Effective Date, shall have been satisfied or waived;

10. the New Notes Indenture (including any perfection certificates, opinions, certificates, and collateral documents reasonably acceptable to the Required Consenting Secured Lenders) shall have been executed and delivered by each party thereto, and any conditions precedent related thereto, other than the occurrence of the Effective Date, shall have been satisfied or waived;

11. the New Equity Investment and the Equitization Commitment shall have been consummated in accordance with the ECL;

12. the New Organizational Documents of New Getty Images shall have been adopted;

13. the Unsecured Notes Recovery shall have been paid in full in Cash to Holders of Allowed Unsecured Notes Claims or deposited to the applicable Trustees for distribution to such Holders substantially concurrently with the occurrence of the Effective Date;

14. all Restructuring Expenses shall have been paid in accordance with Article II.F hereof; and

15. all Professional Fee Claims that require the approval of the Bankruptcy Court shall have been paid in full or Cash equal to the Professional Fee Amount shall have been placed in the Professional Fee Escrow Account.

The Debtors shall bear all filing fees and related costs in connection with the regulatory authorizations, consents, and approvals described in this Article IX.A, and nothing in this Plan shall require any Plan Sponsor (or any of its Affiliates) to divest any asset, agree to any restriction on its business or investments, or make any payment in connection therewith.

*B. Waiver of Conditions.*

The conditions precedent set forth in Article IX.A of this Plan may be waived, in whole or in part, with the written consent of the Debtors and each Plan Sponsor; *provided* that

1. any waiver, in whole or in part, of a condition precedent that would materially and adversely affect the treatment of the Secured Funded Debt Claims, the Revolving Loan Claims, or the Unsecured Notes Claims under this Plan shall also require the consent of the Required Consenting Secured Lenders, the Required Consenting RCF Lenders, or the Required Consenting Unsecured Noteholders, as applicable;

2. any waiver, in whole or in part, of the condition precedent set forth in Article IX.A.14 shall also require the written consent of the Required Consenting Secured Lenders, the Required Consenting RCF Lenders, and the Required Consenting Unsecured Noteholders solely with respect to Consenting Creditor Fees and Expenses incurred by their respective advisors; and

3. the condition precedent set forth in Article IX.A.15 may only be waived with the consent of the affected Professional.

*C. Substantial Consummation.*

"Substantial consummation" of this Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

*D. Effect of Failure of Conditions.*

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity; *provided* that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof; *provided*, *further*, that (a) any consent to the assumption of the Trademark Option Agreement shall be deemed withdrawn as provided in Section 5.02 of the Restructuring Support Agreement, and all rights, remedies, and consent rights of Getty Investments L.L.C. and its Affiliates under or in respect of the Trademark Option Agreement and the Trademarks are expressly reserved, and (b) the obligations of the Debtors to pay the Restructuring Expenses, the Plan Sponsor Fees and Expenses, the Expense Reimbursement, the DIP Exit Fee, and any other amounts due under the ECL shall survive to the extent provided in the Restructuring Support Agreement, the DIP Documents, and the ECL.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A. Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the Restructuring Support Agreement and Article V.K of this Plan, the Debtors reserve the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in this Plan and the consent rights set forth in the Restructuring Support Agreement and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan and the Restructuring Support Agreement.

*B. Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional

disclosure or resolicitation under Bankruptcy Rule 3019; *provided* that no such approval shall be construed to waive or impair any consent right under the Restructuring Support Agreement, the ECL, or this Plan.

*C. Revocation or Withdrawal of Plan.*

To the extent permitted by the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity. Notwithstanding the foregoing, the provisos set forth in Article IX.D of this Plan shall apply in the event of any such revocation or withdrawal or if Confirmation or Consummation does not occur.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Schedule of Rejected Executory Contracts and Unexpired Leases; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.M hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under this Plan;

17. consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in this Plan, including under Article VIII hereof;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Organizational Documents, the Trademark Option Agreement (other than with respect to the enforcement of Article V.K of this Plan),

the Exit Facility Documents, and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, 9014, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests have or are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

*B. Additional Documents.*

Subject to and in accordance with the Restructuring Support Agreement, on or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the Restructuring Support Agreement. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan; *provided* that nothing in this Article XII.B shall require any Consenting Stakeholder (including any Plan Sponsor), DIP Lender, or New Equity Investor to incur any obligation or liability, or to take any action, other than as expressly set forth in this Plan, the ECL, the Restructuring Support Agreement, or the New Organizational Documents.

*C. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Confirmation Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Debtors and Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

*D. Reservation of Rights.*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*E. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*F. Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

1. if to the Debtors or the Reorganized Debtors, to:

Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017
Attention: Brian E. Schartz, Elisha D. Graff, Rachael L. Foust, Dov Gottlieb, Olivia F. Acuña, Alex Xuan
E-mail addresses: brian.schartz@stblaw.com; egraff@stblaw.com; rachael.foust@stblaw.com; dov.gottlieb@stblaw.com; olivia.acuna@stblaw.com; alex.xuan@stblaw.com

Cole Schotz P.C.
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Attention: Seth Van Aalten, Justin R. Alberto, Sarah A. Carnes, Jack M. Dougherty
E-mail addresses: svanaalten@coleschotz.com; jalberto@coleschotz.com; scarnes@coleschotz.com; jdougherty@coleschotz.com

2. if to the Plan Sponsors, to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attention: John Weber, Robert Britton
E-mail addresses: jweber@paulweiss.com; rbritton@paulweiss.com

Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Attention: Carl E. Black
E-mail addresses: ceblack@jonesday.com

Jones Day
250 Vesey Street
New York, New York 10281
Attention: Nicholas Morin; Nick Buchta
E-mail address: nmorin@jonesday.com; nbuchta@jonesday.com

Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
Attention: Zachary Shapiro
E-mail address: Shapiro@rlf.com

3. if to a Consenting Secured Lender, to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attention: Scott J. Greenberg, Matt M. Roose, Rob E. Fitzgerald

E-mail addresses: sgreenberg@gibsondunn.com; mroose@gibsondunn.com;
rfitzgerald@gibsondunn.com

333 South Grand Avenue
Los Angeles, CA 90071
Attention: Francis Petrie
E-mail addresses: fpetrie@gibsondunn.com

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Attention: Laura Davis Jones
Email: ljones@pszjlaw.com

4. if to a Consenting RCF Lender, to:

Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
Attention: Evan Fleck, Lauren Doyle, Luke Charleston
E-mail addresses: efleck@milbank.com; ldoyle@milbank.com; lcharleston@milbank.com

5. if to a Consenting Unsecured Noteholder, to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
Attention: Michael Stamer, Brad Kahn, Stephen Kuhn
E-mail addresses: mstamer@akingump.com; bkahn@akingump.com; skuhn@akingump.com.

After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests. Notwithstanding anything herein to the contrary, the Reorganized Debtors shall provide notice of any documents to all Entities whose rights are affected by any such document Filed by the Reorganized Debtors.

*G. Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and each Consenting Stakeholder shall be entitled to enforce the terms of the Confirmation Order, this Plan, and the Plan Supplement.

*H. Term of Injunctions or Stays.*

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

*I. Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement (which terms are incorporated herein by reference) (including the provisions thereof that survive the Effective Date), the ECL, or the Trademark Option Agreement, this Plan (including, for the avoidance of doubt, the Plan Supplement)

supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

*J. Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages or the Bankruptcy Court's website at https://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court but subject to Article I.G hereof, the non-exhibit or non-document portion of this Plan shall control.

*K. Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided, however*, any such alteration or interpretation shall be acceptable to the Debtors and the Required Consenting Stakeholders. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' consent and the consent of the Required Consenting Stakeholders; *provided* that any such deletion or modification must be consistent with the Restructuring Support Agreement and the consent rights set forth therein; and (3) nonseverable and mutually dependent. Without limiting the foregoing, the Debtor Release, the Third-Party Release, and the exculpation and injunction provisions set forth in Article VIII of this Plan, in each case as they apply to the Consenting Stakeholders and their respective Related Parties, are integral to, and not severable from, this Plan and the New Equity Investment.

*L. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Consenting Stakeholders, the DIP Lenders, the New Equity Investors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

*M. Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Debtors or the Reorganized Debtors, subject to filing documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court, shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, in consultation with the Plan Sponsors, and all contested matters (if any) relating to each of the Debtors, including objections to Claims and any adversary proceedings, shall be administered and heard in such Chapter 11 Case, irrespective of whether such Claims were Filed or such adversary proceedings were commenced against a Debtor whose Chapter 11 Case was closed. The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Furthermore, the Claims and Noticing Agent is authorized to destroy all paper/hardcopy records related to this matter two years after the Effective Date has occurred.

*N. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*O. Creditor Default.*

An act or omission by a Holder of a Claim or Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (a) designate a party to appear, sign, and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce this Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Reorganized Debtors in an amount, including interest, if applicable, to compensate the Reorganized Debtors for the damages caused by such default; and/or (d) make such other order as may be equitable that does not materially alter the terms of this Plan.

[*Remainder of page intentionally left blank*]

Dated: October 21, 2026

GETTY IMAGES HOLDINGS, INC.
on behalf of itself and all other Debtors

*/s/ Craig Peters*
Craig Peters
Chief Executive Officer
Getty Images Holdings, Inc.