IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| JOANN, INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>February 11, 2025 at 2:00 P.M. (ET) |
| | Related Docket Nos. 17, 140 |

**CRAFTY (AL) LLC'S LIMITED OBJECTIONS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER, <u>INTER ALIA</u>: (I) APPROVING STALKING HORSE AGREEMENT; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES; AND (III) APPROVING SALE OF ASSETS**

CRAFTY (AL) LLC ("**Landlord**"), by and through its undersigned attorneys, hereby: (a) objects to the motion of the above-captioned debtors (the "**Debtors**") for entry of an order, <u>inter alia</u>: (I) approving stalking horse agreement; (II) authorizing assumption and assignment of contracts and leases; and (III) approving the sale of assets [Docket No. 17] (the "**Sale Motion**"); and (b) joins in any objection regarding the Sale Motion filed by any other landlord(s) or other contract counter-parties for the reasons stated therein and to the extent not inconsistent with these limited objections.

---

[1] The Debtors in these chapter 11 cases together with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

2260747.1

**PRELIMINARY STATEMENT**

While in concept, Landlord does not oppose the Debtors' proposed sale of their assets and related relief, any such sale must ensure payment of all Landlord's valid administrative claims in these cases and preserve all of Landlord's rights regarding any transitional use of Landlord's leased premises and assumption and/or assignment of Landlord's lease to comply with the Bankruptcy Code and applicable law. These limited objections seek to ensure that result.

**RELEVANT BACKGROUND**

1. Landlord is landlord under a "triple net" lease (the "**Lease**") with the Debtors for a property used as a distribution center and located in Opelika, Alabama. The Debtor tenant under the Lease is Jo-ann Stores, LLC.

2. As of January 15, 2025, the Debtors entered into a Stalking Horse Agreement, (the "**Stalking Horse Agreement**") with Gordon Brothers Retail Partners ("**Agent**") pursuant to which Agent agreed to liquidate substantially all the Debtors' assets and satisfy or fund payment of certain of the Debtors' liabilities. Among other things, the Stalking Horse Agreement (and perhaps any alternative bid(s)) provides for Agent's use of Landlord's premises as part of a GOB sale, Agent's funding of the Debtors' administrative liabilities and pay down of the Debtors' liabilities to certain lenders, and Agent's ability to direct assumption and assignment of Landlord's Lease.

3. Pursuant to the Sale Motion, the Debtors seek approval of the Stalking Horse Agreement and of bidding procedures to facilitate alternative bids for the Debtors' assets.

**LIMITED OBJECTIONS**

**I.    ANY ORDER APPROVING THE SALE MOTION SHOULD ENSURE PAYMENT OF ALL ADMINISTRATIVE CLAIMS OF LANDLORD UNDER LANDLORD'S LEASE**

4. Among other things, the Sale Motion seeks to enable Agent to: (a) utilize Landlord's leased premises to help implement a GOB sale for the Debtors; (b) use funds related

2

to that GOB sale to pay down substantial liabilities of the Debtors for borrowed money; and (c) direct the assumption and assignment of Landlord's Lease. While such relief might be appropriate in a vacuum, such relief should not be granted (and the Debtors, their lenders, and Agent should not be permitted to utilize chapter 11 to accomplish such goals) unless such relief is conditioned on assurance of payment of all of Landlord's administrative claims under the Lease.

5. Such unpaid administrative claims of Landlord include, inter alia: (a) stub basic rent for January 2025; (b) claims based on any physical damage to the leased premises related to removal of inventory or FF&E from those premises; and (c) 2025 real estate taxes accruing during the post-petition period that will not come due until the end of 2025. There is a Wind-Down Budget annexed as Exhibit 3.1(b) to the Stalking Horse Agreement, but that merely has a generic line item called "Stub Rent" and no specificity that it covers Landlord's stub rent claim and no assurance is provided that any of the Debtors' stub rent obligations will be funded and paid. There is a Central Services Budget annexed as Exhibit 3.1(c) to the Stalking Horse Agreement, but that appears only to cover the Debtors' stores and not the Debtors' distribution centers such as the one leased from Landlord. There is a budget annexed to the Debtors' Cash Collateral Order [Docket No. 106], but that budget only runs through June 2025 (and, therefore, would not appear to cover a 2025 tax payment due at year end) and only includes a general line item called "Operating Expenses." Thus, there is no specificity or assurance Landlord's administrative claims will be funded and covered and no budget line item to cover contingencies such as property damage.

6. Consequently, any order approving the Sale Motion should ensure payment of Landlord's administrative claims.

2260747.1

## II. NO RIGHT GRANTED TO AGENT TO DESIGNATE OR OTHERWISE CONTROL ASSUMPTION AND/OR ASSIGNMENT OF LANDLORD'S LEASE MAY OVERRRIDE THE BANKRUPTCY CODE OR APPLICABLE LAW

7. Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part, that if there is a default under an executory contract or unexpired lease, a debtor may not assume such contract or lease unless the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . ; (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Accordingly, any proposed assumption of the Lease would require payment to Landlord of all amounts due under the Lease. Known liabilities must be paid or assumed up-front, and the Debtors (or any assignee) must remain liable for unknown Lease liabilities as and when they become known and due.

8. While now is not the time to address any potential cure issues concerning Landlord's Lease (and it is uncertain whether or not that Lease will be assumed, so that potential rejection is a primary reason Landlord now seeks to ensure payment of all its administrative claims), here Landlord merely seeks to confirm that no right granted to Agent (or some other potential GOB sale agent for the Debtors) to designate and otherwise control assumption and assignment of Landlord's Lease could override any right Landlord has regarding such assumption and/or assignment under the Bankruptcy Code or applicable law.

9. For example, any assumption and/or assumption and assignment of the Lease must include assumption of Lease obligations for currently unknown defaults for which payment ultimately would be due. Such obligations include, without limitation, indemnification, property

4

maintenance, environmental, and other Lease payment obligations that accrued under the Lease, but are not yet known to the Landlord. Accordingly, any order approving the Sale Motion should not interfere with the requirement that assumption and/or assumption and assignment of the Lease include assumption of all monetary Lease obligations, even those that are accrued but unknown.

10. Payment of all unknown lease obligations is required to assume an unexpired lease under the Bankruptcy Code. See In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) ("Congress's intent in imposing [the] conditions on the ability of the debtor to assume the contract was to ensure that the contracting parties received the full benefit of their bargain.'"); In re Frontier Properties, Inc., 979 F.2d 1358, 1367 (9th Cir. 1992) ("the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy has not intervened."); In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985) ("Section 365(b)(1) is intended to provide protection to the non-debtor lessor to ensure that he receives the full benefit of his bargain in the event of assumption."); 3 Collier on Bankruptcy ¶ 365.06[3][b] (16th ed. rev. 2017) ("The idea of cure in the [Bankruptcy] Code is to provide the other party to the contract with the benefit of its economic bargain.").

11. Correspondingly, payment of such unknown amounts is mandated by the general rule requiring a debtor to assume a lease or contract in full. See In re CellNet Data Systems, 327 F.3d 242, 249 (3d Cir. 2003) (assumption or rejection is an "all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected."); Cinnicola v. Scharffenberger, 248 F.3d 110, 119 (3d Cir. 2001) ("If the trustee [or debtor in possession] meets the assumption requirements under § 365 it must assume the executory contract entirely."); AGV Productions, Inc. v. Metro-Goldwyn-Mayer, Inc., 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2002) ("[U]nder the law of bankruptcy a contract cannot be assumed in part or rejected in part."); In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may

not be assumed in part and rejected in part . . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, . . . .").

12. This obligation to assume responsibility to pay unknown amounts is also consistent with section 365's language. For example, section 365(b), which governs a debtor's cure obligation upon assumption, applies "[i]f there has been a default" other than one based on the debtor's bankruptcy filing or financial condition. 11 U.S.C. § 365(b)(1). In effect, if a lease default is unknown, then the debtor could not be expected or required to cure it prior to assumption. Correspondingly, "adequate assurance of future performance [is required] by the assignee" of an assumed lease "whether or not there has been a default." 11 U.S.C. § 365(f)(2).

13. Further, regarding the Lease at issue here, requiring payment of all unknown Lease obligations is consistent with equitable principles. For several years the Debtor tenant has had exclusive control over the leased premises as the Lease is a triple net lease under which the tenant is responsible for paying essentially all liabilities associated with the leased premises. Hence, in comparison with the Landlord, the Debtor tenant is far better positioned to know of any potential Lease liabilities that might have arisen, whether environmental, property maintenance, personal injury, or another type.

14. Additionally, providing for payment of unknown cure amounts is a requirement for assignment of the Lease upon any sale because assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365." In re Sunterra Corp., 361 F.3d 257, 266 (4th Cir. 2004). *See* In re Best Payphones, Inc., 2007 Bankr. LEXIS 1677 at *36 (Bankr. S.D.N.Y. 2007) ("The trustee can only assign what he assumes, and the assignee cannot impose terms, implicitly or explicitly, that render performance less onerous to the assignee or more onerous to the non-debtor party to the contract.").

### III. ANY USE OF LANDLORD'S PREMISES BY AGENT MUST COMPLY WITH THE DEBTOR/TENANT'S OBLIGATIONS UNDER THE LEASE AND ONLY BE USED FOR THE DEBTORS' PROPERTY

15. The Sale Motion and Stalking Horse Agreement seek to enable Agent to utilize Landlord's leased premises in connection with a GOB sale of the Debtors' assets. Here, Landlord merely seeks to ensure that Agent has no greater rights than the Debtors have as tenant under the Lease and that Agent, as a non-debtor, may not piggy-back onto rights that belong exclusively to the Debtors as subjects of these chapter 11 cases. In particular, Agent should be responsible for any damages Agent or its invitees or agents cause to the leased premises and Agent may not bring property into the leased premises or abandon Agent's property at those premises.

### JOINDER

16. Landlord joins in any other landlord's or other contract counter-party's objection to or respecting the Sale Motion to the extent such objection is applicable to Landlord's Lease and not inconsistent with these limited objections.

### RESERVATION OF RIGHTS

17. Landlord reserves its rights to amend and/or supplement these limited objections, as circumstances might require, including, without limitation, regarding any cure notice concering and/or the terms of any proposed order approving assumption and assignment or rejection of Landlord's Lease or any proposed assumption and assignment agreement concerning such Lease.

## CONCLUSION

18.  WHEREFORE, Landlord respectfully requests that the Court: (a) condition any grant of relief related to the Sale Motion upon entry of an order consistent with these limited objections; and (b) grant Landlord such other and further relief as the Court may deem just or proper.

Dated:  February 4, 2025
       Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ Curtis S. Miller*
Curtis S. Miller (No. 4583)
Austin T. Park (No. 7247)
1201 North Market Street, Suite 1600
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
cmiller@morrisnichols.com
apark@morrisnichols.com

*- and -*

**CHAFFETZ LINDSEY LLP**
Alan J. Lipkin
1700 Broadway, 33rd Floor
New York, NY  10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950
alan.lipkin@chaffetzlindsey.com

*Counsel to CRAFTY (AL) LLC*

2260747.1