**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: February 11, 2025 @ 2:00 p.m.<br>Objection Deadline: February 4, 2025 @ 4:00 p.m.<br><br>Re: D.I. 157 |

**THE SOUTH PLAZA LANDLORD'S**
**<u>OBJECTION TO THE DEBTORS' 365(d)(4) MOTION</u>**

B&B South Plaza Holdings, LLC a Florida limited liability company, (the "<u>South Plaza Landlord</u>" or the "<u>Landlord</u>") files its objection, reservation of rights, and joinder (the "<u>Objection</u>") with respect to the *Motion of Debtors for Entry of an Order (I) Extending the Deadline for the Debtors to Assume or Reject Unexpired Leases of NonResidential Real Property and (II) Granting Related Relief* (D.I. 157) (the "<u>(d)(4) Motion</u>"). The Debtors have not established "cause" to extend the deadline to assume or reject the Landlord's Lease (as defined below). Further, the harm to the Landlord far outweighs any benefit to the Debtors. Therefore, the (d)(4) Motion must be denied as to the South Plaza Landlord. The Landlord respectfully states as follows in support of this Objection.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

4935-1267-1252v3

**OBJECTION**

1. The Landlord is the lessor of JoAnn Fabrics Store #1922 (the "Store"), located in the South Plaza Shopping Center, Ft. Myers, Florida (the "Shopping Center") pursuant to an unexpired written nonresidential real property lease agreement dated May 8, 1998 between the Landlord and Jo-Ann Stores, LLC (the "Tenant") (as amended from time to time, the "Lease"). The Lease is voluminous and may contain confidential and/or propriety information and, therefore, is not attached to this Objection. Further, upon information and belief, the Debtors have a copy of the Lease. However, a copy of the Lease is available upon request.

2. The Store is part of a shopping center as that term is defined in 11 U.S.C. § 365(b). The current monthly rent for the Store is $48,750.00.

3. JOANN Inc. and its affiliated Debtors (including the Tenant) (collectively, the "Debtors") filed for Chapter 11 relief on January 15, 2025 (the "Petition Date").

4. Since the Petition Date, the Debtors have occupied and benefited from the use of the Store. The Debtors have not paid stub rent. Further, as of 11:00 a.m. on the date of filing this Objection, the Debtors have not paid February rent. The Landlord reserves all rights to compel payment of post-Petition Date rents.

5. As this Chapter 11 case is currently configured, the Debtors will be liquidated. The Agent will have the exclusive right to market and sell and/or otherwise designate all of the Debtors' assets (including leases). Following the Agent's satisfaction of the Initial Purchase Price Funding, the Agent will receive all of the proceeds from its disposition of the Debtors' assets. Although the Agent will fund certain Occupancy Expenses, that obligation is capped by a budget and terminates once a particular store is vacated. Finally, the Agent's GOB sales and Designation Rights end

May 31, 2025 (if not sooner). See chart summarizing terms and conditions of the Agent's Stalking Horse Agreement, at pp. 8-19 of the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement …* (D.I. 17).

6. The Debtors filed the (d)(4) Motion on January 21st, only six days after the Petition Date. As the Debtors correctly point out in their motion, a debtor is deemed to reject a non-residential real property lease unless the debtor assumes the lease within 120 days of the petition date.[2] When the Debtors filed the (d)(4) Motion, the Debtors had 114 days remaining in that 120 day period established for the Debtors to assume or reject their store leases.

7. The Debtors seek a 90-day extension (from May 15th to August 13th) of the deadline by which the Debtors must assume or reject approximately 750 commercial real property leases (including the Landlord's Lease).

8. The Debtors argue at paragraphs 14-17 of the (d)(4) Motion that the following cause exists for the requested extension:

   a. the Debtors' cases are large and complex and there are 750 store leases;
   b. the decision to assume or reject is central to the Debtors' chapter 11 process;
   c. the Debtors require sufficient time to analyze leases and negotiate potential lease modifications with landlords;
   d. the Debtors will not have sufficient time to assess their lease portfolio prior to May 15th; and
   e. no landlords will be prejudiced because the Debtors will perform their undisputed obligations.

---

[2] Confirmation of a plan before the expiration of the 120 period seems remote, at best.

3

4935-1267-1252v3

9. In fact, the Debtors have not established the requisite "cause" and the prejudice to the Landlord will far outweigh any prejudice to the Debtors (if any).

10. **The Debtors have not established cause.** As a preliminary matter, the Debtors filed the (d)(4) Motion less than one week into the case – with 114 days remaining before the 120-day period expires. It is simply too early to know on January 21st what the status of the Debtors' lease evaluations will be in May.

11. This premature claim of inadequate time is further weakened by the fact that the Debtors have not filed an application to engage a real estate consultant. Moreover, the alleged need for additional time to negotiate potential lease modifications seems unlikely without either a going concern buyer or a real estate consultant to lead those negotiations.

12. **The Landlord will be prejudiced by the proposed extension.** First, the Debtors seek to extend their deadline until August 13th. However, the Agent's GOB sales end on May 31st (if not sooner) and the Agent's obligation to fund Occupancy Expenses is capped by a budget and ends upon vacation of the store. There is no certainty that the Agent's budget is adequate to pay all amounts coming due under the Lease as required by 11 U.S.C. § 365(d)(3). Furthermore, there is no certainty that the Debtors will have adequate funds to continue to satisfy their 365(d)(3) obligations once the Agent has stopped funding Occupancy Expenses during the months of June, July and August.

13. Second, the Debtors are a major tenant in the Shopping Center. However, once the GOB sales are completed, the Store will go dark for perhaps another three months, i.e. June, July and August. During that time, customer traffic will decrease, which could have a negative impact upon the Landlord, the other tenants in the Shopping Center, and the synergies between the

multiple stores within a Shopping Center. Further, that dark space could have a negative impact upon the Landlord's ability to find new tenants in the Shopping Center.

14. **The Debtors do not need to evaluate their entire lease portfolio of 750 stores by May 15th – the Debtors only need to evaluate the Landlord's Lease by May 15th**. Finally, as of 3:30 p.m. on the date of the filing of this Objection, no other landlords have objected to the (d)(4) Motion. In other words, the Debtors do not need to evaluate their entire portfolio of 750 stores leases by May 15th – the Debtors only need to evaluate one lease by May 15th – the other landlords do not oppose the Debtors' requested 120-day extension. Presumably, the Debtors will not wait until that 90-day extension to begin to evaluate their lease portfolio. Instead, it's logical to believe that the Debtors will have made significant progress evaluating that lease portfolio by May 15th. In fact, the Debtors will undoubtedly have completed their evaluation of at least some of those leases by May 15th. Therefore, it is a simple matter for the Debtors to prioritize the evaluation of the Landlord's Lease within the initial 120 days.

## RESERVATIONS OF RIGHTS

The Landlord reserves the right to supplement and/or amend this Objection as may be necessary and/or appropriate.

The Landlord also reserves all other rights, claims, and interests with respect to the Lease, the Store, and any related matters (including, without limitation, all rights under 11 U.S.C. §§ 362 and 365(b), (d)(3) and 503).

## JOINDER

The Landlord joins in any other objection(s) to the 364(d)(4) Motion which are not inconsistent with this Objection.

**WHEREFORE**, the South Plaza Landlord respectfully requests that this Court (i) deny the 364(d)(4) Motion as to the South Plaza Landlord; and (ii) grant the South Plaza Landlord such other and further relief as is just and proper.

Dated: February 4, 2025
      Wilmington, DE 19801

**ESBROOK P.C.**

*/s/ Scott J. Leonhardt*
Scott J. Leonhardt (DE 4885)
1000 N. West Street
Suite 1200
Wilmington, DE 19801
(Phone) 302.650.7540
E-Mail: scott.leonhardt@esbrook.com

-and-

Robert B. Berner (0020055)
Bailey Cavalieri LLC
409 E. Monument Ave., Suite 103
Dayton, Ohio 45402
(Phone) 937.223.4701 / (Fax) 937.223.0170
E-Mail: rberner@baileycav.com

*Counsel for B&B South Plaza Holdings LLC*