## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: Feb. 7, 2025 at 12:00 p.m.**[2]<br>**Hearing Date: Feb. 11, 2025 at 2:00 p.m.**<br>**Related to Docket Nos. 6 & 106** |

**LIMITED OBJECTION OF ARC CLORLFL001, LLC; ARC NLLKLFL001, LLC; ARC SMWMBFL001, LLC; ARG JAFPTIL001, LLC; ARG MHMORNC001, LLC; ARG OTOWEKY001, LLC; ACADIA REALTY LIMITED PARTNERSHIP; AMERICAN FORK SC, LLC; BMA JC LLC; BRIXMOR OPERATING PARTNERSHIP LP; CCA-RSSC LLC EDENS; FEDERAL REALTY OP LP; GALLATIN MALL GROUP, L.L.C.; HUTENSKY CAPITAL PARTNERS, LLC; LA COSTA CAPITAL PARTNERS; LANCASTER DEVELOPMENT COMPANY LLC; MARKETPLACE WEST PARTNERS, LLC; OREM FAMILY CENTER, LLC; PBA II, LLC; PRIDE CENTER CO., LLC; RD MANAGEMENT, LLC; RENAISSANCE PARTNERS I, LLC; SANTA SUSANA GRF2, LLC; SHERMAN COMMONS, L.P.; SHOPPING CENTER ASSOCIATES, LP; TPP 217 TAYLORSVILLE, LLC; THE STERLING ORGANIZATION; UFPTFC, LLC & BBTFC LLC; AND, WESTFORD VALLEY MARKETPLACE, INC. TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

ARC CLORLFL001, LLC; ARC NLLKLFL001, LLC; ARC SMWMBFL001, LLC; ARG

JAFPTIL001, LLC; ARG MHMORNC001, LLC; ARG OTOWEKY001, LLC; Acadia Realty

Limited Partnership; American Fork SC, LLC; BMA JC LLC; Brixmor Operating Partnership LP;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Objection deadline extended by agreement of Parties.

CCA-RSSC LLC; EDENS; Federal Realty OP LP; Gallatin Mall Group, L.L.C.; Hutensky Capital

Partners, LLC; La Costa Capital Partners; Lancaster Development Company LLC; Marketplace

West Partners, LLC; Orem Family Center, LLC; PBA II, LLC; Pride Center Co., LLC; RD

Management, LLC; Renaissance Partners I, LLC; Santa Susana GRF2, LLC; Sherman Commons,

L.P., Shopping Center Associates, LP; TPP 217 Taylorsville, LLC; The Sterling Organization;

UFPTFC, LLC & BBTFC LLC; and, Westford Valley Marketplace, Inc. (collectively, the

"Landlords"), by and through their undersigned counsel, hereby file this limited objection (the

"Limited Objection") to the *Motion of Debtors for Entry of Interim and Final Orders*

*(I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to*

*Prepetition Secured Creditors, (III) Modifying the Automatic Stay, (IV) Scheduling a Final*

*Hearing, and (V) Granting Related Relief* (the "Cash Collateral Motion") [D.I. 6],[3] and respectfully

represent as follows:

## I.    BACKGROUND FACTS

1.    JOANN INC. and certain of its debtor affiliates (collectively, the "Debtors"), filed

their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on

January 15, 2025 (the "Petition Date").  The Debtors continue to operate their business and manage

their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[4]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to

unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the

"Leases") at the locations (the "Centers") set forth on the attached Schedule A.

---

[3]  Terms not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion and accompanying documents.

[4]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

3.      Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.      On the Petition Date, the Debtors filed the Cash Collateral Motion seeking *inter alia*, an order allowing use of cash collateral, providing adequate protection, and waiving any of the Debtors' surcharge rights under section 506(c) of the Bankruptcy Code with respect to the Prepetition Lenders upon entry of a final order (the "506(c) Waiver").

5.      On the same day, the Debtors also filed a motion for approval of procedures to govern the sale of all or substantially all of their assets [D.I. 17] (the "Bidding Procedures Motion"), which *inter alia* seeks approval of the Stalking Horse Agreement submitted by Gordon Brothers Retail Partners, LLC to liquidate all of the Debtors' Assets, including the conduct of store closing sales in all of the Debtors' retail stores if selected as the successful bid.

6.      On January 16, 2025, the Court entered an order approving the Cash Collateral Motion on an interim basis [D.I. 106] (the "Interim Order").  The Interim Order excludes the Leases from the Collateral, limiting such Collateral to only the proceeds of the disposition of the Leases ("Lease Proceeds").  See Interim Order, ¶¶ 4(a), n. 6; 13.  Additionally, the Interim Order limits the Prepetition Agents' access to the Premises in the event of an Event of Default or Cash Collateral Termination Event to:(a) any agreement in writing between the Prepetition Agent(s) and any applicable landlord; (b) pre-existing rights of the Prepetition Agents and any applicable landlord under applicable non-bankruptcy law; (c) consent of the applicable landlord; or (d) further order of this Court following notice and a hearing ("Access Limitation").  See Interim Order, ¶ 13(b).  Finally, the Interim Order preserves the respective rights of Debtors, lenders', and Landlords with respect to any insurance proceeds arising from loss or damage to Landlords' property ("Insurance Limitation").  See Interim Order, ¶ 13(a) (the Lease Proceeds, Access

Limitation, and Insurance Limitation provisions, together with any other modifications to the Interim Order made at the request of Landlords, the "Landlord Protections"). Landlords understand that the Landlord Protections will be incorporated into the proposed final order approving the Cash Collateral Motion (the "Proposed Final Order"), however, to the extent that the Proposed Final Order does not incorporate the Landlord Protections, Landlords hereby object to its entry, and reserve all rights to argue issues related to the Landlord Protections at the final hearing.

7.    The Interim Order also includes a consolidated, summary 24-week budget, extending only through the week ending June 28, 2025 (the "Budget").

8.    However, despite the Debtors' ongoing use and occupancy of the Premises to conduct their business, the Debtors have failed to pay post-petition rent for the period January 15, 2025 to January 31, 2025 (the "Stub Rent") to certain of the Landlords for the use and occupancy of the Premises. Landlords have been advised by Debtors' counsel that approximately $9 million is included in the Budget on account of Stub Rent in the "Wind-Down Costs" consolidated line item, but that is not proposed to be actually budgeted or paid until April or later (months after the proposed sale of the Debtors' assets, including Leases), although the consolidated nature of the Budget makes it impossible to discern exactly when. The consolidated Operating Expenses line item also makes it impossible to discern whether the Budget provides sufficient funds for the payment of all other additional post-petition rental obligations that may become due under the Leases pursuant to Section 365(d)(3) of the Bankruptcy Code through the rejection of such Leases (together with the Stub Rent, the "Post-Petition Rent"), including, but not limited to, February and March rent at all remaining locations, and for any bi-annual real estate taxes or annual

reconciliations to be paid by the tenant, and other like charges that may arise outside of the monthly recurring rental obligations that may not have been budgeted.

9. Landlords inquired as to whether Stub Rent was provided for anywhere in the Budget and were informed by Debtors' counsel that it would be paid to the extent required by the Bankruptcy Code and permitted by the Budget.

10. Landlords object to the approval of any 506(c) Waiver for the benefit of the Debtors' Prepetition Lenders prior to the payment, budgeting, or otherwise providing for adequate protection of the Debtors' ability to pay the Post-Petition Rent, including the administrative Stub Rent, incurred in these cases. Debtors and their Prepetition Lenders must pay the freight of a bankruptcy in order to enjoy its benefits, sometimes known as "pay to play," and this case is no different. Furthermore, to the extent that this case proceeds as a full chain liquidation, it all the more clear that the Debtors' Prepetition Lenders should not obtain the benefit of a 506(c) Waiver, particularly where the Prepetition Lenders are providing no new money financing to the Debtors in these cases, unless and until Post-Petition Rent is paid or Landlords are otherwise provided with adequate protection of the Debtors' ability to pay the Post-Petition Rent. To allow otherwise, would permit the Debtors and their Prepetition Lenders to utilize the bankruptcy process to conduct closing sales outside of the ordinary course of business in all locations (if the Stalking Horse Bid becomes the successful bid in less than a week) that are otherwise impermissible at the Premises for the sole benefit of the Debtors (and the Prepetition Lenders whose collateral is being sold at Landlords' Premises), and to the detriment of the Centers and other shopping center tenants, with no prospect of a going-concern sale of any kind. Moreover, the ongoing sale process proposed to allow the Debtors and their Prepetition Lenders to realize value for monetization of the Leases, but the payment of known administrative costs of those Leases during these cases are either

unjustifiably delayed or unclear.  This Court should not allow the Debtors and Lenders to do so absent payment of all Post-Petition Rent and charges for such use and occupancy of the Premises.

11.    While Landlords are willing to continue to engage in discussions with the Debtors regarding potential further resolutions of the issues described herein, Landlord files this Objection to outline for the Court the open issues and legal support for the Landlords' positions in the event a consensual resolution is not reached.

## II.    ARGUMENT

### A.    Landlords are entitled to adequate protection for the Post-Petition Rent for the post-petition use and occupancy of the Premises as part of any Proposed Final Order.

12.    Landlords understand the Debtors' need for the use of Cash Collateral and the relief requested in the Cash Collateral Motion, provided the Landlord Protections are maintained in any further Cash Collateral order and Landlords receive adequate protection that they will receive payment of the Post-Petition Rent accrued under all Leases.  Since the bankruptcy filing, Landlords have provided and continue to provide critical benefits to the Debtors and the Prepetition Lenders by way of their continued use of the Premises in order to operate the Debtors' business to maximize the value of the lenders' collateral through ongoing sales at the Premises, secured storage of the Lenders' collateral, and payment of out of pocket expenses such as taxes, common area maintenance, utilities, and insurance.

13.    The Debtors recognize that their business is dependent on the ongoing use of their leased locations, and that Landlords are correspondingly critical to their potential success.  That fact notwithstanding, the current Budget unfairly fails to budget for certain Post-Petition Rent, placing Landlords in a position unlike any other administrative creditor by relegating Landlords to the position of an involuntary, unsecured, post-petition, interest-free lender to the Debtors in the amount of the unbudgeted Post-Petition Rent.  This is the very result that Section 365(d)(3) was

intended to counteract.  See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

The Budget provides for the payment of, upon information and belief, all other post-petition

administrative expenses of these estates, including professional fees.  Landlords' understanding is

that the Budget may provide for the payment of the Stub Rent at some time through and including

the final budgeted week, but it is unclear when and unclear whether the Budget is sufficient to pay

certain other post-petition Lease obligations, such as for bi-annual real estate taxes or annual

reconciliations.  When the Debtors are proposing to sell their business within mere days, it is

unreasonable to potentially delay the post-petition costs of those Leases for weeks or month

thereafter.  The Proposed Final Order likely provides that the Debtors can only use the proceeds

of the Cash Collateral as provided by the Budget, and the use of Cash Collateral in any manner

that is not consistent with the Budget is an event of default under the Cash Collateral Documents.

(See Interim Order, ¶ 3).  As a result, if an expense is not included in the Budget or is included

months into the future, the Debtors cannot and will not pay it now.

14.     This structure places the ultimate payment of the Post-Petition Rent at a risk that is

not shared by other administrative creditors.  While Landlords may not ever recover on account of

the pre-petition rent that the Debtors have failed to pay, this Court should not further permit the

Debtors to avoid paying for their post-petition use and occupancy of the Premises, while availing

themselves of the benefits of the Bankruptcy Code (and simultaneously avoiding its obligations).

There is ample support for Landlords' entitlement to adequate protection under the Bankruptcy

Code.

15.     Adequate protection for the Post-Petition Rent is warranted as a condition of a sale

or plan that involves the use of the Premises under Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on
> request of an entity that has an interest in property used, sold, or

7

> leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . .*

11 U.S.C. § 363(e) (emphasis added).

16.     Section 363(e) provides a basis to grant adequate protection to real property lessors in the form of budgeting for the payment of or reserving for the Post-Petition Rent.  See, e.g., Matter of Cont'l Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (finding that adequate protection is available under § 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); In re P.J. Clarke's Rest. Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of Section 363(e)"); In re Ernst Home Ctr., Inc., 209 B.R. 955, 966-67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e)); In re RB Furniture, Inc., 141 B.R. 706, 713-14 (Bankr. C.D. Cal. 1992) (adequate protection under Section 363(e) may even be broader than the rights encompassed under Section 365(d)(3), given it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property").

17.     While all parties hope these cases will ultimately be administratively solvent, it is too early to tell if this will be true in these proceedings.  The Debtors may be liquidating all of their assets if the sale to the Stalking Horse Bidders is successful, or selling all of their assets to another successful bidder, but the Debtors path in this bankruptcy and the Landlords' prospects for payment of the Post-Petition Rent are still unknown.  The Debtors intention to take advantage of occupancy and subject Landlords to the maximum risk of loss in these cases is untenable.  What if a sale does not close?  What if the Leases are rejected instead of assumed and assigned to a purchaser?  How many months should a Landlord be forced to wait to (maybe) receive January

Stub Rent?  The Debtors make no proposal or provision of adequate protection for Stub Rent whatsoever.  In this case, the Debtors have many milestones and obstacles to overcome.  Everyone, including Landlords, is hopeful that the Debtors can achieve their goals, but the outcome remains uncertain at this time and Landlords should not be the only administrative creditors to shoulder this risk.  Simply allowing an administrative expense claim for the Stub Rent will not adequately protect Landlords.  See 11 U.S.C. § 361(3).  In fact, Section 361(3) makes clear that adequate protection may not take the form of a deferred administrative claim.  In re Attorneys Office Management, Inc., 29 B.R. 96, 99 (Bankr. C.D. Cal. 1983) ("In §361(3) it is made clear that an administrative claim under § 503(b)(1) in itself will not constitute adequate protection.").

18.    The Debtors are still open and operating in Landlords' Premises, as they were for all of January.  Unlike other creditors, Landlords have no choice but to allow the Debtors to continue to use and occupy their Premises.  This Court has seen many cases where the Debtors and their professionals have stated (and believed) that there would be money to pay administrative claims at the end of a case, only later to concede that the estates are administratively insolvent.  Indeed, even where debtors have been compelled to budget for Post-Petition Rent to address these precise concerns, Landlords have recently seen cases where those budgeted rent payments during the course of a bankruptcy case were not paid, despite the DIP lenders or prepetition lenders receiving the benefit of a 506(c) Waiver in exchange for such protection. See, e.g., In re Big Lots, Case No. 24-11967 (JKS) (Bankr. D. Del.); In re Christmas Tree Shops, Case No 23-10576 (TMH) (Bankr. D. Del.); In re WeWork, Case No. 23-19865 (JKS) (Bankr. D.N.J.).  Landlords do not want to see this case added to this string cite.

19.    The Court should require the Debtors to provide adequate protection for the continued use of the Premises through the date of the payment of the Post-Petition Rent.  Thus,

any order approving the Cash Collateral Motion on a final basis must provide adequate protection to the Landlords.

**B.      Adequate protection can be provided to the Landlords in various ways.**

20.     Because the Landlords are entitled to adequate protection of the Post-Petition Rent, the Court may consider the various forms of adequate protection that can be provided.

*i.      Payment is a form of adequate protection.*

21.     The best form of adequate protection the Debtors could provide is the payment of all of the Post-Petition Rent obligations that will accrue through the assumption, assumption and assignment, or rejection of the Leases.  See, e.g., In re ZB Company, Inc., 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords on a per diem basis during the pre-rejection period in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate).

22.     No provision of the Bankruptcy Code permits the Debtors to receive the benefits and protections of chapter 11 while simultaneously shirking their attendant obligations.   In circumstances where there is a risk of administrative insolvency, it is appropriate for adequate protection to take the form of budgeting and immediate cash payments for post-petition use of the Premises.  See 11 U.S.C. § 361; In re Kellstrom Indus., Inc., 282 B.R. 787, 794 (Bankr. D. Del. 2002).

23.     Moreover, the Court may also allow the unpaid Post-Petition Rent, including Stub Rent, as an administrative expense of the Debtors under Section 503(b)(1), and order its payment. Section 503(b)(1) provides for an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate. See 11 U.S.C. § 503(b)(1).  Section 365(d)(3) does not preclude the Court from ruling that Stub Rent is an administrative expense under Section

503(b)(1).  See In re Goody's Family Clothing Inc., 610 F.3d 812, 816-19 (3d Cir. 2010); In re

Garden Ridge Corp., 323 B.R. 136, 142-43 (Bankr. D. Del. 2005) (citing ZB Co. Inc., 302 B.R. at

319 (landlords entitled to prorated rent from the Petition Date—despite the fact that the billing

date occurred the day before the petition date).  A landlord's administrative claim under Section

503(b)(1) is equal to the lease contract rate.  See ZB Co. Inc., 302 B.R. at 319 (contract rate is

presumed to be the fair rental value).

  24. Courts have discretion to determine the timing of the administrative payments.  See,

e.g., Garden Ridge Corp., 323 B.R. at 143 (citing In re HQ Global Holdings, Inc., 282 B.R. 169,

173 (Bankr. D. Del. 2002) (entering interim orders directing the full contract rent for February

2004 to each landlord); ZB Co., Inc., 302 B.R. at 320.  "In determining the time of payment, courts

consider prejudice to the debtor, hardship to the claimant, and potential detriment to other

creditors." See Garden Ridge Corp., 323 B.R. at 143; see also HQ Global, 282 B.R. at 173.  The

hardship to Landlords outweighs any prejudice to the Debtors or other creditors.  Without

immediate payment of Post-Petition Rent, including the Stub Rent, or at least providing adequate

protection that Landlords will receive such payment in one of the manners set forth herein,

Landlords bear the risk of administrative insolvency, while the Debtors and Prepetition Lenders

continue to benefit from the use of their Premises.  Other creditors do not provide post-petition

services to the Debtors without payment.  Forcing Landlords to act as involuntary post-petition

lenders is contrary to the Bankruptcy Code, and directing payment (or adequate protection for

payment) of the unpaid Post-Petition Rent, including Stub Rent, is appropriate under the

circumstances.  See In re Travel 2000, Inc., 264 B.R. 444 (Bankr. W.D. Mich. 2001) (finding that

Congress and courts have determined that a landlord should receive the benefit of its bargain to

compensate a landlord for being compelled by the Bankruptcy Code to continue providing a debtor

with a critical service).  Therefore, this Court may allow and require the immediate payment of the Stub Rent under Section 503(b)(1).

> ### ii.    *Post-Petition Rent can be escrowed as a form of adequate protection.*

25.    Short of immediate payment of the Post-Petition Rent owed to Landlords, the Debtors could escrow sufficient funds to provide adequate protection for the Post-Petition Rent, including Stub Rent.  The Court was faced with a similar situation in *CEC Entertainment, Inc.*, where the debtors' financing budget failed to provide sufficient funds for the payment of stub rent and other outstanding post-petition lease obligations, and the debtors similarly sought a 506(c) waiver before those amounts would be paid to landlords.  There, the Court fashioned a remedy of an escrow for the outstanding stub rent to provide adequate protection to landlords until the catchup payment could be made by the Debtors.  [CEC Entm't Inc., Case No. 20-33163, Tr. Hr'g 10/8/20 pp. 74:4-75:3, relevant portions attached hereto as Exhibit 1], see also In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [D.I. 1699, at § 40] (requiring reserve of stub rent for closing locations).[5]

> ### iii.   *A carve out or condition to any surcharge waiver under Section 506(c) can provide Landlords adequate protection.*

26.    As set forth in the Cash Collateral Motion, the Debtors are seeking a waiver of their surcharge rights under Section 506(c) in connection with a Proposed Final Order.  Section 506(c) provides that a trustee or debtor in possession may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." 11 U.S.C. § 506(c); See

---

[5] A copy of the Sports Authority final DIP Order is attached to this Limited Objection as Exhibit 2.

Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Ind., Inc.), 57 F.3d 321, 325 (3d Cir. 1995).  The premise underlying Section 506(c) is that the unsecured creditors should not be required to bear the costs of preserving a secured creditor's collateral.  See In re Evanston Beauty Supply Inc., 136 B.R. 171, 175 (Bankr. N.D. Ill. 1992).  "Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met." In re World Wines, Ltd., 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987).  Standards for recovery are that the services were necessary and beneficial to the lender.  Visual Indus., Inc., 57 F.3d at 325.  Here, Debtors' basis for seeking a 506(c) Waiver is weak, as they are solely relying on Cash Collateral without securing additional financing from the lenders and proposing to push off the payment of certain Post-Petition Rent for an indeterminate time and subject to an indeterminate Budget.  The Debtors and Prepetition Lenders continue to benefit from the post-petition use and occupancy of the Premises, which are vital to the Debtors' bankruptcy goals, and there is no legitimate reason that they should not pay for that benefit.

27.     Courts may surcharge Prepetition Lenders for post-petition rents and storage charges owed to them for storing lender's collateral, as necessary and directly beneficial to the lender.  In re Scopetta-Senra P'ship III, 129 B.R. 700 (Bankr. S.D. Fla. 1991) (determining that a landlord that provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); In re Gain Electronics Corp., 138 B.R. 464, 465 (Bankr. D.N.J. 1992); In re World Wines, Ltd., 77 B.R. at 658 (finding that landlord was entitled to be paid by the bank for the use and occupancy of its premises for storage of wine pursuant to Section 506(c)); In re Proto-Specialties, Inc., 43 B.R. 81 (Bankr. D. Ariz. 1984).

28.     The Debtors and Prepetition Lenders are requesting a waiver of the Debtors' (and any other party's) ability to surcharge the Prepetition Lenders under Section 506(c).  This places

the risk of future administrative insolvency on the Landlords in the amount of the unpaid Post-Petition Rent, as well as any other post-petition obligations that are not provided for in the Budget. Shifting this risk to unsecured creditors—and involuntary unsecured creditors, at that—is contrary to the purpose of Section 506(c) and results in an unwarranted windfall to the lenders.  As a result, courts have increasingly required that lenders pay for such benefits, which requirement is sometimes referred to as the "pay to play" concept.  See, e.g., In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [D.I. 1699] (preserving Section 506(c) rights for the Debtors or any party with standing absent providing for payment of Stub Rent and Section 503(b)(9) claims). Given that Debtors' Prepetition Lenders have and will substantially benefit from the continued use and occupancy of Debtors' retail locations through the preservation and disposition of collateral located in the leased Premises, the Prepetition Lenders should be required to fund the expenses of that benefit rather than escape any responsibility for occupancy costs through attempted waivers of Sections 506(c) and 552.

29.    Indeed, courts in a number of jurisdictions have adopted this "pay to play" concept. In the Eighth Circuit, for instance, the case law provides that "if a secured creditor consents to the debtor's continued operation, it also impliedly consents to the debtor surcharging the necessary operating expenses of continuing its business against the creditor's secured claim." See In re Machinery, Inc., 287 B.R. 755, 768 (Bankr. E.D. Mo. 2002); citing Underwriters Ins. v. Magna Bank (In re Hen House Interstate, Inc.), 150 F.3d 868, 871-72 (8th Cir. 1998) rev'd on other grounds 150 F.3d 868 (8th Cir.1998) (en banc) aff'd. 530 U.S. 1 (2000); United States v. Boatmen's First Nat'l. Bank, 5 F.3d 1157, 1159-60 (8th Cir.1993).  "[B]oth Boatmen's and Hen House . . . require a finding that the secured creditor does in fact impliedly consent [to surcharging

14

of its collateral] when it agrees to the debtor's continued operation of its business."  Machinery, Inc., 287 B.R. at 768.  This is just another way of stating the "pay to play" concept to make sure that Landlords and other unsecured creditors do not solely bear the risk of administrative insolvency.

30.      If the Debtors and their Prepetition Lenders are unable or unwilling to pay or escrow the Post-Petition Rent, than any waiver of the Debtors' surcharge rights under Section 506(c) should carve out Post-Petition Rent to make such waiver applicable to Post-Petition Rent only after such amounts are escrowed or paid to the Landlords.  This conditional 506(c) waiver is another means of providing Landlords with the adequate protection to which they are entitled under the Bankruptcy Code.  See In re The Sports Authority, Inc., et al., Case No. 16-10527 (MFW) (Bankr. D. Del. May 3, 2016) (Final Order Authorizing Debtors to Obtain Postpetition Financing) [D.I. 1699, at ¶43(a)].  It is improper for the Debtors to seek to waive the statutory provisions specifically intended to protect Landlords' Post-Petition Rent claims while providing absolutely no means for such claims to be paid.[6]

**C.      The Bankruptcy Code Requires Equal Treatment of Administrative Expense Creditors.**

31.      Moreover, the Bankruptcy Code does not allow the Debtors to treat similarly situated administrative claimants differently.  In re Lazar, 83 F.3d 306, 308-09 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities.").  Through their Budget, the Debtors are establishing different classes of administrative claimants to receive payment, to the exclusion of

---

[6] It has been observed that bankruptcy courts "should not ignore the basic injustice of an agreement in which a debtor, acting out of desperation, has compromised the rights of unsecured creditors."  In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985); accord, In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (9th Cir. BAP 1992) (recognizing that debtors-in-possession "generally enjoy little negotiating power" with secured lenders, "particularly where the lender has a prepetition lien on cash collateral.").

others (namely, the Landlords), in violation of the Bankruptcy Code. As these estates may be administratively insolvent, this alone should justify the payment of the Stub Rent or, at a minimum, the non-payment of other similarly situated administrative claims until such time as the Post-Petition Rent is paid.

## III.    RESERVATION OF RIGHTS

32.    Landlords reserve the right to make such other and further objections as may be appropriate, and do not waive and hereby preserve all of their rights, remedies, and arguments with respect to the Leases.

## IV.    JOINDER IN OBJECTIONS

33.    To the extent consistent with the objections expressed herein, Landlords also join in the objections of any other shopping center lessors or the official committee of unsecured creditors to the Debtors' proposed relief.

## V.    CONCLUSION

Landlords respectfully request that the Court require any Final Cash Collateral Order to be modified consistent with this Objection, and grant such further relief as the Court deems just and proper.

Dated: February 7, 2025
Wilmington, Delaware

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
roglenl@ballardspahr.com
vesperm@ballardspahr.com

and

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
Sara Shahbazi, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com
zarnighiann@ballardspahr.com
shahbazis@ballardspahr.com

*Counsel to ARC CLORLFL001, LLC; ARC
NLLKLFL001, LLC; ARC SMWMBFL001, LLC;
ARG JAFPTIL001, LLC; ARG MHMORNC001,
LLC; ARG OTOWEKY001, LLC; Acadia Realty
Limited Partnership; American Fork SC, LLC; BMA
JC LLC; Brixmor Operating Partnership LP; CCA-
RSSC LLC; EDENS; Federal Realty OP LP; Gallatin
Mall Group, L.L.C.; Hutensky Capital Partners,
LLC; La Costa Capital Partners; Lancaster
Development Company LLC; Marketplace West
Partners, LLC; Orem Family Center, LLC; PBA II,
LLC; Pride Center Co., LLC; Renaissance Partners
I, LLC; Santa Susana GRF2, LLC; Sherman
Commons, L.P., Shopping Center Associates, LP;
TPP 217 Taylorsville, LLC; The Sterling
Organization; UFPTFC, LLC & BBTFC LLC; and,
Westford Valley Marketplace, Inc.*

**SCHEDULE A**

| | | |
|---|---|---|
| **ARC CLORLFL001, LLC** | | |
| Store No. 1908 | Colonial Landing | Orlando, FL |
| **ARC NLLKLFL001, LLC** | | |
| Store No. 0312 | North Lakeland Plaza | Lakeland, FL |
| **ARC SMWMBFL001, LLC** | | |
| Store No. 2118 | Shoppes of West Melbourne | West Melbourne, FL |
| **ARG JAFPTIL001, LLC** | | |
| Store No. 2418 | West Avenue Shopping Center | Freeport, IL |
| **ARG MHMORNC001, LLC** | | |
| Store No. 2318 | Morganton Heights | Morganton, NC |
| **ARG OTOWEKY001, LLC** | | |
| Store No. 2233 | Owensboro Towne Center | Owensboro, KY |
| **ACADIA REALTY LIMITED PARTNERSHIP** | | |
| Store No. 2373 | Merrillville Plaza | Merrillville, IN |
| Store No. 0539 | New Towne Center | Canton, MI |
| **AMERICAN FORK SC, LLC** | | |
| Store No. 2331 | American Fork Center | American Fork, UT |
| **BMA JC LLC** | | |
| Store No. 2220 | Joliet Commons | Joliet, IL |
| **BRIXMOR OPERATING PARTNERSHIP LP** | | |
| Store No. 2477 | Burning Tree Plaza | Duluth, MN |
| Store No. 0904 | Capitol Shopping Center | Concord, NH |
| Store No. 2342 | Cayuga Shopping Center | Ithaca, NY |
| Store No. 2574 | Dickson City Crossings | Dickson City, PA |
| Store No. 2381 | Fox Run Shopping Center | Prince Frederick, MD |
| Store No. 2198 | High Point Centre | Lombard, IL |
| Store No. 2520 | Hilltop Plaza | Virginia Beach, VA |
| Store No. 0677 | Holyoke Shopping Center | Holyoke, MA |
| Store No. 2116 | Lakes Crossing | Norton Shores, MI |
| Store No. 2579 | Parkway Plaza | Vestal, NY |
| Store No. 0429 | Pine Tree Shopping Center | Portland, ME |
| Store No. 0138 | Rivercrest Shopping Center | Crestwood, IL |
| Store No. 0824 | Seacoast Shopping Center | Seabrook, NH |
| Store No. 1586 | Southland Shopping Center | Middleburg Heights, OH |
| Store No. 2136 | South Towne Centre | Dayton, OH |
| Store No. 1924 | The Plaza at Buckland Hills | Manchester, CT |
| Store No. 1107 | Venice Village | Venice, FL |
| Store No. 2344 | West Loop Shopping Center | Manhattan, KS |
| Store No. 2390 | Westminster City Center | Westminster, CO |
| **CCA-RSSC LLC** | | |
| Store No. 2180 | Renaissance Square | Cedar City, UT |

| EDENS | | |
|---|---|---|
| Store No. 0777 | Middlesex Commons | Burlington, MA |
| Store No. 2182 | ShopRite Plaza | Brookfield, CT |
| **FEDERAL REALTY OP LP** | | |
| Store No. 0551 | One On Mercer | Lawrenceville, NJ |
| **GALLATIN MALL GROUP, L.L.C.** | | |
| Store No. 1695 | Gallatin Valley Mall | Bozeman, MT |
| **HUTENSKY CAPITAL PARTNERS, LLC** | | |
| Store No. 2048 | Bloomingdale Court | Bloomingdale, IL |
| Store No. 2272 | Golden Gate Shopping Center | Mayfield Heights, OH |
| Store No. 2103 | Lake View | Orland Park |
| Store No. 1858 | Northglenn Marketplace | Northglenn, CO |
| **LA COSTA CAPITAL PARTNERS;** | | |
| Store No. 2335 | Villages of Amelia | Yulee, FL |
| **LANCASTER DEVELOPMENT COMPANY LLC** | | |
| Store No. 2218 | Willamette Town Center | Salem, OR |
| **MARKETPLACE WEST PARTNERS, LLC** | | |
| Store No. 2315 | Marketplace West | Billings, MT |
| **OREM FAMILY CENTER, LLC** | | |
| Store No. 1756 | The Family Center at Orem | Orem, UT |
| **PBA II, LLC** | | |
| Store No. 0871 | Peninsula Boardwalk | Redwood City, CA |
| **PRIDE CENTER CO., LLC** | | |
| Store No. 2374 | Pride Center | Woodland Hills, CA |
| **RD MANAGEMENT, LLC** | | |
| Store No. 173 | Merchants Crossing | N. Ft. Myers, FL |
| Store No. 1244 | Shady Oaks Shopping Center | Ocala, FL |
| **RENAISSANCE PARTNERS I, LLC** | | |
| Store No. 2013 | Pueblo Mall | Pueblo, CO |
| **SANTA SUSANA GRF2, LLC** | | |
| Store No. 1818 | Santa Susana Plaza | Simi Valley, CA |
| **SHERMAN COMMONS, L.P.** | | |
| Store No. 2308 | Sherman Commons | Sherman, TX |
| **SHOPPING CENTER ASSOCIATES, LP** | | |
| Store No. 2090 | Perring Plaza | Parkville, MD |
| **TPP 217 TAYLORSVILLE, LLC** | | |
| Store No. 2074 | The Crossroads of Taylorville | Taylorsville, UT |
| **THE STERLING ORGANIZATION** | | |
| Store No. 1596 | Coral Landings | Margate, FL |
| Store No. 1875 | Fairfax Towne Center | Fairfax, VA |
| Store No. 2005 | Presidential Commons | Snellville, GA |
| **UFPTFC, LLC & BBTFC LLC** | | |
| Store No. 2528 | 2330 E 3300 S | Salt Lake City, UT |

| WESTFORD VALLEY MARKETPLACE, INC. | | |
|---|---|---|
| Store No. 0472 | Westford Valley Marketplace | Westford, MA |