# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>Objection Deadline: Feb. 7, 2025 at 12:00 p.m.[2]<br>Hearing Date: Feb. 11, 2025 at 2:00 p.m.<br>Related to Docket No. 17 |

**OBJECTION OF ARC CLORLFL001, LLC; ARC NLLKLFL001, LLC; ARC SMWMBFL001, LLC; ARG JAFPTIL001, LLC; ARG MHMORNC001, LLC; ARG OTOWEKY001, LLC; ACADIA REALTY LIMITED PARTNERSHIP; AMERICAN FORK SC, LLC; BMA JC LLC; BRIXMOR OPERATING PARTNERSHIP LP; CCA-RSSC LLC EDENS; FEDERAL REALTY OP LP; GALLATIN MALL GROUP, L.L.C.; HUTENSKY CAPITAL PARTNERS, LLC; LA COSTA CAPITAL PARTNERS; LANCASTER DEVELOPMENT COMPANY LLC; MARKETPLACE WEST PARTNERS, LLC; OREM FAMILY CENTER, LLC; PBA II, LLC; PRIDE CENTER CO., LLC; RD MANAGEMENT, LLC; RENAISSANCE PARTNERS I, LLC; SANTA SUSANA GRF2, LLC; SHERMAN COMMONS, L.P.; SHOPPING CENTER ASSOCIATES, LP; TPP 217 TAYLORSVILLE, LLC; THE STERLING ORGANIZATION; UFPTFC, LLC & BBTFC LLC; AND, WESTFORD VALLEY MARKETPLACE, INC. TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING BIDDING (II) SCHEDULING CERTAIN CATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING THE STALKING HORSE AGREEMENT, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES, (VII) APPROVING THE SALE OF ASSETS, AND <u>(VIII) GRANTING RELATED RELIEF</u>**

ARC CLORLFL001, LLC; ARC NLLKLFL001, LLC; ARC SMWMBFL001, LLC; ARG JAFPTIL001, LLC; ARG MHMORNC001, LLC; ARG OTOWEKY001, LLC; Acadia Realty

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Objection deadline extended by agreement of Parties.

Limited Partnership; American Fork SC, LLC; BMA JC LLC; Brixmor Operating Partnership LP; CCA-RSSC LLC; EDENS; Federal Realty OP LP; Gallatin Mall Group, L.L.C.; Hutensky Capital Partners, LLC; La Costa Capital Partners; Lancaster Development Company LLC; Marketplace West Partners, LLC; Orem Family Center, LLC; PBA II, LLC; Pride Center Co., LLC; RD Management, LLC; Renaissance Partners I, LLC; Santa Susana GRF2, LLC; Sherman Commons, L.P., Shopping Center Associates, LP; TPP 217 Taylorsville, LLC; The Sterling Organization; UFPTFC, LLC & BBTFC LLC; and, Westford Valley Marketplace, Inc. (collectively, the "Landlords"), hereby file this limited objection (the "Objection"), by and through their undersigned counsel, to the *Motion of Debtors for Entry of an Order (I) Approving Bidding (II) Scheduling Certain Cates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [D.I. 17] (the "Bid Procedures Motion") and state as follows:

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

1.   JOANN INC. and certain of its debtor affiliates (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on January 15, 2025 (the "Petition Date"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth on the attached Schedule A.

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On the Petition Date, the Debtors filed the Bid Procedures Motion, seeking, *inter alia*, approval of certain procedures and dates with respect to the sale of substantially all of their assets, including assumption and assignment of leases.

5. Landlords do not object to a fair and open sale process that provides the Debtors an opportunity to maximize the value of their assets, but that process must adequately protect the rights of the Landlords under Section 365, as well as the Landlords' due process, legal, and negotiated lease rights. The Bid Procedures, and the sale timeline proposed in the Bid Procedures Motion do not provide Landlords with sufficient time to meaningfully assess and object (if necessary) to any proposed assumption and assignment of the Leases. Landlords have provided informal comments to the Debtors as to revisions to the proposed Bid Procedures Order and how the sale timeline could be modified to appropriately balance the Debtors' apparent desire to close a sale of its asset post haste, with ensuring that Landlords have fair and proper notice and time to object. While Landlords believe certain of these comments will be adopted, others have not and remain unresolved as of the time of filing this Objection. Landlords will continue to work with the Debtors and the Official Committee of Unsecured Creditors to find a schedule and procedure that may work for all parties.

6. To the extent any revised form of Bid Procedures Order filed by the Debtors fails to resolve the issues identified by Landlords, the Landlords reserve their right to raise such objections at the hearing.

## II. ARGUMENT

### A. Any Sale Timeline Must Protect Landlords' Due Process Rights.

7. Fundamental due process requires that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *See also Sullivan v. Barnett*, 139 F.3d 158, 171 (3d Cir. 1998) (due process requires notice and a meaningful opportunity to be heard).[4] The Due Process Clause of the United States Constitution applies to proceedings under the Bankruptcy Code. *See, e.g.*, *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985); *Matter of Boomgarden*, 780 F.2d 657, 660-661 (7th Cir. 1985). A fair and open sale process must provide Landlords with a meaningful opportunity to review adequate assurance information, assess a Winning Bidder's ability to perform under the Leases, sufficient time to file a substantive objection, and (if necessary) conduct discovery in advance of an evidentiary hearing on the proposed assumption and assignment of Leases.[5] The proposed Bid Procedures do not provide that opportunity.

---

[4] Ordinarily, Rule 6004(b) of the Federal Rules of Bankruptcy Procedure ("FRBP") provides that objections to proposed sales be filed and served not less than seven (7) days before the proposed action on the sale.

[5] To the extent the Bid Procedures Motion contemplates the assumption and assignment of the Leases, it initiates a contested hearing subject to Rule 9014 of the FRBP. *See* Fed. R. Bankr. P. 6006(a). Any evidentiary hearing will include witness testimony, and under FRBP 9014, the Court should establish procedures to provide parties a reasonable time to schedule an evidentiary hearing where witnesses will testify. *See* FRBP 9014(e). Any final schedule must establish a reasonable time to deal with evidentiary hearings relating to the assumption and assignment of Leases.

8.    The Bid Procedures do not take into account the complexity of reacting to potential bids and determining the effect of those bids on a Landlord's particular leasehold and shopping center.  Even assuming that the potential assignee is a nationally recognized and financially acceptable tenant, such that adequate assurance of future performance from a financial standpoint is not an issue, the Landlords still must review the nature of the potential use, proposed timing of renovations, requests for additional term or options, tenant improvement allowances, etc. as well as various exclusives, prohibitions, co-tenancies, reciprocal easement agreements, and other tenant matters to determine whether or not the proposed use and tenant either violates other leases or creates other issues for the landlord and the shopping center.  For example, should the use clause permit a change of use, Landlords need to determine whether or not other tenant exclusives or other provisions may be violated by that change of use.  While certain of the Landlords may have only one or a few properties which they are managing, others have multiple shopping centers.  Landlords did not create this alleged emergency, and it cannot be used as an excuse to deny Landlords their due process rights, or the protections afforded them by the Bankruptcy Code.

9.    The timeline proposed by the Bid Procedures Motion presented a number of issues, including requiring Landlords to file multiple objections rather than a single objection, proposing a bid deadline and sale hearing if no Auction is held within the same week as the hearing on the Bid Procedures Motion, proposing to send adequate assurance information for any Winning Bidder(s) to only requesting landlords on no clear date (which we understand has now been modified to provide such information only to requesting landlords just two business days after an Auction and as little as 2 days before the Sale Hearing).  Landlords propose a simple and streamlined revision to these dates, as set forth in the below chart, that still accomplishes the Debtors' primary goal of completing a sale process in short order:

| Event | Debtors' Requested Date | Landlords' Proposal |
|---|---|---|
| Bid Deadline | February 12, 2025 | February 12, 2025 |
| Notice of Winning Bidder and Cancellation (if no Auction) | February 13, 2025 | February 13, 2025 |
| Sale Objection Deadline to Stalking Horse Bid | February 13, 2025 | Seven days after a proposed Sale Order is filed (which has not yet been filed or provided upon request) |
| Auction (if any) | February 14, 2025 at 10:00 a.m. | February 14, 2025 at 10:00 a.m. |
| Sale Hearing (if no Auction) | February 14, 2025 at 10:00 a.m. | February 21, 2025, subject to Court availability |
| Notice of Winning Bidders (if there is an Auction) | February 15, 2025 (or as soon as practicable thereafter) | Within 12 hours of conclusion of Auction |
| Cure Notice | No proposed date | Within 12 hours of conclusion of Auction, no later than February 15, 2025 |
| Deadline to Provide Adequate Assurance Information | No proposed date | Within 12 hours of conclusion of Auction, no later than February 15, 2025 |
| Deadline to Object to Cure Amounts, Adequate Assurance, and Assignment | 14 days after notice | Monday, March 3, 2025 at 4:00 p.m. |
| Sale Hearing (if there is an Auction) | February 22, 2025 (a Saturday) at 10:00 a.m. | March 6, 2025 or other date thereafter subject to Court's availability |

10. The main differences in Landlords' proposal are (i) moving the requested Sale Hearing in the event of no Auction from Friday, February 14 to Friday, February 21—within the week after the hearing on the Bid Procedures Motion and requiring the Debtors' to actually file their proposed Sale Order for the Stalking Horse transaction and give parties time to review and object, if necessary, (ii) moving the Sale Hearing in the event of an Auction to a weekday, (iii) Clearly providing Landlord with timing for the cure process and affirmatively providing the requisite adequate assurance information, and (iv) permitting Landlords to file a single objection to assert all sale, cure, assignment, and adequate assurance objections not less than fourteen (14)

days after the relevant information will be received, rather than having to file multiple objections within a week, in an already compressed sale timeline.

11. While the Debtors have informally agreed to move certain dates and deadlines, the proposed timeline is still in flux and Landlords require certainty on the process and path forward. The timeline must be clarified and provide for Landlords' stated and recognized rights of due process that is not unduly burdensome.

12. In order to receive the benefits that the Bankruptcy Code provides to the Landlords under Section 365, including the heightened protections afforded shopping center landlords under 11 U.S.C. § 365(b)(3), Landlords need at least 14 days to assess any Winning Bidder (or multiple Winning Bidders) and object prior to the Sale Hearing. As proposed, the schedule does not provide any time for the Landlords to assess, let alone receive adequate notice of, the Winning Bidder for the Leases, to prepare and file relevant objections to the Sale.

13. For these reasons, Landlords request that the Court modify the Debtors' requested sale timeline and bid procedures as set forth above.

**B.     The Debtors must provide Landlords with Adequate Assurance Information that satisfies Section 365(b)(1) & (b)(3) prior to any objection deadline.**

14. Adequate assurance information must be provided to Landlords in a timely fashion and with sufficient time to file any objections and prepare for the Sale Hearing. While the Bid Procedures do require Qualified Bidders to submit certain adequate assurance information related to their ability to perform their obligations under assumed contracts and leases, (i) the information will only be provided to counterparties who request it, and not all affected counterparties, and (ii) as noted above, the Debtors' timeline provides Landlords with insufficient time to review, negotiate, object, and prepare for an evidentiary hearing (if needed) with respect thereto.

15. It is well-established that Debtors bear the burden of presentation for assumption and assignment of a lease and the ultimate burden of proof that all requirements for the proposed assumption and assignment of a lease have been met. *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985); *In re Airlift Int'l Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985). Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(A) & (C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

16. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that "Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Id.* at 1080. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390,

393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

17. It has been held that the best form of adequate assurance of future performance is advance rent or a deposit. *In re Hub of Military Circle, Inc.*, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982). However, it may also include "sufficient financial backing, escrow deposits or other forms of security or guaranty," *In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 674 (Bankr. E.D. Pa. 1987), sound financial statements and a substantial net worth, *In re Taylor Manufacturing, Inc.*, 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980), projected sales proceeds sufficient for and earmarked for payment of rent, *Buchakian v. Musikahn Corp.*, 69 B.R. 55, 56 (E.D.N.Y. 1986), and a substantial cash reserve, a favorable market outlook and the history of prompt payment, *Seacoast Products, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (M.D.N.C. 1983).

18. In its consideration of the setting of applicable deadlines, the Court should leave adequate time for Landlords to receive necessary information, prepare and present objections, if necessary, and arrange for witnesses to appear at any contested Sale Hearing, thus affording Landlords the protections of Section 365. The schedule should be adjusted to provide Landlords with a fourteen days to analyze and, if necessary, prepare an objection to the Winning Bidder after the Auction. Landlords cannot be assured that the evidence of adequate assurance of future performance, when provided by a Qualified Bidder, will be complete in the first instance. Accordingly, any schedule must provide an opportunity for follow-up requests for further information and potentially even expedited discovery. There is no such opportunity provided by the Bid Procedures Motion, prejudicing the protections afforded to Landlords by 11 U.S.C. § 365(b) and (f)(3). *See, e.g.*, *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984

amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor.").

19. Moreover, it is improper for the Debtors to attempt to shift their affirmative statutory burden to demonstrate adequate assurance of future performance to Landlords, by placing an additional procedural hurdle on Landlords to request adequate assurance information be provided to them in order to receive it. How can Debtors require objections to adequate assurance by a certain date when they do not intend to provide such information to all relevant parties, all of whom are known to the Debtors by virtue of their contractual relationship? The procedures proposed by the Bid Procedures Motion need to be modified to provide affected landlords with adequate notice of any proposed assignees of Debtors' leases and a meaningful opportunity to review and respond to evidence of adequate assurance of future performance, as required by Section 365, in advance of the Sale Hearing. As a practical matter, given the expedited sale process proposed by the Debtors, the Debtors should be required to provide all adequate assurance information for the Winning Bidder to the affected landlords <u>and</u> their counsel of record by email, fax and/or overnight courier service by no later than twelve (12) hours after the Auction for the, and in no event later than at least fourteen (14) days <u>before</u> any proposed objection deadline.

### C. Sale to Backup Bidder

20. The Bid Procedures propose that in the event of the failure of a Winning Bidder to timely consummate an approved sale transaction, the Back-Up Bidder shall be deemed the Winning Bidder and the Debtors can consummate a transaction, including assumption and assignment of leases, to the Back-Up Bidder without any notice to landlords or further order of the Court. Based on discussions with the Debtors, Landlords believe that this provision has now been modified to instead provide a process by which, in the event the Debtors need to consummate a

Back-Up Bid, notice will be provided to affected counterparties and a hearing will be scheduled to consider an appropriate briefing and hearing schedule with respect to any potential objections to assignment of contracts or leases to the Back-Up Bidder. In the event a revised Bid Procedures Order does not include this modification, Landlords reserve the right to raise an objection at the hearing on the Bid Procedures Motion.

### III. JOINDER

To the extent not inconsistent with the foregoing, Landlords join in the objections to Debtors' Bid Procedures Motion filed by Debtors' other landlords and the Official Committee of Unsecured Creditors.

### IV. RESERVATION OF RIGHTS

Landlords reserve the right to make such other and further objections to Debtors' Bid Procedures Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors and any further revised proposed Bid Procedures Order. Landlords further reserve their rights to object to (i) any specific request to assume and assign either Lease on any grounds, including any showing of adequate assurance of future performance proffered by Debtors or a proposed assignee, (ii) any proposed form of asset purchase agreement submitted by any Winning Bidder(s), and (iii) any proposed form of Sale Order.

*[Remainder of page intentionally left blank]*

V. **CONCLUSION**

Accordingly, any order approving the Bid Procedures Motion should modify the proposed Auction and Sale Hearing timeline to provide for a fair process that affords Landlords with a meaningful opportunity to review, analyze and, potentially, object to the proposed assignment of their leases with Debtors.

| | |
|---|---|
| Dated: February 7, 2025<br>Wilmington, Delaware | */s/ Laurel D. Roglen*<br>Leslie C. Heilman (DE No. 4716)<br>Laurel D. Roglen (DE No. 5759)<br>Margaret A. Vesper (DE No. 6995)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: heilmanl@ballardspahr.com<br>roglenl@ballardspahr.com<br>vesperm@ballardspahr.com<br><br>-and-<br><br>Dustin P. Branch, Esquire<br>Nahal Zarnighian, Esquire<br>Sara Shahbazi, Esquire<br>BALLARD SPAHR LLP<br>2029 Century Park East, Suite 1400<br>Los Angeles, California 90067-2915<br>Telephone: (424) 204-4400<br>Facsimile: (424) 204-4350<br>E-mail: branchd@ballardspahr.com<br>zarnighiann@ballardspahr.com<br>shahbazis@ballardspahr.com<br><br>*Counsel to ARC CLORLFL001, LLC; ARC NLLKLFL001, LLC; ARC SMWMBFL001, LLC; ARG JAFPTIL001, LLC; ARG MHMORNC001, LLC; ARG OTOWEKY001, LLC; Acadia Realty Limited Partnership; American Fork SC, LLC; BMA JC LLC; Brixmor Operating Partnership LP; CCA-RSSC LLC; EDENS; Federal Realty OP LP; Gallatin Mall Group, L.L.C.; Hutensky Capital Partners, LLC; La Costa Capital Partners; Lancaster Development Company LLC; Marketplace West Partners, LLC; Orem Family Center, LLC; PBA II, LLC; Pride Center Co., LLC; Renaissance Partners I, LLC; Santa Susana GRF2, LLC; Sherman Commons, L.P., Shopping Center Associates, LP; TPP 217 Taylorsville, LLC; The Sterling Organization; UFPTFC, LLC & BBTFC LLC; and, Westford Valley Marketplace, Inc.* |

## SCHEDULE A

| | | |
|---|---|---|
| **ARC CLORLFL001, LLC** | | |
| Store No. 1908 | Colonial Landing | Orlando, FL |
| **ARC NLLKLFL001, LLC** | | |
| Store No. 0312 | North Lakeland Plaza | Lakeland, FL |
| **ARC SMWMBFL001, LLC** | | |
| Store No. 2118 | Shoppes of West Melbourne | West Melbourne, FL |
| **ARG JAFPTIL001, LLC** | | |
| Store No. 2418 | West Avenue Shopping Center | Freeport, IL |
| **ARG MHMORNC001, LLC** | | |
| Store No. 2318 | Morganton Heights | Morganton, NC |
| **ARG OTOWEKY001, LLC** | | |
| Store No. 2233 | Owensboro Towne Center | Owensboro, KY |
| **ACADIA REALTY LIMITED PARTNERSHIP** | | |
| Store No. 2373 | Merrillville Plaza | Merrillville, IN |
| Store No. 0539 | New Towne Center | Canton, MI |
| **AMERICAN FORK SC, LLC** | | |
| Store No. 2331 | American Fork Center | American Fork, UT |
| **BMA JC LLC** | | |
| Store No. 2220 | Joliet Commons | Joliet, IL |
| **BRIXMOR OPERATING PARTNERSHIP LP** | | |
| Store No. 2477 | Burning Tree Plaza | Duluth, MN |
| Store No. 0904 | Capitol Shopping Center | Concord, NH |
| Store No. 2342 | Cayuga Shopping Center | Ithaca, NY |
| Store No. 2574 | Dickson City Crossings | Dickson City, PA |
| Store No. 2381 | Fox Run Shopping Center | Prince Frederick, MD |
| Store No. 2198 | High Point Centre | Lombard, IL |
| Store No. 2520 | Hilltop Plaza | Virginia Beach, VA |
| Store No. 0677 | Holyoke Shopping Center | Holyoke, MA |
| Store No. 2116 | Lakes Crossing | Norton Shores, MI |
| Store No. 2579 | Parkway Plaza | Vestal, NY |
| Store No. 0429 | Pine Tree Shopping Center | Portland, ME |
| Store No. 0138 | Rivercrest Shopping Center | Crestwood, IL |
| Store No. 0824 | Seacoast Shopping Center | Seabrook, NH |
| Store No. 1586 | Southland Shopping Center | Middleburg Heights, OH |
| Store No. 2136 | South Towne Centre | Dayton, OH |
| Store No. 1924 | The Plaza at Buckland Hills | Manchester, CT |
| Store No. 1107 | Venice Village | Venice, FL |
| Store No. 2344 | West Loop Shopping Center | Manhattan, KS |
| Store No. 2390 | Westminster City Center | Westminster, CO |
| **CCA-RSSC LLC** | | |
| Store No. 2180 | Renaissance Square | Cedar City, UT |

| | EDENS | |
|---|---|---|
| Store No. 0777 | Middlesex Commons | Burlington, MA |
| Store No. 2182 | ShopRite Plaza | Brookfield, CT |
| | **FEDERAL REALTY OP LP** | |
| Store No. 0551 | One On Mercer | Lawrenceville, NJ |
| | **GALLATIN MALL GROUP, L.L.C.** | |
| Store No. 1695 | Gallatin Valley Mall | Bozeman, MT |
| | **HUTENSKY CAPITAL PARTNERS, LLC** | |
| Store No. 2048 | Bloomingdale Court | Bloomingdale, IL |
| Store No. 2272 | Golden Gate Shopping Center | Mayfield Heights, OH |
| Store No. 2103 | Lake View | Orland Park |
| Store No. 1858 | Northglenn Marketplace | Northglenn, CO |
| | **LA COSTA CAPITAL PARTNERS;** | |
| Store No. 2335 | Villages of Amelia | Yulee, FL |
| | **LANCASTER DEVELOPMENT COMPANY LLC** | |
| Store No. 2218 | Willamette Town Center | Salem, OR |
| | **MARKETPLACE WEST PARTNERS, LLC** | |
| Store No. 2315 | Marketplace West | Billings, MT |
| | **OREM FAMILY CENTER, LLC** | |
| Store No. 1756 | The Family Center at Orem | Orem, UT |
| | **PBA II, LLC** | |
| Store No. 0871 | Peninsula Boardwalk | Redwood City, CA |
| | **PRIDE CENTER CO., LLC** | |
| Store No. 2374 | Pride Center | Woodland Hills, CA |
| | **RD MANAGEMENT, LLC** | |
| Store No. 173 | Merchants Crossing | N. Ft. Myers, FL |
| Store No. 1244 | Shady Oaks Shopping Center | Ocala, FL |
| | **RENAISSANCE PARTNERS I, LLC** | |
| Store No. 2013 | Pueblo Mall | Pueblo, CO |
| | **SANTA SUSANA GRF2, LLC** | |
| Store No. 1818 | Santa Susana Plaza | Simi Valley, CA |
| | **SHERMAN COMMONS, L.P.** | |
| Store No. 2308 | Sherman Commons | Sherman, TX |
| | **SHOPPING CENTER ASSOCIATES, LP** | |
| Store No. 2090 | Perring Plaza | Parkville, MD |
| | **TPP 217 TAYLORSVILLE, LLC** | |
| Store No. 2074 | The Crossroads of Taylorville | Taylorsville, UT |
| | **THE STERLING ORGANIZATION** | |
| Store No. 1596 | Coral Landings | Margate, FL |
| Store No. 1875 | Fairfax Towne Center | Fairfax, VA |
| Store No. 2005 | Presidential Commons | Snellville, GA |
| | **UFPTFC, LLC & BBTFC LLC** | |
| Store No. 2528 | 2330 E 3300 S | Salt Lake City, UT |

5

| WESTFORD VALLEY MARKETPLACE, INC. | | |
|---|---|---|
| Store No. 0472 | Westford Valley Marketplace | Westford, MA |