**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| JOANN INC., *et al.*,[1] | ) ) | Case No. 25-10068 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. 11, 104 and 315** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM,
(B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
(C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) continue to operate the Cash Management System and maintain their existing Bank Accounts, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with historical practices, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on final basis as set forth herein.

2. The Debtors are authorized, but not directed, in all cases consistent with historical practice and in the ordinary course of business, and subject to the terms of this Final Order, to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors' preprinted Business Forms have been exhausted, the Debtors shall, when reordering their Business Forms, add the designation "Debtor in Possession" and corresponding bankruptcy case number thereon; (d) continue to perform Intercompany Transactions consistent with historical practice and

granting administrative expense status to postpetition Intercompany Claims; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Operating Guidelines; (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (h) open new debtor in possession Bank Accounts; (i) pay the prepetition Bank Fees; and (j) pay any Bank Fees incurred in the ordinary course in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (j), such action is taken in the ordinary course of business and consistent with past practice; *provided, further*, that within ten (10) business days of the entry of this Final Order, the Debtors will update any electronically produced checks and other Business Forms which the Debtors or their agents print themselves to reflect their status as debtors in possession and the lead chapter 11 case number; *provided, further*, that the Debtors shall provide reasonable notice, but no later than five (5) calendar days, to the U.S. Trustee, the Prepetition ABL Agent, the Prepetition FILO Agent, and the Official Committee of Unsecured Creditors (the "Committee") of any material changes to their Cash Management System.

3. The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course of business and in a manner consistent with prepetition practices and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions

are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of this Court.

4. The Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business, without the need for further order of this Court for: (a) all checks drawn on the Debtors' Bank Accounts that were cashed at the Bank's counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date; (b) all checks, ACH entries, or other items deposited in, or credited to, one of the Debtors' Bank Accounts with such bank prior to the Petition Date which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding, if any, owed to the Bank as Bank Fees for the maintenance of the Cash Management System and charge back returned items to the Bank Accounts in the ordinary course. No checks for which the Debtors have issued stop payments or for which the Court has ordered non-payment shall be honored.

5. Any existing deposit agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights and remedies afforded under such agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes

to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and pursuant to the terms of those existing deposit agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

6. The Debtors are authorized, but not directed, in the ordinary course of business and consistent with historical practices, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided* that the Debtors shall open any such new bank accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or at such banks that are willing to execute an agreement; *provided further,* that the Debtors shall give notice within fifteen (15) days to the U.S. Trustee and the Committee of the opening of any new bank account or closing any existing Bank Account; *provided further,* that any such new bank accounts opened by the Debtors shall be subject to the terms of this Final Order; *provided further,* that in the event the Debtors open or close any Bank Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports, and the Debtors shall give counsel to the Prepetition ABL Agent, the Prepetition FILO Agent, and the Committee at least five (5) calendar days' prior notice of any modifications to the Cash Management System and before opening any new bank accounts or closing any existing Bank Accounts. The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank."

7.     The Debtors shall serve a copy of this Final Order on all Banks as soon as possible but in no event more than ten calendar (10) days after entry of this Final Order, and upon any bank at which the Debtors open a new bank account immediately upon the opening of the new account.

8.     All banks provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Bank Accounts.

9.     In the course of providing cash management services to the Debtors, each of the Banks at which the Bank Accounts are maintained is authorized, without further order of this Court and consistent with prepetition practices, to deduct any applicable fees (whether arising prior to, on, or after the Petition Date) from the appropriate accounts of the Debtors, and further, to charge back to the appropriate Bank Accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

10.    Notwithstanding any other provision of this Final Order, any Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, transfer, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable

customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

11. The Debtors are authorized, but not directed, to continue to utilize and pay any third-party providers necessary in the ordinary course of business, consistent with past practices, for the administration of their Cash Management System, including, without limitation, PayPal Holdings, Inc. and its affiliates ("PayPal"). PayPal is authorized to receive and obtain payment for obligations owed thereto in the ordinary course by the Debtors, as provided under and in the manner set forth in those certain PayPal User Agreements governing the relationship between PayPal and the Debtors (the "User Agreements"), including, without limitation, by way of recoupment or setoff, as permitted under the User Agreements and consistent with prepetition practice, without further order of the Court. The Debtors shall ensure that balances held by all payment processors, including PayPal, Stripe, and any others utilized as of the Petition Date, do not exceed $1,500.00, and that all auto-distribution rules on such accounts remain in place.

12. In the ordinary course of business and as part of the Cash Management System, the Debtors entered into various service agreements with credit card processors regarding the processing of the Debtors' credit card and gift card transactions including, but not limited to: (1) that certain Master Services Agreement and Bankcard Addendum to Master Services Agreement between Huntington Merchant Services, L.L.C. (successor to First Data Merchant Services Corporation) ("Huntington") and Jo-Ann Stores, LLC (successor to Jo-Ann Stores, Inc.), dated as of June 25, 2010  (the "Merchant Services Agreement") and (2) that certain Stored Value Card Processing Agreement between First Data Resources, LLC (successor in interest by merger with Gift Solutions LLC, f/k/a ValueLink, LLC) ("First Data" and together with Huntington,

the "Processors") and Jo-Ann Stores, LLC, (successor to Jo-Ann Stores, Inc.) (the "Gift Card Agreement" and together with the Merchant Services Agreement, the "FDMS Processing Agreements").

13.   The Debtors are authorized, but not directed, to honor, perform under, and otherwise satisfy their obligations under the FDMS Processing Agreements in the ordinary course of business and consistent with prepetition practices, including to pay or reimburse the Processors for all amounts outstanding under the FDMS Processing Agreements regardless of whether such obligations were related to prepetition or postpetition services or charges.  The Processors are authorized to receive or obtain payment from the Debtors for all obligations arising under the FDMS Processing Agreements, including, without limitation, by way of recoupment or setoff against amounts payable to the Debtors under the FDMS Processing Agreements, or any amounts held in reserve under the FDMS Processing Agreements, without further order of the Court, regardless of whether such obligations arose prepetition or postpetition.  Absent payment of any undisputed amounts owed to the Processors under the FDMS Processing Agreements, the Processors shall be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code, subject and junior to claims, including adequate protection claims, granted in connection with any Court order for the use of cash collateral.

14.   Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and to accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15.     To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty (30) days from the Petition Date, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the thirty (30) day period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

16.     The Debtors shall monitor the Bank Accounts maintained at Heartland Bank and Trust Company and periodically sweep such accounts to ensure that the balance of each never exceeds $50,000.

17.     The Debtors shall not be required to comply with the requirement of the U.S. Trustee Guidelines to establish separate accounts for cash collateral and/or tax payments.

18.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in the ordinary course of business and consistent with past practices; *provided, however,* that the Debtors shall provide counsel to the Prepetition ABL Agent, the Prepetition FILO Agent, and the Committee with at least five (5) days' advance notice (the "Notice Period") of any Intercompany Transactions in cash exceeding $50,000 between or among Debtor entities and any non-Debtor affiliate.  For the avoidance of doubt, the Debtors are not authorized to engage in any Intercompany Transactions outside the ordinary course of business pursuant to this Final Order. During the Notice Period, the Committee shall have the opportunity to object to and resolve in good faith with the Debtors the propriety of any such Intercompany Transaction.  The Debtors

shall maintain accurate and detailed records of all transfers, including, without limitation, Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily ascertained, traced, and properly recorded in intercompany accounts (if any) and distinguished between prepetition and postpetition transactions, including for the purpose of determining administrative expense status. The Debtors shall make such records available upon request to the U.S. Trustee, Morgan, Lewis & Bockius LLP as counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP as counsel to the Prepetition FILO Agent, and Kelley Drye & Warren LLP as proposed counsel to the Committee.

19. Notwithstanding the foregoing, the Debtors shall not engage in any Intercompany Transactions with any non-Debtor affiliates or subsidiaries absent further order of the Court.

20. All postpetition payments made on account of an Intercompany Transaction authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which shall be subject and junior to claims, including adequate protection claims, granted in connection with any Court order authorizing the use of cash collateral.

21. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

22. The Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each debtor, regardless of which entity pays those disbursements.

23. The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

24. Notwithstanding anything to the contrary in this Final Order, to the extent the Debtors sell any goods received by the Debtors on a consignment basis (whether pre- or post-petition and only to the extent properly perfected) from IG Design Group Americas, Inc. and its affiliates, including Simplicity Creative Corp. and The McCall Pattern Company, Inc. (collectively, "DGA"), and/or West Broadway Distribution Services, LLC ("WBDS"), the Debtors shall continue to perform their obligations under the applicable agreements with DGA and/or WBDS governing the goods described in this paragraph, including, but not limited to, the full and timely daily reporting of Debtor's Point-Of-Sale activity and gross revenue with respect to the sale of such consignment goods on the immediately preceding day, in the same manner and to the same extent that Debtors provided DGA and/or WBDS with the information prior to the Petition Date. Debtors shall further maintain the identifiable proceeds from the sale of such consignment goods so as to be readily identifiable as proceeds of the sale of goods from the applicable agreements with DGA and/or WBDS.

25. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief (including any payment made in accordance with this Final Order), nothing in this Final Order is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors

under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

26. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

27. Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder shall be subject to the "Approved Budget" as defined in the orders of the Court approving any use of cash collateral in these chapter 11 cases.

28. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

30. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

31. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Dated: February 10th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**