## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date: To Be Determined** |
|  | ) | **Obj Deadline: To Be Determined** |

## MOTION OF DEBTORS
## FOR ENTRY OF AN ORDER (I)
## AUTHORIZING AND APPROVING THE
## CONDUCT OF STORE CLOSING SALES, WITH SUCH
## SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS,
## AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

### Preliminary Statement

1.    The Debtors commenced these chapter 11 cases while undergoing a strategic marketing process for the sale of all or substantially all of their assets with a proposed "stalking horse" agency agreement with Gordon Brothers Retail Partners, LLC ("GBRP") for the right to liquidate all of the Debtors' assets (the "Stalking Horse Bid"). In support of that process, the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Debtors sought and received relief in these chapter 11 cases to continue operating as a going concern and without material reduction in store count. As the sale process progressed, and prospective bidders continued to conduct diligence and refine their potential bids, the Debtors and their advisors were able to identify a subset of underperforming stores that are unlikely to be considered or included in any going concern bid. Indeed, no parties involved in the Debtors' marketing process have expressed an interest in acquiring this subset of stores. Given the expense of operating each of the Debtors' retail stores, the Debtors believe it is in the best interest of the Debtors' estate to immediately commence Store Closing Sales at the subset of underperforming stores. Doing so will reduce the administrative costs of the Debtors' ordinary course operations, expedite the liquidation of ABL Priority Collateral located at such stores, and start the process of reducing the Company's store footprint.

### Relief Requested

2.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing and approving the initiation of store closing or similar themed sales at the stores identified on Schedule 1 to **Exhibit A** (the "Store Closings" and, collectively, the "Initial Closing Stores"); (b) authorizing the Debtors to conduct Store Closings at additional stores (the "Additional Closing Stores" if any, and together with the Initial Closing Stores, the "Closing Stores") at a later date or dates pursuant to the procedures set forth herein, with all such sales to be free and clear of all liens, claims, and encumbrances (the "Store Closing Sales"), in accordance with the terms of the store closing procedures (the "Store Closing

Procedures"), attached as <u>Schedule 2</u> to **<u>Exhibit A</u>**; (c) approving modifications to the Gift Card Program and Refund and Exchange Policy; and (d) granting related relief.

<u>**Jurisdiction and Venue**</u>

3.    The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The statutory bases for the relief requested herein are sections 105, 363, 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 6004-1 and 9013-1.

<u>**Background**</u>

6.    JOANN  Inc.,  together  with  its  Debtor  and  non-Debtor  affiliates (collectively, "<u>JOANN</u>" or the "<u>Company</u>") is a leading national retailer of sewing, arts and crafts, and select home décor products. Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers. For over 80 years, JOANN has

fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

7.     On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 16, 2025, the Court entered an order [Docket No. 103] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 198] ("the Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## I.     The Store Closings.

8.     The Debtors commenced a prepetition marketing process for the sale of all of the Debtors' assets through one or multiple transactions, and have continued the marketing process during these chapter 11 cases.  Based on the status of the marketing process, as well as the Debtors' own assessment of its operations, the Debtors, with the assistance of their advisors, have developed a store closure plan centered on value maximization and an asset disposition strategy based on proceeds realizable through the sale of certain owned inventory ("Inventory") and store fixtures, furniture, and equipment (collectively, "FF&E" and together with the Inventory, "Store Closing Assets").

9.      After the completion of each Store Closing Sale, the Debtors will vacate the Closing Store location and address the applicable leases by assuming, assuming and assigning, rejecting, or transferring each lease, as deemed appropriate by the Debtors in their business judgment.[3]

10.     The Debtors determined in their business judgment to extend the sale process on the timeline set forth in the Bidding Procedures Motion[4] filed on the first day of these chapter 11 cases but, in order to preserve value for all stakeholders and protect the Debtors' administrative solvency, the Debtors must begin their rightsizing efforts as soon as possible, and preferably promptly following the February 14, 2025 hearing.  The Debtors expect to proceed with the initial Store Closings as soon as practicable after the entry of the Order.  Furthermore, in light of the Debtors' ongoing analysis, the Debtors request authority to conduct additional Store Closings at Additional Closing Stores identified at a later date or dates, pursuant to the Store Closing Procedures.

## II.     The Store Closing Procedures.

11.     To maximize the value of the Store Closing Assets and effectuate the Store Closings, the Debtors seek approval of streamlined procedures to sell the Store Closing Assets, in each case free and clear of liens, claims, and encumbrances with proceeds thereof distributed in accordance with the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying the Automatic*

---

[3]     This Motion seeks independent relief and does not request authorization to reject, assume, or assume and assign any executory contract or unexpired lease of the Debtors.

[4]     *See Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 17] (the "Bidding Procedures Motion").

*Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 6] (the "<u>Cash Collateral Order</u>").  As set forth below, the proposed Store Closing Procedures are substantially similar to store closing procedures approved in retail bankruptcies around the United States.  The Store Closing Procedures allow the Debtors to provide comfort to newspapers and other advertising media in which the Store Closing Sales may be advertised that the Debtors are conducting the Store Closing Sales in compliance with applicable law and with the Court's approval.  The Store Closing Procedures anticipate that the Store Closing Sales will be conducted at the Closing Stores during normal hours of operation, and that advertisements for the Store Closing Sales will conform with the advertising requirements of any shopping center in which the Closing Store may be located.  During the Store Closing Sales, conspicuous signs indicating that "all sales are final" shall be posted in cash register areas of each Closing Store.  At the conclusion of each Store Closing Sale, the Debtors shall vacate the applicable Closing Store while retaining the right to abandon any FF&E not sold in the Store Closing Sales, and the landlord of the Closing Store will have reasonable access to the applicable Closing Store's premises as set forth in the applicable lease.

12.    The Debtors have determined, in the exercise of their reasonable business judgment and in consultation with their advisors and other stakeholders, that the Store Closing Procedures will provide the best and most efficient means of selling the Store Closing Assets in order to maximize their value to the estates.  Further, the Store Closing Procedures will enable the Debtors to increase the efficiency of the Debtor-led efforts to liquidate a subset of underperforming stores.

**III.    Liquidation Sale Laws and Dispute Resolution Procedures.**

13.    Certain states in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including, without limitation, state, provincial, and local laws, statutes, rules, regulations,

and ordinances (collectively, the "<u>Liquidation Sale Laws</u>").  The Liquidation Sale Laws may establish licensing, permitting or bonding requirements, waiting periods, time limits, bulk sale restrictions, and augmentation limitations that would otherwise apply to the Store Closing Sales. Such requirements hamper the Debtors' ability to maximize value in selling their inventory. Subject to the Court's approval, the Debtors intend to conduct the Store Closing Sales in accordance with the Store Closing Procedures, and to the extent such guidelines conflict with the Liquidation Sale Laws, the Store Closing Procedures shall control.

14.    For the purpose of efficiently resolving any disputes between the Debtors and any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the Store Closing Procedures and the alleged applicability of any Liquidation Sale Laws, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to implement the following dispute resolution procedures (the "<u>Dispute Resolution Procedures</u>"), as set forth in the Order:

i.    Provided that the Store Closing Sales are conducted in accordance with the Order and the Store Closing Procedures, the Debtors and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "<u>Local</u>") and State Liquidation Laws establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Store Closing Sales and sales of the Store Closing Assets of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided*, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "<u>Safety Laws</u>"), and the Debtors shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.    Within three (3) business days after entry of the Order, the Debtors will serve by first-class mail, copies of the Order and the Store Closing Procedures on the following: (a) the Attorney General's office for each state where the Store Closing Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held; (c) the division of consumer protection for each state where the Store Closing Sales are being held; (d) the landlords, and any known counsel for the landlords, if any, for the Closing

Stores; and (e) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

iii.     With respect to any Additional Closing Stores, within three (3) business days after filing any Additional Closing Store List with the Court, the Debtors will serve by first-class mail, copies of the Order and the Store Closing Procedures on the Dispute Notice Parties.

iv.     To the extent that there is a dispute arising from or relating to the Store Closing Sales, the Order, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of the Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher Carter (christopher.carter@morganlewis.com) and Marjorie Crider (marjorie.crider@morganlewis.com); (e) counsel to the Prepetition FILO Agent, Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com); (f) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (g) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (h) the affected landlord, and their counsel, if any; and (i) the Committee, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street 17th Floor, Wilmington, DE 198999 Attn.: Bradford Sandler (bsandler@pszjlaw.com) and James E. O'Neill (joneill@pszjlaw.com) and (ii) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007,

Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com), and Connie Choe (cchoe@kelleydrye.com). If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

v.      In the event that a Dispute Resolution Motion is filed, nothing in the Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Order nor the conduct of the Debtors pursuant to the Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Store Closing Sales pursuant to the Order, as applicable, absent further order of the Bankruptcy Court. Upon the entry of the Order, the Debtors shall be authorized to conduct the Store Closing Sales pursuant to the terms of the Order and the Store Closing Procedures (as may be modified by any Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

vi.     If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

## IV.    Lease Restrictions.

15.     The Debtors also respectfully request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the Store Closings and Store Closing Sales. In certain cases, the contemplated Store Closings and Store Closing Sales may be inconsistent with certain provisions of leases, subleases, or other documents with respect to the premises in which the Debtors operate, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and

restrictions (including, without limitation, "go dark" provisions and landlord recapture rights), or other similar documents or provisions. Such restrictions would also hamper the Debtors' ability to maximize value in selling their inventory.

16. The Debtors also request that no entity, including, without limitation, utilities, landlords, shopping center managers and personnel, creditors, and all persons acting for or on their behalf shall interfere with or otherwise impede the conduct of the Store Closings, the Store Closing Sales or institute any action against the Debtors in any court (other than in the Court) or before any administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales or the advertising and promotion (including through the posting of signs) of the Store Closing Sales.

17. In other similar cases, other debtors have proposed store closing procedures with materially similar lease restrictions. Other debtors in these situations have obtained store closing orders which included a provision allowing for "side letters" between a debtor and landlord to resolve landlord concerns. *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Mar. 1, 2023); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Nov. 20, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023); *In re Pier 1 Imports, Inc.*, No. 20-20805 (KRH) (Bankr. E.D. Va. Mar. 17, 2020). The Debtors have included this provision in the Order so as to expeditiously address landlord concerns.

**V.    Gift Card Program and Refund and Exchange Policy.**

18. The Store Closing Sales and Store Closings require that the Debtors make certain modifications to their customer programs, including their gift card program (the "Gift Gard Program"), and refund and exchange policy (the "Refund and Exchange Policy") to reflect new realities. Accordingly, the Debtors intend to implement the following changes in all of their retail

stores, which will be clearly posted for customers at cash registers and online for the duration of the Store Closings:

19.    **Gift Card Program**.  Fourteen (14) days after the entry of the Order, the Debtors will no longer accept gift cards on their ecommerce platform or in their retail stores, and all gift cards will be deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards are not redeemable for cash at any time.

20.    As set forth in the Debtors' Customer Programs Motion[5] filed on the first day of these chapter 11 cases, the Debtors were initially seeking authority to honor gift cards until fourteen days following the consummation of any sale transaction.  However, given the extension of the timeline proposed in the Bidding Procedures Motion, the Debtors are now seeking authority to honor gift cards until fourteen (14) days following entry of this Order, which is substantively the same timeline proposed in the Customer Programs Motion.

21.    **Refund and Exchange Policy**.  Fourteen (14) days after the entry of the Order, the Debtors shall no longer accept refunds, returns, or exchanges of merchandise sold by the Debtors in the ordinary course of business.  Upon entry of this Order, merchandise sold in the Store Closing Sales shall be on a "final" basis and returns of such items shall not be accepted.

## VI.    Abandonment.

22.    The Debtors respectfully request that the Court authorize the abandonment of certain FF&E remaining in the Closing Stores.  The Debtors intend to sell any marketable FF&E present in the Closing Stores, with the proceeds thereof distributed in accordance with the Cash Collateral Order.  However, in certain cases, the Debtors may determine that the cost associated

---

[5]    See *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Prepetition Obligations, and (II) Granting Related Relief* [Docket No. 9] (the "Customer Programs Motion").

with holding or selling that property exceeds the proceeds that will be realized from its sale, or such property may not be marketable at all.  In such cases, retaining the property would be burdensome to the estate and the property would be of less value to the estate than the cost to maintain the property.  For the avoidance of doubt, the Debtors will not sell any personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) ("PII") as part of the Store Closings, and all personal identifying information will be removed from any FF&E prior to abandonment of same.  Accordingly, the Debtors respectfully submit that abandonment of such property is in the best interests of their estates and request that the Court authorize them to do so where they determine in their business judgment that abandonment is the appropriate course of action.

## Basis for Relief

**I.     The Debtors Have a Valid Business Justification for the Store Closing Sales.**

23.     Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147-48 (3d Cir. 1986) (adopting, implicitly, the "sound business judgment" test of *Lionel Corp*, and requiring good faith); *Comm, of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In re Delaware & Hudson Ry, Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in

the *Abbotts Dairies* decision).  When a debtor demonstrates a valid business justification for a decision, a strong presumption arises "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11, especially where the debtor is a Delaware corporation).

24.    Store closing or liquidation sales are a routine occurrence in chapter 11 cases involving retail debtors.  *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (authorizing procedures for store closing sales); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del Nov. 14, 2019) (same); *In re Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. August 14, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).

25.    Sufficient business justification exists to approve the proposed Store Closing Sales under section 363(b)(1).  The Debtors, with the assistance of their advisors, have determined that the Store Closing Sales represent the best alternative to maximize recoveries to the Debtors' estates with respect to the Store Closing Assets while optimizing their fleet of stores.  No parties involved in the Debtors' marketing process have expressed an interest in keeping the Closing Stores operational.  Meaningful amounts of Inventory, in the aggregate, will be monetized most efficiently and quickly through an orderly process conducted in consultation with their advisors.  Further, delay in commencing the Store Closing Sales would diminish the recovery tied to monetization of the Store Closing Assets.  As such, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Closing Assets and the termination of

operations at the Closing Stores.  Additionally, uninterrupted and orderly Store Closing Sales will allow the Debtors to timely reject leases associated with the Closing Stores, and therefore avoid the accrual of unnecessary administrative expenses for rent and related costs.

## II.    The Court Should Approve the Store Closing Procedures.

26.    The Court may authorize the Debtors to consummate the Store Closing Sales pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

27.    As discussed herein, pursuant to section 363(b) of the Bankruptcy Code, for the purpose of conducting the Store Closings, the Debtors need only show a legitimate business justification for the proposed action.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted).

28.    In addition, the Court may authorize the Store Closings based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize any action that is essential to the continued operation of a debtor's businesses.  *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (holding a court may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("[the] 'doctrine of necessity' stands for the principle that a bankruptcy court may

allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's organization").

29.    The relief requested by this motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  The Debtors and their advisors believe that the Store Closing Procedures represent the most efficient and appropriate means of maximizing the value of the Store Closing Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

30.    Further, ample business justification exists to conduct the Store Closing Sales. Prior to the Petition Date and during the postpetition marketing process, the Debtors, with the assistance of their advisors, engaged in an extensive review of each of their stores to (a) identify underperforming stores; and (b) determine what stores may be of interest to potential bidders as a result of the Debtors' marketing process.

31.    Expedited relief also is critical.  Further delay in consummating the Store Closing Sales would diminish the recovery tied to monetization of the Store Closing Assets.  Thus, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Closing Assets and the termination of operations at the Closing Stores.  The swift and orderly commencement of the Store Closing Sales will also allow the Debtors to timely reject the applicable store leases, and therefore avoid the accrual of unnecessary administrative expenses for rent payment.  Delaying the Store Closing Sales may cause the Debtors to incur postpetition rent obligations at many of these stores.

32.    Courts in this and other districts have routinely approved store closing procedures in chapter 11 cases, and numerous courts have granted retail debtors authority to implement such

procedures. *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (authorizing the debtors, pursuant to sections 105(a) and 363(b), to conduct store closings in accordance with court-approved store closing procedures); *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 31, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Mar. 1, 2023) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 14, 2019) (same).  The store closing procedures approved in the foregoing cases are substantially similar to the Store Closing Procedures attached hereto.

### III.    The Court Should Approve the Sale of the Store Closing Assets Free and Clear of all Liens, Encumbrances, and Other Interests under section 363(f) of the Bankruptcy Code.

33.    The Debtors request approval to sell the Store Closing Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.  A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:  (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to a money satisfaction of such interest. *See* 11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) of the Bankruptcy Code is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).  Moreover, the Third Circuit has indicated that a debtor possesses broad authority to sell assets free and clear of liens. *See In re TWA Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

16

34.     The Debtors anticipate that, to the extent there are liens on the Store Closing Assets, all holders of such liens will consent to the Store Closing Sales because they provide the most effective, efficient, and time-sensitive approach to realizing proceeds for, among other things, the repayment of amounts due to such parties. Any and all liens on the Store Closing Assets sold under the Store Closing Sales would attach to the remaining net proceeds of such Store Closing Sales with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto. Moreover, all identified lienholders have received sufficient notice and have been given sufficient opportunity to object to the relief requested.

35.     Accordingly, the Debtors submit that the sale of the Store Closing Assets satisfies the statutory requirements of section 363(f) of the Bankruptcy Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other interests.

## IV.     The Court Should Waive Compliance with Applicable State Laws and Approve the Dispute Resolution Procedures.

36.     The Debtors' ability to conduct the Store Closing Sales in accordance with the Store Closing Procedures and without strict compliance with all Applicable State Laws is critical to the Store Closing Sales' success.  Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Store Closing Sales, many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales.

37.     To eliminate the time, delay, and expense associated with the administrative procedures necessary to comply with the Applicable State Laws, the Debtors propose the Store Closing Procedures as a way to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental

agencies charged with enforcing any Liquidation Sale Laws that may apply to the Store Closings. As such, the Debtors believe the Store Closing Procedures mitigate any concerns that their landlords or governmental agencies may raise with respect to the Store Closings, and therefore, the requested relief seeking the waiver of certain state and local laws and lease provisions is appropriate.

38.    There is strong support for granting the Debtors authority to not comply with the Liquidation Sale Laws, subject to the Store Closing Procedures.  *First*, it is generally accepted that many state statutes and regulations provide that, if a liquidation or bankruptcy sale is court-authorized, a company need not comply with the Liquidation Sale Laws.  *See, e.g.*, Ark. Code Ann. § 4-74-103 (exempting from the provisions of the chapter sales pursuant to any court order); Fla. Stat. Ann. 559.25(2) (same); Ga. Code Ann. § 10-1-393(b)(24)(C)(iv) (same); 815 ILCS 350/3 (same); La. Rev. Stat. Ann. § 51:43(1) (same); N.Y. Gen. Bus. Law § 584(a) (same); Or. Rev. Stat. Ann.  § 646A.100(2)(b) ("'Going out of business sale' does not include a sale conducted by a bankruptcy trustee."); Tex. Bus. & Com. Code Ann. § 17.91(3) (exempting from subchapter sales conducted pursuant to court order).  *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closings to proceed notwithstanding contrary Applicable State Laws as it is essential to the continued operation of the Debtors' business.  *Third*, this Court will be able to supervise the Store Closings because the Debtors and their assets are subject to this Court's exclusive jurisdiction.  *See* 28 U.S.C. § 1334.  Moreover, 28 U.S.C. § 959, which requires debtors to comply with state and other laws in performance of their duties, does not apply to the Store Closing Sales.  *See, e.g.*, *In re Borne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is only applicable when property is being managed or operated for the purpose of continuing operations).  As such, creditors and the public interest

are adequately protected by notice of this motion and the ongoing jurisdiction and supervision of the Court.

39.     Further, bankruptcy courts have consistently recognized, with limited exception, that federal bankruptcy law preempts state and local laws that contravene the underlying policies of the Bankruptcy Code. *See Belculfine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . .   [A] state statute . . . cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*, 112 F.3d 633 (3d Cir. 1997).

40.     Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety. *See Baker & Drake. Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure). However, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety.  *See In re Baker & Drake. Inc.*, 35 F.3d at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

41.     Under the circumstances of this case, enforcing the strict requirements of the Liquidation Sale Laws would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Debtors' ability to maximize estate assets for the benefit of creditors.  Accordingly, authorizing the Store Closing Sales without the delays and burdens associated with obtaining various state and local licenses, observing state and local

waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising and similar items is necessary and appropriate. The requested waiver is narrowly tailored to facilitate the successful consummation of Store Closing Sales. The Debtors do not seek a general waiver of all state and local requirements, but only those that apply specifically to retail liquidation sales. With the exception of the limited waivers and accommodations requested herein, the Debtors will comply with applicable state and local public health and safety laws, and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising. Finally, the Dispute Resolution Procedures provide an ordered means for resolving any disputes arising between the Debtors and any Governmental Units with respect to the applicability of any Liquidation Sale Laws, and should therefore be approved.

42. Further, courts in this district, and in other districts, have recognized that the Bankruptcy Code preempts certain state laws and have granted relief similar to that requested herein. *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (authorizing debtors to conduct store closing sales under the terms of the order and finding that "no further approval, license, or permit of any Governmental Unit shall be required"); *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 31, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Mar. 1, 2023) (same); *In re Olympia Sports Acquisitions, LLC*, No. 22-10853 (MFW) (Bankr. D. Del. Oct. 6, 2022) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del Nov. 14, 2019) (same); *In re Z Gallerie*, *LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).

**V.    The Court Should Waive Compliance with Restrictions in the Debtors' Leases.**

43. Certain of the Debtors' leases governing the premises of the Closing Stores may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing,

liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *In re Ames Dep't Stores*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that if a conflict existed between a restrictive covenant prohibiting a liquidation sale and "a debtor-in-possession's duty to maximize assets for the estate, the latter would certainly take precedent upon the filing of a bankruptcy petition"); *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store.); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (allowing a retail company's liquidation sale despite a restrictive covenant to the contrary where the sale did not conflict the purpose of the covenant).

44.    Courts in this district and others have authorized waivers of compliance with restrictive lease provisions affecting store liquidation sales in chapter 11 cases. *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (ordering that store closing sales be conducted without the further need for compliance with, among other things, lease provisions); *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 31, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Mar. 1, 2023) (same); *In re Olympia Sports Acquisitions, LLC*, No. 22-10853 (MFW) (Bankr. D. Del.

Oct. 6, 2022) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del Nov. 14, 2019) (same); In re Z Gallerie, LLC, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).

45.    Thus, to the extent that such provisions or restrictions exist in any of the leases for the Closing Stores, the Debtors request that the Court authorize the Debtors to conduct any sales without reference to any such restrictive provisions or interference by any landlords or other persons affected, directly or indirectly, by the Store Closing Sales.

**VI.    The Court Should Approve the Abandonment of Certain Property in Connection with any Store Closings.**

46.    After notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim").

47.    The Debtors are seeking to sell all FF&E remaining in the Closing Stores. However, the Debtors may determine that the costs associated with holding or selling certain property or FF&E exceeds the proceeds that will be realized upon its sale, or that such property is not sellable at all. In such event, the benefit to the estates would be outweighed by its burden to retain such property.

48.    To maximize the value of the Debtors' assets and to minimize the costs to the estates, the Debtors respectfully request authority to abandon any of their remaining FF&E or other property located at any of the Closing Stores without incurring liability to any person or entity. The Debtors further request that the landlord of each Closing Store with any abandoned FF&E or other property be authorized to dispose of such property without liability to any third parties.

49.    Notwithstanding the foregoing, the Debtors will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) in any of the Debtors' hardware, software, computers or cash registers or similar equipment that are to be sold or abandoned.

**VII.    The Court Should Find That Any Sale of the Store Closing Assets Does Not Require the Appointment of a Consumer Privacy Ombudsman.**

50.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or release personally identifiable information about individuals unless such sale is consistent with its policies or upon appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code.  The Debtors will not be selling or releasing PII in the course of the Store Closing Sales.  Therefore, appointment of a consumer privacy ombudsman is unnecessary.

**VIII.    The Court Should Approve the Procedures Relating to Additional Closing Stores.**

51.    The Debtors request that the Store Closing Procedures and the Order apply to Store Closings of any Additional Closing Stores.  In order to provide landlords and other parties in interest with information regarding the ultimate disposition of the Closing Stores, to the extent that the Debtors seek to conduct Store Closings (and related Store Closing Sales) at any Additional Closing Store, the Debtors will file a list of such Additional Closing Stores with the Court (the "Additional Closing Store List"), and serve a notice of their intent to conduct the applicable Store Closing Sales at the Additional Closing Stores on the Dispute Notice Parties, including applicable landlords (the "Additional Closing Store Landlords"), and any other interested parties by email (to the extent available to the Debtors) or first class mail within three (3) business days

of filing the Additional Closing Store List or as soon as reasonably practicable thereafter. With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, the Debtors will mail such notice to the notice address set forth in the lease for such Additional Closing Store (or at the last known address available to the Debtors).

52.     The Debtors propose that the Additional Closing Store Landlords (each of whom will have already been served with this motion and Order and any interested parties have seven (7) days after service of the applicable Additional Closing Store List to object to the application of the Order to their Closing Stores. If no timely objections are filed with respect to the application of the Order to an Additional Closing Store, then the Debtors should be authorized, pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code to proceed with conducting the Store Closing and Store Closing Sales at the Additional Closing Store in accordance with the Order and the Store Closing Procedures. If any objections are filed with respect to the application of the Order to an Additional Closing Store, and such objections are not resolved, the objections and the application of the Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary so that the Debtors can move promptly to maximize value and minimize expenses for the benefit of their creditors and stakeholders.

## IX.     The Proposed Modifications to the Debtors' Gift Card Program and Refund and Exchange Policy are Appropriate.

53.     The Court may authorize payment of prepetition claims, such as gift card obligations and the processing of refunds and exchanges of merchandise, in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title." This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow for modifications of customer programs not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging that the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre petition obligation when essential to the continue operation of the debtor."); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 241 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of prepetition claims" under the doctrine of necessity).

54.     Accordingly, the Court has authority to authorize the Debtors to continue and modify the Gift Card Program and Refund and Exchange Policy in the ordinary course of business, and pay prepetition claims arising thereunder, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. The Store Closing Sales and Store Closings necessitate that such programs must conclude to provide finality and an efficient closing period. The grace period between entry of the Order and the date after which the Debtors will no longer accept gift cards at the Closing Stores or accept refunds, returns, or exchanges of merchandise affords customers ample notice and opportunity to spend any remaining balances. The Debtors submit that the notice provided through this motion is adequate and proper under the circumstances. Similar relief has been granted in recent retail bankruptcy cases. *See e.g.*, *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D.

Del. May 15, 2024) (authorizing debtors to no longer accept gift cards after 30 days from the start

of store closing sales); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del.

July 28, 2020) (same); *In re GNC Holdings, Inc.*, No. 20-11662 (KBO) (Bankr. D. Del. July, 21,

2020) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 14,

2019) (authorizing debtors to no longer accept gift cards after 30 days); *In re Bed Bath & Beyond

Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 25, 2023) (authorizing debtors to no longer accept

gift cards after 14 days).

### Reservation of Rights

55.     Notwithstanding anything to the contrary herein, nothing contained in this motion

or any actions taken pursuant to any order granting the relief requested by this motion (including

any payment made in accordance with any such order), is intended as or shall be construed or

deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any

particular claim against the Debtors under the Bankruptcy Code or other applicable

non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(d) an implication, admission, or finding that any particular claim is an administrative expense

claim, other priority claim, or otherwise of a type specified or defined in this motion or any order

granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or

reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an

admission as to the validity, priority, enforceability, or perfection of any lien on, security interest

in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of the

Debtors' or any other party in interest's claims, causes of action, or other rights under the

Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any

payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors'

or any other party in interest's rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

56.     To implement the foregoing successfully, the Debtors seek a waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the

use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

### Notice

57.     The Debtors will provide notice of this motion to the following parties or their

respective counsel:  (a) the U.S. Trustee; (b) the Committee; (c) counsel to the Prepetition Term

Loan Agent; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition FILO Agent;

(f) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest

unsecured claims; (g) the United States Attorney for the District of Delaware; (h) the Internal

Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business;

(j) the landlords for the Closing Stores; and (k) any party that is entitled to notice pursuant to

Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be given.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting other such relief as the Court deems appropriate under the circumstances.

Dated: February 12, 2025
Wilmington, Delaware

/s/ Patrick J. Reilley

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:    (302) 652-3131
Facsimile:    (302) 652-3117
Email:    preilley@coleschotz.com
          snewman@coleschotz.com
          mfitzpatrick@coleschotz.com
          jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
          aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    anup.sathy@kirkland.com
          jeff.michalik@kirkland.com
          lindsey.blumenthal@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*