## <u>Exhibit A</u>

**Revised Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Re:  Docket No. 17** |

**ORDER (I) APPROVING BIDDING
PROCEDURES, (II) SCHEDULING CERTAIN DATES AND DEADLINES
WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) APPROVING THE STALKING HORSE AGREEMENT,
(V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES, (VI) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES,
(VII) APPROVING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, (b) approving the terms of the Stalking Horse Agreement attached as **Exhibit 2** and the Stalking Horse Bid as a Qualified Bid, (c) establishing certain related dates and deadlines, (d) approving the form and manner of notice of the Auction and the Sale Transactions, attached hereto as **Exhibit 3** (the "Sale Notice"), (e) approving the form and manner of notice of the Winning Bidder(s) if there is no auction attached hereto as **Exhibit 4(a)**, and, if there is an auction, the form and manner of notice of the Winning Bidder(s)

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

attached hereto as **Exhibit 4(b)** (collectively, the "Notice of Winning Bidder" and "**Exhibit 4**"), (f) approving the Assumption and Assignment Procedures, including the notices of potential assumption and proposed cure amounts attached hereto as **Exhibit 5** (the "Cure Notice"), and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other or further notice need or shall be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court on February 14, 2025 (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:[3]

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Jurisdiction and Venue.   The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Statutory and Legal Predicates.   The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 1075-1, 2002-1, and 9013-1.   The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

Sale Process.   The Debtors and their advisors have been engaging with a number of potential interested parties to solicit and develop the highest and otherwise best offers for the Assets.

Bidding Procedures.   The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures").   The Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value of the proceeds of one or more sales (the "Sale Transactions") of the Debtors' assets (the "Assets").   The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets.

Stalking Horse Bidder.   The Expense Reimbursement payable under the Stalking Horse Agreement shall be deemed an actual and necessary cost of preserving the Debtors' estates within

the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

Sale Notice.    The Sale Notice, substantially in the form attached hereto as **<u>Exhibit 3</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction (if any) and any Sale Transaction with respect to the Assets, including, without limitation:  (a) the date, time, and place of the Auction; (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale Transactions and entry of an order approving any Sale Transactions; and (d) notice of the proposed assumption and assignment of Contracts to the Winning Bidder(s), if any.

Assumption and Assignment Provisions.    The Debtors have articulated good and sufficient business reasons for the Court to approve the assumption and assignment procedures set forth herein (the "<u>Assumption and Assignment Procedures</u>"), which are fair, reasonable, and appropriate.    The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

Notice of Winning Bidder.    The Notice of Winning Bidder, substantially in the form attached hereto as **<u>Exhibit 4</u>**, is reasonably calculated to provide interested parties with timely and proper notice of any proposed Sale Transaction with respect to the Assets, including, without limitation:  (a) the Winning Bidder(s) for the Assets, (b) the Back-Up Bidder(s), if applicable, (c) the key terms of the proposed Sale Transaction, and (d) the date, time, and place of the Sale Hearing.

Cure Notice.    The Cure Notice, the form of which is attached hereto as **<u>Exhibit 5</u>**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice

of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein (including the Assumption and Assignment Procedures), except as expressly required herein.

Notice. Notice of the Motion, the proposed Bidding Procedures, the proposed Assignment and Assumption Procedures, and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, such that no other or further notice need or shall be required or provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Motion is GRANTED as set forth herein.

All objections to the relief granted in this order (the "Order") that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.     The Bidding Procedures**

1.     The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern the Bids and proceedings related to any sale of the Assets and the Auction (if any) in all respects. The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable, and appropriate, and are designed to maximize recoveries for the benefit of the

Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

3.      Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, in consultation with the Consultation Parties, shall have the right to, in each case with respect to any Assets being sold pursuant to the Bidding Procedures, (a) determine which Qualified Bid is the highest or otherwise best offer for the applicable Assets, (b) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

4.      Subject to this Order and the Bidding Procedures, the Debtors shall have the right, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, in consultation with the Consultation Parties, to modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and the Auction process, (c) provide reasonable accommodations to the Stalking Horse Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the

value of the Assets, as applicable; *provided* that such extensions, waivers, new rules and procedures, accommodations, and modifications (except as are consented to or otherwise approved or permitted in accordance with the Bidding Procedures) (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Bankruptcy Code, or any order of the Court and (ii) are as promptly as practicable communicated to each Qualified Bidder or at the Auction (if any); *provided further*, that notwithstanding anything herein to the contrary, any such extensions, waivers, new rules and procedures, accommodations, and modifications pursuant to this paragraph 4 shall not, in any way or manner, abrogate, limit, or impair any party's right to Credit Bid.

5.      If the Debtors, in consultation with the Consultation Parties, determine not to conduct an Auction for the Assets, then the Debtors shall file a notice with the Court of such determination within one (1) calendar day of making such determination.

6.      The Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and the Sale Transactions, including evaluation of any and all Bids, scheduling and operation of the Auction (if applicable), and selection of a Winning Bid, as well as any modifications of the Bidding Procedures, subject to and in accordance with the Bidding Procedures; *provided* that, the Debtors shall not consult with a Consultation Party regarding the evaluation of Bids or the selection of a Winning Bid if such Consultation Party has submitted a competing Bid, unless and until the Consultation Party unequivocally revokes in writing its Bid and waives its right to further bid; *provided*, *further*, that immediately upon any Consultation Party's secured debt (as applicable) being indefeasibly paid in full in cash (and, with respect to the Prepetition ABL/FILO Obligations, being "Paid in Full" as defined in the Cash Collateral Order),

such Consultation Party shall immediately no longer be a Consultation Party under the Bidding Procedures.

7.     Except for the Expense Reimbursement provided to the Stalking Horse Bidder, no person or entity participating in the Debtors' sale process under the Bidding Procedures shall be entitled to any expense reimbursement, break-up fees, "topping" fees, termination fees, or other fees, payments, or reimbursements whatsoever in connection with any Bid, preparation thereof, or participation at the Auction (if any) or generally under the Bidding Procedures; and, by submitting a Bid, such person or entity shall be deemed to have forever waived its right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee(s), whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

8.     Any deposit provided by the Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures or the Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

**B.     The Stalking Horse Agreement and Expense Reimbursement.**

9.     The Debtors are authorized to enter into the Stalking Horse Agreement with Gordon Brothers Retail Partners, LLC, an affiliate of the Prepetition FILO Agent ("Gordon Brothers"), for the purchase and sale of the Assets attached as **Exhibit 2**, and the terms of the Stalking Horse Agreement are hereby approved, subject to this Order; *provided, however*, that, in accordance with the Bidding Procedures, the rights of all parties in interest to object to (a) the terms and provisions of the Stalking Horse Agreement, and (b) any sale of the Assets or Sale Transaction involving Gordon Brothers (including, for the avoidance of doubt, the sale of any causes of action, including tort claims) are fully preserved.  Gordon Brothers shall be deemed the Stalking Horse Bidder and

a Qualified Bidder, and Gordon Brothers' Bid contemplated by the Stalking Horse Agreement shall be deemed a Qualified Bid and, for avoidance of doubt, need not comply with each Bid Requirement.

10.    The Expense Reimbursement for the Stalking Horse Bidder is approved in its entirety, and the amount of such Expense Reimbursement shall be an allowed administrative expense claim under section 503(b) of the Bankruptcy Code.  The Debtors are authorized and directed to pay any amounts that may become due to the Stalking Horse Bidder on account of the Expense Reimbursement on the terms set forth in the Stalking Horse Agreement.  For the avoidance of doubt, no other Qualified Bidder for the Assets shall be entitled to any form of expense reimbursement.

**C.    Important Dates and Deadlines.**

11.    The following dates and deadlines are hereby approved:

| Date and Time (all times in prevailing Eastern Time) | Event or Deadline |
|---|---|
| February 18, 2025, at 5:00 p.m. | Bid Deadline |
| February 19, 2025 | Notice of Winning Bidder and Cancellation of Auction (if no Auction) |
| February 20, 2025 | Sale Objection Deadline to the Stalking Horse Bid |
| February 21, 2025, at 10:00 a.m. | Auction (if any) |
| February 21, 2025, at 10:00 a.m. (subject to Court availability) | Sale Hearing (if no Auction) |
| The earlier of five (5) hours after the Auction is completed or 12:00 p.m. the calendar day after the Auction is completed. | Notice of Winning Bidder(s) (if there is an Auction) |
| February 22, 2025 | Serve Cure Notice, if applicable |
| February 24, 2025, at 5:00 p.m. | Sale Objection Deadline for Winning Bid(s) (if there is an Auction) |
| February 26, 2025, at 10:00 a.m. (subject to Court availability) | Sale Hearing (if there is an Auction) |

12.     The deadline by which Bids for any Assets, as applicable, must be ___**actually received**___ by the Debtors and their advisors (as set forth in the Bidding Procedures) is **February 18, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

13.     Each Qualified Bidder participating in the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to any bidding (including preparing or submitting its Bid(s)) or the Sale Transactions, as set forth in the Bidding Procedures; and the Auction, if any, shall be transcribed or otherwise recorded.

14.     The Debtors shall file with the Court the Notice of Winning Bidder, identifying the identity of the Winning Bidder(s) (as applicable), the amount of the Winning Bid(s) (as applicable), and, if the Winning Bidder (as applicable) is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash, by:  **February 19, 2025** if there is not an Auction, and by the earlier of five (5) hours after the Auction is completed, or 12:00 p.m. (prevailing Eastern Time) the calendar day after the Auction is completed**,** if there is an Auction.  If the Winning Bidder is a special purpose entity, the notice shall also identify the entity or entities that are its primary equity holders, or otherwise control, the special purpose entity.

15.     Objections to the proposed order approving any Winning Bid(s) (and/or designation of a Back-Up Bid(s), as applicable) (the "Sale Order," and such objections, "Sale Objections") must be made on or before:  **February 20, 2025, at 5:00 p.m. (prevailing Eastern Time)** to the Stalking Horse Bid, or **February 24, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") if there is an Auction, and the Sale Order shall be in form and substance acceptable to the Prepetition ABL Agent and the Prepetition FILO Agent; *provided*, *however*, to the extent any Winning Bid(s) is, in part or in whole, the result of a Credit Bid, any order approving the sale of the relevant assets pursuant to such Credit Bid shall additionally be in form and

substance acceptable to such credit bidder whose Credit Bid is deemed the Winning Bid.  All Sale

Objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy

Rules and the Local Rules; (c) state with particularity the legal and factual basis for the Sale

Objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be

***actually received*** by the following parties (the "Notice Parties") no later than the Sale

Objection Deadline:

| Proposed Co-Counsel to the Debtors | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Aparna Yenamandra, P.C.<br>(aparna.yenamandra@kirkland.com)<br><br>-and-<br><br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Jeffrey Michalik (jeff.michalik@kirkland.com)<br>Lindsey Blumenthal<br>(lindsey.blumenthal@kirkland.com) | Cole Schotz P.C.<br>500 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801,<br>Patrick J. Reilley (preilley@coleschotz.com)<br>Stacy L. Newman (snewman@coleschotz.com)<br>Michael E. Fitzpatrick<br>(mfitzpatrick@coleschotz.com)<br>Jack M. Dougherty (jdougherty@coleschotz.com) |
| **Proposed Investment Banker to the Debtors** | **The Prepetition Term Loan Agent and Counsel Thereto** |
| Centerview Partners, LLC<br>31 West 52nd Street, 22nd Floor<br>New York, New York 10019<br>Karn Chopra (kchopra@centerview.com)<br>Ryan Kielty (rkielty@centerview.com)<br>Daniel Bendetson (dbendetson@centerview.com) | ArentFox Schiff LLP<br>1301 Avenue of the Americas, 42nd Floor<br>New York, New York 10019<br>Jeffrey Gleit (jeffrey.gleit@afslaw.com)<br>Jonathan Bagg (jonathan.bagg@afslaw.com)<br>Matthew Bentley (matthew.bentley@afslaw.com) |
| **The Prepetition ABL Agent and Counsel Thereto** | **The Prepetition FILO Agent and Counsel Thereto** |
| Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts 02110<br>Marjorie Crider (marjorie.crider@morganlewis.com)<br>Christopher L. Carter<br>(christopher.carter@morganlewis.com)<br><br>- and -<br><br>Reed Smith LLP<br>1201 North Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>Kurt F. Gwynne (kgwynne@reedsmith.com)<br>Jason D. Angelo (jangelo@reedsmith.com) | Choate, Hall & Stewart LLP<br>2 International Place<br>Boston, Massachusetts 02110<br>John F. Ventola (jventola@choate.com)<br>Jonathan D. Marshall (jmarshall@choate.com)<br><br>- and -<br><br>DLA Piper LLP (US)<br>1201 N Market St. Suite 2100<br>Wilmington, Delaware 19801<br>Stuart Brown (stuart.brown@us.dlapiper.com) |

| Office of the United States Trustee (Region 3) | Proposed Counsel to the Official Committee of Unsecured Creditors |
|---|---|
| The Office of the United States Trustee<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Malcolm M. Bates (malcolm.m.bates@usdoj.gov) | Kelley Drye & Warren LLP<br>3 World Trade Center<br>New York, New York 10007<br>Jason R. Adams (jadams@kelleydrye.com)<br>Eric R. Wilson (ewilson@kelleydrye.com)<br>Maeghan J. McLoughlin<br>(mmcloughlin@kelleydrye.com)<br><br>- and -<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 N. Market Street<br>Suite 1700<br>Wilmington, Delaware 19801<br>Brad Sandler (bsanlder@pszjlaw.com)<br>James O'Neill (joneill@pszjlaw.com) |
| **The Prepetition Term Loan Lender Ad Hoc Group and Counsel Thereto** | |
| Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Scott Greenberg (SGreenberg@gibsondunn.com)<br>Josh Brody (JBrody@gibsondunn.com)<br>Kevin Liang (KLiang@gibsondunn.com)<br><br>-and-<br><br>Glenn Agre Bergman & Fuentes LLP<br>1185 Avenue of the Americas, 22nd Floor<br>New York, New York 10035<br>Andrew Glenn (aglenn@glennagre.com)<br>Kurt Mayr (kmayr@glennagre.com)<br>Agustina Berro (aberro@glennagre.com)<br>Malak Doss (mdoss@glennagre.com)<br>Esther Hong (ehong@glennagre.com)<br><br>-and-<br><br>Morris, Nichols, Arsht & Tunnell  LLP<br>1201 North Market Street, 16th Floor<br>Wilmington, Delaware 19801<br>Donna Culver (dculver@morrisnichols.com)<br>Robert Dehney (rdehney@morrisnichols.com)<br>Matthew Harvey (mharvey@morrisnichols.com)<br>Brenna Dolphin (bdolphin@morrisnichols.com) | |

16.    If any party fails to timely file with the Court and serve a Sale Objection by the

Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures

regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction, including the transfer of the applicable Asset(s) to the applicable Winning Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to the Sale Transaction for purposes of section 363(f) of the Bankruptcy Code.

17.     For the avoidance of doubt, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition FILO Agent, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, and the Prepetition Term Loan Agent fully reserve all of their rights with respect to a Sale Objection, the Sale Transaction, and the Sale Order, including, without limitation, with respect to the allocation of the sale proceeds and the distribution of such sale proceeds for any Sale Transaction that involves the sale of both ABL Priority Collateral and Term Loan Priority Collateral pursuant to the terms of the Prepetition Credit Documents.

18.     The Court will hold a hearing to consider approval of the Sale Transaction(s) on **February 21, 2025 at 10:00 a.m. (prevailing Eastern Time)**, subject to Court availability if there is not an Auction, and **February 26, 2025 at 10:00 a.m. (prevailing Eastern Time)**, subject to Court availability if there is an Auction (the "Sale Hearing").  The Sale Hearing may be adjourned in accordance with the Bidding Procedures by announcement in open court or on the Court's calendar without any further notice required.  In the event counterparties to Assigned Contracts (as defined below) raise objections or may raise objections to the proposed assumption, assumption and assignment, cure, adequate assurance in connection with a Sale Transaction or Winning Bid that are not due before or resolved at or prior to the Sale Hearing, the Sale Transaction may be approved at the Sale Hearing; *provided* that such objection shall be set for a later hearing, the date of which

shall be determined at the Sale Hearing or such later date, and such Assigned Contract shall not be assumed, assigned, or otherwise treated under the Sale Transaction unless and until such objection is overruled or otherwise resolved.

### E.    Credit Bidding

19.    Subject to the terms of the Cash Collateral Order, including with respect to any Challenge, any bidder holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); *provided*, that such Credit Bid complies with the terms of the Bidding Procedures and (to the extent applicable) the Prepetition Credit Documents.    Any Credit Bid that complies with the applicable terms of the Bidding Procedures shall be a Qualified Bid without requiring a good faith deposit, and the applicable Prepetition ABL Lenders, Prepetition ABL Agent, Prepetition FILO Lenders, Prepetition FILO Agent, Prepetition Term Loan Agent, or Prepetition Term Loan Lenders shall (subject to the Prepetition Credit Documents) be deemed a Qualified Bidder for purposes of any such Credit Bid.

### F.    Notice of Sale Transactions

20.    The Sale Notice, substantially in the form attached to this Order as **Exhibit 3**, is approved with respect to the Auction which may be held under the Bidding Procedures.    Within one (1) business day of the entry of this Order, the Debtors shall cause the Sale Notice to be filed and served (including by e-mail, where applicable) upon parties in interest and, along with the Motion, this Order, and all of this Order's exhibits and schedules, posted on the Debtors' restructuring webpage at https://cases.ra.kroll.com/Joann2025 (or such other applicable URL) (the "Case Webpage").    Any changes in location, date, and time of the auction shall be filed with the Court and provided on the Case Webpage.

21.     Within one (1) business day after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Sale Notice for one day in *The New York Times* (national edition) and post it onto the Case Webpage.  Such notice shall be deemed sufficient and proper notice of the Bidding Procedures, the Sale Transactions, and the Auction (if any) with respect to known interested parties and no other or further notice shall be required.

22.     By the earlier of five (5) hours after the Auction (if any) is completed or 12:00 p.m. (prevailing Eastern Time) the calendar day after the Auction is completed, and in accordance with the Bidding Procedures, the Debtors will file on the docket the Notice of Winning Bidder substantially in the form attached to this Order as **Exhibit 3**.

**G.     Assumption and Assignment Procedures.**

23.     The Assumption and Assignment Procedures below are hereby approved in all respects and shall be the procedures by which the Debtors will notify any counterparties (the "Contract Counterparties") to executory contracts and unexpired leases with the Debtors (the "Contracts") of proposed cure amounts in the event the Debtors determine to assume and assign such Contracts in connection with the Sale Transactions.  Within two (2) business days of the Auction, if any, for any Sale Transaction, to the extent the Debtors seek to assume and assign an executory contract and/or unexpired lease, the Debtors will provide via first class mail and/or email (to the extent email is reasonably known) information of all proposed forms of adequate assurance of future performance they have received from the Stalking Horse Bidder or each Winning Bidder and Back-up Bidder, as applicable, to Contract Counterparties and their counsel, if known.  Requests by contract or lease counterparties to receive adequate assurance information via e-mail in addition to, or in lieu of, first class mail, may be made to Debtors' counsel at:

aparna.yenamandra@kirkland.com,          jeff.michalik@kirkland.com,          and

lindsey.blumenthal@kirkland.com.

24.     Nothing in this Order shall be deemed to limit the Debtors' or the Winning Bidder's ability to negotiate assumption and/or assumption and assignment of amended or modified Contracts with Contract Counterparties on a consensual basis.

a.  **Cure Notice**.  No later than fourteen (14) calendar days prior to any Cure Objection deadline, the Debtors shall file with the Court and serve via first class mail, electronic mail, (if the recipient has consented, in writing, to receiving electronic notices), or overnight delivery, the Cure Notices, attached hereto as **Exhibit 5**, on the Contract Counterparties at the notice address in the applicable lease or contract, and their counsel of record, if know, and the Consultation Parties, and post the Cure Notice to the Case Webpage.

b.  **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Contracts that may be assumed or assumed and assigned in connection with the Sale (the "Assigned Contracts," and each individually, an "Assigned Contract"); *provided* that any Assigned Contracts which are unexpired leases shall identify the address of the leased premises and any corresponding store number, as applicable; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

c.  **Cure Payments**.  The payment of the applicable Cure Costs and cure of any non-monetary defaults by the Debtors and/or the Winning Bidder, as applicable shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Assigned Contract by the Debtors and the assignment of such Assigned Contract to the Winning Bidder, constitute adequate assurance of future performance thereof.

d.  **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases;

(iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; *provided* that the Debtors may modify any Cure Objection deadline by filing a notice of such modification on the Court's docket.

e.    **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Sale Order.

f.    **Dispute Resolution**.  Any Cure Objection to the assumption or assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearings shall be heard at the next regularly scheduled omnibus hearing in these cases, or such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined by the Court after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Winning Bidder may determine that such Contract should not be assumed and assigned, in which case the Winning Bidder(s) will not be responsible for any Cure Costs in respect of such contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

g.    **Supplemental Cure Notice**.  If the Debtors discover Contracts inadvertently omitted from the Cure Notice or a Winning Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the sale, the Debtors may, after consultation with such Winning Bidder, at any time in accordance with the Debtors' rights under the Bankruptcy Code, including any extension pursuant to section 365(d)(4) of the Bankruptcy Code as approved by this Court, supplement the Cure Notice with previously omitted Contracts, or modify a previously filed Cure Notice, including by modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

h.    **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any, modified by the Supplemental Cure Notice.    All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well

17

as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

i. **Dispute Resolution of Supplemental Cure Objection**. If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice. Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

**H.    Miscellaneous.**

25.    All persons and entities that participate in the applicable Auction (if any) or bidding for any Assets during the sale process under the Bidding Procedures shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction (if any), or any other relief requested in the Motion or granted in this Order, and (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order.

26.    This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

27.    Notwithstanding anything to the contrary set forth in this Order, whether or not that certain Pattern Supply Agreement dated as of December 15, 2023 (the "Consignment Agreement") by and between Debtors and IG Design Americas, Inc. ("DGA") and its affiliates has been rejected

pursuant to section 365 of the Bankruptcy Code, then, with respect to any and all retail store closings notices issued by Debtors prior to the entry of a Sale Order, Debtors agree to and shall (i) comply with the terms of the Consignment Agreement, including but not limited to, the "Store Closings" provisions set forth in Section 3 thereof;[4] and (ii) grant DGA, and its agents and assigns, reasonable access (including before, during, and after store business hours) to immediately remove the Consigned Goods from any and all closing retail stores.  Further, with respect to the arguments asserted in DGA's Omnibus Limited Objection [Docket No. 258] (the "Objection") that pertain to the terms of any subsequent order or orders that the Debtors may request be entered pursuant to section 363 of the Bankruptcy Code approving a sale or transfer of some or all of the Debtors' assets, including the terms of any related asset purchase agreements and/or agency agreements, DGA's Objection is hereby continued to such sale hearing without need for DGA to file and serve any further objection; *provided*, *however*, that nothing herein shall limit DGA's rights to assert further objections to any such sales noticed for hearing by the Debtors.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     To the extent that there may be any inconsistency between the terms of the Motion, the Stalking Horse Agreement, the Bid Procedures, and this Order, the terms of this Order shall govern.

30.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including any payment made in accordance with this Order), nothing in this Order is

---

[4]   Section 3 of the Consignment Agreement entitled "Store Closings" provides:  "If Customer [Debtors] determines to close a store, Customer shall notify Supplier [DGA], and Supplier may elect to: (i) have the Products on hand at such store returned to Supplier or (ii) have Customer liquidate such Products under the normal store liquidation process and discard any remaining Products on hand at a store that is closing, Supplier will pay the freight costs and will be responsible to reimburse Customer for store labor costs."

intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

31.     Any non-Debtor party to a nonresidential lease of real property retains any and all rights to (a) object the any proposed assumption and assignment of any such lease under section 365 of the Bankruptcy Code, and (b) raise any and all  facts, claims, issues, rights, remedies, and/or defenses in connection thereto.

32.     Notwithstanding anything to the contrary in this Order or the Bidding Procedures, the rights of the Prepetition ABL Agent and the Prepetition FILO Agent under the Cash Collateral Order[5] (and the Prepetition Credit Documents referenced therein) to consent to the Sale Transaction(s) (and any terms and conditions thereof) of any portion of their collateral, including, without limitation, any Assets, are expressly preserved and not waived or impaired by the Bidding Procedures or this Order.  For the avoidance of doubt, nothing in this Order or the Bidding Procedures shall amend or impair any provision of the Cash Collateral Order (including the Milestones therein) or the rights of the Prepetition ABL Agent and the Prepetition FILO Agent thereunder.

33.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

34.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

35.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

---

[5]     "Cash Collateral Order" means any interim or final order approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral, whichever is then in effect, as applicable.

36.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

37.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Exhibit 1**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

On January 15, 2025 (the "Petition Date"), JOANN Inc. and the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

Thereafter, on [●], 2025, the Court entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Assumed Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"), by which the Court approved the bidding procedures set forth herein (these "Bidding Procedures").[2]

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing and sale process (including pursuant to an Auction (as defined below), if any) for the sale or sales of some, all, or substantially all of the Debtors' assets (the "Sale Transactions").

The ability of the Debtors to undertake and consummate any Sale Transaction shall be subject to competitive bidding as set forth in these Bidding Procedures and approval of any Sale Transaction by the Court. The Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for less than all of the Assets, even if such bid is the highest or otherwise best bid for such Assets, is subject to higher or

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    Unless otherwise specified herein, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order, its respective motion filed at Docket No. 17, the Cash Collateral Order, or its respective motion, filed at Docket. No. 6.

otherwise better bids for packages of Assets that may include such Assets. Additionally, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets that are, in the aggregate, higher or otherwise better bids. The Debtors may determine in their discretion, following consultation with the Consultation Parties, whether to proceed with a Sale of any Asset pursuant to these Bidding Procedures.

## 1.  ASSETS TO BE AUCTIONED

The Debtors are seeking to sell all of their assets, or any portion thereof to the person or entity making the most value maximizing bid through the process outlined in these Bidding Procedures. These assets include, but are not limited to, the Debtors' going-concern business, unexpired leases, executory contracts, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets").

## 2.  KEY DATES AND DEADLINES

| Date and Time (all times in prevailing Eastern Time) | Event or Deadline |
|---|---|
| February 18, 2025, at 5:00 p.m. | Bid Deadline |
| February 19, 2025 | Notice of Winning Bidder and Cancellation of Auction (if no Auction) |
| February 20, 2025 | Sale Objection Deadline to the Stalking Horse Bid |
| February 21, 2025, at 10:00 a.m. | Auction (if any) |
| February 21, 2025, at 10:00 a.m. (subject to Court availability) | Sale Hearing (if no Auction) |
| The earlier of five (5) hours after the Auction is completed or 12:00 p.m. the calendar day after the Auction is completed. | Notice of Winning Bidder(s) (if there is an Auction) |
| February 22, 2025 | Serve Cure Notice, if applicable |
| February 24, 2025, at 5:00 p.m. | Sale Objection Deadline for Winning Bid(s) (if there is an Auction) |
| February 26, 2025, at 10:00 a.m. (subject to Court availability) | Sale Hearing (if there is an Auction) |

## 3.  SUBMISSIONS TO THE DEBTORS; CONSULTATION PARTIES

All submissions to the Debtors required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

3.1.  <u>Debtors</u>:  JOANN Inc., Attn.: Ann Aber, EVP, Chief Legal & HR Officer (ann.aber@joann.com).

3.2.  <u>Debtors' Proposed Counsel</u>:  (i) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com), Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com); and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com).

3.3.  <u>Debtors' Proposed Investment Banker</u>:  Centerview Partners, LLC, 31 West 52nd Street, 22nd Floor, New York, New York 10019, Attn.: Ryan Kielty (rkielty@centerview.com), Karn Chopra (kchopra@centerview.com), and Daniel Bendetson (dbendetson@centerview.com).

3.4.  <u>Prepetition ABL Agent</u>: (i) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Marjorie Crider and Christopher L. Carter (marjorie.crider@morganlewis.com and christopher.carter@morganlewis.com), and (ii) Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt F. Gwynne and Jason D. Angelo (kgwynne@reedsmith.com and jangelo@reedsmith.com).

3.5.  <u>Prepetition FILO Agent</u>: (i) Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com) and (ii) DLA Piper LLP (US) 1201 N Market St. Suite 2100, Wilmington, Delaware 19801, Stuart Brown (stuart.brown@us.dlapiper.com).

3.6.  <u>Prepetition Term Loan Agent</u>: ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn: Jeffrey Gleit (jeffrey.gleit@afslaw.com), Jonathan Bagg (jonathan.bagg@afslaw.com), and Matthew Bentley (matthew.bentley@afslaw.com).

3.7.  <u>Prepetition Term Loan Lender Ad Hoc Group</u>: (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Josh Brody (JBrody@gibsondunn.com), and Kevin Liang (KLiang@gibsondunn.com), (ii) Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, 22nd Floor, New York, New York 10035, Attn: Andrew Glenn (aglenn@glennagre.com), Kurt Mayr (kmayr@glennagre.com), Agustina Berro (aberro@glennagre.com), Malak Doss (mdoss@glennagre.com), and Esther Hong (ehong@glennagre.com), and (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor,

Wilmington, Delaware 19801, Attn: Donna Culver (dculver@morrisnichols.com), Robert Dehney (rdehney@morrisnichols.com), Matthew Harvey (mharvey@morrisnichols.com), and Brenna Dolphin (bdolphin@morrisnichols.com).

The "Consultation Parties" are (A) the Prepetition ABL Agent and the Prepetition FILO Agent, (B) the Official Committee of Unsecured Creditors (the "Committee"), (C) the Prepetition Term Loan Agent, and (D) the Prepetition Term Loan Lender Ad Hoc Group; *provided* that any Consultation Party, including any member of the Committee, who submits a Bid (as defined below), including a Credit Bid, for any Assets in connection with these Bidding Procedures, or is a participant in any active Bid with respect to any Asset(s), shall immediately no longer be a Consultation Party with respect to the evaluation and qualification of competing Bids, or with respect to seeking and/or obtaining information about other Bids, unless and until such party unequivocally revokes its Bid in writing and waives its right to continue in the bidding process or further bid, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures; *provided*, *further*, that immediately upon any Consultation Party's secured debt (as applicable) being indefeasibly paid in full in cash, such Consultation Party shall immediately no longer be a Consultation Party under these Bidding Procedures.[3]  Materials and information provided by the Debtors or their advisors to the advisors to any Consultation Party may be shared with such Consultation Party, subject in all respects to these Bidding Procedures, the Bidding Procedures Order, and the respective Confidentiality Agreement entered into by and among or otherwise agreed to between each such Consultation Party and the Debtors.

Subject to the terms herein, the Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and the Sale Transactions, including evaluation of any and all Bids, scheduling and operation of the Auction (if applicable), selection of a Winning Bid (as defined below), negotiation of the purchase agreement or agency agreement, as applicable, as well as any modifications of these Bidding Procedures.  Subject to the terms herein, the Debtors shall also provide to the Consultation Parties and their advisors regular reports concerning the sale process, including parties contacted, proposals received, and any due diligence requested by potential purchasers.

## 4.  POTENTIAL BIDDERS & ACCEPTABLE BIDDERS

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtors and each of their advisors the following documents and information (unless the Debtors, in their reasonable business judgment after consultation with the Consultation Parties, choose to waive any of the requirements set forth in this Section 4 for any Potential Bidder):

---

[3]    If any Consultation Party submits a Bid or otherwise is a participant with respect to any active Bid, the other non-bidding members of such Consultation Party shall remain Consultation Parties; *provided* that such bidding Consultation Party shall be precluded from receiving or reviewing information or documentation not otherwise available to all Acceptable Bidders, and the other non-bidding members of such Consultation Party shall not share or otherwise discuss such information with the bidding members of such Consultation Party.

4.1.   an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

4.2.   other than pursuant to a Credit Bid by a Secured Party that solely includes collateral subject to a first lien on such collateral by the Secured Party submitting the Credit Bid, sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of the targeted assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties (i.e., no financing out); and

4.3.   any other information or documentation that the Debtors reasonably request.

The Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, (subject to the terms herein) will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (as defined below) (such Potential Bidder, an "Acceptable Bidder"); *provided* that any bidder submitting a Credit Bid shall automatically be deemed an Acceptable Bidder.  The Debtors shall promptly inform the Consultation Parties of any entity that becomes an Acceptable Bidder.

The Debtors may, in their reasonable business judgment, conduct a process for the sale of unsold assets that are not included in any Winning Bid(s) (as defined below), subject to the Cash Collateral Order.[4]

## 5.   DUE DILIGENCE

The Debtors, with their advisors, have established an electronic data room (the "Data Room") that provides standard and customary diligence materials, including information to allow Acceptable Bidders to submit a Qualified Bid (as defined below).

Only Acceptable Bidders shall be eligible to receive due diligence information and access to the Data Room and to additional non-public information regarding the Debtors.  Subject to the other terms herein, the Debtors may provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request.  For all Acceptable Bidders, the due diligence period will end on the Bid Deadline.  The Debtors may, in their reasonable business judgment after consultation with the Consultation Parties, but shall have no obligation to, furnish any additional due diligence information to any person following the Bid Deadline.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale Transactions to any person except to an Acceptable Bidder or to such Acceptable Bidder's duly authorized representatives subject to the applicable Confidentiality Agreement.  The Debtors and their advisors shall coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors

---

[4]   "Cash Collateral Order" means any interim or final order approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral, whichever is then in effect, as applicable.

may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Sale Transaction; *provided*, *further*, that the foregoing proviso shall not apply to a Secured Party who submits a Credit Bid that solely includes collateral subject to a first lien on such collateral by the Secured Party submitting the Credit Bid.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who is not an Acceptable Bidder or (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (*provided* that, in case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).

The Debtors, in consultation with the Consultation Parties, also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure, including to an Acceptable Bidder whom the Debtors determine in consultation with the Consultation Parties is a competitor of the Debtors, a potential competitor of the Debtors, or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

**All due diligence requests directed to the Debtors must be directed to: Ryan Kielty (rkielty@centerview.com) and Daniel Bendetson (dbendetson@centerview.com).**

**Each Potential Bidder or Acceptable Bidder shall comply with all reasonable requests for information and due diligence access made by the Debtors, their advisors, regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction. Failure by a Potential Bidder or Acceptable Bidder to comply with reasonable requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder or Acceptable Bidder, as applicable, is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors, after consultation with the Consultation Parties, to determine that a bid made by a Qualified Bidder is not a Qualified Bid.**

**6.      BID REQUIREMENTS.**

Any proposal, solicitation, or offer to consummate a Sale Transaction (each, a "Bid") must be submitted in writing and must satisfy the following requirements (collectively, the "Bid Requirements"):

6.1. **Proposed Sale Transaction.** Each Bid must clearly propose a Sale Transaction as to the Assets. Each Bid must specify (1) which of such Assets—with as much specificity as is possible—are to be included in the proposed Sale Transaction (the "Acquired Assets"), (2) to the extent such Bid is for substantially all of the Assets, which Assets, if any, are to be excluded from the proposed Sale Transaction (the "Excluded Assets"), (3) the liabilities and obligations, including any debt and cure costs to be assumed (the "Assumed Liabilities"), and (4) as applicable, whether the Acceptable Bidder intends to operate the Debtors' business as a going concern, acquire certain Assets, or otherwise liquidate the business. For the avoidance of doubt, all Assets held by non-Debtor subsidiaries shall be presumed to be Excluded Assets.

6.2. **Purchase Price.** Each Bid must (a) clearly specify the purchase price to be paid, assuming a purchase of the applicable Assets and assumption of any Assumed Liabilities (the "Purchase Price"); (b) identify separately any cash and non-cash components (which non-cash components shall be limited only to Credit Bids and Assumed Liabilities) of the Purchase Price in United States dollars; and (c) indicate the allocation of the Purchase Price among the applicable Assets. To the extent any Bid includes ABL Priority Collateral, the Purchase Price shall exceed the Stalking Horse Bid by at least the aggregate sum of (1) the Expense Reimbursement for the Assets and (2) a cash component sufficient to satisfy the "Obligations" under the ABL/FILO Credit Agreement and the Prepetition ABL/FILO Obligations (including the cash collateralization of all obligations related to letters of credit and contingent exposure, as applicable) to be Paid in Full (each as defined in the Cash Collateral Order) on the closing of the Sale Transaction; *provided*, *however*, that the Debtors reserve the right to approve joint Bids that satisfy the foregoing conditions and are acceptable to the Prepetition ABL Agent and the Prepetition FILO Agent (and in accordance with the Prepetition Credit Documents and the Cash Collateral Order).

6.3. **Deposit.** Other than a Credit Bid by a Secured Party that solely includes collateral subject to a first lien on such collateral by the Secured Party submitting the Credit Bid, each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the applicable aggregate Purchase Price (the "Deposit"), to be held in one or more escrow accounts on terms acceptable to the Debtors and the Consultation Parties; *provided* that the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Deposit on a case-by-case basis. To the extent the Purchase Price of a Bid is increased, at any time or from time to time, whether prior to commencement of the Auction or during the Auction, the amount of the Deposit shall automatically increase accordingly (to be equal to ten percent 10% of any increased Purchased Price) and the corresponding Potential Bidder will pay into escrow the amount of such increase, as promptly as practicable, and in any event within one business day, following such increase. Without limiting the foregoing, if a Purchase Price is increased in order to make a bid into a Qualified Bid, the Debtors may, in consultation with the Consultation Parties, condition participation of the applicable Potential Bidder at the Auction on such Potential Bidder paying

7

the then full amount of the Deposit into escrow prior to commencement of the Auction or such participation. For the avoidance of doubt, a Bid that is comprised of both a Credit Bid and cash consideration does not need to include a Deposit.

6.4. **Transaction Documents.** Each Bid must be accompanied by an executed form of purchase agreement or agency agreement, which the Debtors shall make available to Acceptable Bidders via the Debtors' electronic data room pursuant to the due diligence process, with respect to the proposed Sale Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid.

6.5. **Back-Up Bidder Commitment.** Each Bid must include a written commitment by the applicable Potential Bidder to serve as a Back-Up Bidder (as defined below) in the event that such Potential Bidder's Bid is not selected as the Winning Bid; *provided* that the foregoing shall not apply to any Potential Bidder that (1) both (a) qualifies as a Secured Party (as defined below) and (b) submits a Credit Bid; or (2) is the Stalking Horse Bidder.

6.6. **Proof of Financial Ability to Perform.** Other than a Credit Bid by a Secured Party that solely includes collateral subject to a first lien on such collateral by the Secured Party submitting the Credit Bid, to the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors in consultation with the Consultation Parties, that demonstrates that the Potential Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the applicable Assets and the proposed Sale Transaction. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

6.7. **Contingencies; No Financing or Diligence Outs.** Each Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

6.8. **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid—including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the proposed Sale Transaction contemplated by such Bid—and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment

or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid. Each Bid should also include contact information for the specific person(s) and counsel whom the Debtors (and their advisors) should contact regarding such Bid.

6.9.   **Authorization.** Each Bid must contain evidence acceptable to the Debtors that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

6.10.   **Contracts and Leases.** Each Bid must identify each and every executory contract and unexpired lease to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "Assigned Contracts"). Each Bid must be accompanied by adequate assurance of future performance under all Assigned Contracts, which shall include audited and unaudited financial statements for the past two (2) years, including all supplements or amendments thereto; tax returns; bank account statements; a summary of any proposed assignee's proposed use of the premises; a summary of the proposed assignee's and any guarantor's, as applicable, retail experience and present retail operations; the business contact for any proposed assignee; and such other documentation as the Debtors may request (the "Adequate Assurance Package"). The Adequate Assurance Package should be submitted in its own compiled PDF document.

6.11.   **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that: (1) the Potential Bidder has had an opportunity to conduct due diligence regarding the Sale Transaction prior to making its offer; (2) the Potential Bidder has relied solely upon its own independent review, investigation, or inspection of any documents in making its Bid; (3) except as may be set forth in Definitive Sale Documents (as defined below) concerning such Bid, the Potential Bidder did not rely, and is not relying upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives regarding the Sale Transaction, the completeness of any information provided in connection therewith or the Auction, if any, or otherwise; and (4) the Potential Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

6.12.   **No Break-Up Fee or Reimbursement of Expenses.** Each Bid, with the exception of the Stalking Horse Bid, must expressly state and acknowledge that such Potential Bidder shall not be entitled to, and shall not seek, any transaction break-up fee, termination fee, expense reimbursement, working fee, or similar type of payment. Each Bid must expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code or the payment of any broker fees or costs in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the sale process.

6.13. **Transition Services**.  Each Bid must state or otherwise estimate the types of transition services, if any, the Potential Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Potential Bidder's Bid were selected as the Winning Bid for the applicable Assets.

6.14. **Commitment to Close.**  Each Bid must include a commitment to close as soon as practicable and state the expected date of closing of the Sale Transaction, which for the avoidance of doubt must be either on or before the date specified in Section 2 of these Bidding Procedures.

6.15. **Irrevocable Bid**.  Each Bid must contain a statement by the applicable Potential Bidder acknowledging and agreeing that such Bid and each of its provisions is binding upon the Potential Bidder and irrevocable in all respects.

6.16. **Compliance with Bidding Procedures**.  Each Bid must contain a covenant that the applicable Potential Bidder will comply in all respects with the terms of these Bidding Procedures and the Bidding Procedures Order.

6.17. **Combination Bids.**  For Bids that contemplate a purchase of multiple categories of Assets, each Bid must specify: (i) allocation of the Purchase Price across each Asset; (ii) for Bids that include unexpired leases specifically, the Purchase Price must be allocated across each individual property included in the Bid; and (iii) Bids must indicate whether the offer is on an "all or none" basis in the event that the Potential Bidder is outbid for certain Assets contemplated in the Bid.

6.18. **Initial Assets Overbid.**  Any incremental Bids that comply with the terms set forth in Section 11(ii) of these Bidding Procedures (each an "Overbid") regarding all or substantially all of the Assets must have a value to the Debtors, in the Debtors' exercise of their reasonable business judgment, after consultation with their advisors and the Consultation Parties that is at least the sum of (i) one hundred thousand United States dollars ($100,000.00) more than the value offered under the Stalking Horse Agreement *plus* (ii) the Expense Reimbursement (the "Initial Assets Overbid").

Notwithstanding anything contained in these Bidding Procedures to the contrary, the Debtors reserve the right to, in consultation with the Consultation Parties, consider any bid submitted by a landlord for the termination or assignment of one or more of such landlord's own unexpired leases (such leases, "Locations" and each such bid, a "Landlord Bid"), which may include a purchase price composed of a (i) cash component, and/or (ii) a non-cash component that represents a valid and undisputed "credit" for any unpaid amounts validly due under the lease for such Location (a "Landlord Credit").  The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, consider a Landlord Credit to be applied to reduce the cash consideration for the applicable Location.  A Landlord Bid may qualify as a Qualified Bid even if such bid does not fully comply with the Bid Requirements set forth above, as applicable,

and as may be modified pursuant to this paragraph; *provided* that the bidding landlord (A) may submit a form of lease termination agreement or assumption and assignment agreement in lieu of the requirements in section 6.4 herein, (B) shall not be required to comply with section 6.3 herein, except with respect to the cash component of any Landlord Bid, and (C) shall not be required to include in its Bid the requirements of sections 6.6, 6.8, 6.10, 6.13, and 6.18 herein.

By submitting a Bid, each Potential Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and to refrain from (A) submitting a Bid after conclusion of the Auction (if any) or (B) seeking to reopen the Auction (if any) once closed.  **The submission of a Bid shall constitute a <u>binding and irrevocable</u> offer (a) for the Winning Bidder, until consummation of the proposed Sale Transaction, (b) for the Back-Up Bidder (if any), as provided in these Bidding Procedures, including <u>Section 12</u> hereof, and (c) for any bidder other than the Winning Bidder, the Back-Up Bidder, or any Secured Party that submitted a Credit Bid, until two (2) business days after entry of the Court's order approving the Winning Bid and (if applicable) the Back-Up Bid for the applicable Assets (each, as applicable, a "<u>Sale Order</u>"), which shall be in form and substance acceptable to the Prepetition ABL Agent and the Prepetition FILO Agent, and each Bid must include a written acknowledgment and representation to such effect.**

## 7.   STALKING HORSE BIDDER.

In connection with the Stalking Horse Agreement and in recognition of the Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors are authorized and directed to provide (i) up to $500,000 to cover the Stalking Horse Bidder's reasonable out-of-pocket costs and expenses, associated with due diligence and professionals' fees and expenses associated with, among other things, negotiating, drafting, and obtaining approval of the Stalking Horse Agreement and (ii) up to $1,600,000.00 for any actual, reasonable costs incurred to acquire signage for a "going out of business" sale (the "<u>Expense Reimbursement</u>").  For the avoidance of doubt, no other Qualified Bidder for the Assets shall be entitled to any form of bid protections.

## 8.   BID DEADLINE.

Any Bid for the Assets must be transmitted via email (in .pdf or similar format) to the Debtors and their advisors (as specified in <u>Section 3</u> hereof) so as to be **actually received by such parties** on or before **February 18, 2025, by 5:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>").

The Debtors shall promptly provide the Consultation Parties copies of all Bids received by the Debtors within one (1) hour of the Bid Deadline.

## 9.   QUALIFIED BIDS & QUALIFIED BIDDERS.

A Bid is a "<u>Qualified Bid</u>" if the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, determine that such Bid (A) satisfies the Bid Requirements set forth above and (B) is reasonably likely to be consummated if selected as the Winning Bid (or Back-Up Bid, as applicable) for the applicable Assets; *provided* that the Stalking Horse Bid and any Credit Bid shall constitute and be deemed a Qualified Bid and, for the avoidance

of doubt, need not comply with each Bid Requirement.  For the avoidance of doubt, Combination Bids (including any Credit Bids) may constitute a Qualified Bid.

An Acceptable Bidder that submits a Qualified Bid is a "<u>Qualified Bidder</u>" with respect to the Assets to which such Qualified Bid relates; *provided* that the Stalking Horse Bidder shall constitute and be deemed a Qualified Bidder.  To the extent that any Prepetition ABL Agent, Prepetition ABL Lender, Prepetition FILO Agent, Prepetition FILO Lender, Prepetition Term Loan Agent, or Prepetition Term Loan Lender submits a Credit Bid in accordance with <u>Section 10</u> herein, and such Credit Bid is otherwise permitted by and in accordance with the Prepetition Credit Documents, such bid shall be a Qualified Bid, and such applicable Prepetition ABL Agent, Prepetition ABL Lender, Prepetition FILO Agent, Prepetition FILO Lender, Prepetition Term Loan Agent, or Prepetition Term Loan Lender shall be a Qualified Bidder with respect to such Bid.

As soon as reasonably practicable after the applicable Bid Deadline, the Debtors will notify each Acceptable Bidder whether such party is a Qualified Bidder and shall provide the Consultation Parties' counsel with a copy of each Qualified Bid.  If an Acceptable Bidder's Bid is determined not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit (if any) on the date that is three business days after the Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the date set for the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors following consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction (if any) as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties, reserve the right to work with (A) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the applicable Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any).  The Debtors, in consultation with the Consultation Parties, reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple Qualified Bidders shall be treated as a single Qualified Bidder and their Bid a single Qualified Bid for purposes of the Auction (if any)).

## 10.    RIGHT TO CREDIT BID.

Subject to the terms of the Cash Collateral Order, including with respect to any Challenge, the Prepetition Credit Documents (as applicable), and section 363(k) of the Bankruptcy Code, any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (a "<u>Secured Party</u>") shall be entitled to credit bid all or a portion of the face value of such Secured

Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid (a "Credit Bid"); *provided* that a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected lien in favor of such Secured Party as to such claim(s).

**11.    AUCTION.**

If the Debtors receive two or more Qualified Bids with respect to the same or overlapping Assets or group of Assets, the Debtors may, in consultation with the Consultation Parties, conduct an auction (the "Auction") to determine the Winning Bidder (or Back-Up Bidder, as applicable) with respect to such Assets.  In such event, the Debtors will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the applicable Assets, as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties (each such Qualified Bid, a "Baseline Bid") and (B) provide copies of the documents setting forth the terms of the Baseline Bid(s) to all Qualified Bidders, in each case, as soon as reasonably practicable after the Bid Deadline and in any event no later than prior to the commencement of the Auction.  The Debtors' determination of which Qualified Bid constitutes the Baseline Bid shall consider any factors the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates.

If the Debtors, in consultation with the Consultation Parties, determine that they have received no Qualified Bids other than the Stalking Horse Bid or they have received only a single Qualified Bid, then the Auction will not occur, and the Stalking Horse Bid or the Qualified Bid will be deemed to be the Winning Bid(s) for the Assets to which the Stalking Horse Bid or Qualified Bid relates.  If the Debtors make such a determination, the Debtors shall file a notice with the Court within one business day of making such determination.

If the Debtors receive two or more Qualified Bids for the same Assets, the Auction may take place on or after **February 21, 2025,** at a time to be announced by the Debtors in consultation with the Consultation Parties, via remote video and/or in person at the Debtors' election, and shall be conducted in a timely fashion according to the procedures set forth below (the "Auction Procedures").

## AUCTION PROCEDURES

**(i)**    **The Debtors Shall Conduct the Auction(s); General Provisions.**  The Debtors, with the assistance of their advisors, shall direct and preside over any Auction and shall consult with the Consultation Parties throughout the Auction process.  At the commencement of the Auction, the Debtors, in consultation with the Consultation Parties (1) may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit any successive Bid(s) and (2) shall describe the terms of the Baseline Bid.  Only incremental Bids that comply with the terms set forth in Section 11(ii) of these Bidding Procedures shall be considered Overbids.  Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors, in consultation with the Consultation Parties, shall determine in their reasonable business judgment whether an incremental Bid is an Overbid.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid (or Back-Up Bid, as applicable) (as defined below).

Only Qualified Bidders, the Debtors, the Consultation Parties and each of their respective legal and financial advisors, any creditor in these chapter 11 cases, (including members of the Committee) and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.  Except as otherwise permitted by the Debtors in consultation with the Consultation Parties, only Qualified Bidders shall be entitled to bid at the Auction.

The Debtors and the Consultation Parties have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors and the Consultation Parties believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction.

The Debtors may, subject to Section 16 of these Bidding Procedures, and with the consent of the Prepetition ABL Agent and the Prepetition FILO Agent, announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

**(ii)**    **Terms of Overbids.**  Each Overbid must comply with the following terms:

(a)    Minimum Overbid Increment.  At the commencement of the initial solicitation of Overbids, the Debtors, in consultation with the Consultation Parties, shall announce the minimum increment by which any Overbid must exceed the applicable Baseline Bid, which amount shall not be lower than one-hundred thousand United States Dollars ($100,000); *provided* that the first Overbid with regard to the Assets shall be the Initial Assets Overbid.

14

At the commencement of each subsequent round of solicitation of Overbids, the Debtors shall announce the minimum increment by which any Overbid must exceed the Prevailing Highest Bid (as defined below) at such time. The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction.

(b)     <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline by which time any Overbids must be submitted to the Debtors (an "<u>Overbid Round Deadline</u>"); *provided* that the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, may extend any Overbid Round Deadline.

(c)     <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(d)     <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified an Overbid as being higher or otherwise better than, in the initial Overbid round, the Baseline Bid or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>"). The Debtors shall describe to all applicable Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid.

**(iii)    Consideration of Overbids.**  The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient and sufficiently unconditional financing commitments to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**(iv)    Closing the Auction.**  The Auction shall continue until there is only one Qualified Bid for a particular group of Assets that the Debtors determine, in their reasonable business judgment, with the consent of the Prepetition ABL Agent and the Prepetition FILO Agent not to be unreasonably withheld, and in consultation with

the Consultation Parties, to be the highest or otherwise best Qualified Bid for the applicable assets.  Such Qualified Bid shall be designated the "<u>Winning Bid</u>" (or Back-Up Bid, as applicable, and the Qualified Bidder who submitted the Winning Bid, the "<u>Winning Bidder</u>") with respect to its proposed Acquired Assets, at which time the Auction with respect to such Assets shall be closed; *provided* that (1) such Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid; and (2) the Debtors' designation of a Qualified Bid as a Winning Bid (or Back-Up Bid, as applicable) shall be subject to and conditioned on finalization of definitive documentation and the Court's approval of such Winning Bid (or Back-Up Bid, as applicable), applicable regulatory and third-party approvals, and the consummation of the Sale Transaction contemplated thereby.  As soon as reasonably practicable after the designation of a Winning Bid (or Back-Up Bid, as applicable), the Debtors, in consultation with the Consultation Parties, shall finalize definitive documentation to implement the terms of such Winning Bid (or Back-Up Bid, as applicable) and cause such definitive documentation to be filed with the Court.

Notwithstanding anything to the contrary herein, the Debtors shall not, without the consent of the Prepetition ABL Agent and the Prepetition FILO Agent, select a Winning Bid unless such Winning Bid, either individually or in combination with other Winning Bids, as applicable, provides for the satisfaction of the "Obligations" under the ABL/FILO Credit Agreement and the Prepetition ABL/FILO Obligations (including the cash collateralization of all obligations related to letters of credit and contingent exposure, as applicable) to be Paid in Full (each as defined in the Cash Collateral Order) on the closing of the Sale Transaction.

(v)     **<u>No Collusion; Good Faith Offer</u>.**  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (1) such Qualified Bidder has not engaged in any collusion with respect to the bidding process (2) such Qualified Bidders' Qualified Bid is a good faith and irrevocable offer and such Qualified Bidder intends to consummate the Sale Transaction contemplated by its Qualified Bid if such Qualified Bid is the Winning Bid (or Back-Up Bid, as applicable) with respect to the applicable Acquired Assets, and (3) will serve as Back-Up Bid.

(vi)    **<u>Rejection of Bids</u>.**  The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time prior to the conclusion of the Auction, any Bid that the Debtors determine, after consultation with the Consultation Parties, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or these Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

## 12.    DESIGNATION OF A BACK-UP BIDDER.

If for any reason the Winning Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder, then the

Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid (each, a "<u>Back-Up Bidder</u>"), as determined by the Debtors after consultation with the Consultation Parties, and with the consent of the Prepetition ABL Agent and the Prepetition FILO Agent, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein the Debtors, (A) shall provide written notice to the Back-Up Bidder and file and serve a notice of intent to proceed with the Back-Up Bidder and (B) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than three (3) business days), at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to a proposed assumption and assignment to the Back-Up Bidder; *provided* that the forgoing shall not apply to any Potential Bidder that (1) both (a) qualifies as a Secured Party and (b) submits a Credit Bid; or (2) is the Stalking Horse Bidder.

Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid must remain open and irrevocable until the earlier of (1) the closing of the transactions contemplated by the Winning Bid notwithstanding any outside date set forth in such Back-Up Bidder's proposed purchase agreement and (2) the date that is four months following the conclusion of the Auction.

## 13.    FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to the Sale Transactions or these Bidding Procedures solely to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the Sale Order, the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to:  (A) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "<u>Alternate Proposal</u>"); (B) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to Alternate Proposals; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

## 14.    "AS IS, WHERE IS."

Consummation of the Sale Transactions will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted and agreed to by the Debtors in the executed definitive written documentation for the Sale Transactions (the "<u>Definitive Sale Documents</u>").  Unless otherwise specifically accepted and agreed to by the Debtors in Definitive Sale Documents, all of the

Debtors' right, title, and interest in and to the Assets disposed of in the Sale Transaction will be transferred to the Winning Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code and subject to the terms and conditions of the Cash Collateral Order.

By submitting a Bid, each bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Debtors and the proposed Sale Transaction prior to making its Bid, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Sale Transaction or the completeness of any information provided in connection with the Sale Transaction or the Auction (if any), except as may be set forth in Definitive Sale Documents.

## 15.  COMMISSIONS.

The Debtors shall be under no obligation to pay any commissions, fees, or expenses to any Potential Bidder's agent, advisor, or broker.  All commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable Potential Bidder at such Potential Bidder's discretion.  In no case shall any commissions, fees, or expenses for any Potential Bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale Transaction for the Assets.  This Section 15 shall not apply to any Expense Reimbursement that becomes payable pursuant to the terms of the Stalking Horse Agreement.

## 16.  RESERVATION OF RIGHTS.

The Debtors may, in consultation with the Consultation Parties,[5] be entitled to modify these Bidding Procedures in their reasonable business judgment in consultation with the Consultation Parties, or impose, at or prior to the Auction (if any), additional customary terms and conditions on a Sale Transaction, including:    (A) extending the deadlines set forth in these Bidding Procedures;  (B) adjourning the Auction at the Auction; (C) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if any); (D) canceling the Auction; and (E) rejecting any or all Bids or Qualified Bids; *provided* that any such modifications are not inconsistent with the Bidding Procedures, the Bankruptcy Code or any order of the Court entered in connection herewith.  All such modifications and additional rules will be communicated to each of the Consultation Parties, Potential Bidders, and Qualified Bidders; *provided* that, to the extent such modifications occur at the Auction, disclosure of such modifications is limited to those in attendance at the Auction; *provided*, *further* that (i) the Debtors

---

[5]    If any Consultation Party submits a Bid or otherwise is a participant with respect to any active Bid, the other non-bidding members of such Consultation Party shall remain Consultation Parties; *provided* that such bidding Consultation Party shall be precluded from receiving or reviewing information or documentation not otherwise available to all Acceptable Bidders, and the other non-bidding members of such Consultation Party shall not share or otherwise discuss such information with the bidding members of such Consultation Party.

shall not amend these Bidding Procedures, the Bidding Procedures Order, or the bidding process to modify their obligations to consult with the Prepetition ABL Agent or the Prepetition FILO Agent without the consent of such parties or further order of the Bankruptcy Court, (ii) any extension of the deadlines set forth in these Bidding Procedures that breaches a Milestone set forth in the Cash Collateral Order shall require the consent of the Prepetition ABL Agent and the Prepetition FILO Agent, and (iii) notwithstanding anything to the contrary herein, the Debtors shall not adopt new rules, procedures, or deadlines, or otherwise modify these Bidding Procedures or the Bidding Procedures Order in a manner that alters, limits, or imposes additional burdens on the rights of the Prepetition ABL Agent, the Prepetition FILO Agent or the Prepetition Term Loan Agent, including (x) requiring the Prepetition ABL Agent, the Prepetition FILO Agent, or the Prepetition Term Loan Agent to include a deposit as part of a Credit Bid (subject to the Prepetition Credit Documents) or (y) imposing additional conditions on their rights to Credit Bid (subject to the Prepetition Credit Documents) or to be deemed a Qualified Bidder (and their Bids deemed Qualified Bids).

Notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, the rights of the Prepetition ABL Agent and the Prepetition FILO Agent under the Cash Collateral Order (and the Prepetition Credit Documents referenced therein) to consent to the Sale (and any terms and conditions thereof) of any portion of their collateral, including, without limitation, any Assets, are expressly preserved and not waived or impaired by these Bidding Procedures or the Bidding Procedures Order. For the avoidance of doubt, nothing in these Bidding Procedures or the Bidding Procedures Order shall amend or impair any provision of the Cash Collateral Order (including the Milestones therein) or the rights of the Prepetition ABL Agent and the Prepetition FILO Agent thereunder.

Each reference in these Bidding Procedures and the Bidding Procedures Order to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.

## 17.    CONSENT TO JURISDICTION.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## 18.    SALE HEARING.

The Court shall hold a hearing to consider approval of the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transactions contemplated thereby (the "Sale Hearing"). **The Sale Hearing shall be held on February 21, 2025, subject to the availability of the Court if there is not an Auction, and February 26, 2025, subject to the availability of the Court if there is an Auction. The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending written notice to all Qualified Bidders and Consultation Parties prior to, or by making an announcement at, the Sale Hearing. No**

**further notice of any such continuance will be required to be provided to any bidder or other party.**

19.    **RETURN OF DEPOSIT.**

Any Deposits provided by Qualified Bidders shall be held in one or more escrow accounts on terms acceptable to the Debtors.  Any such Deposits will be returned to Qualified Bidders that are not Winning Bidders (or Back-Up Bidders, as applicable) on the date that is three business days after the Auction (if any).  Any Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Sale Transaction at closing.

If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid (or Back-Up Bid, as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

**<u>Exhibit 3</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to market and conduct an auction (the "Auction") to sell the Assets free and clear of liens, claims, encumbrances, and other interests (except as may be set forth in the Definitive Sale Documents), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the applicable sale proceeds. The Auction (if any) will be governed by the bidding procedures approved pursuant to the Order and attached to the Order as Exhibit 1 thereto (the "Bidding Procedures").

---

Copies of the Order, the Bidding Procedures, the Stalking Horse Agreement, and other documents related thereto, are available upon visiting the Debtors' restructuring website at https://cases.ra.kroll.com/Joann2025 (the "Case Webpage"). Any changes to the location, date and time of the Auction shall be posted on the Case Webpage.

---

**Any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. The Bid Deadline is February 18, 2025, at 5:00 p.m. (prevailing Eastern Time).**

The Debtors intend to conduct the Auction (if required) at which they will consider Qualified Bids (as defined in the Bidding Procedures) submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures and as set forth in the Order. The Debtors intend to commence the Auction (if applicable) on **February 21, 2025, at 10:00 a.m. (prevailing Eastern Time)**, either in-person or by

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

videoconference or such other form of remote communication established by the Debtors (to be communicated to Qualified Bidders in advance). By the earlier of five (5) hours after the Auction (if any) is completed or 12:00 p.m. (prevailing Eastern Time) the calendar day after the Auction is completed, the Debtors shall file with the Court the Notice of Winning Bidder. All creditors in these chapter 11 cases shall be entitled to attend the Auction.

The Debtors reserve the right to modify the Bidding Procedures in accordance with the Bidding Procedures and the Order.

All requests directed to the Debtors in connection with the foregoing, or for further information regarding the Bidding Procedures and participation therein, or for further information regarding the Assets, must be directed to: Centerview Partners, LLC, the Debtors' proposed investment banker, at Ryan Kielty (rkielty@centerview.com), Karn Chopra (kchopra@centerview.com), Daniel Bendetson (dbendetson@centerview.com). All Potential Bidders are instructed to review the Bidding Procedures in consultation with counsel.

Objections to the proposed order approving any Winning Bid(s) (and/or designation of a Back-Up Bid(s), as applicable) (the "Sale Order," and such objections, "Sale Objections") must be made on or before: **February 20, 2025, at 5:00 p.m. (prevailing Eastern Time)** to the Stalking Horse Bid if there is no Auction, or **February 24, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") if there is an Auction. All Sale Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the Sale Objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** by the following parties (the "Notice Parties") no later than the Sale Objection Deadline: (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher Carter (christopher.carter@morganlewis.com) and Marjorie Crider (marjorie.crider@morganlewis.com); (e) counsel to the Prepetition FILO Agent, Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com); (f) counsel to the Prepetition Term Loan Lender Ad Hoc Group, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Josh Brody (JBrody@gibsondunn.com), and Kevin Liang (KLiang@gibsondunn.com), (ii) Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, 22nd Floor, New York, New York 10035, Attn: Andrew Glenn (aglenn@glennagre.com), Kurt Mayr (kmayr@glennagre.com), Agustina Berro (aberro@glennagre.com), Malak Doss (mdoss@glennagre.com), and Esther Hong (ehong@glennagre.com), and (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Donna Culver (dculver@morrisnichols.com), Robert Dehney (rdehney@morrisnichols.com), Matthew Harvey (mharvey@morrisnichols.com), and Brenna Dolphin (bdolphin@morrisnichols.com); (g) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); and (h) proposed counsel to the Official Committee of Unsecured Creditors, (i) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason R. Adams (jadams@kelleydrye.com); Eric R. Wilson (ewilson@kelleydrye.com); and Maeghan J. McLoughlin (mmcloughlin@kelleydrye.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Suite 1700, Wilmington, Delaware 19801, Attn: Brad Sandler (bsanlder@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com).

**<u>Exhibit 4(A)</u>**

**Notice of Winning Bidder (if no Auction)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### NOTICE OF WINNING BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief*] [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales (the "Sale Transactions") of the Debtors' assets (the "Assets").

The Debtors select the following Winning Bidder:

| Assets | Winning Bidder | Back-Up Bidder | Key Terms of Proposed Sale |
|---|---|---|---|
| [●] |  |  |  |

The Sale Hearing to consider approval of the sale of the Assets to the Winning Bidder(s) will be held before the Honorable Craig T. Goldblatt, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **February 21, 2025, at 10:00 a.m. (prevailing Eastern Time)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Winning Bid(s) for the applicable Assets.  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order, the Motion, or the Bidding Procedures, as applicable.

matters relating to the sale(s) for the applicable Assets, and there will be no further bidding at the Sale Hearing.

This notice is subject to the terms and conditions of the Motion and the Order, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents, including the Bidding Procedures, in their entirety.  Parties interested in receiving additional or other information regarding the proposed Sale Transaction or other disposition of the applicable Assets may make a written request to Kroll Restructuring Administration LLC ("Kroll") (the notice and claims agent retained in these chapter 11 cases) or by calling (844) 712-2239 (US/Canada Toll Free) or +1 (646) 863-7121 (International) for calls originating outside of the U.S.

Copies of the Motion, the Order, the Bidding Procedures, this notice, and any other related documents are available:  (a) upon request to Kroll by calling  (844) 712-2239 (US/Canada Toll Free) or +1 (646) 863-7121 (International) for calls originating outside of the U.S.; (b) by visiting the Debtors' restructuring website at https://cases.ra.kroll.com/Joann2025; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

**<u>Exhibit 4(B)</u>**

**Notice of Winning Bidder (if there is an Auction)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF WINNING BIDDER AND
## BACK-UP BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales (the "Sale Transactions") of the Debtors' assets (the "Assets").

On **February 21, 2025, at 10:00 a.m. (prevailing Eastern Time)**, pursuant to the Order, the Debtors commenced the Auction either in-person or by videoconference or such other form of remote communication established by the Debtors.

At the conclusion of the Auction, the Debtors selected the following Winning Bidder and Back-Up Bidder:

| Assets | Winning Bidder | Back-Up Bidder | Key Terms of Proposed Sale |
|---|---|---|---|
| [●] |  |  |  |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order, the Motion, or the Bidding Procedures, as applicable.

The Sale Hearing to consider approval of the sale of the Assets to the Winning Bidder(s) at the Auction will be held before the Honorable Craig T. Goldblatt, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **February 26, 2025, at 10:00 a.m. (prevailing Eastern Time)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Winning Bid(s) and the designation of the Back-Up Bid(s) (if any) for the applicable Assets. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale(s) for the applicable Assets, and there will be no further bidding at the Sale Hearing.

If a Winning Bidder cannot or refuses to consummate the Sale Transaction following entry of the Sale Order because of the breach or failure on the part of the Winning Bidder, the Back-Up Bidder (if any) shall be deemed the new Winning Bidder and the Debtors, (1) shall provide written notice to the Back-Up Bidder and file and serve a notice of intent to proceed with the Back-Up Bidder and (2) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than three (3) business days), at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to a proposed assumption and assignment to the Back-Up Bidder.

This notice is subject to the terms and conditions of the Motion and the Order, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents, including the Bidding Procedures, in their entirety. Parties interested in receiving additional or other information regarding the proposed Sale Transaction or other disposition of the applicable Assets may make a written request to Kroll Restructuring Administration LLC ("Kroll") (the notice and claims agent retained in these chapter 11 cases) or by calling (844) 712-2239 (US/Canada Toll Free) or +1 (646) 863-7121 (International) for calls originating outside of the U.S.

Copies of the Motion, the Order, the Bidding Procedures, this notice, and any other related documents are available: (a) upon request to Kroll by calling (844) 712-2239 (US/Canada Toll Free) or +1 (646) 863-7121 (International) for calls originating outside of the U.S.; (b) by visiting the Debtors' restructuring website at https://cases.ra.kroll.com/Joann2025; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

**<u>Exhibit 5</u>**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF POTENTIAL ASSUMPTION OR
## ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures for the assumption or assumption and assignment of executory contracts and unexpired leases and granted related relief, as set forth in the Order.

Pursuant to the Order and by this notice (this "Cure Notice"), the Debtors hereby notify you that they have determined, in the exercise of their reasonable business judgment, that each executory contract or unexpired lease set forth on **Schedule 1** attached hereto (the "Potential Assumption List") may be assumed (and, if applicable, assigned) effective as of the date (the "Assumption Date") set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contracts or unexpired leases may agree.

The Debtors believe that the party to which each applicable executory contract or unexpired lease may be assigned has the financial wherewithal to meet all future obligations under such contract or lease and the Debtors will, at the request of the applicable counterparty, use commercially reasonable efforts to provide evidence thereof to such applicable counterparty (and their counsel, if known) thereby demonstrating that the assignee of the contract or lease has the ability to comply with the requirements of adequate assurance of future performance.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order, the Motion, or the Bidding Procedures, as applicable.

Parties objecting to the proposed assumption and assignment (including a Winning Bidder's proposed form of adequate assurance of future performance) must file and serve a written objection (each, a "Cure Objection") so that such objection is filed with the Court and **actually received by the following parties no later than [●], 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline"): (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov);

(d) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher L. Carter (christopher.carter@morganlewis.com) and Marjorie Crider (marjorie.crider@morganlewis.com); (e) counsel to the Prepetition FILO Agent, Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com); (f) counsel to the Prepetition Term Loan Lender Ad Hoc Group, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Josh Brody (JBrody@gibsondunn.com), and Kevin Liang (KLiang@gibsondunn.com), (ii) Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, 22nd Floor, New York, New York 10035, Attn: Andrew Glenn (aglenn@glennagre.com), Kurt Mayr (kmayr@glennagre.com), Agustina Berro (aberro@glennagre.com), Malak Doss (mdoss@glennagre.com), and Esther Hong (ehong@glennagre.com), and (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Donna Culver (dculver@morrisnichols.com), Robert Dehney (rdehney@morrisnichols.com), Matthew Harvey (mharvey@morrisnichols.com), and Brenna Dolphin (bdolphin@morrisnichols.com); (g) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (g) counsel to the Winning Bidder, [●]; and (h) proposed counsel to the Official Committee of Unsecured Creditors, (i) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason R. Adams (jadams@kelleydrye.com); Eric R. Wilson (ewilson@kelleydrye.com); and Maeghan J. McLoughlin (mmcloughlin@kelleydrye.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Suite 1700, Wilmington, Delaware 19801, Attn: Brad Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com).

Absent a Cure Objection being timely filed, the assumption of each executory contract or unexpired lease may become effective on the Assumption Date set forth in **Schedule 1**, or such other date as the Debtors and the counterparty or counterparties to such executory contract or unexpired lease may agree.

If an objection is timely filed and not withdrawn or resolved, such objection will be heard at the Sale Hearing or on such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such objection is overruled or withdrawn, the applicable executory contract or unexpired lease shall be assumed as of the Assumption Date set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contract unexpired lease may agree.

## <u>Schedule 1</u>

**Potential Assumption List**