## Exhibit B

**Bidding Procedures Motion Reply**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 17** |

### DEBTORS' REPLY IN SUPPORT
### OF THE MOTION OF DEBTORS FOR ENTRY
### OF AN ORDER (I) APPROVING BIDDING PROCEDURES,
### (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT
### THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE
### THEREOF, (IV) APPROVING THE STALKING HORSE AGREEMENT,
### (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION
### AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) AUTHORIZING
### THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES,
### (VII) APPROVING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] file this reply (this "Reply") in support of the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect thereto, (III) Approving the Form and Manner of Notice thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration, the Motion, the Frejka Declaration, or the revised proposed *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect thereto, (III) Approving the Form and Manner of Notice thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* filed contemporaneously herewith (the "Revised Bidding Procedures Order"), as applicable.

*Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 17] (the "Motion"), and in response to the objections filed by various landlords, the U.S. Trustee, the Ad Hoc Term Loan Group, and the Official Committee of Unsecured Creditors (the "Committee"), as detailed in **Exhibit A** and attached hereto (the "Objections").  In response to the Objections and state as follows:

## Reply

1.     Despite the breadth of papers filed in the Objections, ultimately no economic stakeholder disputes that the Bidding Procedures should be approved.  Although there is no doubt that work remains to be done on the Stalking Horse Agreement (or any other Qualified Bids that the Debtors may receive for any portion of their Assets) to achieve the widespread consensus that the Debtors believe is the right answer for these chapter 11 cases, approval of the Stalking Horse Agreement at this juncture does not prejudice that effort.  Rather, it ensures that these cases do not languish and settlement discussions continue.  To that end, all parties' rights are reserved in connection with the ultimate approval of a Sale Transaction, and the limited relief requested in the Motion should be granted.

2.     In the weeks leading up to the Petition Date, the Debtors commenced a comprehensive marketing process in pursuit of one or more value-maximizing transactions for the sale or sales of all, substantially all, or any portion of the Debtors' business.  The Debtors cast a wide net in an effort to reach all potential bidders and reached out to strategics, private equity firms, family offices, high-net worth individuals, intellectual property buyers, landlords, and liquidators.  After hard fought, arms'-length, and good faith negotiations, the Debtors entered into the Stalking Horse Agreement for the right to liquidate substantially all of the Debtors' Assets. The Debtors commenced these chapter 11 cases to continue their strategic marketing process to

solicit higher or otherwise better offers than the Stalking Horse Bid, including potential going concern bids, and consummate one or more sale transactions (each, a "Sale Transaction") for all or substantially all of the Debtors' Assets or any segment thereof.

3.     The Debtors crafted the Bidding Procedures to capitalize on the prepetition marketing process and establish an efficient, orderly pathway to consummating a Sale Transaction and maximizing value for the benefit of all stakeholders.  The terms of the Bidding Procedures balance the dual needs of driving a competitive process and minimizing the time and administrative burden that the Debtors would spend in prolonged chapter 11 cases, which can often prove catastrophic for retailers in similar circumstances.  The resulting Bidding Procedures encourage bidding and facilitate a competitive process to hopefully result in one or more value-maximizing Sale Transaction(s).  The Bidding Procedures are a reasonable and sound exercise of the Debtors' business judgment and will enable the Debtors to effectuate a successful and efficient marketing process within the Debtors' liquidity constraints.

4.     Given the exigencies of the Debtors' situation and the funding available under the Cash Collateral Order,[3] these chapter 11 cases must proceed on an expedited basis.  The Debtors filed the Revised Bidding Procedures Order reflecting the resolution of many issues thus far, and the Debtors continue to work closely with all parties, including landlords, the Committee, the Ad Hoc Term Loan Group, and the U.S. Trustee, to resolve all issues prior to the hearing. Importantly, the Debtors are not currently asking the Court to approve a Sale Transaction at this stage.  Any Sale Transaction presented to the Court in the future may differ from the terms of the

---

[3]    "Cash Collateral Order" shall mean the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 106] or any final order approving the same or substantially same use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral, whichever is then in effect, as applicable.

Stalking Horse Agreement, which simply stakes out a floor for the overbidding process. Accordingly, the Court should enter an order approving the Bidding Procedures.

**I.      The Bidding Procedures Are Fair, Reasonable, and an Appropriate Exercise of Business Judgment.**

5.      The standard of review for the relief requested in the Motion is the business judgment test.  In the Third Circuit, courts have authorized transactions outside the ordinary course of business when the transaction has a sound business purpose and is proposed in good faith.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).  In evaluating whether this business purpose exists, "courts consider a variety of factors, which essentially represent a 'business judgment test.' . . . [A] bankruptcy judge must not blindly follow the hue and cry of the most vocal [creditor] groups . . . ." *Montgomery Ward*, 242 B.R. at 153.

6.      Courts will approve such bidding procedures if they are supported by a sound business justification.  *See, e.g.*, *In re Martin*, 91 F.3d at 395 ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.") (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("[T]he debtor in possession can sell property of the estate . . . if[] he has an 'articulated business justification,' he provides adequate notice to all creditors, and a hearing is held on the sale." (citations omitted)); *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153 ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions.").  Courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are

appropriate in the context of bankruptcy transactions. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the [Debtor]'s duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (citation omitted)).

7.     The Debtors will benefit from a court-approved marketing process that will result in the highest or otherwise best offer for the Debtors' Assets. Indeed, the entire fairness standard cited in the Ad Hoc Term Loan Group Objection cannot logically be applied here. Entire fairness review inquires whether a debtor's agreement to enter into a transaction was the result of "fair dealing" and resulted in a "fair price." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). The cases are clear that the entire fairness standard does not apply in the absence of a transaction. *See In re eToys, Inc.*, 331 B.R. 176, 200 (Bankr. D. Del. 2005) ("In this case, there was no transaction between the Debtors and ADA. Therefore, the Court need not determine if the dealings between the two were fair and for a fair price."); and *In re Trados Inc. S'holder Litig.*, 73 A.3d 17 (Del. Ch. 2013) ("Once entire fairness applies, the defendants must establish to the court's satisfaction that *the transaction* was the product of both fair dealing and fair price." (emphasis added) (internal quotation marks omitted) (citation omitted)). The Debtors here are seeking the Court's prior approval of the Bidding Procedures and will return to the Court at a later date for approval of a Sale Transaction. In short, while the Debtors believe "entire fairness" is not the

applicable standard for evaluation of the Bidding Procedures or a Sale Transaction, the issue as it relates to a future Sale Transaction is properly preserved for a later date.

8.      The Debtors have appropriately exercised their business judgment in seeking approval of the Bidding Procedures, which are designed to provide a clear and efficient means of soliciting and assessing value-maximizing proposals in light of the Debtors' liquidity constraints. The Bidding Procedures provide the flexibility and optionality needed for the Debtors to assess multiple paths for achieving a Sale Transaction and proceed down the one that, in their business judgment, will create the most value for their stakeholders.

9.      Objections taking issue with the Bidding Procedures should be overruled as these decisions were made as an exercise of the Debtors' sound business judgment, and the parties cannot offer evidence to overcome this standard. Such objections include the Purchase Price[4] and the Debtors' reservation of rights to, among other things, (a) modify the bid procedures in a manner consistent with the Bankruptcy Code and any order of this Court; (b) evaluate and make decisions regarding any and all Bids; and (c) provide certain consent rights to the Debtors' prepetition lenders. *See* Committee Obj. ¶ 51; U.S. Trustee Obj. ¶ 71. These decisions are not unusual or harmful to the Debtors' ability to conduct a value-maximizing process. Instead, each of those decisions are a reasonable exercise of the Debtors' business judgment and consistent with relief regularly granted in this circuit and others.

---

[4]     The revised Purchase Price in the Revised Bidding Procedures Order is the result of negotiations with the Committee, the Ad Hoc Term Loan Group, the Prepetition ABL Agent, and the Prepetition FILO Agent. The revised language should resolve any applicable Objection. Nonetheless, the Debtors' proposed Purchase Price construct is a fair and appropriate exercise of its business judgment and is also consistent with the bidding procedures approved by this Court. *See In re SunPower Corp.,* No. 24-11659 (CTG) (Bankr. D. Del. Aug. 29, 2024) (approving a bid Purchase Price which did not require a defined dollar amount); *In re EXP OldCo Winddown, Inc., (f/k/a Express, Inc.)*, No. 24-10831 (KBO) (Bankr. D. Del. June 6, 2024) (same); *In re Yellow Corp.,* No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023) (same); *In re Alex and Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. July 16, 2021) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 14, 2019) (same).

10.     ***Deadlines: Fast but Fair*.**  The revised dates set forth in the Revised Bidding Procedures Order extend the original proposed timeline.  The new dates are fair and reasonable under the circumstances, as well as an exercise of the Debtors' sound business judgment.  Significantly, the Debtors started the marketing process before the Petition Date.  The Debtors reached out to fifty-one (51) parties they thought, based on prior discussions, were most likely to be interested in engaging in a transaction with the Debtors (while also being most likely to protect the confidentiality of the process prior to a filing).  Since the Petition Date, the Debtors have not slowed down and continue running their extensive marketing process.  To date, the Debtors have contacted seventy-seven (77) parties comprising a wide range of potential bidders.  The Debtors have provided the potential bidders with an array of confidential evaluation materials to provide information about the sale of the Assets.  In sum, the Debtors' prepetition and postpetition marketing efforts have been extensive enough to ensure that any party who may be interested in bidding has had sufficient notice and an opportunity to do so.  Accordingly, the timeline proposed by the Debtors is reasonable and appropriate under the circumstances.  Further, the revised dates and deadlines are the result of arm's-length, good faith negotiations between the Debtors, the Committee, the U.S. Trustee, the Ad Hoc Term Loan Group, the Prepetition ABL Agent, and the Prepetition FILO Agent.  The deadlines in the Bidding Procedures harmonize the interests of all parties, which makes the deadlines not only fair, but also a material negotiated term of the Bidding Procedures.

11.     Moreover, the Debtors must meet certain milestones in order to continue receiving access to necessary cash collateral.  Cash Collateral Order ¶ 11.  If the Debtors do not achieve the proposed timeline set forth in the Bidding Procedures, the Debtors' risk both losing the Stalking Horse Agreement and running a sale process which may not provide sufficient liquidity to address

the Debtors' ongoing constraints. The costs associated with any incremental time in chapter 11, including on account of professional fees, U.S. Trustee fees, operational cash burn, and increasing administrative expenses must be weighed against the likelihood that additional time will yield a materially higher bid. The proposed schedule balances these competing demands, allowing the continuation of the fulsome prepetition marketing process and limiting unnecessary costs while in chapter 11. Accordingly, to avoid the value-destructive consequences of an extended sale process for the Assets, the Debtors believe that the Bidding Procedures, including the deadlines set forth in the Motion, are (a) reasonable and appropriate under the circumstances, (b) consistent with the milestones that the Debtors must meet under the Cash Collateral Order, and (c) provide the Debtors with sufficient runway to finalize a robust marketing process to secure the highest or otherwise best bid available.

12.    ***Causes of Action and Avoidance Actions: Preserved for Sale Hearing.*** Causes of action and avoidance actions are estate assets that may be utilized in accordance with the Debtors' business judgment. *See* 11 U.S.C. §§ 550(a) (preserving recoveries on avoidance actions "for the benefit of the estate"), 541(a)(1), (3)–(4). The Debtors may sell causes of action, property of the Debtors' estate, in the exercise of their sound business judgment. *See In re Atl. Gulf Communities Corp.*, 326 B.R. 294, 299 (Bankr. D. Del. 2005) ("Under bankruptcy law, even speculative litigation claims are property of the estate."). Any Objection to the sale of such assets in a *specific* Sale Transaction is premature and will be addressed at a Sale Hearing.

13.    ***Minimum Overbid Requirements: Standard Provision.*** The Bidding Procedures requirement that any Overbid be at least the sum of (i) $100,000 more than the value offered under the Stalking Horse Agreement plus (ii) the Expense Reimbursement is demonstrably fair, reasonable, and an exercise of the Debtors' business judgment. The Stalking Horse Agreement

brings necessary value to the marketing process, and consequently the Debtors' estates at large, by setting a floor for further bids. The concern in the U.S. Trustee's Objection that this requirement for the Initial Assets Overbid will "chill" bidding is misplaced. U.S. Trustee Objection ¶ 56. The Initial Assets Overbid amount merely assures that competing bids have sufficient additional incremental value to justify incurring the expenses associated with evaluating competing bids and conducting an Auction. Accordingly, requiring Overbids to be at least one percent greater than the Stalking Horse Bid is fair and reasonable, and is commonly utilized in similar circumstances. *See In re American Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 26, 2024) (requiring a purchase price at least 2% greater than the stalking horse bid); *In re Big Lots, Inc.*, No. 24-11967 (JKS) (Bankr. D. Del. Oct. 25, 2024) (requiring a purchase price to exceed the stalking horse bid by the sum of the bid protections and $2 million); *In re SunPower Corp.,* No. 24-11659 (CTG) (Bankr. D. Del. Aug. 29, 2024) (requiring a purchase price to exceed the stalking horse bid by the sum of the bid protections and $500,000); and *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (requiring a purchase price to exceed the stalking horse bid by the sum of the bid protections and $1 million).

14.      ***Consultation Rights: Standard Provision.***   The Debtors have agreed to provide consultation rights to the Prepetition FILO Agent in an exercise of the Debtors' sound business judgment. Contrary to the assertions in the U.S. Trustee, Committee, and Ad Hoc Term Loan Group Objections, inclusion of the Prepetition FILO Agent is fair and reasonable under the circumstances. The business judgment rule cannot be rebutted by abstract assertions of conflicts or bad faith. *Quadrant Structured Prods. Co. v. Vertin*, No. 6990-VCL, 2014 WL 5020273, at *20 (Del. Ch. Oct. 1, 2014) ("It is not enough . . . simply to argue in the abstract that a particular director has a conflict of interest or is acting in bad faith because she is affiliated with a particular

type of institution that may be pursuing a particular business strategy or have a particular interest."); *see also In re Big Lots, Inc.*, No. 24-11967 (JKS) (Bankr. D. Del. Oct. 25, 2024) (approving similar consultation party rights to the debtors' funded debt lenders, one of which was an affiliate of the stalking horse bidder). Although the Prepetition FILO Agent and the Stalking Horse Bidder are affiliated entities, these parties have been represented separately and independently both prepetition and during the pendency of these chapter 11 cases. Additionally, the Prepetition FILO Agent's participation in the Debtors' sale process as a Consultation Party ultimately does not give the Stalking Horse Bidder a strategic or competitive advantage–as the agent under one of the Debtors' Prepetition Loan Facilities, the Prepetition FILO Agent does (and should) have a consent right with respect to the disposition of its collateral. Further, the Prepetition FILO Obligations are approximately $100 million, and the Prepetition FILO Agent's interest comprises approximately $25 million of such obligations. There is no joint-venture relationship between the Prepetition FILO Agent and other Prepetition FILO Lender holding the remaining approximate $75 million interest. The Prepetition FILO Agent likely cannot abdicate its role with respect to its collateral or the Prepetition FILO Agent's own fiduciary duties to the other Prepetition FILO Lender. Accordingly, this Court should permit the Prepetition FILO Agent to serve as a Consultation Party under the Bidding Procedures.

15. ***Assumption and Assignment Procedures.*** The Assumption and Assignment Procedures reflect the Debtors' sound business judgment and are designed to maximize value. The Motion seeks relief which shall not "limit the Debtors' or the Winning Bidder's ability to negotiate partial assumption and/or assumption and assignment of Contracts with Contract Counterparties *on a consensual basis*." Revised Bidding Procedures Order ¶ [23] (emphasis added). Nothing in the Bankruptcy Code prevents the Debtors or their contract counterparties from assuming and

assigning contracts *as consensually amended* by the parties.  The assertion in the U.S. Trustee's Objection assertion to the contrary relies on distinguishable cases that involve attempts to partially assume and assign contracts on a non-consensual basis.  *See In re Fleming Companies, Inc.*, 499 F.3d 300 (3d Cir. 2007) ("[W]e draw the line where a party *refuses* to accept part of the contract's obligations, and as a result it cannot perform a material bargained-for term of the contract." (emphasis added)).  The Debtors seek to reserve only their right to negotiate assumption and/or assumption and assignment of amended or modified Contracts with Contract Counterparties on a consensual basis.  Such consensual resolutions are consistent with the objectives of the Bankruptcy Code to maximize value to the estate and swiftly and fairly distribute property of the estate.  *See In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013); 11 U.S.C. § 365(c)(1)(A), (B) (permitting the assumption and assignment of contracts otherwise excluded by applicable non-bankruptcy law so long as the parties consent).[5]

## II.    The Debtors Provided Adequate Notice of the Bidding Procedures and Deadlines.

16.    The Debtors have provided adequate notice of the timeline and deadlines in the Bidding Procedures.  On January 24, 2025, the Debtors filed the *Notice of Potential Sale Hearing* [Docket No. 182] (the "Notice"), which was served upon all parties in interest in these chapter 11 cases.  *See* Aff. of Service [Docket No. 313].  Following negotiations with the Committee, the U.S. Trustee, the Ad Hoc Term Loan Group, the ABL Agent, and the FILO Agent, the Debtors filed a Revised Bidding Procedures Order which sets forth later deadlines to submit bids, hold an auction

---

[5]    Further, the Assumption and Assignment Procedures provide a timeline which accommodates the flexibility necessary for the Debtors to appreciate a wide-reaching, value maximizing sale process.  Despite assertions in certain of the Objections to the contrary, the Debtors do not require Contract Counterparties to request adequate assurance in the first instance in relation to a Sale Transaction.  Further, Cure Notices will be sent fourteen (14) days in advance of any assumption and assignment-related objection deadline, and the relief sought would permit any Sale Hearing to move forward while preserving the Contract Counterparties' assumption and assignment objections for a later date.  Accordingly, the Assumption and Assignment Procedures as proposed are fair and reasonable and will help the Debtors maximize value for the benefit of their estates.

(if necessary), and seek approval of a Sale Transaction.  Regardless, the Debtors gave all parties in interest 21 days'-notice of the Debtors' intent to conduct a Sale Hearing in the event there is no Auction, subject to Court approval.   The Notice provided a time and place for the Sale Hearing, an objection deadline, and information necessary to view any supporting documents on the Case Webpage.  As such, sufficient notice has been provided.

17.     The U.S Trustee Objection's assertion that the Debtors have failed to provide adequate disclosures regarding the assets to be sold because they had not yet filed their Schedules and Statements of Financial Affairs is moot.  The Debtors filed their Schedules and Statements of Financial Affairs on [February 11, 2025].  Accordingly, the Debtors have provided adequate notice and disclosure of their assets, and these Objections should be overruled.

### III.    The Expense Reimbursement Is Reasonable and Appropriate.

18.     The Stalking Horse Protections, which are limited to Expense Reimbursement and Cost of Signage and do not include a break fee, are a material and necessary inducement for the Stalking Horse Bidder to provide a bid in the form of the Stalking Horse Agreement and are appropriate under the circumstances.  As discussed above, the Stalking Horse Agreement has been important to the Debtors' marketing process.  In addition to the value of the proposed transaction itself, the presence of a stalking horse bid drives value to the competitive bidding process for the benefit of all stakeholders by setting a foundation for other bids.  *See In re Reliant Energy Channelview LP*, 594 F.32 200, 207 ("[I]t is plausible to believe that an initial bid, ordinarily or perhaps even always, will provide a benefit to an estate because it will establish a floor price for the assets to be sold.").  The Stalking Horse Agreement demonstrates to the market that the Debtors

have a legitimate bidder for substantially all of the Debtors' assets. This sets a credible price floor and protects all bidders in the process of preparing competing bids.

19.    Contrary to the U.S. Trustee Objection's assertions, the Expense Reimbursement is necessary to induce the Stalking Horse Bidder to work toward an executable bid and is the result of hard-fought negotiations. Without the Expense Reimbursement, which amounts to less than 0.5 percent of the Stalking Horse Bid's purchase price, the Debtors risk losing the Stalking Horse Bid, which poses significant value to the Debtors' estates. At less than 0.5 percent of the purchase price, the Expense Reimbursement is not only well within the range of reasonableness—it is significantly less than the range of bid protections frequently granted in this district. *See, e.g.*, *In re American Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 26, 2024) (authorizing bid protections in an amount equal to 4% of the cash portion of the purchase price); *In re SunPower Corp.,* No. 24-11659 (CTG) (Bankr. D. Del. Aug. 29, 2024) (authorizing bid protections in an amount equal to 3 percent of the purchase price); *In re EXP OldCo Winddown, Inc., (f/k/a Express, Inc.),* No. 24-10831 (KBO) (Bankr. D. Del. June 6, 2024) (authorizing bid protections of almost 6 percent of the purchase price); *In re Zymergen Inc.*, No. 23-11661 (KBO) (Bankr. D. Del. Nov. 20, 2023) (authorizing bid protections in an amount equal to 3.2 percent of the purchase price); *In re Yellow Corp.,* No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023) (authorizing bid protections up to 3 percent of the purchase price); *In re American Virtual Cloud Technologies, Inc.*, No. 23-10020 (TMH) (Bankr. D. Del. Feb. 24, 2023) (approving bid protections in an amount of 8 percent of the purchase price); *In re Sequential Brands Group, Inc.*, No. 21-11194 (JTD) (Bankr. D. Del. Sept. 24, 2021) (approving bid protections in an amount equal to 4 percent of the purchase price); *In re Alex and Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. July 16, 2021) (approving bid protections in excess of 3 percent of the purchase price); *In re The Hertz Corp.*,

No. 20-11218 (Bank. D. Del. Mar. 2, 2021) (same); *In re Francesca's Holdings Corp.*, No. 20-13076 (Bankr. D. Del. Jan. 22, 2021) (same); *In re Vitamin OldCo Holdings, Inc., (f/k/a GNC Holdings, Inc.)*, No. 20-11662 (KBO) (Bankr. D. Del. Aug. 19, 2020) (same); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 21, 2019) (approving bid protections of approximately 4.5 percent of the purchase price); and *In re TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*, No. 18-10601 (MFW) (Bankr. D. Del. Apr. 6, 2018) (approving bid protections in an amount equal to 4.5 percent of the purchase price, which the stalking horse could seek to raise to 5 percent of the purchase price).

20.     The U.S. Trustee Objection's assertion that the Stalking Horse Bidder had access to information regarding the Debtors which would lessen its diligence burden is misguided.  U.S. Trustee Obj. ¶ 55.  The purpose and propriety of Expense Reimbursement for a Stalking Horse Bidder is not limited to diligence.  Throughout these chapter 11 cases and in the weeks leading up to the Petition Date, the Stalking Horse Bidder has spent significant time and resources (including legal fees) to develop, document, and improve upon its bid.  The Expense Reimbursement serves the purpose of providing some protection for the Stalking Horse Bidder who may not see the fruits of those negotiations if a higher and better bid is ultimately approved.  The Stalking Horse Bidder's affiliation with the Prepetition FILO Agent has no bearing on the expenses that the Stalking Horse Bidder has incurred and is still incurring in connection with preparing to consummate a potential Sale Transaction—including by participating in settlement negotiations with the Debtors' other stakeholders in an attempt to drive global consensus.  Further, with respect to signage specifically, such costs are portable.  If an alternate liquidating bid is ultimately the Winning Bid, such alternate bidder would make use of the same signage the Stalking Horse Bidder had already ordered. Accordingly, there is no prejudice to the Debtors' bidding process or their estates if a Winning

Bidder is required to reimburse and effectively repurchase the already-ordered signage from the Stalking Horse Bidder.

21.    This Court has authorized similar (and greater) bid protections for stalking horse bidders, including in circumstances where such bidder was affiliated with the debtors' funded debt or providing a credit bid.  *See In re Big Lots, Inc.*, No. 24-11967 (JKS) (Bankr. D. Del. Oct. 25, 2024) (approving bid protections approximately 1 percent of the purchase price, including expense reimbursement up to $2 million, to an affiliate of the debtors' prepetition and DIP term agent); *In re Vesta Holdings, LLC*, No. 22-11019 (LSS) (Bankr. D. Del. Dec. 7, 2022) (approving expense reimbursement of $1.5 million, approximately 1.2 percent of the credit bid purchase price); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Feb. 22, 2021) (approving expense reimbursement of approximately 0.7 percent of the credit bid purchase price); and *In re In-Shape Holdings, LLC*, No. 20-13130 (LSS) (Bankr. D. Del. Dec. 18, 2020) (approving bid protections equal to approximately 1.5 percent of the credit bid purchase price).

22.    Finally, the Stalking Horse Protections should be entitled to administrative claim status.  The relief sought has consistently been "an allowed administrative expense claim under section 503(b) of the Bankruptcy Code."  Revised Bidding Procedures Order ¶ 10.  In light of the Stalking Horse Bidder's role and active participation in the Debtors' chapter 11 cases, which is enabling the Debtors to maximize the value of their estates for all the reasons set forth herein, the Expense Reimbursement and Cost of Signage represent actual, necessary costs of preserving the estate.  Accordingly, administrative expense priority pursuant to section 503(b) of the Bankruptcy Code is appropriate.

**IV.    The Right to Credit Bid is Preserved.**

23.    The Bidding Procedures are consistent with section 363(k) of the Bankruptcy Code, which provides that Secured Parties may (1) bid at a sale under section 363(b) of the Bankruptcy

Code, and, if the Winning Bidder, (2) offset their claim against the Purchase Price of the Assets. 11 U.S.C § 363(k). Nothing in the Bidding Procedures prejudices any party's right—including the Ad Hoc Term Loan Group's right—to credit bid in accordance with the Bankruptcy Code. However, an entitlement to credit bid does not preclude Secured Parties from having to beat higher and better bids. The Bidding Procedures' requirement that the Purchase Price with respect to any bids for the ABL/FILO collateral include a cash component sufficient to pay the Prepetition ABL/FILO Obligations in full is another permissible and sound exercise of the Debtors' business judgment—it simply reflects the Prepetition ABL Agent's and the Prepetition FILO Agent's clear guidance that they will not consent to a bid that does not pay them in full in cash. Because the Stalking Horse Bid satisfies those qualifications, it is a reasonable exercise of the Debtors' business judgment to require other Bids to do the same.

## V.      A Consumer Privacy Ombudsman Should Not Be Appointed.

24.     The U.S. Trustee Objection asserts that the Debtors should address whether a Sale Transaction requires the appointment of a consumer privacy ombudsman. U.S. Trustee Obj. ¶ 69. The Debtors have since filed the Frejka Declaration,[6] which provides sufficient information the Debtors believe addresses the U.S. Trustee's concerns. In accordance with the Debtors' Privacy Policies, Consumers consent to the transfer of their Personally Identifiable Information as part of a Sale Transaction in multiple ways. Frejka Decl. ¶ 14. As such, the appointment of a consumer privacy ombudsman is not necessary in these chapter 11 cases, and such an appointment would be an inefficient use of precious estate resources. *See Id.*

---

[6]     "Frejka Declaration" shall mean the *Declaration of Elise S. Frejka, CIPP/US, in Support of the Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect thereto, (III) Approving the Form and Manner of Notice thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* filed contemporaneously herewith.

**VI.     Arguments Related to the Terms of the Stalking Horse Agreement and a Hypothetical Sale Transaction are Premature.**

25.     Certain Objections to the Bidding Procedures raise issues that, in the Debtors' view, represent objections more properly lodged at the time of the Sale Hearing.  As identified in **Exhibit A**, these objections are not ripe for this Court's consideration at this time.  The hearing to approve Bidding Procedures is not intended to approve the Stalking Horse Agreement in its substance, but only its form in order to set a floor for the overbidding process, which may result in new buyers for one or more of the Debtors' Assets.

26.     In time, the Debtors will seek the approval of the Sale Transaction.  But there is no guarantee that the Stalking Horse Bidder will be the Winning Bidder.  As such, ruling on such Objections should be deferred until a Sale Hearing, and those arguments are preserved for that time.  Accordingly, the Revised Bidding Procedures Order should be entered.

## Conclusion

27.     For the reasons discussed in the Bidding Procedures Motion and this Reply, the Debtors believe that the Bidding Procedures are designed to support an active and competitive bidding process that will maximize the value of the Debtors' estates under the circumstances. Accordingly, the Debtors request that the Court overrule the applicable Objections, enter the Revised Bidding Procedures Order, and grant such other and further relief that the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: February 13, 2025
Wilmington, Delaware

*/s/ Patrick J. Reilley*

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:      (302) 652-3131
Facsimile:      (302) 652-3117
Email:          preilley@coleschotz.com
                snewman@coleschotz.com
                mfitzpatrick@coleschotz.com
                jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
Email:          aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                jeff.michalik@kirkland.com
                lindsey.blumenthal@kirkland.com

## EXHIBIT A

### Summary of Objections to the Motion[1]

| Objector and Docket No. | Bases of Objection | Response to Objection | Status[2] |
|---|---|---|---|
| **CRAFTY (AL) LLC** [Docket No. 257] | • The Sale Transaction contemplated by the Stalking Horse Agreement should be conditioned on assurance of payment of all of administrative claims. <br><br> • Landlord seeks to ensure that the Stalking Horse Bidder ("SHB") has no greater rights than the Debtors have as tenant under the Lease and that the SHB, as a non-debtor, may not piggy-back onto rights that belong exclusively to the Debtors as subjects of these chapter 11 cases. In particular, the SHB should be responsible for any damages SHB or its invitees or agents cause to the leased premises and SHB may not bring property into the leased premises or abandon SHB's property at those premises. | • The Debtors worked with CRAFTY (AL) LLC to resolve their objections. | **Resolved** |
| **IG Design Group Americas, Inc.** [Docket No. 258] | • The Debtors must comply with the store close procedures set forth in the Consignment Agreement, provide at least 14-days' notice prior to the closing of any liquidation sale, and provide that, upon the issuance of notice of Debtors' intent to liquidate, that DGA be granted access and authority to immediately remove the Consigned Goods from the Debtors' stores. <br><br> • Any liquidator must be required to provide adequate protection to DGA by agreeing to secure the Consigned Goods. | • The Debtors worked with IG Design Group Americas, Inc. to resolve their objections by adding language to the Revised Bidding Procedures Order. Revised Bidding Procedures Order ¶ 27. | **Resolved** |

---

[1]    Capitalized terms used but not defined herein shall have the meanings given to such terms in Reply or the revenant Objection.

[2]    This column reflects status as of the time of the filing of this Reply. The Debtors continue to engage with all parties and may update this summary of objections either with an updated summary or at the Hearing.

| Objector and Docket No. | Bases of Objection | Response to Objection | Status[2] |
|---|---|---|---|
| **U.S. Trustee**<br><br>[Docket No. 285] | • The Debtors failed to provide adequate notice of the proposed sale and related deadlines.<br><br>• The Debtors failed to provide adequate disclosures regarding assets to be sold.<br><br>• The Stalking Horse Bidder is not entitled to bid protections.<br><br>• The Court should not approve a super-super-priority expense claim.<br><br>• The Court should not grant an affiliate of the Stalking Horse Bidder consultation rights.<br><br>• The Debtors must provide evidence regarding the sale of personally identifiable information.<br><br>• The reservation of rights language in paragraph 4 of the Proposed Order and section 16 of the Bidding Procedures are overbroad.<br><br>• The Debtors cannot partially assume/assign executory contracts and unexpired leases on a consensual basis.<br><br>• The Final Reconciliation in the Stalking Horse Agreement cannot be automatically approved without further Court order. | • In filing the *Notice of Potential Sale Hearing* at Docket No. 182, the Debtors have provided adequate notice of the sale timeline and deadlines.  Reply ¶ 16.<br><br>• The Debtors filed their Schedules and Statements of Financial Affairs on February 11, 2025, thus providing adequate disclosure of the Debtors' assets.  Reply ¶ 17.<br><br>• The Expense Reimbursement is a material and necessary inducement for the Stalking Horse Bidder to enter into the Stalking Horse Agreement and is appropriate under the circumstances.  Reply ¶¶ 18–21.<br><br>• The Debtors only seek regular administrative priority for the Expense Reimbursement.  Any objections the U.S. Trustee makes with respect to the priority sought under other terms of the Stalking Horse Agreement are in relation to a Sale Transaction and are not ripe for the hearing to approve the Bidding Procedures.  Reply ¶ 22.<br><br>• The Consultation Parties and Reservation of Rights in the Bidding Procedures are reasonable and appropriate under the circumstances and an exercise of the Debtors' sound business judgment.  Reply ¶¶ 9, 14.<br><br>• The Debtors filed the Frejka Declaration providing support that a consumer privacy ombudsman is not required in these chapter 11 cases.  Reply ¶ 25.  The U.S. Trustee confirmed this objection is resolved.<br><br>• The Debtors can consensually assume/assign executory contracts and unexpired leases on a consensual basis.  Reply ¶ 15.<br><br>• The Final Reconciliation objection is premature and does not relate to the procedural relief sought by the Debtors in the Motion. | **Unresolved** |

| Objector and Docket No. | Bases of Objection | Response to Objection | Status[2] |
|---|---|---|---|
| **Ad Hoc Term Loan Group**<br><br>[Docket No. 299] | • The proposed sale timeline is too short.<br><br>• The Bidding Procedures effectively preclude any credit bid by the Term Lenders.<br><br>• The Bidding Procedures are improper because they propose to sell all of the Debtors' causes of action, including all tort claims, without any investigation or valuation of those claims.<br><br>• The Prepetition FILO Agent should not be a Consultation Party or have certain consent rights.<br><br>• The Court should make a determination concerning the allocation of the purchase price between the Term Priority Collateral and ABL Priority Collateral. | • The sale timeline is a sound exercise of the Debtors' business judgment and reasonable and appropriate under the circumstances. Reply ¶¶ 10–11.<br><br>• The Debtors worked with the Ad Hoc Term Loan Group to resolve their objection relating to credit bidding by incorporating agreed-upon language in the Revised Bidding Procedures Order and Bidding Procedures. Revised Bidding Procedures Order ¶ 19; Bidding Procedures § 6.2.<br><br>• The causes of action are property of the Debtors' estates which it may sell in its reasonable business judgment. Reply ¶ 12.<br><br>• The Consultation Parties are reasonable and appropriate under the circumstances and an exercise of the Debtors' sound business judgment. Reply ¶ 14.<br><br>• The remaining objections, including allocation of a purchase price, relate to the Stalking Horse Agreement and/or a Sale Transaction, are premature, and do not relate to the procedural relief sought by the Debtors in the Motion. | **Resolved** |

| Objector and Docket No. | Bases of Objection | Response to Objection | Status[2] |
|---|---|---|---|
| **Official Committee of Unsecured Creditors**<br><br>[Docket No. 303] | • The proposed sale timeline is too short.<br><br>• The Prepetition Term Loan Agent should not be a Consultation Party until the Stalking Horse Bid is withdrawn.<br><br>• The Purchase Price for competing bids must equal or exceed the Expense Reimbursement and Prepetition ABL/FILO Obligations with a defined dollar amount.<br><br>• The right to credit bid must be subject to the Committee's challenge rights under section 363(k) of the Bankruptcy Code and paragraph 29 of the Interim Cash Collateral Order.<br><br>• The Debtors must provide the Committee with copies of all bids upon receipt.<br><br>• The Bidding Procedures should set (i) a deadline for Debtors to provide adequate assurance of future performance; and (ii) a cure and assumption objection deadline allowing counterparties sufficient time to review and object.<br><br>• The Bidding Procedures should limit the ABL and FILO Lenders' consent rights to new rules, procedures, or modifications that would (x) require the ABL and FILO Lenders to include a deposit as part of a credit bid or (y) impose additional on their rights to Credit Bids or to be deemed a Qualified Bidder.<br><br>• The Stalking Horse Bid should not be approved. | • The sale timeline is a sound exercise of the Debtors' business judgment and reasonable and appropriate under the circumstances. Reply ¶¶ 10–11.<br><br>• The Consultation Parties and Purchase Price are both reasonable and appropriate under the circumstances and an exercise of the Debtors' sound business judgment. Reply ¶¶ 9 n.4, 14.<br><br>• The Debtors have added language to the Revised Bidding Procedures Order which subjects the right to credit bid to the Committee's challenge rights. Revised Bidding Procedures Order ¶ 18.<br><br>• The Debtors worked with the Committee to resolve their objection relating to providing copies of all bids by incorporating agreed-upon language in the Bidding Procedures. Bidding Procedure § 8.<br><br>• The Bidding Procedures now provide a specific date, February 22, 2025, for Cure Notices sent with respect to a Sale Transaction. They also provide a 14-day objection deadline for Cure Notices and a deadline for providing adequate assurance of future performance within 2 days of the Auction, if any. Revised Bidding Procedures Order ¶¶ 11, 22–23(a).<br><br>• The consent rights are reasonable and appropriate under the circumstances and an exercise of the Debtors' sound business judgment. Reply ¶¶ 9, 14.<br><br>• The Committee's arguments related to the Stalking Horse Bid relate to substantive terms of a Sale Transaction, are premature, and do not relate to the procedural relief sought by the Debtors in the Motion. | **Unresolved** |

| Objector and Docket No. | Bases of Objection | Response to Objection | Status[2] |
|---|---|---|---|
| **ARC CLORLFL001, LLC, et al.**<br><br>[Docket No. 317] | • The proposed sale timeline is too short and should provide Landlords with 14 days to object to the Winning Bidder.<br><br>• Adequate assurance should not have to be requested.<br><br>• A Back-Up Bidder should not be approved on the same day as the Winning Bidder. | • The sale timeline is a sound exercise of the Debtors' business judgment and reasonable and appropriate under the circumstances. Reply ¶¶ 9–10. The Bidding Procedures provide a 14-day objection deadline for Cure Notices. Revised Bidding Procedures Order ¶ 23(a). The Bidding Procedures now provide a specific date, February 22, 2025, for Cure Notices sent with respect to a Sale Transaction. Revised Bidding Procedures Order ¶ 11.<br><br>• The Bidding Procedures state that adequate assurance of future performance will be provided within 2 days of the Auction, if any. Revised Bidding Procedures Order ¶ 22.<br><br>• The Debtors worked with the Landlords to resolve their objection relating to a back-up bidder by incorporating agreed-upon language in the Bidding Procedures. Bidding Procedure § 12. | **Unresolved** |