**Exhibit D**

**September 13, 2024 Letter**

12531532

**1903P Loan Agent, LLC**
**c/o Gordon Brothers Group LLC**
**800 Boylston Street, 27th Floor**
**Boston, MA 02119**

September 13, 2024

**VIA EMAIL**

Jo-Ann Stores, LLC
5555 Darrow Road
Hudson, OH 44236
Attn: Jeffrey Dwyer, Interim CFO (jdwyer@alvarezandmarsal.com)

Re: FILO Availability Reserve[1]

Dear Jeff:

    I write concerning your letter to me dated September 6, 2024 (the "Letter"), and our prior communications regarding the FILO Documentation Agent's implementation of a $10 million FILO Availability Reserve.

    I want to start out by confirming what I have told you and other Company executives: Gordon Brothers intends to continue engaging with the Company in good faith and in a productive manner that is consistent with *both* parties' rights and obligations under the Credit Agreement. Our decision to exercise our Permitted Discretion to implement the FILO Availability Reserve is supported by, among other things, recent events, conditions and risks which adversely affect components of the borrowing base and the borrowing base collateral. Contrary to the Company's unfounded accusations, it was not motivated by any malicious intent or a desire to force a liquidation or cause other harm to the Company. As a significant lender to the Company, we have a vested interest in the Company's financial success and stand to suffer significant irreparable harm if the Company's dismal financial performance continues. While we understand that the Company is taking certain actions to turn things around, the Company's recent financial performance speaks for itself.

    It is not necessary (and would not be productive) for me to respond to all the inaccurate assertions and statements in the Letter. Suffice it to say, we disagree with its content and the record

---

[1] Capitalized terms used in this letter have the meanings given to them in the Notice of Availability Reserve dated August 16, 2024 and/or the Credit Agreement, as applicable.

Jo-Ann Stores, LLC
September 13, 2024
Page 2

concerning the parties' communications and conduct also speaks for itself. By way of example only, the Letter focuses primarily on events since you joined the Company as Interim CFO on August 1, 2024. Although there has been improved communication since then (except for the recent letter writing campaign), that does not negate the Company's dismal financial performance or its prior failure to comply with its obligations to deliver "promptly, such additional information regarding the business, legal, financial or corporate affairs" of the Company as "the FILO Documentation Agent may from time to time on its own behalf or on behalf of any Lender reasonably request." Credit Agreement, § 7.2(j). The Company's prior management team routinely refused to provide – or even discuss – information we requested regarding the Company's business and financial operations. Instead, they just repeatedly assured us that "things are getting better." Things did not get better (and have not gotten better). That pattern of conduct occurred during both the period leading up to when the Company filed bankruptcy and thereafter. Considering the Company's track record, we hope you understand why we have been (and continue to be) very concerned with the Company's performance, and why we insist that the Company comply with its contractual obligation to provide relevant information in a timely manner.

Rather than continuing to exchange letters or verbally threaten that the Company's current ownership group is "much more aggressive," it would be far more productive for us and our teams to focus on preparations for the upcoming meeting on September 25th at your corporate HQ to discuss the Company's performance and plan, and to visit your DC and stores. Considering the circumstances, we were hoping that the Company would prioritize our request to meet earlier in the month. I understand, however, that the Company could not make this happen, and I look forward to our meeting on September 25th.

We provided the Company with substantial information and explanations regarding our decision to establish the FILO Availability Reserve in written communications and during calls. For more information regarding our decision, I provide some further information below. Although we understand that the Company continues to disagree with our positions, the Credit Agreement does not require the Company to agree with the FILO Documentation Agent's Permitted Discretion before we can implement a FILO Availability Reserve. That reserve is – and will remain – in effect until we tell you otherwise.

I.       **The FILO Availability Reserve Is Proper Under the Credit Agreement**

The FILO Documentation Agent determined in its Permitted Discretion that the FILO Availability Reserve was appropriate (i) "to reflect the impediments to the Collateral Agent's ability to realize upon the Current Asset Collateral" and/or (ii) "to reflect criteria, events, conditions, contingencies or risks which adversely affect any component of the Borrowing Base or the FILO Borrowing Base, [or] the Current Asset Collateral." Credit Agreement at 4-5 (definition of "Availability Reserves"). "Permitted Discretion" means a determination made by the FILO Documentation Agent "in good faith in the exercise of its reasonable (from the

Jo-Ann Stores, LLC
September 13, 2024
Page 3

perspective of an asset-based lender) business judgment." *Id.* at 53. For the reasons explained below, and in the Notice of Availability Reserve dated August 16 (the "Reserve Notice"), the FILO Documentation Agent's emails to the Company dated August 30 (the "August 30 Emails"), the conference call between the parties later that day, the conference call between our counsel on September 4th and the FILO Deficiency Reserve Correction Notice dated September 6 (the "Deficiency Notice"), the establishment of the FILO Availability Reserve is proper under the Credit Agreement. There is no evidence that its implementation constitutes an abuse of discretion or an act of bad faith under the Credit Agreement or applicable law.

Consistent with standard ABL portfolio monitoring practices, the FILO Documentation Agent and its financial advisor, Alix Partners, have been tracking the Company's financial performance since it exited bankruptcy on April 30, 2024, including:

- tracking financials and collateral levels to various projections, including the monthly business plan dated March 12, 2024, and other weekly forecasts;
- conducting monthly store visits to visually inspect items, such as potential holes in inventory in-stocks, foot traffic, staffing, overall store conditions, etc.; and
- observing recent test counts at five stores.

As explained in detail in the August 30 Emails, since emerging from bankruptcy the Company has performed significantly below nearly all of its forecasts. The Company also has demonstrated an inability to accurately forecast its business performance, even as it continues to underperform a seemingly never-ending series of adjusted forecasts. As an example, as of July FY25 month-end, FYTD adjusted EBITDA is $71.1 million below plan (-$47.6 million actual vs. $23.6 million plan). Substantial additional variances were referenced in the August 30 Emails. We did not, however, establish the FILO Availability Reserve based solely on the Company consistently missing its forecasts. The FILO Availability Reserve was implemented to, among other things, reflect events, conditions, contingencies and risks that, based on our ABL monitoring practices, substantial experience and reasonable business judgment, are not appropriately accounted for in the current Net Recovery Percentages and Shrink Reserves set forth in HILCO's Inventory Appraisal dated July 19, 2024 (the "Appraisal"). "The effective date of [that] appraisal is June 1, 2024, the inventory cut-off date." Appraisal, §1.1. The Appraisal is not, as you say in the Letter, "only 4 weeks" old. It is based on data that is closer to four *months* old.

### A. The Net Recovery Percentages In The Appraisal Are Overstated And Do Not Appropriately Account For Recent Risks

Based on our substantial ABL experience with retailers in similarly distressed situations, financial underperformance and unfavorable inventory mix – to the extent and of the type that exists here – presents a substantial risk of a diminished recovery in a downside / liquidation scenario. The Appraisal itself states that "sales trend is an important factor to monitor because it

Jo-Ann Stores, LLC
September 13, 2024
Page 4

can indicate inventory performance and changes in consumer demand. A fluctuation in sales could affect the Company's inventory levels and recovery rates significantly." Appraisal, § 3.5.

The Company's sales are trending significantly worse than the assumptions set forth in the Appraisal, and they continue to decline: -5.32% 3-month comp trend in the Appraisal versus -9.9% 3-month comp trend, and -12.4% comp trend over the previous 4 weeks as of the week ending August 17, 2024. Because the recent, material deterioration in the Company's financial performance is not appropriately captured in the NOLVs in the Appraisal, in our good faith reasonable business judgement the current Net Recovery Percentages are materially overstated. As explained in the August 30 Emails, we rolled the impact of the Company's negative sales trend through a liquidation analysis by adjusting the following components:

- due to the sales decline, the multiplier is likely overstated and the sale term would need to be elongated to reflect the reduced sales velocity; and
- this longer sale term would result in increased expenses (payroll, occupancy costs, etc.).

In our business judgment, we believe these events, conditions and risks would negatively impact the Net Recovery Percentages in the Appraisal, resulting in a ~$17 million overstatement of the borrowing base.[2] *See* August 30 Emails.

### B.     The Shrink Reserves In The Appraisal Do Not Appropriately Account For Risks Based On The Company's Actual Inventory Shrink

As explained in the August 30 Emails (including the Alix Partners Inventory Shrink Comparison attached thereto), we exercised our Permitted Discretion to increase the Shrink Reserves to reflect the actual inventory shrink values calculated from the test counts we observed recently at five stores, which are not appropriately accounted for in the Shrink Reserves. The actual shrink averaged 2.7% across the five stores versus the Company's ~1.4% estimate using a "historical percentage of sales method."[3] Although the Company's method is commonly utilized by retailers to make quick and "normalized" shrink estimates, it can significantly deviate from actual shrink levels because it does not require an actual inventory examination. If the Shrink Reserves reflected the actual observed shrink, the borrowing base would decline by an additional $8.5 million.

---

[2] As previously explained, even though the gross recovery is also likely overstated due to a substantial unfavorable inventory mix (previously reported by the Company to be 60%), our analysis did not take this into consideration and instead maintained gross recoveries the same as the Appraisal.

[3] Moreover, the actual blended shrink at the six stores in the latest round of store closures conducted by Gordon Brothers was 11.4%. Although the Company has argued that the excess shrink was due to transfers or customer activity, it has never provided any supporting documentation.

Jo-Ann Stores, LLC
September 13, 2024
Page 5

Contrary to the Letter, the actual amount of shrink observed, and the fact that it exceeds the Shrink Reserves, was not known to us at the time of underwriting. It was not discovered until during the test counts in the summer of 2024.

### C. The $10 Million FILO Availability Reserve Is Conservative

For the reasons explained above and in our prior communications, the establishment of the $10 million FILO Availability Reserve represents a proper exercise of our Permitted Discretion under the Credit Agreement. The Company's complaint that the information provided by the FILO Documentation Agent does not precisely "tie to the $10 million reserve amount" is beside the point because the information shows that the FILO Availability Reserve is highly conservative.

### II. The Company's Points Regarding The Deficiency Notice Lack Merit

The Letter states that the Company received the Deficiency Notice "without dialogue or prior notice." We strongly disagree. During the September 4th call between our counsel, Choate, and your counsel, Mark Morris, Choate provided a further explanation regarding the reasons why we implemented the FILO Availability Reserve. Mr. Morris told Choate that the parties "will have to agree to disagree" on these issues and, at the end of the call, indicated that we would need to send a Deficiency Notice because of the disagreement.

The Letter raises three additional "points" regarding the Deficiency Notice, each of which can be quickly dismissed:

1) You allege (again) that we did not consult with the Administrative Agent prior to establishing the FILO Availability Reserve. As you know, I spoke with Jennifer Cann of Bank of America before sending the Reserve Notice, and I have spoken with her multiple times since then about the FILO Availability Reserve. I previously stated that I consulted with the Administrative Agent before implementing the FILO Availability Reserve in the Reserve Notice itself, in my email to you dated August 22nd, during our call on August 30th and in the Deficiency Notice. It's unclear whether you are seeking to apply a subjective, unconventional and heightened definition of "consult with." In any event, I stand by my previous statements and the Letter acknowledges that the consultation has already occurred.

2) The mere fact that the Company does not agree with our decision to implement the FILO Availability Reserve does not render untrue the statement in the Deficiency Notice that we have "remained available to discuss the FILO Availability Reserve with the Company and the Administrative Agent." The Reserve Notice, my August 22nd email to you and the Deficiency Notice expressly make clear that we remain available to discuss these issues with the Company and the Administrative Agent, and we (and our counsel) have done so on multiple occasions – in addition to our written communications. Indeed, we are the

Jo-Ann Stores, LLC
September 13, 2024
Page 6

      party that pressed the Company for an in-depth, in-person meeting as soon as possible – and before September 25. The Company declined our request.

3) The mere fact that the Company does not agree with our decision to implement the FILO Availability Reserve does not mean that we have not provided the Company with facts and detailed calculations in writing and on calls that explain our rationale for implementing the reserve and why it is proper under the Credit Agreement. We understand that the Company disagrees with our positions and reserves all of its rights regarding these issues, just as we disagree with the Company's positions and likewise reserve all of our rights.

    Notwithstanding our current disagreement regarding the FILO Availability Reserve, we remain willing to work cooperatively with you during these challenging times for the Company. I look forward to meeting with you and other Company executives on September 25th.

Sincerely,

Kyle C. Shonak
Sr. Managing Director

cc:    Bank of America, N.A., and counsel
        Centerbridge Credit, and counsel

CONFIDENTIAL
1903P_00000971