## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 6, 2025 at 2:00 p.m. (ET)** |
| | **Obj. Deadline: February 27, 2025 at 4:00 p.m. (ET)** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND COMPENSATE PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

### Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing, but not directing, the Debtors to retain and compensate the OCPs (as defined herein) on a postpetition basis pursuant to the procedures set forth herein (the "OCP Procedures"), without the need for each OCP to file a formal application for retention and compensation and (b) granting related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer of JOANN Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Jurisdiction and Venue**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 327, 328, 330, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

**Background**

5.      JOANN Inc., together with its Debtor and non-Debtor affiliates (collectively, "JOANN" or the "Company") is a leading national retailer of sewing, arts and crafts, and select home décor products.  Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers.  For over 80 years, JOANN has fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

6.      On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

business and managing their property as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  On January 16, 2025, the Court entered an order [Docket No. 103]

authorizing the procedural consolidation and joint administration of these chapter 11 cases

pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On January 28, 2025, the United

States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of

unsecured creditors [Docket No. 198] ("the Committee").  No request for the appointment of a

trustee or examiner has been made in these chapter 11 cases.

### The Ordinary Course Professionals

7.    The Debtors employ various attorneys, consultants, accountants, and other

professionals (collectively, the "OCPs") in the ordinary course of their business.  The OCPs

provide services for the Debtors in a variety of matters unrelated to these chapter 11 cases,

including specialized legal services, accounting, audit, and consulting services.  Nonexclusive lists

of the Debtors' current OCPs are attached as Schedule 1 and Schedule 2 to the Order

(the "OCP List").[3]

8.    The continued employment and compensation of the OCPs is in the best interests

of the Debtors' estates, their creditors, and other parties in interest.  The OCPs have significant

knowledge, expertise, and familiarity with the Debtors and their operations.  Indeed, many of the

OCPs were retained as ordinary course professionals during the Debtors' prior chapter 11 cases.

Although the Debtors anticipate that the OCPs will continue to represent the Debtors during these

chapter 11 cases, many will not do so if the Debtors cannot pay them on a regular basis.  The

Debtors undoubtedly would incur additional and unnecessary expenses in educating and retaining

---

[3]    The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases, as the need arises, by filing a list or lists of such additional professionals and complying with the notice requirements set forth in the OCP Procedures.

replacement professionals without the knowledge, expertise, and familiarity the OCPs provide. Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required to preserve and enhance operational value of the Debtors' estates and allow for the sale of some or all of the Debtors' assets during the administration of these chapter 11 cases.  Moreover, in light of the costs associated with the preparation of employment applications for professionals who will receive relatively modest fees, it would be impractical, inefficient, and costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP.

9.      The Debtors are not requesting authority to pay prepetition amounts owed to OCPs. Although some of the OCPs may hold unsecured claims against the Debtors relating to services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs have an interest materially adverse to the Debtors, their creditors, or other parties in interest.

**The OCP Procedures**

10.     The Debtors request that the Court approve the following OCP Procedures for retention and payment of the OCPs:

   a.  Within thirty days after the later of (i) the date of entry of the Order or (ii) the date on which an OCP commences work for the Debtors, such OCP shall file, or cause to be filed, a declaration of disinterestedness, substantially in the form attached as Exhibit 1 to the Order (each, a "Declaration of Disinterestedness"), with the Court and served upon:  (a) the Debtors, 5555 Darrow Road, Hudson, Ohio 44236, Attn.:  Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.:  Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.:  Malcolm M.

Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher Carter (christopher.carter@morganlewis.com) and Marjorie Crider (marjorie.crider@morganlewis.com); (e) counsel to the Prepetition FILO Agent, Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.:  John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com); (f) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (g) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.:  Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.:  Matthew Bentley (matthew.bentley@afslaw.com); (h) counsel to Gordon Brothers Retail Partners, LLC, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, New York 10020, Attn.:  Steven Reisman (sreisman@katten.com) and Cindi Giglio (cgiglio@katten.com); and (i) proposed counsel to the Official Committee of Unsecured Creditors, (i) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 1007, Attn:  Jason Adams (jadams@kelleydrye.com)., Maeghan McLoughlin (mmcloughlin@kelleydrye.com) and Connie Choe (cchoe@kelleydrye.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware, 19899-8705, Attn: Bradford Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com) (collectively, the "Notice Parties").

b. The Notice Parties shall have fourteen days after the date of filing of each OCP's Declaration of Disinterestedness (the "Objection Deadline") to object to the retention of such OCP.  The objecting party shall file any such objection and serve such objection upon the Notice Parties and the respective OCP on or before the Objection Deadline.  If any such objection cannot be resolved within fourteen days of its receipt, the matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing date that is no less than fourteen days from that date or on a date otherwise agreeable to the parties.  The Debtors shall not be authorized to retain and compensate such OCP until all outstanding objections have been withdrawn, resolved, or overruled by order of the Court.

c. If no objection is received from any of the Notice Parties by the Objection Deadline with respect to any particular OCP, the Debtors shall be authorized, but not directed, to:  (i) retain such OCP as of the date such OCP commenced providing services to the Debtors and (ii) compensate such OCP as set forth below.

d.  The Debtors shall be authorized, but not directed, to pay, without formal application to the Court by any OCP, 100% of fees and disbursements to each of the OCPs retained by the Debtors pursuant to the OCP Procedures upon submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date; *provided* that fees paid to each OCP set forth on Schedule 1 attached to the Order, excluding costs and disbursements, may not exceed $150,000 per month per OCP, calculated as an average over a rolling three-month period, while these chapter 11 cases are pending (the "Tier 1 OCP Monthly Cap") and the fees of each OCP set forth in Schedule 2 attached to the Order, excluding costs and disbursements, may not exceed $50,000 per month per OCP, calculated as an average over a rolling three-month period, while these chapter 11 cases are pending (the "Tier 2 OCP Monthly Cap"); *provided*, *further*, that the total amount disbursed per quarter, for each OCP set forth on Schedule 1, does not exceed $450,000 per OCP (the "Tier 1 OCP Quarterly Cap") and the total amount disbursed per quarter, for each OCP set forth on Schedule 2, does not exceed $150,000 per OCP (the "Tier 2 OCP Quarterly Cap," and together with the Tier 1 OCP Monthly Cap, Tier 1 OCP Quarterly Cap, and Tier 2 OCP Monthly Cap, the "OCP Caps"). The OCP Caps may be increased by mutual agreement between the Debtors, the U.S. Trustee, the Committee, counsel to the Prepetition ABL Agent, and counsel to the Prepetition FILO Agent; *provided* that the Debtors shall file a notice with the Court and submit notice to the Notice Parties of any such agreed increase.

e.  To the extent that fees payable to any OCP exceed the applicable OCP Cap, the OCP shall file a fee application (a "Fee Application") with the Court for the amount in excess of the applicable OCP Cap pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the Office of the United States Trustee, and any applicable orders of the Court, unless the United States Trustee agrees otherwise.

f.  Beginning on the quarter ending March 31, 2025, and for each quarter thereafter during which these chapter 11 cases are pending, the Debtors shall, within thirty days thereof, file with the Court and serve on the Notice Parties a statement with respect to each OCP paid during the immediately preceding quarterly period (the "Quarterly Statement"). Each Quarterly Statement shall include: (i) the name of the OCP; (ii) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported quarter; and (iii) a general description of the services rendered by that OCP.

g.  The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases by including such OCPs on an amended version of the OCP List that is filed with the Court and served on the Notice Parties and having such OCPs comply with the OCP Procedures.

**Basis for Relief**

11.    Section 327 of the Bankruptcy Code requires court approval for the employment of "professional persons" retained to represent or perform services for the estate.  In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and, therefore, must be retained by express approval of the court, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations.  *See, e.g.*, *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.").  In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

a.    whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

b.    whether the entity is involved in negotiating the terms of a plan of reorganization;

c.    whether the entity's employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d.    whether the entity is given discretion or autonomy to exercise its own professional judgment in some part of the administration of the debtor's estate;

e.    the extent of the entity's involvement in the administration of the debtor's estate; and

f.    whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g.*, *In re First Merchs. Acceptance Corp.*, No. 97-1500, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *see also In re Am. Tissue, Inc.*, 331 B.R. 169, 174 (Bankr. D. Del. 2005) (applying the *First Merchs.* factors and holding that a litigation consulting firm was not a "professional" for purposes of section 327 of the Bankruptcy Code as the litigation consulting firm "did not play a central or significant role in the overall administration of the [d]ebtors' estate"); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (finding that the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case" did not require approval under section 327 of the Bankruptcy Code); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (noting that only those professionals involved in the "administration of the debtor's estate," rather than the debtor's ongoing business, require approval under section 327 of the Bankruptcy Code). The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code. None of the factors alone is dispositive. *See First Merchs.*, 1997 WL 873551, at *3 ("In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in total.").

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  February 13, 2025
Wilmington, Delaware

/s/ Patrick J. Reilley

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:    (302) 652-3131
Facsimile:    (302) 652-3117
Email:          preilley@coleschotz.com
                     snewman@coleschotz.com
                     mfitzpatrick@coleschotz.com
                     jdougherty@coleschotz.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                     aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          anup.sathy@kirkland.com
                     jeff.michalik@kirkland.com
                     lindsey.blumenthal@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*