## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 385 and 430** |

## ORDER
## (I) AUTHORIZING
## AND APPROVING THE
## CONDUCT OF STORE CLOSING SALES,
## WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS,
## CLAIMS, AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order"), (a) authorizing and approving the initiation of store closing or similar themed sales at the stores identified on Schedule 1 (the "Store Closings" and, collectively, the "Initial Closing Stores"); (b) authorizing the Debtors to conduct Store Closings at additional stores (the "Additional Closing Stores" if any, and together with the Initial Closing Stores, the "Closing Stores") at a later date or dates pursuant to the procedures set forth herein, with all such sales to be free and clear of all liens, claims, and encumbrances (the "Store Closing Sales"), in accordance with the terms of the store closing procedures (the "Store Closing Procedures"), attached as Schedule 2; (c) approving modifications

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

to the Gift Card Program and Refund and Exchange Policy; and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:[3]

A.  The Debtors have advanced sound business reasons for adopting the Store Closing Procedures as set forth in the Motion and at the Hearing.

B.  The Store Closing Procedures, which are attached hereto as **Schedule 2**, are reasonable and appropriate, and the conduct of the Store Closing Sales in accordance with the Store Closing Procedures will provide an efficient means for

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

the Debtors to dispose of the Store Closing Assets and are in the best interest of the Debtors' estates.

C.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

D.      The Store Closings and Store Closing Sales are in the best interest of the Debtors' estates.

E.      The Dispute Resolution Procedures are fair and reasonable. To the extent the Dispute Resolution Procedures conflict with Liquidation Sale Laws or other applicable nonbankruptcy law, the Dispute Resolution Procedures shall control.

F.      The Debtors have represented that they intend to neither sell nor lease personally identifiable information pursuant to the relief requested in the Motion.

G.      The entry of this Order is in the best interests of the Debtors and their estates; and now therefore it is hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      To the extent any conflict between this Order and the Store Closing Procedures, the terms of this Order shall control.

**I.      Authority to Engage in Store Closing Sales and Conduct Store Closings**

3.      The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Store Closing Sales at the Closing Stores in accordance with this Order and the Store Closing Procedures.

4.      The Store Closing Procedures are approved in their entirety.

5.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Order and the Store Closing Procedures.

6.      All entities that are presently in possession of some or all of the Inventory or FF&E in which the Debtors hold an interest that are or may be subject to this Order hereby are directed to surrender possession of such merchandise or FF&E to the Debtors.

7.      Notwithstanding anything to the contrary in this Order, except with respect to consigned goods or as otherwise permitted by the owners of such property, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; *provided*, that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters, or (b) return such property to the applicable lessor or other owner of such property.

8.      Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closing Sales and Store Closings and to take the related actions authorized herein.

## II.      Conduct of the Store Closing Sales

9.      All newspapers and other advertising media in which the Store Closing Sales and Store Closings may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors to conduct the Store Closing Sales and Store Closings, including, without limitation, to conduct and advertise the sale of the merchandise and FF&E in the manner contemplated by and in accordance with this Order and the Store Closing Procedures.

10.      Subject to the Dispute Resolution Procedures provided for in this Order, the Debtors are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closing Sales and Store Closings without necessity of further order of this Court as

provided in the Store Closing Procedures (subject to any Side Letters, as defined below), including, but not limited to, advertising the sale as a "store closing sale", "sale on everything", "everything must go", or similar-themed sales as contemplated in the Store Closing Procedures through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Store Closing Procedures.

11.    Except as expressly provided in the Store Closing Procedures (subject to any Side Letter (as defined herein)), the sale of the Inventory and FF&E shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement to the contrary relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Store Closing Sales (including the sale of the Inventory and FF&E) or "going dark" provisions.  Any such restrictions shall not be enforceable in conjunction with the Store Closings or the Store Closing Sales.  Breach of any such provisions described above in conjunction with the Store Closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Store Closing Sales are conducted in accordance with the terms of this Order, any Side Letter (as defined below), and the Store Closing Procedures. The Debtors and the landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of the Court, and such Side Letters shall be binding as among the Debtors and any such landlords, *provided* that, to the extent the liquidation of (a) ABL Priority Collateral is involved, the Debtors shall consult with the Prepetition ABL Agent and the Prepetition FILO Agent (i) before entering into any agreement, including a Side Letter, regarding

any amendments or modifications to the Store Closing Procedures, and (ii) before abandoning any ABL Priority Collateral located at the Closing Stores; *and* (b) Term Priority Collateral is involved the Debtors shall consult with the Prepetition Term Agent and the Prepetition Term Loan Lender Ad Hoc Group (i) before entering into any agreement, including a Side Letter, regarding any amendments or modifications to the Store Closing Procedures, and (ii) before abandoning any Term Priority Collateral located at the Closing Stores; *provided* that this paragraph 11(b) shall be subject to the terms and rights set forth in paragraph 17 of this Order, *provided further* that nothing in such Side Letters affects the provisions of this Order, except with respect to the conduct of the Store Closing Sales.  In the event of any conflict between the Store Closing Procedures, any Side Letter, and this Order, the terms of such Side Letter shall control.

12.    Except as expressly provided for herein or in the Store Closing Procedures, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales or the sale of Inventory or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings (including the sale of inventory or FF&E), and/or (b) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or

sale of the Inventory or FF&E, or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

13.    All in-store sales of Store Closing Assets shall be "as is" and final.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the point-of-sale areas at all Closing Stores.  As to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

14.    The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

15.    Pursuant to section 363(f) of the Bankruptcy Code, the Debtors are authorized to sell the Store Closing Assets and all sales of Store Closing Assets shall be free and clear of any and all liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount, with the same priority as, and to the same

extent that any such liens, claims, and encumbrances have with respect to the Store Closing Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

16.     The Debtors (as the case may be) are authorized and empowered to transfer Store Closing Assets among, and into, the Closing Stores in accordance with the Store Closing Procedures, as applicable. The Debtors may sell their FF&E as provided for and in accordance with the terms of the Store Closing Procedures (as may be modified by any Side Letter) and subject to paragraph 17 of this Order; *provided*, that the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

17.     Notwithstanding anything to the contrary contained herein, in the Store Closing Procedures, or in the Cash Collateral Order, the Debtors shall not sell or abandon any Store Closing Assets that constitute Term Priority Collateral under that certain Second Amended and Restated Intercreditor Agreement, dated as of April 30, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Intercreditor Agreement") by and between Bank of America, N.A., as ABL Agent, and Wilmington Savings Fund Society, FSB, as Term Agent, including, without limitation, any FF&E, until after April 18, 2025.   After April 18, 2025, any net cash proceeds from the sale of any Store Closing Assets that constitute Term Priority Collateral, including, without limitation, any FF&E, shall be deposited into a segregated bank account designated by the Prepetition Term Loan Agent immediately upon receipt.  The release and application of such proceeds shall be governed by the relative priorities for the Term Priority Collateral as set forth in Exhibit 1 to the Cash Collateral Order (and in accordance with the Prepetition Credit Documents), and any further order of the Court or agreement among the parties.  To the extent applicable, in the event the Debtors sell any bundled

package or combination of Store Closing Assets that includes both ABL Priority Collateral and Term Priority Collateral, the respective rights of the Prepetition Secured Parties with respect to the allocation and distribution of such sale proceeds pursuant to the terms of the Intercreditor Agreement shall be fully preserved.

18. Neither the Store Closing Procedures nor this Order authorize the Debtors to transfer or sell to any party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policies and applicable state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").

19. The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.

20. Nothing herein shall limit the Debtors' right to pause or discontinue a Store Closing Sale at a Closing Store on notice to affected parties.

21. Nothing herein is intended to affect any rights of any applicable government unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

III.      **Procedures Relating to Additional Closing Stores**

22.      To the extent that the Debtors seek to conduct Store Closing Sales at any Additional Closing Store, the Store Closing Procedures and this Order shall apply to the Additional Closing Stores.

23.      Prior to conducting the Store Closing Sales at any Additional Closing Store, the Debtors will file a list including such Additional Closing Store with this Court (each, an "Additional Closing Store List"), and serve a notice of their intent to conduct the Store Closing Sales at the Additional Closing Store on the applicable landlords (collectively, the "Additional Closing Store Landlords"), the Additional Closing Store Landlords' counsel of record (if known), and other interested parties by email (to the extent such parties have previously consented in writing to receiving service by email) or overnight mail within three (3) business days of filing the Additional Closing Store List.  With respect to Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

24.      The Additional Closing Store Landlords and any interested parties shall have fourteen (14) days after service of the applicable Additional Closing Store List to object to the application of this Order to an Additional Closing Store or request that the Debtors enter into a Side Letter with the applicable landlord of the Additional Closing Store as permitted by paragraph 11 herein. If no timely objections are filed with respect to the application of this Order to an Additional Closing Store, the Debtors are authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with conducting the Store Closing Sales at the Additional Closing Stores in accordance with this Order and the Store Closing Procedures. If any objections are filed with respect to the application of this Order, to an Additional Closing Store, and such

objections are not resolved, the objections and the application of this Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary. Any objections as to particular Additional Closing Stores will not affect the Debtors' rights to begin Store Closing Sales at non-objected Additional Closing Stores.

**IV.      Gift Card Program and Refund and Exchange Policy.**

25.      Fourteen (14) days following the entry of this Order, the Debtors will no longer accept gift cards on the ecommerce platform or in their retail stores.  All such validly-issued gift cards will be deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards may not be redeemed for cash at any time.

26.      Fourteen (14) days following the entry of this Order, the Debtors will no longer accept refunds, returns, or exchanges of merchandise sold in the Debtors' retail stores or on the Debtors' ecommerce platform.

27.      The Debtors shall post a one-page notice summarizing the foregoing policy changes at the registers in each of the Closing Stores within three business days following the entry of this Order.

28.      As of the date of the entry of this Order, the sale of all items in the Debtors' retail stores shall be considered "final."

**V.       Dispute Resolution Procedures with Governmental Units**

29.      Nothing in this Order, the Store Closing Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property

after the date of entry of this Order. Nothing contained in this Order, the Store Closing Procedures, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Store Closings and the Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws"). Nothing in this Order, the Store Closing Procedures, or any Side Letter shall alter or affect obligations to comply with all applicable federal Safety Laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Order. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

30.    To the extent that the sale of Store Closing Assets is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement

directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Store Closing Assets, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closing Assets, the dispute resolution procedures in this section shall apply and the Dispute Resolution Procedures shall control over any Side Letters:

(A)     Provided that the Store Closing Sales are conducted in accordance with this Order and the Store Closing Procedures, the Debtors and the Debtors' landlords, shall be presumed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Store Closing Sales of the Store Closing Assets, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Store Closing Sales and sales of the Store Closing Assets (collectively, the "Liquidation Sale Laws") of any state or Local Governmental Unit (as defined in Bankruptcy Code section 101(27)); provided, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

(B)     Within three (3) business days after entry of this Order, the Debtors will serve by first-class mail, copies of this Order and the Store Closing Procedures on the following: (a) the Attorney General's office for each state where the Store Closing Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held; (c) the division of consumer protection for each state where the Store Closing Sales are being held; (d) the landlords, and any known counsel for the landlords, if any, for the Closing Stores; and (e) any subtenants (if any) under the leases with respect to the Closing Stores (collectively, the "Dispute Notice Parties").

13

(C)     With respect to any Additional Closing Stores, within three (3) business days after filing any Additional Closing Store List with the Court, the Debtors will serve by first-class mail, copies of the Order and the Store Closing Procedures on the Dispute Notice Parties.

(D)     To the extent that there is a dispute arising from or relating to the Store Closing Sales, this Order, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition ABL Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher Carter (christopher.carter@morganlewis.com) and Marjorie Crider (marjorie.crider@morganlewis.com); (e) counsel to the Prepetition FILO Agent, Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com); (f) counsel to the Prepetition Term Loan Lender Ad Hoc Group, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Josh Brody (JBrody@gibsondunn.com), and Kevin Liang (KLiang@gibsondunn.com), (ii) Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, 22nd Floor, New York, New York 10035, Attn: Andrew Glenn (aglenn@glennagre.com), Kurt Mayr (kmayr@glennagre.com), Agustina Berro (aberro@glennagre.com), Malak Doss (mdoss@glennagre.com), and Esther Hong (ehong@glennagre.com), and (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th

Floor, Wilmington, Delaware 19801, Attn: Donna Culver (dculver@morrisnichols.com), Robert Dehney (rdehney@morrisnichols.com), Matthew Harvey (mharvey@morrisnichols.com), and Brenna Dolphin (bdolphin@morrisnichols.com); (g) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (h) the affected landlord, and their counsel, if any; and (i) the Committee, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street 17th Floor, Wilmington, DE 198999 Attn.: Bradford Sandler (bsandler@pszjlaw.com) and James E. O'Neill (joneill@pszjlaw.com) and (ii) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com), and Connie Choe (cchoe@kelleydrye.com). If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(E)     In the event that a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that the terms of this Order nor the conduct of the Debtors pursuant to this Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Order, as applicable, absent further order of the Court. Upon the entry of this Order, the Court grants authority for the Debtors to conduct the Store Closing Sales pursuant to the terms of this Order and the Store Closing Procedures (as may be modified by any Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(F)        If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (D) and (E) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made de novo.

31.     Subject to paragraphs 29 and 30 above, each and every federal, state, or Local agency, departmental, or Governmental Unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales.  Nothing in this Order is intended to affect any rights of any Governmental Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred prior to the Petition Date (if any).

32.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Order and the Store Closing Procedures (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Order and the Store Closing Procedures (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

33.     Nothing in this Order, the Store Closing Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property

16

after the date of entry of this Order. Nothing contained in this Order, the Store Closing Procedures, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

34.    Notwithstanding anything to the contrary herein, in view of the importance of the use of sign-walkers, banners, and other advertising to the Store Closing Sales and the Store Closings, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court. Such hearing will, to the extent practicable and subject to the Court's availability, be scheduled initially no later than the earlier of (a) the Hearing or (b) within three (3) business days of such request; *provided, that*, notice of such hearing will be promptly provided to the Notice Parties, including the Debtors, Committee, the Prepetition Term Loan Lender Ad Hoc Group, and any impacted landlord (and their counsel, if any). This scheduling procedure shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

35.    The Debtors are not authorized to, and shall not, sell any inventory or other property owned by SVP Sewing Brands, LLC or its affiliates (collectively, "SVP" and, such inventory and property, the "SVP Property").  SVP is authorized to remove the SVP Property from any Closing Stores and discontinue operations at the Closing Stores (notwithstanding anything to the contrary in that certain Master Sublease, dated as of July 1, 2019, between Jo-Ann Stores, LLC and SVP Sewing Brands LLC, as may be amended, modified, supplemented, or modified from time to time) subject to the following conditions:  (i) prior to the conclusion of Store Closing Sales at a Closing

Store, SVP shall only (absent further order of the Court or consent of the Debtors) be permitted to remove and/or decommission SVP Property (a) in the ordinary course of business between SVP Sewing Brands, LLC and Jo-Ann Stores, LLC or (b) if outside the ordinary course of such parties' business, outside of normal business hours; provided that the Debtors shall provide SVP with reasonable access to such Closing Store outside of normal business hours; (ii) if such retrieval is conducted outside the ordinary course of such parties' business, SVP shall provide the Debtors at least five (5) business days' notice prior to retrieving SVP Property from a Closing Store and shall coordinate with the applicable JOANN store managers regarding the same; and (iii) SVP shall otherwise use commercially reasonable efforts to not disrupt the Debtors' operations.  The Debtors shall (i) provide SVP with written notice of at least fourteen days (or the period of notice provided to the applicable landlord, whichever is longer) before vacating any Closing Store and (ii) continue to provide SVP with reasonable access to the Closing Stores until such notice period expires.  For the avoidance of doubt, the SVP Property is not subject to the rights of any of the Debtors' landlords, including under Section 5 of the Store Closing Procedures.   Paragraphs 12, 13, 14, and 28 of this Order shall not apply to sales of SVP Property and the SVP Property shall not be considered "Store Closing Assets."  Nothing in this Order shall impair any rights or remedies of SVP under any lease or contract with the Debtors or applicable law.  The automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, are hereby vacated and modified solely to the extent necessary to implement the relief set forth in this paragraph.  This paragraph shall govern and control to the extent of any conflict with any other paragraph in this Order.

36.     The Debtors agree to and shall comply with the terms of that certain Pattern Supply Agreement dated as of December 15, 2023 ("Consignment Agreement") by and between Debtors and IG Design Americas, Inc. ("DGA") and its affiliates with respect to all Store Closing Sales,

Store Closings, and Closing Stores (as those terms are defined in this Order) including but not limited to, the "Store Closings" provisions set forth in Section 3 of the Consignment Agreement. Notwithstanding the preceding sentence, DGA agrees to and shall permit the Debtors to continue to liquidate the consigned goods under the normal store liquidation process contemplated by the Consignment Agreement, or as otherwise agreed by the parties, until the conclusion of each Store Closing Sale; *provided, however*, that DGA reserves all rights to seek the immediate return or discard of consigned goods under the brand names of Vogue and Burda to the extent that DGA is not able to obtain permission, after good faith efforts, to include such brands in the Store Closing Sales. Upon the conclusion of each Store Closing Sale, Debtors further agree to grant DGA, and its agents and assigns, reasonable access (including before, during, and after store business hours) to immediately remove the consigned goods from such Closing Store. For the avoidance of doubt, nothing herein shall modify any obligations the Debtors owe to DGA under any interim and final orders, as applicable, approving the Debtors' cash management motion, including, but not limited to (i) the full and timely daily reporting of Debtors' Point-of-Sale activity and gross revenue with respect to the sale of consigned goods from DGA on the immediately preceding day, in the same manner and to the same extent that Debtors provided DGA with the information prior to the Petition Date and (ii) maintaining the identifiable proceeds from the sale of such consigned goods so as to be readily identifiable as the proceeds of the sale of goods from the Consignment Agreement with DGA.

37.     Notwithstanding the foregoing, the Debtors are not authorized to sell, and the Store Closing Sales shall not include, any equipment or other personal property belonging to PepsiCo, Inc. its affiliates, or affiliated bottlers (collectively, the "Pepsi Entities"), and nothing in this Order

shall sever or otherwise impact any ownership interest of the Pepsi Entities in any equipment or other Personal Property located at the Debtors' retail locations.

## VI.        Other Provisions

38.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including any payment made in accordance with this Order), nothing in this Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

39.    Notwithstanding anything to the contrary herein, any payment made or authorization provided pursuant to this Order, including the application of any proceeds from the sale or other asset dispositions contemplated herein, shall be subject to any interim and final orders,

as applicable, approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral; *provided* that any application of any proceeds from the sale or other asset dispositions of Store Closing Assets contemplated herein that is derived from Term Priority Collateral shall be subject to the terms and rights set forth in paragraph 17 of this Order.

40.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Order without further court approval on notice to parties in interest.

41.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

42.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

43.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

44.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

45.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

46.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

47.     This Court shall retain jurisdiction with regard to all issues or disputes relating to this Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors and the landlords for protection from interference with the Store Closings or Store Closing Sales, (c) any other disputes related to the Store Closings or Store Closing Sales, and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action in respect of the Debtors, the landlords, the Store Closings, or the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.


**Dated: February 14th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**