## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 17 and 444** |

**ORDER (I) APPROVING BIDDING
PROCEDURES, (II) SCHEDULING CERTAIN DATES AND DEADLINES
WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) APPROVING THE STALKING HORSE AGREEMENT,
(V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES, (VI) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND LEASES,
(VII) APPROVING THE SALE OF ASSETS, AND (VIII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the

Bidding Procedures attached hereto as **Exhibit 1**, (b) approving the terms of the Stalking Horse

Agreement attached as **Exhibit 2** and the Stalking Horse Bid as a Qualified Bid, (c) establishing

certain related dates and deadlines, (d) approving the form and manner of notice of the Auction

and the Sale Transactions, attached hereto as **Exhibit 3** (the "Sale Notice"), (e) approving the form

and manner of notice of the Winning Bidder(s) if there is no auction attached hereto as

**Exhibit 4(a)**, and, if there is an auction, the form and manner of notice of the Winning Bidder(s)

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

1

attached hereto as **Exhibit 4(b)** (collectively, the "Notice of Winning Bidder" and "**Exhibit 4**"), (f) approving the Assumption and Assignment Procedures, including the notices of potential assumption and proposed cure amounts attached hereto as **Exhibit 5** (the "Cure Notice"), and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other or further notice need or shall be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court on February 14, 2025 (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:[3]

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Jurisdiction and Venue.   The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Statutory and Legal Predicates.   The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 1075-1, 2002-1, and 9013-1. The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

Sale Process.   The Debtors and their advisors have been engaging with a number of potential interested parties to solicit and develop the highest and otherwise best offers for the Assets.

Bidding Procedures.   The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures").   The Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value of the proceeds of one or more sales (the "Sale Transactions") of the Debtors' assets (the "Assets").   The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets.

Stalking Horse Bidder.   The Expense Reimbursement payable under the Stalking Horse Agreement shall be deemed an actual and necessary cost of preserving the Debtors' estates within

3

the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

<u>Sale Notice</u>.    The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction (if any) and any Sale Transaction with respect to the Assets, including, without limitation:  (a) the date, time, and place of the Auction; (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale Transactions and entry of an order approving any Sale Transactions; and (d) notice of the proposed assumption and assignment of Contracts to the Winning Bidder(s), if any.

<u>Assumption and Assignment Provisions</u>.    The Debtors have articulated good and sufficient business reasons for the Court to approve the assumption and assignment procedures set forth herein (the "<u>Assumption and Assignment Procedures</u>"), which are fair, reasonable, and appropriate.    The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

<u>Notice of Winning Bidder</u>.   The Notice of Winning Bidder, substantially in the form attached hereto as **Exhibit 4**, is reasonably calculated to provide interested parties with timely and proper notice of any proposed Sale Transaction with respect to the Assets, including, without limitation:  (a) the Winning Bidder(s) for the Assets, (b) the Back-Up Bidder(s), if applicable, (c) the key terms of the proposed Sale Transaction, and (d) the date, time, and place of the Sale Hearing.

<u>Cure Notice</u>.   The  Cure Notice, the form of which is attached hereto as **Exhibit 5**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice

4

of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein (including the Assumption and Assignment Procedures), except as expressly required herein.

Notice.    Notice of the Motion, the proposed Bidding Procedures, the proposed Assignment and Assumption Procedures, and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, such that no other or further notice need or shall be required or provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.    A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Motion is GRANTED as set forth herein.

All objections to the relief granted in this order (the "Order") that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.    The Bidding Procedures**

1.    The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern the Bids and proceedings related to any sale of the Assets and the Auction (if any) in all respects.    The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable, and appropriate, and are designed to maximize recoveries for the benefit of the

Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

3.      Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, in consultation with the Consultation Parties, shall have the right to, in each case with respect to any Assets being sold pursuant to the Bidding Procedures, (a) determine which Qualified Bid is the highest or otherwise best offer for the applicable Assets, (b) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

4.      Subject to this Order and the Bidding Procedures, the Debtors shall have the right, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, in consultation with the Consultation Parties, to modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and the Auction process, (c) provide reasonable accommodations to the Stalking Horse Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the

6

value of the Assets, as applicable; *provided* that such extensions, waivers, new rules and procedures, accommodations, and modifications (except as are consented to or otherwise approved or permitted in accordance with the Bidding Procedures) (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Bankruptcy Code, or any order of the Court and (ii) are as promptly as practicable communicated to each Qualified Bidder or at the Auction (if any); *provided further*, that notwithstanding anything herein to the contrary, any such extensions, waivers, new rules and procedures, accommodations, and modifications pursuant to this paragraph 4 shall not, in any way or manner, abrogate, limit, or impair any party's right to Credit Bid.

5.    If the Debtors, in consultation with the Consultation Parties, determine not to conduct an Auction for the Assets, then the Debtors shall file a notice with the Court of such determination within one (1) calendar day of making such determination.

6.    The Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and the Sale Transactions, including evaluation of any and all Bids, scheduling and operation of the Auction (if applicable), and selection of a Winning Bid, as well as any modifications of the Bidding Procedures, subject to and in accordance with the Bidding Procedures; *provided* that, the Debtors shall not consult with a Consultation Party regarding the evaluation of Bids or the selection of a Winning Bid if such Consultation Party has submitted a competing Bid, unless and until the Consultation Party unequivocally revokes in writing its Bid and waives its right to further bid; *provided*, *further*, that immediately upon any Consultation Party's secured debt (as applicable) being indefeasibly paid in full in cash (and, with respect to the Prepetition ABL/FILO Obligations, being "Paid in Full" as defined in the Cash Collateral Order),

7

such Consultation Party shall immediately no longer be a Consultation Party under the Bidding Procedures.

7.      Except for the Expense Reimbursement provided to the Stalking Horse Bidder, no person or entity participating in the Debtors' sale process under the Bidding Procedures shall be entitled to any expense reimbursement, break-up fees, "topping" fees, termination fees, or other fees, payments, or reimbursements whatsoever in connection with any Bid, preparation thereof, or participation at the Auction (if any) or generally under the Bidding Procedures; and, by submitting a Bid, such person or entity shall be deemed to have forever waived its right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee(s), whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

8.      Any deposit provided by the Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures or the Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

**B.      The Stalking Horse Agreement and Expense Reimbursement.**

9.      The Debtors are authorized to enter into the Stalking Horse Agreement with Gordon Brothers Retail Partners, LLC, an affiliate of the Prepetition FILO Agent ("Gordon Brothers"), for the purchase and sale of the Assets attached as **Exhibit 2**, and the terms of the Stalking Horse Agreement are hereby approved, subject to this Order; *provided, however*, that, in accordance with the Bidding Procedures, the rights of all parties in interest to object to (a) the terms and provisions of the Stalking Horse Agreement, and (b) any sale of the Assets or Sale Transaction involving Gordon Brothers (including, for the avoidance of doubt, the sale of any causes of action, including tort claims) are fully preserved.  Gordon Brothers shall be deemed the Stalking Horse Bidder and

8

a Qualified Bidder, and Gordon Brothers' Bid contemplated by the Stalking Horse Agreement shall be deemed a Qualified Bid and, for avoidance of doubt, need not comply with each Bid Requirement.

10.     The Expense Reimbursement for the Stalking Horse Bidder is approved in its entirety, and the amount of such Expense Reimbursement shall be an allowed administrative expense claim under section 503(b) of the Bankruptcy Code.  The Debtors are authorized and directed to pay any amounts that may become due to the Stalking Horse Bidder on account of the Expense Reimbursement on the terms set forth in the Stalking Horse Agreement.  For the avoidance of doubt, no other Qualified Bidder for the Assets shall be entitled to any form of expense reimbursement.

## C.     Important Dates and Deadlines.

11.     The following dates and deadlines are hereby approved:

| Date and Time (all times in prevailing Eastern Time) | Event or Deadline |
|---|---|
| February 18, 2025, at 5:00 p.m. | Bid Deadline |
| February 19, 2025 | Notice of Winning Bidder and Cancellation of Auction (if no Auction) |
| February 20, 2025 | Sale Objection Deadline to the Stalking Horse Bid |
| February 21, 2025, at 10:00 a.m. | Auction (if any) |
| February 21, 2025, at 9:30 a.m. | Sale Hearing (if no Auction) |
| The earlier of five (5) hours after the Auction is completed or 12:00 p.m. the calendar day after the Auction is completed. | Notice of Winning Bidder(s) (if there is an Auction) |
| February 22, 2025 | Serve Cure Notice, if applicable |
| February 25, 2025, at 5:00 p.m. | Sale Objection Deadline for Winning Bid(s) (if there is an Auction) |
| February 26, 2025, at 2:00 p.m. | Sale Hearing (if there is an Auction) |

12.     The deadline by which Bids for any Assets, as applicable, must be ***actually received*** by the Debtors and their advisors (as set forth in the Bidding Procedures) is **February 18, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

13.     Each Qualified Bidder participating in the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to any bidding (including preparing or submitting its Bid(s)) or the Sale Transactions, as set forth in the Bidding Procedures; and the Auction, if any, shall be transcribed or otherwise recorded.

14.     The Debtors shall file with the Court the Notice of Winning Bidder, identifying the identity of the Winning Bidder(s) (as applicable), the amount of the Winning Bid(s) (as applicable), and, if the Winning Bidder (as applicable) is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash, by:  **February 19, 2025** if there is not an Auction, and by the earlier of five (5) hours after the Auction is completed, or 12:00 p.m. (prevailing Eastern Time) the calendar day after the Auction is completed**,** if there is an Auction.  If the Winning Bidder is a special purpose entity, the notice shall also identify the entity or entities that are its primary equity holders, or otherwise control, the special purpose entity.

15.     Objections to the proposed order approving any Winning Bid(s) (and/or designation of a Back-Up Bid(s), as applicable) (the "Sale Order," and such objections, "Sale Objections") must be made on or before:  **February 20, 2025, at 5:00 p.m. (prevailing Eastern Time)** to the Stalking Horse Bid, or **February 25, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") if there is an Auction, and the Sale Order shall be in form and substance acceptable to the Prepetition ABL Agent and the Prepetition FILO Agent; *provided*, *however*, to the extent any Winning Bid(s) is, in part or in whole, the result of a Credit Bid, any order approving the sale of the relevant assets pursuant to such Credit Bid shall additionally be in form and

10

substance acceptable to such credit bidder whose Credit Bid is deemed the Winning Bid. All Sale

Objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy

Rules and the Local Rules; (c) state with particularity the legal and factual basis for the Sale

Objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be

*actually received* by the following parties (the "Notice Parties") no later than the Sale

Objection Deadline:

| Proposed Co-Counsel to the Debtors | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Aparna Yenamandra, P.C.<br>(aparna.yenamandra@kirkland.com)<br><br>-and-<br><br>Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Jeffrey Michalik (jeff.michalik@kirkland.com)<br>Lindsey Blumenthal<br>(lindsey.blumenthal@kirkland.com) | Cole Schotz P.C.<br>500 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801,<br>Patrick J. Reilley (preilley@coleschotz.com)<br>Stacy L. Newman (snewman@coleschotz.com)<br>Michael E. Fitzpatrick<br>(mfitzpatrick@coleschotz.com)<br>Jack M. Dougherty (jdougherty@coleschotz.com) |
| Proposed Investment Banker to the Debtors | The Prepetition Term Loan Agent and Counsel Thereto |
| Centerview Partners, LLC<br>31 West 52nd Street, 22nd Floor<br>New York, New York 10019<br>Karn Chopra (kchopra@centerview.com)<br>Ryan Kielty (rkielty@centerview.com)<br>Daniel Bendetson (dbendetson@centerview.com) | ArentFox Schiff LLP<br>1301 Avenue of the Americas, 42nd Floor<br>New York, New York 10019<br>Jeffrey Gleit (jeffrey.gleit@afslaw.com)<br>Jonathan Bagg (jonathan.bagg@afslaw.com)<br>Matthew Bentley (matthew.bentley@afslaw.com) |
| The Prepetition ABL Agent and Counsel Thereto | The Prepetition FILO Agent and Counsel Thereto |
| Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts 02110<br>Marjorie Crider (marjorie.crider@morganlewis.com)<br>Christopher L. Carter<br>(christopher.carter@morganlewis.com)<br><br>- and -<br><br>Reed Smith LLP<br>1201 North Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>Kurt F. Gwynne (kgwynne@reedsmith.com)<br>Jason D. Angelo (jangelo@reedsmith.com) | Choate, Hall & Stewart LLP<br>2 International Place<br>Boston, Massachusetts 02110<br>John F. Ventola (jventola@choate.com)<br>Jonathan D. Marshall (jmarshall@choate.com)<br><br>- and -<br><br>DLA Piper LLP (US)<br>1201 N Market St. Suite 2100<br>Wilmington, Delaware 19801<br>Stuart Brown (stuart.brown@us.dlapiper.com) |

| Office of the United States Trustee (Region 3) | Proposed Counsel to the Official Committee of Unsecured Creditors |
|---|---|
| The Office of the United States Trustee<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Malcolm M. Bates (malcolm.m.bates@usdoj.gov) | Kelley Drye & Warren LLP<br>3 World Trade Center<br>New York, New York 10007<br>Jason R. Adams (jadams@kelleydrye.com)<br>Eric R. Wilson (ewilson@kelleydrye.com)<br>Maeghan J. McLoughlin<br>(mmcloughlin@kelleydrye.com)<br><br>- and -<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 N. Market Street<br>Suite 1700<br>Wilmington, Delaware 19801<br>Brad Sandler (bsanlder@pszjlaw.com)<br>James O'Neill (joneill@pszjlaw.com) |
| **The Prepetition Term Loan Lender Ad Hoc Group and Counsel Thereto** | |
| Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Scott Greenberg (SGreenberg@gibsondunn.com)<br>Josh Brody (JBrody@gibsondunn.com)<br>Kevin Liang (KLiang@gibsondunn.com)<br><br>-and-<br><br>Glenn Agre Bergman & Fuentes LLP<br>1185 Avenue of the Americas, 22nd Floor<br>New York, New York 10035<br>Andrew Glenn (aglenn@glennagre.com)<br>Kurt Mayr (kmayr@glennagre.com)<br>Agustina Berro (aberro@glennagre.com)<br>Malak Doss (mdoss@glennagre.com)<br>Esther Hong (ehong@glennagre.com)<br><br>-and-<br><br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor<br>Wilmington, Delaware 19801<br>Donna Culver (dculver@morrisnichols.com)<br>Robert Dehney (rdehney@morrisnichols.com)<br>Matthew Harvey (mharvey@morrisnichols.com)<br>Brenna Dolphin (bdolphin@morrisnichols.com) | |

16.     If any party fails to timely file with the Court and serve a Sale Objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures

regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction, including the transfer of the applicable Asset(s) to the applicable Winning Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to the Sale Transaction for purposes of section 363(f) of the Bankruptcy Code.

17.     For the avoidance of doubt, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition FILO Agent, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, and the Prepetition Term Loan Agent fully reserve all of their rights with respect to a Sale Objection, the Sale Transaction, and the Sale Order, including, without limitation, with respect to the allocation of the sale proceeds and the distribution of such sale proceeds for any Sale Transaction that involves the sale of both ABL Priority Collateral and Term Loan Priority Collateral pursuant to the terms of the Prepetition Credit Documents.

18.     The Court will hold a hearing to consider approval of the Sale Transaction(s) on **February 21, 2025 at 9:30 a.m. (prevailing Eastern Time)**, if there is not an Auction, and **February 26, 2025 at 2:00 p.m. (prevailing Eastern Time)**, if there is an Auction (the "Sale Hearing"). The Sale Hearing may be adjourned in accordance with the Bidding Procedures by announcement in open court or on the Court's calendar without any further notice required. In the event counterparties to Assigned Contracts (as defined below) raise objections or may raise objections to the proposed assumption, assumption and assignment, cure, adequate assurance in connection with a Sale Transaction or Winning Bid that are not due before or resolved at or prior to the Sale Hearing, the Sale Transaction may be approved at the Sale Hearing; *provided* that such objection shall be set for a later hearing, the date of which shall be determined at the Sale Hearing

13

or such later date, and such Assigned Contract shall not be assumed, assigned, or otherwise treated under the Sale Transaction unless and until such objection is overruled or otherwise resolved.

**E.      Credit Bidding**

19.      Subject to the terms of the Cash Collateral Order, including with respect to any Challenge, any bidder holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); *provided*, that such Credit Bid complies with the terms of the Bidding Procedures and (to the extent applicable) the Prepetition Credit Documents.   Any Credit Bid that complies with the applicable terms of the Bidding Procedures shall be a Qualified Bid without requiring a good faith deposit, and the applicable Prepetition ABL Lenders, Prepetition ABL Agent, Prepetition FILO Lenders, Prepetition FILO Agent, Prepetition Term Loan Agent, or Prepetition Term Loan Lenders shall (subject to the Prepetition Credit Documents) be deemed a Qualified Bidder for purposes of any such Credit Bid.

**F.      Notice of Sale Transactions**

20.      The Sale Notice, substantially in the form attached to this Order as **Exhibit 3**, is approved with respect to the Auction which may be held under the Bidding Procedures.   Within one (1) business day of the entry of this Order, the Debtors shall cause the Sale Notice to be filed and served (including by e-mail, where applicable) upon parties in interest and, along with the Motion, this Order, and all of this Order's exhibits and schedules, posted on the Debtors' restructuring webpage at https://cases.ra.kroll.com/Joann2025 (or such other applicable URL) (the "Case Webpage").   Any changes in location, date, and time of the auction shall be filed with the Court and provided on the Case Webpage.

21.     Within one (1) business day after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Sale Notice for one day in *The New York Times* (national edition) and post it onto the Case Webpage.  Such notice shall be deemed sufficient and proper notice of the Bidding Procedures, the Sale Transactions, and the Auction (if any) with respect to known interested parties and no other or further notice shall be required.

22.     By the earlier of five (5) hours after the Auction (if any) is completed or 12:00 p.m. (prevailing Eastern Time) the calendar day after the Auction is completed, and in accordance with the Bidding Procedures, the Debtors will file on the docket the Notice of Winning Bidder substantially in the form attached to this Order as **Exhibit 3**.

**G.     Assumption and Assignment Procedures.**

23.     The Assumption and Assignment Procedures below are hereby approved in all respects and shall be the procedures by which the Debtors will notify any counterparties (the "Contract Counterparties") to executory contracts and unexpired leases with the Debtors (the "Contracts") of proposed cure amounts in the event the Debtors determine to assume and assign such Contracts in connection with the Sale Transactions.  Within two (2) days of the Auction, if any, for any Sale Transaction, to the extent the Debtors seek to assume and assign an executory contract and/or unexpired lease, the Debtors will provide via first class mail and/or email (to the extent email is reasonably known) information of all proposed forms of adequate assurance of future performance they have received from the Stalking Horse Bidder or each Winning Bidder and Back-up Bidder, as applicable, to Contract Counterparties and their counsel, if known. Requests by contract or lease counterparties to receive adequate assurance information via e-mail in addition to, or in lieu of, first class mail, may be made to Debtors' counsel at:

aparna.yenamandra@kirkland.com,              jeff.michalik@kirkland.com,              and

lindsey.blumenthal@kirkland.com.

24.     Nothing in this Order shall be deemed to limit the Debtors' or the Winning Bidder's

ability to negotiate assumption and/or assumption and assignment of amended or modified

Contracts with Contract Counterparties on a consensual basis.

a.      **Cure Notice**.  No later than fourteen (14) calendar days prior to any Cure Objection deadline, the Debtors shall file with the Court and serve via first class mail, electronic mail, (if the recipient has consented, in writing, to receiving electronic notices), or overnight delivery, the Cure Notices, attached hereto as **Exhibit 5**, on the Contract Counterparties at the notice address in the applicable lease or contract, and their counsel of record, if know, and the Consultation Parties, and post the Cure Notice to the Case Webpage.

b.      **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Contracts that may be assumed or assumed and assigned in connection with the Sale (the "Assigned Contracts," and each individually, an "Assigned Contract"); *provided* that any Assigned Contracts which are unexpired leases shall identify the address of the leased premises and any corresponding store number, as applicable; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

c.      **Cure Payments**.  The payment of the applicable Cure Costs and cure of any non-monetary defaults by the Debtors and/or the Winning Bidder, as applicable shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Assigned Contract by the Debtors and the assignment of such Assigned Contract to the Winning Bidder, constitute adequate assurance of future performance thereof.

d.      **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases;

16

(iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; *provided* that the Debtors may modify any Cure Objection deadline by filing a notice of such modification on the Court's docket.

e.    **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Sale Order.

f.    **Dispute Resolution**.  Any Cure Objection to the assumption or assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearings shall be heard at the next regularly scheduled omnibus hearing in these cases, or such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined by the Court after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Winning Bidder may determine that such Contract should not be assumed and assigned, in which case the Winning Bidder(s) will not be responsible for any Cure Costs in respect of such contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

g.    **Supplemental Cure Notice**.  If the Debtors discover Contracts inadvertently omitted from the Cure Notice or a Winning Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the sale, the Debtors may, after consultation with such Winning Bidder, at any time in accordance with the Debtors' rights under the Bankruptcy Code, including any extension pursuant to section 365(d)(4) of the Bankruptcy Code as approved by this Court, supplement the Cure Notice with previously omitted Contracts, or modify a previously filed Cure Notice, including by modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

h.    **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any, modified by the Supplemental Cure Notice.    All Supplemental Cure Objections must:  (i) state, with specificity, the legal and factual basis for the objection as well

as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

i.   **Dispute Resolution of Supplemental Cure Objection**. If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice. Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

## H.   **Miscellaneous.**

25.   All persons and entities that participate in the applicable Auction (if any) or bidding for any Assets during the sale process under the Bidding Procedures shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction (if any), or any other relief requested in the Motion or granted in this Order, and (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order.

26.   This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

27.   Notwithstanding anything to the contrary set forth in this Order, whether or not that certain Pattern Supply Agreement dated as of December 15, 2023 (the "Consignment Agreement") by and between Debtors and IG Design Americas, Inc. ("DGA") and its affiliates has been rejected

pursuant to section 365 of the Bankruptcy Code, then, with respect to any and all retail store closings notices issued by Debtors prior to the entry of a Sale Order, Debtors agree to and shall (i) comply with the terms of the Consignment Agreement, including but not limited to, the "Store Closings" provisions set forth in Section 3 thereof;[4] and (ii) grant DGA, and its agents and assigns, reasonable access (including before, during, and after store business hours) to immediately remove the Consigned Goods from any and all closing retail stores.  Further, with respect to the arguments asserted in DGA's Omnibus Limited Objection [Docket No. 258] (the "Objection") that pertain to the terms of any subsequent order or orders that the Debtors may request be entered pursuant to section 363 of the Bankruptcy Code approving a sale or transfer of some or all of the Debtors' assets, including the terms of any related asset purchase agreements and/or agency agreements, DGA's Objection is hereby continued to such sale hearing without need for DGA to file and serve any further objection; *provided*, *however*, that nothing herein shall limit DGA's rights to assert further objections to any such sales noticed for hearing by the Debtors.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     To the extent that there may be any inconsistency between the terms of the Motion, the Stalking Horse Agreement, the Bid Procedures, and this Order, the terms of this Order shall govern.

30.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including any payment made in accordance with this Order), nothing in this Order is

---

[4]     Section 3 of the Consignment Agreement entitled "Store Closings" provides:  "If Customer [Debtors] determines to close a store, Customer shall notify Supplier [DGA], and Supplier may elect to: (i) have the Products on hand at such store returned to Supplier or (ii) have Customer liquidate such Products under the normal store liquidation process and discard any remaining Products on hand at a store that is closing, Supplier will pay the freight costs and will be responsible to reimburse Customer for store labor costs."

intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

20

31.     Any non-Debtor party to a nonresidential lease of real property retains any and all rights to (a) object the any proposed assumption and assignment of any such lease under section 365 of the Bankruptcy Code, and (b) raise any and all   facts, claims, issues, rights, remedies, and/or defenses in connection thereto.

32.     Notwithstanding anything to the contrary in this Order or the Bidding Procedures, the rights of the Prepetition ABL Agent and the Prepetition FILO Agent under the Cash Collateral Order [5] (and the Prepetition Credit Documents referenced therein) to consent to the Sale Transaction(s) (and any terms and conditions thereof) of any portion of their collateral, including, without limitation, any Assets, are expressly preserved and not waived or impaired by the Bidding Procedures or this Order.  For the avoidance of doubt, nothing in this Order or the Bidding Procedures shall amend or impair any provision of the Cash Collateral Order (including the Milestones therein) or the rights of the Prepetition ABL Agent and the Prepetition FILO Agent thereunder.

33.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

34.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

35.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

---

[5]     "Cash Collateral Order" means any interim or final order approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral, whichever is then in effect, as applicable.

36.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

37.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Dated: February 16th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**