# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC TO PROVIDE THE DEBTORS AN INTERIM CHIEF EXECUTIVE OFFICER, AN INTERIM CHIEF FINANCIAL OFFICER, AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATE MICHAEL PRENDERGAST AS INTERIM CHIEF EXECUTIVE OFFICER, AND (III) DESIGNATE JEFFREY DWYER AS INTERIM CHIEF FINANCIAL OFFICER FOR THE DEBTORS, IN EACH CASE EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

### Relief Requested

1. By this application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form of **Exhibit A** annexed hereto, authorizing but not directing the Debtors to (a) retain Alvarez & Marsal North America, LLC ("A&M") to provide the Debtors with an interim chief executive officer ("CEO"), an interim chief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

financial officer ("CFO"), and certain Additional Personnel (as defined below), (b) designate Michael Prendergast as the Debtors' CEO, and (c) designate Jeffrey Dwyer as the Debtors' CFO, effective as of the Petition Date.

2.      Mr. Prendergast will serve as the interim CEO, and Mr. Dwyer will serve as the interim CFO, to assist the Debtors with their restructuring efforts and their chapter 11 cases, as further described below.  A&M will provide additional employees of its and its professional service provider affiliates (all of which are wholly owned by its parent company and employees) and individual independent contractors (the "Additional Personnel," collectively with the CEO and the CFO, the "Engagement Personnel") as necessary to assist the CEO and the CFO in the execution of the duties set forth more fully herein.

**Jurisdiction and Venue**

3.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

6.      JOANN Inc., together with its Debtor and non-Debtor affiliates (collectively, "JOANN" or the "Company") is a leading national retailer of sewing, arts and crafts, and select home décor products.  Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers.  For over 80 years, JOANN has fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

7.      On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 16, 2025, the Court entered an order [Docket No. 103] authorizing the procedural consolidation and  joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 198] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Retention of A&M

8.      In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances following their successful 2024 restructuring, the Debtors have determined that the continued services of experienced restructuring managers will substantially enhance their ability to maximize the value of their estates.  A&M was initially engaged by the

Debtors in February 2023 and has assisted the Debtors in multiple capacities since then, including as financial advisor in the Debtors' 2024 restructuring and, more recently, as the provider of interim officers Mr. Prendergast and Mr. Dwyer.  In addition, prior to and leading up to the Petition Date, A&M's affiliate, Alvarez & Marsal Consumer and Retail Group, LLC ("A&M CRG") provided certain performance improvement and cost take out services to the Debtors pursuant to a separate engagement agreement between the Debtors and A&M CRG dated September 24, 2024. A&M, A&M CRG and the Debtors have agreed that from and after the Petition Date, during the terms of these chapter 11 cases, such services, to the extent they are ongoing, will be provided by A&M utilizing A&M CRG personnel under the terms of the Engagement Letter and not pursuant to such other agreement.

9.      The CEO, the CFO, and the Additional Personnel are all well qualified to act on the Debtors' behalf given their extensive knowledge of the Debtors' businesses, as well as their expertise with respect to chapter 11 proceedings. The Engagement Personnel specialize in interim management, consumer retail advisory services, turnaround consulting, operational due diligence, and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including: monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages as well as supporting the ongoing sales process, including related diligence.

10.      A&M has provided interim management services in a number of recent large and mid-size chapter 11 cases, including:  *In re Tupperware Brands Corp.*, No. 24-12156 (Bankr. D. Del. Nov. 18, 2024); *In re SunPower Corp.*, No. 24-11649 (Bankr. D. Del. Aug. 5, 2024); *In re Red Lobster Management LLC*, No. 6:24-bk-02486-GER (Bankr. M.D. Fla. Jun. 14, 2024)*; In re*

*Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. May 8, 2024); *In re SiO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Jun. 6, 2023); *In re Ryze Renewables II, LLC*, No. 23-10289 (BLS) (Bankr. D. Del. Apr. 11, 2023); *In re AIG Financial Products Corp.*, No. 22-11209 (MFW) (Bankr. D. Del. Jan. 19, 2023); *In re Packable Holdings, LLC f/k/a Entourage Commerce, LLC*, No. 22-10797 (CTG) (Bankr. D. Del. Oct. 11, 2022); *In re GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del. Jul. 18, 2022); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); *In re Kona Grill Inc.*, No. 19-10953 (CSS) (Bankr. D. Del. May 28, 2019).

11.     Mr. Prendergast is a Managing Director with A&M CRG with over 20 years of leadership experience in the retail, fashion, and consumer products industries and expertise with respect to merchandising, sourcing, marketing, sales force optimization and customer retention. More specifically, Mr. Prendergast recently served as interim CEO to lead the restructuring and turnaround of a women's multi category retailer with more than 700 stores and over $500 million in annual revenue.  He has also served as CEO of a youth-focused, fast-fashion retailer, and CEO of a global celebrity lifestyle brand with approximately $400 million annual revenue.  Mr. Prendergast earned a bachelor's degree in business management from The University of Phoenix and completed executive training courses at the University of Chicago, Booth School of Business.

12.     Mr. Dwyer also is a Managing Director with A&M CRG with more than seventeen years of experience and a background in interim financial restructuring and management consulting, specializing in bankruptcies, reorganizations, and business restructuring for underperforming companies.  Mr. Dwyer is experienced in working capital management, cash flow and liquidity enhancement, business plan review and development, and SG&A strategic review.  Mr. Dwyer recently served as interim CEO of a $1+ billion manufacturing and services

organization, as interim manager of a $2+ billion retailer, and as financial advisor to a Fortune 500 retailer. Mr. Dwyer has served in either a senior management position or as a turnaround consultant for a number of companies in a variety of industries with a special focus in consumer retail. His experience includes involvement in the chapter 11 cases of major retail and consumer products companies, such as 99 Cents Only Stores, LLC, Bed Bath & Beyond, Inc., Centric Brands Inc., UPG Enterprises, LLC, and Packable Holdings, LLC. Mr. Dwyer earned a bachelor's degree in business administration from the University of San Francisco.

13.     A&M and the CEO and CFO are intimately familiar with the Debtors' businesses, financial affairs, and capital structure. Since A&M's initial engagement by the Debtors prior to the Debtors' 2024 restructuring, the Engagement Personnel have worked closely with the Debtors' management and other professionals in assisting with the numerous requirements of operating the Debtors' businesses, managing liquidity, and preparing for and assisting with the requirements of these chapter 11 cases. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these chapter 11 cases. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M and the designation of Mr. Prendergast as CEO and Mr. Dwyer as CFO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

14.     Subject to approval by the Court, the Debtors propose to retain A&M to provide Mr. Prendergast as CEO and Mr. Dwyer as CFO and to provide the Additional Personnel on the terms and conditions set forth in the engagement letter, dated January 13, 2025 (which superseded

previously executed engagement letters between the Debtors and A&M), attached hereto as

**Exhibit B** (the "Engagement Letter"),[3] except as otherwise explicitly set forth herein or in any

order granting this application.

15.     Among other things, the Engagement Personnel will support the Debtors with

respect to:

a.     in the case of the CEO, serving in a leadership position and executing the day-to-day activities and operations considered to be customary for a chief executive officer;

b.     in the case of the CFO, overseeing the management of the Debtors' finance and accounting functions and performing those duties customary for a chief financial officer;

c.     assisting the Debtors with the development of the Debtors' business plan and related cost-cutting measures and performing related due diligence services;

d.     assisting the Debtors in the evaluation of restructuring alternatives and the Debtors' marketing and sale process, including supporting related diligence;

e.     assisting the Debtors with vendor management, including disbursement tracking and monitoring, negotiation of payment terms, and communications;

f.     preparing budgets and 13-week cash forecasts and evaluating variances thereto, including related reporting obligations under the terms of the Debtors' cash collateral order;

g.     acting as a liaison to the Debtors' creditors with respect to the Debtors' financial and operational matters;

h.     assisting the Debtors and the Debtors' investment banker in connection with the sale and marketing of the Debtors' assets, and the execution of any

---

[3]     The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.  Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

transactions in connection thereto, including, if applicable, under the stalking horse APA;

i.       assisting the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs, and Monthly Operating Reports; and

j.       performing such other services as requested or directed by the board of directors of Debtor JOANN Inc. (the "Board") or other Debtor personnel as authorized by the Board and agreed to by A&M that is not duplicative of work others are performing for the Debtors.

16.      These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

### A&M's Disinterestedness

17.      To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Joseph J. Sciametta (the "Sciametta Declaration"), annexed hereto as **Exhibit C**, A&M: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates.

18.      Although the Debtors submit that the retention of A&M to provide interim management is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Sciametta Declaration, which discloses, among other things, any relationship that A&M, Mr. Prendergast, Mr. Dwyer, or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to A&M. Based upon the Sciametta Declaration, the Debtors submit that A&M is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

19.     In addition, as set forth in the Sciametta Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## Terms of Retention

### A.    Compensation

20.     In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtors for the services of the Engagement Personnel at A&M's customary hourly billing rates, with the exceptions of the CEO and CFO.  A&M and the Debtors have agreed that the Debtors will pay A&M a flat monthly fee of $225,000 per month for the services of the CEO and a flat monthly fee of $150,000 for the services of the CFO.  The current hourly billing rates for Additional Personnel, based on the position held by such Additional Personnel at A&M, are subject to the following ranges:

| | |
|---|---|
| Managing Directors | $1,100-1,575 |
| Directors | $850-1,100 |
| Associates | $625-825 |
| Analysts | $450-600 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

21.     In addition to compensation for professional services rendered by Engagement Personnel, A&M will be reimbursed for reasonable and necessary out of pocket expenses incurred in connection with these chapter 11 cases, including, but not limited to travel, lodging, meals, computer research, and messenger and telephone charges.  In addition, A&M shall be reimbursed for the reasonable fees and expenses of its outside counsel incurred in connection with the preparation and approval of this application.  All fees and expenses due to A&M will be billed on

a monthly basis, or more frequently as agreed to between A&M and the Debtors, as further set forth in the Engagement Letter.

**B.**    **Indemnification**

22.    As a material part of the consideration for which the Retention Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter (including the indemnification agreement attached to and made a part of the Engagement Letter (the "Indemnification Agreement")), the Debtors have agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification it extends to its officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy and (b) indemnify and hold harmless A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (collectively, the "Indemnified Parties") under certain circumstances.[4]    The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

23.    The Debtors believe the indemnity provisions are a reasonable term and condition of A&M's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and A&M at arm's-length and in good faith.    A&M and the Debtors believe that the

---

[4]    The Indemnification Agreement generally provides that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties (as defined in the Indemnification Agreement) from and against any losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel and others in investigating, preparing, or defending any action or claim caused by, relating to, based upon, or arising out of the Indemnified Party's acceptance of or the performance or nonperformance of their obligations under the Engagement Letter. Notwithstanding the terms of the Indemnification Agreement, the Debtors and A&M have agreed, subject to the Court's approval of this application, that in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates or the statutory committee of unsecured creditors appointed in these Chapter 11 Cases assert a claim against an Indemnified Person and the Court determines by final order that such claim arose out of the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person.

indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court.  The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&M's services to successfully reorganize.

### Fees and Reporting

24.     If the Court approves the relief requested herein, A&M will be retained to provide the Debtors with the Engagement Personnel and Mr. Prendergast will be designated as the Debtors' CEO and Mr. Dwyer will be designated as the Debtors' CFO, in each case pursuant to section 363 of the Bankruptcy Code.  Because A&M is not being employed as a professional under section 327 of the Bankruptcy Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, A&M will file with the Court, and provide notice to the U.S. Trustee for the District of Delaware (the "U.S. Trustee") and all official committees (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed. In addition, A&M will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report will include the names and tasks filled by all Engagement Personnel involved in this matter.  The Staffing Report (and A&M's staffing for this matter) will be subject to review by the Court in the event so requested by any of the Notice Parties

25.     A&M received $350,000 as a retainer in connection with preparing for and conducting the filing of these chapter 11 cases, as described in the Engagement Letter.  In the

90 days prior to the Petition Date, A&M received retainers and payments totaling $13,552,492.56 in the aggregate for services performed for the Debtors.  A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.

26.     A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer, which is estimated to total approximately $350,000, will not be segregated by A&M in a separate account, and will be held until the end of these chapter 11 cases and applied to A&M's finally approved fees in these proceedings, unless an alternate arrangement is agreed to by the Debtors.

27.     Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter and the proposed compensation of A&M are fair and reasonable.

**Dispute Resolution Procedures**

28.     The Debtors and A&M have agreed, subject to the Court's approval of this application, that, notwithstanding the Engagement Letter:  (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this application or the services provided by the Engagement Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or (if the reference is withdrawn) the United States District Court for the District of Delaware (the "District Court"); (b)A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum

(unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in **Exhibit D** attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.  By this application, the Debtors seek approval of this agreement by the Court.  Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this application or the services provided hereunder.

### Basis for Relief

29.    The Debtors seek approval of the employment of A&M pursuant to section 363 of the Bankruptcy Code, effective as of the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).   Further, pursuant to

section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

30.    The retention of A&M and its professionals is a sound exercise of the Debtors' business judgment.  Mr. Prendergast, Mr. Dwyer, and the Additional Personnel bring extensive experience as senior officers and advisors for many troubled companies.  The Debtors believe that the Engagement Personnel will provide critical services that benefit the Debtors' estates and creditors.  In light of the foregoing, the Debtors believe that the retention of A&M is appropriate and in the best interests of the Debtors and their estates and creditors.

31.    The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code.  This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions and regularly has concluded that it is an appropriate exercise of business judgment to employ a corporate officer in such manner.  *See, e.g.*, *In re Tupperware Brands Corp.*, No. 24-12156 (BLS) (Bankr. D. Del. Nov. 18, 2024); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 5, 2024); *In re Vyaire Med., Inc.*, No. 24-11218 (BLS) (Bankr. D. Del. July 30, 2024); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Dec. 6, 2023).

32.    Based upon the foregoing, the Debtors submit that the retention of A&M, and the designations of Mr. Prendergast as CEO and Mr. Dwyer as CFO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these chapter 11 cases.

**Notice**

33.    The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a)  U.S. Trustee; (b) the Committee; (c) counsel to the Prepetition Term Loan Agent; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition FILO Agent; (f) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (g) the United States Attorney for the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: February 13, 2025
Wilmington, Delaware

/s/ Patrick J. Reilley

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:    (302) 652-3131
Facsimile:    (302) 652-3117
Email:    preilley@coleschotz.com
          snewman@coleschotz.com
          mfitzpatrick@coleschotz.com
          jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
          aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    anup.sathy@kirkland.com
          jeff.michalik@kirkland.com
          lindsey.blumenthal@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*