## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 6, 2025 at 2:00 p.m. (ET)**<br>**Obj. Deadline: February 27, 2025 at 4:00 p.m. (ET)** |

### APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF CENTERVIEW PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESION EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT LETTER, (III) MODIFYING CERTAIN TIMEKEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this application:[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"), (a) authorizing the Debtors to retain and employ Centerview Partners LLC ("<u>Centerview</u>") as investment banker to the Debtors, effective as of the Petition Date (as

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer of JOANN Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "<u>First Day Declaration</u>").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Engagement Letter, as applicable.

defined below), pursuant to section 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), (b) approving the terms and conditions of that certain engagement letter between Centerview and the Debtors, dated as of December 9, 2024 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to the Order; (c) modifying certain timekeeping requirements of rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the guidelines of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines"), and (d) granting related relief.  In support of this Application, the Debtors submit the declaration of Ryan Kielty, which is attached hereto as **Exhibit B** (the "Kielty Declaration").

### Jurisdiction and Venue

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.

## Background

5.      JOANN    Inc.,    together    with    its    Debtor    and    non-Debtor    affiliates (collectively, "JOANN" or the "Company") is a leading national retailer of sewing, arts and crafts, and select home décor products.  Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers.  For over 80 years, JOANN has fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

6.      On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 16, 2025, the Court entered an order [Docket No. 103] authorizing   the   procedural   consolidation   and   joint   administration   of   these   chapter   11   cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 198] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Centerview's Qualifications

7.      Established in 2006, Centerview is an independent investment banking firm providing financial advisory services, including mergers and acquisitions and restructuring advice, across a broad range of industries.  Centerview serves a diverse set of clients around the world from its offices in New York, San Francisco, Menlo Park, London, and Paris.  Centerview's Debt

Advisory and Restructuring Group, which was founded in 2011, has extensive experience in designing and managing complex restructuring processes among a wide range of stakeholders, and a demonstrated track record of designing, negotiating, and implementing amendments, exchange offers, financings, distressed merger and acquisition transactions, and out-of-court and in-court restructurings. Centerview and its principals have advised Debtors, lenders, committees, equity holders, and acquirors in many complex financial reorganizations. Centerview's professionals have collectively advised on transactions representing over $300 billion in restructured debt.

8. The Debtors have determined, in an exercise of their sound business judgment, that the size and complexity of their businesses requires them to employ an investment banker with knowledge of the Debtors' industry and business and experience with the chapter 11 process. Centerview has such knowledge and is well qualified to provide its services to the Debtors in these chapter 11 cases.

9. Centerview's professionals, including while employed at other firms, are providing or have provided financial advisory, investment banking, and other services in connection with the in-court restructuring of numerous companies, including the following: *In re Exactech, Inc.*, No. 24-12441 (LSS) (Bankr. D. Del. 2024); *In re Thrasio Holdings, Inc*., No. 24-11840 (CMG) (Bankr. D. N.J. 2024); *In re SmileDirectClub, Inc.*, No. 23-90786 (CML) (Bankr. S.D. Tex. 2023); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. 2024); *In re SVB Financial Group*, No. 23-10367 (MG) (Bankr. S.D.N.Y 2023); *In re Avaya Inc.*, No. 23-90088 (DRJ) (Bankr. S.D. Tex. 2023); *In re Diamond Sports Group, LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. 2023); *In re Serta Simmons Bedding, LLC*, No. 23-90020 (DRJ) (Bankr. S.D. Tex. 2023); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. 2022); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. 2022); *In re Enjoy Technology, Inc.*, No. 22-10580 (JKS) (Bankr. D. Del.

2022); *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. 2020); *In re Sungard Availability Services Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. 2019); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. 2019); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. 2019); *In re CTI Foods, LLC*, No. 19-10497 (CSS) (Bankr. D. Del 2019); *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. 2019); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. 2018); *In re Synergy Pharmaceuticals Inc.*, No. 18-14010 (JLG) (Bankr. S.D.N.Y. 2018); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. 2018); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. 2017); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. 2017); *In re Residential Capital, LLC, et al.*, No. 12-12020 (MG) (Bankr. S.D.N.Y. 2017); *In re Glob. Brokerage Inc.*, No. 17-13532 (MEW) (Bankr. S.D.N.Y. 2017); *In re Vanguard Natural Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. 2017); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. 2016); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. 2016); *In re Old BPSUSH Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. 2016); *In re Atlas Res. Partners, LP*, No. 16-12149 (SHL) (Bankr. D. Del. 2016); *In re Aspect Software, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. 2016); *In re Seventy Seven Energy Inc.*, No. 16-11410 (LSS) (Bankr. D. Del. 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. 2016); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. 2016); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. 2015); *In re Caesars Entm't Operating Co., Inc.*, No. 15-10047 (KG) (Bankr. D. Del. 2015); *In re Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del. 2015); and *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. 2015).[3]

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

10.     Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Accentcare, Alkegen, Anchor Danly, Autocam Corporation, Broder Bros Co., CDX Gas, Caesars Entertainment Corporation, Chicago Bridge & Iron Company, Cloud Peak Energy, CMS Energy, CNL Hotels & Resorts, Culligan, DS Waters of America, Inc., Equinox Group, LLC, EyeCare Partners, Gate Gourmet, Inc., Grupo TMM, S.A., Huntsman Corporation, Ion Media Networks, Isola Group Ltd., J.C. Penney Company, Keystone Automotive Operations, Inc.,  Magenta Buyer LLC (dba Trellix / Skyhigh Security), Mashantucket Pequot Gaming Enterprise/Foxwoods, MediaMath, Neovia Logistics, PlayAGS, OSI Restaurant Partners, LLC, Palisades Center, PlayPower, Pluralsight, Progressive Moulded Products, Rackspace Technology, Radiology Partners, R.J. O'Brien, SI Corporation, Sirva, Inc., Springs Window Fashions, Stolt-Nielsen, S.A., Targus Group International, TG Natural Resources, Tosca Partners, Tronox Inc., and Vonage Holdings Corporation.

11.     Centerview is thoroughly familiar with the Debtors' businesses.  The Debtors engaged Centerview in December 2024 to serve as their investment banker to evaluate various strategic and financing alternatives.  Since its engagement, Centerview has worked closely with the Debtors' board of directors, management team, and other professionals with respect to the Debtors' formulation and evaluation of various strategic and restructuring alternatives, including, among other things, (i) acquainting itself with the Debtors' business, operations, and financial condition, (ii) analyzing the Debtors' liquidity position, (iii) analyzing various strategic and financing alternatives, (iv) preparing and launching a sale process to over 70 parties, and (v) assisting the Debtors in connection with preparation for these chapter 11 cases, including

negotiating a "stalking horse" agency agreement with Gordon Brothers Retail Partners, LLC and assessing the impact on the stakeholders.

12.     For the foregoing reasons and the reasons stated below, the Debtors believe that Centerview is well-qualified to advise the Debtors in these chapter 11 cases in an expert and efficient manner.  The Debtors submit that the retention of Centerview on the terms and conditions set forth herein and in the Order is necessary and appropriate and is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.

## Scope of Services

13.     The terms and conditions of the Engagement Letter were negotiated in good faith and at arm's-length and reflect the parties' mutual agreement as to the substantial efforts and resources that have been and will continue to be required in connection with Centerview's engagement.

14.     Centerview has performed and will continue to perform the following financial advisory and investment banking services pursuant to the Engagement Letter, to the extent requested by the Debtors:[4]

    a.    General Financial Advisory and Investment Banking Services:

        i.    familiarize itself with the business, operations, properties, financial condition, and prospects of the Debtors;

        ii.   review the Debtors' financial condition and outlook;

        iii.  assist the Debtors in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other parties;

---

[4]    This summary is solely for the convenience of the Court and parties in interest.  To the extent there is any conflict between the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) and any description or summary of the same herein, the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) shall control, as applicable.

iv.    evaluate the Debtors' debt capacity and capital structure alternatives;

v.    participate in negotiations among the Debtors, and related creditors, suppliers, lessors, and other interested parties with respect to any of the transactions contemplated by the Engagement Letter; and

vi.    perform such other financial advisory services as may be specifically agreed upon in writing by the Debtors and Centerview.

b.    <u>Restructuring Services</u>:

i.    analyze various restructuring scenarios and the potential impact of those scenarios on the value of the Debtors; and the recoveries of those stakeholders impacted by the Restructuring;

ii.    provide financial and valuation advice and assistance to the Debtors in developing and seeking approval of a Plan;[5]

iii.    provide financial advice and assistance to the Debtors in identifying and contacting any third-party financing sources and structuring any new securities to be issued pursuant to the Restructuring;

iv.    provide financial advice and assistance to the Debtors in connection with any sale(s) including identifying and contacting any potential acquirors and participating in any negotiations;

v.    assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring; and

vi.    if requested by the Debtors, participate in hearings before the Court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Debtors' proposed counsel with respect to testimony in connection therewith.

c.    <u>Financing Services</u>:

i.    provide financial advice and assistance to the Debtors in structuring and effecting a Debtor-in-Possession Financing,[6] and

---

[5]   As used in the Engagement Letter, the term "Plan" means a plan of reorganization, plan of liquidation and/or § 363 sale(s) under chapter 11 of the Bankruptcy Code.

[6]   As used in the Engagement Letter, the term "Debtor-in-Possession Financing" means any "debtor-in-possession" financing raised in connection with a chapter 11 case under the Bankruptcy Code and shall exclude any existing principal indebtedness that is rolled by existing lenders into the debtor-in-possession facility.

ii.    assist in the arranging of a Debtor-in-Possession Financing, the due diligence process and negotiating the terms of any proposed financing.

15.    If the Debtors request that Centerview perform services not specifically contemplated by the Engagement Letter, Centerview and the Debtors will agree, in writing, on the terms for such services and request the Court's approval thereof.

16.    The Debtors believe that the services provided by Centerview are necessary to enable to the Debtors to maximize the value of their estates and successfully implement their restructuring.

## **Professional Compensation**

17.    Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court, consistent with the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"). Further, because the Debtors seek approval of Centerview's proposed compensation structure pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that Centerview's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and should not constitute a "bonus" under applicable law.

18.     As set forth more fully in the Engagement Letter, Centerview and the Debtors have

agreed, among other things, on the following Fee and Expense Structure:[7]

     a.    <u>Monthly Fee</u>.

        i.    The Debtors will pay Centerview a fee of $175,000 per month (the "<u>Monthly Advisory Fee</u>"), which was due and paid by the Debtors upon execution of the Engagement Letter and, thereafter payable on each monthly anniversary thereof during the period of Centerview's engagement ("<u>Term</u>") under the Engagement Letter, in each case.

       ii.    After receipt of aggregate Monthly Advisory Fees of $1,050,000, 50% of the amount of any subsequent Monthly Advisory Fee paid to Centerview will be credited (but only once) against any Transaction Fee (as defined below) payable to Centerview pursuant to Section 2(b) of the Engagement Letter (*e.g.*, the Transaction Fee).

     b.    <u>Transaction Fee</u>.

        i.    If at any time during the Term or within the first twelve full months following the termination of the engagement (including the Term, the "<u>Fee Period</u>") the Debtors (1) consummate any Restructuring or (2) enter into an agreement in principle or definitive agreement to effect a Restructuring, and at any time (including following the expiration of the Fee Period), any Restructuring is consummated, Centerview shall be entitled to receive a transaction fee (a "<u>Transaction Fee</u>"), contingent upon the consummation of such Restructuring and payable at the closing thereof equal to $5,500,000.

     c.    <u>Financing Fee</u>.

        i.    If at any time during the Fee Period, (1) the Debtors consummate any Debtor-in-Possession Financing or (2) the Debtors receive and accept written commitments for one or more Debtor-in-Possession Financings (the execution by a potential financing source and the Debtors of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any Debtor-in-Possession Financing is consummated, the Debtors will pay to

---

[7]     The description of the Fee and Expense Structure in this Application is a summary. To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth herein and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

Centerview a fee equal to 1.00% of the aggregate amount of Debtor-in-Possession Financing (the "DIP Financing Fee").

19.     As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors also agreed to the indemnification, contribution, and other provisions (such provisions, the "Indemnification Provisions"), attached to the Engagement Letter as Annex A (the "Indemnification Agreement").

20.     In addition to any fees payable to Centerview, the Debtors will reimburse Centerview on a monthly basis for its reasonable and documented travel and other reasonable and documented out-of-pocket expenses (including all reasonable and documented fees, disbursements and other charges of counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Debtors' consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by the Engagement Letter.  The Debtors shall also reimburse Centerview, at such times as Centerview shall request, for any sales, use, or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in, or contemplated by, the Engagement Letter, during the term of their engagement.

21.     During the pendency of these chapter 11 cases, Centerview shall apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee and Expense Structure.

22.     The Debtors believe that the Fee and Expense Structure is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Centerview and the fee structures typically utilized by leading investment banking firms of similar stature to Centerview for comparable engagements, both in and out of court.  The Fee and Expense Structure

is consistent with Centerview's normal and customary billing practices for cases of this size and complexity that require the scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Centerview's substantial restructuring and industry experience, and (d) the nature and scope of work to be performed by Centerview in these chapter 11 cases.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed fees and contingent fees.  Similar fixed and contingent fee arrangements have been approved and implemented in other recent, large chapter 11 cases, including certain of the cases referenced in paragraph 11 above.  *See, e.g.*, *In re Exactech, Inc.*, No. 24-12441 (LSS) (Bankr. D. Del. 2024); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D. N.J. 2024); *In re SmileDirectClub, Inc.*, No. 23-90786 (CML) (Bankr. S.D. Tex. 2023); *In re SVB Financial Group*, No. 23-10367 (MG) (Bankr. S.D.N.Y. 2023); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y 2022); *In re Enjoy Technology, Inc.*, No. 22-10580 (Bankr. D. Del. 2022); *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. 2020); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. 2019).

## **Application for Compensation and Time Keeping**

23.    The Debtors request that Centerview and its professionals should be excused from maintaining time records similar to those customarily kept by attorneys and as required by Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Letter, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court regarding submission and approval of fee applications and in light of the services that Centerview may provide to the Debtors and the structure of Centerview's compensation pursuant to the Engagement Letter.  Centerview still intends to file interim and final

fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in a summary format, a description of the services that each professional renders and the amount of time that such individual spent on each date in rendering services on behalf of the Debtors.

24.     Because it is not the general practice of investment banking firms, including Centerview, to keep contemporaneous detailed time records similar to those customarily kept by attorneys or provide or conform to a schedule of hourly rates for its professionals, Centerview does not maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals.  Moreover, Centerview does not ordinarily keep time records on a "project category" basis; and, pursuant to the Engagement Letter, Centerview's compensation is based in part on a fixed Monthly Advisory Fee.  Notwithstanding that Centerview does not charge for its services on an hourly basis, Centerview requests that it be permitted to maintain time records in half hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professionals rendering such services on behalf of the Debtors.  Centerview will also maintain records in support of any costs and expenses incurred in connection with its services. The Debtors will pay Centerview's applications for compensation and expenses pursuant to the terms of the Engagement Letter and upon this Court's approval.

### Indemnification of Centerview

25.     As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors agreed to the Indemnification Provisions as set forth in the Indemnification Agreement.  As more fully set forth therein, the Indemnification Agreement provides that the Debtors will indemnify and hold harmless Centerview, each of its affiliates,

Centerview's and such affiliates' respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (each an "Indemnified Person") from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person (collectively, "Losses"), which are related to or arise out of Centerview's engagement or any matter or transactions contemplated thereby.

26.     The Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Centerview.  The Debtors believe that the Indemnification Provisions in the Engagement Letter reflect the customary qualifications and limits on such terms for investment banking engagements both out of court and in chapter 11 cases and submit that the Indemnification Provisions are reasonable, subject to the modifications set forth in the Order.  The Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.   As part of this Application, the Debtors request that this Court approve the Indemnification Provisions, with the modifications set forth in the Order.

### Efforts to Avoid Duplication of Services

27.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including, among others: (a) Kirkland & Ellis LLP, (b) Alvarez & Marsal North America, LLC ("A&M"), (c) Cole Schotz P.C., (d) Deloitte Tax LLP, and (e) Kroll Restructuring Administration LLC.  The Debtors believe that the services to be performed by Centerview on behalf of the Debtors will be complementary to, and not duplicative of, services provided by these additional professionals, including the services of A&M.  The Debtors and Centerview are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to

ensure that there is minimal duplication of effort as a result of Centerview's retention as investment banker. The Debtors understand that Centerview will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### Centerview's Disinterestedness

28.     Centerview has reviewed the list of parties-in-interest provided by the Debtors. To the best of the Debtors' knowledge, information, and belief, as of the date hereof, and except to the extent disclosed herein or in the Kielty Declaration, Centerview: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or other parties-in-interest except as disclosed in the Kielty Declaration.

29.     Given the large number of parties-in-interest in these chapter 11 cases, and despite the efforts to identify and disclose Centerview's relationships with parties in interest in these chapter 11 cases, Centerview is unable to state with certainty that every client relationship or other connection has been disclosed in the Kielty Declaration. Centerview has informed the Debtors that if any new material facts or relationships bearing on the matters described herein are discovered or otherwise arise during the pendency of these chapter 11 cases, Centerview will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new material facts or relationships.

30.     The Debtors are informed that Centerview will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Centerview, to the extent permitted by section 504 of the Bankruptcy Code.

**Basis for Relief**

I.    **The Debtors Should Be Permitted to Retain and Employ Centerview on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

31.    The Debtors seek approval of the retention and employment of Centerview pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

32.    Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328  of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court

> approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

33.     As discussed above and in the Kielty Declaration, Centerview satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Engaged prepetition, Centerview has been advising the Debtors since prior to the commencement of these chapter 11 cases and has already committed a significant amount of time and effort assisting the Debtors with their restructuring efforts.  Additionally, given the numerous issues that Centerview may be required to address in the performance of its services for the Debtors pursuant to the Engagement Letter, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and appropriate under the circumstances and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

34.     Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Centerview; (b) Centerview's substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by Centerview and other leading investment banks who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

35.     As set forth above, and notwithstanding approval of Centerview's Engagement Letter under section 328 of the Bankruptcy Code, Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee

Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein. Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Centerview or any Indemnified Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

36.     The Debtors request that the requirements of Local Rule 2016-2 the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court be tailored to the nature of Centerview's engagement and its compensation structure. Centerview has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis. Additionally, it is not the general practice of investment banking firms like Centerview to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, Centerview's restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks. As such, the Debtors request modification of the requirements under Local Rule 2016-2, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court.

37.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Am. Tire Distribs., Inc.*, No. 24-12391(CTG) (Bankr. D. Del. Dec. 17, 2024); *In re Wheel Pros, LLC,* No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024).

38. The Debtors also believe that employment of Centerview effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases. Centerview has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions. *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

## II. The Indemnification, Contribution and Reimbursement Terms of the Engagement Letter Are Appropriate.

39. The Indemnification Provisions in the Indemnification Agreement, as modified by the proposed Order attached hereto, were negotiated at arm's-length between the Debtors and Centerview. The Debtors and Centerview believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases. Similar provisions have been approved by courts in other large chapter 11 cases. *See, e.g.*, *In re Am. Tire Distribs., Inc.*, No. 24-12391(CTG) (Bankr. D. Del. Dec. 17, 2024); *In re Wheel Pros, LLC,* No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024).

40. Accordingly, the Debtors respectfully submit that the terms of the Indemnification Provisions are reasonable under the circumstances and customary and should be approved in these chapter 11 cases.

## III. The Retention of Centerview Is Critical to the Debtors' Chapter 11 Efforts.

41. The Debtors submit that the retention of Centerview is in the best interests of all parties in interest in these chapter 11 cases. As set forth above, Centerview has extensive

experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Centerview is a preeminent investment banking and financial advisory firm that is intimately familiar with the Debtors' businesses. Denial of the relief requested herein will deprive the Debtors of the assistance of Centerview's uniquely qualified professionals who have served the Debtors leading up to the Petition Date and have continued to assist them following the Petition Date. Indeed, if the Debtors were forced to engage a new investment banker who lacks a thorough understanding of the Debtors' businesses, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost. Based on services performed to date, Centerview has been integral to preparing the Debtors for these chapter 11 cases.

42.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Centerview in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## Notice

43.    The Debtors will provide notice of this application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Committee; (c) counsel to the Prepetition Term Loan Agent; (e) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition FILO Agent; (f) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (g) the United States Attorney for the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively,

the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: February 13, 2025
Hudson, Ohio

*/s/ Ann Aber*
Ann Aber
JOANN Inc.
Executive Vice President, Chief Legal and
Human Resources Officer