**EXHIBIT A**

**Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| JOANN INC., *et al.*,[1] | ) ) | Case No. 25-10068 (CTG) |
| Debtors. | ) ) | (Jointly Administered) |
|  | ) ) | **Re: Docket No. [●]** |

ORDER (I) AUTHORIZING
THE EMPLOYMENT AND RETENTION OF
CENTERVIEW PARTNERS LLC AS INVESTMENT
BANKER TO THE DEBTORS AND DEBTORS IN POSSESION
EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE
TERMS OF THE ENGAGEMENT LETTER, (III) MODIFYING CERTAIN
TIMEKEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order"), (a) authorizing the Debtors to retain and employ Centerview Partners LLC ("Centerview") as investment banker to the Debtors, effective as of the Petition Date, under sections 327 and 328(a) of the Bankruptcy Code, (b) approving the terms and conditions of the Engagement Letter as set forth herein, (c) modifying certain timekeeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2, and the U.S. Trustee Guidelines, and (d) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Kielty Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is granted as set forth in this Order and the provisions set forth in the Engagement Letter (and all attachments thereto, including the Indemnification Agreement) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2. In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Centerview as their investment banker in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and

reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Centerview on the terms and at the times specified in the Engagement Letter, as modified herein, effective as of the Petition Date.

3. The Engagement Letter, including, without limitation, the Indemnification Agreement, is incorporated herein by reference and approved in all respects except as otherwise set forth herein.

4. Centerview shall be compensated for fees and reimbursed for reasonable and documented out-of-pocket expenses by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Centerview, including without limitation the Monthly Advisory Fees, Transaction Fee, and DIP Financing Fee, shall be subject to Section 328(a) of the Bankruptcy Code, except as set forth herein.

5. Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Centerview shall file interim and final fee applications for allowance of compensation and reimbursement of out-of-pocket expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other procedures or orders of the Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Centerview' interim and final applications for compensation (including, without limitation, the Monthly Advisory Fees, Transaction Fee, and DIP Financing Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Centerview's interim and final fee applications pursuant to section 330 of the Bankruptcy Code; and *provided further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees

payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.  Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other procedures or orders of the Court are hereby modified such that Centerview's restructuring professionals shall be required only to keep summary time records in hourly increments, Centerview's non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Centerview's professionals shall not be required to keep time records on a project category basis and Centerview shall not be required to provide or conform to any schedule of hourly rates.

7.  In the event that Centerview seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Centerview' own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Centerview in retention and fee application matters.  For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorney's fees and/or expenses set forth in <u>Annex A</u> to the Engagement Letter with respect to indemnification.

4

8. The indemnification, contribution, and reimbursement provisions included in Annex A to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

    a. subject to the provisions of subparagraphs (b) and (d) below, the Debtors are authorized to indemnify Indemnified Persons in accordance with the Engagement Letter and the Indemnification Agreement for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter; *provided*, *however*, that the Indemnified Persons shall not be indemnified for any claim arising from services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

    b. notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen directly from the Indemnified Person's gross negligence, willful misconduct, bad faith, or fraud to which the Debtors have not consented; (ii) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of nonpublic information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, or unconsented fraud, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order;

    c. if, during the pendency of these chapter 11 cases, the Indemnification Provisions annexed to the Engagement Letter are held to be unenforceable by reason of the exclusions set forth in subparagraph (b) above, and an Indemnified Person makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then any limitations on Centerview's contribution obligations set forth in the Indemnification Provisions annexed to the Engagement Letter shall not apply; and

    d. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no

5

longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter and the Indemnification Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment; *provided, however*, that for the avoidance of doubt, this subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify any Indemnified Person.

9. Centerview shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10. None of the fees payable to Centerview under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

11. Such services other than set forth in the Application that the Debtors may request that Centerview provide during the course of these chapter 11 cases, and as agreed to by Centerview, shall be subject to separate application and order of this Court.

12. Centerview will review its files against any updated list of Potential Parties-in-Interest (as defined in the Kielty Declaration) received from the Debtors from time to time during the pendency of these chapter 11 cases pursuant to the procedures described in the Kielty Declaration. To the extent any new material facts or relationships are discovered or arise in the course of such review, Centerview will use reasonable efforts to promptly make additional disclosure to this Court as required by Bankruptcy Rule 2014(a).

13. The Debtors and Centerview are authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

14. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

15. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

16. Notwithstanding any provision to the contrary in the Application or the Engagement Letter, this Court shall retain jurisdiction with respect to all matters airing from or related to the implementation of this Order.

17. To the extent that there may be any inconsistency between the terms of the Application, the Kielty Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

## EXHIBIT 1

**Engagement Letter**

Case 25-10068-CTG    Doc 454-2    Filed 02/18/25    Page 9 of 19

## EXHIBIT 1

**Engagement Letter**

December 9, 2024

JOANN Inc.
5555 Darrow Road
Hudson, OH 44236
Attention: Michael Prendergast

Dear Mr. Prendergast:

This letter (the "Agreement") confirms the terms under which JOANN Inc. and its subsidiaries (collectively, the "Company") have engaged Centerview Partners LLC ("Centerview") as its financial advisor and investment banker with respect to a possible Restructuring and/or Debtor-in-Possession Financing (each as defined below) and with respect to such other financial matters as to which the Company and Centerview may agree in writing during the term of this engagement. For purposes hereof, the term "Company" also includes any entity that the Company may form or invest in to consummate a Restructuring and/or Debtor-in-Possession Financing and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company, whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, Centerview may utilize the services of one or more of its affiliates, in which case references herein to Centerview shall include, as applicable, such affiliates. The terms of this Agreement shall apply to all services provided by Centerview to the Company in connection with the matters contemplated by herein, including those services provided prior to the date of this Agreement.

As used herein, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase or repurchase and/or any material modification or amendment to the terms, conditions or covenants thereof), of the Company's debt securities and/or bank or other credit facilities and/or other indebtedness, obligations or liabilities (including, without limitation, partnership interests, lease obligations, trade credit facilities and/or contract, tort and contingent obligations), including pursuant to a repurchase or exchange transaction, liquidation or wind down effectuated out-of-court with the Company's involvement or, plan of reorganization, plan of liquidation and/or §363 sale(s) under chapter 11 of the Bankruptcy Code (a "Plan").

For the purposes herein, a Restructuring shall also include any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the Company are, directly or indirectly, sold, purchased or combined with another entity or company.

As used herein, the term "Debtor-in-Possession Financing" shall mean any "debtor-in-possession" financing raised in connection with a chapter 11 case under the Bankruptcy Code.

For the purposes herein, a Debtor-in-Possession Financing shall exclude any existing principal indebtedness that is rolled by existing lenders into the debtor-in-possession facility.

Centerview understands that the Company has engaged or may engage one or more other financial advisors (each, an "Other Advisor") to advise the Company in connection with certain of the matters contemplated by this Agreement, the terms of which are or will be set forth in separate agreements between the Company and each such Other Advisor.  It is hereby acknowledged and agreed that no fee payable by the Company to any Other Advisor or any other party in connection with the subject matter of this Agreement shall reduce or otherwise affect any fees payable to Centerview hereunder.  It is further acknowledged and agreed that Centerview shall have no responsibility, express or implied, or liability to the Company, its affiliates or any other party involved in the matters contemplated by this Agreement, or in any related transactions, in connection with the advice, opinions, actions or omissions of any Other Advisor in connection with the matters contemplated by this Agreement and that Centerview and each such Other Advisor are not and will not be deemed for any purpose to be acting as an agent, joint venturer or partner of the other.  Centerview explicitly disclaims responsibility for any advice, work product or fairness opinion given by any Other Advisor.

1. Centerview, as financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services:

    a. <u>General Financial Advisory and Investment Banking Services</u>.  To the extent requested by the Company, Centerview shall:

        i. familiarize ourselves with the business, operations, properties, financial condition and prospects of the Company;

        ii. review the Company's financial condition and outlook;

        iii. assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other parties;

        iv. evaluate the Company's debt capacity and capital structures alternatives;

        v. participate in negotiations among the Company, and related creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by this Agreement; and

        vi. perform such other financial advisory services as may be specifically agreed upon in writing by the Company and Centerview.

    b. <u>Restructuring Services</u>.  To the extent requested by the Company, Centerview shall:

      i. analyze various restructuring scenarios and the potential impact of these scenarios on the value of the Company, and the recoveries of those stakeholders impacted by the Restructuring;

      ii. provide financial and valuation advice and assistance to the Company in developing and seeking approval of a Plan;

      iii. provide financial advice and assistance to the Company in identifying and contacting any third-party financing sources and structuring any new securities to be issued pursuant to a Restructuring;

      iv. provide financial advice and assistance to the Company in connection with any sale(s) including identifying and contacting any potential acquirors and participating in any negotiations;

      v. assist the Company and/or participate in negotiations with entities or groups affected by any Restructuring; and

      vi. if requested by the Company, participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

  c. <u>Financing Services</u>.  To the extent requested by the Company, Centerview shall:

      i. provide financial advice and assistance to the Company in structuring and effecting a Debtor-in-Possession Financing; and

      ii. assist in the arranging of a Debtor-in-Possession Financing, the due diligence process and negotiating the terms of any proposed financing.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Centerview to underwrite, place or purchase any securities, in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to a financing.

In rendering its services to the Company hereunder, Centerview is not assuming any responsibility for the Company's underlying business decision to pursue any business strategy or to effect any Restructuring and/or Debtor-in-Possession Financing. The Company agrees that Centerview shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions.  The Company acknowledges that Centerview is not providing any advice on tax, legal, regulatory or accounting matters, and the Company agrees that it will seek and rely on the advice of its own professional advisors for such matters, and will make an independent decision with respect to the matters that are the subject of this engagement based on such advice.

In order to coordinate effectively the Company's and Centerview's activities to effect a Restructuring and/or Debtor-in-Possession Financing, the Company will promptly inform Centerview of any discussions, negotiations or inquiries regarding a possible Restructuring and/or Debtor-in-Possession Financing (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this Agreement).

The Company shall make available to Centerview all information in its possession concerning the business, assets, operations, financial condition and prospects of the Company that Centerview reasonably requests in connection with the services to be performed for the Company hereunder, and shall provide Centerview with reasonable access to the Company's officers, directors, employees, independent accountants, and counsel, and other advisors, agents and other representatives of the Company as Centerview deems appropriate.  To the best of the Company's knowledge, all information furnished by or on its behalf to Centerview pertaining to the Company, when delivered, will be accurate and complete in all material respects.  In addition, the Company agrees that it will promptly notify Centerview of any material event or change in the business affairs, condition (financial or otherwise) of the Company that occurs during the term of our engagement hereunder, or if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore delivered to Centerview. The Company understands and agrees that, in performing our services hereunder, Centerview (a) will be using and relying on publicly available information and on materials, data and other information furnished to Centerview by the Company and other parties, (b) is entitled to assume and rely upon the accuracy and completeness of such publicly available information and the other information so furnished without having independently verified the same, and (c) does not assume any responsibility for the accuracy or completeness of such information.  Centerview will not conduct an independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets or liabilities) of the Company, or advise or opine on any solvency or viability issues, nor will it make an inspection of the properties or assets of the Company. With respect to any forecasts or projections that may be furnished to Centerview or discussed with the Company, Centerview will assume that they have been reasonably prepared on bases reflecting the best then currently available estimates and judgments of the management of the Company as to the matters covered thereby.  In connection with the services described above, the Company authorizes Centerview to transmit any memorandum prepared by the Company describing the Company and its assets, properties or businesses in connection with a Restructuring and/or Debtor-in-Possession Financing to potential parties to a Restructuring and/or Debtor-in-Possession Financing. The Company will be solely responsible for the contents of this memorandum.

2. As compensation for our services, the Company agrees to pay Centerview in cash, by wire transfer of immediately available funds when due, the following fees:

   a. A monthly financial advisory fee of $175,000 (the "<u>Monthly Advisory Fee</u>"), the first of which shall be due and paid by the Company upon execution of this Agreement and thereafter on each monthly anniversary thereof during the term of this engagement. After receipt of aggregate Monthly Advisory Fees of $1,050,000, 50% of the amount of any subsequent Monthly Advisory Fee(s) paid to Centerview will be credited (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b).

      b.      If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (1) the Company consummates any Restructuring or (2) the Company enters into an agreement in principle or definitive agreement to effect a Restructuring, and at any time (including following the expiration of the Fee Period), any Restructuring is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of such Restructuring and payable at the closing thereof equal to $5,500,000.

      c.      If at any time during the Fee Period, (1) the Company consummates any Debtor-in-Possession Financing or (2) the Company receives and accepts written commitments for one or more Debtor-in-Possession Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any Debtor-in-Possession Financing is consummated, the Company will pay to Centerview a fee equal to 1.00% of the aggregate amount of Debtor-in-Possession Financing ("DIP Financing Fee").

It is understood and agreed that if the proceeds of any such financing are to be funded in more than one stage, Centerview shall be paid its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

The Company acknowledges and agrees that Centerview's restructuring expertise as well as its capital markets/financing knowledge and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Centerview's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Centerview's services hereunder could not be measured merely by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Centerview and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Centerview and that the actual time and commitment required by Centerview and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given numerous issues which Centerview may be required to address in the performance of its services hereunder, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards.

3.      In addition to the fees payable by the Company to Centerview hereunder, the Company shall, whether or not any Restructuring and/or Debtor-in-Possession Financing shall be proposed or consummated, reimburse Centerview on a monthly basis for its reasonable

and documented travel and other reasonable and documented out-of-pocket expenses (including all reasonable and documented fees, disbursements and other charges of counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Company's consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by this engagement. The Company shall also reimburse Centerview, at such times as Centerview shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in, or contemplated by, this engagement, during the term of this engagement. Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses. It is understood and agreed that nothing contained herein shall be deemed to limit in any manner the indemnification, expense reimbursement and other obligations of the Company contained in the Indemnification Agreement attached hereto as Annex A.

4. The Company and Centerview have entered into a separate letter agreement, dated the date hereof and attached hereto as Annex A (the "Indemnification Agreement"), providing for indemnification by the Company of Centerview and certain related persons. Such Indemnification Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein. As stated therein, the Indemnification Agreement shall survive any termination or completion of Centerview's engagement hereunder.

5. The Company agrees that neither Centerview nor any of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Centerview Persons" and each individually, a "Centerview Person") shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with this engagement or any transactions or conduct in connection herewith, except to the extent that any losses, claims, damages or liabilities incurred by the Company are finally judicially determined to have resulted directly from the willful misconduct or gross negligence of such Centerview Person.

6. This Agreement and Centerview's engagement hereunder may be terminated by either the Company or Centerview at any time upon 30 days' prior written notice thereof to the other party; provided, however, that (A) termination of Centerview's engagement hereunder shall not affect the Company's continuing obligations under the Indemnification Agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (B) notwithstanding any such termination (other than termination by the Company for Cause (as defined below)), Centerview shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (C) termination of Centerview's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accrued prior to such termination to the extent provided in paragraph 3 hereof. As used herein, "Cause" means a final judicial determination that Centerview and/or one or more Centerview Persons acted with gross negligence or willful misconduct in the performance of the services hereunder after notice thereof and a reasonable opportunity to cure, if curable.

7. Centerview has been retained under this Agreement as an independent contractor with duties owed solely to the Company, and the Company acknowledges that Centerview is not acting as an agent of the Company or in a fiduciary capacity, whether pursuant to contract or otherwise, with respect to the Company or its stockholders, employees, creditors or any other third party.  The advice (oral or written) rendered by Centerview pursuant to this Agreement is intended solely for the benefit and use of the Board of Directors of the Company (in their capacity as directors and not in any individual capacity) in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to Centerview be made by the Company, without the prior written consent of Centerview.  Centerview is not assuming any duties or obligations other than those expressly set forth in this Agreement.

8. The Company agrees that, with the Company's written consent (which shall not be unreasonably withheld), Centerview shall have the right to place advertisements in financial and other newspapers and journals and in marketing materials at its own expense describing its services to the Company hereunder.  Notwithstanding the foregoing, upon such public announcement of any of the matters described herein, Centerview shall, without the Company's consent, have the right to include a "tombstone" with respect to such matters on its website or in any "pitch book" or similar marketing materials to the extent such materials do not include any information not previously publicly disclosed by the Company.

9. In the event that the Company becomes a debtor under the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "<u>Bankruptcy Court</u>") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Centerview's retention by the Company under the terms of this Agreement, and subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof.  The Company shall supply Centerview and its counsel with a draft of such application and any proposed order authorizing Centerview's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Centerview and its counsel to review and comment thereon.  Centerview shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless and until Centerview's retention under the terms of this Agreement is approved under Section 327(a) and 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Centerview in all respects.  Centerview acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 9, payment of Centerview's fees and expenses shall be subject to (i) jurisdiction and approval of the Bankruptcy Court under sections 327(a) and 328(a) of the Bankruptcy Code and any order approving Centerview's retention, (ii)

any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interest and final fee applications. Centerview shall have no obligation to keep time records except as it does so in its normal practice and will have no obligation to provide services under this Agreement if it will be required to vary its normal time-keeping practices. In the event that the Company becomes a debtor under the Bankruptcy Code and Centerview's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Centerview hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Centerview's retention under section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Centerview's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Centerview's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Centerview hereunder are reasonable regardless of the number of hours to be expended by Centerview's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Centerview in cash.

The Company agrees that Centerview's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursements and indemnification provisions of this Agreement (including, without limitation, Annex A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company also agrees to assist Centerview in preparing, filing and serving all required fee statements, interim fee applications, and final fee application. The Company agrees to support Centerview's fee applications during any Bankruptcy Court hearing on such fee applications, so long as the fees and expenses sought by Centerview therein are consistent with this Agreement.

10. This Agreement shall be deemed made in New York. This Agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each of the Company and Centerview agree that any action or proceeding based hereon, or arising out of Centerview's engagement hereunder, shall be brought and maintained in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. The Company and Centerview each hereby irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York for the purpose of any such action or proceeding as set forth above. Each of the Company and Centerview hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has

been brought in an inconvenient forum and agree not to plead or claim the same. THE COMPANY (FOR ITSELF, ANYONE CLAIMING THROUGH IT OR IN ITS NAME, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) AND CENTERVIEW EACH HEREBY IRREVOCABLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11. This Agreement may be executed in counterparts, each of which together shall be considered a single document. This Agreement may not be assigned by either party (except by Centerview to an affiliate) without the prior written consent of the other. This Agreement shall be binding upon Centerview and the Company and their respective successors and permitted assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto, other than the Indemnified Persons referenced in the Indemnification Agreement attached hereto as Annex A and the Centerview Persons referenced in paragraph 5 hereof. This Agreement and the Indemnification Agreement constitute the entire agreement of the parties with respect to the subject matter hereof, and may not be amended or otherwise modified or its provisions waived except by a writing executed by Centerview and the Company.

12. Centerview is engaged directly and through its affiliates and related parties in a number of investment banking, financial advisory and merchant banking activities. The Company acknowledges and agrees that in performing its services for the Company hereunder, Centerview shall have no duty to disclose to the Company, or to use for the benefit of the Company, any proprietary or non-public information obtained by Centerview or its affiliates or related parties in the course of providing services to any other entity or person, engaging in any transaction (including as principal) or otherwise conducting its business.

We are pleased to accept this engagement and look forward to working with the Company.  Please confirm that the foregoing is in accordance with our mutual understanding by signing and returning to Centerview this letter and the Indemnification Agreement attached hereto as Annex A, which shall thereupon constitute binding agreements between Centerview and the Company.

Very truly yours,

CENTERVIEW PARTNERS LLC

By: _____

Name: Karn S. Chopra
Title:   Partner

Accepted and Agreed to:

JOANN Inc.

By: _____

Name: Michael Prendergast
Title:   Interim Chief Executive Officer