**<u>Exhibit A</u>**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS ADMINISTRATIVE ADVISOR EFFECTIVE AS OF THE PETITION DATE

Upon the Application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order"), authorizing the Debtors to employ and retain Kroll Restructuring Administration LLC ("Kroll") as administrative advisor (the "Administrative Advisor") effective as of the Petition Date pursuant to sections 327(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-2, all as more fully set forth in the Application; and upon the Steele Declaration and the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain Kroll as Administrative Advisor, effective as of the Petition Date, pursuant to section 327(a) of the Bankruptcy Code and under the terms of the Engagement Agreement attached hereto as **Exhibit 1**, as modified by this Order, and Kroll is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement.

3.      Kroll is authorized to take all actions necessary to comply with its duties as Administrative Advisor as described in the Application and set forth in the Engagement Agreement.

4.      Kroll shall apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.

5.      The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

6.      Kroll shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

7.      Notwithstanding anything to the contrary in the Application or any provision in the Engagement Agreement, the Debtors shall have no obligation to indemnify Kroll, or provide contribution or reimbursement to Kroll, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Kroll's gross negligence, willful misconduct, bad faith, self-dealing, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Kroll's contractual obligations, if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Kroll should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this Order.

8.      If, before the earlier of the entry of an order (i) confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or (ii) closing these chapter 11 cases, Kroll believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement

obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Kroll must file an application therefor in this Court, and the Debtors may not pay any such amounts to Kroll before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Kroll for indemnification, contribution, or reimbursement, and is not intended to limit the duration of the Debtors' obligation to indemnify Kroll. All parties in interest shall retain the right to object to any demand by Kroll for indemnification, contribution, or reimbursement.

9.      The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

10.     Any services Kroll will provide relating to the Debtors' schedules of assets and liabilities and statement of financial affairs shall be limited to administrative and ministerial services. The Debtors shall remain responsible for the content and accuracy of its schedules of assets and liabilities and statement of financial affairs.

11.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

13.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

14.     Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

## Exhibit 1

**Engagement Agreement**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of January 3, 2025 between Kroll Restructuring Administration LLC ("***Kroll***") and JOANN Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll has agreed to (i) waive certain hourly fees incurred prepetition, subject to the terms and conditions set forth in that certain letter agreement entered by and between Kroll and the Company on January 3, 2025 (the "***Letter Agreement***")  and (ii) provide a discount of 15% off the attached hourly rates.  Kroll has also agreed to limit its fees and expenses subject to the terms and conditions set forth in the Letter Agreement. The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly.  All undisputed invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any undisputed amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



charge equal to 1.5% of the total amount unpaid; provided such late charge shall not accrue until Kroll provides written notice of the unpaid amount and gives the Company 10 days to cure.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $100,000, inclusive of any prior advance outstanding. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If any annual increase to the hourly rates therein represents an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3. Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4. Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to



the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.** **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

**6.** **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

**7.** **Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll undisputed invoices for more than 90 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

**8.** **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



**9. Indemnification**

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable and documented counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

**10. Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence, willful misconduct, or fraud, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder, except to the extent due to Kroll's gross negligence, willful misconduct, or fraud.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

**11. Company Data**

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "***SOFAs and Schedules***").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose



of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the Company. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll or the Company of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond its reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment; General</u>

(a) Each party acknowledges that it has read this Agreement and the Letter Agreement, understands them and agrees to be bound by their respective terms (collectively, the "***Agreements***"). Each party further agrees that the Agreements are the complete and exclusive statements of the parties' agreements, which supersede and merge all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreements shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) The Agreements may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17.  Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18.  Notices

All notices and requests in connection with this Agreement or the Letter Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 1 World Trade Center, 31st Floor |
|  | New York, NY 10007 |
|  | Attn:    Legal Department |
|  | Tel:     212-257-5450 |
|  | Email:  Legal@kbs.kroll.com |
| If to the Company: | JOANN Inc. |
|  | 555 Darrow Road |
|  | Hudson, OH 44236 |
|  | Attn:  Ann Aber |
|  | Tel:    216-744-5006 |
|  | Email: Ann.Aber@joann.com |
| With a copy to: | Kirkland & Ellis LLP |
|  | 333 West Wolf Point Plaza |
|  | Chicago, IL 60654 |
|  | Attn:    Lindsey Blumenthal |
|  | Tel:     312-862-2571 |
|  | Email:  lindsey.blumenthal@kirkland.com |

*[Signature page follows]*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Christina Pullo
Title: Managing Director

**JOANN Inc.**

By:
Title:



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Christina Pullo
Title: Managing Director

N Inc.

By: Ann Aber
Title: EVP, Chief Legal Officer & Secretary

7



## R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claims and Noticing Rates | |
|---|---|
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes data, including proofs of claim, ballots and return mail, and executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requirements and administers complicated variable data mailings. | $60 - $115 |
| **Consultant/Senior Consultant**<br><br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing claims objections and transfers.<br><br>The Senior Consultant directs the data collection process for the master mailing list, oversees all mailings, performs quality control checks on claim and other data processes, and generates claim and other reports. | $65 - $195 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the engagement and oversees all aspects of the bankruptcy administration, including managing the internal client service team and coordinating among case professionals. | $185 - $245 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



## R A T E S

Quality.
Partnership.
Expertise.
Innovation.

### Solicitation, Balloting and Tabulation

### Statements of Financial Affairs/Schedules of Assets and Liabilities

| TITLE | HOURLY RATE |
|---|---|
| Solicitation Consultant; SOFA/Schedule Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.<br><br>The SOFA/Schedule Consultant directs the data collection process for the SOFAs and Schedules and prepares the official forms. | $225 |
| Solicitation Director; SOFA/Schedule Director<br>The Director of Solicitation is the lead client service contact in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes.<br><br>The SOFA/Schedule Director works closely with the company and advisors to oversee all aspects of collecting SOFA/Schedule data and preparing the official forms. | $250 |

### Managing Directors and Experts

| TITLE | HOURLY RATE |
|---|---|
| Managing Director<br>Kroll Restructuring Administration's Managing Directors are expert witnesses or former restructuring professionals averaging more than 15 years of experience across hundreds or thousands of bankruptcy and other engagements. | $275 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

| Printing & Noticing Services | |
|---|---|
| Printing | $0.12 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |
| **Newspaper and Legal Notice Publishing** | |
| Coordinate and publish legal notices | Available on request |
| **Case Website** | |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

| Electronic Data Collection Platform | |
|---|---|
| Electronic claim filing, ballot submission and complex data collection platform | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Payment issuance (check, wire, ACH, digital) and/or Form 1099 | Available on request |
| W-9 solicitation and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit
www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



JOANN Inc.                                                        January 3, 2025
555 Darrow Road
Hudson, OH 44236
Attn:  Ann Aber

Re: Engagement of Kroll Restructuring Administration LLC

Dear Ms. Aber,

Thank you for the opportunity to work with you and your team.  We are looking forward to contributing in every way possible to a successful transaction for JOANN Inc. (the "Company").

This letter is to confirm our agreement regarding certain discounts to be provided to the Company in connection with that certain Kroll Restructuring Administration LLC Engagement Agreement, dated January 3, 2025 (the "Engagement Agreement").

As noted in the Engagement Agreement, Kroll Restructuring Administration LLC ("Kroll") has agreed to extend to the Company a discount of 15% off the hourly rates set forth in the Rate Structure (as defined in the Engagement Agreement) for the life of the engagement.   In addition, Kroll has agreed to waive up to $15,000 in hourly fees incurred before the date the Company files a voluntary petition(s) seeking relief under chapter 11 of title 11 of the United States Code; provided that such waiver of fees shall not apply to fees incurred in connection with a prepetition solicitation or the preparation of schedules of assets and liabilities or statements of financial affairs.  For the avoidance of doubt, the foregoing discounts shall not apply to expenses incurred by Kroll for or on behalf of the Company.

In addition, Kroll has agreed to cap its fees and expenses at $950,000 from the petition date of the Company's chapter 11 case through the date that is 4 months after the petition date (the "Cap") based on the below assumptions:

- 13 Debtor entities
- Creditor matrix of no more than 65,000 domestic addresses
- 345 stockholders
- No public securities
- No more than 3,000 filed claims
- No more than 1,000 ballots and/or opt-in/opt-out forms submitted
- Master Service List of up to 50 parties receiving hard copy service (no limit on parties receiving core email service)

Kroll Restructuring Administration LLC        T  +1 212 257 5466        christina.pullo@kroll.com
1 World Trade Center, 31st Floor                                              www.kroll.com
New York, NY 10007

- o First class mail service of up to 20 pleadings per month at no more than 30 pages per pleading
- Email notice of first day hearing
- First day service of no more than 600 pages to no more than 50 hard copy notice parties
- 6 milestone mailings to the full matrix, not to exceed 25 pages aggregated across all milestone mailings, inclusive of opt-out or opt-in releases in the Confirmation Hearing Notice
- 5,000 voting parties to receive 14 pages plus Plan/Disclosure Statement on a flash drive sent by first class mail
- No unusual services (e.g., hundreds of printed pages, color printing)
- No DIP syndications, rights offerings, distribution elections, or other ATOP events
- Toll free support via a call center operating during standard hours with English and Spanish language support only
- Assistance in the preparation of Schedules of Assets and Liabilities and Statement of Financial Affairs for 13 debtors to be primarily handled by the Debtors' financial advisor, Alvarez & Marsal.

For the avoidance of doubt, the Cap does not include fees and expenses related to assistance with publication notice, contract reviews, or any overnight mailing costs. Kroll, the Company and its counsel and other advisors agree to work together in good faith to determine when and if the case parameters, scope of requested services, complexity of the engagement or other assumptions underlying the cap of the engagement would require a modification to the amount of the Cap. In order to be as transparent as possible given the variable nature of chapter 11 cases, Kroll will submit an estimate of fees and expenses to counsel of the Company every two weeks. Kroll shall not be entitled to an increase in the Cap on account of any deviation from the assumptions set forth herein due to the actual case parameters, scope of services, or complexity of the engagement unless counsel to the Company has provided its prior written consent (not to be unreasonably withheld in substance or timing, and email being sufficient) to Kroll expanding or modifying its services to address such deviation. Notwithstanding the foregoing, the Company recognizes that Kroll acts at the direction of the Court. Despite its reasonable best efforts to obtain advance consent, Kroll may be required by Court order to perform services over the Cap that, due to time constraints, mean Kroll is not able to obtain prior written consent from counsel to the Company. In such circumstances, Kroll may be compensated for such services notwithstanding the lack of prior written consent only if (i) Kroll provides to counsel to the Company notice of the provision of such services as soon as

Page 3 of 3

reasonably practicable and (ii) the provision of such services was so urgent such that the granting of prior written consent was impossible or impractical.

Sincerely,

Christina Pullo
Managing Director