**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| JOANN INC., *et al.*,[1] | ) Case No. 25-10068 (CTG) |
| Debtors. | ) (Jointly Administered) |
|  | ) Hearing Date: March 6, 2025 at 2:00 p.m. (ET) |
|  | ) Obj. Deadline: February 27, 2025 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP
AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JANUARY 15, 2025**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date (as defined herein). In support of this Application, the Debtors submit the declaration of Aparna Yenamandra, the president of Aparna Yenamandra, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Yenamandra Declaration"), which is attached hereto as **Exhibit B** and the declaration of Ann Aber, Executive Vice President, Chief Legal and Human Resources Officer of JOANN Inc., which

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

is attached hereto as **Exhibit C** (the "Aber Declaration"). In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

## Background

4. JOANN Inc., together with its Debtor and non-Debtor affiliates (collectively, "JOANN" or the "Company") is a leading national retailer of sewing, arts and crafts, and select home décor products. Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers. For over 80 years, JOANN has fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

5. On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16, 2025, the Court entered an order [Docket No. 103] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 198].

6. A description of the Debtors' business, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions*, filed on January 15, 2025 [Docket No. 5], incorporated herein by reference.[2]

**Relief Requested**

7. By this Application, the Debtors seek entry of the Order authorizing the retention and employment of Kirkland as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Kirkland effective as of December 20, 2024 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to the Order and incorporated herein by reference.

---

[2] The Debtors also seek to employ and retain Cole Schotz P.C. ("Cole Schotz") as their conflicts counsel in connection with these chapter 11 cases to handle matters that the Debtors may encounter that cannot be handled appropriately by Kirkland because of a conflict of interest. It is intended that the services of Cole Schotz shall complement, and not duplicate, the services to be rendered by Kirkland. Moreover, the responsibilities of Cole Schotz shall be confined to discrete legal matters that are distinct from the matters handled by Kirkland. Cole Schotz shall act on its own and will not act under the direct supervision of Kirkland.

**Kirkland's Qualifications**

8. The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

9. Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Dec. 11, 2024); *In re Tupperware Brands Corp.*, No. 24-12156 (BLS) (Bankr. D. Del. Nov. 15, 2024); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re SunPower Corp.*, No. 24-11659 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. Aug. 5, 2024); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 13, 2024); *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. June 4, 2024); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024).[3]

10. In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these chapter 11 cases. The Debtors believe that Kirkland is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

---

[3] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Kirkland.

**Services to be Provided**

11.     Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Kirkland to render the following legal services:

   a. advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

   b. advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

   c. attending meetings and negotiating with representatives of creditors and other parties in interest;

   d. taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

   e. preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

   f. representing the Debtors in connection with obtaining authority to continue using cash collateral;

   g. advising the Debtors in connection with the potential sale of assets;

   h. appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

   i. advising the Debtors regarding tax matters;

   j. taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

   k. performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

**Professional Compensation**

12.  Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other restructuring matters, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

13.  Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[4]

| Billing Category[5] | U.S. Range |
|---|---|
| Partners | $1,295-$2,675 |
| Of Counsel | $875-$2,245 |
| Associates | $785-$1,625 |
| Paraprofessionals | $355-$705 |

---

[4] For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein. While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[5] Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect

6

14. Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

15. Kirkland represented the Debtors during the one-month period before the Petition Date, using the hourly rates listed above and in the Yenamandra Declaration. Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16. The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

17. It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples

---

to fees billed by such attorneys. Any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[6] For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18. To ensure compliance with all applicable deadlines in these chapter 11 cases, from time-to-time, Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

19. Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

## Compensation Received by Kirkland from the Debtors

20. Per the terms of the Engagement Letter, on December 23, 2024, the Debtors paid $500,000 to Kirkland, which, as stated in the Engagement Letter, constituted a "special purpose retainer" (also known as an "advance payment retainer") as defined in Rule 1.5(d) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional special purpose retainer totaling $4,500,000 in the aggregate. As stated in the Engagement Letter, any special purpose retainer is earned by Kirkland upon receipt, any special purpose retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any special purpose

8

retainer upon Kirkland's receipt, any special purpose retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any special purpose retainer.[7]  A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the special purpose retainer transferred by the Debtors to Kirkland, prior to the Petition Date is set forth in the Yenamandra Declaration.

21.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Kirkland's special purpose retainer, the amount of Kirkland's special purpose retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

### Kirkland's Disinterestedness

23.    To the best of the Debtors' knowledge and as disclosed herein and in the Yenamandra Declaration, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does

---

[7] The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition special purpose retainer during the pendency of a chapter 11 case rather than applying such special purpose retainer to postpetition fees and expenses.  Kirkland evaluates whether to retain any remaining prepetition special purpose retainer on a case-by-case basis.  In this particular case, Kirkland has elected not to hold any remaining prepetition special purpose retainer but, instead, will apply any remaining special purpose retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.

not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Yenamandra Declaration.

24. Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### **Supporting Authority**

25. The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

27. The Debtors submit that for all the reasons stated above and in the Yenamandra Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted.

Further, as stated in the Yenamandra Declaration, Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Yenamandra Declaration.

### Notice

28. The Debtors have provided notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Committee; (c) counsel to the Prepetition Term Loan Agent; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition FILO Agent; (f) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (g) the United States Attorney for the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://cases.ra.kroll.com/Joann2025. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

### No Prior Request

29. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| Dated: February 13, 2025<br>Hudson, Ohio | */s/ Ann Aber*<br>Ann Aber<br>JOANN Inc.<br>Executive Vice President, Chief Legal and Human Resources Officer |