IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| JOANN INC., *et al.*,[1] | ) Case No. 25-10068 (CTG) |
| Debtors. | ) (Jointly Administered) |
|  | ) Hearing Date: To Be Determined |
|  | ) Obj Deadline: Mar. 6, 2025 at 4:00 p.m. (ET) |

**APPLICATION OF DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING
THE EMPLOYMENT AND RETENTION OF
DELOITTE TAX LLP AS TAX ADVISORY SERVICES
PROVIDER TO THE DEBTORS AND DEBTORS IN POSSESSION,
EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS
OF THE ENGAGEMENT AGREEMENTS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this application (this "<u>Application</u>"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"): (a) authorizing the Debtors to employ and retain Deloitte Tax LLP ("<u>Deloitte Tax</u>") to serve as the Debtors' tax advisory services provider, effective as of the Petition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "<u>First Day Declaration</u>"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Date, pursuant to the terms and conditions set forth in: (i) that certain statement of work, dated August 15, 2024, which is attached as Annex 1 to **Exhibit A**, for general tax advisory services related to federal, foreign, state, and local tax matters for the period ending December 31, 2028 (the "Tax Advisory SOW"), (ii) that certain statement of work, dated August 15, 2024, which is attached as Annex 2 to **Exhibit A**, for general tax compliance services including income tax preparation, sales and use tax preparation, and property tax preparation (the "Tax Compliance SOW"), (iii) that certain statement of work, dated January 9, 2025, which is attached as Annex 3 to **Exhibit A**, for tax advisory services with respect to US federal and state income and operating tax considerations of the Debtors' bankruptcy restructuring transactions (the "Tax Restructuring SOW"). The Tax Advisory SOW, the Tax Compliance SOW, and the Tax Restructuring SOW were issued under and pursuant to the terms of that certain master services agreement between Deloitte LLP and Jo-Ann Stores LLC, dated August 12, 2024, which is attached as Annex 4 to **Exhibit A**, to provide certain professional services (the "MSA", and together with the Tax Advisory SOW, the Tax Compliance SOW, and the Tax Restructuring SOW, the "Engagement Agreements"); (b) approving the terms of the Engagement Agreements; and (c) granting related relief. In support of this Application, the Debtors submit the *Declaration of Laura J. Paszt in Support of Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Deloitte Tax LLP as Tax Advisory Services Provider to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Engagement Agreements, and (III) Granting Related Relief*, attached hereto as **Exhibit B** (the "Paszt Declaration").

**Jurisdiction and Venue**

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

**Background**

5. JOANN Inc., together with its Debtor and non-Debtor affiliates (collectively, "JOANN" or the "Company") is a leading national retailer of sewing, arts and crafts, and select home décor products. Founded in Cleveland, Ohio, JOANN currently operates in 49 states with approximately 800 stores and 4 distribution centers. For over 80 years, JOANN has fueled the creativity and passion of its customers, the sewists, quilters, crocheters, crafters, and creative enthusiasts, with high quality products and a dedication to customer service.

6. On January 15, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16, 2025, the Court entered an order [Docket No. 103] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 198] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Retention of Deloitte Tax

7. Deloitte Tax is a tax advisory services firm with offices across the United States. Deloitte Tax has significant experience performing tax services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner.

8. Deloitte Tax provides, and has provided, tax advisory services in numerous large chapter 11 cases, including: *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Joann Inc.*, No. 24-10418 (CTG) (Bankr. D. Del. Apr. 15, 2024); *In re PacificCo Inc.*, No. 23-10620 (KBO) (Bankr. D. Del. June 20, 2023); *In re Internap Holding LLC*, No-23-10529 (CTG) (Bankr. D. Del. June 15, 2023); *In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sep. 18, 2020); *In re AAC Holdings, Inc.*, No. 20-11648 (JTD) (Bankr. D. Del. Aug. 27, 2020). Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals. Accordingly, Deloitte Tax is both well-

qualified and able to provide the services for the Debtors during these chapter 11 cases in an efficient and timely manner.

9.  In addition, since January 2018, Deloitte Tax has provided certain tax advisory services to the Debtors, including in connection with their prior chapter 11 cases. In providing such services to the Debtors, Deloitte Tax has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, operations, and related matters. Having worked with the Debtors' management, most notably in the Debtors' prior chapter 11 cases, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the aforementioned services for the Debtors in these chapter 11 cases in an efficient and timely manner.

10. Absent the relief requested herein, the Debtors' ability to, among other things, thoroughly analyze the tax consequences of their restructuring during the pendency of these chapter 11 cases would be diminished. Additionally, finding a replacement for Deloitte Tax with similar experience would be expensive, time consuming, and would delay and disrupt the progress of these chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to advise the Debtors during these chapter 11 cases.

## Scope of Services[3]

11. Subject to the Court's approval, Deloitte Tax will provide tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements.

---

[3]   To the extent there are any inconsistencies between the descriptions of services set forth herein and the terms of the Engagement Agreements, the terms of the Engagement Agreements shall control.

12. As set forth more fully in the Engagement Agreements, Deloitte Tax has agreed to perform certain tax advisory services (each, a "Service," and collectively, the "Services") for the Debtors in accordance with the terms and conditions set forth therein, as follows:

a) *Tax Advisory SOW*. Pursuant to the terms and conditions set forth in the Tax Advisory SOW, Deloitte Tax will provide tax advisory services on federal, foreign, state, and local tax matters as requested by the Debtors during the period through December 31, 2028.

b) *Tax Compliance SOW*. Pursuant to the terms and conditions set forth in the Tax Compliance SOW, Deloitte Tax will provide the following tax services:

   i. Assist the Debtors in preparing their 2023, 2024 and 2025 federal and state and local income tax returns identified in Exhibit A to the Tax Compliance SOW. In addition to the preparation of the aforementioned tax returns, Deloitte Tax will assist the Debtors in calculating the amounts of extension payments and preparing the extension requests for the 2024 and 2025 federal and state and local income tax returns identified in Exhibit A to the Tax Compliance SOW. Further, Deloitte Tax will assist the Debtors in calculating Q3 and Q4 2024, 2025 and 2026 quarterly estimated tax payments as needed;

   ii. Assist the Debtors in preparing state/local sales and use tax returns as identified in Exhibit B of the Tax Compliance SOW for the period beginning July 1, 2024 through June 30, 2028. In addition, if requested by the Debtors and as may be agreed to by Deloitte Tax, Deloitte Tax will assist the Debtors with the preparation of state and local sales and use tax registration applications; and

   iii. Assist the Debtors in preparing their business personal property tax renditions filed from July 1, 2024 through June 30, 2028 as identified in Exhibit C of the Tax Compliance SOW.

c) *Tax Restructuring SOW*. Pursuant to the terms and conditions set forth in the Tax Restructuring SOW, Deloitte Tax will perform tax advisory services with respect to U.S. federal and state income and operating tax considerations of the Debtors' two bankruptcy restructuring transactions, as follows:

   i. Participate in meetings or calls necessary to assist the Debtors with its evaluation of U.S. federal, state, income, and operating tax implications of the Debtors' bankruptcy restructuring transactions.

ii. Advise the Debtors regarding these chapter 11 cases, including analyzing potential debt modification alternatives and the potential income tax consequences.

iii. Advise the Debtors as to the amount of cancellation of indebtedness income, if any, that may be realized in connection with the Debtors' bankruptcy restructuring transactions, including whether such cancellation of indebtedness income is included in gross income (*i.e.*, taxable) versus excluded for federal and state income tax purposes (e.g., availability of the IRC 108 bankruptcy exception).

iv. Advise the Debtors on the tax attributes available to mitigate or absorb cancellation of indebtedness income (whether taxable or excluded from gross income under the insolvency exception).

v. Advise the Debtors on post-bankruptcy restructuring transactions tax attributes (e.g., tax basis in assets and net operating loss carryovers) available and the reduction of such attributes (to the extent applicable).

vi. Advise the Debtors on US federal and state income tax consequences resulting from the sale of all or substantially all of the Debtors' assets in connection with these chapter 11 cases.

vii. Advise the Debtors on the state income tax treatment and planning for restructuring provisions in various jurisdictions including cancellation of indebtedness calculations, adjustments to tax attributes, and prior limitations on tax attribute utilization.

viii. Assist the Debtors in analyzing the historical net operating losses of the Debtors through historical tax filings to understand where the Debtors' historical net operating losses reside and whether any limitations on the utilization of such net operating losses exists.

ix. Assist the Debtors in analyzing the tax basis balance sheet of the Debtors on an entity-by-entity basis.

x. Assist the Debtors with understanding the historical outside stock basis in each of the Debtors' legal entities for the purposes of determining the approximate amount of stock basis that should be reported on tax basis balance sheets of the Debtors.

xi. Advise the Debtors on income tax return reporting of these chapter 11 cases and related matters.

xii. As requested by the Debtors and as may be agreed to by Deloitte Tax, assist in documenting as appropriate, the tax analysis, development of Debtors' opinions, recommendation, observations,

    and correspondence for any proposed debt restructuring or combination alternative tax issue or other tax matter described above.

  xiii. As requested by the Debtors and as may be agreed to by Deloitte Tax, advise the Debtors regarding other state, federal, or international tax (to the extent applicable) questions that may arise in the course of this engagement.

  xiv. Prepare and deliver a summary of Deloitte Tax findings, including the relevant and applicable analyses and workstreams.

13. The aforementioned Services are necessary to the Debtors' efforts to administer these chapter 11 cases. The Services will complement, and not duplicate, the services to be rendered by any other professional retained in these Chapter 11 Cases.

## Professional Compensation

14. Deloitte Tax's decision to perform tax advisory services for the Debtors is conditioned upon its ability to be retained in accordance with the terms and conditions in the Engagement Agreements and to be compensated for its services and reimbursed for the expenses it incurs in accordance with the terms thereof (the "Fee Structure").

15. Prior to the Petition Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, Deloitte Tax received approximately $935,564, including $50,000 in retainer amounts, for services performed and/or to be performed prior to such date. As of the Petition Date, no retainer amounts remained, and no amounts remained outstanding with respect to services performed by Deloitte Tax prior to such date.

16. Pursuant to the terms of the Tax Advisory SOW, Deloitte Tax will bill the Debtors based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates | Hourly Rates for National Tax Specialists |
|---|---|---|
| Partner/Director | $800 | $890 |

8

| Senior Manager | $715 | $750 |
|---|---|---|
| Manager | $605 | $645 |
| Senior | $505 | $505 |
| Staff | $405 | $405 |

17. Pursuant to the terms of the Tax Compliance SOW, Deloitte Tax will bill the Debtors on an annual basis, as follows:

| January 1, 2025–December 31, 2025 | $609,000 |
|---|---|
| January 1, 2026–December 31, 2026 | $639,450 |
| January 1, 2027–June 30, 2028 | $671,423 |

Deloitte Tax will bill the Debtors in accordance with the agreed-upon billing schedule, as follows:

| Billing Schedule | |
|---|---|
| Date to be Billed | Amount |
| February | 25% |
| May | 25% |
| August | 25% |
| November | remaining balance |
| **Total** | see above for annual amounts |

18. In the event that the Debtors request that Deloitte Tax prepare additional state and local tax returns not listed on <u>Exhibit A</u> to the Tax Compliance SOW, Deloitte Tax estimates that the fee will be $1,500 for each separate return and $2,000 for each combined return based on the level of information requested on the tax return.

19. Pursuant to the terms of the Tax Restructuring SOW, Deloitte Tax will bill the Debtors based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

9

| Professional Level | Hourly Rates |
|---|---|
| Partner/Managing Director | $990 |
| Senior Manager | $870 |
| Manager | $740 |
| Senior | $640 |
| Consultant | $540 |

20. In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business. Changes in the foregoing rates will be noted on the statements for the first time period in which the revised rates become effective.

21. In addition to the fees for the services performed under the Engagement Agreements, reasonable expenses, including travel, report production, document delivery services, and other expenses incurred in providing Deloitte Tax's services, will be included in the total amount billed.

22. Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. For example, a portion of the Services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("Deloitte Tax India"). A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax. The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India. The connections of Deloitte Tax India (along with the

connections of Deloitte Tax and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte Tax are set forth in **Schedule 2** to the Paszt Declaration.

23. Deloitte Tax intends to apply to the Court for reimbursement for all reasonable expenses incurred after the Petition Date (including travel, report production, delivery services, and other expenditures incurred in connection with these cases). Notwithstanding anything to the contrary in the Engagement Agreements, with respect to administrative and technology costs incurred, Deloitte Tax will only bill the Debtors for actual expenses incurred.

24. Deloitte Tax will present records of the services rendered for the Debtors to the Court in its interim and final fee applications to the Court, in accordance with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Code, the Local Rules, any applicable guidelines as set forth by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and the applicable orders of this Court. Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter. All payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

25. Some services which are incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte & Touche LLP, and Deloitte Consulting LLP, or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and

expenses with respect to such services by Deloitte Tax's affiliates will be included on the fee applications of Deloitte Tax.

## Indemnification

26. As part of the overall compensation provided to Deloitte Tax under the terms of the Engagement Agreements, the Debtors have agreed to certain indemnification and reimbursement obligations with respect to the services to be provided under the Engagement Agreements, as modified by the proposed order (the "Indemnification Provisions").

27. The Debtors have agreed to indemnify and hold harmless Deloitte Tax, its affiliates and subcontractors, and their respective personnel from all claims, liabilities or expenses attributable to claims of third parties relating to the Debtors' or any of its contractors', attorneys', or tax or accounting professional advisors' use or disclosure of the services or deliverables. The Debtors will not, however, be responsible for any claims, liabilities, or expenses to the extent they result from the intentional fraud, intentional misconduct, or bad faith of Deloitte Tax or any other Deloitte entity.

28. The Indemnification Provisions were negotiated between the Debtors and Deloitte Tax at arm's-length and in good faith. The Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interest of the Debtors, their estates, and stakeholders. Accordingly, the Debtors request that the court approve the Indemnification Provisions, subject to the modifications set forth in the proposed order.

## Applications for Compensation

29. Deloitte Tax intends to file interim and final fee applications to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable fee guidelines (collectively, the "Fee Guidelines") provided by the U.S. Trustee, and any other applicable procedures and orders of the Court, including any order approving this Application and consistent with the proposed compensation set forth in this Application and the Engagement Agreements. Deloitte Tax has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

30. The Debtors request that Deloitte Tax be permitted to submit monthly invoices for services rendered and expenses incurred under the Engagement Agreements. Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these chapter 11 cases. The Debtors request authority to pay such invoices, after appropriate review, in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders that would apply to interim payments. All payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

### No Duplication of Services

31. The Debtors intend that Deloitte Tax's services will not duplicate the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases. The Debtors believe that at their request Deloitte Tax will work cooperatively with the Debtors to avoid any unnecessary duplication of services with the Debtors' other professionals.

### Deloitte Tax's Disinterestedness

32. Deloitte Tax has informed the Debtors that, except as set forth in the Paszt Declaration, Deloitte Tax: (a) does not hold any interest adverse to the Debtors' estates; and (b) believes that it is a "disinterested person" as that term is defined in section 101(14) of the

Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.  If any new material facts or relationships are discovered or arise, Deloitte Tax will inform the Court as required by Bankruptcy Rule 2014(a).

33.    Accordingly, to the best of the Debtors' knowledge, information, and belief that is based in reliance on the representations made to the Debtors by Deloitte Tax, the Debtors believe that Deloitte Tax is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained in these chapter 11 cases.

### Basis for Relief

**I.    The Debtors Should Be Permitted to Retain and Employ Deloitte Tax on the Terms in the Engagement Agreements Pursuant to Sections 327, 328, and 1107(b) of the Bankruptcy Code.**

34.    The Debtors respectfully submit that the retention of Deloitte Tax under the terms in the Engagement Agreements is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    a.    is not a creditor, an equity security holder, or an insider;

    b.    is not and was not, within two (2) years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c.    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationships to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

35.    Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  Deloitte Tax's prepetition relationship with the Debtors is therefore not an impediment to Deloitte Tax's retention to provide postpetition tax services.

36. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

37. As recognized by numerous courts, Congress intended in section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the Court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

38. As set forth in the Engagement Agreements, Deloitte Tax has requested payment of its fees according to the hourly rates set forth in the Fee Structure.  The Debtors believe that the Fee Structure is reasonable and should be approved under section 328(a) of the Bankruptcy Code.  The Debtors submit that these hourly rates appropriately reflect: (a) industry practice; (b) market rates for comparable services both in and out of the chapter 11 context; and (c) Deloitte Tax's substantial experience providing tax advisory services.

39. Moreover, the Debtors and Deloitte Tax believe the Indemnification Provisions in the Engagement Agreements are customary and reasonable for tax advisor service engagements

both out of court and in chapter 11 cases. Such Indemnification Provisions reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases. *See, e.g.*, *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Joann Inc.*, No. 24-10418 (CTG) (Bankr. D. Del. Apr. 15, 2024); *In re ViewRay, Inc.*, No. 23-10935 (KBO) (Bankr. D. Del. Apr. 3, 2024); *In re AN Global LLC*, No. 23-11294 (JKS) (Bankr. D. Del. Dec. 21, 2023); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 16, 2023); *In re PacificCo Inc.*, No. 23-10620 (KBO) (Bankr. D. Del. June 20, 2023).

40. The Debtors believe that the terms and conditions of the Engagement Agreements are customary and reasonable for tax advisory services engagements and are in the best interests of the Debtors' estates, creditors, and all parties in interest. As such, the Debtors submit that the terms and conditions of Deloitte Tax's retention as described herein, including the proposed Fee Structure and Indemnification Provisions, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since the Debtors will require substantial assistance throughout these chapter 11 cases, it is reasonable for the Debtors to seek to employ and retain Deloitte Tax to provide tax advisory services on the terms and conditions set forth in the Engagement Agreements.

## II. Employment of Deloitte Tax Should Be Effective as of the Petition Date.

41. The Debtors also believe that employment of Deloitte Tax effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases. Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions and has been doing so prior and subsequent to the Petition Date. *See, e.g.*, *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad

equity power.") (collecting cases); *see also* Del. Bankr. L.R. 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

## Notice

42. The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Committee; (c) counsel to the Prepetition Term Loan Agent; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition FILO Agent; (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

43. No prior request for the relief sought in this application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

| | |
|---|---|
| Dated: February 20, 2025<br>Hudson, Ohio | */s/ Ann Aber*<br>Ann Aber<br>JOANN Inc.<br>Executive Vice President, Chief Legal and Human Resources Officer |