## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| JOANN INC., *et al.*,[1] | ) ) | Case No. 25-10068 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) **Re:  Docket No. [●]** |

**ORDER (I) AUTHORIZING THE EMPLOYMENT AND**
**RETENTION OF DELOITTE TAX LLP AS TAX ADVISORY**
**SERVICES PROVIDER TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF**
**THE ENGAGEMENT AGREEMENTS, AND (III) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order"): (a) authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as their tax services provider effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Agreements, each of which are incorporated herein by reference; (b) approving the terms of the Engagement Agreements; and (c) granting related relief, all as more fully set forth in the Application; and upon the Paszt Declaration and the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is granted as set forth herein.

2.    The Debtors are authorized pursuant to sections 327(a), 328, and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 to retain and employ Deloitte Tax as their tax services provider in accordance with the terms and conditions set forth in the Engagement Agreements attached hereto as Annexes 1 through 4, as modified by this Order, effective as of the Petition Date.

3.    The terms and conditions of the Engagement Agreements, together with all annexes and exhibits thereto and all compensation provisions set forth therein, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved.

4.      Deloitte Tax shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules and the Local Rules, this Order, the applicable U.S. Trustee Guidelines, and any other applicable orders of this Court.

5.      Deloitte Tax shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable U.S. Trustee guidelines, and any applicable orders of the Court.  Deloitte Tax shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      Notwithstanding anything in the Engagement Agreements to the contrary, the indemnification provisions set forth in Section 8(b) of the MSA (the "Indemnification Provisions") are hereby approved, subject to the following modifications with respect to the services performed thereunder from the Petition Date to the effective date of any chapter 11 plan:

 a.  neither Deloitte Tax nor any Deloitte Tax affiliate or subcontractor shall be entitled to indemnification for services other than the services provided under the Engagement Agreements, unless such services and the indemnification therefor are approved by this Court;

 b.  notwithstanding anything to the contrary in the Engagement Agreements, the Debtors shall have no obligation to indemnify Deloitte Tax or any Deloitte Tax affiliate or subcontractor or provide contribution or reimbursement to such Deloitte Entity for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Deloitte Tax's or such Deloitte Tax's affiliate's or subcontractor's bad faith, self-dealing, breach of fiduciary duty (if any), willful misconduct, or gross negligence, (ii) for a contractual dispute in which the Debtors allege the breach of Deloitte Tax's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense

3

that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be a claim or expense for which Deloitte Tax or such Deloitte Tax affiliate or subcontractor should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreements, as modified by this Order; and

c.  if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these cases, Deloitte Tax believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Engagement Agreements, as modified by this Order, including, without limitation, the advancement of defense costs, Deloitte Tax must file an application therefor in this Court, and the Debtors may not pay any such amounts to any Deloitte Tax before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for payment by Deloitte Tax for indemnification, and not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte Tax or such Deloitte Tax affiliate or subcontractor . All parties in interest shall retain the right to object to any demand by Deloitte Tax or a Deloitte Tax affiliate or subcontractor for indemnification.

7.  With respect to services performed under the Engagement Agreements for the Debtors after the Petition Date and through the effective date of any plan of reorganization, the relevant provisions of the MSA, as applicable, shall be modified as follows:

a.  Section 7(a) of the MSA shall be deemed deleted and replaced with the following:

Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the services provided under the engagement letter. It is understood and agreed that Deloitte Tax is an independent contractor and that Deloitte Tax is not, and will not be considered to be, an agent, partner, or representative of the Client. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create an obligation on behalf of, in the name of, the other.

b.  Section 6 of the MSA setting forth the limitation on liability shall be deemed deleted.

c.  Section 22(c) of the MSA setting forth the limitation on actions shall be deemed eliminated.

        d.   Notwithstanding anything in the Engagement Agreements to the contrary, with respect to administrative and technology costs incurred, Deloitte Tax will only bill the Debtors for actual costs incurred.

8.     In the event that, during the pendency of the chapter 11 cases, Deloitte Tax seeks reimbursement from the Debtors for attorneys' fees and expenses, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Deloitte Tax's own fee applications, both interim and final, and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code; *provided*, *however*, that Deloitte Tax shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any objections filed with respect to Deloitte Tax's fee applications filed in the chapter 11 cases.

9.     Notwithstanding anything in the Application or the Engagement Agreements to the contrary, to the extent that Deloitte Tax uses the services of third-party subcontractors which are not affiliates or subsidiaries of Deloitte Tax, including DTTL Member Firms (as defined in the Paszt Declaration) (collectively, the "Contractors") in these cases, Deloitte Tax shall:  (i) pass through the cost of such Contractors to the Debtors at the same rate that Deloitte Tax  pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for Deloitte Tax; and (iv) file with this Court such disclosures required by Bankruptcy Rule 2014.

10.     If the Debtors and Deloitte Tax enter into any additional agreements, amendments, or statements of work for the provision of additional services by Deloitte Tax, the Debtors shall file with the Court and serve of the U.S. Trustee and the official committee of unsecured creditors appointed in these chapter 11 cases any such supplemental agreements, engagement agreements, or statements of work with the Court and serve the same upon the applicable notice parties.  Absent

any objection filed within ten (10) days after the filing and service of any such additional agreement, amendment, or statement of work, Deloitte Tax shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such additional agreement, amendment, or statement of work.  If any parties object to such proposed supplemental agreement, engagement agreement, or statement of work, the Debtors will promptly schedule a hearing before the Court within ten (10) days of receipt of any such objection or as soon thereafter as is practicable.  All additional services shall be subject to the provisions of this Order.

11.    Notwithstanding anything in the Application, the Paszt Declaration, or the Engagement Agreements to the contrary, this Court shall have jurisdiction over Deloitte Tax's engagement hereunder with respect to services performed from the Petition Date through the effective date of any plan of reorganization of the Debtors, unless such jurisdiction is relinquished.

12.    Deloitte Tax shall use reasonable efforts to cooperate with the Debtors to minimize unnecessary duplication of efforts regarding Deloitte Tax's services and those other professionals will be providing to the Debtors in these chapter 11 cases.

13.    To the extent that there may be any inconsistency between the terms of the Application, the Paszt Declaration, the Engagement Agreements, and this Order, the terms of this Order shall govern.

14.    Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

15.    The Debtors and Deloitte Tax are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

6

16.     Notwithstanding anything to the contrary in the Engagement Agreements, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

17.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be effective and enforceable immediately upon entry hereof.

## **<u>Annex 1</u>**

**Tax Advisory SOW**

**STATEMENT OF WORK**

Statement of Work Number: **TAX-001**                Authorized Start Date: Upon Execution

This Statement of Work ("Statement of Work") incorporates the terms and conditions of the Master Services Agreement between Deloitte LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores, LLC ("Client") dated August 12, 2024 (the "Agreement"). For the purposes of this Statement of Work, Consultant means Deloitte Tax LLP ("Deloitte Tax").

**Consultant Services Description:**

Deloitte Tax will provide tax advisory Services ("Services") for Client during the period through December 31, 2028. Deloitte Tax professionals will generally be available to provide Services on federal, foreign, state and local tax matters as requested by Client.

Deloitte Tax will provide Services pursuant to this Statement of Work on an as-requested basis, based on a fixed pool of 100 hours during the term of this Statement of Work. The pool of hours will be performed by Deloitte Tax professionals, excluding M&A or Washington National Tax professionals. Time incurred beyond the pool of 100 hours revert back to general consulting rates as outlined with the Fees and Expenses below. The Services performed under this Statement of Work exclude the following, each of which will be addressed in a separate statement of work: (1) services involving time that will exceed the pool of 100 hours; (2) formal opinion; (, (3) transfer pricing, or (4) services to be performed by other non-U.S. Deloitte Entities. "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors and agents of all such entities. The hours below will not be applied to these excluded services or separate statements of work.

This Statement of Work is intended to establish an overall contractual framework for the provision and delivery of Services to Client, describe the respective responsibilities of Deloitte Tax and Client relating to the Services and the fees Deloitte Tax expects to charge. This Statement of Work does not commit Client to purchase any Services and does not commit Deloitte Tax to provide any Services. Client only becomes committed to purchasing, and Deloitte Tax only becomes committed to providing Services when such Services are (i) requested by Client, and (ii) agreed to by Deloitte Tax in a statement of work (described herein) or otherwise. If/when Deloitte Tax is contacted and agrees to be engaged to provide specific Services, this Statement of Work shall be considered the statement of work.

Client and Deloitte Tax agree that the terms of this Statement of Work and the Agreement will apply to all Services to be provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific Service Client wishes to engage Deloitte Tax to provide is identified, Client and Deloitte Tax will execute a separate statement of work when such Service involves contemplated fees in excess of $25,000. The request for Services should be in a form of a statement of work as set forth in the Agreement (or a substantially similar form). The request for Services should reference the Agreement and clearly describe the specific details of the Services Deloitte Tax will

be engaged to provide pursuant to the statement of work (including scope of work, deliverables, timing, Client responsibilities and fees).

It is contemplated that the Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

---

**Estimated Timing of Services and Deliverables:**

Deloitte Tax is prepared to begin and complete the Services at a mutually agreeable date upon execution of this Statement of Work.

**Fees and Expenses:**

The Deloitte Tax fees for the Services are based on time incurred at the following hourly rates, plus (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees which are valid through December 31, 2028:

|  | First 100 hours incurred by Local | Local, in excess of allotted 100 hours | WNT/M&A |
|---|---|---|---|
| Partner/Director | $250 | $800 | $890 |
| Senior Manager | $250 | $715 | $750 |
| Manager | $250 | $605 | $645 |
| Senior | $250 | $505 | $505 |
| Staff | $250 | $405 | $405 |

**Client Responsibilities:**

In order to facilitate timely completion of the Services, Client agrees to provide Deloitte Tax LLP with access to its tax returns, workpapers, and other data (or requested information) in a timely manner, and will assist Deloitte Tax with obtaining access to Client personnel where necessary to complete the Services.

**Other Terms (including changes in provisions of the Agreement):**

**TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS**

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

**ACKNOWLEDGMENTS AND AGREEMENTS**

The Services will be performed in accordance with the Statement on Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client in writing of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested. All such modifications must be in a mutually executed agreement before performing any additional work or incurring additional fees.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

(a) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.); and

(b) Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon.

In the event of any conflict or inconsistency between the terms of the Agreement and the terms of this Statement of Work, the terms of the Agreement shall control. Notwithstanding the immediately preceding sentence, in the event that this Statement of Work expressly provides that certain provisions therein shall control over specified provisions of the Agreement, then, to the extent that such provisions of the Statement of Work conflict or are inconsistent with the specified provisions of the Agreement, such provisions of the Statement of Work shall control. If a Statement of Work is not executed, as previously described, the terms of the Agreement will apply to the Services provided.

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Statement of Work, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the Services relate, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services or administrative support under this Statement of Work, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return

information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

**Acceptance:**

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Services described in this Statement of Work, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Laura Paszt at (216) 589-5405.

**JO-ANN STORES LLC**

By: _Jeffrey Dwyer_
7103EBA0F0B64DA

Name: Jeffrey Dwyer

Title: Interim-Chief Financial Officer

Date: 8/15/2024 | 10:54:05 AM PDT

**DELOITTE TAX LLP**

By: _Laura Paszt_
8A2153233A5E478

Name: Laura Paszt

Title: Tax Partner

Date: 8/14/2024 | 10:03:35 AM PDT

Address: 127 Public Sq, Cleveland, OH 44114

<u>**Annex 2**</u>

**Tax Compliance SOW**

**STATEMENT OF WORK**

SOW Number: **TAX-002**                    Authorized Start Date: Upon Execution

This SOW incorporates the terms and conditions of the Master Services Agreement between Deloitte LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC dated August 12, 2024 (the "Agreement"). For the purposes of this Statement of Work, Consultant means Deloitte Tax LLP.

**Consultant Services Description:**

Deloitte Tax will provide the tax services (the "Services') for Client detailed in this Statement of Work, which describes the scope of Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge for such Services. The Services include income tax preparation, sales and use tax preparation, and property tax preparation, as described below.

The period for the provision of Services under this Statement of Work will be effective from July 1, 2024 (the "Commencement Date") and continue until either (i) the Services are completed for the final Annual Period listed below or (ii) this Statement of Work is terminated in accordance with the provisions of the Agreement. This engagement is for multiple years and therefore, each annual anniversary of the effective date shall be considered a completion of the Services for the prior year. The summary of Deloitte Tax Services and the respective responsibilities of Deloitte Tax and Client are detailed in Exhibit E, Scope of Services. For purposes of this Statement of Work, annual period ("Annual Period") represents each annual fiscal year period for the Client. For purposes of this Statement of Work, the Annual Period is July 1, 2024 through June 30, 2028.

**A. INCOME TAX PREPARATION SERVICES**

Deloitte Tax will prepare the fiscal year 2024, 2025, and 2026 (tax years 2023, 2024, and 2025) federal and state and local income tax returns ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Statement of Work and incorporated herein by reference. The initial information requested by Deloitte Tax to complete the returns is outlined in Exhibit D, Initial List of Information Required, attached.

**Extensions**

Deloitte Tax has not been engaged to prepare any extension calculations for the 2023 tax year. You have assumed responsibility for the preparation of these calculations and filings. If you need assistance with these calculations, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2024 and 2025 tax returns identified in Exhibit A.

**Estimated Taxes**

Deloitte Tax has not been engaged to prepare any quarterly estimated tax payment calculations for the first two quarters of 2024 tax year. You have assumed responsibility for the preparation of

these calculations and filings. If you need assistance with these calculations, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

Deloitte Tax will assist in calculating Q3 and Q4 2024, 2025 and 2026 quarterly estimated tax payments as needed. Deloitte Tax will prepare these quarterly income tax payment calculations based on financial information supplied by Client. Vouchers will be prepared where required.

**Foreign Bank Account Reporting**

If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 15th with an automatic extension available until October 15th each calendar year. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Electronic Return Filing**

Client has engaged Deloitte Tax to electronically file ("e-file") its federal and applicable state and local income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic fund transfer requirements that may apply to the payment of applicable taxes.

**Electronic Funds Withdrawal**

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. To the extent that Deloitte Tax provides assistance with your use of EFW, our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

**Section 174 Expenditure Calculation**

Any calculations or analyses related to the mandatory amortization of section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Statement of Work should be executed.

**State Tax Return Apportionment Information**

Deloitte Tax will prepare state tax returns based upon the state information, apportionment data provided by the client and the apportionment methodologies utilized by Client on its 2022 tax returns. Client will address and correct instances where apportionment data is incomplete, inaccurate or does not reconcile to the book and tax balances reflected on the federal tax return. In the course of performing the Services, if Deloitte Tax becomes aware of such incomplete or inaccurate data, Deloitte Tax will inform Client. Deloitte Tax will discuss with and obtain Client's input for addressing apportionment methodologies used in 2022 that may be inappropriate to utilize for the 2023 tax returns.

**Potential State/Local Nexus Considerations**

State/local jurisdictions continue to enact nexus rules that impose filing obligations based on sales made into jurisdictions or other economic presence. Client may need to periodically revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**B.  SALES AND USE TAX RETURN PREPARATION SERVICES**

Deloitte Tax will prepare state/local sales and use tax returns ("sales and use tax returns") as identified in Exhibit B Listing of State/Local Sales and Use Tax Returns Included in Engagement, attached to this Statement of Work and incorporated herein by reference.  provide Services beginning with the tax return reporting period beginning July 1, 2024, and provide such Services through the reporting period ending June 30, 2028 (each annual calendar year period ending on June 30). Deloitte Tax estimates the preparation of 2,272 sales and use tax returns over each Annual Period based on Exhibit B.  The initial information requested by Deloitte Tax to complete the returns is outlined in Exhibit D, Initial List of Information Required, attached.

Each month, Deloitte Tax will provide the following sales and use tax return preparation Services:

- Prepare a monthly calendar for sales and use tax returns identified in Exhibit B;

- Prepare sales and use tax registrations as directed by Client;

- Prepare the sales and use tax returns identified in Exhibit B for Client's review, approval and filing;

- Finalize the sales and use tax returns identified in Exhibit B including Client's electronic signature, after Client has reviewed and approved the returns and given Deloitte Tax specific written authorization to finalize the returns;

- Provide observations and recommendations to Client regarding potential sales and use tax compliance matters that are identified during the course of the Services;

- Provide Client a summary schedule of gross tax, discounts, and net tax due to support payment amounts for each return;

- Provide Client with electronic copies of all returns prepared on a monthly basis via a secure electronic portal;

- Maintain copies of individual sales and use tax return files by taxing jurisdiction, and supporting detail, in accordance with our record retention policy;

- Receive, analyze and respond, at Client's direction, to sales and use tax-related communications and notices, associated with the returns prepared under this Engagement Letter; and,

- Prepare a notice log of sales and use tax return notices for which Deloitte Tax provides tax return preparation Services.

In order to provide the sales and use tax return preparation Services, Deloitte Tax must receive complete and organized data needed to prepare the tax returns no later than by the fourth business day of each month.

Client may be required or permitted to file its state/local sales and use tax return electronically.  If Client determines electronic filing is required or is permitted, the Deloitte Tax responsibilities in connection with providing electronic filing assistance will be limited to communicating to Client the specific procedures and responsibilities that will enable Client to comply with the various state/local requirements, and to the extent requested by Client, the transmission of the electronic files in the form and content as authorized by the Client.  In order for Deloitte Tax to electronically transmit Client's files, Client must provide the signed authorization to Deloitte Tax at least three (3) days prior to transmission to the various states or local taxing authority.  Upon receipt of the signed authorization or required declaration, Deloitte Tax will transmit the electronic file without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission.  The receipt of a signed authorization or other required declaration will be deemed by Deloitte Tax as authorization by Client to transmit Client's electronic files. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

Deloitte Tax understands that Client has separately engaged Anybill Financial Services, Inc. ("third-party provider") to print and mail Client's sales and use tax returns that are not electronically filed and to process Client's sales and use tax return payments to the various state/local taxing authorities. Client acknowledges that it will be responsible for communicating directly with and managing such third-party provider services and that Deloitte Tax will not be responsible for printing or mailing any returns nor facilitating any payments.

Client returns may be selected for review by taxing authorities, who may not agree with Client's positions.  Any adjustments proposed by taxing authorities are subject to certain rights of appeal. Client representation in administrative taxing authority proceedings is not contemplated within the

scope of this Engagement Letter. Deloitte Tax would generally be willing to represent Client in such proceedings for an additional fee that is mutually agreed upon. Because of the lack of clarity in the law, Deloitte Tax cannot provide assurances that the positions asserted by taxing authorities will not ultimately be sustained, which could result in the assessment of potential penalties.

To the extent required to perform the Services, Deloitte Tax will prepare the appropriate power of attorney form ("Power of Attorney") for Client to execute and acknowledge Deloitte Tax's ability to communicate with the state/local taxing authority regarding Client's sales and use tax matters. Any such Power of Attorney will be limited to allowing Deloitte Tax to communicate with the state/local taxing authority on behalf of Client and will not authorize Deloitte Tax to execute agreements, extend a statute of limitation, receive refunds, make payments, become liable for taxes or make any management decision on behalf of Client.

In preparing each of the sales and use tax returns, Deloitte Tax will rely on the information that Client will supply to be accurate and complete. Deloitte Tax will not audit or otherwise verify such information, although Deloitte Tax may request clarification of some of the information. Since the tax returns will reflect the information that Client has provided, Client will have the ultimate responsibility for their accuracy. Client will be responsible for any tax return related interest and penalties charged by a taxing authority.

In addition, if mutually agreed, Deloitte Tax will assist Client with the preparation of state and local sales and use tax registration applications.

**Past Due Returns**

You acknowledge that during the course of this engagement Client may engage Deloitte Tax, by a separate mutually executed writing (e.g., new SOW or amendment to this SOW) to prepare returns that are already late and will be filed by you late. Also, additional sanctions, including but not limited to potential criminal penalties, may be imposed on you as a result of the late filing of such returns. Consequently, you recognize that your filing of these returns may result in the imposition of additional taxes, penalties (which may be significant), or interest relating to those returns. You further understand and acknowledge by signing this Engagement Letter that Deloitte Tax is not, nor shall ever be, responsible for any such claims, liabilities or expenses relating to the "late-filing" by you of these returns unless such "late-filing" is the fault or responsibility of Deloitte Tax.

## C. PROPERTY TAX RETURN PREPARATION SERVICES

Deloitte Tax will prepare the business personal property tax renditions identified in Exhibit C, Listing of State/Local Business Personal Property Tax Renditions Included in Engagement, attached to this Statement of Work and incorporated herein by reference. Deloitte Tax will provide the Services for the renditions filed from July 1, 2024 to June 30, 2028.

To facilitate a timely transition of the business personal property rendition Services, Client will provide Deloitte Tax with either an appropriate download of OneSource property tax data in an acceptable format, or access to their OneSource instance, and a business personal property calendar. Deloitte Tax will meet with Client personnel to mutually agree on the procedures for Deloitte Tax to gather data for the business personal property tax renditions.

Client will identify an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services and deliver the necessary property

tax information by the requested due date. The initial information requested by Deloitte Tax to complete the renditions is outlined in Exhibit D, Initial List of Information Required, attached.

Deloitte Tax will provide the following as part of the Services:

- Prepare and maintain annual property tax calendar, which Client will review and approve annually

- Analyze, format and import property tax data provided by Client into property tax software

- Prepare and execute requests for extensions for locations on an as needed basis, once approved by Client.

- Prepare the renditions identified in Exhibit C for Client's review, approval and filing;

- Provide Client with electronic copies of all renditions prepared via a secure electronic portal;

- At Client's direction, receive copies of business personal property tax rendition notices associated with the renditions prepared under this Engagement Letter and analyze and provide responses to such notices for Client's review and approval;

- At Client's direction, receive copies of business personal property tax bills associated with the renditions prepared under this Statement of Work and process for Client review and approval;

- Upon receipt of Client authorization, Deloitte Tax will transmit tax payment information to Client's third-party provider within 2 (two) days of Deloitte Tax's receipt of Client's authorization;

- For locations selected for a personal property examination, Deloitte Tax will provide requested data to taxing jurisdiction and/or their appointed representatives, along with respond to routine questions pertaining to data provided;

- As mutually agreed to by Client and Deloitte Tax, prepare quarterly personal property tax estimates for the Annual Period, to be used by Client for its tax accrual.

In order to provide the Services, complete and organized data needed to prepare the tax renditions must be received no later than January 19 annually.   Deloitte Tax will discuss with Client personnel mutually agreeable procedures for Deloitte Tax to receive data for the business personal property tax renditions.

**Electronic Rendition Filing**

Client may be required to file its property tax rendition(s) electronically.  If Client determines electronic filing is required, the Deloitte Tax responsibilities in connection with providing electronic filing assistance will be limited to communicating to Client the specific procedures and responsibilities that will enable Client to comply with the jurisdiction's requirements, and to the extent requested by Client, the transmission of the electronic files in the form and content as authorized by the Client.  In order for Deloitte Tax to electronically transmit Client's files, Client

must provide a signed authorization or other required declaration to Deloitte Tax at least three (3) days prior to transmission to the jurisdiction.  Upon receipt of the signed authorization or required declaration, Deloitte Tax will transmit the electronic file without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission.  The receipt of a signed authorization or other required declaration will be deemed by Deloitte Tax as authorization by Client to transmit Client's electronic files.   Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

Client renditions may be selected for review by taxing authorities, who may not agree with Client's positions.  Any adjustments proposed by taxing authorities are subject to certain rights of appeal.  Client representation in administrative taxing authority proceedings is not contemplated within the scope of this Engagement Letter.  Deloitte Tax would generally be willing to represent Client before appropriate tax authorities, if permissible, in such proceedings for an additional fee that is mutually agreed upon.  Such representation services should generally be agreed to by Client and Deloitte Tax through an addendum to this Engagement Letter, or a separate engagement letter or other written agreement.  Because of the lack of clarity in the law, Deloitte Tax cannot provide assurances that the positions asserted by taxing authorities will not ultimately be sustained, which could result in the assessment of potential penalties.

To the extent Client requests that Deloitte Tax provide Representation Services, Deloitte Tax will prepare the appropriate power of attorney form ("Power of Attorney" or "Agent Authorization") for Client to execute and acknowledge Deloitte Tax's ability to communicate with the state/local taxing authority regarding Client's business personal property tax matters.  Notwithstanding any language in the Agent Authorization, Client and Deloitte Tax mutually agree that Deloitte Tax's activities with respect to the Services are limited to allowing Deloitte Tax to communicate with the relevant taxing authority on behalf of Client.  Deloitte Tax will not execute agreements, extend a statute of limitation, receive refunds or make payments, and Client agrees that Deloitte Tax will not become liable for taxes or make any management decision on behalf of Client.

**Estimated Timing of Services and Deliverables:**

☐  If checked, the following performance dates shall be deemed Firm Performance Dates pursuant to Section 7(e) of the Agreement: N/A Target completion date for returns will be mutually agreed upon during transition and committed to a written schedule.

Deloitte Tax will notify Client in writing of circumstances encountered that could change the agreed upon timeline.

**Fees and Expenses:**

**Annual Fees**

The Deloitte Tax annual fees for Services as defined in this Engagement Letter are as follows:

| Year One | Upon Execution–December 31, 2024 | $580,000 |
|---|---|---|
| Year Two | January 1, 2025–December 31, 2025 | $609,000 |
| Year Three | January 1, 2026–December 31, 2026 | $639,450 |

| Year Four | January 1, 2027–June 30, 2028 | $671,423 |
|-----------|-------------------------------|----------|

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibits A, B, and C, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Deloitte Tax will issue an invoice for Services based upon the following schedule:

| **Annual Period 2024** | | **Subsequent Annual Periods (2025, 2026, 2027)** | |
|------------------------|-----------|--------------------------|------------------|
| Date to be Billed | Amount | Date to be Billed | Amount |
| Upon Execution | $193,000 | February | 25% |
| September 2024 | $193,000 | May | 25% |
| December 2024 | $194,000 | August | 25% |
| | | November | remaining balance |
| **Total** | **$    580,000** | **Total** | **see above** |

Payments will be due within 65 days of receipt of the invoice.  Payment shall be made electronically on or before the first business day of each quarter as directed on the invoices to be provided.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $1,500 for each separate return and between $2,000 for each combined return based on the level of information requested on the tax return. Deloitte Tax will prepare such additional state and local tax returns as requested by Client.

**Impact on Fees Due to Failure to Provide Requested Information**

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task.  In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed

10% of the overall fees for this engagement, the parties will agree to a mutually executed amendment or modification to this Agreement prior to incurring such additional time.

**UNANTICIPATED OUT-OF-SCOPE SERVICES**

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, analysis and calculation of Administrative Adjustment Requests (AAR) for a partnership subject to the centralized partnership audit regime (BBA), calculation of push-out adjustments from lower-tier partnerships into current tax year calculations, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts (e.g., NOLs, 163(j), 174), separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. The parties will agree to a mutually executed amendment or modification to this Agreement prior to incurring such additional time or commencing any additional activities..

Additionally, state or local tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2023 tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended state return once the state has issued final guidance. The parties will agree to a mutually executed amendment or modification to this Agreement prior to incurring such additional time or commencing any additional activities.

**Client Responsibilities:**

To facilitate the timely transition of our sales and use tax return preparation Services, Client will provide Deloitte Tax with its previously filed sales and use tax returns for a recent filing period and a sales and use tax calendar for returns currently in the process of being prepared by Client.

Client will identify an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services and deliver to Deloitte Tax the necessary information.  For sales and use tax information, this should be received by the fourth business day of each month. For a recent filing period, Client will provide source information requested by Deloitte Tax to set-up our sales and use tax return preparation software.  The initial information requested by Deloitte Tax to complete the returns is outlined in Exhibit D, Initial List of Information Required, attached.

The Services described herein are based on our analysis of the effort necessary to address Client's sales and use tax compliance requirements, based on our understanding of Client's current structure and the following assumptions:

- Client tax management will meet with the Deloitte Tax engagement team as requested;

- Client tax and financial personnel will participate in an active oversight role and will provide timely information;

- Client will be responsible for extracting and providing necessary information from accounting systems to prepare the sales and use tax returns, and such information will be provided to Deloitte Tax no later than the fourth business day of each month as noted above for Sales and Use Tax;

- Client will provide written authorization to finalize Client's tax returns, including Client's electronic signature, after Client has reviewed and approved those returns;

- Client will provide written authorization to finalize Client's business personal property tax renditions, including Client's electronic signature, after Client has reviewed and approved those business personal property tax renditions;

- Upon receipt of Client's written authorization, Deloitte Tax will electronically transmit Client's sales and use tax returns (in portable document format ("PDF") and related tax payment information to Client's third-party provider (currently Anybill Financial Services, Inc.) within 2 (two) days of Deloitte Tax's receipt of Client's authorization. Deloitte Tax will resolve with Client issues arising in connection with Deloitte Tax's transmission of Client's returns or tax payment information to the third-party provider;

- Client will execute an agreement with Client's third-party provider to provide Deloitte Tax access to Client's sales and use tax return and tax payment information. Deloitte Tax will assist Client to work to resolve state/local taxing authorities' notices and inquiries by working directly with Client; and

- Client will be responsible for making all management decisions relating to sales and use tax matters, including reviewing and approving all sales and use tax returns prepared by Deloitte Tax.

- Client will be responsible for making all management decisions relating to business personal property tax matters, including reviewing and approving all business personal property tax renditions prepared by Deloitte Tax.

- Client has separately engaged a third-party service provider ("third-party provider") to process Client's business personal property tax payments to the various state/local taxing authorities. Client acknowledges that it will be responsible for communicating directly with and managing such third-party provider services. Upon receipt of Client's written authorization, Deloitte Tax will electronically transmit Client's business personal property tax renditions (in portable document format ("PDF") format and related tax payment information to Client's third-party provider within 2 (two) days of Deloitte Tax's receipt of Client's authorization. Deloitte Tax will resolve with Client any issues arising in connection with Deloitte Tax's transmission of Client's renditions or tax payment information to the third-party provider.

**Assumptions:**

None

**Other Terms (including changes in provisions of the Agreement):**

**Obligations Upon Termination**

In the event of termination of this engagement, Deloitte Tax shall work together with Client to identify the information, materials, and resources necessary to develop an overall plan for transitioning such items to Client. Termination assistance shall be set forth in a Statement of Work and shall include:

- Providing Client with access to documentation in Deloitte Tax's possession related to the Services provided under this Engagement Letter.
- Returning all Client confidential and proprietary information in Deloitte Tax's possession, except that Deloitte Tax may retain copies, subject to its confidentiality obligations, for internal recordkeeping purposes and for compliance with applicable professional standards.

In addition, Client will terminate Deloitte Tax access to Client tax compliance software and programs and Deloitte Tax will return to Client documentation associated with such tax compliance software and programs.

Client shall pay Deloitte Tax's then standard hourly rates and reasonable expenses for any termination assistance provided by Deloitte Tax. Client shall be responsible for all costs associated with moving back to Client's premises any files and related documentation to which Client is entitled.

**Client Obligations Upon Early Termination**

In the event of early termination of this engagement, Deloitte Tax shall be entitled to payment of all fees for Services rendered and expenses incurred prior to such termination. Additionally, Deloitte Tax will be entitled to fees for any Services Deloitte Tax is required to perform relative to Deloitte Tax's "Obligations Upon Termination as set forth above. The foregoing provisions of this section shall in no way limit either Party's other remedies, whether in law or in equity.

**Kick-off Meeting Expectations**

To facilitate an understanding of the tax return preparation engagement processes, Client and Deloitte Tax will hold an engagement kick-off meeting to discuss in detail the information request and timetable, including key engagement deadlines. In addition, Client and Deloitte Tax will discuss potential issues arising from delays or incomplete or inaccurate information.

**Engagement Technology**

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Statement of Work, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year

to which the Services relate, be disclosed to Anybill Financial Services, Inc. and disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services or administrative support under this Statement of Work, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

**JO-ANN STORES LLC**

By: _Jeffrey Dwyer_
7103EBA0F0B64DA...

Name: Jeffrey Dwyer

Title: Interim-Chief Financial Officer

Date: 8/15/2024 | 10:54:05 AM PDT

**DELOITTE TAX LLP**

By: _Laura Paszt_
8A2153293A5E470...

Name: Laura Paszt

Title: Tax Partner

Date: 8/14/2024 | 10:03:35 AM PDT

Address: 127 Public Sq., Cleveland, OH  44114

**Exhibit A**

**Listing of Federal and State and Local Income Tax Returns Included in Engagement**

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| JOANN Inc. and Subsidiaries | Federal | 1120 | U.S. Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Alaska | 6000 | Corporation Net Income Tax Return |
| JOANN Inc. and Subsidiaries | Arizona | 120 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | California | 100 | Corporation Franchise or Income Tax Return |
| JOANN Inc. and Subsidiaries | Colorado | 112 | C Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Connecticut | CT-1120U | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Hawaii | N-30 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Idaho | 41 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Illinois | IL-1120 | Corporation Income and Replacement Tax Return |
| JOANN Inc. and Subsidiaries | Kansas | K-120 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Kentucky | 720U | Unitary Combined Corporation Income Tax and LLET Return |
| JOANN Inc. and Subsidiaries | Maine | 1120ME | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Massachusetts | 355U | Corporation Excise Tax Return |
| JOANN Inc. and Subsidiaries | Michigan | 4891 | Corporate Income Tax Annual Return |
| JOANN Inc. and Subsidiaries | Minnesota | M4 | Corporation Franchise Tax Return |
| JOANN Inc. and Subsidiaries | Montana | CIT | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Nebraska | 1120N | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | New Hampshire | NH-1120 | Combined Business Profits Tax Return |
| JOANN Inc. and Subsidiaries | New Jersey | CBT-100U | Corporation Business Tax Unitary Return |
| JOANN Inc. and Subsidiaries | New Mexico | CIT-1 | Corporate Income/Franchise Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| JOANN Inc. and Subsidiaries | New York | CT-3-A | General Business Corporation Combined Franchise Tax Return |
| JOANN Inc. and Subsidiaries | North Dakota | 40 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | Oregon | OR-20 | Corporation Excise Tax Return |
| JOANN Inc. and Subsidiaries | Oregon | CAT | Corporate Activity Tax Return |
| JOANN Inc. and Subsidiaries | Multnomah County/Portland, Oregon | C-2023 | Combined Business Tax Return for C-Corporations |
| JOANN Inc. and Subsidiaries | Portland, Oregon (SHS) | METBIT-20 | Metro Supportive Housing Services Business Income Tax Return for Corporations |
| JOANN Inc. and Subsidiaries | Rhode Island | RI-1120C | Business Corporation Tax Return |
| JOANN Inc. and Subsidiaries | Texas | 05-158 & 05-102 | Franchise Tax Report and Public Information Report |

| JOANN Inc. and Subsidiaries | Utah | TC-20 | Corporate Franchise or Income Tax Return |
| JOANN Inc. and Subsidiaries | Vermont | CO-411 | Corporation Income Tax Return |
| JOANN Inc. and Subsidiaries | West Virginia | CIT-120 | Corporation Net Income Tax Return |
| JOANN Inc. and Subsidiaries | Wisconsin | 6 | Combined Corporation Franchise or Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
| --- | --- | --- | --- |
| Jo-Ann Stores, LLC | Alabama | 20C | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Alabama | CPT | Business Privilege Tax Return |
| Jo-Ann Stores, LLC | Arkansas | AR1100CT | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | California | 568 | Limited Liability Company Return of Income |
| Jo-Ann Stores, LLC | Delaware | 1100 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Florida | F-1120 | Corporation Income/Franchise Tax Return |
| Jo-Ann Stores, LLC | Georgia | 600 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Indiana | IT-20 | Corporate Adjusted Gross Income Tax Return |
| Jo-Ann Stores, LLC | Iowa | IA 1120 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Louisiana | CIFT-620 | Corporation Income/Franchise Tax Return |
| Jo-Ann Stores, LLC | Maryland | 500 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Mississippi | 83-105 | Corporate Income and Franchise Tax Return |
| Jo-Ann Stores, LLC | Missouri | MO-1120 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | North Carolina | CD-405 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Oklahoma | 512 | Corporation Income and Franchise Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Jo-Ann Stores, LLC | Oklahoma | 200 | Annual Franchise Tax Return |
| Jo-Ann Stores, LLC | Pennsylvania | RCT-101 | Corporate Net Income Tax Report |
| Jo-Ann Stores, LLC | South Carolina | SC-1120 | C Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Tennessee | FAE 170 | Franchise and Excise Tax Return |
| Jo-Ann Stores, LLC | Virginia | 500 | Corporation Income Tax Return |
| Jo-Ann Stores, LLC | Philadelphia | BIRT | Business Income & Receipts Tax Return |
| Jo-Ann Stores, LLC | Kansas City, MO | RD-108 | Business Income Tax Return |
| Jo-Ann Stores, LLC | Ashland, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Boone County, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Campbellsville, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Elizabethtown, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Fayette County, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Frankfort, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Glasgow, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Knox County, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Lexington, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Louisville, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Owensboro, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Taylor County, KY | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Big Rapids, MI | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Jackson, MI | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Lansing, MI | City Return | Business Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Jo-Ann Stores, LLC | Lapeer, MI | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Athens, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Bath-Akron-Fairlawn JEDD, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Chillicothe, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Cincinnati, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Cleveland, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Columbus, OH | BR-25 | Annual City Tax Return for Businesses |
| Jo-Ann Stores, LLC | Defiance, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Evendale, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Findlay, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Heath, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Lancaster, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Marietta, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | New Philadelphia, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Ontario, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Piqua, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Prairie-Obetz JEDZ, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Toledo, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Trotwood, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Wooster, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | Zanesville, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores, LLC | West Jefferson, OH | City Return | Business Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Jo-Ann Stores Support Center, Inc. | Alabama | 20C | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Alabama | CPT | Business Privilege Tax Return |
| Jo-Ann Stores Support Center, Inc. | Georgia | 600 | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Indiana | IT-20 | Corporate Adjusted Gross Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Iowa | IA 1120 | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Louisiana | CIFT-620 | Corporation Income/Franchise Tax Return |
| Jo-Ann Stores Support Center, Inc. | Maryland | 500 | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Missouri | MO-1120 | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | North Carolina | CD-405 | Corporation Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Oklahoma | 512 | Corporation Income and Franchise Tax Return |
| Jo-Ann Stores Support Center, Inc. | Oklahoma | 200 | Annual Franchise Tax Return |
| Jo-Ann Stores Support Center, Inc. | Pennsylvania | RCT-101 | Corporate Net Income Tax Report |
| Jo-Ann Stores Support Center, Inc. | Tennessee | FAE 170 | Franchise and Excise Tax Return |
| Jo-Ann Stores Support Center, Inc. | Akron, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Ashtabula, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Brunswick, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | CCA, OH | 120-17-BR | Net Profit Tax Return |
| Jo-Ann Stores Support Center, Inc. | Columbus, OH | BR-25 | Annual City Tax Return for Businesses |
| Jo-Ann Stores Support Center, Inc. | Fairlawn, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Green, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Lakewood, OH | City Return | Business Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Jo-Ann Stores Support Center, Inc. | Louisville, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Ontario, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Parma, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Richmond, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Stow, OH | City Return | Business Income Tax Return |
| Jo-Ann Stores Support Center, Inc. | Westfield Center, OH | City Return | Business Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| JOANN Inc. | Alabama | 20C | Corporation Income Tax Return |
| JOANN Inc. | Alabama | CPT | Business Privilege Tax Return |
| JOANN Inc. | Arkansas | AR1100CT | Corporation Income Tax Return |
| JOANN Inc. | Delaware | 1100 | Corporation Income Tax Return |
| JOANN Inc. | Florida | F-1120 | Corporation Income/Franchise Tax Return |
| JOANN Inc. | Georgia | 600 | Corporation Income Tax Return |
| JOANN Inc. | Indiana | IT-20 | Corporate Adjusted Gross Income Tax Return |
| JOANN Inc. | Iowa | IA 1120 | Corporation Income Tax Return |
| JOANN Inc. | Louisiana | CIFT-620 | Corporation Income/Franchise Tax Return |
| JOANN Inc. | Maryland | 500 | Corporation Income Tax Return |
| JOANN Inc. | Mississippi | 83-105 | Corporate Income and Franchise Tax Return |
| JOANN Inc. | North Carolina | CD-405 | Corporation Income Tax Return |
| JOANN Inc. | Oklahoma | 512 | Corporation Income and Franchise Tax Return |
| JOANN Inc. | Oklahoma | 200 | Annual Franchise Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| JOANN Inc. | Pennsylvania | RCT-101 | Corporate Net Income Tax Report |
| JOANN Inc. | Virginia | 500 | Corporation Income Tax Return |
| JOANN Inc. | Philadelphia | BIRT | Business Income Receipts Tax Return |
| JOANN Inc. | Big Rapids, MI | City Return | Business Income Tax Return |
| JOANN Inc. | Jackson, MI | City Return | Business Income Tax Return |
| JOANN Inc. | Lansing, MI | City Return | Business Income Tax Return |
| JOANN Inc. | Lapeer, MI | City Return | Business Income Tax Return |
| JOANN Inc. | Athens, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Bath-Akron-Fairlawn JEDD, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Chillicothe, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Cincinnati, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Columbus, OH | BR-25 | Annual City Tax Return for Businesses |
| JOANN Inc. | Defiance, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Evendale, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Findlay, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Heath, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Lancaster, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Marietta, OH | City Return | Business Income Tax Return |
| JOANN Inc. | New Philadelphia, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Ontario, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Piqua, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Prairie-Obetz JEDZ, OH | City Return | Business Income Tax Return |
| JOANN Inc. | RITA, OH | 27 | Net Profits Tax Return |
| JOANN Inc. | Toledo, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Trotwood, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Wooster, OH | City Return | Business Income Tax Return |
| JOANN Inc. | Zanesville, OH | City Return | Business Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| WeaveUp, Inc. | North Carolina | CD-405 | Corporation Income Tax Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| joann.com, LLC | California | 568 | Limited Liability Company Return of Income |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Creativebug, LLC | California | 568 | Limited Liability Company Return of Income |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| JOANN Ditto Holdings Inc. | Tennessee | FAE 170 | Franchise and Excise Tax Return |
| JOANN Ditto Holdings Inc. | Virginia | 500 | Corporation Income Tax Return |

**Exhibit B**

**Listing of State/Local Sales and Use Tax Returns Included in Engagement**

| Entity | State | Jurisdiction | Filing Frequency | Return Count |
|--------|-------|--------------|------------------|--------------|
| CREATIVEBUG, LLC | AL | AL State Simplified Seller's Tax Return 2620 | M | 12 |
| CREATIVEBUG, LLC | AR | AR Excise Sales Use Tax Report | M | 12 |
| CREATIVEBUG, LLC | CO | CO - HomeRule SUTS | M | 12 |
| CREATIVEBUG, LLC | CO | CO Retail Sales Tax Return DR0100 | M | 12 |
| CREATIVEBUG, LLC | CT | CT Sales Use Tax Return OS-114 | M | 12 |
| CREATIVEBUG, LLC | IA | IA Sales and Use Tax Return | A | 1 |
| CREATIVEBUG, LLC | ID | ID Sales Use Tax Return 850 | Q | 4 |
| CREATIVEBUG, LLC | IN | IN Sales and Use Tax Voucher ST-103 | M | 12 |
| CREATIVEBUG, LLC | ME | ME Sales Use Tax Return ST-7 | SA | 2 |
| CREATIVEBUG, LLC | MN | MN Consolidated Sales Use Tax ST-1 CON | Q | 4 |
| CREATIVEBUG, LLC | NC | NC Sales and Use Tax Return E-500 | M | 12 |
| CREATIVEBUG, LLC | NJ | NJ Sales Use Tax Return ST-50 (Q) ST-51 (M) | Q | 4 |
| CREATIVEBUG, LLC | NM | NM Gross Receipts Tax Return | Q | 4 |
| CREATIVEBUG, LLC | OH | OH UST-1 Sales | M | 12 |
| CREATIVEBUG, LLC | PA | PA Sales Use Hotel Tax PA-3 | M | 12 |
| CREATIVEBUG, LLC | RI | RI Form RI-STR Sales and Use Tax | M | 12 |
| CREATIVEBUG, LLC | SD | SD Sales Use Tax Return | SA | 2 |

| CREATIVEBUG, LLC | TN | TN Sales Use Tax Return RV-R0000201 | M | 12 |
|---|---|---|---|---|
| CREATIVEBUG, LLC | TX | TX Sales Use Tax Return 01-114 | M | 12 |
| CREATIVEBUG, LLC | VT | VT Sales Use Tax Return (SU-451) | Q | 4 |
| CREATIVEBUG, LLC | WA | WA B&O Annual Reconciliation | A | 1 |
| CREATIVEBUG, LLC | WA | WA Combined Monthly Excise Tax 2406M | M | 12 |
| CREATIVEBUG, LLC | WI | WI State County Sales Use Tax ST-12 | Q | 4 |
| CREATIVEBUG, LLC | WV | WV Sales and Use Tax Return CST-200CU | M | 12 |
| CREATIVEBUG, LLC | WY | WY Sales Use Tax Return Form 41 | Q | 4 |
| JO-ANN STORES, LLC | AK | AK-JUNEAU Monthly Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | AK | AK-KENAI PENINSULA Joint Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | AK | AK-WASILLA Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | AL | AL State City & County Tax Return-Debit | M | 12 |
| JO-ANN STORES, LLC | AL | AL State Consumers Use Return 2610 | M | 12 |
| JO-ANN STORES, LLC | AL | AL State Sales Tax Return w Est Pay 2105 | M | 12 |
| JO-ANN STORES, LLC | AL | AL-AVENU Sales Use Rental Tax Return | M | 12 |
| JO-ANN STORES, LLC | AL | AL-MADISON CO Sales Use Rental Return | M | 12 |
| JO-ANN STORES, LLC | AR | AR Excise Sales Use Tax Report | M | 12 |

| JO-ANN STORES, LLC | AZ | AZ Accelerated Payment | A | 1 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | AZ | AZ Privilege Use Return TPT-2 | M | 12 |
| JO-ANN STORES, LLC | CA | CA St Loc Dist Sales Use CDTFA-401-A | MQ | 12 |
| JO-ANN STORES, LLC | CO | CO - HomeRule SUTS | M | 12 |
| JO-ANN STORES, LLC | CO | CO Consumers Use Tax Return DR0252 | M | 12 |
| JO-ANN STORES, LLC | CO | CO Retail Sales Tax Return DR0100 | M | 12 |
| JO-ANN STORES, LLC | CO | CO-AURORA Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-BOULDER Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-CENTENNIAL Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-COLORADO SPRINGS Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-DENVER Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-FORT COLLINS Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-GRAND JUNCTION Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-LAKEWOOD Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-LOVELAND Centerra PIF Sch | MQ | 12 |
| JO-ANN STORES, LLC | CO | CO-LOVELAND CENTERRA Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-LOVELAND Retail Sales Fee Admin Return | M | 12 |

| JO-ANN STORES, LLC | CO | CO-NORTHGLENN Sales Use Tax Return | M | 12 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | CO | CO-PUEBLO Tax Return | M | 12 |
| JO-ANN STORES, LLC | CO | CO-WESTMINSTER Sales and Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | CT | CT Sales Use Tax Return OS-114 | M | 12 |
| JO-ANN STORES, LLC | DE | DE GRT-General Services | M | 12 |
| JO-ANN STORES, LLC | FL | FL Sales Use Tax Return DR-15 | M | 12 |
| JO-ANN STORES, LLC | FL | FL-Panama Local Business Tax Return | M | 12 |
| JO-ANN STORES, LLC | GA | GA Sales Use Tax Report ST-3 | M | 12 |
| JO-ANN STORES, LLC | IA | IA Sales and Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | ID | ID Sales Use Tax Return 850 | M | 12 |
| JO-ANN STORES, LLC | IL | IL Sales Use Tax Prepayment 1 | M | 12 |
| JO-ANN STORES, LLC | IL | IL Sales Use Tax Prepayment 2 | M | 12 |
| JO-ANN STORES, LLC | IL | IL Sales Use Tax Prepayment 3 | M | 12 |
| JO-ANN STORES, LLC | IL | IL Sales Use Tax Prepayment 4 | M | 12 |
| JO-ANN STORES, LLC | IL | IL Sales Use Tax Return E911 ST-1 | M | 12 |
| JO-ANN STORES, LLC | IL | IL-Chicago Nontitled Bus Use Tax 8402B | A | 1 |
| JO-ANN STORES, LLC | IN | IN Sales and Use Tax Voucher ST-103 | M | 12 |

| JO-ANN STORES, LLC | KS | KS Consumers Use Tax Return CT-10U | M | 12 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | KS | KS Retailers Sales Tax Return ST-36 | M | 12 |
| JO-ANN STORES, LLC | KY | KY Sales Use Tax Return 51A103 | M | 12 |
| JO-ANN STORES, LLC | LA | LA Monthly Sales Tax Return R-1029 | M | 12 |
| JO-ANN STORES, LLC | LA | LA-CADDO Sales Use Tax Report | M | 12 |
| JO-ANN STORES, LLC | LA | LA-EAST BATON ROUGE Sales Use Tax Report | M | 12 |
| JO-ANN STORES, LLC | LA | LA-JEFFERSON Sales and Use Tax Report | M | 12 |
| JO-ANN STORES, LLC | LA | LA-LAFAYETTE Sales Tax Return | M | 12 |
| JO-ANN STORES, LLC | LA | LA-RAPIDES Sales Use Tax Report | M | 12 |
| JO-ANN STORES, LLC | LA | LA-ST TAMMANY Sales Use Tax Form | M | 12 |
| JO-ANN STORES, LLC | MA | MA Prepayment | M | 12 |
| JO-ANN STORES, LLC | MA | MA Sales Use Tax Return ST-9 | M | 12 |
| JO-ANN STORES, LLC | MD | MD Sales and Use Tax Return Form 202 | M | 12 |
| JO-ANN STORES, LLC | ME | ME Sales Use Tax Return ST-7 | M | 12 |
| JO-ANN STORES, LLC | MI | MI Sales Use Withholding 5080 (the 20th) | M | 12 |
| JO-ANN STORES, LLC | MI | MI Sales Use Withholding Annual 5081 | A | 1 |
| JO-ANN STORES, LLC | MN | MN Consolidated Sales Use Tax ST-1 CON | M | 12 |

| JO-ANN STORES, LLC | MO | MO Consumers Use Tax Return 53-C | Q | 4 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | MO | MO Sales Tax Return 53-1 | M | 12 |
| JO-ANN STORES, LLC | MS | MS Sales Tax Return 72-010 | M | 12 |
| JO-ANN STORES, LLC | MS | MS Use Tax Return 72-110 | M | 12 |
| JO-ANN STORES, LLC | NC | NC Sales and Use Tax Return E-500 | M | 12 |
| JO-ANN STORES, LLC | ND | ND ST Sales and Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | NE | NE State Local Sales Use Tax Return 10 | M | 12 |
| JO-ANN STORES, LLC | NJ | NJ Sales Use Tax Return ST-50 (Q) ST-51 (M) | MQ | 12 |
| JO-ANN STORES, LLC | NM | NM Compensating Tax Return | M | 12 |
| JO-ANN STORES, LLC | NM | NM Gross Receipts Tax Return | M | 12 |
| JO-ANN STORES, LLC | NV | NV Combined Sales Use Tax Return ST-18 | M | 12 |
| JO-ANN STORES, LLC | NV | NV Commerce Tax | A | 1 |
| JO-ANN STORES, LLC | NY | NY Part Qrtly Sales Use ST-809 or ST-810_PTP | MQ | 12 |
| JO-ANN STORES, LLC | OH | OH Universal Use Tax Return UUT-1 | M | 12 |
| JO-ANN STORES, LLC | OH | OH UST-1 Sales | M | 12 |
| JO-ANN STORES, LLC | OH | OH CAT (Commercial Activity Tax) | Q | 4 |
| JO-ANN STORES, LLC | OK | OK Consumers Use Tax Report SCU20004 | M | 12 |

| JO-ANN STORES, LLC | OK | OK Sales Tax Prepayment Return | M | 12 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | OK | OK Sales Tax Report STS20002 | M | 12 |
| JO-ANN STORES, LLC | PA | PA Prepayment Form for PA-3 | M | 12 |
| JO-ANN STORES, LLC | PA | PA Sales Use Hotel Tax PA-3 | M | 12 |
| JO-ANN STORES, LLC | RI | RI Form RI-STR Sales and Use Tax | M | 12 |
| JO-ANN STORES, LLC | SC | SC Sales and Use Tax Return ST-3 | M | 12 |
| JO-ANN STORES, LLC | SD | SD Sales Use Tax Return | M | 12 |
| JO-ANN STORES, LLC | TN | TN Annual Business Tax Return | A | 1 |
| JO-ANN STORES, LLC | TN | TN Sales Use Tax Return RV-R0000201 | M | 12 |
| JO-ANN STORES, LLC | TX | TX Sales Use Tax Return 01-114 | M | 12 |
| JO-ANN STORES, LLC | UT | UT Sales and Use Tax Return TC-62M | M | 12 |
| JO-ANN STORES, LLC | VA | VA Dealers Sales Use ST-9 | M | 12 |
| JO-ANN STORES, LLC | VT | VT Sales Use Tax Return (SU-451) | M | 12 |
| JO-ANN STORES, LLC | WA | WA B&O Annual Reconciliation | A | 1 |
| JO-ANN STORES, LLC | WA | WA Combined Monthly Excise Tax 2406M | M | 12 |
| JO-ANN STORES, LLC | WI | WI Premier Resort Area Tax Return | M | 12 |
| JO-ANN STORES, LLC | WI | WI State County Sales Use Tax ST-12 | M | 12 |

| JO-ANN STORES, LLC | WV | WV Sales and Use Tax Return CST-200CU | M | 12 |
|---|---|---|---|---|
| JO-ANN STORES, LLC | WY | WY Sales Use Tax Return Form 41 | M | 12 |
| JOANN.COM, LLC | AK | AK-JUNEAU Quarterly Sales Tax Return | Q | 4 |
| JOANN.COM, LLC | AK | AK-KENAI PENINSULA Joint Sales Tax Return | M | 12 |
| JOANN.COM, LLC | AK | AK-Remote Seller Sales Tax Return | M | 12 |
| JOANN.COM, LLC | AK | AK-WASILLA Sales Tax Return | M | 12 |
| JOANN.COM, LLC | AL | AL State City & County Tax Return-Debit | M | 12 |
| JOANN.COM, LLC | AL | AL State Sellers Use Tax Return 2620 | M | 12 |
| JOANN.COM, LLC | AL | AL-AVENU Sales Use Rental Tax Return | M | 12 |
| JOANN.COM, LLC | AL | AL-MADISON CO Sales Use Rental Return | M | 12 |
| JOANN.COM, LLC | AR | AR Excise Sales Use Tax Report | M | 12 |
| JOANN.COM, LLC | AZ | AZ Privilege Use Return TPT-2 | M | 12 |
| JOANN.COM, LLC | CA | CA St Loc Dist Sales Use CDTFA-401-A | MQ | 12 |
| JOANN.COM, LLC | CO | CO Retail Delivery Fee Return | M | 12 |
| JOANN.COM, LLC | CO | CO Retailers Use Tax Return DR0173 | M | 12 |
| JOANN.COM, LLC | CO | CO - HomeRule SUTS | M | 12 |
| JOANN.COM, LLC | CO | CO-AURORA Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-BOULDER Sales Use Tax Return | M | 12 |

| JOANN.COM, LLC | CO | CO-CENTENNIAL Sales Tax Return | M | 12 |
|---|---|---|---|---|
| JOANN.COM, LLC | CO | CO-COLORADO SPRINGS Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-DENVER Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-FORT COLLINS Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-GRAND JUNCTION Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-GREELEY Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-LAKEWOOD Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-LITTLETON Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-LOVELAND Sales Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-MONTROSE Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-NORTHGLENN Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-PUEBLO Tax Return | M | 12 |
| JOANN.COM, LLC | CO | CO-WESTMINSTER Sales and Use Tax Return | M | 12 |
| JOANN.COM, LLC | CT | CT Sales Use Tax Return OS-114 | M | 12 |
| JOANN.COM, LLC | DC | DC Sales Use Tax Return FR-800 M or Q | M | 12 |
| JOANN.COM, LLC | FL | FL Sales Use Tax Return DR-15 | M | 12 |
| JOANN.COM, LLC | GA | GA Sales Use Tax Report ST-3 | M | 12 |

| JOANN.COM, LLC | HI | HI Annual Return Reconciliation G-49 | A | 1 |
|---|---|---|---|---|
| JOANN.COM, LLC | HI | HI General Excise Use Tax Return G-45 | M | 12 |
| JOANN.COM, LLC | IA | IA Sales and Use Tax Return | M | 12 |
| JOANN.COM, LLC | ID | ID Sales Use Tax Return 850 | M | 12 |
| JOANN.COM, LLC | IL | IL Sales Use Tax Prepayment 1 | M | 12 |
| JOANN.COM, LLC | IL | IL Sales Use Tax Prepayment 2 | M | 12 |
| JOANN.COM, LLC | IL | IL Sales Use Tax Prepayment 3 | M | 12 |
| JOANN.COM, LLC | IL | IL Sales Use Tax Prepayment 4 | M | 12 |
| JOANN.COM, LLC | IL | IL Sales Use Tax Return E911 ST-1 | M | 12 |
| JOANN.COM, LLC | IN | IN Sales and Use Tax Voucher ST-103 | M | 12 |
| JOANN.COM, LLC | KS | KS Retailers Tax Return CT-9U | M | 12 |
| JOANN.COM, LLC | KY | KY Sales Use Tax Return 51A102 | M | 12 |
| JOANN.COM, LLC | LA | LA Monthly Sales Tax Return R-1029 | M | 12 |
| JOANN.COM, LLC | LA | LA-CADDO Sales Use Tax Report | M | 12 |
| JOANN.COM, LLC | LA | LA-EAST BATON ROUGE Sales Use Tax Report | M | 12 |
| JOANN.COM, LLC | LA | LA-JEFFERSON Sales and Use Tax Report | M | 12 |
| JOANN.COM, LLC | LA | LA-LAFAYETTE Sales Tax Return | M | 12 |
| JOANN.COM, LLC | LA | LA-RAPIDES Sales Use Tax Report | M | 12 |

| JOANN.COM, LLC | LA | LA-ST CHARLES Sales Use Tax Report | M | 12 |
|---|---|---|---|---|
| JOANN.COM, LLC | LA | LA-ST TAMMANY Sales Use Tax Form | M | 12 |
| JOANN.COM, LLC | LA | LA-TERREBONNE Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | LA | LA-VERMILION Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | MA | MA Prepayment | M | 12 |
| JOANN.COM, LLC | MA | MA Sales Use Tax Return ST-9 | M | 12 |
| JOANN.COM, LLC | MD | MD Sales and Use Tax Return Form 202 | M | 12 |
| JOANN.COM, LLC | ME | ME Sales Use Tax Return ST-7 | M | 12 |
| JOANN.COM, LLC | MI | MI Sales Use Withholding 5080 (the 20th) | M | 12 |
| JOANN.COM, LLC | MI | MI Sales Use Withholding Annual 5081 | A | 1 |
| JOANN.COM, LLC | MN | MN Consolidated Sales Use Tax ST-1 CON | M | 12 |
| JOANN.COM, LLC | MO | MO Vendors Use Return 53-V | M | 12 |
| JOANN.COM, LLC | MS | MS Use Tax Return 72-110 | M | 12 |
| JOANN.COM, LLC | NC | NC Sales and Use Tax Return E-500 | M | 12 |
| JOANN.COM, LLC | ND | ND ST Sales and Use Tax Return | M | 12 |
| JOANN.COM, LLC | NE | NE State Local Sales Use Tax Return 10 | M | 12 |
| JOANN.COM, LLC | NJ | NJ Sales Use Tax Return ST-50 (Q) ST-51 (M) | MQ | 12 |
| JOANN.COM, LLC | NM | NM Gross Receipts Tax Return | M | 12 |

| JOANN.COM, LLC | NV | NV Combined Sales Use Tax Return ST-18 | M | 12 |
|---|---|---|---|---|
| JOANN.COM, LLC | NY | NY Part Qrtly Sales Use ST-809 or ST-810_PTP | MQ | 12 |
| JOANN.COM, LLC | OH | OH UST-1 Sales | M | 12 |
| JOANN.COM, LLC | OK | OK Sales Tax Prepayment Return | M | 12 |
| JOANN.COM, LLC | OK | OK Sales Tax Report STS20002 | M | 12 |
| JOANN.COM, LLC | PA | PA Prepayment Form for PA-3 | M | 12 |
| JOANN.COM, LLC | PA | PA Sales Use Hotel Tax PA-3 | M | 12 |
| JOANN.COM, LLC | RI | RI Form RI-STR Sales and Use Tax | M | 12 |
| JOANN.COM, LLC | SC | SC Sales and Use Tax Return ST-3 | M | 12 |
| JOANN.COM, LLC | SD | SD Sales Use Tax Return | M | 12 |
| JOANN.COM, LLC | TN | TN Sales Use Tax Return RV-R0000201 | M | 12 |
| JOANN.COM, LLC | TX | TX Sales Use Tax Return 01-114 | M | 12 |
| JOANN.COM, LLC | UT | UT Sales and Use Tax Return TC-62M | M | 12 |
| JOANN.COM, LLC | VA | VA Out of State Dealer Use ST-8 | M | 12 |
| JOANN.COM, LLC | VT | VT Sales Use Tax Return (SU-451) | M | 12 |
| JOANN.COM, LLC | WA | WA B&O Annual Reconciliation | A | 1 |
| JOANN.COM, LLC | WA | WA Combined Monthly Excise Tax 2406M | M | 12 |
| JOANN.COM, LLC | WI | WI State County Sales Use Tax ST-12 | M | 12 |

| JOANN.COM, LLC | WV | WV Sales and Use Tax Return CST-200CU | M | 12 |
|---|---|---|---|---|
| JOANN.COM, LLC | WY | WY Sales Use Tax Return Form 41 | M | 12 |

**Exhibit C**

**Listing of State/Local Business Personal Property Tax Renditions Included in Engagement**

| Entity Name | State | Taxing Jurisdiction | Due Date | # of Renditions | Stores |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Alabama | Lauderdale | December 31 | 1 | 2010 |
| Jo-Ann Stores, LLC | Alabama | Jefferson-Birm | December 31 | 1 | 2169 |
| Jo-Ann Stores, LLC | Alabama | Montgomery | December 31 | 1 | 2177 |
| Jo-Ann Stores, LLC | Alabama | Madison | December 31 | 1 | 2184 |
| Jo-Ann Stores, LLC | Alabama | Mobile | December 31 | 1 | 2376 |
| Jo-Ann Stores, LLC | Alabama | Flint Township | December 31 | 1 | 2496 |
| Jo-Ann Stores, LLC | Alabama | Tuscaloosa | December 31 | 1 | 2497 |
| Jo-Ann Stores, LLC | Alabama | Lee | December 31 | 1 | DC 7039 |
| Jo-Ann Stores, LLC | Alaska | Juneau | January 31 | 1 | 1096 |
| Jo-Ann Stores, LLC | Alaska | Kenai Peninsula | January 31 | 1 | 557 |
| Jo-Ann Stores, LLC | Alaska | Matanuska-Susitna | March 15 | 1 | 168 |
| Jo-Ann Stores, LLC | Alaska | Anchorage | April 20 | 1 | 2545 |
| Jo-Ann Stores, LLC | Arizona | Cochise | March 31 | 1 | 2260 |
| Jo-Ann Stores, LLC | Arizona | Coconino | March 31 | 1 | 1831 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Arizona | Maricopa | March 31 | 10 | 1305, 1404, 1913, 1917, 1965, 2075, 2132, 2137, 2281, 2522 |
| Jo-Ann Stores, LLC | Arizona | Mohave | March 31 | 1 | 2186 |
| Jo-Ann Stores, LLC | Arizona | Pima | March 31 | 3 | 2042, 2302, 2330 |
| Jo-Ann Stores, LLC | Arizona | Pinal | March 31 | 1 | 2210 |
| Jo-Ann Stores, LLC | Arizona | Yavapai | March 31 | 1 | 1859 |
| Jo-Ann Stores, LLC | Arkansas | Benton | May 31 | 1 | 2453 |
| Jo-Ann Stores, LLC | Arkansas | Craighead | May 31 | 1 | 2483 |
| Jo-Ann Stores, LLC | Arkansas | Pulaski | May 31 | 1 | 2297 |
| Jo-Ann Stores, LLC | Arkansas | Pulaski County | May 31 | 1 | 2349 |
| Jo-Ann Stores, LLC | Arkansas | Sebastian | May 31 | 1 | 2498 |
| Jo-Ann Stores, LLC | Arkansas | Washington | May 31 | 1 | 1894 |
| Jo-Ann Stores, LLC | California | Alameda | May 07 | 3 | 2189, 2271, 2370 |
| Jo-Ann Stores, LLC | California | Alameda (CB) | May 07 | 1 | 4300 |
| Jo-Ann Stores, LLC | California | Amador | May 07 | 1 | 2441 |
| Jo-Ann Stores, LLC | California | Butte | May 07 | 1 | 920 |

| Jo-Ann Stores, LLC | California | Contra Costa | May 07 | 3 | 2133, 2150, 713 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | California | Fresno | May 07 | 2 | 2084, 2428 |
| Jo-Ann Stores, LLC | California | Humboldt | May 07 | 1 | 812 |
| Jo-Ann Stores, LLC | California | Kern | May 07 | 2 | 1014, 2429 |
| Jo-Ann Stores, LLC | California | Los Angeles | May 07 | 15 | 1152, 1288, 1529, 1798, 1803, 1873, 1919, 1954, 2069, 2374, 2389, 2406, 2449, 2452, 2546 |
| Jo-Ann Stores, LLC | California | Marin | May 07 | 1 | 112 |
| Jo-Ann Stores, LLC | California | Merced | May 07 | 1 | 1788 |
| Jo-Ann Stores, LLC | California | Monterey | May 07 | 1 | 2444 |
| Jo-Ann Stores, LLC | California | Orange | May 07 | 9 | 1158, 1198, 1447, 2119, 2126, 2442, 2523, 2526, 2583 |
| Jo-Ann Stores, LLC | California | Placer | May 07 | 1 | 2082 |
| Jo-Ann Stores, LLC | California | Riverside | May 07 | 5 | 1440, 1920, 2142, 2422, 2527 |
| Jo-Ann Stores, LLC | California | Sacramento | May 07 | 4 | 1568, 2033, 2203,2542 |
| Jo-Ann Stores, LLC | California | San Bernadino | May 07 | 5 | 1963, 2096, 2270, 2339, 2529 |

| Jo-Ann Stores, LLC | California | San Diego | May 07 | 6 | 1011, 1464, 1843, 1845, 1886, 2559 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | California | San Joaquin | May 07 | 2 | 1877, 2474 |
| Jo-Ann Stores, LLC | California | San Mateo | May 07 | 3 | 730, 871, 2533 |
| Jo-Ann Stores, LLC | California | Santa Barbara | May 07 | 1 | 2200 |
| Jo-Ann Stores, LLC | California | Santa Clara | May 07 | 3 | 1787, 1878, 605 |
| Jo-Ann Stores, LLC | California | Shasta | May 07 | 1 | 2353 |
| Jo-Ann Stores, LLC | California | Solano | May 07 | 1 | 850 |
| Jo-Ann Stores, LLC | California | Sonoma | May 07 | 2 | 154, 1763 |
| Jo-Ann Stores, LLC | California | Stanislaus | May 07 | 2 | 1782, 2420 |
| Jo-Ann Stores, LLC | California | Sutter | May 07 | 1 | 2462 |
| Jo-Ann Stores, LLC | California | Tulare | May 07 | 3 | 2473, 7043,7125 |
| Jo-Ann Stores, LLC | California | Tuolumne | May 07 | 1 | 2202 |
| Jo-Ann Stores, LLC | California | Ventura | May 07 | 3 | 1223, 1809, 1818 |
| Jo-Ann Stores, LLC | California | Yolo | May 07 | 1 | 1771 |
| Jo-Ann Stores, LLC | Colorado | Adams | April 15 | 2 | 1858, 2390 |
| Jo-Ann Stores, LLC | Colorado | Arapahoe | April 15 | 3 | 1672, 2055, 2071 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Colorado | Boulder | April 15 | 1 | 1674 |
| Jo-Ann Stores, LLC | Colorado | Denver | April 15 | 2 | 1095, 2179 |
| Jo-Ann Stores, LLC | Colorado | El Paso | April 15 | 1 | 2062 |
| Jo-Ann Stores, LLC | Colorado | Jefferson | April 15 | 1 | 2234 |
| Jo-Ann Stores, LLC | Colorado | Larimer | April 15 | 2 | 2124, 2228 |
| Jo-Ann Stores, LLC | Colorado | Mesa | April 15 | 1 | 2238 |
| Jo-Ann Stores, LLC | Colorado | Montrose | April 15 | 1 | 2368 |
| Jo-Ann Stores, LLC | Colorado | Pueblo | April 15 | 1 | 2013 |
| Jo-Ann Stores, LLC | Connecticut | Brookfield | October 31 | 1 | 2182 |
| Jo-Ann Stores, LLC | Connecticut | Clinton | October 31 | 1 | 701 |
| Jo-Ann Stores, LLC | Connecticut | Enfield | October 31 | 1 | 2266 |
| Jo-Ann Stores, LLC | Connecticut | Hamden | October 31 | 1 | 976 |
| Jo-Ann Stores, LLC | Connecticut | Manchester | October 31 | 1 | 1924 |
| Jo-Ann Stores, LLC | Connecticut | Milford | October 31 | 1 | 2123 |
| Jo-Ann Stores, LLC | Connecticut | Newington | October 31 | 1 | 1942 |
| Jo-Ann Stores, LLC | Connecticut | Norwich | October 31 | 1 | 1607 |
| Jo-Ann Stores, LLC | Connecticut | Southington | October 31 | 1 | 2411 |

| Jo-Ann Stores, LLC | Connecticut | Torrington | October 31 | 1 | 2367 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Florida | Alachua | March 31 | 1 | 2391 |
| Jo-Ann Stores, LLC | Florida | Bay | March 31 | 1 | 2298 |
| Jo-Ann Stores, LLC | Florida | Brevard | March 31 | 1 | 2118 |
| Jo-Ann Stores, LLC | Florida | Broward | March 31 | 5 | 1023, 1044, 1596, 2144, 2167 |
| Jo-Ann Stores, LLC | Florida | Charlotte | March 31 | 1 | 1484 |
| Jo-Ann Stores, LLC | Florida | Collier | March 31 | 1 | 2077 |
| Jo-Ann Stores, LLC | Florida | Duval | March 31 | 2 | 1925, 2039 |
| Jo-Ann Stores, LLC | Florida | Escambia | March 31 | 1 | 2109 |
| Jo-Ann Stores, LLC | Florida | Hernando | March 31 | 1 | 333 |
| Jo-Ann Stores, LLC | Florida | Hillsborough | March 31 | 3 | 1861, 1958, 1959 |
| Jo-Ann Stores, LLC | Florida | Indian River | March 31 | 1 | 2279 |
| Jo-Ann Stores, LLC | Florida | Lake | March 31 | 2 | 1598, 772 |
| Jo-Ann Stores, LLC | Florida | Lee | March 31 | 3 | 173, 1922, 2537 |
| Jo-Ann Stores, LLC | Florida | Leon | March 31 | 1 | 736 |
| Jo-Ann Stores, LLC | Florida | Manatee | March 31 | 1 | 2282 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Florida | Marion | March 31 | 1 | 1244 |
| Jo-Ann Stores, LLC | Florida | Martin | March 31 | 1 | 2164 |
| Jo-Ann Stores, LLC | Florida | Miami-Dade | March 31 | 3 | 135, 583, 968 |
| Jo-Ann Stores, LLC | Florida | Nassau | March 31 | 1 | 2335 |
| Jo-Ann Stores, LLC | Florida | Okaloosa | March 31 | 2 | 816, 2580 |
| Jo-Ann Stores, LLC | Florida | Orange | March 31 | 3 | 1908, 2032, 2139 |
| Jo-Ann Stores, LLC | Florida | Osceola | March 31 | 1 | 2058 |
| Jo-Ann Stores, LLC | Florida | Palm Beach | March 31 | 3 | 1452, 1862, 2435 |
| Jo-Ann Stores, LLC | Florida | Pasco | March 31 | 1 | 1333 |
| Jo-Ann Stores, LLC | Florida | Pinellas | March 31 | 2 | 2025, 2031 |
| Jo-Ann Stores, LLC | Florida | Polk | March 31 | 2 | 312, 902 |
| Jo-Ann Stores, LLC | Florida | Sarasota | March 31 | 2 | 1107, 998 |
| Jo-Ann Stores, LLC | Florida | Seminole | March 31 | 2 | 1915, 2131 |
| Jo-Ann Stores, LLC | Florida | Volusia | March 31 | 1 | 1595 |
| Jo-Ann Stores, LLC | Georgia | Athens-Clarke | March 31 | 1 | 2534 |
| Jo-Ann Stores, LLC | Georgia | Chatham | March 31 | 1 | 1021 |
| Jo-Ann Stores, LLC | Georgia | Cobb | March 31 | 1 | 2547 |

| Jo-Ann Stores, LLC | Georgia | Coweta | March 31 | 1 | 2364 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Georgia | Dekalb | March 31 | 1 | 2412 |
| Jo-Ann Stores, LLC | Georgia | Dougherty | March 31 | 1 | 2337 |
| Jo-Ann Stores, LLC | Georgia | Douglas | March 31 | 1 | 1549 |
| Jo-Ann Stores, LLC | Georgia | Fayette | March 31 | 1 | 2016 |
| Jo-Ann Stores, LLC | Georgia | Forsyth | March 31 | 1 | 2414 |
| Jo-Ann Stores, LLC | Georgia | Fulton | March 31 | 1 | 1960 |
| Jo-Ann Stores, LLC | Georgia | Glynn | March 31 | 1 | 2247 |
| Jo-Ann Stores, LLC | Georgia | Gwinnett | March 31 | 2 | 1921, 2005 |
| Jo-Ann Stores, LLC | Georgia | Hall | March 31 | 1 | 2239 |
| Jo-Ann Stores, LLC | Georgia | Houston | March 31 | 1 | 2490 |
| Jo-Ann Stores, LLC | Georgia | Macon-bibb | March 31 | 1 | 1891 |
| Jo-Ann Stores, LLC | Georgia | Muscogee | March 31 | 1 | 1583 |
| Jo-Ann Stores, LLC | Georgia | Richmond | March 31 | 1 | 2143 |
| Jo-Ann Stores, LLC | Georgia | Rockdale | March 31 | 1 | 2359 |
| Jo-Ann Stores, LLC | Georgia | Tift | March 31 | 1 | 2400 |
| Jo-Ann Stores, LLC | Idaho | Ada | March 15 | 2 | 796, 2162 |

| Jo-Ann Stores, LLC | Idaho | Bannock | March 15 | 1 | 2183 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Idaho | Bonneville | March 15 | 1 | 2192 |
| Jo-Ann Stores, LLC | Idaho | Canyon | March 15 | 1 | 1683 |
| Jo-Ann Stores, LLC | Idaho | Kootenai | March 15 | 1 | 2326 |
| Jo-Ann Stores, LLC | Idaho | Latah | March 15 | 1 | 2469 |
| Jo-Ann Stores, LLC | Idaho | Twin Falls | March 15 | 1 | 1692 |
| Jo-Ann Stores, LLC | Indiana | Allen | May 15 | 1 | 2108 |
| Jo-Ann Stores, LLC | Indiana | Bartholomew | May 15 | 1 | 2503 |
| Jo-Ann Stores, LLC | Indiana | Clark | May 15 | 1 | 2569 |
| Jo-Ann Stores, LLC | Indiana | Delaware | May 15 | 1 | 525 |
| Jo-Ann Stores, LLC | Indiana | Dubois | May 15 | 1 | 2515 |
| Jo-Ann Stores, LLC | Indiana | Elkhart | May 15 | 1 | 2532 |
| Jo-Ann Stores, LLC | Indiana | Grant | May 15 | 1 | 328 |
| Jo-Ann Stores, LLC | Indiana | Hendricks | May 15 | 1 | 1966 |
| Jo-Ann Stores, LLC | Indiana | Howard | May 15 | 1 | 1863 |
| Jo-Ann Stores, LLC | Indiana | Johnson | May 15 | 1 | 2030 |
| Jo-Ann Stores, LLC | Indiana | Knox | May 15 | 1 | 899 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Indiana | La Porte | May 15 | 1 | 566 |
| Jo-Ann Stores, LLC | Indiana | Lake | May 15 | 2 | 2068, 2373 |
| Jo-Ann Stores, LLC | Indiana | Lawrence | May 15 | 1 | 2439 |
| Jo-Ann Stores, LLC | Indiana | Marion | May 15 | 3 | 1910, 2229, 2312 |
| Jo-Ann Stores, LLC | Indiana | Marshall | May 15 | 1 | 889 |
| Jo-Ann Stores, LLC | Indiana | Monroe | May 15 | 1 | 607 |
| Jo-Ann Stores, LLC | Indiana | St. Joseph | May 15 | 2 | 2424, 665 |
| Jo-Ann Stores, LLC | Indiana | Steuben | May 15 | 1 | 995 |
| Jo-Ann Stores, LLC | Indiana | Tippecanoe | May 15 | 1 | 1149 |
| Jo-Ann Stores, LLC | Indiana | Vanderburgh | May 15 | 1 | 2128 |
| Jo-Ann Stores, LLC | Indiana | Vigo | May 15 | 1 | 2165 |
| Jo-Ann Stores, LLC | Indiana | Wayne | May 15 | 1 | 573 |
| Jo-Ann Stores, LLC | Kansas | Douglas | March 15 | 1 | 2481 |
| Jo-Ann Stores, LLC | Kansas | Johnson | March 15 | 2 | 1926, 2070 |
| Jo-Ann Stores, LLC | Kansas | Saline | March 15 | 2 | 1046, 2344 |
| Jo-Ann Stores, LLC | Kansas | Sedgwick | March 15 | 2 | 2193, 2460 |
| Jo-Ann Stores, LLC | Kansas | Shawnee | March 15 | 1 | 2434 |

| Jo-Ann Stores, LLC | Kentucky | Barren | May 15 | 1 | 2419 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Kentucky | Boone | May 15 | 1 | 2261 |
| Jo-Ann Stores, LLC | Kentucky | Boyd | May 15 | 1 | 2392 |
| Jo-Ann Stores, LLC | Kentucky | Daviess | May 15 | 1 | 2233 |
| Jo-Ann Stores, LLC | Kentucky | Fayette | May 15 | 1 | 2538 |
| Jo-Ann Stores, LLC | Kentucky | Franklin | May 15 | 1 | 1072 |
| Jo-Ann Stores, LLC | Kentucky | Hardin | May 15 | 1 | 2489 |
| Jo-Ann Stores, LLC | Kentucky | Jefferson | May 15 | 2 | 2145, 2323 |
| Jo-Ann Stores, LLC | Kentucky | Knox | May 15 | 1 | 2343 |
| Jo-Ann Stores, LLC | Kentucky | Taylor | May 15 | 1 | 2360 |
| Jo-Ann Stores, LLC | Louisiana | Jefferson | March 11 | 2 | 2508 & 2544 |
| Jo-Ann Stores, LLC | Louisiana | Caddo | March 31 | 1 | 2504 |
| Jo-Ann Stores, LLC | Louisiana | Lafayette | March 31 | 1 | 2256 |
| Jo-Ann Stores, LLC | Louisiana | E Baton Rouge | March 31 | 1 | 2269 |
| Jo-Ann Stores, LLC | Louisiana | Rapides | March 31 | 1 | 2486 |
| Jo-Ann Stores, LLC | Louisiana | St. Tammany | March 31 | 1 | 2363 |
| Jo-Ann Stores, LLC | Maine | Auburn | April 15 | 1 | 875 |

| Jo-Ann Stores, LLC | Maine | Bangor | April 15 | 1 | 873 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Maine | Portland | April 15 | 1 | 429 |
| Jo-Ann Stores, LLC | Maine | Topsham | April 15 | 1 | 329 |
| Jo-Ann Stores, LLC | Maine | Waterville | April 15 | 1 | 410 |
| Jo-Ann Stores, LLC | Maryland | Various | April 15 | 18 | Various |
| Jo-Ann Stores, LLC | Massachusetts | N/A | February 28 | 1 | N/A |
| Jo-Ann Stores, LLC | Massachusetts | Barnstable | February 28 | 1 | 814 |
| Jo-Ann Stores, LLC | Massachusetts | Billerica | February 28 | 1 | 858 |
| Jo-Ann Stores, LLC | Massachusetts | Brockton | February 28 | 1 | 2288 |
| Jo-Ann Stores, LLC | Massachusetts | Burlington | February 28 | 1 | 777 |
| Jo-Ann Stores, LLC | Massachusetts | Dartmouth | February 28 | 1 | 177 |
| Jo-Ann Stores, LLC | Massachusetts | Hadley | February 28 | 1 | 1609 |
| Jo-Ann Stores, LLC | Massachusetts | Hanover | February 28 | 1 | 403 |
| Jo-Ann Stores, LLC | Massachusetts | Holyoke | February 28 | 1 | 677 |
| Jo-Ann Stores, LLC | Massachusetts | Leominster | February 28 | 1 | 1879 |
| Jo-Ann Stores, LLC | Massachusetts | Ludlow | February 28 | 1 | 826 |
| Jo-Ann Stores, LLC | Massachusetts | Methuen | February 28 | 1 | 1610 |

| Jo-Ann Stores, LLC | Massachusetts | Middleton | February 28 | 1 | 107 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Massachusetts | Milford | February 28 | 1 | 418 |
| Jo-Ann Stores, LLC | Massachusetts | Natick | February 28 | 1 | 408 |
| Jo-Ann Stores, LLC | Massachusetts | North Attleborough | February 28 | 1 | 2129 |
| Jo-Ann Stores, LLC | Massachusetts | Pittsfield | February 28 | 1 | 292 |
| Jo-Ann Stores, LLC | Massachusetts | Raynham | February 28 | 1 | 477 |
| Jo-Ann Stores, LLC | Massachusetts | Saugus | February 28 | 1 | 2161 |
| Jo-Ann Stores, LLC | Massachusetts | Seekonk | February 28 | 1 | 2565 |
| Jo-Ann Stores, LLC | Massachusetts | Shrewsbury | February 28 | 1 | 1611 |
| Jo-Ann Stores, LLC | Massachusetts | Walpole | February 28 | 1 | 2403 |
| Jo-Ann Stores, LLC | Massachusetts | Westford | February 28 | 1 | 472 |
| Jo-Ann Stores, LLC | Michigan | Allen Park | January 31 | 1 | 2104 |
| Jo-Ann Stores, LLC | Michigan | Alpena Township | January 31 | 1 | 348 |
| Jo-Ann Stores, LLC | Michigan | Alpine | January 31 | 1 | 2274 |
| Jo-Ann Stores, LLC | Michigan | Auburn Hills | January 31 | 1 | 1962 |
| Jo-Ann Stores, LLC | Michigan | Battle Creek | January 31 | 1 | 2377 |

| Jo-Ann Stores, LLC | Michigan | Bear Creek | January 31 | 1 | 1594 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Michigan | Benton Township | January 31 | 1 | 2555 |
| Jo-Ann Stores, LLC | Michigan | Big Rapids | January 31 | 1 | 2521 |
| Jo-Ann Stores, LLC | Michigan | Bloomfield | January 31 | 1 | 733 |
| Jo-Ann Stores, LLC | Michigan | Brighton City | January 31 | 1 | 2003 |
| Jo-Ann Stores, LLC | Michigan | Burton | January 31 | 1 | 1590 |
| Jo-Ann Stores, LLC | Michigan | Canton | January 31 | 1 | 539 |
| Jo-Ann Stores, LLC | Michigan | Chesterfield | January 31 | 1 | 2407 |
| Jo-Ann Stores, LLC | Michigan | Flint Township | January 31 | 1 | 2017 |
| Jo-Ann Stores, LLC | Michigan | Ft. Gratiot | January 31 | 1 | 351 |
| Jo-Ann Stores, LLC | Michigan | Grand Rapids City | January 31 | 1 | 2163 |
| Jo-Ann Stores, LLC | Michigan | Grandville | January 31 | 1 | 2378 |
| Jo-Ann Stores, LLC | Michigan | Gross Pointe Farms | January 31 | 1 | 306 |
| Jo-Ann Stores, LLC | Michigan | Hampton Township | January 31 | 1 | 492 |
| Jo-Ann Stores, LLC | Michigan | Holland Twp-Ottawa | January 31 | 1 | 305 |
| Jo-Ann Stores, LLC | Michigan | Jackson | January 31 | 1 | 2122 |

| Jo-Ann Stores, LLC | Michigan | Kochville | January 31 | 1 | 1901 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Michigan | Lansing | January 31 | 1 | 2022 |
| Jo-Ann Stores, LLC | Michigan | Lansing Ctr Township | January 31 | 1 | 2332 |
| Jo-Ann Stores, LLC | Michigan | Lapeer | January 31 | 1 | 753 |
| Jo-Ann Stores, LLC | Michigan | Livonia | January 31 | 1 | 2405 |
| Jo-Ann Stores, LLC | Michigan | Madison Chr Township | January 31 | 1 | 279 |
| Jo-Ann Stores, LLC | Michigan | Madison Heights | January 31 | 1 | 690 |
| Jo-Ann Stores, LLC | Michigan | Midland City | January 31 | 1 | 294 |
| Jo-Ann Stores, LLC | Michigan | Norton Shores | January 31 | 1 | 2116 |
| Jo-Ann Stores, LLC | Michigan | Novi | January 31 | 1 | 1933 |
| Jo-Ann Stores, LLC | Michigan | Owosso | January 31 | 1 | 426 |
| Jo-Ann Stores, LLC | Michigan | Pittsfield | January 31 | 1 | 176, 2004 |
| Jo-Ann Stores, LLC | Michigan | Portage | January 31 | 1 | 498 |
| Jo-Ann Stores, LLC | Michigan | Rochester Hills | January 31 | 1 | 2061 |
| Jo-Ann Stores, LLC | Michigan | Roseville | January 31 | 1 | 1940 |
| Jo-Ann Stores, LLC | Michigan | Sault St Marie | January 31 | 1 | 2336 |
| Jo-Ann Stores, LLC | Michigan | Shelby Twn-Macomb | January 31 | 1 | 1927 |

| Jo-Ann Stores, LLC | Michigan | Taylor | January 31 | 1 | 1948 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Michigan | Traverse | January 31 | 1 | 414 |
| Jo-Ann Stores, LLC | Michigan | Union-Isabella | January 31 | 1 | 1869 |
| Jo-Ann Stores, LLC | Michigan | White Lake | January 31 | 1 | 2277 |
| Jo-Ann Stores, LLC | Mississippi | Desoto | March 31 | 1 | 1874 |
| Jo-Ann Stores, LLC | Mississippi | Forrest | March 31 | 1 | 2491 |
| Jo-Ann Stores, LLC | Mississippi | Harrison | March 31 | 1 | 2495 |
| Jo-Ann Stores, LLC | Mississippi | Hinds | March 31 | 1 | 2268 |
| Jo-Ann Stores, LLC | Mississippi | Lauderdale | March 31 | 1 | 1871 |
| Jo-Ann Stores, LLC | Mississippi | Lee | March 31 | 1 | 2225 |
| Jo-Ann Stores, LLC | Missouri | Boone | February 28 | 1 | 2289 |
| Jo-Ann Stores, LLC | Missouri | Buchanan | February 28 | 1 | 1495 |
| Jo-Ann Stores, LLC | Missouri | Cass | February 28 | 1 | 2257 |
| Jo-Ann Stores, LLC | Missouri | Cole | February 28 | 1 | 1577 |
| Jo-Ann Stores, LLC | Missouri | Franklin | February 28 | 1 | 2361 |
| Jo-Ann Stores, LLC | Missouri | Greene | February 28 | 1 | 1649 |
| Jo-Ann Stores, LLC | Missouri | Jackson | February 28 | 1 | 1918 |

| Jo-Ann Stores, LLC | Missouri | Jasper | February 28 | 1 | 2273 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Missouri | Jefferson | February 28 | 1 | 2294 |
| Jo-Ann Stores, LLC | Missouri | Miller | February 28 | 1 | 2214 |
| Jo-Ann Stores, LLC | Missouri | Platte | February 28 | 1 | 2091 |
| Jo-Ann Stores, LLC | Missouri | St Charles | February 28 | 1 | 2178 |
| Jo-Ann Stores, LLC | Missouri | St Louis County | February 28 | 3 | 2153, 2219 & 2310 |
| Jo-Ann Stores, LLC | Montana | Butte-Silver Bow | February 28 | 1 | 856 |
| Jo-Ann Stores, LLC | Montana | Cascade | February 28 | 1 | 163 |
| Jo-Ann Stores, LLC | Montana | Flathead | February 28 | 1 | 1697 |
| Jo-Ann Stores, LLC | Montana | Gallatin | February 28 | 1 | 1695 |
| Jo-Ann Stores, LLC | Montana | Lewis & Clark | February 28 | 1 | 1696 |
| Jo-Ann Stores, LLC | Montana | Missoula | February 28 | 1 | 791 |
| Jo-Ann Stores, LLC | Montana | Yellowstone | February 28 | 1 | 2315 |
| Jo-Ann Stores, LLC | Nebraska | Douglas | April 30 | 1 | 2175 |
| Jo-Ann Stores, LLC | Nebraska | Hall | April 30 | 1 | 2244 |
| Jo-Ann Stores, LLC | Nebraska | Lancaster | April 30 | 1 | 2371 |
| Jo-Ann Stores, LLC | Nebraska | Sarpy | April 30 | 1 | 2456 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Nevada | Carson | July 31 | 1 | 1769 |
| Jo-Ann Stores, LLC | Nevada | Washoe | July 31 | 1 | 1774 |
| Jo-Ann Stores, LLC | Nevada | Clark | July 31 | 2 | 1903, 2015 |
| Jo-Ann Stores, LLC | Nevada | Elko | July 31 | 1 | 2204 |
| Jo-Ann Stores, LLC | New Mexico | Bernalillo | February 28 | 2 | 1524, 1669 |
| Jo-Ann Stores, LLC | New Mexico | Dona Ana | February 28 | 1 | 1309 |
| Jo-Ann Stores, LLC | New Mexico | San Juan | February 28 | 1 | 2576 |
| Jo-Ann Stores, LLC | New Mexico | Santa Fe | February 28 | 1 | 1668 |
| Jo-Ann Stores, LLC | North Carolina | Buncombe | January 31 | 1 | 2284 |
| Jo-Ann Stores, LLC | North Carolina | Burke | January 31 | 1 | 2318 |
| Jo-Ann Stores, LLC | North Carolina | Catawba | January 31 | 1 | 2480 |
| Jo-Ann Stores, LLC | North Carolina | Cumberland | January 31 | 1 | 1098 |
| Jo-Ann Stores, LLC | North Carolina | Durham | January 31 | 1 | 1078 |
| WeaveUp, Inc. | North Carolina | Durham | January 31 | 1 | WeaveUp |
| Jo-Ann Stores, LLC | North Carolina | Forsyth | January 31 | 1 | 2562 |
| Jo-Ann Stores, LLC | North Carolina | Guilford | January 31 | 1 | 1511 |
| Jo-Ann Stores, LLC | North Carolina | Henderson | January 31 | 1 | 2352 |

| Jo-Ann Stores, LLC | North Carolina | Iredell | January 31 | 1 | 2205 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | North Carolina | Mecklenburg | January 31 | 1 | 2248 |
| Jo-Ann Stores, LLC | North Carolina | Nash | January 31 | 1 | 2253 |
| Jo-Ann Stores, LLC | North Carolina | New Hanover | January 31 | 1 | 1471 |
| Jo-Ann Stores, LLC | North Carolina | Union-Isabella | January 31 | 1 | 2426 |
| Jo-Ann Stores, LLC | North Carolina | Wake | January 31 | 1 | 1074, 1478 |
| Jo-Ann Stores, LLC | North Carolina | Wayne | January 31 | 1 | 2252 |
| Jo-Ann Stores, LLC | Oklahoma | Cleveland | March 15 | 1 | 2548 |
| Jo-Ann Stores, LLC | Oklahoma | Tulsa | March 15 | 1 | 2557 |
| Jo-Ann Stores, LLC | Oklahoma | Pottawatomie | March 15 | 1 | 2358 |
| Jo-Ann Stores, LLC | Oklahoma | Comanche | March 15 | 1 | 2393 |
| Jo-Ann Stores, LLC | Oklahoma | Payne | March 15 | 1 | 2291 |
| Jo-Ann Stores, LLC | Oklahoma | Oklahoma | March 15 | 1 | 2267 |
| Jo-Ann Stores, LLC | Oregon | Benton | March 15 | 1 | 2216 |
| Jo-Ann Stores, LLC | Oregon | Clackamas | March 15 | 2 | 1742, 2554 |
| Jo-Ann Stores, LLC | Oregon | Clatsop | March 15 | 1 | 2232 |
| Jo-Ann Stores, LLC | Oregon | Coos | March 15 | 1 | 1731 |

| Jo-Ann Stores, LLC | Oregon | Deschutes | March 15 | 2 | 2168, 2397 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Oregon | Douglas | March 15 | 1 | 2461 |
| Jo-Ann Stores, LLC | Oregon | Jackson | March 15 | 1 | 1739 |
| Jo-Ann Stores, LLC | Oregon | Josephine | March 15 | 1 | 2311 |
| Jo-Ann Stores, LLC | Oregon | Klamath | March 15 | 1 | 2321 |
| Jo-Ann Stores, LLC | Oregon | Lane | March 15 | 2 | 2317, 800 |
| Jo-Ann Stores, LLC | Oregon | Lincoln | March 15 | 1 | 870 |
| Jo-Ann Stores, LLC | Oregon | Linn | March 15 | 1 | 792 |
| Jo-Ann Stores, LLC | Oregon | Malheur | March 15 | 1 | 1591 |
| Jo-Ann Stores, LLC | Oregon | Marion | March 15 | 1 | 2218 |
| Jo-Ann Stores, LLC | Oregon | Multnomah | March 15 | 2 | 1735, 2582 |
| Jo-Ann Stores, LLC | Oregon | Wasco | March 15 | 1 | 915 |
| Jo-Ann Stores, LLC | Oregon | Washington | March 15 | 3 | 2101, 2120, 2396 |
| Jo-Ann Stores, LLC | Oregon | Yamhill | March 15 | 1 | 633 |
| Jo-Ann Stores, LLC | Rhode Island | Warwick | January 31 | 1 | 2125 |
| Jo-Ann Stores, LLC | South Carolina | Consolidated | May 31 | 9 | 2566, 2492, 2351, 2328, 2201, 2314, 1126, 2172, 2207 |

| Jo-Ann Stores, LLC | Tennessee | Coffee | February 28 | 1 | 2402 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Tennessee | Davidson | February 28 | 1 | 2305 |
| Jo-Ann Stores, LLC | Tennessee | Hamilton | February 28 | 1 | 2171 |
| Jo-Ann Stores, LLC | Tennessee | Knox | February 28 | 2 | 2313, 2563 |
| Jo-Ann Stores, LLC | Tennessee | Madison | February 28 | 1 | 2194 |
| Jo-Ann Stores, LLC | Tennessee | Montgomery | February 28 | 1 | 2479 |
| Jo-Ann Stores, LLC | Tennessee | Rutherford | February 28 | 1 | 1893 |
| Jo-Ann Stores, LLC | Tennessee | Sevier | February 28 | 1 | 2170 |
| Jo-Ann Stores, LLC | Tennessee | Shelby | February 28 | 1 | 2536 |
| Jo-Ann Stores, LLC | Tennessee | Sullivan | February 28 | 1 | 2500 |
| Jo-Ann Stores, LLC | Tennessee | Washington | February 28 | 1 | 2494 |
| Jo-Ann Stores, LLC | Tennessee | Williamson | February 28 | 1 | 1905 |
| Jo-Ann Stores, LLC | Tennessee | Wilson | February 28 | 1 | 2135 |
| Jo-Ann Stores, LLC | Texas | ALL | February 16 | 43 | Various |
| Jo-Ann Stores, LLC | Texas | Bexar | March 31 | 3 | 2157, 2251, 2485 |
| Jo-Ann Stores, LLC | Texas | Brazos | March 31 | 1 | 1268 |
| Jo-Ann Stores, LLC | Texas | Collin | March 31 | 3 | 1291, 2027, 2296 |

| Jo-Ann Stores, LLC | Texas | Comal | March 31 | 1 | 2387 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Texas | Dallas | March 31 | 3 | 1227, 1465, 2036 |
| Jo-Ann Stores, LLC | Texas | Denton | March 31 | 2 | 2034, 2212 |
| Jo-Ann Stores, LLC | Texas | Ector | March 31 | 1 | 2325 |
| Jo-Ann Stores, LLC | Texas | El Paso | March 31 | 1 | 2446 |
| Jo-Ann Stores, LLC | Texas | Ellis | March 31 | 1 | 2501 |
| Jo-Ann Stores, LLC | Texas | Fort Bend | March 31 | 1 | 2206 |
| Jo-Ann Stores, LLC | Texas | Grayson | March 31 | 1 | 2308 |
| Jo-Ann Stores, LLC | Texas | Harris | March 31 | 7 | 1283, 1402, 1418, 1433, 2152, 2226, 2415 |
| Jo-Ann Stores, LLC | Texas | Hidalgo | March 31 | 1 | 2464 |
| Jo-Ann Stores, LLC | Texas | Jefferson | March 31 | 1 | 1102 |
| Jo-Ann Stores, LLC | Texas | Lubbock | March 31 | 1 | 1488 |
| Jo-Ann Stores, LLC | Texas | Mclennan | March 31 | 1 | 2445 |
| Jo-Ann Stores, LLC | Texas | Montgomery | March 31 | 1 | 2292 |
| Jo-Ann Stores, LLC | Texas | Nueces | March 31 | 1 | 1032 |
| Jo-Ann Stores, LLC | Texas | Randall | March 31 | 1 | 1001 |

| Jo-Ann Stores, LLC | Texas | Rockwall | March 31 | 1 | 2197 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Texas | Smith | March 31 | 1 | 2372 |
| Jo-Ann Stores, LLC | Texas | Tarrant | March 31 | 5 | 2035, 2083, 2106, 2134, 2265 |
| Jo-Ann Stores, LLC | Texas | Taylor | March 31 | 1 | 2482 |
| Jo-Ann Stores, LLC | Texas | Travis | March 31 | 2 | 2140, 2346 |
| Jo-Ann Stores, LLC | Texas | Williamson | March 31 | 1 | 2155 |
| Jo-Ann Stores, LLC | Utah | Salt Lake | March 20 | 3 | 2074, 2121, 2528 |
| Jo-Ann Stores, LLC | Utah | Cache | May 15 | 1 | 1752 |
| Jo-Ann Stores, LLC | Utah | Davis | May 15 | 2 | 2295, 2334 |
| Jo-Ann Stores, LLC | Utah | Iron | May 15 | 1 | 2180 |
| Jo-Ann Stores, LLC | Utah | Tooele | May 15 | 1 | 2213 |
| Jo-Ann Stores, LLC | Utah | Uintah | May 15 | 1 | 2365 |
| Jo-Ann Stores, LLC | Utah | Utah | May 15 | 3 | 1756, 2331, 2379 |
| Jo-Ann Stores, LLC | Utah | Washington | May 15 | 1 | 2329 |
| Jo-Ann Stores, LLC | Utah | Weber | May 15 | 1 | 2107 |
| Jo-Ann Stores, LLC | Vermont | Exempt | April 20 | 0 | 526 |

| Jo-Ann Stores, LLC | Vermont | Berlin | April 20 | 1 | 2340 |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Vermont | Rutland Town | April 20 | 1 | 289 |
| Jo-Ann Stores, LLC | Virginia | Colonial Heights | January 31 | 1 | 1486 |
| Jo-Ann Stores, LLC | Virginia | Spotsylvania | January 31 | 1 | 2159 |
| Jo-Ann Stores, LLC | Virginia | Roanoke City | February 15 | 1 | 2185 |
| Jo-Ann Stores, LLC | Virginia | Lynchburg | February 15 | 1 | 2309 |
| Jo-Ann Stores, LLC | Virginia | Chesapeake | February 28 | 1 | 2507 |
| Jo-Ann Stores, LLC | Virginia | Chesterfield | February 28 | 1 | 2141 |
| Jo-Ann Stores, LLC | Virginia | Fauquier | February 28 | 1 | 820 |
| Jo-Ann Stores, LLC | Virginia | Frederick | February 28 | 1 | 511 |
| Jo-Ann Stores, LLC | Virginia | Hampton | February 28 | 1 | 1270 |
| Jo-Ann Stores, LLC | Virginia | Henrico | February 28 | 1 | 2222 |
| Jo-Ann Stores, LLC | Virginia | Loudoun | February 28 | 1 | 2550 |
| Jo-Ann Stores, LLC | Virginia | Newport News | February 28 | 1 | 1094 |
| Jo-Ann Stores, LLC | Virginia | Virginia Beach | February 28 | 1 | 2520 |
| Jo-Ann Stores, LLC | Virginia | Prince William | April 15 | 1 | 2158 |
| Jo-Ann Stores, LLC | Virginia | Ablemarle | April 30 | 1 | 2255 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Virginia | Culpepper | April 30 | 1 | 2506 |
| Jo-Ann Stores, LLC | Virginia | Fairfax County | April 30 | 2 | 102, 1875 |
| Jo-Ann Stores, LLC | Virginia | James City | April 30 | 1 | 2209 |
| Jo-Ann Stores, LLC | Virginia | Martinsville | April 30 | 1 | 2454 |
| Jo-Ann Stores, LLC | Virginia | Montgomery | April 30 | 1 | 2505 |
| Jo-Ann Stores, LLC | Washington | Asotin | April 30 | 1 | 810 |
| Jo-Ann Stores, LLC | Washington | Benton | April 30 | 2 | 1688, 2577 |
| Jo-Ann Stores, LLC | Washington | Clallam | April 30 | 1 | 802 |
| Jo-Ann Stores, LLC | Washington | Clark | April 30 | 2 | 2102, 2394 |
| Jo-Ann Stores, LLC | Washington | Cowlitz | April 30 | 1 | 1867 |
| Jo-Ann Stores, LLC | Washington | Douglas | April 30 | 1 | 1700 |
| Jo-Ann Stores, LLC | Washington | Grant | April 30 | 1 | 2443 |
| Jo-Ann Stores, LLC | Washington | King | April 30 | 7 | 1711, 1944, 1950, 2067, 354, 793, 805 |
| Jo-Ann Stores, LLC | Washington | Kitsap | April 30 | 2 | 2007, 794 |
| Jo-Ann Stores, LLC | Washington | Pierce | April 30 | 2 | 2044, 2093 |
| Jo-Ann Stores, LLC | Washington | Skagit | April 30 | 1 | 2199 |

| | | | | | |
|---|---|---|---|---|---|
| Jo-Ann Stores, LLC | Washington | Snohomish | April 29 | 3 | 789, 2081, 2173 |
| Jo-Ann Stores, LLC | Washington | Spokane | April 30 | 3 | 1701, 1872, 784 |
| Jo-Ann Stores, LLC | Washington | Thurston | April 30 | 1 | 2038 |
| Jo-Ann Stores, LLC | Washington | Walla Walla | April 30 | 1 | 1687 |
| Jo-Ann Stores, LLC | Washington | Whatcom | April 30 | 1 | 1725 |
| Jo-Ann Stores, LLC | Washington | Yakima | April 30 | 1 | 783 |
| Jo-Ann Stores, LLC | West Virginia | Harrison | August 30 | 1 | 463 |
| Jo-Ann Stores, LLC | West Virginia | Kanawha | August 30 | 1 | 569 |
| Jo-Ann Stores, LLC | West Virginia | Raleigh | August 30 | 1 | 2450 |
| Jo-Ann Stores, LLC | West Virginia | Wood | August 30 | 1 | 363 |
| Jo-Ann Stores, LLC | Wyoming | Campbell | February 28 | 1 | 2320 |
| Jo-Ann Stores, LLC | Wyoming | Laramie | February 28 | 1 | 2223 |
| Jo-Ann Stores, LLC | Wyoming | Sweetwater | February 28 | 1 | 2366 |

**Exhibit D**

**Initial List of Information Required**

<u>Federal, State, and Local Income Tax:</u>

1.  Copies of federal and state tax returns for the most recent filing period.

2. Tax calculation workpapers for the most recent filing period.

3. Final trial balances by legal entity for tax year 2023.

4. Prior year state and local apportionment workpapers.

5. Prior year state modification supporting workpapers.

6. Prior year state NOL and/or 163(j) carryforward workpapers by entity by state.

7. State and local income/franchise tax payments by entity by state for tax year 2023.

8. Additional information requests will be made upon review of documents received.


<u>Sales and Use Tax:</u>

1. Copies of sales and use tax returns for the most recent filing period.

2. Electronic copy of Client's sales and use tax calendar for returns currently prepared by Client.

3. Electronic copies of source information used for preparation of returns for a recent period.


<u>Property Tax:</u>


1) Property tax return forms and any tax jurisdiction notices received to date for the upcoming filings

2) List of locations noting whether the property is owned, leased and type of property, office, retail, warehouse, etc. and corresponding complete addresses (Street, City, State, Zip Code and County)

   a) Date Client began business at each location

3) Fixed asset report and/or other information showing detailed asset descriptions and dates placed in service as of the lien date (e.g., January 1, 2019). Fixed asset report should tie to the trial balance and/or location and/or legal entity that rolls up to the Consolidated Balance Sheet – please provide in an excel format

4) Fixed asset roll-forward schedule, noting beginning of year balance, end of year balance, asset additions and disposals and assets transferred in and out of the location

5) Construction work-in-process ("CWIP") report showing detailed description of costs

   a) If Client uses CWIP as a holding account, please identify which costs are not located at the facility

6) Balance of supplies and inventory and supporting detail

   a) Inventory held for sale

b) Inventory held as "spares"

c) Noting date placed in service, original cost and current value which reconciles to trial balance and location or the address where the inventory is held

7) Copy of any abatements in place for any respective locations

8) Reporting of off-site assets and the address for which they are located

a) Tooling

b) Vehicles

c) Inventory

d) Assets leased to others

9) List of property on site but belonging to others.  Please note the type, lessor's name and mailing address and whether the tax obligation belongs with the lessor or the lessee.  Please provide the Year of Acquisition, Year of Manufacturer, Description and Lease or Identification Number and Cost to Purchase New and/or Annual Rent, where appropriate noting the type of property as follows:

a) Leased equipment

b) Lease purchase option equipment

c) Capitalized lease equipment

d) Vending equipment

e) Other businesses

f) Government owned property

10) Total number of tax bills processed each calendar year

11) Copy of the Property Tax Calendar

**Exhibit E**

**Scope of Services**

The following chart outlines the ongoing tax activities anticipated in the corporate compliance process and the allocation of respective activities to be performed by Deloitte and Client.

| Tax department processes and activities | Project scope | |
|---|---|---|
| | **Deloitte Tax** | **Client** |
| **Federal income tax reporting** | | |
| Supply written summary of domestic entity restructuring and/or acquisition transactions during the year along with associated tax return reporting requirements | | ✓ |
| Calculate extension payments | | ✓ |
| Calculate estimated tax payments | | ✓ |
| Prepare estimate and extension forms as needed | ✓ | |
| Create or Rollover data collection package | ✓ | |
| Provide trial balances in electronic format which reconcile to the worldwide financial statements and are sufficient to support the Form M-3 including reconciled topsides | | ✓ |
| Download trial balances into tax software | ✓ | |
| Reconcile to financial statements | | ✓ |
| Prepare book return | ✓ | |
| Prepare elimination company adjustments | | ✓ |
| Sign off on book return | | ✓ |
| Complete domestic entity data collection package | | ✓ |
| Review domestic entity data collection package | ✓ | |

| Tax department processes and activities | Project scope | |
|---|---|---|
| | Deloitte Tax | Client |
| Provide additional requested information as necessary | | ✓ |
| Import domestic entity book to tax differences into tax software from data collection workpapers | ✓ | |
| Prepare tax depreciation and tax gain/loss calculations to include in the return for federal, E&P, and State (Updated Quarterly), including cumulative book-tax basis differences for deferred tax reporting purposes | ✓ | |
| Review and analyze depreciation information | | ✓ |
| Prepare worldwide income reconciliation for Form M-3 | | ✓ |
| Prepare separate company domestic entity tax returns | ✓ | |
| Prepare domestic elections, statements, and disclosures as identified by JOANN | ✓ | |
| Prepare federal tax credit calculations | | ✓ |
| Prepare Schedule M adjustments with exception of depreciation | | ✓ |
| Review Schedule M adjustments | ✓ | |
| Identify and provide information regarding "reportable transactions" and tax shelter documentation as required | | ✓ |
| Provide information regarding "uncertain tax positions" as required to complete UTP form | | ✓ |
| Complete Schedule UTP Form | ✓ | |
| Prepare consolidated Form 1120 federal income tax return and sign as preparer | ✓ | |
| Prepare returns and attachments for electronic filings | ✓ | |
| Process tax returns | ✓ | |
| Provide approval to e-file | | ✓ |
| E-file federal income tax returns, as required | ✓ | |

| | Project scope | |
|---|---|---|
| **Tax department processes and activities** | **Deloitte Tax** | **Client** |
| **State and local income tax reporting** | | |
| Calculate state extension payments | | ✓ |
| Prepare state extension vouchers | ✓ | |
| Calculate state income and franchise estimated tax payments and prepare vouchers | ✓ | |
| Provide property, payroll, and sales apportionment information through data collection package | | ✓ |
| Compile and analyze state apportionment information | ✓ | |
| Reconcile state apportionment to book return amounts | ✓ | |
| Import state apportionment information into tax software from data collection workpapers | ✓ | |
| Assist in identifying and determining tax return position issues and communicate issues to JOANN | ✓ | |
| Agree state apportionment detail to federal income tax return | ✓ | |
| Calculate state modifications | ✓ | |
| Calculate state tax credits | | ✓ |
| Prepare elections, statements, and disclosures as required | ✓ | |
| Identify state reportable transactions and provide information to Deloitte | | ✓ |
| Prepare state income and franchise tax returns and sign as preparer | ✓ | |
| Prepare city income tax returns and sign as preparer | ✓ | |
| Process tax returns | ✓ | |
| Provide approval to e-file | | ✓ |
| E-file state income tax returns, as required | ✓ | |

| Tax department processes and activities | Project scope | |
| --- | --- | --- |
| | Deloitte Tax | Client |
| **Direct compliance - general** | | |
| Maintain tax calendar | ✓ | ✓ |
| Prepare check and EFT requests for all tax payments | | ✓ |
| Mail estimated payment and extension vouchers | | ✓ |
| Mail state and city tax returns | | ✓ |
| **Sales and use tax reporting** | | |
| Prepare/ maintain a monthly calendar for registered filings | ✓ | |
| Provide defined deadlines for compliance activities, encompassing data submission and draft workpaper provision; identify suggested changes to improve processes | ✓ | |
| Extract and provide necessary information from accounting/ tax systems to prepare the sales and use tax returns by the 4th business day of the month | ✓ | |
| Provide additional information needed for business license renewals for example payroll and property data | | ✓ |
| Validate monthly source data, including agreed upon quality checks | ✓ | |
| Identify changes to be made to the returns during steady state and track changes | ✓ | |
| Prepare returns and reconcile to source data | ✓ | |
| Generate a summary schedule of gross tax, discounts, and net tax due to support payment amounts for each return | ✓ | |
| Prepare compliance data analytics dashboards showing tax data/payments, trending analyses, carryforwards, and other agreed-upon KPIs | ✓ | |
| Prepare/Store electronic copies of all returns prepared on a monthly basis in a secure electronic portal, including workpapers organized by legal entity | ✓ | |

| Tax department processes and activities | Project scope | |
| --- | --- | --- |
| | Deloitte Tax | Client |
| Approve draft returns prepared | | ✓ |
| Upon return approval, electronically transmit returns and related tax payment information to JOANN's third-party provider | ✓ | |
| Mail all returns that are not electronically filed, and associated payments due to each state/ local taxing authority | | ✓ |
| Fund Anybill account | | ✓ |
| Provide observations and recommendations regarding potential tax compliance matters that are identified during the course of Deloitte services | ✓ | |
| Periodically meet to debrief on monthly and longer-term relevant compliance matters | ✓ | ✓ |
| Periodically come to client office to pick up indirect tax mail, including notices | ✓ | |
| Scan and upload notices to Deloitte portal, if necessary between physical mail pickup times | ✓ | |
| Receive, analyze, and respond at JOANN's direction to state/ local communications and notices associated with the returns prepared under the engagement | ✓ | |
| Address tax issues identified (e.g., system issues, data issues, etc.) | | ✓ |
| Leverage technology to enhance/ streamline the compliance process and address data limitations | ✓ | |
| Participate in active oversight role | | ✓ |
| **Business personal property tax reporting** | | |
| Periodically come to client office to pick up indirect tax mail, including notices | ✓ | |
| Agree on procedures to gather data related to fixed assets, inventory, and other data required to prepare the personal property renditions | ✓ | ✓ |

| Tax department processes and activities | Project scope | |
|---|---|---|
| | Deloitte Tax | Client |
| Provide finalized electronic copy of filing calendar for in-scope filing year | ✓ | |
| Review property tax calendar and approve locations where personal property renditions will be prepared and filed | | ✓ |
| Prepare list of locations where JOANN has assets/locations, but is not currently filing, based on fixed asset listing | ✓ | |
| Review list of locations where assets are located, but no personal property rendition has been historically filed, and provide directions to Deloitte on how to proceed | | ✓ |
| Prepare property tax renditions and workpapers using filing software and post to Intela | ✓ | |
| Review, approve, and provide specific written authorization to finalize renditions | | ✓ |
| Finalize property tax renditions, including JOANN's electronic signature, upon receipt of JOANN's authorization | ✓ | |
| E-file personal property renditions as required, upon receipt of JOANN's authorization | ✓ | |
| Prepare hard copy of personal property renditions to be submitted to taxing jurisdictions via US Mail, as required | ✓ | |
| Compare notice of assessed value to rendition filed. For locations where value exceeds mutually agreed upon threshold bring to JOANN's attention | ✓ | |
| Compare tax bills received to assessed value entered into property tax software system or revised value achieved through appeal. Process in the software system and prepare export file for JOANN's review and approval. | ✓ | |
| Review payment file provided and authorize Deloitte to upload payment information and pdfs to third-party payment processor, if needed | | ✓ |
| Upload payment information and pdfs to third-party payment processor, if requested | ✓ | |
| Fund amount for tax bills loaded into third-party payment system | | ✓ |

| Tax department processes and activities | Project scope | |
|---|---|---|
| | Deloitte Tax | Client |
| Provide requested data to taxing jurisdictions for locations selected for audit | ✓ | |
| For additional data requested by taxing jurisdiction for personal property audit that Deloitte does not have, provide data to Deloitte and authorize to send to taxing jurisdiction | | ✓ |
| Prepare property tax estimates as requested by JOANN and provide to JOANN | ✓ | |
| Review property tax estimates provided by Deloitte and adjust property tax accruals as needed | | ✓ |
| Identify market trends and/or potential legislative updates and mutually discuss the potential impact on the property tax workstream | ✓ | ✓ |

## **Annex 3**

**Tax Restructuring SOW**

**EXHIBIT A**

**STATEMENT OF WORK – TURNAROUND & RESTRUCTURING TAX SERVICES**

SOW Number: <u>SOW-REST-01</u>                    Authorized Start Date: <u>1/9/2025</u>

This statement of work ("SOW") incorporates the terms and conditions of the Master Services Agreement between Deloitte & Touche LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC, dated August 12, 2024 (the "Agreement"). For the purposes of the SOW, Consultant means Deloitte Tax LLP.

## CONSULTANT SERVICES DESCRIPTION

**The Services that we will perform for the Client are as follows:**

Deloitte Tax will provide tax advisory services ("Services") with respect to US federal and state income and operating tax considerations of Client's two bankruptcy restructuring transactions (collectively, the "JOANN Bankruptcy Restructurings"). The JOANN Bankruptcy Restructurings include Client's bankruptcy filings on March 18, 2024 (emerging on April 30, 2024) ("First Bankruptcy") and January 15, 2025 ("Second Bankruptcy"). The following represents illustrative Services that Deloitte Tax may be asked to perform in connection with the JOANN Bankruptcy Restructurings (if determined to be relevant and necessary):

- Participate in meetings or calls necessary to assist Client with its evaluation of US federal, state income and operating tax implications of the JOANN Bankruptcy Restructurings.

- Advise Client regarding the Second Bankruptcy process, including analyzing potential debt modification alternatives and the potential income tax consequences.

- Advise Client as to the amount of cancellation of indebtedness income, if any, that may be realized in connection with the JOANN Debt Restructurings, including whether such cancellation of indebtedness income is included in gross income (i.e., taxable) versus excluded for federal and state income tax purposes (e.g., availability of the IRC 108 bankruptcy exception).

- Advise Client on the tax attributes available to mitigate /absorb cancellation of indebtedness income (whether taxable or excluded from gross income under the insolvency exception).

- Advise Client on post-JOANN Debt Restructuring tax attributes (e.g., tax basis in assets and net operating loss carryovers) available and the reduction of such attributes (to the extent applicable).

- Advise Client on US federal and state income tax consequences resulting from the sale of all or substantially all of the Client's assets in connection with the Second Bankruptcy.

- Advise Client on the state income tax treatment and planning for restructuring provisions in various jurisdictions including cancellation of indebtedness calculations, adjustments to tax attributes and prior limitations on tax attribute utilization.

- Analyze the historical net operating losses of the Company through historical tax filings to understand where the Company's historical net operating losses reside and whether any limitations on the utilization of such net operating losses exists. Note that this does not include a formal section 382 study.

- Analyze the tax basis balance sheet of the Company on an entity-by-entity basis.

- Understand the historical outside stock basis in each of the Company's legal entities for the purposes of determining the approximate amount of stock basis that should be reported on tax basis balance sheets of the Company (used in the attribute reduction process).
- Advise Client on income tax return reporting of restructuring and related matters.
- As requested by Client and as may be agreed to by Deloitte Tax, assist in documenting as appropriate, the tax analysis, development of Client Party's opinions, recommendation, observations, and correspondence for any proposed debt restructuring or combination alternative tax issue or other tax matter described above (does not include preparation of information for tax provision or financial reporting purposes).
- As requested by Client and as may be agreed to by Deloitte Tax, advise Client regarding other state, federal, or international tax (to the extent applicable) questions that may arise in the course of this engagement.
- Prepare and deliver a summary of Deloitte Tax findings, including the relevant and applicable analyses and workstreams outlined in the Services (the "Deliverable").

## ESTIMATED TIMING OF SERVICES AND DELIVERABLES

Deloitte Tax is prepared to commence these Services upon execution of this SOW at a time mutually agreed upon between Deloitte Tax and Client. All Deliverables and the timing thereof will be mutually agreed upon between Deloitte Tax and Client.

## FEES AND EXPENSES

Professional fees (excluding expenses) for this SOW will be based on the actual time incurred by each individual on the engagement and the respective hourly rate for that level specified below based on the nature of the scope and Services to be performed under this SOW.

| Resource Level | Hourly Rate |
| --- | --- |
| Partner / Managing Director | $990 |
| Senior Manager | $870 |
| Manager | $740 |
| Senior | $640 |
| Consultant | $540 |

Deloitte Tax will also bill reasonable out-of-pocket expenses and an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable other than in the event of a breach. Note that the hourly rates of our Washington National Tax and other subject matter specialists may exceed the hourly rates of our local office professionals presented above.

In connection with this SOW and prior to the commencement of the Services, Client will pay a retainer in

the amount of $50,000 upon which Deloitte Tax will draw to satisfy amounts due under this Statement of Work as work under the Services is completed. Deloitte Tax will provide Client with a periodic statement, either weekly, biweekly or monthly depending on the amount of fees and expenses incurred relative to the retainer.  Once the fees incurred by Deloitte Tax exceed the retained, incremental fees for the Services will be billed in 30-day increments (e.g., 30-Day Progress Billing, 60-Day Progress Billing, etc.).

Should Deloitte Tax encounter unanticipated issues that may cause an unexpected change in the Services contemplated, Deloitte Tax will promptly contact Client to discuss a mutually agreed-upon adjusted scope.

## CLIENT RESPONSIBILITIES AND ASSUMPTIONS

The following is a list of some of the assumptions and expectations that, together with the information provided to Deloitte Tax as of the date of this SOW, the nature and scope of the Services, the expected resource requirements and other commitments from Client, and the anticipated duration of the Services, form the "Assumptions" upon which Deloitte Tax has relied upon in agreeing to perform the Services. Any deviation from the Assumptions may cause changes to the estimated timing, fees, expenses, deliverables, level of effort required, or may otherwise impact Deloitte Tax's performance of the Services:

- Deloitte Tax will not perform any management functions, make management decision including prioritization decisions or perform in a capacity equivalent to that of an employee of the Client. All Services provided by Deloitte Tax, as listed above, will be assigned by either Jeffrey Dwyer, Interim – Chief Financial Officer, or Jeremy Zelwin, VP, Controller.
- Deloitte Tax may provide observations, advice, recommendations. Management is responsible for deciding which, if any, recommendations to implement.
- Deloitte Tax will have access to required Client personnel as reasonably appropriate, including those involved in the accounting of Client transactions.
- All services are for Client's internal use only unless expressly indicated.
- Client shall be solely responsible for, among other things: (A) making all management decisions and performing all management functions; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for the results of the Services and (E) establishing and maintain internal controls, including without limitation, monitoring ongoing activities.

## ENGAGEMENT STAFFING

Derek Krozek, Managing Director, will participate as Engagement Leader for this engagement, maintaining overall responsibility for these Services on behalf of D&T. Laura Paszt, Partner, will serve as the Lead Engagement Partner for this engagement.

Stephen Fielding, Senior Manager, and Joe Kirpas, Manager, will coordinate daily management of D&T professionals for the Services for this engagement.

Additional assistance may also be provided by other professionals who will be identified during the course of this engagement.

In light of Client's Second Bankruptcy, Deloitte Tax expects to apply for compensation for professional Services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330.  In such event, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below).  However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this SOW, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court.  In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this SOW, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

## ACKNOWLEDGMENTS AND AGREEMENTS

In addition to those acknowledgments and agreements in the engagement letter, the Client acknowledges and agrees to the following:

- Substantial and meaningful involvement of senior management and key executives of the Client is critical to the success of this engagement. The Client is responsible for ensuring that the identified Client personnel (1) actively participate in both the planning and execution of this engagement and (2) will be available to resolve issues and make decisions in a timeframe that supports achievement of the engagement timelines and work plans.

- Any deliverables provided to the Client hereunder by D&T may be disclosed by the Client to the Board of Directors of the Client only for their informational purposes and solely in their capacity as a member of such Board

- Any deliverables provided to the Client hereunder by D&T may be disclosed by the Client to the Client's independent accountants to the extent required solely in connection with their audit of the Client's financial statements.

| Deloitte Tax LLP | Jo-Ann Stores LLC |
|---|---|
| By: | By: |
| Printed Name: Derek Krozek | Printed Name: Jeremy Zelwin |
| Title: Managing Director | Title: VP, Controller |
| Date: 1/28/2025 | Date: 1/28/2025 \| 3:43:34 PM EST |

**<u>Annex 4</u>**

**Master Services Agreement**

# MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** (this "Agreement"), dated August 12, 2024 (the "Effective Date"), is between Deloitte LLP, a Delaware limited liability partnership, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC, an Ohio Limited Liability Company ("Client").

**WHEREAS,** Client desires to engage one or more subsidiaries of Deloitte LLP (such as Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, and Deloitte Transactions and Business Analytics LLP) to provide certain professional services and one or more of such subsidiaries are willing to provide certain professional services to assist Client; and

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual promises contained herein, the parties hereto agree as follows:

1. **Services.**

   a) Client and the Deloitte LLP subsidiary that has the responsibility for the requested services ("Consultant") may agree to enter into one or more written statements of work each of which will reference this Agreement (each, an "SOW") and describe the services to be performed thereunder (the "Services"). Each SOW is subject to the terms of this Agreement (regardless of whether such Agreement is expressly incorporated) and constitutes a separate agreement between the parties thereto. A form statement of work is attached hereto as Exhibit A.

   b) Deloitte LLP is not a provider of professional services. No audit, review, compilation or attest services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants or any successor standard setting organization will be performed under this Agreement.

2. **Compensation.**

   a) Client shall compensate Consultant for all Services performed under the applicable SOW. Except as otherwise provided in an SOW, Client shall reimburse Consultant for all reasonable expenses incurred in performing the Services (including, all reasonable travel, meal, lodging, and mileage expenses) in accordance with Consultant's Travel and Expense Policy attached hereto as Exhibit B. Expenses must be pre-approved by Client if such expense is expected to exceed over $500. Notwithstanding the foregoing, any expenses that fall within either a general category of permitted expenses as described in an SOW or a total expense estimate or cap in an SOW are deemed to be pre-approved.

   b) [RESERVED]

   c) Client shall be responsible for any taxes imposed on the Services or on the engagement, other than taxes imposed by employment withholding for Consultant's personnel or on Consultant's income or property.

   d) Except as otherwise provided in an SOW, Consultant shall invoice Client on a monthly basis for fees accrued and expenses incurred by Consultant in performing the Services under such SOW. Client shall pay each invoice within sixty (60) days of its receipt thereof. If undisputed portions of such payment is not received within such period Consultant may suspend or terminate the Services upon five (5) days prior written notice to Client. Client shall notify Consultant in writing of any disputed amounts within thirty (30) days of receipt of the applicable invoice, reasonably describing the basis for such dispute (a "Dispute Notice"). The parties shall in good faith endeavor to resolve such dispute within thirty (30) days of Consultant's receipt of such notice (the "Escalation Period"), including by means of escalation by each party to Consultant's engagement leader and Client's business sponsor for the applicable SOW, who shall meet (in person or by telephone) to endeavor to resolve such dispute within the Escalation Period. If payment of

amounts disputed pursuant to a timely Dispute Notice is not received within five (5) days after the end of the Escalation Period, Consultant may suspend or terminate the Services upon five (5) days prior written notice.

**3. Term.**

a) This Agreement commences on the Effective Date and remains in effect until it is terminated pursuant to the terms hereof.

b) Either party hereto may terminate this Agreement with or without cause by giving not less than sixty (60) days prior written notice to the other party. Either party to an SOW may terminate such SOW with or without cause by giving not less than thirty (30) days prior written notice to the other party. In the event of any termination for cause, such cause must be detailed in the termination notice and the breaching party shall have the right to cure the breach within the notice period. Consultant may terminate any SOW, upon written notice to Client, if Consultant, in good faith, determines that the performance of any part of the Services would be in conflict with law, or independence or professional rules.

c) In the event this Agreement is terminated, its terms shall continue to apply to all SOWs under which Services have not been completed at the effective date of such termination. Termination of an SOW has no effect on any other SOW.

**4. Ownership.**

a) For purposes of this Agreement (i) "IP" means works of authorship, materials, information and other intellectual property; (ii) "Consultant IP" means all IP created prior to or independently of the performance of the Services, or created by Consultant or its subcontractors as a tool for their use in performing the Services, plus any modifications or enhancements thereto and derivative works based thereon; and (iii) "Deliverables" means all IP that Consultant or its subcontractors create for delivery to Client as a result of the Services.

b) Upon full payment to Consultant under the applicable SOW, and subject to the terms herein, Consultant hereby (i) assigns to Client all rights in and to the Deliverables, other than any Consultant IP included therein; and (ii) grants to Client the right to use, for Client's internal business purposes, any Consultant IP included in the Deliverables in connection with its use of the Deliverables. Except for such license grant, Consultant or its licensors retain all rights in and to all Consultant IP.

c) To the extent any Consultant IP provided to Client in connection with the Services constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Consultant IP is licensed to Client by Consultant as agent for its product company subsidiary on the terms contained herein. The rights granted in this Section do not apply to any IP that is licensed to Client under a separate agreement.

**5. Warranties.** This is a services agreement. Consultant warrants that: (a) it shall perform the Services in good faith and in a professional, workmanlike manner consistent with generally accepted industry standards (if any) for the performance of the Services; (b) Services will conform in all material respects to the description of such Services set forth in the applicable SOW; (c) each Deliverable will, on the date of acceptance of such Deliverable by Client, conform in all material respects to the applicable specifications for such Deliverable set forth in the applicable SOW or as otherwise agreed by Client and Consultant in writing; and (d) Consultant will comply with all federal, state and local laws and regulations applicable to it in its performance of its obligations under this Agreement or any SOW. **CONSULTANT DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED,**

**INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages.**   Each party to an SOW, its affiliates and subcontractors, and their respective personnel shall not be liable to the other party for any claims, liabilities, or expenses relating to or in connection with this Agreement or such SOW ("Claims") for an aggregate amount in excess of:

   a. with respect to an SOW under which the total expected fees as specified in such SOW are less than $500,000, three times (3x) the fees paid or payable by Client to Consultant under such SOW;

   b. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $500,000 but less than $2,000,000, two times (2x) the fees paid or payable by Client to Consultant under such SOW; or

   c. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $2,000,000, the fees paid or payable by Client to Consultant under such SOW, up to an aggregate amount of $5,000,000;

in each case, except (i) to the extent resulting from their recklessness, bad faith or intentional misconduct, (ii) to the extent resulting from such party's breach of law applicable to such party in its performance of its obligations under the applicable SOW (other than laws relating to the standards for the performance of professional services or data privacy or data security) or (iii) for payment for fees and expenses due under such SOW.  In no event shall a party to an SOW, its affiliates or subcontractors, or their respective personnel be liable to the other party for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense, relating to or in connection with this Agreement or such SOW.  The terms of this Section shall not apply (x) to any Claim for which one party has an express indemnification obligation under this Agreement or such SOW or (y) to the extent resulting from their disclosures of the other party's Confidential Information (as defined below) in breach of Section 8, in which event the breaching party, its affiliates and subcontractors, and their respective personnel shall not be liable to the other party for any Claims resulting from such disclosures for an aggregate amount in excess of:

   A. with respect to an SOW under which the total expected fees as specified in such SOW are less than $500,000, the greater of five times (5x) the fees paid or payable by Client to Consultant under such SOW or $1,000,000;

   B. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $500,000 but less than $2,000,000, three and a half times (3.5x) the fees paid or payable by Client to Consultant under such SOW; or

   C. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $2,000,000, two times (2x) the fees paid or payable by Client to Consultant under such SOW, up to an aggregate amount of $10,000,000.

In circumstances where any limitations or exculpations set forth herein are unavailable, the aggregate liability of a party to an SOW, its affiliates and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim. For purposes of this Agreement, "payable" means fees incurred but not yet paid by Client to Consultant under the applicable SOW.

**7. Relationship and Responsibilities.**

a) Each party to an SOW is an independent contractor and neither is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

b) In addition to Client's responsibilities as set forth in an SOW, Client shall cooperate with Consultant in the performance of the Services, including (i) providing Consultant with adequate working space, equipment and facilities and timely access to data, information, and personnel of Client; (ii) providing personnel having appropriate skills to perform their assigned tasks and duties in a competent and timely fashion; (iii) providing a system infrastructure environment which will support the Services and allow Consultant and Client to work productively; and (iv) promptly notifying Consultant of any issues, concerns or disputes with respect to the Services. With respect to the data and information provided by Client to Consultant or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. If Consultant is provided with access to or use of Client's facilities outside the United States for the purpose of performing the Services, such facilities will not be dedicated solely for Consultant's use and Consultant will not be deemed a tenant of Client with respect to such facilities.

c) Client shall be solely responsible for: (i) the performance of its personnel and agents; (ii) the accuracy and completeness of all data and information provided to Consultant for purposes of the performance of the Services; (iii) making all management decisions, performing all management functions, and assuming all management responsibilities; (iv) designating a competent management member to oversee the Services; (v) evaluating the adequacy and results of the Services; (vi) accepting responsibility for the results of the Services; and (vii) establishing and maintaining internal controls, including monitoring ongoing activities.

d) The Services may include advice and recommendations, but Consultant will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. Consultant's performance is dependent upon Client's (i) timely and effective satisfaction of its responsibilities under this Agreement and any SOW, and (ii) timely decisions and approvals in connection with the Services, upon which Consultant shall be entitled to rely.

e) Consultant shall use diligent efforts to meet performance dates set forth in an SOW and shall notify Client promptly if Consultant encounters significant delays in completing the Services. Notwithstanding the foregoing, all performance dates contained in such SOW shall be regarded only as estimates, except for dates specifically identified as "Firm Performance Dates" therein.

**8. Confidentiality, Data Security, and Internal Use.**

a) To the extent that, in connection with this Agreement or any SOW, either Consultant or Client (each, the "receiving party") comes into possession of any Confidential Information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own Confidential Information of a similar nature, but in no event less than a reasonable degree of care. "Confidential Information" means and includes non-public or other proprietary information including trade secrets, technical information, algorithms, code, data, designs, documentation, drawings, formulae, hardware, know-how, ideas, inventions, whether patentable or not, photographs, plans, procedures, processes, reports, research, samples, sketches, software, specifications, business information, including customer, employee, and distributor names, marketing information, operations, plans, products, financial information, pricing, and other information a reasonably person would consider confidential under the circumstances. The disclosing party hereby consents to the receiving party disclosing such information (i) as expressly

4

set forth in the applicable SOW; (ii) to contractors providing administrative, infrastructure and other support services to the receiving party and subcontractors providing services in connection with an SOW, in each case, whether located within or outside of the United States, provided that they have agreed to be bound by confidentiality obligations similar to those in this sub-Section; (iii) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation pertaining to this Agreement or an SOW; or (iv) to the extent such information (A) is or becomes publicly available other than as the result of a disclosure in breach hereof, (B) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (C) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (D) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.  If Client is an attest client of any Deloitte Entity (as defined herein), any such information may be used by such Deloitte Entity in the context of responding to its professional obligations as the independent accountants for Client.

b) All Services and Deliverables shall be solely for Client's benefit, and are not intended to be relied upon by any person or entity other than Client.  Client shall not disclose the Services or Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity other than Client except (i) as expressly set forth in the applicable SOW, (ii) to Client's contractors, attorneys, and tax and accounting professional advisors acting strictly in an advisory capacity to Client (collectively, "Agents") solely for the purpose of their providing services to Client relating to or deriving from the subject matter of such SOW, provided that they comply with the restrictions on disclosure set forth in this sentence, or (iii) to the extent included within Client-created materials that do not in any way, expressly or by implication, attribute such materials to Consultant or its subcontractors.  Client agrees to indemnify and hold harmless Consultant, its affiliates and subcontractors, and their respective personnel from all Claims attributable to claims of third parties relating to Client's or its Agent's use or disclosure of the Services or Deliverables.

c) No provision in this Agreement (including Section 8) or any SOW, is or is construed to be as a condition of confidentiality within the meaning of Rule 3501(c)(i) of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice").  Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the Services or transactions described in an SOW.  Notwithstanding anything herein to the contrary, no provision in this Agreement or any SOW shall place any limitation on Client's disclosure of any Subject Tax Planning Advice. The Services and Deliverables shall be solely for Client's informational purposes and internal use, and neither this Agreement nor any SOW shall create privity between Consultant and any person or party other than Client ("third party").  Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party.  Unless otherwise agreed to in writing by Consultant, no third party is entitled to rely in any manner or for any purpose, on the Services or Deliverables.  In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless Consultant, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs and expenses. Notwithstanding anything to the contrary herein, Client's indemnification obligations set forth in Section 8(b) shall not apply to any disclosure by Client of any Subject Tax Planning Advice.

d) To the extent that, in connection with an SOW, Consultant comes into possession of any Confidential Information of Client, Consultant shall implement and maintain not less than an industry standard security program for Confidential Information designed to (i) ensure the security

and confidentiality of Confidential Information; (ii) protect against any anticipated threats or hazards to the security or integrity to Confidential Information, and (iii) protect against unauthorized access to or use of Confidential Information that could result in substantial harm to Client. Consultant shall provide Client, upon reasonable request, with a copy of its Information Security Statement and any updates or amendments thereto.

**9.  Indemnification.**

a)  Each party to an SOW agrees to indemnify, defend and hold harmless the other party, its subcontractors and their respective personnel from all Claims attributable to claims of third parties solely for: (i) bodily injury, death or physical damage to real or tangible personal property occurring while Consultant is performing the Services to the extent directly and proximately caused by the negligence or intentional misconduct of the indemnifying party and that does not arise from the indemnifying party's performance obligations under such SOW; and (ii) for any employment-related payment obligations (including taxes, interest, and penalties arising therefrom) assessed against the indemnified party only with respect to the indemnifying party's personnel, except to the extent that such payment obligations are assessed against the indemnified party as a result of acts or omissions of the indemnified party.

b)  Consultant agrees to indemnify, defend and hold harmless Client and its personnel from all Claims attributable to claims of third parties for infringement by a Deliverable of any U.S. patent existing at the time of delivery or copyright or any unauthorized use of any trade secret, except to the extent that such infringement or unauthorized use arises from (i) modification of the Deliverable other than by Consultant or its subcontractors, or use thereof in a manner not contemplated by the applicable SOW, (ii) the failure of the indemnified party to use any corrections or modifications expressly made available by Consultant, (iii) information, materials, instructions, specifications, requirements or designs provided by or on behalf of the indemnified party, or (iv) the use of the Deliverable in combination with any platform, product, network or data not provided or expressly approved by Consultant. If Client's use of any such Deliverable, or any portion thereof, is or is likely to be enjoined by order of a court of competent jurisdiction as such an infringement or unauthorized use, Consultant, at its option and expense, shall have the right to (x) procure for Client the continued use of such Deliverable, (y) replace such Deliverable with a non-infringing Deliverable, or (z) modify such Deliverable so it becomes non-infringing; provided that, if (y) or (z) is the option chosen by Consultant, the replacement or modified Deliverable is capable of performing substantially the same function. In the event Consultant cannot reasonably procure, replace or modify such Deliverable in accordance with the immediately preceding sentence, Consultant may require Client to cease use of such Deliverable and refund the professional fees paid to Consultant with respect to the Services giving rise to such Deliverable. The foregoing provisions of this sub-Section constitute the sole and exclusive remedy of the indemnified parties, and the sole and exclusive obligation of Consultant, relating to a claim that any of Consultant's Deliverables infringes any patent, copyright or other intellectual property right of a third party.

c)  The indemnified party shall provide the indemnifying party with prompt written notice of any claim, liability, or expense for which indemnification is sought under this Agreement or the applicable SOW (an "Indemnity Claim"), cooperate in all reasonable respects with the indemnifying party in connection with any such Indemnity Claim, and use reasonable efforts to mitigate any Indemnity Claim; provided, however, that the indemnified party's failure to comply with the foregoing obligations shall not relieve the indemnifying party of its indemnification obligations, except to the extent the indemnifying party has been actually prejudiced by such failure. The indemnifying party shall be entitled to defend and control the handling of any such Indemnity Claim, with counsel of its own choosing that is reasonably satisfactory to the indemnified party. The indemnifying party shall not settle any Indemnity Claim without the prior written consent of the indemnified party.

**10. Approval of Deliverables.**

a)  Client shall approve each Deliverable that conforms in all material respects with any specifications for such Deliverable set forth in the SOW or as otherwise agreed by Client and Consultant in writing ("Specifications").  Within fifteen days (or such other period agreed upon in the applicable SOW) from its receipt of a Deliverable, Client shall provide Consultant with (i) written approval of such Deliverable or (ii) a written statement which identifies in reasonable detail, with references to the applicable Specifications, all of the deficiencies preventing approval (the "Deficiencies").

b)  Consultant shall have thirty days (or such other period agreed upon in the applicable SOW) from the date it receives the notice of Deficiencies to complete corrective actions in order for such Deliverable to conform in all material respects to the applicable Specifications.  Client shall complete its review of the corrected Deliverable and notify Consultant in writing of acceptance or rejection in accordance with the foregoing provisions of this Section.

c)  Notwithstanding the foregoing provisions of this Section, approval of a Deliverable shall be deemed given by Client if Client has not delivered to Consultant a notice of Deficiencies for such Deliverable prior to the expiration of any period for Client review thereof as set forth in this Section, or if Client uses the Deliverable in production.

d)  To the extent that any Deliverable has been approved by Client at any stage of Consultant's performance under an SOW, Consultant shall be entitled to rely on such approval for purposes of all subsequent stages of Consultant's performance under such SOW.  In the event an approved Deliverable differs from the Specifications for such Deliverable, the Specifications shall be deemed modified to conform with such approved Deliverable. Without limiting the foregoing, upon Client's written request, Consultant and Client will update the Specifications to conform to the approved Deliverable.

e)  If Consultant is unable to correct any Deficiency in a Deliverable within the period of time set forth above, Client shall be entitled, at its option, to (i) a refund or credit of professional fees paid to Consultant under the applicable SOW with respect to the Services giving rise to such Deliverable and this shall be Client's sole and exclusive remedy, and Consultant's sole and exclusive obligation, with respect to any claim that the Deliverables do not conform to the requirements of this Agreement or such SOW or (ii) exercise any other rights and remedies available to Client under this Agreement or such SOW, whether at law or in equity.

11. **Force Majeure.**  Neither Consultant nor Client shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

12. **Survival.**  All provisions that are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this Agreement or the applicable SOW.

13. **Interpretation.  Each of the provisions of this Agreement and each SOW shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*) or otherwise, notwithstanding the failure of the essential purpose of any remedy.**  Liability limits set forth in this Agreement or any SOW are intended solely to set maximum limits and are not intended as estimates of actual liability. Any references herein to the term "including" shall be deemed to be followed by "without limitation".  The Section headings in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation hereof.  Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), the member firms of DTTL (including Deloitte LLP), and each of their respective affiliates (including Consultant) are referred to herein collectively as the "Deloitte Entities" and individually as a "Deloitte Entity."  In the event of any conflict between the terms of this Agreement and the terms of any SOW, the terms of this Agreement shall

control, except to the extent that such SOW provides that specified provisions therein shall control over specified provisions of this Agreement.

14. **Binding Nature; Assignment and Subcontracting.** This Agreement and each SOW shall be binding on the respective parties thereto and their respective permitted successors and assigns; provided, however, that, except as provided below, neither party may assign any of its rights or obligations (including interests or claims) relating to or in connection with this Agreement or such SOW, without the prior written consent of the other party. Client hereby consents to Consultant subcontracting a portion of the Services to any Deloitte Entity and to any other third party, in each case, whether located within or outside the United States. Services performed by Consultant's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Consultant's personnel, unless otherwise agreed. Consultant agrees to be responsible to Client for the Services performed by its subcontractors to the same extent that Consultant would be responsible to Client if Consultant had performed such Services. No Deloitte Entity, other than Consultant, and no personnel of any Deloitte Entity shall have any liability to Client relating to or in connection with this Agreement or any SOW, and Client will not bring any action against any such Deloitte Entity or any personnel of any Deloitte Entity in connection therewith.

15. **Notices.** Any notice required under this Agreement or any SOW shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses set forth below unless changed by either party by notice to the other party, and (iii) effective upon receipt.

To Deloitte LLP:   Nick Accordino, Partner
127 Public Square
2600 Key Center, Suite 3300
Cleveland, OH 44114
naccordino@deloitte.com

To Consultant:   The address specified in the SOW

To Client:   Scott Sekella, CFO
5555 Darrow Road
Hudson, Ohio 44236
Scott.sekella@joann.com
CC: legal@joann.com

16. **Severability.** If any term of this Agreement or any SOW is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permitted the intent of the parties set forth in this Agreement or such SOW.

17. **Waivers and Amendments.** No delay or omission by a party in enforcing its rights or remedies under this Agreement or any SOW shall impair such right or remedy or be deemed to be a waiver thereof. No amendment or waiver of this Agreement or any SOW shall be valid unless in writing and signed by the parties thereto.

18. **Non-solicitation.** During the term of an SOW and for a period of one year thereafter, each of Consultant and Client agrees that its personnel (in their capacity as such) who had substantive contact with personnel of the other in the course of the performance of Services under such SOW shall not, without the other's consent, directly or indirectly solicit the services of such personnel of the other. This provision shall not restrict the right of either Consultant or Client to solicit generally in the media and does not apply to any personnel that replied/was hired via such general solicitation.

19. **Non-exclusivity.**  Consultant may (a) provide any services to any person or entity, and (b) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, Consultant complies with its obligations of confidentiality set forth hereunder.

20. **Third-Party Beneficiaries.**  Any third parties referenced in any disclaimer or waiver of liability, limitation on damages or actions, or indemnity in this Agreement or any SOW are intended third-party beneficiaries of such terms and may in their own right enforce such terms.  Except as set forth in this Section, (a) there are no third-party beneficiaries of this Agreement or any SOW, and (b) no rights, benefits, or remedies of any kind or character whatsoever are conferred upon, and no party to this Agreement or any SOW shall owe any duty to, any person or entity other than the other party to this Agreement or such SOW, respectively.

21. **Governing Law.**  This Agreement and each SOW, including attachments, and all matters relating to or in connection with this Agreement and each SOW, shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof).

22. **Disputes.**

a) Any action relating to or in connection with this Agreement or any SOW shall be brought and maintained exclusively in any state or federal court, in each case located in New York County, the State of New York.  Each party to this Agreement or any SOW hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

b) **EACH PARTY TO THIS AGREEMENT OR ANY SOW HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO OR IN CONNECTION WITH THIS AGREEMENT OR ANY SOW.**

c) No action, regardless of form, relating to or in connection with this Agreement or any SOW may be brought more than three years after the cause of action has accrued, except that an action for nonpayment may be brought not later than three years following the due date of the last payment owing to the entity bringing the action.

23. **Entire Agreement.**  This Agreement and the applicable SOW, including attachments, shall constitute the entire agreement with respect to the subject matter of such SOW and shall supersede all other oral or written representations, understandings, or agreements relating to or in connection with the subject matter thereof.  In making its determination to proceed with an SOW, neither party thereto will have relied on any representations of the other party except as expressly set forth in this Agreement or such SOW.

24. **Site Conditions.**  To the extent working on site at a Client facility, Consultant acknowledges that it has been given the opportunity to inspect the site and has done so and accepted the conditions thereof or has voluntarily waived its right to do so and hereby assumes knowledge of any condition which would have or could have reasonably been discovered upon inspection.

25. **Publicity.** Consultant must not construe the award of this Agreement to Consultant in any advertising or other publicity materials as an endorsement of Consultant or Consultant's products by Client. Consultant must not use any Client IP or trade name directly or indirectly for advertising or publicity purposes without, in each case, the prior written consent of Client.

**26. Insurance.** Consultant must obtain and maintain insurance for the coverages and amounts of coverage not less than the following: (i) Workers Compensation (or the equivalent) complying with the law of Consultant's state of operation; (ii) Employer's Liability insurance with limits of $1 million for each accident; (iii) Commercial General Liability insurance covering liability for injury, including death of persons, or damage to or loss of property, including such legal liability as may arise from the use of independent companies or contractual liability assumed under this Agreement, pursuant to policy terms and conditions, with a $1M per occurrence and with a general aggregate limit of $5 million; the requested limits may be met through a combination of primary and umbrella/excess coverages; (iv) Automobile liability insurance with combined single limits of $1 million; (v) Fidelity bond including coverage for employee dishonesty in an amount of not less than $1 million per loss; (vi) Cyber liability Insurance with limits not less than $10 million for each claim; the insurance may be included within a professional liability coverage form; and (vii) Excess/Umbrella Liability Insurance with limits of not less than $2 million for each occurrence and $2 million in the aggregate. Consultant must provide certificates of insurance issued by a carrier rated not less than A-, IX by A.M. Best & Co. or the equivalent rating if AM Best is not available to Client to evidence such coverage. Consultant's insurance will apply as primary insurance with respect to any other insurance or self-insurance programs afforded to Client.

**IN WITNESS WHEREOF,** Deloitte LLP (for and on behalf of its subsidiaries) and Client have caused this Agreement to be executed and delivered by their respective duly authorized representatives as of the Effective Date.

**DELOITTE LLP**

By: _Deloitte & Touche LLP_
     E84F60352C8A408

Name: Nick Accordino

Title: Authorized Signatory

Date: 8/12/2024 | 5:47:30 AM PDT

**JO-ANN STORES LLC**

By: _Jeffrey Dwyer_
     7103EBA0F0B64DA

Name: Jeffrey Dwyer

Title: Interim-Chief Financial Officer

Date: 8/16/2024 | 7:26:46 AM PDT

**EXHIBIT A**

**STATEMENT OF WORK**

SOW Number: _____    Authorized Start Date: _____

This SOW incorporates the terms and conditions of the Master Services Agreement between Deloitte LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC dated August 12, 2024 (the "Agreement").  For the purposes of this SOW, Consultant means [*Name of Subsidiary].*

**Consultant Services Description:**

**Estimated Timing of Services and Deliverables:**

☐  If checked, the following performance dates shall be deemed Firm Performance Dates pursuant to Section 7(e) of the Agreement:
- [*date*]
- [*date*]

**Fees and Expenses:**

**Client Responsibilities:**

**Assumptions:**

**Other Terms (including changes in provisions of the Agreement):**

(NOTE:  Based on the nature of the Services, additional terms may be added to this SOW.)

**JO-ANN STORES LLC**                                  **CONSULTANT**


By: _____        By: _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____        Date: _____

Address: _____

**Exhibit B**

**TRAVEL AND EXPENSE REIMBURSEMENT**

This exhibit sets forth the travel and out-of-pocket expenses for which Consultant will be reimbursed in connection with this Agreement.

## AIR TRAVEL

Air travel costs will be reimbursed subject to the following. All flights under 7 hours *flying time* will be in economy class and over 7 hours flying time may be booked in business class. Flights should ideally be booked as far in advance as possible to take advantage of discounts provided - ideally 14 days.

## ACCOMMODATION

Consultant has negotiated discounted rates with specific hotels in most cities where it has offices and/or client locations. Hotel accommodations will be reimbursed for standard hotel rooms (e.g., no suites) at preferred hotels at the lowest available rate. When preferred hotels are not available, personnel are expected to book hotels that are reasonable in cost taking into consideration practicality, availability and proximity to office or project as appropriate.

## MEALS

**Overnight Trips**
When a trip necessitates an overnight stay, actual reasonable meal costs for personnel will be reimbursed.

**Other Meals**
For local personnel who work 11 hours or more in a regular work day, the reasonable cost of dinner will be reimbursed. For local personnel who work 4 or more hours on a Saturday, Sunday or Firm-designated holiday, the reasonable cost of lunch will be reimbursed.

## TRANSPORTATION

**Taxis To and From Airport**
When working away from home location taxis to and from the airport will be reimbursed.

**Taxi After Hours**
If personnel work significant over time on a day and/or leave work after dark the cost of a taxi back to home/accommodation will be reimbursed.

**Rental Cars**
Consultant has negotiated discounted rates with specific rental car companies, and cars should be rented through these companies unless they do not have cars available. Costs for rental cars used in connection with out of town travel will be reimbursed. Personnel will rent an intermediate size car unless there is a business need for a larger size car. Insurance is to be undertaken through the car rental company. When utilizing a non-preferred supplier or a non-participating location of a preferred supplier, LDW/CDW coverage should be purchased and is a reimbursable expense.

**Car Mileage**
A reasonable mileage allowance reflecting the current rate allowed by the IRS will be reimbursed

for the use of a privately owned or leased automobile for business travel if the daily mileage is in excess the

personnel's normal commute to the office. If personnel work on a Saturday, Sunday or Firm-designated holiday, actual mileage to and from the office or client location will be reimbursed.

**Parking and Tolls**
While using an automobile while out of town reasonable parking costs and tolls will be reimbursed. While using an automobile in-town, the cost of parking at a client location will be reimbursed if the cost of parking is in excess of the personnel's normal parking cost at the resident office, or if the costs are incurred on weekends.

## COMMUNICATION

**Telephone Calls**
The cost of business calls made from home phones, calling cards, conference call numbers and cell phones, and reasonable personal calls to home while on an out-of-town assignment, are reimbursable.

**Internet Connection**
The actual cost of high speed Internet access for travelers from their hotel room are reimbursable.

## OTHER

- _Health Club Facilities._ The cost of health club facilities while out of town - up to a maximum of $20 per day - will be reimbursed.
- _Laundry and Dry Cleaning._ If out-of-town travel is five or more consecutive nights, the reasonable cost of laundry and dry cleaning will be reimbursed.

## GRATUITIES

Gratuities paid while out of town on business are reimbursed based on reasonable actual amounts expended. The following are reasonable gratuities by category:

- Housekeeping $2 - $5 per day
- Meals 15%-20%
- Luggage assistance $1 - $2 per bag
- Taxi rides 15%-20%

## MISCELLANEOUS

All business, travel and subsistence expenses must be charged to the corporate charge card using preferred suppliers where applicable. All personnel must use the national online reservation site Deloitte Trips or the nationally designated travel agency Deloitte Travel Center (DTC) for all business travel. Receipts are generally not required for expenditures under $75.