## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*, | Case No. 25-10068 (CTG) |
| Debtors.[1] | (Joint Administered) |
| | **Re: Docket No. 480** |

## OBJECTION AND RESERVATION OF RIGHTS OF LANDLORD MANN ENTERPRISES, INC. TO
## NOTICE OF WINNING BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS

Mann Enterprises, Inc., (the "**Landlord**"), by its undersigned counsel, submits this objection (the "**Objection**") to the *Notice of Winning Bidder for Certain of the Debtors' Assets* (Docket No. 480) filed February 22, 2025 (the "**Winning Bidder Notice**"), objecting to the proposed designation, sale, assumption and/or assignment of the Shopping Center Lease for Store #2568 (the "**Laguna Niguel Lease**"), located at 27871 La Paz Rd, Laguna Niguel, CA 92677 (the "**Leased Premises**"), to GA Joann Retail Partnership, LLC, a subsidiary of GA Group, together with Wilmington Savings Fund Society, FSB, in its capacity as Prepetition Term Loan Agent, as the Winning Bidder (collectively, the "**Winning Bidder**"), pursuant to the: (a) *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

*Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII)*
*Granting Related Relief* [Docket No. 17] (the "**Bidding Procedures Motion**"); and (b) the *Order*
*(I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect*
*Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking*
*Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of*
*Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and*
*Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 446]
(the "**Order**"),  by which the Debtors were authorized to conduct a marketing and auction process
for the sale or sales (the "**Sale Transactions**") of the Debtors' assets (the "**Asset**s"), including the
Laguna Niguel Lease.

In support of this Objection, Landlord respectfully states:

## BACKGROUND

A.    **The Bankruptcy, Potential Assumption List and Bankruptcy Schedules, and the Permitted Use Limitations Under the Laguna Niguel Lease**

1.    On January 15, 2025 (the "**Petition Date**"), Joann Inc. and certain of its debtor
affiliates, including Jo-Ann Stores, LLC as lessee of the Leased Premises under the Laguna Niguel
Lease (the "**Debtor Lessee**," and collectively the "**Debtors**"), filed their voluntary petitions for
relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.    No trustee or examiner has been appointed and the Debtors continue to operate their
business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a)
and 1108.

3.        Prior to the Petition Date, the Debtor Lessee leased the Leased Premises as retail space from the Landlord pursuant to the terms of the Laguna Niguel Lease as amended and supplemented.[2]

4.        The Laguna Niguel Lease is an unexpired lease of nonresidential "real property in a shopping center" (the "**Shopping Center**"), as that term is used in Bankruptcy Code Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5.        The Laguna Niguel Lease was listed on the Exhibit 1(a)(1) *Store List* and Exhibit 4.1(c) *Occupancy Analysis* attached to the Potential Assumption List attached to the Bidding Procedures Motion [Docket No. 17 at pages 147 and 171] (collectively "**Potential Assumption List**").

6.        The Landlord is listed in Debtor Lessee's Bankruptcy Schedule F, item 3.168, and the Laguna Niguel Lease is included in Schedule G, item 2.2062 [Docket No. 376 at pp. 521 and 1040] (collectively, the "**Bankruptcy Schedules**").

7.        Among other terms and conditions in the Laguna Niguel Lease that the Debtor Lessee agreed to be bound by and comply with, are the Permitted Use restrictions for the Leased Premises, with Section 2(q) providing:

> (q) Permitted Use: *Subject to all prohibited uses as set forth on Exhibit F (the Prohibited Uses") and all exclusive uses by another tenant in effect in the Shopping Center as of the Effective Date hereof (the "Restricted Uses of Other Tenants"), which Restricted Uses of Other Tenants as set forth on Exhibit F,* the sale of fabrics of all kinds; goods sold by the yard; patterns; knitting supplies, needlepoint, macrame; art materials and supplies; finished crafts, craft materials and supplies; educational aids, materials and supplies; yarns; all types of notions; floral products, artificial flowers and accessories; scrapbooks and scrapbooking supplies and materials; framed artwork; picture frames, framing (both readymade and custom made) and framing materials and supplies; fabric care items; foam products; ceramics; wearable art and wearable

---

[2] Pertinent pages of the Laguna Niguel Lease dated June 6, 2022, including Exhibit F, are collectively attached hereto as Exhibit 1.

art supplies; miniatures, dolls, hobby items; sewing machines, sewing machine furniture; irons, ironing boards; seasonal merchandise; custom services and custom products using mis and craft and sewing components including, but not limited to, quilting, bow-making, window treatments, floral design, fashion sewing, instructional classes, materials and services; and the incidental sale of (defined as no more than ten percent (10%) of any individual following item) baskets, wicker items; housewares; linens, curtains, towels, pillows; drape1y and upholste1y materials; draperies, drapery hardware; blinds, shades, shutters and window treatments; do-it-yourself products and accessories; bridal apparel and accessories, wedding supplies; gift items, cards, party supplies; paper goods, stationery; candles, candlesticks, brass and pottery; indoor and outdoor house decorating products and accessories; furniture; prepackaged and unpackaged food and food products, coffee, tea, and assorted beverages; instructional books and tapes; children's books; toys; vacuum cleaners, lamps, small household appliances; products, accessories related to all of the foregoing, and other items and services customarily offered for sale by a fabric, craft or general merchandise store, and such other related merchandise and services typically offered in the stores operated by Tenant under the name Jo-Ann, Jo-Ann Fabrics and Crafts, JOANN or such other name under which Tenant may operate *and for no other purpose without the consent of Landlord*, which shall not be unreasonably withheld. Exhibit 1, Laguna Niguel Lease, p. 7-8; emphasis added.

8.      Section 11 of the Laguna Niguel Lease further provides the following as to "Use" of the Leased Premises:

> *The Premises may be used solely for the Permitted Use and for no other purpose without the consent Landlord, which consent shall not be unreasonably withheld. In no event shall the Premises be used in violation of the Prohibited Uses or the Restricted Uses of Other Tenants as are set forth on Exhibit F attached hereto. Landlord represents that the use restrictions set forth in Exhibits F accurately reflect exclusives and prohibited uses and encumbrances that presently (as of the Effective Date) encumber the Premises as terms of existing leases of Shopping Center premises (the uses covered by such restrictions are collectively referred to as the "Restricted Uses" and individually as a "Restricted Use").* Upon the expiration or earlier termination of the lease or other written instrument containing a Restricted Use, the Premises shall not be subject to such Restricted Use under this Lease and such use shall no longer be a Restricted Use. Upon the request of Tenant, Landlord promptly shall advise Tenant which Restricted Uses still encumber the Premises and shall furnish to Tenant the documentary support therefor. Exhibit 1, Laguna Niguel Lease, p. 26; emphasis added.

9.      The Exhibit F Restricted Uses of Other Tenants referenced in Section 2(q) of the Laguna Niguel Lease, further provides a specific list of prohibited uses for the Leased Premises.

- 4 -

B.    **The Current Cure Amount Owing Under the Laguna Niguel Lease**

10.    In addition to Fixed Minimum Rent as provided in Article 5 ("**Rent**"), Sections 2 (a) and (cc) and Sections 8 and 9 of the Laguna Niguel Lease require the Debtor Lessee to pay its proportionate share of Common Area maintenance charges ("**CAM**") and real property taxes ("**RE Tax**"). Exhibit 1, Laguna Niguel Lease, pp. 5, 9, 16-21, and 26.

11.    Attached hereto as Exhibit 2 is a schedule (the "**Cure Schedule**"), setting forth the CAM, RE Tax and Rent currently due and owing to Landlord under the Laguna Niguel Lease in the sum of **$100,714.92** (the "**Current Cure Amounts**").

12.    The Potential Assumption List fails to set forth any current cure amount that is owing to Landlord under the Laguna Niguel Lease.  The Bankruptcy Schedules also incorrectly reflect that only $25,964.23 was due as of the bankruptcy filing, when **$69,140.15** was actually due as of the bankruptcy filing, based on rent of **$25,940.83** and real property taxes of **$43,199.32** as reflected in the Cure Schedule.

C.    **The Winning Bidder Notice and Proposed Designation of the Laguna Niguel Lease to Winning Bidder Without Cure Amounts and No Adequate Assurance of Performance Information as to the Proposed Use of the Leased Premises**

13.    The Winning Bidder Notice provides that the Winning Bidder was the highest bidder to become the liquidating agent for the Debtors' Assets, including "designation rights" as to its Leases as a result of an auction on February 21, 2025 (the "**Auction**").

14.    The Winning Bidder Notice fails to include, however, any cure amount as to amounts owing under the Laguna Niguel Lease, or any or any adequate assurance information as to the use of the Leased Premises by the Winning Bidder as required under 11 U.S.C. § 365(b).

15.    As of the filing of this Objection on February 12, 2025, Landlord had not received any notice of the cure amount and no adequate assurance information for the Winning Bidder.

16.     Based on the prior Order and the proposed revised Agency Agreement with the Winning Bidder [Docket No. 486] filed February 24, 2025 (the "**Proposed Agency Agreement**"), it appears that no cure amount for the amounts currently owing under the Laguna Niguel Lease, and no adequate assurance information for the Winning Bidder as to the use of the Leased Premises, will be provided until and unless the Laguna Niguel Lease is actually assumed pursuant to a proposed *Notice of Potential Assumption or Assumption and Assignment of Certain Contract or Leases,* is actually provided by the Debtors to the Landlord (the "**Actual Assumption Notice**").

17.     Upon receipt of the Actual Assumption Notice, Landlord will then have 14 days to file an objection "*to the proposed assumption and assignment*" (the "**Assumption/Adequate Assurance Objection**").

18.     Pursuant to the prior Order, however, any "*Sale Objections*" in the event of an Auction are to be filed by the "*Sale Objection Deadline*" of February 25, 2025 at 5:00 p.m. Eastern.

19.     Pursuant to the prior Order and pending receipt of the Actual Assumption Notice, Landlord therefore files this Objection, and further reserves all of Landlord's rights to file the Assumption/Adequate Assurance Objection as to the Winning Bidder, or any other proposed assignee of the Laguna Niguel Lease.

## **OBJECTION**

A.     **The Debtors and/or the Winning Bidder Must Provide the Landlord with Adequate Assurance Information that Satisfies Bankruptcy Code Section 365(b)(1) & (b)(3).**

20.     Before assuming a lease of a shopping center that is in default, a debtor must *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1). Bankruptcy Code section 365(b)(3) provides:

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

21.     Under Sections 365(b)(1) and (b)(3), and Section 365(f)(2)(B), Landlord is entitled to "adequate assurance" of future performance by Winning Bidder. *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir. 1996) (Section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); *c.f., In re Embers 86th Street, Inc.,* 184 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1995) (adequate assurance of payment of cure did not exist where plan was to "meet its projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); *Matter of World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn.1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

- 7 -

22.     Additionally, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." *In re Joshua Slocum Ltd.,* 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *Id.* "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in Section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 299 (3rd Cir. 2000), *cert. denied*, 121 S.Ct. 175 (2000) (citation omitted).

23.     Section 365(b)(3)(C) of the Bankruptcy Code further provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . .".11 U.S.C. §365(b)(3)(C). Bankruptcy Courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

24.     The Debtors therefore bear the ultimate burden of proof that all requirements for the proposed assumption and assignment of the Laguna Niguel Lease have been met. *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Memphis-Fridays Assocs*., 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); see also *Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1309-10 (5th Cir. 1985).

25.     To meet their burden, the Debtors must provide actual evidence that that the Landlord will receive full performance under the Laguna Niguel Lease. *In re World Skating*

*Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D.Conn. 1989); <u>Matter of Haute Cuisine, Inc</u>., 58 B.R.

390, 393-94 (Bankr. M.D. Fla. 1986) (requiring showing based on competent evidence).

26.     Landlord submits that the Debtors have failed to meet their adequate assurance

burden. Indeed, the Laguna Niguel Lease is one of a number of leases in the Shopping Center that

is part of an integrated and complex commercial relationship between the Landlord as the owner

of the Shopping Center, and all of the tenants with specific and exclusive use provisions that could

be violated by any proposed assignment.

B.     **The Debtors and/or the Winning Bidder Must Provide for the Payment of the
Current Cure Amounts, any Additional Amounts Owing Under the Laguna
Niguel Lease and Landlord's Attorney's Fees**

27.     Section 365(b) of the Bankruptcy Code further provides in pertinent part as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease
> of the debtor, the trustee may not assume such contract or lease unless, at the
> time of assumption of such contract or lease, the trustee—
>
> > (A)  cures, or provides adequate assurance that the trustee
> > will promptly cure, such default…;
> >
> > (B)  compensates, or provides adequate assurance that the
> > trustee will promptly compensate, a party other than the
> > debtor to such contract or lease, for any actual pecuniary loss
> > to such party resulting from such default; and
> >
> > (C)  provides adequate assurance of future performance
> > under such contract or lease.
>
> 11  U.S.C. § 365(b)(1).

28.     Section 365 of the Bankruptcy Code obligates the Debtors, Winning Bidder and/or

any other proposed assignee of the Laguna Niguel Lease to promptly cure all existing defaults.

See 11 U.S.C. § 365(b)(1)(A) and (B); *Agri Star Meat & Poultry, LLC v. Nevel Props. Corp. (In

re Nevel Props. Corp.)*, 765 F.3d 846, 849 (8th Cir. 2014) (stating that a lease cannot be assumed

unless a cure has been effected); *In re Alipat, Inc.*, 36 B.R. 274, 276 (Bankr. E.D. Mo. 1984) ("[I]f

there has been a default in an executory contract or unexpired lease, the trustee may not assume

such contract or lease unless he or she cures the default, compensates the other party, and provides adequate assurance of future performance…").

29.     Under Section 365(b)(1) of the Bankruptcy Code, all outstanding defaults under the Laguna Niguel Lease must therefore be cured to compensate Landlord for any actual pecuniary loss, including the payment of related attorneys' fees. See 11 U.S.C. §365(b)(1)(B). Attorney's fees due under the Lease are compensable. See *LJC Corp. v. Boyle*, 768 F.2d 1489, 1494–96 (D.C. Cir. 1985); In re Bullock, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enters., Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); In re Westview 74th St. Drug Corp., 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary losses, Landlord is entitled to attorney's fees in connection with Debtors' obligation to cure all monetary defaults under the Laguna Niguel Lease.

30.     Landlord reserves the right to amend the Cure Schedule to reflect any such additional amounts, attorney's fees and/or to account for year-end adjustments, including, without limitation, adjustments for 2024 and 2025, which have not yet been billed or have not yet become due under the terms of the Laguna Niguel Lease.

31.     As part of the proposed designation, sale, assumption and/or assignment of the Laguna Niguel Lease, the Debtors, Winning Bidder and/or any other proposed assignee are therefore required to pay: (i) the Current Cure Amounts in the Cure Schedule; (ii) any additional amounts that may come due under the Laguna Niguel Lease between the date of this Objection and the effective date of any such assumption by the Debtors; and (iii) Landlord's attorney's fees.

C.    **The Debtors and/or Winning Bidder Must Comply with and Satisfy all other Non-Monetary Obligations Under the Laguna Niguel Lease.**

32.    The Debtors, Winning Bidder, and any other proposed assignee of the Laguna Niguel Lease must be further required to comply with all contractual obligations to indemnify and hold Landlord harmless for events which occurred before assumption and assignment, but which were not known to Landlord as of the date of the assumption and assignment.

33.    Such claims include, but are not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by Debtors or their agents, and (iii) environmental damage or clean-up.

34.    To cure any such possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Laguna Niguel Lease, the Debtors or Winning Bidder should be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order.

35.    Alternatively, the Debtors must be required to demonstrate or obtain adequate insurance by obtaining "tail" coverage to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of any sale or assignment, that may include claims for indemnity for personal injury occurring at the Leased Premises where Landlord may be joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

## RESERVATION OF RIGHTS

36.    Nothing in this Objection is intended to be, or should be construed as, a waiver by Landlord of any of its rights under the Laguna Niguel Lease, the Bankruptcy Code, or applicable law. Landlord expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to

- 11 -

the proposed designation, sale, assumption and/or assignment of the Laguna Niguel Lease as part of its Assumption/Adequate Assurance Objection; (b) amend the Current Cure Amount for any additional unpaid obligations that come due prior to the actual designation, sale, assumption and/or assignment of the Laguna Niguel Lease, including attorneys' fees and costs incurred by Landlord; (c) assert any other nonmonetary defaults under the Laguna Niguel Lease; and (d) assert any further objections as it deems necessary or appropriate.

## JOINDER

37.     Landlord joins in any objections that are filed by other landlords, to the extent that they are not inconsistent with this Objection.

## CONCLUSION

WHEREFORE, Landlord respectfully requests that this Court enter an order sustaining this Objection and finding that any proposed designation, sale, assumption and/or assignment of the Laguna Niguel Lease to Winning Bidder should be denied.

Alternatively, should the Court permit the designation, sale, assumption and/or assignment of the Laguna Niguel Lease to Winning Bidder, the order should be expressly conditioned on:

- Winning Bidder or any other proposed assignee providing the required adequate assurance of performance of all terms of the Laguna Niguel Lease, including actual evidence of the intended use of the Leased Premises that will not violate the use provisions/restrictions in the Laguna Niguel Lease or leases with other tenants in the Shopping Center pursuant to 11 U.S.C. § 365(b)(3);

- Payment of the Current Cure Amounts in the Cure Schedule, any additional amounts that may come due under the Laguna Niguel Lease between the date of this Objection and the effective date of any assumption by the Debtors, including

115913-00000004/9155517.1

Landlord's attorney's fees, and all other monetary and non-monetary obligations, including indemnification of Landlord from any third-party claims that may arise during the interim period, pursuant to 11 U.S.C. §365(b)(1), (3).; and

- Granting Landlord such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

DATED: February 25, 2025          PROCOPIO, CORY, HARGREAVES &
                                  SAVITCH LLP


By:  */s/ Gerald P. Kennedy*
     Gerald P. Kennedy
     PROCOPIO, CORY, HARGREAVES &
        SAVITCH LLP
     525 "B" Street, Suite 2200
     San Diego, CA 92101
     Telephone: (619) 238-1900
     Fax: (619) 235-0398
     E-Mail: gerald.kennedy@procopio.com
     Attorney for Mann Enterprises Inc.

- 13 -

## CERTIFICATE OF SERVICE

I certify that on February 25, 2025, a copy of the foregoing **OBJECTION OF LANDLORD MANN ENTERPRISES, INC. TO NOTICE OF WINNING BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS** was filed electronically.  Notice of this filing will be sent to all parties registered to receive electronic notices through the Court's CM/ECF system. Parties may access this filing through the Court's PACER system.


DATED:  February 25, 2025           PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


                                    By:  _/s/ Gerald P. Kennedy_____
                                         Gerald P. Kennedy (CA Bar No. 105887)
                                         PROCOPIO, CORY, HARGREAVES
                                         & SAVITCH LLP

- 14 -