EXHIBIT "1"

# LEASE AGREEMENT

Between

Mann Enterprises Inc.
"Landlord"

and

Jo-Ann Stores, LLC
"Tenant"

**SECTION 2. DEFINITIONS**

The terms listed below have the respective meanings as follows:

(a)     Additional Rent: Tenant's Proportionate Share of Taxes (Section 8), Tenant's Proportionate Share of Common Area Costs (Section 9), and Tenant's Proportionate Share of Insurance (Section 21) and all other amounts payable by Tenant to Landlord pursuant to the terms of this Lease other than Fixed Minimum Rent.

(b)     Commencement Date: (1) the 150th day after the Delivery Date; or (2) the day that Tenant opens for business in the Premises, whichever day first occurs. Notwithstanding anything to the contrary in this Lease, unless Tenant otherwise opens for business, and provided Tenant's Work is substantially complete and Tenant is not otherwise in default under this Lease, the Commencement Date shall not occur during any period that Tenant has not received the required governmental permits and approvals necessary for Tenant's occupancy (including a temporary certificate of occupancy), provided Tenant promptly applies for and diligently pursues obtaining such permits and approvals. Also, notwithstanding the foregoing, in no event shall Tenant be required to open or commence the payment of Rent during the period commencing November 15th and ending the next occurring January 31st ("Blackout Period"); and, if the Commencement Date would otherwise occur in the Blackout Period (except for the reason that Tenant opens for business), the Commencement Date shall be deemed to be the first day after the expiration of the Blackout Period. If Tenant opens during the Blackout Period, then the Commencement Date shall occur and Tenant is obligated to pay Rent.

(c)     Common Areas: the parking areas, driveways, aisles, sidewalks, malls (whether enclosed or unenclosed), truck storage areas, and other common, service and related areas and improvements within the Shopping Center, whether open to the public generally or for the non-exclusive use of one or more tenants, and whether or not shown on Exhibit B, but excluding the roof(s).

(d)     Default Rate: an annual rate of interest equal to ten percent (10%).

(e)     Delivery Date: the date that Landlord delivers the Premises to Tenant with all of the Delivery Requirements (as defined below) satisfied and Tenant accepts said delivery by written acknowledgement signed by Tenant's National Director of Real Estate, Manager of Store Development or Manager of Construction and Facilities (Tenant's Representative). Landlord will deliver a separate notice to Tenant ten (10) days prior to the proposed delivery date ("Delivery Notice"). The parties will use best efforts to meet, discuss and inspect Landlord's Work within said ten (10) day period, but in any event within twenty (20) days following Tenant's receipt of Landlord's notice. If all Delivery Requirements are met, Tenant shall accept the Premises subject to all Punchlist Items (as defined below). Tenant shall not unreasonably delay, condition or refuse its acceptance of the Premises. The Delivery Date shall not occur prior to the Estimated Delivery Date (regardless of whether Landlord has satisfied the Delivery Requirements prior to that date), except with Tenant's express written consent, in its sole discretion.

(f)     "Delivery Requirements" means the following:

5

#2568 Laguna Niguel Promenade (Laguna Niguel, CA)

the Site Plan is approximately 154,475 square feet, which (except for cost pools where Tenant's Proportionate Share is based on the GLA of the building in which the Premises is located) shall continue to be used as the denominator in the event the Shopping Center's GLA changes and that change would have otherwise increased Tenant's Proportionate Share.

(j)     Hazardous Materials: See Section 35.

(k)     HVAC: heating, ventilating and air conditioning exclusively serving the Premises.

(l)     Landlord's Work: the work to be performed by or at the direction of Landlord in constructing and/or remodeling the Premises and related improvements as more particularly specified in Exhibit C and in Section 10 and 18 below.

(m)    Laws: any and all laws, codes, ordinances or regulations passed into existence by any Public Entity (as defined below) now or hereinafter in existence.

(n)     Lease Year: a period of twelve (12) consecutive calendar months during the Term. The first Lease Year (or Lease Year One) begins on the first day of February following the Commencement Date, unless the Commencement Date is the first day of February, in which event the first Lease Year begins on the Commencement Date. The first Lease Year shall include the first Partial Lease Year, if any. Rent and any limitations on such Rent for purposes of any Partial Lease Year shall be proportionately adjusted based upon the actual number of days of such Partial Lease Year in relation to the number of days in a full Lease Year.

(o)     Outside Delivery Date: March 6, 2023 (not subject to Unavoidable Delay but subject to Tenant Delays).

(p)     Partial Lease Year: the period, if any, of fewer than twelve (12) consecutive calendar months between the Commencement Date and the next occurring February 1 and the period, if any, of less than twelve (12) consecutive calendar months between the last day of the last Lease Year and the expiration of the Term.

(q)     Permitted Use: Subject to all prohibited uses as set forth on Exhibit F (the "Prohibited Uses") and all exclusive uses by another tenant in effect in the Shopping Center as of the Effective Date hereof (the "Restricted Uses of Other Tenants"), which Restricted Uses of Other Tenants as set forth on Exhibit F, the sale of fabrics of all kinds; goods sold by the yard; patterns; knitting supplies, needlepoint, macramé; art materials and supplies; finished crafts, craft materials and supplies; educational aids, materials and supplies; yarns; all types of notions; floral products, artificial flowers and accessories; scrapbooks and scrapbooking supplies and materials; framed artwork; picture frames, framing (both readymade and custom made) and framing materials and supplies; fabric care items; foam products; ceramics; wearable art and wearable art supplies; miniatures, dolls, hobby items; sewing machines, sewing machine furniture; irons, ironing boards; seasonal merchandise; custom services and custom products using arts and craft and sewing components including, but not limited to, quilting, bow-making, window treatments, floral design, fashion sewing, instructional classes, materials and services; and the incidental sale of (defined as no more than ten percent (10%) of any individual following item) baskets, wicker

items; housewares; linens, curtains, towels, pillows; drapery and upholstery materials; draperies, drapery hardware; blinds, shades, shutters and window treatments; do-it-yourself products and accessories; bridal apparel and accessories, wedding supplies; gift items, cards, party supplies; paper goods, stationery; candles, candlesticks, brass and pottery; indoor and outdoor house decorating products and accessories; furniture; prepackaged and unpackaged food and food products, coffee, tea, and assorted beverages; instructional books and tapes; children's books; toys; vacuum cleaners, lamps, small household appliances; products, accessories related to all of the foregoing, and other items and services customarily offered for sale by a fabric, craft or general merchandise store, and such other related merchandise and services typically offered in the stores operated by Tenant under the name Jo-Ann, Jo-Ann Fabrics and Crafts, JOANN or such other name under which Tenant may operate and for no other purpose without the consent of Landlord, which shall not be unreasonably withheld.

(r)     Premises: a portion of the Shopping Center as shown on the Site Plan and located within the Shopping Center, on the Shopping Center Site, consisting of space having approximately 31,518 square feet of Gross Leasable Area, with a minimum frontage of 163 feet (to the center of the side walls). The Premises shall exclude the exterior walls up to (but not including) the interior walls, the roof, the floor slab (excluding floor covering installed by Tenant) and areas beneath the floor slab.

(s)     Protected Area: the area shown on the Exhibit B Site Plan.

(t)     Protected Use: See Section 14 of this Lease.

(u)     Prototype Development Plans: Tenant's Prototype Development Plans attached as Exhibit D. It is agreed between the parties that, notwithstanding the Prototype Development Plans that are attached, Landlord's Approved Plans used to complete Landlord's Work shall be based upon the site specific Development Plans, and Tenant agrees to reimburse Landlord for any documented, out-of-pocket costs incurred as a result of conforming Landlord's Approved Plans to the site specific Development Plans as opposed to the Prototype Development Plans attached to this Lease.

(v)     Public Entity: the federal, state, county, municipal or other governmental unit, however denominated, and any agency, division, department or public official thereof, now or hereafter having jurisdiction, in any respect, over the Premises, the Shopping Center or Shopping Center Site.

(w)     Rent: Fixed Minimum Rent, Additional Rent, and all other monetary obligations of Tenant to Landlord under this Lease.

(x)     Shopping Center: the shopping center currently known as Laguna Niguel Promenade located in Laguna Niguel, CA, consisting of all buildings including the Premises and Common Areas, and other improvements located upon the Shopping Center Site, and outlined on Exhibit B.

(y) Shopping Center Site: the legal description set forth on Exhibit A, on which the Shopping Center is located, subject to Landlord's right to change the Shopping Center Site as set forth in this Lease.

(z) Substantially Complete: complete with the exception of minor Punchlist Items that can be completed within thirty (30) days without interfering with the performance of Tenant's Work.

(aa) Substitute Rent: fifty percent (50%) of the Fixed Minimum Rent in lieu of the Fixed Minimum Rent and Additional Rent otherwise required to be paid under this Lease. Tenant is not obligated to pay the Fixed Minimum Rent or Additional Rent otherwise due under this Lease at any time when Substitute Rent is payable pursuant to any provision of this Lease. In addition, Tenant shall not be obligated to be open or operating the Premises during any period it is entitled to pay Substitute Rent. Landlord acknowledges that certain violations of this Lease or specified events hereunder shall cause Tenant significant damage, but that actual damages shall be impossible to determine. Landlord agrees that the violations and other events specified in the Lease where Tenant is entitled to pay Substitute Rent are in fact cases where Tenant shall suffer significant damage, but that actual damages shall be impossible to determine. Landlord has agreed to Substitute Rent as liquidated damages because actual damages are impossible to determine and so liquidated damages represent a fair compromise and is not a penalty. Landlord has agreed to these provisions (and the entire Lease) voluntarily and after consultation with legal counsel.

(bb) "Tenant Delays" means, any delay or delays in the substantial completion of Landlord's Work or in the occurrence of any of the other conditions precedent to the Commencement Date as a result of Tenant's failure to timely approve any matter requiring Tenant's approval and was not deemed approved per the Lease.

(cc) Tenant's Proportionate Share: a fraction, the numerator of which is the Gross Leasable Area of the Premises and the denominator of which is the Gross Leasable Area of the Shopping Center. Notwithstanding the foregoing, if any portion of Common Area Costs, Taxes, or Insurance Costs are furnished or directly payable by an individual tenant or occupant as opposed to Landlord, the cost of the item(s) furnished or payable by such tenant or occupant shall not be included in Common Area Costs, Taxes, or Insurance Costs, as the case may be, and the square footage of the tenant or occupant furnishing or paying for such item(s) shall not be included in the calculation of Tenant's Proportionate Share of such item(s). Tenant's Proportionate Share shall be adjusted in the event of any increase or decrease in the Gross Leasable Area of all buildings within the Shopping Center or the Gross Leasable Area of the Premises. Notwithstanding anything to the contrary set forth herein, Tenant acknowledges and agrees that certain Common Area Costs apply only to the building in which the Premises is located. Tenant's Proportionate Share of such building related costs shall be a fraction, the numerator of which is the Gross Leasable Area of the Premises and the denominator of which is the Gross Leasable Area of the building in which the Premises is located (which shall at no event be less than 51,000). Further, Tenant shall not be required to pay Common Area Costs that apply to a building in which Tenant is not located.

(10) sales of fixtures;

(11) all sums and credits received in settlement of claims for loss or damage to merchandise;

(12) non-retail bulk sales of merchandise outside of the ordinary course of business on the Premises;

(13) tax exempt sales or merchandise donated or sold at a discount to charitable or non-profit organizations;

(14) fees for classes or demonstrations;

(15) the value attributed to merchandise taken in trade;

(16) referrals to affiliates of or other divisions of Tenant;

(17) fees for gift wrapping, mailing and other customer services provided on a not for profit basis;

(18) sales of lottery tickets, special event tickets and the like (but the commissions paid to Tenant shall be included in Gross Sales);

(19) the amount of credit sales and credit accounts incurred at the Premises which are written off as bad debts and deducted as an expense; and

(20) sale of patterns.

(c)  The Gross Sales of any Lease Year or Partial Lease Year, as the case may be, if any, have no bearing on or connection with the Gross Sales of any other Lease Year or Partial Lease Year.

(d)  Tenant shall deliver to Landlord within sixty (60) days after the end of each Lease Year a statement showing Gross Sales for such Lease Year (broken down on a monthly basis), certified as accurate by an officer of Tenant.

**SECTION 8. TAXES**

(a)  As of the Effective Date, Landlord covenants and warrants that the entire Shopping Center is located on tax parcel identification numbers 634-043-04, 634-043-05, 634-043-06, 634-043-07, and 634-043-08, that, to the best of Landlord's knowledge, the Tax Parcels does not extend beyond the perimeter of the Shopping Center Site. Once or twice per Lease Year, depending on when tax bills are issued by the government authority, Tenant must pay to Landlord the Tenant's Proportionate Share of real estate taxes ("Taxes") levied upon the Tax Parcel and paid by Landlord during each year of the Term, after reducing Taxes (1) by the amount of any

contributions for Taxes paid by any party having the right to use the Common Areas but not a tenant of the Shopping Center; and (2) by any rollback, discount for timely or early payment, credit or reduction that has been granted or issued to Landlord by any taxing authority or governmental group or agency. Tenant hereby agrees that all taxes, expenses and charges set forth in the tax bills attached hereto as Exhibit J are includable in Taxes payable by Tenant.

Tenant shall pay Tenant's Proportionate Share of Taxes within thirty (30) days after receipt of Landlord's statement assessing and prorating the Taxes, together with copies of receipted tax bills for which payment is sought and reasonable verification for the computation of Tenant's Proportionate Share. For the first Lease Year (calendar year 2022), Landlord estimates that Tenant's Proportionate Share of Taxes will be approximately $3.10 per square foot of Gross Leasable Area of the Premises for Taxes; and, Landlord represents that said amount is a good faith estimate of the actual Taxes that would be due if Tenant were paying Tenant's Proportionate Share of Taxes directly for said Lease Year.

(b)     In no event shall Tenant pay for Taxes for a time period longer than the Term.

(c)     The parties acknowledge that only Landlord has the right to dispute the assessed value of Shopping Center (which is the only way to attempt to control the real estate taxes). For this reason, Landlord shall have the duty to timely compare the then current value of the Shopping Center (utilizing the income approach, with a capitalization rate based upon recent sales(s) of comparable shopping centers) to the assessed value of the Shopping Center determined by the taxing authority. Based on such comparison, Landlord, in its sole discretion, shall have the right to pursue a reduction in Taxes. Tenant is responsible for its pro-rata share of all costs associated with pursuit.

(d)     If any Taxes may be paid in installments, subject to the exclusions below, only the installments coming due during the Term shall be included within Taxes.

(e)     Tenant must pay before delinquency all municipal, county and state taxes assessed during the Term against any leasehold interest and personal property of any kind, owned by or placed in, upon or about the Premises by Tenant.

(f)     Notwithstanding anything to the contrary, the following are excluded from Taxes:

(1)     Intentionally Omitted;

(2)     Any portion of the Taxes attributable to a revaluation of the Tax Parcel arising out of a sale or other change in the ownership thereof or of any interest therein more than once every five (5) years;

(3)     Any portion of the Taxes in the nature of fees, charges or assessments for governmental services or improvements related to the initial construction or any alteration, expansion or rehabilitation of the Shopping Center or other improvement of the Tax Parcel (beyond the upkeep and repair of the Shopping Center that is necessary to keep the same in first-class condition);

    (4) Any tax or fee that applies generally to all business owners or operators, as opposed to owners of real property;

    (5) Any impact fee, user fee, exaction fee, environmental fee or other tax paid as a prerequisite to construction of the Shopping Center, or any addition or improvement thereto;

    (6) Estate tax, inheritance tax, succession tax, capital levy tax, corporate franchise tax, margin tax, rent tax, profits tax, gross receipts tax, income tax, conveyance fee or transfer tax and the like;

    (7) Any assessment, bond, tax, or other finance vehicle that is (A) imposed as a result of Landlord's initial construction of the Shopping Center; or (B) used to fund construction of additions or improvements to the Shopping Center; and

    (8) Any penalty, interest or other charge attributable to Landlord's late or delinquent payment of Taxes.

**SECTION 9. COMMON AREA COSTS**

  (a) In addition to payment of the Fixed Minimum Rent, Tenant shall pay to Landlord Tenant's Proportionate Share of Landlord's reasonable and actual costs applicable to the Shopping Center for the operation, management, maintenance, repair and replacement of the Common Areas ("Common Area Costs"), after reducing such Common Area Costs by (1) the amount of any contributions toward Common Area Costs paid by tenants paying such costs directly to a third-party provider or any party not a tenant of the Shopping Center; and (2) all fees and revenue collected or paid to Landlord for parking in, at, on, near or around the Shopping Center. Subject to the cap in Section 49, Tenant must pay to Landlord in twelve (12) equal installments, each in advance on the first day of every calendar month, an estimated sum toward Tenant's Proportionate Share of Common Area Costs. During the first Lease Year, the actual amount paid by Tenant is estimated the rate of $2.08 per year multiplied by the Gross Leasable Area of the Premises, which represents Landlord's good faith estimate of actual Common Area Costs for the first Lease Year. For Lease Years after the first Lease Year, the monthly sum may be adjusted annually by Landlord to reflect actual changes in the Common Area Costs, subject to the cap in Section 49 below.

  (b) On or before May 1 of each year, Landlord must provide Tenant electronically (via email) (provided, however, any legal notice shall comply with the notice set forth in Section __ hereof) with a statement assessing and prorating the Common Area Costs for the prior Lease Year, together with a certified statement of the Gross Leasable Area of the Shopping Center and copies of all bills for which payment is sought. Tenant must pay to Landlord, within thirty (30) days of such receipt, any deficiency owed to Landlord. If Landlord fails to timely provide the annual reconciliation statement and such failure continues for an additionally thirty (30) days following written notice from Tenant informing Landlord of such failure, then Tenant has the right to

temporarily suspend payment of Common Area Costs until such statement is received. Upon receipt of the annual reconciliation statement, Tenant must pay to Landlord, within thirty (30) days of such receipt, any suspended payments as well as any deficiency owed to Landlord. If Tenant's estimated payments are in excess of Tenant's Proportionate Share in any Lease Year, then such excess shall be applied to the following Lease Year unless such Lease Year is the final Lease Year of Tenant's occupancy, in which case Landlord must refund such overpayment to Tenant within thirty (30) days after delivery of the annual statement.

(c)  Notwithstanding anything to the contrary, in no event shall Tenant's Proportionate Share of Controllable Common Area Costs shall not increase by more than five percent (5%) per year (non-cumulative basis) above that amount actually paid by Tenant for the previous Lease Year. "Controllable Common Area Costs" means all Common Area Costs during a particular Lease Year except for trash costs, utility costs and security.

(d)  Tenant and its agent, at Tenant's sole cost and expense, have the right to audit and inspect Landlord's books and records pertaining to Common Area Costs, Taxes and Insurance Costs, at any time upon fifteen (15) days' written notice; provided, however such right must be exercised within three (3) years after receipt of the annual statement set forth in Section 9(c) above. At the expiration of such three (3) year period, Tenant shall not be entitled to question the accuracy of any such annual statement. Additionally, Tenant's right to inspect Landlord's books and records shall be restricted to one (1) inspection per calendar year. If Tenant timely notifies Landlord of its election to review and inspect Landlord's books and records, then Landlord shall cooperate with Tenant and supply Tenant all records and data related to Landlord's annual statement electronically for purposes of its audit (with Landlord certifying to Tenant that such records and data being sent to Tenant electronically are complete, true and correct) and in no event shall Tenant have the right to perform such review and inspection at Landlord's office or the Shopping Center. If any audit or review of Landlord's books and records determines that Tenant has overpaid any Common Area Costs, Taxes or Insurance Costs, then Tenant has the right to offset any overpayment against Rent, but if Tenant is in the last Lease Year of the Term, then Landlord must refund the overpayment to Tenant within thirty (30) days after notice from Tenant. If any such audit or review determines that Tenant has overpaid any Common Area Costs, Taxes or Insurance by more than five percent (5%) when combined, then Landlord shall pay Tenant the reasonable cost of such audit or review (not to exceed $3,000.00); otherwise, the audit or review shall be at Tenant's sole cost and expense.

(e)  The payment of such Common Area Costs is in consideration of Landlord's maintenance, operation, management, repair and replacement of the Common Areas, and Landlord must use such payment for that purpose.

(f)  Notwithstanding anything to the contrary, the following are excluded from Common Area Costs:

> (1)  the original cost, or depreciation of the original cost, of constructing, erecting and installing the Shopping Center, the Common Areas, common facilities and related services;

#2568 Laguna Niguel Promenade (Laguna Niguel, CA)

(2) principal and interest payments pursuant to any mortgage that encumbers the Premises or Shopping Center;

(3) Taxes", but this exclusion does not limit Landlord's rights of reimbursement, if any, under Section 8;

(4) administrative charges, management fees, fees based upon a percentage calculation leasing commissions or any other fee or charge regardless of the name (including, without limitation, salaries of all kinds, social security, taxes, insurance, part-time or full-time labor, any fees paid to manage the Shopping Center including those paid to a third party management company, and similar costs and expenses) other than the ten percent (10%) management fee for the management and operation of the Shopping Center;

(5) expenses incurred due to the negligence or willful misconduct of Landlord or any occupant of the Shopping Center or their respective agents or employees;

(6) costs and expenses incurred for repairs or replacements due to faulty construction, faulty workmanship or structural defects;

(7) expenses related to individual occupants of the Shopping Center or to a particular tenant space, or to buildings;

(8) any costs, fees, fines or penalties, or interest thereon, related to violations by Landlord or any occupant of any Law; and the cost of compliance with Laws enacted after the date hereof;

(9) capital expenditures (a capital expenditure is defined as an item or items, when initially installed, cost Seven Thousand Dollars ($7,000.00) or more and having a useful life of at least five (5)); other than a "Permitted Capital Expenditure." A Permitted Capital Expenditure is limited to the following: repaving of the parking lot(s) not more frequently than once every seven (7) years; provided, however, that each Permitted Capital Expenditure must be amortized on a straight-line basis over the useful life of the related improvement based on GAAP, but in no event less than five (5) years, and only the amount of the annual amortization shall be included in Common Area Costs for any Lease Year within the useful life so determined;

(10) reserves for replacement;

(11) costs for insuring the Common Areas, but this exclusion does not limit Landlord's rights of reimbursement, if any, under Section 21;

(12) cost of advertising, marketing, decorating or redecorating;

(13) all costs and expenses relative to the solicitation and execution of leases for space in the Shopping Center;

(14) all costs and expenses related to the operation, maintenance and repair of any garage space in the Shopping Center;

(15) the costs of any repair or replacement made by Landlord because of the total or partial destruction of the Shopping Center or the condemnation of a portion of the Shopping Center or the Shopping Center Site;

(16) any operating expense paid to a related corporation, entity or person that is materially in excess of that amount that would have been paid absent such relationship;

(17) the cost of overtime or other expenses incurred by or on behalf of Landlord to correct any default of Landlord or for work performed by Landlord where such work is expressly provided in this Lease to be borne at the expense of Landlord;

(18) any cost that is paid or reimbursed by third parties, including warranties and guarantees and including any cost that is paid or reimbursed to Landlord by insurance (or would have been covered by insurance required to be maintained by Landlord);

(19) the amount of any insurance deductible or self-insured retentions;

(20) payments made under any easement, operating agreement, license, restrictive covenant, or any instrument relating to the payment or sharing of costs among property owners;

(21) costs disproportionately incurred by or on behalf of one or more tenants, such as a food court area; and

(22) costs and expenses incurred with respect to the correction, disposal, investigation, removal, transportation, or treatment of Hazardous Material, except for costs related to the cleaning of typical gas and oil spills from automobiles in the Common Areas and/or cleaning of bodily fluids in the Common Areas.

(g)     Landlord will use commercially reasonable efforts to keep Common Area Costs to a minimum subject, however, to the obligation of Landlord to repair, replace, maintain, operate and manage the Shopping Center as a first-class retail project.

(h)     There shall be no duplication of costs between those payable by Tenant within this Section and under this Section and any other section of this Lease.

a final, unconditional lien waiver from Tenant's general contractor and all subcontractors that performed Ten Thousand ($10,000.00) or more of work along with a copy of the final certificate of occupancy; provided, however, if the lien waiver and release is not provided, in no event shall the balance of the Construction Allowance due to Tenant be withheld beyond the statutorily defined period in which liens may be filed, if no liens have been filed during said period. If Landlord fails to pay Tenant any portion of the Construction Allowance in accordance with this Lease, then Tenant shall have the right (without limiting any other right or remedy of Tenant) to deduct such amount from Rent (as a setoff or as recoupment in the case of bankruptcy), together with interest thereon at the Default Rate. Landlord shall wire-transfer the Construction Allowance to Tenant's bank as follows: Bank of America, 100 West 33rd Street, New York, NY 10001, ABA: 026009593 (in the event Landlord elects to submit an ACH transmission, the number is: 111000012); JOANN Account No.: 4427216208; Account Name: Jo-Ann Stores, LLC Store #2568.

**SECTION 11. USE**

The Premises may be used solely for the Permitted Use and for no other purpose without the consent Landlord, which consent shall not be unreasonably withheld. In no event shall the Premises be used in violation of the Prohibited Uses or the Restricted Uses of Other Tenants as are set forth on Exhibit F attached hereto. Landlord represents that the use restrictions set forth in Exhibits F accurately reflect exclusives and prohibited uses and encumbrances that presently (as of the Effective Date) encumber the Premises as terms of existing leases of Shopping Center premises (the uses covered by such restrictions are collectively referred to as the "Restricted Uses" and individually as a "Restricted Use"). Upon the expiration or earlier termination of the lease or other written instrument containing a Restricted Use, the Premises shall not be subject to such Restricted Use under this Lease and such use shall no longer be a Restricted Use. Upon the request of Tenant, Landlord promptly shall advise Tenant which Restricted Uses still encumber the Premises and shall furnish to Tenant the documentary support therefor.

**SECTION 12. COMMON AREAS**

(a) Landlord must operate, manage, repair, replace and maintain the Shopping Center (for normal retail uses customarily conducted in similar shopping centers in the metropolitan area) and in a first-class, neat and clean condition in compliance with all Laws. Landlord's obligations (which are at its own cost and expense but reimbursable as Common Area Costs (except as otherwise specified in Section 9(f)) with respect to the Common Areas include, but are not limited to:

    (1) Managing, operating, maintaining, repairing and replacing lighting in the Common Areas;

    (2) Managing, operating, maintaining, repairing and replacing the sidewalks, including restriping and maintenance, repair and replacement of paved and parking areas in a level, smooth and evenly covered condition with the type of surfacing material originally installed or such substitute as shall in all respects be equal in quality to the original;

26

#2568 Laguna Niguel Promenade (Laguna Niguel, CA)

Exhibit F

**Restricted Uses of Other Tenants and Prohibited Uses**

Without Landlord's prior written consent and except to the extent specifically permitted in the Lease, none of the following shall occur on the Premises:

1.  the sale or display of paint, hardware, lumber, building materials, nursery and garden supplies, electrical or plumbing supplies, seasonal outdoor furniture, or any combination of any of the above or any home improvement business or other business, conducted separately or as a part, department or concession of another business, that regularly engages in the sale of one or a range, or any combination, of the above products.

2.  [Intentionally Omitted].

3.  Any dry cleaning or laundering services whatsoever.

4.  Any hair care, manicure or pedicure services.

5.  [Intentionally Omitted].

6.  The sale, rental or display of audio or video products.

7.  The sale, rental, display or exhibition of pornographic material.

8.  any amusement facilities including, but not limited to, bowling alley, skating rink, dance hall, amusement center, movie theater, theater, video and other games.

9.  Any flea market or similar sales or second hand sales.

10. other than services related to the Permitted Use, any non-retail activities whatsoever including (but not limited to) any restaurant, meeting hall, banquet hall, health spa, aerobic studio, dance studio, commercial or professional office, classroom, religious facility, industrial use, warehouse use, governmental use, post office, travel services, real estate services, insurance services, escrow services, medical services, legal services, optometrist services or financial services.

11. Any auto, truck, boat or other vehicle sales or repairs or any car wash.

12. Any billiard or pool tables.

13. Any massage services.

14. Any noxious or unreasonably offensive activities due to the emission of noise, smoke, dust, odors or etc.

15. Any undue noise, litter or odor.

16. Any health spa, exercise club, or other similar operations.

17. Any funeral parlor.

18. the sale of any postal or mail type products or services, packaging, shipping, business support services, mailbox rental, photocopy services, notary services, key duplication, word processing or email services.

19. The sale or display of furniture.

Exhibit F

EXHIBIT "2"

**Jo-Ann Fabrics #2568 - Laguna Niguel, CA - #214**

|  | Sunbelt's Charges | | | | | |
|---|---|---|---|---|---|---|
| **Month** | **CAM** | **RE Tax** | **Rent** | **Total Due** | **Payment** | **Outstanding** |
| **Dec-24** | 6,382.40 |  | 47,277.00 | **53,659.40** | (53,659.40) | - |
| **2024/2025 RET 1st half** |  | 43,199.32 |  | **43,199.32** | - | 43,199.32 |
| **Jan-25 Pre Filing (01/01-01/14)** | 3,753.13 |  | 21,350.90 | **25,104.03** | - | 25,104.03 |
| **Jan-25 Stub Rents (01/15-01/31)** | 4,557.37 |  | 25,926.10 | **30,483.47** | - | 30,483.47 |
| **Feb-25** | 8,310.50 |  | 47,277.00 | **55,587.50** | (53,659.40) | 1,928.10 |

**100,714.92  Total Outstanding**