## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 6, 106, 506** |

### FINAL ORDER
### (I) AUTHORIZING THE DEBTORS TO USE CASH
### COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
### TO PREPETITION SECURED CREDITORS, (III) MODIFYING
### THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of JOANN Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases" and each, a "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of the Interim Order (as defined herein) and a final order (this "Final Order"), among other things:

    a.    authorizing the Debtors to use the "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition ABL Lenders and Prepetition FILO

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Lenders (each as defined herein) and the Prepetition Term Loan Lenders (the "Prepetition ABL and FILO Lenders' Cash Collateral" and the "Prepetition Term Loan Lenders' Cash Collateral," respectively, and together, the "Cash Collateral"), that the Debtors are holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined herein);

b.    authorizing the Debtors to provide adequate protection to the Prepetition Secured Creditors, including with respect to the extent of any Diminution in Value (each as defined herein), which adequate protection shall include certain adequate protection liens, claims, and payments described herein;

c.    approving certain stipulations by the Debtors with respect to the Prepetition Secured Creditors, the Prepetition Credit Documents, and the Prepetition Collateral (each as defined herein) as set forth herein;

d.    waiving any applicable stay and provisions for immediate effectiveness of this Final Order;

e.    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

f.    granting related relief; and

this Court having held the initial hearing on the Motion on January 16, 2025 (the "Interim Hearing") and having entered the *Interim Order (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 106] (the "Interim Order"); and having considered the final relief requested in the Motion, the exhibits attached thereto, including the declaration of Jeffrey Dwyer in support of the Motion; and the Court having set February 26, 2025 for a final hearing on the Motion (the "Final Hearing") to consider entry of this Final Order authorizing, among other things, the Debtors' use of Cash Collateral on a final basis; and notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), 9014, and all applicable Local Rules; and all objections, if any, to the final relief requested in the

Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the final relief requested is fair, reasonable, and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it further appearing that the Debtors' use of Cash Collateral in accordance with the provisions of this Final Order represents a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      _Petition Date_.  On January 15, 2025 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the Chapter 11 Cases.

B.      _Debtors in Possession_.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Final Order are sections 105, 361, 362, 363, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

       D.    *Committee Formation*.  On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases, pursuant to section 1102 of the Bankruptcy Code [Docket No. 198] (the "Committee").

       E.    *Notice*.  The Final Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Order.

       F.    *Debtors' Stipulations, Releases, and Acknowledgements*.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Secured Creditors consenting to the Debtors' access to and use of the Cash Collateral and without prejudice to the rights of the parties-in-interest as set forth in paragraph 29 herein, the Debtors admit, stipulate, acknowledge, and agree, as follows (collectively, the admissions, stipulations, acknowledgements, and agreements set forth in this paragraph F, the "Debtors' Stipulations"):

       (i)    *Prepetition ABL/FILO Obligations*.  Jo-Ann Stores, LLC ("Borrower"), Needle Holdings LLC ("Holdings"), certain of the other Debtors (together with the guarantors of the ABL Facility (as defined herein) and the FILO Term Loan Facility (as defined herein), collectively, the "Prepetition ABL and FILO Obligors"), Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "Prepetition ABL Agent"), for its own benefit and the benefit of the lenders and letter of credit issuers from time to time party under

4

the ABL Facility (the "Prepetition ABL Lenders") and the lenders from time to time party under the FILO Term Loan Facility (the "Prepetition FILO Lenders" and, together with the Prepetition ABL Agent, the Prepetition ABL Lenders, and the Prepetition FILO Lenders, the "Prepetition ABL and FILO Lenders"), and 1903P Loan Agent, LLC (the "Prepetition FILO Agent"), as the FILO Documentation Agent (as defined in the ABL/FILO Credit Agreement (as defined herein)), are party to that certain *Second Amended and Restated Credit Agreement* dated as of April 30, 2024 (as amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "ABL/FILO Credit Agreement," and together with the Loan Documents (as defined therein), collectively, the "Prepetition ABL and FILO Documents," the revolving facility thereunder, the "ABL Facility," the FILO facility thereunder (as defined therein, the "FILO Term Loan Facility," and together with the ABL Facility, the "Prepetition ABL and FILO Facilities")). Pursuant to the Prepetition ABL and FILO Documents, the Prepetition ABL and FILO Lenders provided revolving credit, certain banking products, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL and FILO Obligors. Under the Prepetition ABL and FILO Documents, the Prepetition ABL Lenders provided the Prepetition ABL and FILO Obligors with, among other things, up to $500,000,000 in Revolving Credit Commitments (as defined in ABL/FILO Credit Agreement), including a $125,000,000 Letter of Credit Sublimit (as defined in the ABL/FILO Credit Agreement). Pursuant to the Prepetition ABL and FILO Documents, the Prepetition FILO Lenders provided the Prepetition ABL and FILO Obligors with, among other things, up to $100,000,000 in FILO Commitments (as defined in the ABL/FILO Credit Agreement). As of the Petition Date, the following amounts were outstanding under the Prepetition ABL and FILO Facilities: (a) an aggregate outstanding principal amount of not less

than approximately $331,600,000 in Revolving Loans (as defined in the ABL/FILO Credit Agreement); (b) approximately $20,800,000 in existing Letters of Credit (as defined in the ABL/FILO Credit Agreement); (c) an aggregate outstanding principal amount of not less than $109,876,928 in FILO Loans, inclusive of the FILO Prepayment Premium (as defined in the Prepetition ABL/FILO Credit Agreement) pursuant to the terms of the Prepetition ABL and FILO Documents; and (d) other outstanding obligations under the Prepetition ABL and FILO Documents, including, without limitation, all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), reimbursement obligations (contingent or otherwise) in respect of letters of credit, treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition ABL and FILO Obligors' obligations pursuant to, or secured by, the Prepetition ABL and FILO Documents, in each case constituting "Obligations" (as defined in the ABL/FILO Credit Agreement) and due and payable pursuant to the terms and conditions of the ABL/FILO Credit Agreement (collectively, the "Prepetition ABL/FILO Obligations").  The Prepetition ABL/FILO Obligations are secured by: (x) first priority security interests in and liens on the ABL Priority Collateral (as defined in the ABL and Term Loan Intercreditor Agreement (as defined herein)); and (y) second priority security interests in and liens on the Term Priority Collateral (as defined in the ABL and Term Loan Intercreditor Agreement) (the ABL Priority Collateral and the Term Priority Collateral together, the "Prepetition Collateral" and the liens and security interests in clauses (x) and (y), the

"Prepetition ABL and FILO Liens").  The respective rights and obligations of the Prepetition FILO Lenders and the Prepetition FILO Agent are set forth in the Prepetition Agreement Among FILO Lenders (as defined herein).

(ii)     *Prepetition Term Loan Obligations*.  The Borrower, Holdings, certain of the other Debtors (together with the guarantors of the Prepetition Term Loan Facility, collectively, the "Prepetition Term Loan Obligors"), Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent (in such capacities, the "Prepetition Term Loan Agent" and, together with the Prepetition ABL Agent and the Prepetition FILO Agent, the "Prepetition Agents") for its own benefit and the benefit of the lenders, and the lenders from time to time party thereto (the "Prepetition Term Loan Lenders" and, together with the Prepetition ABL and FILO Lenders, the "Prepetition ABL, FILO, and Term Loan Lenders" and, together with the Prepetition Agents, the "Prepetition Secured Creditors") are party to that certain *Credit Agreement*, dated as of April 30, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement," and together with the Loan Documents (as defined therein), the "Prepetition Term Loan Documents" and, together with the Prepetition ABL and FILO Documents and the ABL and Term Loan Intercreditor Agreement, the "Prepetition Credit Documents") and the term loan facility thereunder, the "Prepetition Term Loan Facility" and, together with the Prepetition ABL and FILO Facilities, the "Prepetition Loan Facilities").  As of the Petition Date, the Prepetition Term Loan Obligors were obligated under the Prepetition Term Loan Credit Agreement to the Prepetition Term Loan Lenders in the aggregate outstanding principal amount of not less than approximately $153,400,000, plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys'

fees, accountants' fees, auditor fees, appraisers' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition Term Loan Obligors' obligations pursuant to, or secured by, the Prepetition Term Loan Documents, in each case constituting "Obligations" (as defined in the Prepetition Term Loan Credit Agreement) and due and payable pursuant to the terms and conditions of the Prepetition Term Loan Credit Agreement (the "Prepetition Term Loan Obligations" and, together with the Prepetition ABL/FILO Obligations, the "Prepetition Secured Obligations").   The Prepetition Term Loan Obligations are secured by:  (a) first priority security interests in and liens on the Term Priority Collateral; and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "Prepetition Term Loan Liens" and, together with the Prepetition ABL and FILO Liens, the "Prepetition Liens"), subject in all respects to the ABL and Term Loan Intercreditor Agreement.

(iii)     *ABL and Term Loan Intercreditor Agreement*.   Pursuant to that certain *Second Amended and Restated Intercreditor Agreement*, dated as of April 30, 2024, by and among the Prepetition ABL Agent and the Prepetition Term Loan Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "ABL and Term Loan Intercreditor Agreement"), the Prepetition ABL Agent and Prepetition Term Loan Agent have agreed, among other things, and as more specifically set forth therein, on the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Creditors with respect to the Prepetition Collateral.

(iv)    *Prepetition Agreement Among FILO Lenders.*  Pursuant to that certain *Amended and Restated Agreement Among Lenders*, dated as of April 30, 2024, by and among the Prepetition FILO Lenders and the Prepetition FILO Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Agreement Among FILO Lenders," and together with the ABL and Term Loan Intercreditor Agreement, the "Intercreditor Agreements"), the Prepetition FILO Lenders and the Prepetition FILO Agent have agreed, among other things, and as more specifically set forth therein, the respective rights, obligations, and priorities of each class of the Prepetition FILO Lenders with respect to matters set forth therein.

(v)    *Prepetition Secured Obligations.*  Each of the Debtors acknowledge that the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, (a) constitute legal, valid, binding, and non-avoidable obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Creditors, respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, disgorgement, impairment, recovery, subordination (equitable or otherwise), or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, "Successor Cases").

(vi)    *Prepetition Liens.*  The Debtors acknowledge that as of the Petition Date the Prepetition Liens granted to the Prepetition Secured Creditors (a) constitute legal, valid,

binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), non-avoidable, and properly perfected security interests in and liens on the Prepetition Collateral, and were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, (b) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, and (c) are senior in priority over any and all other security interests in and liens on the Prepetition Collateral; *provided* that (i) the Prepetition ABL and FILO Liens are junior in priority to the Prepetition Term Loan Liens on the Term Priority Collateral and to certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition ABL and FILO Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition ABL and FILO Documents (the "ABL Prepetition Permitted Liens"), and (ii) the Prepetition Term Loan Liens are junior in priority to the Prepetition ABL and FILO Liens on the ABL Priority Collateral and to certain liens senior in priority by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition Term Loan Documents (the "Term Loan Prepetition Permitted Liens," and together with the ABL Prepetition Permitted Liens, the "Prepetition Permitted Liens").[4]

---

[4]    As used in this Final Order, no reference to the ABL Prepetition Permitted Liens, the Term Loan Prepetition Permitted Liens, or the Prepetition Permitted Liens shall refer to or include the Prepetition ABL and FILO Liens or the Prepetition Term Loan Liens.

(vii)  _No Challenges / Claims_.  No offsets, causes of action, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.  The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, and the aggregate value of the ABL Priority Collateral exceeds the amount of, collectively, the "Revolving Obligations" arising under and as defined in the ABL/FILO Credit Agreement (the "Prepetition Revolving Obligations") and the "FILO Obligations" arising under and as defined in the ABL/FILO Credit Agreement (the "Prepetition FILO Obligations").

(viii)  _Cash Collateral_.  All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the

Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors, subject in all respects to the ABL and Term Loan Intercreditor Agreement.

(ix)    *No Control*.  None of the Prepetition Agents or the other Prepetition Secured Creditors controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(x)    *Release*.  Each of the Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the Prepetition Agents, the other Prepetition Secured Creditors, solely in their capacities as such, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising

under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation:  (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Secured Obligations, the Prepetition Credit Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the Interim Order or this Final Order with respect to the Prepetition Secured Obligations or the Prepetition Credit Documents.

   G. *Findings Regarding the Use of Cash Collateral*.

   (i) *Request for Use of Cash Collateral*.  The Debtors seek authority on a final basis to use Cash Collateral on the terms described herein to administer the Chapter 11 Cases and fund operations.

   (ii) *Consent to Use of Cash Collateral*.  The Prepetition ABL and FILO Lenders have either consented, or are deemed to consent to, the Debtors' use of the Prepetition ABL and

FILO Lenders' Cash Collateral, and to the subordination of the Prepetition ABL and FILO Liens to the Carve Out on the terms and conditions set forth in this Final Order. The Prepetition Term Loan Lenders have either consented to, or are deemed to consent, to the use of the Prepetition Term Loan Lenders' Cash Collateral and to the subordination of the Prepetition Term Loan Liens to the Carve Out on the terms and conditions set forth in this Final Order.

(iii)    *Continuing Need for Use of Cash Collateral*.  The Debtors' use of Cash Collateral as provided for herein is necessary and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates and parties in interest.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.

(iv)    *Adequacy of the Approved Budget*.  The Debtors have prepared and delivered to the Prepetition Agents, a budget, a summary copy of which is attached as **Exhibit 4** hereto (as the same may be modified from time to time consistent with the terms of this Final Order, and once approved by each of the Prepetition Agents (as applicable) in consultation with the Committee, the "Approved Budget") (it being understood that the budget summarized on **Exhibit 4** hereto has already been so approved)).  The Approved Budget has been reviewed by the Debtors, their management, and their advisors.  The Debtors, their management, and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during

the period covered by the Approved Budget were developed using reasonable assumptions.  As a condition to the authorization to use Cash Collateral, the Prepetition ABL Agent, Prepetition Term Loan Agent, and Prepetition ABL, FILO, and Term Loan Lenders require, and the Debtors have agreed, that proceeds of Cash Collateral (including from Prepetition Collateral and Postpetition Collateral) shall be used in a manner consistent with the terms and conditions of this Final Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined herein)).

H.    *Prepetition ABL and FILO Loan Lenders' Adequate Protection*.  Until such time as the Prepetition ABL/FILO Obligations are Paid in Full,[5] the Prepetition ABL and FILO Lenders are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code and as set forth in paragraph 4 of this Final Order resulting from, among other things:  (i) the use of the Prepetition ABL and FILO Lenders' Cash Collateral; (ii)  the use, sale, lease or other proven Diminution in Value of the ABL Priority Collateral; and/or (iii) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the ABL Priority Collateral, including the Prepetition ABL and FILO Lenders' Cash Collateral.  As adequate protection, the Prepetition ABL and FILO Lenders shall receive, among

---

[5]   "Paid in Full" or "Payment in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility and this Final Order, the cash collateralization or repayment in full in cash of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable facility.  No facility or its obligations thereunder shall be deemed to have been Paid in Full until such time as, (a) with respect to the applicable facility, the Challenge Deadline (as defined herein) shall have passed without the timely and proper commencement of a Challenge, or, if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge, (b) any and all applicable adequate protection payments have been made, and (c) with respect to the Prepetition Revolving Obligations or the Prepetition FILO Obligations, a countersigned payoff letter has been received by the Prepetition ABL Agent or the Prepetition FILO Agent (as applicable) in form and substance satisfactory to the applicable Prepetition ABL Agent and Prepetition FILO Agent, each in its sole discretion, including a release from any further obligations or subordination with respect to the Carve Out.

other things, the Adequate Protection Liens (as defined herein) to secure the applicable Prepetition

ABL/FILO Obligations, the Adequate Protection Superpriority Claims with respect to the

applicable Prepetition ABL/FILO Obligations, and the Adequate Protection Payments (as defined

herein), as applicable.

I.    *Prepetition Term Loan Lenders' Adequate Protection*.    Until such time as the

Prepetition Term Loan Obligations are Paid in Full, the Prepetition Term Loan Lenders are entitled

to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code and

as set forth in paragraph 4 of this Final Order resulting from, among other things:  the (i) use of

the Prepetition Term Loan Lenders' Cash Collateral, (ii) use, sale, lease or other proven

Diminution in Value of the Term Priority Collateral; and/or (iii) imposition of the automatic stay

under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the

Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the

use of the Term Priority Collateral, including the Prepetition Term Loan Lenders' Cash Collateral.

As adequate protection, the Prepetition Term Loan Lenders shall receive the Adequate Protection

Liens to secure the applicable Prepetition Term Loan Obligations, the Adequate Protection

Superpriority Claims with respect to the applicable Prepetition Term Loan Obligations, and the

Adequate Protection Payments, as applicable.

J.    *Sections 506(c) and 552(b)*.    The Debtors have agreed as a condition to the use of

Cash Collateral that as a material inducement to the Prepetition ABL and FILO Lenders' and the

Prepetition Term Loan Lenders' consent to the use of Cash Collateral, and in exchange for the

consensual use of Cash Collateral consistent with the Approved Budget (subject to Permitted

Variances) and the terms of this Final Order, each of the Prepetition Agents, the Prepetition ABL

and FILO Lenders, and Prepetition Term Loan Lenders are entitled to receive: (x) a waiver of any

equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below; and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.      *Good Faith*.  The terms and conditions of this Final Order: (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent and sound business judgment; and (c) are supported by reasonably equivalent value and consideration.  The use of Cash Collateral was negotiated in good faith and at arm's length among the Debtors and the Prepetition Secured Creditors.

L.      *Prepetition Permitted Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the Prepetition Secured Creditors, or the Committee, to challenge the validity, priority, enforceability, seniority, perfection, or extent of any alleged Prepetition Permitted Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition Liens as such claims had on the Petition Date.

M.      *Intercreditor Agreements*.  Pursuant to section 510 of the Bankruptcy Code, except as provided herein, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Credit Documents, (a) shall remain in full force and effect, (b) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Creditors, (c) shall govern the relative priorities, rights, and remedies of the

Prepetition Secured Creditors, other than to the extent set forth in this Final Order, and (d) shall not be deemed to be amended, altered, or modified by the terms of this Final Order except as specifically set forth herein.

N.      *Committee Settlement*. In connection with the sale of the Debtors' assets to GA Joann Retail Partnership, LLC ("GAJ") and the Prepetition Term Loan Agent, the Committee, GAJ, and the Prepetition Secured Parties have agreed to the terms of the "Committee Settlement" as defined in Paragraph G of the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Sale Order") [Docket No. ___].

O.      *Good Cause*.  Good cause has been shown for the entry of this Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to:  (a) minimize disruption to the Debtors' businesses and on-going operations; (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors; and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      <u>Motion Granted; Cash Collateral Use Approved</u>.  The Motion is granted on a final basis, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in this Final Order.

2.      <u>Objections Overruled</u>.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  The rights of all parties in interest to object to the entry of the Final Order are fully reserved.

### Authorization to Use Cash Collateral

3.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, and in compliance with the Approved Budget (subject to Permitted Variances), the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances) until such time that the Prepetition Secured Creditors terminate the Debtors' use of Cash Collateral as provided herein; *provided* that the Prepetition Secured Creditors are granted the Adequate Protection Superpriority Claims, Adequate Protection Liens, Adequate Protection Payments, as applicable, and other forms of adequate protection set forth herein, subject to the Carve Out as provided herein; *provided further* that nothing herein shall impede the Debtors' ability and entitlement to fund the Carve Out as provided in paragraph 18 hereof or the Settlement Reserves (as defined in the Sale Order); *provided further* that during the Remedies Notice Period (as defined herein), the Debtors may only use Cash Collateral to meet payroll obligations (other than severance), sales (and other) taxes and other expenses that are critical to keeping the Debtors' business operating and administering the Debtors' estates subject to the Approved Budget (subject to Permitted Variances) or otherwise with the express written consent of the Prepetition ABL Agent and the Prepetition FILO Agent and, following the Prepetition ABL/FILO Obligations being

Paid in Full, the Prepetition Term Loan Agent.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order (subject to the Prepetition Credit Documents (including the Intercreditor Agreements)) and in accordance with the Approved Budget (subject to Permitted Variances).

### Adequate Protection Provisions

4.       Until such time as the Prepetition Secured Obligations are Paid in Full, as adequate protection for the interests of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral) on account of, among other things, the granting of the subordination, as applicable, of the Prepetition Liens to the Carve Out, the Debtors' use of Cash Collateral, and any other proven diminution in value arising out of the imposition of the automatic stay or the Debtors' use, sale, lease, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Chapter 11 Cases (collectively, "Diminution in Value"), the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)       *Adequate Protection Liens.*  To the extent of any Diminution in Value, each of the Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL and FILO Lenders) and the Prepetition Term Loan Agent (for the benefit of itself and the other Prepetition Term Loan Lenders) were granted by the Interim Order, and are hereby granted on a final basis, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on the Prepetition Collateral and the Postpetition Collateral[6] (the "Adequate Protection Liens"), which

---

[6]    "Postpetition Collateral" means all Prepetition Collateral and all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including, without

shall be subject to the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto.  The Adequate Protection Liens granted to the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders) shall secure the Prepetition Term Loan Obligations and the Adequate Protection Liens granted to the Prepetition ABL Agent (on behalf of the Prepetition ABL and FILO Lenders) shall secure the Prepetition ABL/FILO Obligations.

(i)    The Adequate Protection Liens shall be: (A) deemed to be valid, binding, non-avoidable, enforceable, and fully perfected as of the Petition Date; and (B) in all instances, subject to the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto.  Other than as set forth herein, until the indefeasible payment in full in cash of the Prepetition Secured Obligations, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore

---

limitation: (i) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action (subject to the limitations with respect to Avoidance Actions (as defined below) herein), and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (ii) all proceeds of leased real property; (iii) the proceeds of actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of Postpetition Collateral; (iv) the proceeds of actions brought pursuant to Chapter 5 of the Bankruptcy Code (other than avoidance actions under section 547 of the Bankruptcy Code) or applicable state law equivalents (subparagraphs (iii) and (iv), the "Avoidance Actions"); (v) the proceeds of the Debtors' rights under sections 506(c) (solely to the extent such rights result from the use of the Postpetition Collateral and are, therefore, enforceable against parties other than the Prepetition Secured Creditors) and 550 of the Bankruptcy Code; and (vi) all Postpetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date or to liens perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code (provided that such liens retain the same rights and priority with respect to the Prepetition Liens as they had on the Petition Date).  Notwithstanding the foregoing, Postpetition Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases).  Postpetition Collateral (other than the Term Priority Collateral (as defined in the ABL and Term Loan Intercreditor Agreement)), proceeds of Avoidance Actions, proceeds of the Debtors' real property leases, collateral constituting ABL Priority Collateral, and the proceeds and products thereof whether in existence on the Petition Date or thereafter arising shall constitute "Postpetition ABL Priority Collateral."

or hereinafter granted in the Chapter 11 Cases or any Successor Cases.  The Adequate Protection

Liens shall be valid and enforceable against any trustee or other estate representative appointed in

the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases

to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon

the dismissal of any of the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens

shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550.  No lien or interest

avoided and preserved for the benefit of any Debtor's estate pursuant to Bankruptcy Code section

551 shall be made *pari passu* with or senior to the Adequate Protection Liens.

(ii)     *Priority of Adequate Protection Liens*.  The Adequate Protection

Liens are automatically perfected in accordance with paragraph 4(a) and shall be payable from and

have recourse to all Prepetition Collateral and Postpetition Collateral, subject to the Carve Out, the

Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1**

hereto.

(b)     *Adequate Protection Payments.*   The Prepetition ABL Agent, the

Prepetition FILO Agent, and the Prepetition ABL and FILO Lenders shall receive additional

adequate protection in the form of payments as set forth below in this paragraph 4(b)

(the "Adequate Protection Payments").  All claims (including interest and letter of credit fees)

arising or related to the Prepetition ABL/FILO Obligations shall continue to accrue and be paid in

cash at the applicable default contract rate of interest through the Chapter 11 Cases in accordance

with the Prepetition ABL and FILO Documents until such time as the Prepetition ABL/FILO

Obligations are Paid in Full.  The Prepetition ABL Agent and the Prepetition FILO Agent

(including any successors thereto) shall be entitled to the payment of all reasonable and

documented fees, out-of-pocket costs and expenses and charges of the advisors to the Prepetition

ABL Agent (Morgan, Lewis & Bockius LLP, Reed Smith LLP and AlixPartners, LLP (collectively, the "ABL Agent Advisors")), and the advisors to the Prepetition FILO Agent (Choate, Hall & Stewart LLP, AlixPartners, LLP, and DLA Piper LLP (US) (collectively, the "FILO Advisors")), in each case in accordance with the procedures set forth in paragraph 15 hereof; *provided however* that notwithstanding the foregoing, the fees and expenses of the ABL Agent Advisors and the FILO Advisors prior to and unpaid as of the date of entry of the Interim Order shall be paid indefeasibly without the need to deliver an invoice in summary form as set forth herein.  The Prepetition Term Loan Agent (including any successors thereto) and the ad hoc group of Prepetition Term Loan Lenders (the "Term Loan Ad Hoc Group") shall be entitled to the payment of all reasonable and documented fees, out-of-pocket costs and expenses and charges of the advisors to the Prepetition Term Loan Agent (ArentFox Schiff LLP and Morris James LLP (collectively, the "Term Loan Agent Advisors")), and the advisors to the Ad Hoc Group (Gibson, Dunn & Crutcher LLP, Glenn Agre Bergman & Fuentes LLP, and Morris, Nichols, Arsht & Tunnell LLP (collectively, the "Ad Hoc Group Advisors"), and together with the ABL Agent Advisors, the FILO Advisors, and the Term Loan Agent Advisors, the "Prepetition Secured Party Advisors") in each case in accordance with the procedures set forth in paragraph 15 hereof; *provided however* that notwithstanding the foregoing, the fees and expenses of the Term Loan Agent Advisors and the Ad Hoc Group Advisors prior to and unpaid as of the date of entry of the Interim Order and/or this Final Order shall be paid indefeasibly without the need to deliver an invoice in summary form as set forth herein; *provided further* that the fees and expenses of the Term Loan Agent Advisors and the Ad Hoc Group Advisors shall not be paid from ABL Priority Collateral unless and until the Prepetition ABL/FILO Obligations have been Paid in Full; *provided, however*, that, notwithstanding anything herein to the contrary, the fees and expenses of the Term

23

Loan Agent Advisors and the Ad Hoc Group Advisors shall not, in any way, be limited to fees and expenses incurred prior to the closing of the Sale.

    (c) *Adequate Protection Superpriority Claims.*

    (i) *Superpriority Claims of the Prepetition ABL Agent and the Prepetition Term Loan Agent.* As further adequate protection of the interests of the Prepetition Agents and the other Prepetition Secured Creditors with respect to the Prepetition Secured Obligations, each of the Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL and FILO Lenders) and the Prepetition Term Loan Agent (for the benefit of itself and the other Prepetition Term Loan Lenders) was granted by the Interim Order, and is hereby granted on a final basis, an allowed administrative claim against the Debtors' estates under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their Estates of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including without limitation, to the extent allowed under the Bankruptcy Code, claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, but excluding the Carve Out and the Settlement Reserves (as defined in the Sale Order) (the "Adequate Protection Superpriority Claims"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition Agents' interests in the Prepetition Collateral.

    (ii) *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claims shall be payable from and have recourse to all Prepetition Collateral and Postpetition Collateral, subject to the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto.

(d)     *Reservations of Rights.*   Subject only to the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto, nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in the Interim Order or this Final Order is insufficient to compensate for the Diminution in Value of the interests of the Prepetition Secured Creditors' in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Nothing contained in the Interim Order or this Final Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection.

## Provisions Common to Use of Cash Collateral Authorizations

5.     Approved Budget, Testing, and Permitted Variances.

(a)     *Approved Budget.*   The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance reasonably acceptable to the Prepetition ABL Agent, the Prepetition FILO Agent and the Debtors, in consultation with the Committee (and, following the Prepetition ABL/FILO Obligations being Paid in Full, the Prepetition Term Loan Agent).  The Approved Budget shall be updated, modified or supplemented by the Debtors not less than every four (4) weeks unless otherwise agreed to by the Debtors, the Prepetition ABL Agent and the Prepetition FILO Agent, in consultation with the Committee (and, following the Prepetition ABL/FILO Obligations being Paid in Full, the Prepetition Term Loan Agent).  Each such updated, modified or supplemented budget shall be in form and substance acceptable to the Prepetition ABL Agent and the Prepetition FILO Agent, in consultation with the Committee (and, following the Prepetition ABL/FILO Obligations being

Paid in Full, the Prepetition Term Loan Agent), and no such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the Approved Budget; *provided however* that, in the event that the Prepetition Agents (as applicable) and the Debtors cannot agree as to a new Approved Budget, the prior Approved Budget shall remain in full force and effect unless and until a new Approved Budget has been approved by the Prepetition Agents (as applicable). The Approved Budget shall depict, on a weekly basis and line item basis (1) projected cash receipts, (2) projected cash disbursements (including with respect to projected accrued but unpaid and/or deferred disbursements with respect to administrative expenses), including ordinary course operating expenses, capital expenditures, bankruptcy-related expenses and certain other fees and expenses related to this Final Order, (3) net cash flow, (4) projected Borrowing Base and Minimum Excess Availability, (5) total available liquidity, and (6) professional fees and disbursements with respect to the Debtors' professionals and other estate professionals, from the entry of this Final Order through the anticipated closing of these Chapter 11 Cases.

(b)     *Borrowing Base*. Until the Prepetition ABL/FILO Obligations have been Paid in Full, the Borrowing Base Certificate (as defined in the ABL/FILO Credit Agreement) shall be updated and delivered weekly to the Prepetition ABL Agent and the Prepetition FILO Agent along with all information required to be provided in connection therewith pursuant to the ABL/FILO Credit Agreement, in each case in the format customarily delivered with each Borrowing Base Certificate delivered prior to the Petition Date.

(c)     *Permitted Variances*. The Debtors shall not, without the consent of the Prepetition ABL Agent and the Prepetition FILO Agent (and, following the Prepetition ABL/FILO Obligations being Paid in Full, the Prepetition Term Loan Agent), permit aggregate disbursements,

(both actual, cash disbursements and accrued and deferred) on a cumulative basis, to exceed 110% of the aggregate disbursements set forth in the Approved Budget for such period (collectively, the "Permitted Variances").

(d)     *Variance Testing*.  The Debtors shall, commencing with the first week after the Petition Date, deliver to the Prepetition ABL Agent and the Prepetition FILO Agent (and, following the Prepetition ABL/FILO Obligations being Paid in Full, the Prepetition Term Loan Agent), by not later than Wednesday of each week, a report (in form and substance acceptable to the Prepetition Agents (as applicable)) showing a reconciliation for the prior week period, and showing that (i) the Debtors are in compliance with the covenants and requirements contained in this paragraph 5 and (ii) to the knowledge of the Debtors, no Cash Collateral Termination Event has occurred, or, if such a Cash Collateral Termination Event has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto.

6.     Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims.

7.     Perfection of Adequate Protection Liens.

(a)     This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Adequate Protection Liens and the other security interests granted by the Interim Order or this Final Order, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, or possession of the Postpetition Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, entering into any

control agreements with any financial institution(s) party to a control agreement or other depository account consisting of Postpetition Collateral or requirement to register liens on any certificates of title (a "Perfection Act").  Notwithstanding the foregoing, if any Prepetition Agent, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such Prepetition Agent, as applicable, is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  Any of the Prepetition Agents, may choose to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law.  Should any Prepetition Agent so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Final Order.

(b)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by the Interim Order or this Final Order (including the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of

this Court; *provided however* that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of the Interim Order or this Final Order, to the extent that any Prepetition Agent, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by the Interim Order and this Final Order without further action by the applicable Prepetition Agent.

8.    <u>Application of Proceeds of Postpetition Collateral</u>.  The Debtors shall apply the proceeds of Postpetition Collateral in accordance with the terms of the Approved Budget, this Final Order, and the Sale Order.

9.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time prior to the Prepetition ABL/FILO Obligations having been Paid in Full, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition ABL Agent to be applied in accordance with this Final Order.

10.    <u>Maintenance of Postpetition Collateral and Prepetition Collateral</u>.  Until the indefeasible payment in full in cash of all Prepetition Secured Obligations (including until such time as the Prepetition ABL/FILO Obligations have been Paid in Full), the Debtors shall: (a) insure the Prepetition Collateral and the Postpetition Collateral as required under the Prepetition Credit Documents; and (b) maintain the cash management system in effect as of the

Petition Date or as otherwise agreed to by the Prepetition ABL Agent and the Prepetition FILO Agent (subject to any orders of this Court in respect of the cash management system). The Prepetition ABL Agent is hereby authorized to apply Cash Collateral to the outstanding Prepetition ABL/FILO Obligations solely in accordance with the Approved Budget.

11.     <u>Events of Default</u>.  The failure of the Debtors to timely comply with the "Milestones" as set forth in **<u>Exhibit 3</u>** hereto, or the occurrence of any of the events of default listed on **<u>Exhibit 2</u>** hereto, shall each constitute an "Event of Default" and a "Cash Collateral Termination Event" under this Final Order.

12.     <u>Rights and Remedies Upon Event of Default</u>.

(a)     Immediately upon the occurrence and during the continuation of an Event of Default or a Cash Collateral Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from this Court, but subject to the terms of this Final Order, including, without limitation, the funding of the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the Remedies Notice Period (as defined herein), the Prepetition ABL Agent or the Prepetition FILO Agent (and with respect to the ABL Priority Collateral, following the Prepetition ABL/FILO Obligations being Paid in Full, the Prepetition Term Loan Agent) may declare (the "<u>Termination Declaration</u>" and the date of such Termination Declaration and the delivery of a Carve Out Trigger Notice, the "<u>Termination Declaration Date</u>"), (1) all applicable Prepetition Secured Obligations (and applicable Adequate Protection Payments and applicable Adequate Protection Superpriority Claims) to be immediately due and payable, (2) that the application of the Carve Out has occurred through delivery of the Carve Out Trigger Notice, and (3) a termination, reduction, or restriction on the ability of the Debtors to use Postpetition Collateral, including, without limitation, the

Prepetition ABL and FILO Lenders' and the Prepetition Term Loan Lenders' Cash Collateral. Any Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Agents (as applicable), counsel to the Committee and the U.S. Trustee.  The automatic stay in the Chapter 11 Cases otherwise applicable to the Prepetition Secured Creditors is hereby modified so that five (5) Business Days after a Termination Declaration Date (as such period may be extended pursuant to the terms hereof, the "Remedies Notice Period") and subject to the Intercreditor Agreements, the funding of the Carve Out, and the relative priorities set forth on **Exhibit 1** hereto, the applicable Prepetition Secured Creditors shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the applicable Prepetition Credit Documents and this Final Order; *provided* that, no rights and remedies may be exercised pursuant to the foregoing clause if a party in interest has sought and received a Remedies Determination Hearing (as defined below) within the Remedies Notice Period (as may be extended as set forth below) and this Court has not yet issued a ruling in respect thereof.

(b)     During the Remedies Notice Period,  any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with this Court (a "Remedies Determination Hearing"); *provided* that if a hearing is requested to be heard before the end of the Remedies Notice Period but is scheduled for a later date by this Court (without any request by the Debtors to this Court with respect to such later scheduling), the Remedies Notice Period shall be automatically extended  until the Court issues an order or other ruling following the Remedies Determination Hearing.  This Court may fashion an appropriate remedy at or following the Remedies Determination Hearing; *provided that* the rights of parties in interest to contest such relief are expressly preserved.  In addition, upon the occurrence of a Cash Collateral

Termination Event, subject to the Remedies Notice Period and in all instances subject to the terms of the Prepetition Credit Documents (including the ABL and Term Loan Intercreditor Agreement), and unless otherwise ordered by the Court, the Prepetition Agents may direct the Debtors to conduct an Auction for the sale of the Debtors' assets within two (2) Business Days after the Remedies Notice Period expires, notwithstanding the date designated for such Auction under the Bidding Procedures Order and/or the Milestones (as each term is defined herein).  On or before two (2) business days after conclusion of the Auction, the Debtors shall have obtained an order from the Court approving a winning bid for the Sale that is acceptable to the Prepetition Agents in each of their sole discretion (subject to the Prepetition Credit Documents (including the Intercreditor Agreements)).  Except as set forth in this paragraph 12 or otherwise ordered by this Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Prepetition Secured Creditors under this Final Order.  Unless this Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay as to all of the Prepetition Secured Creditors shall automatically be terminated at the end of the Remedies Notice Period (as it may be extended in accordance with this paragraph) without further notice or order.  Upon expiration of the Remedies Notice Period (as it may be extended in accordance with this paragraph, but subject to the Intercreditor Agreements, the Carve Out, the relative priorities set forth on **Exhibit 1** hereto, and the terms of any order entered by this Court prior to the expiration of the Remedies Notice Period), the Prepetition Secured Creditors shall be permitted to exercise all remedies set forth herein, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order and

the applicable loan documents.  Without limiting the foregoing, the Prepetition Secured Creditors may, subject to the Remedies Notice Period, the Prepetition Credit Documents, and the funding of the Carve Out and the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto, enter onto the premises of any Debtor in connection with an orderly liquidation of the Postpetition Collateral and the Prepetition Collateral, as applicable, in accordance with paragraph 13 herein.

13.    Leased Premises.

(a)    Notwithstanding anything to the contrary in this Final Order, the Adequate Protection Liens shall not encumber and the Postpetition Collateral shall not include (i) leasehold interests of non-residential real property unless the applicable lease permits the granting of such liens (but shall include the proceeds of the sale or disposition of such leases) and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; *provided* that, the Adequate Protection Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors.  Notwithstanding anything to the contrary herein, the rights and liens granted herein shall not impair or diminish any rights held by a landlord to insurance proceeds for damage to the landlord's property, as and to the extent provided in the Debtors' nonresidential real property leases and/or to the extent permitted by applicable law.

(b)    The Prepetition Agents' exercise of its remedies pursuant to paragraph 12 shall be subject to the Prepetition Credit Documents and, notwithstanding anything to the contrary herein, the Prepetition Agents may only enter upon a leased premises of the Debtors following an Event of Default or Cash Collateral Termination Event in accordance with:  (a) any agreement in

writing between the Prepetition Agent(s) and any applicable landlord; (b) pre-existing rights of the Prepetition Agents and any applicable landlord under applicable non-bankruptcy law; (c) consent of the applicable landlord; or (d) further order of this Court following notice and a hearing; *provided however* that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease. Nothing herein shall require the Prepetition Agents to assume any lease as a condition to the rights afforded in this paragraph.

14.    Good Faith Under Section 363(m) of the Bankruptcy Code; No Modification or Stay of this Final Order.   The reversal or modification on appeal of an authorization under subsection (b) or (c) of section 363 of the Bankruptcy Code of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

15.    Prepetition ABL Agent, Prepetition FILO Agent, Prepetition Term Loan Agent, and Term Loan Ad Hoc Group Expenses.   Counsel and/or professionals to the Prepetition ABL Agent, the Prepetition FILO Agent, the Prepetition Term Loan Agent, or the Term Loan Ad Hoc Group seeking payment pursuant to and in accordance with this Final Order shall each deliver an invoice in summary form (which shall not be required to include time entry detail, but shall include a general description of the nature of the matters for which services were performed, and may be redacted for privileged information; *provided however* that the U.S. Trustee and the Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the Debtors, counsel to the Debtors, the U.S. Trustee, and the

Committee. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors, counsel to the Debtors, the U.S. Trustee, and the Committee (the "Review Parties"), the Debtors shall promptly pay such fees and expenses in full (and the Prepetition ABL Agent shall be entitled to reserve sufficient funds pending such review and/or objection). If an objection is timely received from a Review Party, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. The Prepetition Secured Party Advisors shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts). Payments of any amounts set forth in this paragraph are not subject to avoidance, subordination, or disgorgement (and payments of any amounts to the ABL Agent Advisors and the FILO Advisors are not subject to, or capped by, the Approved Budget).

16.    Indemnification. The Debtors shall indemnify and hold harmless the Prepetition Agents, each of the other Prepetition ABL, FILO, and Term Loan Lenders, and each Indemnitee (as defined in the ABL/FILO Credit Agreement), subject to and in accordance with the ABL/FILO Credit Agreement and the Prepetition Term Loan Credit Agreement.

17.    Proofs of Claim. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases, neither the Prepetition Agents or any of the Prepetition Secured Creditors shall be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable, whether accrued prepetition or postpetition,

under the Prepetition Credit Documents or this Final Order.  None of the Prepetition Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of this Final Order relating to the relevant Adequate Protection Superpriority Claims, the Prepetition Secured Obligations and the Debtors' Stipulations shall constitute timely filed proofs of claim and/or administrative expense requests (as applicable) in each of the Chapter 11 Cases.

18.    Carve Out.

(a)    As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), which fees shall not be limited by any Approved Budget; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, other than any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or Committee (the "Allowed Professional Fees")[7] incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363

---

[7]    Notwithstanding anything to the contrary herein, in addition to the amounts set forth in paragraph 18(a), (x) the Carve Out shall also include $2,750,000 for the benefit of Centerview Partners, as investment banker to the Debtors ("CV") and (y) with respect to any remaining portion of any restructuring, sale, success, or other transaction fee payable to CV, such amounts shall be funded (in an aggregate amount not to exceed $2,750,000, and together with the amount set forth in (x), the "CV Transaction Fees")) to the Carve Out Reserves solely from the cash proceeds generated from the transaction giving rise to such fee (at which time, upon being funded into the Carve Out Reserves, such CV Transaction Fees shall be included in, and benefit from, the Carve Out), as follows: (1) 50% shall be funded into the Carve Out Reserves upon the consummation of an Approved Sale and (2) 50% shall be funded into the Carve Out Reserves following the Prepetition ABL/FILO Obligations being Paid in Full; *provided, however* that (i) nothing in this Final Order shall be deemed to be an allowance of any fee payable to any Professional Persons, which allowance and payment shall be subject to further Court approval; and (ii) if the Stalking Horse Bid does not close (and the Debtors, with the consent of the Prepetition ABL Agent and the Prepetition FILO Agent, have not selected a higher and better bid (or bids) than the Stalking Horse Bid at the Auction), to the extent any CV Transaction Fees arise from a fee-based liquidation of the Postpetition ABL

of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition ABL Agent or the Prepetition FILO Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition ABL Agent or the Prepetition FILO Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For the avoidance of doubt, the Committee Professionals shall have recourse to the Post-Closing UCC Budget (as defined in the Sale Order) in addition to the Post-Carve Out Trigger Notice Cap.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition ABL Agent or the Prepetition FILO Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event and termination of the Debtors' right to use Cash Collateral, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of

---

Priority Collateral, such CV Transaction Fees shall only be deemed part of the Carve Out and included in (or benefit from) the Funded Reserve Account or the Carve Out Reserves following the Prepetition ABL/FILO Obligations being Paid in Full (and any funds reserved for the CV Transaction Fees prior to that date shall be released to the Prepetition ABL Agent to be applied in accordance with this Final Order).

the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided* that within one business day of the occurrence of the Termination Declaration Date (as defined above), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the Prepetition Agents). If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)    Carve Out Reserve Accounts.

(i)    Commencing with the first full week after the Petition Date, and on or before the Thursday of each week thereafter until the Termination Declaration Date, the Debtors shall utilize all cash on hand as of such date (including through a CC Withdrawal Request (as

defined herein) as necessary, which, with respect to the Carve Out, shall be honored in full by the Prepetition ABL Agent to the extent of available cash) and any available cash thereafter held by any Debtor to fund a reserve (to the extent not already funded in a prior week) in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) the Post Carve Out Trigger Notice Cap, *plus* (c) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "<u>Funded Reserve Account</u>") to pay such Allowed Professional Fees (the "<u>Funded Reserves</u>") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the Termination Declaration Date, the Carve Out Trigger Notice shall constitute a demand to the Debtors to, and the Debtors shall, utilize all cash on hand as of such date, including *first*, cash in the Funded Reserve Account and *second*, to the extent necessary, through a CC Withdrawal Request as necessary (which, with respect to the Carve Out, shall be honored in full by the Prepetition ABL Agent to the extent of available cash), and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees to the Debtors, plus the amounts set forth in (a)(i) and (a)(ii) of this paragraph above.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any other claims.  On the Termination

Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date, including *first*, cash in the Funded Reserve Account, and *second*, to the extent necessary, through a CC Withdrawal Request as necessary (which, with respect to the Carve Out, shall be honored in full by the Prepetition ABL Agent to the extent of available cash), and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve -Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. Upon the foregoing funding of the Carve Out Reserves (subject to the ABL Professional Fee Carve Out Cap), or upon entry of a Sale Order (as defined herein) that provides for the foregoing funding into the Funded Reserve Account upon the closing of an Approved Sale, the Prepetition ABL Agent, the Prepetition FILO Agent and the Prepetition ABL and FILO Lenders shall have no further obligation to fund the Carve-Out Reserves or subordinate their liens and claims on account of any Allowed Professional Fees.

(iii)    Solely as it relates to the Prepetition ABL Agent, Prepetition FILO Agent and the Prepetition ABL and FILO Lenders, any use of Postpetition ABL Priority Collateral pursuant to paragraph 18(c)(i) and 18(c)(ii) shall be limited to the sum of (I) any amounts required to be funded into the Funded Reserve Account prior to the Termination Declaration Date *plus*, without duplication, (II) the lesser of (1) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date and (2) the Budgeted Cushion Amount

(as defined below) (such amount, the "<u>ABL Professional Fee Carve Out Cap</u>").  For the avoidance of doubt, the Prepetition ABL Agent shall be entitled to maintain at all times a reserve or a segregated account at the Prepetition ABL Agent in trust (the "<u>ABL Carve-Out Reserve</u>") in an amount (the "<u>ABL Carve-Out Reserve Amount</u>") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in <u>all</u> Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) the amounts contemplated under paragraph 18(a)(i) and 18(a)(ii) above, *plus* (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the then current week occurring after the most recent Calculation Date and the two weeks succeeding such current week (such amount set forth in (iv), regardless of whether such reserve is maintained, the "<u>Budgeted Cushion Amount</u>").  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the Prepetition ABL Agent and the Prepetition FILO Agent a report setting forth the ABL Carve-Out Reserve Amount as of such time, and, in setting the ABL Carve-Out Reserve, the Prepetition ABL Agent shall be entitled to rely upon such reports. Prior to the delivery of the first report setting forth the ABL Carve-Out Reserve Amount, the Prepetition ABL Agent shall calculate the ABL Carve-Out Reserve Amount by reference to the Approved Budget for subsection (i) of the ABL Carve-Out Reserve Amount.

(d)    <u>Application of Carve Out Reserve Accounts</u>.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve

Out Trigger Notice Cap, until indefeasibly paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed to the Prepetition ABL Agent on account of the Prepetition ABL/FILO Obligations, if outstanding, until such obligations have been Paid in Full.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve Account or the Funded Reserve Account has not been reduced to zero, subject to clause (iii), below, all remaining funds in the accounts shall be distributed in the same manner as provided above with respect to the Pre-Carve Out Trigger Notice Reserve Account.

(iii)     If either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 18, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the Prepetition ABL Agent.

(iv)     Following delivery of a Carve Out Trigger Notice, the Prepetition ABL Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserve Accounts have been fully funded in accordance with this paragraph 18, but shall have a security interest in any residual interest in the Carve Out Reserves and the Funded Reserve Account, with any excess paid as provided in paragraphs (i), (ii). and (iii) above.

(v)     Notwithstanding anything to the contrary in this Final Order, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the

priority of the Carve Out with respect to any shortfall (as described below), and (B) subject to the ABL Professional Fee Carve Out Cap, above, in no way shall any Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the obligations under the Prepetition ABL Documents or the Prepetition Term Loan Documents.

(e)    No Direct Obligation To Pay Allowed Professional Fees.  The Prepetition Secured Creditors reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget.  None of the Prepetition Secured Creditors shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of this Court incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Creditors in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    Payment of Carve Out On or After the Termination Declaration Date.  Following the delivery of the Carve Out Trigger Notice, all Allowed Professional Fees shall

be paid from the applicable Carve Out Reserve, and no Professional Person shall seek payment of any Allowed Professional Fees from any other source until the applicable Carve Out Reserve has been exhausted. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(h)      Reservation of Rights.  Nothing in this Final Order shall be construed as a waiver of any right of the Prepetition Secured Creditors with respect to any fee statement, interim application or monthly application issued or filed by the Professional Persons.  Notwithstanding anything to the contrary herein, the payment of any Allowed Professional Fees pursuant to the Carve Out shall not (i) reduce any Debtor's obligations owed to the Prepetition Agents and the Prepetition Secured Creditors (whether under this Final Order or otherwise) or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Final Order or otherwise) in the Prepetition Collateral or the Postpetition Collateral (or their claims against the Debtors).

19.      Limitation on Use of Postpetition Collateral (Including Cash Collateral).  For the avoidance of doubt and notwithstanding any other provision of this Final Order or any other order entered by this Court to the contrary, no portion of the Carve Out, Postpetition Collateral, Term Priority Collateral, or Postpetition ABL Priority Collateral (including Cash Collateral) may be used directly or indirectly in connection with:  (i) the investigation, initiation, or prosecution of any claims, causes of action, motions, adversary proceedings, or other litigation, (A) against any of the Prepetition Secured Creditors or Prepetition Agents (whether in such capacity or otherwise), or (B) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under

the Prepetition Credit Documents or in connection with the Prepetition Loan Facilities, including, in each case without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the Prepetition Agents or the other Prepetition Secured Creditors with respect to the Prepetition Loan Facilities; or (iii) attempts to prevent, hinder, or otherwise delay any of the Prepetition Secured Creditors' (as applicable) assertion, enforcement, or realization upon any Prepetition Collateral in accordance with the Prepetition Credit Documents, the Interim Order, and this Final Order once a Cash Collateral Termination Event has occurred and any applicable Remedies Notice Period expired; *provided however* that the proceeds of the Postpetition Collateral (including Cash Collateral) may be used by the Committee to investigate prior to the Challenge Deadline, but not to prosecute, (A) the claims and liens of the Prepetition Secured Creditors, and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Creditors, up to an aggregate cap of no more than $150,000.

20. <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

21. <u>Release</u>.  Subject to paragraph 29 hereof, and the challenge rights granted thereunder, each of the Released Parties is released as provided in paragraph F(x) hereof.

22. <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against any of the Prepetition Secured Creditors, or the Postpetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge any of the Prepetition

Secured Creditors, or the Postpetition Collateral under section 105 or 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases or any Successor Cases.

23.    <u>No Marshaling / Applications of Proceeds</u>.  The Prepetition Secured Creditors shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Postpetition Collateral and/or Prepetition Collateral.

24.    <u>Section 552(b)</u>.  The Prepetition Secured Creditors shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Creditors with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral and/or Postpetition Collateral.

25.    <u>Limits on Lender Liability</u>.  Nothing in the Interim Order, this Final Order, any of the Prepetition Credit Documents, or any other documents relate thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agents, or the Prepetition Secured Creditors of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases.  The Prepetition Agents and the Prepetition Secured Creditors shall not, solely by reason of permitting the use of Cash Collateral, as applicable, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Final Order or

the Prepetition Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agents or the Prepetition Secured Creditors of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

26.    <u>Joint and Several Liability</u>.  Nothing in the Interim Order or this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Final Order.

27.    <u>Discharge Waiver</u>.  The obligations of the Debtors with respect to adequate protection hereunder, including the Adequate Protection Payment obligations, granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of such confirmed plan of reorganization or liquidation, or each of the Prepetition Secured Creditors, as applicable, has otherwise agreed in writing.  None of the Debtors shall propose or support any plan of reorganization or liquidation or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that does not require that the Prepetition ABL/FILO Obligations be Paid in Full without the written consent of each of the Prepetition ABL Agent and the Prepetition FILO Agent, in each case in accordance with the Prepetition Credit Documents (including the Intercreditor Agreements) and this Final Order.

28.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary (but subject to the Prepetition Credit Documents (including the Intercreditor Agreements), as applicable), the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly:  (a) the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the Prepetition Secured Creditor to seek the payment by the Debtors of postpetition interest or fees pursuant to section 506(b) of the Bankruptcy Code; (c) the rights of any party with respect to any Challenge (as defined, solely as provided for, herein); or (d) any of the rights of the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; *provided* that the rights of the Prepetition Secured Creditors with respect to sections (i)–(iii) of this paragraph 28 shall be subject to the Carve Out, the Settlement Reserves (as defined in the Sale Order), and the relative priorities set forth on **Exhibit 1** hereto.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Creditors are preserved (subject to the Prepetition Credit Documents, including the Intercreditor Agreements).

29. <u>Binding Effect of Final Order</u>.  Immediately upon entry of this Final Order, the stipulations (including the Debtors' Stipulations and releases), terms and provisions of this Final Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee, if any, and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that: (a) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge[8] (other than the Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge (i) by 9:00 a.m. ET on February 26, 2025, if by any party in interest other than the Committee, or (ii) if by the Committee, by the earlier of (A) by the closing of the Approved Sale, or (B) March 7, 2025 (collectively, as applicable, the "<u>Challenge Deadline</u>"); *provided* that such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), the Prepetition ABL Agent or the Prepetition FILO Agent (with respect to the Prepetition ABL and FILO Documents and Prepetition ABL/FILO Obligations, as applicable), and the Debtors, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided further* that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Challenge Deadline, which, solely if not yet expired,

shall be extended for a period of sixty (60) days from the date of such appointment; and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  The filing of a motion seeking standing to file a Challenge before the Challenge Deadline which attaches a proposed Challenge (a "Standing Motion"), shall extend the Challenge Deadline (solely with respect to the party that files such timely Standing Motion) until two (2) Business Days after this Court rules on the Standing Motion, or such other time period ordered by this Court in approving the Standing Motion.  Subject to the limitations set forth herein, if a chapter 11 trustee is appointed or these Chapter 11 Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

      30.    Cash Collection.  From and after the date of the entry of the Interim Order, all collections and proceeds of any Postpetition ABL Priority Collateral and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same deposit accounts into which the collections and proceeds of the ABL Priority Collateral were deposited under the Prepetition Documents (or in such other accounts as are designated by the Prepetition ABL Agent from time to time) (collectively, the "Cash Collection Accounts"), which accounts

---

[8]   "Challenge" as used herein shall mean an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

shall be subject to the sole dominion and control of the Prepetition ABL Agent (and, for the avoidance of doubt, the Prepetition ABL Agent shall be authorized to issue notices of exclusive control or similar notices under existing control agreements).  All proceeds and other amounts in the Cash Collection Accounts of the Debtors shall be remitted to the Prepetition ABL Agent for application in accordance with this Final Order, including, without limitation, to be made available to the Debtors in accordance with this paragraph to be used in accordance with the Approved Budget.  In furtherance of the foregoing, upon the Prepetition ABL Agent's receipt of a written cash collateral draw request (each, a "CC Withdrawal Request," which shall be delivered to the Prepetition FILO Agent at the same time such CC Withdrawal Request is delivered to the Prepetition ABL Agent) (which may be on a daily basis), the Prepetition ABL Agent shall disburse funds from the Cash Collection Account to the Debtors' operating account held at Bank of America, N.A., as appropriate to fund the amounts specified in the CC Withdrawal Request (less any unused amounts in the Debtors' operating account at that time and subject to any applicable reserves, including the Carve-Out Reserve and the ABL Carve-Out Reserve) in accordance with the Approved Budget; *provided* that the Prepetition ABL Agent shall not be required to disburse such funds if a Cash Collateral Termination Event has occurred; *provided further* that any cash received in the Cash Collection Accounts in excess of the weekly CC Withdrawal Request shall be deemed Prepetition ABL Priority Collateral.  For the avoidance of doubt, the Prepetition ABL Agent shall not refuse to honor any CC Withdrawal Request prior to a Cash Collateral Termination Event that is consistent with the Approved Budget (including any Permitted Variances).  Unless otherwise agreed to in writing by the Prepetition ABL Agent or otherwise provided for herein, or otherwise ordered by the Court, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order") and the Pre-Carve

Out Trigger Notice Reserve Account. The Debtors and the applicable financial institutions where the applicable Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the Prepetition ABL Agent. Notwithstanding anything herein to the contrary, the Prepetition ABL Agent shall honor in full any CC Withdrawal Request to fund the Carve Out.

31.     Consigned Goods. Notwithstanding anything to the contrary set forth in this Final Order, the collateral of the Prepetition Secured Creditors, including but not limited to the Prepetition Collateral, and Cash Collateral, shall not include (a) any goods received by the Debtors on a consignment basis (whether pre- or post-petition, and solely to the extent properly perfected) from IG Design Group Americas, Inc. and its affiliates, including Simplicity Creative Corp., and The McCall Pattern Company, Inc. (collectively "DGA") and/or West Broadway Distribution Services, LLC ("WBDS"); and (b) any identifiable proceeds of any such consigned goods, including, but not limited to, all identifiable proceeds from pre-petition sales of consigned goods, which proceeds of such pre-petition sales shall be promptly paid to DGA and/or WBDS after completion of a reconciliation by the parties. Nor shall the Prepetition Secured Creditors possess any superpriority claims, including but not limited to the Adequate Protection Superpriority Claims, over any such goods received by the Debtors from DGA and/or WBDS on a consignment basis (whether pre- or post-petition, and solely to the extent properly perfected) or the identifiable proceeds of any such consigned goods; *provided* that the Debtors may continue to operate and perform (subject to the Approved Budget) under the applicable agreements governing the goods described in this paragraph, including selling such goods and remitting proceeds as provided therein. Further, nor shall any such goods received by the Debtors from DGA and/or WBDS on a

consignment basis (whether pre- or post-petition) or the proceeds of any such consigned goods be subject to the Carve Out.

32.    Any order dismissing one or more of the Chapter 11 Cases or Successor Cases under section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (i) the Prepetition Liens and Adequate Protection Liens shall continue in full force and effect notwithstanding such dismissal until the Prepetition Secured Obligations and/or Adequate Protection Superpriority Claims, as applicable, are indefeasibly paid and satisfied in full; and (ii) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the Adequate Protection Superpriority Claims, Adequate Protection Liens, and the Prepetition Liens.

33.    SVP Sewing Brands.  Nothing in the Interim Order or this Final Order shall be deemed to modify SVP Sewing Brands, LLC's or its affiliates' (collectively, "SVP") rights or interests in any inventory or other goods owned by SVP nor any identifiable proceeds thereof (collectively, "SVP Property").  All parties' rights as to whether any particular SVP Property is in fact owned by SVP are expressly preserved, and in the event that the parties are unable, after a good faith effort, to consensually resolve any dispute regarding the ownership of any particular SVP Property, this Court shall have jurisdiction to decide the dispute upon a motion for expedited consideration by any interested party.

34.    Liberty Mutual Insurance Company.  Nothing in this Final Order shall limit Liberty Mutual Insurance Company's rights or interests, if any, in any letter of credit securing any surety bond or obligations under any existing indemnity agreement, or any proceeds thereof.

35.    <u>Texas Taxing Authorities</u>.  Notwithstanding any other provisions in this Final Order or any final orders pertaining to the use of cash collateral in these Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing Authorities[9] (the "<u>Tax Liens</u>") shall retain their prepetition lien priority as provided by applicable nonbankruptcy law and will not be primed by nor made subordinate to any liens granted to any party hereby, in each case solely to the extent the Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.  Furthermore, from the proceeds of the sale of any of the Debtors' assets or closing of any store located in the state of Texas and in the jurisdictions of the Texas Taxing Authorities, as adequate protection for the asserted secured tax claims of the Texas Taxing Authorities to such Tax Liens (the "<u>Tax Claims</u>"), the Debtors shall set aside the amount of $[582,428.94] (the "<u>Texas Tax Reserve</u>").  The Tax Liens of the Texas Taxing Authorities shall attach to the Texas Tax Reserve to the same extent and with the same priority as the liens attached to the Debtors' assets securing the Tax Liens.  The funds in the Texas Tax Reserve shall be on the order of adequate protection and shall constitute neither the allowance of the Tax Claims nor a cap on the amounts the Texas Taxing Authorities may be entitled to receive.  The funds from the Texas

---

[9]    Texas Taxing Authorities is defined as all ad valorem taxing jurisdictions represented by the firms of Perdue, Brandon, Fielder, Collins & Mott LLP, Linebarger Goggan Blair and Sampson, LLP, and McCreary Veselka Bragg and Allen, including but not limited to Lubbock CAD, Frisco Independent School District, Plano Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Clear Creek Independent School District, Baybrook MUD #1, Harris County MUD #186, Harris County Water Control and Improvement District #145, Fort Bend Independent School District, Fort Bend County Levee Improvement District #02, Humble Independent School District, Harris County MUD #186, Harris County Water Control and Improvement District #145, Spring Branch Independent School District, City of Houston, Randall County Tax Office, Bexar County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Harris County Emergency District #09, Harris County Emergency District #47, Hidalgo County, City of Houston, Houston Community College System, Houston Independent School District, City of Humble, Jefferson County, Katy Independent School District, Lewisville Independent School District, Lone Star College System, McLennan County, Montgomery County, Nueces County, Rockwall CAD, Smith County, Tarrant County, Brazos County, Comal County, Denton County (including City of Denton, Denton ISD, and City of Lewisville), Taylor County CAD, City of Waco and Waco ISD, and Williamson County.

Tax Reserve may be distributed only upon agreement between the Texas Taxing Authorities, the Prepetition ABL Agent, the Prepetition FILO Agent, and the Debtors upon notice to the Committee with an opportunity to object, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities. Notwithstanding any order that may be entered converting these Chapter 11 Cases to cases under chapter 7, the funds in the Texas Tax Reserve will continue to be held for the benefit of the Texas Tax Authorities and the Tax Liens shall remain attached to the funds in the Texas Tax Reserve in their relative priority until the Tax Claims are paid in full. Any payment made to the Texas Tax Authorities from sources other than the Texas Tax Reserve shall reduce the Texas Tax Reserve dollar for dollar.

36.    <u>No Modification of Final Order</u>.  The Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Prepetition Agents (i) any reversal, modification, stay, vacatur, or amendment to this Final Order or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve Out and the Settlement Reserves (as defined in the Sale Order); (b) any order, other than the Interim Order or this Final Order, allowing use of Cash Collateral resulting from Postpetition Collateral; and (c) except as set forth in the Interim Order or this Final Order, any lien on any of the Postpetition Collateral or Prepetition Collateral with priority equal or superior to the Prepetition Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the Prepetition Agents, as applicable and in

accordance with the Prepetition Credit Documents) and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Agents, as applicable. It shall be a Cash Collateral Termination Event if, in any of these Chapter 11 Cases, the Debtors take or fail to take any of the actions contemplated, or if any order is entered granting any of the relief, in this paragraph.

37. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. The terms and provisions of this Final Order, including, without limitation, the claims, liens, security interests, and other protections granted to the Prepetition Secured Creditors pursuant to the Interim Order and this Final Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all Prepetition Secured Obligations have been Paid in Full. The terms and provisions in this Final Order concerning indemnification shall continue in the Chapter 11 Cases and in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases.

38. <u>Effectiveness</u>. This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding anything to the contrary proscribed by applicable law, this Final Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

39.    Following the occurrence of, and subject to, the Prepetition ABL/FILO Obligations being Paid in Full, (i) any reference in this Final Order to the Prepetition ABL Agent and/or the Prepetition FILO Agent agreeing to or having the right to do, or refraining from or having the right to refrain from doing, an act, or providing any consent or waiver hereunder, shall automatically, without further order of the Court, be construed as a reference to the Prepetition Term Loan Agent, and (ii) all notices required by this Final Order to be delivered to the Prepetition ABL Agent or the Prepetition FILO Agent shall be delivered to the Prepetition Term Loan Agent.

40.    Retention of Jurisdiction.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Dated: February 26th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**