# EXHIBIT C

# DECLARATION OF RONALD M. TUCKER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,[1]<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25–10068 (CTG)<br><br>(Jointly Administered) |

### **DECLARATION OF RONALD M. TUCKER**

I, Ronald M. Tucker, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein.

1. I am over the age of 21 and I am a representative of Simon Property Group, Inc. ("Simon"). Simon serves as the Co-Chairperson of the Committee. I am competent to make this declaration in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment of Kelley Drye & Warren LLP as Lead Counsel Effective as of January 30, 2025* (the "Application") filed contemporaneously herewith.[2]

2. This declaration is provided pursuant to ¶ D.2 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Appendix B Guidelines"), which "apply to the U.S. Trustee's review of applications for

---

[1] The Debtors in these chapter 11 cases are: JOANN Inc.; Needle Holdings LLC; Jo-Ann Stores, LLC; Creative Tech Solutions LLC; Creativebug, LLC; WeaveUp, Inc.; JAS Aviation, LLC; joann.com, LLC; JOANN Ditto Holdings Inc.; Dittopatterns LLC; JOANN Holdings 1, LLC; JOANN Holdings 2, LLC; and Jo-Ann Stores Support Center, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original *Guidelines for Reviewing Applications for Compensation Filed Under 11 U.S.C. § 330* adopted by the Executive Office for the United States Trustee ("EOUST") in 1996. I am informed by counsel that the Appendix B Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 and 1103 be accompanied by a verified statement from the client that addresses the following:

(a) The identity and position of the person making the verification.

(b) The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

(c) The number of firms the client interviewed.

(d) If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, then the circumstances warranting the retention of that firm.

(e) The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedure for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in non-bankruptcy cases to supervise outside general counsel, explain how and why. In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

**A.    Identity of the Declarant**

3. On January 28, 2025, Simon was appointed to the Committee and was subsequently elected Co-Chairperson of the Committee. Under the Bylaws of the Official Committee of Unsecured Creditors, the Co-Chairperson of the Committee, by and through its

`

representatives, has the authority to sign documents on behalf of, and to bind, the Committee as appropriate, to implement decisions of the Committee made in accordance with the bylaws.

4. Simon was involved in the Committee's decision to retain Kelley Drye on January 30, 2025 as the Committee's lead counsel in these chapter 11 cases, and participated in negotiating the terms of Kelley Drye's employment together with the other members of the Committee.

**B.    Steps Taken to Ensure Comparability of Engagement Terms**

5. I have confirmed with Kelley Drye that, while Kelley Drye's billing rates vary from attorney to attorney based on such facts as the attorney's seniority and position with the firm (*e.g.*, partner, counsel, or associate), years of experience, and the demand for services in the attorney's particular area of expertise, their billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a non-bankruptcy engagement.

6. The Committee has been informed that Kelley Drye endeavors to set the hourly rates for its attorneys and paraprofessionals at levels competitive to those charged by firms with which it competes.

**C.    Number of Firms Interviewed**

7. Kelley Drye was one of five firms to interview for the engagement. In connection with Kelley Drye's interview, the Committee evaluated the breadth of Kelley Drye's experience and particular areas of expertise, the firms' prior history of representing committees in chapter 11 cases, and the attorneys to be assigned to this matter.

**D.    Other Circumstances Warranting Retention of Kelley Drye**

8. The Committee has determined that Kelley Drye's attorneys' billing rates are set each year to ensure that their rates are in line with or lower than the billing rates of other

3

`

comparably skilled professionals at law firms in Kelley Drye's peer group.  This, coupled with Kelley Drye's previous experience as committee counsel in numerous chapter 11 cases, makes Kelley Drye the appropriate choice for lead Committee counsel in these chapter 11 cases.

**E.**     **Procedures Established to Supervise Fees and Expenses and Manage Costs**

9.     I understand that Kelley Drye's fees and expenses (i) will be subject to review, comment and objection (if warranted), and Court approval; and (ii) will be subject to the periodic review on an interim and final basis during the course of these chapter 11 cases by the United States Trustee (the "U.S. Trustee") and the Debtors, as well as by the Committee.

10.     During these chapter 11 cases, the Committee will monitor Kelley Drye's interim fee applications to ensure that the fees and expenses requested therein are reasonable in nature and correspond to necessary or beneficial services rendered on behalf of the Committee. Kelley Drye may amend and supplement its budget and staffing plan as the cases develop to reflect changed circumstances or unanticipated developments and will alert the Committee to those changed circumstances and unanticipated developments in a timely fashion.  To the extent the Committee has an objection to the fees and expenses requested by Kelley Drye in any interim fee statement that cannot be resolved to the Committee's satisfaction informally, Kelley Drye has informed me that they will file a notice of objection on the Committee's behalf.  In so doing, I understand that Kelley Drye reserves all rights to contest any such objection raised to the allowance or payment of its requested fees and expenses, and the Committee reserves the right to retain conflicts counsel to prosecute any such objection to the extent it cannot be resolved informally by the parties.

11.     Nothing contained herein is intended to limit Kelley Drye's ability to request allowance and payment of fees and expenses pursuant to sections 330 and 331 of the

Bankruptcy Code, nor to restrict Kelley Drye's right to defend any objection raised to the allowance or payment of such fees. Moreover, nothing herein is intended to restrict the Committee's right to retain conflicts counsel to prosecute any such fee objection to the extent the objection is not resolved informally by the parties or is raised by another party in interest, such as the U.S. Trustee.

### F.  Other Matters

12. Kelley Drye's hourly rates are subject to annual adjustments in January of each year to reflect economic and other conditions. I have been advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "periodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances." I have also been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation." Kelley Drye disclosed to the Committee its rates in effect as of January 1, 2025. To the extent Kelley Drye seeks to make any adjustments to its rate structure, the Committee expressly reserves the right to reject any such modification.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 26, 2025

_Ronald M. Tucker_
Ronald M. Tucker