**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 561** |

**AFFIDAVIT OF PUBLICATION**
**REGARDING NOTICE OF DEADLINES FOR**
**THE FILING OF PROOFS OF CLAIM, INCLUDING**
**UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

March 7, 2025

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

3/7/2025, NY/NATL, pg B5

Larnyce Tabron

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: JOANN INC., et al.,[1] Debtors. | Chapter 11, Case No. 25-10068 (CTG) (Jointly Administered)

**NOTICE OF DEADLINES FOR THE FILING OF PROOFS OF CLAIM, INCLUDING UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE**

**THE GENERAL BAR DATE IS APRIL 4, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME)**

**THE GOVERNMENTAL BAR DATE IS SEPTEMBER 8, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME)**

**THE INITIAL ADMINISTRATIVE CLAIMS BAR DATE IS APRIL 4, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME) FOR ALL ADMINISTRATIVE CLAIMS THAT AROSE OR ARE DEEMED TO HAVE ARISEN ON OR PRIOR TO FEBRUARY 26, 2025**

**THE AMENDED SCHEDULES BAR DATE IS AS DEFINED HEREIN**

**THE REJECTION DAMAGES BAR DATE IS AS DEFINED HEREIN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**Deadlines for Filing Proofs of Claim.** On March 5 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 561] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim, including claims by governmental units, claims arising under section 503(b)(9) of the Bankruptcy Code, and Rejection Damages Claims in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): **DEBTOR, CASE NO.:** JOANN Inc., 25-10068; JOANN Holdings 1, LLC, 25-10069; JOANN Holdings 2, LLC, 25-10070; Needle Holdings LLC, 25-10071; Jo-Ann Stores, LLC, 25-10072; Creative Tech Solutions LLC, 25-10073; Creativebug, LLC, 25-10074; WeaveUp, Inc., 25-10075; JAS Aviation, LLC, 25-10076; joann.com, LLC, 25-10077; JOANN Ditto Holdings Inc., 25-10078; Jo-Ann Stores Support Center, Inc., 25-10079; Dittopatterns LLC, 25-10080.

**The Bar Dates.** Pursuant to the Bar Date Order, **all** entities (except governmental units), including individuals, partnerships, corporations, joint ventures, estates, and trusts who have a claim or potential claim against the Debtors, that arose or are deemed to have arisen prior to June 30, 2024, no matter how remote or contingent such right to payment or equitable remedy may be, **including** requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before **April 4, 2025, at 11:59 p.m., prevailing Eastern Time** (the "General Bar Date"). Governmental units who have a claim or potential claim against the Debtors that arose or are deemed to have arisen prior to the Petition Date, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **September 8, 2025, at 11:59 p.m., prevailing Eastern Time** (the "Governmental Bar Date").

**Administrative Claims Bar Dates.** Parties asserting Administrative Claims against the Debtors' estates arising or deemed to be arisen on or prior to February 26, 2025 (the "Initial Administrative Claims Deadline") (but excluding claims for fees and expenses of professionals retained in these proceedings and claims asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code), are required to file a required to file proofs of claim so that such proofs of claim are actually received by Kroll by **April 4, 2025, at 11:59 p.m., prevailing Eastern Time** (the "Initial Administrative Claims Bar Date"). For Administrative Claims arising after February 26, 2025, all claimants would be required to file proofs of claim so that such proofs of claim are actually received by Kroll by the date that is 14 days following any hearing on a plan of liquidation, structured settlement, or other proposed resolution to the Debtors' Chapter 11 Cases.

**Amended Schedules Bar Date.** All parties asserting claims against the Debtors' estates that are affected by a previously unfiled Schedule or an amendment or supplement to the Schedules are required to file Proofs of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty days from the date on which the Debtors provide notice of a previously unfiled Schedule or amendment or supplement to the Schedules** (the "Amended Schedules Bar Date").

**Rejection Damages Bar Date.** All parties asserting claims against the Debtors' estates arising from the Debtors' rejection of an executory contract or unexpired lease must file a Proof of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) 11:59 p.m., prevailing Eastern Time, on the date that is 30 days after the later of (i) service of notice of an order approving the rejection of any executory contract or unexpired lease of the Debtors or (ii) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order** (the "Rejection Damages Bar Date"). For the avoidance of doubt and notwithstanding anything to the contrary herein, any counterparty to an unexpired lease of non-residential real property shall not be required to file claims, including for the avoidance of doubt Administrative Claims, against any of the Debtors unless and until the applicable lease is rejected by the Debtors.

**ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM, INCLUDING ANY REQUEST FOR PAYMENT UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE, IN EACH CASE ON OR BEFORE THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.**

**Filing a Proof of Claim.** Each proof of claim must be filed, including supporting documentation, so as to be **actually received** by the Debtors' notice and claims agent, Kroll, on or before the applicable Bar Date, either: (i) electronically through the Online Portal available at https://cases.ra.kroll.com/Joann2025 under "Case Navigation" and by clicking on "Submit a Claim," or (ii) by U.S. Mail, overnight mail, or other hand delivery system, at the following address: **By First Class Mail: JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; By Overnight Courier or Hand Delivery: JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232.**

**Contents of Proofs of Claim.** Each proof of claim must (i) be written in English; (ii) include a claim amount denominated in United States dollars using, if applicable, the exchange rate as of 11:59 p.m., prevailing Eastern Time, on the Petition Date (and to the extent such claim is converted to United States dollars, state the rate used in such conversion); (iii) clearly identify the Debtor against which the claim is asserted; (iv) conform substantially with the Proof of Claim Form provided by the Debtors or Official Form 410; (v) be signed by the claimant or by an authorized agent or legal representative of the claimant; and (vi) include as attachments any and all supporting documentation on which the claim is based. **Please note** that each proof of claim must state a claim against only 1 Debtor and clearly indicate the specific Debtor against which the claim is asserted. To the extent more than 1 Debtor is listed on the proof of claim, a proof of claim is treated as if filed only against the first-listed Debtor, or if a proof of claim is otherwise filed without identifying a specific Debtor, the proof of claim may be deemed as filed only against JOANN Inc.

**Section 503(b)(9) Requests for Payment.** Any proof of claim asserting a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code must also (i) set forth with specificity: (1) the date of shipment of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; (2) the date, place, and method (including carrier name) of delivery of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; (3) the value of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; and (4) whether the claimant timely made a demand to reclaim such goods under 546(c) of the Bankruptcy Code; (ii) attach any documentation identifying the particular invoices for which a claim under section 503(b)(9) of the Bankruptcy Code is being asserted; and (iii) attach documentation of any reclamation demand made to the Debtors under section 546(c) of the Bankruptcy Code (if applicable).

**Additional Information.** If you require additional information regarding the filing of a proof of claim, you may contact the Debtors' claims agent, Kroll Restructuring Administration LLC, by calling the Debtors' restructuring hotline at: (844) 712-2239 (U.S. & Canada) or (646) 863-7121 (International), or writing (i) via first class mail, to JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or via hand delivery or overnight mail, to JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232, or (ii) via email to: Joann2025info@ra.kroll.com with a reference to "JOANN Inc. (2025)" in the subject line. **Please note** that Kroll Restructuring Administration LLC **cannot** offer legal advice or advise whether you should file a proof of claim.

[1] The last four digits of Debtor JOANN Inc.'s federal tax identification numbers are 5540. A complete list of each of the Debtors in these chapter 11 cases and each such Debtor's federal tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/JOANN2025/. The location of Debtor JOANN Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5555 Darrow Road, Hudson, Ohio 44236.

Sworn to me this 7th day of March, 2025

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

**TRADE | RETAIL**

AMBER BRACKEN FOR THE NEW YORK TIMES

In response to requests from the United States, Canada tightened its visa rules and deployed personnel, equipment, helicopters and drones along the border.

# *Tariffs Threaten a 30-Year Trade Alliance*

FROM FIRST BUSINESS PAGE

neighbors.

"This is a day where the United States stopped seeing trade as force for mutual benefit, and began seeing it as a tool of economic warfare," said Edward Alden, a senior fellow at the Council on Foreign Relations. He added that the levies were "a fundamental attack on the economic well being of our closest neighbors."

While Mr. Trump paused his tariffs for one month on Tuesday, any relief could be short lived. The president has said that he expects to issue more tariffs on Canada and Mexico next month, when he announces what he is calling "reciprocal" tariff measures.

Mr. Trump defended his tariffs in an address to Congress Tuesday night, saying they were "not just about protecting American jobs — they are about protecting the soul of our country."

"Tariffs are about making America rich again and making America great again, and it is happening and it will happen rather quickly," he said. "There will be a little disturbance, but we are OK with that. It won't be much."

Economists argue that the tariffs could cause major disruptions in Canada and Mexico, because they are so reliant on the U.S. economy. Trade accounts for about a quarter of U.S. economic activity, compared with roughly 70 percent for Mexico and Canada. Canada and Mexico both send about 80 percent of their exports to the United States, while only about a third of U.S. exports go to Canada and Mexico collectively.

Tony Stillo, director of Canada economics at Oxford Economics, estimated that the tariffs would plunge the Canadian economy into a recession this year, push consumer price inflation to nearly 4 percent above the previous year and cause layoffs that would lift the unemployment rate above 8 percent.

"Trump's trade war will seriously hamper U.S.-Canada relations and severely upend North America's highly integrated production and supply network, possibly with lasting impacts on both economies," he said.

Marcus Noland, executive vice president and director of studies at the Peterson Institute for International Economics, estimated that a 25 percent tariff could reduce Mexico's economic growth about two percentage points, potentially resulting in large-scale factory closures and job losses.

Economists caution that Mr. Trump's unpredictable approach to trade — where he has announced tariffs, delayed then, enacted them and then suspended them all within a few weeks — is also likely to chill investment, as companies wait to see what the terms of trade will be.

Randy Carr, the chief executive of World Emblem, which manufactures labels and emblems, including for U.S. military uniforms, FedEx drivers and the National Football League players, said the tariff threats had caused him to rethink his plans for the next three years, and pull back on all spending on expansions and hiring.

"We're sitting on a lot of a lot of projects that we can't otherwise do as a result of just the threat of the tariff," he said. "Everyone's sitting on their hands waiting for the next thing to happen."

Mr. Carr said the tariffs had also given him a push to set up a secondary factory in the Dominican Republic, in addition to a factory in Mexico. He said that he would consider bringing manufacturing to the United States if the tariffs stayed in place, but that it would take time and significantly raise the cost of his products.

As a bigger economy, the United States is more insulated to trade than Canada and Mexico. But slowing America's biggest export markets will hurt U.S. growth, too, and it will cause more acute pain among communities that depend on those markets. Canada and Mexico are the biggest export markets for many American farmers.

DOUG MILLS/THE NEW YORK TIMES

On Tuesday, President Trump said tariffs "are about protecting the soul of our country." He also warned that they may cause "a little disturbance."

U.S. industries that depend on raw materials from the neighboring countries will also see costs rise, and some of those businesses could shut down as tariffs erase their profit margins. Analysts at S&P Global Ratings said on Thursday they expected the tariffs to decrease U.S. gross domestic product 0.6 percent over the next 12 months, and Canadian and Mexico G.D.P. 2 to 3 percent from their previous forecasts.

The tariffs also effectively shatter a trade deal Mr. Trump himself signed in his first term. When he signed that trade deal in 2020, Mr. Trump called it the "largest, fairest, most balanced and modern trade agreement ever achieved" and a "colossal victory" for farmers and factory workers. Supporters of the pact say that Mr. Trump's willingness to disregard it will clamp down on company investments — and turn some of the substantial investments they previously made under the pact into losses.

On Wednesday, America's major automakers issued statements thanking the president for the one-month pause in tariffs. But on a conference call Tuesday, they had told Mr. Trump that putting tariffs on cars and parts from Canada and Mexico would effectively erase all of their companies' profits by imposing billions of dollars of new costs, according to a person briefed on the call.

The tariffs have also decimated any trust between the governments involved. In response to U.S. requests, Canada tightened its visa rules and deployed personnel, equipment, helicopters and drones along the border. Mexico sent troops to the border and cracked down on drug cartels, including delivering cartel operatives into U.S. custody.

Border crossings plummeted. In the end, none of that mattered.

Prime Minister Justin Trudeau of Canada said in a news conference on Tuesday that Mr. Trump's rationale for the tariffs was "completely bogus, completely unjustified, completely false." Mr. Trudeau said he had to assume that what Mr. Trump really wanted was "a total collapse of the Canadian economy" to accomplish an objective the president had talked about repeatedly: annexing Canada.

But, he said, those moves would also drag down the U.S. economy. "A fight with Canada will have no winners," Mr. Trudeau said.

Some groups had supported Mr. Trump's tariffs precisely because they wanted to unwind economic integration. The United Auto Workers, which represents mostly American workers, said in a statement that it had seen "the devastating effects of so-called free trade on the working class" for 40 years.

"We are glad to see an American president take aggressive action on ending the free trade disaster that has dropped like a bomb on the working class," the union said. "The working class suffered all the pain of Nafta, and we won't suffer all the pain of undoing Nafta."

But other industries have complained that severing those ties will backfire on Mr. Trump's aims by hurting American manufacturing and destroying jobs.

*U.S. neighbors' economies could be tipped into recession.*

The National Council of Textile Organizations, a trade group representing U.S. textile makers that argues for stricter restrictions on imports from China, said that imposing tariffs on Canada and Mexico would "benefit China and other Asian countries and harm the U.S. textile industry, which has lost 27 plants in the past 20 months."

U.S. textile makers ship more than half of their total global textile exports to Mexico and Canada, and those materials often come back as finished products to the United States under the U.S.M.C.A. Destabilizing this North American production chain would "only exacerbate migration and the fentanyl crisis," the group said.

A North American trade agreement was a controversial concept when negotiations began in the 1990s. The United States and Canada already had a free-trade pact, but neither country had signed a deal with a poorer nation like Mexico.

Supporters believed the agreement would boost Mexico's economic growth, providing a destination for investment and a market for U.S. exports, while also helping to discourage illegal immigration. Critics said it would steal U.S. manufacturing jobs.

Gordon Hanson, an economist at the Harvard Kennedy School who has studied the impact of Nafta and was working in Mexico when it was drafted, said its creators were right that the deal would create efficient industries. But they were wrong about it benefiting lower-income workers, he said, either non-college-educated workers in the United States, or those in Mexico's poorer, less industrialized south.

Overall, economic studies indicate that Nafta expanded the U.S. economy. But it created losers as well as winners. Many of those on the losing end felt betrayed by a Democratic Party that fought for free trade agreements rather than blue-collar workers, and ultimately ended up backing Mr. Trump and his trade policies.

Mr. Hanson said Nafta was "very disruptive in textile industries and some other labor-intensive sectors," like parts of automobile manufacturing, and led to job losses in those sectors. "The political ramifications of it were probably as big or bigger than the economic ones," he added.

Ironically, Mr. Hanson said that Mr. Trump's efforts to unwind free trade agreements could cause the kind of economic dislocations those agreements caused in the first place, as they destroyed and then recreated new supply chains.

Even if manufacturing jobs end up increasing overall in the United States, he said, certain factories might shut down because they depend on supply chains that run through Canada and Mexico.

"There is going to be significant disruption to regional economies," he said. "I would worry about the places that are going to be disrupted by this and the long-lived adverse impact."

Jack Ewing contributed reporting.

# *Macy's Signals Rocky Year Ahead As Retailers Confront Trade War*

By AIMEE ORTIZ and JORDYN HOLMAN

Macy's, the largest department store in the United States, saw slightly improved sales during the holiday season, but it and other retailers have warned of a rocky year ahead as tariffs push up prices and sow uncertainty for shoppers.

Macy's said on Thursday that comparable sales across all of its stores, which include Bloomingdale's and Bluemercury, rose 0.2 percent last quarter, its best result in nearly three years.

Although a modest improvement, the result was welcomed as the retailer faces many challenges, including consumers squeezed by inflation, shrinking margins and a bizarre accounting error. Macy's is in the midst of a turnaround plan that includes closing 150 underperforming locations; it has closed more than 60 so far.

Like other retailers, Macy's gave a cautious outlook for this year. It expects to bring in less revenue, in part because of the store closures, and for comparable sales to fall as much as 2 percent. The company's shares, which have fallen about 20 percent this year, seesawed in early trading on Thursday.

Neil Saunders, managing director of the retail consulting firm GlobalData, said that this year would be a "choppy one" for Macy's, but that it was "now at least headed in the right direction."

Its plans may be derailed by a sweeping round of tariffs recently imposed by President Trump on imports from Canada, Mexico and China — the country's three largest trading partners — which are looming over retailers.

Tony Spring, the chief executive of Macy's, told investors in a call on Thursday that because the company's inventories were in "good shape," there would be no effect this quarter from tariffs.

"As we look at the remainder of the year, we're taking a case-by-case basis and trying to react in real time," he said.

Target noted on Tuesday that tariffs were a factor that could prompt customers to hold back on spending. Corie Barry, the chief executive of Best Buy, said price increases for American consumers were "highly likely" as the company expected vendors to "pass along some level of tariff costs to retailers."

Some retailers noted that they had already worked to reduce their possible exposure to tariffs, reducing their potential impact.

Steve Miller, the chief financial officer of Warby Parker, said last week that the company had diversified its suppliers over the past five years in order to reduce tariff exposure, noting that China represents 20 percent of its goods costs.

"We have multiple levers in place to manage a dynamic tariff environment," he said.

TJX, the owner of TJ Maxx and Marshalls, noted last week that it expected a "small negative impact" from tariffs in the first half of the year. "We have seen tariffs before, and we are confident we can navigate our way through the current China tariff environment on our future buys," said John Klinger, the retailer's finance chief.

**20%**
Decline of Macy's shares this year.

**2%**
Anticipated decline in Macy's comparable sales this year.

Other brands have highlighted their ability to adapt, while also acknowledging the uncertainty that Mr. Trump's tariffs have generated, which can dampen business activity.

John M. Vandemore, the chief financial officer of Skechers, joked with investors on Tuesday that "between when I left my hotel room and I came down, I had to check and make sure there were no new tariffs" before taking their questions. Still, he noted that the footwear company had a "pretty solid path" to absorbing the costs.

David Swartz, a senior equity analyst at Morningstar, said that while retailers were concerned about tariffs, it was not necessarily a new threat, since some of the tariffs on China date back to Mr. Trump's first term.

If investors thought the latest round of tariffs were the start of a prolonged trade war, "you'd see stocks getting crushed all over the place," he said. Ultimately, he added, "it doesn't make any sense" for Mr. Trump "to actually cause a recession, which would make people very angry with him."

DAVE SANDERS FOR THE NEW YORK TIMES

Macy's is in the midst of a turnaround plan that includes shuttering 150 underperforming locations; it has closed more than 60 of them so far.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: JOANN INC., *et al.*,[1] Debtors. | Chapter 11, Case No. 25-10068 (CTG) (Jointly Administered) |

**NOTICE OF DEADLINES FOR THE FILING OF PROOFS OF CLAIM, INCLUDING UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE**

**THE GENERAL BAR DATE IS APRIL 4, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME)**

**THE GOVERNMENTAL BAR DATE IS SEPTEMBER 8, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME)**

**THE INITIAL ADMINISTRATIVE CLAIMS BAR DATE IS APRIL 4, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME) FOR ALL ADMINISTRATIVE CLAIMS THAT AROSE OR ARE DEEMED TO HAVE ARISEN ON OR PRIOR TO FEBRUARY 26, 2025**

**THE AMENDED SCHEDULES BAR DATE IS AS DEFINED HEREIN**

**THE REJECTION DAMAGES BAR DATE IS AS DEFINED HEREIN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**Deadlines for Filing Proofs of Claim**. On March 5 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 561] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim, including claims by governmental units, claims arising under section 503(b)(9) of the Bankruptcy Code, and Rejection Damages Claims in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): **DEBTOR, CASE NO.:** JOANN Inc., 25-10068; JOANN Holdings 1, LLC, 25-10069; JOANN Holdings 2, LLC, 25-10070; Needle Holdings LLC, 25-10071; Jo-Ann Stores, LLC, 25-10072; Creative Tech Solutions LLC, 25-10073; Creativebug, LLC, 25-10074; WeaveUp, Inc., 25-10075; JAS Aviation, LLC, 25-10076; joann.com, LLC, 25-10077; JOANN Ditto Holdings Inc., 25-10078; Jo-Ann Stores Support Center, Inc., 25-10079; Dittopatterns LLC, 25-10080.

**The Bar Dates**. Pursuant to the Bar Date Order, ***all*** entities (except governmental units), including individuals, partnerships, corporations, joint ventures, estates, and trusts who have a claim or potential claim against the Debtors, that arose or are deemed to have arisen prior to June 30, 2024, no matter how remote or contingent such right to payment or equitable remedy may be, ***including*** requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before **April 4, 2025, at 11:59 p.m., prevailing Eastern Time** (the "General Bar Date"). Governmental units who have a claim or potential claim against the Debtors that arose or are deemed to have arisen prior to the Petition Date, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **September 8, 2025, at 11:59 p.m., prevailing Eastern Time** (the "Governmental Bar Date").

**Administrative Claims Bar Dates**. Parties asserting Administrative Claims against the Debtors' estates arising or deemed to be arisen on or prior to February 26, 2025 (the "Initial Administrative Claims Deadline") (but excluding claims for fees and expenses of professionals retained in these proceedings and claims asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code), are required to file a required to file proofs of claim so that such proofs of claim are actually received by Kroll by **April 4, 2025, at 11:59 p.m., prevailing Eastern Time** (the "Initial Administrative Claims Bar Date"). For Administrative Claims arising after February 26, 2025, all claimants would be required to file proofs of claim so that such proofs of claim are actually received by Kroll by the date that is 14 days following any hearing on a plan of liquidation, structured settlement, or other proposed resolution to the Debtors' Chapter 11 Cases.

**Amended Schedules Bar Date**. All parties asserting claims against the Debtors' estates that are affected by a previously unfiled Schedule or an amendment or supplement to the Schedules are required to file Proofs of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty days from the date on which the Debtors provide notice of a previously unfiled Schedule or amendment or supplement to the Schedules** (the "Amended Schedules Bar Date").

**Rejection Damages Bar Date**. All parties asserting claims against the Debtors' estates arising from the Debtors' rejection of an executory contract or unexpired lease must file a Proof of Claim by **the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, or (b) 11:59 p.m., prevailing Eastern Time, on the date that is 30 days after the later of (i) service of notice of an order approving the rejection of any executory contract or unexpired lease of the Debtors or (ii) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order** (the "Rejection Damages Bar Date"). For the avoidance of doubt and notwithstanding anything to the contrary herein, any counterparty to an unexpired lease of non-residential real property shall not be required to file claims, including for the avoidance of doubt Administrative Claims, against any of the Debtors unless and until the applicable lease is rejected by the Debtors.

**ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM, INCLUDING ANY REQUEST FOR PAYMENT UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE, IN EACH CASE ON OR BEFORE THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.**

**Filing a Proof of Claim**. Each proof of claim must be filed, including supporting documentation, so as to be ***actually received*** by the Debtors' notice and claims agent, Kroll, on or before the applicable Bar Date, either: (i) electronically through the Online Portal available at https://cases.ra.kroll.com/Joann2025 under "Case Navigation" and by clicking on "Submit a Claim," or (ii) by U.S. Mail, overnight mail, or other hand delivery system, at the following address: **By First Class Mail: JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; By Overnight Courier or Hand Delivery: JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232.**

**Contents of Proofs of Claim**. Each proof of claim must (i) be written in English; (ii) include a claim amount denominated in United States dollars using, if applicable, the exchange rate as of 11:59 p.m., prevailing Eastern Time, on the Petition Date (and to the extent such claim is converted to United States dollars, state the rate used in such conversion); (iii) clearly identify the Debtor against which the claim is asserted (iv) conform substantially with the Proof of Claim Form provided by the Debtors or Official Form 410; (v) be signed by the claimant or by an authorized agent or legal representative of the claimant; and (vi) include as attachments any and all supporting documentation on which the claim is based. ***Please note*** that each proof of claim must state a claim against only 1 Debtor and clearly indicate the specific Debtor against which the claim is asserted. To the extent more than 1 Debtor is listed on the proof of claim, a proof of claim is treated as if filed only against the first-listed Debtor, or if a proof of claim is otherwise filed without identifying a specific Debtor, the proof of claim may be deemed as filed only against JOANN Inc.

**Section 503(b)(9) Requests for Payment**. Any proof of claim asserting a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code must also (i) set forth with specificity: (1) the date of shipment of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; (2) the date, place, and method (including carrier name) of delivery of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; (3) the value of the goods the claimant contends the Debtors received in the 20 days before the Petition Date; and (4) whether the claimant timely made a demand to reclaim such goods under 546(c) of the Bankruptcy Code; (ii) attach any documentation identifying the particular invoices for which a claim under section 503(b)(9) of the Bankruptcy Code is being asserted; and (iii) attach documentation of any reclamation demand made to the Debtors under section 546(c) of the Bankruptcy Code (if applicable).

**Additional Information**. If you require additional information regarding the filing of a proof of claim, you may contact the Debtors' claims agent, Kroll Restructuring Administration LLC, by calling the Debtors' restructuring hotline at: (844) 712-2239 (U.S. & Canada) or (646) 863-7121 (International), or writing (i) via first class mail, to JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or via hand delivery or overnight mail, to JOANN Inc. (2025) Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232, or (ii) via email to: Joann2025Info@ra.kroll.com with a reference to "JOANN Inc. (2025)" in the subject line. ***Please note*** that Kroll Restructuring Administration LLC ***cannot*** offer legal advice or advise whether you should file a proof of claim.

[1] The last four digits of Debtor JOANN Inc.'s federal tax identification number are 5540. A complete list of each of the Debtors in these chapter 11 cases and each such Debtor's federal tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/JOANN2025/. The location of Debtor JOANN Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 5555 Darrow Road, Hudson, Ohio 44236.

**THE NEW YORK TIMES CLASSIFIED LISTINGS**

Help Wanted 2600

TECHNOLOGY
UiPath, Inc. has the following position avail. in New York, NY:

Automation Program Advisor (job# TK-0127) 20% domestic travel req'd to customer locations & company offices. Travel exp. paid by employer. 100% remote position reporting to UiPath, Inc. HQ in NY, NY. Candidate may live anywhere in the continental U.S. (Salary range: $127,000/yr. to $212,500/yr.) Base salary ranges may vary by geographic location & relevant experience, education, certifications, & seniority as compared to others doing substantially similar work. There is no guarantee an offer will be at the top of the posted range based on the salary analysis. We value a range of diverse backgrounds, experiences and ideas. We pride ourselves on our diversity & inclusive workplace that provides equal opportunities to all persons regardless of age, race, color, religion, sex, sexual orientation, gender identity & expression, national origin, disability, neurodiversity, military &/or veteran status, or any other protected classes. Additionally, UiPath provides reasonable accommodations for candidates on request & respects applicants' privacy rights. To review these & other legal disclosures, visit our privacy policy. E-mail resume w/ job # to:
job.applications@uipath.com

MARSHAL/ SHERIFF SALES 3650

MARSHAL'S EXECUTION SALE
PUBLIC AUCTION
Re: Parking Violations Vs Various Judgment Debtors. I Will Sell At Public Auction for City Marshal Bernard Blake
By Rafael Lopez Auctioneer On Tuesday, March 11, 2025 at 10:00AM At Five J's Automotive
4825 Baldwin Street, Bronx, N.Y., 10465
All R/T/I in & to the Following Vehicles:
07 HYUN 5NPET46C27H242159
13 FORD 1FM5K8D8XDGB95955
08 TOYO 2T1BR32E78C865204
11 BMW WBAPK5G52BNN28715
11 SUBA JF2SHABC6BH749518
08 NISS 5N1AR18B78C645823
08 HOND 1HGCS128X8A021722
07 AUDI WA1BY74LX7D070939
08 CHEV 1GCFG15X081226546
11 HYUN KMHDH4AEXBU092849
Following Vehicles Sold With Liens
21 HOND 1HGCV1F12MA001902
17 DODG 2C3CDXHG1HH623635
22 TOYO 5YFEPMAE0NP363141
15 BMW WBA5B1C57FD917688
17 FORD 1FATP8UH1H5307480
19 CHEV 1G1ZD5STXKF161111
19 VOLK 3VV2B7AX2KM080085
17 NISS JN8AT2MV8HW257286
18 NISS 3N1AB7AP5JY227990
11 KIA 5XYKWDA21BG176535
14 FORD 1FMCU9GX5EUA85308
16 ME/BE WDDLJ6HB4GA179110
16 BMW WBA8E3C58GK502621
Following Vehicles Sold As Salvage
12 TOYO 5TFUM5F1XCX034333
CASH ONLY Inspect ½Hr. Prior to Sale
City Marshal Bernard Blake
Badge #63 Phone 718-528-4584

Notification Of Auction Of Secured Creditors Collateral
PLEASE TAKE NOTICE that on March 11, 2025 at 10:00 a.m. Simon Ganz (the "Secured Party") will sell the assets of Jacob Richter ("Richter") who has defaulted on payment of his $20,021,028.93 debt due to the Secured Party. All of Richter's membership interests in New Green Holdings LLC; JDR Gardens LLC; Nelle Holdings LLC; Sushi K Bar WI LLC; Sushi K Bar BP LLC; RSBRM Capital LLC RSBRM Funding LLC; JR 1654 Equities LLC; SkyRx LLC; Na Nach West LLC; G&J 109 Partners LLC; SJ Miller LLC; Deanland Holdings LLC; JMB Gardens LLC will be auctioned. Only qualified bidders who deposit at least $22,000 in escrow will be permitted to bid. For information on how to qualify and to receive complete bidding procedures & auction terms, please contact Isaac Nutovic at inutovic@nutovic.com or 917-922-7963

The New York Times Games
nytimes.com/games