**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 468, 469 |
| | Hearing Date: To Be Determined |
| | Obj. Deadline: Mar. 19, 2025 at 4:00 p.m. (ET)[2] |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP AS TAX ADVISORY SERVICES PROVIDER TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT AGREEMENTS, AND (III) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, hereby objects (this "Objection") to the *Application of Debtors for Entry of an Order (I) Authorizing the Employment and Retention of Deloitte Tax LLP as Tax Advisory Services Provider to the Debtors and Debtors in Possession, Effective as of the Petition Date, (II) Approving the Terms of the Engagement Agreements, and (III) Granting Related Relief* [D.I. 469] (the "Application"),[3] and in support of this Objection respectfully states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Extended for the U.S. Trustee from March 6, 2025 at 4:00 p.m.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application. The Application was filed under seal at Docket No. 468, and a redacted version of the Application was filed at Docket No. 469.

**PRELIMINARY STATEMENT**

1. The Court should deny the Application because Deloitte Tax LLP ("Deloitte Tax") has an actual conflict of interest requiring disqualification. Specifically, the Debtors paid Deloitte Tax preferential transfers totaling approximately $885,564.00 during the ninety-day lookback period under section 547(b) of the Bankruptcy Code. Under section 327(a) of the Bankruptcy Code and controlling Third Circuit precedent, the Debtors may not retain Deloitte Tax unless and until it establishes that these payments are not subject to avoidance.

2. Additionally, the Debtors paid an affiliate of Deloitte Tax approximately $2,015,027.58 in preferential transfers during the ninety-day lookback period under section 547(b). These transfers present a separate and independent basis upon which the Court can find that Deloitte Tax is not "disinterested" and therefore cannot be retained under section 327(a).

3. Accordingly, the U.S. Trustee respectfully requests that the Court deny the Application unless Deloitte Tax first meets its burden of showing that it does not hold an interest adverse to the Debtors' estates and is a "disinterested person." 11 U.S.C. § 327(a).

**JURISDICTION AND STANDING**

4. This Court has jurisdiction to hear and determine the Application and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

### A. The Chapter 11 Cases

7. On January 15, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

8. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9. On January 28, 2025, pursuant to section 1102(a)(1) of the Bankruptcy Code, the U.S. Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases. D.I. 198.

10. As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases.

### B. The Application

11. On February 20, 2025, the Debtors filed the Application.

12. By and through the Application, the Debtors are seeking Court approval to retain Deloitte Tax pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code to provide tax advisory services to the Debtors.

13. The Application provides that Deloitte Tax will perform certain Services for the Debtors in accordance with a Tax Advisory SOW, Tax Compliance SOW and Tax Restructuring SOW. D.I. 469, ¶ 12. Copies of the Tax Advisory SOW, Tax Compliance SOW and Tax Restructuring SOW are annexed to the Proposed Order granting the Application. *Id.* at Ex. A, Annexes 1-3.

14. The Tax Advisory SOW, Tax Compliance SOW and Tax Restructuring SOW were issued under and pursuant to the terms of a Master Services Agreement between Deloitte LLP and Jo-Ann Stores LLC dated August 12, 2024, which is attached to the Proposed Order as Annex 4 (the "MSA").

15. The Debtors and Deloitte Tax executed the Tax Advisory SOW and Tax Compliance SOW prepetition, on or about August 15, 2024. *Id.* at Ex. A, Annexes 1-2. The Debtors and Deloitte Tax executed the Tax Restructuring SOW postpetition in connection with these Chapter 11 Cases. *Id.* at Ex. A, Annex 3.

16. The Services that Deloitte Tax provides to the Debtors are subject to different compensation structures in accordance with the three SOWs. *Id.* at ¶¶ 16-20.

17. For example, the Tax Advisory SOW provides that Deloitte Tax will bill the Debtors for, among other things, time incurred at the hourly rates set forth therein. *Id.* at Ex. A, Annex 1, p. 2. The Tax Advisory SOW does not include terms governing invoicing and payment for the tax advisory services. *Id.* Upon information and belief, including the representations of the Debtors' professionals, this means that such invoicing and payment terms are governed by the MSA. *Id.* at Ex. A, Annex 1, Preamble (providing that the Tax Advisory SOW "incorporates the terms and conditions" of the MSA). The MSA provides that "[e]xcept as otherwise provided in an SOW," the applicable Deloitte LLP subsidiary providing services to the Debtors shall invoice the

Debtors on a monthly basis, and the Debtors "shall pay each invoice within sixty (60) days of its receipt thereof." *Id.* at Ex. A, Annex 4, § 2(d).

18. Additionally, the Tax Compliance SOW provides that Deloitte Tax will charge the Debtors annual fees for the tax compliance services. *Id.* at Ex. A, Annex 2, pp. 7-8. The annual fee for "Year One"—covering the period from the execution of the Tax Compliance SOW on August 15, 2024 through December 31, 2024—was $580,000. *Id.* at Ex. A, Annex 2, p. 7. The Tax Compliance SOW further provides that Deloitte Tax will invoice the Debtors for the tax compliance services according to the schedule set forth therein. *Id.* at Ex. A, Annex 2, p. 8. Regarding Year One, the Tax Compliance SOW provides that Deloitte Tax would invoice the Debtors as follows:

| **Date to be Billed** | **Amount** |
|---|---|
| Upon Execution | $193,000 |
| September 2024 | $193,000 |
| December 2024 | $194,000 |
| Total: | **$580,000** |

*Id.*

19. The Tax Compliance SOW further provides that "[p]ayments will be due within 65 days of receipt of the invoice." *Id.*

C.  **The Prepetition Transfers**

20. The Application provides that during the ninety days prior to the Petition Date, "Deloitte Tax received approximately $935,564, including $50,000 in retainer amounts, for services performed and/or to be performed prior to such date." D.I. 469, ¶ 15. Neither the Application nor the declaration of Laura J. Paszt filed in support thereof [D.I. 469, Ex. B] (the

"Paszt Declaration," or "Paszt Decl.") provides any additional information with respect to these transfers to Deloitte Tax.

21.     The Paszt Declaration also discloses prepetition transfers paid to certain affiliates of Deloitte Tax. In particular, it discloses that during the ninety days prior to the Petition Date, "the Debtors paid Deloitte FAS approximately $2,015,028 for services performed prior to such date." *Id.* at Ex. B, ¶ 30. Neither the Application nor the Paszt Declaration provides any additional information with respect to these transfers to Deloitte FAS.

22.     In response to informal comments from the U.S. Trustee, the Debtors provided information regarding the prepetition transfers to Deloitte Tax and Deloitte FAS on an invoice-by-invoice basis, including the dates on which the Deloitte entities invoiced the Debtors, the time periods covered by the invoices, the amount of fees requested, and the date of payment:

| **Prepetition Payments to Deloitte Tax LLP** | | | | | | |
|---|---|---|---|---|---|---|
| **Invoice Number** | **Invoice Amount** | **Invoice Date** | **Payment Date** | **Payment Amount** | **Dates Services Rendered** | **Days to Payment** |
| 8005178989 | $125,450.00 | 9/18/2024 | 1/9/2025 | $125,450.00 | 7/1/2024 – 8/31/2024 | 113 |
| 8005261855 | $70,000.00 | 10/15/2024 | 1/9/2025 | $70,000.00 | 8/15/2024 – 10/15/2024[4] | 86 |
| 8005363545 | $76,867.00 | 11/12/2024 | 1/9/2025 | $76,867.00 | 9/1/2024 – 10/31/2024 | 58 |
| 8005560831 | $32,876.00 | 1/6/2025 | 1/9/2025 | $32,876.00 | 11/1/2024 – 12/31/2024 | 3 |
| 8005566001 | $580,371.00 | 1/8/2025 | 1/9/2025 | $580,371.00 | 8/15/2024 – 1/5/2025 | 1 |
| | | | **Total:** | **$885,564.00** | | |

---

[4] The Debtors' responses provide that this invoice reflects "progress billing" for "tax return compliance" for the period covering August 15, 2024 through January 5, 2025. However, this is inconsistent with the Tax Compliance SOW, which provides specific dates for progress billing at quarterly intervals. Moreover, any tax compliance services Deloitte Tax provided after December 31, 2024 would be subject to "Year Two" annual fees, which were substantially higher than Year One annual fees and billed according to a different progress billing schedule. Application, Ex. A, Annex 2, pp. 7-8.

6

| **Prepetition Payments to Deloitte Financial Advisory Services LLP** | | | | | | |
|---|---|---|---|---|---|---|
| **Invoice Number** | **Invoice Amount** | **Invoice Date** | **Payment Date** | **Payment Amount** | **Dates Services Rendered** | **Days to Payment** |
| 8004988844 | $761,723.01 | 7/16/2024 | 12/19/2024 | $761,723.01 | 6/2/2024 – 6/30/2024 | 156 |
| 8005073392 | $605,987.25 | 8/14/2024 | 1/3/2025 | $605,987.25 | 7/1/2024 – 7/31/2024 | 142 |
| 8005158778 | $549,046.00 | 9/12/2024 | 12/13/2024 | $549,046.00 | 8/1/2024 – 8/31/2024 | 92 |
| 8005268379 | $98,271.32 | 10/17/2024 | 1/10/2025 | $98,271.32 | 9/1/2024 – 10/4/2024 | 85 |
| | | | Total: | $2,015,027.58 | | |

## OBJECTION

23. Section 327(a) of the Bankruptcy Code provides that a debtor in possession "with the court's approval, may employ one or more … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The term "disinterested person" is defined in part as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). This provision, better known as the "catch-all" provision, "has been held broad enough to include anyone who 'in the slightest degree might have some interest or relationship that might faintly color the independence and impartial attitude required [of estate professionals] by the Code and the Bankruptcy Rules.'" *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3d Cir. 1991) (citations omitted).

24. The Third Circuit has previously held that professionals who have received preferential transfers are not "disinterested persons." *See In re Pillowtex, Inc.*, 304 F.3d 246, 255

7

(3d Cir. 2002); *see also United States Trustee v. First Jersey Secs., Inc. (In re First Jersey Secs., Inc.)*, 180 F.3d 504, 514 (3d Cir. 1999) (finding that preferential stock transfer created a disqualifying, actual conflict of interest under Code section 327(a)). Likewise, courts in this district have previously held that "[r]eceipt of a preferential transfer … constitute[s] an actual conflict of interest requiring disqualification." *In re Fleming Cos., Inc.*, 305 B.R. 389, 393 (Bankr. D. Del. 2004) (citing *In re First Jersey Secs., Inc.*, 180 F.3d at 509).

25. In reviewing the prepetition payments to Deloitte Tax and Deloitte FAS on an invoice-by-invoice basis—in particular the dates services were rendered and the timing of the payments—a substantial preference issue is apparent. Specifically, nearly $900,000 in transfers to Deloitte Tax are facially preferential and/or contrary to the contractual payment terms established in the Tax Advisory SOW, Tax Compliance SOW and MSA. It appears that immediately after entering into these agreements in August 2024, the Debtors were unable to make payments according to the trade terms between the parties. In fact, the Debtors did not make any payments to Deloitte Tax on account of its prepetition invoices for nearly four months. Then, once it was clear that the Debtors would be proceeding with another chapter 11 filing, the Debtors paid all outstanding balances due and owing to Deloitte Tax on the eve of the Petition Date to the prejudice of other creditors. As the Third Circuit specifically stated in *Pillowtex*, "[t]he receipt of a preference by a creditor thus creates a conflict with unpaid creditors, whose share of the remaining assets is diminished by the payment." 304 F.3d at 252; *see also In re Fleming Cos., Inc.*, 305 B.R. at 393 ("The receipt of a preference creates a conflict with unpaid creditors because a payment by an insolvent debtor to one creditor is necessarily paid at the expense of another creditor.") (citing *Pillowtex*, 304 F.3d at 252).

26. Moreover, the Debtors paid over $2,000,000 in facially preferential transfers to Deloitte FAS during the statutory lookback period. Because Deloitte FAS is an affiliate of Deloitte Tax, these transfers also arguably provide a separate and independent basis upon which the Court can find that Deloitte Tax holds an interest adverse to the estates and/or lacks disinterestedness and is therefore disqualified from retention. *See* 11 U.S.C. § 101(14)(C).

27. Accordingly, Deloitte Tax must establish that the foregoing transfers are not subject to avoidance before the Court can authorize its retention under section 327(a) and applicable Third Circuit case law. *See Pillowtex*, 304 F.3d at 255 ("We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue.").

**RESERVATION OF RIGHTS**

28. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, among other things: (i) complement, supplement, augment, alter or modify this Objection; (ii) assert any objection; (iii) file any appropriate motion; (iv) conduct any and all discovery as may be deemed necessary or as may be required; and (v) assert such other grounds as may become apparent upon further factual discovery.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order: (i) denying the Application; and (ii) granting such other and further relief as the Court deems just and equitable.

Dated: March 19, 2025

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By: */s/ Malcolm M. Bates*
Malcolm M. Bates
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Telephone: (302) 573-6491
Email:   Malcolm.M.Bates@usdoj.gov

**CERTIFICATE OF SERVICE**

      I, Malcolm M. Bates, hereby certify that on March 19, 2025, I caused to be served a copy of the foregoing Objection by electronic service on the registered parties via the Court's CM/ECF system and courtesy copies were served via email on parties in interest.

Dated: March 19, 2025                                         */s/ Malcolm M. Bates*
                                                                              Malcolm M. Bates