IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,[1]<br><br>　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 25-10068 (CTG)<br>)<br>) (Jointly Administered)<br>)<br>) Hearing Date: April 3, 2025, at 1:00 p.m. (ET)<br>) Objection Deadline: March 27, 2025, at 4:00 p.m. (ET) |

**MOTION OF JONES LANG LASALLE AMERICAS, INC. FOR ENTRY OF AN ORDER: (I) COMPELLING THE ASSUMPTION OR REJECTION OF A CERTAIN EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. §§ 105(a) AND 365 OF THE UNITED STATES BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6006 AND 9014; (II) ALLOWING AND COMPELLING PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b); AND (III) GRANTING SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM JUST AND PROPER**

Jones Lang LaSalle Americas, Inc. ("JLL") states as follows in support of this Motion for an Order: (I) Compelling the Assumption or Rejection of a Certain Executory Contract Pursuant to 11 U.S.C. §§ 105(a) and 365 and Federal Rules of Bankruptcy Procedure 6006 and 9014; (II) Allowing and Compelling Payment of an Administrative Expense Claim Under 11 U.S.C. § 503(b); and (III) Granting Such Other and Further Relief as the Court May Deem Just and Proper (the "Motion"):

**Relief Requested**

1.　　Through this Motion, JLL seeks entry of an order, substantially in the form attached hereto (1) compelling the assumption or rejection of JLL's executory contract with the Debtors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027) (together the "Debtors"). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

(2) allowing and compelling payment of an administrative expense claim in favor of JLL in the amount of no less than $119,061.77 as of the date of the filing of this Motion, reflected in the January 16, January 23, and January 30 Invoices (as defined below); and, alternatively (3) granting such other and further relief as the Court deems just and proper.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware has jurisdiction to consider this Motion pursuant to 28 U.S.C §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, JLL consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are Sections 105(a), 362(d), 365(d), 503(a) and (b) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court District of Delaware.

**Background**

6. On January 15, 2025 (the "Petition Date"), the above-captioned debtors and debtor in possession (the "Debtors") commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

7. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) by Order of this Court dated January 16, 2025 [Docket No. 103].

8. On January 15, 2025, Debtors moved the Court for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Pre-petition Claims of (A) Store Support Vendors, (B) Lien Claimants, and (C) 503(B)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief [Docket No. 8].

9. On January 17, 2025, the Court entered the Interim Order (I) Authorizing the Debtors to Pay Certain Pre-petition Claims of (A) Store Support Vendors, (B) Lien Claimants, and (C) 503(B)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief (the "Critical Vendor Order") [Docket No. 109] authorizing the Debtors to, on an interim basis and in their sole discretion, pay certain pre-petition claims of certain vendors.[2]

10. On February 26, 2025, the Debtors filed a proposed Joint Chapter 11 Plan which provides for the liquidation of the Debtors. [Docket No. 513]

11. On February 26, 2025, the Court authorized the sale of substantially all of the Debtors' assets to GA Joann Retail Partnership, LLC together with the Pre-petition Term Loan

---

[2] The Critical Vendor Order was made final by Final Order entered by the Court on February 7, 2025. [Docket No. 331]

Agent, Wilmington Savings Fund Society, FSB, (together, the "Purchaser") pursuant to which the Debtors through the Purchaser/Agent began conducting going out of business (GOB) sales (the "Sale Order"). [Docket No. 520]

12. In resolution of the Limited Objection filed by JLL to the proposed Sale Order, the Debtors, the Agent and Purchaser stipulated and agreed that all fees and expenses due to JLL under the MSA for post-petition work, including without limitation those fees and expenses due to subcontractors and other third-party vendors ("Third Party Vendors") retained by JLL pursuant to the MSA, are included in the definition of Expenses required to be paid in the Agency Agreement by the Agent, Purchaser and/or the Debtors as so required subject to the understanding that all rights were reserved with respect to review and approval of the amounts invoiced by JLL under the MSA.

13. On or about April 21, 2023, JLL and the debtor, Joann Stores, LLC entered into a certain "Master Services Agreement for Facilities Management," (collectively, and with all exhibits and attachments thereto, the "MSA"). *See* Declaration of Robert Reschke submitted herewith, ¶ 5 ("Reschke Declaration").

14. Pursuant to the MSA, JLL provides facilities management services necessary for the Debtors to operate nearly all of their locations throughout the United States. These services include, among other things, HVAC repair and maintenance, electrical and plumbing services, pest control, janitorial work and housekeeping, and snow removal. Reschke Declaration, ¶ 6.

15. In addition to dedicated JLL employee personnel and certain JLL affiliates, JLL utilizes Third Party Vendors to provide many of the important services necessary for the continued operation of the Debtors' facilities. Reschke Declaration, ¶ 7.

16. Pursuant to the MSA, the Debtors pay JLL a management fee and also provide funds to JLL for reimbursement of designated JLL employee payroll and other employee related expenses and to pay Third Party Vendors. Reschke Declaration, ¶ 8.

17. JLL's records indicate a total amount due for invoices billed prior to the Petition Date of **$2,616,620.70** on account of services and goods provided by JLL, certain JLL affiliates and Third Party Vendors. Reschke Declaration, ¶ 10.

18. Since the Petition Date, JLL has billed weekly invoices to the Debtors in the amount of **$1,807,089.09**[3] (the "Post-Petition Invoices") which encompass services and goods provided by JLL, certain JLL affiliates and Third Party Vendors. Due to the timing and nature of the services and goods provided under the MSA, certain portions of the Post-Petition Invoices relate to services and goods provided prior to the Petition Date. Reschke Declaration, ¶ 11.

19. Based on the MSA's 45-day net billing terms, JLL understood that payment on certain of the Post-Petition Invoices would first become due March 3, 2025. On or around that time, JLL was advised by the Debtors that they did not believe they should pay for services and goods billed under the Post-Petition Invoices that were provided prior to the Petition Date. Reschke Declaration, ¶ 12.

20. The total Post-Petition Invoices for the weeks of January 16th, January 23rd and January 30th which have come due pursuant to the MSA as of the date hereof are in the amount of $678,464.18. Of this amount, the Debtors have indicated that they will pay **$119,061.77** without objection. Reschke Declaration, ¶ 13.

---

[3] To date, JLL has issued invoices on January 16th, January 30th, February 6th, February 13th, February 20th, February 27th, March 6th, March 13th and March 19th. A summary listing of the weekly invoicing amounts is attached as **Exhibit 1** to the Reschke Declaration.

21. As of the date of hereof, however, the Debtors have not made payment of the **$119,061.77** they have agreed to pay without objection. Reschke Declaration, ¶ 13.

22. This failure to pay undisputed amounts due is in addition to the Debtors' refusal to pay any amounts the Debtors consider pre-petition amounts that were billed post-petition under the terms of the MSA (including those owed to the Third Party Vendors and to reimburse payroll).

## ARGUMENT

**I. THE COURT SHOULD ENTER AN ORDER COMPELLING THE ASSUMPTION OR REJECTION OF THE JLL CONTRACT**

23. Pursuant to Section 365 of the Bankruptcy Code, a debtor in possession may elect, subject to Court approval, to assume or reject pre-petition unexpired leases and executory contracts. 11 U.S.C. § 365.

24. In a chapter 11 case, on request of a counterparty to an executory contract, the Court may order a debtor "to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2); see also H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 1977 (Section 365(d)(2) "will prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate").

25. The Bankruptcy Code commits the establishment of a specified time within which to assume or reject an executory contract to the sound discretion of the bankruptcy court "in light of the circumstances of the case." *See e.g., In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986). In making this determination, courts will consider certain factors, including the interests at stake and the relative harm to, and safeguards for, the parties. *Id*.

26. While the general policy of section 365 of the Bankruptcy Code is to provide debtors with "breathing space" to determine which executory contracts to assume or reject, that "breathing space ... is not without limits." *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y.

2002).  Indeed, "in certain circumstances, the rights of the nondebtor party ... outweigh the need of the debtor in possession for unlimited flexibility and breathing space." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 552 (1984); *see also In re Templeton*, 154 B.R. 930, 935 (Bankr. W.D. Tex. 1993) ("If, prior to the estate's making its election [to assume or reject], the creditor believes itself to be suffering some loss ..., it can petition the court for relief... by moving to compel an earlier election to assume or reject....").

27.     The settled rule is that debtors have only a reasonable time in which to assume or reject executory contracts. *See Matter of Whitcomb & Keller Mortg. Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983) (stating section 365 "allows the trustee or debtor in possession a reasonable time within which to determine whether adoption or rejection of the executory contract would be beneficial to an effective reorganization."); *3 Collier on Bankruptcy* f 365.05[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("the trustee or debtor in possession has a reasonable time within which to decide [whether to assume or reject]").

28.     "The reasonableness of the specified time period is within the court's discretion and depends upon the facts and circumstances of the particular case." *In re Panaco, Inc.*, No. 02-37811-H3-11, 2002 WL 31990368, at *4 (Bankr. S.D. Tex. Dec. 10, 2002).

29.     Here, the Debtors have clearly been allowed a reasonable time to assume or reject the MSA given the circumstances of the Debtors' Chapter 11 Cases. This is the Debtors' second bankruptcy filing in as many years and, significantly, the Debtors are now overtly running these cases as *liquidating* Chapter 11 cases; a fact now solidified after the Debtors received no going concern bids at auction resulting in the Sale Order.

30.     The Debtors have clearly expended considerable time and effort in preparing the GOB sales and the proposed liquidating Chapter 11 plan, and the Debtors have relied on JLL's

7

services for months to facilitate their continued operations and now their GOB and winddown efforts.

31. By their recent actions, in failing to pay even the agreed amounts from the Post-Petition Invoices due to JLL, the Debtors have signaled their intent to decline to perform post-petition under the MSA.

32. Given the Debtors' liquidation and its failure to pay even the agreed amounts from the Post-Petition Invoices due in breach of the MSA, JLL respectfully submits that the Debtors should be compelled now to assume or reject the MSA so that JLL can be relieved of its obligations under the MSA and the related continued risks of non-payment by the Debtors.

33. In short, JLL should not be required to continue to provide services in the context of a Chapter 11 liquidation without certainty of getting paid and being able to reimburse Third Party Vendors as required under the MSA - particularly when the prospect of assumption of the MSA is, at best, extremely unlikely.

34. Absent immediate relief, JLL is left in an unequitable position. On the one hand, it is party to the MSA which has been breached by the Debtors post-petition and, on the other, the Debtors' decision to assume or reject the MSA is left to an unknown future time. Further, during this time period, JLL has honored its obligations under the MSA. While JLL is constrained to this uncertainty and harm given the automatic stay, the Debtors continue to accept JLL's services post-petition without timely payment. The Court should not permit this to continue and should compel the Debtors to assume or reject the MSA. The Debtors would suffer no harm by deciding to assume or reject the MSA now.

35. In addition, as noted above, JLL utilizes dedicated employee personnel that the Debtors are required to pay as well as certain JLL affiliates and Third Party Vendors to provide

many of the important services vital to the continued operation of the Debtors' facilities. In this regard, the Debtors and JLL agreed in the MSA that JLL must first receive payment from the Debtors under the MSA for amounts due to Third Party Vendors and, in general, JLL is under no obligation to pay Third Party Vendors until paid.

36. In short, JLL is under no obligation to pay the Third Party Vendors unless and until payment is received by JLL from the Debtors, and JLL cannot be compelled to advance funds to the Third Party Vendors if the Debtors do not provide payment to JLL.

37. While JLL understands that the Debtors have discretion whether to pay JLL as a critical vendor (even though the services provided under the MSA are in essence the very nature of critical as defined in the Critical Vendor Motion), the fact remains that JLL believes that an immediate decision by the Debtors on whether to assume or reject the MSA is warranted given JLL cannot ensure that Third Party Vendors will continue to work and provide services under the MSA without assurance of payment.

38. The Bankruptcy Code does not contemplate a result where a debtor can breach a material term of an executory contract and thereafter leave the counterparty to such contract in abeyance until an undetermined time for assumption or rejection.

39. In light of the foregoing, JLL respectfully submits that the Court should enter an Order pursuant to Section 365(d)(2) compelling the Debtors to immediately either assume or reject the MSA.

II. **THE DEBTORS SHOULD BE COMPELLED TO IMMEDIATELY PAY JLL'S UNDISPUTED ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO § 503(b)**

40. As of the filing of this Motion, **$119,061.77** worth of Post-Petition Invoices are unquestionably attributable to work performed and billed post-petition and the Debtors have

9

indicated that they will pay this amount without objection. However, to date the Debtors have refused to pay any amounts due under the Post-Petition Invoices.[4]

41. Accordingly, at a minimum, the Debtors should be compelled to immediately pay an allowed administrative expense claim in favor of JLL in the amount of no less than $119,061.77 as of the date of the filing of this Motion, reflected in the January 16, January 23, and January 30 Post-Petition Invoices, together with all sums that come due subsequent to this Motion.

42. Section 503 of the Bankruptcy Code provides that, after notice and a hearing, there shall be allowed administrative expenses, including the "actual, necessary costs and expense of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

43. In Delaware, "[t]he threshold requirement [for establishing an administrative expense claim under § 503(b)] is that the expense is actual and necessary to the preservation of the estate. The benefit must run to the debtor in possession and it is typically fundamental to the conduction of its business." *Matter of Cont'l Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992).

44. It is well settled that a debtor must pay the reasonable value of the services received under an executory contract while that contract is pending assumption or rejection. *See, e.g.*, *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) ("administrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection."); *Bp Energy Co. v. Bethlehem Steel Corp.,* Civ. Act. No. 02-6419 (NRB), 2002 U.S. Dist. LEXIS 22052, *22 n.14 (S.D.N.Y. Nov. 15, 2022) (a debtor is required to make

---

[4] As to additional sums for goods and services that JLL has billed post-petition pursuant to the MSA, JLL understands that the Court has entered the Order Setting Bar Dates for the Filing of Proofs of Claim [Docket No. 561] which also covers post-petition administrative expense claims through February 25, 2025. JLL will address its position as to additional amounts JLL believes the Debtors owe in accordance with the claims process Ordered by this Court.

post-petition payments under an executory contract pending assumption or rejection as an administrative expense to the extent it received a benefit to its estate).

45. The Debtors have failed to pay for any portion of the Post-Petition Invoices when each respectively came due, and has failed to pay any sums towards those invoices as of the filing of this Motion. As set forth above, the Debtors have breached the MSA by failing to pay for post-petition services rendered and should be compelled to immediately pay JLL the amounts due pursuant to the Post-Petition Invoices. *In re Smurfit-Stone Container Corp.*, 425 B.R. at 741.

46. These services provided direct benefit to the Debtors by allowing their stores to continue to operate and do business. These services are further necessary for the preservation of the estate and pending GOB Sales. These services are fundamental to maintaining safe, functional store locations for the Debtors' operations. The GOB Sales would have been hindered without the services JLL has provided to date.

47. In addition, nonpayment will continue to effect the willingness of Third Party Vendors to perform services. The uncertainty of the receipt of payment for post-petition work and paying Third Party Vendors threatens JLL's ability to perform under the MSA.

48. If, however, the Debtors are unable to pay all sums due under the MSA, then the Court should order the rejection of the MSA before the accrual of additional administrative expenses to prevent erosion of the Debtors' estates and their assets, and further harm to JLL. In such circumstances, there is cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1) so that JLL may exercise its rights and remedies for breach of the MSA under applicable law.

49. The total Post-Petition Invoices for the weeks of January 16th, January 23rd and January 30th are in the amount of $678,464.18. As noted, the Debtors have agreed to pay $119,061.77 without objection, but no amounts have been paid by the Debtors to date.

50. Accordingly, JLL respectfully requests an order allowing and compelling the immediate payment of an administrative expense claim in the amount of no less than **$119,061.77** as of the date of the filing of this Motion, as reflected in the January 16, January 23, and January 30 Post-Petition Invoices, together with all sums that come due subsequent to this Motion as required by section 503(b) of the Bankruptcy Code and applicable law.

## No Prior Request

51. No prior request for the relief sought in this Motion by JLL has been made to this Court or any other court.

## Notice

52. JLL will provide notice of this Motion to the following parties or their respective counsel: (a) Kirkland & Ellis LLP, as counsel for the Debtors; (b) the U.S. Trustee for the District of Delaware; (c) the agents under each of the Debtors' pre-petition secured credit facilities and counsel thereto; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, JLL requests that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Respectfully submitted,

GELLERT SEITZ BUSENKELL & BROWN, LLC

Dated: March 20, 2025

*/s/ Amy D. Brown*
Amy D. Brown (DE 4077)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: 302-416-3357/ Fax: 302-425-5814
abrown@gsbblaw.com

and

12

WALSH PIZZI O'REILLY FALANGA LLP
Stephen V. Falanga (pro hac vice)
Nick M. Ebel (pro hac vice)
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Telephone: (973) 757-1100
Telecopy: (973) 757-1090

*Attorneys for Jones Lang LaSalle Americas, Inc.*