# **Annex 3**

# **Tax Restructuring SOW**

# EXHIBIT A

# STATEMENT OF WORK – TURNAROUND & RESTRUCTURING TAX SERVICES

SOW Number:  SOW-REST-01                                Authorized Start Date: 1/9/2025

This statement of work ("SOW") incorporates the terms and conditions of the Master Services Agreement between Deloitte & Touche LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC, dated August 12, 2024 (the "Agreement"). For the purposes of the SOW, Consultant means Deloitte Tax LLP.

## CONSULTANT SERVICES DESCRIPTION

**The Services that we will perform for the Client are as follows:**

Deloitte Tax will provide tax advisory services ("Services") with respect to US federal and state income and operating tax considerations of Client's two bankruptcy restructuring transactions (collectively, the "JOANN Bankruptcy Restructurings"). The JOANN Bankruptcy Restructurings include Client's bankruptcy filings on March 18, 2024 (emerging on April 30, 2024) ("First Bankruptcy") and January 15, 2025 ("Second Bankruptcy"). The following represents illustrative Services that Deloitte Tax may be asked to perform in connection with the JOANN Bankruptcy Restructurings (if determined to be relevant and necessary):

- Participate in meetings or calls necessary to assist Client with its evaluation of US federal, state income and operating tax implications of the JOANN Bankruptcy Restructurings.
- Advise Client regarding the Second Bankruptcy process, including analyzing potential debt modification alternatives and the potential income tax consequences.
- Advise Client as to the amount of cancellation of indebtedness income, if any, that may be realized in connection with the JOANN Debt Restructurings, including whether such cancellation of indebtedness income is included in gross income (i.e., taxable) versus excluded for federal and state income tax purposes (e.g., availability of the IRC 108 bankruptcy exception).
- Advise Client on the tax attributes available to mitigate /absorb cancellation of indebtedness income (whether taxable or excluded from gross income under the insolvency exception).
- Advise Client on post-JOANN Debt Restructuring tax attributes (e.g., tax basis in assets and net operating loss carryovers) available and the reduction of such attributes (to the extent applicable).
- Advise Client on US federal and state income tax consequences resulting from the sale of all or substantially all of the Client's assets in connection with the Second Bankruptcy.
- Advise Client on the state income tax treatment and planning for restructuring provisions in various jurisdictions including cancellation of indebtedness calculations, adjustments to tax attributes and prior limitations on tax attribute utilization.
- Analyze the historical net operating losses of the Company through historical tax filings to understand where the Company's historical net operating losses reside and whether any limitations on the utilization of such net operating losses exists. Note that this does not include a formal section 382 study.
- Analyze the tax basis balance sheet of the Company on an entity-by-entity basis.

- Understand the historical outside stock basis in each of the Company's legal entities for the purposes of determining the approximate amount of stock basis that should be reported on tax basis balance sheets of the Company (used in the attribute reduction process).
- Advise Client on income tax return reporting of restructuring and related matters.
- As requested by Client and as may be agreed to by Deloitte Tax, assist in documenting as appropriate, the tax analysis, development of Client Party's opinions, recommendation, observations, and correspondence for any proposed debt restructuring or combination alternative tax issue or other tax matter described above (does not include preparation of information for tax provision or financial reporting purposes).
- As requested by Client and as may be agreed to by Deloitte Tax, advise Client regarding other state, federal, or international tax (to the extent applicable) questions that may arise in the course of this engagement.
- Prepare and deliver a summary of Deloitte Tax findings, including the relevant and applicable analyses and workstreams outlined in the Services (the "Deliverable").

## ESTIMATED TIMING OF SERVICES AND DELIVERABLES

Deloitte Tax is prepared to commence these Services upon execution of this SOW at a time mutually agreed upon between Deloitte Tax and Client. All Deliverables and the timing thereof will be mutually agreed upon between Deloitte Tax and Client.

## FEES AND EXPENSES

Professional fees (excluding expenses) for this SOW will be based on the actual time incurred by each individual on the engagement and the respective hourly rate for that level specified below based on the nature of the scope and Services to be performed under this SOW.

| Resource Level | Hourly Rate |
| --- | --- |
| Partner / Managing Director | $990 |
| Senior Manager | $870 |
| Manager | $740 |
| Senior | $640 |
| Consultant | $540 |

Deloitte Tax will also bill reasonable out-of-pocket expenses and an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees. The fees and expenses are not dependent upon the findings or results of the Services of the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable other than in the event of a breach. Note that the hourly rates of our Washington National Tax and other subject matter specialists may exceed the hourly rates of our local office professionals presented above.

In connection with this SOW and prior to the commencement of the Services, Client will pay a retainer in

the amount of $50,000 upon which Deloitte Tax will draw to satisfy amounts due under this Statement of Work as work under the Services is completed. Deloitte Tax will provide Client with a periodic statement, either weekly, biweekly or monthly depending on the amount of fees and expenses incurred relative to the retainer.  Once the fees incurred by Deloitte Tax exceed the retained, incremental fees for the Services will be billed in 30-day increments (e.g., 30-Day Progress Billing, 60-Day Progress Billing, etc.).

Should Deloitte Tax encounter unanticipated issues that may cause an unexpected change in the Services contemplated, Deloitte Tax will promptly contact Client to discuss a mutually agreed-upon adjusted scope.

## CLIENT RESPONSIBILITIES AND ASSUMPTIONS

The following is a list of some of the assumptions and expectations that, together with the information provided to Deloitte Tax as of the date of this SOW, the nature and scope of the Services, the expected resource requirements and other commitments from Client, and the anticipated duration of the Services, form the "Assumptions" upon which Deloitte Tax has relied upon in agreeing to perform the Services. Any deviation from the Assumptions may cause changes to the estimated timing, fees, expenses, deliverables, level of effort required, or may otherwise impact Deloitte Tax's performance of the Services:

- Deloitte Tax will not perform any management functions, make management decision including prioritization decisions or perform in a capacity equivalent to that of an employee of the Client. All Services provided by Deloitte Tax, as listed above, will be assigned by either Jeffrey Dwyer, Interim – Chief Financial Officer, or Jeremy Zelwin, VP, Controller.
- Deloitte Tax may provide observations, advice, recommendations. Management is responsible for deciding which, if any, recommendations to implement.
- Deloitte Tax will have access to required Client personnel as reasonably appropriate, including those involved in the accounting of Client transactions.
- All services are for Client's internal use only unless expressly indicated.
- Client shall be solely responsible for, among other things: (A) making all management decisions and performing all management functions; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for the results of the Services and (E) establishing and maintain internal controls, including without limitation, monitoring ongoing activities.

## ENGAGEMENT STAFFING

Derek Krozek, Managing Director, will participate as Engagement Leader for this engagement, maintaining overall responsibility for these Services on behalf of D&T. Laura Paszt, Partner, will serve as the Lead Engagement Partner for this engagement.

Stephen Fielding, Senior Manager, and Joe Kirpas, Manager, will coordinate daily management of D&T professionals for the Services for this engagement.

Additional assistance may also be provided by other professionals who will be identified during the course of this engagement.

In light of Client's Second Bankruptcy, Deloitte Tax expects to apply for compensation for professional Services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330. In such event, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below). However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this SOW, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this SOW, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

## ACKNOWLEDGMENTS AND AGREEMENTS

In addition to those acknowledgments and agreements in the engagement letter, the Client acknowledges and agrees to the following:

- Substantial and meaningful involvement of senior management and key executives of the Client is critical to the success of this engagement. The Client is responsible for ensuring that the identified Client personnel (1) actively participate in both the planning and execution of this engagement and (2) will be available to resolve issues and make decisions in a timeframe that supports achievement of the engagement timelines and work plans.

- Any deliverables provided to the Client hereunder by D&T may be disclosed by the Client to the Board of Directors of the Client only for their informational purposes and solely in their capacity as a member of such Board

- Any deliverables provided to the Client hereunder by D&T may be disclosed by the Client to the Client's independent accountants to the extent required solely in connection with their audit of the Client's financial statements.

| Deloitte Tax LLP | Jo-Ann Stores LLC |
|---|---|
| By: *[signature]* | By: *[DocuSigned by: Jeremy Zelwin, B748E28A06F84D4...]* |
| Printed Name: Derek Krozek | Printed Name: Jeremy Zelwin |
| Title: Managing Director | Title: VP, Controller |
| Date: 1/28/2025 | Date: 1/28/2025 \| 3:43:34 PM EST |