# Annex 4

**Master Services Agreement**

## MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** (this "Agreement"), dated August 12, 2024 (the "Effective Date"), is between Deloitte LLP, a Delaware limited liability partnership, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC, an Ohio Limited Liability Company ("Client").

**WHEREAS,** Client desires to engage one or more subsidiaries of Deloitte LLP (such as Deloitte & Touche LLP, Deloitte Consulting LLP, Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, and Deloitte Transactions and Business Analytics LLP) to provide certain professional services and one or more of such subsidiaries are willing to provide certain professional services to assist Client; and

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual promises contained herein, the parties hereto agree as follows:

1. **Services.**

   a) Client and the Deloitte LLP subsidiary that has the responsibility for the requested services ("Consultant") may agree to enter into one or more written statements of work each of which will reference this Agreement (each, an "SOW") and describe the services to be performed thereunder (the "Services"). Each SOW is subject to the terms of this Agreement (regardless of whether such Agreement is expressly incorporated) and constitutes a separate agreement between the parties thereto. A form statement of work is attached hereto as Exhibit A.

   b) Deloitte LLP is not a provider of professional services. No audit, review, compilation or attest services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants or any successor standard setting organization will be performed under this Agreement.

2. **Compensation.**

   a) Client shall compensate Consultant for all Services performed under the applicable SOW. Except as otherwise provided in an SOW, Client shall reimburse Consultant for all reasonable expenses incurred in performing the Services (including, all reasonable travel, meal, lodging, and mileage expenses) in accordance with Consultant's Travel and Expense Policy attached hereto as Exhibit B. Expenses must be pre-approved by Client if such expense is expected to exceed over $500. Notwithstanding the foregoing, any expenses that fall within either a general category of permitted expenses as described in an SOW or a total expense estimate or cap in an SOW are deemed to be pre-approved.

   b) [RESERVED]

   c) Client shall be responsible for any taxes imposed on the Services or on the engagement, other than taxes imposed by employment withholding for Consultant's personnel or on Consultant's income or property.

   d) Except as otherwise provided in an SOW, Consultant shall invoice Client on a monthly basis for fees accrued and expenses incurred by Consultant in performing the Services under such SOW. Client shall pay each invoice within sixty (60) days of its receipt thereof. If undisputed portions of such payment is not received within such period Consultant may suspend or terminate the Services upon five (5) days prior written notice to Client. Client shall notify Consultant in writing of any disputed amounts within thirty (30) days of receipt of the applicable invoice, reasonably describing the basis for such dispute (a "Dispute Notice"). The parties shall in good faith endeavor to resolve such dispute within thirty (30) days of Consultant's receipt of such notice (the "Escalation Period"), including by means of escalation by each party to Consultant's engagement leader and Client's business sponsor for the applicable SOW, who shall meet (in person or by telephone) to endeavor to resolve such dispute within the Escalation Period. If payment of

amounts disputed pursuant to a timely Dispute Notice is not received within five (5) days after the end of the Escalation Period, Consultant may suspend or terminate the Services upon five (5) days prior written notice.

3. **Term.**

   a) This Agreement commences on the Effective Date and remains in effect until it is terminated pursuant to the terms hereof.

   b) Either party hereto may terminate this Agreement with or without cause by giving not less than sixty (60) days prior written notice to the other party. Either party to an SOW may terminate such SOW with or without cause by giving not less than thirty (30) days prior written notice to the other party. In the event of any termination for cause, such cause must be detailed in the termination notice and the breaching party shall have the right to cure the breach within the notice period. Consultant may terminate any SOW, upon written notice to Client, if Consultant, in good faith, determines that the performance of any part of the Services would be in conflict with law, or independence or professional rules.

   c) In the event this Agreement is terminated, its terms shall continue to apply to all SOWs under which Services have not been completed at the effective date of such termination.  Termination of an SOW has no effect on any other SOW.

4. **Ownership.**

   a) For purposes of this Agreement (i) "IP" means works of authorship, materials, information and other intellectual property; (ii) "Consultant IP" means all IP created prior to or independently of the performance of the Services, or created by Consultant or its subcontractors as a tool for their use in performing the Services, plus any modifications or enhancements thereto and derivative works based thereon; and (iii) "Deliverables" means all IP that Consultant or its subcontractors create for delivery to Client as a result of the Services.

   b) Upon full payment to Consultant under the applicable SOW, and subject to the terms herein, Consultant hereby (i) assigns to Client all rights in and to the Deliverables, other than any Consultant IP included therein; and (ii) grants to Client the right to use, for Client's internal business purposes, any Consultant IP included in the Deliverables in connection with its use of the Deliverables.  Except for such license grant, Consultant or its licensors retain all rights in and to all Consultant IP.

   c) To the extent any Consultant IP provided to Client in connection with the Services constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Consultant IP is licensed to Client by Consultant as agent for its product company subsidiary on the terms contained herein.  The rights granted in this Section do not apply to any IP that is licensed to Client under a separate agreement.

5. **Warranties.**  This is a services agreement.  Consultant warrants that: (a) it shall perform the Services in good faith and in a professional, workmanlike manner consistent with generally accepted industry standards (if any) for the performance of the Services; (b) Services will conform in all material respects to the description of such Services set forth in the applicable SOW; (c) each Deliverable will, on the date of acceptance of such Deliverable by Client, conform in all material respects to the applicable specifications for such Deliverable set forth in the applicable SOW or as otherwise agreed by Client and Consultant in writing; and (d) Consultant will comply with all federal, state and local laws and regulations applicable to it in its performance of its obligations under this Agreement or any SOW.  **CONSULTANT DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED,**

**INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages.** Each party to an SOW, its affiliates and subcontractors, and their respective personnel shall not be liable to the other party for any claims, liabilities, or expenses relating to or in connection with this Agreement or such SOW ("Claims") for an aggregate amount in excess of:

   a. with respect to an SOW under which the total expected fees as specified in such SOW are less than $500,000, three times (3x) the fees paid or payable by Client to Consultant under such SOW;

   b. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $500,000 but less than $2,000,000, two times (2x) the fees paid or payable by Client to Consultant under such SOW; or

   c. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $2,000,000, the fees paid or payable by Client to Consultant under such SOW, up to an aggregate amount of $5,000,000;

in each case, except (i) to the extent resulting from their recklessness, bad faith or intentional misconduct, (ii) to the extent resulting from such party's breach of law applicable to such party in its performance of its obligations under the applicable SOW (other than laws relating to the standards for the performance of professional services or data privacy or data security) or (iii) for payment for fees and expenses due under such SOW. In no event shall a party to an SOW, its affiliates or subcontractors, or their respective personnel be liable to the other party for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense, relating to or in connection with this Agreement or such SOW. The terms of this Section shall not apply (x) to any Claim for which one party has an express indemnification obligation under this Agreement or such SOW or (y) to the extent resulting from their disclosures of the other party's Confidential Information (as defined below) in breach of Section 8, in which event the breaching party, its affiliates and subcontractors, and their respective personnel shall not be liable to the other party for any Claims resulting from such disclosures for an aggregate amount in excess of:

   A. with respect to an SOW under which the total expected fees as specified in such SOW are less than $500,000, the greater of five times (5x) the fees paid or payable by Client to Consultant under such SOW or $1,000,000;

   B. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $500,000 but less than $2,000,000, three and a half times (3.5x) the fees paid or payable by Client to Consultant under such SOW; or

   C. with respect to an SOW under which the total expected fees as specified in such SOW are equal to or greater than $2,000,000, two times (2x) the fees paid or payable by Client to Consultant under such SOW, up to an aggregate amount of $10,000,000.

In circumstances where any limitations or exculpations set forth herein are unavailable, the aggregate liability of a party to an SOW, its affiliates and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim. For purposes of this Agreement, "payable" means fees incurred but not yet paid by Client to Consultant under the applicable SOW.

7. **Relationship and Responsibilities.**

   a) Each party to an SOW is an independent contractor and neither is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

   b) In addition to Client's responsibilities as set forth in an SOW, Client shall cooperate with Consultant in the performance of the Services, including (i) providing Consultant with adequate working space, equipment and facilities and timely access to data, information, and personnel of Client; (ii) providing personnel having appropriate skills to perform their assigned tasks and duties in a competent and timely fashion; (iii) providing a system infrastructure environment which will support the Services and allow Consultant and Client to work productively; and (iv) promptly notifying Consultant of any issues, concerns or disputes with respect to the Services. With respect to the data and information provided by Client to Consultant or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. If Consultant is provided with access to or use of Client's facilities outside the United States for the purpose of performing the Services, such facilities will not be dedicated solely for Consultant's use and Consultant will not be deemed a tenant of Client with respect to such facilities.

   c) Client shall be solely responsible for: (i) the performance of its personnel and agents; (ii) the accuracy and completeness of all data and information provided to Consultant for purposes of the performance of the Services; (iii) making all management decisions, performing all management functions, and assuming all management responsibilities; (iv) designating a competent management member to oversee the Services; (v) evaluating the adequacy and results of the Services; (vi) accepting responsibility for the results of the Services; and (vii) establishing and maintaining internal controls, including monitoring ongoing activities.

   d) The Services may include advice and recommendations, but Consultant will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. Consultant's performance is dependent upon Client's (i) timely and effective satisfaction of its responsibilities under this Agreement and any SOW, and (ii) timely decisions and approvals in connection with the Services, upon which Consultant shall be entitled to rely.

   e) Consultant shall use diligent efforts to meet performance dates set forth in an SOW and shall notify Client promptly if Consultant encounters significant delays in completing the Services. Notwithstanding the foregoing, all performance dates contained in such SOW shall be regarded only as estimates, except for dates specifically identified as "Firm Performance Dates" therein.

8. **Confidentiality, Data Security, and Internal Use.**

   a) To the extent that, in connection with this Agreement or any SOW, either Consultant or Client (each, the "receiving party") comes into possession of any Confidential Information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own Confidential Information of a similar nature, but in no event less than a reasonable degree of care. "Confidential Information" means and includes non-public or other proprietary information including trade secrets, technical information, algorithms, code, data, designs, documentation, drawings, formulae, hardware, know-how, ideas, inventions, whether patentable or not, photographs, plans, procedures, processes, reports, research, samples, sketches, software, specifications, business information, including customer, employee, and distributor names, marketing information, operations, plans, products, financial information, pricing, and other information a reasonably person would consider confidential under the circumstances. The disclosing party hereby consents to the receiving party disclosing such information (i) as expressly

4

set forth in the applicable SOW; (ii) to contractors providing administrative, infrastructure and other support services to the receiving party and subcontractors providing services in connection with an SOW, in each case, whether located within or outside of the United States, provided that they have agreed to be bound by confidentiality obligations similar to those in this sub-Section; (iii) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation pertaining to this Agreement or an SOW; or (iv) to the extent such information (A) is or becomes publicly available other than as the result of a disclosure in breach hereof, (B) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (C) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (D) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. If Client is an attest client of any Deloitte Entity (as defined herein), any such information may be used by such Deloitte Entity in the context of responding to its professional obligations as the independent accountants for Client.

b) All Services and Deliverables shall be solely for Client's benefit, and are not intended to be relied upon by any person or entity other than Client. Client shall not disclose the Services or Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity other than Client except (i) as expressly set forth in the applicable SOW, (ii) to Client's contractors, attorneys, and tax and accounting professional advisors acting strictly in an advisory capacity to Client (collectively, "Agents") solely for the purpose of their providing services to Client relating to or deriving from the subject matter of such SOW, provided that they comply with the restrictions on disclosure set forth in this sentence, or (iii) to the extent included within Client-created materials that do not in any way, expressly or by implication, attribute such materials to Consultant or its subcontractors. Client agrees to indemnify and hold harmless Consultant, its affiliates and subcontractors, and their respective personnel from all Claims attributable to claims of third parties relating to Client's or its Agent's use or disclosure of the Services or Deliverables.

c) No provision in this Agreement (including Section 8) or any SOW, is or is construed to be as a condition of confidentiality within the meaning of Rule 3501(c)(i) of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the Services or transactions described in an SOW. Notwithstanding anything herein to the contrary, no provision in this Agreement or any SOW shall place any limitation on Client's disclosure of any Subject Tax Planning Advice. The Services and Deliverables shall be solely for Client's informational purposes and internal use, and neither this Agreement nor any SOW shall create privity between Consultant and any person or party other than Client ("third party"). Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Consultant, no third party is entitled to rely in any manner or for any purpose, on the Services or Deliverables. In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless Consultant, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs and expenses. Notwithstanding anything to the contrary herein, Client's indemnification obligations set forth in Section 8(b) shall not apply to any disclosure by Client of any Subject Tax Planning Advice.

d) To the extent that, in connection with an SOW, Consultant comes into possession of any Confidential Information of Client, Consultant shall implement and maintain not less than an industry standard security program for Confidential Information designed to (i) ensure the security

5

and confidentiality of Confidential Information; (ii) protect against any anticipated threats or hazards to the security or integrity to Confidential Information, and (iii) protect against unauthorized access to or use of Confidential Information that could result in substantial harm to Client. Consultant shall provide Client, upon reasonable request, with a copy of its Information Security Statement and any updates or amendments thereto.

9. **Indemnification.**

   a) Each party to an SOW agrees to indemnify, defend and hold harmless the other party, its subcontractors and their respective personnel from all Claims attributable to claims of third parties solely for: (i) bodily injury, death or physical damage to real or tangible personal property occurring while Consultant is performing the Services to the extent directly and proximately caused by the negligence or intentional misconduct of the indemnifying party and that does not arise from the indemnifying party's performance obligations under such SOW; and (ii) for any employment-related payment obligations (including taxes, interest, and penalties arising therefrom) assessed against the indemnified party only with respect to the indemnifying party's personnel, except to the extent that such payment obligations are assessed against the indemnified party as a result of acts or omissions of the indemnified party.

   b) Consultant agrees to indemnify, defend and hold harmless Client and its personnel from all Claims attributable to claims of third parties for infringement by a Deliverable of any U.S. patent existing at the time of delivery or copyright or any unauthorized use of any trade secret, except to the extent that such infringement or unauthorized use arises from (i) modification of the Deliverable other than by Consultant or its subcontractors, or use thereof in a manner not contemplated by the applicable SOW, (ii) the failure of the indemnified party to use any corrections or modifications expressly made available by Consultant, (iii) information, materials, instructions, specifications, requirements or designs provided by or on behalf of the indemnified party, or (iv) the use of the Deliverable in combination with any platform, product, network or data not provided or expressly approved by Consultant. If Client's use of any such Deliverable, or any portion thereof, is or is likely to be enjoined by order of a court of competent jurisdiction as such an infringement or unauthorized use, Consultant, at its option and expense, shall have the right to (x) procure for Client the continued use of such Deliverable, (y) replace such Deliverable with a non-infringing Deliverable, or (z) modify such Deliverable so it becomes non-infringing; provided that, if (y) or (z) is the option chosen by Consultant, the replacement or modified Deliverable is capable of performing substantially the same function. In the event Consultant cannot reasonably procure, replace or modify such Deliverable in accordance with the immediately preceding sentence, Consultant may require Client to cease use of such Deliverable and refund the professional fees paid to Consultant with respect to the Services giving rise to such Deliverable. The foregoing provisions of this sub-Section constitute the sole and exclusive remedy of the indemnified parties, and the sole and exclusive obligation of Consultant, relating to a claim that any of Consultant's Deliverables infringes any patent, copyright or other intellectual property right of a third party.

   c) The indemnified party shall provide the indemnifying party with prompt written notice of any claim, liability, or expense for which indemnification is sought under this Agreement or the applicable SOW (an "Indemnity Claim"), cooperate in all reasonable respects with the indemnifying party in connection with any such Indemnity Claim, and use reasonable efforts to mitigate any Indemnity Claim; provided, however, that the indemnified party's failure to comply with the foregoing obligations shall not relieve the indemnifying party of its indemnification obligations, except to the extent the indemnifying party has been actually prejudiced by such failure. The indemnifying party shall be entitled to defend and control the handling of any such Indemnity Claim, with counsel of its own choosing that is reasonably satisfactory to the indemnified party. The indemnifying party shall not settle any Indemnity Claim without the prior written consent of the indemnified party.

10. **Approval of Deliverables.**

a) Client shall approve each Deliverable that conforms in all material respects with any specifications for such Deliverable set forth in the SOW or as otherwise agreed by Client and Consultant in writing ("Specifications").  Within fifteen days (or such other period agreed upon in the applicable SOW) from its receipt of a Deliverable, Client shall provide Consultant with (i) written approval of such Deliverable or (ii) a written statement which identifies in reasonable detail, with references to the applicable Specifications, all of the deficiencies preventing approval (the "Deficiencies").

b) Consultant shall have thirty days (or such other period agreed upon in the applicable SOW) from the date it receives the notice of Deficiencies to complete corrective actions in order for such Deliverable to conform in all material respects to the applicable Specifications.  Client shall complete its review of the corrected Deliverable and notify Consultant in writing of acceptance or rejection in accordance with the foregoing provisions of this Section.

c) Notwithstanding the foregoing provisions of this Section, approval of a Deliverable shall be deemed given by Client if Client has not delivered to Consultant a notice of Deficiencies for such Deliverable prior to the expiration of any period for Client review thereof as set forth in this Section, or if Client uses the Deliverable in production.

d) To the extent that any Deliverable has been approved by Client at any stage of Consultant's performance under an SOW, Consultant shall be entitled to rely on such approval for purposes of all subsequent stages of Consultant's performance under such SOW.  In the event an approved Deliverable differs from the Specifications for such Deliverable, the Specifications shall be deemed modified to conform with such approved Deliverable. Without limiting the foregoing, upon Client's written request, Consultant and Client will update the Specifications to conform to the approved Deliverable.

e) If Consultant is unable to correct any Deficiency in a Deliverable within the period of time set forth above, Client shall be entitled, at its option, to (i) a refund or credit of professional fees paid to Consultant under the applicable SOW with respect to the Services giving rise to such Deliverable and this shall be Client's sole and exclusive remedy, and Consultant's sole and exclusive obligation, with respect to any claim that the Deliverables do not conform to the requirements of this Agreement or such SOW or (ii) exercise any other rights and remedies available to Client under this Agreement or such SOW, whether at law or in equity.

11. **Force Majeure.**  Neither Consultant nor Client shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

12. **Survival.**  All provisions that are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this Agreement or the applicable SOW.

13. **Interpretation.  Each of the provisions of this Agreement and each SOW shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*) or otherwise, notwithstanding the failure of the essential purpose of any remedy.**  Liability limits set forth in this Agreement or any SOW are intended solely to set maximum limits and are not intended as estimates of actual liability. Any references herein to the term "including" shall be deemed to be followed by "without limitation".  The Section headings in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation hereof.  Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), the member firms of DTTL (including Deloitte LLP), and each of their respective affiliates (including Consultant) are referred to herein collectively as the "Deloitte Entities" and individually as a "Deloitte Entity."  In the event of any conflict between the terms of this Agreement and the terms of any SOW, the terms of this Agreement shall

control, except to the extent that such SOW provides that specified provisions therein shall control over specified provisions of this Agreement.

14. **Binding Nature; Assignment and Subcontracting.** This Agreement and each SOW shall be binding on the respective parties thereto and their respective permitted successors and assigns; provided, however, that, except as provided below, neither party may assign any of its rights or obligations (including interests or claims) relating to or in connection with this Agreement or such SOW, without the prior written consent of the other party. Client hereby consents to Consultant subcontracting a portion of the Services to any Deloitte Entity and to any other third party, in each case, whether located within or outside the United States. Services performed by Consultant's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Consultant's personnel, unless otherwise agreed. Consultant agrees to be responsible to Client for the Services performed by its subcontractors to the same extent that Consultant would be responsible to Client if Consultant had performed such Services. No Deloitte Entity, other than Consultant, and no personnel of any Deloitte Entity shall have any liability to Client relating to or in connection with this Agreement or any SOW, and Client will not bring any action against any such Deloitte Entity or any personnel of any Deloitte Entity in connection therewith.

15. **Notices.** Any notice required under this Agreement or any SOW shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses set forth below unless changed by either party by notice to the other party, and (iii) effective upon receipt.

    To Deloitte LLP:   Nick Accordino, Partner
                       127 Public Square
                       2600 Key Center, Suite 3300
                       Cleveland, OH 44114
                       naccordino@deloitte.com

    To Consultant:    The address specified in the SOW

    To Client:        Scott Sekella, CFO
                      5555 Darrow Road
                      Hudson, Ohio 44236
                      Scott.sekella@joann.com
                      CC: legal@joann.com

16. **Severability.** If any term of this Agreement or any SOW is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permitted the intent of the parties set forth in this Agreement or such SOW.

17. **Waivers and Amendments.** No delay or omission by a party in enforcing its rights or remedies under this Agreement or any SOW shall impair such right or remedy or be deemed to be a waiver thereof. No amendment or waiver of this Agreement or any SOW shall be valid unless in writing and signed by the parties thereto.

18. **Non-solicitation.** During the term of an SOW and for a period of one year thereafter, each of Consultant and Client agrees that its personnel (in their capacity as such) who had substantive contact with personnel of the other in the course of the performance of Services under such SOW shall not, without the other's consent, directly or indirectly solicit the services of such personnel of the other. This provision shall not restrict the right of either Consultant or Client to solicit generally in the media and does not apply to any personnel that replied/was hired via such general solicitation.

8

19. **Non-exclusivity.** Consultant may (a) provide any services to any person or entity, and (b) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, Consultant complies with its obligations of confidentiality set forth hereunder.

20. **Third-Party Beneficiaries.** Any third parties referenced in any disclaimer or waiver of liability, limitation on damages or actions, or indemnity in this Agreement or any SOW are intended third-party beneficiaries of such terms and may in their own right enforce such terms. Except as set forth in this Section, (a) there are no third-party beneficiaries of this Agreement or any SOW, and (b) no rights, benefits, or remedies of any kind or character whatsoever are conferred upon, and no party to this Agreement or any SOW shall owe any duty to, any person or entity other than the other party to this Agreement or such SOW, respectively.

21. **Governing Law.** This Agreement and each SOW, including attachments, and all matters relating to or in connection with this Agreement and each SOW, shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof).

22. **Disputes.**

    a) Any action relating to or in connection with this Agreement or any SOW shall be brought and maintained exclusively in any state or federal court, in each case located in New York County, the State of New York. Each party to this Agreement or any SOW hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

    b) **EACH PARTY TO THIS AGREEMENT OR ANY SOW HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO OR IN CONNECTION WITH THIS AGREEMENT OR ANY SOW.**

    c) No action, regardless of form, relating to or in connection with this Agreement or any SOW may be brought more than three years after the cause of action has accrued, except that an action for nonpayment may be brought not later than three years following the due date of the last payment owing to the entity bringing the action.

23. **Entire Agreement.** This Agreement and the applicable SOW, including attachments, shall constitute the entire agreement with respect to the subject matter of such SOW and shall supersede all other oral or written representations, understandings, or agreements relating to or in connection with the subject matter thereof. In making its determination to proceed with an SOW, neither party thereto will have relied on any representations of the other party except as expressly set forth in this Agreement or such SOW.

24. **Site Conditions.** To the extent working on site at a Client facility, Consultant acknowledges that it has been given the opportunity to inspect the site and has done so and accepted the conditions thereof or has voluntarily waived its right to do so and hereby assumes knowledge of any condition which would have or could have reasonably been discovered upon inspection.

25. **Publicity.** Consultant must not construe the award of this Agreement to Consultant in any advertising or other publicity materials as an endorsement of Consultant or Consultant's products by Client. Consultant must not use any Client IP or trade name directly or indirectly for advertising or publicity purposes without, in each case, the prior written consent of Client.

26. **Insurance.** Consultant must obtain and maintain insurance for the coverages and amounts of coverage not less than the following: (i) Workers Compensation (or the equivalent) complying with the law of Consultant's state of operation; (ii) Employer's Liability insurance with limits of $1 million for each accident; (iii) Commercial General Liability insurance covering liability for injury, including death of persons, or damage to or loss of property, including such legal liability as may arise from the use of independent companies or contractual liability assumed under this Agreement, pursuant to policy terms and conditions, with a $1M per occurrence and with a general aggregate limit of $5 million; the requested limits may be met through a combination of primary and umbrella/excess coverages; (iv) Automobile liability insurance with combined single limits of $1 million; (v) Fidelity bond including coverage for employee dishonesty in an amount of not less than $1 million per loss; (vi) Cyber liability Insurance with limits not less than $10 million for each claim; the insurance may be included within a professional liability coverage form; and (vii) Excess/Umbrella Liability Insurance with limits of not less than $2 million for each occurrence and $2 million in the aggregate. Consultant must provide certificates of insurance issued by a carrier rated not less than A-, IX by A.M. Best & Co. or the equivalent rating if AM Best is not available to Client to evidence such coverage. Consultant's insurance will apply as primary insurance with respect to any other insurance or self-insurance programs afforded to Client.

**IN WITNESS WHEREOF,** Deloitte LLP (for and on behalf of its subsidiaries) and Client have caused this Agreement to be executed and delivered by their respective duly authorized representatives as of the Effective Date.

| **DELOITTE LLP** | **JO-ANN STORES LLC** |
|---|---|
| By: *Deloitte & Touche LLP* (Signed) | By: *Jeffrey Dwyer* (Signed) |
| Name: Nick Accordino | Name: Jeffrey Dwyer |
| Title: Authorized Signatory | Title: Interim-Chief Financial Officer |
| Date: 8/12/2024 \| 5:47:30 AM PDT | Date: 8/16/2024 \| 7:26:46 AM PDT |

10

**EXHIBIT A**

**STATEMENT OF WORK**

SOW Number: _____     Authorized Start Date: _____

This SOW incorporates the terms and conditions of the Master Services Agreement between Deloitte LLP, for and on behalf of its subsidiaries, and Jo-Ann Stores LLC dated August 12, 2024 (the "Agreement").  For the purposes of this SOW, Consultant means [*Name of Subsidiary*].

**Consultant Services Description:**

**Estimated Timing of Services and Deliverables:**

☐  If checked, the following performance dates shall be deemed Firm Performance Dates pursuant to Section 7(e) of the Agreement:
- [*date*]
- [*date*]

**Fees and Expenses:**

**Client Responsibilities:**

**Assumptions:**

**Other Terms (including changes in provisions of the Agreement):**

(NOTE: Based on the nature of the Services, additional terms may be added to this SOW.)

| **JO-ANN STORES LLC** | **CONSULTANT** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
|  | Address: _____ |

**Exhibit B**

**TRAVEL AND EXPENSE REIMBURSEMENT**

This exhibit sets forth the travel and out-of-pocket expenses for which Consultant will be reimbursed in connection with this Agreement.

### AIR TRAVEL

Air travel costs will be reimbursed subject to the following. All flights under 7 hours *flying time* will be in economy class and over 7 hours flying time may be booked in business class. Flights should ideally be booked as far in advance as possible to take advantage of discounts provided - ideally 14 days.

### ACCOMMODATION

Consultant has negotiated discounted rates with specific hotels in most cities where it has offices and/or client locations. Hotel accommodations will be reimbursed for standard hotel rooms (e.g., no suites) at preferred hotels at the lowest available rate. When preferred hotels are not available, personnel are expected to book hotels that are reasonable in cost taking into consideration practicality, availability and proximity to office or project as appropriate.

### MEALS

**Overnight Trips**
When a trip necessitates an overnight stay, actual reasonable meal costs for personnel will be reimbursed.

**Other Meals**
For local personnel who work 11 hours or more in a regular work day, the reasonable cost of dinner will be reimbursed. For local personnel who work 4 or more hours on a Saturday, Sunday or Firm-designated holiday, the reasonable cost of lunch will be reimbursed.

### TRANSPORTATION

**Taxis To and From Airport**
When working away from home location taxis to and from the airport will be reimbursed.

**Taxi After Hours**
If personnel work significant over time on a day and/or leave work after dark the cost of a taxi back to home/accommodation will be reimbursed.

**Rental Cars**
Consultant has negotiated discounted rates with specific rental car companies, and cars should be rented through these companies unless they do not have cars available. Costs for rental cars used in connection with out of town travel will be reimbursed. Personnel will rent an intermediate size car unless there is a business need for a larger size car. Insurance is to be undertaken through the car rental company. When utilizing a non-preferred supplier or a non-participating location of a preferred supplier, LDW/CDW coverage should be purchased and is a reimbursable expense.

**Car Mileage**
A reasonable mileage allowance reflecting the current rate allowed by the IRS will be reimbursed

for the use of a privately owned or leased automobile for business travel if the daily mileage is in excess the

personnel's normal commute to the office. If personnel work on a Saturday, Sunday or Firm-designated holiday, actual mileage to and from the office or client location will be reimbursed.

**Parking and Tolls**
While using an automobile while out of town reasonable parking costs and tolls will be reimbursed. While using an automobile in-town, the cost of parking at a client location will be reimbursed if the cost of parking is in excess of the personnel's normal parking cost at the resident office, or if the costs are incurred on weekends.

## COMMUNICATION

**Telephone Calls**
The cost of business calls made from home phones, calling cards, conference call numbers and cell phones, and reasonable personal calls to home while on an out-of-town assignment, are reimbursable.

**Internet Connection**
The actual cost of high speed Internet access for travelers from their hotel room are reimbursable.

## OTHER

- *Health Club Facilities.* The cost of health club facilities while out of town - up to a maximum of $20 per day - will be reimbursed.
- *Laundry and Dry Cleaning.* If out-of-town travel is five or more consecutive nights, the reasonable cost of laundry and dry cleaning will be reimbursed.

## GRATUITIES

Gratuities paid while out of town on business are reimbursed based on reasonable actual amounts expended. The following are reasonable gratuities by category:

- Housekeeping $2 - $5 per day
- Meals 15%-20%
- Luggage assistance $1 - $2 per bag
- Taxi rides 15%-20%

## MISCELLANEOUS

All business, travel and subsistence expenses must be charged to the corporate charge card using preferred suppliers where applicable. All personnel must use the national online reservation site Deloitte Trips or the nationally designated travel agency Deloitte Travel Center (DTC) for all business travel. Receipts are generally not required for expenditures under $75.

14