## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.,* | ) | Case No. 25-10068 (CTG) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Hearing Date: To Be Determined** |
| | ) | **Objection Deadline: May 9, 2025 at 4:00** |
| | ) | **p.m. (ET)** |
| | ) | |

### MOTION FOR ALLOWANCE AND PAYMENT
### OF ADMINISTRATIVE CLAIM PURSUANT TO SECTION 503(B) OF THE
### BANKRUPTCY CODE OR, ALTERNATIVELY, TO COMPEL PERFORMANCE
### UNDER POSTPETITION CONTRACT

The Feldman Companies ("Movant"), by and through undersigned counsel, hereby move this Court (the "Motion"), for an order for allowing an administrative claim under section 503(b) of the Bankruptcy Code or, alternatively, compelling the above-captioned debtors (the "Debtors") and/or GA Joann Retail Partnership (the "Purchaser") to perform under a certain postpetition contract for the sale of goods. In support of this Motion, Movant respectfully represents as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this judicial district is proper under 28 U.S.C. §1408 and 1409.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.     The statutory predicate for the relief requested herein is 11 U.S.C. § 503(b).

4.     The Feldman Companies consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

1

## **FACTS**

5.       On January 15, 2025, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors' cases are being jointly administered.

6.       On February 26, 2025, this Court entered the Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief [D.I. No 520] (the "Sale Order").  The Sale Order approved the Debtors and Purchasers entry into a certain agency agreement (the "Agency Agreement").

7.       Prior to the Petition Date, the Debtors issued a purchase order to Movant who is acting as agent for certain foreign vendors (collectively, the "Vendors") for the sale of certain goods (the "Goods") to the Debtors.  Pursuant to that purchase order, the goods were sent for delivery to the Debtors.

8.       The goods arrived in the United States and were delivered to the Debtors subsequent to the Petition Date.

9.       On or about February 12, 2025, Jennifer Haller ("Ms. Haller"), the Debtors' Director of Product Development & Sourcing, contacted the Feldman Companies by email to initiate a "return to vendor process" for the Goods.  According to Ms. Haller's February 12, 2025, email this return to vendor process "will be initiated for goods (the Debtors) do not need."

10.      On or about March 6, 2025, Ms. Haller sent a further email (the "March 6 Email") to the Feldman Companies stating, "Following the JOANN Bankruptcy Auction, the winning bidder for the assets, GA Group is interested in acquiring your goods that are in the US or on the way to the US."  The March 6th email further stated "The goods will be purchased by the GA group using the existing paperwork to clear goods faster.  GA will provide a PO for your invoicing.  In purchasing the goods, they have asked for a 60% discount off the cost to absorb the D&D.  The

terms will be 50% paid upon release by wire.  The other 50% 30days." Matt Ginns ("Mr. Ginns"),
the senior Vice President of GA Group and a representative of the Debtors' financial advisor,
Alverz & Marsel were copied on the March 6th Email.

11.    On March 6, 2025, Heshy Feldman, the President of the Feldman Companies ("Mr.
Feldman") sent an email to Ms. Haller accepting the Debtors' offer to purchase the Goods at a 60%
discount (the "Postpetition Contract"). On that same email thread, Ms. Haller responded to Mr.
Feldman and Mr. Ginns by stating "Matt, I will mark the following factories as accepting the 60%
discount". The factories listed in Ms. Haller's email comprise all of the Vendors. True and correct
copies of the February 12, 2025, email and the March 6, 2025, emails are attached hereto as Exhibit
"A".

12.    The original purchase price for the Goods was $1,539,257.96. Applying the 60%
discount pursuant to the Postpetition Contract, the purchase price owed by the Debtors and/or
Purchaser is $615,703.18.

13.    On March 16, 2025, Mr. Feldman wrote to Mr. Ginns to inquire about the status of
the Debtors' and Purchaser's performance under the Postpetition Contract.  To date, the Debtors
and Purchaser have failed to pay for the Goods.

## RELIEF REQUESTED

14.    Through this Motion, the Feldman Companies seek the entry of an Order granting
the Feldman Companies an administrative claim pursuant to section 503(b) of the Bankruptcy
Code.  Alternatively, the Feldman Companies seek entry of an Order compelling the Purchaser to
perform under the Postpetition Contract.

## BASIS FOR RELIEF REQUESTED

15.     Article 2, Section 206(1)(a) of the Uniform Commercial Code provides:

> Offer and acceptance in formation of contract:
>
> (1) Unless otherwise unambiguously indicated by the language or circumstances
>
> (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

16.     Here, as is apparent from the plain language of Debtors' March 6th Email, the offer to purchase the Goods was an unambiguous offer by the Debtors to purchase within the meaning of section 2-206(1)(a) of the Uniform Commercial Code.

17.     Mr. Feldman's March 6, 2025, email to the Debtors indicated clear acceptance of that offer resulting in the formation of the Postpetition Contract. See Exhibit A.

18.     To date, the Debtors and/or Purchaser have failed to perform under the Postpetition Contract.

### The Feldman Companies are Entitled to Allowance of an Administrative Claim

19.     Section 503(b)(1)(A) of the Bankruptcy Code provides, "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). Section 507(a) of the Bankruptcy Code grants priority to administrative expense claims that are allowed under Section 503(b) of the Bankruptcy Code. 11 U.S.C.§ 507(a)(2).

20.     To qualify as an administrative expense, a claim "must arise from a [postpetition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314–15 (3rd Cir.

2011) (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–33 (3d Cir. 1999)); *see also In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 659 (Bankr. D. Del. 2003) (stating that an administrative expense claim will be allowed where the expense arose postpetition and conferred a benefit to the debtor's estate).

21.     When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of administrative claims plainly require that their claims be afforded priority") (internal citation omitted). Further, "the amount of an administrative expense claim will generally be calculated pursuant to the parties' underlying contract or agreement. *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818–19 (3d Cir. 2010).  In this regard, the negotiated terms of the parties will be presumed to be the proper basis for the calculation of the administrative expense claim." *In re N. Am. Petroleum Corp. USA*, 445 B.R. 382, 401 (Bankr. D. Del. 2011).

22.     Here, the Postpetition contract was formed subsequent to the Petition Date on March 6, 2025.  Further, at a minimum, the Postpetition contract was beneficial to the Debtors in that it reduced the amount of prepetition liability incurred by the Debtors' estates and facilitated the supply of goods to the Debtors and/or Purchaser for use in the Debtors' going out of business sales.

23.     Accordingly, the Feldman Companies are entitled to the allowance of an administrative expense claim in the amount of $615,703.18.   Alternatively, the Feldman Companies request this Court enforce the Postpetition Contract and order the Purchaser to pay $615,705.18 on account of the Goods.

WHEREFORE, the Feldman Companies respectfully request that the Court enter an Order, substantially in the form attached hereto, allowing the Feldman Companies an

Administrative Expense Claim in the amount of $615,705.18 and for such further additional

relief as may be just and proper under the circumstances.

Dated: April 25, 2025

/s/ Michael J. Joyce
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street
Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

*Counsel to The Feldman Companies, Inc.*