**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*, | Case No. 25-10068 (CTG) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. ___** |

**ORDER (I) APPROVING CLOSING AGREEMENT WITH UNITED
STEELWORKERS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors"), pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 for entry of an order (this "Order") approving the Closing Agreement attached hereto as **Exhibit 1**; and this Court having reviewed the Motion; and due and sufficient notice of the Motion having been provided to all parties in interest; and it further appearing that no other or further notice or hearing is required; and it appearing that the relief requested by this Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

    1.    The Motion is GRANTED as set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Motion.

2. The Closing Agreement attached hereto as **<u>Exhibit 1</u>** is hereby APPROVED in its entirety.

3. The Debtors are authorized to take all actions necessary or appropriate to effectuate the Closing Agreement and the other relief granted in this Order.

4. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**Exhibit 1**

**Closing Agreement**

# CLOSING AND TERMINATION AGREEMENT

# HUDSON, OHIO

On this 18th day of April 2025, a Closing and Termination Agreement (hereinafter the "Closing Agreement") is entered into by and between Jo-Ann Stores, LLC (hereinafter referred to as the "Company") and Local Union No. 48U-32 of the United Steelworkers (hereinafter referred to as "Union" or "Local 48U).

**WHEREAS,** the Company and the Union are parties to a Collective Bargaining Agreement effective May 6, 2023 through May 5, 2028 (the "CBA"), covering all bargaining unit employees as set forth more fully in the CBA;

WHEREAS, on January 15, 2025, the Company (together with other affiliated debtor parties) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Proceedings");

**WHEREAS,** in connection with the Bankruptcy Proceedings, the Company and the Union have engaged in good faith negotiations with respect to the effects of the Company's decision to cease doing business at the Hudson, OH facility (the "Hudson DC"); the expiration of the CBA; and the cessation of the bargaining relationship between the Company and the Union; and

**WHEREAS,** the Company and the Union have reached an agreement on operational issues at the Hudson DC that may occur between execution of the Closing Agreement and full closure of the Hudson DC as well as agreement on certain rights and benefits that will be provided by the Company to employees covered by the CBA and the rights of the parties hereto are hereby reduced to writing set forth in the Closing Agreement.

**NOW THEREFORE, IT IS AGREED AS FOLLOWS:**

1. **Eligibility.** In order to qualify for the severance, pay and benefits described in this Closing Agreement, each employee must continue to work required hours (except for bona fide illness, justifiable absence or absence authorized by the Company) until such time as they are terminated by the Company by reason of the orderly closing of the Hudson, OH facility. It is understood and agreed that any employee who is terminated "for cause" or for reasons other than the phase out of operations, or who voluntarily resigns, retires, or terminates service shall not be entitled to, nor shall receive, severance.

2. **Resumption of Operations.**

   A. In the event the Company reopens or operates all or a portion of the Hudson, Ohio facility after the termination of the CBA, but prior to May 5th of 2028, it will:

      1. Recognize the United Steelworkers, AFL-CIO-CLC as the exclusive bargaining representative.

      2. Reinstate the provisions of the CBA, as modified by this Agreement, except as otherwise agreed by the Union.

      3. Recall employees whose employment was terminated as part of the Closing and Termination Agreement, as needed, in accordance with the provisions of the reinstated CBA, including retirees, except that refusal by a retiree to recall shall terminate a retiree's reemployment rights.

   B. Notwithstanding the foregoing, the termination of the current CBA shall <u>not</u> constitute a waiver by the Union, and the Union shall retain whatever rights, if any, to pursue remedies against the Company in the event that the Company enters into a transaction prior to May 5, 2028 for the purposes of avoiding its bargaining obligations under the National Labor Relations Act or obligations it may have under the CBA. The Company does not waive its position that any such decisions made or transactions entered into would not constitute a violation of the National Labor Relations Act or the Labor Agreement.

3. **Payments:** The CBA provides each bargaining unit employee with certain entitlements for Paid Time Off ("PTO") and severance (including pension plan contributions on such amounts). The Bankruptcy Code provides for certain claims to be allowed and paid as administrative claims and other claims to be allowed and paid as unsecured priority claims. The parties have estimated the total cost of the PTO and severance to be $1,300,000, of which approximately $660,000 would be permitted as an administrative claim in the Bankruptcy Proceedings. The parties have agreed that in the mutual interest of facilitating an orderly and safe closure of the Hudson DC, severance pay and PTO (as described below in paragraph 6) shall be paid in full, notwithstanding how such claims would be treated in the Bankruptcy Proceedings. GA JOANN Partnership, LLC ("GA") has agreed to reimburse the Company for the difference in the total amount of the PTO and severance entitlements under the CBA (as determined by the requirements under the CBA and Paragraph 1 of this Closing Agreement) and the allowed administrative claim in the Bankruptcy Proceedings. Payment of any severance shall be paid in a lump sum as soon as possible by the Company's payroll team but no later than thirty (30) working days from the date of the closure of the Hudson DC. Payment of any PTO shall be in accordance with Paragraph 6 below.

4. The Company shall promptly file a motion seeking authorization to enter into this Closing Agreement pursuant to Section 363 of the Bankruptcy Code. The Company shall share drafts of the Section 363 motion with the USW's counsel prior to filing.

5. **Waiver:** Employees will be obligated to sign a standard waiver and release agreement, the form of which is attached as <u>Exhibit A</u>.

6. **Paid Time Off (PTO).** Each employee will receive a lump-sum payment, less any applicable taxes and withholdings, representing their earned but unused PTO as of the date of each employee's last day worked at the Hudson DC. The amount of earned PTO to which each employee is entitled as of April 18, 2025 is as set forth in Appendix A hereto, which data is derived from the Company's books and records, and that such amount for any employee will be reduced by PTO taken by that employee, if any, between April 18, 2025 and the date of that employee's last day worked. Further, with respect to employees who remain employed until the date of the Hudson DC closure, GA has agreed to pay a multiplier to the PTO of 1.25 to each **unused** PTO dollar as of such closure date. It is understood and agreed that this multiplier shall not be paid to any employee who (i) does not continue to work required hours (except for bona fide illness, justifiable absence or absence authorized by the Company) until such time as they are terminated by the Company by reason of the orderly closing of the Hudson DC, (ii) voluntarily resigns, (iii) is terminated for cause, or (iv) retires.

   *Example $1000 in PTO will be paid out as $1250.*

   Payments shall be made as soon as possible by the Company's payroll team but no later than thirty (30) working days from the affected employee's last day of work.

7. **Steelworkers Pension Trust (SPT):** In addition, the Company will make all required contributions to the Steelworkers Pension Trust based upon monthly gross earnings within 30 days following the entry of a final order approving this settlement. Contributions to the SPT will be made by the 10th of the month following an employee's cessation of employment pursuant to the pension agreement between the Company and SPT.

8. **Medical.** Workers shall continue to receive healthcare coverage consistent with the CBA until his/her last day of work. Employees will be entitled to health care continuation coverage pursuant to the employees' rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") thereafter until such time as the Company ceases to maintain the underlying healthcare plans.

   a. As part of the termination of healthcare plans, the Company will fund a deposit to pay expected claims incurred prior to the termination of employment but not presented.

    b. **Disability Plan:** Any employees who are currently on Short- or Long-Term Disability shall continue to receive such benefits in accordance with STD and LTD plan documents.

9. **Life Insurance and Accidental Death & Dismemberment Insurance.** The Company shall continue Basic Life Insurance and Accidental Death & Dismemberment ("AD&D") insurance until the employee's employment has been terminated, in the amount provided in ARTICLE 13 – 13.6 of the CBA.

10. **Deduction of Payments.** Consistent with current Plan provisions, employees may modify or stop their contributions to the Hourly 401(k). The Company shall provide any documentation regarding the employees' 401(k) accounts.

11. **Unemployment.** Provided the Company meets the threshold of 50 employees, pursuant to ORC 4141.28, the Company will notify the Ohio Department of Job and Family Services (ODJFS) and provide employees with any designated "Mass Layoff Number." In addition, the Company shall pay all severance and PTO in a lump sum and shall abide by any unemployment determination by the ODJFS.

12. **Bargaining Unit Work.**

    a. Any and all work customarily performed by the bargaining unit will continue to be performed by bargaining unit employees. However, it is understood and agreed that any restrictions in the CBA with respect to the employment and utilization of casual employees is suspended to and including the date of termination of the CBA as set forth below.

    b. The Company may supplement the workforce with non-union casual or temporary labor provided qualified bargaining unit members retain first right of refusal for overtime, shift preference (if applicable) and seniority. The Company may supplement the maintenance department for the purposes of disconnects and duties associated with non-traditional maintenance duties at the facility.

    c. As part of the cessation of operations at the Hudson DC, the Company and/or GA may need to disassemble and remove certain equipment and machinery from the Hudson DC and otherwise prepare the site for permanent closure and/or disposition. The parties agree that all aspects of the above-referenced equipment disassembly and closure preparation work may be performed by non-bargaining unit personnel, including any employee or non-employee selected by the Company and/or GA for that purpose. There will be no claim by the Union that this work cannot be performed by such personnel, no attempt to interfere with or prevent this

      work from being performed by such personnel, and no grievance or other claim filed or pursued over the performance of this work by non-bargaining unit personnel.

    d. It is understood that gradual reductions in force shall be by Plant-wide Seniority. Bargaining Unit employees shall be utilized in conjunction with supplemental workers until the Company ceases all operations at the facility.

    e. The Company shall schedule the working forces as many shifts as available between now and plant closure including possibly Sunday 4/27. The Union shall encourage full participation with regard to overtime.

13. **Withholdings.** From the amounts due each employee under this Agreement, the Company is authorized to withhold and remit to the appropriate authorities, any Federal, state or municipal income taxes, contributions on account of the Federal Social Security Act and all other amounts required to be withheld by law or any employee contributions or authorized deductions, if applicable.

14. **Company Property.** On or before their last day of work, employees will turn in any Company property. In the event such items are not timely turned in, employees will be responsible for the costs of all such items. Employees specifically authorize the Company to deduct such costs from any payments due them and such authorization will also be included in the Separation Agreement and General Release signed by each employee as a condition to receiving benefits hereunder.

15. **Termination of the CBA.** The Company and the Union agree the CBA shall be terminated and the bargaining relationship between the Company and the Union shall cease on May 1, 2025 or the date on which the last bargaining unit employee is separated from employment at the Hudson DC, whichever is later.

16. **All Understandings.** The Closing Agreement sets forth all agreements and understandings reached by the parties with respect to the manner in which benefits and contractual provisions are to be applied to the closing of the Hudson DC.

[signature page to follow]

| FOR THE COMPANY: | | FOR THE UNION: | |
|---|---|---|---|
| *Ann Aber* (DocuSigned) | 4/18/2025 \| 2:16:56 PM PDT | *Patrick Foxx* (Signed) | 4/18/2025 \| 2:19:34 PM PDT |
| **Ann Aber** | Date | **Patrick Foxx** | Date |
| EVP, Chief Legal & HR Officer on behalf of Jo-Ann Stores, LLC | | President & Business Agent United Steelworkers Local 48U-32 | |
| | | *Jose Antonio* (Signed) | |
| | | **Jose Antonio Arroyo, BSAS** | |
| | | International Staff Representative on U.S.W. Local Union No. 48U-32 | |

AGREED TO AND ACCEPTED AS TO SECTIONS 3 AND 6:

*Timothy J. Shilling* (Signed)

**Tim Shilling**
On behalf of GA JOANN PARTNERSHIP, LLC

EXHIBIT A

FORM OF RELEASE

This General Release (this "Release") is entered into by and between [_____] ("Employee") and JO-ANN STORES, LLC (the "Company") (collectively, the "Parties") as of the __ day of [____], 2025.

NOW, THEREFORE, and in consideration of the mutual promises contained herein, and for other good and valuable consideration, including the prompt payment in full of certain benefits owing to the Employee pursuant to the collective bargaining agreement ("CBA") covering his/ her employment as addressed in a Closing and Termination Agreement negotiated between the Company and United Steelworkers, the adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Employment Status**. Employee's employment with the Company terminated effective as of [_____] (the "Termination Date").

2.      **Payments and Benefits**. Following the effectiveness of the terms set forth herein, the Company shall provide Employee with the following benefits. Such benefits shall be provided on condition that this Release must be executed by Employee within twenty-one (21) days after Employee's Termination Date:

    (a)    [_____] weeks of severance, payable in a lump sum in accordance with the Company's normal payroll practices in effect at the applicable time (the "Base Salary Continuation"), within fifteen (15) days after this Release becomes effective and irrevocable in accordance with its terms; and

    (b)    payment for all earned but unused Paid Time Off as of the Termination Date[, which shall include a 1.25x multiplier].

Employee agrees that the consideration set forth above is more than Employee is legally entitled to and reflects adequate consideration for the release of any potential claims that Employee may have arising from Employee's employment and separation from employment with the Company.

3.      **No Liability**. This Release does not constitute an admission by the Company, or its managers, officers, employees, affiliates or agents, or Employee, of any unlawful acts or of any violation of federal, state or local laws.

4.      **Claims Released by Employee**. In consideration of the payments and benefits described in Section 2 of this Release, and by signing this Release, Employee agrees on behalf of Employee and his or her agents, heirs, executors, administrators, and assigns to unconditionally release, acquit, and forever discharge the Company, its parents, subsidiaries, and affiliates, and each of their respective agents, directors, managers, officers, employees, partners, shareholders, members, representatives, successors, insurers, assigns, and all persons acting by, through, under or in concert with any of them

("Releasees") from any and all actions, complaints, claims, liabilities, obligations, promises, agreements, damages, demands, losses, and expenses of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, rights under federal, state or local laws prohibiting discrimination (including but not limited to the Federal Age Discrimination in Employment Act) and claims for wrongful discharge, breach of contract, either oral or written, breach of any employment policy or any other claim against Releasees which Employee now has, heretofore had or at any time hereafter may have against Releasees arising prior to the date hereof and arising out of or in connection with Employee's employment or separation from employment with the Company.

Employee acknowledges and understands that this is a general release which releases the Releasees from any and all claims that Employee may have under federal, state or local laws or common law, including but not limited to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the Employee Retirement Income Security Act, and the Consolidated Omnibus Budget Reconciliation Act. This Release does not apply to any claim that as a matter of law cannot be released; any right to any vested benefit arising under any pension, welfare, or other benefit plan; any right to workers' compensation benefits; any right to Unemployment Insurance benefits; or to any rights or claims that may arise after the date Employee executes this Release.

Nothing in this Release shall interfere with Employee's rights, if any, under Section 7 of the National Labor Relations Act, including, but not limited to, Section 6, Confidentiality/Non-Disparagement, or prohibit Employee from communicating to and cooperating with any federal, state or local governmental agency in any investigation concerning the Company (including without limitation the Securities and Exchange Commission ("SEC"), the National Labor Relations Board, the Occupational Safety and Health Administration and the Equal Employment Opportunity Commission ("EEOC")), but Employee acknowledges that this Release will bar Employee from recovering any funds in any future proceeding, including any brought by the EEOC or any similar state and local agencies. Further, Employee specifically waives any right to receive any benefit or remedy as a consequence of filing a charge of discrimination with the EEOC or any similar state and local agencies. Notwithstanding the prior two sentences, Employee may receive incentive payments under SEC Rule 21F-17 and similar rules of other governmental agencies.

Employee and the Company further acknowledge and agree that nothing in this Release prevents Employee from instituting any action to challenge the validity of the release under the ADEA, to enforce the terms of this Release, or from enforcing rights, if any, under ERISA to recover any vested retirement benefits.

**5.     Admissibility**.  Employee and the Company agree that this Release may be introduced into evidence by a party in the event either party attempts to or actually commences any legal, equitable or administrative action, arbitration or other proceeding against the other party or any of its affiliated entities or any of the Releasees.

6. **Confidentiality/Non-Disparagement**. Except as permitted by the third paragraph of Section 4 above, Employee agrees not to divulge to third parties or use any confidential or Company proprietary information gathered or learned by Employee in the scope of his or her employment with the Company for a period of 15 years for all confidential or proprietary information and indefinitely for any information of the Company which could be considered a trade secret under 18 U.S.C. § 1839.  Confidential information includes, but is not limited to, information in oral, written or recorded form regarding business plans, trade or business secrets, Company financial records, supplier contracts or relationships, or any other information that the Company does not regularly disclose to the public.  To the extent that Employee has any doubt, either now or in the future, as to whether information Employee possesses is confidential or Company proprietary, Employee should contact the Company's Chief Legal Officer for clarification before divulging or using such information. Employee understands and agrees that divulging such information to third parties or Employee's unauthorized use of it would cause serious competitive harm to the Company.  Confidential information shall exclude: (a) information that is generally known by or available for use by the public, (b) information that was known by Employee prior to his or her employment with the Company (including its predecessor in interest, affiliates and subsidiaries), (c) information that is required to be disclosed pursuant to applicable law or a court order, or (d) information disclosed to the SEC in connection with SEC Rule 21F-17 or to other governmental agencies pursuant to similar rules.  If information is required to be disclosed because of a court order, Employee must notify the Company's Chief Legal Officer immediately.

7. **Governing Law**.  To the extent not preempted by the laws of the United States, the laws of the State of Ohio, applicable to contracts made and to be performed wholly within that state, shall be the controlling law in all matters relating to this Release. The parties agree that any disputes regarding this Release shall be resolved in the federal and state courts sitting in Summit County, Ohio, and each party consents to the jurisdiction and venue of such courts with respect to such matters and the parties.

8. **Release of Age Discrimination in Employment Act Claims**. Employee understands that the release set forth in Section 4 includes a release of any claims Employee may have under the Age Discrimination in Employment Act against any of the Releasees that may have existed on or prior to the date upon which Employee signs this Release.  Employee has read this Release, agrees that it sets forth the terms of the Parties' agreement clearly and unambiguously, understands it, and voluntarily accepts its terms. The Company hereby advises Employee to seek the advice of legal counsel before entering into this Release. Employee acknowledges that Employee was given a period of twenty-one (21) calendar days within which to consider and execute this Release, and to the extent that Employee executes this Release before the expiration of the 21-day period, he or she does so knowingly and voluntarily and only after consulting his or her attorney.

9. **Revocation**. Employee understands that he or she has a period of seven (7) calendar days following the execution of this Release during which Employee may revoke this Release by delivering written notice to the Company's Chief Legal Officer at 5555 Darrow Road, Hudson, Ohio 44236, and this Release shall not become effective or

enforceable until such revocation period has expired. Employee understands that if he or she revokes this Release, it will be null and void in its entirety and Employee will not be entitled to any payments or benefits provided in Section 2.

**10.     Miscellaneous**. This Release is the complete understanding between Employee and the Company in respect of the subject matter of this Release and supersedes all prior agreements relating to Employee's employment with the Company, except agreements that Employee has entered into with the Company pertaining to confidentiality or ownership of intellectual property or Company proprietary information. Employee has not relied upon any representations, promises or agreements of any kind except those set forth herein in signing this Release. In the event that any provision of this Release should be held to be invalid or unenforceable, each and all of the other provisions of this Release shall remain in full force and effect. If any provision of this Release is found to be invalid or unenforceable, such provision shall be modified as necessary to permit this Release to be upheld and enforced to the maximum extent permitted by law. Employee agrees to execute such other documents and take such further actions as reasonably may be required by the Company to carry out the provisions of this Release.

**11.     Counterparts**. This Release may be executed by the parties hereto in counterparts (including by means of facsimile or other electronic transmission), each of which shall be deemed an original, but all of which taken together shall constitute one original instrument.

IN WITNESS WHEREOF, the parties have executed this Release on the date set forth below.

JO-ANN STORES, LLC

_____          Date:_____
Name:
Title:

[employee name]

_____          Date: _____

APPENDIX A

PTO Balance as of 04.18.25