IN THE UNITED STATES BANKRUPTCY COURT
OF THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN Inc., *et al.*, | ) | Case No. 25-10068 (CTG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 760** |

**OBJECTION TO FIRST NOTICE OF ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACT AND/OR UNEXPIRED LEASES**

Cotton Mill II, LLC (the "Landlord"/"Cotton Mill II"), by and through undersigned counsel, files this objection ("Objection") to the Debtors' proposed Lease Assignment stated in the First Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases [Dkt. No. 760]. In support of its Objection, Landlord states as follows:

**Summary**

1.  The Debtor seeks to assign its lease in the Cotton Mill II shopping center (the "Cotton Mill II Lease") to Burlington Coat Factory ("Burlington"). The Landlord objects. Approving the assignment would violate "tenant mix" requirements of the Cotton Mill II shopping center, including the express terms of an existing lease with Ross Dress for Less (the "Ross Lease") entered subsequently to the Cotton Mill II Lease. Unless Burlington obtains Ross' consent, assignment of the Debtor's Cotton Mill II Lease should be denied.

**Relevant Facts**

2.  Cotton Mill II is a shopping center of approximately 155,603 square feet located in Washington, Utah, a suburb of St. George. Cotton Mill II meets the applicable bankruptcy tests for a "shopping center." The leading commentator on bankruptcy explains respecting a shopping center "that the most important characteristic will be a combination of leases held by a single

landlord, leased to commercial retail distributors of goods, with the presence of a common parking area." 3 COLLIER ON BANKRUPTCY ¶ 365.05 (16th ed. 2025). Cotton Mill II meets this test.

3. Cotton Mill II also satisfies substantially all of the criteria identified in the Third Circuit's multi-factor test for a shopping center. See, *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087 (3rd Cir. 1990) (factors considered in determining status of property under section 365(b)(3) include a combination of lease with other leases; all leases held by a single landlord; all tenants engaged in the commercial retail distribution of goods; the presence of a common parking area; the purposeful development of the premises as a shopping center; the existence of a master lease; the existence of fixed hours during which all stores are open; the existence of joint advertising; contractual interdependence of the tenants as evidenced by restrictive use provisions in their leases; the existence of percentage rent provisions in the leases; joint participation by tenants in trash removal and other maintenance; existence of a tenant mix; and contiguity of the stores).

4. The Debtor's tenancy at Cotton Mill II began through a consensual assignment by the tenant "Provo Craft and Novelty, Inc." of an existing lease dated October 23, 2006 (the "Original Lease"). The Original Lease defined the Permitted Use in Article I as "the operation of a retail 'craft store', which sells arts and crafts, art supplies, craft supplies, picture frames and/or picture framing services, artificial flowers and/or plants, artificial floral and/or plant arrangements, and wedding and/or party goods." Article 5.1 of the Original Lease provided "Tenant shall not use nor permit the Premises to be used for any other purpose or purposes or under any other trade name whatsoever without the prior written consent of Landlord, which consent shall not be unreasonably withheld."

5. When the Original Lease was assigned to the Debtor, the parties entered into a Second Amendment dated February 29, 2012 which acknowledged Debtor's registered trade name

as "Jo-Ann Fabric and Craft Stores", and amended Article 1 to provide an expanded Permitted Use: "Tenant may use the Premises for the sale of any of the following: bolted and/or unfinished fabrics of any kind, fabrics sold by the yard, upholstery materials, fabrics with patterns, knitting supplies, needlepoint supplies, macrame supplies, artificial flowers, all types of arts and crafts materials and supplies (including jewelry arts and crafts), framed artwork; custom framing, scrapbooks and scrapbooking supplies and materials, yarns and all types of notions used for knitting, sewing, needlepoint and upholstery, sewing machines, sewing machine furniture, fabric care items and products, accessories and services related to all of the foregoing and other items and services customarily offered for sale by a fabric and arts and crafts store." The Lease remained subject to Article 5.1, which prohibited uses or trade names other than those identified in Article I without the Landlord's prior consent.

6. The Landlord subsequently entered into a lease effective November 2, 2021 with Ross Dress for Less which protects a favorable tenant mix by prohibiting competing "Off Price Sale" retailers at the Cotton Mill II shopping center. Specifically, Section 15.3(a) of the Ross Lease provides, "Without the prior written consent of [Ross], which consent may be withheld in the absolute and sole discretion of [Ross], no tenant or occupant of Landlord's Parcel (other than [Ross]) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of Landlord's Parcel to use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the Off Price Sale of merchandise." The Ross Lease definition of "Off Price Sale" specifically references Burlington as an example of an Off-Price Sale retailer. Ross Lease, Section 15.3(a).

7. Thus, assignment of the Debtor's Cotton Mill II Lease to Burlington will result in the Landlord breaching the Ross Lease.

**Assignment of the Debtor's Cotton Mill II Lease to
Burlington Would Violate Section 365(b)(3)**

8. The shopping center provisions of the Bankruptcy Code were intended to restrict the assignment of leases in shopping centers. As relevant here, they condition assumption (and assignment) of shopping center leases by requiring:

> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, *use*, or exclusivity provision, and *will not breach any such provision contained in any other lease*, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

Section 365(b)(3)(C) and (D) (emphasis supplied); see generally, 3 COLLIER ON BANKRUPTCY ¶ 365.05 (16th ed. 2025); and see, 3 COLLIER ON BANKRUPTCY ¶365.09 (16th ed. 2025) (applying restrictions to lease assignments).

9. The courts have enforced these shopping center restrictions on assignment. For example, in *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 245, (4th Cir. 2004) the Circuit Court of Appeals held that where a lease restricted the use of premises in a shopping center to "retail sale of auto parts" the lease could not be assigned to a tenant who would use the premises for other purposes. As noted above, there is no construction of the Cotton Mill II Lease which would render operation by a Burlington a Permitted Use of the Debtor's premises.

10. Consistent with the statute and its legislative history, the courts have been protective of shopping center landlords' interest in preserving the tenant mix. "The level of competition between stores in a shopping center must be considered, especially in connection with the fact that the success or failure of individual tenants may affect the landlord and the other tenants in the

center." *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 307, (Bkrtcy. S.D.N.Y. 1983) (denying assignment because it would adversely affect tenant mix); *Hannaford Bros., Co. v. Ames Dept. Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 316 B.R. 772, 796, (Bkrtcy. S.D.N.Y. 2004) ("the harm to other, non-debtor, parties must be considered as well;" denying assignment because it would adversely harm existing tenant).

11. Finally, in this case assignment to Burlington will cause the Landlord to default under the terms of the Ross Lease. The express language of Section 365(b)(3)(C) prohibits assignments which "breach any… provision contained in any other lease." That prohibition is universally applied by the courts. For example, *In re Three A's Holdings, L.L.C.*, 364 B.R. 550, 559, (Bkrtcy. D. Del. 2007) involved an attempt to assign a Tower Records location to Walgreens. Noting that "[t]ypically, cases regarding use restrictions involve explicit prohibitions or restrictions within a lease or related document," the court refused to permit an assignment which violated the use restriction. Here, the proposed assignment expressly violates the provisions of the Ross Lease and is therefore prohibited by Section 365(b)(3)(C).

## **Reservation of Rights**

12. Landlord reserves its right to supplement, amend or modify this Objection. Nothing herein is intended to be a waiver by Landlord of any right, objection, argument, claim, or defense with respect to any matter, all of which are hereby expressly reserved.

## **Conclusion**

13. The Bankruptcy Code prohibits the assignment of leases in a shopping center where the assignment would disrupt the "tenant mix" or breach lease provisions. The proposed assignment of the Debtor's Cotton Mill II Lease to Burlington would disrupt the tenant mix and

breach the express provisions of a Ross Lease at the shopping center. The assignment should be denied.

Date: May 7, 2025

/s/ Garvan F. McDaniel
Garvan F. McDaniel (#4167)
**HOGAN MCDANIEL**
1311 Delaware Avenue
Wilmington, DE 19806
Telephone (302) 656-7540
Facsimile (302) 656-7599
gfmcdaniel@dkhogan.com

-and-

Michael St. James, Esq.
**ST. JAMES LAW, P.C.**
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566; (415) 391-7568

*Attorneys for Landlord*