# EXHIBIT C

13  **15.3. Protection.**

14  (a) Without the prior written consent of Tenant, which consent may be
15  withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center
16  (other than Tenant) may use, and Landlord shall not permit any other tenant or occupant of the
17  Shopping Center to use in excess of Fifteen Thousand (15,000) square feet of Leasable Floor Area of
18  its premises for the Off Price Sale (as hereinafter defined) of apparel and/or soft goods. For purposes
19  of this Section 15.3(a), "Off-Price Sale" shall mean the retail sale or display of apparel and/or soft
20  goods on an every day basis at prices reduced from those charged by full price retailers, such as full
21  price department stores (i.e. J.C. Penney, Kohls); provided, however, this definition shall not prohibit
22  sales events by a retailer at a price discounted from that retailer's every day price. (As of the Effective
23  Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshall's, Nordstrom
24  Rack, Factory 2U, Burlington Coat, Steinmart, and Filene's Basement.) Notwithstanding any provision
25  herein to the contrary, the restrictions under this Section 15.3 shall also not apply to any existing tenant
26  or occupant in the Shopping Center under any lease existing as of the Effective Date of this Lease (or
27  the assignee or sublessee of such tenant or occupant, to the extent, but only to the extent, Landlord's
28  consent or approval of any assignee or sublessee or the Off-Price Sale use by any such assignee or
29  sublessee cannot be withheld by Landlord or the terms of such tenant's lease require Landlord to give
30  consent to any such use, assignment or sublease).

31  (b) If the provisions contained in Section 15.3(a) above are violated
32  ("Protection Violation"), commencing on the first day of the Protection Violation and continuing
33  throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at
34  law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to
35  Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close
36  of each calendar month. The parties agree that the monetary damages to be suffered by Tenant as a
37  result of a breach by Landlord (or Landlord's tenant(s)) of the provisions of this Section 15.3(b) are
38  difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best
39  estimate by the parties of the amount of such damage. If Tenant elects to terminate this Lease as
40  provided in this Section 15.3(b), this Lease shall terminate on a date indicated by Tenant in its notice of

## 2. DEFINITIONS OF GENERAL APPLICATION

8  **Substitute Rent.** Substitute Rent shall mean payment of Reimbursements, plus the lesser of
9  (a) Minimum Rent, or (b) two percent (2%) of Tenant's Gross Sales during the preceding month.