# Exhibit A

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 05, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PARTY CITY HOLDCO INC., *et al.*,[1] | Case No. 24-90621 (ARP) |
| Debtors. | (Jointly Administered) |

**ORDER (A) APPROVING AND AUTHORIZING SALE OF CERTAIN OF
THE DEBTORS' ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**
[Related to Docket Nos. 28, 94, and 482]

Upon the motion (the "Motion")[2] of Party City Holdco Inc. (the "Seller") and its affiliated

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors") for (a) entry of an order (the "Bid Procedures Order") approving procedures to transfer

or sell certain of the Debtors' unexpired leases of nonresidential real property (each, a "Lease") and

(b) entry of an order (this "Sale Order") authorizing and approving the sale of one or more Leases

pursuant to the Assumption and Assignment Agreement (as defined below), including the

assumption and assignment of such Lease(s) of the Debtors identified in the Assumption and

Assignment Agreement (the "Acquired Lease"[3]) in connection therewith; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and

the Amended Standing Order; and this Court having found that this is a core proceeding pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are: Party City Holdco Inc. (9758); Amscan Inc. (1359); Am-Source, LLC (8427); Party City Corporation (3692); Party City Holdings, Inc. (3029); PC Intermediate Holdings, Inc. (1229); and Trisar, Inc. (0659). The location of the Debtors' service address for purposes of these chapter 11 cases is: 100 Tice Boulevard, Woodcliff Lake, New Jersey 07677.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Bid Procedures Order (as defined below).

[3] Although singular, the term "Acquired Lease" refers to each of the Leases that are identified in the Assumption and Assignment Agreement.

17107374

to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having taken into consideration this Court's Bid Procedures Order, the *Revised Notice of Bid Deadline and Potential Sale Hearing Related to Leases* [Docket No. 331] (the "Auction and Hearing Notice"), and the *Notice of Successful and Backup Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets* [Docket No. 482] (the "Notice of Successful and Backup Bidders"), which announced the highest and best bidder for the Acquired Lease; and Cavender Stores L.P. (the "Buyer") having submitted the highest and best offer for the Acquired Lease, as reflected in the Assumption and Assignment Agreement; and upon each of the objections and other pleadings filed in response to the Sale Transaction (as defined below); and the Court having reviewed and considered (i) the Motion, (ii) the Assumption and Assignment Agreement, dated as of March 5, 2025 (the "Assumption and Assignment Agreement"), a copy of which is attached hereto as Schedule 1, by and between the Debtors and the Buyer, whereby the Debtors have agreed, among other things, to sell the Acquired Lease(s) to the Buyer, which will be assumed and assigned to Buyer, on the terms and conditions set forth in the Assumption and Assignment Agreement (collectively, the "Sale Transaction"), (iii) the Declaration of Mike Matlat in Support of the Sale Transaction, and (iv) the arguments and representations of counsel made, and the evidence proffered and adduced, at the hearing to consider approval of the Sale Transaction (the "Sale Hearing"); and it appearing that due notice of the Assumption and Assignment Agreement and the Sale Order having been provided; and all objections to the Motion having been withdrawn, resolved, or overruled as provided in this Sale Order; and it appearing that the relief requested and granted herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon the record of the Sale Hearing and these

2

chapter 11 cases; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT

## I.    Approval of the Sale and Entry into the Assumption and Assignment Agreement

1.    The Assumption and Assignment Agreement and all transactions contemplated therein and all of the terms and conditions thereof are hereby approved. The failure specifically to include any particular provision of the Assumption and Assignment Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assumption and Assignment Agreement be authorized and approved in its entirety.

2.    Any response or objections to, or reservations of rights regarding, the entry of this Sale Order and the relief granted herein or requested in the Motion that have not been withdrawn, waived or settled, are hereby denied and overruled.

## II.    Consummation of Sale Transaction

3.    Pursuant to sections 105, 363(b)(1), and 365(a) of the Bankruptcy Code, (i) the Debtors are hereby authorized to assume and assign the Acquired Lease to Buyer, and (ii) the Debtors as well as their officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Assumption and Assignment Agreement and to close and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Assumption and Assignment Agreement and this Sale Order.

4.    The assumption and assignment of the Acquired Lease shall be deemed to have occurred (the "Closing Date") when the following conditions have been met: (i) the Debtor counterparty and Buyer have both executed the Assumption and Assignment Agreement, (ii) entry

3

of this Sale Order, (iii) Buyer has paid the full amount due under the Assumption and Assignment Agreement, and (iv) the effective date of assignment has occurred in accordance with the terms of the Assumption and Assignment Agreement. Notwithstanding any provision of the Acquired Lease or the Assumption and Assignment Agreement to the contrary, the Debtors shall have the right to use and occupy the Leased Premises through and including the Closing Date, after which the Debtors shall deliver possession of the Leased Premises to Buyer.

5.      The Debtors, their affiliates, and their respective officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Assumption and Assignment Agreement and to take all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Assumption and Assignment Agreement or to implement the Sale Transaction, all without further order of the Court.

6.      After the Closing Date, all persons that are currently in possession of the Acquired Lease shall surrender possession of the Acquired Lease to the Buyer. To the extent required by the Assumption and Assignment Agreement, the Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons that are presently, or on the Closing Date may be, in possession of the Acquired Lease will surrender possession of the Acquired Lease to either (i) the Debtors before the Closing Date, or (ii) the Buyer on or after the Closing Date.

7.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Assumption and Assignment Agreement.

4

17107374

## III.    Assumption and Assignment of Acquired Lease

8.      The Debtors, and Buyer, as applicable, have met all the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, and the Bid Procedures Order, in connection with the assumption and assignment of the Acquired Lease to Buyer. The Acquired Lease is an "unexpired lease" of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

9.      The Debtors are hereby authorized, in accordance with sections 105(a), 363(f), and 365 of the Bankruptcy Code, to assume and assign the Acquired Lease to the Buyer free and clear of (a) all interests including, but not limited to, any liens, claims, rights, interests, charges, or encumbrances, except with respect to any interests related to reciprocal easement agreements or that may be assumed liabilities under the Assumption and Assignment Agreement ("Interests"), and any Interests shall attach to the proceeds in the same order and priority, as applicable, and subject to all existing defenses, claims, setoffs, and rights and (b) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Buyer, as the case may be, in the Acquired Lease (but only in connection with the assignment by the Debtor to the Buyer as provided by this Sale Order)), provided that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under the Acquired Lease, including adjustments, reconciliations, and indemnity obligations, liability for which shall be determined in accordance with the Assumption and Assignment Agreement or (B) in respect of any taxes. The assumption and assignment of the Acquired Lease, as approved by this Sale Order and as set out in the

17107374

Assumption and Assignment Agreement, constitutes a legal, valid, and effective transfer of the Acquired Lease and vests the Buyer with all rights, titles, and interests to the Acquired Lease; *provided, however*, that nothing in this paragraph waives or otherwise limits a Buyer's right to argue that any such accrued but unbilled or not due rent or charges under the Acquired Lease that become due or payable after Closing Date, but that were actually known and subject to assertion as of the date of the entry of this Sale Order, constitute Cure Amounts that should have been but were not asserted as part of the transactions approved under this Sale Order and are therefore waived.

10.    Upon the closing, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Acquired Lease and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Acquired Lease. Buyer acknowledges and agrees that from and after the closing, subject to and in accordance with the Assumption and Assignment Agreement, it shall comply with the terms of the assumed and assigned Acquired Lease in its entirety, including any indemnification obligations expressly contained in the Acquired Lease that could arise as a result of events or omissions that occur from and after the closing, unless any such provisions are not enforceable pursuant to the terms of this Sale Order.

11.    All Cure Amounts shall be determined and paid in accordance with the Bid Procedures Order and the Assumption and Assignment Agreement. Payment of the Cure Amounts shall be in full satisfaction and cure of any and all defaults under the Acquired Lease, whether monetary or non-monetary. Pursuant to the Assumption and Assignment Agreement, the Buyer shall assume and cure all outstanding liabilities with respect to each Acquired Lease, including, but not limited to, accrued but unbilled amounts or adjustments related to common area

6

maintenance, real estate taxes, and insurance. Each party to the Acquired Lease is forever barred, estopped, and permanently enjoined from asserting against any other party to the Acquired Lease, including the non-debtor party, their successors or assigns, or the property of any of them, any default in the Acquired Lease and existing as of the date of entry of this Sale Order if such default was not raised or asserted prior to or as of the date of entry of this Sale Order.

12.     Notwithstanding any provisions of the Acquired Lease (including any reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement referenced or incorporated therein), including a covenant of continuous operation or a "go dark" provision, Buyer shall not be required to operate its business at the leased premises for a reasonable period of time after the Closing Date, and Buyer shall commence operations and open to the public no later than (a) one hundred eighty (180) days after the Closing Date (subject to any force majeure clause in the Acquired Lease, if such clause exists therein) or (b) as otherwise agreed to, in writing, with Landlord, including remodeling, restocking, re-fixturing, and changing signage to its current trade name, which shall be done in a manner consistent with the terms of the Acquired Lease, provided that such alterations and remodeling are being diligently pursued. Notwithstanding anything to the contrary in the Acquired Lease, to the extent the consent of Landlord under the Acquired Lease is required for any such alteration or signage modification, such Landlord's consent thereto shall not be unreasonably withheld, conditioned or delayed.

13.     Except as otherwise expressly provided in this Sale Order and the Assumption and Assignment Agreement, all persons (and their respective successors and assigns) including the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental, tax and regulatory authorities, governmental units, lenders, employees, former employees, trade creditors and any other creditors holding claims against the Debtors, the Acquired Lease, or the

Debtors' businesses (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior, or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Lease, or the Debtors' businesses prior to the Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Buyer, its affiliates, successors or assigns, its property or the Acquired Lease, including taking any of the following actions with respect to or based on a claim: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, its affiliates, successors or assigns, assets, or properties except as to any obligations regarding hazardous substances or hazardous materials in the Acquired Lease to the extent permitted under applicable law; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any claims against the Buyer, its successors or assigns, assets, or properties; (d) asserting a claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer or its successors, or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof, not including Landlord's right to enforce the terms of the Acquired Lease. No such persons shall assert or pursue against the Buyer or its affiliates, successors or assigns any such claim.

14.    This Sale Order (a) shall be effective as a determination that, as of the Closing Date, all claims, have been unconditionally released, discharged and terminated as to the Buyer and the Acquired Lease, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

17107374

deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Acquired Lease free and clear of all claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens and other interests against the Acquired Lease recorded prior to the date of this Sale Order. A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Acquired Lease recorded prior to the date of this Sale Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Assumption and Assignment Agreement.

15.     Following the Closing Date, no holder of any claim shall interfere with the Buyer's title to or use and enjoyment of the Acquired Lease based on or related to any such claim or based on any actions the Debtors may take in these chapter 11 cases.

16.     Except as expressly set forth in the Assumption and Assignment Agreement, the Buyer and its successors and assigns shall have no liability for any claim, whether known or unknown as of the Closing Date, now existing, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity, except as to those obligations regarding hazardous substances or hazardous materials as described in this Sale Order to the extent permitted under applicable law.

9

17107374

17.     If any person that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing claims against or in the Debtors or the Acquired Lease shall not have delivered to the Debtors prior to the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person has with respect to the Debtors or the Acquired Lease or otherwise, then with regard to the Acquired Lease that is purchased by the Buyer pursuant to the Assumption and Assignment Agreement and this Sale Order (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person with respect to the Acquired Lease and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all claims against the Acquired Lease. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

18.     On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Acquired Lease acquired under and pursuant to the Assumption and Assignment Agreement.

19.     To the maximum extent available under applicable law and to the extent provided for under the Assumption and Assignment Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Lease and, to the maximum extent available under applicable law and to the extent provided for under the Assumption and Assignment Agreement, all such licenses, permits, registrations, and governmental authorizations

17107374

and approvals are deemed to have been transferred to the Buyer as of the Closing Date. All existing licenses or permits applicable to the business shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

20.     Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Lease to the Buyer in accordance with the Assumption and Assignment Agreement and this Sale Order.

21.     Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Assumption and Assignment Agreement.

### IV.     No Successor or Other Derivative Liability

22.     By virtue of the Sale Transaction, the Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, de facto or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates. Except as expressly set forth in the Assumption and Assignment Agreement, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability,

17107374

employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Acquired Lease prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

## V.     Ipso Facto Clauses Ineffective

23.     The Acquired Lease shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, including all obligations of the Buyer as the assignee of the Acquired Lease, notwithstanding any provision in the Acquired Lease (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. There shall be no defaults, breach, claim, pecuniary loss, rent accelerations, escalations, assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the Sale Transaction and the assumption or assignment of the Acquired Lease or any applicable closing, and all non-Debtor parties to the Acquired Lease are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any of the foregoing matters described in this paragraph.

24.     Upon the Debtors' assignment of Acquired Lease to the Buyer under the provisions of this Sale Order, no default shall exist under the Acquired Lease, and no counterparty to the Acquired Lease shall be permitted to declare a default by any Debtor or otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Acquired Lease. Any provision in the Acquired Lease that prohibits

17107374

or conditions the assignment or sublease of the Acquired Lease (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect as to the Sale Transaction only. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of the Acquired Lease shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Acquired Lease.

**VI.    Certain Provisions of Acquired Leases Deemed Unenforceable.**

Except as expressly set forth in this Sale Order of the Assumption and Assignment Agreement, and solely with respect to the transactions contemplated by this Sale Order and the Assumption and Assignment Agreement, nothing in this Order shall be deemed to annul or vary any provision of any Acquired Lease other than the following provisions, which shall not have any force or effect with respect to the assignment authorized by this Order, and no counterparty to an Acquired Lease shall have any right to terminate the possession of the premises by tenant under the Acquired Lease, terminate the Acquired Lease or increase the rent or impose any penalty by reason of such assignment (collectively, the "Unenforceable Provisions"):

a.    a provision that prohibits, restricts or conditions the assignment of such Acquired Lease;

b.    a provision prohibiting or restricting Purchaser's intended use of the premises;

c.    a provision unreasonably prohibiting necessary alterations or additions to the premises required to convert the premises to Purchaser's intended use of the premises or the placement of reasonable signage (including any building fascia signage);

d.    a provision commonly referred to as a "going dark" or "continuous operations" provision and enabling the applicable counterparty to recapture the premises pursuant to the terms and conditions of the Acquired Lease;

      e.      a provision conditioning assignment on consent of the applicable counterparty to the Acquired Lease, or requiring payment to the counterparty to the Acquired Lease of any amount other than the Cure Costs as the price of assignment;

      f.      a provision effecting forfeiture or a modification of any of tenant's rights or obligations in effect under the Acquired Lease upon an assignment by the Debtors of the Acquired Lease;

      g.      a provision conditioning the Debtors' ability to assign its leasehold rights in any Acquired Lease upon any terms not otherwise required under the Bankruptcy Code; and

      h.      a provision requiring the use of a certain tradename.

None of the Unenforceable Provisions under the applicable Acquired Lease shall apply to the Buyer with respect to or as a result of the transactions provided for herein in any respect and, without limiting the generality of the foregoing, no violation by the Seller or the Buyer of the Unenforceable Provisions shall constitute an event of default or breach under any Acquired Lease.

## VII.    Statutory Mootness

    25.    The transactions contemplated by the Assumption and Assignment Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Lease to the Buyer, free and clear of claims, unless such authorization is duly stayed before the Closing Date pending such appeal. The Buyer is a good faith purchaser of the Acquired Lease and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

17107374

## VIII.   No Avoidance of Assumption and Assignment Agreement

26.     Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Assumption and Assignment Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Assumption and Assignment Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Assumption and Assignment Agreement or the Sale Transaction.

## IX.      Waiver of Bankruptcy Rules 6004(h), 6006(d), and 7062

27.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Bankruptcy Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.

## X.       Binding Effect of Sale Order

28.     The terms and provisions of the Assumption and Assignment Agreement and this Sale Order shall be binding in all respects upon the Debtors, their estates and their creditors, any affected third parties, all holders of equity interests in the Debtors, all holders of any claims, whether known or unknown, against the Debtors, any holders of claims against or on all or any portion of the Acquired Lease, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers,

17107374

estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the debtors' chapter 11 cases, and each of their respective affiliates, successors and assigns. The Assumption and Assignment Agreement and the Sale Order shall inure to the benefit of the Debtors, their estates and creditors, the Buyer and their respective successors and assigns. The Assumption and Assignment Agreement, the Sale Transaction and this Sale Order shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

## XI.    Conflicts; Precedence

29.    In the event that there is a direct conflict between the terms of this Sale Order, the Assumption and Assignment Agreement, and any documents executed in connection therewith, the provisions contained in this Sale Order, the Assumption and Assignment Agreement and any documents executed in connection therewith shall govern, in that order. Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, any order confirming such plan, or in any other order of any type or kind entered in these chapter 11 cases (including any order entered after any conversion of any or all of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Assumption and Assignment Agreement or the terms of this Sale Order.

## XII.    Modification of Assumption and Assignment Agreement

30.    The Assumption and Assignment Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not

16

17107374

materially change the terms of the Assumption and Assignment Agreement or any related agreements, documents or other instruments.

## XIII. Retention of Jurisdiction

31.     This Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Assumption and Assignment Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order or the Assumption and Assignment Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

## XIV. Other Provisions

32.     All time periods set forth in this Sale Order and the Assumption and Assignment Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in this Sale Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Sale Order; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied

17

pursuant to this Sale Order are valid and the Debtors and all other parties-in-interest expressly

reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such

liens. Any payment made pursuant to this Sale Order should not be construed as an admission as

to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other

party in interest's rights to subsequently dispute such claim.

Signed: March 05, 2025

Alfredo R Pérez
United States Bankruptcy Judge

# Schedule 1

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of March 5, 2025, is by and between Party City Corporation, a Delaware corporation ("Assignor") and Cavender Stores, L.P., a Delaware limited partnership ("Assignee").

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in the jointly administered chapter 11 cases captioned *In re Party City Holdco Inc.*, Case No. 24-90621 (ARP) (the "Chapter 11 Cases"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms and conditions of the Bidding Procedures approved by the Bankruptcy Court in the Chapter 11 Cases (the "Bankruptcy Court Approval").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

## AGREEMENT

1. <u>Assignment and Assumption</u>. Effective upon the payment of the Purchase Price as set forth below:

    (a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease(s).

    (b) Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease(s).

2. <u>Payment of Purchase Price</u>. Assignee shall, on or before the Closing, ,deliver the purchase price for the Leases in the total amount of $187,959.00 (the "Purchase Price"), in immediately available funds wired to the account specified by Assignor. Together with the Purchase Price, Assignee shall also be responsible to pay to Assignor any and all rent and other charges paid by Assignor under the Lease for the months in which the Sale Closing Deadline occurs and any subsequent months. If the assumption and assignment of the Lease(s) do(es) not occur by March 31, 2025, Assignee will additionally reimburse Assignor for all amounts that came due, were required to be paid, and were in fact paid in connection with the Lease(s) on and after March 31, 2025. The Parties acknowledge that if the assignment and assumption of the Lease(s) (the "Closing") does not occur before March 31, 2025, the Lease(s) may thereafter be rejected in the Bankruptcy Court proceeding referenced above.

3. <u>Assumption of Liabilities</u>. In addition to assuming all remaining obligations that exist with respect to the Lease(s), including, but not limited to, accrued but

unbilled adjustments for CAM, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease(s).

4.      <u>No Further Liability of Assignor</u>.  From and after Closing, Assignor shall have no further obligations and duties with respect to the Lease(s).

5.      <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6.      <u>"As Is Where Is" Transaction</u>.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s).  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s).  Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations.  Accordingly, Assignee will accept the Lease(s) "AS IS" and "WHERE IS."

7.      <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8.      <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of Texas with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length,

and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written

**ASSIGNOR:**

**Party City Corporation**


By: _____

Name:

Title:




**ASSIGNEE:**

**Cavender Stores, L.P.**


By: _____

Name:       Todd Noden

Title:      Chief Operating Officer

# Schedule A

| 691 | Murfreesboro | david@integrisventures.com | 1979 Old Fort Prkwy | Murfreesboro | TN | $20,250 | 3/31/2025 | $110,000 | Cavender's, Inc. | $100,000 | LANDLORD: Integris Ventures, TC, LLC | Integris Ventures-TC, LLC |
| 1058 | Fayetteville | msiklos@slateam.com | 2065 Skibo Rd Unit 4 | Fayetteville | NC | $27,959 | 3/31/2025 | $77,959 | Cavender's, Inc. | | | SUSO 5 Fayetteville LP |
| | | | | | | | | $187,959 | | | | |

IMANAGE\018810\0010\17077205v1-3/4/25