# Exhibit B

# FOURTH AMENDMENT TO LEASE, ESTOPPEL AND CONSENT TO ASSIGNMENT

**THIS FOURTH AMENDMENT TO LEASE, ESTOPPEL AND CONSENT TO ASSIGNMENT** (this "Agreement") dated as of the 2ND day of April, 2025 is by and between **INTEGRIS VENTURES–TC, LLC**, a Delaware limited liability company, **NORTH WARSON ASSOCIATES–TC, LLC**, a Delaware limited liability company, **PREMIER OIL HOLDINGS-TC, LLC**, a Delaware limited liability company and **SYLVIA ALTMAN IRREVOCABLE-TC, LLC**, a Delaware limited liability company (the "Landlord"), and **CAVENDER STORES, L.P.** (the "Assignee").

**WHEREAS,** Landlord and Party City Holdco, Inc. ("Tenant") are parties to that certain Lease Agreement dated July 21, 1998, as amended (the "Lease") pursuant to which Landlord leased to Tenant certain premises that consist of approximately 12,000 square feet and are known as 1979 Old Fort Parkway, Murfreesboro, TN 37129 (the "Premises"), as more particularly described in the Lease; and

**WHEREAS,** Tenant, along with its affiliated debtors and debtors in possession, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § § 101 *et seq.* (as amended the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), thereby commencing the jointly administered bankruptcy cases numbered 24-90621 (ARP) (the "Bankruptcy Cases"); and

**WHEREAS,** on _____, the Bankruptcy Court entered its Order Authorizing Debtors to Enter Into Sale Transaction and to Assume and Assign Unexpired Leases of Non-Residential Real Property to Cavender's, Inc. (the "CAV Order"), pursuant to which Tenant now seeks to assume and assign certain of Tenant's contracts and leases to Assignee; and

**WHEREAS,** among Tenant's contracts and leases that Tenant seeks to assume and assign to Assignee pursuant to the CAV Order is the Lease; and

**WHEREAS,** the transactions contemplated by the CAV Order and the agreement between Tenant and Assignee, including the assumption and assignment of the Lease, are evidenced by that certain Assignment and Assumption of Lease Agreement dated as of March 5, 2025 (the "Assignment and Assumption Agreement") by and between Tenant and Assignee; and

**WHEREAS,** the transactions contemplated by the CAV Order and the Assignment and Assumption Agreement will be of substantial benefit to Landlord;

**WHEREAS,** as a condition to the Assignee assuming the Lease, Assignee requires Landlord to (i) agree to certain amendments to the Lease, (ii) consent to the assignment of Tenant's interest in the Lease to Assignor and (iii) enter into certain other agreements with Assignee as set forth in this Agreement; and;

**WHEREAS,** all capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms as set forth in the Lease,

**NOW, THEREFORE,** in consideration of the recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Assignee hereby agree as follows:

1. **Rent.** Subject to the closing of the transactions contemplated by the Assignment and Assumption Agreement (the "Closing"), the Lease shall immediately be amended such that,

1

commencing as of forty five (45) days following the Possession Date (as hereinafter defined) and continuing through 1/31/2027, Annual Rent shall be $189,000.00 annually (or $15,750.00 per month). In addition to Annual Rent, commencing as of the Possession Date, Assignee shall pay all other amounts that are due and owing under the Lease.

2. **Common Area Expenses, Real Estate Taxes and Insurance**. Subject to the completion of the Closing the Lease shall immediately be amended such that, commencing as of the Possession Date (as hereinafter defined) and continuing through December 31, 2025, until further revised pursuant to the subsequent calendar years annual budget, the common area expenses shall be $30,304.92 annually (or $2,525.41per month), real estate taxes shall be $22,657.32 annually (or $1,888.11 per month) and insurance shall be $1,035.00 annually (or $86.25 per month).

3. **Possession Date.** Notwithstanding anything to the contrary in this Agreement or otherwise, Landlord and Assignee acknowledge and agree that the Assignee's obligations under the Lease shall commence as of the Possession Date. For purposes of this Agreement, the term "Possession Date" shall be defined as follows:

    (a) To the extent that a Closing occurs, the Possession Date shall be defined as the date which is sixty (60) days after the Closing; and

4. **Use.** Subject to the completion of the Closing, the Lease shall immediately be amended such that Assignee's permitted use of the Premises shall thereafter mean the following:

"Sale of western wear and boots."

5. **Exclusive.** Subject to the completion of the Closing, the Lease shall immediately be amended such that Assignee's exclusive use of the Premises shall thereafter mean the following: "Tenant shall have the exclusive right to carry and sell western-related: footwear, apparel and accessories and work-related: footwear (to include steel and composition-toed and non-steel and non-composition-toed work boots and shoes), apparel (including flame retardant and non-flame-retardant apparel typically worn in industrial, manufacturing and trades environments, oil/gas fields, farms and ranches, and in other similar conditions (collectively Exclusive Use Merchandise) in the Shopping Center. The incidental sale of such Exclusive Use Merchandise (10% or less of sales) shall not be prohibited in the Shopping Center. Landlord shall not lease space in the Shopping Center to any of Tenant's direct competitors such as Mike's Western Wear, Casa Raul, Kelly's Western Wear, Boot Jack, Shepler's, Tecova's, Texas Boot Company, Ariat, A&A Western Store, Boot Barn, Cowtown Western Store, Lucchese, Murdoch's, Atwood's, and Bomgaar's." Notwithstanding anything contained in this agreement or the Lease to the contrary, no existing Tenant in the Property that are open and operating as of the Posession Date shall be considered a violation of this Exclusivity provision.

6. **Estoppel.**

A. Landlord has not entered into any amendment, modification or supplement to the Lease, other than as follows: Extension and Modification Agreement dated 12/6/2013, Second Amendment dated March 5th, 2019 and Third Amendment dated June 12th, 2020 and the Lease contains the entire agreement of the Landlord and Tenant with respect to the Premises, and is in full force and effect.

2

B. To the best of Landlord's current knowledge, Tenant is not in default in the performance of any covenant, agreement or condition contained in the Lease except as follows: Tenant has not paid Impositions that became due under the Lease post-petition, and the balance due and owing to Landlord for such amounts through February 28, 2025 is $20,248.77 Tenant is obligated to pay such amounts to Landlord pursuant to the terms of the CAV Order.

C. Tenant has paid rent through January 31, 2025.

D. The initial term of the Lease expires on January 31, 2027, unless extended or sooner terminated in accordance with the terms of the Lease. Tenant has options to extend the Lease Term by one (1) successive five (5) year term in accordance the Lease.

E. To Landlord's actual knowledge, with no duty of inquiry, Tenant has not assigned, sublet, transferred, hypothecated or otherwise disposed of Tenant's interest in the Lease. Landlord acknowledges and agrees that, upon assumption of the Lease by Assignee pursuant to order of the Bankruptcy Court, Assignee shall not be liable to Landlord for any breaches, defaults or Lease Events of Default under the Lease that arose prior to or existed as of Assignee's assumption of the Lease.

F. Landlord is the current owner and landlord of the Premises.

G. Landlord hereby confirms that no other consents are required or necessary for purposes of binding the Landlord to the terms of this Agreement (or in order for this Agreement to become effective).

7. **Consent to Assignment of Lease.** Landlord hereby (i) consents to the assignment to Assignee of Tenant's interest in the Lease and (ii) agrees that such assignment shall not, in any event, result in a default or a Lease Event of Default under the Lease or otherwise be the basis for a claim that Tenant or Assignee has breached the terms of the Lease.

8. **Rejection of Lease.** Landlord and Assignee acknowledge and agree that it is possible that the Lease will be rejected in the Bankruptcy Case. To the extent that the Lease is rejected, it is understood and agreed that the Lease effectively will have been terminated. Notwithstanding the foregoing, in the event that the Lease is rejected, (a) Landlord and Assignee hereby agree to bind themselves to the terms and conditions of the Lease (as modified by the provisions of this Agreement) and agree to execute such additional documents which Landlord and Assignee may deem reasonably necessary in order to bind the Landlord and Assignee to the terms and conditions of the Lease (as modified by the provisions of this Agreement). To the extent that the provisions of this Section 9 become applicable, Landlord acknowledges and agrees that Assignee shall not be liable to Landlord for any arrearages, past-due amounts, breaches, defaults or Events of Default under the Lease that arose prior to or existed as of the Possession Date.

9. **Governing Law.** This Agreement shall be governed by the laws of the state in which premises described in the Lease are located.

10. **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which, collectively and separately, shall constitute one and the same instrument.

11.     **OFAC Certification**. Assignee certifies that it is not acting, directly or indirectly, for or on the behalf of any person, group, entity, or nation named by any Executive Order or the United States Treasury Department as a terrorist, "Specifically Designated National and Blocked Person" or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the Office of Foreign Assets Control; and Assignee further certifies it is not engaged in the transaction, directly or indirectly, on behalf of, or instigation or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation. Assignee hereby agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities, and expenses (including attorneys 'fees and costs) arising from or related to any breach of the foregoing certification.

12.     **Notices.** All notices that may be given under the terms of the Lease to Landlord and/or Assignee pursuant to the Lease shall be in writing and given in the manner permitted under the Lease to the address of Landlord and Assignee listed below or any subsequent address that either party may notify the other party of in the manner permitted under the Lease:

To Landlord:

        Integris Ventures-TC, LLC
        Attn: Integris Ventures – Management, LLC
        655 Craig Road, Suite 100
        Creve Coeur, MO 63141

To Assignee:

        Cavender's, Inc.
        2019 WSW Loop
        Tyler, TX 75703
        Attn: VP of Real Estate

    With a copy to:

        Cavender's, Inc.
        2019 WSW Loop
        Tyler, TX 75703
        Attn: Real Estate Department

13.     **Effect of Agreement**. Except as expressly modified herein, the Lease is unmodified and shall continue in full force and effect. In the event of any conflict between the terms of the Lease and the terms of this Agreement, this Agreement shall control.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

pc#691

IN WITNESS WHEREOF, the parties have executed this Agreement as the date first set forth above.

**LANDLORD:**

**INTEGRIS VENTURES – TC, LLC as Manager**

By: _[signature]_
Name: David Tomlinson

Signature Date: 4/2/25

**ASSIGNEE:**

**CAVENDER STORES, LP**

By: _[signature]_
Its: Chief Operating Officer

Signature Date: 4/23/2025

5