IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>**Objection Deadline: 5/12/25 at 4 p.m. (ET)**<br><br>Re: D.I. 760 & 930 |

**AMENDED OBJECTION TO PROPOSED ASSUMPTION
AND ASSIGNMENT OF BV WOLF CREEK, LLC LEASE TO
BURLINGTON COAT FACTORY WAREHOUSE CORPORATION,
AND OBJECTION TO PROPOSED FORM OF ASSUMPTION ORDER**

BV Wolf Creek, LLC ("BV" or "Landlord"), by its attorneys, submits this amended objection to the above-captioned debtors' (collectively, the "Debtors") (a) *First Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* (the "Original Notice") [D.I. 760], and (b) *Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* (the "Amended Notice" and, together with the Original Notice, the "Notice") [D.I. 930].

In particular, BV objects to the proposed assignment of the BV Lease (as defined herein) to Burlington Coat Factory Warehouse Corporation ("Burlington" or "Assignee") and contends that such assignment may not be approved for the reasons set forth herein. BV further objects to

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

the proposed form of Assumption Order attached to or submitted with the Amended Notice. In support hereof, BV states as follows:

**Background**

1. BV is the landlord and Debtor Jo-Ann Stores, LLC (the "Tenant Debtor") is the tenant under a written lease agreement, as amended (the "BV Lease") for the lease of 23,865 square feet of retail space (the "Space") located at the shopping center known as the Wolf Creek Plaza Shopping Center in Bellevue, Nebraska (the "Bellevue Shopping Center").

2. The Bellevue Shopping Center is a "shopping center" within the meaning of 11 U.S.C. § 365(b)(3).

3. The BV Lease, in paragraph 23(a), contains a bargained for provision regarding the conditions under which the BV Lease may be assigned by the Tenant Debtor. Generally speaking, the Tenant Debtor generally may assign the BV Lease with BV's consent, which consent will not be unreasonably withheld, *unless* the proposed assignee's use of the Space would violate any prohibited uses or any exclusive use rights granted to other tenants in the Bellevue Shopping Center in effect on the day the assignment occurs. Paragraph 23(a) provides, in relevant part, as follows:

> **SECTION 23. ASSIGNMENT AND SUBLETTING.**
>
> Tenant has the right to assign this Lease or sublet all or any part of the Premises for any lawful retail use with Landlord's prior written consent, not to be unreasonably withheld, conditioned, or delayed, and which consent shall not be denied if (i) such assignee's or subtenant's use is a retail use and does not violate any prohibited uses or any exclusive use rights granted to other tenants in the Shopping Center that exist on the date of the assignment or sublease (subject, however, to Landlord's advising Tenant of such rights and restrictions), (ii) Tenant remains responsible for the payment of Rent, unless expressly released in writing by Landlord or pursuant to subparagraph (b) below; and (iii) in the case of an assignment, the assignee assumes in writing all the terms and provisions of this Lease to be performed or observed by Tenant.

4.      Pursuant to the Notice, the Debtors propose to assume the BV Lease, and then assign all of their rights thereunder to Burlington so that Burlington can use the space for retail operations.

5.      BV is the landlord and Ross Dress for Less, Inc. ("Ross") is the tenant for other retail space in the Bellevue Shopping Center.

6.      The lease between BV and Ross, in paragraph 15.3, contains a bargained for restriction which precludes BV from leasing space in the Bellevue Shopping Center to certain persons and entities defined as "Off Price Sale" retailers, including expressly the Assignee. Specifically, paragraph 15.3(a) of the Ross Lease provides (emphasis supplied):

**15.3. PROTECTION.**

(a) <u>Protection.</u> Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price Sale (as hereinafter defined) of merchandise, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area), or (c) use in excess of five hundred (500) square feet of Leasable Floor Area of its premises for the sale of (i) silk flowers, picture frames, wedding and other party goods, or (ii) health and beauty aids and related sundries, or (d) use in excess of one thousand five hundred (1,500) square feet of Leasable Floor Area of its premises primarily for the rental or sale of prerecorded audio or video merchandise or electronic games software and technological evolutions thereof, or (e) use in excess of two thousand five hundred (2,500) square feet of Leasable Floor Area of its premises for the sale of any of the other types of merchandise specified in Section 15.1 above. For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's everyday price. (As of the Effective Date, ***examples of Off Price Sale retailers include such retailers as*** T.J. Maxx, Marshalls, Fallas Paredes, Nordstrom Rack, Factory 2U, ***Burlington Coat***, Steinmart, Filene's Basement, Gordmans and Beall's Outlet.) If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the

3

ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close of each calendar month. The parties agree that the monetary damages to be suffered by Tenant as a result of a breach by Landlord (or Landlord's tenant(s)) of the provisions of this Section 15.3 are difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best estimate by the parties of the amount of such damage. If Tenant elects to terminate this Lease as provided in this Section 15.3, this Lease shall terminate on a date indicated by Tenant in its notice of termination, which in no event shall be sooner than thirty (30) nor later than ninety (90) days after the date of Tenant's notice of termination. In the event of termination, Landlord shall be obligated to pay Tenant for the Unamortized Cost of Tenant's leasehold improvements in the Store, which costs Tenant agrees to specify in its notice of termination. If Tenant elects to pay Substitute Rent, (a) such payment of Substitute Rent shall be retroactive to the date any such Protection Violation commenced, and Tenant shall deduct any overpayments of Rent from Rent coming due under this Lease, and (b) at such time as all such Protection Violations cease (the "Cure Date"), Rent shall resume at the rate which would have pertained at the Cure Date had the Protection Violation not occurred. The provisions of this Section 15.3 shall apply to any subsequent Protection Violation.

Notwithstanding the foregoing, if a Protection Violation is not due to Landlord's act or omission (but is due to the act of another tenant or occupant of the Shopping Center) and provided that Landlord diligently pursues all rights and remedies available to Landlord to cause such a Protection Violation to cease (including the commencement of litigation), then in such event, Tenant shall defer exercising its right to pay Substitute Rent for a period not to exceed ninety (90) days and shall defer exercising its right to terminate this Lease for a period of one hundred eighty (180) days after the date the Protection Violation commences. If Landlord fails to cure the Protection Violation prior to the expiration of the applicable ninety (90) day or one hundred eighty (180) day period, then Tenant shall be permitted to immediately exercise its remedies hereunder.

(Emphasis added).

7.    On or about May 5, 2025, Ross delivered a letter to BV (the "Protection Notice"), a true and correct copy of which is attached hereto as **Exhibit "A"**. In the Protection Notice, Ross informed BV, among other things, that:

> [A]n assignment of the JoAnn Stores lease in the Shopping Center (the 'JoAnne Lease') to any occupant to use, its premises for the Off Price Sale of merchandise, or use more than ten thousand (10,000) square feet or more of its premises for the sale of apparel may result in a Protection Violation as described in Section of the Lease. Examples of Off Price Sale retailers include, without limitation, T.J. Maxx, Nordstrom Rack, and Burlington.

**Objection**

***Debtors Cannot Provide Adequate Assurance of Future Performance***

8.  The Debtors must demonstrate adequate assurance of future performance and provide the same timely. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). Debtors bear the burden of proof under 11 U.S.C. §365. *See In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (holding a specific factual showing through competent evidence to determine adequate assurance of future performance); *Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. 5 M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

9.  Section 365(b)(3) heightens the adequate assurance requirements for shopping center leases. *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). To assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). *See In re Joshua Slocum*, 922 F.2d at 1086; *see also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance includes:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);
- any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);
- assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

10. 11 U.S.C. § 365(b)(3)(C) provides that "adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, ***and will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center***." (Emphasis added).

11. Through the BAPCPA "[s]ection 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

12. The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions. Senator Hatch's remarks in the Congressional Record note:

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

13. Based on the restrictions and limitations in paragraph 15.3 of the Ross Lease, the Debtors cannot provide BV with adequate assurance as a matter of law because the assignment of the BV Lease to the Assignee would be a breach of BV's separate lease agreement with Ross. As such, the Court must decline to approve the assumption and assignment of the BV Lease to the Assignee. *See, e.g., In re Three A's Holdings, LLC*, 364 B.R. 550, 561 (Bankr. D. Del. 2007)

("Because the BDOA has standing to press its objection, and the Court having ruled that the proposed assumption and assignment would violate the use restrictions contained in the CC & Rs, the request of the Debtors and the Designation Rights Purchaser for authority to assume and assign the Lease to Walgreens will be denied.").

14. Indeed, the Tenant Debtor expressly agreed in paragraph 23(a) of the BV Lease that it could *not* assign the BV Lease to any assignee whose use of the Space would violate any prohibited uses or any exclusive use rights granted to other tenants in the Bellevue Shopping Center in effect on the day the assignment occurs. The Ross Lease is in effect, and paragraph 15.3 of the Ross Lease contains precisely the type of restriction identified in paragraph 23(a) of the BV Lease. As such, the BV Lease is not assignable to Burlington or to anyone else who would use the Space for the Off Price Sale of merchandise. Furthermore, Ross has already provided notice to BV that any assignment of the BV Lease to Burlington would, in Ross's view, constitute a violation of the Ross Lease.

15. While the BV Lease cannot be assigned to Burlington for the reasons set forth above, it is possible that the Debtors could find a replacement assignee that would not violate the terms of the BV Lease, the Ross Lease or BV's leases with other tenants in the Bellevue Shopping Center.

### *The Assumption Must Obligate the Debtors/Assignee to Pay Accrued But Not Yet Due Amounts*

16. The BV Lease contains provisions pursuant to which the tenant is responsible for payment of CAM and property tax reconciliations for prior lease periods. Here, it is possible (and indeed very likely) that there will be additional CAM and property tax obligations for periods that relate to the pre assumption period (including for periods that relate to the pre-petition period).

17. Any Order authorizing assumption of the BV Lease should require, in addition to payment of all amounts currently due under the lease, a requirement that the Assignee be responsible for any reconciled CAM and property tax charges, even if those reconciled charges relate to periods prior to the date of assumption.

18. There also could be indemnity obligations that have arisen but are not yet known to Landlord. Any order approving the assumption should make clear that the Tenant Debtor/Assignee is required to comply with all contractual obligations to indemnify and hold the Landlord harmless with respect to events that may have occurred before or after the Petition Date, but that are not known to Landlord as of the date of the assumption including, without limitation, claims for personal injury and property damage that occurred at the Space and presently unknown deferred maintenance, damage and/or destruction to the Space.

### *The Cure Amount Must Include Attorney's Fees*

19. The Landlord further objects to the proposed cure amount because it does not include attorneys' fees, which the Landlord is entitled to under the Lease. [*See* Lease, Section 55 (*"If Landlord or Tenant is required to enforce this Lease, then the non-prevailing party must pay to the prevailing party the prevailing party's arbitration costs (if any), court costs and reasonable attorney's fees. This provision applies to court costs and attorneys' fees incurred in any trial and appellate courts."*)] Therefore, attorneys' fees must be included as part of the Landlord's cure amount as pecuniary losses suffered as a result of the Debtors' defaults, under Section 365(b)(1)(B). See *In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001). Attorneys' fees have been accruing and will continue to increase through any assumption and assignment of the Lease. These amounts must be paid as part of any cure.

### *The Cure Amount Must Include All Amounts Due as of the Effective Date of Assumption*

20. Further, the Proposed Cure Amount does not include amounts that became or will become due under the Lease after the Petition Date but before the effective date of assumption. Amounts that first become due under the Lease after the Petition Date but prior to the rejection or assumption of the Lease must be promptly paid under Section 365(d)(3) of the Code. The Proposed Cure Amount should not be construed as limiting any of the Tenant Debtor's obligations under section 365(d)(3) of the Code.

21. In the event these 365(d)(3) obligations are not paid, the Tenant Debtor/Assignee should be required to pay them, as well as all pre-petition amounts due, on the date the Lease is assumed.

22. Additional amounts continue to accrue, and Landlord reserves the right to supplement this objection.

### *Objection to the Proposed Form of Assumption Order*

23. BV also objects to the proposed form of Assumption Order (the "Proposed Order") that accompanied the Amended Notice.

24. The Proposed Order is objectionable for at least the following reasons. First, paragraph B of the Proposed Order provides that the assumption and assignment of the Leases "is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the Sale Order." As assignment of the BV Lease to Burlington would give rise to a post-petition breach of the BV Lease which would give rise to a substantial administrative claim by BV against the Debtors' estate, the assignment of the BV Lease is not in the best interests of the Debtors, their estates or their creditors.

25. Second, paragraph C of the Proposed Order provides "Burlington has provided adequate assurance of future performance under the Leases." As an initial matter, BV has received no adequate assurance information from Burlington. Moreover, as noted above, because assignment of the BV Lease to Burlington would breach the BV Lease with the Tenant Debtor and also violate a key provision of the Ross Lease, Burlington cannot provide adequate assurances. Finally, Burlington has not agreed to defend and indemnify BV from any claims asserted by Ross if the BV Lease is assigned to Burlington, such as the claims Ross has outlined in the Protection Notice.

26. Third, paragraph D of the Proposed Order provides that the "assumption and assignment of the Leases to Burlington is in compliance with section 365(b)(3) of the Bankruptcy Code." As it relates to the BV Lease, however, the assignment of the BV Lease to Burlington would violate section 363(b)(3) of the Bankruptcy Code.

27. Fourth, paragraph 9(a) of the Proposed Order provides that any provision of the Leases which prohibit Burlington's intended use of the premises are unenforceable. As it relates to the BV Lease, this provision would effectively render paragraph 23 of the Lease unenforceable, even though that provision was a bargained for term. The BV Lease can only be assigned to Burlington if the terms of the BV Lease allow for such assignment and, as set forth above, the terms of the BV Lease do not allow for such assignment because, as of the date of the assignment, the Ross Lease prohibits the assignment because Burlington is an Off Price Sale retainer.

28. Fifth, while the Proposed Order does require the payment of Cure Costs "in the amounts set forth in **Exhibit A** attached hereto," Exhibit A is currently blank. BV reserves the right to object to the contemplated amount of Cure Costs concerning the BV Lease once the information to be included on Exhibit A is provided.

29. Sixth, the Proposed Order also contemplates approval of a form "Assumption & Assignment Agreement" attached as Exhibit "B" to the Proposed Order. To date, BV has not seen the form of proposed Assumption & Assignment Agreement and, therefore, reserves the right to object to the form of that document once it has been provided.

### Joinder

30. The Landlord hereby joins in the objection of any other similarly situated party in interest to the extent that such objection is not inconsistent herewith.

### Reservation of Rights

31. Nothing in this Objection is intended to be, or should be construed as, a waiver by BV of any of its rights under the BV Lease, the Bankruptcy Code, or applicable law. BV expressly reserves all such rights, including, without limitation, the right to: (i) supplement and/or amend this Objection and to assert additional objections to the proposed assumption of the BV Lease on any and all grounds; (ii) amend the proposed cure amount cure amount; (iii) assert additional non-monetary defaults under the BV Lease; (iv) further object to any proposed assumption and/or assignment of the BV Lease, including any proffered adequate assurance of future performance under them; and (v) assert any further objections as it deems necessary or appropriate.

**WHEREFORE**, BV respectfully requests that this Court enter an Order sustaining this Objection and granting relief consistent with this Objection and granting such other and further relief as the Court deems just and proper. BV also objects to the Proposed Order as set forth above.

Dated: May 21, 2025
      Wilmington, Delaware

                              **ESBROOK P.C.**

                              */s/ Scott J. Leonhardt*
                              Scott J. Leonhardt (DE 4885)
                              Katherine R. Welch (DE 7347)

1000 N. West Street
Suite 1200
Wilmington, DE 19801
(Phone) 302.650.7540
E-Mail: scott.leonhardt@esbrook.com
E-Mail: katherine.welch@esbrook.com

-and-

**RAY QUINNEY & NEBEKER P.C.**

Michael Johnson
David Leigh
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
(Phone) 801-323-3363
E-Mail: MJohnson@rqn.com

*Counsel for the Landlord*