**<u>Exhibit 5</u>**

**Opt-In Form**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## OPT-IN FORM REGARDING
## RELEASES TO HOLDERS OF CLAIMS OR INTERESTS

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

**You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the Plan. Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by June 30, 2025, at 4:00 p.m., prevailing Eastern Time (the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by no later than the Opt-In Deadline by submitting this form in accordance with the directions herein.**

If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.C of the Plan, please either (i) promptly complete, sign, and date this Opt-In Form and return it via first class mail, overnight courier, or hand delivery to Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online E-Ballot Portal in accordance with the directions provided below. Parties that submit their Opt-In Form using the E-Ballot Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**Item 1.** **Important information regarding releases under the Plan.**[3]

Article VIII.B of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity could have asserted on behalf of the Debtors or the Wind-Down Debtors (but excluding any and all direct claims any such Holder of a Claim or Interest may have), to the extent such Claim or Cause of Action (x) has not been sold pursuant to the GA Transaction Documents and Approval Order(s) and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts (including the marketing, bidding, auction, and sale-related processes leading to the GA Transaction), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors or the Wind-Down Debtors or any GUC Trust Causes of Action that constitute Avoidance Actions), intercompany transactions between or among a Debtor, the Wind-Down Debtors, or an Affiliate of a Debtor and another Debtor, the Wind-Down Debtors, or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down**

---

[3] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

**Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions; or (2) any matters retained by the Wind-Down Debtors pursuant to the Schedule of Retained Causes of Action.**

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts (including the marketing, bidding, auction, and sale-related processes leading to the GA Transaction), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors or the Wind-Down Debtors or any GUC Trust Causes of Action that constitute Avoidance Actions), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions or (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

<u>Definitions Related to the Debtor Release and the Third-Party Release:</u>

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "***EXCLUDED PARTIES***" MEANS, COLLECTIVELY, (A) ANY PERSON OR ENTITY THAT IS OR MAY BE LIABLE TO ANY OF THE DEBTORS (OR ANY SUCCESSOR THERETO) OR THE GUC TRUST IN RESPECT OF ANY RETAINED CAUSES OF ACTION OR GUC TRUST CAUSES OF ACTION, IF ANY, AND (B) ANY HOLDER OF INTERESTS IN JOANN INC. (SOLELY IN ITS CAPACITY AS SUCH) THAT IS NOT A RELEASING PARTY.

UNDER THE PLAN, "***RELEASED PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) EACH OF THE WIND DOWN DEBTORS; (C) THE PLAN ADMINISTRATOR; (D) THE PREPETITION ABL LENDERS; (E) THE PREPETITION FILO LENDERS; (F) THE PREPETITION TERM LOAN LENDERS; (G) THE PREPETITION ABL AGENT; (H) THE PREPETITION FILO AGENT; (I) THE PREPETITION TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) THE COMMITTEE AND ITS MEMBERS (IN THEIR CAPACITY AS COMMITTEE MEMBERS); (L) THE GUC TRUST AND THE GUC TRUSTEE; (M) THE PURCHASER; (N) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (O); AND (O) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (O); PROVIDED HOWEVER, THAT NONE OF THE EXCLUDED PARTIES SHALL BE RELEASED PARTIES.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) EACH OF THE WIND DOWN DEBTORS; (C) THE PLAN ADMINISTRATOR; (D) THE PREPETITION ABL LENDERS; (E) THE PREPETITION FILO LENDERS; (F) THE PREPETITION TERM LOAN LENDERS; (G) THE PREPETITION ABL AGENT; (H) THE PREPETITION FILO AGENT; (I) THE PREPETITION TERM LOAN AGENT; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO VOTE TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO VOTE TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO ARE DEEMED TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (M) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO ARE DEEMED TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (N) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (O) THE COMMITTEE AND ITS MEMBERS (SOLELY IN THEIR CAPACITY AS COMMITTEE MEMBERS AND NOT AS HOLDERS OF CLAIMS); (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (Q) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON BANKRUPTCY LAW; AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (Q) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON BANKRUPTCY LAW; PROVIDED THAT EACH SUCH ENTITY THAT ELECTS NOT TO OPT INTO THE RELEASES CONTAINED IN THE PLAN, SUCH THAT IT IS NOT A RELEASING PARTY IN ITS CAPACITY AS A HOLDER OF A CLAIM OR INTEREST SHALL NEVERTHELESS BE A RELEASING PARTY IN EACH OTHER CAPACITY APPLICABLE TO SUCH ENTITY.

<u>Article VIII.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):</u>

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the GA Transaction, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan**.

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Wind-Down Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Wind-Down Debtors (but solely to the extent such action is brought against the Debtors or the Wind-Down Debtors to directly or indirectly recover upon any property of the Estates dealt with by the Plan, upon the Effective Date) the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities unless such holder exercised such setoff prior to the Petition Date or such setoff is otherwise permissible under applicable law, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in the Plan (the "<u>Released Claims</u>") or (y) that are subject to exculpation (the "<u>Exculpated Claims</u>"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed Proof of Claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud, or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin (1) a Holder of a Claim or Interest that is not a Releasing Party from taking any actions described in Article VIII.E solely with respect to any direct claim of such Holder that is not an Exculpated Claim or (2) the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.E.

**OPTIONAL OPT-IN ELECTION**.  **YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW.  YOUR DECISION TO OPT IN OR NOT OPT IN TO THE THIRD-PARTY RELEASE WILL NOT IMPACT YOUR DISTRIBUTION UNDER THE PLAN:**

> ☐    **The undersigned Holder of the Claim or Interest elects to <u>OPT IN TO the Third-Party Release</u>**

**Item 2.**    **Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)    as of the Voting Record Date, either: (i) the Entity is the Holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim or Interest;

(b)    the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status and Release Opt-In Form Regarding Releases to Holders of Unimpaired Claims or Interests Conclusively Deemed to Accept the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)    the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)    no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Forms are hereby revoked.

|  |
|---|
| Name of Holder: _____<br>(*print or type*)<br><br>Signature: _____<br><br>Name of Signatory: _____<br>(*if other than Holder*)<br><br>Title: _____<br><br>Address: _____<br>_____<br>_____<br><br>Telephone Number: _____<br><br>Email: _____<br><br>Date Completed: _____ |

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

| **If by First Class Mail, Hand Delivery, or Overnight Mail:** |
|---|
| JOANN Inc. (2025) Ballot Processing Center<br>c/o Kroll Restructuring Administration LLC<br>850 Third Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>To arrange hand delivery of your Ballot, please email the Claims and Noticing Agent at JoannBallots@ra.kroll.com (with "Joann Inc. Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery. |

**OR**

| **By electronic, online submission:** |
|---|
| The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the E-Ballot Portal. Submit your customized electronic Opt-In Form through the E-Ballot Portal by visiting https://cases.ra.kroll.com/Joann2025 and under the Case Navigation section of the website click on "Submit E-Ballot" and follow the instructions to submit your Opt-In Form.<br><br>To access and submit your Opt-In Form through the E-Ballot Portal, you must use the Unique E-Opt-In ID# assigned to your Claim or Interest.<br><br>UNIQUE E-OPT-IN ID#: _____ |

Each E-Opt-In ID# is to be used solely for electing to opt-in to the grant of the Third-Party Release under the Plan. Please complete and submit an electronic Opt-In Form for each E-Opt-In ID# you receive, as applicable.

Creditors who submit an Opt-In Form using the E-Ballot Portal should NOT also submit a paper Opt-In Form.

**The Claims and Noticing Agent's E-Ballot Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

| | CUSIP / ISIN |
|---|---|
| Please note that if you are a Holder of Class 7 - Interests in JOANN and hold a position in the equity securities identified below in 'street name' through a bank, broker or other intermediary or agent thereof, you will not be issued a Unique E-Opt-In# and may not submit your Opt-In Form via the E-Ballot Portal. Instead, to upload your completed Opt-In Form, you must click on the "Public Securities Submission Portal" link located on the left-hand navigation panel of the Debtors' restructuring website at https://cases.ra.kroll.com/Joann2025. For the avoidance of doubt, only Holders of Class 7 Interests in JOANN whose positions are held in their own names on the books and records of the Debtors or the Debtors' transfer agent will be able to submit the electronic version of their Opt-In Form via the E-Ballot Portal. | |
| Existing Equity Interests | 47768J200 / US47768J2006 |

Parties that submit their Opt-In Form using the E-Ballot Portal should **NOT** also submit a paper Opt-In Form.

**THE OPT-IN DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON JUNE 30, 2025.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT-IN ELECTION ON OR BEFORE THE OPT-IN DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE CONTACT: JOANNINFO@RA.KROLL.COM (WITH "JOANN SOLICITATION INQUIRY" IN THE SUBJECT LINE) FOR FURTHER ASSISTANCE.