**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-10068 (CTG)<br>(Jointly Administered)<br><br>**Obj. Deadline: May 27, 2025 @ 4:00 p.m.**<br>**Re: D.I. Nos. 847 and 930** |

**OBJECTION AND RESERVATION OF RIGHTS OF CAHILL ROAD PARTNERS, LLC, J2H 127 BUILDING, LLC, 2075 FORD PARKWAY, LLC, AND EBH 127 BUILDING, LLC TO THIRD NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES AND AMENDED FIRST NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES**

Cahill Road Partners, LLC, J2H Marketplace, LLC, 2075 Ford Parkway LLC, and EBB Marketplace, LLC (together, the "Landlord"), by and through undersigned counsel, hereby submit this Objection and Reservation of Rights (the "Objection") to the *Third Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* (D.I. No. 847, the "First Assumption Notice") and the *Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* (D.I. No. 930, the "Second Assumption Notice," and together with the First Assumption Notice, the "Assumption Notices") filed by JOANN INC. and related debtors (together, the "Debtors"). In short, the Landlord objects to the Assumption Notices as the cure amount provided by the Debtors is incorrect and the proposed assignee, Burlington Coat Factory Warehouse Corporation ("Burlington"), is primarily engaged in the retail sale of clothing, which violates certain use restrictions in the Lease (as defined below).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).

**BACKGROUND**

A. **THE LEASE.**

1. On April 18, 2022, the Landlord and Jo-Ann Stores, LLC ("Jo-Ann") entered into a non-residential real property lease (the "Lease") for the property located at 3839 Marketplace Drive NW, Rochester, Minnesota 55901 (the "Property").[2] A true and correct copies of relevant excerpts from the Lease are attached as **Exhibit A**.[3]

2. Pursuant to the Lease, the Landlord granted Jo-Ann the right to occupy and use the Property for a period of ten years, commencing on or around January 25, 2023, in exchange for monthly rent payments and other obligations owed to the Landlord. (Lease §§ 2(b), (e), (g), 4(a), 5.)

3. The Property is located at a shopping center known as Rochester Marketplace with several other commercial tenants. For example, there is a Clothes Mentor, Famous Footwear, Target, PetSmart, and Lane Bryant, among others. Rochester Marketplace was purposefully developed to be a shopping center.

4. The various tenants: (a) have a single landlord (besides a Target store); (b) are engaged in the commercial retail distribution of goods; (c) share a common parking area; (d) have similar operating hours; (e) have contractual interdependence as evidenced by certain use provisions in their leases; (f) are placed contiguously; and (g) share maintenance services and costs. Like other tenants at Rochester Marketplace, Jo-Ann is a party to an Operation and Easement Agreement, which governs things like the maintenance services and costs.

---

[2] The lease was assigned to the Landlord from IRC Rochester Marketplace, L.L.C. on October 28, 2022.

[3] Because the Lease is voluminous (over 100 pages), the Landlord did not attach a full copy. However, a full copy is available upon request to undersigned counsel.

5.  Because of the other commercial tenants at the shopping center, Jo-Ann agreed to be bound by several provisions in the Lease restricting the use of the Property, including, but not limited to:

> "The [Property] may be used **for the Permitted Use and no other use**, provided notwithstanding the foregoing or any other provision in this Lease to the contrary, **the [Property] shall not be used in violation of any of the exclusive, restricted and/or prohibited uses as are set forth on Exhibit F or Exhibit F-1 attached hereto** or any of the uses set forth in Section 26(a)(9) of this Lease. Landlord represents that the use restrictions on Exhibit F accurately reflect exclusives [*sic*], uses and encumbrances that presently encumber the [Property] as terms of existing leases of Shopping Center premises (the uses covered by such restrictions, the prohibited uses on Exhibit F-1 and the restricted uses in Section 26(a)(9) are collectively referred to as the 'Restricted Uses' and individually as 'Restricted Use')." (*Id.* § 11) (emphasis added).

6.  In other words, Jo-Ann agreed to use the Property only for the "Permitted Use," which is defined in Section 2(p) of the Lease as:

> the retail sale of fabrics of all kinds; goods sold by the yard; patterns; knitting supplies, needlepoint, macrame; art materials and supplies; finished crafts, craft materials and supplies; educational aids, materials and supplies; yams; all types of notions; floral products, artificial flowers and accessories; scrapbooks and scrapbooking supplies and materials; framed artwork; picture frames, framing (both readymade and custom made) and framing materials and supplies; fabric care items; foam products; ceramics; wearable art and wearable art supplies; miniatures, dolls, hobby items; sewing machines, sewing machine furniture; irons, ironing boards; seasonal merchandise; custom services and custom products using arts and craft and sewing components including, but not limited to, quilting~ bow-making, window treatments, floral design, fashion sewing, instructional classes, materials and services; and the incidental sale of (defined as no more than ten percent (10%) of any individual following item) baskets, wicker items; housewares; linen, curtains, towels, pillows; drapery and upholstery materials; draperies, drapery hardware; blinds, shades, shutters and window treatments; do-it-yourself products and accessories; bridal apparel and accessories, wedding supplies; gift items, cards, party supplies; paper goods, stationery; candles, candlesticks, brass and pottery; indoor and outdoor house decorating products and accessories; furniture; prepackaged and unpackaged food and food products, coffee, tea, and assorted beverages; instructional books and tapes; children's books; toys; vacuum cleaners, lamps, small household appliances; products, accessories related to all of the foregoing, and other items and services customarily offered for sale by a fabric, craft or general merchandise store, and such other related merchandise and services typically offered in the stores operated by [Jo-Ann] under the name Jo-Ann, Jo-Ann

Fabrics and Crafts, JOANN or such other name under which [Jo-Ann] may operate in the state of Minnesota. (*Id.* § 2(p).)

7. Exhibit F to the Lease expressly acknowledges that Clothes Mentor has the exclusive right to resell "gently used women's ready to wear clothing, apparel, shoes and accessors." (*Id.* Ex. F.) Lane Bryant has the exclusive right to "sell[] large size (14 and up) women's clothing and/or apparel." (*Id.*) Likewise, because of the existence of Famous Footwear at the shopping center, any other tenant cannot "devote[] more than twenty five percent (25%) of its gross leasable area to the sale of shoes or other footwear." (*Id.*)

8. Exhibit F-1 further lists "Prohibited Uses" of the Property, including "[a]ny uses which conflict with the uses of existing tenants."[4] (*Id.* Ex. F-1.)

9. Therefore, based on the express language of the Lease, Jo-Ann agreed to use the Property only for the retail sale of fabric and other related goods. It does not have the ability to sell clothing, as that is a prohibited use which conflicts with the uses of existing tenants.

10. In addition to the use restrictions, Jo-Ann agreed to pay its "Proportionate Share" of real estate taxes on the Property to the Landlord (Lease § 8(a)). The tax payment is due to the Landlord 30 days after the Landlord provides evidence to Jo-Ann that it has paid such taxes (*id.*), which occurs twice a year under Minnesota law.

11. The Landlord provided evidence to Jo-Ann on April 1, 2025 that the Landlord made such a tax payment and $48,095.62 was the "Proportionate Share" due to the Landlord from Jo-Ann. True and correct copies of those communications are attached as **Exhibit B**. Payment was due to the Landlord on May 1, 2025, but Jo-Ann failed to pay.

---

[4] Target is not bound by the use restrictions as it is not located within the "Restricted Property" as defined in the Lease. (Lease § 14(a).) Target owns its store in Rochester Marketplace and the Landlord owns the properties around Target, including the Property.

4

12.     Earlier in the year, Jo-Ann had also failed to pay rent to the Landlord for the full month of January. Instead, Jo-Ann had only remitted a partial payment to the Landlord. A true and correct copy of the January deposit statement is attached as **Exhibit C**.

13.     Thus, to date and pursuant to the Lease, Jo-Ann owes the Landlord a total of $63,024.51, which is compromised of the following:

| January Rent – 1/15/25-1/31/25 | $14,928.89 |
|---|---|
| Proportionate Share of Real Estate Taxes for First Half of January 2025 | $48,095.62 |
| **TOTAL:** | **$63,024.51** |

**B. ASSUMPTION NOTICES.**

14.     The Debtors filed the First Assumption Notice on May 12, 2025, identifying the Lease as an agreement which the Debtors seek to potentially assume and assign to Burlington. The First Assumption Notice identifies the cure amount as $33,056.83, lists the proposed assumption date as June 1, 2025, and includes one form of proposed order.

15.     The Debtors filed the Second Assumption Notice on May 16, 2025. The Second Assumption Notice amends a prior notice that the Landlord was not originally listed on. Similar to the First Assumption Notice, the Second Assumption Notice identifies the cure amount as $33,056.83 and lists the proposed assumption date as June 1, 2025. However, unlike the First Assumption Notice, the Second Assumption Notice has a different form of proposed order.

16.     The current form of proposed order has a finding that "[t]he assumption and assignment of the Lease[] to Burlington is in compliance with section 365(b)(3) of the Bankruptcy Code." (Second Assumption Notice 31, ¶ D.) It also lists several "Unenforceable Provisions" including "a provision prohibiting Burlington's intended use of the premises." (*Id.* 35, ¶ 9.) Moreover, it provides that the "Lease[] shall be assumed, assigned and transferred free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever . . ." (*Id.* 31, ¶ 2.)

**OBJECTION**

17. The Landlord objects to the Assumption Notice for at least two reasons. First, the Assumption Notice identifies the incorrect cure amount owed by Jo-Ann to the Landlord. Second, Jo-Ann cannot provide adequate assurance of future performance under the Lease as the Assumption Notice provides for an assignment to Burlington in violation of Section 365(b)(3) of the Bankruptcy Code.

18. As a matter of law, Jo-Ann cannot assume and assign the Lease unless and until Jo-Ann cures any and all existing defaults under the Lease, including paying the amounts duly owed to the Landlord.

19. Specifically, Section 365(b)(1) of the Bankruptcy Code states:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

20. As outlined above, Jo-Ann owes the Landlord a total of $63,024.51. If Jo-Ann intends to assume and assign the Lease, it must first pay $63,024.51 to the Landlord plus any additional amounts due to the Landlord under the Lease through the effective date of assumption and assignment.

21. Similarly, Jo-Ann cannot "provide[] adequate assurance of future performance under [the Lease]." *Id.* § 365(b)(1)(C). The Property constitutes "real property in a shopping center" and as a result, any assumption or assignment of the Lease is subject to all existing provisions of the Lease, including the use restrictions. *Id.* § 365(b)(3); *see also In re Sun TV & Appliances, Inc.*, 234 B.R. 356, 371 (Bankr. D. Del. 1999) (enforcing use restrictions); *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990) (same).

22. Section 365(b)(3) of the Bankruptcy Code states:

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

*Id.* § 365(b)(3).

23. It is common knowledge that Burlington sells clothes. It is not known for selling fabric and other related goods, like Jo-Ann. Therefore, Burlington's proposed use of the property would not be a "Permitted Use" under the Lease and would be in direct violation of the Lease, including the "Prohibited Uses" provided for in Exhibits F and F-1 of the Lease. In addition, any

7

assumption and assignment to Burlington would disrupt any "tenant mix or balance" as Rochester Marketplace already has clothing retailers.[5]

24.     Moreover, the Court does not have the authority to simply strike the use restrictions from the Lease as the Debtors request in their form of proposed order and indeed the proposed order violates the express terms of the Bankruptcy Code. *See, e.g.*, *In re Sun TV*, 234 B.R. at 370–71 ("Rather, those provisions are the heart of the interdependence of shopping center leases, as recognized by Congress in requiring an assignee to demonstrate an ability to adhere to them. They are crucial to the tenant mix, which is designed to attract the right number and mix of customers to the mall. Thus, we conclude that section 365(b)(3) does not permit them to be stricken, even where (as the Debtor asserts) they prevent the Debtor from selling the Lease."); *In re Joshua Slocum*, 922 F.2d at 1092 ("The bankruptcy court did not have authority to excise paragraph 20, a material provision governing the terms of occupancy under the lease.").

25.     Therefore, Jo-Ann cannot meet the assumption and assignment requirements as provided for in Sections 365(b)(1) and (3) of the Bankruptcy Code. *Id.* §§ 365(b)(1), (3). As a result, the Court must deny the Debtors' request for approval of an assumption and assignment of the Lease to Burlington

## RESERVATION OF RIGHTS

26.     The Landlord reserves the right to amend, supplement or modify this Objection and to assert any rights, amounts, cures, objections, and remedies under and relating to the Lease, the Bankruptcy Code, or other applicable law, including, without limitation, Burlington's ability or

---

[5] The First Assumption Notice states in a footnote that, "To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice." (First Assumption Notice 2, n.3.) It further states in a subsequent footnote that, "The Debtors shall serve the counterparty to the Contract with evidence of adequate assurance upon such counterparty's written request to Debtors' counsel." (*Id.* n.4.) However, unless Burlington fundamentally changes the nature of its business (which is not going to occur), any request for evidence of adequate assurance would be futile.

inability to provide adequate assurance of future performance, the right to raise additional arguments or objections concerning any proposed assumption and assignment of the Lease, the right to inspect and analyze the Debtors' books and records concerning the Lease, and the right to interpose amended or further objections at a later date, as may be warranted by the attendant facts and circumstances. The Landlord further reserves the right to amend or supplement this Objection to identify additional interests of the Landlord or to identify additional amounts owed to the Landlord from the Debtors that must be cured prior to any assumption and assignment of the Lease.

**WHEREFORE**, for the reasons set forth herein, the Landlord respectfully requests that the Court enter an order: (a) denying the Debtors' request for the Court's approval of an assumption and assignment of the Lease to Burlington; and (b) granting such other and further relief as the Court deems just and proper.

Dated: May 27, 2025

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420 / (302) 792-7420 Fax
skaufman@skaufmanlaw.com

and

**FREDRIKSON & BYRON, P.A.**

Clinton E. Cutler
Katherine A. Nixon
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 492-7000
ccutler@fredlaw.com
knixon@fredlaw.com

*Counsel to Cahill Road Partners, LLC, J2H Marketplace, LLC, 2075 Ford Parkway LLC, and EBH Marketplace, LLC*