## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 929** |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
### WPG LEGACY, LLC TO THE FIFTH NOTICE OF ASSUMPTION AND ASSIGNMENT
### OF CERTAIN EXECUTORY CONTRACT AND/OR UNEXPIRED LEASES

WPG Legacy, LLC, as the managing agent for Lima Center, LLC (collectively, "WPG"), by its undersigned counsel, hereby files this limited objection and reservation of rights (this "Limited Objection") to the above-captioned debtors' (the "Debtors") *Fifth Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [Docket No. 929] (the "Notice") seeking to assume and assign the Lease (defined herein) to Dollar Tree Stores, Inc. ("Dollar Tree" or "Proposed Assignee"). In support of this Limited Objection, WPG respectfully states:[2]

### BACKGROUND

1.      On January 15, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Any capitalized terms not defined herein shall have the meaning ascribed in the Notice or Order (defined herein), as applicable.

2.      Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      The Debtors and the WPG are parties to that certain unexpired lease (collectively, the "Lease")[3] of nonresidential real property (the "Leased Premises") whereby the Debtors lease retail space from WPG at the following location (the "Center"):

| WPG Landlord | Shopping Center | Location |
|---|---|---|
| Lima Center, LLC | Lima Center | Lima, OH |

4.      The Leased Premises is located in a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g.*, *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

5.      On December 24, 2025, this Court entered *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Order"), by which the Court approved the sale of lease designation rights, among other assets, to the Purchaser.

6.      As contemplated by the Order, on May 16, 2025, the Debtors filed the Notice identifying the Lease for assumption and assignment (the "Proposed Assignment") to Dollar Tree and proposing a cure amount of $0.00 (the "Proposed Cure Amount").

7.      Upon information and belief, the Proposed Assumption Order, among other things, seeks to invalidate certain material provisions of the Lease and permits Dollar Tree to "go-dark" in the Leased Premises for an indefinite period of time after the closing date to permit Dollar Tree to complete its build out of the Leased Premises (the "Go-Dark Provision").

---

[3] The Lease and related documentation are voluminous, and therefore, have not been attached to this Limited Objection.

8.      WPG and Dollar Tree are engaged in discussions regarding the assignment of the Lease, including an amendment thereto. WPG files this Limited Objection out of an abundance of caution to preserve its rights relating to the Proposed Assignment, including the Proposed Assumption Order.

**LIMITED OBJECTION**

9.      Although WPG does not generally object to the Proposed Assignment to Dollar Tree, WPG objects to any terms of the Proposed Assignment and Proposed Assumption Order that seek to impair, limit and/or modify the rights of WPG under the Lease, the Bankruptcy Code and applicable law without WPG's consent. Moreover, any assumption and assignment of the Lease must be conditioned on the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code and the Lease, including, but not limited to, paying all amounts due and owing under the Lease through the effective date of the assumption and assignment of the Lease and complying with all terms of the Lease.

A.      **The Debtors' Proposed Cure Amount is Incorrect**

10.      The Proposed Cure Amount is not accurate and will not cure all amounts due and owing to WPG under the Lease. As of the date of this Limited Objection, the aggregate cure amount owing under the Lease is not less $9,555.03[4], plus any unbilled charges that are accruing and indemnity and contribution obligations (the "WPG Cure Amount").[5] Attached hereto and

---

[4] WPG acknowledges that the amendment negotiated between WPG and Dollar Tree contemplates the waiver of certain of the WPG Cure Amount that is only effective upon this Court's approval of the assumption and assignment of the Lease to Dollar Tree.

[5] The WPG Cure Amount includes $2,000.00 in attorneys' fees. WPG is entitled to attorneys' fees as part of the WPG Cure Amount for the Lease, as the Lease specifically provide for the recovery of such fees pursuant to its terms. *See also In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption); *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998).  Thus, any attorneys' fees incurred by WPG in enforcing its rights under the Lease must be paid as part of any assumption and assignment of the Lease. *See id.*

incorporated herein as **Exhibit A** is an itemization of the amounts due and owing under the Lease.

11.    The WPG Cure Amount represents the amounts currently due and owing to WPG under the Lease. The WPG Cure Amount may increase prior to any actual date of assumption and assignment of the Lease if the Debtors do not pay all amounts that accrue after the date of this Limited Objection, and any taxes, common area maintenance and other amounts that may come due, pursuant to the terms of the Lease, and regardless of when those amounts accrued.

12.    WPG notes that the Lease imposes certain indemnification and contribution obligations that arise out of litigation or other claims that may be asserted or threatened against WPG in connection with the Lease. Each of these indemnification and contribution covenants and obligations must be assumed, paid, and otherwise cured in connection with any proposed assumption and assignment of the Lease. WPG objects to the Proposed Cure Amount to the extent that it fails to include amounts related to the indemnification and contribution covenants and obligations for which the Debtors are responsible to WPG under the Lease.

13.    In connection with any proposed assumption and assignment of the Lease, all rights of WPG under the Lease (including defenses thereto) must be preserved. As such, any order approving such assignment should specify that WPG's setoff, recoupment, and subrogation rights are preserved, and that the Debtors and the Proposed Assignee remain liable to WPG for (i) any accrued but unbilled charges under the Lease including but not limited to year-end adjustments for common area maintenance, taxes and similar charges; (ii) any regular or periodic adjustment or reconciliation charges that come due under the Lease; (iii) any percentage rent that may be due under the Lease; (iv) any non-monetary defaults; and/or (v) any insurance, indemnification and other contractual obligations under the Lease regardless of when they accrued. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide

adequate assurance of future performance under the terms of the Lease. *See* 11 U.S.C. § 365(b)(1).

14.     To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or WPG suffers other pecuniary losses with respect to the Lease, WPG further reserves the right to amend the WPG Cure Amount to: (i) reflect such additional amounts; and (ii) to account for any additional year-end adjustments (collectively, the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Lease. The Debtors or the proposed assignee of the Lease must be responsible for satisfying the Adjustment Amounts when due in accordance with the terms of the Lease regardless of when such Adjustment Amounts were incurred. To the extent that the Debtors are to remain responsible for any Adjustment Amounts, WPG requests that at the closing of any assignment of the Lease to the proposed assignee, such funds be placed into a separate and segregated escrow account outside of the Debtors' chapter 11 bankruptcy estates so that there is no question that sufficient, earmarked, unencumbered funds will be available to pay WPG when said Adjustment Amounts become due and owing to WPG in accordance with the terms of the Lease.

15.     Further, under section 365(k) of the Bankruptcy Code the Debtors remain responsible for any contractual obligations under the Lease that arose prior to the assumption and assignment of the Lease, thus, any provision in the proposed assignment order that purports to release the Debtors from any further liability under the Lease, including those contractual obligations that arose prior to the assumption and assignment of the Lease should be stricken. Further, any proposed assignment order should expressly provide that nothing impairs or prejudices WPG's right to recover from the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the Leased Premises on account of events that arose prior to the assumption and assignment of the Lease.

Further, the Debtors should be required to demonstrate proof of such insurance coverage and/or to obtain, if applicable, any necessary tail insurance in order to satisfy potential indemnification obligations based on events or occurrences prior to any proposed assignment of the Lease.

16.     Finally, in connection with any proposed assumption and assignment of the Lease, the Debtors or the Proposed Assignee must promptly pay to WPG all amounts due and owing under the Lease through the effective date of the assumption and assignment of the Lease (*i.e.*, the WPG Cure Amount), as the same may increase to reflect attorneys' fees and any other amounts that become due or are determined after the date of this Limited Objection.

### B.    The Debtors are Required to Assume and Assign the Lease in its Entirety, Including any and all Obligations Contained Therein, and all WPG's Rights Under the Lease and Applicable Law Must be Preserved

17.     WPG objects to any attempt by the Debtors or the Proposed Assignee to side-step or invalidate the bargained-for protections in the Lease through, among other things, the assumption and assignment agreement or the Proposed Assumption Order. Any assumption and assignment of the Lease requires the Debtors to assume and assign the Lease in its entirety, including any and all conditions, covenants, monetary and non-monetary obligations and terms contained in the Lease for which the Debtors are responsible. *See In re New York Skyline, Inc.,* 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (citations omitted) ("When a debtor assumes the lease…it must assume both the benefits and burdens of the contract. Neither the debtor nor the bankruptcy court may exercise material obligations owing to the non-debtor contracting party."). WPG is entitled to the full benefit of its bargain under the Lease and the full protections provided by section 365 of the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151; *In re New Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996); *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (each recognizing that section 365(d)(3) of the Bankruptcy Code imposes

an affirmative duty on a debtor to comply with all of its leasehold obligations).

18.    The Proposed Assignee must be responsible for satisfying all obligations and charges when due in accordance with the terms of the Lease regardless of when such amounts were incurred. Accordingly, the Proposed Assumption Order must preserve WPG's right to payment of these charges and expressly provide that the Proposed Assignee continues to be responsible for any and all express and implied covenants and obligations under the Lease or related documents or supplements, regardless of when such covenants or obligations arose.

19.    Moreover, WPG's rights under the Lease and applicable law must survive the Proposed Assignment. Any acquisition of the Lease free and clear of claims could presumably result in the impairment of WPG's setoff and recoupment rights under the Lease and applicable law. WPG's rights under the Lease (including defenses thereto) cannot be extinguished through the Proposed Assignment.

20.    Additionally, while the Lease does not permit the Debtors or any assignee of the Debtors, including Dollar Tree, to go dark during the term of the Lease for more than 90 days, WPG is amenable to a reasonable modification of the go-dark period in the Lease solely with respect to the Proposed Assignment and subject to reaching an agreement with the Debtors and Dollar Tree as to the form of the Proposed Assumption Order.[6]

21.    Any attempt by the Debtors or the Proposed Assignee to unilaterally invalidate or render unenforceable certain provisions of the Lease in connection with the Proposed Assignment disregards the long-standing principle that executory contracts are assumed *cum*

---

[6] WPG reserves all rights to challenge the Go-Dark Provision if the parties cannot reach an agreement as to the form of Proposed Assumption Order and argue that the Go-Dark Provision represents an impermissible attempt to unilaterally modify the terms of the Lease and curtail WPG's rights under the Lease, and should not be approved by this Court. *See City of Covington v. Covington Landing L.P.*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985) (The bankruptcy court does not have authority to rewrite the terms of a lease.).

*onere*, subject to all its benefits and burdens. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000); *In re E-Z Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D. N.C. 2003) (citations omitted) ("When an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens…Debtors cannot assume favorable positions of a lease and reject unfavorable provisions or rewrite the terms when assuming a lease."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 128 (Bankr. D. Del. 2008) (debtor could not assume or reject individual leases but had to assume or reject the master lease and all related agreements as a whole, where evidence established that master leases governed all related leases). It is well-settled that the Debtors cannot sell the Lease, or any of their real estate assets, free and clear of certain terms. *See, e.g.*, *In re Kopel*, 232 B.R. 57 (Bankr. E.D. N.Y. 1999) (lease and related agreements constituted an entire transaction; debtor could not assume one agreement without curing defaults on others). In assuming and assigning the Lease to the Proposed Assignee, the Debtors must assume and assign all the terms and conditions of the Lease and cannot unilaterally rewrite the Lease or pick and choose the terms of the Lease with which the Proposed Assignee will comply. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266 (2nd Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged….Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignment moves into the shoes of the assignor.") (citations omitted); *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 47 (Bankr. S.D. Fla. 2005) (A debtor "must assume the contract warts and all."); *In re The Texstone Venture, Ltd.,* 54 B.R. 54, 56 (Bankr. S.D. Tex. 1985) ("It is axiomatic that an assumed contract . . . is accompanied by all of its provisions and conditions.").

## CONCLUSION AND RESERVATION OF RIGHTS

22.     In sum, WPG is entitled to the full benefit of its bargain under the Lease and the full protections provided by section 365 of the Bankruptcy Code. Any assumption and assignment of the Lease must be in accordance with all provisions of the Lease and the Bankruptcy Code. *See, e.g.*, *Entertainment, Inc.*, 223 B.R. at 151.

23.     Nothing in this Limited Objection is intended to be, or should be construed as, a waiver by WPG of any of its rights under the Lease, the Bankruptcy Code, or applicable law. WPG expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Limited Objection and to assert any additional objections with respect to the WPG Cure Amount, any proposed assignment, the Proposed Sale order and any proposed assignment order; (b) amend the WPG Cure Amount; and (c) assert any further objections with respect to the relief requested that may subsequently be sought by the Debtors and/or any other party, as such requested relief relates to the Lease and/or the interests of WPG.

## JOINDER

24.     WPG joins in any objections that are filed by other landlords to the extent that they are not inconsistent with this Limited Objection.

**WHEREFORE**, WPG respectfully requests that this Court: (a) sustain this Limited Objection; (b) affirmatively require the Debtors and the Proposed Assignee to comply with each and every term, condition and obligation set forth in the Lease; and (c) grant WPG such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:  May 29, 2025
Wilmington, Delaware

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB# 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Telephone: (302) 472-7420
Facsimile: (302) 792-7420
E-mail: skaufman@skaufmanlaw.com

-and-

Ronald E. Gold (OH Bar No. 0061351)
Erin P. Severini (OH Bar No. 0091487)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH  45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981
Email: rgold@fbtlaw.com
        eseverini@fbtlaw.com

**Counsel for WPG Legacy, LLC**

0028924.0784541  4909-6220-6278v1