**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>JOANN, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>RE: Docket No. 429, 760 |

**LIMITED OBJECTION OF THE WILLIAMS FAMILY TRUST TO
PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE**

The Williams Family Trust U/A dated July 28, 2009 ("Landlord") hereby submits this limited objection (the "Limited Objection") to Debtors' Amended *First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [D.I. 760] (the "Assumption and Assignment Notice"), as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

1.      On January 15, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On January 16, 2025, this Court entered its order authorizing joint administration of these Chapter 11 cases [D.I. 103]. No trustee or examiner has been appointed and Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2.      Landlord, as successor-in-interest to 1280 South Koeller Street IV, LLC, Jacques Holdings, LLC and OLH, LLC, as landlord, and debtor Jo-Ann Stores, LLC ("Tenant"), as successor-in-interest to Jo-Ann Stores, Inc., as tenant, are parties to that certain Lease Agreement,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

dated July 26, 2012 (as subsequently amended, the "Oshkosh Lease") for retail premises commonly known as 1226 Koeller Street, Oshkosh, Wisconsin (the "Leased Premises"), located in the Koeller Plaza shopping center. It cannot be seriously disputed that Debtors' Oshkosh Lease with Landlord is for premises in a shopping center, as that term is defined in Section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1087 (3d Cir. 1990); *In re Three A's Holdings, LLC*, 364 B.R. 550, 560 (Bankr. D. Del. 2007). Indeed, the Lease itself acknowledges that the Leased Premises are in a "Shopping Center." *See, e.g.*, Oshkosh Lease at Section 2(x).

3. On February 14, 2025, this Court entered its *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [D.I. 429] (the "Procedures Order"),[2] by which the Court approved procedures by for the prospective assumption and assignment of certain unexpired real property leases.

4. Pursuant to the Procedures Order, on April 28, 2025, Debtors filed their *First Notice of Assumption and Assignment of Certain Executory Contract[s] and/or Unexpired Leases* [D.I. 760] (the "First Notice").

5. On May 16, 2025, Debtors filed their Assumption and Assignment Notice, seeking to assume and assign the Oshkosh Lease to Burlington Coat Factory Warehouse Corporation ("Burlington"), as set forth in the schedule of "Assumed Contracts" attached as Schedule 2 to the Assumption and Assignment Notice.

6. While Landlord does not generally object to the proposed assumption and assignment of the Oshkosh Lease to Burlington, Landlord does object to any assumption and assignment of the Oshkosh Lease to the extent the proposed assignment fails to meet the requirements for assumption and assignment of an unexpired shopping center lease under Section 365 of the Bankruptcy Code.

---

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption and Assignment Notice and the Procedures Order.

## II.  ARGUMENT

### A.  DEBTORS MUST CURE ALL EXISTING DEFAULTS, OR PROVIDE ADEQUATE ASSURANCE OF A PROMPT CURE, AS A CONDITION TO THE ASSUMPTION AND ASSIGNMENT OF THE LEASES

7.  Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease.  As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kansas 2001); *In re Mushroom Transp. Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987).  Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Props., Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992).  Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.* (9th Cir. BAP 1999) 234 B.R. 762, 765; *accord In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

8.  Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence.  *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

9.  Debtors' Assumption and Assignment Notice acknowledges the obligation to pay unpaid monetary obligations ("Cure"), identifying $18,075.00 as the amount asserted to be due to satisfy the "cure" requirement for the proposed assignment of the Oshkosh Lease, as delineated in Exhibit A to the Assumption and Assignment Notice.  There is no itemization or detail with respect to Debtors' asserted Cure.  However, the correct Cure amount under the Oshkosh lease is $18,759.49, as evidenced by Exhibit A attached hereto.

10. The current Cure amount asserted by Landlord does not, however, include rent and charges that may accrue after May 29, 2025. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990). Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3) and Landlord reserves its rights and remedies against Debtors with respect to any additional sums.

11. Where, as here, there are defaults under a lease sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. The Oshkosh Lease contains a provision, at Section 55, for the recovery of reasonable attorneys' fees in proceedings "to enforce this Lease."

12. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In the Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199, 1203-06 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corporation*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of §365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entm't, Inc.*, 223 B.R. at 154. Landlord's attorneys' fees, which currently are in excess of $4,000.00, are ongoing. Landlord reserves its right to supplement this Limited Objection to provide such further attorneys' fees information as may be requested by Debtors.

**B. DEBTORS HAVE FAILED TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE PROPOSED ASSIGNMENT OF THE OSHKOSH LEASE**

13. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that an unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Indus., Inc.*, 109 B.R. at 802; *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

14. Bankruptcy Code section 365(b)(1)(A) provides as follows:

> . . . If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –
>
> A. cures or provides adequate assurance that the Trustee will promptly cure such default;
>
> B. compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or lease for any pecuniary loss to such party from such default; and
>
> C. provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A).

15. "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the <u>full benefit of his bargain</u> in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. at 793 (emphasis added); *accord In re Valley View Shopping Center, L.P.*, 260 B.R. at 25.

16. Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C); *see In re Old Market Group Holdings Corp.*, 647 B.R. 104, 110 (Bankr. S.D.N.Y. 2022). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an

unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

17. While adequate assurance of future performance is not generally defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Indus., Inc.*, 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.* at 441. Adequate assurance requires a foundation that is non-speculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). The factors for the court to consider in determining whether the debtor is able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate assurance of future performance. *In re Hub of Military Circle, Inc*., 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

18. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). Bankruptcy Code section 365(b)(3), added as part of the so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

  A)  of the source of rent and other consideration due under such lease, and *in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;

  (B)  that any percentage rent due under such lease will not decline substantially;

  (C)  that *assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

  (D)  that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added).

  19.  The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080.

  20.  Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

  21.  As evidenced by the plain language of Bankruptcy Code section 365(b)(3), adequate assurance is not limited to the financial wherewithal of the proposed assignee. It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases. *See, e.g.*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984); *Cinnicola v. Scharffenberger*, 248 F.3d 110,

119 (3d Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*." (emphasis added)).  "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed." *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003); *In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."). Bankruptcy Code section 365(b)(3)(C) embodies this concept, providing that assumption and assignment of a shopping center lease is "subject to all the provisions thereof . . . ."[3]

### The Assignment of the Oshkosh Lease Must Be Subject to the Terms Thereof

22.      There are numerous accruing obligations under the Oshkosh Lease in addition to the payment of monthly "Fixed Minimum Rent." For example, typical of modern "triple net" leases, under the Oshkosh Lease, Tenant is required to pay the Landlord for "Tenant's Proportionate Share" of "Common Area Costs" (Section 9 of Oshkosh Lease), on a monthly, estimated basis, subject to annual reconciliation, and reimbursement of "Taxes" (Section 8) and "Insurance Costs" (Section 21).

23.      The proposed Assumption and Assignment Agreement between Debtors and Burlington, Exhibit B to the Proposed Contract Assumption Order, has several problematic provisions that attempt to limit Burlington's future liability under the Oshkosh Lease.  For example, Paragraph 3 of the Assumption and Assignment Agreement provides that "Assignee shall have no liability or obligation arising or accruing under the Assigned Assets prior to the Closing Date" and that "Assignee shall assume all obligations with respect to the Assigned Assets arising from and after the Closing Date."  The Lease Sale Procedures, accompanying the Lease Sale Procedures Order, make it clear that Debtors are seeking to sell their Lease Assets "*free and clear*

---

[3]  In the bluntest terms, Burlington claiming to have the "financial wherewithal to meet all future obligations under such unexpired lease" (*see* Assumption and Assignment Notice) is not the same as making the contractual commitment to do so.

*of* all liens, *claims*, interests, or other encumbrances." (Emphasis added). Similarly, paragraph 2 of the Proposed Contract Assumption Order generally seeks to assume and assign the Oshkosh Lease and other affected leases "free and clear of all liens, claims, interest, and encumbrances of any kind or nature whatsoever . . . " with certain specific exceptions. Paragraph 2 of the Proposed Contract Assumption Order makes it clear that Burlington's agreement to assume the obligations and duties under the Oshkosh Lease is limited only to those "obligations and duties thereunder that *accrue and come due from and after the Closing*." (Emphasis added).

24. Bankruptcy Code section 101(5) defines a claim as "[any] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "As has frequently been observed, this definition is extremely broad." *In re Old Market Group Holdings Corp.*, 647 B.R. at 112-13, *citing Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress intended . . . to adopt the broadest available definition of 'claim.'"); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016), *cert denied*, 581 U.S. 1813, 137 S. Ct. 1813 (2017) (even a right to payment contingent on future events is a claim under Section 101(5) if it "result[s] from pre-petition conduct fairly giving rise to that contingent claim."); *see also JELD–WEN, Inc. v. Van Brunt (In re Grossman's)*, 607 F.3d 114, 119-21 (3d Cir. 2010) (a "claim" may exist before a right to payment arose (or accrued) under state law).

25. Given this attempted limitations on the scope of liabilities under the Oshkosh Lease being assumed by Burlington, when the Oshkosh Landlord bills Burlington, as Debtors' assignee, for the reconciliation of 2025 Common Area Costs in 2026, as permitted by the terms of the Oshkosh Lease (*see* Section 9 of the Oshkosh Lease), will Burlington be responsible for that portion of the obligation that relates to pre-Closing Date periods, even though such amounts are billed thereafter? Similarly, will Burlington be responsible for future billings of Taxes and Insurance Costs even though a portion of such future billings relate to periods prior to the Closing Date. If Burlington does not assume these obligations in their entirety, how does it propose that

the Oshkosh Landlord collect the pre-Closing Date portions of these sums from Debtors that are selling substantially all of their assets and liquidating? While the proposed Assumption and Assignment Agreement purports to require Debtors, as "Assignor," to cure all defaults and other obligations "subject to 11 U.S.C. § 365(b)." But, by definition, liabilities that have accrued but are not yet due are not in "default" or "breach" for purposes of Bankruptcy Code section 365(b)(1)(A) because performance is not yet due. Does Burlington suggest that landlords, including the Oshkosh Landlord, be compelled to generate or estimate billings in advance of the times and under the terms contemplated by their leases for potentially unliquidated sums, with landlords bearing the risk should the amounts billed turn out to be insufficient?[4] This is effectively a compelled modification of the Oshkosh Lease for the convenience of Burlington, contrary to Bankruptcy Code section 365(b)(1)(C)'s requirement "that assumption or assignment of [a shopping center lease] is subject to all the provisions thereof" and case law holding that the bankruptcy court may not modify or excise material obligations owing to the non-debtor contracting party. Put another way, the provisions of the proposed Assumption and Assignment Agreement and the Proposed Contract Assumption Order that attempt to disclaim the assignee's liabilities for accrued but unbilled liabilities do not provide Landlord with adequate assurance of future performance with respect to those obligations.

26.    In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), then Burlington must have clear responsibility for such as yet unbilled or unasserted obligations (and, conversely, receive the benefit of any credits) even though future billings or claims may include expenses or obligations that accrue prior to the Closing Date. Similarly, Burlington cannot escape liability for accrued, but not yet due, nonmonetary obligations such as future maintenance and repairs to the Leased Premises to remedy deferred maintenance or the restoration obligations that arise upon the expiration or earlier termination of the Oshkosh Lease. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (D. Del.), *Twenty-Seventh*

---

[4]    Burlington does not explain how the Debtors are supposed satisfy *unbilled* obligations that are *not yet due* prior to the anticipated Closing.

*Order Assumption and Assignment of Certain Unexpired Leases, etc.*, entered August 9, 2024 [Docket No. 1145] at ¶ 3.

27. Debtors and Burlington also cannot, in the broadest possible strokes, seek to invalidate numerous provisions of the Oshkosh Lease by simply declaring them to be "Unenforceable Provisions," as set forth in paragraph 9 of the Proposed Contract Assumption Order. For example, the "Permitted Use" under Section 11 of the Oshkosh Lease is any "lawful retail use," subject to existing exclusive uses. Given the plain language of Bankruptcy Code section 365(b)(3)(C), providing that an assignment of a real property lease "is subject to all the provisions thereof," there is no legal basis for paragraph 9(a) of the Proposed Contract Assumption Order. Similarly, there is no basis (in paragraph 9(c)) to invalidate the "Operating Covenant" contained in Section 40 of the Oshkosh Lease as it already contemplates closure for purposes of an assignment. Such overbroad provisions of paragraph 9 of the Proposed Contract Assumption Order should not be approved.

**Either Burlington or Debtors Must Provide Adequate Assurance of Future Performance of Insurance and Indemnification Obligations:**

28. In addition to the monetary obligations that either Debtors or Burlington must satisfy under Bankruptcy Code section 365, the Oshkosh Lease contains customary provisions requiring the Tenant to indemnify and hold Landlord harmless from claims, damages and liability arising from Tenant's use and occupancy of the Leased Premises (Section 19 of Oshkosh Lease) and maintain certain insurance coverage (Section 21 of Oshkosh Lease). As discussed above, Debtors and Burlington attempt to modify and limit the scope of assumed liabilities through the Assumption and Assignment Agreement and the attempted assignment of the Oshkosh "free and clear" of "claims."

29. But what of third party claims (such as a customer "slip and fall") that occurred prior to the Closing Date but are not asserted until after the Closing Date?[5] Debtors, with the

---

[5] Under Wisconsin law, the statute of limitations for such personal injury claims is generally three years from the date of injury. Wisc. Stat. § 893.54.

burden of demonstrating adequate assurance of future performance, have offered no proposal for satisfaction of the indemnification requirements of the Oshkosh Lease should a third party premises liability claim be asserted against Landlord for events or occurrences on the Leased Premises prior to the Closing Date. Landlord anticipates that Debtors will seek to be relieved of any further liability under the Lease in accordance with to Bankruptcy Code section 365(k). As a matter of law, however, a debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k) where the debtor does not assume and assign the lease *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

30.     As the Third Circuit has observed, "[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *Medtronic AVE., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001). Accordingly, in order to provide adequate assurance of future performance with respect to the indemnification obligations under the Oshkosh Lease, either (a) Burlington must clearly be required to assume all responsibility for any and all such claims, including any deductible or self-insured retention amount, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences <u>prior to</u> the Closing Date. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

### III.    <u>RESERVATION OF RIGHTS</u>

31.     Landlord fully reserves its rights to (a) further supplement or amend this Limited Objection and assert any additional objections, including any additional cure obligations that may

arise under any of the Leases in the ordinary course of business, and (b) further object to the Assumption and Assignment Notice on additional grounds based upon any new information provided by Debtors or Burlington or upon any different relief requested by Debtors, including a proposed assignment of the Oshkosh Lease to an entity other than Burlington.

### IV. JOINDER

32. To the extent not inconsistent with the foregoing, Landlord joins in the objections of other shopping center landlords to the proposed assumption and assignment of retail leases to Burlington on the terms proposed.

### V. CONCLUSION

33. Debtors have thus far failed to sustain their burden of demonstrating adequate assurance of future performance with respect to the proposed assumption and assignment of the Oshkosh Lease. While Landlord is confident these issues can be consensually resolved, any assignment of the Oshkosh Lease must be subject to the existing terms, conditions and covenants of the Oshkosh Lease and Debtors and Burlington must provide for a complete assumption and assignment of all lease obligations.

|  |  |
|---|---|
| Dated: May 30, 2025<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Laurel D. Roglen*<br>Leslie C. Heilman (DE 4716)<br>Laurel D. Roglen (DE 5759)<br>Nicholas J. Brannick (DE 5721)<br>Margaret Vesper (DE 6995)<br>BALLARD SPAHR LLP<br>919 North Market Street, 11th Floor<br>Wilmington, DE 19801-3034<br>Tel: (302) 252-4465<br>Fax: (302) 252-4466<br>Email: heilmanl@ballardspahr.com<br>       roglenl@ballardpshar.com<br>       brannickn@ballardspahr.com<br>       vesperm@ballardspahr.com |

-and-

Ivan M. Gold (admitted *pro hac vice*)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 837-1515
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com

*Attorneys for The Williams Family Trust*