**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al*,[1] | Case No. 25-10068 (CTG) |
| Debtor. | **Objection Deadline: May 30, 2025** |
| | Re: Dkt No. 930 |

**WLPX HESPERIA, LLC'S OBJECTION TO THE DEBTORS' AMENDED FIRST NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT AND/OR UNEXPIRED LEASES**

WLPX Hesperia, LLC ("Landlord") hereby submits this Objection to the *Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Dkt. No. 930] (the "Amended Notice") filed by Joann Inc., et al. ("Debtors").

**I.    INTRODUCTION**

In connection with the Amended Notice, the Debtors seek this Court's authorization to assume and assign the Landlord's unexpired lease of nonresidential real property to the proposed assignee, Burlington Coat Factory of Texas, LLC ("Burlington"). Generally, Landlord does not oppose the assignment of the lease to Burlington, but the correct cure amount must be paid and the lease must be assigned as is without any impermissible modifications. However, the proposed order attached to the Amended Notice goes far beyond authorizing assignment pursuant to Bankruptcy Code section 365(f) notwithstanding any anti-assignment provisions contained in the lease. For instance, the proposed order strikes any provision of the lease

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

1

"prohibiting Burlington's intended use of the premises."[2] As drafted, this term of the proposed order could be interpreted to authorize Burlington to use the premises for any purpose imaginable, despite violation of the terms of the lease and the rights of other tenants at the shopping center. As such, the Proposed Order cannot be entered in its current form. Moreover, to the extent the Proposed Order seeks to release the proposed assignee Burlington for any non-default obligations under the lease, including reconciliation charges and indemnity obligations, the Proposed Order should not be approved.

**II.     FACTUAL BACKGROUND**

Prior to the commencement of the above-captioned bankruptcy cases, Landlord and Debtors' predecessor in interest, Jo-Ann Stores, Inc., entered into a written Lease dated May 20, 2011 (as amended, modified or renewed from time to time, the "Lease") for the premises, consisting of approximately 20,004 square feet within the High Desert Gateway Shopping Center, located at 12799 Main Street, Hesperia, CA 92345 ("Premises").[3]

On January 15, 2025 (the "Petition Date"), the Debtors filed their petitions for relief under title 11 of the United States Code (the "Bankruptcy Code"), initiating these consolidated cases.

On February 14, 2025, the Court entered an *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order").

On April 28, 2025, in accordance with the Procedures Order, the Debtors filed a *First Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [Dkt. No. 760] (the "First Notice"). The First Notice identified the Lease as a lease to be

---

[2] See paragraph 9.
[3] See *Declaration of Ken Caron in Support Of WLPX Hesperia, LLC's Objection to the Debtors' First Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [Docket No. 861-1], ¶ 4.

assigned to Burlington as of June 1, 2025 (the "Assumption Date"). The Notice asserted that the cure amount owed to Landlord in connection with the proposed assumption and assignment is $29,624.01. Attached to the First Notice as Schedule 3 was the [Proposed] *First Order Authorizing the Debtors to Assume and Assign Certain Executory Contracts and/or Unexpired Leases* (the "First Proposed Contract Assumption Order").

On May 12, 2025, Landlord timely filed its Objection to the First Notice [Dkt. No. 861] (the "Original Objection"), pursuant to which Landlord objected to the Debtors' asserted cure amount and the entry of the First Proposed Contract Assumption Order.

On May 16, 2025, the Debtors filed the Amended Notice. The Amended Notice left unchanged the proposed assumption and assignment to Burlington and the related cure, and was filed with the sole purpose of providing parties in interest with an opportunity to object to the new proposed order annexed thereto as Schedule 3 (the "Proposed Order"). *See* Amended Notice, p. 3 ("Any counterparty that already timely filed a response pursuant to the First Notice need not file a response unless objecting to the Proposed Order."). Accordingly, Landlord submits this supplemental objection to address the inadequacies of the Proposed Order.

Specifically, paragraph 9 of the Proposed Order delineates a list of ten types of contractual provisions in the leases to be assumed that the order will deem "unenforceable" (the "Excised Lease Provisions"):

<blockquote>

a. Any provision prohibiting Burlington's intended use of the premises;

b. Any provision prohibiting necessary alterations to the premises, including the installation of any signage required to convert the premises to Burlington's intended use, provided such alterations are necessary to operate at the premises under Burlington's trade name and consistent with its business operations and are done in a matter that is consistent with the terms of the applicable Lease;

c. Any provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in

</blockquote>

rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (180) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances may warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Assignment Agreement) listed in the Assignment Agreement;

d. Any provision conditioning assignment on Landlord consent, or requiring payment to the Landlords as the price of assignment, or granting Landlords the right to recapture the leased premises following the assignment;

e. Any provision effecting forfeiture or a modification of any of the Debtors rights or obligations presently in effect under the Leases upon an assignment by the Debtor of the Leases

f. Any provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g. Any provision restricting Burlington's ability to place reasonable signage on the premises; *provided*, that such signage is necessary by Burlington to conform such store to Burlington's typical retail store consistent with Burlington's intended use of the premises and such placement is done in a matter consistent with the terms of the applicable Lease;

h. any provision requiring the use of a certain tradename;

i. any provision regarding minimum sales revenues, if any, required to be satisfied at the premises covered by the Leases; and

j. any radius provisions set forth in the Leases to the extent applicable to an existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

*See* Proposed Order ¶ 9. Debtors attempt to qualify this sweeping invalidation of contractual rights by couching the invalidation as "[s]olely with respect to the transactions contemplated by

this Order and the Assignment Agreement[.]" This qualifier, however, is unclear and the Order can be read to invalidate the provisions, *in toto*, moving forward.

III.    ARGUMENT

    A.    **The Debtors Must Assume and Assign the Lease Subject to All its Existing Provisions.**

The Debtors' attempts to utilize the Proposed Order to disqualify or otherwise invalidate the Excised Lease Provisions of the Lease is improper. Under section 365 of the Bankruptcy Code, the Debtors must assume and assign the lease *cum onere*—accepting it subject to all of its existing obligations and burdens. *See NLRB v. Bildisco*, 465 U.S. 513, 531-32 (1984) ("Should the debtor in possession elect to assume the executory contract, however, it assumes the contract *cum onere*."). Debtors may not selectively assume only the beneficial terms of the Lease while discarding those they deem unfavorable. *In re Wash. Capital Aviation & Leasing*, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993) ("[A] debtor may not assume the favorable aspects of an unexpired lease and reject the unfavorable aspects of the same lease."); *see also In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed.").

Here, Debtors seek to deem unenforceable ten categories of provisions that may be contained in the leases to be assigned to Burlington. While the Bankruptcy Code may allow for modification and waiver of certain contractual rights, such "modification of a contracting party's rights is not to be taken lightly" and a Court asked to make such revisions must be "sensitive to the rights of the non-debtor contracting party . . . and the policy requiring that the non-debtor receive the full benefit of his bargain." *In re Joshua Slocum*, 922 F.2d 1081, 1091 (3rd Cir.

1990). Here, the Debtors seek to take a chainsaw to the Excised Lease Provisions where a scalpel is more appropriate, to the extent disqualification of the provisions is even appropriate.

This is especially applicable with respect to "shopping center" leases, of which the Lease is one. Section 365(b)(3) of the Bankruptcy Code requires that adequate assurance of future performance be provided before a shopping center lease may be assumed and assigned. This adequate assurance includes the following requirement:

> (C) that assumption or assignment of such lease is **subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision**, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added). In short, the inclusion of section 365(b)(3) makes clear Congress's intent to ensure that where "shopping center" leases are being assumed and assigned, the landlords of such properties are afforded additional protections to ensure the unique qualities of the shopping center remain intact post-assignment. Pursuant to the legislative history supporting the enactment of the section, "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular the center's other tenants." *Id.* (quoting *In re Joshua Slocum*, 922 F.2d 1081, 1085 (3rd Cir. 1990)).

While section 365(f) allows debtors to assume and assign executory contracts and unexpired leases "notwithstanding a provision . . . that prohibits, restricts, or conditions the assignment of such contract or lease," it is limited by section 365(b) and (c). Because the Lease concerns real property located in a shopping center, the exceptions of section 365(f) are very narrow. *In re Joshua Slocum*, 922 F.2d at 1090 (concluding that because the real property at

issue was within a shopping center, "§ 365(f) d[id] not apply"); *see also In re Three A's Holdings, L.L.C.*, 364 B.R. 550, 560 n.5 (Bankr. D. Del. 2007) (recognizing that with passage of the BAPCPA in 2005 that Congress had "further constrained the Court's ability to authorize assumption or assignment of shopping center leases in violation of the terms of such leases by expressly subjecting section 365(f)(1) to the provisions of section 365(b)(3).").

Even if section 365(f) were more broadly applicable to the Lease, courts utilize subsection (f) to invalidate "provisions designed *solely* to impair the debtor's ability to assume or reject leases." *In re Buffets Holdings, Inc.*, 387 B.R. 115, 120 (Bankr. D. Del. 2008) (emphasis added). Many of the Excised Lease Provisions are not anti-assignment provisions at all. For instance, deeming any "provision prohibiting Burlington's intended use of the premises" unenforceable could invalidate simple Lease use provisions prohibiting obnoxious odor, noise or sound. Alternatively, a ruling that the "radius provisions" are unenforceable would undermine a well-established category of Lease terms commonly used to regulate the location of competing businesses within a defined geographic area.

In short, the Debtors are seeking to stretch the bounds of what is "unenforceable" under the Bankruptcy Code to allow for an assumption and assignment of leases that could unduly prejudice the non-debtor contracting parties. Because many of the subjects to which the Excised Lease Provisions apply do not meet the criteria of "anti-assignment" provisions, the Debtors do not have the authority to strip the leases of these provisions, especially in the context of a shopping center Lease. Because Debtors cannot make that showing, the Proposed Order cannot be approved, as drafted. Landlord accordingly objects to the approval of the Proposed Order.

### B. Burlington Must Assume All Obligations Under the Lease.

The First Proposed Contract Assumption Order expressly preserved Landlord's right to assert claims against Burlington for all rent and other charges that had accrued under the Lease prior to the assumption and assignment date—including adjustments, reconciliations, and indemnity obligations. However, the current Proposed Order fails to clarify whether Burlington, will remain liable for these amounts. To the extent the Proposed Order purports to relieve Burlington of responsibility for such accrued obligations, Landlord objects.

Under the Lease, the Debtors are required to pay base rent and additional lease charges in advance of each month. These additional charges include the Debtors' pro rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, percentage rent, and similar items. Many of these charges are billed based on annual estimates and reconciled after the end of the year against actual costs incurred by the tenants of the shopping center. If estimated payments exceed actual costs, the tenant receives a credit; if actual costs exceed the estimates, the tenant is responsible for the shortfall.

Year-end reconciliations for certain prior periods under the Lease, including those accruing through 2024, may not yet be finalized or invoiced at the time of assumption and assignment. Charges accruing during 2025 will not be reconciled or billed until 2026. Furthermore, some charges are payable in arrears and cannot be calculated until after the close of the applicable year.

Pursuant to the Proposed Order, Burlington is to assume all obligations "in and to the Lease which are **due and owing** from and after the Closing Date." Proposed Order, ¶ 3. In turn, the Agent, Debtors, and their estates "shall have no further liability to the Landlords for charges

that **accrue and become due and payable** on or after the Closing Date." *Id.* ¶ 7. These provisions conflict. The Proposed Order should make clear that Burlington is assuming all obligations under the Lease.

## IV.   CONCLUSION

Based on the foregoing arguments, Landlord respectfully requests that the Court deny Debtors' request for authority to assume and assign the Lease unless the objections outlined herein are sufficiently resolved.  Landlord reserves its right to be heard on all matters set forth herein.

DATED:  May 30, 2025

Respectfully submitted,

  *s/ Deirdre M. Richards*

Deirdre M. Richards (#4191)
ELLIOTT GREENLEAF, P.C.
1105 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 384-9402
dmr@elliottgreenleaf.com

and

Brian T. Harvey (*Pro Hac Vice* Pending)
(Cal. Bar No. 238991)
BUCHALTER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: 213.891.0700
Email:  bharvey@buchalter.com

Attorneys for WLPX Hesperia, LLC