## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>JOANN INC., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 23, 2025 at 3:00 p.m. (ET)**<br>**Objection Deadline: June 13, 2025 at 4:00 p.m. (ET)** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 6004, AND LOCAL RULE 6004-1, AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES

The above-captioned debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Sale Order"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the sale (the "Sale") to Singer Sourcing Limited LLC ("Buyer") of certain of the Debtors' assets as set forth in the *Intellectual Property Asset Purchase Agreement* (the "Purchase Agreement") annexed hereto as **Exhibit B** by and between Buyer and GA Joann Retail Partnership, LLC ("Agent"), as agent for the Debtors pursuant to the order of this Court (the "Approval Order") [D.I. 520] dated

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

February 26, 2025, which, among other relief, approved an Agency Agreement of even date therewith and granted Agent the exclusive right to market and sell, and/or otherwise designate the purchasers, licensees and assignees of, any of all of the assets of the Debtors free and clear of all liens, claims, and encumbrances thereon (other than the Permitted Encumbrances). In support of this Motion, the Debtors rely on the declaration of Steven Smith (the "Smith Declaration"), annexed hereto as **Exhibit C**, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rule 6004-1.

## BACKGROUND

### A.      General Background

3.      JOANN Inc., together with its Debtor affiliates, filed voluntary petitions on January 15, 2025 (the "Petition Date") for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16, 2025, the Court entered an order [Docket No. 103] authorizing the joint administration of these chapter 11 cases pursuant to

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On January 28, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 198] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

4.    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael Prendergast, Interim Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 5] (the "First Day Declaration").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

[*Remainder of page intentionally blank*]

**B.      The Material Terms of the Purchase Agreement**

5.      The principal terms of the Purchase Agreement are summarized below:[2]

| Purchaser | Singer Sourcing Limited LLC |
|---|---|
| Purchase Price | • $800,000 "Release Payment" in exchange for the release of sublease rent claims against Buyer and/or its affiliates<br>• Release of Section 503(b)(9) and other priority claims by Buyer as consideration for the Acquired Assets |
| Acquired Assets | A. All Patents, Trademarks and Domain Names listed on <u>Schedule 2.1(a)</u> to the Purchase Agreement, Acquired Patents, and the right to sue for and recover damages, profits and any other remedy in connection therewith, for past, present or future infringement, misappropriation or other violation related to any such assets (collectively, the "<u>Acquired Intellectual Property</u>");<br>B. the social media accounts listed on <u>Schedule 2.1(b)</u> to the Purchase Agreement;<br>C. all software described on <u>Schedule 2.1(c)</u> to the Purchase Agreement;<br>D. all product assets and data described on <u>Schedule 2.1(d)</u> to the Purchase Agreement;<br>E. all customer subscription data listed on <u>Schedule 2.1(e)</u> to the Purchase Agreement (the "<u>Customer Data</u>");<br>F. all books and records, including all financial, operational and legal documents, whether in electronic or paper form, supporting the Acquired Assets (the <u>Books and Records</u>");<br>G. all contracts to which JOANN or Ditto are a party, as identified on <u>Schedule 2.1(g)</u> to the Purchase Agreement, including any and all amendments thereto (the "<u>Assumed Contracts</u>");<br>H. any subscription revenue attributable to Ditto subscriptions received by JOANN or Agent after the Liabilities Cutoff Date;<br>I. all payment gateway accounts described on <u>Schedule 2.1(i)</u> to the Purchase Agreement, to the extent such are transferable; and<br>J. all goodwill associated with the assets referenced in <u>Section 2.1</u> to the Purchase Agreement. |
| Assumed Liabilities | Upon the terms and subject to the conditions of the Purchase Agreement, Buyer shall assume and agree to perform and discharge, when due (in accordance with their respective terms and subject to the respective conditions thereof), (y) as of the Liabilities Cutoff Date, and pay directly, or where not feasible to so pay directly, to reimburse Agent for, the full weekly *pro rata* Liabilities identified on <u>Schedule 2.3</u> to the Purchase Agreement (the "<u>Assumed Overhead</u>") and, (z) as of the Closing, all Assumed Contracts and any and all cure amounts associated with such Assumed Contracts to the extent identified on <u>Schedule 2.1(g)</u> to the Purchase Agreement (as such schedule may be modified by Court order or otherwise agreed to by the Buyer and the applicable counterparties thereto) |

[2]      This table is for summary purposes only and is qualified in all respects by the Purchase Agreement.

### C.    Compliance with Local Rule 6004-1

6.    Pursuant to Local Rule 6004-1, (a) a copy of the proposed form of sale order is annexed hereto as **Exhibit A** and (b) a copy of the executed Purchase Agreement is annexed hereto as **Exhibit B**.  Also, in accordance with Local Rule 6004-1, the following are provisions in the Purchase Agreement that are required to be highlighted:

| Local Bankruptcy Rule 6004-1 Disclosure | Terms of the Purchase Agreement |
|---|---|
| Sale to Insider | N/A |
| Agreements with Management | N/A |
| Releases | Pursuant to the Purchase Agreement, Agent, as agent for the Debtors, will release all estate claims against SVP under the Master Sublease. |
| Private Sale / No Competitive Bidding | Agent participated in a competitive bidding process for the exclusive right to designate the purchasers or other assignees of the Debtors' assets, including but not limited to the Acquired Assets, resulting in Agent being granted such authority through the Approval Order.  Hilco Streambank, as advisor to Agent, solicited interest in the Acquired Assets after Agent was vested with authority to market and sell the Debtors' assets and retain the proceeds thereof. |
| Closing and Other Deadlines | Closing is anticipated to occur immediately after entry of the Sale Order.  Either party may terminate the Purchase Agreement (subject to certain limitations set forth in Section 11.1(b)(ii) of the Purchase Agreement) if the Closing does not occur by the close of business on June 30, 2025. |
| Good Faith Deposit | The Release Amount has been (or as soon as reasonably practicable after the filing of this Motion, will be) paid into escrow. |
| Interim Arrangements with Proposed Purchaser | N/A |
| Use of Proceeds | Pursuant to the Approval Order, the Agent is entitled to retain the proceeds. |
| Tax Exemption | N/A |
| Record Retention | N/A |
| Sale of Avoidance Actions | N/A |
| Requested Findings as to Successor Liability | The Sale Order contains proposed findings that Buyer is not subject to, among other things, claims arising under any theory, law or doctrine of successor or transferee liability or related theories |
| Sale Free and Clear of Unexpired Leases | N/A |
| Credit Bid | N/A |

| Relief from Bankruptcy Rule 6004(h) | The Debtors are requesting relief from the 14-day stay imposed by Bankruptcy Rule 6004(h) in connection with this Motion. |
|---|---|

## RELIEF REQUESTED

7.     By this Motion, the Debtors request that the Court enter the Sale Order (a) authorizing the sale pursuant to the Purchase Agreement, (b) authorizing and approving the Purchase Agreement and the transactions contemplated thereby (the "Transactions"), and (c) granting related relief.

## BASIS FOR RELIEF REQUESTED

8.     For the reasons explained below, approval of the sale of the Acquired Assets to the Buyer pursuant to the terms of the Purchase Agreement is appropriate.

9.     Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> the notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

10.     To approve the use, sale, or lease of property outside the ordinary course of business, the Court must find some articulated business justification for the proposed action. *See*

*In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*).

11.     Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the sound business purpose test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith").

12.     This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g.*, *In re Ancor Explor. Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)"). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); *accord In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr.

S.D. Cal. 1985) (Section 363(b) "clearly indicates that the manner of sale is within the discretion

of the Trustee and that any such sale is not a judicial sale as was the case under Section 70 of the

Bankruptcy Act."). Here, the proposed Sale of the Acquired Assets to the Buyer meets all of these

requirements and should be approved.

13.    In particular, the proposed Sale is merely an extension of the transaction approved

in the Approval Order after a robust auction process, which the Court found was "in the best

interests of the Debtors, their creditors, and all other parties in interest" after "a robust and

extensive marketing and sale process, both prior to the commencement of these chapter 11 cases

and through the postpetition sale process in accordance with the Bidding Procedures Order and a

sound exercise of the Debtors' business judgment . . . ." Approval Order, ¶¶ G-H.  The Court

further found, among other things, that the bidding procedures resulting in the transaction approved

by the Approval Order "were substantively and procedurally fair to all parties and the Debtors

conducted a fair, open, and adequate sale process in full compliance in all respects with the Bidding

Procedures Order, with all other applicable orders of the Court, and with the Debtors' fiduciary

duties . . . ." *Id.* ¶ I.  The Approval Order authorizes the Agent to designate the purchasers of the

Debtors' assets free and clear of claims and interests pursuant to section 363 of the Bankruptcy

Code without the necessity of a further order of the Court but expressly permits the Agent to "seek

other or further orders of the Court in connection with the sale or other disposition of any Assets."

*Id.*, ¶¶ 6, 25.  The Sale Order requested by this Motion constitutes such a further order.

A.    **The Proposed Sale Reflects a Sound Exercise of the Debtors' Business Judgment.**

14.    A debtor has broad discretion in determining the manner in which its assets are

sold. *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of the sale is

within the discretion of the Trustee[.]"); *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y.

1998) (although not without limit, "a trustee's business judgment enjoys great judicial deference.") (internal citation omitted). Accordingly, if a debtor in possession concludes that a particular private purchase offer is the "most advantageous to the estate," a court should defer to the debtor in possession's business judgment. *Bakalis*, 220 B.R. at 532.

15.     Here, the analysis is even simpler.  As discussed above, the proposed Sale to be approved by the Sale Order is an extension of the transactions already approved in the Approval Order, which the Court found were "a sound exercise of the Debtors' business judgment," "the highest or otherwise best value for the Assets for the Debtors and their estates, and [] in the best interest of the Debtors, their estates, and their creditors."  Approval Order, ¶ I.  The Agent has determined to sell the Acquired Assets to the Buyer pursuant to the Purchase Agreement, and the Sale Order is in furtherance of that transaction, as contemplated and permitted by the Approval Order.  The analysis need go no further.

16.     There is no need to conduct a further public auction and sale of the Acquired Assets. A robust auction already occurred, through which the Agent acquired the right to designate purchasers of the Acquired Assets with without further order of the Court (unless requested).  The Agent has the irrevocable right to sell any of the Debtors' assets to anyone it decides, or to no one. Because the Purchaser (as defined in the Approval Order) retains all proceeds of sale for its own account, the method of sale of the Acquired Assets has no direct impact on the Debtors' estates. A further auction would be costly and impractical, and would not produce any incremental benefit to any party.

17.     The proposed Sale provides additional benefits to the Debtors' estates beyond the consideration already paid pursuant to the Approval Order.  Specifically, the Purchase Agreement and Sale Order provide for affiliates of the Buyer to waive certain alleged priority and secured

claims against the Debtors, retaining only a single unsecured claim.  Among the waived claims is an alleged claim entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code.  The waiver of that claim will result in a benefit to the Debtors' unsecured creditors pursuant to paragraph G of the Approval Order, which allocates 50% of the "503(b)(9) Savings" (the amount by which the sum of all section 503(b)(9) claims allowed against the Debtors is less than $30 million) for the benefit of unsecured creditors.

**B.    The Sale Is Proposed in Good Faith**

18.    The Sale has been proposed in good faith. The Purchase Agreement was the product of good faith, arm's length negotiations between the Agent, as agent for the Debtors pursuant to the Approval Order, and the Buyer, and was negotiated with the active involvement of professional advisors.  The Sale of the Acquired Assets to Buyer pursuant to the terms and conditions of the Purchase Agreement is not the product of collusion or bad faith.  No evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations.

**C.    The Sale Is Not a Sub Rosa Plan**

19.    The Sale does not amount to a *sub rosa* plan. To constitute a *sub rosa* or *de facto* plan, creditors and other interested parties must have been denied the procedural and due process protections afforded under the Bankruptcy Code.  Here, the Court already found in the Approval Order that the transactions approved thereby (of which the Sale is an extension) were in the best interests of the Debtors and their creditors and other parties in interest following appropriate notice, a fulsome marketing process, and a robust auction.  The Approval Order has already determined that the transactions approved thereby, including the Sale, do not constitute a *sub rosa* plan.

**D.      Adequate and Reasonable Notice of Sale Has Been Provided**

20.      All creditors and parties in interest were provided notice of the Debtors' motion for entry of the Approval Order.  The Debtors intend to provide adequate notice of this Motion as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

**E.      Sale of the Acquired Assets Free and Clear of**
**Liens, Claims, and Encumbrances**

21.      Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    a.      applicable nonbankruptcy law permits the sale of such property free
            and clear of such interest;

    b.      such entity consents;

    c.      such interest is a lien and the price at which such property is to be
            sold is greater than the aggregate value of all liens on such property;

    d.      such interest is in bona fide dispute; or

    e.      such entity could be compelled, in a legal or equitable proceeding,
            to accept a money satisfaction of such interest

11 U.S.C. § 363(f).

22.      Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see In re Trans World*

*Airlines, Inc.*, 2001 WL 1820325, at *3, *6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

23.    The Sale will satisfy the requirements of section 363(f) of the Bankruptcy Code as the Approval Order already authorizes the Agent to sell all assets of the Debtors free and clear pursuant to section 363(f).  To the extent any party objects to the Sale on the basis that it holds a lien or encumbrance on any Acquired Assets, the provisions of the Approval Order, which has long since become final, conclusively moot and preclude such objection.  Absent objection, any such party will be deemed to have consented to the sale of the Acquired Assets in any event. Accordingly, the Sale will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and should be approved free and clear of all liens, claims, interests, and encumbrances.

### F.    Buyer Is Entitled to the Protections of Section 363(m).

24.    Section 363(m) of the Bankruptcy Code protects "an entity that purchased . . . property in good faith" from the reversal or modification on appeal of a sale approval under section 363(b).  While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).

25.    A party would have to show fraud or collusion between a buyer and the debtor in possession or trustee or other bidders in order to demonstrate a lack of good faith. *See Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Angelika Films 57th, Inc.*, 1997 WL 283412, at *7 (S.D.N.Y. May 29, 1997); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus. Mach. Corp.*, 572 F.2d at 1198).

26.    The relevant time period for that analysis here was in connection with the process leading to entry of the Approval Order.  Neither there, nor in subsequent negotiations regarding the Sale as an extension of the transactions contemplated by the Approval Order, did Buyer collude with the Debtors, the Agent, or any other party.  Accordingly, Buyer is a a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and the Purchase Agreement is a good faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.

## **WAIVER OF 14-DAY STAY UNDER BANKRUPTCY RULE 6004(h)**

27.    Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of such order. *See* Fed. R. Bankr. P. 6004(h).  The purpose of

Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Fed. R. Bankr. P. 6004(h) advisory committee's note.  Waiving the 14-day stay under Bankruptcy Rule 6004(h) is necessary to minimize ongoing costs by closing the proposed Sale as soon as possible after the entry of the Sale Order.  Buyer has requested, as a condition of the Sale, that the stay be waived.

## NOTICE

28.      The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Term Loan Agent; (c) counsel to the Prepetition ABL Agent; (d) counsel to the Prepetition FILO Agent; (e) counsel to the Committee; and (f) all parties listed in the Core/2002 Service List as of the date hereof.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

29.      A copy of this Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of this Motion are available free of charge through the website maintained by the Debtors' claims and noticing agent, Kroll, at: https://cases.ra.kroll.com/Joann2025/.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Sale Order, substantially in the form attached hereto as **Exhibit A**.

Dated: May 30, 2025
Wilmington, Delaware

/s/ Jack M. Dougherty
**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: preilley@coleschotz.com
snewman@coleschotz.com
mfitzpatrick@coleschotz.com
jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com

- and –

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: anup.sathy@kirkland.com
jeff.michalik@kirkland.com
lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors in Possession*