# EXHIBIT A

<u>L E A S E</u>

## T A B L E   O F   C O N T E N T S

| Article | | Page |
|---|---|---|
| I | Term . . . . . . . . . . . . . . . . . . | 1-2 |
| II | Option to Renew . . . . . . . . . . . . | 2 |
| III | Rental . . . . . . . . . . . . . . . . . . ⁻ | 2-4 |
| IV | Improvements . . . . . . . . . . . . . . | 4-5 |
| V | Common Facilities. . . . . . . . . . . . | 5-7 |
| VI | Use of Premises . . . . . . . . . . . . | 8 |
| VII | Utility Charges . . . . . . . . . . . . | 8 |
| VIII | Taxes . . . . . . . . . . . . . . . . . | 9 |
| IX | Alterations . . . . . . . . . . . . . . | 9-10 |
| X | Repairs . . . . . . . . . . . . . . . . | 10 |
| XI | Right to Enter . . . . . . . . . . . . . | 10-11 |
| XII | Destruction of Premises . . . . . . . . | 11-12 |
| XIII | Fixtures . . . . . . . . . . . . . . . . | 12-13 |
| XIV | Liability and Fire Insurance . . . . . . | 13-14 |
| XV | Default by Lessor . . . . . . . . . . . | 14-15 |
| XVI | Default by Lessee . . . . . . . . . . . | 15 |
| XVII | Liens . . . . . . . . . . . . . . . . . | 16 |
| XVIII | Attorney Fees . . . . . . . . . . . . . | 16 |
| XIX | Assignment . . . . . . . . . . . . . . . | 16 |
| XX | Notices . . . . . . . . . . . . . . . . | 17 |
| XXI | Condemnation . . . . . . . . . . . . . . | 17-18 |
| XXII | Quiet Possession and Subordination . . . | 18 |
| XXIII | Building and Cotenancy Requirements. . . | 19 |
| XXIV | Lessee Attorney for Lessor . . . . . . . | 19 |
| XXV | Miscellaneous . . . . . . . . . . . . . | 19-21 |

### Exhibit

| ADDENDUM | | 1-4 |
|---|---|---|
| "A" | Legal Description . . . . . . . . . . . . . . . . . | - |
| "A-1" | Plot Plan . . . . . . . . . . . . . . . . . . . | - |
| "B" | Plans and Specifications for a Supermarket Building . . . . . . . . . . . . . . . . | 1-5 |

| WHITE PINE ASSOCIATES, II | ARDEN-MAYFAIR, INC. |
|---|---|
| "LESSOR" | "LESSEE" |

## LEASE

### (Long Form)

THIS LEASE, executed the $6\underline{th}$ day of _____ April _____ , 1979 ,
by and between WHITE PINE ASSOCIATES, II, An Arizona Limited

Partnership -----------------------------------------------------------

hereinafter referred to as "Lessor," and ARDEN-MAYFAIR, INC., a Delaware

corporation, having its principal place of business at 5900 South Eastern

Avenue, Commerce, California, hereinafter referred to as "Lessee,"

### W I T N E S S E T H:

In consideration of the rent herein specified to be paid by

Lessee, and the covenants and conditions herein mentioned, Lessor does

hereby lease, let and demise unto Lessee, and Lessee does hereby rent

from Lessor, the premises now known as the NEC of Milton Road and University
in the City of Flagstaff, County of Coconino, in the State of Arizona
Avenue,/ and more particularly described in Exhibit "A" and plot plan as Exh
it "A-1"
attached thereto and made a part hereof.

The above described premises, together with the building and

appurtenances located thereon, or to be constructed thereon, as more

specifically provided hereinafter, are herein referred to as "the demised

premises."

TO HAVE AND TO HOLD the same unto said Lessee, its successors

and assigns for the period and upon the terms and conditions hereinafter

set forth. The Lessee agrees to deliver to the Lessor physical possession

of the demised premises upon the termination of the term hereof or any

extension thereof, in good condition, wear and tear, damage by fire, or

damage from any other cause not directly attributable to the negligence

of the Lessee excepted.

I

TERM                    The term of this Lease shall commence on the day
                        the supermarket building to be constructed on
the premises described above opens for business to the general public but

- 1 -

INITIAL



in no event later than sixty (60) days after said market building and
improvements are completed and Lessee has received exclusive possession
of the premises, and shall terminate twenty /~~(20)~~ five (25) years from the last day
of the calendar month in which the lease term commences.

**INITIAL** 

In the event, the buildings are to be constructed pursuant to
this Lease, the parties hereto shall designate in writing the date on
which this Lease commences.   When the exact dates of the lease term are
determined as aforesaid, then they shall be entered as follows:

Lease term commenced ___*Aug. 18, 1982*___ and terminates ___*Aug 31, 2007*___
_____.

## II

OPTION TO RENEW              Lessor hereby grants to Lessee _ten_ (10) separate

                             options to renew this Lease for additional con-

secutive periods of _five_ (5) years each, beginning with the termination
of the original term hereunder upon the same terms and conditions herein

stated . ~~except that the annual minimum rental shall be reduced twenty five~~
~~percent (25%) and the rates of percentage rental, if any, shall be reduced~~
~~one fourth of one percent (1/4 of 1%)~~.   Lessee shall give Lessor written

**INITIAL** 

notice of its intention to exercise its option hereunder not less than
six (6) months
~~ninety (90) days~~ prior to the expiration of the then existing term of this

**INITIAL**

Lease.   Failure to exercise any extension option shall terminate all subsequent extension
options.

## III

RENTAL                       Lessee agrees to pay to Lessor as annual minimum

                             rental for the demised premises during the term

of this Lease,   ONE HUNDRED EIGHT THOUSAND FOUR HUNDRED FIFTY EIGHT DOLLARS
and NO/100
($ 108,458.00   ), payable in equal monthly installments of   NINE THOUSAND
THIRTY EIGHT DOLLARS AND 17/100---------------------- ($ 9,038.17---- ).

**INITIAL** 

Monthly rental shall be paid in advance on the fifteenth (15th) day of
each and every calendar month of the said lease term.   Rent for the
initial fraction of a month shall be prorated.   (See Paragraph (2) of
Addendum attached hereto).

- 2 -

Lessee further agrees to pay to Lessor, as percentage rental,

a sum equal to _____ONE PERCENT_____ ( 1 %) of annual gross sales

in excess of TEN MILLION EIGHT HUNDRED FORTY FIVE THOUSAND EIGHT HUNDRED

DOLLARS AND NO/100 ($10,845,800.00). (See Paragraph (2) of Addendum attached her
to)

( %) of annual gross sales over _____

_____ ($ ), LESS: INITIAL

~~The minimum rent previously paid for such annual period, any amounts~~
~~paid by Lessee for real property taxes and assessments, operating and~~
~~maintenance expenses of the common facilities, and any fire and extended~~
~~coverage insurance premiums, all as provided herein. Any payments made~~
~~by Lessee for said reimbursement of real property taxes and assessments,~~
~~operating and maintenance expenses of the common facilities, and for fire~~
~~and extended coverage insurance premiums not recovered from percentage~~
~~rent may be carried forward and deducted from percentage rent payable~~
~~in subsequent years.~~

Percentage rent shall be payable on or before the thirtieth

(30th) day following the close of each lease year, however, percentage

rent shall not be payable on sales for the first fractional calendar

month and the next six (6) calendar months following the commencement of this

lease term, to allow for opening expenses and promotions.  An annual state-

ment of gross sales shall be submitted to Lessor with the percentage

rent payment, if any, and this statement shall be final and uncontestable

unless Lessor, within one (1) year after said statement is mailed or

delivered by the Lessee to the Lessor, shall specify in writing its

objections thereto. Lessee agrees that the foregoing payments of percentage
rent shall be payable to Lessor on a semi-annual basis
as interim payments to be annually adjusted.
            Lessee shall keep a record of all sales made upon or from said

premises, including sales made by subtenants, and this record, including

cash register readings, shall be open for inspection by Lessor.

In computing the gross sales (the term "gross sales" is more

particularly described in Article  XXV hereof). the cost of the following

items shall be deducted:  Cost of trading stamps, sales and excise taxes

paid, refunds for returnable containers, and merchandise returned; and

in the case of telephones, children's rides, and other vending machines

owned and controlled by someone other than Lessee, gross sales shall

- 3 -

include only the receipts that may be payable to Lessee.  The Lessee

makes no representation or warranty as to the sale which it expects to

make in the demised premises.                                    .          **INITIAL**

~~BaekxxwaiwexxfiI2xxxaatenaxxxWakeKxpapexaxXtnexexpeaexxsnxiixxsex-~~
~~sxixxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~inxxxxixixxxxxxxxxxxxxxx.~~

Should the Lessee at any time vacate its store in the demised

premises, or sublet all of said store, then in any such event, anything

in this Lease to the contrary notwithstanding, it is hereby mutually

agreed that the Lessee shall pay to the Lessor annually during the

remainder of the term of this Lease, in addition to the annual mimimum

rent, a sum equal to one-third (1/3rd) of the percentage rent (if any)

paid by the Lessee to the Lessor pursuant to the provisions of this

article for the three (3) calendar years next preceding the vacating of

said store or the making of such Sublease, and shall pay the same in

equal monthly installments at the times and in the manner more

particularly set forth in this Lease.  Upon the vacating of said store

or the making of such Sublease, all of the covenants and provisions

contained in the preceding paragraphs relative to percentage rental shall

be of no further force and effect.

IV

IMPROVEMENTS                    Lessor agrees to construct a building of tilt-up

concrete or masonry construction on the demised

premises containing approximately <u>twenty five thousand four hundred</u>

(25,400 ) square feet of gross floor area (the term "gross floor" area is

more particularly described in Article XXV hereof), as provided in plans and

specifications prepared by Lessor's architect, which plans and specifi-

cations shall be approved by both parties hereto in writing prior to the

commencement of construction of said building.  All construction shall be

in accordance with such plans and specifications and shall include those

items described in Exhibit "B" attached hereto.

Lessee will provide the architect with a floor plan showing the

location of trade fixtures and plumbing and electrical outlets no later

than ~~thirty (30)~~ days after the date of execution hereof and within ~~ninety~~ ~~sixty~~

                                                                    **INITIAL**

- 4 -

INITIAL

~~(60)~~ 90 days after receipt of such floor plan, Lessor agrees that its
architect will provide Lessee with completed plans and specifications.
Said building is to be commenced immediately/upon approval of subject to adverse weather conditions and other causes beyond the Lessor's control

INITIAL

such plans and specifications and the construction diligently prosecuted

until completion.  Lessor covenants that the building to be constructed

on the premises will be constructed so as to comply with all laws, rules,

and regulations of all public offices and governmental agencies applicable

at the time of such construction so as to permit Lessee to use the

premises as a public supermarket.  Should Lessor be unable to complete

construction prior to ___November 1___, 19 _80_, then in such event,

Lessee may at any time thereafter terminate and cancel this Lease by

notice in writing to the Lessor and upon the giving of such notice each

party shall be released from any and all obligations and liabilities to

the other.


V


COMMON FACILITIES          The common facilities shall consist of, but not

be limited to:

                    (1)  Adequate sidewalks, abutting each of
the pedestrian entrances to the demised premises;

                    (2)  A service drive not less than twenty
feet (20') wide, connecting the Lessee's freight re-
ceiving facilities, with a public street or highway;

                    (3)  Parking area(s) to accommodate not
less than ___six hundred___ (600) automobiles, including
space for at least _one hundred fifty_ (150) automobiles, in
the area as shown crosshatched on said Plot Plan;

                    (4)  Entrances, and exits, from and to
public streets and highways;

INITIA.

                    (5)  And all other public areas, as shown
on said Plot Plan, including landscaping.

     Lessor shall, at its own expense, provide a paved and lighted

ground level automobile parking area acceptable to Lessee upon which no

structure of any kind may be erected and no underground parking shall be

placed thereunder.

          Lessor shall cause said parking area to be maintained and

operated at all times for the purpose of providing free parking facilities

for the automobiles of the customers and employees of Lessee and other

tenants of the shopping center (the term "shopping center" is more particu-

larly described in Article XXV hereof).

- 5 -

The Lessor hereby grants to the Lessee, its customers, employees and visitors, a non-exclusive easement throughout the term hereof to use, in common with others entitled to similar use thereof, all of the aforementioned common facilities and in addition thereto, any similar future facilities.

Without limiting the foregoing obligation of Lessor to maintain the common facilities, Lessor shall during the term hereof:

> (1)  Maintain the parking area to accommodate not less than  six hundred   (600  ) automobile parking spaces;

> (2)  Maintain the surface of the parking area in a level and smooth condition (without chuckholes), and evenly covered using first quality paving materials of concrete or asphalt.

> (3)  Provide for proper drainage in order to prevent any areas of standing water;

> (4)  Maintain the parking area, all sidewalks, curbs, landscaped areas and other public areas, in a clean, safe, presentable and sanitary condition;

> (5)  Provide adequate lighting for the parking lot area and surrounding buildings and place such appropriate directional signs, markers and parking space lines as shall reasonably be required for the convenience and proper use of the common facilities;

> (6)  At least once every five (5) years, or sooner if required, resurface the parking area and place such appropriate directional signs, markers, and parking space lines as above required.

Lessee Agrees to pay to Lessor its proportionate share (the term "proportionate share" is more particularly described in Article XXV hereof), of the operating and maintenance expenses of said common facilities, but in no event shall Lessee's share exceed _____*_____ ($    ) per month.

During each lease year of the term hereof, Lessee agrees to pay monthly, at the same time as the monthly minimum rental payments are payable, an estimated monthly amount which shall be applied against its proportionate share of the operating and maintenance expenses of said common facilities as hereinabove set forth.  In no event shall the monthly estimated amount exceed an amount equal to one-twelfth (1/12th) of the proportionate share for said common facilities paid by Lessee during the preceding lease year.  Within thirty (30) days following the end of each lease year, Lessor will determine its actual operating and maintenance expenses for said common facilities and Lessee's proportionate share

*INITIAL*

* the greater of 1/10th of one percent of gross sales made by Lessee in the demised premises or 30 cents per calendar year for each sq. ft. of the building located on the demised premises for the first five (5) years of the lease term hereof increasing 6 cents per sq. ft. at the commencement of each five (5) year period thereafter throughout the original term of this Lease, or any extensions thereof.

thereof (within limitations hereinbefore described) and will furnish to

Lessee a written statement of such costs and allocation in reasonable

detail.  Concurrently with the rendition of said statement, Lessor shall

(1) bill Lessee for any amount due, or (2) refund to Lessee any over-

payment made by Lessee during the lease year.

During the first lease year hereof, the parties agree that the

estimated monthly amount to be paid by Lessee hereunder shall be FIVE HUNDRED

FORTY FIVE AND NO/100---  ($545.00) per month.

Operating and maintenance expenses of the common facilities

include the cost of: public liability insurance covering injury to or

death of any one person in the sum of not less than One Million Dollars

($1,000,000.00) and covering injury to or death of more than one person

injured in any one accident in the sum of not less than Five Million

Dollars ($5,000,000.00) and property damage in the sum of One Hundred

Thousand Dollars ($100,000.00) with Lessee being named as an additional

insured, painting of exterior walls, labor, equipment,

materials, security, utilities and supplies used in connection

with the maintenance of the common facilities, plus ten percent (10%)

of the total cost of such items to cover administration and overhead.

It shall not include the cost of any improvements which under  accept-

able accounting practice would be deemed to be capital assets.  ~~Any~~

~~payments made by Lessee for such operating and maintenance expenses,~~    INITIAL

~~referred to in this Article, are recoverable from percentage rent, as~~

~~provided for in Article III hereof.~~

Except as set forth above, Lessor may establish and from time

to time change rules and regulations deemed reasonable and necessary for

the proper operation and maintenance of the common facilities, but no

charge for parking may be made to employees or to customers of Lessee

without its prior written consent.

Lessee shall have the right to exclusively use approximately

one thousand (1,000) square feet of parking area adjacent to the front or

sides of the demised premises for a period of three (3) weeks immediately

preceding Christmas each year for the sale of Christmas trees.    Said

area shall be designated on the plot plan attached hereto and such

use shall be subject to appropriate governmental regulations.

VI                                                         INITIAL

USE OF PREMISES          The demised premises may be used ~~by Lessee~~ for

the purpose of conducting therein a general retail

INITIAL

grocery supermarket for the sale of all foods, liquor, wine and beer,
                       health and beauty aids,
tobacco, drugs,/sundries, candy, hardware, clothing, home and building

supplies, garden supplies, nursery stock, seeds, flowers, Christmas trees,

barbecue and patio furniture and supplies, and all other types of mer-

chandise and services offered or sold by public supermarkets including a

INITIAL

fountain, coffee shop and/or restaurant, ~~any or all of which may be sold~~

~~or offered at the election of Lessee through the use of separate depart-~~

~~ments,~~ and for any other legal use.

INITIA

Lessor covenants that Lessee's market shall be the only grocery

supermarket located in the said shopping center and that Lessee shall
have the exclusive right to the sale of meat, bakery products, (so long as
Lessee shall maintain a bake on, or bake off bakery on the demised premises),
/delicatessen
items, liquor, wine and beer, except that (a) liquor, wine and beer may be

sold by a drug store, if any, and (b) wine may be sold by a wine and cheese
specialty shop.
Lessee agrees to keep the premises clean and free of unsightly

rubbish and agrees that it will not knowingly commit or cause to be

committed by its employees or subtenants any violation of the applicable

laws, rules or regulations relating to sanitation.


VII


UTILITY CHARGES          The Lessor agrees at the Lessors own cost and

                         expense to provide to the demised premises

throughout the term hereof such sewer facilities and such utilities as

the Lessee may require and to supply and maintain adequate separate meters

for the purpose of measuring all such utilities consumed by Lessee in the

demised premises.

Lessee agrees to pay during the term of this Lease all charges

INITIAL

for such utilities (including but not limiting same to light power, gas,
          garbage
water,/and sewer charges) used by Lessee in connection with the operation

of the demised premises.

VIII

TAXES                           Lessee shall pay all taxes on personal property

                                and trade fixtures placed by Lessee in the

demised premises.

            Lessee also agrees to pay its proportionate share of all real

estate taxes and assessments levied upon the demised premises before the

delinquency date and upon the presentation of all tax bills from the

Lessor* Lessor agrees to present such tax bills and/or notice of

assessment to Lessee in sufficient time to pay or enable Lessee to appeal

such real estate taxes and assessments should it elect to do so.  Should

Lessee elect to appeal such real estate taxes and assessments, Lessor

agrees to join with the Lessee in such appeal, but any costs in connection

therewith shall be borne by the Lessee.  Should Lessee be successful in

obtaining a reduction in real estate taxes, then any refunds and/or costs

in connection with such appeal shall be prorated and Lessor shall refund

to Lessee a proportionate share of the net reduction.  Any assessments

which by law may be paid in installments may be so paid by Lessee and

Lessee shall be obligated to pay only the installments that are due during

the term of this Lease.  ~~Any payments made by Lessee for all real estate~~

~~taxes and assessments are recoverable from percentage rent as provided~~

~~for in Article III hereof.~~ Lessee shall pay to Lessor any tax levied by
any governmental authority on rents or rental income required to be paid
by Lessee to Lessor under the terms of this Lease.

INITIAL

IX

ALTERATIONS                     Lessee shall have the right at its sole cost and

                                expense to make such alterations or changes,

structural or otherwise, to the building and appurtenances located on

the demised premises, as it shall deem necessary or desirable for the

proper and efficient operation of its business provided, however, that

no structural alterations or changes shall be made which would impair

the structural integrity of said building and appurtenances.  No exterior

alterations or changes shall be made to the building's elevation, without

Lessor's prior written consent, which consent shall not be unreasonably

withheld.  Such changes or alterations shall conform with applicable

INITIAL

building codes and zoning regulations.  However, anything in this Lease

*In the event real estate taxes assessed against Lessee's building and the
Lessor's common facilities can be separately identified by a separate tax
bill or otherwise, the amount assessed against the building occupied by
Lessee plus Lessee's proportionate share of real estate taxes assessed against
the common facilities shall be the amount due from Lessee.  In the event
such separate identification is not possible Lessee's share of the real
estate taxes and common facilities shall be its proportionate share.

'to the contrary notwithstanding the Lessor agrees that the Lessee shall

not have the obligation at the end of the term of this Lease or any

extension thereof to restore the premises to the condition in which

they were originally.

X

REPAIRS                    Lessee agrees to make and pay for all repairs

to the roof and to the interior of the demised    **INITIAL**

premises, (including plate glass in windows and doors), which it deems 
necessary to
/keep the same in a good state of repair, except such repairs as are

hereinafter provided to be made by the Lessor.

Any construction, alteration, addition, or structural repair

to the demised premises required by any statute or rule, order, code or

regulation of a governmental agency, shall be made by and at the expense

of Lessor, unless such requirement is caused solely by reason of, and in

connection with, the operation by Lessee of its business on the demised

premises.

Lessor shall maintain and keep in good order, condition and
**INITIA.**
repair the foundation, exterior walls (including plate glass frames and

moldings), roof, sidewalks and curbs and all structural parts of the
                       roof,                                          **INITIAL**
building including/concealed plumbing and electrical systems.  However,

Lessee shall maintain all exposed plumbing and electrical fixtures and

equipment and shall repair clogged plumbing within the demised premises

caused by its use.  In connection with Lessor's obligation to maintain

the exterior of the building, the entire paintable exterior shall be

painted a color acceptable to Lessee at least once every five (5) years

during the lease term.

Lessor shall be responsible for repairs to any part of the

building which become necessary by reason of defective workmanship or

materials used in the construction of the building.  Lessor agrees to

promptly repair said defects as required.

XI

RIGHT TO ENTER          The right is reserved to Lessor, its agents and

workmen, at all reasonable times to enter upon

- 10 -

any part of the demised premises for the purpose of inspecting the same and making any repairs required for the protection or preservation of the building or its equipment or appurtenances.  Such repairs should be made during non-business hours, but, in any event, shall be performed in such a manner that the least possible interference occurs to Lessee's business.  Lessor and Lessee shall have the right to post notices of nonresponsibility on the demised premises.  Lessor may, during the last thirty (30) days of the lease term, post a "For Rent" sign no larger than 3' x 5' in dimensions.

XII

DESTRUCTION OF
     PREMISES

If, during the term of this Lease, the demised premises or more than ten percent (10%) of the other building, as shown on the Plot Plan are damaged or destroyed so that they cannot be repaired with due diligence within one hundred eighty (180) days after such destruction or damage,~ (said 180 days shall be extended by that amount of time during which weather conditions preclude such repairs) then this Lease shall, at the option of Lessee, terminate as of the date of such destruction.  The option to terminate shall be valid notwithstanding any such destruction may have been caused by a negligent act or omission on the part of Lessee, its agents, employees and subtenants.  Said option must be exercised/ by written notice within forty-five (45) days from the date of damage or destruction.  If there shall be a termination, as provided for above, Lessee shall immediately surrender and yield up said premises and all interest therein to Lessor within thirty (30) days, after Lessee's election to terminate/in which event Lessee shall not be liable for any further payments of rental or any other monetary obligations (the term "monetary obligation" is more particularly described in Article XXV hereof),  on account of this Lease, and Lessor shall refund any prepaid rentals and any other monetary obligations of Lessee for the period subsequent to the destruction, and Lessor may, in that event, re-enter and repossess said premises and be discharged from this Lease and may remove all persons therefrom.

In the event the demised premises or said other buildings are not sufficiently damaged to provide Lessee with the option to terminate, as provided above, or in the event the Lessee does not exercise said option to terminate within forty-five (45) days after any such damage or destruction, then, and in such event, Lessor shall promptly repair the

- 11 -

same and an abatement shall be made from the minimum rent and other monetary obligations of Lessee, if any, corresponding to the time during which and the extent to which the premises cannot be used by Lessee after the damages have occurred and before their repair.

XIII

FIXTURES                    Lessor shall not acquire any title or interest

in any fixtures, equipment, property or materials, installed on the demised premises by or on behalf of Lessee, and Lessor hereby waives all lien rights, if any, therein or thereto. Lessee may at any time or from time to time remove or exchange any or all of such fixtures, equipment, property or materials, and Lessee shall have thirty (30) days after the termination of this Lease to remove same from the demised premises, but shall repair, at its sole expense, all damage that may result from such removal.

Lessee expects to lease a portion of the trade fixtures and equipment (hereinafter referred to as "equipment") to be installed in the demised premises, and it will be necessary for Lessor to waive any lien rights with respect to said equipment for the benefit of the owner of said equipment. Lessor, therefore, agrees, for the benefit of the owner its successors and assigns, of any such equipment which Lessee may lease for installation in the demised premises and any such equipment which may from time to time be substituted therefor, and with the knowledge and understanding that such owner, its successors and assigns, will rely on this agreement in leasing said equipment to Lessee, as follows:

(1) Title to the equipment shall at all times remain in the owner of said equipment, its successors or assigns, and at no time shall title become vested in Lessor, or be subject to any lien or claims of Lessor against Lessee or its successors and assigns, including any claims based on any default of Lessee under this Lease. The equipment shall be deemed to constitute personal property and in no event shall the equipment become or be considered as part of the realty in which it is located or to which it may be attached, regardless of the manner of installation of the equipment in the premises.

(2) The owner of said equipment shall have the right at any time to enter upon the premises in order to remove the equipment pursuant to the terms of the lease of the equipment or any other agreement which it may enter into with Lessee, or by virtue of its rights under the law. If Lessee shall fail to remove the equipment from the premises within any period of

- 12 -

INITIAL



time specified in this Lease for the removal of personal property upon the expiration or earlier termination of this Lease, the owner of said equipment shall have the right within ten (10) days thereafter, to enter upon the premises and remove the equipment, without obtaining the prior consent of Lessor; provided, however, such owner repairs any damage to the premises caused by reason of such removal.

XIV

**LIABILITY AND FIRE INSURANCE**   Lessee agrees to carry and maintain in full force and effect throughout the term of this Lease, public liability and property damage insurance with recognized insurance companies authorized to transact business within the state in which the premises are located covering the demised premises.  The liability policies shall protect both Lessor and Lessee covering injury to or death of any one person in the sum of not less than  ONE MILLION DOLLARS ---------($1,000,000.00) and covering injury to or death of more than one person injured in any one accident in the sum of not less than  FIVE MILLION DOLLARS ------- ($ 5,000,000.00). Property damage insurance shall protect Lessor and Lessee in the sum of  ONE HUNDRED THOUSAND AND NO/100 --------  ($ 100,000.00). Lessor shall be furnished with copies of said policies and all endorsements thereto, or certificates evidencing such coverage is in effect.

Lessor shall provide and pay for fire and extended coverage insurance, upon the building on the demised premises, including all fixtures and equipment therein installed by Lessor, for the full replacement value thereof, without deduction for depreciation, but exclusive of excavations, foundations, and footings.  Lessee agrees to pay to Lessor the cost, or Lessee's proportionate share of such insurance upon the presentation of receipted bills.

Lessor and Lessee do hereby mutually waive their entire right of recovery and any right of subrogation and do hereby release each other, their agents, employees and subtenants from liability for any and all damage to or destruction of the premises covered by said fire insurance, which is caused by any negligence or act of omission on the part of Lessor, Lessee, their agents, employees or subtenants.

Lessee may elect upon written notice to Lessor to provide and pay for such fire and extended coverage insurance, as hereinabove provided. Lessee and Lessor agree that any insurance proceeds shall be made available

- 13 -

INITIAL



for the restoration and repair of the building, on the demised premises. Said policy shall name Lessee, Lessor, and, at Lessor's request, the holder of any first mortgage or first deed of trust encumbering the demised premises as insureds, as their interests may appear. Promptly upon the effective date of such insurance or any renewal or replacement thereof, Lessee shall provide Lessor with a certificate or certificates evidencing the insurance coverages required by this Article, providing that such insurance shall not be terminated without at least thirty (30) days prior written notice to Lessor.

~~Lessee may recover the cost of premiums for such insurance~~ INITIAL
~~from percentage rent as provided herein.~~

XV

DEFAULT BY LESSOR         The Lessor agrees that if the Lessor fails to pay any installment of taxes or assessments or any interest, principal, costs or other charges upon any mortgage or mortgages or other liens and encumbrances affecting the demised premises and to which this Lease may be subordinate when any of the same become due, or if Lessor fails to make any repairs or do any work required of the Lessor by the provisions of this Lease, or in any other respect fails to perform any covenant or agreement in this Lease contained on the part of the Lessor to be performed, then and in any such event or events the Lessee, after the INITIAL

continuance of any such failure or default for ~~fifteen (15)~~ thirty (30) days after notice in writing thereof is given by the Lessee to the Lessor, may pay said taxes, assessments, interest, principal, costs and other charges, and cure such defaults all on behalf of and at the expense of the Lessor, and do all necessary work and make all necessary payments in connection therewith including but not limiting the same to the payment of any counsel fees, costs and charges of or in connection with any legal action which may have been brought, and the Lessor agrees to pay to the Lessee forthwith the amount so paid by the Lessee, together with interest thereon at the rate of ___ten___ percent (10%) per annum, and agrees that the Lessee may withhold any and all rental payments and other payments thereafter becoming due to the Lessor pursuant to the provisions of this Lease or any extension thereof, and may apply the same to the payment of such

- 14 -

indebtedness of the Lessor to the Lessee until such indebtedness is

fully paid with interest thereon as herein provided.  Nothing herein

contained shall preclude the Lessee from proceeding to collect the amount

so paid by it as aforesaid without waiting for rental offsets to accrue,

and if at the expiration of this Lease or any extension thereof there

shall be any sums owing by the Lessor to the Lessee, this Lease may at

the election of the Lessee be extended and continue in full force and

effect until January 31st of the year following the date when the

indebtedness of the Lessor to the Lessee shall have been fully paid.

XVI

DEFAULT BY LESSEE          In the event Lessee shall (a) at any time default

in the payment of any rental herein provided for,

or in the performance of any of its covenants, agreements or obligations

hereunder, and shall fail to cure such default (or commence to cure such

default and complete said cure within a reasonable time), within fifteen

(15 ) days after receipt by Lessee of written notice from Lessor, or (b)

make a general assignment for the benefit of creditors, or file a voluntary

petition in bankruptcy, or be adjudicated bankrupt or insolvent, or permit

a receiver to be appointed to take possession of a substantial portion of

its assets or of this leasehold, and such assignment, bankruptcy, insol-

vency, or receivership proceeding shall not be dismissed within thirty

(30) days, then Lessor may, either with or without notice or demand:

> (1)  Without terminating this Lease, re-enter the
> demised premises and relet the whole or any part thereof for
> the account of Lessee, and may collect said rent and apply it
> on the amount then or to become due from Lessee hereunder and
> on any expense of such reletting, and may at any time, or from
> time to time, recover from Lessee the balance then due; or

> (2)  Terminate this Lease and re-enter the premises
> either with or without process of law, and expel and remove
> therefrom Lessee or any or all parties occupying the same, using
> such force as may be necessary so to do, and without prejudice
> to any remedies that might be otherwise available for rent
> accrued and unpaid prior to such termination.

Lessor shall not by a re-entry or other act be deemed to have

terminated this Lease unless Lessor shall have given written notice of

termination.

The remedies of Lessor specified herein shall be cumulative as

to each other and as to all such allowed by law; provided, however, that
nothing contained in this Paragraph XVI shall be construed as limiting
any other legal or equitable remedy Lessor may otherwise have against
Lessee.

INITIAL

- 15 -

XVII

LIENS                    Lessee agrees that it will at all times save and

keep Lessor and the demised premises free and

harmless of and from any liability on account of or in respect to any

liens for work and labor done or materials furnished at the instance and

request of Lessee in, on or about the demised premises.

XVIII

ATTORNEY FEES            In the event of litigation arising from default

in the performance of any of the provisions of

this Lease by either party, the prevailing party in such litigation

shall be entitled to receive from the other party reasonable attorney

fees and costs of suit incurred in connection with said litigation.   In

the event that either party shall, by reason of any act or omission in

violation of the terms hereof, or by any other reason arising out of the

Lessor-Lessee relationship, be made a party to any litigation commenced

by a third party, then the party hereto performing the said act or

suffering the said omission shall pay all costs, expenses and reasonable

attorney fees incurred by the other party hereto which arise from or are

in connection with such litigation.

XIX

ASSIGNMENT               Lessee shall not assign this Lease without the

prior written consent of Lessor, which Lessor

agrees will not be unreasonably withheld.   The Lessee is hereby given

the right to sublet the demised premises or any part thereof, but not-

withstanding such subletting the Lessee shall continue liable for the     INITIAL

performance of the terms, conditions and covenants of this Lease.   No

such assignment or subletting shall allow any use which is (a) not

authorized by this Lease, or (b) which would violate the use provisions of

leases with other tenants in the shopping center who are then actively

engaged in such use in said center.   Nothing herein contained shall

require the consent of

/Lessor to an assignment of this Lease by Lessee to a parent corporation

or to the surviving corporation in the event of a consolidation or merger.

Notwithstanding anything in the foregoing to the contrary if Lessee
desires to sublease the entire demised premises, it shall give Lessor
written notice of its intention so to do. Within ninety (90) days after
receipt of such notice, Lessor may elect in writing to terminate the Lease
effective not more than ninety (90) days after such election and each party
shall be relieved of any further obligation to the other under this Lease
as of the termination date.   In the event that Lessor elects to terminate
the Lease hereunder, Lessee shall be given a period of not less than
thirty (30) days within which to remove its inventory and fixtures from the
premises.

XX

NOTICES                   Notices and demands shall be forwarded by

registered or certified mail, postage prepaid, to:

Lessor:  White Pines Associates, II
         7442 East Butherus Drive
         Scottsdale, Arizona 85260


Lessee:  Arden-Mayfair, Inc.
         P. O. Box 2256, Terminal Annex
         L. A., California 90051

subject to the right of either party to designate by notice in writing

any new address to which notices, demands and installments of rental may

be sent.


XXI


CONDEMNATION              In the event proceedings be taken by any lawful

                         authority to condemn or otherwise acquire any

part of the gross floor area of the building on the demised premises,

or in excess of ten percent (10%) of the common facilities as shown on

the Plot Plan, or in excess of five percent (5%) of the common facilities

crosshatched on the Plot Plan, the Lessee shall have the option by written

notice to Lessor at any time prior to the date the demised premises are

taken by the condemning authority and for a period of thirty (30) days

thereafter, to terminate this Lease, effective as of the date of

possession.  In the event of such termination, prepaid rentals and any

other monetary obligations of Lessee for the period subsequent to the

termination shall be refunded to Lessee.

Should Lessee not elect to so terminate this Lease, or should

any such taking not be sufficient to allow Lessee such option to

terminate, this Lease shall continue in full force and effect, and

Lessor, at its own cost and expense, shall restore, repair, and remodel

the building on the demised premises and/or the common facilities to the

extent necessary to provide a store or building suitable for the business

of Lessee permitted to be conducted therein under the provisions of this

Lease.  Lessee shall be entitled to a reduction in minimum rent and any

other monetary obligations thereafter required to be paid, which re-

duction shall be the greater of either; (a) in proportion to the ratio

- 17 -

INITIAL


which the number of square feet of gross floor area of the building taken

bears to the original number of square feet of gross floor area of the

building, or (b) an annual amount equal to nine percent (9%) of the total

award (1) attributable to the taking of the common facilities as shown on

the Plot Plan, or (2) attributable to a portion of the common facilities

taken which is closest to the demised premises and is three times the

number of square feet in the demised premises; whichever is the smaller,

received by Lessor for such condemnation, less the amount expended by

Lessor for restoring the premises and for expenses directly related to

obtaining the award.   Lessee shall also be entitled to a reasonable

suspension or diminution of the rent and any other monetary obligations

thereafter required to be paid hereunder during the time required for

any restoration and repair, taking into consideration the time and extent

of interference with Lessee's business.

Each party hereto shall be free to make claim against any

condemning authority for the amount of the actual, provable damage done

to each of them.

## XXII

QUIET POSSESSION AND          Lessor hereby covenants, warrants and agrees that
SUBORDINATION
.          at all times during the term hereof, provided

Lessee is not in default hereunder, Lessee shall have full, peaceful and

quiet possession of the demised premises, and further that Lessor owns

the demised premises in fee simple, has full right and power to make this

Lease, and that there are no mortgages, deeds or trust or liens superior

to this Lease on the demised premises, and all other areas, if any, the

use of which is granted to Lessee hereunder.

The Lessor agrees, prior to delivery by the Lessee of an

executed copy of this Lease, to furnish to the Lessee without cost to

the Lessee, proof satisfactory to the Lessee that the Lessor's title is

in accordance with the foregoing covenants. ~~and an agreement executed by~~ Lessee agrees that this Lease shall be
~~the mortgagee if any, in form satisfactory to the Lessee, subordinating~~ subordinate to any mortgages or trust deeds that may hereafter be placed upon the premises,
~~each mortgage effecting said premises to this Lease.~~ to any and all advances made or to be made under them, to the interest and all obligations

secured by them, and to all renewals, replacements and extensions of them.   Provided,

however, the mortgagee or beneficiary named in any such mortgages or trust deeds shall
recognize the lease of the /Lessee in the event of foreclosure if the/Lessee is not in
default under the terms of this Lease, and Lessee's tenancy shall not be disturbed,

- 18 -



XXIII

BUILDING & COTENANCY          The Lessor agrees at the Lessor's expense to con-
   REQUIREMENTS                      or cause to be constructed
                              struct /in addition to the demised premises, a

retail store building or buildings having not less than forty five thousand
                                      area                                     INITIAL
(45,000) square feet of gross floor /space all as shown on the Plot Plan

marked Exhibit "A"-1.
                                                                              INITIAI
          Notwithstanding anything in this Lease to the contrary, the

term of this Lease shall not commence as stated in Article I until Lessor
              with Long's Drug Store requring Long's to construct a store
has executed a bona fide agreement / having not less than ten thousand (10,000
                                        leases
square feet of gross floor area and/with other retail tenants having not

less than ten thousand (10,000) square feet of gross floor area in the aggre-
gate.                   Store          retail
/Said Long's Drug/ and other/tenants shall be open for business on or       INITIAL

before the date Lessee opens for business.  In the event Lessor defaults

in the performance of this provision, Lessee shall have the option to

terminate this Lease or to delay the opening of its business and to delay

the commencement of the lease term until the said Long's Drug Store
              retail
and other/tenants have opened for business to the public.                   INITIAL

                              XXIV

LESSEE ATTORNEY FOR           The Lessor hereby appoints and constitutes the
   LESSOR
                              Lessee the Lessor's true and lawful attorney in

fact in the Lessor's name to apply for and secure from any governmental      JNITIA

authority having jurisdiction thereover any permits or licenses which may

be necessary in connection with the construction of any new building area
and the making of any alterations, additions, changes and repairs.

Lessor agrees upon request by the Lessee to execute or join in the execu-

tion of any application for such permits and licenses.

                              XXV

MISCELLANEOUS                 The waiver of either party of any of the covenants

                              herein contained shall not be deemed a waiver of

such party's right to enforce the same or any other covenant contained

herein.  The rights and remedies given to the parties hereunder shall be

in addition, and not in lieu of, any right or remedy as provided by law.

                            - 19 -

If Lessee shall hold the premises beyond the term herein specified, or any renewal thereof, with the consent, express or implied, of Lessor, such holding over shall be construed to be a month-to-month tenancy, /unless otherwise mutually agreed upon.

upon the same terms and conditions as set forth in this Lease,

INITIAL

The term "Lessor" shall include the plural, if necessary. All terms used in the singular or in the masculine gender shall apply to the plural or to the feminine or neuter gender as the context requires.

The term "gross floor area" shall be defined to include all floor area within any building constructed upon the shopping center measured from the exterior surface of exterior walls and from the center of common walls, but, shall be exclusive of truck ramps, loading and delivery docks.

The term "proportionate share" is based on the total gross floor area (in square feet) of the building on the demised premises in proportion to the total gross floor area of all buildings in the shopping center.

The term "shopping center" shall include the demised premises, all other retail store building, and the common facilities as shown on the said Plot Plan.

The term "monetary obligations" shall include Lessee's payments for percentage rent, taxes, insurance, and parking.

The term "minimum rental" as used herein shall be defined to include the basic rental when the Lease does provide for percentage rental.

The term "gross sales" as used herein shall mean the gross sales of all merchandise at, in or from the demised premises and its licensee or concessionaires, if any.

The term "lease year" means in reference to the first lease year, the period from the date of commencement of the lease term to the expiration of twelve (12) calendar months after the last day of the calendar month in which the lease term commences. Each twelve (12) calendar month period thereafter shall constitute a lease year.

INITIAL

The article headings are for convenience only, and shall not be considered in the interpretation thereof.

In the event of any controversy, the laws of the city and county and state in which the premises are located, applicable to such controversy, shall prevail.

- 20 -

Neither this Lease or any part thereof shall be construed to create a joint enterprise, a partnership, or any other relationship except that of Lessor and Lessee.

This Lease shall apply to and bind the heirs, executors, administrators, successors and assigns of the parties hereto.

No modification of this Lease shall be binding unless evidenced by an agreement in writing signed by each of the parties hereto.

Lessee and Lessor agree to execute a short form of Lease and Lessor agrees to cause said short form to be recorded at Lessor's expense and to provide Lessee with a recorded copy thereof.

IN WITNESS WHEREOF, Lessor and Lessee have caused this agreement to be executed on the day and year first hereinabove set forth.


WHITE PINE ASSOCIATES, II

By: _____
           General Partner

By: _____

                                    "LESSOR"


ARDEN-MAYFAIR, INC.

By: _____
           Vice President

By: _____
           Secretary

                                    "LESSEE"


- 21 -



## A DESCRIPTION OF PARCEL 1A, UNIVERSITY MEADOWS SHOPPING CENTER

All that portion of the West half of Section 21, Township 21 North, Range 7 East of the Gila and Salt River Base and Meridian, Coconino County, Arizona, more particularly described as follows:

Commencing at the South quarter corner of said Section 21, being monumented with a Brass Cap and Railroad Iron;

Thence S89°23'38" W, along the South line of said Section 21, a distance of 1,211.32 feet to a point on th easterly right-of-way line of U. S. Highway 89-A, said point being a highway marker 50 feet distant from and at a right angle to the highway centerline;

Thence N 1°29'00" W, along the Easterly right-of-way line of U. S. Higway 89-A, a distance of 1,389.18 feet to a 5/8-inch iron pin with an aluminum cap;

Thence S 86°17'17" E, a distance of 301.24 feet to a 5/8-inch iron pin with an aluminum cap;

Thence N 1°29'00" W, parallel to the Easterly right-of-way line of U. S. Highway 89-A, a distance of 319.18 feet, said point being the TRUE POINT OF BEGINNING of this description;

Thence N 1°29'00" W, a distance of 408.69 feet, to a 5/8-inch iron pin with an aluminum cap set in concrete;

Thence N 88°31'00" E, a distance of 500.00 feet to a 5/8-inch iron pin with an aluminum cap set in concrete;

Thence S 1°29'00" E, a distance of 433.67 feet;

Thence S 88°31'00" W, a distance of 242.00 feet;

Thence N 1°29'00" W, a distance of 24.98 feet;

Thence S 88°31'00" W, a distance of 258.00 feet to the TRUE POINT OF BEGINNING of this description.



EXHIBIT A

WITNESS MY HAND AND Case 25-10068-CTG   Doc 1055-1   Filed 05/31/25   Page 25 of 38

TE OF ARIZONA

HELEN I. HUDGENS
COCONINO COUNTY RECORDER

BY   COPY
DEPUTY

:KET ___747___ PAGE _671-61_

DATE JUN 3 0 2 1980 -12 20

REQUEST OF: *Arden-Mayfair, Inc*

*4 m c - 2 (*

## SHORT FORM OF LEASE

THIS SHORT FORM OF LEASE is made and entered into at Commerce, California, as of the __5th__ day of __May__ by and between WHITE PINE ASSOCIATES, II, an Arizona Limited Partnership, hereinafter referred to as "Lessor," and ARDEN-MAYFAIR, INC., a Delaware corporation, hereinafter referred to as "Lessee."

IN CONSIDERATION of the terms, covenants, and conditions in that certain Lease of even date herewith between the parties hereto, hereinafter called "the Lease," Lessor does hereby lease to Lessee and Lessee does hereby hire and lease from Lessor, a portion of the real property described in Exhibit "A" attached hereto and made a part hereof, which said real property is more particularly described in the Lease, for the period of time and upon the terms and conditions more fully set forth in the Lease. The said Lease is hereby incorporated herein by reference.

The initial term of the Lease shall commence on the day the improvements to be constructed on the premises open for business to the general public, but in no event later than sixty (60) days after the date of substantial completion of the said improvements and shall terminate twenty-five (25) years from the last day of the calendar month in which the Lease term commences. The Lease, among other matters, grants to Lessee ten (10) separate options to renew the initial lease term for additional consecutive periods of five (5) years each.

IN WITNESS WHEREOF, the parties have executed this Short Form of Lease as of the day and year first above written.

ARDEN-MAYFAIR, INC.,
a Delaware Corporation

By: _____
        Vice-President

By: _____
        Asst. Secretary

WHITE PINE ASSOCIATES, II,
an Arizona Limited Partnership

By: _____
                General Partner

By: _____

LEASE EXECUTED APRIL 6, 1979
WHITE PINES ASSOCIATES II, an Arizona limited partnership, Lessor
ARDEN-MAYFAIR, INC., a Delaware corporation, Lessee
PREMISES located at NEC of Milton Road and University, Flagstaff,
Coconino County, Arizona.

## W I T N E S S E T H

The terms and conditions of the above referenced Lease are
hereby amended as follows:

1.   The date, November 1, 1980, set forth in Article IV is hereby
deleted and the date, April 1, 1981, is substituted in lieu thereof
as the date by which Lessor must have completed construction of the
building.

2.   The sum SIX HUNDRED THIRTY FIVE THOUSAND DOLLARS ($635,000.00)
set forth in Paragraph 1 of the Addendum is hereby deleted each
and every place it appears in said Paragraph and the sum SEVEN
HUNDRED SIXTY TWO THOUSAND DOLLARS ($762,000.00) is substituted
in lieu thereof.

*voided 4/1/82 w/voided Addendum which was replaced by 2nd Lease signing of 4-1-82*

~~3.   The plot plan of the University Meadows prepared by Charles Chalmers MacLean Ltd., dated August 14, 1979 last revised December 10, 1979, and attached hereto as Exhibit A-1 is substituted for the plot plan of Charles Chalmers MacLean dated March 4, 1979, and originated attached to the lease as Exhibit A-1.~~

~~4.   The premises are located on the property more particularly described on Exhibit A attached hereto and made a part hereof.~~

EXECUTED as of the dates set forth below.

_____

WHITE PINES ASSOCIATES II, an Arizona limited partnership, Lessor

By: _____        Date: 1-9-80

   Its: _____


ARDEN-MAYFAIR, INC., a Delaware corporation, Lessee

By: _____        Date: 6/3/80

   Its:   Vice President


By: _____        Date: _____

   Its: _____

## SECOND LEASE MODIFICATION AGREEMENT

This Second Lease Modification Agreement is made this 1st day of June, 1982, between WHITE PINE ASSOCIATES II, an Arizona limited partnership, as Lessor, and ARDEN-MAYFAIR, INC., a Delaware corporation, as Lessee:

## W I T N E S S E T H:

WHEREAS, Lessor and Lessee entered into a certain lease agreement dated April 6, 1979, hereinafter referred to as the "Lease," covering certain premises known as the NEC of Milton Road and University Avenue in Flagstaff, Coconino County, Arizona, as more particularly described in the Lease;

WHEREAS, the Lease was amended by Lease Amendment executed June 3, 1980, by Lessee and January 9, 1980, by Lessor; and

WHEREAS, Lessor and Lessee desire to further amend the Lease in the particulars hereinafter set forth.

NOW, THEREFORE, for valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties hereto do mutually agree as follows:

1. The first sentence of the first paragraph of Article III shall be deleted and the following substituted therefor:

"Lessee agrees to pay to Lessor as annual minimum rental for the demised premises during the term of this Lease and any extension thereof,

A. The sum of ONE HUNDRED EIGHTY-SEVEN THOUSAND NINE HUNDRED TWENTY-THREE DOLLARS AND EIGHT CENTS ($187,923.08) payable at the rate of FIFTEEN THOUSAND SIX HUNDRED SIXTY DOLLARS AND TWENTY-SIX CENTS ($15,660.26) per month."

2. The second paragraph of Article III shall be deleted and the following substituted therefor:

"Lessee further agrees to pay to Lessor, as percentage rental, a sum equal to one percent (1%) of Lessee's annual gross sales that exceed EIGHTEEN MILLION SEVEN HUNDRED NINETY-TWO THOUSAND THREE HUNDRED EIGHT DOLLARS ($18,792,308.00)."

3. The words and figures "TWENTY-FIVE THOUSAND FOUR HUNDRED (25,400.00)" will be deleted from the first paragraph of Article IV and the words and figures "THIRTY-TWO THOUSAND ONE HUNDRED TWENTY-THREE AND SIX TENTHS (32,123.6)" are substituted therefor.

1

4. The second and third paragraphs of Article IV shall be deleted and the following substituted therefor:

"Lessee has provided the architect with a floor plan showing the location of trade fixtures and plumbing and electrical outlets and Lessor has provided Lessee with completed plans and specifications.

Construction of Lessee's building has been commenced and Lessor agrees to diligently prosecute construction until completion. Lessor covenants that the building to be constructed on the premises will be constructed so as to comply with all laws, rules, and regulations of all public offices and governmental agencies applicable at the time of such construction so as to permit Lessee to use the premises as a public supermarket. Should Lessor be unable to complete construction prior to September 1, 1982, then, in such event, Lessee may at any time thereafter terminate and cancel this Lease by notice in writing to the Lessor and upon giving of such notice, each party shall be released from any and all obligations and liabilities to the other."

5. Subparagraph (3) of the first paragraph of Article V shall be deleted and the following substituted therefore:

"(3) Parking areas to accommodate not less than FOUR HUNDRED TWENTY (420) automobiles including space for at least one hundred and thirteen (113) automobiles in the area as shown crosshatched on said Plot Plan."

6. Subparagraph (1) of the fifth paragraph of Article V shall be deleted and the following substituted therefor:

"(1) Maintain the parking area to accommodate not less than <u>FOUR HUNDRED TWENTY</u> (420) automobile parking spaces."

7. The Lessor's notice address shall be deleted from Article XX and the following substituted therefor:

"Lessor:               c/o Sutter Hill Management, Inc. (Southwest)
                       2821 E. Camelback, Suite 600
                       Phoenix, Arizona 85016"

8. The first paragraph of Article XXIII shall be deleted and the following substituted therefor:

"The Lessor agrees to construct, at the Lessor's expense, or cause to be constructed by agreement with Long's Drug Stores, Inc., in addition to the demised premises, a retail store building or buildings having not less than FORTY-TWO THOUSAND (42,000) square feet of gross floor area all as shown on the Plot Plan marked Exhibit "A-1"."

2

9. The first sentence of the second paragraph of Article XXIII shall be deleted and the following substituted therefor:

"Notwithstanding anything in this Lease to the contrary, the term of this Lease shall not commence as stated in Article I until Lessor has executed (1) a bona fide agreement with Long's Drug Store requiring Longs to construct a store having not less than TEN THOUSAND (10,000) square feet of gross floor area, and (2) leases with other retail tenants having not less than SIX THOUSAND (6,000) square feet of gross floor area in the aggregate. In addition, Lessee shall have the right to delay the opening of its business, and to delay the commencement of the lease term and minimum rental obligation as set forth in Article I and Article III, respectively, until said Long's Drug Store has opened for business to the public."

10. The Plot Plan attached to the Lease as Exhibit A-1 shall be deleted and the Plot Plan, attached to this Amendment as Exhibit A-1 shall be substituted therefor. All references in the Lease to Exhibit A-1 shall refer to the Exhibit A-1 attached hereto. *Revised by 3rd Lease mod. Agmt. 8/6/84*

11. The following sentence shall be added to the second paragraph of Article VI:

"Notwithstanding, should Lessee determine that it will have or allow to have a delicatessen operation within the demised premises, and so long as Lessee, its licensee, sublessee, or anyone holding under or through Lessee continues to operate said delicatessen, Lessor agrees not to lease space in the shopping center to another delicatessen operator or any business which derives more than five (5) percent of its volume from items normally sold or carried by a delicatessen operator."

*ab 6/3/80*

12. The ADDENDUM, which is attached to the Lease and consists of four (4) pages, shall be deleted in its entirety and shall be of no further force or effect.

13. Except as modified in this Second Lease Modification Agreement and the above mentioned Lease Amendment, the foregoing Lease shall remain in full force and effect.

ARDEN-MAYFAIR, INC.
a Delaware corporation

WHITE PINE ASSOCIATES II
By: Sutter Hill Management, Inc. (Southwes

By: _____

By: _____

Its: _____

Its: _____

## THIRD LEASE MODIFICATION AGREEMENT


This Third Lease Modification Agreement is made this _____ day of _____, 1984, between Paul W. Learner, an individual, as Lessor, and Arden-Mayfair, Inc., a Delaware corporation, as Lessee:

## W I T N E S S E T H :

WHEREAS, White Pine Associates II, an Arizona limited partnership, predecessor in interest to Lessor, and Lessee entered into a certain lease agreement dated April 6, 1979, hereinafter referred to as the "Lease", covering certain premises in the City of Flagstaff, Coconino County, Arizona, more particularly described in the Lease;

WHEREAS, the Lease was amended by a certain Lease Amendment executed on January 9, 1980 and June 3, 1980, and a certain Second Lease Modification Agreement executed on June 1, 1982; and

WHEREAS, Lessor and Lessee desire to further amend the Lease in the paritculars hereinafter set forth to replace Exhibit A-1 presently incorporated into and made a part of the Lease by the Second Lease Modification Agreement.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do mutually agree as follows:

1. The plot plan incorporated into and made part of the Lease by the Second Lease Modification Agreement (and attached thereto as Exhibit A-1) is hereby deleted and the site plan attached hereto as Exhibit A-1 is hereby substituted therefor. Henceforth, all references in the Lease to "Exhibit A-1" or the "Plot Plan" shall be deemed to refer to Exhibit A-1 attached hereto.

2. Except as modified in this Third Lease Modification Agreement and the above-mentioned Lease Amendment and the Second Lease Modification Agreement, the Lease shall remain in full force and effect.

3. This Agreement may be executed in any number of counterparts, each of which shall be an original when executed but all of which shall constitute one and the same instrument.

ARDEN-MAYFAIR, INC.
a Delaware corporation


By: _____

Its _____


_____
PAUL W. LEARNER



GATE

FENCE

EL RANCHO MARKET 31,920 SQ. FT.

SHOP 'D' 7,576 SQ. FT.

LONG'S DRUG 23,520 SQ. FT.

SHOP 'C' 4,100 SQ FT

SHOP 'E' 4,800 SQ FT

PARCEL 1B 0.991 AC.

XHAE TREE AREA

PARCEL 1A 4.84 AC.

PARCEL 2 2.66 AC.

PROJECT IDENTITY SIGN UNIV. MEADOWS

R I O R D O N   R A N C H   R O A D

141.28'

MIN. 71.00'

60.00'

S 1°29'00"E 140.60'

30.0' R.

S 1°29'00"E 311.28'

PARCEL LINE 1

PARCEL 3B LOT 7 .70 AC.

B

C H A M B E R S   D R I V E

S 66°31'00"W 114.00'

PARCEL 3A LOTS 8, 9, 10 & 11 1.787 AC.

S 88°31'00"W 234.00'

1

2

S 88°17'17"E 237.61'

BUILDING ENVELOPE TOTAL BUILDING AREA NOT TO EXCEED 3,500 SQ. FT.

S 1°29'00"E 140.60'

100.00' ±

M I L T O N   R O A D   (U. S.   H I G H W A Y   89A)

380' "CLEAR WINDOW"

26.50'

120'

S 0°.00

S 88°31'00"W 290.00'

S 1°29'00"E 290.00'

BUILDING ENVELOPE TOTAL AREA NOT TO EXCEED 8,000 S

BLDG. EL 30,569 & 0.70

BLDG. EL 30,569 & 0.70

P L A T   P L A N
SCALE: 1"=100.0'

NORTH

7-2

NOTES ADDED 6-10-82 BY H.W.P. & 6-14-82, & 7-21-52 & 6-2

7-21-82 & 6-2

## SITE PLAN - EXHIBIT "A-1"
### AT
# UNIVERSITY MEADOWS SHOPPING CENTER
### FLAGSTAFF, ARIZONA
SAGUARO DIVERSIFIED PROJECTS, INC

PHILLIPS & ASSOCIATES, A.C.C.
HOWARD W. PHILLIPS, AIA
8719 E LINCOLN DR        SCOTTSDALE, AZ

MAY 18, 1982
DRAWN BY W.M.
8110 H

GATE

FENCE

EL RANCHO MARKET
31,920 SQ. FT.

SHOP 'D'
7,575 SQ. FT.

LONG'S DRUG
23,520 SQ. FT.

SHOP 'E'
4,400 SQ FT

SHOP 'G'
4,150 SQ FT

PARCEL 1B
0.99 AC

XMAS TREE AREA

PARCEL 1A
4.844 AC.

PARCEL 2
2.66 AC.

PROJECT IDENTITY SIGN
UNIV. MEADOWS

R I O R D O N   R A N C H   R O A D

141.28'

S 1°29'00"E 140.60

60.00'
MIN

80.0'±

S 1°29'00"E 311.28'

B
1

BUILDING ENVELOPE
TOTAL BUILDING
AREA NOT TO
EXCEED 3,500
SQ. FT.

PARCEL 3B
LOT 7

B

S 1°29'00"E 140.60'

C H A M B E R S   D R I V E

S 88°31'00"W 114.00
S 88°31'00"W

PARCEL 3A
LOTS 8,9,10
1.797 AC

B
2

N 88°31'00"W 234.00

S 88°31'17"E
237.61'

BUILD
ENVELO
TOTAL
AREA
TO EXC
8,000 S

100.00'±

S 1°29'00"E 290.00'

M I L T O N   R O A D   (U.S. HIGHWAY 89A)

BLDG. EN
30,569
0L 0.70

26.50'

360'  "CLEAR WINDOW"

120'

P L A T   P L A N
SCALE: 1" = 100.0'

NORTH

* NOTES ADDED 5-10-82 BY H.W.P. * 6-14-82, * 7-21-82 * 6-2

SITE PLAN - EXHIBIT "A-1"
AT
UNIVERSITY MEADOWS
SHOPPING CENTER
FLAGSTAFF, ARIZONA
SAGUARO DIVERSIFIED PROJECTS, INC

PHILLIPS & ASSOCIATES, A.C.C.
HOWARD W. PHILLIPS, AIA
8719 E LINCOLN DR     SCOTTSDALE, AZ

MAY 18, 1982
DRAWN BY W.M.
8110 H

## FOURTH AMENDMENT TO LEASE AGREEMENT

This Fourth Amendment to Lease Agreement ("Amendment") is made as of __7/28/2020_____, 2020 between **LNN Enterprises Inc.**, an Arizona corporation through its successors in interest ("Landlord"), and **Jo-Ann Stores, LLC**, an Ohio limited liability company through its successors in interest ("Tenant").

## RECITALS:

A.    Landlord, through its predecessors-in-interest, and Tenant, through its predecessors-in-interest, entered into a certain Sublease dated December 19, 1991 ("Sublease") that incorporates the master Lease dated April 6, 1979 ("Master Lease"), the Master Lease includes (1) an easement dated December 21, 1979, its First Amendment dated June 3, 1980 and Second Amendment dated August 27, 1982 and (2) a first Lease Amendment dated April 6, 1979, Second Lease Modification Agreement dated June 1, 1982 and Third Lease Modification Agreement dated August 6, 1994 (collectively, the "Lease");

B.    The Lease relates to certain premises consisting of approximately 17,520 square feet of ground floor area ("Premises") in the shopping center known as South Riordan Ranch Road located in Flagstaff, AZ ("Shopping Center");

C.    The Lease expires on August 31, 2022;

D.    Landlord and Tenant desire to modify the Lease as set forth below.

In consideration of the mutual covenants set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## AGREEMENT:

1.    Recitals.  The foregoing recitals are incorporated herein by reference. Capitalized words used in this Amendment without definition have the same meanings as those ascribed to them in the Lease.  If there is any conflict between this Amendment and the Lease, this Amendment controls.

2.    Current Term Expiration.  The current term of the Lease now expires August 31, 2020.

3.    Term.  The term of the Lease is then extended through August 31, 2025.  The period commencing on September 1, 2020 and terminating at midnight on August 31, 2025 is known as the "Renewal Period".  The Renewal Period is part of the term and the new expiration date is August 31, 2025.

4.    Default Waiver.  Commencing April 1, 2020 through June 30, 2020, notwithstanding anything to the contrary in the Lease, any and all late fees, interest or other penalties with respect to Rent (as defined below) for April through June 2020 are void and fully waived.  Landlord acknowledges and agrees that each and every notice of default, including Landlord's attempt to terminate the Lease, regarding the nonpayment of Rent for April through June 2020 is hereby fully revoked, rescinded, null, and void.

5.      Rent.    Commencing September 1, 2020, and notwithstanding anything to the contrary in the Lease, Tenant's "Fixed Minimum Rent" shall be as shown in the rent chart below.

(a)      Fixed Minimum Rent shall be as set forth in the below rent chart;

| Renewal Period Months | $ PSF | $ Annual Payment |
|---|---|---|
| 9/1/20 – 8/31/25 | $ 8.00 | $140,160.00 |
| 1st Extended Term | | |
| 9/1/25 – 8/31/30 | $ 9.00 | $157,680.00 |
| 2nd Extended Term | | |
| 9/1/30 - 8/31/35 | $ 10.00 | $175,200.00 |
| 3rd Extended Term | | |
| 9/1/35 - 8/31/40 | $ 11.00 | $192,720.00 |

(b)      The charges for all common area costs and insurance charges, payable by Tenant shall be Two Dollars and Seventy-Five Cents ($2.75) per square foot ("Fixed Common Area Costs") and shall be calculated and paid in accordance with the Lease.  Fixed Common Area Costs for each Extended Term shall increase by fifteen (15%) percent on the first day of each Extended term;

(c)      The first and last sentence of Section 6.5 of the Sublease shall be deleted in its entirety. Insurance shall now be included within Fixed Common Area Costs;

(d)      Real estate tax ("Taxes") remain and shall be calculated and paid in accordance with the Lease; and

(e)      Common area costs, insurance charges, Taxes, additional rent, costs, expenses and pass-throughs shall be known as "Additional Rent".  Additional Rent together with Fixed Minimum Rent shall be known as "Rent".

4.      Use of Premises.      The first two paragraph of Section VI of the Master Lease and the first sentence of Section 6 of the Sublease shall be deleted and replaced with the following:

The Premises shall be used for the purpose of the operation of a retail sale of all types of fabrics, notions, arts and crafts, artificial flowers, sewing machines and other items normally sold in a fabric and arts and crafts store.

5.      Parking.    Article V of the Master Lease shall be amended to include that Tenant shall have one (1) reserved parking spaces directly in front of the Premises for online pick up orders. Signs for such parking spaces shall be provided by Tenant and approved and installed by Landlord. Parking space monitoring will be at the discretion and the responsibility of the Tenant.

6.      Repairs and Maintenance.  Notwithstanding anything to the contrary in Section X of the Master

Lease, Landlord shall be responsible for the maintenance, repair and replacement of the foundation, floor slab, roof structure, exterior walls (excluding storefront glass and doors), and other structural elements of the building in which the Premises is located (including the structural elements of the loading dock and receiving area).

Tenant shall be responsible for the maintenance of the remainder of the Premises, including storefront glass, equipment, exterior doors, and maintenance of the HVAC, provided that Landlord passes on all guarantees to Tenant

7.      Assignment and Sublet.  Notwithstanding Section XIX of the Master Lease and Section 8.1 of the Sublease, Tenant may not assign the Lease or Sublease the whole or any part of the Premises without the prior written consent of Landlord, such consent not to be unreasonably withheld, conditioned, or delayed.

8.      Utilities.  Utilities shall be separately metered for the Premises.

9.      Broker.  Landlord and Tenant each represent and warrant to the other that there are no brokerage commissions or finders' fees of any kind due in connection with this Amendment as a result of the actions of the representing party.  Each party must defend, indemnify and hold the other party harmless against and from all liabilities, damages, costs, claims and obligations arising from a breach of such representation (including, without limitation, reasonable attorneys' fees).

10.     Notice.

|  | |
|---|---|
| if to the Landlord at: | LNN Enterprises Inc<br>9 W. Cherry Avenue, Suite A<br>Flagstaff, AZ 86001 |
| if to the Tenant at: | Jo-Ann Stores, LLC #1831<br>5555 Darrow Road<br>Hudson, OH 44236<br>Attn: National Director of Real Estate<br>Phone: (330) 656-2600 |
| with a copy to: | Jo-Ann Stores, LLC #1831<br>5555 Darrow Road<br>Hudson, OH 44236<br>Attn: Legal Counsel<br>Phone: (330) 656-2600 |

11.     Lender Consent. Notwithstanding anything to the contrary in the Lease or any other document to which Tenant and Landlord are parties, in the event any lender, or any other interested party, requests or requires consent before the execution of this document, (a) it is Landlord's responsibility to obtain such consent, (b) Landlord hereby represents that it has obtained such consent, if required, and (c) regardless if consent is actually obtained, this document is fully binding and effective upon signature.

12.     Binding Effect.  This Amendment inures to the benefit of and binds the parties and their successors and assigns.  The Lease, as herein amended, remains in full force and effect.

DocuSign Envelope ID: 4A69D1B4-2315-409D-ADA4-EA68FB173D21

13.     <u>Counterpart and PDF Signature</u>.  This Amendment may be signed in multiple counterparts, each of which constitutes an original and all of which taken together constitute one and same agreement. Electronic signatures or signatures transmitted via e-mail in a "PDF" may be used in place of original signatures on this Amendment.  Each party intends to be bound by its electronic or "PDF" signature on this Amendment, is aware that the other parties are relying on its electronic or "PDF" signature, and waives any defenses to the enforcement of this Amendment based upon the form of signature.

14.     <u>Captions</u>.  The captions and headings in this Amendment are for convenience only and not a part of this Amendment and do not in any way limit, define, construe or describe the scope or intent of the provisions of this Amendment.

***[Remainder of Page Intentionally Left Blank – Signatures Follow on Next Page]***

#1831 South Riordan Ranch Road, Flagstaff, AZ

The parties have signed this Amendment as of the date first above written.

Landlord:
**LNN Enterprises Inc.**

By: _____

K. Joseph Nackard, President

Tenant:
**Jo-Ann Stores, LLC**

By: _____

Matthew Susz, Senior Vice President
Chief Financial Officer

#1831 South Riordan Ranch Road, Flagstaff, AZ

# JOANN

5555 Darrow Road
Hudson, OH 44236
PH (330) 656-2600
Fax (330) 463-6660

November 14, 2024

Via – Fed Ex
Email: giabednar@LNNEnterprises.com
      kjnackard@gmail.com


LNN Enterprises, Inc.
9 W. Cherry Ave., Ste. A
Attn: Giavanna Nackard Bednar, VP of Operations
Flagstaff, AZ 86001

Re:    **JOANN Store #1831**
       **South Riordan Ranch Road**
       **Flagstaff, AZ**


Dear Landlord:

This letter will serve as official notification that we are exercising our **Option** for our store at the referenced location as provided by the Lease dated **04/06/1979** with any and all amendments thereto collectively referred to herein as the "Lease". Our present term expires on **08/31/2025.**

The option will commence on **09/01/2025** and expire on **08/31/2030.** This option period will be under the same terms and conditions of the Lease, except as may otherwise be provided for by the Lease.

Respectfully,

11-14-24

Ken Douglas
**Vice President - Store Development, Facilities & Real Estate**


cc:    Steven Ashby      Real Estate Accounting    Kevin Beegle
      Tim Chapman      Velma Quinlan
           TRc