## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 429** |

### NINETEENTH NOTICE OF ASSUMPTION AND ASSIGNMENT
### OF CERTAIN EXECUTORY CONTRACT AND/OR UNEXPIRED LEASES

> **PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON SCHEDULE 2 ATTACHED HERETO AND READ THE CONTENTS OF THIS NOTICE CAREFULLY.**

**PLEASE TAKE NOTICE** that on February 14, 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order on the motion (the "Motion")[2] of debtors and debtors in possession (the "Debtors") (i) authorizing and approving procedures to reject, assume, or assume and assign executory contracts and unexpired leases and (ii) granting related relief [Docket No. 429] (the "Procedures Order"), attached hereto as **Schedule 1**.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Procedures Order and by this written notice (this "Assumption Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Contract set forth on **Schedule 2**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

attached hereto is hereby assumed or assumed and assigned, as applicable, effective as of the date (the "<u>Assumption Date</u>") set forth in **Schedule 2**, or such other date as the Debtors and the counterparty or counterparties to any such Contract agree.  Please reach out to counsel for GA Joann Retail Partnership, LLC, Lowenstein Sandler LLP, Attn.: Andrew Behlmann (<u>abehlmann@lowenstein.com</u>) if any questions relating to **Schedule 2**.

PLEASE TAKE FURTHER NOTICE that the Debtor or Assignee, as applicable, has the financial wherewithal to meet all future obligations under the Contract, which may be evidenced upon written request by the counterparty to the Contract,[3] thereby demonstrating that the Debtor or Assignee, as applicable, has the ability to comply with the requirements of adequate assurance of future performance.[4]

PLEASE TAKE FURTHER NOTICE that parties seeking to object to the proposed assumption or assumption and assignment of any of the Contracts must file and serve a written objection so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is ***actually received*** by the following parties no later than fourteen (14) days after the date that the Debtors served this Notice:  (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (<u>aparna.yenamandra@kirkland.com</u>) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (<u>jeff.michalik@kirkland.com</u>), and Lindsey Blumenthal (<u>lindsey.blumenthal@kirkland.com</u>) and (ii) Cole Schotz P.C., 500

---

[3]   To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice.

[4]   The Debtors shall serve the counterparty to the Contract with evidence of adequate assurance upon such counterparty's written request to Debtors' counsel.

Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (e) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (f) GA Joann Retail Partnership, LLC, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attn.: Andrew Behlmann (abehlmann@lowenstein.com); and (g) counsel to the Official Committee of Unsecured Creditors, (i) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com) and Connie Choe (cchoe@kelleydrye.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, Attn: Bradford Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszlaw.com). Only those responses that are timely filed, served, and received will be considered at any hearing.

**PLEASE TAKE FURTHER NOTICE** that, absent an objection being timely filed, the assumption or assumption and assignment of each Contract shall become effective on the applicable Assumption Date set forth in **Schedule 2** attached hereto, or such other date to which the Debtors and the counterparty or counterparties to such Contract agree.[5]  If the Contract is an unexpired lease of non-residential real property (a "**Lease**"), the Debtors shall file an Assumption Order under a certificate of no objection, which shall be assumed or assumed and assigned upon entry of the Assumption Order or such other date as the Debtors and the counterparty or counterparties to such Lease agree.

**PLEASE TAKE FURTHER NOTICE** that, the proposed cure amount under the Contract is set forth in **Schedule 2** attached hereto.  If a written objection to the proposed cure amount is not timely filed, then the cure amount shall be binding on all parties and no amount in excess thereof shall be paid for cure purposes.

**PLEASE TAKE FURTHER NOTICE** that if an objection to the assumption or assumption and assignment of any Contract is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the objection for the Contract or Contracts to which such objection relates.  If such objection is overruled or withdrawn, such Contract or Contracts shall be assumed or assumed and assigned as of the Assumption Date set forth in **Schedule 2** or such other date as the Debtors and the counterparty or counterparties to such Contract agree or as ordered by the Court.

---

[5]    An objection to the assumption and/or assignment of any particular Contract or cure amount listed in this Assumption Notice shall not constitute an objection to the assumption and/or assignment of any other contract or lease listed in this Assumption Notice.  Any objection to the assumption and/or assignment of any particular Contract or cure amount listed in this Assumption Notice must state with specificity the Contract to which it is directed.  For each particular Contract whose assumption and/or assignment is not timely or properly objected to, such assumption and/or assignment will be effective in accordance with this Assumption Notice and the Order.

Dated: June 5, 2025
Wilmington, Delaware

*/s/ Jack M. Dougherty*

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone:      (302) 652-3131
Facsimile:      (302) 652-3117
Email:          preilley@coleschotz.com
                snewman@coleschotz.com
                mfitzpatrick@coleschotz.com
                jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
Email:          aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                jeff.michalik@kirkland.com
                lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## <u>Schedule 1</u>

**Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 16 and 401** |

## ORDER (I) AUTHORIZING AND APPROVING
## PROCEDURES TO REJECT OR ASSUME EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving procedures for rejecting, assuming, or assuming and assigning executory contracts and unexpired leases (including any amendments or modifications thereto, collectively, the "Contracts") and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this

Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the

Motion were appropriate under the circumstances and no other notice need be provided; and this

Court having reviewed the Motion and having heard the statements in support of the relief

requested therein, if any, at a hearing before this Court (the "<u>Hearing</u>"); and this Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish just

cause for the relief granted herein; and upon all of the proceedings had before this Court; and after

due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The following Rejection Procedures are approved in connection with rejecting

Contracts:

    a.      ***Rejection Notice***.  The Debtors shall file a notice substantially in the form
attached hereto as **<u>Exhibit 1</u>** (the "<u>Rejection Notice</u>") indicating the
Debtors' intent to reject a Contract or Contracts pursuant to section 365 of
the Bankruptcy Code, which Rejection Notice shall set forth, among other
things:   (i) the Contract or Contracts to be rejected including the store
number and address; (ii) the names and addresses of the counterparties to
such Contract(s) (each a "<u>Rejection Counterparty</u>"); (iii) the proposed
effective      date      of      rejection      for      each      such      Contract(s),
(each, the "<u>Rejection Date</u>"); (iv) if any such Contract is an unexpired lease
of non-residential real property (a "<u>Lease</u>"), the personal property to be
abandoned (the "<u>Abandoned Property</u>"), if any, and an estimate of the book
value of such property, if practicable; (v) with respect to any Lease, any
known third party having an interest in any remaining property, including
personal property, consigned goods, furniture, fixtures, and equipment,
located at the leased premises; and (vi) the deadlines and procedures for
filing objections to the Rejection Notice (as set forth below).  The Rejection
Notice may list multiple Contracts; *provided* that the number of
counterparties to Contracts listed on each Rejection Notice shall be limited
to no more than 100; *provided*, *further*, if any such Contract is a Lease, the
Rejection Notice shall be accompanied by a proposed form of order
(the "<u>Rejection Order</u>") approving the rejection of the Lease(s), which shall
be substantially in the form of <u>Schedule 3</u> to the Rejection Notice, and no
Lease shall be deemed rejected absent entry of an applicable
Rejection Order.

b.     ***Service of the Rejection Notice***.  The Debtors will cause each Rejection Notice to be served:  (i) by overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Contract (and upon such Rejection Counterparty's counsel by email, if known) and all parties who may have any interest in any Abandoned Property (if known); and (ii) by first class mail, email, or fax, upon (A) the Office of the United States Trustee for the District of Delaware, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (B) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (C) the agents under the Debtors' prepetition secured facilities and counsel thereto; (D) the Official Committee of Unsecured Creditors (the "Committee"); (E) the United States Attorney's Office for the District of Delaware; (F) the Internal Revenue Service; (G) the attorneys general in the states where the Debtors conduct their business operations; (H) any known parties that have an interest in abandoned property at the premises; and (I) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b) (collectively, the "Master Notice Parties").

c.     ***Objection Procedures***.  Parties objecting to a proposed rejection or the Debtors' proposed abandonment of the Abandoned Property must file and serve a written objection[3] so that such objection is filed with this Court on the docket of the Debtors' chapter 11 cases no later than fourteen (14) days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline") and promptly serve such objection on the following parties (collectively, the "Objection Service Parties"):  (i) the Debtors, 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (ii) proposed co-counsel to the Debtors, (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (b) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (iii) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (iv) counsel to the Prepetition ABL Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher L. Carter (christopher.carter@morganlewis.com) and Marjorie Crider

---

[3]   An objection to the rejection of any particular Contract listed on a Rejection Notice shall not constitute an objection to the rejection of any other Contract listed on such Rejection Notice.

(marjorie.crider@morganlewis.com) and (b) Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, Delaware 19801, Attn.: Kurt F. Gwynne (kgwynne@reedsmith.com) and Jason D. Angelo (jangelo@reedsmith.com); (v) counsel to the Prepetition FILO Agent, (a) Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com) and (b) DLA Piper LLP (US), 1201 N Market St. Suite 2100, Wilmington, Delaware 19801, Attn.: Stuart Brown, Esq. (stuart.brown@dlapiper.com); (vi) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (vii) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (viii) counsel to Gordon Brothers Retail Partners, LLC, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, New York 10020, Attn.: Steven Reisman (sreisman@katten.com) and Cindi Giglio (cgiglio@katten.com); (ix) proposed counsel to the Official Committee of Unsecured Creditors, (a) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com) and Connie Choe (cchoe@kelleydrye.com) and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware, 19899-8705, Attn: Bradford Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com); and (x) the applicable Rejection Counterparties (and upon such Rejection Counterparty's counsel by email, if known).

d.    ***No Objection Timely Filed***.  If no objection to the rejection of any Contract is timely filed, including to the proposed abandonment of any Abandoned Property, each Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the applicable Rejection Counterparty agrees; *provided* that if a Rejection Counterparty files a response to the Rejection Notice on the docket of the Court explicitly requesting entry of an order approving such Rejection, the Debtors will submit such an order to the Court prior to the proposed Rejection Date or as soon as reasonably practicable thereafter; *provided*, *further*, if the Contract is a Lease, the Debtors shall submit the Rejection Order to the Court under a certificate of no objection authorizing the rejection of each such Lease listed in the applicable Rejection Notice to be rejected as of the later of (i) the applicable Rejection Date set forth in the Rejection Notice or such other date as the

Debtors and the applicable Rejection Counterparty may agree and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises (the "Rejection Effective Date"); *provided, further,* that the Rejection Effective Date for a Lease rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

e.    ***Unresolved Timely Objections***.  If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract(s) shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.  For the avoidance of doubt, such Contract will only be deemed rejected upon the entry of a Rejection Order resolving the objection as between the Debtors and the applicable objecting party and/or Rejection Counterparty, unless the Debtors and the applicable Rejection Counterparty agree otherwise or as otherwise ordered by the court.

f.    ***Removal from Schedule***.  The Debtors reserve the right to remove any Contract from the schedule to a Rejection Notice at any time prior to the Rejection Date.

g.    ***No Application of Security Deposits***.  If the Debtors have deposited monies with a Rejection Counterparty as a security deposit or other arrangement, such Rejection Counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court, unless the Debtors and the applicable Rejection Counterparty otherwise agree.

h.    ***Abandoned Property***.  The Debtors, in consultation with the Prepetition ABL Agent and the Prepetition FILO Agent, are authorized, but not directed, at any time on or before the Rejection Effective Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to a rejected Contract.  The Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property.  Absent a timely objection, any and all property located on the Debtors' leased premises on the Rejection Effective Date of the applicable Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Effective Date.  After the Abandoned Property is deemed abandoned pursuant to section 554 of the Bankruptcy Code, the applicable Contract counterparty or counterparties may, in their sole discretion and without

5

further notice or further order of this Court, utilize and/or dispose of such property without further notice or liability to the Debtors or consenting third parties, and, to the extent applicable, the automatic stay is modified to allow such disposition. The Contract counterparty's rights, if any, to file a claim for the disposal of such property are reserved, as are the rights of any party in interest to object to such claims. For the avoidance of doubt, nothing in this Order is intended to affect the rights of any party other than the Debtors in such Abandoned Property. The rights of any other party in Abandoned Property, and the rights of the landlord regarding such Abandoned Property, will be governed by applicable non-bankruptcy law.

i.    ***Proofs of Claim***.  Claims arising out of the rejection of Contracts, if any, must be filed on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases, if any, and (ii) thirty (30) days after the later of (A) the Rejection Date or, in the case, of a Lease, the Rejection Effective Date, and (B) the date of entry of an order rejecting the Contract. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on account of such claim that may be made in connection with these chapter 11 cases.

3.    The following Assumption Procedures are approved in connection with assuming and assuming and assigning Contracts:

a.    ***Assumption Notice***.  The Debtors shall file a notice substantially in the form attached hereto as **Exhibit 2** (the "Assumption Notice") indicating the Debtors' intent to assume a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed including the store number and address; (ii) the names and addresses of the counterparties to such Contracts (each an "Assumption Counterparty"); (iii) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (iv) the effective date of the assumption for each such Contract (the "Assumption Date"); (v) the proposed cure amount, if any for each such Contract; (vi) with respect to any Lease which the Debtors seek to assume and assign (if any), any known third party having an interest in any consigned goods subject to such assignment; and (vii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below). If any such Contract is a Lease, the Assumption Notice shall be accompanied by a proposed form of order (the "Assumption Order") approving the assumption or assumption and assignment of the Lease(s), which shall be substantially in the form of Schedule 3 to the Assumption Notice, and no Lease shall be deemed assumed absent entry of an applicable Assumption Order.

b.    ***Service of the Assumption Notice and Evidence of Adequate Assurance***. The Debtors will cause the Assumption Notice to be served (i) by first class mail upon the Assumption Counterparties affected by the Assumption

Notice and each Assignee, if applicable, at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known) and (ii) by first class mail, email, or fax upon the Master Notice Parties.[4]  To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known, by electronic mail).

c.    ***Objection Procedures***.  Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of a Contract must file and serve a written objection[5] so that such objection is filed with this Court and actually received by the Objection Service Parties no later than fourteen (14) days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

d.    ***No Objection***.  If no objection to the assumption of any Contract is timely filed, each Contract shall be assumed as of the Assumption Date set forth in the applicable Assumption Notice or such other date as the Debtors and the applicable Assumption counterparties agree, and the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes; *provided, however,* if the Contract is a Lease, the Debtors shall submit the Assumption Order to the Court under a certificate of no objection authorizing the assumption of each Lease, which shall be assumed or assumed and assigned upon entry of the Assumption Order or such other date as the Debtors and the applicable Assumption Counterparties may agree, and the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes*; provided, however,* that the Assumption Date for a Lease shall not occur earlier than the date the Debtors filed and served the applicable Assumption Notice.

e.    ***Unresolved Timely Objections***.  If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least ten (10) days' notice of such hearing to the applicable Assumption Counterparty and the other Objection Service Parties.  Such Contract will only be assumed or assumed and assigned upon entry by the

---

[4]    The Debtors shall serve (by electronic mail, if requested) a counterparty to a Contract other than a lease of non-residential real property to be assumed under the Contract Procedures with evidence of adequate assurance as soon as reasonably practicable upon such counterparty's written request to the Debtors' proposed counsel.

[5]    An objection to the assumption of any particular Contract listed on an Assumption Notice shall not constitute an objection to the assumption of any other Contract listed on such Assumption Notice.

Court of a consensual form of Assumption Order resolving the objection as between the objecting party and the Debtors or, if resolution is not reached and/or the objection is overruled or withdrawn, upon further order of the Court and shall be assumed or assumed and assigned as of the applicable Assumption Date set forth in the Assumption Notice or such other date to which the Debtors and applicable Assumption Counterparty agree, or as ordered by the Court.

    f.    ***Removal from Schedule***.  The Debtors reserve the right to remove any Contract from the schedule to an Assumption Notice at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

4.    The Debtors' right to assert that any provisions in the Contract that expressly or effectively restrict, prohibit, condition, or limit the assignment of or the effectiveness of such Contract to an Assignee are unenforceable anti-assignment or *ipso facto* clauses is fully reserved, as are the rights of any counterparty to object to such assertion.

5.    The Debtors are hereby authorized, pursuant to section 363(b) of the Bankruptcy Code, to enter into consensual amendments to the Contracts with the written consent of the applicable Assumption Counterparty to the extent such amendments are set forth in an Assumption Notice in accordance with this Order.

6.    Approval of the Contract Procedures and this Order will not prevent the Debtors from seeking to reject, assume, or assume and assign a Contract by separate motion.

7.    Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral.

8.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including any payment made in accordance with this Order), nothing in this Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or

other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

9.      All rights and defenses of the Debtors are preserved, including all rights and defenses of the Debtors with respect to a claim for damages arising as a result of a Contract rejection, including any right to assert an offset, recoupment, counterclaim, or deduction. In addition, nothing in this Order or the Motion shall limit the Debtors' ability to subsequently assert that any particular Contract is expired or terminated and is no longer an executory contract or unexpired lease, respectively.

10.     To the extent that the Debtors propose to abandon any personal property that may contain "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall remove the Confidential Information from such personal property before such abandonment.

11.     The Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any non-residential real property subject to a rejected Contract as, and to the extent they are, required to do so by applicable law.

12.     Notice of the Rejection as provided therein shall be deemed good and sufficient notice of such Rejection Notice and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Dated: February 14th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

[*See Exhibits to the Order at Docket No. 429*]

**<u>Schedule 2</u>**

**Assumed Contracts**

| No. | Assignee | Counterparty | Counterparty Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|
| 1 | Michaels Stores, Inc. | BCS Hopper, LLC | BCS Hopper, LLC Attn: Tom Hopper, PO Box 1628 Rogers, AR 72757 | October 31, 2014 Lease Agreement between Jo-Ann Stores, LLC and BCS Hopper, LLC | $7,654.98 | June 1, 2025 |
| 2 | Michaels Stores, Inc. | LMC, LP | LMC, LP c/o Sork Company, Inc., Attn: Mark P. Sork 13 Corporate Plaza, Suite 214 Newport Beach, CA 92660 | June 21, 2018 Lease Agreement between Jo-Ann Stores, LLC and LMC, LP | 20,093.01 | June 1, 2025 |
| 3 | Michaels Stores, Inc. | B33 Bandera Pointe III LLC | B33 Bandera Pointe III LLC Two Union Square, 601 Union St., Suite 1115 Attn: Deirdre Bergeron, Sr. Prop Mgr. or Bruce Gevers, Asst Prop Mgr. Seattle, WA 98101 | June 02, 2011 Lease Agreement between Jo-Ann Stores, LLC and B33 Bandera Pointe III LLC | $10, 322.59 | June 1, 2025 |

---

[1] The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.

## <u>Schedule 3</u>

**Proposed Contract Assumption Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| JOANN INC., *et al.*,[1] | § | Case No. 25-10068 (CTG) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Re: Docket Nos. 429, 520, ___** |

## ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES TO MICHAELS STORES, INC.

Pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order")[2] and the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] entered in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and it appearing that the Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases [Docket No. [●]] (the "Assumption Notice") satisfies the requirements set forth in the Procedures Order; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Procedures Order.

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Assumption Notice in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Assumption Notice is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Assumption Notice and opportunity for a hearing on the Assumption Notice were appropriate and no other notice need be provided; and this Court having reviewed the Assumption Notice; and this Court having determined that the legal and factual bases set forth in the Assumption Notice establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The unexpired leases of nonresidential real property set forth on <u>Exhibit 1</u> hereto (each, a "<u>Real Property Lease</u>") are assumed and assigned to Michaels Stores, Inc. (or its designee) (the "<u>Assignee</u>"), effective as of the Lease Assignment Date (defined below), pursuant to the terms and conditions set forth in this Order.

2.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of any Real Property Lease shall:

    a.   be free and clear of:

       i.   all liens and

      ii.   any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise Case 25-10068-CTG Doc 1028 Filed 05/30/25 Page 22 of 33 -3- (including, without limitation, claims and encumbrances (A) that

purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Real Property Lease, or (B) in respect of any taxes); and

b. constitute a legal, valid and effective transfer of such Real Property Lease and vest the Assignee with all rights, titles, and interests to the applicable Real Property Lease.

3.      Within three business days after entry of this Order, the landlords for the Real Property Leases shall deliver to the Assignee and Debtors its ACH / wire instructions and W-9 (the "Landlord Information"), to the extent such landlord is owed any cure amounts as set forth in Exhibit 1 attached hereto (the "Cure Amounts") with respect to each such Real Property Lease.

4.      Within five Business Days after (i) Assignee and Debtors receive the Landlord Information or (ii) after entry of this Order if no cure costs are owed to such landlord:

a. Debtors shall deliver or cause to be delivered to Assignee all security codes and master keys to any portion of the applicable premises associated with such Real Property Leases (the "Stores"), to the extent in Debtors' custody, reasonable control, or possession;

b. Assignee shall deliver to the applicable landlord for each Real Property Lease (or to Debtors, for delivery to such landlord), the Cure Amounts applicable to the Real Property Leases, wired in immediately available funds; and

c. Debtors and Assignee shall deliver to each other such customary documents, certificates and other instruments as the other may reasonably require to carry out the assignment of the Real Property Leases and as are customary in like transactions in the state in which any applicable Store is located.

Upon the occurrence of each of the foregoing, the applicable Real Property Lease shall be deemed assigned to Assignee (the date thereof, "Lease Assignment Date").

5.      The Cure Amounts represent any and all amounts accrued and owed under the Real Property Lease through the Lease Assignment Date and represent Assignee's sole payment obligation on behalf of the applicable Debtors' outstanding liabilities. Assignee's sole obligation with respect to the Cure Amounts shall be to pay such amounts and any other amounts agreed upon

between the applicable Debtor and Assignee. The Assignee shall assume the obligations of the applicable Debtor(s) under each such Real Property Lease arising from and after the applicable Lease Assignment Date, including, for the avoidance of doubt, (i) amounts owed under each assigned Real Property Lease that accrue after the Lease Assignment Date, such as percentage rent, common area maintenance, insurance, taxes, and similar charges; (ii) any regular or periodic adjustment or reconciliation of charges under each assigned Real Property Lease which accrue after the Lease Assignment Date; (iii) other obligations, including indemnification obligations, that arise on or after the Lease Assignment Date, for amounts that accrue or are related to underlying incidents that occur after the Lease Assignment Date; and (iv) any post-assignment obligations under the assigned Real Property Leases.

6.      Upon assumption and assignment of any Real Property Lease and the payment of any Cure Amounts, if applicable, (a) the Debtors and their estates shall be relieved of any liability for breach of such Real Property Lease occurring after the applicable Lease Assignment Date pursuant to section 365(k) of the Bankruptcy Code; and (b) except for the Assignee's obligation to pay the applicable Cure Amount, the Real Property Lease landlord is hereby barred and permanently enjoined from asserting against the Debtors and the Assignee any default, claim or liability existing, accrued, arising or relating to the Real Property Lease for the period prior to the Lease Assignment Date. Further, Assignee shall have no liability for claims or causes of action (whether known or unknown) including third-party tort claims that arose prior to the Lease Assignment Date or for incidents that occurred prior to the Lease Assignment Date and all other persons and entities holding such claims against the Debtors or the Real Property Lease for the period prior to the Lease Assignment Date, are hereby forever barred, estopped, and permanently

enjoined from asserting or pursuing such claims against the Assignee, its affiliates, successors or assigns, its property or the Real Property Lease.

7.    Upon assignment of a Real Property Lease, any provision thereof or in any reciprocal easement, operating or similar agreements relating to the Real Property Lease that expressly or effectively purports to restrict, prohibit, condition or limit the assignment or transfer of or the effectiveness of such lease or the use of the premises or Store(s) thereunder, including, without limitation, the following provisions (collectively, the "Anti-Assignment Provisions") shall not be enforceable:[3]

    a.   any provision of a Real Property Lease that purports to prohibit, condition, limit or otherwise restrict the assignment by the Debtors to the Assignee;

    b.   any provision of a Real Property Lease that permits a non-debtor party at any time to increase payments under (including, without limitation, rent), declare a default with respect to, terminate, modify or cancel the Real Property Lease or right or obligation thereunder by reason of (A) the assignment of the Real Property to any Assignee; (B) the conduct of a store-closing sale at the Store; (C) the release of the Debtors from liability; (D) the Store "going dark" for a period of time as may be necessary to permit the Assignee to remodel, restock, refixture, and/or change signage at such Store; (E) discontinuation of operations, interruption of business, tenant remodeling restrictions or minimum sales requirements during the period set forth above; (F) the Debtors' insolvency, financial condition, bankruptcy filing, or related circumstances; or (G) the Debtor(s) ceasing to be a party to the Real Property Lease (clauses (A) – (G), the "Triggering Events");

    c.   any provision of a Real Property Lease that purports to be "personal" to the Debtors, to be exercisable only by the Debtors, or requires operation of a JOANN store;

    d.   any provision of a Real Property Lease that permits a non-debtor party at any time to exercise a right of first refusal, purchase options or to recapture possession by reason of any Triggering Event;

    e.   any provision of a Real Property Lease that permits a non-debtor party at any time to require payment of any fee, profit sharing or other payment by reason

---

[3] The failure to list any one or more of the Anti-Assignment Provisions herein shall not be construed in any way to affect or otherwise diminish the Court's invalidation of all Anti-Assignment Provisions in their entirety in connection with any assignment of the Real Property Leases to Assignee.

of the occurrence of any Triggering Event (including but not limited to the reversion, recapture, or acceleration of any previously abated, abandoned, or deferred obligations);

f. any provision of a Real Property Lease that permits a non-debtor at any time to impose any penalty or rental or other monetary adjustment or allocation by reason of the occurrence of any Triggering Event;

g. any provision of a Real Property Lease that permits a non-debtor at any time to cancel, modify or restrict Assignee from exercising any renewal options or purchase options by reason of any Triggering Event;

h. any provision of a Real Property Lease that permits a non-debtor party at any time to seek damages or other relief by reason of a Triggering Event; and

i. any provision of a Real Property Lease that purports to prohibit, nullify, restrict or condition (A) the removal of existing signage and the installation of standard signs (subject to applicable municipal codes) displaying the trade name of Assignee; (B) any and all alterations, additions, replacements, or improvements (including, without limitation, the front fascia of the premises) deemed necessary by Assignee (subject to applicable municipal codes) to renovate, construct, furnish, replace, equip and conform the Store(s) to a prototypical store of Assignee; or (C) operation of the Store(s) under Assignee's trade names.

8. The Anti-Assignment Provisions would materially diminish the value of the Real Property Leases and the Debtors' ability to assign and sell such assets for value. The Anti-Assignment Provisions are inconsistent with sections 365(f)(1) and 365(f)(3) of the Bankruptcy Code and the Congressional policy expressed therein favoring a debtor's ability to maximize the value of its assets. A final and binding determination that the Anti-Assignment Provisions are unenforceable was a material and indispensable consideration of the Assignee's willingness to assume the Real Property Leases and is necessary to maximize the proceeds to be received by the Debtors' estates.

9. Upon assignment of a Real Property Lease, notwithstanding any Anti-Assignment Provision thereof:

a. Assignee shall be authorized to:

i.  use the applicable store, subject to section 365(b)(3) of the Bankruptcy Code, upon consummation of the assumption and assignment of such Real Property Lease to Assignee for Assignee's operation under the name Michaels for use as a specialty retail store selling arts, crafts, party, and celebration merchandise ("Assignee's Permitted Use"), and Assignee shall not be prevented from doing so by any recorded or unrecorded restriction, or exclusive or radius restriction granted or imposed by the landlord,

ii.  operate such store under the Assignee's trade name or any other trade name which the Assignee owns or is authorized to use,

iii.  make such alterations and modifications to the applicable store (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including storefront signs, panels on all pylons, monuments, directional and other ground and off-premises signs where the Debtors are presently represented) deemed necessary by the Assignee as are necessary or desirable for the Assignee to conform such store to the Assignee's typical retail store consistent with Assignee's Permitted Use, submit and execute all building and signage permit applications without further consent of any party upon production of a copy of this Order, and any conditions grandfathered for the benefit of the Debtors shall be grandfathered for the benefit of Assignee,

iv.  remain "dark" with respect to such store after such assumption and assignment until the date that is necessary to permit Assignee to remodel, restock, re-fixture, change signage and complete the work described in clause (iii) above or such later date as may be reasonably required for the restoration of such store,

v.  self-insure any of its insurance obligations under the Real Property Lease so long as Assignee shall have at all times a net worth of at least $50,000,000; provided, however, to the extent any obligation cannot be self-insured any required insurance may be satisfied by both general and umbrella coverage, and

vi.  exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Real Property Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Real Property Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name), and

      b.   any reference in the Real Property Lease to the Debtors shall hereinafter mean Assignee.

10.      Upon the assumption and assignment of a Real Property Lease to the Assignee under the provisions of this Order, no default shall exist under the Real Property Lease, and no counterparty to the Real Property Lease shall be permitted to declare a default by any Debtor or otherwise take action against the Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Real Property Lease. Upon assumption and assignment of any Real Property Lease pursuant to the Assumption Procedures, the Assignee shall enjoy all of the rights and benefits under each such Real Property Lease as of the applicable Lease Assignment Date.

11.      Upon payment of the Cure Amounts with respect to any Real Property Lease, the applicable landlord shall be forever barred and enjoined from asserting against the Debtors, their estates and the Assignee any claim in connection with: (a) any breach or default, monetary or non-monetary, existing and which accrued prior to the Lease Assignment Date with respect to the Real Property Lease, or (b) any objection to the assumption and assignment of such Real Property Lease, whether or not such non-debtor party filed a proof of claim.

12.      The Debtors are authorized to take any action necessary to implement the terms of this Order and the assumption and assignment without further order from this Court. All persons that are currently in possession of the premises leased under the Real Property Lease are hereby directed to surrender possession of the premises to the Assignee as of the entry of this Order and the effective date of assignment as set forth in the Assumption Schedule.

13.      All recording officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Real Property Lease recorded prior to the date of this Order. To the extent permitted by applicable law, a certified copy of this Order may be filed with the appropriate

recording officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Real Property Lease recorded prior to the date of this Order. All recording officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. Utility providers are directed not to discontinue service and to cooperate with the transfer of utilities to Assignee without any transfer fees. Assignee's direct liability for such utility usage commences as of the Lease Assignment Date; *provided*, for the avoidance of doubt, that this Order does not affect the Debtors' direct liability, if any, for utility charges incurred before the Lease Assignment Date.

14. The Assignee and its affiliates, successors and assigns shall not be deemed or considered to:

    a. be a legal successor, or otherwise be deemed a successor to any of the Debtors,

    b. have, *de facto* or otherwise, merged with or into any or all Debtors, or

    c. be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Assignee has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates except as expressly set forth herein and in the Assumption and Assignment Agreement.

15. The Assignee and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity or other law, rule regulation or doctrine, whether known or unknown as of the Lease Assignment Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Lease

Assignment Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Real Property Lease prior to the Lease Assignment Date or arising based on actions of the Debtors taken after the Lease Assignment Date, in each case regardless of when such liability is asserted, invoiced, or billed.

16.    Upon assumption and assignment of a Real Property Lease to the Assignee, the Assignee shall be responsible for all obligations under such Real Property Lease arising solely from and after the applicable Lease Assignment Date, (A) including, for the avoidance of doubt, (i) amounts owed under each assigned Real Property Lease that accrue solely after the Lease Assignment Date, such as common area maintenance, insurance, taxes, and similar charges for any period after the Lease Assignment Date; and (ii) other obligations, including indemnification obligations and any reporting obligations, that arise on or after the Lease Assignment Date, for amounts that accrue or are related to underlying incidents that occur after the Lease Assignment Date, in each case of (i) through (ii), regardless of when such liability is asserted, invoiced or billed, and subject to the terms and conditions of the Real Property Lease and any defenses provided by such Real Property Lease and applicable non-bankruptcy law, and unless otherwise agreed with the counterparty to the Real Property Lease; but (B) excluding, for the avoidance of doubt, (i) any year-end or other adjustment and reconciliation amounts that adjust or reconcile any amounts that accrued before the Lease Assignment Date, which amounts shall be waived against the Debtors' estates and the Assignee if not included within the Cure Costs, even if such adjustment or reconciliation amounts become due or accrue after the entry of this Order (including royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional

funds, and percentage rent), and (ii) any indemnification obligations that relate to underlying incidents that occurred before the Lease Assignment Date.

17.     The Assignee is a "good faith purchaser," within the meaning of section 363(m) of the Bankruptcy Code, of the Real Property Leases and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The parties will be acting in good faith if they proceed to consummate the assignment at any time after entry of this Order. This order is effective immediately, notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any similar provision of law.

18.     Any and all property located on or in the leased premises after the Lease Assignment Date of the applicable Real Property Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Lease Assignment Date. As of the Lease Assignment Date, the Assignee or its designee may, in its sole discretion and without further notice to any party or order of the Court, utilize and/or dispose of such abandoned property without further notice or liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights of the counterparty to each Real Property Lease to assert claims for the disposition of the abandoned property are reserved, as are all parties' rights to object to such claims.

19.     This Order constitutes a separate order with respect to each Real Property Lease.

20.     Notice of the Assumption Notice as provided therein shall be deemed good and sufficient notice of such Assumption Notice and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors and Assignee are authorized to take all actions necessary to effectuate the relief granted in this Order.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit 1 to Assignment Order**

**Assumption Schedule**

| No. | Assignee | Counterparty | Counterparty Address | Description of Contract[4] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|
| 1 | Michaels Stores, Inc. | BCS Hopper, LLC | BCS Hopper, LLC Attn: Tom Hopper, PO Box 1628 Rogers, AR 72757 | October 31, 2014 Lease Agreement between Jo-Ann Stores, LLC and BCS Hopper, LLC | $7,654.98 | June 1, 2025 |
| 2 | Michaels Stores, Inc. | LMC, LP | LMC, LP c/o Sork Company, Inc., Attn: Mark P. Sork 13 Corporate Plaza, Suite 214 Newport Beach, CA 92660 | June 21, 2018 Lease Agreement between Jo-Ann Stores, LLC and LMC, LP | 20,093.01 | June 1, 2025 |
| 3 | Michaels Stores, Inc. | B33 Bandera Pointe III LLC | B33 Bandera Pointe III LLC Two Union Square, 601 Union St., Suite 1115 Attn: Deirdre Bergeron, Sr. Prop Mgr. or Bruce Gevers, Asst Prop Mgr. Seattle, WA 98101 | June 02, 2011 Lease Agreement between Jo-Ann Stores, LLC and B33 Bandera Pointe III LLC | $10, 322.59 | June 1, 2025 |

---

[4] The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.