IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 764, 860** |

**DEBTORS' AND DOLLAR TREE STORES, INC.'S
JOINT REPLY IN SUPPORT OF ASSIGNMENT
OF LEASE FOR STORE #2281 IN QUEEN CREEK, ARIZONA**

The Debtors and Dollar Tree Stores, Inc. ("Dollar Tree") submit this joint reply in support of the *Second Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [Docket No. 764], with respect to the lease associated with Store #2281 (21238 S. Ellsworth Loop Road, Queen Creek, AZ) (the "JOANN Lease") and in response to the objection thereto filed by QCM Partners, LLC (the "Landlord") [Docket No. 860] (the "Objection").[2]

The Landlord seeks to prohibit Dollar Tree's assumption of the JOANN Lease on the following bases: (1) assignment to Dollar Tree would violate an operation and easement agreement ("OEA") that applies to the Shopping Center; (2) assignment to Dollar Tree would violate a provision in a lease between the Landlord and Trader Joe's, an unrelated third-party tenant also located within the Shopping Center, that was entered into after the JOANN Lease (the "Trader

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Objection.

Joe's Lease"); and (3) the proposed order granting the assumption and assignment would impermissibly relieve Dollar Tree of certain obligations under the JOANN Lease.

The Objection is a thinly veiled pretextual attempt to prevent a valid assignment that maximizes value of the JOANN Lease. The Objection should be overruled given that (1) Dollar Tree is aware of and will comply with the OEA, (2) the Trader Joe's restriction should *not* prevent assignment for the number of reasons detailed herein, and (3) if the Debtors and Dollar Tree prevail on the foregoing issues, they will work with the Landlord to submit a proposed order that addresses its remaining issues.

**Preliminary Statement**

1. Dollar Tree has been a tenant in the Shopping Center for more than 15 years (since February 2010) and well before Trader Joe's entered the Shopping Center in 2020. The proposed assignment of the JOANN Lease to Dollar Tree would simply effectuate a relocation of the existing Dollar Tree store within the Shopping Center. Perhaps for that reason, the Landlord does not argue—and could not reasonably argue—that the assignment to an existing tenant would disrupt the tenant mix or tenant balance in the Shopping Center. Nor does the Landlord argue that Dollar Tree is a competitor of Trader Joe's that would affect the economics of the Shopping Center.

2. Instead, the Landlord attempts to bind the Debtors to a "noxious use" restriction set forth in the Landlord's lease with Trader Joe's, a third party that became a tenant at the Shopping Center (in 2020) *after* the Debtors (in 2011) and *after* Dollar Tree (in 2010). Notwithstanding the Landlord's separate and subsequent contractual arrangement with Trader Joe's, the Debtors negotiated for a broad permitted use in the JOANN Lease, which allows the Debtors to use the premises for "any lawful retail purpose," subject only to certain restrictions that are set forth in the JOANN Lease—and which do *not* include the "noxious use" restriction from Trader Joe's. Yet,

2

despite the clear and unambiguous language in the JOANN Lease, the Landlord seeks to use the Bankruptcy Code as a sword to broaden its rights for the apparent protection of Trader Joe's—even though courts have consistently held that assignment of a debtor's lease (like the JOANN Lease) need *not* comply with leases entered into *after* the debtor's lease (like the Trader Joe's Lease), the Debtors and Dollar Tree are not in privity with Trader Joe's, and the Objection is noticeably void of any assertions with respect to Trader Joe's actual position.

3. Importantly, and also contrary to the Objection, a court-approved assignment of the JOANN Lease to Dollar Tree will *not* result in the Landlord being in default under the Trader Joe's Lease, as the law excuses the Landlord from performance that has been rendered legally impossible—i.e., by an order from this Court approving the assignment of the JOANN Lease to Dollar Tree, over the Landlord's objection.

4. Thus, the Objection should be overruled. The relevant facts and circumstances more than sufficiently demonstrate that the Objection is without merit and, if sustained, will deprive the purchasers of the Debtors' assets of much needed and duly obtained value. The Debtors have certainly met their burden to assign the JOANN Lease to Dollar Tree—an existing tenant in the shopping center with the financial wherewithal[3] and means to comply with the terms of such lease—and there is nothing in the record of these chapter 11 cases to suggest otherwise.

### The Trader Joe's "Noxious Use" Provision Is Not Relevant

5. Section 365(b)(3)(C) requires, in relevant part, "adequate assurance … that assumption or assignment of such lease … will not breach any such provision contained in any

---

[3] Dollar Tree Stores, Inc. and its affiliates operate more than 16,000 retail discount stores across the 48 contiguous states and five Canadian provinces and is a wholly-owned subsidiary of Dollar Tree, Inc. (which is a publicly-traded company with a market capitalization of approximately $20 billion and for which additional information, including the annual report and other financial data, is available at https://corporate.dollartree.com).

other lease, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3)(C).

6. As several courts have recently explained (including this Court), the phrase "any other lease" means those leases that existed *at the time* of the debtor's lease and were incorporated therein—*not* leases that were entered into *after* the debtor's lease. *See, e.g.*, *In re Toys "R" Us, Inc.*, 587 B.R. 304, 310 (Bankr. E.D. Va. 2018) (permitting assignment of debtor's lease notwithstanding restriction in other shopping center lease because the debtor's lease was executed "long before the [other] lease came into existence, and it contains no provision that requires compliance with the [other] lease use restrictions"); *In re Big Lots, Inc.*, Case No. 24-11967 (Bankr. D. Del.), January 21, 2025 Transcript (Exhibit A hereto) (the "Big Lots Transcript"), 61:6-13 ("This Court agrees with the reasoning of the District Court for the Southern District of New York in *Sears* and the New Jersey Bankruptcy Court in *Bed Bath & Beyond* that the provisions of Section 365(b) must be read in harmony with 365(f)(2)(B) and that the phrase "any other lease" could not have been intended to mean a subsequent lease between a landlord and a third party to which the debtor was not a party."); *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (Bankr. D.N.J.), August 30, 2023 Transcript (Exhibit B hereto) (the "BBB Transcript"), 120:1-6 (phrase 'any other lease' "must be understood to mean breach of agreements with other tenants that were in existence at the time the debtor entered into the lease and would either be incorporated into the lease or part of an agreement or part of a master agreement, not subsequently entered into leases that the debtor had no knowledge of or agreed to").

7. This is so for several reasons. First, the "provisions of 365(b) must be read in harmony with 365(f)(2)(B)" and the "focus" of section 365(b) is "on the lease with the debtor and the landlord. … [T]here's where it all derives from." BBB Transcript, 116:18, 122:1-3; *see*

4

11 U.S.C. § 365(b) ("assignment of such lease"); *see also* Big Lots Transcript, 61:6-13; *In re Toys "R" Us, Inc.*, 587 B.R. 304, 309 (Bankr. E.D. Va. 2018) ("The Fourth Circuit Court of Appeals has acknowledged that the purpose of § 365(b)(3)(C) 'is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are *spelled out in the lease with the debtor-tenant*.'") (quoting *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004) (emphasis added)).

8. Second, "any other interpretation would expand the rights of a shopping center landlord outside of bankruptcy, [a] result which has been virtually, as far as this Court knows, universally rejected in the case law." BBB Transcript, 120:7-10. The JOANN Lease includes a broad permitted use provision that permitted "any lawful retail use" subject to only those restrictions set forth in the lease. *See* JOANN Lease, "Permitted Use," Section 11. The Landlord could have negotiated for language that would have addressed a scenario where the tenant's use materially changes—but it did not. Under applicable state law, the permissible use provision in the JOANN Lease trumps the later Trader Joe's Lease and the Landlord would have no ability to block the tenant under the JOANN Lease from operating a dollar store. The Landlord cannot now expand its rights under the Bankruptcy Code to prevent an assignment to Dollar Tree for the same use. *See* BBB Transcript, 120:7-10. Notably, the Bed Bath and Beyond court ruled against the landlord even though its lease with the debtor permitted the landlord to terminate the lease upon an assignment that it does not approve of, because such a provision is not enforceable in bankruptcy. *Id.* at 122:23-123:8.

9. And third, a debtor does not have any privity with leases that post-date its lease, absent an agreement to comply with them. BBB Transcript, 121:5-8 ("before a contractual provision can be enforced, there must be privity of contract between the parties … there was no

privity of contract"). Neither the Debtors nor Dollar Tree can be in breach of the Trader Joe's Lease because neither of them are party to it, have any privity with it, nor have they agreed to comply with the Trader Joe's Lease.

10. The Landlord, in support of its argument, relies primarily on just one case, *In re Three A's Holdings, L.L.C.*, 365 B.R. 550 (Bankr. D. Del. 2007). *See* Objection, ¶ 21. *Three A's*, however, is easily distinguishable, as the restriction at issue was a covenant that ran with the land and thus was binding on the debtors. *See* Big Lots Transcript, 61:2-5 ("On the other hand, Three A's is distinguishable. Unlike the issue here, *Three A's* involved covenants that run with the land and the interpretation of a permitted use under California state law."); BBB Transcript, 67:21-68:3 ("But in Three A's, it was a restriction to which the debtor was subject. And the financing agreement either would be recorded or would be disclosed in the lease as saying this is a restriction in the use, so therefore, you can't do it. So, that's different than any other lease being -- any lease that is entered into 14 years later, or a lease that the debtor doesn't know anything about, and it's troubling to me.").

11. Here, there is no dispute that the JOANN Lease pre-dates the Trader Joe's Lease. There is nothing in the JOANN Lease that requires compliance with the Trader Joe's Lease. There is no master lease agreement that requires compliance with the JOANN Lease. And there is no recording by Trader Joe's such that its covenants might otherwise run with the land and be binding on the Debtors. Thus, the Trader Joe's Lease cannot block the proposed assignment. Holding otherwise would mean that "the ability of debtors to maximize the proceeds from their leases would or could be severely curtailed by landlord's subsequent agreement with other tenants to limit the use for which the debtor's premises were expressly allowed to be used without debtor agreeing to those terms." Big Lots Transcript, 61:20-25.

12. To the extent the Court has any concerns that the Landlord may have liability exposure to Trader Joe's, the Court should consider two key points. First (and again), Dollar Tree has been a tenant in the Shopping Center since 2010 and when Trader Joe's entered the Shopping Center ten years later, it was fully aware that Dollar Tree was already a tenant. Second, the Landlord cannot be liable to Trader Joe's if the law (such as the Bankruptcy Code and an order by this Court) prohibits it from complying with the Trader Joe's Lease. *See In re Toys "R" Us, Inc.*, 587 B.R. 304, 310 (Bankr. E.D. Va. 2018) ("a court order approving the assumption and assignment of a lease is a judicial action that may render the landlord unable to comply with a restriction contained in another lease"); BBB Transcript, 125:20-25 (same).

\* \* \*

13. For the reasons set forth above, the Debtors and Dollar Tree request that the Court hold that the "noxious use" restriction in the Trader Joe's Lease is unenforceable with respect to the proposed assignment of the JOANN Lease to Dollar Tree.

Dated: June 6, 2025
Wilmington, Delaware

*/s/ Patrick J. Reilley*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Patrick J. Reilley (No. 4451) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Stacy L. Newman (No. 5044) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Michael E. Fitzpatrick (No. 6797) | Aparna Yenamandra, P.C. (admitted *pro hac vice*) |
| Jack M. Dougherty (No. 6784) | 601 Lexington Avenue |
| 500 Delaware Avenue, Suite 600 | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 446-4800 |
| Telephone: (302) 652-3131 | Facsimile: (212) 446-4900 |
| Facsimile: (302) 652-3117 | Email: joshua.sussberg@kirkland.com |
| Email: preilley@coleschotz.com | Email: aparna.yenamandra@kirkland.com |
| snewman@coleschotz.com | |
| mfitzpatrick@coleschotz.com | - and - |
| jdougherty@coleschotz.com | |
| | Anup Sathy, P.C. (admitted *pro hac vice*) |
| | Jeffrey Michalik (admitted *pro hac vice*) |
| | Lindsey Blumenthal (admitted *pro hac vice*) |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: anup.sathy@kirkland.com |
| | jeff.michalik@kirkland.com |
| | lindsey.blumenthal@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |
| **RICHARDS, LAYTON & FINGER, P.A.** | **LATHAM & WATKINS LLP** |
| Zachary Shapiro (No. 5103) | Ray Schrock (admitted *pro hac vice*) |
| Zachary Javorsky (No. 7069) | Candace Arthur (admitted *pro hac vice*) |
| One Rodney Square | Jonathan Gordon (admitted *pro hac vice*) |
| 920 N. King Street | 1271 Avenue of the Americas |
| Wilmington, Delaware 19801 | New York, New York 10020 |
| Telephone: (302) 651-7700 | Telephone: (212) 906-1200 |
| Facsimile: (302) 651-7701 | Facsimile: (212) 751-4864 |
| Email: shapiro@rlf.com | Email: ray.schrock@lw.com |
| javorksy@rlf.com | candace.arthur@lw.com |
| | jonathan.gordon@lw.com |
| *Co-Counsel to Dollar Tree Stores, Inc.* | *Co-Counsel to Dollar Tree Stores, Inc.* |