**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administration) |
| JOANN INC., *et al.*,[2] | Adversary No. 25- |
| Plaintiffs, | |
| ADVANTUS, CORP., FAIRFIELD PROCESSING CORP., GWEN STUDIOS, LLC, LOW TECH TOY CLUB, LLC, ORMO ITHALAT IHRACAT A.S., SPRINGS CREATIVE PRODUCTS GROUP, LLC., | |
| Defendants. | |

**ADVERSARY COMPLAINT**

Pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 105(a) and 362(a), the debtors and debtors-in-possession in the above-captioned cases, (collectively, the "Debtors" or "JOANN") bring this Adversary Complaint to enjoin further prosecution of an action in the Court of Common Pleas in Summit County, Ohio (the "Ohio Action") by Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club, LLC, Ormo Ithalat Ihracat

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] The Plaintiffs in this adversary case are the Debtors listed in footnote one.

A.S., and Springs Creative Products Group, LLC (the "Ohio Plaintiffs"), against Michael Prendergast, Jeffrey Dwyer, Robert Will, Christopher DiTullio, Heather Holody, Michael Kennedy, and Melissa Bowers, current and former officers and employees of JOANN (the "Ohio Defendants"). In support of this Adversary Complaint, the Debtors aver as follows:

## NATURE OF THE ACTION

1. This is an adversary proceeding, brought in the above-captioned chapter 11 cases, commenced by the Debtors pursuant to §§ 105(a) and 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Bankruptcy Rule 7065, seeking: (i) a declaration that the Ohio Action and the claims asserted in the Ohio Action violate the automatic stay under section 362(a) of the Bankruptcy Code; (ii) a declaration that the Ohio Action and the claims asserted in the Ohio Action violates the Sale Order, and (iii) injunctive relief under section 105(a) of the Bankruptcy Code and/or Bankruptcy Rule 7065, to enjoin the above-captioned defendants from continuing prosecution of the Ohio Action.

2. This relief is necessary because the Ohio Plaintiffs—a handful of unsecured creditors, a number of whom serve on the Official Committee of Unsecured Creditors (the "UCC")—are effectively suing *JOANN* for alleged conduct committed by its current and former employees. The Complaint fundamentally argues that the Ohio Defendants' conduct (conducted at all times within the scope of their official roles on behalf of JOANN) either (i) was at the behest of JOANN, thus giving rise to claims against JOANN, or (ii) harmed JOANN, thus giving rise to alleged claims JOANN could have brought against such employees. The former set of allegations constitute a violation of the Automatic Stay (*i.e.*, as claims asserted against the Debtors) and, in any event, will be treated pursuant to JOANN's Plan, if and when the Bankruptcy Court confirms

2

the Plan and the Plan Effective Date occurs.[3] The latter set of allegations constitute estate claims (*i.e.,* claims that JOANN could have pursued against its current and former employees). All estate claims were sold to the Buyer pursuant to the Sale Order (which is now a Final Order).[4]

3. As such, the Debtors seek (i) a declaration that the claims in the Ohio Action are direct claims against JOANN and subject to the Automatic Stay or, alternatively, derivative claims barred by the Sale Order and (ii) an order enjoining the Ohio Plaintiffs from further prosecution of the Ohio Action. To be clear, the Debtors are not seeking any relief in violation of *Harrington v. Purdue Pharm L.P.*, 144 S. Ct. 2071 (2024). Ultimately, if the Court determines that the claims in the Ohio Action are neither barred by the Automatic Stay (pending being addressed by the Plan) nor barred by the Sale Order, the Debtors and the Ohio Defendants will address the merits of the claims in the appropriate non-bankruptcy forum.

4. The Debtors have filed a motion concurrently herewith requesting an order, after notice and a hearing, preliminarily enjoining the Ohio Action until such time as the Court can determine whether the claims in the Ohio Action are direct claims subject to the Automatic Stay and/or derivative claims that cannot be brought by the Ohio Plaintiffs as a result of the Sale Order.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

---

[3] Indeed, the Ohio Plaintiffs have already filed claims in these chapter 11 cases for functionally the identical amount they are claiming as damages in the Ohio Action. This is exactly the type of maneuvering that the Automatic Stay seeks to prevent and is a basis to enjoin the Ohio Action.

[4] *See* Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief, February 26, 2025, *In re JOANN Inc., et al.*, No. 25-10068 (CTG), ECF No. 520, at 23 ("Purchaser is hereby granted derivative standing and authority to commence, prosecute, and settle any Other Causes of Action acquired pursuant to the Agency Agreement other than the Released Causes of Action.").

the District of Delaware, dated as of February 29, 2012, because this matter arises in, under, and is related to a pending bankruptcy case.

6. This is a core proceeding to be heard by the Court under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

7. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

8. This adversary proceeding is brought under sections 105(a) and 362(a) of the Bankruptcy Code, as made applicable hereto by Bankruptcy Rules 7001(7) and 7065.

9. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Adversary Proceeding.

## THE PARTIES

10. JOANN was the nation's category leader in sewing and fabrics and offered one of the largest assortments of arts-and-crafts products.

11. Defendant Advantus, Corp. is a consumer products company organized under the laws of Florida, with its principal place of business in Jacksonville, Florida. Advantus, Corp. is a member of the UCC.

12. Defendant Fairfield Processing Corp. is a manufacturer of cotton and polyester fiber products organized under the laws of Missouri, with its principal place of business in Danbury, Connecticut.

13. Defendant Gwen Studios, LLC is a manufacturer and distributor of craft and hobby supplies, home décor, and children's activities and toys organized under the laws of South Carolina, with its principal place of business in Fort Mill, South Carolina. Gwen Studios, LLC is a member of the UCC.

14. Defendant Low Tech Toy Club LLC is a crochet-kit manufacturer organized under the laws of New York, with its principal place of business in Chapel Hill, North Carolina. Low Tech Toy Club LLC is a member of the UCC.

15. Defendant Ormo Ithalat Ihracat A.S. is a producer, importer, and exporter of handknitting yarns based in Istanbul, Turkey. Ormo Ithalat Ihracat A.S. is a member of the UCC.

16. Defendant Springs Creative Product Group, LLC is a textile and service business organized under the laws of South Carolina, with its principal place of business in Rock Hill, South Carolina.

## BACKGROUND

### A. The Debtors' Chapter 11 Cases

17. On January 15, 2025, JOANN and certain of its affiliates filed voluntary petitions for relief under Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are operating their business and managing their property as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

18. As a matter of law, the commencement of a bankruptcy case results in the imposition of an automatic stay that acts as an injunction against all parties from taking certain actions against debtors (the "Automatic Stay"). The Automatic Stay prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (the "Automatic Stay"). The Automatic Stay is still in effect.

19. Following a marketing process and auction, the Debtors entered into an agency agreement with GA Joann Retail Partnership, LLC, and the Prepetition Term Loan Agent (the "Purchaser") for the right to liquidate substantially all of the Debtors' assets (the "GA Transaction"). On February 26, 2025, the Bankruptcy Court approved the GA Transaction and

the sale of all of JOANN's estate claims, including derivative claims, to the Purchaser (as defined in the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Sale Order")). Such claims are now the exclusive property of the Purchaser. The UCC supported the GA Transaction and entry of the Sale Order, which also included various provisions incorporating a global settlement of the UCC's objections to the Sale.[5]

20. Having closed the GA Transaction, the Debtors' primary objective in these Chapter 11 Cases is to confirm a plan to liquidate the Debtors' estates in an orderly manner and distribute value to stakeholders in accordance with the Bankruptcy Code (the "Plan"). On May 5, 2025, the Debtors filed the Disclosure Statement for the Amended Joint Chapter 11 Plan of JOANN Inc. and its Debtor Affiliates [Docket No. 810] (the "Disclosure Statement"), followed by an amended version on May 24, 2025, after extensive negotiations with, among other parties, the UCC. No party in interest objected to the Disclosure Statement. On May 27, 2025, the Bankruptcy Court conditionally approved the adequacy of the Disclosure Statement.

21. The Bankruptcy Court's combined hearing to consider confirmation of the Plan and final approval of the Disclosure Statement will be held on July 10, 2025.

    **B.**    **The Ohio Action**

22. On May 15, 2025, the Ohio Plaintiffs (including those serving on the UCC, who was actively and constructively negotiating the Plan with the Debtors at the time) filed a complaint in the Court of Common Pleas in Summit County, Ohio (the "Complaint"). The Complaint, attached hereto as **Exhibit A**, asserts causes of action against certain of the Debtors' current and

---

[5] *See* Feb. 26, 2025 Sale Hearing Tr., *In re JOANN Inc., et al.,* No. 25-10068 (CTG), ECF No. 565, at 7:14-17 ("We, over the course of the last 24 hours, 24 to 36 hours, have reached global consensus across the capital structure with the pre-petition ABLs, the pre-petition FILOs, the term lenders, the UCC, and the debtors."); *Id.* at 10:12 – 12:08 (describing UCC settlement).

6

former officers and employees for actions taken in their official capacity as employees and officers of JOANN.

23. The Ohio Action challenges alleged misrepresentations made by the Ohio Defendants in their official capacities in the months leading up to the Petition Date that purportedly misled the Ohio Plaintiffs into providing product and extending credit to JOANN that JOANN would ultimately be unable to honor as a result of its bankruptcy filing. The allegations in the Complaint fundamentally fault JOANN for facing financial hardship that ultimately led it to seek the protection of the chapter 11 process. The Complaint attempts to lay responsibility for the loss suffered by the Ohio Plaintiffs at the feet of officers and employees of JOANN simply for carrying out their jobs (putting aside the many false and overstated allegations of the Ohio Plaintiffs). These claims—even if meritorious (and they are not)—are barred by the Automatic Stay and the Sale Order.

24. The Ohio Defendants will not be liable except on facts that would also impose liability on JOANN, which makes this a direct action against JOANN. Nowhere do the Ohio Plaintiffs allege that the Ohio Defendants deviated from their duties as JOANN officers. Instead, they reiterate that their harms result directly from their decisions to continue business with JOANN based on business dealings with JOANN's employees—they do not allege anywhere that any harm resulted from the Ohio Defendants as individuals, only as part of JOANN, the company. Nor do they allege that these individuals sought personal gain from their alleged conduct, reinforcing that the Ohio Defendants were acting solely as representatives of JOANN.

25. The harm the Ohio Plaintiffs claim is against their business, and they allege that it was because their employees were led to believe that JOANN would be able to pay what was owed. Any one of the creditors who agreed to supply JOANN during this period of time but were

ultimately not paid due to JOANN's financial difficulties would have the same claim. Regardless of who was the face on the phone calls between the two companies, these claims are derivative because they apply to all creditors who hoped JOANN could pay their invoices but ultimately could not.

26. Thus, the true gravamen of the Ohio Plaintiffs' claims must necessarily sound in direct claims against JOANN (which are subject to the Automatic Stay and, eventually, the claims reconciliation process outlined in the Plan) or in derivative claims against the officers and employees (which were property of JOANN's estates and sold to the Purchaser pursuant to the Sale Order). Under either circumstance, the Ohio Action cannot proceed.

## COUNT ONE
## DECLARATORY JUDGMENT THAT THE AUTOMATIC STAY APPLIES TO THE OHIO ACTION

27. The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Adversary Complaint as if fully set forth herein.

28. Section 362 of the Bankruptcy Code provides that the Debtors' voluntary chapter 11 petition operates as a stay, applicable to all entities, of—"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; […]  (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] […] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(1), (3), and (6).

29. By asserting that the Ohio Defendants engaged in the acts alleged in the Complaint in their *official* capacities, (*see* Compl. ¶ 5) and that such acts were taken pursuant to contractual

8

arrangements between the Ohio Plaintiffs and JOANN, the Ohio Plaintiffs are doing nothing more than claiming that they were harmed by the acts of JOANN under the guise of claims against the Ohio Defendants.

30. The Complaint is, in substance, a direct claim against JOANN as Debtors.

31. Accordingly, the claims in the Ohio Case are stayed under Section 362 of the Bankruptcy Code.

32. JOANN is entitled to a declaratory judgment that the claims in the Complaint are subject to the Automatic Stay under Section 362 of the Bankruptcy Code.

### COUNT TWO
### DECLARATORY JUDGMENT THAT THE OHIO ACTION VIOLATES THE SALE ORDER

33. The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Adversary Complaint as if fully set forth herein.

34. The claims articulated in the Ohio Action are also estate claims that Ohio Plaintiffs lack standing to bring.

35. Notably, the Complaint purports to disavow any claims against the Ohio Defendants individually (*i.e.*, the Ohio Plaintiffs are asserting claims against the Ohio Defendants in their official capacities as employees and officers of JOANN). As a result, the gravamen of the Complaint is that the Ohio Defendants took actions that led to the ultimate insolvency of JOANN, thus causing JOANN to harm its creditors—including the Ohio Plaintiffs—by failing to make good on its agreements with those creditors.

36. Because the Complaint alleges that the Ohio Defendants took actions inconsistent with the best interests of JOANN and thus improperly caused JOANN to harm the Ohio Plaintiffs, the Complaint alleges derivative claims that are the property of the estate.

37. Furthermore, the Complaint alleges that the Ohio Plaintiffs were harmed by JOANN's insolvency and inability to make payments to unsecured creditors. The Complaint therefore alleges a generalized harm based on facts available to all creditors, and such claims are also derivative claims and are the property of the estate.

38. All of JOANN's estate claims, including derivative claims, were sold to the Purchaser in the GA Transaction and now are the Purchaser's exclusive property. The Bankruptcy Court confirmed the sale of such claims in the Sale Order. The Ohio Plaintiffs' attempts in the Complaint to pursue derivative claims violates the Sale Order, and they do not have standing to pursue those claims.

39. JOANN is entitled to a declaratory judgment that the claims in the Complaint would be property of the estate but are now property of the Purchaser because they have been sold to the Purchaser pursuant to the Sale Order.

**COUNT THREE**
**INJUNCTION ENJOINING THE STATE COURT ACTIONS UNDER 11 U.S.C. 105(a) AND RULE 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

40. The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Adversary Complaint as if fully set forth herein.

41. Section 105(a) of the Bankruptcy Code gives this Court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a), JOANN respectfully requests that the Bankruptcy Court issue an order pursuant to Section 105(a) enjoining the Ohio Action to prevent further violations of the automatic stay and the Sale Order.

42. If granting relief under COUNT ONE, the Debtors are also entitled to an injunction pursuant to Federal Rule 65, made applicable to this Adversary Proceeding by Bankruptcy Rule

7065, because: (i) the Debtors have a substantial likelihood of successfully demonstrating that the claims in the Ohio Litigation are direct claims against JOANN and the property of JOANN's estates; (ii) there is a substantial risk of irreparable harm to the Debtors if further prosecution of the Ohio Action is not enjoined; (iii) the harm to the Debtors substantially outweighs the potential harm to the Ohio Plaintiffs resulting from a temporary delay in pursuing their claims; and (iv) injunctive relief would serve the public interest.

43. If granting relief under COUNT TWO, the Debtors are also entitled to an injunction pursuant to Federal Rule 65, made applicable to this Adversary Proceeding by Bankruptcy Rule 7065, because: (i) the Debtors have a substantial likelihood of successfully demonstrating that the claims in the Ohio Litigation are derivative claims that have been sold to the Purchaser pursuant to the Sale Order; (ii) there is a substantial risk of irreparable harm to the Debtors if further prosecution of the Ohio Action is not enjoined; (iii) the harm to the Debtors substantially outweighs the potential harm to the Ohio Plaintiffs resulting from a temporary delay in pursuing their claims; and (iv) injunctive relief would serve the public interest by reinforcing the effect of orders of the Bankruptcy Court.

44. With respect to the first factor, the Complaint concedes that the Ohio Defendants were, at all times, acting in their official capacity. As a result, the Ohio Defendants were *either* acting at the behest of, and at the direction of, JOANN (such that it was *JOANN*'s alleged conduct that caused the alleged harm to the Ohio Plaintiffs) *or*, unbeknownst to JOANN, they were acting in a manner that harmed JOANN (such that it is *JOANN* that has an actionable claim against the Ohio Defendants). In either case, there are no *direct* claims that the Ohio Plaintiffs can bring against the Ohio Defendants. With respect to the second factor, the Debtors are on the precipice of confirming a Plan that provides for an orderly distribution of remaining assets for the benefit of all

stakeholders—including general unsecured creditors, like the Ohio Plaintiffs. The Debtors are operating on a limited wind-down budget following the closing of the Sale (as the Ohio Plaintiffs serving on the UCC are keenly aware), and to the extent the Complaint inspires other general unsecured creditors from end-running the Automatic Stay and the Plan process that expressly address general unsecured claims against JOANN, these Chapter 11 Cases will descend into chaos and the Debtors will risk administrative insolvency. The constituencies that will suffer first and swiftest will be general unsecured creditors, including (but of course not limited to) the Ohio Plaintiffs. With respect to the third factor, if the Plan is confirmed less than a month from now, it will provide for a process for the Ohio Plaintiffs to pursue their general unsecured claims against JOANN in an orderly manner. And, with respect to the fourth factor, the injunction would serve the public interest by ensuring that the Debtors' estates are maximized for the benefit of all creditors, the Sale Order is honored, estate assets are distributed in accordance with a confirmed chapter 11 plan, and preventing the Ohio Plaintiffs from jumping ahead of their fellow unsecured creditors in violation of the Bankruptcy Code.

45. JOANN respectfully requests that the Bankruptcy Court issue an order pursuant to Federal Rule 65, made applicable to this Adversary Proceeding by Bankruptcy Rule 7065, enjoining the Ohio Action to prevent further violations of the Automatic Stay and the Sale Order.

## **PRAYER FOR RELIEF**

46. WHEREFORE, the Debtors respectfully request that the Court: (i) issue an order declaring that the Ohio Action violates the Automatic Stay; (ii) alternatively issue an order declaring that the Ohio Action violates the Sale Order, and (iii) enter an injunction pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy and Rule 7065 enjoining the continuation of the Ohio Action (iv) award such other legal and equitable relief as the Court deems just and proper.

Dated: June 13, 2025
Wilmington, Delaware

*/s/ Patrick J. Reilley*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Patrick J. Reilley (No. 4451) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Stacy L. Newman (No. 5044) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Michael E. Fitzpatrick (No. 6797) | Aparna Yenamandra, P.C. (admitted *pro hac vice*) |
| Jack M. Dougherty (No. 6784) | 601 Lexington Avenue |
| 500 Delaware Avenue, Suite 600 | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 446-4800 |
| Telephone: (302) 652-3131 | Facsimile: (212) 446-4900 |
| Facsimile: (302) 652-3117 | Email: joshua.sussberg@kirkland.com |
| Email: preilley@coleschotz.com | Email: aparna.yenamandra@kirkland.com |
| snewman@coleschotz.com | |
| mfitzpatrick@coleschotz.com | - and - |
| jdougherty@coleschotz.com | |
| | Anup Sathy, P.C. (admitted *pro hac vice*) |
| | Jeffrey Michalik (admitted *pro hac vice*) |
| | Lindsey Blumenthal (admitted *pro hac vice*) |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: anup.sathy@kirkland.com |
| | jeff.michalik@kirkland.com |
| | lindsey.blumenthal@kirkland.com |
| *Co-Counsel to the Debtors* | *Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |