**Exhibit B**

**Redline**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 25-10068 (CTG) |
| JOANN INC., *et al.*,[1] ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Re: Docket ~~No~~Nos. 429, 760 and 1004 |

## ORDER AUTHORIZING THE DEBTORS TO ASSUME AND
## ASSIGN CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES
### [Burlington Stores, Inc.]

Joann Inc. and certain of its affiliates (collectively, the "Debtors"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1, and pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order") which, among other things, approved the Contract Procedures and authorized the Debtors to assume and assign certain unexpired leases of non-residential real property identified in **Exhibit A** hereto (each, as the same may be amended, or otherwise modified, from time to time, a "Lease", and collectively, the "Leases"), and the Leases having been designated for assumption and assignment to Burlington by GA Joann Retail Partnership, LLC ("Agent") in accordance with its Lease Designation Rights pursuant to the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of all Liens,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

*Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Sale Order"), and the Debtors having filed and served that certain *First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 760] (the "Assumption Notice"), and the Assumption Notice satisfying the requirements set forth in the Procedures Order; and the Assumption Notice seeking, *inter alia*, (i) to assume and assign the Leases to Burlington Coat Factory Warehouse Corporation and Burlington Coat Factory of Texas, Inc., as applicable (hereinafter, "Burlington") pursuant to an *Assumption and Assignment Agreement* between and among Agent, as agent for the Debtors, and Burlington, substantially in the form annexed hereto as **Exhibit B** (the "Assignment Agreement"); and (ii) such additional and related relief as the Court deems necessary; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, THEREFORE, the Court hereby finds as follows:

A.  Good and sufficient notice of the Assumption Notice has been provided in accordance with the Procedures Order, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of each Lease has been afforded to the applicable counterparty to the unexpired non-residential real property lease (each, a "Landlord") in accordance with the Procedures Order.

B.  The assumption and assignment of the Leases to Burlington, pursuant to sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the Sale Order.

C.  Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, Burlington has provided adequate assurance of future performance under the Leases.

-3-

D. The assumption and assignment of the Leases to Burlington is in compliance with section 365(b)(3) of the Bankruptcy Code.

E. Burlington is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED THAT:

1. The *Limited Objection of Landlord, Suburban Plaza, LLC, to Debtors' First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket. No. 1004] is overruled.

2. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume and assign each applicable Lease to Burlington, pursuant to the terms and provisions of this Order and the Assignment Agreement, all of the terms of which are hereby approved, except as otherwise modified by agreement in writing by and between the Landlord and Burlington.

3. In accordance with section 365 of the Bankruptcy Code, effective as of the occurrence of a closing on the assignment of the Leases pursuant to the terms of the Assignment Agreement (the "Closing"), the Leases shall be assumed, assigned and transferred free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (the "Interests or Claims"), other than easements, rights-of-way and restrictive covenants that the Leases are expressly subject to, as well as any reciprocal easement agreement or declaration of covenants and restrictions or other similar land use agreement in effect prior to the date of the Leases and to which the Leases are expressly subject to, except in each case to the extent otherwise expressly set forth in this Order or the Assignment Agreement, because one or more of the standards set

forth in sections 363(f)(1)–(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Debtors or Agent are entitled to receive in respect of the sale of the Leases (the "Sale") to Burlington shall attach to the proceeds to be received by the Debtors or Agent in the same order, priority and validity that such Interests or Claims had in such Leases or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in these cases; *provided*, *however*, in all respects, following the assumption and assignment of each Lease, as described by and governed by this Order and the Assignment Agreement, Burlington shall, except as set forth in this Order, assume all of the terms, conditions and covenants of the Leases as tenant under the Leases, and agrees to assume and undertake to pay, perform and discharge all of the obligations and duties thereunder that accrue and come due from and after the Closing (the "Lease Obligations"). Those holders of Interests or Claims who did not object to the Assumption Notice, or who interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

4. ~~3.~~ Upon the entry of this Order and the occurrence of the Closing Date, Burlington shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenants thereunder.

5. ~~4.~~ Upon entry of this Order and the occurrence of the Closing Date, Burlington is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code section 363(m).

6.    5. Pursuant to section 365(b)(l) of the Bankruptcy Code, the costs to cure all defaults under the Leases shall be fixed in the amounts set forth in **Exhibit A** attached hereto (the "Cure Costs") and shall be promptly paid by Agent within three (3) business days of the Closing Date.  Any objection of the Landlords to the assumption and assignment of the Leases, any Cure Costs, or for further adequate assurance of future performance other than that provided in this Order and/or the Assignment Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Assumption Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to Agent, Burlington, or the Debtors as a result of the assumption and assignment of the Leases contemplated by this Order. Upon remittance of the Cure Costs by Agent to the Landlords pursuant to the terms of this Order, the Landlords shall be barred from asserting any additional cure amounts or other defaults under the Leases for the period prior to the Closing Date, or any defaults arising from the assumption and assignment of the Leases that were required to be asserted as cure pursuant to section 365(b) of the Bankruptcy Code.  For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other default amounts are due with respect to the Leases for the period prior to the Closing Date, and the Debtors and Burlington shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, Agent, or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases.  On and after the Closing Date, Burlington shall be

responsible for paying (and shall be entitled to receive any credits for) all amounts that accrue and come due under the Leases on or after the Closing Date.

7.    6. All personal property and furniture, fixtures and equipment ("FF&E") remaining in the stores subject to the Leases on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Burlington may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

8.    7. Subject to the Closing, payment of the Cure Costs as provided for in this Order and the Assignment Agreement shall be in full satisfaction and cure of any and all defaults under the Leases that are required to be cured by Bankruptcy Code §§ 365(b)(1)(A) and (B).  Upon the payment of the Cure Costs in accordance with the Assignment Agreement, Agent, the Debtors and their estates shall have no further liability to the Landlords for charges that accrue and become due and payable on or after the Closing Date.  The Landlords shall be forever barred and estopped from asserting against Agent, the Debtors or their estates or Burlington, their successors or assigns, or their property, any default existing as of Closing Date, except for as set forth in any side letter agreement entered into between Burlington and any Landlord.

9.    8. Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases and the satisfaction of the requirements of section 365 of the Bankruptcy Code.  The assignment of the Leases and payment of the Cure Costs, as applicable, shall relieve the Debtors from any further liability pursuant to section 365(k) of the Bankruptcy Code; *provided*, *however*, nothing in this Order or the Assignment Agreement shall prevent the Landlords from seeking indemnification from the

Debtors for third party claims related to events and circumstances that occurred prior to the Closing from the Debtors' applicable insurance policies. For the avoidance of doubt and notwithstanding anything in this Order to the contrary, with respect to any claims that the Landlords or their agents have or may have in the future against the Debtors for which the Debtors maintained insurance covering such claims (for example, for personal injury claims or indemnification claims related to events occurring from the use and occupancy of the leased premises prior to the Closing Date), nothing in this Order shall prevent the Landlords or their agents from making claims and seeking recovery from such insurance policies and proceeds, and nothing in this Order shall be deemed to terminate such insurers' obligations under such insurance policies (regardless of whether the claims are made before or after entry of this Order or the assignment of the Leases).

10.    ~~9.~~ Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, the following provisions in the Leases shall be deemed unenforceable (the "<u>Unenforceable Provisions</u>"):

    a.    a provision prohibiting Burlington's intended use of the premises;

    b.    a provision prohibiting necessary alterations to the premises, including the installation of any signage required to convert the premises to Burlington's intended use, provided such alterations are necessary to operate at the premises under Burlington's trade name and consistent with its business operations and are done in a matter that is consistent with the terms of the applicable Lease;

    c.    a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the

assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (180) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances may warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Assignment Agreement) listed in the Assignment Agreement;

  d. a provision conditioning assignment on Landlord consent, or requiring payment to the Landlords as the price of assignment, or granting Landlords the right to recapture the leased premises following the assignment;

  e. a provision effecting forfeiture or a modification of any of the Debtors' rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

  f. a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

  g. a provision restricting Burlington's ability to place reasonable signage on the premises; *provided*, that such signage is necessary by Burlington to conform such store to Burlington's typical retail store consistent with Burlington's intended use of the

-9-

premises and such placement is done in a matter consistent with the terms of the applicable Lease;

  h. a provision requiring the use of a certain tradename;

  i. a provision regarding minimum sales revenues, if any, required to be satisfied at the premises covered by the Leases; and

  j. any radius provisions set forth in the Leases to the extent applicable to any existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

For the avoidance of doubt, and except as otherwise agreed to in writing between any Landlord and Burlington, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the Unenforceable Provisions.

  11. ~~10.~~ Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Burlington in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under the Leases.

  12. ~~11.~~ Notwithstanding any term of the Leases to the contrary, any extension, renewal option, or other rights contained in any Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the applicable Burlington entity, in accordance with the terms of such Lease.

13. ~~12.~~ Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Burlington are authorized to close the Sale set forth in the Assignment Agreement immediately upon entry of this Order. Time is of the essence in closing the Sale, and the Debtors and Burlington intend to close the Sale as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

14. ~~13.~~ Upon entry of this Order, this Order and the findings herein shall be binding upon all parties to the Leases and the Assignment Agreement.

15. ~~14.~~ Upon the entry of this Order and the occurrence of the Closing Date, the applicable Landlord shall accept and honor the assignment of each applicable Lease to Burlington.

16. ~~15.~~ Each Landlord shall reasonably cooperate and execute and deliver, without undue delay and upon the request of Burlington, and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the premises as contemplated under the Assignment Agreement.

17. ~~16.~~ Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' liability insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) reasonably related to the Leases or the premises leased thereunder shall be abandoned, sold, assigned, or otherwise transferred

without the express prior written consent of the Burlington and applicable insurer and/or third-party administrator.

18.    ~~17.~~ This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Sale (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

19.    ~~18.~~ The Debtors and Burlington are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

20.    ~~19.~~ Burlington is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Burlington takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Burlington taking title or possession of the Leases and the subject premises, and Burlington is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement and any side letter that may be entered into by and between Burlington and Landlord.

21.    ~~20.~~ This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

22. ~~21.~~ Any remaining objections to the assignment of any Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

23. ~~22.~~ Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Burlington, provided that Burlington shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Burlington shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Burlington for the period prior to the Closing Date.

24. ~~23.~~ To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

25. ~~24.~~ To the extent that Burlington and any Landlord enter into a side letter with respect to a Lease, such side letter shall govern with respect to rights and obligations of Burlington and that respective Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

26. ~~25.~~ The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

27. ~~26.~~ The Assignment Agreement and any related agreements, documents, or other

-13-

instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided*, *further*, that the Debtors shall provide any such modification, amendment, or supplement to the applicable Landlord no less than one (1) day prior to execution of such modification, amendment, or supplement.

# EXHIBIT A[1]

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract | Cure Amount[2] |
|---|---|---|---|---|---|---|---|
| 1. | Burlington Coat Factory Warehouse Corporation | Suburban Plaza, LLC | c/o Selig Enterprises, Inc., Attn: Kenneth J. Clayman, Esq., Atlanta, GA, 30309 | 2412 | 2655 N. Decatur Road | August 12, 2014 Lease Agreement between Jo-Ann Stores, LLC and Suburban Plaza, LLC | $10,995.64 |

*Intentionally Omitted*

*To be submitted with order for entry based on notice and resolution of objections*

---

[1] The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.

[2] The Cure Amounts listed herein may include amounts that have recently been paid or otherwise satisfied, which will be netted out from the Cure Amount(s) prior to payment thereof.

Exhibit A

# EXHIBIT B

**Assumption & Assignment Agreement**

(see attached)

Exhibit B