### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 929** |

### OBJECTION OF AFP ROCKRIDGE 2019, LLC TO THE FIFTH NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT[S] AND/OR UNEXPIRED LEASES

AFP Rockridge 2019, LLC ("Landlord"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Fifth Notice of Assumption and Assignment of Certain Executory Contract[s] [sic] and/or Unexpired Leases* [D.I. 929] (the "Assignment Notice"), seeking to assume and assign that certain unexpired nonresidential real property lease dated February 8, 1994 between Jo-Ann Stores, LLC and AFP Rockridge 2019, LLC. to Dollar Tree Stores, Inc. ("Dollar Tree" or "Assignee").[2]  In support of the Objection, Landlord respectfully represents as follows:

### I.      PRELIMINARY STATEMENT

The proposed assumption and assignment of the Lease (defined below) to Dollar Tree—a retailer that sells a wide variety of goods, including groceries, primarily at a fixed price

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Assignment Notice and accompanying documents.

point of $1.25—should not be approved as such use is not only prohibited under the current permitted use clause of the Lease, but it will also result in violation of a grocery exclusive granted to the anchor tenant in the Center (defined below), that if allowed will result in significant pecuniary harm and losses to Landlord, and is contrary to the express provisions of 11 U.S.C. § 365(b)(3). Specifically, the Lease prohibits the Premises (defined below) from being used for any other purpose other than the retail of "[f]abrics, patter[n]s [*sic*], notions and related items, and accessories" which includes, the sale of "sewing machines and accessories, craft items and craft sewing notions, including artificial flowers" and provision of "sewing machine repair services and sewing classes." <u>See</u> Lease, § 17 and Reference Data. In addition, the recorded ECR (defined below), which runs with the land of the Center, prohibits another retailer, other than the current grocery anchor or its successor and assigns, from operating "a grocery store (supermarket) meat market or produce shop" in the same Center. Nor can landlord consent to the Debtors' proposed assumption and assignment of the lease to Dollar Tree, as such consent would be in direct contravention of the Landlord's obligations under the ECR. Because the Debtors will be unable to overcome these issues to meet their burden of adequate assurance of future performance as required under 11 U.S.C. § 365(b)(3)(B), (C) and (D), this Court must deny the Debtors' proposed assumption and assignment of the Lease to Dollar Tree.

To the extent the Court is inclined to grant the assumption and assignment of the Lease to Dollar Tree over the objection of the Landlord, as a condition to any assumption and assignment of the Lease, the Debtors and/or Dollar Tree, as applicable, must cure or provide adequate assurance of prompt cure of all defaults under the Lease, including to compensate the Landlord for any actual pecuniary losses incurred by the Landlord resulting from all defaults, such as their reasonable attorneys' fees, as well as any losses and damages incurred by the Landlord as

a result of any violation of the use and exclusives in the Lease and ECR arising from the assumption and assignment of the Lease to Dollar Tree, and any disruption of the tenant mix and balance.

In addition, any assignment of the Lease must not be free and clear of (a) all applicable reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the Center; (b) the liability and responsibility for all obligations to pay all accruing or accrued, but unbilled charges or obligations due under the Lease, including un-billed year-end adjustments and reconciliations, which may come due in the future in accordance with the terms of the Lease, regardless of when they arose, or (c) any contractual indemnification obligations to indemnify and hold the Landlord harmless with regard to claims for personal injuries at the Premises and/or damage to the Premises or Center arising from the Debtors' use and occupancy of the Premises prior to the assumption and assignment, but which may not be known to the Landlord as of the time of the assumption and assignment. Any proposed form of order approving the assumption and assignment of the Lease must be modified to ensure that the assumption and assignment of the Lease is pursuant to the terms of the Lease and does not cut-off obligations arising thereunder and the Landlord's rights to enforce those obligations or any related agreements. Absent sufficient assurances, including modification of the Assignment Order, an assignment of the Lease must be denied.

Landlord will continue to engage in discussions with the Debtors, the GA Group (defined below) and Dollar Tree regarding each of the issues raised by this Objection, but unless resolved by a withdraw of Dollar Tree's bid for the Lease, the Landlord will be required to prosecute its Objection and reserves all rights to argue these and other issues at any hearing on the Assignment Notice.

II.    **BACKGROUND FACTS**

**(a) The Bankruptcy Cases**

1.    On January 15, 2025 (the "<u>Petition Date</u>"), JOANN Inc. and certain of its debtor affiliates (the "<u>Debtors</u>", and each a "<u>Debtor</u>") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

2.    On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* (D.I. 16) (the "<u>Assumption and Assignment Procedures Motion</u>"), seeking to establish procedures governing the future assumption and assignment of unexpired leases of non-residential real property.

3.    Also on the Petition Date, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* (D.I. 17) (the "<u>Sale Motion</u>"), seeking to establish procedures governing the potential sale or sales of substantially all of the Debtors' assets.

4.    On February 14, 2025, the Court entered an *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* (D.I. 429) ("<u>Assumption and Assignment Procedures Order</u>"), which granted the Assumption and Assignment Procedures Motion.

5.      On February 16, 2025, the Court entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* (D.I. 446), which granted the procedural aspect of the Sale Motion.

6.      On February 26, 2025, the Court entered the *Order (A) Approving and Authorizing the Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* (D.I. 520) (the "Sale Order"), which approved, among other things, that certain Agency Agreement dated as of February 26, 2025, entered into by and among the Debtors and GA Joann Retail Partnership, LLC (the "GA Group") and Wilmington Savings Fund Society, FSB (collectively, the Purchaser), for the sale of the exclusive right to market and sell and/or otherwise designate purchasers, transferees and/or assignees of any or all of the Debtors' Assets (as defined in the  Agency  Agreement), including the sale of the exclusive right of GA Group to designate purchasers, assignees, sublessees, or other transferees of the Debtors' unexpired leases of non-residential real property, including the Lease.

7.      On May 16, 2025, the Debtors filed the Assignment Notice indicating their intent to assume and assign the Lease to Dollar Tree, as Assignee, under the terms of the Assumption and Assignment Procedures Order with a proposed assumption and assignment date of as soon as practicable following entry of an order approving assumption and assignment of the Lease.  The Assignment Notice set a deadline for filing objections to the Assignment Notice of May 30, 2025 (the "Objection Deadline").

8.      Landlord never received notice of the Assignment Notice, nor proof of adequate assurance.[3]   Landlord's current address is: 4010 82nd Street, Suite 100, Lubbock, TX 79423, which change of address was noticed to the Debtors on or about July 30, 2024.  *See* Change of Address Notice attached hereto as **Exhibit 1**.   However, the Debtors mailed notice of the Assignment Notice—and, in fact, all notice of any filings in these cases since the Petition Date to the Landlord's former address of 5307 W. Loop 289, Suite 302 P.O. Box 65207, 79464, (Mailings), Lubbock, TX 79414.  In fact, through word of mouth, Landlord only recently became aware of these chapter 11 proceedings on June 6, 2025, at which time it underwent a thorough review of the docket in these cases and discovered that the Lease was included on the Assignment Notice, although subsequent to the Objection Deadline.   Thereafter, undersigned counsel was retained on or about June 10, 2025.

9.      The Assignment Notice did not include any of the substantive assignment agreements and/or transfer documentation by and between GA Group and Dollar Tree but did include a proposed form of order (the "Assignment Order"), and scheduled a proposed cure amount of $0.00 (the "Proposed Cure Amount") in connection with any assumption and assignment of the Lease to the Assignee.

10.      Prior to the filing of this Objection, Landlord, through the undersigned counsel, reached out to counsel for the Debtors, GA Group and Dollar Tree, to notify them of the deficiency in service of the Assignment Notice.  Landlord, through counsel, also requested that

---

[3]      The Assumption and Assignment Procedures require "evidence of adequate assurance of future performance … by overnight delivery upon the Assumption Counterparties' affected by the Assumption Notice … and upon the Assumption Counterparties' counsel, if known, by electronic mail … ."   Assumption and Assignment Procedures, § 3(b), pp. 6-7.

The *Affidavit of Service* (D.I. 1146) to the Assignment Notice provides that certain "Dollar Tree Adequate Assurance Information" was disseminated, but such information was not sent to the Landlord.

the parties' agree to re-set the 14-day Objection Deadline for the Landlord due to the notice deficiencies.  As of the filing of this Objection, however, the Debtors have not responded to that request, and while Dollar Tree was amenable to an extension of the Objection Deadline through June 20, 2025, the grant of that extension was conditioned on the Landlord agreeing to the assignment and a waiver of July rents should the parties not be able to reach a consensual form of Order before the end of June 2025.   As more fully set forth herein, the Landlord is unable to consent to the assignment as such will violate the use clause under the Lease, and put the Landlord in breach of its obligations under the ECR to its grocery anchor.

      **(b)  The Lease**

      11.    The Debtor, Jo-Ann Stores, LLC, and the Landlord are parties to that certain unexpired lease of nonresidential real property dated February 8, 1994 (as amended from time to time, the "Lease"), whereby the Debtors lease approximately 15,959 square feet of retail space from the Landlord located at 5217 82nd Street, Lubbock, Texas (the "Premises"), in that certain shopping center more commonly known as Rockridge Plaza (the "Center").

      12.    The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

      4.    Pursuant to the Lease, the Premises may only be used for "the Use of Leased Premises stated in the Reference Data," Lease § 17, which restricts use of the Premises to the retail of "[f]abrics, patter[n]s [*sic*], notions and related items, and accessories," including the sale of "sewing machines and accessories, craft items and craft sewing notions, including artificial flowers" and provision of "sewing machine repair services and sewing classes."  Lease, Reference Data.  A true and correct copy of the relevant excerpts of the Lease are attached hereto as **Exhibit 2**.

13.     In addition, Landlord and the Debtor, as tenant, are subject to and restricted by the *Easement with Covenants and Restrictions Affecting Land* dated October 5, 1983, recorded at Book 1860, Page 345 of the real property records of Lubbock County, Texas, as amended by that certain *First Amendment to Easements with Covenants and Restrictions Affecting Land (ECR)* by and among Rockridge TIC, Bolton, and Pay and Save, dated November 24, 2014, and recorded as document number 2014041779 of the real property records of Lubbock County, Texas, and the *Second Amendment to Easements with Covenants and Restrictions Affecting Land (ECR)* dated June 26, 2015,  recorded as document number 2015025426 of the real property records of Lubbock County, Texas (collectively, the "ECR").  A true and correct copy of the relevant excerpts of the ECR are attached hereto as **Exhibit 3**.

14.     The ECR contains an exclusive use provision that runs with the land and restricts Landlord from permitting or consenting to the use or occupancy of any part of the Center for the "operation of a grocery store (supermarket) meat market or produce shop without [Food King's] approval."  Second Amendment to ECR, § 2(a).  Food King is the current anchor grocery tenant for the Center.

17.     On June 16, 2025, the Debtors filed a revised form of order removing the Lease from the proposed order granting assumption to address unresolved issues (D.I. 1168).  However, the Assignment Notice remains pending as to the Lease.  Landlord intends to continue to engage in discussions with all parties regarding each of the issues raised by this Objection, and reserves all rights as to all issues.

## III.    ARGUMENT

18.     As a preliminary matter, the Lease should be removed from the Assignment Notice given that notice of such was deficient and re-noticed should Dollar Tree wish to still take an assignment of this Lease.  The Debtors have known, or should have known, of Landlord's

proper mailing address since July 30, 2024.  The change in address was expressly communicated via the written notice attached hereto as **Exhibit 1**.  Despite this, the Debtors did not properly serve, and therefore Landlord never received notice of, the Assignment Notice.  Therefore, the Assignment Notice and any resulting order granting the relief sought therein should not bind the Landlord or the Lease.

19.     Landlord further opposes any assumption and assignment of the Lease to Dollar Tree in violation of the restrictive use provision of the Lease and the exclusives contained in the ECR.  To the extent the Court is inclined to approve the assumption and assignment of the Lease over Landlord's Objection, Landlord further objects to any assumption and assignment of the Lease absent strict compliance with all of the requirements of Sections 365 of the Bankruptcy Code, including as to cure and adequate assurance of future performance, and the recognition of liability for accruing but not yet due obligations under the Lease, as well as any indemnification obligations, as more fully set forth herein, and the Assignment Order must be modified to address each of the Landlord's objections raised herein.

A.     **The Debtors must demonstrate adequate assurance of future performance to assume and assign the Lease to Dollar Tree.**

19.     The Debtors may not assume and assign the Lease unless they demonstrate adequate assurance of future performance.   11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2).  The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. See In re Rachels Indus., Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).  The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363.  Courts require a specific factual showing through

competent evidence to determine whether adequate assurance of future performance has been provided.  See, e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

20.    In this case, the Lease is a shopping center lease and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Lease under Section 365(b)(1)(C).  In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999).  In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D).  See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000).  The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  See 11 U.S.C. § 365(b)(3)(A);

- that **any percentage rent due under the lease will not decline substantially**.  See 11 U.S.C. § 365(b)(3)(B) (emphasis added);

- **that assumption and assignment of the lease is subject to all provisions thereof, including** (but not limited to) provisions such as a radius, location, **use, or exclusivity provision, and will not breach of any such provision in any other lease**, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C) (emphasis added); and

- that assumption and assignment of the lease **will not disrupt the tenant mix or balance in the shopping center**.

See 11 U.S.C. § 365(b)(3)(D) (emphasis added).

21.    A heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B).  Sun

<u>TV and Appliances, Inc.</u>, 234 B.R. at 370.  In connection with the heightened adequate assurance requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance.  <u>Matter of Haute Cuisine, Inc.</u>, 58 B.R. at 394.  The Debtors have not met their burden for the reasons more fully set forth herein.

> **B.** **Any Assumption and Assignment Must Comply with Terms of the Lease, and Not Breach the ECR, Violate the Existing Use, or Disrupt the Tenant Mix or Balance.**

22.     Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>") amendments, "Section 365(f)(1) was amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the Code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

23.     The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions.   Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.   It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment

of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

24.     BAPCPA clarified Section 365 to reflect the Congressional intent that a Debtor cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms.  The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

25.     Section 365(f)(1) does not modify or override Section 365(b).  Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.), 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)); Three A's Holdings, 364 B.R. 550, 559-61 (Bankr. D. Del. 2007) ("Although the Court has broad authority under section 365(f)(1) to authorize the assumption or assignment of leases in violation of their terms, *this discretion is severely constrained if the assumption or assignment involves a lease of real property in a shopping center.*  In 1984, Congress provided for heightened restrictions in section 365(b)(3) to provide a framework for enforcing common provisions found in shopping center leases.") (emphasis added).  Any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance and must ensure that percentage rents will not decline substantially.

26.     Given that the Assignee intends to use the Premises to sell goods other than fabrics, patterns, notions and related items, and accessories in direct contravention of the prohibited use under the Lease, the Debtors are unable to satisfy the requirements under § 365(b)(3)(C) as such use does not comply with the current permitted use under the Lease, and it

will violate certain other tenant's exclusive use.  See Sun TV and Appliances, Inc., 234 B.R. at

370 (court denied a motion for approval of the assumption and assignment of a lease in a shopping

center which contained a restrictive use condition.).  Landlord recognizes that, in addition to a

large variety of other merchandise, Dollar Tree sells some crafting and sewing products.  However,

the use provision in the Lease expressly limits the type of goods sold by the tenant to ***only*** those

crafting and sewing products as stated in the Reference Data.

27.    In order to assume and assign a shopping center lease, the Debtors must

provide adequate assurance that the assignment of the lease "is subject to all the provisions thereof,

including (but not limited to) provisions such as a radius, location, **use, or exclusivity provision,**

**and will not breach any such provision contained in any other lease**, financing agreement, or

**master agreement relating to such shopping center.**" 11 U.S.C. § 365(b)(3)(C) (emphasis

added).  The first clause of § 365(b)(3)(C) calls for examining the lease between the landlord and

the debtor tenant, while the second clause calls for evaluating the other leases with other tenants

in the same shopping center.  See In re Heilig-Meyers Co., 294 B.R. 660, 662 (Bankr. E.D. Va.

2001) (concluding that debtor's proposed assignment of lease to Hancock Fabrics could not satisfy

§ 365(b)(3)(C) as lease conflicted with another lease executed by the landlord after the bankruptcy

filing that (1) gave another fabric retailer "exclusive rights in the center for a fabric shop" and (2)

prohibited the landlord from "leas[ing] to any other tenant who would be in direct competition

with [such retailer].").  Additionally, given that the ECR expressly runs with the land and is in

essence an agreement that relating to the Center, it similarly must be adhered to in connection with

any assignment of the Lease.

28.    Here, not only is the Assignee's intended use prohibited under the Lease,

the ECR contains an exclusive use provision that restricts Landlord from permitting or consenting

to the use or occupancy of any part of the Center for the operation of "a grocery store (supermarket) meat market or produce shop." <u>See</u> Second Amendment to ECR, § 2(a).  In addition to the sale of other goods, Dollar Tree is a retailer of groceries.  Landlord, therefore, cannot consent to the Debtors' proposed assumption and assignment of the lease to Dollar Tree, as such consent would be in direct contravention of the obligations under the ECR.

      **C.**    **Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants.**

29.    The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment.  <u>See</u> 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); <u>Bildisco</u>, 465 U.S. 513, 531-32 (1984); <u>In re MF Glob. Holdings Ltd.</u>, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties, such as the ECR, among other agreements.  Accordingly, assumption and assignment of the Lease in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties, including the ECR.

30.    Accordingly, Landlord further objects to the assumption and/or assignment of the Lease or use of the Premises to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein, including the ECR.

**D.     The Debtors' proposed cure amount as set forth in the Assignment Notice fails to provide for the payment of all obligations due and owing under the Lease.**

31.     In order to assume and assign the Lease, to the extent permitted over the Objection of the Landlord, the Debtors must also comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

32.     The Proposed Cure Amount set forth in the Assignment Notice does not account for accrued but unbilled charges which may come due in the future.  Should the Lease be assigned, the Proposed Cure Amount set forth by the Debtors must be modified to reflect the additional charges due and owing, as well as the proposed form of Order must recognize the liability for accruing but not yet due charges under the Lease, and account for the Landlord's pecuniary losses for its reasonable attorneys' fees, and any damages or losses suffered by the Landlord stemming from any violation of the use as more fully set forth herein.

33.     Landlord agrees with the $0.00 base cure for amounts presently outstanding under the Lease, exclusive of any sums which become due after the filing of this Objection (which

amounts must be paid when due under the Lease) (the "Landlord's Cure").  The Landlord's Cure is the Landlord's base cure claim amount subject to additional qualifications and modifications (such as reimbursement amounts for attorney's fees and any indemnification required under the Lease to compensate and hold the Landlord harmless for any pecuniary losses and damages suffered as a result of the use and exclusives violations) as more fully set forth below.

34.     While as of the date of filing this Objection there is no outstanding rent and nor other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption or assumption and assignment, or when properly billed under the Lease.

i.     Attorneys' Fees, Costs and Interest

35.     The Debtors (or the Successful Bidder) takes the Lease *cum onere*—subject to existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their leases.  In re Wash. Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993).  If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under the Lease with the Debtors.  See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).

36.     Here, the Lease contains a provision for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests.  The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease.  See 11 U.S.C. § 365(b)(1)(A) and (B).  The principle is well-recognized.  In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

16

37.     The "full benefit of the bargain" principle has been held to require payment of interest.  "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."  In re Ent., Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).  Interest on pre-petition lease charges continues to run from the filing of the Debtors' petitions and must be paid as a condition of the assumption of the Lease.  See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990).  Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' defaults under the Lease, and thus to properly assume (or assume and assign) the Lease.  Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease.  Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

38.     Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption and assignment of the Lease if permitted.  Ent., Inc., 223 B.R. at 152 (citation omitted).  There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults.  Id. at 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic

stay).  Id., see also In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Props. v. Loews Cineplex Ent. Corp., et al., Case No. 01 Civ.8946, 2002 WL 535479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec., 127 S. Ct. 1199, 1206 (2007).

39.    Should an assumption and assignment of the Lease be permitted to Dollar Tree, Landlord may suffer additional pecuniary losses arising from the assumption and assignment of the Lease in violation of the use and exclusive provisions in the form of the damages and losses that the Landlord will be subject to, should Food King decide to pursue or elect its remedies as a result of the exclusive violation of the ECR.

40.    While it is difficult to monetize the complete harm that the Landlord will suffer at this stage in the proceedings, the Landlord's Cure does not yet factor in any additional losses that may be incurred if Food King elects to enforce the violation of its exclusives, or any losses as a result of any decline in percentage rents and/or due to the disruption in tenant mix and balance at the Center as a result of the assignment of Lease, which damages could be significant.

41.    Accordingly, the Landlord further requests that it be reimbursed for all of its actual pecuniary losses including, but not limited to, attorneys' fees and costs expended with regard to Debtors' defaults in these bankruptcy proceedings, including in connection with this

Objection to oppose the assumption and assignment of the Lease in violation of the Lease provisions for use and other tenant's exclusives.  Through any hearing on this Objection, the Landlord estimates its attorney's fees and costs incurred to be approximately no less than $25,000, and reserves the right to supplement this figure with its actual billings at the time any cure is reconciled and paid.

        ii.      <u>Year-End Adjustments and Reconciliations and Indemnification</u>

42.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, and other losses, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where it pays rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("<u>CAM</u>") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2024 may not yet have been billed, and such charges that are accruing for 2025 will not be billed until 2026). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an

amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.  As a result, the Court should deny any attempt to assign the Lease "free and clear" of these obligations.

43.    Debtors remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due under the Lease.  The Debtors (or the Assignee) assumes and assigns the Lease subject to their terms, and must assume and assign all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.  Any Assignment Order should clearly state that the Debtors (or the Assignee) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the assignment.  In addition, any provision in the Assignment Order that purports to release the Debtors (or the Assignee) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

44.    Finally, the Lease requires the Debtors (or the Assignee) to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors, the Assignee or their agents.  Any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of

20

when they arose.[4]  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption or assumption and assignment of the Lease.  Nothing in the Assignment Order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserves its right to pursue such rights irrespective of any resolution of cure amounts herein.[5]

45.    Landlord, therefore, requests that in the event an assumption and assignment of the Lease is approved by the Court, language must be inserted into the Assignment Order to provide that the Assignee shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Lease, when such charges become due in accordance with the terms of the Lease, including with respect to indemnification and insurance obligations.  In default thereof, a suitable escrow for the Lease equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlord when the year-end adjustments are actually billed and due pursuant to the terms of the respective Lease.

### iii.    The Cure Amount Serves Only As An Estimate

46.    Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no

---

[4]     Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption (or assumption and assignment) must be in accordance with all provisions of the Lease.

[5]     If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlord's locations.

basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges and other amounts to which it is entitled under the Lease.

     iv. <u>The Debtors Must Pay Undisputed Cure Amounts Immediately</u>

   47. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment.  To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference no later than (30) days following the assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

    **E.**  **Assumption and Amendment Agreement**

   53. Landlord also requests that, as a condition to any order approving assumption and assignment of Landlord's Lease, the Assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the Assignee shall become directly obligated to Landlord and the provisions of the Lease regarding notice addresses will be modified.

## IV. <u>RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS</u>

   54. Landlord reserves all rights to (i) raise further or other objections as may be necessary, including but not limited to the final form of Assignment Order and/or the final transaction documents once such documents are filed of record with the Court; (ii) to require payment of all accrued but unbilled Lease charges and compliance with all Lease terms; and, (iii) to require any assignment on a form acceptable to Landlord.

## V. <u>JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS</u>

   42. Landlord hereby joins in the objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the provisions hereof.

## VI.    <u>CONCLUSION</u>

Landlord respectfully requests that: (i) the assumption and assignment of the Lease be denied; or, (i) if the Court is inclined to approve, that (a) any Assignment Order approving the assumption and assignment of the Lease expressly provide that it is subject to, and not free from, all of the restrictions contained in the Lease as well as any use and exclusive restrictions contained in the ECR; (b) any Assignment Order approving the assumption and assignment of the Lease be subject to and conditioned upon the Assignee providing adequate assurance of future performance; (c) any assumption of the Lease be conditioned upon responsibility of Assignee to pay a cure amount totaling not less than the cure amounts set forth in this Objection, along with other charges when due in accordance with the Lease, plus the Landlord's pecuniary losses; and (d) the Court should grant such other relief that the Court finds just and proper.

Respectfully submitted,

Dated: June 20, 2025
Wilmington Delaware

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire
Laurel D. Roglen, Esquire
Margaret A. Vesper, Esquire
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
        roglenl@ballardspahr.com
        vesperm@ballardspahr.com

*Counsel to AFP Rockridge 2019, LLC*