**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PLAN SUPPLEMENT FOR THE
JOINT CHAPTER 11 PLAN OF JOANN AND ITS DEBTOR AFFILIATES[2]**

This Plan Supplement contains drafts of the following documents, each of which remains subject to ongoing review and negotiations pursuant to the terms of the Plan.

| Exhibit | Description |
|---------|-------------|
| A | Assumed Executory Contracts and Unexpired Leases Schedule |
| B | Schedule of Retained Causes of Action |
| C | Wind-Down Transactions Memorandum |
| D | Identity of Plan Administrator and GUC Trustee |
| E | Plan Administrator Agreement |
| F | GUC Trust Agreement |
| G | 503(b)(9) Reconciliation Procedures |

The Debtors reserve all rights, with the consent of any applicable counterparties (to the extent required under the Plan) to amend, revise, or supplement all of the documents included herein as provided in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

Dated: June 20, 2025
Wilmington, Delaware

/s/ Patrick J. Reilley

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone:     (302) 652-3131
Facsimile:      (302) 652-3117
Email:          preilley@coleschotz.com
                snewman@coleschotz.com
                mfitzpatrick@coleschotz.com
                jdougherty@coleschotz.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                jeff.michalik@kirkland.com
                lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

## Exhibit A

**Assumed Executory Contracts and Unexpired Leases Schedule**

**Assumed Executory Contracts and Unexpired Leases Schedule**

Pursuant to Article V.A of the Plan, on the Effective Date, except as otherwise provided in the Plan or the Approval Order, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, are identified on a Cure Notice, are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or were assumed as part of the GA Transaction; (2) have been previously assumed or rejected by the Debtors pursuant to any other Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are a contract, release, or other agreement or document entered into in connection with the Plan; or (5) are an Insurance Policy.

Notwithstanding anything to the contrary in the Plan and solely to the extent applicable, any and all agreements necessary to effectuate the GA Transaction contemplated by the Approval Order shall be assumed as of the Effective Date and continue in effect in the ordinary course of business.  The Wind-Down Debtors shall succeed automatically to the rights of the Debtors under the GA Transaction Documents and any ancillary documentation related to the foregoing.

The Executory Contracts and Unexpired Leases scheduled to be assumed by the Wind-Down Debtors in connection with this Schedule of Assumed Executory Contracts and Unexpired Leases are set forth on **Exhibit A(i)** attached hereto.

This draft schedule remains subject to further review and discussion among the Debtors and other parties in interest.  The Debtors reserve all rights to amend, revise, or supplement this draft schedule at any time in accordance with the Plan.

**Exhibit A(i)**

**Assumed Executory Contracts and Unexpired Leases Schedule**

| Counterparty Name | Contract Description | Debtor | Proposed Cure Amount |
|---|---|---|---|
| ADP, Inc. | Master Service Agreement | Jo-Ann Stores LLC | $0 |
| Advantco International LLC | Service Agreement | Jo-Ann Stores LLC | $0 |
| Akamai Technologies | Service Agreement | Jo-Ann Stores LLC | $2,025.02 |
| Bank of America, N.A. | Service Agreement (Cash Pro) | JOANN Inc. | $0 |
| BMC Software Inc. | Service Agreement | Jo-Ann Stores LLC | $0 |
| Coupa Software Inc | Service Agreement 12/31/2012 | Jo-Ann Stores LLC | $10,949.06 |
| Docusign Inc. | Service Agreement | Jo-Ann Stores LLC | $0 |
| Escape Velocity Holdings Inc. | Master Services Agreement | Jo-Ann Stores LLC | $338,523.12 |
| IBM Corp. | Service Agreement | Jo-Ann Stores LLC | $0 |
| Logicalis, Inc. | Service Agreement | Jo-Ann Stores LLC | $0 |
| Logicalis, Inc. | License Agreement (VM Ware) | Jo-Ann Stores LLC | $0 |
| Microsoft Corporation | Business Agreement | Jo-Ann Stores LLC | [TBD][1] |
| Microsoft Corporation | Master Agreement | Jo-Ann Stores LLC | [TBD] |
| Microsoft Corporation | Enterprise Enrollment | Jo-Ann Stores LLC | [TBD] |
| Ping Identity Corp. | Service Agreement | Jo-Ann Stores LLC | $128,035.96 |
| Veeam Software | Service Agreement | Jo-Ann Stores LLC | $0 |

---

[1]    The Debtors are continuing to negotiate the appropriate cure amounts for these contracts.

## **<u>Exhibit B</u>**

**Schedule of Retained Causes of Action**

**Schedule of Retained Causes of Action**

Pursuant to Article IV.M of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity as of the Effective Date, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Debtors, other than Claims and Causes of Action acquired pursuant to the GA Transaction, Claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, and the GUC Trust Causes of Action. The Plan Administrator shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, other than GUC Trust Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, the Plan Administrator, and the GUC Trust expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. For the avoidance of doubt, the Purchaser acquired all Avoidance Actions and Other Causes of Action (as defined in the GA Transaction Documents) and released and waived its right to pursue (i) all Avoidance Actions, and (ii) Other Causes of Action against the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, the ABL Agent, FILO Agent, the Prepetition Term Loan Agent, Gordon Brothers Retail Partners, LLC, and any Related Party of the Debtors.

**A.    Claims Related to Insurance Contracts and Policies**

Unless otherwise released by the Plan, the Debtors expressly reserve and retain all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, the Plan Supplement, or any amendments hereto or thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

**B.    Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation**

Unless otherwise released by the Plan, or settled pursuant to Bankruptcy Rule 9019, the Debtors expressly reserve and retain any and all Causes of Action against or related to all Entities

that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding involving any Debtor or Wind-Down Debtor, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in this Schedule, the Plan, the Plan Supplement, or any amendments hereto or thereto. Without limitation, such express reservation includes all rights to object to or otherwise contest Claims or Interests asserted against the Debtors and their estates.

**C.      Causes of Action Related to Accounts Receivable Claims**

Unless otherwise released by the Plan, the Debtors expressly reserve and retain all Causes of Action against or related to all Entities that owe or that may in the future owe money to any Debtor or Wind-Down Debtor, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments hereto or thereto.

**D.      Causes of Action Related to Deposits and Letters of Credit**

Unless otherwise released by the Plan, the Debtors expressly reserve and retain all Causes of Action against or related to all Entities that hold or may in the future hold deposits, collateral, refunds, credits, or other funds for which the Debtors or the Wind-Down Debtors, as applicable, may be entitled to recover from any such Entities under the relevant agreement, contract, statute, or law, regardless of whether such Entity is expressly identified in the Plan, the Plan Supplement, or any amendments hereto or thereto.

**E.      Causes of Action Related to Taxes, Fees, and Tax or Fee Refunds or Credits**

Unless otherwise released under the Plan, the Debtors expressly reserve all claims and Causes of Action against or related to all entities that owe or that may in the future owe money related to tax or fee refunds, credits, overpayments, recoupments, offsets, or other claims that may be due and owing to the Debtors or the Wind-Down Debtors, as applicable. Furthermore, the Debtors expressly reserve all Causes of Action against or related to all entities who assert or may assert that the Debtors or the Wind-Down Debtors owe tax obligations to them.

## <u>Exhibit C</u>

**Wind-Down Transactions Memorandum**

## Wind-Down Transactions Memorandum

This memorandum (this "Wind-Down Transactions Memorandum") sets forth a summary description of certain proposed transactions (the "Wind-Down Transactions") to be effectuated in connection with the consummation of the transactions contemplated by the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and its Debtor Affiliates* [Docket No. 986] (as amended, supplemented, or modified from time to time in accordance with its terms, the "Plan").

This Wind-Down Transactions Memorandum and the Wind-Down Transactions remain under discussion among the Debtors[1] and interested parties with respect thereto. The Debtors reserve all rights to modify, amend, supplement, and restate any part of this Wind-Down Transactions Memorandum as necessary or appropriate. Nothing herein shall limit or modify, in any way, any section of the Plan, the Plan Supplement, or any related provisions in the Confirmation Order, or any authority or discretion granted to the Debtors or the Wind-Down Debtors thereby. To the extent there is any inconsistency between this document and the Plan, the Plan shall govern.

The Confirmation Order shall be deemed to authorize all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan, including, for the avoidance of doubt, any operations required under any transition services agreement entered into pursuant to the GA Transaction Documents. The Debtors currently anticipate that the Wind-Down Transactions will occur pursuant to the following steps and in the following order, which may be subject to further changes.

## Wind-Down Transactions Steps

**On or before the Effective Date**:

**Step 1**:  The GA Transaction shall have closed, and the Debtors shall have received the proceeds of such GA Transaction from the Purchaser.

**Prior to, on, or after the Effective Date**:

**Step 2**:  As determined by the Debtors or the Wind-Down Debtors, Intercompany Claims (to the extent not assumed pursuant to the Approval Order and remaining after the consummation of the transactions contemplated by the Approval Order) may be Reinstated, set off, settled, distributed, contributed, cancelled, released or otherwise addressed at the option of the Debtors or the Wind-Down Debtors in accordance with the Plan.

**Step 3**:  All Interests in JOANN shall be cancelled, released, and extinguished, and will be of no further force or effect.

**Step 4**:  The Debtors' Assets shall vest in the Wind-Down Debtors, the Plan Administrator shall be appointed, the wind down of the Debtors' Estates shall occur in accordance with the Plan, and

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

the Wind-Down Debtors shall otherwise perform the activities contemplated by the Plan, including performing any obligations pursuant to the GA Transaction Documents.

**Step 5**: On the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall transfer the GUC Trust Assets to the GUC Trust. The GUC Trust may make Plan Distributions to the GUC Trust Beneficiaries, as applicable, any time after the Effective Date in accordance with the Plan and the GUC Trust Agreement.

**Step 6**: The Debtors or the Wind-Down Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account in accordance with the Plan.

**Step 7**: The Debtors and Wind-Down Debtors shall be liquidated, dissolved, or otherwise wound down in the manner and on the timing as determined by the Debtors and Wind-Down Debtors consistent with the terms of the Plan. In connection with the Wind-Down, the Wind-Down Proceeds shall be distributed in accordance with the Plan.

**Step 8**: It is expected that the Debtors and Wind-Down Debtors shall hold no assets by January 31, 2026 (the "No-Assets Condition"). Accordingly, without prejudice to the rights of Holders of any Claims under the Plan, the Plan Administrator, in his or her discretion, shall be permitted to transfer any assets of the Wind-Down Debtors to a liquidating or other trust for the benefit of applicable holders of Claims or otherwise dispose of any such assets in accordance with the Plan such that the No-Assets Condition shall be met. For the avoidance of doubt, regardless of whether the No-Assets Condition is met, the GUC Trust shall not have any responsibility for (i) reconciling, paying, or satisfying any Claims that are not General Unsecured Claims (which, for the avoidance of doubt, such General Unsecured Claims shall include Prepetition Term Loan Deficiency Claims pursuant to the Plan) or (ii) any of the Plan Administrator's or Wind-Down Debtors' obligations set forth in the Plan.

## **<u>Exhibit D</u>**

**Identity of Plan Administrator and GUC Trustee**

| Party | Name |
|---|---|
| Plan Administrator | Ann Aber |
| GUC Trustee | Steven Balasiano (MHR Advisory Group) |

## Exhibit E

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This PLAN ADMINISTRATOR AGREEMENT (this "Agreement"), dated as of [●], 2025, by and among (a) JOANN Inc., on behalf of itself and its Debtor affiliates (collectively, the "Debtors"), (b) Ann Aber to serve as (and who is deemed designated) the "Plan Administrator" under, as defined in, and for all purposes of the Plan, until the Plan Administrator ceases to be the "Plan Administrator" hereunder (the "Plan Administrator"), and (c) GA Joann Retail Partnership, LLC ("GA JRP," and together with the Debtors and the Plan Administrator, the "Parties"), sets forth the terms and conditions under which the Plan Administrator shall effectuate the wind down, dissolution, and liquidation of the Debtors' Estates and to implement the terms and distributions under the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 986] (as may be amended from time to time and including all supplements thereto, the "Plan").[1]

1.      Appointment.  Effective as of the Effective Date, the Plan Administrator is appointed to act as the Plan Administrator under the Plan to implement the Plan and wind down the business and affairs of the Debtors, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order and subject in all respects to the Wind-Down Budget and Plan Administrator Budget attached hereto as **Exhibit 1**.  The Debtors and the Plan Administrator acknowledge that the Plan Administrator shall be a fiduciary for the Debtors' Estates.  The Plan Administrator, as Plan Administrator for all purposes of the Plan, shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, general partner, or other governing body (each, a "Governing Body"), subject to the provisions of the Plan (and all certificates of formation, membership agreements, partnership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and, on the Effective Date, shall succeed to the powers of the Governing Body of each of the Debtors.  The Plan Administrator shall be deemed a "representative" of the Debtors' Estates as contemplated by section 1123(b)(3)(B) of the Bankruptcy Code and appointed to enforce, in her reasonable business judgment, all claims, interests, or Retained Causes of Action held by the Debtors' Estates on and after the Effective Date, unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, *provided* that, for the avoidance of doubt, Retained Causes of Action shall not include those causes of action transferred to the Purchaser pursuant to the GA Transaction, the GA Transaction Documents, or the Approval Order or any GUC Trust Causes of Action transferred to the GUC Trust.  The Plan Administrator shall be appointed the exclusive trustee of the Wind-Down Debtors' Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).  The Plan Administrator is hereby appointed to make (or cause to be made) any disbursements under the Plan on and after the Effective Date, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order; *provided* that no disbursements will be made on behalf of GUC Trust Assets.  From and after the Effective Date, the Debtors' Estates shall be managed and administered through the Plan Administrator as Plan Administrator for all purposes of the Plan, who shall have full authority to administer the provisions of the Plan subject to the terms and conditions of this Agreement, the Plan, Confirmation Order, the Wind-Down Budget, and the Plan Administrator Budget.  To the extent necessary, on and after the Effective Date, the Plan

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Administrator shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a Party.[2] For the avoidance of doubt, the foregoing shall not limit the authority of the Plan Administrator to continue the employment of any former manager or officer, pursuant to any transition services agreement entered into on or after the Effective Date, by and between the Debtors and the Purchaser.

2.    <u>Scope of Services</u>.    The Plan Administrator is to provide post-Effective Date administration, wind down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the Wind Down and to make certain distributions under the Plan, in accordance with the Plan and the Confirmation Order, and subject to the Wind-Down Budget and the Plan Administrator Budget.  Without limiting the provisions of the Plan applicable to the Plan Administrator, the Plan Administrator will perform the following services for the Debtors' Estates (as such services may be further described in the Plan and/or Confirmation Order, together with any other or additional tasks required to be performed by the Plan Administrator as described in the Plan and/or the Confirmation Order):

(a)    oversee the maintenance of the books, records, and accounts of the Debtors' Estates and the wind down and dissolution of the Debtors (or Wind-Down Debtors) and any non-debtor subsidiaries or affiliates of the Debtors or Wind-Down Debtors, as applicable, after the Effective Date;

(b)    be responsible for the ongoing administration of the Chapter 11 Cases, including but not limited to the claims reconciliation process, and shall have the authority to compromise or settle claims without the need for any further approval of the Bankruptcy Court *provided*, that the Plan Administrator will not be responsible for reconciliation of General Unsecured Claims;

(c)    be responsible for all actions related to the closing of the Chapter 11 Cases;

(d)    compromise, settle or pursue the Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order *provided,* that, for the avoidance of doubt, Retained Causes of Action shall not include those causes of action transferred to the Purchaser pursuant to the GA Transaction or any GUC Trust Causes of Action transferred to the GUC Trust;

(e)    at the direction of GA JRP, compromise, settle, or pursue Other Causes of Action (as defined in the Agency Agreement) pursuant to GA JRP's rights under the Agency Agreement; *provided* that Other Causes of Action do not include any GUC Trust Causes of Action or the Released Causes of Action (as defined in the Approval Order);

---

[2]    For the avoidance of doubt, with respect to the GUC Trust Assets, the GUC Trustee shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a Party.

(f)      in connection with making (or causing to be made) any distributions under the Plan, comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority;

(g)      liquidate, receive, hold, invest, supervise, and protect the Wind-Down Debtors' Assets in accordance with the Wind-Down Budget and Plan Administrator Budget;

(h)      take all steps to execute all instruments and documents appropriate to carry out the powers and duties enumerated in the Plan and to effectuate the distributions to be made under the Plan in accordance with the Wind-Down Budget and Plan Administrator Budget;

(i)      make (or cause to be made) distributions in accordance with the Plan;

(j)      establish or maintain bank accounts in the name of any of the Debtors or the Wind-Down Debtors;

(k)      subject to the terms set forth in the Plan, employ, retain, terminate, or replace professionals to represent herself with respect to her responsibilities or otherwise effectuate the Plan to the extent necessary;

(l)      pay all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors on and after the Effective Date, subject to the Wind-Down Budget and Plan Administrator Budget;

(m)      administer and pay taxes of the Debtors and Wind-Down Debtors, including filing tax returns;

(n)      represent the interests of the Debtors, Wind-Down Debtors, or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit;

(o)      oversee all other tax compliance matters, such as the filing of tax returns, payment of taxes, and pursuing tax refunds as necessary;

(p)      make all necessary filings in accordance with any applicable law, statute, or regulation;

(q)      recover assets, including letter of credit collateral or deposits held by third parties;

(r)      prepare and file quarterly reports and other filings with the Bankruptcy Court; and

(s)      without the need for further Bankruptcy Court approval, perform such other duties and exercise such other powers as may be vested in her pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as she reasonably deems to be necessary and proper to carry out the provisions of the Plan, in each case of the forgoing clauses, strictly in accordance with the Wind-Down Budget and Plan Administrator Budget.

3.    <u>Timing, Fees, and Compensation</u>.

(a)    The Plan Administrator will commence her responsibilities as the Plan Administrator for all purposes on the Effective Date.

(b)    Except as provided in this paragraph, GA JRP may terminate the Plan Administrator upon the later of (i) six months after the Effective Date and (ii) completion of all obligations under the Plan, including, but not limited to, the filing of all tax returns contemplated therein and completing the Plan Administrator's duties required under the 503(b)(9) Reconciliation Procedures, including, but not limited to, reconciling and distributing all 503(b)(9) Claims (the "<u>Guaranteed Term</u>").  Such termination shall be effectuated by at least 30 days' written notice (email between counsel for each party being sufficient) from GA JRP to the Plan Administrator. For the avoidance of doubt, such notice shall not be provided at any time during the Guaranteed Term unless the Plan Administrator is incapacitated or unable to complete her duties as Plan Administrator during the Guaranteed Term.  In such event, GA JRP may file a motion with the Court to replace the Plan Administrator.

(c)    The Plan Administrator shall be compensated for her services out of the Plan Administrator Budget.  The Plan Administrator's compensation shall be $1,020,000 per annum, paid bi-weekly on a *pro rata* basis.  The Plan Administrator shall be entitled to reimbursement for all reasonable and documented out-of-pocket expenses, actually incurred in performance of her duties under this Agreement, and shall also receive a monthly stipend of $2,750 to cover the costs of a comprehensive health insurance package.

(d)    Any professionals retained by the Plan Administrator pursuant to the terms of this Agreement shall be paid as set forth in the applicable professional's engagement letter, which shall be payable from the Plan Administrator Budget, in accordance with the terms of this Agreement, the Plan, and the Confirmation Order.  The Plan Administrator Budget accounts for, among other things, professional fees incurred in the course of the Plan Administrator's responsibilities.

4.    <u>Funding</u>.  GA JRP shall fund (i) the Plan Administrator Budget, in addition to (ii) any unpaid amounts on account of the expenses described in Section 4.2 of the Agency Agreement (the "<u>GOB Expenses</u>") incurred between February 27, 2025 through the later of the Effective Date and the end of the Lease/Contract Designation Rights Period.

(a)    The Plan Administrator Budget shall first be funded from any funds held by the Debtors' Estates on the Effective Date.  To the extent such funds are insufficient to fully fund the Plan Administrator Budget, GA JRP shall, in coordination with the Plan Administrator and in good faith, fund the Plan Administrator Budget as is necessary for the Plan Administrator to fulfill her duties under this Agreement.  The total Plan Administrator Budget, including the Plan Administrator's compensation, shall be $6,970,000.  The Plan Administrator Budget shall be used to administer the Plan Administrator's duties as described in the Plan and in this Agreement.

(b)    GA JRP shall fund the GOB Expenses to the Plan Administrator no later than five (5) business days prior to payment of such GOB Expense coming due to ensure the timely payment thereof.

4

(c)     The Plan Administrator Budget may be increased with the consent of the Parties.

(d)     The Plan Administrator shall provide GA JRP monthly reports detailing the funds realized during the previous month.  The Plan Administrator shall remit cash proceeds in excess of the Plan Administrator Budget to GA JRP as they are realized or as otherwise agreed to by the Plan Administrator and GA JRP.  Following the termination of the Plan Administrator's duties, any funds remaining in the Plan Administrator Budget shall be paid to GA JRP.

(e)     For the avoidance of doubt, the Prepetition Term Loan Agent and each of the Prepetition Term Loan Lenders shall not, in any way, be responsible or obligated to pay, reimburse, indemnify, or any way fund any fees, expenses, or any other amounts contemplated in this Agreement.

5.     <u>Governance</u>.  A board made up of two individuals appointed by GA JRP ("<u>PA Board</u>") will oversee material decisions made by the Plan Administrator.  The initial members of the PA Board will be Michael Miller and Steve Smith.

6.     <u>Relationship of the Parties</u>.  The Parties intend that an independent contractor relationship shall be created by this Agreement.  The Plan Administrator shall not be entitled to receive from the Debtors or its Estates any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits; *provided* that the Plan Administrator will receive a stipend to cover the costs of a comprehensive health insurance package as set forth in Section 3(c).

7.     <u>Confidentiality</u>.  The Plan Administrator shall treat confidentially all information not publicly available that is received by the Plan Administrator in connection with this engagement or that is developed during this engagement, and the Plan Administrator shall not disclose such information except as required to perform the duties set forth herein including, but not limited to, the professionals engaged by the Plan Administrator and as required by a court order or other legal process.

8.     <u>Exculpation; Indemnification; Insurance; Liability Limitation</u>.  On and after the Effective Date, the Plan Administrator, and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and shall be indemnified and held harmless by each of the Debtors and Wind-Down Debtors, jointly and severally, except for acts or omissions constituting fraud, willful misconduct, or gross negligence as determined by a Final Order of the Bankruptcy Court.  Without exceeding any amounts contemplated under the Plan Administrator Budget, the Plan Administrator shall have commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors or the Wind-Down Debtors, as applicable.  The Plan Administrator may rely upon written information previously generated by the Debtors.  For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in her capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk her own funds or otherwise incur any financial liability in the performance of any of her duties as Plan Administrator hereunder or under the Plan, or in the exercise of any of her rights or powers, if the Plan Administrator shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Plan Administrator against such risk or liability is not reasonably assured.

9.    <u>Relationship to the Plan</u>.    The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is, in all respects, subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

10.    <u>Retention of Jurisdiction</u>.  Notwithstanding the occurrence of the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Debtors after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Agreement, or any entity's obligations incurred in connection herewith, including, without limitation, any action against the Plan Administrator, or any professional retained by the Plan Administrator, in each case in their capacity as such.  Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, and/or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement and also hereby irrevocably waives any defense of improper venue, forum *non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court.

11.    <u>Termination; Effect of Termination</u>.  Except as provided below, this Agreement shall terminate when the Plan Administrator reasonably determines that all duties assigned to the Plan Administrator under the Plan have been completed.  The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator in accordance with this Agreement but in no event for a period longer than 45 days.  In the event of a resignation, the resigning Plan Administrator shall render to the successor Plan Administrator a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor (as set forth in this Agreement), and all responsibilities of the predecessor Plan Administrator relating to the Debtors in this Agreement shall be terminated.

(a)    This Agreement may be terminated for cause shown pursuant to a Final Order entered by the Bankruptcy Court after notice and a hearing; *provided* that, in the event that this Agreement is terminated before its automatic termination as provided herein, the Debtors shall appoint a successor Plan Administrator to fill the vacancy left by the termination of this Agreement.  During the pendency of any dispute before the Bankruptcy Court regarding

termination for cause of the Plan Administrator and any appeals related thereto, the Plan Administrator shall (i) continue to discharge the rights, obligations, and duties of the Plan Administrator under this Agreement and (ii) continue to receive payment of fees and reasonable and documented out-of-pocket expenses incurred pursuant to the terms of this Agreement.

(b)     Upon termination of this Agreement or resignation of the Plan Administrator, the Plan Administrator shall be entitled to all fees and reasonable and documented out-of-pocket expenses accrued to that date pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement, prior to the termination date or resignation date.

(c)     Prior to the termination of the Plan Administrator, the Plan Administrator shall cooperate with the GUC Trustee and its professionals to provide the GUC Trust with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of GUC Trust Assets and objections to General Unsecured Claims, except, in each case, to the extent necessary to (a) ensure compliance with any applicable law or an order of the Bankruptcy Court, (b) preserve any applicable privilege (including attorney-client privilege) that is not assigned to the Trust pursuant to section 3.3.1 of the GUC Trust Agreement, or (c) comply with any contractual confidentiality obligations.

12.     <u>Effectiveness</u>.  This Agreement shall be effective upon the Effective Date.

13.     <u>Notice</u>.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail (with hard copy to follow) during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

(a)     if to the Debtors, to:

JOANN Inc.
5555 Darrow Road
Hudson, Ohio 44236
Attention:     Jeffrey Dwyer, Interim Chief Financial Officer
Email address:      jdwyer@alvarezandmarsal.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:     Joshua A. Sussberg, P.C.
                      Aparna Yenamandra, P.C.

Email address:  joshua.sussberg@kirkland.com
        aparna.yenamandra@kirkland.com

   -and-

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:  Anup Sathy, P.C.
      Jeffrey Michalik
      Lindsey Blumenthal
Email address:  anup.sathy@kirkland.com
       jeff.michalik@kirkland.com
       lindsey.blumenthal@kirkland.com

   -and-

Cole Schotz P.C.
500 Delaware Avenue
Suite 600
Wilmington, Delaware 19801
Attention:  Patrick J. Reilley
      Stacy L. Newman
      Michael E. Fitzpatrick
      Jack M. Dougherty
Email address:  preilley@coleschotz.com
       snewman@coleschotz.com
       mfitzpatrick@coleschotz.com
       jdougherty@coleschotz.com

(b)  if to the Plan Administrator, to:

Ann Aber
[5555 Darrow Road]
Hudson, Ohio 44236
Attention:  Ann Aber
E-mail address:  ann.aber@joann.com

(c)  if to GA JRP, to

[●]
Attention:  [●]
E-mail address:  [●]

14.    <u>Miscellaneous</u>.

(a)    Sections 6, 7, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

(b)    If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

(c)    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party.

(d)    This Agreement is governed by and shall be construed in accordance with the laws of the State of Delaware without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waive any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.

(e)    This Agreement, the Plan, and the Confirmation Order encompass all of the terms and conditions between the Debtors and the Plan Administrator concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by each of the Parties.

(f)    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

THE DEBTORS:

JOANN Inc. on behalf of itself and its Debtor affiliates

By:_____
Name:  Jeffrey Dwyer
Title:  Interim Chief Financial Officer

*Signature Page to Plan Administrator Agreement*

THE PLAN ADMINISTRATOR:


By:_____
Name:  Ann Aber

GA Joann Retail Partnership, LLC:

By:_____
Name:  [●]
Title:  [●]

*Signature Page to Plan Administrator Agreement*

## **Exhibit 1**

### **Wind-Down Budget and Plan Administrator Budget**

[*To come*]

**<u>Exhibit F</u>**

**GUC Trust Agreement**

### JOANN LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "Agreement"), dated as of [●], 2025, is made by and among JOANN Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1] in these Chapter 11 Cases (as defined herein), Ann Aber, as Plan Administrator (the "Plan Administrator"), and Steven Balasiano, through MHR Advisory Group, LLC, as the GUC Trustee (the "Trustee," and together with the Debtors and the Plan Administrator, each, a "Party" and collectively, the "Parties").

### RECITALS

A.     On January 15, 2025, each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under the caption *In re JOANN Inc., et al.*, Case No. 25-10068 (CTG) (the "Chapter 11 Cases").

B.     On January 28, 2025, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code.[2]

C.     On May 24, 2025, the Debtors filed the Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and its Debtor Affiliates (the "Disclosure Statement")[3] and the Second Amended Joint Chapter 11 Plan of JOANN Inc.

---

[1]     A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Claims and Noticing Agent at https://cases.ra.kroll.com/Joann2025.

[2]     Docket No. 198. The Committee consists of the following nine members: (1) Advantus, Corp; (2) Brother International Corp.; (3) Gwen Studios LLC; (4) Kimco Realty Corporation; (5) Low Tech Toy Club LLC; (6) Ormo Ithalat Ihracat A.S.; (7) Regency Centers, L.P.; (8) Simon Property Group, Inc.; and (9) SunYin (HK) Holding Limited.

[3]     Docket No. 987.

and its Debtor Affiliates (as subsequently amended, including all supplements thereto, and as confirmed, the "Plan").[4]

D.      On May 27, 2025, the Bankruptcy Court entered the Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation and Final Disclosure Statement Approval Hearing and Setting Dates and Deadlines, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Form of the Ballots and Notices in Connection Therewith, and (V) Granting Related Relief.[5]

E.      On [●], 2025, the Bankruptcy Court entered an order (the "Confirmation Order")[6] approving the Disclosure Statement on a final basis and confirming the Plan.  The Plan will go effective when all conditions to effectiveness as described in Article IX of the Plan are satisfied or waived pursuant to the Plan (the "Effective Date").

F.      Section IV.F of the Plan provides for the creation of the GUC Trust (the "Trust") on the Effective Date of the Plan.

G.      The Confirmation Order provides for the appointment of the Trustee as GUC Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor GUC Trustee of the Trust.

H.      The Trust is established in accordance with Article IV of the Plan for the benefit of Holders of Allowed General Unsecured Claims that are not Prepetition Term Loan Deficiency Claims (the "Class A GUC Trust Beneficiaries") and Holders of Allowed Prepetition Term Loan Deficiency Claims (the "Class B GUC Trust Beneficiaries" and, collectively with the Class A GUC Trust Beneficiaries, the "Beneficiaries").

---

[4]      Docket No. 986.  All capitalized terms used in this Agreement but not otherwise defined herein shall have the same meanings set forth in the Plan.

[5]      Docket No. 994.

[6]      Docket No. [●].

2

I.      The Trust is established for the purpose of pursuing or liquidating the Trust Assets (as defined herein), reconciling and objecting to General Unsecured Claims, and making Plan Distributions to Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

J.      Pursuant to the Plan, the Debtors, the Wind-Down Debtors, the Plan Administrator, the Trust, the Trustee, and the Beneficiaries shall treat, for all federal income tax purposes, the transfer of the GUC Trust Assets to the Trust as (x) a first-step transfer of the GUC Trust Assets by the Debtors or the Wind-Down Debtors, as applicable, to the Beneficiaries in satisfaction of their Allowed Claims under the Plan, followed by (y) a second-step transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for their respective GUC Trust Interests, and to treat the Beneficiaries as the grantors and owners of their respective share of the GUC Trust Assets for federal income tax purposes to the extent permitted by applicable law for state and local income tax purposes.

K.      Pursuant to the Plan, the Trust is intended for federal income tax purposes to (i) be treated as a grantor trust within the meaning of sections 671-679 of the Tax Code, and (ii) qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

L.      In accordance with the Confirmation Order, the Trust is further intended to be exempt from the registration requirements of (i) the federal securities laws, including the Securities Act of 1933, as amended and the Securities Exchange Act of 1934, as amended, and any applicable state and local laws requiring registration of securities; and (ii) Investment Company Act of 1940, as amended.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors, the Plan Administrator, and the Trustee enter into this Agreement to effectuate the distribution of the GUC Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Article IV of the Plan and section 2.3 of this Agreement, on the Effective Date, all right, title, and interest in, under, and to the GUC Trust Assets shall automatically be absolutely and irrevocably transferred to and vest in the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the GUC Trust Assets upon vesting in the Trust and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, the "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, in the Confirmation Order, and in the Plan, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Interpretation; Headings</u>.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  All references to the Trust shall include the Trustee acting on behalf of the Trust.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     <u>Construction of Agreement</u>. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4     <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the Plan, the Confirmation Order, and this Agreement, the Confirmation Order shall control and if the Confirmation Order is silent on a particular provision or issue, then the Plan shall control.  In the event of an inconsistency between the Plan and this Agreement, including any provisions relating to distributions to Holders of Allowed General Unsecured Claims and Holders of Allowed Prepetition Term Loan Deficiency Claims, the terms of the relevant provision of the Plan shall control (unless stated otherwise in the Plan or in the Confirmation Order).

## ARTICLE II

### ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust.   This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "JOANN Liquidating Trust."

2.2     Purpose of Trust.  The Debtors and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with Bankruptcy Code, hereby create the Trust for the primary purposes of (i) reviewing, reconciling, objecting to, and resolving General Unsecured Claims, (ii) making Plan Distributions to the Beneficiaries, and (iii) performing such other duties as set forth in this Agreement, the Plan, and Confirmation Order, in each case in accordance with section 301.7701-4(d) of the Treasury Regulations, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, and is otherwise intended to comply with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

2.3     Transfer of Trust Assets.

2.3.1     Conveyance of Trust Assets.  Pursuant to the Plan and the Confirmation Order, the Debtors or Wind-Down Debtors, as applicable, hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the GUC Trust Assets to the Trust on the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Confirmation Order, and the Plan.  The Debtors, Wind-Down Debtors, and/or the Plan Administrator, as applicable, shall, from time to time, as and when reasonably requested by the Trust, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors, Wind-Down Debtors and/or the Plan Administrator, as applicable, shall take or cause to be taken such

6

further action as the Trust may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trust title to and possession of the GUC Trust Assets.  The transfer and delivery of the GUC Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax to the maximum extent permitted under section 1146 of the Bankruptcy Code.  The Trust shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

      2.3.2    <u>Title to Trust Assets</u>.  Pursuant to the Plan and the Confirmation Order, on the Effective Date, the Debtors shall irrevocably transfer and be deemed to have irrevocably transferred to the Trust, all of the Debtors' rights, title and interest in and to the GUC Trust Assets, including all such assets held or controlled by third parties, and such GUC Trust Assets shall be automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually imposed restrictions, and other interests, except as specifically provided in the Plan and the Confirmation Order, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust shall be authorized, among other things, to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue or settle all of the GUC Trust Causes of Action, and assert and/or exercise all rights of setoff and recoupment and defenses of the Debtors or their estates that may be asserted in connection with Disputed General Unsecured Claims.  On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets, reconciliation of General Unsecured Claims, and administration of all General Unsecured Claims.  To the extent any law

or regulation prohibits the transfer of ownership of any of the GUC Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a Lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Confirmation Order, and the Plan.

2.4    Capacity of Trust.  The Trust, on behalf of the Debtors or the Wind-Down Debtors, as applicable, may execute any and all documents and instruments necessary to effectuate the purposes of the Trust to the extent permissible under section 1123(b)(3)(B) of the Bankruptcy Code and under the Plan and Confirmation Order.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5    Cooperation of Plan Administrator and Wind-Down Debtors.  The Debtors, the Wind-Down Debtors, and the Plan Administrator (as applicable) and their respective professionals shall use commercially reasonable efforts to cooperate with the Trust and its professionals in effecting the transition from the Debtors to the Trust of administration of the Trust Assets as set forth in the Plan and Confirmation Order.  Such cooperation shall include, but

not be limited to, providing the Trust with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Trust Assets and objections to General Unsecured Claims, except, in each case, to the extent necessary to (a) ensure compliance with any applicable law or an order of the Bankruptcy Court, (b) preserve any applicable privilege (including attorney-client privilege) that is not assigned to the Trust pursuant to section 3.3.1 of this Agreement, or (c) comply with any contractual confidentiality obligations.  The Debtors, the Wind-Down Debtors, and/or the Plan Administrator (as applicable) shall reasonably attempt to identify and facilitate access to (i) any evidence and information the Trust reasonably requests (including but not limited to reasonable access to the Debtors' books and records) in connection with the GUC Trust Causes of Action and the review, reconciliation, allowance or objections to General Unsecured Claims, to the extent the Wind-Down Debtors have such evidence and/or information and (ii) through the Plan Administrator, employees, former employees or Professionals of the Debtors with knowledge regarding the GUC Trust Causes of Action or General Unsecured Claims.  Within thirty (30) days after the Effective Date, the Plan Administrator or the Wind-Down Debtors shall arrange for the Trustee to receive an updated Claims Register from the Claims and Noticing Agent.

2.6     No Retention of Excess Cash.  Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities, to maintain the value of the Trust Assets during administration of the Trust, or to fund the reserves established in accordance with the Plan and/or pursuant to this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, the Confirmation Order, and this Agreement.

2.7    <u>Acceptance by Trustee</u>.  The Trustee accepts its appointment as Trustee of the Trust and shall perform all duties and obligations imposed upon the Trustee under the Plan, this Agreement, and applicable orders of the Bankruptcy Court.

## ARTICLE III

### ADMINISTRATION OF TRUST

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the Effective Date, the Trustee, on behalf of the Trust, may control and exercise authority over the Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall in an expeditious but commercially reasonable manner, liquidate and convert to Cash the Trust Assets and make distributions in accordance with this Agreement and the Plan and shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Trustee, on behalf of the Trust, shall have the right and power to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trust from taking or refraining to take any action that, based upon the advice of counsel or other professionals, the Trustee determines it

10

is obligated to take or to refrain from taking in the performance of any duty that the Trust may owe the Beneficiaries or any other Person under the Plan, the Confirmation Order, or this Agreement.

      3.2    <u>Powers of Trustee</u>.  Without limiting the generality of section 3.1 of this Agreement, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan, the Confirmation Order, or this Agreement:

      3.2.1    hold legal title to the Trust Assets and to any and all rights of the Debtors or any other party in interest and the Beneficiaries in or arising from the Trust Assets;

      3.2.2    receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce, and, where appropriate, cause the Trust to abandon the Trust Assets, including causing (but not obligating) the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.6 of this Agreement;

      3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

      3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

      3.2.5    collect and liquidate all Trust Assets;

      3.2.6    protect and enforce the rights to the Trust Assets (including, without limitation, any GUC Trust Causes of Action) vested in the Trust and the Trustee by this

Agreement by any method deemed appropriate and not inconsistent with the Plan or the Confirmation Order, including, without limitation, by judicial proceedings or otherwise;

3.2.7   investigate any Trust Assets, including potential GUC Trust Causes of Action and any objections to General Unsecured Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8   cause the Trust to employ professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to this Agreement and pay the reasonable and documented compensation thereof as GUC Trust Expenses;

3.2.9   cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets, as GUC Trust Expenses, solely out of the Trust Assets;

3.2.10  cause the Trust to review, reconcile, prosecute, enforce, collect, compromise, settle, dismiss, release, waive, withdraw, abandon, resolve or elect not to pursue all GUC Trust Causes of Action, and the Trust shall not be required to provide notice or seek approval of the Bankruptcy Court for such action;

3.2.11  calculate, authorize, and make all Plan Distributions to the Beneficiaries as provided for in, or contemplated by, the Plan, the Confirmation Order, and this Agreement;

3.2.12  establish, adjust, and maintain reserves for Disputed General Unsecured Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay or remit any tax or other charge that the Trust has determined, based upon the advice of its agents and/or professionals, may be required to be

withheld or deducted from such Plan Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14 in reliance upon the Debtors' Schedules and the Claims Register maintained in the Chapter 11 Cases, review, and, where appropriate, cause the Trust to allow or object to General Unsecured Claims, and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims required to be administered by the Trust in accordance with the Plan and the Confirmation Order;

3.2.15 in reliance upon the Debtors' Schedules and the Claims Register maintained in the Chapter 11 Cases, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.7 of this Agreement, such register may be the official Claims Register maintained in the Chapter 11 Cases to the extent of any General Unsecured Claims reflected thereon;

3.2.16 cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under sections 671-679 of the Tax Code and Treasury Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII of this Agreement, and timely pay taxes, if any, payable for and on behalf of the Trust solely out of the Trust Assets consistent with the Plan; *provided, however*, that nothing contained herein shall provide the Trust with any responsibility or authority whatsoever for the preparation, filing, signing or accuracy of the Debtors' or the Wind-Down Debtors' tax returns or for any tax liability related thereto, which shall be the sole responsibility of the Plan Administrator and the Wind-Down Debtors;

3.2.17  cause the Trust to abandon or otherwise dispose of, including by donation to a charitable organization, any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and the Beneficiaries in accordance with the Plan and the Confirmation Order;

3.2.18  cause the Trust, as determined by the Trustee to be necessary or desirable, to send to Beneficiaries, in accordance with the applicable tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns, as applicable;

3.2.19  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust that the Trustee deems necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs solely out of the Trust Assets;

3.2.22  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.23  exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.24 take all other actions consistent with the provisions of the Plan and the Confirmation Order that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     Exclusive Authority to Pursue GUC Trust Causes of Action.  The Trust shall have the exclusive right, power, and interest to review, pursue, settle, or elect not to pursue the GUC Trust Causes of Action.  The Trust shall be the sole representative of the Debtors' estates under section 1123(b)(3) of the Bankruptcy Code for all purposes with respect to the Trust Assets including, but not limited to, GUC Trust Causes of Action.  The Trust shall be vested with and entitled to, in accordance with the Plan and the Confirmation Order, assert setoff, counterclaim, recoupment, and any claims under contracts or for breaches of duties imposed by law or in equity, of the Debtors, the Wind-Down Debtors, or the Trust to any claims or counterclaims that may be asserted by any defendant with respect to any GUC Trust Cause of Action.  The Trust shall also be vested with and entitled to assert, in accordance with the Plan and the Confirmation Order, all rights of the Debtors, the Wind-Down Debtors, and their estates under section 558 of the Bankruptcy Code with respect to any such counterclaims.  For the avoidance of doubt, all costs and expenses of pursuing the GUC Trust Causes of Action shall be satisfied from the GUC Trust Assets.

3.3.1   Except as expressly stated otherwise below, the Trust shall stand in the same position as the Debtors and their estates (solely with regard to the GUC Trust Causes of Action and any General Unsecured Claim) as to all evidentiary privileges of any type or nature whatsoever, including attorney-client privilege, the work product privilege or doctrine, any other privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each

of the foregoing (collectively, the "Privileges"), and shall succeed to all of the rights of the Debtors and their estates (solely with regard to the GUC Trust Causes of Action and any General Unsecured Claim) to preserve or assert any such Privileges, and shall be deemed to be the assignee by each Debtor and its respective estate (solely with regard to the GUC Trust Causes of Action and any General Unsecured Claim) of each such Privilege.

3.3.2   Notwithstanding the Debtors, the Wind-Down Debtors, and/or Plan Administrator providing any privileged information to the Trust or the Trustee, such privileged information shall be without waiver in recognition of the joint and/or successor interest in investigating and prosecuting the GUC Trust Causes of Action and shall remain privileged. For the avoidance of doubt, the actions taken by the Committee, the Debtors, the Wind-Down Debtors, and the Plan Administrator in connection with the Plan, the Committee Settlement, or the formation of the Trust shall not be (or deemed to be) a waiver of any privilege of any of the Committee, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, including any privilege attaching to any document or communications (written or oral) transferred to the Trust.

3.4   Responsibility for Administration of General Unsecured Claims. From and after the Effective Date, the Trust shall become responsible for administering and making Plan Distributions to the Beneficiaries. The Trust shall have the exclusive right to object to the allowance of any General Unsecured Claim on any ground, to file, withdraw, or litigate to judgment objections to such General Unsecured Claims, to settle or compromise any Disputed General Unsecured Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors, the Wind-Down Debtors and their estates. The Trust shall also be entitled to assert all rights of the Debtors, the Wind-Down

16

Debtors, and their estates under section 558 of the Bankruptcy Code with respect to General Unsecured Claims. The Trust may also seek estimation of any General Unsecured Claim under and subject to section 502(c) of the Bankruptcy Code.

3.5    <u>Agents and Professionals</u>.  The Trust may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trust believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors or the Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trust from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trust may pay the reasonable and documented salaries, fees, and expenses of such Persons out of the Trust Assets in the ordinary course of business as GUC Trust Expenses.

3.6    <u>Safekeeping and Investment of the Trust Assets</u>.  All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law, the Confirmation Order, or the Plan.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries except as such interest shall actually be received by the Trust, which shall be distributed as provided in the Plan and the Confirmation Order.  Except as otherwise provided by the Plan or the Confirmation Order, the powers of the Trust to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as

short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a "liquidating trust," within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise (including Revenue Procedure 94-45, 1994-2 C.B. 684).  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.7    <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trust shall maintain accurate records of the administration of the Trust Assets, including receipts and disbursements and other activity of the Trust.  Any fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Plan Administrator and the Wind-Down Debtors.  In any case, except as set forth in section 4.2.2 herein, to the extent of any General Unsecured Claims reflected thereon that are entitled to distributions from the Trust under the Plan, the Claims Register may serve as the Trust's register of beneficial interests held by such Beneficiaries.  The books and records maintained by the Trust and any records of the Debtors transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trust determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down or dissolution of the Trust.

3.8     <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trust and the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trust is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trust and its agents, representatives, employees, or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets as GUC Trust Expenses.

3.9     <u>Fiduciary and Other Duties</u>.    Notwithstanding anything in the Plan, the Confirmation Order, or this Agreement to the contrary, the Trust shall always act in the best interests of the Beneficiaries and in furtherance of the purpose of the Trust set forth in the Plan and the Confirmation Order.  The Trust shall have fiduciary duties to the Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her, or its responsibilities accordingly.   Except for obligations expressly imposed on the Trust by this Agreement, to the extent that, at law or in equity, the Trust has duties (including fiduciary duties) to the Beneficiaries or to any other person that is a party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

3.10    <u>Reporting Requirements</u>.  The Trustee shall provide the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, U.S. Trustee, and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

## ARTICLE IV

### DISTRIBUTIONS

4.1    <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of the GUC Trust Assets to the Trust, the Trust shall make continuing efforts to collect, liquidate, and distribute all Trust Assets, subject to the reserves deemed necessary by the Trust pursuant to this Agreement, in accordance with the Plan and the Confirmation Order.

4.1.1    <u>Distributions</u>.  The Trust shall distribute the net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets pending their liquidation during the term of the Trust or that are determined to be necessary to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude distributions to Beneficiaries.

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.  Before any Plan Distribution can be made, the Trust shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, and the fees and expenses of other professionals.  In accordance with the Plan, the Confirmation Order, and section 3.2.12 of this Agreement, the Trust may also maintain as necessary one or more reserves for Disputed General Unsecured Claims.  For the avoidance of doubt, the Trust may withhold any Plan Distribution pending the Trust's determination of whether to object to any General Unsecured Claim.  Any such withheld Plan Distribution shall become part of a reserve for Disputed General Unsecured Claims and

20

shall be distributed to the appropriate Beneficiary no later than the first distribution date after a decision is made not to object to the pertinent General Unsecured Claim or the General Unsecured Claim becomes Allowed.  The Trust need not maintain any of the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; *provided, however*, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3   Distributions Net of Reserves and Costs.  Plan Distributions shall be made net of reserves in accordance with the Plan, the Confirmation Order, and this Agreement, including a reserve for Disputed General Unsecured Claims and any reserves necessary to pay the expenses and liabilities of the Trust, and also net of the actual and reasonable costs of making the Plan Distributions.

4.1.4   Right to Rely on Professionals.  Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Plan Distribution or reserves, the Trust may rely and shall be fully protected in relying on the advice and opinion of the Trust's counsel, financial advisors, accountants, or other professionals.

4.2   Method and Timing of Distributions.  Plan Distributions to Beneficiaries will be made from the Trust in accordance with the terms of the Plan and this Agreement. The Trust may engage a third-party disbursing agent and other Persons to help make Plan Distributions.

4.2.1   Plan Distributions Generally: Except as otherwise provided in the Plan or this Agreement, the Disbursing Agent shall make distributions to (i) Holders of Allowed General Unsecured Claims at the address for each such holder of an Allowed General Unsecured Claim as indicated in either (a) the address set forth on the Proof(s) of Claim, (b) the address reflected in the Schedules if no Proof of Claim has been filed, or (c) the address set forth in any written

notice of change of address delivered to the Trust and filed with the Bankruptcy Court; and (ii) the Prepetition Term Loan Agent for distribution to Holders of Allowed Prepetition Term Loan Deficiency Claims. Any Cash payment to be made under the Plan may be made by check or wire transfer in the sole discretion of the Trustee.

4.2.2    Distributions to Class B GUC Trust Beneficiaries: In accordance with the Plan, Class B GUC Trust Beneficiaries shall be entitled to Plan Distributions only after the first $5,000,000 of the GUC Trust Recovery Pool has been distributed to Class A GUC Trust Beneficiaries. The Prepetition Term Loan Agent shall be deemed the holder for all Allowed Prepetition Term Loan Deficiency Claims for the purposes of making Plan Distributions to Class B GUC Trust Beneficiaries under the Plan and this Agreement, such that all Plan Distributions to Class B GUC Trust Beneficiaries shall be made to the Prepetition Term Loan Agent. The Prepetition Term Loan Agent shall provide the Trust with the amount of the Allowed Prepetition Term Loan Deficiency Claim which the Trust may, but is not required to, conclusively rely upon when making Plan Distributions to the Prepetition Term Loan Agent on account of the Prepetition Term Loan Deficiency Claims; *provided* that to the extent there is any conflict between the amount of the Allowed Prepetition Term Loan Deficiency Claim provided by the Prepetition Term Loan Agent, then the Prepetition Term Loan Agent and the Trust and/or Trustee shall, in good faith, use commercially reasonable efforts to expediently resolve such conflict so that the Trust may make the relevant Plan Distributions to the Prepetition Term Loan Agent; *provided further* that to the extent the foregoing parties cannot resolve such conflict in an expedient manner, all parties' rights are reserved and either party may seek an order from the Bankruptcy Court to determine the amount of the Prepetition Term Loan Deficiency Claim for Plan Distributions under this Agreement. The Trust shall provide counsel to the Prepetition

Term Loan Agent with notice of its intent to make Plan Distributions at least fourteen (14) days before making Plan Distributions and the Prepetition Term Loan Agent shall have seven (7) days from such notice to provide the amount of the Prepetition Term Loan Deficiency Claim.

4.3    <u>Withholding from Distributions</u>.    The Trust, shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Plan Distributions shall be subject to any such withholding, payment and reporting requirements.  The Trust, in its discretion, shall withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trust shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4    <u>IRS Forms</u>.    As more fully set forth in section VI.F of the Plan, the Trust may require any Beneficiary, including the Prepetition Term Loan Agent on behalf of the Class B GUC Trust Beneficiaries, to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Plan Distribution to any Beneficiary upon receipt of such identification number and/or tax form.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the manner and by the deadline prescribed by the Plan (within ninety (90) days of the Trust's first request, or within any further time period expressly agreed to in writing between the Trust and the Beneficiary), then the Disbursing Agent,

in its sole discretion, (i) may make a Plan Distribution net of any applicable maximum withholding, or (ii) determine that such Beneficiary shall be deemed to have forfeited its respective rights to any current, reserved or future Plan Distributions provided for under the Plan, and such General Unsecured Claim shall be expunged without further notice or order of the Bankruptcy Court.

4.5     Unclaimed and Undeliverable Distributions.    If any Plan Distribution to a Beneficiary is returned to the Trust as undeliverable or is otherwise unclaimed (including, for the avoidance of doubt, by failure to cash a distribution check within ninety (90) days of first issuance), no further Plan Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Plan Distribution by timely notifying the Trust in writing of any information necessary to make the Plan Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number.    If a Beneficiary timely provides the Trustee the necessary information within the 90-day reserve period, all missed Plan Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Plan Distributions shall be administered in accordance with section VI.D of the Plan.

4.6     No Responsibility to Attempt to Locate Beneficiaries.    If a Plan Distribution is returned to the Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be made to a Beneficiary unless and until such Beneficiary notifies the Trust of such Beneficiary's then current address and taxpayer identification number.    The Trust, by and through the Trustee, may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Beneficiary, but nothing in this Agreement or the Plan shall require the Trust to do so.

4.6.1   Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. Unclaimed property held by the Trust shall not be subject to the escheat, abandoned, or unclaimed property laws of the United States, or any state, provincial, or local governmental unit.

4.7   Voided Checks; Request for Reissuance.  In accordance with section VI.D of the Plan, Plan Distribution checks issued to Beneficiaries shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Notwithstanding that section, Plan Distributions in respect of voided checks shall be treated as unclaimed Plan Distributions under section VI.D of the Plan and administered under section VI.D of the Plan and section 4.5 of this Agreement.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check within ninety (90) days after the check was first issued.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under section 4.5 of this Agreement.  The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the date established by section VI.D of the Plan passes without the check being reissued or cashed.

4.8   Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.8.1    The Trust may elect to make no payment or Plan Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.8.2    The Trust shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trust, which agreement shall include a complete release of the Trust and Trustee.  Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trust.  The Trust shall treat such Beneficiary as the absolute owner for purposes of receiving Plan Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.8.3    In acting or refraining from acting under and in accordance with this section 4.8 of the Agreement, the Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.9    <u>Priority of Expenses of Trust</u>.  The Trust shall pay or reserve for all GUC Trust Expenses before making any Plan Distributions.

**ARTICLE V**

**BENEFICIARIES**

26

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a GUC Trust Interest which shall, subject to section 4.1 of this Agreement and the terms and conditions of the Plan, be entitled to a Plan Distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a GUC Trust Interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trust, and the Trust shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trust at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Plan Distribution out of proceeds of Trust Assets.  Notwithstanding the foregoing, the Trust and/or Trustee shall reasonably consult with the Prepetition Term Loan Agent in regard to all distributions made or to be made to Beneficiaries that are Holders of Allowed Prepetition Term Loan Deficiency Claims from Trust Assets and shall provide such information in regard to such distributions, including the calculation thereof and any back-up information as may be reasonably requested by the Prepetition Term Loan Agent.  Any dispute between the Trust and/or Trustee and the Prepetition Term Loan Agent regarding distributions in

respect of Prepetition Term Loan Deficiency Claims shall be subject to the jurisdiction of and determined by the Bankruptcy Court.

5.5     No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets; *provided*, however, that, for the avoidance of doubt, this Section 5.5 shall not prevent a Beneficiary (including the Prepetition Term Loan Agent) from seeking any appropriate or necessary relief from the Bankruptcy Court with respect to the rights of Holders of Allowed Prepetition Term Loan Deficiency Claims under the Plan, the Confirmation Order, or this Agreement.

5.6     Requirement of Undertaking.  The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trust or Trustee for any action taken or omitted by it as Trust or Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided, however*, that the provisions of this section 5.6 shall not apply to any suit by the Trust or Trustee.

5.7     Limitation on Transferability.  It is understood and agreed that the GUC Trust Interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trust, and the Trust may continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trust may rely upon such proof without the requirement of any further investigation.

5.8     <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) to the extent that the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code, and applicable state and local laws requiring registration of securities, is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9     <u>Delivery of Distributions</u>.  Subject to the terms of this Agreement, the Trust shall make Plan Distributions to Beneficiaries in the manner provided in the Plan, the Confirmation Order, and in this Agreement.

## ARTICLE VI

### THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     <u>Parties Dealing With the Trust</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trust or the Trustee or any of the Trust's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trust to inquire into the validity or expediency or propriety of any transaction by the Trust, the Trustee, or any agent of the Trust.

6.2     <u>Limitation of Liability</u>.  In exercising the rights granted herein, the Trust and the Trustee shall exercise their best judgment in accordance with their fiduciary duties, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trust, the Trustee, nor any of their respective firms, companies, affiliates, partners, officers, directors,

members, employees, independent contractors, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.  The Trust may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, neither the Trust nor the Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Trust or the Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Trust or the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such person in carrying out the terms of the Plan or this Agreement, and neither the Trust nor the Trustee shall have any personal obligation to satisfy such liability.  In no event shall the Trust or Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trust has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Trust and the Trustee shall

be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Confirmation Order.

6.3     No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

6.4     Limitation of Debtors' Liability.  The Debtors or their respective successors shall have no liabilities or obligations to the Beneficiaries or the Trust, other than the liabilities and obligations expressly contemplated by this Agreement, the Confirmation Order, and the Plan.

6.5     No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.6     No Liability for Good Faith Error of Judgment.  Neither the Trust nor the Trustee shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction that the Trust or Trustee (as applicable) was grossly negligent.

6.7     Reliance by Trust on Documents and Advice of Counsel or Other Persons.  Except as otherwise provided herein, the Trust, by and through the Trustee, may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The Trust, by and through the Trustee, also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the Trust to the extent permitted by law.

6.8     No Liability for Acts Approved by Bankruptcy Court. The Trust shall have the right at any time to seek an order from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Claims required to be administered by the Trust. Following the entry of any such order of the Bankruptcy Court, neither the Trust nor the Trustee shall be liable for any act or omission taken in accordance with any such order, and all such actions or omissions shall be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.9     No Personal Obligation for Trust Liabilities. Persons dealing with the Trust or the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.10    Indemnification. The Trust shall indemnify the GUC Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense occurring after the Effective Date (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the GUC Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the GUC Trust Indemnified Parties in connection with the acceptance, administration, and performance of their duties and the exercise of their rights under the Plan, the Confirmation Order, or this Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct. In addition, the Trust shall, to the fullest extent permitted by law, indemnify

and hold harmless the GUC Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses (including attorneys' fees) arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan if the GUC Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interests of the Trust.  To the extent the Trust indemnifies and holds harmless any GUC Trust Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as GUC Trust Expenses payable in accordance with sections 4.9 and 6.9.1 of this Agreement.  The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Trust.  This provision shall survive the termination of this Agreement and the death, dissolution, liquidation, resignation, replacement, or removal of the Trustee.

6.10.1  <u>Expense of Trust; Limitation on Source of Payment of Indemnification</u>. All indemnification liabilities of the Trust under this section 6.9 shall be GUC Trust Expenses. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all other actual and anticipated expenses and liabilities of the Trust in accordance with the Plan and the Confirmation Order.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other GUC Trust Indemnified Parties personally for the payment of any such expense or liability.

6.10.2  <u>Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay</u>.  The Trust shall reasonably promptly pay a GUC Trust Indemnified Party all amounts

subject to indemnification under this section 6.9 on submission of invoices for such amounts by the GUC Trust Indemnified Party.  All invoices for indemnification shall be subject to the approval of the Trustee.  By accepting any indemnification payment, the GUC Trust Indemnified Party undertakes to repay such amount promptly if it is determined that the GUC Trust Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.11   <u>No Implied Obligations</u>.  The Trust or Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trust or Trustee.

6.12   <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of Article VI of this Agreement shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or, as it relates to section 6.9 of this Agreement, a GUC Trust Indemnified Party, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the GUC Trust Indemnified Parties' heirs and assigns.

## ARTICLE VII

### TAX MATTERS

7.1   <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan and the Confirmation Order, for all federal income tax purposes, the Debtors, the Wind-Down Debtors, the Plan Administrator, the Beneficiaries, the Trustee, and the Trust shall treat (i) the Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and a grantor trust within the meaning of Section 671 through 679 of the Tax Code and (ii) the transfer of the GUC Trust Assets to the Trust as (x) a first-step transfer of the GUC Trust Assets by the Debtors or the Wind-Down Debtors to the

Beneficiaries in satisfaction of their Allowed Prepetition Term Loan Deficiency Claims and Allowed General Unsecured Claims, as applicable, followed by (y) a second-step transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata GUC Trust Interests. The Beneficiaries shall be treated as the grantors and owners of their respective share of the GUC Trust Assets for federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, the Trust shall file or cause to be filed any annual or other tax returns (including applicable state, local, and non-U.S. tax returns, if any) for the Trust treating the Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) except as otherwise required by applicable tax law.

7.3    <u>Tax Treatment of Reserves for Disputed Claims</u>. The Trust may, at the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("<u>DOF</u>") or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to treat such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity. If and to the extent an election is made to report any reserve for Disputed General Unsecured Claims as a DOF or other separate entity, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of U.S. federal and/or state income tax due.

7.3.1    If an election is made to report any reserve for Disputed General Unsecured Claims as a DOF or other separate entity, all parties (including the Debtors, Wind-Down Debtors, the Plan Administrator, the Trust, the Trustee, and the Beneficiaries) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing.  The Trust shall be responsible for payment, out of the Trust Assets, of any taxes imposed on the Trust or the Trust Assets, including any reserve for Disputed General Unsecured Claims.  In the event, and to the extent, any cash retained on account of a Disputed General Unsecured Claim in any reserve for Disputed General Unsecured Claims is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed General Unsecured Claims, the Trust may, through the Trustee's discretion, (i) sell any non-cash assets relating to such Claim (including any assets distributable as a result of disallowance of such Claim) to pay such taxes; or (ii) utilize the remaining Trust Assets to pay such taxes and replenish such Trust Assets from any subsequent cash amounts allocable to, or retained on account of such Disputed General Unsecured Claim (including any cash distributable by the Trustee as a result of disallowance of such Disputed General Unsecured Claim).

7.4    Valuation of Trust Assets.  As soon as reasonably practicable after the transfer of the GUC Trust Assets to the Trust, the Trust shall determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and establish appropriate means to apprise, in writing, the Beneficiaries of such valuation, from time to time as relevant for tax reporting purposes.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Wind-Down Debtors, the Plan Administrator, as

applicable, the Trust, the Trustee, and the Beneficiaries) for all applicable U.S. federal, state and local income tax purposes.

7.5    Allocations of Taxable Income.    Allocations of taxable income of the Trust among the Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Trust had distributed all its assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust.  Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining GUC Trust Assets.  The tax book value of the GUC Trust Assets shall equal their fair market value on the date of the transfer of the GUC Trust Assets to the Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

7.6    No Ongoing Business.

(a)    For federal tax purposes and otherwise, the Trustee shall not be authorized to engage in any trade or business with respect to the GUC Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust.

(b)    The Trustee shall take such actions consistent with the prompt and orderly liquidation of the GUC Trust Assets as required by applicable law and consistent with the treatment of the GUC Trust as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and as a "grantor trust" for federal

income tax purposes, pursuant to Sections 671 through 679 of the IRC to the extent such actions are permitted by this Agreement.

## ARTICLE VIII

### SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

8.1     <u>Initial Trustee</u>.  The Trustee has been selected by the Committee and is appointed as of the Effective Date.  The initial trustee shall be the Trustee.

8.2     <u>Term of Service</u>.  The Trustee shall serve until the earliest of: (i) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (ii) termination and dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (iii) the Trustee's resignation, death, dissolution, incapacity, liquidation, or removal.  In the event that the Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the term of service of any Trustee.

8.3     <u>Removal of Trustee</u>.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 8.3.

8.4     <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.  In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee, the Prepetition Term Loan

38

Agent, and the Prepetition Term Loan Ad Hoc Group a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, or removal of the Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor Trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (i) shall consent to and accept his, her, or its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Trustee and (ii) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and the Confirmation Order.

8.7    <u>Trust Continuance</u>.  The resignation, death, dissolution, incapacity, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services, which shall be a charge solely against and solely paid out of the Trust Assets in accordance with the Plan and Confirmation Order.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trust in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust

solely from the Trust Assets as GUC Trust Expenses in accordance with the Plan and Confirmation Order prior to any Plan Distribution to the Beneficiaries.

8.9    Appointment of Supplemental Trustee.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "Supplemental Trustee") solely with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property.  The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

### DURATION OF TRUST

9.1     Duration.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated in accordance with the terms hereof.

9.2     Dissolution of the Trust.  Upon (i) the payment of all costs, expenses and other obligations incurred in connection with the administration of the Trust and (ii) the distribution of all Trust Assets in accordance with the Plan, the Confirmation Order, and this Agreement, the Trust shall automatically dissolve and the Trustee shall have no further responsibility in connection therewith except, (a) as may be required to effectuate such termination under relevant law, and (b) in furtherance of residual wind up efforts in accordance with section 9.5 of this Agreement.

9.3     Termination after Five Years Unless Extended.  If the Trust has not been previously terminated pursuant to this Agreement, on the fifth (5th) anniversary of the Effective Date, the Trust shall terminate and dissolve unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth (5th) anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation and distribution of, the Trust Assets.  Upon such termination, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall

have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4     <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated and dissolved at any time by the Beneficiaries.

9.5     <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets, including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  In connection with the foregoing, upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee and the Trust and Trustee's employees, professionals, and agents of any further duties, discharging and releasing the Trustee and its employees, professionals, and agents from all liability related to the Trust.

**ARTICLE X**

**MISCELLANEOUS**

10.1     <u>Cumulative Rights and Remedies</u>.   The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2     <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, email, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trust.  Notwithstanding the foregoing, all notices required or permitted to be given to the Prepetition Term Loan Agent or the Prepetition Term Loan Ad Hoc Group shall be in writing and shall be sent by email and, provided notice is given by email, also may be delivered personally or sent by overnight courier, in each case, addressed as follows below.  Any

notice or other communication which may be or is required to be given, served, or sent to the

Trust shall be in writing and shall be sent by email, registered or certified U.S. mail, return

receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is

confirmed) addressed as follows:

If to the Trust or Trustee:

Steven Balasiano
MHR Advisory Group, LLC
6701 Bay Parkway, 3rd Floor
Brooklyn, New York 11204
Email: steven@mhradvisory.com

with a copy to its counsel:

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Attn: Jason R. Adams; Maeghan J. McLoughlin
Email: jadams@kelleydrye.com; mmcloughlin@kelleydrye.com

If to the Prepetition Term Loan Agent:

ArentFox Schiff LLP
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Attn.: Jeffrey Gleit
Email: jeffrey.gleit@afslaw.com

and

ArentFox Schiff LLP
1717 K Street NW
Washington, D.C. 20006
Attn.: Jonathan Bagg
Email: jonathan.bagg@afslaw.com

and

ArentFox Schiff LLP
233 South Wacker Drive, Suite 7100

Chicago, Illinois 60606
Attn.: Matthew Bentley
Emai: matthew.bentley@afslaw.com

If to the Prepetition Term Loan Ad Hoc Group:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Attn.: Scott J. Greenberg; Matthew J. Williams; and Kevin Liang
Email: SGreenberg@gibsondunn.com; MJWilliams@gibsondunn.com;
and KLiang@gibsondunn.com

and

Glenn Agre Bergman & Fuentes LLP
1185 Avenue of Americas, 22nd Floor
New York, New York 10035
Attn: Andrew K. Glenn; Malak S. Doss; and Michelle C. Perez
Emails: agless@glennagre.com; mdoss@glennagre.com; and
mperez@glennagre.com

or to such other address as may from time to time be provided in written notice by the Trust.

10.3   <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4   <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5   <u>Particular Words</u>.   Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6   <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no

44

Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee and the Wind-Down Debtors or by order of the Bankruptcy Court; *provided, however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.  For the avoidance of doubt, no amendment, supplement, or waiver of or to this Agreement shall (a) adversely affect the interests, rights, or treatment of the Beneficiaries under the Plan or the Confirmation Order or (b) adversely affect the payments and/or distributions to be made pursuant to the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>.  Without limitation of the generality of section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take

45

all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and the Confirmation Order, and to consummate the transactions contemplated hereby.

10.12   _Counterparts_.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   _Limitations_.   Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.   The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies, or treatment (including any releases, exculpation, indemnification, or otherwise) of and Related Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

10.14   _Jurisdiction_.    The Bankruptcy Court shall have jurisdiction regarding the Wind-Down Debtors, the Plan Administrator, the Trust, the Trustee, and the Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to

exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

JOANN Inc. and its Debtor Affiliates

By: _____

Name: _____

Title: _____

Steven Balasiano, not individually, but solely in his capacity as Trustee of the JOANN Liquidating Trust

By: _____

Name: _____

Title: _____

Agreed and Accepted on behalf of the Wind-Down Debtors:

By: _____

Name:_____

Title:  Plan Administrator _____

48

## **Exhibit G**

**503(b)(9) Reconciliation Procedures**

## 503(b)(9) RECONCILIATION PROCEDURES

The Debtors[1] and the Committee, in consultation with the Purchaser and the Prepetition Term Loan Ad Hoc Group, have agreed to and memorialized the following reconciliation and payment process for Allowed 503(b)(9) Claims (the "503(b)(9) Reconciliation Procedures"):

1. Pursuant to the Bar Date Order, any Proofs of Claim for any 503(b)(9) Claims are required to be filed by the Initial Administrative Claims Bar Date.

2. Following the Initial Administrative Claims Bar Date, the Debtors shall begin reconciling the filed Proofs of Claim with the Debtors' books and records.

3. The Debtors shall conduct informal negotiations with Holders of 503(b)(9) Claims who file Proofs of Claim asserting amounts owed under section 503(b)(9) of the Bankruptcy Code that are higher than the corresponding amounts listed in the Debtors' books and records. The Debtors shall use commercially reasonable efforts to expediently reconcile and resolve all such 503(b)(9) Claims and to ensure such claims are Allowed in the correct amounts.

4. The Debtors shall file omnibus objections to all unresolved 503(b)(9) Claims setting forth the amounts the Debtors believe should be Allowed, along with the legal and factual bases for the objection.

   a. No response: The 503(b)(9) Claim is Allowed in the amount specified as valid in the objection.

   b. Response Filed:

      i. Response Resolved: If the parties resolve the dispute, the Debtors will include the Allowed 503(b)(9) Claim in the order annexed to the objection.

      ii. Response Not Resolved: If the parties do not resolve the dispute, the Debtors will schedule the matter for the next omnibus hearing. Any undisputed portion of the 503(b)(9) Claim will be Allowed, with the disputed portion subject to further resolution and court order.

5. Following the deadline to respond to the omnibus objection(s), the Debtors will remit funds to Holders of Allowed 503(b)(9) Claims in the following order:

   a. First, the Debtors will remit funds in the initial payment on account of Allowed 503(b)(9) Claims (the "Initial Distribution") to Holders of Allowed 503(b)(9)

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Second Amended Joint Chapter 11 Plan of JOANN Inc. and its Debtor Affiliates [Docket No. 986] (as subsequently amended, including all supplements thereto, and as confirmed, the "Plan").

Claims who filed Proofs of Claim asserting an Allowed 503(b)(9) Claim that does not conflict with the Debtors' books and records.

b. Second, the Debtors will remit funds in the Initial Distribution to Holders of Allowed 503(b)(9) Claims who have agreed to an Allowed 503(b)(9) Claim with the Debtors and signed a letter agreement stipulation to that effect.

c. Third, the Debtors will remit funds to all remaining Holders of 503(b)(9) Claims once the Allowed amount of their 503(b)(9) Claim has been determined.

6. The Debtors will send Province/KDW/GDC/GABF/AFS/LS a spreadsheet detailing reconciliation updates and efforts on a weekly basis once the initial objection response deadline has completed. The obligation to abide by the aforementioned 503(b)(9) Reconciliation Procedures shall terminate on the Effective Date of the Plan.

7. Within ten (10) business days after all payments on account of Allowed 503(b)(9) Claims have been remitted, to the extent the sum of Allowed 503(b)(9) Claims exceeds $28,500,000 (the remainder of the 503(b)(9) Reserve), Purchaser shall pay to the 503(b)(9) Reserve the equivalent value of Allowed 503(b)(9) Claims that exceeds $28,500,000, up to a maximum of $1,500,000; *provided* that, for the avoidance of doubt, the GUC Trust shall receive the GUC Guarantee on the Effective Date from the 503(b)(9) Reserve, and the Purchaser shall not be obligated to pay any amounts to the GUC Trust before all 503(b)(9) Claims have been settled or adjudicated pursuant to these 503(b)(9) Reconciliation Procedures, in the discretion of the Plan Administrator and in consultation with the GUC Trustee, the Prepetition Term Loan Agent, and the Prepetition Term Loan Ad Hoc Group. However, if the sum of Allowed 503(b)(9) Claims is less than $30,000,000, then such resulting 503(b)(9) Savings shall be split 50% to the GUC Trust and 50% to the Purchaser. To the extent of a conflict between these 503(b)(9) Reconciliation Procedures and the Agency Agreement, as modified by the Approval Order, the Agency Agreement, as modified by the Approval Order, shall govern.