## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 1048, 1056 and 1245 and 1246** |

_____

### ORDER (I) AUTHORIZING AND APPROVING PURCHASE AGREEMENT WITH SVP SEWING BRANDS LLC, (II) AUTHORIZING THE SALE OF CERTAIN PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] filed by the above-captioned debtors in possession (the "**Debtors**") upon the direction of GA Joann Retail Partnership, LLC (the "**Agent**"), in its capacity as agent for the Debtors pursuant to the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "**Approval Order**"); and the Court having reviewed the Motion and the declaration of Steven Smith in support thereof (the "**Smith Declaration**"); and it appearing that no other or further notice of the Motion or the requested relief need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that the legal and factual bases set forth in this Motion and the Smith Declaration, and presented at the hearing, if any, conducted by this Court on the Motion (the "**Hearing**"), establish just cause for the relief granted herein; and after due deliberation thereon,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions, LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase Agreement (as defined herein), as applicable.

1

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.    **Findings and Conclusions:** The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Hearing are hereby incorporated herein to the extent not inconsistent herewith.

B.    **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases and proceeding is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

C.    **Statutory Predicates.** The statutory predicates for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9006, and 9019, and Local Rules 2002-1 and 6004-1.

D.    **Final Order.** This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

E.    **Sufficiency of Notice.** Due, proper, timely, adequate and sufficient notice of the Motion and the relief granted herein has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules

2002-1 and 6004-1. A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided herein was afforded to all parties in interest.

F.    **The Agent**. The Approval Order granted the Agent the exclusive right to market and sell, and/or otherwise designate the purchasers, licensees and assignees of, any of all of the assets of the Debtors, including the Purchased Assets (as defined herein), free and clear of all Encumbrances (as defined herein), including the power to (i) direct the Debtors to assume and assign contracts and leases pursuant to the procedures described in the Approval Order and (ii) release the purchasers of the Debtors' assets from any and all claims under the Master Sublease, without further order of this Court.  Notwithstanding the foregoing, the Approval Order expressly permits the Agent and/or the Debtors the right to seek a further order of the Court in respect of any sale of the Debtors' assets.

G.    **The Purchase Agreement.**  The Agent has entered into that certain *Intellectual Property Asset Purchase Agreement* dated as of May 23, 2025, a copy of which is attached hereto as **Exhibit 1** (as it may be amended, modified, or supplemented in accordance with the terms thereof and of this Order, the "**Purchase Agreement**"), with SVP Sewing Brands LLC or a special purpose vehicle designated thereby ("**SVP**") for the sale of the assets identified therein (the "**Purchased Assets**).

H.    **Fair Consideration.** The consideration provided by SVP for the Purchased Assets pursuant to the Purchase Agreement: (a) is fair and reasonable, (b) will provide a greater recovery for the Debtors' estates than would be provided by any other practical available alternative, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of each applicable state, territory, possession, or the District of Columbia.

I.    **Business Judgment.** The Agent has demonstrated good, sufficient and sound business reasons and justifications for entering into the Purchase Agreement in accordance with

3

its obligations under the Agency Agreement.

J.      **Arm's Length Sale.** The negotiations with respect to the Purchase Agreement were (a) non-collusive, (b) conducted by the Agent, Tiger Capital Group, LLC, and Wilmington Savings Fund Society, FSB (collectively, the "**Agent Group**") and SVP at arm's length and in good faith, (c) complied in all respects with the Approval Order, and (d) were substantively and procedurally fair to all parties in interest. Neither the Agent Group nor SVP has engaged in any conduct that would cause or permit the Purchase Agreement or the sale of the Purchased Assets (the "**Sale Transaction**") to be avoided. Neither the Agent Group nor SVP have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or require imposition of costs or damages under section 363(n) of the Bankruptcy Code.

K.      **Good Faith Purchaser.**  SVP is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of that provision in respect of the Sale Transaction. SVP proceeded in good faith in all respects in connection with each term of the Purchase Agreement (and any ancillary documents executed in connection with the foregoing) and the Sale Transaction. The Agent Group was free to deal with any other party interested in buying some or all of the Purchased Assets. The protections afforded to SVP by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction, and SVP would not consummate the Sale Transaction without such protections.

L.      **SVP is Not an Insider**. Neither SVP nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors or the Agent, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors, the Agent, and SVP.

M.      **No Illegal Purpose**. The Purchase Agreement was not entered into, and neither the Agent nor SVP propose to consummate the Sale Transaction for the purpose of (a) escaping

liability for any of the Debtors' debts, or (b) hindering, delaying or defrauding the Debtors' present or future creditors.

      N.    **Sale Free and Clear.** (a) One or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied, and the Agent has the power to transfer the Purchased Assets to SVP free and clear of all claims (including, without limitation, any and all "claims" as that term is defined in section 101(5) of the Bankruptcy Code), liens (including, without limitation, any statutory, mechanic's, builders, materialmen's or similar lien on real and/or personal property and any and all "liens" as that term is defined in section 101(37) of the Bankruptcy Code), liabilities, interests, rights, and other encumbrances, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, to the greatest degree allowed by applicable law, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court (other than this Order) or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other obligations or matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded

or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non- contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases but prior to the Closing Date, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories , and specifically any liability under the Master Sublease, excluding only Permitted Encumbrances and Assumed Liabilities (all of the foregoing, collectively, the "**Encumbrances**"), (b) SVP would not have entered into the Purchase Agreement and would not consummate the Sale Transaction if (i) the transfer of the Purchased Assets was not free and clear of all Encumbrances, or (ii) SVP would, or in the future could, be liable for or subject to any Encumbrances. (c) Not being able to transfer the Purchased Assets free and clear of all Encumbrances would adversely impact the Agent's ability to maximize the value of the Purchased Assets (on behalf of itself and the Debtors), and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances would be of substantially less benefit to the Debtors' estates.

O.      **Validity of Transfer.** The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement. The Purchase Agreement has been duly and validly executed and delivered by the Agent Group and SVP.

P.      **Releases.** This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and 1334(b) to approve the releases set forth in Exhibits E and F to the Purchase Agreement (the "**Releases**"). Section 105(a) of the Bankruptcy Code permits approval of the Releases. Based upon the record

in these chapter 11 cases, the Releases (i) were consensual; (ii) were given in exchange for and are supported by fair consideration provided by each of the releasing parties; (iii) were an integral part of inducing the Agent Group and SVP to enter into the Purchase Agreement and are essential to the Sale Transaction; (iv) were negotiated at arms' length and in good faith between the Agent Group (on behalf of itself and the Debtors) and SVP and its affiliates; and (v) are fair, equitable, and reasonable. Accordingly, based upon the record of these Chapter 11 Cases, this Court finds that the Releases are consistent with the Bankruptcy Code and other applicable law. The Releases are appropriately tailored to the circumstances of these Chapter 11 Cases and reasonable in scope. The Agent has the authority to grant the releases on behalf of the Debtors and the Releases shall be binding in all respects upon: (i) all pre-petition and post-petition creditors of the Debtors, (ii) all interest holders of the Debtors, (iii) any Court-appointed committee, (iv) all successors and assigns of the Debtors and their affiliates and subsidiaries, and (v) any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee (collectively, the "**Parties in Interest**"), and the Releases shall not be subject to rejection or avoidance under any circumstances by any party. If any of the Chapter 11 Cases is dismissed under section 1112 of the Bankruptcy Code, this Order and the rights granted to SVP hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on the Parties in Interest.

Q.      **Compelling Circumstances for an Immediate Sale.** To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the respective time periods set forth therein. Time is of the essence in consummating the transactions contemplated by the Purchase Agreement including, without limitation, the Sale Transaction. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006. The Agent (on behalf of itself and the Debtors) has demonstrated compelling

7

circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement. The transactions contemplated by the Purchase Agreement do not impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a sub rosa plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    **<u>Findings of Fact and Conclusions of Law</u>**. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    **<u>Motion Granted.</u>** The Motion is granted as provided herein, and entry into and performance under the Purchase Agreement attached hereto as **<u>Exhibit 1</u>** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, is authorized and approved.

3.    **<u>Objections are Overruled.</u>** Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

**A.  Approval of the Purchase Agreement and the Sale Transaction**

4.    The Purchase Agreement, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction, and all the terms and conditions thereof, are approved. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision; the Court hereby authorizes and approves the Purchase Agreement in its entirety. For

the avoidance of doubt, as of the Closing Date, SVP shall have a general unsecured claim against the Debtors in the amount set forth in <u>Table 1</u> below, which shall be deemed "allowed" for all purposes of the Chapter 11 Cases and any successor cases.

**<u>Table 1 – Allowed Claim</u>**

| Claim No. | Debtor | Allowed Amount | Claim Class |
|:---:|:---:|:---:|:---:|
| 11676 | Jo-Ann Stores, LLC | Not less than $8,412,826.57 | General Unsecured |

5.    The Agent and its officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by SVP to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to SVP of all Purchased Assets in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to SVP or reducing to its possession, the Purchased Assets, all without further order of this Court. The Agent is further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Agent under the Purchase Agreement or this Order in order to consummate the Sale Transaction or perform its obligations under the Purchase Agreement.

6.    All persons and entities, including, without limitation, the Debtors, the Agent Group, the Debtors' estates, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or any affiliate, agent, successor, or assign of any of the foregoing) who may or do hold any Encumbrances (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising

prior to or subsequent to the commencement of these Chapter 11 Cases but before the Closing Date, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Chapter 11 Cases, the Purchased Assets, the transfer of the Agent's interests in the Purchased Assets, the operation or ownership of the Purchased Assets prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Encumbrances against SVP, its affiliates, successors, assigns, or property, including the Purchased Assets, including, without limitation, taking any of the following actions with respect to any such Encumbrances: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against SVP, its affiliates, successors, assigns, assets (including the Purchased Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against SVP, its affiliates, successors, assigns, assets (including the Purchased Assets), and/or properties; (c) creating, perfecting, or enforcing any Encumbrance against SVP, its affiliates, any of their respective successors, assigns, assets (including the Purchased Assets), and/or properties; (d) asserting a setoff, or, right of subrogation of any kind against any obligation due from SVP, its affiliates or any of its successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Agent's ability to transfer the Purchased Assets to SVP, in accordance with the terms of this Order and the Purchase Agreement. No person or entity shall assert or pursue any such Encumbrance against SVP or its affiliates, successors or assigns.

7.    Pursuant to section 365 and 363, as applicable, of the Bankruptcy Code, the applicable Debtors and the Agent Group are authorized to assume the Assumed Contracts and

assign the Assumed Contracts and otherwise transfer the other Assumed Liabilities to SVP. To the extent a Cure Amount is owed to a counterparty to any Assumed Contract (each, a "**Contract Counterparty**"), SVP shall pay the Cure Amount. Any objection of a Contract Counterparty to the assumption or assignment of any Assumed Contact, any Cure Amount, or seeking adequate assurance of future performance, to the extent not otherwise resolved by agreement, or by separate order of the Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to SVP or the Agent as a result of the transfer of the Purchased Assets or the assumption and assignment of the Assumed Contracts or transfer of the other Assumed Liabilities. Upon payment of the Cure Amount in accordance with the Purchase Agreement, the Debtors, the Agent, and SVP shall be released by the applicable Contract Counterparty from any and all claims and causes of action of any nature whatsoever based on or relating to the Assigned Liabilities arising before the Closing Date, and the Debtors, the Agent, and SVP shall have no liability for such claims or causes of actions.

8.    Except for the Assumed Liabilities, SVP shall assume none of the Debtors' obligations. Counterparties of the Debtors' executory contracts and unexpired lease, other than Assumed Contracts, are barred, estopped, and permanently enjoined from asserting against SVP or its successors and assigns or its property any assignment fee, acceleration, default, breach or claim or pecuniary loss.

9.    The sale of the Purchased Assets to SVP under the Purchase Agreement shall not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### B.    Transfer of the Purchased Assets Free and Clear

10.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the transfer of the

Purchased Assets to SVP shall be a legal, valid, and effective transfer of the Purchased Assets, and shall vest SVP with all right, title, and interest of the Agent or the Debtors in the Purchased Assets free and clear of all Encumbrances. Following the Closing Date, no holder of any Encumbrance shall interfere with SVP's title to, or use and enjoyment of, the Purchased Assets based on or related to any such Encumbrance.

11.   Those holders of any Encumbrances who did not object or who withdrew their objections to the Motion, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

12.   As a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, (i) neither SVP nor any of its affiliates shall be deemed to be a mere continuation of the Agent or any of the Debtors or their estates, nor shall there be deemed to be a continuity or common identity among SVP, the Agent, any of the Debtors, or any of their respective affiliates, or any continuity of enterprise among SVP, the Agent, any of the Debtors, or any of their respective affiliates; (ii) neither SVP nor any of its affiliates shall be deemed to be holding themselves out to the public as a continuation of any of the Debtors; (iii) neither SVP nor any of its affiliates shall be deemed a successor to the of the Debtors or their estates; and (iv) none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, amounts to a consolidation, merger, or *de facto* merger of SVP or any of its affiliates with or into the Agent or any of the Debtors.

13.   Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of SVP, its affiliates, the present or contemplated members or shareholders of SVP and its affiliates, nor the Purchased Assets shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or

by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any claims or Encumbrances relating to any U.S. federal, state or local income tax liabilities, that the Debtors or the Agent may incur in connection with consummation of the transactions contemplated by the Purchase Agreement including, without limitation, the Sale Transaction, or that the Debtors and the Agent have otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

14.    On the Closing Date, all right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in SVP pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Encumbrances. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest SVP with, all right, title and interest in and to, and possession of, the Purchased Assets. All persons and entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets shall surrender possession of such Purchased Assets to SVP on or prior to the Closing Date or at such time thereafter as SVP may request.

15.    The holders of any Encumbrances are directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Encumbrances.

16.    This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is

hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

17.  If any person or entity that has filed financing statements, mechanic's liens, *lis pendens* or other documents or agreements evidencing any Encumbrance shall not have delivered to the Debtors on or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances with respect to the Purchased Assets, (a) the Agent or SVP by virtue of its power of attorney is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets; (b) SVP is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances; and (c) SVP may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all Encumbrances with respect to the Purchased Assets. Notwithstanding the foregoing, the provisions of this Order shall be self-executing, and neither the Debtors, the Agent, nor SVP shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

## C.  No Successor or Transferee Liability

18.  Except as provided in the Purchase Agreement, notwithstanding the entry of this Order and the occurrence of the Closing Date, SVP (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Agent Group or any Debtor (including with

14

respect to any health or benefit plans) or otherwise be deemed a successor to the Agent Group or any Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Agent Group or any Debtor; or (c) be an alter ego or mere continuation or substantial continuation of the Agent Group or any Debtor or the enterprise of any Debtor, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**"), to the greatest degree allowed by applicable law, the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), to the greatest degree allowed by applicable law, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (y) in respect of (1) to the greatest degree allowed by applicable law, any environmental liabilities, debts, claims or obligations arising from conditions existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, and (2) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (3) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

19.    Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither SVP nor any of its affiliates shall have any

15

responsibility for any (a) liability or other obligation of the Agent Group or the Debtors related to the Purchased Assets, or (b) any claims against the Agent Group or the Debtors or any of their predecessors or affiliates. By virtue of the purchase of the Purchased Assets, neither SVP nor any of its affiliates shall have any liability whatsoever with respect to the Agent Group's or the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Agent Group's or the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph 13, "**Successor or Transferee Liability**"). SVP would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability. For the avoidance of doubt, the provisions of this paragraph are in addition to the provisions in paragraph 13 and shall in no way limit, or be interpreted as contradicting or qualifying, the provisions in paragraph 13.

20.   Neither SVP nor any of its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by, the Agent Group or the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement and

the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the Purchase Agreement and this Order.

21.   Nothing in this Order or the Purchase Agreement shall require SVP or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, former employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which any Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

22.   No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

23.   Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchased Assets, SVP, affiliates, successors or assigns, with respect to any Successor or Transferee Liability, including the following actions with respect to Successor or Transferee Liability:

a)   commencing or continuing any action or other proceeding pending or threatened;

b)   enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order;

c)   creating, perfecting or enforcing any Encumbrance;

d)   asserting any setoff or right of subrogation;

e)   commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or

**D.   Good Faith; Arm's Length Sale**

24.   The reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement and shall not result in the unwinding of the Sale Transaction. SVP, as a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

**E.   Related Relief**

25.   Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

26.   To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern.

27.   This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtors, all interest holders of the Debtors, any Court-appointed committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Purchase Agreement and the Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party. If any of the Chapter 11 Cases is dismissed under section 1112 of the Bankruptcy

Code, this Order and the rights granted to SVP hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on all parties in interest. For the avoidance of doubt, the Debtors' inability to satisfy in full all administrative expense claims of the Debtors' estates shall not be a basis for termination, rejection or avoidance (as applicable) of the Purchase Agreement or the Sale Transaction.

28.  **Releases**. Effective upon the Closing Date, the Releases shall be binding upon the Agent Group, the Debtors, and SVP.  If the Purchase Agreement is terminated for any reason other than pursuant to Section 11.1(d) of the Purchase Agreement, Hilco IP Services, LLC, d/b/a Hilco Streambank are hereby directed to take all actions necessary to cause the Release Amount to be returned to SVP within two (2) business days thereafter.

29.  This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any Contract Counterparty and any party that has, or asserts, possession, control or other rights in respect of any of the Purchased Assets; *provided*, *however*, that, in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to the Purchase Agreement or this Order, such abstention or refusal shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Purchased Assets  over any claims, including any Successor and Transferee Liability brought against SVP, the Agent, the Debtors, and their respective assets, regarding the Purchased Assets, and to enter orders, as appropriate, pursuant to sections 105(a) or 363 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Purchased Assets to SVP.

30.   At any time prior to the Closing Date, SVP or the Agent may terminate the Purchase Agreement pursuant to the terms thereof without any penalty or liability to SVP, the Agent, or the Debtors (or their estates), except as set forth in the Purchase Agreement.

31.   The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; *provided*, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

32.   This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the implementation, enforcement or realization of the relief granted in this Order is not subject to any stay ; and (c) the Debtors, the Agent and SVP may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

33.   SVP shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code, to give any notice permitted by the Purchase Agreement or to enforce any of its remedies under the Purchase Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

34.   Nothing contained in any chapter 11 plan to be confirmed in these Chapter 11 Cases or any order to be entered in these Chapter 11 Cases (including any order entered after

20

conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order. In the event there is a direct conflict between the terms of this Order and the terms of any subsequent chapter 11 plan or any order to be entered in these Chapter 11 Cases (including any order entered after conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code), the terms of this Order shall control.

35.   The provisions of this Order are non-severable and mutually dependent.

36.   SVP has standing to seek to enforce the terms of this Order.

37.   All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Dated: June 23rd, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**