**EXHIBIT B**

Redline

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.,*[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re:  Docket Nos. 429, 520, ——929** |

**ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN**
**CERTAIN UNEXPIRED LEASES TO DOLLAR TREE STORES, INC.**

Pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order")[2] and the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] entered in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and it appearing that the *Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. [●]] (the "Assumption Notice") satisfies the requirements set forth in the Procedures Order; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Procedures Order.

Court for the District of Delaware, dated February 29, 2012; and this Court having found that

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this

Court may enter a final order consistent with Article III of the United States Constitution; and

this Court having found that venue of this proceeding and the Assumption Notice in this district

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief

requested in the Assumption Notice is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the

Assumption Notice and opportunity for a hearing on the Assumption Notice were appropriate

and no other notice need be provided; and this Court having reviewed the Assumption Notice;

and this Court having determined that the legal and factual bases set forth in the Assumption

Notice establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

     1.     The unexpired leases of nonresidential real property set forth on Exhibit 1 hereto

(each, a "Real Property Lease") are assumed and assigned to Dollar Tree Stores, Inc. (or its

designee) (the "Assignee"), effective as of the Lease Assignment Date (defined below), pursuant

to the terms and conditions set forth in this Order.

     2.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of

any Real Property Lease shall:

     a.  be free and clear of:

         i.    all liens and

        ii.    any and all claims (as that term is defined in section 101(5) of the
              Bankruptcy Code), obligations, demands, guaranties of or by the
              Debtors, debts, rights, contractual commitments, restrictions, interests
              and matters of any kind and nature, whether arising prior to or

subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, claims and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Real Property Lease, or (B) in respect of any taxes); and

b. constitute a legal, valid and effective transfer of such Real Property Lease and vest the Assignee with all rights, titles, and interests to the applicable Real Property Lease.

3.      Within three business days after entry of this Order, the landlords for the Real Property Leases shall deliver to the Assignee and Debtors its ACH / wire instructions and W-9 (the "Landlord Information"), to the extent such landlord is owed any cure amounts as set forth in Exhibit 1 attached hereto (the "Cure Amounts") with respect to each such Real Property Lease.

4.      Within five Business Days after (i) Assignee and Debtors receive the Landlord Information or (ii) after entry of this Order if no cure costs are owed to such landlord:

a) Debtors shall deliver or cause to be delivered to Assignee all security codes and master keys to any portion of the applicable premises associated with such Real Property Leases (the "Stores"), to the extent in Debtors' custody, reasonable control, or possession;

b) Assignee shall deliver to the applicable landlord for each Real Property Lease (or to Debtors, for delivery to such landlord), the Cure Costs applicable to the Real Property Leases, wired in immediately available funds; and

c) Debtors and Assignee shall deliver to each other such customary documents, certificates and other instruments as the other may reasonably require to carry out the assignment of the Real Property Leases and as are customary in like transactions in the state in which any applicable Store is located.

Upon the occurrence of each of the foregoing, the applicable Real Property Lease shall be deemed assigned to Assignee (the date thereof, "Lease Assignment Date").

-3-

5.      The Cure Amounts represent any and all amounts accrued and owed under the Real Property Lease through the Lease Assignment Date and represent Assignee's sole payment obligation on behalf of the applicable Debtors' outstanding liabilities. Assignee's sole obligation with respect to the Cure Amounts shall be to pay such amounts and any other amounts agreed upon between the applicable Debtor and Assignee. The Assignee shall assume the obligations of the applicable Debtor(s) under each such Real Property Lease arising from and after the applicable Lease Assignment Date, including, for the avoidance of doubt, (i) amounts owed under each assigned Real Property Lease that accrue after the Lease Assignment Date, such as common area maintenance, insurance, taxes, and similar charges; (ii) any regular or periodic adjustment or reconciliation of charges under each assigned Real Property Lease which accrue after the Lease Assignment Date; (iii) other obligations, including indemnification obligations, that arise on or after the Lease Assignment Date, for amounts that accrue or are related to underlying incidents that occur after the Lease Assignment Date; and (iv) any post-assignment obligations under the assigned Real Property Leases.

6.      Upon assumption and assignment of any Real Property Lease and the payment of any Cure Amounts, if applicable, (a) the Debtors and their estates shall be relieved of any liability for breach of such Real Property Lease occurring after the applicable Lease Assignment Date pursuant to section 365(k) of the Bankruptcy Code; and (b) except for the Assignee's obligation to pay the applicable Cure Amount, the Real Property Lease landlord is hereby barred and permanently enjoined from asserting against the Debtors and the Assignee any default, claim or liability existing, accrued, arising or relating to the Real Property Lease for the period prior to the Lease Assignment Date.  Further, Assignee shall have no liability for claims or causes of action (whether known or unknown) including third-party tort claims that arose prior to the

Lease Assignment Date or for incidents that occurred prior to the Lease Assignment Date and all

other persons and entities holding such claims against the Debtors or the Real Property Lease for

the period prior to the Lease Assignment Date, are hereby forever barred, estopped, and

permanently enjoined from asserting or pursuing such claims against the Assignee, its affiliates,

successors or assigns, its property or the Real Property Lease.

7.      Upon assignment of a Real Property Lease, any provision thereof or in certain

reciprocal easement, operating or similar agreements relating to the Real Property Lease that

expressly or effectively purports to restrict, prohibit, condition or limit the assignment or transfer

of or the effectiveness of such lease or the use of the premises or Store(s) thereunder, including,

without limitation, the following provisions (collectively, the "Anti-Assignment Provisions")

shall not be enforceable:[3]

    a.  any provision of a Real Property Lease that purports to prohibit, condition, limit or otherwise restrict the assignment by the Debtors to the Assignee;

    b.  any provision of a Real Property Lease that permits a non-debtor party at any time to increase payments under (including, without limitation, rent), declare a default with respect to, terminate, modify or cancel the Real Property Lease or right or obligation thereunder by reason of (A) the assignment of the Real Property to any Assignee; (B) the conduct of a store-closing sale at the Store; (C) the release of the Debtors from liability; (D) the Store "going dark" for a period of time as may be necessary to permit the Assignee to remodel, restock, refixture, and/or change signage at such Store; (E) discontinuation of operations, interruption of business, tenant remodeling restrictions or minimum sales requirements during the period set forth above; (F) the Debtors' insolvency, financial condition, bankruptcy filing, or related circumstances; or (G) the Debtor(s) ceasing to be a party to the Real Property Lease (clauses (A) – (G), the "Triggering Events");

---

[3]      The failure to list any one or more of the Anti-Assignment Provisions herein shall not be construed in any way to affect or otherwise diminish the Court's invalidation of all Anti-Assignment Provisions in their entirety in connection with any assignment of the Real Property Leases to Assignee.

c.  any provision of a Real Property Lease that purports to be "personal" to the Debtors, to be exercisable only by the Debtors, or requires operation of a JOANN store;

d.  any provision of a Real Property Lease that permits a non-debtor party at any time to exercise a right of first refusal, purchase options or to recapture possession by reason of any Triggering Event;

e.  any provision of a Real Property Lease that permits a non-debtor party at any time to require payment of any fee, profit sharing or other payment by reason of the occurrence of any Triggering Event (including but not limited to the reversion, recapture, or acceleration of any previously abated, abandoned, or deferred obligations);

f.  any provision of a Real Property Lease that permits a non-debtor at any time to impose any penalty or rental or other monetary adjustment or allocation by reason of the occurrence of any Triggering Event;

g.  any provision of a Real Property Lease that permits a non-debtor at any time to cancel, modify or restrict Assignee from exercising any renewal options or purchase options by reason of any Triggering Event;

h.  any provision of a Real Property Lease that permits a non-debtor party at any time to seek damages or other relief by reason of a Triggering Event; and

i.  any provision of a Real Property Lease that purports to prohibit, nullify, restrict or condition (A) the removal of existing signage and the installation of standard signs (subject to applicable municipal codes) displaying the trade name of Assignee; (B) any and all alterations, additions, replacements, or improvements (including, without limitation, the front fascia of the premises) deemed necessary by Assignee (subject to applicable municipal codes) to renovate, construct, furnish, replace, equip and conform the Store(s) to a prototypical store of Assignee; or (C) operation of the Store(s) under Assignee's trade names.

8.  The Anti-Assignment Provisions would materially diminish the value of the Real Property Leases and the Debtors' ability to assign and sell such assets for value. The Anti-Assignment Provisions are inconsistent with sections 365(f)(1) and 365(f)(3) of the Bankruptcy Code and the Congressional policy expressed therein favoring a debtor's ability to maximize the value of its assets. A final and binding determination that the Anti-Assignment Provisions are unenforceable was a material and indispensable consideration of the Assignee's

willingness to assume the Real Property Leases and is necessary to maximize the proceeds to be received by the Debtors' estates.

9.      Upon assignment of a Real Property Lease, notwithstanding any Anti-Assignment Provision thereof:

    a.  Assignee shall be authorized to:

        i.   use the applicable store, subject to section 365(b)(3) of the Bankruptcy Code, upon consummation of the assumption and assignment of such Real Property Lease to Assignee for Assignee's operation under the name Dollar Tree for use as a retail variety store selling general merchandise including food and beverages ("Assignee's Permitted Use"), and Assignee shall not be prevented from doing so by any recorded or unrecorded restriction, or exclusive or radius restriction granted or imposed by the landlord,

        ii.  operate such store under the Assignee's trade name or any other trade name which the Assignee owns or is authorized to use,

        iii. make such alterations and modifications to the applicable store (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including storefront signs, panels on all pylons, monuments, directional and other ground and off-premises signs where the Debtors are presently represented) deemed necessary by the Assignee as are necessary or desirable for the Assignee to conform such store to the Assignee's typical retail store consistent with Assignee's Permitted Use, submit and execute all building and signage permit applications without further consent of any party upon production of a copy of this Order, and any conditions grandfathered for the benefit of the Debtors shall be grandfathered for the benefit of Assignee,

        iv.  remain "dark" with respect to such store after such assumption and assignment until the date that is necessary to permit Assignee to remodel, restock, re-fixture, change signage and complete the work described in clause (iii) above or such later date as may be reasonably required for the restoration of such store,

        v.   self-insure any of its insurance obligations under the Real Property Lease so long as Assignee shall have at all times a net worth of at least $50,000,000; *provided*, however, to the extent any obligation cannot be self-insured any required insurance may be satisfied by both general and umbrella coverage, and

vi.    exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Real Property Lease (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Real Property Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name), and

b.    any reference in the Real Property Lease to the Debtors shall hereinafter mean Assignee.

10.    Upon the assumption and assignment of a Real Property Lease to the Assignee under the provisions of this Order, no default shall exist under the Real Property Lease, and no counterparty to the Real Property Lease shall be permitted to declare a default by any Debtor or otherwise take action against the Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Real Property Lease. Upon assumption and assignment of any Real Property Lease pursuant to the Assumption Procedures, the Assignee shall enjoy all of the rights and benefits under each such Real Property Lease as of the applicable Lease Assignment Date.

11.    Upon payment of the Cure Amounts with respect to any Real Property Lease, the applicable landlord shall be forever barred and enjoined from asserting against the Debtors, their estates and the Assignee any claim in connection with: (a) any breach or default, monetary or non-monetary, existing and which accrued prior to the Lease Assignment Date with respect to the Real Property Lease, or (b) any objection to the assumption and assignment of such Real Property Lease, whether or not such non-debtor party filed a proof of claim.

12.    The Debtors are authorized to take any action necessary to implement the terms of this Order and the assumption and assignment without further order from this Court. All persons that are currently in possession of the premises leased under the Real Property Lease are hereby

directed to surrender possession of the premises to the Assignee as of the entry of this Order and the effective date of assignment as set forth in the Assumption Schedule.

13.    All recording officers are authorized to strike recorded encumbrances, claims, liens and other interests against the Real Property Lease recorded prior to the date of this Order. To the extent permitted by applicable law, a certified copy of this Order may be filed with the appropriate recording officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Real Property Lease recorded prior to the date of this Order. All recording officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. Utility providers are directed not to discontinue service and to cooperate with the transfer of utilities to Assignee without any transfer fees. Assignee's direct liability for such utility usage commences as of the Lease Assignment Date; *provided*, for the avoidance of doubt, that this Order does not affect the Debtors' direct liability, if any, for utility charges incurred before the Lease Assignment Date.

14.    The Assignee and its affiliates, successors and assigns shall not be deemed or considered to:

    a.  be a legal successor, or otherwise be deemed a successor to any of the Debtors,

    b.  have, *de facto* or otherwise, merged with or into any or all Debtors, or

    c.  be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Assignee has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates except as expressly set forth herein and in the Assumption and Assignment Agreement.

15.     The Assignee and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity or other law, rule regulation or doctrine, whether known or unknown as of the Lease Assignment Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Lease Assignment Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Real Property Lease prior to the Lease Assignment Date or arising based on actions of the Debtors taken after the Lease Assignment Date, in each case regardless of when such liability is asserted, invoiced, or billed.

16.     Upon assumption and assignment of a Real Property Lease to the Assignee, the Assignee shall be responsible for all obligations under such Real Property Lease arising solely from and after the applicable Lease Assignment Date, (A) including, for the avoidance of doubt, (i) amounts owed under each assigned Real Property Lease that accrue solely after the Lease Assignment Date, such as common area maintenance, insurance, taxes, and similar charges for any period after the Lease Assignment Date; and (ii) other obligations, including indemnification obligations, that arise on or after the Lease Assignment Date, for amounts that accrue or are related to underlying incidents that occur after the Lease Assignment Date, in each case of (i) through (ii), regardless of when such liability is asserted, invoiced or billed, and subject to the terms and conditions of the Real Property Lease and any defenses provided by such Real Property Lease and applicable non-bankruptcy law, and unless otherwise agreed with the

counterparty to the Real Property Lease; but (B) <u>excluding</u>, for the avoidance of doubt, (i) any year-end or other adjustment and reconciliation amounts that adjust or reconcile any amounts that accrued before the Lease Assignment Date, which amounts shall be waived against the Debtors' estates and the Assignee if not included within the Cure Costs, even if such adjustment or reconciliation amounts become due or accrue after the entry of this Order (including royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent), and (ii) any indemnification obligations that relate to underlying incidents that occurred before the Lease Assignment Date.

17.    The Assignee is a "good faith purchaser," within the meaning of section 363(m) of the Bankruptcy Code, of the Real Property Leases and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The parties will be acting in good faith if they proceed to consummate the assignment at any time after entry of this Order. This order is effective immediately, notwithstanding Bankruptcy Rules 6004(h), 6006(d), and any similar provision of law.

18.    Any and all property located on or in the leased premises after the Lease Assignment Date of the applicable Real Property Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Lease Assignment Date. As of the Lease Assignment Date, the Assignee or its designee may, in its sole discretion and without further notice to any party or order of the Court, utilize and/or dispose of such abandoned property without further notice or liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. The rights of the counterparty to each Real Property Lease to assert claims for the disposition of the abandoned property are reserved, as are all parties' rights to object to such claims.

-12-

19.     This Order constitutes a separate order with respect to each Real Property Lease.

20.     Notice of the Assumption Notice as provided therein shall be deemed good and sufficient notice of such Assumption Notice and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors and Assignee are authorized to take all actions necessary to effectuate the relief granted in this Order.

23.     This Court retains ~~exclusive~~ jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit 1 to Assignment Order**

**Assumption Schedule**

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 1 | Dollar Tree Stores, Inc. | Lima Center, LLC | Lima Center, LLC c/o wpg, 4900 East Dublin Granville Rd., 4th Floor Attn: SVP, Chief Legal Officer Columbus, OH 43081 | 227 | 2720 Elida Rd Lima, OH | May 06, 1996 Lease Agreement between Jo-Ann Stores, LLC and Lima Center, LLC | $0.00 | As soon as practicable following entry of the Order |
| 2 | Dollar Tree Stores, Inc. | Fletcher Square, LLC | Fletcher Square, LLC 707 Virginia Street East, Suite 400, Attn: A. Victor Mays Charleston, WV 25301 | 569 | 9 Fletcher Sq Dunbar, WV | June 29, 1995 Lease Agreement between Jo-Ann Stores, LLC and Fletcher Square, LLC | $14,844.49 | As soon as practicable following entry of the Order |
| 3 | Dollar Tree Stores, Inc. | Redding MHP Estates, L.P. | Redding MHP Estates, L.P. c/o De Anza Properties, 960 N. San Antonio | 605 | 19765 Stevens Creek Blvd Cupertino, CA | April 03, 1984 Lease Agreement between Jo-Ann Stores, LLC and Redding MHP Estates, L.P. | $44,407.42 | As soon as practicable following entry of the Order |

---

[1]    The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.

13

17146936

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | | | Rd., Suite 114 Attn: Jennifer Tersigni, Property Mgr. Los Altos, CA 94022 | | | | | |
| 4 | Dollar Tree Stores, Inc. | J and H Hollywood, LLC | J and H Hollywood, LLC 45 NW 21st Street Miami, FL 33127 | 1044 | 4700 Hollywood Blvd Hollywood, FL | September 12, 1996 Lease Agreement between Jo Ann Stores, LLC and J and H Hollywood, LLC | $15,903.33 | As soon as practicable following entry of the Order |
| 5 | Dollar Tree Stores, Inc. | AFP Rockridge 2019, LLC | AFP Rockridge 2019, LLC c/o Graco Real Estate Development, Inc., 5307 W. Loop 289, Suite 302 P.O. Box 65207, 79464 (Mailings) Lubbock, TX 79414 | 1488 | 5217 82Nd St Unit 123 Lubbock, TX | February 08, 1994 Lease Agreement between Jo Ann Stores, LLC and AFP Rockridge 2019, LLC | $0.00 | As soon as practicable following entry of the Order |
| 6 | Dollar Tree Stores, Inc. | The Carrington Co. | The Carrington Co. 627 H Street Eureka, CA 95501 | 1769 | 1344 S Stewart St Carson City, NV | August 15, 1990 Lease Agreement between Jo Ann Stores, LLC and The Carrington Co. | $13,226.67 | As soon as practicable following entry of the Order |
| 7 | Dollar Tree Stores, Inc. | Vanderwall Family, L.P. | Vanderwall Family, L.P. c/o David Vander Wall, | 1782 | 200 Standiford Ave Modesto, CA | October 11, 2013 Lease Agreement between Jo Ann Stores, LLC and Vanderwall Family, L.P. | $15,358.34 | As soon as practicable following entry of the |

14

17146936

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | | | PO Box 1931 (1885 Ladd Rd. Zip: 95356) Modesto, CA 95356 | | | | | Order |
| 8 | Dollar Tree Stores, Inc. | RCG Pocatello VII, LLC | RCG Pocatello VII, LLC c/o RCG Ventures, LLC, 3060 Peachtree Road NW, Suite 400 Attn: Wilkes J. Graham, President & CFO Atlanta, GA 30305 | 2183 | 1790 Hurley Dr. Pocatello, ID | June 04, 2010 Lease Agreement between Jo-Ann Stores, LLC and RCG Pocatello VII, LLC | $12,863.08 | As soon as practicable following entry of the Order |
| 9 | Dollar Tree Stores, Inc. | PAL Properties | PAL Properties 2574 Christmasville Cove, Suite H Jackson, TN 38305 | 2194 | 1185 Vann Dr Jackson, TN | September 23, 2010 Lease Agreement between Jo-Ann Stores, LLC and PAL Properties | $16,706.93 | As soon as practicable following entry of the Order |
| 10 | Dollar Tree Stores, Inc. | MP ELKO, LLC | MP ELKO, LLC C/O MERIDIAN PACIFIC LTD, 1801 TIBURON BLVD, SUITE 800 TIBURON, CA 94920 | 2204 | 2759 Mountain City Hwy Elko, NV | October 26, 2010 Lease Agreement between Jo-Ann Stores, LLC and MP ELKO, LLC | $14,975.00 | As soon as practicable following entry of the Order |
| 11 | Dollar Tree | ZRP Crosspointe | ZRP Crosspointe Plaza LLC | 2314 | 840 Woods Crossing Road | December 10, 2012 Lease Agreement between | $17,101.00 | As soon as practicable |

15

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | ~~Stores, Inc.~~ | ~~Plaza LLC~~ | ~~c/o Ziff Properties, Inc., 210 Wingo Way, Suite 400 Attn: Alec Boyle, Leasing Agent Mount Pleasant, SC 29464~~ | | ~~Greenville, SC~~ | ~~Jo-Ann Stores, LLC and ZRP Crosspointe Plaza LLC~~ | | ~~following entry of the Order~~ |
| ~~12~~ | ~~Dollar Tree Stores, Inc.~~ | ~~DT Ashley Crossing LLC~~ | ~~DT Ashley Crossing LLC c/o SITE Centers, 3300 Enterprise Parkway Attn: Executive Vice President Leasing Beachwood, OH 44122~~ | ~~2328~~ | ~~2243 Ashley Crossing Dr, Suite C Charleston, SC~~ | ~~June 18, 2012 Lease Agreement between Jo-Ann Stores, LLC and DT Ashley Crossing LLC~~ | ~~$18,524.90~~ | ~~As soon as practicable following entry of the Order~~ |
| ~~13~~ | ~~Dollar Tree Stores, Inc.~~ | ~~Hazel Totem LLC~~ | ~~Hazel Totem LLC 8320 NE Hwy., 99 Vancouver, WA 98665~~ | ~~2394~~ | ~~7907 Ne Highway 99 Vancouver, WA~~ | ~~May 29, 2013 Lease Agreement between Jo-Ann Stores, LLC and Hazel Totem LLC~~ | ~~$17,667.62~~ | ~~As soon as practicable following entry of the Order~~ |
| ~~14~~ | ~~Dollar Tree Stores, Inc.~~ | ~~Saroni Real Estates, LLC~~ | ~~Saroni Real Estates, LLC 1718 Veterans Memorial Parkway, Attn: Dr. Ramesh Peramsetty~~ | ~~2497~~ | ~~1702 Veterans Memorial Pkwy East Tuscaloosa, AL~~ | ~~December 19, 2016 Lease Agreement between Jo-Ann Stores, LLC and Saroni Real Estates, LLC~~ | ~~$5,049.00~~ | ~~As soon as practicable following entry of the Order~~ |

17146936

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | | | (authorized to sign) or Kim Herren Tuscaloosa, AL 35404 | | | | | |
| ~~15~~ 1 | Dollar Tree Stores, Inc. | Phil Simon Enterprises, Inc. | Phil Simon Enterprises, Inc. Attn: Sanford Simon, President, 1457 44th St., Suite 200 Grand Rapids, MI 49508 | 2500 | 1409 East Stone Drive Kingsport, TN | February 15, 2017 Lease Agreement between Jo-Ann Stores, LLC and Phil Simon Enterprises, Inc. | $~~7,328.75~~0.00 | As soon as practicable following entry of the Order |

17

17146936