## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC, *et al.*, | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: Aug. 14, 2025 at 10 a.m. |
| | Objection Date: August 7, 2025 at 4 p.m. |

### MOTION OF OOCL USA INC. FOR AN ORDER FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 503(b)

OOCL USA Inc. ("OOCL"), by and through its undersigned attorneys, hereby moves (the "Motion") pursuant to section 503(b) of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), for an order, substantially in the form annexed to the Motion, for allowance and payment of an administrative expense pursuant to section 503(b) of the Bankruptcy Code.  In support of the Motion, OOCL represents as follows:

### PRELIMINARY STATEMENT

1.      On January 15, 2025 (the "Petition Date"), the Debtors, Joann Inc., *et al*. (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A) and (G).  The statutory predicate for the relief sought herein is section 503(b) of the Bankruptcy Code.

3.      Venue of this Motion in this Court is proper under 28 U.S.C. § 1409(a).

1

## **BACKGROUND**

4.      OOCL USA Inc. is the agent in the United States for Orient Overseas Container Line, a common carrier of goods via ocean going vessels which has its principal place of business in Hong Kong.  OOCL USA Inc. has its principal place of business at 10913 S. River Front Parkway, Suite 200, South Jordan, UT 84095.

5.      After the Petition Date, OOCL issued certain bills of lading (the "Bills of Lading") to one or more Shippers to carry various cargo for delivery to one or more of the Debtors (the "Post-Petition Cargo").

6.      Under the Bills of Lading, at least one of the Debtors is listed as the Consignee of the Post-Petition Cargo and entitled to delivery or receipt of the Post-Petition Cargo.

7.      OOCL transported the Post-Petition Cargo for the benefit of the Debtors as the Consignee after the Petition Date that the Debtors indicated they wanted to receive; and, OOCL delivered the Post-Petition Cargo to the Debtors that the Debtors indicated they wanted to receive after the Petition Date.

8.      A Statement of Account showing the Bills of Lading and charges for transportation related services rendered to the Debtors for delivery of the Post-Petition Cargo that the Debtors told OOCL after the Petition Date that they wanted delivered and which was actually received by the Debtors is attached hereto as Exhibit "A."

9.      As shown on Exhibit "A", the OOCL invoices to the Debtors for the Post-Petition Cargo that was actually delivered date from the Petition Date to April 28, 2025.

10.      According to Exhibit "A", the total amount due for transportation related services to deliver the Post-Petition Cargo that the Debtors indicated to OOCL that it wanted after the Petition Date and that the Debtors received after the Petition Date is $361,346.00.

11.     In addition to the Post-Petition Cargo that OOCL delivered to the Debtors after the Petition Date, there was additional cargo that the Debtors told OOCL that it might want, but eventually abandoned (the "Abandoned Cargo"), pursuant to an Agreed Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) Solely to the Extent it Applies, which was entered and filed on May 2, 2025 [Docket No. 804] (the "Consent "Order for Abandonment").

12.     Until entry of the Consent Order for Abandonment, the Debtors continually represented to OOCL and advised OOCL that they might eventually want the Abandoned Cargo, but they did not have the money to pay for it at that time, so they could not take delivery of the Abandoned Cargo.  Eventually, when the Debtors apparently made the decision to go out of business, they agreed to enter into the Consent Order for Abandonment.

13.     Up to the time that the Consent Order for Abandonment was entered and filed, OOCL could not dispose of the Abandoned Cargo that it was still holding for delivery to the Debtors, because the Debtors were named as Consignees on the Bills of Lading, so they arguably had legal or equitable rights and interests in and the Abandoned Cargo.  So, OOCL could not dispose of the Abandoned Cargo until after the Consent Order for Abandonment was entered and filed, and thereby became effective.  Until then, OOCL had a legal obligation to the Debtors and their estates to hold the Abandoned Cargo for the Debtors, to keep it in good condition, and not to dispose of the Abandoned Cargo which was arguably estate property.

14.     Even before entry of the Consent Order for Abandonment, OOCL began the process of trying to arrange for re-consignment or to otherwise dispose of the Abandoned Cargo, so that it could hit the ground running to try to mitigate its damages immediately

3

upon entry and filing of the Consent Order for Abandonment; and, to limit the Debtors' liability for charges for preserving the value of the Abandoned Cargo.

15.     A Statement of Account showing the Bills of Lading and charges for transportation related services rendered to the Debtors for preservation of the Abandoned Cargo that the Debtors initially told OOCL after the Petition Date that they might want butt which the Debtors eventually abandoned is attached hereto as Exhibit "B."

16.     As shown on Exhibit "B", the OOCL invoices to the Debtors for the Abandoned Cargo date from May 4, 2025 to May 20, 2025.

17.     According to Exhibit "B", the total amount due for transportation, storage and related services to preserve and protect the Abandoned Cargo that the Debtors initially indicated to OOCL that it might want but eventually abandoned pursuant to the Consent Order for Abandonment is $2,560,390.00.

18.     On June 20, 2025, the Court entered the Twenty-Second Order Authorizing the Debtors to Reject Certain Executory Contracts and/or Expired Leases [Docket No. 1202] (the "Rejection Order").

19.     Exhibit 1 to the Rejection Order, entry 72, shows that the Debtors rejected their executory service contract with OOCL effective May 31, 2025.

## RELIEF REQUESTED

20.     By this Motion, OOCL seeks entry of an order for allowance and immediate payment of invoices for $361,346.00 for ocean carriage and delivery of the Post-Petition Cargo plus allowance and immediate payment of invoices for $2,560,390.00 for transportation, storage and related services provided by or paid for by OOCL to third parties for preserving the value of the Abandoned Cargo for the benefit of the Debtors' estates.

21.     Section 503(b)(1)(A) of the Bankruptcy Code provides, in relevant part, that: "there shall be allowed administrative expenses … including … the actual, necessary costs and expenses of preserving the estate…."

22.     To qualify as an administrative expense, a claim "must arise from a [postpetition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314–15 (3rd Cir. 2011) (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–33 (3d Cir. 1999)); *see also In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 659 (Bankr. D. Del. 2003) (stating that an administrative expense claim will be allowed where the expense arose postpetition and conferred a benefit to the debtor's estate).

23.     When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of administrative claims plainly require that their claims be afforded priority") (internal citation omitted).  Further, "the amount of an administrative expense claim will generally be calculated pursuant to the parties' underlying contract or agreement. *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818–19 (3d Cir. 2010).  In this regard, the negotiated terms of the parties will be presumed to be the proper basis for the calculation of the administrative expense claim." *In re N. Am. Petroleum Corp. USA*, 445 B.R. 382, 401 (Bankr. D. Del. 2011).

24.     In this case, the Debtors did not reject their executory service contract with OOCL until May 31, 2025, well after the Petition Date.  Further, the Bills of Lading, which form the executory contracts of carriage between the parties, were all dated after the Petition Date.  In addition, the Post-Petition Cargo was all delivered to the Debtors per their requests after the Petition Date: and, OOCL stored and protected the Abandoned Cargo for the benefit of the

Debtors' estates until the effective date of the Order for Abandonment, May 2, 2025, which was also well after the Petition Date.  Up to that time, the Debtors indicated to OOCL that it might want the Abandoned Cargo if it could pay for it; and, OOCL could not dispose of the Abandoned Cargo, since it was arguably estate property to which the Debtors had legal or equitable title.

25.    Therefore, OOCL is entitled to an order for allowance and immediate payment of administrative expenses of $361,346.00 for ocean carriage and related charges for the Post-Petition Cargo that was delivered to the Debtors plus allowance and immediate payment of administrative expenses of $2,560,390.00 for transportation, storage and related services provided by or paid for by OOCL to third parties for preserving the value of the Abandoned Cargo for the benefit of the Debtors' estates, for a total administrative claim of $2,921,736.00.

## NO PRIOR REQUEST

26.    No prior request for the relief requested herein has been made to this or any other Court, although OOCL filed an amended proof of claim on June 3, 2025 for post-petition administrative expenses in the total amount of $2,921,736.00.

## WAIVER OF MEMORANDUM OF LAW

27.    Given the nature of the relief requested in this Motion and given that the authority relied upon by OOCL to support the relief requested in the Motion is cited above, OOCL respectfully requests that this Court dispense with and waive any requirement for submission of a separate memorandum of law.

WHEREFORE, OOCL respectfully requests that this Court enter an Order substantially in the form annexed to the Motion granting allowance and immediate payment of administrative expenses in the total amount of $2,921,736.00.

Dated: July 9, 2025

**HOGAN MCDANIEL**

*/s/ Daniel C. Kerrick*
Daniel C. Kerrick, Esq. (DE Bar ID # 5027)
1311 Delaware Avenue
Wilmington, DE 19806
Tel:     (302) 656-7540
Fax:     (302) 656-7599

and

**PRICE MEESE SHULMAN & D'ARMINIO, P.C.**

/s/ Rick A. Steinberg
Rick A. Steinberg, Esquire
50  Tice Boulevard, Suite 380
Woodcliff Lake, New Jersey 07677
Tel. (201) 391-3737
Fax (201) 391-9360
Email: rsteinberg@pricemeese.com
*(Admitted Pro Hac Vice)*

*Attorneys for OOCL USA Inc*