## Exhibit A

### Revised Proposed Confirmation Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  |  | **Related to Docket Nos. 987 and 1353** |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER APPROVING
THE DEBTORS' DISCLOSURE STATEMENT FOR, AND
CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN
OF JOANN INC. AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

    a.  commenced, on January 15, 2025 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.  continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.  obtained, on February 26, 2025, entry of (a) the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 516] (the "Cash Collateral Order") and (b) the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims,*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]  All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)*, attached hereto as **Exhibit A** (the "Plan") or the Conditional Disclosure Statement Order (as defined below), as applicable.  The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Approval Order");

d.  filed, on February 26, 2025, the *Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 513];

e.  obtained, on March 5, 2025, entry of the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 561];

f.  filed, on May 5, 2025, 2025, (a) the *Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 809] and (b) the *Disclosure Statement for the Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 810];

g.  filed, on May 5, 2025, the *Motion of Debtors for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation and Final Disclosure Statement Approval Hearing and Setting Dates and Deadlines, (III) Approving the Solicitation Package and Notice Procedures, (IV) Approving the Form of Ballot and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 811] (the "Disclosure Statement Motion");

h.  filed on May 24, 2025, (a) the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 986] and (b) the *Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 987];

i.  obtained, on May 27, 2025, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation and Final Disclosure Statement Approval Hearing and Setting Dates and Deadlines, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Form of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 994] (the "Conditional Disclosure Statement Order"), which approved on an interim basis, among other things, solicitation procedures and related notices (the "Solicitation and Voting Procedures"), forms, and the Ballots (collectively, the "Solicitation Packages");

j.  filed, on May 28, 2025, the *Notice of Hearing to Consider (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 1010] (the "Combined Hearing Notice");

k.  caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Conditional Disclosure Statement Order), and the Combined Hearing Notice to be distributed on or before May 29, 2025, in accordance with the Conditional Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service of*

*Solicitation Materials* [Docket No. 1306] (the "Solicitation Affidavit") and the Voting Report (as defined below);

l.   caused the Combined Hearing Notice to be published in *The New York Times* on May 30, 2025, as evidenced by, among other things, the *Proof of Publication* [Docket No. 1045] (the "Publication Affidavit" and together with the Solicitation Affidavit, the "Affidavits");

m.   filed, on June 20, 2025, the initial *Plan Supplement for the Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 1241] (as amended, modified, or supplemented from time to time, the "Plan Supplement") and filed, on June 21, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 1242];

n.   caused to be filed, on July 7, 2025, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 1348] (as may be amended, modified, or supplemented, the "Voting Report");

o.   filed, on July 8, 2025, the *Second Amended Join Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1353];

p.   filed, on July 8, 2025, the *Amended Plan Supplement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1357] and the *Notice of Filing Amended Plan Supplement* [Docket No. 1358].

q.   filed, on July 8, 2025, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan (Technical Modifications)* [Docket No. 1355] (the "Confirmation Brief");

r.   filed, on July 8, 2025, the *Declaration of Nicholas Haughey in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1356] (the "Haughey Declaration"); and

This Bankruptcy Court having:

a.   entered, on May 27, 2025, the Conditional Disclosure Statement Order;

b.   set June 27, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Disclosure Statement and the Plan (the "Objection Deadline");

c.   set June 30, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline by which all Ballots and Opt-In Forms must be properly executed, completed, and submitted so that they are actually received (the "Voting Deadline") by Kroll Restructuring Administration LLC (the "Solicitation Agent");

d.  set July 10, 2025, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Combined Hearing pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Haughey Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.  held the Combined Hearing;

g.  heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

h.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Combined Hearing;

i.  overruled any and all objections to the final approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

j.  considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the final approval of the Disclosure Statement and the Confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings of Fact and Conclusions of Law**

1.      The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Combined Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.   Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.      Jurisdiction, Venue, Core Proceeding**

2.      The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.   Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.   Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

C.      **Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      **Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 16, 2025, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 103] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

E.      **Committee Appointment**

5.      On January 28, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 198] pursuant to section 1102 of the Bankruptcy Code.

F.      **Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by

reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

## G.    Plan Supplement

7.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Conditional Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of Article X of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

## H.    Conditional Disclosure Statement Order

8.    On May 27, 2025, the Bankruptcy Court entered the Conditional Disclosure Statement Order, which, among other things, (a) approved, on an interim basis (i) the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) the Solicitation and Voting Procedures, and

(iii) the Solicitation Packages; (b) set June 27, 2025 at 4:00 p.m., prevailing Eastern Time, as the Objection Deadline, (c) set June 30, 2025 at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline, and (d) set July 10, 2025 at 10:00 a.m., prevailing Eastern Time, as the date and time for the Combined Hearing.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.      Adequacy of the Disclosure Statement**

9.      The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.   The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Conditional Disclosure Statement Order and was appropriate under the circumstances.

**J.      Solicitation and Notice**

10.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.      As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Conditional Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of

8

section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement and Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.   Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.     Voting Report**

13.     Prior to the Combined Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.     As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.   In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 5 and 6 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 7 and 8 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan.

**L.    Bankruptcy Rule 3016**

16. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.    Burden of Proof**

17. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**N.    Plan Modifications**

18. Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Combined Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim under the Plan. Subsequent to filing the solicitation version of the Plan [Docket No. 986] on May 24, 2025, the Debtors made certain Plan Modifications, which are reflected in the version of the Plan attached hereto as **Exhibit A**. The Plan Modifications were made to address objections and informal comments received from various parties in interest, including landlords and insurers. The Plan Modifications do not materially or adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan. After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances

of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.

19.     No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications. Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan. All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**O.     Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

20.     The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan. The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**P.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

     **i.**     **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

23.    The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into eight (8) Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II and Article XII.C of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

     **ii.**     **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

24.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of the Impaired Classes entitled to vote on the Plan, which are Classes 3 and 4.  Holders of Claims and Interests in Classes 5 and 6 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or cancelled

and released without any Plan Distribution on account of such Claims or Interests.  Holders of

Claims and Interests in Classes 7 and 8 are Impaired under the Plan and are conclusively deemed

to have rejected the Plan.

### iii.    No Discrimination (11 U.S.C. § 1123(a)(4)).

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

Article III of the Plan provides the same treatment for each Claim or Interest within a particular

Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment

with respect to such Claim or Interest.

### iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

26.    The Plan and the various documents included in the Plan Supplement (collectively,

the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code.

The Plan and the Plan Documents provide adequate and proper means for the Plan's

implementation, including by providing for, among other things, consummation of the

Wind-Down Transactions, the creation of the GUC Trust, and the appointment of the GUC Trustee

and the Plan Administrator.

### v.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

27.    The Plan does not provide for the issuance of equity or other securities by the

Debtors or the Wind-Down Debtors.  Accordingly, the requirements of section 1123(a)(6) of the

Bankruptcy Code are inapplicable in these Chapter 11 Cases.

### vi.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

28.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

Article IV of the Plan provides that, on the Effective Date, the Debtors' existing directors and

officers shall be deemed to have resigned, and the Plan Administrator shall have the sole power

and authority to implement the Plan and take any actions reasonably necessary to further such

implementation without any further action, except for such actions reserved for the GUC Trust pursuant to the Plan and the GUC Trust Agreement. The Plan further provides that the Plan Administrator shall have the sole authority to act on behalf of the Wind-Down Debtors in accordance with its fiduciary duties.

### vii. Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

29.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (a)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

30.    Upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is identified on a Cure Notice, is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or was assumed as part of the GA Transaction; (b) has been previously assumed, assumed and assigned, or rejected by the Debtors any other Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy. Solely with respect to any Leases that have not yet been rejected, on the Effective Date, the Debtors will notify the applicable landlord in

writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable.

31.    Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Approval Order to assume and assign Executory Contracts and Unexpired Leases.  Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date to (a) designate an Executory Contract previously not included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption or assumption and assignment or (b) remove an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment.

32.    The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

      **(b)**        **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

33.    **Compromise and Settlement.**  The Plan incorporates certain settlement of issues, authorized by or under the Approval Order, among the Debtors and various parties in interest, namely the Committee, the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, and GA Joann Retail Partnership, LLC.  As among the settlement parties, the applicable provisions of the Plan shall constitute a good-faith settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved among such

parties pursuant to the Plan.  Subject to Article VI of the Plan, all Plan Distributions made to Holders of Allowed Claims that are settlement parties are intended to be and shall be final.

34.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

35.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

36.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released

Parties, including, the Released Parties' contribution to facilitating the Wind-Down Transactions and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Wind-Down Debtors, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

37.    **Releases by Holders of Claims and Interests.**    Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

38.    The Third-Party Release is consensual with respect to the Releasing Parties. The Ballots sent to all Holders of Claims and Interests entitled to vote, the Notices of Non-Voting Status sent to Holders of Claims and Interests not entitled to vote, and the Combined Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt in to the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that voted in favor of the Plan and checked the "Opt In" box on their timely submitted Ballot, voted against the Plan but checked the "Opt In" box on their timely submitted Ballot, or didn't vote on the Plan but checked the "Opt In" box on

their timely submitted Opt-In Form, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties to the extent set forth in and consistent with the terms of the Plan. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Opt-In Form. Thus, the Third-Party Release is consensual as to those Releasing Parties that opted into the Third-Party Release as described above.

39. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors, the Wind-Down Debtors, and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; (h) a sound exercise of the Debtors' business judgment; and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.[3]

40. **Exculpation.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in

---

[3]   Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, any party who mutually agrees with the Debtors in writing (email to be sufficient) to be a Releasing Party shall also be deemed a Releasing Party under the Plan.

Article VIII.D of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Exculpated Parties owed and complied with their fiduciary duties to the Debtors and their Estates in their willingness and efforts to support the Debtors' Chapter 11 Cases.  The Exculpation appropriately affords protection to the Exculpated Parties who participated in and contributed to the Debtors' chapter 11 process consistent with their fiduciary duties, and it is appropriately tailored to protect the Exculpated Parties from, among other things, inappropriate litigation.

41.    **Injunction.**  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

**viii.    Cure of Defaults (11 U.S.C. § 1123(d)).**

42.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed proposed assumption or cure amount will be determined in accordance with the procedures set forth in Article V.C of the Plan and applicable bankruptcy and non-bankruptcy law.  In the event of any

inconsistency between the Plan and the Approval Order concerning the assumption and assignment of Executory Contracts or Unexpired Leases, the terms of the Approval Order shall govern and control.  Accordingly, the Plan provides that the Debtors or the Wind-Down Debtors, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.[4]  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b) The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

43.    The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

44.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Conditional Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

45.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.

---

[4]    To the extent there are any outstanding Allowed Stub Rent payments as of the Effective Date, the Debtors shall remit payment on account of such outstanding Allowed amounts no later than ten (10) days following the Effective Date.  For the avoidance of doubt, the Sub Rent Reserve shall otherwise be consistent with the terms of the Committee Settlement set forth in the Approval Order.

c)  **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

46.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates and providing for the creation of the GUC Trust on the Effective Date to administer the GUC Trust Assets.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

47.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee, the Purchaser, and the Prepetition Term Loan Ad Hoc Group.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.   Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d) Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

48. Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable. The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e) Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

49. Because the Plan provides for the orderly wind down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply. To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator and the GUC Trustee.

**f) No Rate Changes (11 U.S.C. § 1129(a)(6)).**

50. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g) Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

51. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Substantially all of the Debtors' assets were liquidated in accordance with the GA Transaction. The Plan effects a wind down of any remaining assets. Consequently, the Debtors' Estates do not, and will not, own any material assets on the Effective Date, and Holders of Allowed Claims or Interests in Classes 7 and 8, and, to the extent such Classes are deemed to reject the Plan, Classes 5 and 6, are not anticipated to receive any recoveries. Pursuant to the Plan, the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator shall effectuate the wind down in an

orderly manner.  Further, the GUC Trustee shall administer the GUC Trust in accordance with the terms of the GUC Trust Agreement, which incorporates the terms of the Committee Settlement. Holders of Class 4 General Unsecured Claims would receive a lower recovery without the Committee Settlement.

52.     A chapter 7 liquidation would also wind down the Debtors' Estates, and likewise would not be expected to yield any recovery for Holders of Allowed Claims or Interests in Classes 5 through 8, as applicable, and likely would involve additional administrative costs, delays, and uncertainties associated with commencing one or more new chapter 7 proceedings at this time (including, for example, the costs and delays associated with administering the GUC Trust and Committee Settlement, establishing a new claims bar date, and administering the renewed claims register).  Therefore, Holders of Allowed Claims or Interests will receive or retain under the Plan property of a value that, as of the Effective Date, is not less than the amount they would receive or retain if the Debtors liquidated under chapter 7, thus satisfying the requirements of section 1129(a)(7) of the Bankruptcy Code.

**h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

53.     The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 (Prepetition Term Loan Claims) voted to accept the Plan, and Class 4 (General Unsecured Claims) voted to accept the Plan.  Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests) are not entitled to vote on the Plan, because they are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan.  Class 7 (Interests in JOANN) and Class 8 (Section 510(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account

of the Claim or Interest in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan (together with Classes 5 and 6, the "Deemed Rejecting Classes").  To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

**i)  Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

54.    Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

**j)  Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

55.    The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article II, Article III, and Article XII.C of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k)  Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

56.    As set forth in the Voting Report, the Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code in both of the Voting Classes voted to accept the Plan, determined without including any acceptance of the Plan by any insider

(as that term is defined in section 101(31) of the Bankruptcy Code).  As such, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**l)  Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

57.     The evidence proffered or adduced in these Chapter 11 Cases and in the Haughey Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Wind-Down Debtors will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

58.     Article II and Article XII.C of the Plan provide for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n)  Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

59.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o)  Only One Plan (11 U.S.C. § 1129(c)).**

60.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

61.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

62.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

63.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**B.     Implementation**

64.     The Plan, the Plan Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Wind-Down Debtors, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan, and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**C.     Good Faith Solicitation (11 U.S.C. § 1125(e))**

65.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated

Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly stated in this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Plan Distributions and, therefore, are not, and on account of such Plan Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Plan Distributions.

**D.      Disclosure:  Agreements and Other Documents**

66.      The Debtors have disclosed all material facts regarding:   (a) the Plan; (b) the sources and Plan Distributions; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Wind-Down Debtors.

## **ORDER**

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**A.      Findings of Fact and Conclusions of Law**

67.      The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

**B.      Final Approval of the Disclosure Statement**

68.      The Disclosure Statement is hereby approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

**C.      Confirmation of the Plan**

69.      The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is hereby confirmed under section 1129 of the Bankruptcy Code.  The Debtors and the Wind-Down Debtors are authorized to enter into, execute, and perform under all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, Wind-Down Debtors, Plan Administrator, and GUC Trust, as applicable, are hereby approved and authorized.  The Debtors, Wind-Down Debtors, Plan Administrator, and GUC Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or

documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

70.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**D.     Objections**

71.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at the Combined Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**E.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

72.     The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

a.   **Liens**.  The release of liens provisions set forth in Article VIII.A of the Plan are hereby approved.

b.   **Releases by the Debtors**.  The Debtor Release provisions set forth in Article VIII.B of the Plan are hereby approved.

    c.  **Third-Party Releases**.  The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

    d.  **Exculpation**.  The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

    e.  **Injunction**.  The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

**F.**    **Classifications of Claims and Interests**

    73.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.**    **Plan Supplement**

    74.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, Wind-Down Debtors, Plan Administrator, the GUC Trust, and their successors are authorized as of the Effective Date.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan

Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

## H.    Wind-Down Transactions

75.    On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions pursuant to the terms of the Plan.

76.    This Confirmation Order authorizes, and shall be deemed to authorize, pursuant to sections 363 and 1123 of the Bankruptcy Code, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

## I.    Sources of Consideration for Plan Distribution

77.    On or after the Effective Date, the Debtors, Wind-Down Debtors or the Plan Administrator, as applicable, shall make Plan Distributions on account of Allowed Claims (other than Allowed General Unsecured Claims or Prepetition Term Loan Deficiency Claims) in accordance with Article III.B of the Plan using the Wind-Down Proceeds from liquidating the Wind-Down Debtors' Assets (excluding any amounts to be included in the Professional Fee Escrow Account or any amounts that constitute GUC Trust Assets), as follows:  (a) *first*, on account of Allowed Administrative Claims and Priority Tax Claims; (b) *second*, on account of Allowed Other Secured Claims (solely to the extent such proceeds are on account of collateral for such Allowed Other Secured Claim), if any; (c) *third*, on account of Allowed Other Priority

Claims, if any; and (d) *fourth*, on account of Allowed Prepetition Term Loan Claims (less the Credit Bid Amount) (collectively, the "Waterfall Recovery").  For the avoidance of doubt, nothing contained in the Plan, this Confirmation Order, or any Definitive Document alters or otherwise affects the rights of claimants whose claims are the subject of the Waterfall Recovery to payment in accordance with the Bankruptcy Code and the priorities set forth therein, subject to the express written agreement of such claimants or the binding vote of Class 3 to accept its treatment under the Plan.

78.    On or after the Effective Date, the GUC Trust shall be responsible for making Plan Distributions on account of Prepetition Term Loan Deficiency Claims and Allowed General Unsecured Claims in Class 4 in accordance with Article III.B.4 of the Plan from the GUC Trust Assets.

## J.    Wind-Down Debtors

79.    The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims) in accordance with the Waterfall Recovery, (4) filing appropriate tax returns (and, for the avoidance of doubt, may pursue any refunds, credits, or other tax benefits to which the Debtors and/or the Wind-Down Debtors are entitled and file any tax returns or other filings as are required in connection therewith), (5) winding down and dissolving any direct or indirect subsidiaries of the Wind-Down Debtors, and (6) administering the Plan in an efficacious manner. Except as otherwise set forth in the Plan with respect to the GUC Trust, the Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including

(x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter.

**K.      Cancellation of Securities and Agreements**

80.      Except for the purpose of enabling Holders of Allowed Claims to receive a Plan Distribution as provided in the Plan and except as otherwise set forth in the Plan, the Plan Supplement, or this Confirmation Order, on the Effective Date, and with respect to any Prepetition Loan Facilities that have not been Paid in Full (as defined in the Cash Collateral Order) prior to the Effective Date:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security (including any preferred stock, common stock or other capital stock), share, note, bond, indenture, purchase right, option, warrant, restricted stock, restricted stock units (or any other incentive equity interest) or other instrument or document (including any indenture or credit agreement) directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except, and only to the extent, such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled as to the Debtors, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any Securities (including any preferred stock, common stock or other capital stock), shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreement, purchase rights, options, warrants, restricted stock, restricted stock units (or any other incentive equity interest) or

33

other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except, and only to the extent, such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and of no force or effect and the rights of the Holders thereof and obligations of the Debtors thereunder shall be fully released, settled, and compromised.  Holders of (including any beneficial owners) or parties to any of the foregoing instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, securities and other documentation, or the settlement thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or this Confirmation Order, as applicable.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code, or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**L.      Corporate Action**

81.      Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Plan Administrator, the GUC Trust, or any other Entity or Person in all respects.  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date,

without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.

82.     Before, on, or after the Effective Date, the appropriate directors, managers, officers, Governing Bodies or other similarly authorized Persons of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, file (including File), record and/or deliver any agreements and documents, securities, and instruments contemplated under the Plan (or necessary, appropriate or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.    The authorizations and approvals contemplated by Section IV.I of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law (including any non-U.S. law to the fullest extent available).

## M.     Effectuating Documents; Further Transactions

83.     On and after the Effective Date, the Plan Administrator or GUC Trust, as applicable, may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, this Confirmation Order, and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or this Confirmation Order.

## N.     Exemption from Certain Taxes and Fees

84.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtors or to any other Person or from the Wind-Down Debtors to any other Person) of property under the Plan or pursuant to:    (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) the GA

Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

85.     All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**O.     Director and Officer Liability Insurance Policies; Other Insurance Policies**

86.     Notwithstanding anything to the contrary in the Plan, this Confirmation Order, any other Definitive Document, the Plan Supplement, any Bar Date Order or bar date notice, any Claim Objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or

supervening, grants an injunction, discharge, or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, solely to the extent the Insurance Policies are executory, the Wind-Down Debtors shall be deemed to have assumed all Assumed Insurance Policies, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code and, after such assumption, all Assumed Insurance Policies shall vest, unaltered and in their entireties, in the Wind-Down Debtors; (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Assumed Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date, *provided*, *however*, that in no event shall the GUC Trust be liable for any of the Debtors' obligations under the Assumed Insurance Policies; (c) Insurers shall not need or be required to file or serve any notice of recoupment or setoff or a request, application, claim, Proof of Claim, or motion for payment or Allowance of any Administrative Claim related to such recoupment or setoff; (d) nothing alters, amends, modifies, waives, releases, diminishes, prejudices, or impairs (i) any of the rights and obligations of the Debtors and their Estates (or, after the Effective Date, the Wind-Down Debtors), or of any Insurers, or of any other individuals or entities under any Insurance Policies; (ii) any coverage or benefits provided under any Insurance Policies; (iii) the terms and conditions of any Insurance Policies; or (iv) the enforceability of any Insurance Policies; (e) nothing in the Plan, the Confirmation Order, or any documents related thereto shall permit or effectuate a sale, assignment, or other transfer of any Insurance Policy, and any and all rights of the Insurers to object to or otherwise oppose any sale, assignment, or other transfer of any Insurance Policy are preserved and, after the Effective Date, nothing shall permit or otherwise effectuate a sale, assignment, or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any

Insurance Policy without the prior express written consent of the applicable Insurer; and (f) on the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to permit:  (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; and (ii) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.E of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation), in each case in accordance with the terms of such Insurance Policies and applicable non-bankruptcy law.

87.    If an Insured Litigation Claim may be covered by an Insurance Policy that has a self-insured retention ("SIR"), the Allowed amount of such Insured Litigation Claim that is within the applicable SIR shall constitute an Allowed General Unsecured Claim against the applicable Debtor's Estate.  Such SIR shall be considered satisfied pursuant to the Plan through allowance of such General Unsecured Claim solely in the amount of the applicable SIR; *provided*, *however*, that nothing herein obligates the Plan Administrator or GUC Trust to otherwise satisfy or pay in cash any SIR under any Insurance Policy.  Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Insured Litigation Claim shall be recovered solely from the Debtors' insurance coverage in excess of the SIR, if any, and only to the

extent of available insurance coverage and any proceeds thereof.  Nothing in this Plan shall be (i) construed to limit, extinguish, diminish, or expand the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy, or (ii) a determination that any Insurance Policy is an executory contract or is capable of assumption or rejection.  In no event shall the Plan Administrator or the GUC Trust be required to pay any amounts within a self-insured retention, including defense costs, other than through the allowance of a General Unsecured Claim up to the amount of the applicable SIR.

88.    After the Effective Date, the Wind-Down Debtors shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date.

89.    On the Effective Date, to the extent the D&O Liability Insurance Policies are executory, any and all D&O Liability Insurance Policies shall be deemed assumed by the Wind-Down Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.

**P.      Preservation of Causes of Action**

90.      In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity as of the Effective Date, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Debtors, other than Claims and Causes of Action acquired pursuant to the GA Transaction, Claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, and the GUC Trust Causes of Action.  The Plan Administrator shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, other than GUC Trust Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

91.      **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust will not pursue any and all available Causes of Action against it.  The Debtors, the Wind-Down Debtors, the Plan Administrator, and the GUC Trust expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  For the avoidance of doubt, the Purchaser acquired all Avoidance Actions and Other Causes of Action (as defined in the GA**

Transaction Documents) and released and waived its right to pursue (i) all Avoidance Actions, and (ii) Other Causes of Action against the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, the ABL Agent, FILO Agent, the Prepetition Term Loan Agent, Gordon Brothers Retail Partners, LLC, and any Related Party of the Debtors.

**Q.      Abandonment of Non-Debtor Equity Interests**

92.      On or after Effective Date, the Debtors and the Wind-Down Debtors may abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

**R.      Treatment of Executory Contracts and Unexpired Leases**

93.      The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

94.      On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtors, unless otherwise agreed by the applicable counterparty, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is identified on a Cure Notice, is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or was assumed as part of the GA Transaction; (b) has been previously assumed, assumed and assigned, or rejected by the Debtors any other Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with

respect thereto) that is pending on the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.

95.    Any Unexpired Lease that is not assumed on the Effective Date pursuant to Article V.A of the Plan, the effective date of rejection of such Unexpired Leases shall be the later of:  (a) the Effective Date, except (1) in connection with a Court-Ordered Cure Cost pursuant to Article V.C. of the Plan; or (2) if agreed by the applicable counterparty, and (b) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection (b) above, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Wind-Down Debtors, as applicable, or any third party; *provided*, *further* that (a) the Debtors or the Wind Down Debtors, as applicable, are not authorized to abandon, and are directed to remove any hazardous materials as defined under applicable Law from any leased premises as and to the extent they are required to do so by applicable Law and (b) to the extent the Debtors or the Wind Down Debtors, as applicable, seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Confirmation Debtors' employees and/or customers, or any other individual, the Debtors or the Wind Down Debtors, as applicable, shall remove such information from such personal property prior to its abandonment.  Following any such abandonment, the counterparty to such Unexpired

Lease may (i) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors, or the Wind-Down Debtors, as applicable, or any third party, and (ii) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by filing a Proof of Claim in accordance with Article V.B. of the Plan. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or Wind-Down Debtors, as applicable, unless owned by such Debtors or Wind-Down Debtors as of the effective date of such rejection.

96. Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Approval Order to assume and assign Executory Contracts and Unexpired Leases pursuant to the GA Transaction Documents. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or Wind-Down Debtor, as applicable, and consistent with the 365(d)(4) Extension Order. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in, and be fully enforceable by the applicable Debtor or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by agreement of the parties thereto, subject to Article V.A. of the Plan.

97. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases to designate an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, and as further set forth in the 365(d)(4) Extension Order.

## S. Provisions Governing Distributions

98. The procedures governing Plan Distributions contained in Article VI of the Plan are hereby approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Distributions shall be made by the applicable Disbursing Agent. No Disbursing Agent shall be required to give any bond or surety to other security for the performance of its duties.

## T. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims or Interests

99. The procedures for resolving Contingent, Unliquidated, and Disputed Claims or Interests contained in Article VII of the Plan are hereby approved in their entirety.

## U. Conditions to Effective Date and Authorization to Consummate

100. The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan are hereby approved in their entirety. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms to the extent waivable.

## V. The Committee Settlement

101. As contemplated by the Committee Settlement and the Approval Order, the terms of Article IV.E. of the Plan setting forth further agreements of the parties to the Committee

Settlement are approved and authorized in their entirety, and such settlement terms are effective and binding on all Persons and Entities to the extent provided in the Plan.

## W.    The GUC Trust and Appointment of the GUC Trustee

102.    The GUC Trust Agreement is hereby approved in all respects.  The GUC Trust will be established on the Effective Date and funded pursuant to, and in accordance with, the terms of the Plan and the GUC Trust Agreement.  On the Effective Date, the Debtors and the GUC Trustee shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the GUC Trust Beneficiaries.  Additionally, on the Effective Date, to the extent applicable, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the GUC Trust all of the Debtors' rights, title, and interest in and to all of the GUC Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, and to the extent applicable, the GUC Trust Assets shall automatically vest in the GUC Trust without further action by any person, free and clear of all Claims, Liens, encumbrances, or interests subject only to the GUC Trust Interests and the GUC Trust Expenses, as provided for in the GUC Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  Upon the Effective Date, the GUC Trust shall be the exclusive trustee of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all GUC Trust Assets.

103.    Steven Balasiano, through MHR Advisory Group, LLC, is recognized and approved as the initial GUC Trustee of the GUC Trust and the GUC Trustee is hereby: (a) authorized to execute and perform under the GUC Trust Agreement, to appear and be heard before the Court on all matters relating to these Chapter 11 Cases (as representative of the GUC

Trust and/or section 1123(b), as applicable) and to present to creditors, other courts of competent jurisdiction, and any other party the GUC Trust Agreement, the Plan, and this Confirmation Order as evidence of its authority; and (b) vested with all of the powers and authority set forth in the Plan and the GUC Trust Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the GUC Trust Agreement, as applicable.  The GUC Trustee, on behalf of the GUC Trust, shall have the right to participate in any appeal of the Plan and/or this Confirmation Order to the extent such appeal would affect the GUC Trust Assets.

## X.   The Plan Administrator

104.   Pursuant to the Plan and to the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors or the Wind-Down Debtors, as applicable.

105.   As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors with respect to their affairs; *provided*, *further*, a board made up of two individuals appointed by GA Joann Retail Partnership, LLC will oversee material decisions made by the Plan Administrator.  Subject to the foregoing and in all respects to the terms of the Plan, on the Effective Date, the Plan Administrator shall have the power and authority to implement the Plan and take any actions reasonably necessary to further such implementation, subject to the Committee Settlement.  The Plan Administrator shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states; *provided*, *however*, that upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan

Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction.

**Y.      Retention of Jurisdiction**

106.     The provisions governing the retention of jurisdiction set forth in Article XI of the Plan are hereby approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain jurisdiction over the matters arising in and out of, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

**Z.      Immediate Binding Effect**

107.     Subject to Article IX.A. of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**AA.      Additional Documents**

108.     On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Wind-Down Debtors, Plan Administrator, GUC Trust, GUC Trustee, as applicable, and all Holders receiving Plan

Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## BB.    Payment of Statutory Fees

109.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of any of the Wind-Down Debtors or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor and the GUC Trust, the GUC Trustee or any entity making disbursements on behalf of the GUC Trust, or making disbursements on account of an obligation of the GUC Trust (each of the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, or any entity making disbursements on account of their respective obligations, a  "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of the Wind-Down Debtors, and the GUC Trust, the GUC Trustee, or any entity making disbursements on behalf of the GUC Trust, shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Disbursing Entities shall remain obligated to pay Quarterly Fees to the office of the U.S. Trustee until the earliest of a particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

**CC.    Reservation of Rights**

110.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**DD.    Notices**

111.    After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002, must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002 subject to the immediately succeeding sentence.  After the Effective Date, the Plan Administrator and GUC Trust are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, but shall provide documents to the parties to the Committee Settlement without such parties having to File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  For the avoidance of doubt, the Debtors shall continue to serve motions and applications on any parties required to be served under Local Rule 2002-1(b).

**EE.    Non-Severability of Plan Provisions**

112.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the

consent of the Debtors, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

## FF.    Governmental Approvals Not Required

113.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Wind-Down Transactions, including any actions necessary or appropriate for such purposes.

## GG.    Recording

114.    The Debtors, the Wind-Down Debtors, and the GUC Trust, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Bankruptcy Court, and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.  The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

## HH.    Effect of Conflict between Plan and Confirmation Order

115.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the GUC Trust Agreement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement other than the GUC Trust Agreement, the terms of the relevant provision in the Plan Supplement shall control (unless expressly stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between

this Confirmation Order and the Plan or Plan Supplement, this Confirmation Order shall control (unless expressly stated otherwise in the Plan).

## II.    Implementing Documents

116.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept any and all documents necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

## JJ.    Debtors' Actions Post-Confirmation Through the Effective Date

117.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**KK.    Notices of Confirmation and Effective Date**

118.    As soon as reasonably practicable after the Effective Date, the Wind-Down Debtors shall file notice of the Effective Date and shall serve a copy of the same on the parties to the Committee Settlement and the Bankruptcy Rule 2002 service list.  The Wind-Down Debtors may serve the notice of the Effective Date via email; *provided* that no notice of the Effective Date shall be required to be served upon any Entity for which the Debtors (or Wind-Down Debtors) do not have a street address or e-mail address that is confirmed to be accurate and current.

119.    The above-referenced notice is adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**LL.    Return of Adequate Assurance Deposits**

120.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors under the order entered at Docket No. 431 shall be returned to the Wind-Down Debtors.

**MM.    Dissolution of Statutory Committees**

121.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with applications for compensation, objections thereto, and any appeal of the Confirmation Order.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with:  (i) any fees or expenses for services rendered prior to the Effective Date, or fees and expenses incurred in connection with final fee applications of Professionals, in each case that are Allowed by the Bankruptcy Court; and (ii) fees incurred in connection with any appeal of the Confirmation Order.

**NN.    Provisions Relating to the Texas Comptroller of Public Accounts**

122.    Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "Texas Comptroller") reserves the following rights: (1) any statutory or common law setoff rights in accordance with section 553 of the Bankruptcy Code; (2) any rights to pursue any non-Debtor third parties for tax debts or Claims; (3) the payment of interest on the Texas Comptroller's Allowed Administrative Claims, if any; (4) to the extent that interest is payable with respect to any Allowed Administrative Claim of the Texas Comptroller, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (5) the Texas Comptroller is not required to file a motion or application for payment of Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

123.    Should the Wind-Down Debtors fail to make any payments as required in the Plan or this Confirmation Order, or remain current on postpetition and/or post-confirmation ordinary course tax reporting and payment obligations, the Texas Comptroller shall provide written notice of that default to the Wind-Down Debtors and their counsel advising of that default and providing a period of twenty-one (21) Business Days to cure the default.  In the event the default is not cured within twenty-one (21) Business Days, the Texas Comptroller may seek appropriate relief with the Bankruptcy Court to collect the full amount of all taxes, penalties, and interest owed.

**OO.    Provisions Relating to the Texas Taxing Authorities**

124.    Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, the terms of Paragraph 35 of the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered February 26, 2025 [Docket No. 516] (the "Cash Collateral Order") shall remain in effect, and the 2024 and 2025

undisputed ad valorem taxes due and owing to the Texas Taxing Authorities[5] (the "Tax Claims") shall be disbursed from the Texas Tax Reserve (as defined in the Cash Collateral Order) to the applicable Texas Taxing Authorities (i) on or before the Effective Date for any delinquent 2024 Tax Claims still due and owing; and (ii) in the ordinary course of business as such taxes come due with respect to any 2025 Tax Claims. In the event the Tax Claims exceed the amount in the Texas Tax Reserve, the remainder of the Tax Claims will be paid in full in cash on or before the Effective Date or when such tax ordinarily comes due. The Tax Claims shall accrue postpetition interest as allowed by applicable state and bankruptcy law. Any liens securing the Tax Claims shall be retained against the Texas Tax Reserve until such time as the Tax Claims are paid in full. The 2025 taxes will be paid as set forth herein without need for the Texas Taxing Authorities to amend their claims to reflect the certified amount of the 2025 taxes.

**PP.    Setoff Rights**

125.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing shall modify the rights, if any, of any party to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not

---

[5]    "Texas Taxing Authorities" is defined as all ad valorem taxing jurisdictions represented by the firms of Perdue, Brandon, Fielder, Collins & Mott LLP, Linebarger Goggan Blair and Sampson, LLP, and McCreary Veselka Bragg and Allen, including but not limited to Lubbock CAD, Frisco Independent School District, Plano Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Clear Creek Independent School District, Baybrook MUD #1, Harris County MUD #186, Harris County Water Control and Improvement District #145, Fort Bend Independent School District, Fort Bend County Levee Improvement District #02, Humble Independent School District, Harris County MUD #186, Harris County Water Control and Improvement District #145, Spring Branch Independent School District, City of Houston, Randall County Tax Office, Bexar County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Harris County Emergency District #09, Harris County Emergency District #47, Hidalgo County, City of Houston, Houston Community College System, Houston Independent School District, City of Humble, Jefferson County, Katy Independent School District, Lewisville Independent School District, Lone Star College System, McLennan County, Montgomery County, Nueces County, Rockwall CAD, Smith County, Tarrant County, Brazos County, Comal County, Denton County (including City of Denton, Denton ISD, and City of Lewisville), Taylor County CAD, City of Waco and Waco ISD, and Williamson County.

limited to, the ability of such party to (i) setoff or recoup a security deposit held pursuant to the terms of its unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assert rights of setoff or recoupment in connection with Claims reconciliation; or (iii) assert setoff or recoupment as a defense to any claim or action by the Debtors or any successors of the Debtors.

## QQ.    Surety Bonds

126.    On or about August 20, 2021, Debtor JOANN Inc. on behalf of itself, and jointly and severally with various subsidiaries and affiliates (together, the "Indemnitors"), executed a General Agreement of Indemnity (the "Indemnity Agreement"), in connection the execution of surety bonds by any member of the Liberty Mutual Group, including, but not limited to, Liberty Mutual Insurance Company (collectively, the "Surety") on behalf of the Indemnitors.

127.    Prepetition, the Surety executed numerous bonds (the "Bonds" and each, a "Bond") on behalf of both debtor and non-debtor bond principals and the Indemnitors.  To partially secure its obligations under the Indemnity Agreement, the Surety was provided with an Irrevocable Standby Letter of Credit from Bank of America, N.A., in the most recent amount of $6,038,976.00 (hereinafter, "Surety Collateral" or the "Surety's Collateral").

128.    Notwithstanding anything set forth to the contrary in the Plan, this Confirmation Order, or the Plan Supplement, or any document or agreement in connection therewith, nothing shall be deemed to:  (i) limit the Surety's rights or interests in the Surety's Collateral, including, without limitation, the right to use the Surety Collateral to reimburse any claim of the Surety; (ii) impair, release, discharge, preclude, or enjoin any obligations of the Debtors, the Wind-Down Debtors, their Estates, the GUC Trust, or the GUC Trustee, to the Surety under or related to the Indemnity Agreement, any Bond, the Surety's Collateral,  or under the common law of suretyship, and such obligations are unimpaired and are not being released, discharged, precluded, or enjoined

by the Plan or this Confirmation Order, or any agreements with third parties; or (iii) authorize or allow the transfer of any Bond or substitute the principal on any Bond, including pursuant to Article V of the Plan; *provided*, *however*, that nothing in the foregoing shall be deemed to alter, limit, modify or expand any obligations arising under the Bonds.  For the avoidance of doubt: (i) the Surety shall be deemed to not have opted into the Release, Injunction, and related provisions set forth in Article VIII of the Plan; and (ii) the Surety shall not be deemed to be a Releasing Party.

### RR.   Books and Records

129.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on and after the Effective Date, neither the Debtors nor the Wind-Down Debtors will destroy, abandon, or otherwise transfer any of their books, records, electronically stored information, and other documents that relate to the claims and causes of action asserted in the action initially captioned *Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club LLC, Ormo Ithalat Ihracat A.S., Springs Creative Products Group, LLC v. Michael Prendergast, Jeffrey Dwyer, Robert Will, Christopher Ditullio, Heather Holody, Michael Kennedy, Melissa Bowers*, CV-2025-05-2251 (Ohio C.P.) as removed and/or transferred to another court of competent jurisdiction.

### SS.   Provisions Relating to the Ohio Action

130.    The revisions made to Articles IV.A and VII.F of the modified Plan, as reflected in the redline filed at Docket No. 1354-1, are not intended to, and such revisions may not be asserted by the Debtors or the defendants in Ohio Action (as defined herein) as having any effect upon, (1) 'related to' subject matter jurisdiction under 28 U.S.C. § 1334(b) or for the transfer of venue under 28 U.S.C. § 1412, for the causes of action asserted in the action initially captioned *Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club LLC, Ormo Ithalat Ihracat A.S., Springs Creative Products Group, LLC v. Michael Prendergast, Jeffrey Dwyer,*

*Robert Will, Christopher Ditullio, Heather Holody, Michael Kennedy, Melissa Bowers*, CV-2025-05-2251 (Ohio C.P.) as removed and/or transferred to another court of competent jurisdiction, including, without limitation, the action captioned *Advantus, Corp. v. Prendergast*, No. 5:25-cv-01250-JRA (N.D. Ohio), (the "Ohio Action") and (2) the relief sought by the Debtors in the action captioned *JOANN Inc., et al. v. Advantus, Corp., et al.*, Adv. Proc. No. 25-51022-CTG (Bankr. D. Del.), whether in the complaint filed therein or in the Debtors' *Motion to (I) Enforce Automatic Stay; (II) Enforce the Sale Order; and (III) for a Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code* (Adv. Docket No. 3).

**TT.    Headings**

131.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**UU.    Final Order and Waiver of Stay**

132.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**Exhibit A**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SECOND AMENDED JOINT CHAPTER 11 PLAN**
**OF JOANN INC. AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)**

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone:     (302) 652-3131
Facsimile:     (302) 652-3117
Email:     preilley@coleschotz.com
               snewman@coleschotz.com
               mfitzpatrick@coleschotz.com
               jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     joshua.sussberg@kirkland.com
               aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     anup.sathy@kirkland.com
               jeff.michalik@kirkland.com
               lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*          *Co-Counsel to the Debtors and Debtors in Possession*

Dated: July 8, 2025

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...................................................................................................................1

    A.    Defined Terms ................................................................................................1
    B.    Rules of Interpretation ...................................................................................14
    C.    Computation of Time .....................................................................................15
    D.    Governing Law ..............................................................................................15
    E.    Reference to Monetary Figures ......................................................................15
    F.    Reference to the Debtors or the Wind-Down Debtors ...................................15
    G.    No Substantive Consolidation; Limited Administrative Consolidation .........15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ..........................15

    A.    General Administrative Claims ......................................................................16
    B.    Restructuring Expenses ..................................................................................16
    C.    Professional Fee Claims .................................................................................17
    D.    Priority Tax Claims ........................................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................18

    A.    Classification of Claims and Interests ...........................................................18
    B.    Treatment of Claims and Interests .................................................................19
    C.    Special Provision Governing Unimpaired Claims .........................................21
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ...........21
    E.    Subordinated Claims ......................................................................................22
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ...........22
    G.    Controversy Concerning Impairment .............................................................22

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................22

    A.    Settlement of Claims and Interests .................................................................22
    B.    Wind-Down Transactions ...............................................................................22
    C.    Sources of Consideration for Plan Distributions and Waterfall Recovery .....22
    D.    Wind-Down Debtors ......................................................................................23
    E.    Committee Settlement ....................................................................................24
    F.    GUC Trust ......................................................................................................25
    G.    Statutory Committee and Cessation of Fee and Expense Payment ...............30
    H.    Cancellation of Securities and Agreements ...................................................30
    I.    Corporate Action ............................................................................................31
    J.    Effectuating Documents; Further Transactions .............................................31
    K.    Section 1146 Exemption ................................................................................31
    L.    D&O Liability Insurance Policies ..................................................................32
    M.    Preservation of Causes of Action ...................................................................32
    N.    Section 1145 Exemption ................................................................................33
    O.    Abandonment of Non-Debtor Equity Interests. .............................................33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............33

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...33
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ....35
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..35
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ...........36
    E.    Insurance Policies ..........................................................................................36
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........37
    G.    Reservation of Rights .....................................................................................37

H.     Nonoccurrence of Effective Date ...........................................................................38

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..............................................38

    A.     Timing and Calculation of Amounts to Be Distributed......................................38
    B.     Disbursing Agent .................................................................................................38
    C.     Rights and Powers of Disbursing Agent ............................................................38
    D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions.........39
    E.     Manner of Payment .............................................................................................40
    F.     Compliance with Tax Requirements ...................................................................40
    G.     Allocations ..........................................................................................................41
    H.     No Postpetition or Default Interest on Claims ....................................................41
    I.     Setoffs and Recoupment .....................................................................................41
    J.     No Double Payment of Claims ...........................................................................41
    K.     Claims Paid or Payable by Third Parties ............................................................41

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ................................................................................................................42

    A.     Allowance of Claims...........................................................................................42
    B.     Claims Administration Responsibilities..............................................................42
    C.     Estimation of Claims ..........................................................................................43
    D.     Adjustment to Claims or Interests Without Objection ........................................43
    E.     Time to File Objections to Claims ......................................................................43
    F.     Amendments to Proofs of Claims or Interests ....................................................43
    G.     No Distributions Pending Allowance ..................................................................43
    H.     Distributions After Allowance ...........................................................................44

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............................44

    A.     **Release of Liens** ...............................................................................................44
    B.     **Releases by the Debtors** ..................................................................................44
    C.     **Releases by the Releasing Parties** ..................................................................45
    D.     **Exculpation** .....................................................................................................46
    E.     **Injunction** ........................................................................................................46
    F.     Protections Against Discriminatory Treatment ...................................................47
    G.     Document Retention ...........................................................................................47
    H.     Reimbursement or Contribution .........................................................................48
    I.     Term of Injunctions or Stays...............................................................................48
    J.     Good Faith Solicitation .......................................................................................48

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN.........................................................................................................................................48

    A.     Conditions Precedent to the Effective Date ........................................................48
    B.     Waiver of Conditions ..........................................................................................49
    C.     Substantial Consummation ..................................................................................49
    D.     Effect of Failure of Conditions ..........................................................................49

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .......................49

    A.     Modification and Amendments............................................................................49
    B.     Effect of Confirmation on Modifications............................................................50
    C.     Revocation or Withdrawal of Plan ......................................................................50

ARTICLE XI. RETENTION OF JURISDICTION ...................................................................................50

ARTICLE XII. MISCELLANEOUS PROVISIONS ...............................................................................52
    A.      Immediate Binding Effect.............................................................................................52
    B.      Additional Documents ..................................................................................................52
    C.      Payment of Statutory Fees ...........................................................................................52
    D.      Reservation of Rights...................................................................................................53
    E.      Successors and Assigns.................................................................................................53
    F.      Notices .........................................................................................................................53
    G.      Entire Agreement .........................................................................................................54
    H.      Exhibits ........................................................................................................................55
    I.      Non-Severability of Plan Provisions ...........................................................................55
    J.      Closing of Chapter 11 Cases ........................................................................................55
    K.      Conflicts.......................................................................................................................55

**INTRODUCTION**

JOANN Inc. and the other above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims against and Interests in the Debtors should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.    "***503(b)(9) Claim***" means an Allowed Claim pursuant to section 503(b)(9) of the Bankruptcy Code.

2.    "***503(b)(9) Reconciliation Procedures***" means the document included in the Plan Supplement which shall memorialize the reconciliation and payment process for Allowed 503(b)(9) Claims, as agreed to by the Debtors and the Committee, in consultation with the Purchaser and the Prepetition Term Loan Ad Hoc Group.

3.    "***503(b)(9) Reserve***" has the meaning set forth in Article IV.E of this Plan.

4.    "***503(b)(9) Savings***" means any amounts left in the 503(b)(9) Reserve following the payment of all 503(b)(9) Claims pursuant to the 503(b)(9) Reconciliation Procedures.

5.    "***ABL and Term Loan Intercreditor Agreement***" means that certain Second Amended and Restated Intercreditor Agreement, dated as of April 30, 2024, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among the Prepetition ABL Agent and the Prepetition Term Loan Agent.

6.    "***Administrative Claim***" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order and subject to Allowance and procedures set forth in the Cash Collateral Order); and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; *provided however*, that any Administrative Claim that is an Assumed Liability under the applicable GA Transaction Documents shall be satisfied pursuant to the GA Transaction Documents and the applicable Approval Order(s).

7.    "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

8.    "***Agency Agreement***" means that certain agency agreement, dated as of February 26, 2025, by and between the Debtors, GA Joann Retail Partnership, LLC, and the Prepetition Term Loan Agent, as modified and approved by the Approval Order.

1

9.     "*Allowed*" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Initial Administrative Claims Bar Date or Supplemental Administrative Claims Bar Date (or for which a Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order), as applicable; (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed pursuant to the Plan, a Final Order, or by the Wind-Down Debtors or GUC Trust, as applicable; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing Plan Distributions, include interest on such Claim from and after the Petition Date.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Claims Bar Date, or a request for payment of an Administrative Claim Filed after the Initial Administrative Claims Bar Date or Supplemental Administrative Claims Bar Date, as applicable, shall be grounds, after appropriate notice to the affected claimant, for the disallowance of such late Filed Claim.  "Allow," "Allowing," and "Allowance" shall have correlative meanings.

10.     "*Approval Order*" means the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520].

11.     "*Assumed Liabilities*" means the liabilities assumed by the Purchaser in the GA Transaction pursuant to the terms of the GA Transaction Documents and the Approval Order.

12.     "*Assumption and Rejection Procedures Order*" means the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [Docket No. 429].

13.     "*Avoidance Actions*" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

14.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

15.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

16.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general and chambers rules of the Bankruptcy Court.

17.     "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 561] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

18.     "*Bidding Procedures*" means the procedures governing the sale and marketing process for all or substantially all of the Debtors' assets as approved pursuant to the Bidding Procedures Order.

19.    "**_Bidding Procedures Motion_**" means the _Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief_ [Docket No. 17].

20.    "**_Bidding Procedures Order_**" means the _Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Assumed Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief_ [Docket No. 446], as may be modified, amended, or supplemented.

21.    "**_Business Day_**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

22.    "**_Cash_**" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

23.    "**_Cash Collateral Order_**" means, the interim or final order, as applicable, of the Bankruptcy Court authorizing the Debtors to use cash collateral, granting adequate protection to the Prepetition Secured Creditors (as defined in the Cash Collateral Order), modifying the automatic stay, and granting related relief.

24.    "**_Cause of Action_**" or "**_Causes of Action_**" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

25.    "**_Chapter 11 Cases_**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

26.    "**_Claim_**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

27.    "**_Claim Objection Deadline_**" means, subject to extension, the date that is the first Business Day that is at least 180 calendar days after the Effective Date (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code); _provided_, _however_, that the deadline for Filing objections to requests for payment of 503(b)(9) Claims shall be the deadline set forth in the 503(b)(9) Reconciliation Procedures.  For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court upon the motion of the Debtors, the Wind-Down Debtors, the Plan Administrator and/or the GUC Trust.

28.    "**_Claim Objection_**" means an objection to the Allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding omnibus claim objections.

29.    "***Claims and Noticing Agent***" means Kroll Restructuring Administration LLC in its capacity as claims and noticing agent for the Debtors and any successor.

30.    "***Claims Bar Date***" means, collectively, (i) the dates established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to Claims, other than Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim, which includes the Bar Date Order and the Cash Collateral Order, (ii) the Supplemental Administrative Claims Bar Date, and (iii) such other dates established by order of the Bankruptcy Court by which Claims must be filed in the Chapter 11 Cases.

31.    "***Claims Register***" means the official register of Claims maintained by the Claims and Noticing Agent.

32.    "***Class***" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

33.    "***Class A GUC Trust Beneficiaries***" means the Holders of Allowed General Unsecured Claims that are not Prepetition Term Loan Deficiency Claims.

34.    "***Class A GUC Trust Interests***" means the non-transferable beneficial interests in the GUC Trust to be distributed in accordance with the Plan on a Pro Rata basis to Class A GUC Trust Beneficiaries which shall entitle each such Holder to its Pro Rata share (with the Class B GUC Trust Beneficiaries) of the GUC Trust Recovery Pool.

35.    "***Class B GUC Trust Beneficiaries***" means the Holders of Allowed Prepetition Term Loan Deficiency Claims.

36.    "***Class B GUC Trust Interests***" means the non-transferable beneficial interests in the GUC Trust to be distributed in accordance with the Plan on a Pro Rata basis to Class B GUC Trust Beneficiaries and which shall entitle each such holder to its Pro Rata share (with the Class A GUC Trust Beneficiaries) of the GUC Trust Recovery Pool only after the first $5,000,000 of the GUC Trust Recovery Pool has been distributed to Class A GUC Trust Beneficiaries.

37.    "***Committee***" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on January 28, 2025, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 198].

38.    "***Committee Budget Savings***" has the meaning set forth in Article IV.E of this Plan.

39.    "***Committee Settlement***" means the comprehensive settlement among the Debtors, the Committee, the Prepetition ABL Agent, the Prepetition FILO Agent, the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, and GA Joann Retail Partnership, LLC that was approved in the Approval Order and as set forth in Article IV.E of the Plan.

40.    "***Committee Settlement Amount***" means Cash in an amount equal to (i) 50% of any savings from the 503(b)(9) Reserve, in the minimum amount of the GUC Guarantee, (ii) the FILO Reserve, and (iii) the Committee Budget Savings.

41.    "***Confirmation***" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

42.    "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

43.    "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

44.    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

45.    "***Consummation***" means the occurrence of the Effective Date as to the applicable Debtor.

46.    "***Court-Ordered Cure Cost***" means any amount that the Bankruptcy Court determines is an Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease that is greater than the amount set forth in the Cure Notice or Schedule of Assumed Executory Contracts and Unexpired Leases.

47.    "***Credit Bid Amount***" means $105 million of the Prepetition Term Loan Claims.

48.    "***Cure Claim***" means a Claim (unless waived or modified by the applicable counterparty) with any amounts required to cure any default to the extent required by section 365 of the Bankruptcy Code under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code, the Approval Order, the Confirmation Order, or the Assumption and Rejection Procedures Order.

49.    "***Cure Notice***" means any Assumption Notice (as defined in the Assumption and Rejection Procedures Order) that the Debtors File and cause to be served in accordance with the Assumption and Rejection Procedures Order and Bidding Procedures Order upon counterparties to such Executory Contracts or Unexpired Leases, and which includes: (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, if any; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

50.    "***D&O Liability Insurance Policies***" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

51.    "***Definitive Document***" means (a) the Confirmation Order, (b) the Cash Collateral Order, (c) any GA Transaction Documents, (d) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related order), including the First Day Pleadings and all orders sought pursuant thereto, and (e) any and all other documents reasonably necessary or desirable to consummate and document the transactions contemplated by the Plan (including any exhibits, amendments, modifications, or supplements from time to time).

52.    "***Disbursing Agent***" means the Debtors, the Wind-Down Debtors, or the GUC Trust (solely with respect to GUC Trust Assets), as applicable, or the Entity or Entities selected by the Debtors, the Wind-Down Debtors or the GUC Trust, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

53.    "***Disclosure Statement***" means the *Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates*, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

54.    "***Disclosure Statement Order***" means the final order (and all exhibits and schedules thereto), entered by the Bankruptcy Court approving the Disclosure Statement.

55.    "***Disputed***" means, with respect to any Claim or Interest, any Claim or Interest (or any portion thereof): (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment as to which an objection has been filed or as to which the Wind-Down Debtors or GUC Trust, as applicable, retain the ability to interpose an objection or request for estimation; and (d) a

Claim or Interest that is listed in the Schedules as contingent, unliquidated, or disputed, and as to which no Proof of Claim has been timely Filed.

56.    "***Distribution Record Date***" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Plan Distributions, which date shall be the Effective Date, or such other date as is announced by the Debtors or as is designated in a Final Order of the Bankruptcy Court.

57.    "***Effective Date***" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B of the Plan; and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

58.    "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

59.    "***Estate***" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

60.    "***Excluded Parties***" means, collectively, (a) any person or entity that is or may be liable to any of the Debtors (or any successor thereto) or the GUC Trust in respect of any Retained Causes of Action or GUC Trust Causes of Action, if any, and (b) any Holder of Interests in JOANN Inc. (solely in its capacity as such) that is not a Releasing Party.

61.    "***Exculpated Parties***" means, collectively, (a) each of the Debtors, (b) the Committee and each of its respective members in their capacity as such, and (c) with respect to the Entities in clauses (a) through (b), solely to the extent they are Estate fiduciaries, and without duplication of parties otherwise set forth above, each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

62.    "***Executory Contract***" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

63.    "***Federal Judgment Rate***" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

64.    "***File***" or "***Filed***" or "***Filing***" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

65.    "***FILO Reserve***" has the meaning set forth in Article IV.E of this Plan.

66.    "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

67.    "***First Day Pleadings***" means the first-day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

68.    "***GA Transaction***" means the transaction granting the Purchaser the exclusive right to market and sell, or otherwise designate the purchasers, licensees, and/or assignees of, any or all of the Debtors' assets free and

clear of all liens, claims, and encumbrances pursuant to the Agency Agreement among the Debtors, GA Joann Retail Partnership, LLC, and the Prepetition Term Loan Agent, as modified and approved by the Approval Order.

69.     "*GA Transaction Documents*" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors effectuated the GA Transaction, including, without limitation, the Approval Order, the Bidding Procedures, the Agency Agreement, the Bidding Procedures Motion, and the Bidding Procedures Order.

70.     "*General Unsecured Claim*" means any Claim that is:  (a) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court; and (b) not an Administrative Claim, a 503(b)(9) Claim, a Priority Tax Claim, a Professional Fee Claim, an Other Priority Claim, an Other Secured Claim, a Prepetition ABL Claim, a Prepetition FILO Claim, a Prepetition Term Loan Claim, an Intercompany Claim, or a Section 510(b) Claim.

71.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or any Wind-Down Debtor, as applicable.

72.     "*Governmental Bar Date*" means September 8, 2025.

73.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

74.     "*GUC Guarantee*" has the meaning set forth in Article IV.E of this Plan.

75.     "*GUC Trust*" means the trust established for the benefit of the GUC Trust Beneficiaries on the Effective Date in accordance with the terms of the Plan and the GUC Trust Agreement.

76.     "*GUC Trust Agreement*" means the agreement between the Debtors and the GUC Trustee, substantially in the form included in the Plan Supplement, establishing and delineating the terms and conditions of the GUC Trust.  All references to the GUC Trust shall include the GUC Trustee acting on behalf of the GUC Trust.

77.     "*GUC Trust Assets*" means, collectively, (a) the Committee Settlement Amount, (b) the GUC Trust Causes of Action, and (c) all earnings on, or proceeds of, any of the foregoing.

78.     "*GUC Trust Beneficiaries*" means, collectively, the Class A GUC Trust Beneficiaries and the Class B GUC Trust Beneficiaries.

79.     "*GUC Trust Causes of Action*" means, in each case, (i) only as the Debtors and the Estates may have with respect to General Unsecured Claims and (ii) to the extent not released pursuant to this Plan, acquired and released pursuant to the GA Transaction, or released by any other order of the Bankruptcy Court, (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity, (b) the right to object to or otherwise contest General Unsecured Claims, and (c) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

80.     "*GUC Trust Expenses*" means all reasonable and documented fees, expenses, and costs incurred by the GUC Trust in connection with carrying out the obligations of the GUC Trust, including the maintenance or disposition of the GUC Trust Assets (including any Quarterly Fees, indemnity reserves, attorneys' fees, the fees of other professionals, and other Persons retained by the GUC Trustee, personnel-related expenses, and any taxes imposed on the GUC Trust or in respect of the GUC Trust Assets), and any other expenses incurred in accordance with the GUC Trust Agreement.

81.     "*GUC Trust Indemnified Parties*" means the GUC Trustee and the GUC Trust's consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns.

82.     "***GUC Trust Interests***" means collectively, the Class A GUC Trust Interests and Class B GUC Trust Interests.

83.     "***GUC Trust Recovery Pool***" means the GUC Trust Assets, net of GUC Trust Expenses.

84.     "***GUC Trustee***" means the Person designated by the Committee for such position or such other Person subsequently appointed as trustee for the GUC Trust in accordance with the GUC Trust Agreement.

85.     "***Holder***" means an Entity holding a Claim against or an Interest in any Debtor.

86.     "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

87.     "***Initial Administrative Claims Bar Date***" shall mean April 4, 2025, for all Administrative Claims arising or deemed to have arisen on or prior to February 26, 2025, as set forth in the Bar Date Order.

88.     "***Insurance Policies***" means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including, without limitation, the D&O Liability Insurance Policies.

89.     "***Insured Litigation Claims***" means any Claim that is covered, in whole or in part, by an Insurance Policy that constitutes a General Unsecured Claim in Class 4; *provided, however*, that Insured Litigation Claims shall not include any Claim for workers' compensation.

90.     "***Insurer***" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

91.     "***Intercompany Claim***" means any Claim held by a Debtor or an Affiliate of a Debtor against any Debtor arising before the Petition Date.

92.     "***Intercompany Interest***" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

93.     "***Interest***" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock, profit interest, unit, or share of any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

94.     "***Interim Compensation Order***" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 552] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

95.     "***IRS***" means the United States Internal Revenue Service.

96.     "***JOANN***" means JOANN Inc., a company incorporated under the laws of Delaware.

97.     "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

98.     "***Lien***" means a lien as defined in section 101(37) of the Bankruptcy Code.

99.     "***Local Rules***" means the local rules of bankruptcy practice and procedure of the Bankruptcy Court.

100.    "***Non-Debtor Equity Interests***" means, collectively, any equity interests held by any Debtor or Wind-Down Debtor in any Entity that is not a Debtor or a Wind-Down Debtor.

101.    "***Non-Released Claims***" means all claims, Causes of Action, or Interests belonging to the Debtors or their Estates as of the Effective Date that are not Released Claims pursuant to this Plan.

102.    "***Other Priority Claim***" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code; *provided* that any Other Priority Claim that is an Assumed Liability under any GA Transaction Documents shall not (i) be an obligation of the Debtors, the Wind-Down Debtors, or the GUC Trust, and/or (ii) constitute an Other Priority Claim pursuant to this Plan.

103.    "***Other Secured Claim***" means any Secured Claim, other than claims arising under the Prepetition Loan Documents, that is secured by a Lien senior to the Lien securing Adequate Protection Liens (as defined in the Cash Collateral Order); *provided* that any Other Secured Claim that is an Assumed Liability under any GA Transaction Documents shall not (i) be an obligation of the Debtors, the Wind-Down Debtors, or the GUC Trust, and/or (ii) constitute an Other Secured Claim pursuant to this Plan.

104.    "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

105.    "***Petition Date***" means January 15, 2025, the date on which each of the Debtors commenced the Chapter 11 Cases.

106.    "***Plan***" means this *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time.

107.    "***Plan Administrator***" means Ann Aber, to have all powers and authorities set forth in Article IV.D of this Plan.

108.    "***Plan Administrator Budget***" means a budget to be used by the Plan Administrator to implement the Plan and take any actions reasonably necessary to further such implementation.

109.    "***Plan Distribution***" means a payment or distribution to Holders of Allowed Claims in accordance with the Plan.

110.    "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may include the following, as applicable: (a) Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases, (b) Schedule of Retained Causes of Action; (c) the Wind-Down Transactions Memorandum; (d) the identity of the Plan Administrator and the GUC Trustee; (e) the GUC Trust Agreement; (f) the 503(b)(9) Reconciliation Procedures; and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

111.    "***Plan Supplement Filing Date***" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

112.    "***Post-Closing UCC Budget***" means the agreed to budget pursuant to the Approval Order for the Allowed fees and expenses of the Committee's Professionals incurred after the Closing of the GA Transaction in the amount of $1,250,000.

113. "*Prepetition ABL Agent*" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the Prepetition ABL Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition ABL Credit Agreement.

114. "*Prepetition ABL Claims*" means any Claims arising under, derived from, or based upon the Prepetition ABL Loans.

115. "*Prepetition ABL Credit Agreement*" means that certain Second Amended and Restated Credit Agreement, dated as of April 30, 2024, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among Jo-Ann Stores, LLC, as borrower, each of the other Debtors, as guarantors party thereto, the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Prepetition ABL Agent, and the Prepetition FILO Agent.

116. "*Prepetition ABL Lenders*" means, collectively, the "ABL Lenders," as such term is defined in the Prepetition ABL Credit Agreement.

117. "*Prepetition ABL Loans*" means any Revolving Loans, Swing Loans, and any Loans made in respect of any Revolving Commitment Increase, as such terms are defined in the Prepetition ABL Credit Agreement.

118. "*Prepetition FILO Claims*" means any Claims arising under, derived from, or based upon the Prepetition FILO Loans.

119. "*Prepetition FILO Lenders*" means, collectively, each "FILO Lender," as such term is defined in the Prepetition ABL Credit Agreement.

120. "*Prepetition FILO Agent*" means 1930P Loan Agent, LLC, in its capacity as documentation agent for the FILO Facility, as such term is defined in the Prepetition ABL Credit Agreement, or any successor documentation agent as permitted by the terms set forth in the Prepetition ABL Credit Agreement.

121. "*Prepetition FILO Loans*" means, collectively, each "FILO Loan," as such term is defined in the Prepetition ABL Credit Agreement.

122. "*Prepetition Loan Collateral*" means "Collateral," as such term is defined in the Prepetition Loan Documents, as applicable.

123. "*Prepetition Loan Documents*" means the Prepetition ABL Credit Agreement, the Prepetition Term Loan Credit Agreement, the ABL and Term Loan Intercreditor Agreement, and all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements, each as may be amended, restated, amended and restated, supplemented, waived, and/or otherwise modified from time to time.

124. "*Prepetition Secured Party Advisors*" means, collectively: (a) (i) ArentFox Schiff LLP and (ii) Morris James LLP, as advisors to the Prepetition Term Loan Agent; and (b) (i) Gibson, Dunn & Crutcher LLP, (ii) Glenn Agre Bergman & Fuentes LLP, and (iii) Morris, Nichols, Arsht & Tunnell LLP, as advisors to the Prepetition Term Loan Ad Hoc Group.

125. "*Prepetition Term Loan Ad Hoc Group*" means those lenders under the Prepetition Term Loan Credit Agreement that are set forth in the *Amended Verified Statement of the Ad Hoc Term Loan Group Pursuant to Bankruptcy Rule 2019* [Docket No. 165].

126. "*Prepetition Term Loan Agent*" means Wilmington Savings Fund Society, FSB, in its capacity as administrative agent under the Prepetition Term Loan Credit Agreement, or any successor administrative agent as permitted by the terms set forth in the Prepetition Term Loan Credit Agreement.

127.    "*Prepetition Term Loan Claims*" means any Claims arising under, derived from, or based upon the Prepetition Term Loans, but shall not include any amounts on account of Prepetition Term Loan Deficiency Claims.

128.    "*Prepetition Term Loan Credit Agreement*" means that certain Credit Agreement, dated as of April 30, 2024, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among Needle Holdings LLC, as borrower, certain other Debtors, as guarantors party thereto, the Prepetition Term Loan Lenders, and the Prepetition Term Loan Agent.

129.    "*Prepetition Term Loan Deficiency Claims*" means the Allowed amount of Prepetition Term Loan Claims less (i) the Credit Bid Amount and (ii) any amounts received by Holders of Allowed Class 3 Prepetition Term Loan Claims pursuant to this Plan.

130.    "*Prepetition Term Loan Lenders*" means, collectively, the "Lenders," as such term is defined in the Prepetition Term Loan Credit Agreement.

131.    "*Prepetition Term Loans*" means "Term Loan," as such term is defined under the Prepetition Term Loan Credit Agreement.

132.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

133.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided* that any Priority Tax Claim that is an Assumed Liability under any GA Transaction Documents shall not (i) be an obligation of the Debtors or the Wind-Down Debtors, and/or (ii) constitute a Priority Tax Claim pursuant to this Plan.

134.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

135.    "*Professional*" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

136.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

137.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

138.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors or the Committee as set forth in Article II.C.3 of the Plan.

139.    "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date or the Governmental Bar Date, as applicable.

140.    "*Purchaser*" means, collectively, GA Joann Retail Partnership, LLC and any syndication parties and the Prepetition Term Loan Agent.

141.    "*Quarterly Fees*" means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

142.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

143.    "*Related Party*" means, each of, and in each case in its capacity as such, current directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals.

144.    "*Released Parties*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) each of the Wind-Down Debtors; (c) the Prepetition ABL Lenders; (d) the Prepetition FILO Lenders; (e) the Prepetition Term Loan Lenders; (f) the Prepetition ABL Agent; (g) the Prepetition FILO Agent; (h) the Prepetition Term Loan Agent; (i) the Releasing Parties; (j) the Committee and its members (in their capacity as Committee members); (k) the Purchaser; (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m); *provided however*, that none of the Excluded Parties shall be Released Parties.

145.    "*Releasing Parties*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) each of the Wind-Down Debtors; (c) the Plan Administrator; (d) the Prepetition ABL Lenders; (e) the Prepetition FILO Lenders; (f) the Prepetition Term Loan Lenders; (g) the Prepetition ABL Agent; (h) the Prepetition FILO Agent; (i) the Prepetition Term Loan Agent; (j) all Holders of Claims against the Debtors who vote to accept the Plan and who affirmatively opt in to the releases provided by the Plan; (k) all Holders of Claims against the Debtors who vote to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (l) all Holders of Claims against the Debtors who are deemed to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (m) all Holders of Claims against the Debtors who are deemed to accept the Plan and who affirmatively opt in to the releases provided by the Plan; (n) all Holders of Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (o) the Committee and its members (solely in their capacity as Committee members and not as Holders of Claims); (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (q) each Related Party of each Entity in clause (a) through this clause (q) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law.

146.    "*Restructuring Expenses*" means all reasonable and documented fees, costs and expenses of each of the Prepetition Secured Party Advisors pursuant to and in accordance with the Cash Collateral Order.

147.    "*Retained Causes of Action*" means any Claim or Cause of Action that the Debtors or their Estates may hold as of the Effective Date listed on the Schedule of Retained Causes of Action; *provided* that, for the avoidance of doubt, the Retained Claims or Causes of Action shall not include any (i) Claim or Cause of Action transferred to the Purchaser pursuant to GA Transaction Documents or Approval Order, or (ii) any GUC Trust Causes of Action transferred to the GUC Trust.

148.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, in accordance with Article V of the Plan.

149.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

150.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time [Docket Nos. 359–84].

151.    "***Section 510(b) Claim***" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

152.    "***Secured***" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

153.    "***Securities Act***" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

154.    "***Security***" or "***Securities***" has the meaning set forth in section 2(a)(1) of the Securities Act.

155.    "***Stub Rent***" means unpaid rent for a landlord under such landlord's Unexpired Lease with a Debtor, solely to the extent such Claim is for the portion of unpaid rent accrued and payable pursuant to the Wind-Down Budget, Approval Order, and/or GA Transaction Documents.

156.    "***Stub Rent Reserve***" has the meaning set forth in Article IV.E. of this Plan.

157.    "***Supplemental Administrative Claims Bar Date***" means twenty-one (21) days from the date of the filing of notice of the Effective Date as the deadline to file Administrative Claims arising or deemed to have arisen on or after February 27, 2025 through the Effective Date, but excluding Professional Fee Claims.

158.    "***Tax Code***" means the United States Internal Revenue Code of 1986, as amended.

159.    "***Third-Party Release***" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.C of the Plan.

160.    "***U.S. Trustee***" means the Office of the United States Trustee for the District of Delaware.

161.    "***Unclaimed Distribution***" means any Plan Distribution on account of an Allowed Claim to a Holder that has not: (a) accepted a particular Plan Distribution or, in the case of Plan Distributions made by check, negotiated such check within ninety (90) calendar days of receipt; (b) given notice to the Wind-Down Debtors or the GUC Trust of an intent to accept a particular Plan Distribution within ninety (90) calendar days of receipt; (c) responded to, as applicable, the Debtors', Wind-Down Debtors', or GUC Trust's requests for information necessary to facilitate a particular Plan Distribution prior to the deadline included in such request for information; or (d) taken any other action necessary to facilitate such Plan Distribution.

162.    "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

163.    "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

164.    "***Voting Deadline***" means 4:00 p.m. (prevailing Eastern Time) on June 30, 2025.

165.    "***Waterfall Recovery***" has the meaning set forth in Article IV.C.

166.    "***Wind-Down***" means the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

167.    "***Wind-Down Budget***" shall have the meaning set forth in the Approval Order.

168.    "***Wind-Down Debtors***" means the Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

169.    "***Wind-Down Debtors' Assets***" means all of the remaining assets of the Debtors' Estates on the Effective Date, excluding, for the avoidance of doubt, the Professional Fee Escrow Amounts held in the Professional Fee Escrow Account and the GUC Trust Assets transferred to the GUC Trust.

170.    "***Wind-Down Proceeds***" means the Cash in the Wind-Down Budget remaining after payment of Allowed Professional Fee Claims and funding amounts contemplated by the Committee Settlement to the extent such amounts are not yet funded.  For the avoidance of doubt (i) any proceeds distributed on or prior to the Effective Date and (ii) the Committee Settlement Amount shall not be considered Wind-Down Proceeds.

171.    "***Wind-Down Transactions***" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to implement the Wind-Down, as described in more detail in Article IV.B herein, which transactions shall be in accordance with the Wind-Down Budget.

172.    "***Wind-Down Transactions Memorandum***" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Wind-Down Transactions, the form of which shall be included in the Plan Supplement.

B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles or Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Wind-Down Debtors or the GUC Trust in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; *provided*, that any such effectuating provisions and/or interpretations thereof by the Wind-Down Debtors or the GUC Trust shall be consistent with the Plan in all respects and shall not affect or modify any terms of the Plan, including without limitation, the Waterfall Recovery or any payment priorities set forth herein; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and

shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Wind-Down Debtors, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.    *No Substantive Consolidation; Limited Administrative Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors except for the limited purposes set forth herein. The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, solely for (1) implementing the Plan, (2) voting, and (3) calculating and making distributions on the Plan.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

For the avoidance of doubt, before the date of entry of the Disclosure Statement Order, the Prepetition ABL Claims and Prepetition FILO Claims have been Paid in Full (as defined in the Cash Collateral Order), and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim (or as soon as reasonably practicable thereafter), without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim (other than a Professional Fee Claim) that is not an Assumed Liability under any GA Transaction Documents shall instead be satisfied solely by the Debtors or the Wind-Down Debtors in accordance with the Approval Order approving the GA Transaction.

Except with respect to Administrative Claims that are Professional Fee Claims, 503(b)(9) Claims, or Administrative Claims subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed no later than the Initial Administrative Claims Bar Date pursuant to the procedures specified in the Bar Date Order or the Supplemental Administrative Claims Bar Date pursuant to the Effective Date notice.  Objections to such Administrative Claims must be Filed and served on the Debtors, Wind-Down Debtors, Committee, or GUC Trust, as applicable, and the requesting party by the Claim Objection Deadline; *provided* that the Debtors shall object to 503(b)(9) Claims by no later than the deadline set forth in the 503(b)(9) Reconciliation Procedures.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with the Plan or any order that becomes a Final Order of the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the General Bar Date, Initial Administrative Claims Bar Date or the Supplemental Administrative Bar Date, as applicable, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, the GUC Trust, or their property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors, or the GUC Trust or any notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.    *Restructuring Expenses*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases in accordance with and pursuant to the Cash Collateral Order) without the requirement to file a fee application with the Bankruptcy Court but subject to the right of the Review Parties to issue a written objection as set forth in paragraph 15 of the Cash Collateral Order.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two Business

Days before the anticipated Effective Date; provided that such estimates shall not be considered to be admissions or limitations with respect to such Restructuring Expenses. In addition, the Debtors and the Wind-Down Debtors (as applicable) shall continue to pay, when due, pre-Effective Date Restructuring Expenses.

C.    *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.    Professional Fee Escrow Account

On or prior to the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors and constitute part of the Wind-Down Debtors' Assets without any further notice to or action, order, or approval of the Bankruptcy Court, which amounts shall be Wind-Down Proceeds and promptly distributed in accordance with the Plan (including the Waterfall Recovery); *provided*, *however*, that any amounts remaining from the Post-Closing UCC Budget, if any, after payment of all Allowed Professional Fee Claims of the Committee's Professionals shall be contributed and transferred to the GUC Trust.

3.    Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide a timely estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, which amount shall include any unpaid amounts from the Post-Closing UCC Budget.

4.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind-Down Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors, Wind-Down Debtors, as applicable, or, solely as it pertains to the final fee applications, the Committee, and in each case solely in accordance with the Wind-Down Budget. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Wind-Down Debtors, or the GUC Trust may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court solely in accordance with the Wind-Down Budget or GUC Trust Agreement, as applicable.

D.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, discharge, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that any Allowed Priority Tax Claim that is not an Assumed Liability under any GA Transaction Documents shall be satisfied by the Debtors or the Wind-Down Debtors.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Plan Distributions and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|---------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |

| 7 | Interests in JOANN | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by (i) the Debtors, the Wind-Down Debtors, or the GUC Trust, as applicable, and (ii) the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.    <u>Class 1 – Other Secured Claims</u>

(a)    *Classification*:  Class 1 consists of all Other Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive from the Debtors or the Wind-Down Debtors, at the option of the Debtors or Wind-Down Debtors, as applicable:

(i)    payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)    the collateral securing such Holder's Allowed Other Secured Claim;

(iii)    Reinstatement of such Holder's Allowed Other Secured Claim; or

(iv)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Priority Claims</u>

(a)    *Classification*:  Class 2 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date, and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim will either be satisfied in full, in Cash, by the Debtors or Wind-Down Debtors, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Prepetition Term Loan Claims

(a)      *Classification*:  Class 3 consists of all Prepetition Term Loan Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Term Loan Claim agrees to less favorable treatment, pursuant to the Plan, and subject to the terms of the Committee Settlement set forth herein, each Holder of Prepetition Term Loan Claims shall be entitled to their Pro Rata share of the Wind-Down Proceeds, if any, up to the Allowed amount of such Prepetition Term Loan Claims less the Credit Bid Amount.

(c)      *Voting*:  Class 3 is Impaired under the Plan.  Holders of Prepetition Term Loan Claims, if any, are entitled to vote to accept or reject the Plan.

4.      Class 4 – General Unsecured Claims

(a)      *Classification:*  Class 4 consists of all General Unsecured Claims, including any Prepetition Term Loan Deficiency Claims.

(b)      *Treatment*:  Except to the extent that a Holder of a General Unsecured Claim or Prepetition Term Loan Deficiency Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim and Prepetition Term Loan Deficiency Claim shall receive:

(i)      Holders of Allowed General Unsecured Claims, excluding Holders of Allowed Prepetition Term Loan Deficiency Claims, shall receive their Pro Rata share of the Class A GUC Trust Interests; and

(ii)      Holders of Allowed Prepetition Term Loan Deficiency Claims shall receive their Pro Rata share of the Class B GUC Trust Interests.

(c)      *Voting:*  Class 4 is Impaired under the Plan.  Holders of General Unsecured Claims and Prepetition Term Loan Deficiency Claims, if any, are entitled to vote to accept or reject the Plan.

5.      Class 5 – Intercompany Claims

(a)      *Classification*:  Class 5 consists of all Intercompany Claims.

(b)      *Treatment*:  Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Approval Order, shall, at the election of the applicable Debtors or Wind-Down Debtors, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claims, or (d) otherwise addressed at the option of the Debtors or Wind-Down Debtors, in each case, in accordance with the Wind-Down Transactions Memorandum.

(c)      *Voting*:  Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.      Class 6 – Intercompany Interests

(a)      *Classification:*  Class 6 consists of all Intercompany Interests.

(b)     *Treatment*:  Allowed Intercompany Interests shall, at the election of the Debtors or Wind-Down Debtors, be (a) Reinstated, (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released without any distribution on account of such Intercompany Interests, or (c) otherwise addressed at the option of the Debtors or Wind-Down Debtors, in each case, in accordance with the Wind-Down Transactions Memorandum.

(c)     *Voting*:  Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.     Class 7 – Interests in JOANN

(a)     *Classification:*  Class 7 consists of all Interests in JOANN.

(b)     *Treatment*:  Interests in JOANN shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in JOANN will not receive any distribution on account of such Interests.

(c)     *Voting:*  Class 7 is Impaired under the Plan.  Holders of Interests in JOANN are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.     Class 8 – Section 510(b) Claims

(a)     *Classification:*  Class 8 consists of all Section 510(b) Claims.

(b)     *Treatment*:  Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(c)     *Voting:*  Class 8 is Impaired under the Plan.  Holders, if any, of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders, if any, are not entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by the Class entitled to vote pursuant to Article III.B herein.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

G.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Settlement of Claims and Interests*

The Plan incorporates certain settlement of issues, authorized by or under the Approval Order, among the Debtors and various parties in interest, namely the Committee, the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, and GA Joann Retail Partnership, LLC. As among the settlement parties, the applicable provisions of the Plan shall constitute a good-faith settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved among such parties pursuant to the Plan. Subject to Article VI hereof, all Plan Distributions made to Holders of Allowed Claims that are settlement parties are intended to be and shall be final.

B.    *Wind-Down Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.    *Sources of Consideration for Plan Distributions and Waterfall Recovery*

On or after the Effective Date, the Debtors, Wind-Down Debtors or the Plan Administrator, as applicable, shall make Plan Distributions on account of Allowed Claims (other than Allowed General Unsecured Claims or Prepetition Term Loan Deficiency Claims) in accordance with Article III.B herein using the Wind-Down Proceeds from liquidating the Wind-Down Debtors' Assets (excluding any amounts to be included in the Professional Fee Escrow Account or any amounts that constitute GUC Trust Assets), as follows: (a) *first*, on account of Allowed Administrative

Claims and Priority Tax Claims; (b) _second_, on account of Allowed Other Secured Claims (solely to the extent such proceeds are on account of collateral for such Allowed Other Secured Claim), if any; (c) _third_, on account of Allowed Other Priority Claims, if any; and (d) _fourth_, on account of Allowed Prepetition Term Loan Claims (less the Credit Bid Amount) (collectively, the "Waterfall Recovery"). For the avoidance of doubt, nothing contained in the Plan, the Confirmation Order, or any Definitive Document alters or otherwise affects the rights of claimants whose claims are the subject of the Waterfall Recovery to payment in accordance with the Bankruptcy Code and the priorities set forth therein, subject to the express written agreement of such claimants or the binding vote of Class 3 to accept its treatment under the Plan.

On or after the Effective Date, the GUC Trust shall be responsible for making Plan Distributions on account of Prepetition Term Loan Deficiency Claims and Allowed General Unsecured Claims in Class 4 in accordance with Article III.B.4 herein from the GUC Trust Assets.

D.     _Wind-Down Debtors_

1.    Purpose

The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims) in accordance with the Waterfall Recovery, (4) filing appropriate tax returns (and, for the avoidance of doubt, may pursue any refunds, credits, or other tax benefits to which the Debtors and/or the Wind-Down Debtors are entitled and file any tax returns or other filings as are required in connection therewith), (5) winding down and dissolving any direct or indirect subsidiaries of the Wind-Down Debtors, and (6) administering the Plan in an efficacious manner. Except as otherwise set forth herein with respect to the GUC Trust, the Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter.

2.    Vesting of Assets in the Wind-Down Debtors

On the Effective Date, the Debtors' assets shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Debtors' Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business. The Wind-Down Debtors will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtors' Assets, make timely Plan Distributions, and not unduly prolong its duration. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan or in any other order of the Bankruptcy Court. The Wind-Down Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

3.    Plan Administrator

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall, in accordance with the Plan Administrator Budget, have the power and authority to implement the Plan and take any actions reasonably necessary to further such implementation, subject to the Committee Settlement.

4.    Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification

obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

5. <u>Tax Returns</u>

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, local and non-U.S. tax returns for each of the Debtors and the Wind-Down Debtors (and, for the avoidance of doubt, the Plan Administrator may pursue any refunds, credits, or other tax benefits to which the Debtors and the Wind-Down Debtor are entitled and file any tax returns or other filings as are required in connection therewith), and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

6. <u>Dissolution of the Wind-Down Debtors</u>

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

E. *Committee Settlement*

On February 26, 2025, the Debtors, the Committee, the Prepetition ABL Agent, the Prepetition FILO Agent, the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, and GA Joann Retail Partnership, LLC agreed to the terms of the Committee Settlement in connection with the GA Transaction, which were approved by the Bankruptcy Court in the Approval Order.  To the extent of a conflict between this Article IV.E and the Approval Order, the Approval Order shall govern.  The Committee Settlement provides for the following:

<dl>
<dd>(a)     a reserve of $9,000,000 in the Wind-Down Budget for Allowed Stub Rent payments (the "<u>Stub Rent Reserve</u>") which was used to pay Allowed Stub Rent Claims of landlords, *provided* that any portion of the Stub Rent Reserve remaining after all Allowed Stub Rent Claims have been paid shall be available for satisfaction of other items in the Wind-Down Budget;</dd>

<dd>(b)     a reserve of $30,000,000 for the payment of Allowed 503(b)(9) Claims (the "<u>503(b)(9) Reserve</u>") pursuant to the 503(b)(9) Reconciliation Procedures;</dd>

<dd>(c)     a reserve of $1,500,000 (the "<u>GUC Guarantee</u>"), which shall be paid by the Debtors or the Wind-Down Debtors from the 503(b)(9) Reserve on the Effective Date to the GUC Trust. Within ten (10) Business Days of the conclusion of the reconciliation of Allowed 503(b)(9) Claims (in accordance with the 503(b)(9) Reconciliation Procedures), to the extent the sum of Allowed 503(b)(9) Claims exceeds $28,500,000 (the 503(b)(9) Reserve less the GUC Guarantee), Purchaser shall pay to the 503(b)(9) Reserve the equivalent value of Allowed 503(b)(9) Claims that exceeds $28,500,000, up to a maximum of $1,500,000; *provided* that, for the avoidance of doubt, the Purchaser shall not be obligated to pay any amounts to the GUC Trust pursuant to this section prior to the conclusion of the reconciliation process for Allowed 503(b)(9) Claims in accordance with the 503(b)(9) Reconciliation Procedures.  For the avoidance of doubt, if the sum of Allowed 503(b)(9) Claims is less than $30,000,000, then such resulting 503(b)(9) Savings shall be split 50% to the GUC Trust and 50% to the Purchaser;</dd>
</dl>

(d)    a $1,000,000 payment to the GUC Trust from (i) the accrued weekly cash collateral consent fees of $37,500 owing to each of the Prepetition ABL Agent and the Prepetition FILO Agent through entry of the Cash Collateral Order; and (ii) the remainder from the FILO paydown at the closing of the GA Transaction (the "FILO Reserve");

(e)    the Purchaser's acquisition and covenant not to pursue any and all Avoidance Actions;

(f)    the agreement of the Prepetition Term Loan Ad Hoc Group not to oppose the waiver of the Prepetition Term Loan Lenders' right to receive a recovery from the first $5,000,000 of value available for distribution to Holders of Allowed General Unsecured Claims;

(g)    the payment (from the Carve Out Reserves (as defined in the Cash Collateral Order) or, to the extent the Carve Out Reserves are insufficient, the GUC Guarantee and/or the FILO Reserve) of all Allowed fees and expenses incurred by the Committee's Professionals through the closing of the GA Transaction that are approved by the Bankruptcy Court;

(h)    the Post-Closing UCC Budget for the Committee's professionals in the amount of $1,250,000 payable from the Carve Out Reserves with any unused amounts from the Post-Closing UCC Budget, after payment of the Allowed Professional Fee Claims of the Committee's Professionals, contributed to the GUC Trust (the "Committee Budget Savings"); and

(i)    the creation of the GUC Trust, with the Committee to select the GUC Trustee.

F.    *GUC Trust*

1.    Creation, Vesting of Assets, and Governance of the GUC Trust

On the Effective Date, the Debtors and the GUC Trustee shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the GUC Trust Beneficiaries. Additionally, on the Effective Date, to the extent applicable, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the GUC Trust all of the Debtors' rights, title, and interest in and to all of the GUC Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, and to the extent applicable, the GUC Trust Assets shall automatically vest in the GUC Trust without further action by any person, free and clear of all Claims, Liens, encumbrances, or interests subject only to the GUC Trust Interests and the GUC Trust Expenses, as provided for in the GUC Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. To the extent that the Debtors or the Wind-Down Debtors come into possession of GUC Trust Assets after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall immediately and irrevocably transfer such assets to the GUC Trust and such GUC Trust Assets shall automatically vest in the GUC Trust consistent with this Section IV.F.1 of the Plan.

The GUC Trust shall be the exclusive trustee of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all GUC Trust Assets. The GUC Trust shall be governed by the GUC Trust Agreement and administered by the GUC Trustee. The powers, rights, and responsibilities of the GUC Trust and GUC Trustee shall be specified in the GUC Trust Agreement. The GUC Trust shall hold and distribute the GUC Trust Assets in accordance with the provisions of the Plan and the GUC Trust Agreement. Other rights and duties of the GUC Trust and the GUC Trust Beneficiaries shall be as set forth in the GUC Trust Agreement. After the Effective Date, the Debtors, Wind-Down Debtors, and Plan Administrator shall have no interest in the GUC Trust Assets.

2.    Purpose of the GUC Trust

The GUC Trust shall be a liquidating trust established for the purpose of pursuing or liquidating the GUC Trust Assets, reconciling and objecting to General Unsecured Claims, and making Plan Distributions to GUC Trust

Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the GUC Trust, and is otherwise intended to comply with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

3.    Powers of the GUC Trust

The GUC Trust shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Bankruptcy Cases solely with respect to the purposes of the GUC Trust set forth in this Section IV.F. of the Plan, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, and is appointed as the representative of the Estates solely for the purposes set forth in this Section IV.F. of the Plan.  Solely with respect to the purposes of the GUC Trust set forth in this Section IV.F. of the Plan, the GUC Trust may exercise all power and authority that may be exercised by any officer, director or holder of an Interest in the Debtors with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors or holders of Interests. For the avoidance of doubt, any consultation or consent rights of the Committee with respect to the 503(b)(9) Reconciliation Procedures pursuant to the Approval Order shall be transferred to the GUC Trustee on the Effective Date; *provided* that, any other consultation or consent rights of any other party set forth in this Plan with respect to the 503(b)(9) Reconciliation Procedures shall not be altered on or after the Effective Date.

4.    Employment, Indemnification and Other Agreements

The GUC Trust may enter into employment, indemnification and other agreements with individuals who may be required to assist the GUC Trust after the Effective Date.  Such agreements shall remain in place after the Effective Date until such time as the GUC Trust shall determine to either terminate or amend such agreements.  All costs and expenses associated with entering into such agreements shall be GUC Trust Expenses.

5.    GUC Trust Agreement

The GUC Trust Agreement generally will provide for, among other things:

(a)    the payment of GUC Trust Expenses;

(b)    the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable and documented compensation, all without Bankruptcy Court approval or further order;

(c)    the investment of Cash within certain limitations, including those specified in this Article IV.F. of the Plan;

(d)    the orderly collection, pursuit, and liquidation of the GUC Trust Assets;

(e)    the making of Plan Distributions under this Plan and under the GUC Trust Agreement to GUC Trust Beneficiaries;

(f)    the pursuit, settlement, or resolution of GUC Trust Causes of Action;

(g)    the pursuit of objections to, and estimations and settlements of, General Unsecured Claims;

(h)    the abandonment, in any commercially reasonable manner, of any GUC Trust Asset that, in the GUC Trust's reasonable business judgment, cannot be sold in a commercially reasonable manner or that the GUC Trust believes in good faith and with reasonable business judgment has inconsequential value to the GUC Trust; and

(i)    reasonable and customary indemnification provisions subject to customary carveouts.

26

6.  GUC Trust Assets

From and after the Effective Date, the GUC Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all GUC Trust Assets.

7.  GUC Trust Expenses

From and after the Effective Date, the GUC Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the GUC Trust Expenses.  The GUC Trust Expenses shall be payable solely from the GUC Trust Assets in accordance with the Plan and GUC Trust Agreement, and the GUC Trustee shall have no responsibility whatsoever to pay GUC Trust Expenses in his, her or its corporate or individual capacity.  The GUC Trust may, but shall not be obligated to, physically segregate and maintain separate accounts or sub-accounts for GUC Trust Expenses.  Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the GUC Trust to determine reserves and amounts to be paid to Holders of Allowed General Unsecured Claims.

8.  GUC Trust Professionals

The GUC Trust may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Committee) to assist in carrying out its duties hereunder and under the GUC Trust Agreement, and may compensate and reimburse the reasonable and documented expenses of these professionals as GUC Trust Expenses without further order of the Bankruptcy Court from the GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement.

9.  Claims Reconciliation and Administration

The GUC Trust may review, allow, object to, prosecute, negotiate, estimate, settle or otherwise compromise any General Unsecured Claims in its sole discretion.

10.  Distributions to GUC Trust Beneficiaries

The GUC Trust, in its sole discretion, may make Plan Distributions to GUC Trust Beneficiaries at any time following the Effective Date or use the GUC Trust Assets or proceeds thereof, provided that such Plan Distributions or use are otherwise permitted under, and not inconsistent with, the terms of the Plan (including, for the avoidance of doubt, the treatment of Claims in Class 4), the GUC Trust Agreement, and applicable law.

11.  Disbursing Agent

The GUC Trust shall serve as or may select an alternative Disbursing Agent for GUC Trust Beneficiaries under the Plan.

12.  Limitation of Liability

Neither the GUC Trust, GUC Trustee, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, independent contractors, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or GUC Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the cause of loss, liability, damage, or expense suffered by the GUC Trust.  The GUC Trust may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in reasonable reliance on the advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, neither the GUC Trust nor the GUC Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents,

27

and any determination not to do so shall not result in the imposition of liability on the GUC Trust or the GUC Trustee unless such determination is based on willful misconduct, gross negligence, or fraud.  Persons dealing with the GUC Trust or GUC Trustee shall look only to the GUC Trust Assets to satisfy any liability incurred by the GUC Trust or GUC Trustee to such person in carrying out the terms of the Plan or the GUC Trust Agreement, and neither the GUC Trust nor the GUC Trustee shall have any personal obligation to satisfy such liability.

13.  Indemnification

The GUC Trust shall indemnify the GUC Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the GUC Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the GUC Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the GUC Trust Agreement, as applicable.  An act or omission taken in connection with any order of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  In addition, the GUC Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the GUC Trust Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the GUC Trust or the implementation or administration of the Plan if the GUC Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the GUC Trust.  To the extent the GUC Trust indemnifies and holds harmless any GUC Trust Indemnified Parties as provided above, the reasonable and documented legal fees and related costs incurred by counsel to the GUC Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as GUC Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Section IV.F.13 shall be paid by the GUC Trust.  This provision shall survive the termination of the GUC Trust Agreement and the death, dissolution, liquidation, resignation, replacement, or removal of the GUC Trustee.

14.  Insurance

The GUC Trust shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the GUC Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the GUC Trust, which insurance coverage may, at the sole option of the GUC Trust, be extended for a reasonable period after the termination of the GUC Trust Agreement.

15.  United States Federal Income Tax Treatment of the GUC Trust

The GUC Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and a grantor trust within the meaning of Sections 671 through 679 of the Tax Code.  For all United States federal income tax purposes, all parties shall treat the transfer of the GUC Trust Assets to the GUC Trust as: (a) a first-step transfer of the GUC Trust Assets directly to the applicable GUC Trust Beneficiaries, followed by (b) a second-step transfer by such GUC Trust Beneficiaries to the GUC Trust of such GUC Trust Assets in exchange for the GUC Trust Interests; *provided* that the GUC Trust Assets will be subject to any GUC Trust Expenses.  Accordingly, the applicable GUC Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the GUC Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

No request for a ruling from the IRS will be sought on the classification of the GUC Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the GUC Trust.  If the IRS were to successfully challenge the classification of the GUC Trust as a grantor trust, the federal income tax consequences to the GUC Trust and the GUC Trust Beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the GUC Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as reasonably practicable after the transfer of the GUC Trust Assets to the GUC Trust, the GUC Trust shall make a good faith valuation of the GUC Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the GUC Trust, and the holders of Claims receiving interests in the GUC Trust shall take consistent positions with respect to the valuation of the GUC Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the GUC Trust among the GUC Trust Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the GUC Trust had distributed all its assets (valued at their tax book value) to the GUC Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the GUC Trust. Similarly, taxable loss of the GUC Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining GUC Trust Assets. The tax book value of the GUC Trust Assets shall equal their fair market value on the date of the transfer of the GUC Trust Assets to the GUC Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

16. Tax Reporting

    (a)    The GUC Trust shall file any and all tax returns for the GUC Trust, as applicable; provided that neither the GUC Trust nor the GUC Trustee shall have any personal liability for the signing or accuracy of the GUC Trust's tax returns that are due to be filed after the Effective Date or for any tax liability related thereto. Neither the GUC Trust nor the GUC Trustee shall have any responsibility for the filing of tax returns for any of the Debtors or the Wind-Down Debtors.

    (b)    The GUC Trust shall be responsible for payment, out of the GUC Trust Assets, of any taxes imposed on the GUC Trust or GUC Trust Assets to the extent such payment is consistent with the Bankruptcy Code, this Plan and any applicable order of the Bankruptcy Court including, but not limited to, any order establishing a Bar Date.

    (c)    The GUC Trust shall file annual information tax returns for the GUC Trust treating the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) that will include information concerning certain items relating to the holding or disposition (or deemed disposition of the GUC Trust Assets (e.g., income, gain, loss, deduction, and credit)).

    (d)    The GUC Trust shall distribute such tax-related notices to the applicable GUC Trust Beneficiaries as the GUC Trustee determines are necessary or desirable.

17. Cash Investments

The GUC Trust may, but shall not be required to, invest Cash (including any earnings thereon or proceeds therefrom); provided that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

18. Dissolution of the GUC Trust

The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as: (a) all objections to Disputed General Unsecured Claims are fully resolved, (b) the GUC Trust determines that pursuit of any GUC Trust Causes of Action is not likely to yield sufficient additional benefits or proceeds to justify further pursuit, and (c) all Plan Distributions required to be made by the GUC Trust to the GUC Trust Beneficiaries under the Plan and the GUC Trust Agreement have been made; provided, however, that in no event shall the GUC Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the

six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the GUC Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the GUC Trust Assets.  Upon dissolution of the GUC Trust or at such earlier time as determined by the GUC Trust in its sole discretion, any remaining GUC Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the GUC Trust to a charitable organization selected by the GUC Trustee in his, her, or its sole discretion.

19.  Control Provisions

To the extent there is any inconsistency between the Plan as it relates to the GUC Trust and the GUC Trust Agreement, the Plan shall control.

20.  Cooperation and Access to Books and Records

The GUC Trust shall be provided with copies of or access to all documents and business records of the Debtors reasonably available to the Debtors, the Wind-Down Debtors, or Plan Administrator and reasonably necessary for the disposition of the GUC Trust Assets, addressing any GUC Trust Causes of Actions, and pursuing objection to General Unsecured Claims.  The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall use reasonable efforts to cooperate with the GUC Trust in connection with the GUC Trust's reconciliation of and objections to General Unsecured Claims, including with respect to providing evidence and information as reasonably requested by the GUC Trust.

21.  Disputed Ownership Fund Treatment

With respect to any of the assets of the GUC Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the GUC Trust, such GUC Trust may be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, and if this is the case, the Debtors intend that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account.  Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

G.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation, objections thereto, and any appeal of the Confirmation Order.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (i) any fees or expenses for services rendered prior to the Effective Date, or fees and expenses incurred in connection with final fee applications of Professionals, in each case that are Allowed by the Bankruptcy Court; and (ii) fees incurred in connection with any appeal of the Confirmation Order.

H.    *Cancellation of Securities and Agreements*

Except for the purpose of enabling Holders of Allowed Claims to receive a Plan Distribution as provided herein and except as otherwise set forth in this Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, and with respect to any Prepetition Loan Facilities that have not been Paid in Full (as defined in the Cash Collateral Order) prior to the Effective Date: (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security (including any preferred stock, common stock or other capital stock), share, note,

bond, indenture, purchase right, option, warrant, restricted stock, restricted stock units (or any other incentive equity interest) or other instrument or document (including any indenture or credit agreement) directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except, and only to the extent, such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled as to the Debtors, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any Securities (including any preferred stock, common stock or other capital stock), shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreement, purchase rights, options, warrants, restricted stock, restricted stock units (or any other incentive equity interest) or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except, and only to the extent, such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and of no force or effect and the rights of the Holders thereof and obligations of the Debtors thereunder shall be fully released, settled, and compromised.  Holders of (including any beneficial owners) or parties to any of the foregoing instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, securities and other documentation, or the settlement thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order, as applicable.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code, or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

I.      *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Plan Administrator, the GUC Trust, or any other Entity or Person in all respects.  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.  Before, on, or after the Effective Date, the appropriate directors, managers, officers, Governing Bodies or other similarly authorized Persons of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, file (including File), record and/ deliver any agreements and documents, securities, and instruments contemplated under the Plan (or necessary, appropriate or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by this Section IV.L shall be effective notwithstanding any requirements under non-bankruptcy law (including any non-U.S. law to the fullest extent available).

J.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator or GUC Trust, as applicable, may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order, and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

K.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtors or to any other Person or from the Wind-Down Debtors to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) the GA

Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L.      *D&O Liability Insurance Policies*

After the Effective Date, the Wind-Down Debtors shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date.

On the Effective Date, to the extent the D&O Liability Insurance Policies are executory, any and all D&O Liability Insurance Policies shall be deemed assumed by the Wind-Down Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.

M.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity as of the Effective Date, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Debtors, other than Claims and Causes of Action acquired pursuant to the GA Transaction, Claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, and the GUC Trust Causes of Action. The Plan Administrator shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, other than GUC Trust Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

**No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, the Plan Administrator, and the GUC Trust expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. For the avoidance of doubt, the Purchaser acquired all Avoidance Actions and Other Causes of Action (as defined in the GA Transaction Documents) and released and waived its right to pursue (i) all Avoidance Actions, and (ii) Other Causes of Action against the Prepetition ABL Lenders, the**

**Prepetition FILO Lenders, the Prepetition Term Loan Lenders, the ABL Agent, FILO Agent, the Prepetition Term Loan Agent, Gordon Brothers Retail Partners, LLC, and any Related Party of the Debtors.**

N.      *Section 1145 Exemption*

To the extent any Securities are issued in connection with the Plan, pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Securities pursuant to the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security. As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Securities issued pursuant to the Plan should not be considered "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and would be freely tradable and transferable under the federal securities laws by any initial recipient thereof that (x) is not an "affiliate" of the Wind-Down Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within ninety (90) days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

No Securities are expected to be issued pursuant to the Plan with respect to any Claims or Interests.

O.      *Abandonment of Non-Debtor Equity Interests.*

On or after the Effective Date, the Debtors and the Wind-Down Debtors may abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, are identified on a Cure Notice, are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or were assumed as part of the GA Transaction; (2) have been previously assumed, assumed and assigned, or rejected by the Debtors pursuant to any other Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are a contract, release, or other agreement or document entered into in connection with the Plan; or (5) are an Insurance Policy.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, and as further set forth in the 365(d)(4) extension order entered at Docket No. 432 (the "365(d)(4) Extension Order"). To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with the Approval Order, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein or in the Confirmation Order or any GA Transaction Documents approved pursuant to the Approval Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the Effective Date pursuant to this Article V.A., the effective date of rejection of such Unexpired Leases shall be the later of:  (A) the Effective Date, except (1) in connection with a Court-Ordered Cure Cost pursuant to Article V.C.; or (2) if agreed by the applicable counterparty, and (B) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection (B) above, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Wind-Down Debtors, as applicable, or any third party.  If the effective date of any rejection of an Unexpired Lease is after the Confirmation Date pursuant to the terms herein, the Debtors or the Wind-Down Debtors, as applicable, shall provide notice of such rejection to the applicable landlord no later than the applicable deadlines set forth in the 365(d)(4) Extension Order, setting forth the deadline for Filing any Claims arising from such rejection which notice shall also be served upon the GUC Trust.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the rights of counterparties to Unexpired Leases of nonresidential real property to object to the continued possession of such leased property, including the ability to conduct sales on the properties, or failure to comply with any other lease terms or obligations, including payment of rents and charges and insurance obligations, in each case related to such Unexpired Lease following entry of the Confirmation Order are expressly preserved, and the rights of such counterparties to request such objection be heard on shortened notice are preserved.

Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in, and be fully enforceable by the applicable Debtor or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by agreement of the parties thereto, subject to this Article V.A.  Notwithstanding anything to the contrary in this Plan, the Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date to designate an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or Wind-Down Debtor, as applicable, and consistent with the 365(d)(4) Extension Order.

Subject to the Approval Order, to the maximum extent permitted by law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (A) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (B) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Wind-Down Debtors under such Executory Contract or Unexpired Lease, or (C) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Wind-Down Debtors pursuant to the applicable Executory Contract or Unexpired Lease, and to the extent any provision in any such Executory Contract or Unexpired Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated by the Plan, the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, and any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.

Notwithstanding anything to the contrary in the Plan, after the Confirmation Date, an Unexpired Lease on a Cure Notice or the Schedule of Assumed Executory Contracts and Unexpired Leases as of the Confirmation Date may

not be rejected by the applicable Debtor(s), other than as provided for in the Plan, unless the applicable lessor has (x) consented to such rejection, (y) objected to the assumption of such Unexpired Lease and such objection remains outstanding, or (z) consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's consent, the "Deferred Deadline"), in which case for purposes of clause (z) the applicable Debtor(s) shall have until the Deferred Deadline to assume or reject such Unexpired Lease, subject to the applicable lessor's right to object to such assumption or rejection.  For any Unexpired Lease assumed pursuant to this Section V.A., all costs required to cure such Unexpired Lease shall be paid on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to Cure Claims with such dispute addressed in accordance with Article V.C.  Any guaranty of an Unexpired Lease that is assumed pursuant to this Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be reaffirmed by the applicable Debtor or Wind-Down Debtor and remain in full force and effect as of the Effective Date, unless otherwise agreed in writing by the Debtor or Wind-Down Debtor, as applicable, and the applicable counterparty.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims Agent within thirty days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the GUC Trust and the Holder of such Claim.  For the avoidance of doubt, unless otherwise agreed, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to (i) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Wind-Down Debtors, as applicable, or any third party, and (ii) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by filing a Proof of Claim in accordance with this Article V.B.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Unless otherwise agreed to in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by counsel to the Debtors no later than fourteen (14) days after service of Cure Notice on affected counterparties.  Any counterparty to an Executory Contract or Unexpired Leases that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and any untimely request for an additional or different cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any of the Debtors, the Wind-Down Debtors, or the GUC Trust.

In the event of a dispute regarding any Cure Claims, the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) or any other matter pertaining to assumption, then payment of any Cure Claims shall be made: (a) five (5) days after entry of a Bankruptcy Court order resolving such dispute, approving such assumption (and if applicable, assignment) or (b) as may be agreed upon the Debtors or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  Any such disputes shall be scheduled for hearing upon request of the affected counterparty or the Debtors or the Wind-Down Debtors, as applicable, at the earliest convenience of the Bankruptcy Court; provided that no hearing will be scheduled on less than ten (10) days' notice to

the affected counterparty, and the Debtors or the Wind-Down Debtors, as applicable. The Debtors and the Wind-Down Debtors, as applicable, may reconcile and settle in the ordinary course of the Debtors' business any dispute (following a timely Filed objection) regarding any Cure Claim or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice (such greater amount, the "Court-Ordered Cure Cost"), the Debtors or Wind-Down Debtors, as applicable, shall have the right to (a) satisfy the Court-Ordered Cure Cost within five (5) days of the Bankruptcy Court Order determining the Court-Ordered Cure Costs and assume such Executory Contract or Unexpired Lease in accordance with the terms herein, or (b) remove such Executory Contract or Unexpired Lease from the applicable Cure Notice, in which case such Executory Contract or Unexpired Lease will be deemed rejected on the later of five (5) Business Days after the Court-Ordered Cure Cost and the Effective Date.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the GA Transaction, or pursuant to the Assumption and Rejection Procedures Order and the cure of defaults associated therewith in accordance with section 365(b) of the Bankruptcy Code, including the payment of any Cure Claims, shall result in the full release and satisfaction of any Cure Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease, in each case at any time prior to the effective date of assumption of such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed in the Chapter 11 Cases shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies*

Notwithstanding anything to the contrary in the Plan, the Confirmation Order, any other Definitive Document, the Plan Supplement, any Bar Date Order or bar date notice, any Claim Objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge, or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, solely to the extent the Insurance Policies are executory, the Wind-Down Debtors shall be deemed to have assumed all Assumed Insurance Policies, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code and, after such assumption, all Assumed Insurance Policies shall vest, unaltered and in their entireties, in the Wind-Down Debtors; (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Assumed Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date, *provided, however*, that in no event shall the GUC Trust be liable for any of the Debtors' obligations under the Assumed Insurance Policies; (c) Insurers shall not need or be required to file or serve any notice of recoupment or setoff or a request, application, claim, Proof of Claim, or motion for payment or Allowance of any Administrative Claim related to such recoupment or setoff; (d) nothing alters, amends, modifies, waives, releases, diminishes, prejudices, or impairs (i) any of the rights and obligations of the Debtors and their Estates (or, after the Effective Date, the Wind-Down Debtors), or of any Insurers, or of any other individuals or entities under any Insurance Policies; (ii) any coverage or benefits provided under any Insurance Policies; (iii) the terms and conditions of any Insurance Policies; or (iv) the enforceability of any Insurance Policies; (e) nothing in the Plan, the Confirmation Order, or any documents related thereto shall permit or effectuate a sale, assignment, or other transfer of any Insurance Policy, and any and all rights of the Insurers to object to or otherwise oppose any sale, assignment,

or other transfer of any Insurance Policy are preserved and, after the Effective Date, nothing shall permit or otherwise effectuate a sale, assignment, or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer; and (f) on the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to permit:  (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; and (ii) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.E of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation), in each case in accordance with the terms of such Insurance Policies and applicable non-bankruptcy law.

If an Insured Litigation Claim may be covered by an Insurance Policy that has a self-insured retention ("SIR"), the Allowed amount of such Insured Litigation Claim that is within the applicable SIR shall constitute an Allowed General Unsecured Claim against the applicable Debtor's Estate.  Such SIR shall be considered satisfied pursuant to the Plan through allowance of such General Unsecured Claim solely in the amount of the applicable SIR; *provided, however*, that nothing herein obligates the Plan Administrator or GUC Trust to otherwise satisfy or pay in cash any SIR under any Insurance Policy.  Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Insured Litigation Claim shall be recovered solely from the Debtors' insurance coverage in excess of the SIR, if any, and only to the extent of available insurance coverage and any proceeds thereof.  Nothing in this Plan shall be (i) construed to limit, extinguish, diminish, or expand the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy, or (ii) a determination that any Insurance Policy is an executory contract or is capable of assumption or rejection.  In no event shall the Plan Administrator or the GUC Trust be required to pay any amounts within a self insured retention, including defense costs, other than through the allowance of a General Unsecured Claim up to the amount of the applicable SIR.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, reciprocal easement agreements, construction operating and reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Contracts and Unexpired Leases, nor anything contained in the Plan or the Plan Supplement, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtors or GUC Trust has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan or Approval Order.

*H.     Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.     Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  After such initial distribution, the Disbursing Agent shall distribute additional Wind-Down Proceeds or GUC Trust Assets (as the case may be), if any, as soon as practicable upon such Wind-Down Proceeds or GUC Trust Assets becoming available to the Debtors, the Wind-Down Debtors or the GUC Trust, as applicable.  Such additional Wind-Down Proceeds or GUC Trust Assets shall be distributed in accordance with the Waterfall Recovery, the GUC Trust Agreement, and this Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on Plan Distributions, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B.     Disbursing Agent*

All Plan Distributions shall be made by the applicable Disbursing Agent.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.

*C.     Rights and Powers of Disbursing Agent*

1.    <u>Powers of the Disbursing Agent</u>

The Disbursing Agent(s) shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in such Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided however*, that the Debtors or the Wind-Down Debtors, as applicable, shall maintain the Claims Register.

2.    <u>Expenses Incurred on or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and reasonable and documented out-of-pocket expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and reasonable and documented out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by a Disbursing Agent shall be paid in Cash by the Wind-

Down Debtors, solely in accordance with the Wind-Down Budget, or by the GUC Trust, in accordance with the GUC Trust Agreement, as applicable.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, Plan Distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions

Except as otherwise provided herein, the applicable Disbursing Agent shall make Plan Distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date, at the discretion of the applicable Disbursing Agent: (a) at the addresses set forth on the respective Proofs of Claim Filed by Holders of such Claims; (b) at the address for a Claim transferee set forth in a valid and timely notice of transfer of Claim Filed with the Bankruptcy Court; (c) at the addresses set forth in any written notice of address change Filed with the Bankruptcy Court or delivered to the applicable Disbursing Agent after the date of Filing of any related Proof of Claim; (d) at the addresses reflected in the Debtors' Schedules if no Proof of Claim has been Filed and the applicable Disbursing Agent has not received a written notice of a change of address; or (e) if clauses (a) through (d) are not applicable, at the last address directed by such Holder after such Claim becomes an Allowed Claim.

All Distributions to holders of Prepetition Term Loan Claims, including any distributions of Cash on account of Prepetition Term Loan Claims, if any, shall be made by the Disbursing Agent to the Prepetition Term Loan Agent for distribution to holders of Allowed Prepetition Term Loan Claims and such Distribution shall be deemed completed when received by the Prepetition Term Loan Agent. All Distributions of Cash on account of Prepetition Term Loan Deficiency Claims, if any, shall be made by the GUC Trust to the Prepetition Term Loan Agent for distribution to holders of Allowed Prepetition Term Loan Deficiency Claims and such Distribution shall be deemed completed when deposited with the Prepetition Term Loan Agent.

3.    Minimum Distributions

Notwithstanding any other provision of the Plan, a Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Debtors, the Wind-Down Debtors, the GUC Trust, or their respective property.

4.    Undeliverable Distributions and Unclaimed Property

Distributions that are returned as undeliverable shall not be made unless and until the Plan Administrator or GUC Trust, as applicable, is notified of such Holder's then-current address, *provided*, *however*, that unless a Holder asserts a claim for an undeliverable Distribution within ninety (90) days after such Distribution is made, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in either the Wind-Down Debtors or the GUC Trust, as applicable, automatically and without any need for further order by the Bankruptcy Court for all purposes, including for redistribution to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary. If a Holder of a Claim timely provides the Plan Administrator or GUC Trust, as applicable, the necessary information within the period specified herein, all missed Distributions shall be made to the Holders of such Allowed Claims as soon as is practicable, without interest.

Cash payments in the form of checks shall be null and void if not cashed within ninety (90) days after the date of issuance, notwithstanding any notation or legend on a distribution check that may specify a different period. Distributions in respect of such voided checks shall be treated as unclaimed or undeliverable Distributions as provided in this Plan as to which the requisite time period for asserting a claim for an undeliverable Distribution as set forth herein has passed.  Requests for reissuance of any check must be made in writing to the Plan Administrator or GUC Trust, as applicable, by Holders of such Allowed Claims that originally was issued such check, which request shall be made within ninety (90) days after the date of issuance thereof.

E.      *Manner of Payment*

Except as specifically provided herein, at the option of the Plan Administrator or GUC Trust, as applicable, any Cash payment to be made under the Plan may be made by check or wire transfer.

F.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the GUC Trust, the applicable Disbursing Agent, and any applicable withholding or reporting agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions shall be subject to such withholding and reporting requirements.  The Plan Administrator or GUC Trust, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements including requiring each Holder of such Allowed Claim to provide a completed Form W-9 (or, if applicable, Form W-8) as set forth in this Plan.  Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by a governmental unit, including income, withholding and other tax obligations on account of such Distribution, and including, in the case of a holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Plan Administrator or GUC Trust (as applicable), in connection with such Distribution, and (ii) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Plan Administrator or GUC Trust, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and GUC Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distributions to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Wind-Down Debtors, the GUC Trust, the applicable Disbursing Agent, and any applicable withholding or reporting agent, as applicable, reserve the right to allocate all Plan Distributions in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Each Disbursing Agent shall be authorized to require each Holder of a Claim to provide it with a complete, accurate, and executed Form W-9, Form W-8 or other appropriate tax form or documentation as a condition precedent to being sent a Plan Distribution.  The applicable Disbursing Agent shall provide advance written notice of such requirement to each Holder of a Claim affected thereby.  If a Holder of an Allowed Claim does not provide the applicable Disbursing Agent with a complete, accurate, and executed Form W-9, Form W-8 or other tax form or documentation within ninety (90) days of first request, or such later time period agreed to by the applicable Disbursing Agent in writing in its discretion, then the applicable Disbursing Agent, in its sole discretion, may (a) make a Plan Distribution net of any applicable maximum withholding, or (b) determine that such Holder shall be deemed to have forfeited the right to receive any Plan Distribution, in which case, any such Plan Distribution shall revert to the Wind-Down Debtors or the GUC Trust, as applicable, for all purposes, including, but not limited to, Plan Distribution on account of other Allowed Claims.  In such event, the Claim of the Holder originally entitled to such Plan Distribution shall be waived and forever barred without further order of the Bankruptcy Court.  If a Holder of an Allowed Claim refuses to provide the applicable Disbursing Agent with a complete, accurate, and executed Form W-9, Form W-8, or other tax form or documentation, certain IRS penalties may apply to such Holder.

G.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

H.    *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

I.    *Setoffs and Recoupment*

Except as expressly provided in this Plan (including the Plan Supplement), the Wind-Down Debtors and GUC Trust (solely with respect to General Unsecured Claims) may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action (other than Avoidance Actions) that the Wind-Down Debtors or GUC Trust (solely with respect to General Unsecured Claims) may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Wind-Down Debtors or GUC Trust, as applicable, and the Holder of the Allowed Claim, or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Wind-Down Debtors or the GUC Trust, as applicable, of any and all claims, rights, and Causes of Action or GUC Trust Causes of Action that the Wind-Down Debtors or the GUC Trust, as applicable, may possess against the applicable Holder.  Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff or recoup any such Claim against the Purchaser following consummation of the GA Transaction.

J.    *No Double Payment of Claims*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim; *provided*, *however*, that notwithstanding anything to the contrary in this Plan or the Confirmation Order, a Claim against one Debtor's Estate and a related guaranty Claim against another Debtor's Estate shall not be considered to be a single Claim for purposes of this section so that if such Claim and the related guaranty Claim are both otherwise allowable, the Claim and related guaranty Claim shall each recover as Allowed Claims under the Plan; *provided further*, that the cumulative recovery for any such Claim and any related guaranty Claim shall not exceed the full amount of the underlying obligation for which the guaranty was issued.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

K.    *Claims Paid or Payable by Third Parties*

1.    <u>Claims Paid by Third Parties</u>

The Debtors, the Wind-Down Debtors or the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed, *provided* that the Debtors or the Wind-Down Debtors, as applicable, shall file a notice of satisfaction or other pleading evidencing such satisfaction, and shall serve the same on the affected claimants, or seek an order of the Bankruptcy Court with respect to same, upon notice to the affected claimants, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor or the GUC Trust.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Wind-Down Debtor or the GUC Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or Wind-Down Debtor

or GUC Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or Wind-Down Debtor or GUC Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

    2.    <u>Claims Payable by Third Parties</u>

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers pays in full or in part a Claim, then immediately upon such Insurers' payment of such Claim, the applicable portion of such Claim may be expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, provided that the Debtors or the Wind-Down Debtors, as applicable, shall file a notice of satisfaction or other pleading evidencing such satisfaction, and shall serve the same on the affected claimants, or seek an order of the Bankruptcy Court.

    3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

### ARTICLE VII.
### PROCEDURES FOR RESOLVING CONTINGENT,
### UNLIQUIDATED AND DISPUTED CLAIMS

*A.*    *Allowance of Claims*

After the Effective Date, each of the Wind-Down Debtors, the Plan Administrator, and the GUC Trust, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date; *provided however*, that the Plan Administrator and the GUC Trust, as applicable, shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is: (i) deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest; (ii) Allowed pursuant to any stipulation with the Wind-Down Debtors, the Plan Administrator, or the GUC Trust, as applicable; or (iii) Allowed by the Wind-Down Debtors, the Plan Administrator, or the GUC Trust, as applicable, after review of and determination not to object to such Claims or Interest, in each parties sole discretion.

*B.*    *Claims Administration Responsibilities*

With respect to all Classes of Claims and amounts distributable under the Plan, and except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator and the GUC Trust (solely as to General Unsecured Claims) in addition to other parties in interest, to the extent they have standing pursuant to applicable law, shall have the authority to: (a) File and prosecute Claim Objections; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise (c) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) direct the Claims Agent to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After

the Effective Date, the Plan Administrator and the GUC Trust, as applicable, shall resolve Disputed Claims in accordance with its fiduciary duties and pursuant to the terms of the Plan or GUC Trust Agreement.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Wind-Down Debtors or GUC Trust (with respect to General Unsecured Claims) shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action and GUC Trust Causes of Action pursuant to Section IV.M of the Plan.

The Debtors up to the Effective Date, and the Wind-Down Debtors on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register and to administer and adjust the Claims Register in regard to Allowance of Claims.  The Debtors or the Wind-Down Debtors, as applicable, may, as applicable, maintain the retention of the Claims and Noticing Agent and develop a budget for compensation of the Claims and Noticing Agent following the Effective Date to be incorporated with the Wind-Down Budget.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection on grounds unrelated to estimation, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of Plan Distributions) and may be used as evidence in any supplemental proceedings, and the Wind-Down Debtors or the GUC Trust (as the case may be) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied (including through such Claim or Interest being assigned to any third party), or any Claim that has been amended and superseded, may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors or GUC Trust at least fourteen (14) days after giving notice to the Holder of such Claim (or such Holder's known counsel), but without any objection having to be filed and without further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) the Claims Objection Deadline and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims.

F.      *Amendments to Proofs of Claims or Interests*

On or after the applicable Claims Bar Date, the Filing or amending of a Proof of Claim or Interest without the prior written authorization of, as applicable, the Bankruptcy Court or the applicable Debtor, Wind-Down Debtor, or GUC Trust shall be grounds, after appropriate notice to the affected claimant, for disallowance of such late Filed Claim.

G.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be

made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

H.    *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order. As soon as reasonably practicable after: (i) the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, (ii) the date set forth in any stipulation with the Wind-Down Debtors, the Plan Administrator, or the GUC Trust, as applicable; or (iii) the date on which the Wind-Down Debtors, the Plan Administrator, or the GUC Trust determine not to object to such Disputed Claim or Disputed Interest, the applicable Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.    **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be automatically, unconditionally, and fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically and unconditionally to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to promptly take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**If any Holder of a Secured Claim that has been satisfied or released in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf. For the avoidance of doubt, nothing herein shall be deemed to release, settle, or otherwise compromise any Insurer's liens, security interests, or other collateral that they validly hold pursuant to applicable Insurance Policies.**

B.    **Releases by the Debtors**

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively,**

absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity could have asserted on behalf of the Debtors or the Wind-Down Debtors (but excluding any and all direct claims any such Holder of a Claim or Interest may have), to the extent such Claim or Cause of Action (x) has not been sold pursuant to the GA Transaction Documents and Approval Order(s) and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts (including the marketing, bidding, auction, and sale-related processes leading to the GA Transaction), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors or the Wind-Down Debtors or any GUC Trust Causes of Action that constitute Avoidance Actions), intercompany transactions between or among a Debtor, the Wind-Down Debtors, or an Affiliate of a Debtor and another Debtor, the Wind-Down Debtors, or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions; or (2) any matters retained by the Wind-Down Debtors pursuant to the Schedule of Retained Causes of Action.

C.     *Releases by the Releasing Parties*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts (including the marketing, bidding, auction, and sale-related processes leading to the GA

Transaction), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors or the Wind-Down Debtors or any GUC Trust Causes of Action that constitute Avoidance Actions), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions or (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the GA Transaction, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the GA Transaction, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the GA Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Wind-Down Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Wind-Down Debtors (but solely to the extent such action is brought against the Debtors or the Wind-Down Debtors to directly or indirectly recover upon any property of the Estates dealt with by the Plan, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect

**to any Claims, Interests, or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has exercised such setoff prior to the Petition Date or such setoff is otherwise permissible under applicable law, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan (the "Injunction"); provided however, that the Debtors and Wind-Down Debtors, in their capacities as Released Parties, shall receive the benefit of the Injunction through and until the date upon which all remaining property of the Debtors' estates vested in the Wind-Down Debtors has been fully liquidated, administered and distributed. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed Proof of Claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; provided however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud, or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the Effective Date, at which point the Injunction shall take effect as provided herein. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin (1) a Holder of a Claim or Interest from taking any actions described in this Article VIII.E solely with respect to any direct claim of such Holder that is not a Released Claim or Exculpated Claim or (2) the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined as provided in this section.**

F.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Effective Date), or has not paid a debt that is addressed under the Plan or otherwise in the Chapter 11 Cases.

G.    *Document Retention*

On and after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall preserve all books, records, electronically stored information, and other documents in accordance with their standard document

retention policy, as may be altered, amended, modified, or supplemented by the Debtors, Wind-Down Debtors, and applicable law.

H.      Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

I.      Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      Good Faith Solicitation

All persons within the definition of Exculpated Parties who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in this Article VIII of the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order);

2.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount;

4.      the Wind-Down Budget shall have been established and funded in accordance with the GA Transaction;

5.      the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed;

6.      the Debtors shall have implemented the Wind-Down Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors, unless otherwise provided for in the Wind-Down Transactions Memorandum; *provided* that the Wind-Down Transactions Memorandum shall not provide for any provisions that is inconsistent with any recoveries or priorities set forth in this Plan;

7.      the Prepetition ABL/FILO Obligations shall have been Paid in Full (as defined in the Cash Collateral Order);

8.   the GUC Guarantee and FILO Reserve shall have been funded and transferred to the GUC Trust;

9.   the GUC Trust Assets shall have been transferred to the GUC Trust;

10.  the GUC Trust shall have been created by execution of the GUC Trust Agreement;

11.  the GUC Trustee shall have been appointed and have accepted his or her appointment; and

12.  all accrued and unpaid Restructuring Expenses shall have been paid in full in Cash in accordance with the Cash Collateral Order.

B.    *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX.A may be waived by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan, *provided* that the conditions to Confirmation and to Consummation set forth in Article IX.A8, 9, 10, and 11 may be waived in whole or in part only by agreement between the Debtors, the Prepetition Term Loan Ad Hoc Group, the Prepetition Term Loan Agent, and the Committee.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in sections 1101 and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the GA Transaction or the revocation of the Debtors' authority under the Approval Order to consummate such GA Transaction.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors reserve the right, in consultation with the Committee, the Prepetition Term Loan Ad Hoc Group, and the Prepetition Term Loan Agent, to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided however*, that the Debtors or the Wind-Down Debtors, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement, other than the Committee Settlement, or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.  Notwithstanding the foregoing, the Debtors' revocation or withdrawal of the Plan pursuant to this Section shall not, in any way, affect the GA Transaction or the Approval Order and shall not require or result in the voiding, rescission, reversal, or unwinding of the GA Transaction or the revocation of the Debtors' authority under the Approval Order to consummate such GA Transaction.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured, or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Approval Order): (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Wind-Down Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease, including an Insurance Policy, is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation of the Approval Order;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to Plan Distributions;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Approval Order, including disputes arising under agreements, documents, or instruments executed in connection therewith;

21.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Wind-Down Transactions, whether they occur before, on, or after the Effective Date;

22.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.  hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

24.  enforce all orders previously entered by the Bankruptcy Court;

25.  hear and determine any matters related to the Committee Settlement or the GUC Trust Agreement, and

26.  hear any other matter over which the Bankruptcy Court has jurisdiction under the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.  *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, GUC Trust and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.  *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, Wind-Down Debtors, or GUC Trust, as applicable, and all Holders receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.  *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of any of the Wind-Down Debtors, or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor, and the GUC Trust, the GUC Trustee or any entity making disbursements on behalf of the GUC Trust, or making disbursements on account of an obligation of the GUC Trust (each of the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, or any entity making disbursements on account of their respective obligations, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of the Wind-Down Debtors, and the GUC Trust, the GUC Trustee, or any entity making disbursements on behalf of the GUC Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Disbursing Entities shall remain obligated to pay Quarterly Fees to the office of the U.S. Trustee until the earliest of a particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

D.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

1.    <u>If to the Debtors, to:</u>

JOANN Inc.
5555 Darrow Road
Hudson, Ohio 44236
Attention:        Ann Aber
Email address:    Ann.Aber@joann.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:        Joshua A. Sussberg, P.C.
                  Aparna Yenamandra, P.C.
Email address:    joshua.sussberg@kirkland.com
                  aparna.yenamandra@kirkland.com

-and-

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:        Anup Sathy, P.C.
                  Jeffrey Michalik
                  Lindsey Blumenthal
Email address:    anup.sathy@kirkland.com
                  jeff.michalik@kirkland.com
                  lindsey.blumenthal@kirkland.com

-and-

Cole Schotz P.C.
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Attention:          Patrick J. Reilley
                    Stacy L. Newman
                    Michael E. Fitzpatrick
                    Jack M. Dougherty
Email address:      preilley@coleschotz.com
                    snewman@coleschotz.com
                    mfitzpatrick@coleschotz.com
                    jdougherty@coleschotz.com

2.    <u>If to the Committee, to:</u>

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Attention:          Jason R. Adams
                    Eric R. Wilson
                    Maeghan McLoughlin
                    Andres Barajas
Email address:      jadams@kelleydrye.com
                    ewilson@kelleydrye.com
                    mmcloughlin@kelleydrye.com
                    abarajas@kelleydrye.com

-and-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
Attention:          Bradford J. Sandler
                    James E. O'Neill
Email address:      bsandler@pszjlaw.com
                    joneill@pszjlaw.com

3.    <u>If to the GUC Trust</u>: To be included in the Plan Supplement

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002 subject to the immediately succeeding sentence.  After the Effective Date, the Plan Administrator and GUC Trust are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, but shall provide documents to the parties to the Committee Settlement without such parties having to File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  For the avoidance of doubt, any movant or applicant shall serve motions and applications on any parties required to be served under Local Rule 2002-1(b).

G.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://cases.ra.kroll.com/Joann2025 or the Bankruptcy Court's website at http://www.deb.uscourts.gov/.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.    Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

J.    Closing of Chapter 11 Cases

The Wind-Down Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close the Chapter 11 Cases.

K.    Conflicts

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

Respectfully submitted,

Date: July 8, 2025

JOANN Inc.
on behalf of itself and all other Debtors

By:      _/s/ Jeffrey Dwyer_____
Name:   Jeffrey Dwyer
Title:    Interim Chief Executive Officer
          JOANN Inc.