## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | | **Related to Docket Nos. 987, 1353 & 1376** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF JOANN INC. AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a. commenced, on January 15, 2025 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b. continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. obtained, on February 26, 2025, entry of (a) the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Creditors, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 516] (the "Cash Collateral Order") and (b) the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)*, attached hereto as **Exhibit A** (the "Plan") or the Conditional Disclosure Statement Order (as defined below), as applicable. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Approval Order");

d. filed, on February 26, 2025, the *Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 513];

e. obtained, on March 5, 2025, entry of the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 561];

f. filed, on May 5, 2025, 2025, (a) the *Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 809] and (b) the *Disclosure Statement for the Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 810];

g. filed, on May 5, 2025, the *Motion of Debtors for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation and Final Disclosure Statement Approval Hearing and Setting Dates and Deadlines, (III) Approving the Solicitation Package and Notice Procedures, (IV) Approving the Form of Ballot and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 811] (the "Disclosure Statement Motion");

h. filed on May 24, 2025, (a) the *Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 986] and (b) the *Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 987];

i. obtained, on May 27, 2025, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation and Final Disclosure Statement Approval Hearing and Setting Dates and Deadlines, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Form of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 994] (the "Conditional Disclosure Statement Order"), which approved on an interim basis, among other things, solicitation procedures and related notices (the "Solicitation and Voting Procedures"), forms, and the Ballots (collectively, the "Solicitation Packages");

j. filed, on May 28, 2025, the *Notice of Hearing to Consider (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 1010] (the "Combined Hearing Notice");

k. caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Conditional Disclosure Statement Order), and the Combined Hearing Notice to be distributed on or before May 29, 2025, in accordance with the Conditional Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service of*

*Solicitation Materials* [Docket No. 1306] (the "<u>Solicitation Affidavit</u>") and the Voting Report (as defined below);

l.  caused the Combined Hearing Notice to be published in *The New York Times* on May 30, 2025, as evidenced by, among other things, the *Proof of Publication* [Docket No. 1045] (the "<u>Publication Affidavit</u>" and together with the Solicitation Affidavit, the "<u>Affidavits</u>");

m.  filed, on June 20, 2025, the initial *Plan Supplement for the Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 1241] (as amended, modified, or supplemented from time to time, the "<u>Plan Supplement</u>") and filed, on June 21, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 1242];

n.  caused to be filed, on July 7, 2025, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates* [Docket No. 1348] (as may be amended, modified, or supplemented, the "<u>Voting Report</u>");

o.  filed, on July 8, 2025, the *Second Amended Join Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1353];

p.  filed, on July 8, 2025, the *Amended Plan Supplement for the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1357] and the *Notice of Filing Amended Plan Supplement* [Docket No. 1358].

q.  filed, on July 8, 2025, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan (Technical Modifications)* [Docket No. 1355] (the "<u>Confirmation Brief</u>");

r.  filed, on July 8, 2025, the *Declaration of Nicholas Haughey in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Second Amended Joint Chapter 11 Plan of JOANN Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1356] (the "<u>Haughey Declaration</u>"); and

This Bankruptcy Court having:

a.  entered, on May 27, 2025, the Conditional Disclosure Statement Order;

b.  set June 27, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Disclosure Statement and the Plan (the "<u>Objection Deadline</u>");

c.  set June 30, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline by which all Ballots and Opt-In Forms must be properly executed, completed, and submitted so that they are actually received (the "<u>Voting Deadline</u>") by Kroll Restructuring Administration LLC (the "<u>Solicitation Agent</u>");

d.   set July 10, 2025, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Combined Hearing pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.   considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Haughey Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.   held the Combined Hearing;

g.   heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

h.   considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Combined Hearing;

i.   overruled any and all objections to the final approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

j.   considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the final approval of the Disclosure Statement and the Confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Combined Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.    Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction, Venue, Core Proceeding**

2.     The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.    The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.    Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.    Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.**     **Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.**     **Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 16, 2025, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 103] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.**     **Committee Appointment**

5.      On January 28, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 198] pursuant to section 1102 of the Bankruptcy Code.

**F.**     **Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by

6

reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.    Plan Supplement**

7.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Conditional Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of Article X of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Conditional Disclosure Statement Order**

8.    On May 27, 2025, the Bankruptcy Court entered the Conditional Disclosure Statement Order, which, among other things, (a) approved, on an interim basis (i) the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) the Solicitation and Voting Procedures, and

(iii) the Solicitation Packages; (b) set June 27, 2025 at 4:00 p.m., prevailing Eastern Time, as the Objection Deadline, (c) set June 30, 2025 at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline, and (d) set July 10, 2025 at 10:00 a.m., prevailing Eastern Time, as the date and time for the Combined Hearing.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.       Adequacy of the Disclosure Statement**

9.       The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.   The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Conditional Disclosure Statement Order and was appropriate under the circumstances.

**J.       Solicitation and Notice**

10.       The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.       As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Conditional Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement and Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.   Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.     Voting Report**

13.     Prior to the Combined Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.     As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.   In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 5 and 6 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 7 and 8 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.     As evidenced by the Voting Report, the Voting Classes voted to accept the Plan.

**L.     Bankruptcy Rule 3016**

16.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.     Burden of Proof**

17.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**N.     Plan Modifications**

18.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Combined Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim under the Plan. Subsequent to filing the solicitation version of the Plan [Docket No. 986] on May 24, 2025, the Debtors made certain Plan Modifications, which are reflected in the version of the Plan attached hereto as **Exhibit A**.  The Plan Modifications were made to address objections and informal comments received from various parties in interest, including landlords and insurers.  The Plan Modifications do not materially or adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances

of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.

19.    No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**O.    Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

20.    The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**P.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)    Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

22.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### i.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).

23.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into eight (8) Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II and Article XII.C of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).

24.     The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of the Impaired Classes entitled to vote on the Plan, which are Classes 3 and 4.  Holders of Claims and Interests in Classes 5 and 6 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or cancelled

and released without any Plan Distribution on account of such Claims or Interests.  Holders of Claims and Interests in Classes 7 and 8 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

### iii.    No Discrimination (11 U.S.C. § 1123(a)(4)).

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

26.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Wind-Down Transactions, the creation of the GUC Trust, and the appointment of the GUC Trustee and the Plan Administrator.

### v.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

27.    The Plan does not provide for the issuance of equity or other securities by the Debtors or the Wind-Down Debtors.  Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable in these Chapter 11 Cases.

### vi.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

28.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV of the Plan provides that, on the Effective Date, the Debtors' existing directors and officers shall be deemed to have resigned, and the Plan Administrator shall have the sole power and authority to implement the Plan and take any actions reasonably necessary to further such

implementation without any further action, except for such actions reserved for the GUC Trust pursuant to the Plan and the GUC Trust Agreement.  The Plan further provides that the Plan Administrator shall have the sole authority to act on behalf of the Wind-Down Debtors in accordance with its fiduciary duties.

### vii.    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

29.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (a)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

30.    Upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is identified on a Cure Notice, is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or was assumed as part of the GA Transaction; (b) has been previously assumed, assumed and assigned, or rejected by the Debtors any other Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.  Solely with respect to any Leases that have not yet been rejected, on the Effective Date, the Debtors will notify the applicable landlord in

writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable.

31.     Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Approval Order to assume and assign Executory Contracts and Unexpired Leases.  Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date to (a) designate an Executory Contract previously not included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption or assumption and assignment or (b) remove an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment.

32.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

      **(b)**     **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

33.     **Compromise and Settlement.**  The Plan incorporates certain settlement of issues, authorized by or under the Approval Order, among the Debtors and various parties in interest, namely the Committee, the Prepetition Term Loan Agent, the Prepetition Term Loan Ad Hoc Group, and GA Joann Retail Partnership, LLC.  As among the settlement parties, the applicable provisions of the Plan shall constitute a good-faith settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved among such

parties pursuant to the Plan.  Subject to Article VI of the Plan, all Plan Distributions made to Holders of Allowed Claims that are settlement parties are intended to be and shall be final.

34.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

35.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

36.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released

Parties, including, the Released Parties' contribution to facilitating the Wind-Down Transactions and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Wind-Down Debtors, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

37.    **Releases by Holders of Claims and Interests.**    Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

38.    The Third-Party Release is consensual with respect to the Releasing Parties. The Ballots sent to all Holders of Claims and Interests entitled to vote, the Notices of Non-Voting Status sent to Holders of Claims and Interests not entitled to vote, and the Combined Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt in to the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that voted in favor of the Plan and checked the "Opt In" box on their timely submitted Ballot, voted against the Plan but checked the "Opt In" box on their timely submitted Ballot, or didn't vote on the Plan but checked the "Opt In" box on

their timely submitted Opt-In Form, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties to the extent set forth in and consistent with the terms of the Plan.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Opt-In Form.  Thus, the Third-Party Release is consensual as to those Releasing Parties that opted into the Third-Party Release as described above.

39.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors, the Wind-Down Debtors, and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; (h) a sound exercise of the Debtors' business judgment; and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.[3]

40.     **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in

---

[3]     Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, any party who mutually agrees with the Debtors in writing (email to be sufficient) to be a Releasing Party shall also be deemed a Releasing Party under the Plan.

Article VIII.D of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Exculpated Parties owed and complied with their fiduciary duties to the Debtors and their Estates in their willingness and efforts to support the Debtors' Chapter 11 Cases.  The Exculpation appropriately affords protection to the Exculpated Parties who participated in and contributed to the Debtors' chapter 11 process consistent with their fiduciary duties, and it is appropriately tailored to protect the Exculpated Parties from, among other things, inappropriate litigation.

41.     **Injunction.**  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

**viii.     Cure of Defaults (11 U.S.C. § 1123(d)).**

42.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed proposed assumption or cure amount will be determined in accordance with the procedures set forth in Article V.C of the Plan and applicable bankruptcy and non-bankruptcy law.  In the event of any

inconsistency between the Plan and the Approval Order concerning the assumption and assignment of Executory Contracts or Unexpired Leases, the terms of the Approval Order shall govern and control.  Accordingly, the Plan provides that the Debtors or the Wind-Down Debtors, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.[4]  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b)  The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

43.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

44.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Conditional Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

45.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.

---

[4]    To the extent there are any outstanding Allowed Stub Rent payments as of the Effective Date, the Debtors shall remit payment on account of such outstanding Allowed amounts no later than ten (10) days following the Effective Date.  For the avoidance of doubt, the Sub Rent Reserve shall otherwise be consistent with the terms of the Committee Settlement set forth in the Approval Order.

**c)  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

46.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates and providing for the creation of the GUC Trust on the Effective Date to administer the GUC Trust Assets.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

47.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee, the Purchaser, and the Prepetition Term Loan Ad Hoc Group.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.   Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

48.    Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.    The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

49.    Because the Plan provides for the orderly wind down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator and the GUC Trustee.

**f)  No Rate Changes (11 U.S.C. § 1129(a)(6)).**

50.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g)  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

51.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Substantially all of the Debtors' assets were liquidated in accordance with the GA Transaction. The Plan effects a wind down of any remaining assets.  Consequently, the Debtors' Estates do not, and will not, own any material assets on the Effective Date, and Holders of Allowed Claims or Interests in Classes 7 and 8, and, to the extent such Classes are deemed to reject the Plan, Classes 5 and 6, are not anticipated to receive any recoveries.  Pursuant to the Plan, the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator shall effectuate the wind down in an

orderly manner.  Further, the GUC Trustee shall administer the GUC Trust in accordance with the terms of the GUC Trust Agreement, which incorporates the terms of the Committee Settlement. Holders of Class 4 General Unsecured Claims would receive a lower recovery without the Committee Settlement.

52.      A chapter 7 liquidation would also wind down the Debtors' Estates, and likewise would not be expected to yield any recovery for Holders of Allowed Claims or Interests in Classes 5 through 8, as applicable, and likely would involve additional administrative costs, delays, and uncertainties associated with commencing one or more new chapter 7 proceedings at this time (including, for example, the costs and delays associated with administering the GUC Trust and Committee Settlement, establishing a new claims bar date, and administering the renewed claims register).  Therefore, Holders of Allowed Claims or Interests will receive or retain under the Plan property of a value that, as of the Effective Date, is not less than the amount they would receive or retain if the Debtors liquidated under chapter 7, thus satisfying the requirements of section 1129(a)(7) of the Bankruptcy Code.

**h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

53.      The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 (Prepetition Term Loan Claims) voted to accept the Plan, and Class 4 (General Unsecured Claims) voted to accept the Plan.  Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests) are not entitled to vote on the Plan, because they are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan.  Class 7 (Interests in JOANN) and Class 8 (Section 510(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account

of the Claim or Interest in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan (together with Classes 5 and 6, the "Deemed Rejecting Classes").  To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.   Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

    **i)**    **Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

54.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

    **j)**    **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

55.     The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article II, Article III, and Article XII.C of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

    **k)**    **Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

56.     As set forth in the Voting Report, the Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code in both of the Voting Classes voted to accept the Plan, determined without including any acceptance of the Plan by any insider

(as that term is defined in section 101(31) of the Bankruptcy Code).  As such, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**l)    Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

57.    The evidence proffered or adduced in these Chapter 11 Cases and in the Haughey Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Wind-Down Debtors will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**m)   Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

58.    Article II and Article XII.C of the Plan provide for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n)   Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

59.    The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.    Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o)    Only One Plan (11 U.S.C. § 1129(c)).**

60.    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

61.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

62.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

63.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**B.     Implementation**

64.     The Plan, the Plan Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Wind-Down Debtors, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan, and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**C.     Good Faith Solicitation (11 U.S.C. § 1125(e))**

65.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated

Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly stated in this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Plan Distributions and, therefore, are not, and on account of such Plan Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Plan Distributions.

**D.      Disclosure:  Agreements and Other Documents**

66.     The Debtors have disclosed all material facts regarding:   (a) the Plan; (b) the sources and Plan Distributions; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Wind-Down Debtors.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

### A.   Findings of Fact and Conclusions of Law

67.   The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B.   Final Approval of the Disclosure Statement

68.   The Disclosure Statement is hereby approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

### C.   Confirmation of the Plan

69.   The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is hereby confirmed under section 1129 of the Bankruptcy Code.  The Debtors and the Wind-Down Debtors are authorized to enter into, execute, and perform under all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, Wind-Down Debtors, Plan Administrator, and GUC Trust, as applicable, are hereby approved and authorized.  The Debtors, Wind-Down Debtors, Plan Administrator, and GUC Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or

documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

71.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**D.    Objections**

71.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at the Combined Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**E.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

72.    The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

   a. **Liens**.  The release of liens provisions set forth in Article VIII.A of the Plan are hereby approved.

   b. **Releases by the Debtors**.  The Debtor Release provisions set forth in Article VIII.B of the Plan are hereby approved.

c. **Third-Party Releases**. The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

d. **Exculpation**. The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

e. **Injunction**. The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

F.      **Classifications of Claims and Interests**

73.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

G.      **Plan Supplement**

74.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, Wind-Down Debtors, Plan Administrator, the GUC Trust, and their successors are authorized as of the Effective Date. Without further order or authorization of this Bankruptcy Court, the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan

Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

**H.    Wind-Down Transactions**

75.    On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions pursuant to the terms of the Plan.

76.    This Confirmation Order authorizes, and shall be deemed to authorize, pursuant to sections 363 and 1123 of the Bankruptcy Code, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

**I.    Sources of Consideration for Plan Distribution**

77.    On or after the Effective Date, the Debtors, Wind-Down Debtors or the Plan Administrator, as applicable, shall make Plan Distributions on account of Allowed Claims (other than Allowed General Unsecured Claims or Prepetition Term Loan Deficiency Claims) in accordance with Article III.B of the Plan using the Wind-Down Proceeds from liquidating the Wind-Down Debtors' Assets (excluding any amounts to be included in the Professional Fee Escrow Account or any amounts that constitute GUC Trust Assets), as follows:  (a) *first*, on account of Allowed Administrative Claims and Priority Tax Claims; (b) *second*, on account of Allowed Other Secured Claims (solely to the extent such proceeds are on account of collateral for such Allowed Other Secured Claim), if any; (c) *third*, on account of Allowed Other Priority

Claims, if any; and (d) *fourth*, on account of Allowed Prepetition Term Loan Claims (less the Credit Bid Amount) (collectively, the "Waterfall Recovery").  For the avoidance of doubt, nothing contained in the Plan, this Confirmation Order, or any Definitive Document alters or otherwise affects the rights of claimants whose claims are the subject of the Waterfall Recovery to payment in accordance with the Bankruptcy Code and the priorities set forth therein, subject to the express written agreement of such claimants or the binding vote of Class 3 to accept its treatment under the Plan.

78.    On or after the Effective Date, the GUC Trust shall be responsible for making Plan Distributions on account of Prepetition Term Loan Deficiency Claims and Allowed General Unsecured Claims in Class 4 in accordance with Article III.B.4 of the Plan from the GUC Trust Assets.

**J.    Wind-Down Debtors**

79.    The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims) in accordance with the Waterfall Recovery, (4) filing appropriate tax returns (and, for the avoidance of doubt, may pursue any refunds, credits, or other tax benefits to which the Debtors and/or the Wind-Down Debtors are entitled and file any tax returns or other filings as are required in connection therewith), (5) winding down and dissolving any direct or indirect subsidiaries of the Wind-Down Debtors, and (6) administering the Plan in an efficacious manner. Except as otherwise set forth in the Plan with respect to the GUC Trust, the Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including

(x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter.

**K.      Cancellation of Securities and Agreements**

80.      Except for the purpose of enabling Holders of Allowed Claims to receive a Plan Distribution as provided in the Plan and except as otherwise set forth in the Plan, the Plan Supplement, or this Confirmation Order, on the Effective Date, and with respect to any Prepetition Loan Facilities that have not been Paid in Full (as defined in the Cash Collateral Order) prior to the Effective Date:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security (including any preferred stock, common stock or other capital stock), share, note, bond, indenture, purchase right, option, warrant, restricted stock, restricted stock units (or any other incentive equity interest) or other instrument or document (including any indenture or credit agreement) directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except, and only to the extent, such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled as to the Debtors, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any Securities (including any preferred stock, common stock or other capital stock), shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreement, purchase rights, options, warrants, restricted stock, restricted stock units (or any other incentive equity interest) or

other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except, and only to the extent, such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and of no force or effect and the rights of the Holders thereof and obligations of the Debtors thereunder shall be fully released, settled, and compromised.  Holders of (including any beneficial owners) or parties to any of the foregoing instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, securities and other documentation, or the settlement thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or this Confirmation Order, as applicable.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code, or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**L.**     **Corporate Action**

81.     Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Plan Administrator, the GUC Trust, or any other Entity or Person in all respects.  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date,

without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.

82.     Before, on, or after the Effective Date, the appropriate directors, managers, officers, Governing Bodies or other similarly authorized Persons of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, file (including File), record and/or deliver any agreements and documents, securities, and instruments contemplated under the Plan (or necessary, appropriate or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.   The authorizations and approvals contemplated by Section IV.I of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law (including any non-U.S. law to the fullest extent available).

## M.    Effectuating Documents; Further Transactions

83.     On and after the Effective Date, the Plan Administrator or GUC Trust, as applicable, may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, this Confirmation Order, and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or this Confirmation Order.

## N.    Exemption from Certain Taxes and Fees

84.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtors or to any other Person or from the Wind-Down Debtors to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) the GA

Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

85.    All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**O.    Director and Officer Liability Insurance Policies; Other Insurance Policies**

86.    Notwithstanding anything to the contrary in the Plan, this Confirmation Order, any other Definitive Document, the Plan Supplement, any Bar Date Order or bar date notice, any Claim Objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or

supervening, grants an injunction, discharge, or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, solely to the extent the Insurance Policies are executory, the Wind-Down Debtors shall be deemed to have assumed all Assumed Insurance Policies, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code and, after such assumption, all Assumed Insurance Policies shall vest, unaltered and in their entireties, in the Wind-Down Debtors; (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Assumed Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date, *provided*, *however*, that in no event shall the GUC Trust be liable for any of the Debtors' obligations under the Assumed Insurance Policies; (c) Insurers shall not need or be required to file or serve any notice of recoupment or setoff or a request, application, claim, Proof of Claim, or motion for payment or Allowance of any Administrative Claim related to such recoupment or setoff; (d) nothing alters, amends, modifies, waives, releases, diminishes, prejudices, or impairs (i) any of the rights and obligations of the Debtors and their Estates (or, after the Effective Date, the Wind-Down Debtors), or of any Insurers, or of any other individuals or entities under any Insurance Policies; (ii) any coverage or benefits provided under any Insurance Policies; (iii) the terms and conditions of any Insurance Policies; or (iv) the enforceability of any Insurance Policies; (e) nothing in the Plan, the Confirmation Order, or any documents related thereto shall permit or effectuate a sale, assignment, or other transfer of any Insurance Policy, and any and all rights of the Insurers to object to or otherwise oppose any sale, assignment, or other transfer of any Insurance Policy are preserved and, after the Effective Date, nothing shall permit or otherwise effectuate a sale, assignment, or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any

Insurance Policy without the prior express written consent of the applicable Insurer; and (f) on the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; and (ii) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.E of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation), in each case in accordance with the terms of such Insurance Policies and applicable non-bankruptcy law.

87.     If an Insured Litigation Claim may be covered by an Insurance Policy that has a self-insured retention ("SIR"), the Allowed amount of such Insured Litigation Claim that is within the applicable SIR shall constitute an Allowed General Unsecured Claim against the applicable Debtor's Estate. Such SIR shall be considered satisfied pursuant to the Plan through allowance of such General Unsecured Claim solely in the amount of the applicable SIR; *provided*, *however*, that nothing herein obligates the Plan Administrator or GUC Trust to otherwise satisfy or pay in cash any SIR under any Insurance Policy. Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Insured Litigation Claim shall be recovered solely from the Debtors' insurance coverage in excess of the SIR, if any, and only to the

extent of available insurance coverage and any proceeds thereof.  Nothing in this Plan shall be (i) construed to limit, extinguish, diminish, or expand the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy, or (ii) a determination that any Insurance Policy is an executory contract or is capable of assumption or rejection.  In no event shall the Plan Administrator or the GUC Trust be required to pay any amounts within a self-insured retention, including defense costs, other than through the allowance of a General Unsecured Claim up to the amount of the applicable SIR.

88.    After the Effective Date, the Wind-Down Debtors shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date.

89.    On the Effective Date, to the extent the D&O Liability Insurance Policies are executory, any and all D&O Liability Insurance Policies shall be deemed assumed by the Wind-Down Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.

**P.      Preservation of Causes of Action**

90.      In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity as of the Effective Date, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Wind-Down Debtors, other than Claims and Causes of Action acquired pursuant to the GA Transaction, Claims and Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, and the GUC Trust Causes of Action.  The Plan Administrator shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, other than GUC Trust Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

91.      **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust will not pursue any and all available Causes of Action against it.  The Debtors, the Wind-Down Debtors, the Plan Administrator, and the GUC Trust expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  For the avoidance of doubt, the Purchaser acquired all Avoidance Actions and Other Causes of Action (as defined in the GA**

Transaction Documents) and released and waived its right to pursue (i) all Avoidance Actions, and (ii) Other Causes of Action against the Prepetition ABL Lenders, the Prepetition FILO Lenders, the Prepetition Term Loan Lenders, the ABL Agent, FILO Agent, the Prepetition Term Loan Agent, Gordon Brothers Retail Partners, LLC, and any Related Party of the Debtors.

**Q.     Abandonment of Non-Debtor Equity Interests**

92.     On or after Effective Date, the Debtors and the Wind-Down Debtors may abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

**R.     Treatment of Executory Contracts and Unexpired Leases**

93.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

94.     On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtors, unless otherwise agreed by the applicable counterparty, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, is identified on a Cure Notice, is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, or was assumed as part of the GA Transaction; (b) has been previously assumed, assumed and assigned, or rejected by the Debtors any other Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with

respect thereto) that is pending on the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.

95.    Any Unexpired Lease that is not assumed on the Effective Date pursuant to Article V.A of the Plan, the effective date of rejection of such Unexpired Leases shall be the later of:  (a) the Effective Date, except (1) in connection with a Court-Ordered Cure Cost pursuant to Article V.C. of the Plan; or (2) if agreed by the applicable counterparty, and (b) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection (b) above, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Wind-Down Debtors, as applicable, or any third party; *provided*, *further* that (a) the Debtors or the Wind Down Debtors, as applicable, are not authorized to abandon, and are directed to remove any hazardous materials as defined under applicable Law from any leased premises as and to the extent they are required to do so by applicable Law and (b) to the extent the Debtors or the Wind Down Debtors, as applicable, seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Confirmation Debtors' employees and/or customers, or any other individual, the Debtors or the Wind Down Debtors, as applicable, shall remove such information from such personal property prior to its abandonment.  Following any such abandonment, the counterparty to such Unexpired

Lease may (i) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors, or the Wind-Down Debtors, as applicable, or any third party, and (ii) shall be authorized to assert a Claim for any and all damages arising from the abandonment of such property by filing a Proof of Claim in accordance with Article V.B. of the Plan.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or Wind-Down Debtors, as applicable, unless owned by such Debtors or Wind-Down Debtors as of the effective date of such rejection.

96.    Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Approval Order to assume and assign Executory Contracts and Unexpired Leases pursuant to the GA Transaction Documents.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or Wind-Down Debtor, as applicable, and consistent with the 365(d)(4) Extension Order. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in, and be fully enforceable by the applicable Debtor or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by agreement of the parties thereto, subject to Article V.A. of the Plan.

97.     Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases to designate an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code, and as further set forth in the 365(d)(4) Extension Order.

**S.      Provisions Governing Distributions**

98.     The procedures governing Plan Distributions contained in Article VI of the Plan are hereby approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Distributions shall be made by the applicable Disbursing Agent.  No Disbursing Agent shall be required to give any bond or surety to other security for the performance of its duties.

**T.      Procedures for Resolving Contingent, Unliquidated, and Disputed Claims or Interests**

99.     The procedures for resolving Contingent, Unliquidated, and Disputed Claims or Interests contained in Article VII of the Plan are hereby approved in their entirety.

**U.      Conditions to Effective Date and Authorization to Consummate**

100.    The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan are hereby approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms to the extent waivable.

**V.      The Committee Settlement**

101.    As contemplated by the Committee Settlement and the Approval Order, the terms of Article IV.E. of the Plan setting forth further agreements of the parties to the Committee

Settlement are approved and authorized in their entirety, and such settlement terms are effective

and binding on all Persons and Entities to the extent provided in the Plan.

**W.      The GUC Trust and Appointment of the GUC Trustee**

102.    The GUC Trust Agreement is hereby approved in all respects.  The GUC Trust will

be established on the Effective Date and funded pursuant to, and in accordance with, the terms of

the Plan and the GUC Trust Agreement.  On the Effective Date, the Debtors and the GUC Trustee

shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC

Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit

of the GUC Trust Beneficiaries.  Additionally, on the Effective Date, to the extent applicable, the

Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the GUC

Trust all of the Debtors' rights, title, and interest in and to all of the GUC Trust Assets, and in

accordance with section 1141 of the Bankruptcy Code, and to the extent applicable, the GUC Trust

Assets shall automatically vest in the GUC Trust without further action by any person, free and

clear of all Claims, Liens, encumbrances, or interests subject only to the GUC Trust Interests and

the GUC Trust Expenses, as provided for in the GUC Trust Agreement, and such transfer shall be

exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other

similar tax.  Upon the Effective Date, the GUC Trust shall be the exclusive trustee of the GUC

Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the

representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding

all GUC Trust Assets.

103.    Steven Balasiano, through MHR Advisory Group, LLC, is recognized and

approved as the initial GUC Trustee of the GUC Trust and the GUC Trustee is hereby:

(a) authorized to execute and perform under the GUC Trust Agreement, to appear and be heard

before the Court on all matters relating to these Chapter 11 Cases (as representative of the GUC

Trust and/or section 1123(b), as applicable) and to present to creditors, other courts of competent jurisdiction, and any other party the GUC Trust Agreement, the Plan, and this Confirmation Order as evidence of its authority; and (b) vested with all of the powers and authority set forth in the Plan and the GUC Trust Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the GUC Trust Agreement, as applicable. The GUC Trustee, on behalf of the GUC Trust, shall have the right to participate in any appeal of the Plan and/or this Confirmation Order to the extent such appeal would affect the GUC Trust Assets.

## X.   The Plan Administrator

104.   Pursuant to the Plan and to the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that are entitled to receive distributions pursuant to the Plan. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors or the Wind-Down Debtors, as applicable.

105.   As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors with respect to their affairs; *provided*, *further*, a board made up of two individuals appointed by GA Joann Retail Partnership, LLC will oversee material decisions made by the Plan Administrator. Subject to the foregoing and in all respects to the terms of the Plan, on the Effective Date, the Plan Administrator shall have the power and authority to implement the Plan and take any actions reasonably necessary to further such implementation, subject to the Committee Settlement. The Plan Administrator shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states; *provided*, *however*, that upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan

Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction.

**Y.    Retention of Jurisdiction**

106.    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan are hereby approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain jurisdiction over the matters arising in and out of, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

**Z.    Immediate Binding Effect**

107.    Subject to Article IX.A. of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**AA.    Additional Documents**

108.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Wind-Down Debtors, Plan Administrator, GUC Trust, GUC Trustee, as applicable, and all Holders receiving Plan

Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## BB.    Payment of Statutory Fees

109.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of any of the Wind-Down Debtors or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor and the GUC Trust, the GUC Trustee or any entity making disbursements on behalf of the GUC Trust, or making disbursements on account of an obligation of the GUC Trust (each of the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, or any entity making disbursements on account of their respective obligations, a  "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or any entity making disbursements on behalf of the Wind-Down Debtors, and the GUC Trust, the GUC Trustee, or any entity making disbursements on behalf of the GUC Trust, shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Disbursing Entities shall remain obligated to pay Quarterly Fees to the office of the U.S. Trustee until the earliest of a particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

**CC.    Reservation of Rights**

110.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**DD.    Notices**

111.    After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002, must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002 subject to the immediately succeeding sentence.  After the Effective Date, the Plan Administrator and GUC Trust are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, but shall provide documents to the parties to the Committee Settlement without such parties having to File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  For the avoidance of doubt, the Debtors shall continue to serve motions and applications on any parties required to be served under Local Rule 2002-1(b).

**EE.    Non-Severability of Plan Provisions**

112.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the

consent of the Debtors, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

**FF.    Governmental Approvals Not Required**

113.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Wind-Down Transactions, including any actions necessary or appropriate for such purposes.

**GG.    Recording**

114.    The Debtors, the Wind-Down Debtors, and the GUC Trust, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Bankruptcy Court, and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.  The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

**HH.    Effect of Conflict between Plan and Confirmation Order**

115.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the GUC Trust Agreement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement other than the GUC Trust Agreement, the terms of the relevant provision in the Plan Supplement shall control (unless expressly stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between

this Confirmation Order and the Plan or Plan Supplement, this Confirmation Order shall control (unless expressly stated otherwise in the Plan).

## II.        Implementing Documents

116.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept any and all documents necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

## JJ.        Debtors' Actions Post-Confirmation Through the Effective Date

117.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**KK.    Notices of Confirmation and Effective Date**

118.    As soon as reasonably practicable after the Effective Date, the Wind-Down Debtors shall file notice of the Effective Date and shall serve a copy of the same on the parties to the Committee Settlement and the Bankruptcy Rule 2002 service list.  The Wind-Down Debtors may serve the notice of the Effective Date via email; *provided* that no notice of the Effective Date shall be required to be served upon any Entity for which the Debtors (or Wind-Down Debtors) do not have a street address or e-mail address that is confirmed to be accurate and current.

119.    The above-referenced notice is adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**LL.    Return of Adequate Assurance Deposits**

120.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors under the order entered at Docket No. 431 shall be returned to the Wind-Down Debtors.

**MM.    Dissolution of Statutory Committees**

121.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with applications for compensation, objections thereto, and any appeal of the Confirmation Order.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with:   (i) any fees or expenses for services rendered prior to the Effective Date, or fees and expenses incurred in connection with final fee applications of Professionals, in each case that are Allowed by the Bankruptcy Court; and (ii) fees incurred in connection with any appeal of the Confirmation Order.

**NN.    Provisions Relating to the Texas Comptroller of Public Accounts**

122.    Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "Texas Comptroller") reserves the following rights: (1) any statutory or common law setoff rights in accordance with section 553 of the Bankruptcy Code; (2) any rights to pursue any non-Debtor third parties for tax debts or Claims; (3) the payment of interest on the Texas Comptroller's Allowed Administrative Claims, if any; (4) to the extent that interest is payable with respect to any Allowed Administrative Claim of the Texas Comptroller, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (5) the Texas Comptroller is not required to file a motion or application for payment of Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

123.    Should the Wind-Down Debtors fail to make any payments as required in the Plan or this Confirmation Order, or remain current on postpetition and/or post-confirmation ordinary course tax reporting and payment obligations, the Texas Comptroller shall provide written notice of that default to the Wind-Down Debtors and their counsel advising of that default and providing a period of twenty-one (21) Business Days to cure the default.  In the event the default is not cured within twenty-one (21) Business Days, the Texas Comptroller may seek appropriate relief with the Bankruptcy Court to collect the full amount of all taxes, penalties, and interest owed.

**OO.    Provisions Relating to the Texas Taxing Authorities**

124.    Notwithstanding anything to the contrary in the Plan, Plan Supplement, or this Confirmation Order, the terms of Paragraph 35 of the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered February 26, 2025 [Docket No. 516] (the "Cash Collateral Order") shall remain in effect, and the 2024 and 2025

undisputed ad valorem taxes due and owing to the Texas Taxing Authorities[5] (the "Tax Claims")

shall be disbursed from the Texas Tax Reserve (as defined in the Cash Collateral Order) to the

applicable Texas Taxing Authorities (i) on or before the Effective Date for any delinquent 2024

Tax Claims still due and owing; and (ii) in the ordinary course of business as such taxes come due

with respect to any 2025 Tax Claims. In the event the Tax Claims exceed the amount in the Texas

Tax Reserve, the remainder of the Tax Claims will be paid in full in cash on or before the Effective

Date or when such tax ordinarily comes due.  The Tax Claims shall accrue postpetition interest as

allowed by applicable state and bankruptcy law.  Any liens securing the Tax Claims shall be

retained against the Texas Tax Reserve until such time as the Tax Claims are paid in full.  The 2025

taxes will be paid as set forth herein without need for the Texas Taxing Authorities to amend their

claims to reflect the certified amount of the 2025 taxes.

**PP.    Setoff Rights**

125.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order,

nothing shall modify the rights, if any, of any party to assert any right of setoff or recoupment that

such party may have under applicable bankruptcy or non-bankruptcy law, including, but not

---

[5]    "Texas Taxing Authorities" is defined as all ad valorem taxing jurisdictions represented by the firms of Perdue, Brandon, Fielder, Collins & Mott LLP, Linebarger Goggan Blair and Sampson, LLP, and McCreary Veselka Bragg and Allen, including but not limited to Lubbock CAD, Frisco Independent School District, Plano Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Clear Creek Independent School District, Baybrook MUD #1, Harris County MUD #186, Harris County Water Control and Improvement District #145, Fort Bend Independent School District, Fort Bend County Levee Improvement District #02, Humble Independent School District, Harris County MUD #186, Harris County Water Control and Improvement District #145, Spring Branch Independent School District, City of Houston, Randall County Tax Office, Bexar County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Harris County Emergency District #09, Harris County Emergency District #47, Hidalgo County, City of Houston, Houston Community College System, Houston Independent School District, City of Humble, Jefferson County, Katy Independent School District, Lewisville Independent School District, Lone Star College System, McLennan County, Montgomery County, Nueces County, Rockwall CAD, Smith County, Tarrant County, Brazos County, Comal County, Denton County (including City of Denton, Denton ISD, and City of Lewisville), Taylor County CAD, City of Waco and Waco ISD, and Williamson County.

limited to, the ability of such party to (i) setoff or recoup a security deposit held pursuant to the terms of its unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assert rights of setoff or recoupment in connection with Claims reconciliation; or (iii) assert setoff or recoupment as a defense to any claim or action by the Debtors or any successors of the Debtors.

**QQ.    Surety Bonds**

126.    On or about August 20, 2021, Debtor JOANN Inc. on behalf of itself, and jointly and severally with various subsidiaries and affiliates (together, the "Indemnitors"), executed a General Agreement of Indemnity (the "Indemnity Agreement"), in connection the execution of surety bonds by any member of the Liberty Mutual Group, including, but not limited to, Liberty Mutual Insurance Company (collectively, the "Surety") on behalf of the Indemnitors.

127.    Prepetition, the Surety executed numerous bonds (the "Bonds" and each, a "Bond") on behalf of both debtor and non-debtor bond principals and the Indemnitors.  To partially secure its obligations under the Indemnity Agreement, the Surety was provided with an Irrevocable Standby Letter of Credit from Bank of America, N.A., in the most recent amount of $6,038,976.00 (hereinafter, "Surety Collateral" or the "Surety's Collateral").

128.    Notwithstanding anything set forth to the contrary in the Plan, this Confirmation Order, or the Plan Supplement, or any document or agreement in connection therewith, nothing shall be deemed to:  (i) limit the Surety's rights or interests in the Surety's Collateral, including, without limitation, the right to use the Surety Collateral to reimburse any claim of the Surety; (ii) impair, release, discharge, preclude, or enjoin any obligations of the Debtors, the Wind-Down Debtors, their Estates, the GUC Trust, or the GUC Trustee, to the Surety under or related to the Indemnity Agreement, any Bond, the Surety's Collateral,  or under the common law of suretyship, and such obligations are unimpaired and are not being released, discharged, precluded, or enjoined

by the Plan or this Confirmation Order, or any agreements with third parties; or (iii) authorize or allow the transfer of any Bond or substitute the principal on any Bond, including pursuant to Article V of the Plan; *provided*, *however*, that nothing in the foregoing shall be deemed to alter, limit, modify or expand any obligations arising under the Bonds. For the avoidance of doubt: (i) the Surety shall be deemed to not have opted into the Release, Injunction, and related provisions set forth in Article VIII of the Plan; and (ii) the Surety shall not be deemed to be a Releasing Party.

**RR.    Books and Records**

129.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on and after the Effective Date, neither the Debtors nor the Wind-Down Debtors will destroy, abandon, or otherwise transfer any of their books, records, electronically stored information, and other documents that relate to the claims and causes of action asserted in the action initially captioned *Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club LLC, Ormo Ithalat Ihracat A.S., Springs Creative Products Group, LLC v. Michael Prendergast, Jeffrey Dwyer, Robert Will, Christopher Ditullio, Heather Holody, Michael Kennedy, Melissa Bowers*, CV-2025-05-2251 (Ohio C.P.) as removed and/or transferred to another court of competent jurisdiction.

**SS.    Provisions Relating to the Ohio Action**

130.    The revisions made to Articles IV.A and VII.F of the modified Plan, as reflected in the redline filed at Docket No. 1354-1, are not intended to, and such revisions may not be asserted by the Debtors or the defendants in Ohio Action (as defined herein) as having any effect upon, (1) 'related to' subject matter jurisdiction under 28 U.S.C. § 1334(b) or for the transfer of venue under 28 U.S.C. § 1412, for the causes of action asserted in the action initially captioned *Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club LLC, Ormo Ithalat Ihracat A.S., Springs Creative Products Group, LLC v. Michael Prendergast, Jeffrey Dwyer,*

*Robert Will, Christopher Ditullio, Heather Holody, Michael Kennedy, Melissa Bowers*, CV-2025-05-2251 (Ohio C.P.) as removed and/or transferred to another court of competent jurisdiction, including, without limitation, the action captioned *Advantus, Corp. v. Prendergast*, No. 5:25-cv-01250-JRA (N.D. Ohio), (the "Ohio Action") and (2) the relief sought by the Debtors in the action captioned *JOANN Inc., et al. v. Advantus, Corp., et al.*, Adv. Proc. No. 25-51022-CTG (Bankr. D. Del.), whether in the complaint filed therein or in the Debtors' *Motion to (I) Enforce Automatic Stay; (II) Enforce the Sale Order; and (III) for a Preliminary Injunction Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code* (Adv. Docket No. 3).

**TT.    Headings**

131.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**UU.    Final Order and Waiver of Stay**

132.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**Dated: July 10th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**