**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1261** |

**DEBTORS' OBJECTION TO
MOTION OF TAMARACK VILLAGE SHOPPING CENTER,
A LIMITED PARTNERSHIP FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" or "**JOANN**") hereby file this objection (this "**Objection**") in response to the *Motion of Tamarack Village Shopping Center, aA Limited Partnership for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* [Docket No. 1261] (the "**Motion**") and, in support thereof, respectfully state as follows:

**INTRODUCTION**

1.   Jo-Ann Stores, LLC (as successor in interest) ("**Tenant**") and Tamarack Village Shopping Center, A Limited Partnership ("**Tamarack**" or "**Landlord**") entered into a Lease Agreement dated February 25, 1997 (together with all amendments thereto, the "**Lease**") with respect to certain property located in the Tamarack Village shopping center in Woodbury,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

Minnesota.[2]  Pursuant to the Court's *Twenty-Seventh Order Authorizing the Debtors to Reject Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1254], the Lease was rejected by the Debtors effective as of May 31, 2025.

2. Through its Motion, Tamarack seeks allowance and payment of the following amounts as administrative expense claims pursuant to sections 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code: (a) real estate taxes for the first half of 2025 in the amount of $115,410.83 and for the second half of 2025 in the amount of $115,410.83, totaling $230,821.66; (b) clean-up costs in the estimated amount of $40,000; and (c) January 2025 "stub rent" and "certain insurance and common area maintenance charges for the following months in the amount of $2,603.76." (Motion at ¶ 7).

3. As Tamarack is aware, the Debtors have agreed to pay Tamarack's invoice dated April 15, 2025 for "1st Half 2025 RE Taxes" in the amount of $115,410.83, which is being processed for payment.  However, for the reasons expressed below, the Debtors dispute the balance of Tamarack's asserted administrative claims. *First*, the Debtors have no obligation under the Lease to pay real estate taxes for the second half of 2025, which is not due to the taxing authority until October 15, 2025 (at the earliest).  In fact, the Lease expressly protects the Tenant from having to prematurely pay this claim. Moreover, the Debtors have vacated the premises well before the second half of 2025. *Second*, under well settled law, Tamarack's alleged anticipated clean-up costs, if any, constitute prepetition general unsecured claims. *Third*, the Debtors already paid Tamarack "stub rent" for January 2025 back in March 2025, and Tamarack has failed to provide sufficient evidence to support its claim for unpaid insurance and CAM charges of $2,603.76.  Tamarack's claims are addressed in turn below.

---

[2]  A copy of the Lease is attached as Exhibit A to the Declaration of Peter Barott dated June 23, 2025 [Docket No. 1261-1] (the "**Barott Declaration**") submitted by Tamarack in support of its Motion.

## OBJECTION

**I.     Tamarack's Asserted Administrative Claim for the Real Estate Taxes for the Second Half of 2025 Should be Denied.**

4. Section 365(d)(3) provides, in pertinent part, that "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease ..., until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). The purpose of section 365(d)(3) "is to require the trustee to perform the lease in accordance with its terms." *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3d Cir. 2001).

5. Apart from section 365(d)(3), section 503(b)(1)(A) of the Bankruptcy Code provides for the allowance as an administrative claim against a debtor's estate, the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C.§ 503(b)(1)(A). To be entitled to an allowed administrative expense under section 503(b)(1)(A), a claimant must show that "(1) there was a postpetition transaction between the claimant and the estate and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021). The party seeking to recover expenses carries "the heavy burden of demonstrating" that the expenses requested qualify as administrative expenses. *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (internal citation omitted).

6. Citing to section 8(a) of the Lease, Tamarack contends that the Tenant is obligated to pay its invoice dated April 30, 2025 for Tenant's proportionate share of taxes for the second half of 2025 in the amount of $115,410.83 (the "**Tax Invoice**"). (*See* Motion at ¶ 9). In support of its claim, Tamarack submitted the Tax Invoice, which was allegedly delivered to the Tenant on April 30, 2025, together with the underlying 2025 Tax Statement issued by the taxing

authority (Washington County), which provides that the second half 2025 taxes may be paid without penalty by October 15, 2025. (*See* Barott Dec., Ex. B).

7. Tamarack's claim is based on its contention that the Tenant is required under section 8(a) of Lease to pay the Tax Invoice within 30 days of delivery. (*See* Motion at ¶¶ 9 and 13; Barott Dec. at ¶¶ 6-11). However, Tamarack has not only misquoted the Lease in multiple instances,[3] but has glaringly (and apparently strategically) failed to disclose the critical and dispositive term of section 8 of the Lease, which expressly disclaims any requirement that Tenant pay real estate taxes more than 30 days in advance of the due date to the taxing authority.

8. Specifically, section 8(a) of the Lease provides, in pertinent part, that:

> Tenant shall pay all personal property and other taxes on its property in the Premises. Statements assessing and prorating the taxes, if any, shall be rendered by Landlord, together with copies of the tax bills for which reimbursement is sought and reasonable verification for the computation of Tenant's Proportionate Share. **Tenant shall pay its Proportionate Share thereof within thirty (30) days of the receipt of such statements, *but in no event more than thirty (30) days in advance of the due date.*** Landlord agrees to thereafter provide Tenant a copy of the receipted Tax bill once payment has been made. Landlord hereby covenants and agrees to pay such taxes to the taxing authority before any penalties or interest accrue.

(Lease at § 8(a) (emphasis added)).

9. Here, the Tax Invoice is for Tenant's proportionate share of taxes for the second half 2025, which is not due to Washington County until October 15, 2025. Pursuant to the clear and unambiguous terms of section 8(a) of the Lease, the Tenant shall "in no event" pay such taxes "more than thirty (30) days in advance of the due date." This provision protects the Tenant from any effort by the Landlord to extract early payment of real estate taxes, which is exactly what Tamarack is attempting to do here in violation of the Lease. Tamarack has improperly and prematurely billed the Tenant for the second half 2025 real estate taxes, which Tenant would not

---

[3] Paragraphs 7 and 8 of the Barott Declaration purport to quote section 8 of the Lease, but the quoted language does not appear in the Lease. The quotations are inaccurate in multiple places.

be obligated to pay under the Lease until September 15, 2025, at the earliest. Moreover, the Debtors have already rejected the Lease and vacated the premises as of May 31, 2025. Thus, the tax payment will never come due under the Lease, and Tamarack has not and cannot show that the amounts sought constitute "actual, necessary costs and expenses of preserving the estate."

10. Accordingly, Tamarack has failed to establish the requirements of sections 365(d)(2) and 503(b)(1) of the Bankruptcy Code. Its request for allowance and payment of the Tax Claim as an administrative claim should be denied.

## II. Tamarack's Asserted Administrative Claim for Estimated Clean Up Costs Should Be Denied Because Such Costs, If Any, Constitute a General Unsecured Claim.

11. Tamarack contends that the "Debtor was required to comply with the Lease vacation provisions, including leaving the premises in a clean condition and removal of signs." (Motion at ¶ 14). Tamarack seeks an administrative expense claim for anticipated "clean-up" costs to remove and dispose of certain signage and items abandoned the Debtors.

12. Assuming, *arguendo*, that the Debtors breached the Lease's vacation provisions (which Tamarack has not established), under well settled law, Tamarack's alleged anticipated clean-up costs arising from the Debtors' rejection of the Lease constitute prepetition general unsecured claims. "Damages triggered by the 'termination' of leases do not arise pre-rejection, and, thus, are not obligations under section 365(d)(3), but arise upon rejection, and are general unsecured claims under section 365(g)(1)." *In re BH S & B Holdings LLC*, 426 B.R. 478, 484 (Bankr. S.D.N.Y. 2010); *accord In re Lucky's Mkt. Parent Co.*, No. 20-10166-JTD, 2022 WL 843763, at *15 (D. Del. Mar. 22, 2022). As cogently explained by the Southern District of New York Bankruptcy Court, "affording rejection claims administrative priority would effectively eliminate the purpose behind providing a debtor with the power to reject a contract." *In re Old Carco LLC*, 424 B.R. 633, 640 (Bankr. S.D.N.Y. 2010). "[T]here is no need for a 'special

rejection power' if a debtor is forced, nevertheless, to bear administrative liability when it breaches an agreement post-petition." *Id.*; *see In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 60 (Bankr. S.D.N.Y. 2004) (reasoning that a holding that cleanup costs constitute post-petition obligations "would be inconsistent with the doctrinal underpinnings under which motions to reject burdensome obligations are made, and would eviscerate the provisions of the Code that enable estates to relieve themselves of post-petition obligations under burdensome executory contracts")

13. Thus, courts routinely hold that clean-up costs, like those sought to be asserted by Tamarack, are pre-petition obligations. *See Lucky's Mkt. Parent Co.*, 2022 WL 843763, at *15 ("Courts routinely hold that clean-up costs like those asserted here are pre-petition obligations."); *Doral Commerce Park, Ltd. v. Teleglobe Communs. Corp. (In re Teleglobe Communs. Corp.)*, 304 B.R. 79, 83-84 (D. Del. 2004) (finding that rejection of the lease under § 365 was deemed the exercise of a power to breach, and any claims of the creditor associated with removing improvements and alterations to the leased premises could not arise prior to the rejection and thus could not support an administrative claim for postpetition expenses); *In re Universal Bldg. Prods.*, No. 10-12453-MFW, 2011 WL 841231, at *2 (Bankr. D. Del. Mar. 7, 2011) ("[T]he respective landlords' claims for the clean-up costs would have been part of their rejection damages which are treated as pre-petition claims."); *In re M.L. Logan Precision Machining Co.*, 2007 WL 1468807, at *9-10, (Bankr. E.D. Pa. May 14, 2007) ("The Landlord is not entitled to the allowance of an administrative expense for the costs incurred in cleaning the Premises and removing items from the Premises after the Trustee surrendered possession on December 29, 2006."); *In re Unidigital, Inc.,* 262 B.R. 283, 289 (Bankr. D. Del. 2001) (finding that no administrative claim is allowable for the costs of cleaning the premises of a rejected lease).

14. Accordingly, the Court should deny Tamarack's request for administrative expense priority with respect its anticipated "clean-up" costs arising from the Debtors' rejection of the Lease.

### III. Tamarack's Asserted Administrative Claim for January 2025 Stub Rent, CAM and Insurance Charges Should be Denied for Failure to Establish the Claims.

15. Tamarack alleges that the Debtors failed "to pay January 2025 rent and certain other charges from February to May 2025." (Barott Dec. at ¶ 13). In support, Tamarack has submitted an account statement (the "**Account Statement**") and alleges that the "total unpaid rent and additional charges other than taxes due and owing less than prepetition portion of January is $2,603.76." (*Id.* at ¶ 13 and Ex. C).

16. However, the Debtors' records reflect that it paid January 2025 "stub rent" on March 17, 2025 in the amount of $33,274, which payment is not reflected on the Account Statement. Furthermore, it is not evident from the Account Statement what, if any, amount are due and owing for allegedly unpaid CAM and insurance charges.

17. In discussions with Tamarack prior to the filing of this Objection, Tamarack admitted that it was paid "stub rent," which was erroneously referenced in the Motion, but insists $2,603.76 is still due and owing in connection with CAM and insurance charges. However, Tamarack has thus far refused the Debtors' request for documentation detailing and supporting the alleged unpaid CAM and insurance charges.

18. The Debtors respectfully submits that the Court should deny Tamarack's request an administrative expense claim for $2,603.76 in unpaid CAM and insurance charges, unless and until Tamarack submits sufficient documentation and evidence to establish the claim.

Dated: July 16, 2025
Wilmington, Delaware

*/s/ Michael E. Fitzpatrick*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Patrick J. Reilley (No. 4451) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Stacy L. Newman (No. 5044) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Michael E. Fitzpatrick (No. 6797) | Aparna Yenamandra, P.C. (admitted *pro hac vice*) |
| Jack M. Dougherty (No. 6784) | 601 Lexington Avenue |
| 500 Delaware Avenue, Suite 600 | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 446-4800 |
| Telephone: (302) 652-3131 | Facsimile: (212) 446-4900 |
| Facsimile: (302) 652-3117 | Email: joshua.sussberg@kirkland.com |
| Email: preilley@coleschotz.com | aparna.yenamandra@kirkland.com |
| snewman@coleschotz.com | |
| mfitzpatrick@coleschotz.com | - and - |
| jdougherty@coleschotz.com | |
| | Anup Sathy, P.C. (admitted *pro hac vice*) |
| | Jeffrey Michalik (admitted *pro hac vice*) |
| | Lindsey Blumenthal (admitted *pro hac vice*) |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: anup.sathy@kirkland.com |
| | jeff.michalik@kirkland.com |
| | lindsey.blumenthal@kirkland.com |
| *Co-Counsel to the Debtors* | *Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |