# EXHIBIT 9

December 19, 1991 Sublease between Arden-Mayfair, Inc., a Delaware corporation, as Sublessor, and SOFRO Fabrics, Inc., a Nevada corporation, as Sublessee (the "Flagstaff Sublease")

**SUBLEASE**

|     |                                                              | PAGE |
| --- | ------------------------------------------------------------ | ---- |
| 1.  | PREMISES..................................................... | 1    |
| 2.  | TERM ......................................................... | 1    |
| 3.  | BASIC RENT................................................... | 1    |
| 4.  | RESERVED..................................................... | 2    |
| 5.  | OPTION PERIODS.............................................. | 2    |
| 6.  | USE............................................................ | 2    |
|     | 6.1  Use..................................................... | 2    |
|     | 6.2  Compliance With Laws................................ | 2    |
|     | 6.3  Utilities............................................... | 2    |
|     | 6.4  Real Property Taxes; Maintenance.................. | 2    |
|     | 6.5  Insurance.............................................. | 3    |
|     | 6.6  Hazardous Substances................................ | 3    |
|     | 6.7  Quiet Enjoyment...................................... | 3    |
|     | 6.8  Indemnity............................................. | 3    |
|     | 6.9  Fixtures............................................... | 3    |
| 7.  | MASTER LEASE................................................ | 3    |
| 8.  | ASSIGNMENT AND SUBLEASE................................. | 6    |
|     | 8.1  Consent Required..................................... | 6    |
|     | 8.2  Procedures for Obtaining Sublessor's Consent...... | 6    |
|     | 8.3  Alternatives in Subletting or Assignment.......... | 6    |
|     | 8.4  Attorney's Fees...................................... | 7    |
| 9.  | SIGNS......................................................... | 7    |
| 10. | DEFAULTS; REMEDIES......................................... | 7    |
|     | 10.1 Defaults.............................................. | 7    |
|     | 10.2 Remedies.............................................. | 7    |
|     | 10.3 Late Charges......................................... | 8    |
|     | 10.4 Interest on Past-due Obligations................... | 8    |
|     | 10.5 3-Day Notice......................................... | 8    |
| 11. | MISCELLANEOUS.............................................. | 9    |
| 12. | NOTICES..................................................... | 10   |
| 13. | USE OF TRADE NAME........................................ | 11   |
| 14. | ESTOPPELS................................................... | 11   |

#1831

**SUBLEASE**

This Sublease is entered into as of the 10th day of December 19, 1991 by and between **ARDEN-MAYFAIR, INC.**, a Delaware corporation, hereinafter referred to as "Sublessor," and **SOFRO FABRICS, INC.**, a Nevada corporation, hereinafter referred to as "Sublessee".

**WHEREAS**, Sublessor is the Lessee under a Lease dated April 6, 1979 with White Pines Associates II, an Arizona Limited Partnership, as the Lessor, whose interest was subsequently purchased effective April 28, 1983 by Paul W. Learner, (hereinafter "Master Lessor") covering real property located at the NEC of Milton Road and University in the City of Flagstaff, County of Coconino, Arizona, having a supermarket building thereon (the "Premises"). A copy of the Master Lease is attached hereto as Exhibit A, and by this reference incorporated herein; and

**WHEREAS**, the lease term under the Master Lease commenced on August 18, 1982 and terminates August 31, 2007; and

**WHEREAS**, Sublessee has reviewed and approved the conditions of the Master Lease imposed upon the tenant therein; and has reviewed and inspected the Premises, the physical condition of the Premises, the suitability of the Premises for Sublessee's use, all restrictions thereon, and all matters concerning the Premises and has approved of same; and

**WHEREAS**, Sublessor desires to sublet and Sublessee desires to rent the Premises upon the terms and conditions contained in this Sublease;

**NOW, THEREFORE**, for valuable consideration and based upon the covenants and conditions set forth below, the parties hereto hereby agree as follows:

1. **Premises.** Sublessor hereby subleases to Sublessee and Sublessee hereby subleases from Sublessor, for the term, at the rental, and upon all the conditions set forth herein, that certain real property situated in the County of Coconino, State of Arizona, commonly known as the Fairview property as described in Exhibit B hereto and more specifically Sublessee's portion of said property as described and set forth in Exhibit C attached hereto and incorporated herein. Said real property as set forth in Exhibit C, but excluding any signs now existing on said real property, is hereinafter called the "Premises". Sublessor expressly disclaims and makes no representation or warranty regarding the square footage of the Premises or any other aspect of the Premises.

2. **Term.** The term ("Term") of this Sublease shall be for a period of 15 years and 8 months, beginning January 1, 1992 (the Commencement Date), but said Sublease shall terminate, except for Sublessee's effective exercise of the option or options as provided in Section 5 herein, on August 24, 2007. Unless sooner terminated pursuant to any provision hereof, the remainder of this Sublease and the "Term" of this Sublease shall refer to the above-mentioned Term plus any extension thereof pursuant to said options.

3. **Basic Rent.** Sublessee shall pay to Sublessor monthly rent ("Basic Rent") for the Premises of Eight Thousand Seven Hundred Sixty and No/100 Dollars ($8,760.00) during the Term. This rent is based on an agreed space of 17,520 square feet at fifty cents ($.50) per square foot per month. Basic Rent shall be payable on the first day of each calendar month, in advance, commencing on April 1, 1992. All Basic Rent and other rent and charges due under this Sublease shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may

1

from time to time designate in writing. All Basic Rent and other charges due under this Sublease shall be paid without demand, offset, deduction or notice.

4. **Reserved**. This paragraph number is reserved.

5. **Option Periods**. Sublessee shall have the identical option periods set forth in Paragraph II of the Master Lease, which is attached hereto as Exhibit A. During the option periods the Basic Rent shall increase by $.025 (two and one-half cents) per square foot per month for each five-year option period. Thus, for the period September 1, 2007 to August 31, 2012, the Basic Rent shall be $.525 (fifty-two and one-half cents) per square foot per month ($9,198.00); for the period September 1, 2012 to August 31, 2017, the Basic Rent shall be $.55 (fifty-five cents) per square foot per month ($9,636.00), and all other terms and provisions of this Sublease shall continue in full force and effect. In order to exercise these options, Sublessee or its successor in interest must give Sublessor unconditional written notice of such exercise on or before nine (9) months prior to the then current expiration date of the Term. Failure to timely and unconditionally exercise any option prior to such date shall automatically terminate that option and all subsequent options. Notwithstanding the foregoing, (i) in no event shall Sublessee be permitted to exercise any option if, at the time of exercise or on the day before the first day of the option period, an Event of Default by Sublessee exists or would exist with notice or passage of time or both, unless Sublessor has waived said Event of Default in writing; and (ii) in no event shall the Term, as so extended, extend beyond the term under the Master Lease.

6. **Use**.

6.1 **Use**. Notwithstanding anything set forth in Exhibit A, the Premises shall be used by Sublessee only for the purposes of wholesale and retail sales of any and all types of fabrics, notions, crafts and sewing machines and other items normally sold in a SOFRO FABRICS store (dba House of Fabrics). Sublessee may, with Sublessor's written approval, alter such use to another lawful use, provided that Sublessee is not then in default under this Sublease and provided that it informs Sublessor in writing of its intent to alter such use. Sublessor shall not unreasonably refuse Sublessee's request to alter its use of the Premises. Sublessee shall comply with all the terms of the Master Lease with respect to the use and operation of the Premises, except as provided in this Paragraph.

6.2 **Compliance With Laws**. Sublessee shall, at Sublessee's expense, secure all business licenses required for the operation of its business in the Premises and shall otherwise comply promptly with (i) all applicable statutes, ordinances, rules, regulations, orders, restrictions of record, and requirements in effect during the Term or any part of the Term hereof regulating the use by Sublessee of the Premises and (ii) all requirements under the Master Lease. Sublessee shall not use or permit the use of the Premises in any manner that will tend to create waste or a nuisance or, if there shall be more than one tenant of the building containing the Premises, which shall tend to disturb such other tenants.

6.3 **Utilities**. Included within Sublessee's obligations under Paragraph 7, Sublessee shall pay for all water, gas, heat, light, power, telephone and other utilities and services supplied to the Premises, together with any taxes thereon, during the term of this Sublease.

6.4. **Real Property Taxes; Maintenance**. Included within Sublessee's obligation under Paragraph 7, Sublessee shall pay to Sublessor within ten (10) days after receipt of Sublessor's written statement from Master Lessor all taxes which

2

Sublessor is required to pay to Master Lessor under the Master Lease for Sublessee's portion of the Premises. It is hereby agreed that Sublessee's portion of any expenses (including, but not limited to, property tax and insurance) pro-rated under the Master Lease is Fifty-Four and Fifty-Four One Hundreths Percent (54.54%). Sublessee shall be responsible for any and all other taxes related to Sublessee's use and/or occupation of the Premises, including but not limited to any business license fee or tax, whether now existing or assessed in the future. Sublessee's pro-rata share of real estate taxes is currently estimated at $26,766 per year. Sublessee's share of common area maintenance charges is set at a maximum of $.36 per sq. ft., or $6,307 per year until August 31, 1992. Thereafter, such charges increase by a maximum of $.06 per sq. ft. every five years throughout the term of the Sublease including any extensions thereof.

6.5. **Insurance**. Included within Sublessee's obligations under Paragraph 7, Sublessee shall pay Sublessor within ten (10) days after being billed therefor the cost of all insurance pertaining to Sublessee's portion of the Premises for which Sublessor is liable to Master Lessor under the Master Lease. Sublessee shall maintain in full force and effect general liability insurance required by the Master Lease which shall name Master Lessor and Sublessor as additional named insureds. A Certificate of Insurance shall be delivered to Sublessor on or before 12:00 noon on the Commencement date, and thereafter within thirty (30) days prior to the expiration, cancellation or material change in such insurance policy. Sublessee's pro-rata share of insurance charges is currently estimated at $2,922 per year.

6.6 **Hazardous Substances**. Sublessee shall keep the Premises free of all toxic substances and hazardous materials that are subject to regulation by any federal, state, or governmental body and will not use or permit to be used or stored on, about, under or around the Premises any such toxic substances or hazardous materials. Sublessee will comply with all laws, statutes, rules, and ordinances concerning such substances and materials. Sublessee will immediately deliver to Sublessor copies of any notices which may be received by Sublessee with respect to any such matter. This paragraph shall survive the termination of this Sublease.

6.7 **Quiet Enjoyment**. Upon Sublessee's payment of Basic Rent, other rent and other charges due under this Sublease, and its performance of the covenants and conditions hereof, Sublessee may quietly have, hold and enjoy the use and possession of the Premises during the Term hereof.

6.8 **Indemnity**. Sublessee agrees to indemnify and hold Sublessor harmless from all acts, injuries (both to property and person), and omissions on, in, around or about the Premises during the Term hereof which causes damage to the public at large by virtue of Sublessee's use of the Premises and for negligent acts attributed to Sublessee, its officers, agents, employees or third persons.

6.9 **Fixtures**. All non-permanent lighting, shelving, stationary furniture and equipment, and any other item of personal property installed by Sublessee shall not be construed as constituting a permanent fixture and shall be removed by Sublessee upon the termination of the Sublease. Sublessee shall be responsible for any repair to Premises made necessary by said removal of Sublessee's personal property.

7. **Master Lease**.

7.1 Except as set forth in Paragraph 7.2, this Sublease is and shall be at all times subject and subordinate to the Master Lease.

3

7.2    The terms, conditions and respective obligations of the Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease shall control over the Master Lease. Therefore for the purposes of this Sublease, wherever in the Master Lease, if applicable, the word "Lessor" or "Landlord" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease, if applicable, the work "Lessee" or "Tenant" is used it shall be deemed to mean the Sublessee herein.

7.3    During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease except where modified by this Sublease Agreement in accordance with Paragraph 7.2, and provided however Sublessee is given 30 days written notice of said obligation and is further given an additional 30 days to comply therewith.

7.4    The obligations under this Master Lease that Sublessee has assumed are hereinafter referred to as the "Sublessee's Assumed Obligations." The obligations that Sublessee has not assumed under Paragraph 7.3 hereof are hereinafter referred to as the "Sublessor's Remaining Obligations."

7.5    Sublessee shall hold Sublessor free and harmless of and from all liability, judgments, costs, damages, claims or demands, including reasonable attorney's fees, arising out of obligations and covenants under this Sublease and Sublessee's Assumed Obligations, provided however that this shall not extend to violations of the Master Lease by Sublessor, or Sublessor's negligent acts.

7.6    So long as Sublessee is not in default, Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject, however, to any earlier termination of the Master Lease without the fault of the Sublessor, and also subject to Sublessor's assignment of its interests as Lessee to the Master Lessor and its assignment of its interest as Sublessor of this Sublease to Master Lessor. In the event of such assignments, all of the terms of this Sublease and all of the terms of the Master Lease shall remain in effect with Master Lessor substituted for Sublessor, and Sublessor shall have no further liability to Sublessee.

7.7    Sublessor represents to Sublessee that as of the date hereof the Master Lease is in full force and effect.

7.8    Notwithstanding anything contained in this Sublease which may be to the contrary, it is understood and agreed by Sublessee that:

a)    Sublessor shall not be bound by any representation or warranty made by Master Lessor in the Master Lease, nor shall Sublessor be obligated to perform any of the terms, covenants and agreements in the Master Lease required to be performed by Master Lessor.

b)    Sublessor does not represent, warrant or agree that any services, repairs, maintenance or other work to be furnished, made, done or performed by Master Lessor under the Master Lease will, in fact, be furnished, made, done or performed.

c)    The only services, repairs, maintenance or other work or agreements which Sublessee shall be entitled to hereunder are those (if any) to which Sublessor is entitled under

4

the Master Lease, but Sublessee will look solely to Master Lessor for the furnishing or performance of the same and Sublessor hereby grants to Sublessee the non-exclusive right, under the Master Lease to receive such services, repairs, maintenance or other work or agreements from the Master Lessor as Sublessor is entitled to, but reserving unto Sublessor the right to make the same claim of Master Lessor on behalf of Sublessee or itself. Sublessee shall give Sublessor five (5) days written notice of its intent to make such claims directly to the Master Lessor.

    d) Sublessor shall in no event be liable to Sublessee nor shall Sublessee's obligations hereunder as to the payment of rent or otherwise be impaired by reason of any failure or delay on the part of the Master Lessor in furnishing any such services or performing any such repairs, maintenance, or other work. Sublessor shall use its reasonable best efforts to assist Sublessee in obtaining compliance from the Master Lessor, which, however, shall not include initiating litigation.

    e) Notwithstanding the terms and conditions contained in this Paragraph 7.8, specifically subparagraphs a., b., c., and d., in the event that Master Lessor fails to perform any of the duties and obligations set forth in the Master Lease dated April 6, 1979, and owed to Sublessor and to Sublessee by virtue of this Sublease, then in that event within ten days after written demand Sublessor agrees to assign all of the its right, title and interest including any security pertaining thereto to Sublessee so that Sublessee may enforce those specific rights, duties and obligations against Master Lessor or its successor in interest. Sublessor herein agrees to use every available legal means to assist Sublessee in its efforts to compel Master Lessor to comply with the Master Lease. Sublessee reserves all rights to pursue litigation against both Master Lessor and Sublessor in the event they fail to carry out their respective duties, liabilities and obligations under this Sublease Agreement.

   7.9 In the event the Master Lease is terminated (except for an assignment by Sublessor as noted above in Paragraph 7.6) pursuant to its terms for any reason, this Sublease shall automatically terminate as of the date upon which the Master Lease is so terminated. Upon any such termination of the Master Lease, all Basic Rent and other charges provided in the Sublease shall be prorated as of the date of such termination and all Basic Rent and other charges owing to Sublessor hereunder shall be paid to Sublessor, prorated as aforesaid, except that if this Sublease terminates as a result of a default of one of the parties under this Sublease or the Master Lease or both, the defaulting party shall be liable to the non-defaulting party for all mitigated damage suffered by the non-defaulting party as a result of such termination.

   7.10 Wherever in the Master Lease, the approval and/or consent of the Master Lessor is required, it is agreed between Sublessee and Sublessor that Sublessor will use its reasonable best efforts to secure the consent of the Master Lessor. Sublessor does not represent nor warrant that the approval and/or the consent of the Master Lessor will be obtained, but only that Sublessor will use its reasonable best efforts in presenting the Sublessee's request for such approval and/or consent.

   7.11 Except as provided herein, upon the surrender of the Premises, Sublessee shall comply with all terms and conditions of the Master Lease. Notwithstanding the foregoing, Sublessee agrees that upon the expiration of the Term of this Sublease, Sublessee shall surrender to Sublessor the Premises and all building improvements and alterations in good condition and broom clean (except for ordinary wear and tear occurring after the last necessary maintenance made by Sublessee), and Sublessee shall remove all its personal property before the termination date. Sublessee shall perform all restoration made necessary by the removal of Sublessee's personal property, which restoration

shall include the patching and filling of holes and repair of structural damage.

Sublessor may elect to retain or dispose of, in any manner it chooses, any of Sublessee's personal property not removed from the premises upon the termination of the Sublease term. Sublessee shall be liable for any reasonable costs incurred by Sublessor in disposing of Sublessee's personal property.

### 8. Assignment and Sublease.

8.1 **Consent Required**. Sublessee shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Sublessee's interest in this Sublease or in the Premises, without Sublessor's prior written consent, which Sublessor shall not unreasonably withhold. Any attempted assignment, transfer, mortgage, encumbrance or subletting without such consent shall be void and shall constitute a breach of this Sublease. Regardless of Sublessor's consent, no subletting or assignment shall release Sublessee of Sublessee's obligations or alter the primary liability of Sublessee to pay the rent and to perform all other obligations to be performed by Sublessee hereunder. The acceptance of rent by Sublessor from any other person shall not be deemed to be a waiver by Sublessor of any provision hereof. Consent to one (1) assignment or subletting shall not be deemed a consent to any subsequent assignment or subletting. For purposes of this Paragraph, any substantial sale of the assets of Sublessee not in the ordinary course of business shall be deemed a voluntary assignment; conversely, a sale or transfer of stock by Sublessee shall not be considered a voluntary assignment for purposes of this Paragraph. Sublessor's consent shall not be required for an assignment to any subsidiary or affiliate of Sublessee or to any company into which Sublessee has been merged or consolidated.

8.2 **Procedures for Obtaining Sublessor's Consent**. Notwithstanding anything to the contrary contained in this Section 8, in the event that Sublessee or any permitted sublessee or assignee of Sublessee (except as the context otherwise requires, all hereinafter referred to as "Sublessee" for purposes of this Section 8) shall intend to assign this Sublease or sublet any portion of the Premises or otherwise transfer the Sublease or any interest therein, Sublessee shall give Sublessor written notice of such intent (herein referred to as "Sublessee's Notice of Intent"), in strict accordance with the procedures hereinafter set forth. Sublessee's Notice of Intent shall: (a) set forth a date, herein referred to as the "Termination Date," upon which it is intended that a proposed sublease or assignment would become effective, which date shall not be less than ninety (90) days from the date that Sublessor receives Sublessee's Notice of Intent; (b) enclose a copy of the proposed assignment or sublease, setting forth all the terms and conditions thereof (which obligation shall be continuing in that Sublessee shall thereafter provide to Sublessor any modifications or amendments thereto); and (c) enclose sufficient information to enable Sublessor to determine the suitability of the proposed assignee or sublessee as a tenant, including but not limited to information regarding the financial ability and business experience of the proposed assignee or sublessee. If Sublessee is in default at time of requesting consent, said default must be cured before Sublessor need consider or respond to such request . If, during the thirty-six calendar months immediately preceeding the Notice of Intent, Sublessee has been in default on four or more occasions, Sublessor shall have the right to consider such defaults in making its determination whether or not to give its consent to any proposed sublease or assignment.

8.3 **Alternatives in Subletting or Assignment**. If Sublessee obtains Sublessor's consent to sublet or assign this Sublease, Sublessor, may at its option, terminate this Sublease

6

and enter into a new lease directly with the new Tenant or permit the Sublessee to make the assignment or subletting and retain all rentals from any new tenant. In the latter event, Sublessee shall remain fully responsible for all of the terms and conditions of this Sublease.

        8.4   **Attorney's Fees**.   In the event Sublessee shall request the consent of Sublessor to any assignment or subletting, then Sublessee shall pay Sublessor's reasonable attorney's fees incurred in connection therewith, not to exceed $500.00 for each such request. Such payment shall only apply to fees incurred with an outside (as opposed to in-house) attorney.

    9.   **Signs**.   Sublessee shall comply with all of the terms of the Master Lease with respect to signs and advertising.

    10.   **Defaults; Remedies**.

        10.1   **Defaults**.   The occurrence of any one or more of the following events shall constitute a material default and breach of this Sublease by Sublessee (sometimes herein referred to as an "Event of Default"):

        (a)   The abandonment of the Premises by Sublessee for a period of 30 days.

        (b)   The failure by Sublessee to make any payment of Basic Rent, other rent or any other payment required to be made by Sublessee hereunder, as and when due, where such failure shall continue for a period of five (5) days from the date of mailing of written notice thereof. Further, if such failure to make any payments shall occur four (4) times in any twelve (12) month period, then even if Sublessee has cured such failures within five (5) days after notice, Sublessor may deem such recurring failures to be a default.

        (c)   The failure by Sublessee to observe or perform any of the covenants, conditions or provisions of this Sublease to be observed or performed by Sublessee, other than described in subparagraph (b) above, where such failure shall continue for a period of fifteen (15) days after written notice thereof from Sublessor to Sublessee or such shorter period as provided in the Master Lease; provided, however, that if the nature of Sublessee's default is such that more than 15 days are reasonably required for its cure and such is allowed under the Master Lease, then Sublessee shall not be deemed to be in default if Sublessee commences such cure within said 15-day period and thereafter diligently prosecutes such cure to completion but in no event in more than 60 days.

        (d) (i) The making by Sublessee of any general arrangement or assignment for the benefit of creditors; (ii) Sublessee becomes a "debtor" as defined in 11 U.S.C. Section 101 or any successor statute thereto (unless, in the case of a petition filed against Sublessee, the same is dismissed within 60 days) or otherwise a petition in bankruptcy is filed by or against Sublessee; (iii) the appointment of a trustee or receiver to take possession of substantially all of Sublessee's assets located at the Premises or of Sublessee's interest in this Sublease, where possession is not restored to Sublessee within 30 days; (iv) the attachment, execution or other judicial seizure of substantially all of Sublessee's assets located at the Premises or of Sublessee's interest in this Sublease, where such seizure is not discharged within 30 days; or (v) Sublessee admits its inability to pay its debts as they become due. Provided, however, in the event that any provision of this Paragraph 10.1 (d) is contrary to any applicable law, such provision shall be of no force or effect.

        10.2 **Remedies**. In the event of any such default or breach by Sublessee, Sublessor may at any time after the notice periods, if any, provided above, with or without any further

notice or demand and without limiting Sublessor in the exercise of any right or remedy which Sublessor may have under this Sublease or the Master Lease by reason of such default or breach, do any or all of the following:

(a) Terminate Sublessee's right to possession of the Premises by any lawful means (in the event that SOFRO FABRICS, INC. is in possession and is operating its business on the premises, termination of Sublessee's right of possession shall be pursuant to court order), in which case this Sublease shall terminate and Sublessee shall immediately surrender possession of the Premises to Sublessor. In such event Sublessor shall be entitled to recover from Sublessee all reasonable damages incurred by Sublessor by reason of Sublessee's default, including but not limited to, the reasonable cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, and any real estate or broker's commission actually paid, and the worth of the amount by which the unpaid rent for the balance of the Term after the time of such termination exceeds the amount of such rental loss for the same period that Sublessee proves could be reasonably avoided, together with all other amounts permitted to be recovered under the laws of the state of Arizona.

(b) Maintain Sublessee's right to possession in which case this Sublease shall continue in effect whether or not Sublessee shall have abandoned the Premises. In such event Sublessor shall be entitled to enforce all of Sublessor's rights and remedies under this Sublease, including the right to recover the Basic Rent and other charges as they become due hereunder.

(c) Pursue any other remedy or recover any other damage now or hereafter available to Sublessor under the laws or judicial decisions of the State of Arizona.

(d) If Sublessee fails to perform any obligation required, Sublessor may pay or perform same without waiving Sublessee's default.

10.3 <u>Late Charges</u>. Sublessee hereby acknowledges that late payment by Sublessee to Sublessor of Basic Rent, other rent and other sums due hereunder will cause Sublessor to incur costs not contemplated by this Sublease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed on Sublessor by the terms of the Master Lease. Accordingly, if any installment of rent or any other sum due from Sublessee shall not be received by Sublessor or Sublessor's designee within five (5) days following receipt of written notice that same is due, then Sublessee shall pay to Sublessor a late charge equal to five (5%) of such overdue amount. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Sublessor will incur by reason of late payment by Sublease. Acceptance of such late charge by Sublessor shall in no event constitute a waiver of Sublessee's default with respect to such overdue amount, nor prevent Sublessor from exercising any of the other rights and remedies granted hereunder.

10.4 <u>Interest on Past-due Obligations</u>. Rent or other amounts due to Sublessor not paid when due shall bear interest from the date due at the rate of the lesser of ten percent (10%) per annum, or at a maximum rate equal to the prime rate of Bank of America, or the maximum rate allowed by applicable law. Payment of such interest shall not excuse or cure any default by Sublessee under this Sublease; provided, however, that interest shall not be payable on late charges incurred by Sublessee.

10.5 <u>3-Day Notice</u>. In the event that Sublessor serves Sublessee with a notice to pay rent or quit pursuant to

8

applicable unlawful detainer statutes, such notice to pay rent or quit shall also constitute any notice required by this Sublease.

11. **Miscellaneous.**

   11.1    Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for damages or for declaratory or other relief hereunder, the prevailing party shall be entitled to receive from the losing party, in addition to court costs, reasonable attorneys' fees as adjudged by the Court for services rendered to said prevailing party in connection with such action or proceeding, and said amount may be made a part of the judgment against the losing party.

   11.2    Submission of this instrument by or on behalf of Sublessor for examination or execution by Sublessee does not constitute a reservation of or option for Sublease, and this instrument shall not be effective until executed and delivered by both Sublessor and Sublessee.

   11.3    The captions shown on this Sublease are for convenience or reference only, and shall not, in any manner, be utilized to construe the scope or the intent of any provisions thereof.

   11.4    Nothing contained in this Sublease shall be deemed or construed as creating a partnership or joint venture between Sublessor and Sublessee or between Sublessor and any other party or cause Sublessor to be in any manner responsible for the debts or obligations of Sublessee, or any other party.

   11.5    If any provision of this Sublease shall be determined to be void or voidable by any court of competent jurisdiction, such determination shall not affect any other provisions of this Sublease and all such provisions shall remain in effect. It is the intention of the parties hereto that if any provision of this Sublease is capable of two constructions, one of which would render the provision void or voidable, the provision shall have the meaning which renders it valid.

   11.6    Unless some other meaning and intent are apparent from the context, the plural shall include the singular and vice versa; masculine, feminine and neuter words shall be used interchangeably.

   11.7    The laws of the State of Arizona shall govern the validity, performance and enforcement of this Sublease and any dispute arising hereunder shall be litigated in the State of Arizona. Although the printed provisions of this Sublease were prepared and drawn by Sublessor, this Sublease shall not be construed either for or against Sublessor or Sublessee, but its construction shall be at all times in accord with the general tenor of the language so as to reach a fair and equitable result.

   11.8    A waiver of any breach or default shall not be a waiver of any other breach or default. Sublessor's consent to or approval of any act by Sublessee requiring Sublessor's consent or approval shall not be deemed to waive or render unnecessary Sublessor's consent to or approval of any subsequent similar act by Sublessee. The acceptance by Sublessor of any rental or other payments due hereunder with knowledge of the breach of any of the covenants of this Sublease by Sublessee shall not be construed as a waiver of any such breach. The acceptance at any time or times by Sublessor of any sum less than that which is required to be paid by Sublessee shall, unless Sublessor specifically agrees otherwise in writing, be deemed to have been received only on account of the obligation for which it is paid, and shall not be deemed an accord and satisfaction notwithstanding any provisions to the contrary written on any check or contained in a letter of transmittal.

9

11.9     All agreements herein by Sublessee, whether expressed as covenants or conditions, shall be deemed to be conditions for the purposes of this Sublease.

11.10    All persons executing this Sublease on behalf of Sublessee represent and warrant to the Sublessor that:  (a) they have the authority to execute this Sublease on behalf of Sublessee;  (b)  Sublessee is a valid and existing corporation; (c)  All things necessary to qualify Sublessee to do business in Arizona have been accomplished prior to the date of this Sublease;  (d)  All franchise and other corporate taxes have been paid to the date of this Sublease; and  (e)  All forms, reports, fees and taxes required to be filed or paid by Sublessee in compliance with applicable laws will be filed and paid when due.

11.11    The entire agreement between the parties hereto is set forth in this Sublease, and any agreement hereafter made shall be ineffective to change, modify, alter or discharge it in whole or in part unless such agreement is in writing and signed by both parties.  It is further understood that there are no oral agreements between the parties hereto affecting this Sublease, and that this Sublease supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understandings, if any, between said parties or displayed by Sublessor to Sublessee with respect to the subject matter of this Sublease, and none of the same shall be available to interpret or construe this Sublease.  All negotiations and oral agreements acceptable to both parties hereto have been merged into and are included in this Sublease.

11.12    Time is of the essence with respect to the performance of each of the covenants and agreements of this Sublease.

11.13    This Sublease shall apply to and bind the successors and assigns of the parties hereto.

11.14    No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

11.15    Sublessor shall deliver the premises "as is" to Sublessee on or before January 1, 1992, and provide written notice to Sublessee of such delivery.  In the event Sublessor fails to provide such notice by the date set forth, then Sublessee at its option may cancel this Lease by written notice to Sublessor within five (5) days therefrom.

11.16    Sublessor warrants and represents to Sublessee that it shall not do or fail to do any act required of it as Lessee that will result in Sublessor being placed in default by Master Lessor.  In the event Sublessor breaches this provision, Sublessee shall have the right to cure the breach and deal directly with the Master Lessor, after written notice to Sublessor.

11.17    Sublessor warrants that it has the right to enter into this Sublease Agreement and that any consent of Master Lessor has been or will have been obtained prior to delivery of the fully executed Sublease.

11.18    Sublessor may, during the last ninety (90) days of the Lease Term (including any extensions thereof), post a "For Rent" or "For Lease" sign on the Premises.

12.  **Notices**.  Any and all notices, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to the other party if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested.  If such notice, demand or other communication be served personally, service shall be conclusively

deemed made at the time of such personal service. If such notice, demand or other communication be given by mail, such shall be conclusively deemed given forty-eight (48) hours after the deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as hereinafter set forth:

>To Sublessor:     Arden-Mayfair, Inc.
>                  Attn: Real Estate Department
>                  P.O. Box 2256
>                  Los Angeles, California 90051
>
>With copy to:     Arden Group, Inc.
>                  Attn: Chief Financial Officer
>                  P.O. Box 2256
>                  Los Angeles, California 90051
>
>To Sublessee:     Sofro Fabrics, Inc.
>                  Attn: Legal Department
>                  P.O. Box 9110
>                  Van Nuys, California 91409

Any party hereto may change its address for the purpose of receiving notices, demands and other communications as herein provided by a written notice in the manner aforesaid to the other party or parties hereto. Each party agrees promptly to provide the other with copies of all notices and demands sent to or received from the Master Lessor including but not limited to, notices of default.

13. **Use of Trade Name**. Sublessee shall not use the name "Arden-Mayfair," or "Mayfair," or "A-M" in connection with its business operations nor in any way or manner imply that Sublessee's business is operated by Arden-Mayfair, Inc. or Mayfair Markets.

14. **Estoppels**. Sublessee will execute and deliver from time to time estoppel statements or certificates as to the status of this Sublease as Sublessor may require, and Sublessor or any prospective purchaser of Sublessor's interest or lender may rely thereon. Sublessee shall execute and deliver same within fifteen (15) days after Sublessor's written request.

| SUBLESSOR: | SUBLESSEE: |
|---|---|
| ARDEN-MAYFAIR, INC., a Delaware corporation | SOFRO FABRICS, INC. a Nevada corporation |
| By: _/s/ M. H. Barker_ | By: _/s/ Gary L. Larkins_ |
| M. H. BARKER | Gary L. Larkins |
| Title: Vice President | Title: President |

c:\SoFabric

11