**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 31, 2025, 9:30 a.m.**<br>**Related to Docket Nos. 429, 760, 859, and 930** |

---------------------------------------------------------x

### SUPPLEMENTAL OBJECTION OF DLC MANAGEMENT CORPORATION TO PROPOSED LEASE ASSIGNMENT

DLC Management Corporation, as managing agent for Spring Creek Owner, LLC (the "Landlord"), by and through its undersigned counsel, hereby files this supplemental objection (the "Objection") to the *Amended Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [D.I. 930] (the "Amended Notice of Assumption and Assignment") and respectfully represents as follows:

### BACKGROUND

1.      On January 15, 2025 (the "Petition Date"), JOANN Inc. and its debtor affiliates in the above-captioned chapter 11 cases (the "Debtors" and each, a "Debtor") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

2.      The Landlord and Debtor Jo-Ann Stores, LLC through predecessors-in-interest, are parties to an unexpired lease of non-residential real property dated January 13, 2010 (the "Joann Lease"), excerpts of a true and correct copy of which are attached hereto collectively as **Exhibit 1**, located in a portion (the "Premises") of the Spring Creek Centre shopping center in Fayetteville, Arkansas (the "Shopping Center").

3.      The Premises is located within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.      On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [D.I. 16] (the "Assumption and Assignment Procedures Motion"), seeking to establish procedures governing, among other things, the future assumption and assignment of unexpired leases of non-residential real property.

5.      On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [D.I. 17] (the "Sale Motion"), seeking to establish procedures governing, among other things, the potential sale or sales of substantially all of the Debtors' assets.

6.      On February 14, 2025, the Court entered the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting*

*Related Relief* [Docket No. 429] ("<u>Assumption and Assignment Procedures Order</u>"), which granted the Assumption and Assignment Procedures Motion.

7.    On February 16, 2025, the Court entered the *Order (I) Approving Bidding Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Stalking Horse Agreement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [D.I. 446], which granted the procedural aspects of the Sale Motion.

8.    On February 22, 2025, the Debtors filed the *Notice of Winning Bidder for Certain of the Debtors' Assets* [D.I. 480].

9.    On February 26, 2025, the Court entered the *Order (A) Approving and Authorizing the Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [D.I. 520] (the "<u>Sale Order</u>"). The Sale Order approved the purchase of the Debtors' assets, including the right to designate unexpired leases of non-residential real property for assumption and assignment, by parties including GA Joann Retail Partnership, LLC ("<u>GA Group</u>").

10.    On April 22, 2025, GA Group, through its advisor A&G Realty Partners, LLC, conducted an auction for the Debtors' then-remaining unexpired leases of non-residential real property.

11.    On April 28, 2025, the Debtors filed the *Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [D.I. 760] ("<u>First Notice of Assumption and Assignment</u>") indicating their intent to assume and assign the Lease to Burlington Coat Factory

Warehouse Corporation ("Burlington" or "Assignee") under the terms of the Assumption and Assignment Procedures Order with a proposed assumption and assignment date of June 1, 2025.

12.    On May 12, 2024, the Landlord filed an objection to the First Notice of Assumption and Assignment [D.I. 859] (the "Initial Objection").

13.    On May 16, 2025, the Debtors filed the Amended Notice of Assumption and Assignment which, among other things, included a proposed form of order governing the proposed assumption and assignment of various leases, including the Joann Lease.

14.    The Landlord received a letter (the "Ross Letter") from Ross Dress For Less, Inc. ("Ross"), another tenant of the Landlord at the Shopping Center under a lease dated February 28, 2024 (the "Ross Lease"), raising the prospect that the proposed assumption and assignment of the Joann Lease to the Assignee may violate the rights afforded to Ross under the Ross Lease. A true and correct copy of the Ross Letter is attached hereto as **Exhibit 2** and a true and correct copy of excerpts of the Ross Lease are attached hereto as **Exhibit 3**.

15.    On July 15, 2025, the Debtors filed a notice of hearing on the Amended Notice of Assumption and Assignment [D.I. 1405], which set the hearing on the Initial Objection for July 31, 2025 at 10:00 a.m.

16.    On July 25, 2025, the Plan Administrator filed a notice changing the July 31 hearing time from 10:00 a.m. to 9:30 a.m. [D.I. 1446].

### OBJECTION

17.    Before assuming an unexpired lease that is in default such as the Lease, a debtor must provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[2]

---

[2] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an … unexpired lease of the debtor, the trustee may not assume such … lease unless, at the time of assumption of such … lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default … (B) compensates, or provides adequate

18.     Section 365(b)(3) of the Bankruptcy Code sets forth additional, heightened requirements for adequate assurance of future performance under a shopping center lease such as the Joann Lease, including "that assumption or assignment of such lease is subject to all of the provisions thereof, including (but not limited to) provisions such as a . . . *use . . . or exclusivity* provision, and will not breach any such provision contained in *any other lease . . . relating to such shopping center . . .* " such as the Ross Lease. 11 U.S.C. § 365(b)(3)(C) (emphasis added); *see, e.g.*, *In re Toys "R" Us, Inc.*, 587 B.R. 304, 311 (Bankr. E.D. Va. 2018) (where the court permitted the assignment of the lease to Burlington where the lease at issue did not sufficiently restrict the use of the premises by the debtor or its assignee); *In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 837 (Bankr. D. Del. 1998) (where the court found the restrictive use provisions unenforceable because they functioned as de facto anti-assignment provisions). In accordance with these requirements, a debtor-in-possession or assignee must assume a contract *cum onere*, subject to all its burdens and benefits. *See In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d Cir. 2007); *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 252 (3d Cir. 2003).

19.     The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of proof as to all issues under Section 365. *See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 129 (3d Cir. 2001); *Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The Debtors bear the burden of proving the requirements of Section 365(b) as to all issues by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Prestige Motorcar*

---

assurance that it will promptly compensate … [the landlord] for any actual pecuniary loss … resulting from such default, and (C) provides adequate assurance of future performance under such … lease." 11 U.S.C. § 365(b)(1).

*Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization."); *In re Widmier*, Case No. 00-40244, 2003 Bankr. LEXIS 2220, *1, *8 (Bankr. D. Idaho Nov. 18, 2003) ("When the Court granted approval of Debtors' request to assume Creditor's lease under § 365(a), a determination was made by the Court that the assumption benefitted the bankruptcy estate . . . .").

20.    Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986). Such assurance must be practical and grounded in concrete evidence such as the assignee's financial strength, business experience, and ability to fulfill all lease obligations. *See Fleming Companies, Inc.*, 499 F.3d at 308-09; *Cinicola*, 248 F.3d at 120.

21.    This requirement for adequate assurance is bolstered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which amended Bankruptcy Code Section 365(f)(1) to clarify that its provisions do not supersede the requirements of Section 365(b). 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). These amendments specifically preserve a landlord's right to enforce use and other material lease provisions. As a result, Congress recognized that "[a] shopping center operator ... must be given broad leeway to determine the mix of retail tenants it leases to." *Id*. Although Section 365(f)(1) authorizes the assumption and assignment of leases notwithstanding lease restrictions, Bankruptcy Courts within and outside of the Third Circuit have recognized limits on this authority, particularly in the context of shopping center leases. As a result, courts require that any assignment remain subject to all lease provisions—including use, radius, exclusivity, tenant mix, tenant balance, and protection against

substantial declines in percentage rents—to protect landlords' legitimate interests. *See, e.g.*, *Three A's Holdings*, 364 B.R. 550, 559-61 (Bankr. D. Del. 2007); *In re Ames Dep't Stores, Inc.*, 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990) ("When a shopping center lease is assigned in bankruptcy, Congress's purpose in Section 365(b)(3)(C) is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are spelled out in the lease with the debtor-tenant.").

22.    The Ross Letter states that the assignment of the Joann Lease to the proposed assignee may be a violation of Section 15.3 of the Ross Lease. Section 15.3(a) of the Ross Lease provides, in part, that no other occupant of the Shopping Center may use its premises for the "Off Price Sale . . . of apparel and/or home goods merchandise." Ross Lease, § 15.3(a), p. 62. It goes on to provide that, if this is violated, a "Protection Violation" would occur and Ross would be permitted to terminate the Ross Lease or pay "Substitute Rent", the latter of which is "the lesser of (a) Minimum Rent, or (b) two percent (2%) of Tenant's Gross Sales during the preceding month" and which "shall be paid in lieu of Minimum Rent and Reimbursements."  Ross Lease, § 15.3(a), p. 62; Ross Lease, § 2, p.13.

23.    Section 15.3(b)(i) of the Ross Lease provides, in part, that "[n]otwithstanding the provisions of Section 15.3(a) above, the following exceptions to the Protection Violation shall be applicable", one of which is that

> (i) [t]he tenants and occupants operating in the Landlord's Parcel . . . under the Existing Leases (including renewals thereof) listed on **Exhibit K** shall not be subject to the use restriction set forth in Section 15.3(a) above. However, if Landlord has the right of consent to any change in use of the premises occupied by a tenant or occupant operating under an Existing Lease, Landlord shall not consent to any use in such premises in violation of the use restriction(s) set forth in Section 15.3(a) above.

Ross Lease, § 15.3(b)(i), p. 63. Similarly, the Ross Letter provides that "[w]hile the Protection provision does contain an exception for Existing Leases, the exception only extends to the assignees or sublessees of Existing Leases to the extent Landlord does not have the right under the JoAnn Lease to withhold consent to such assignment or sublease or to any change in use that is otherwise not permitted under the JoAnn Lease." Ross Letter, p. 1.

24.     In *Toys "R" Us*, the court addressed a nearly identical issue where a debtor sought to assign a shopping center lease to Burlington despite an exclusivity provision in a Ross lease entered into with the landlord subsequent in time to the lease with Toys "R" Us. *Toys "R" Us, Inc.*, 587 B.R. at 310. The court permitted the assignment, finding that "the language of the [Toys "R" Us] Lease does not restrict the use of the Premises by TRU or its assignee" and that the Toys "R" Us lease "contains no provision that requires compliance with the Ross Lease use restrictions." *Id*. at 308, 310. The court also relied on that the fact that "[t]he provision prohibiting [the landlord] from allowing a tenant to use the Premises to sell off-price apparel applies only if [the landlord] 'has the capacity to do so.'" *Id*. at 310. The court found that the landlord did not have the capacity to "prevent Burlington's use." *Id*.

25.     On Exhibit K of the Ross Lease, JOANN Fabric & Crafts is listed as an existing tenant under an existing lease that is not subject to the restrictions set forth in Section 15.3(a) of the Ross Lease. Ross Lease, Ex. K.

26.     The Joann Lease provides that the Premises "may be used for any lawful retail purpose, provided such purpose is not in violation of any existing exclusives, prohibited or restricted uses as set forth on Exhibit F." Joann Lease, § 10(a), p. 29. The Joann Lease also sets forth certain circumstances under which the Joann Lease may be assigned, which are as follows:

> Tenant has the right to assign this Lease…for any lawful retail
> purpose that does not violate any of the then current exclusives

and/or restrictions applicable to the Shopping Center with the prior written consent of Landlord, which consent must not be unreasonably conditioned, withheld, or delayed, and which consent must not be denied in any event where (i) such assignment…does not violate any existing exclusive or restrictions of another tenant or occupant from the Shopping Center Parcel existing at the time of the proposed assignment…; (ii) Tenant remains responsible for the payment of rent, unless expressly released in writing by Landlord, as determined by Landlord in Landlord's sole discretion; *and* (iii) in the case of assignment, such assignee assumes in writing all the terms and provisions of this Lease to be performed or observed by Tenant….

Joann Lease § 21, p. 42 (emphasis added). The Joann Lease goes on to provide that, "[n]otwithstanding the foregoing, Tenant may assign this Lease…without the prior consent of Landlord…to…any entity that acquires a substantial number of Tenant's stores either generally or in the metropolitan area where the Demised Premises are located." Joann Lease, § 21, p. 42. These provisions provide the framework relevant to evaluating the scope of the Landlord's consent rights under the Joann Lease.

27.    Accordingly, the Landlord requests a ruling from the Court on whether the Landlord has the right to withhold consent to the proposed assumption and assignment of the Joann Lease to Burlington so as to determine whether an exception to a Protection Violation applies under the Ross Lease.

## **RESERVATION OF RIGHTS**

28.    The Landlord reserves its rights with respect to any proposed assumption and assignment of the Joann Lease and the proposed assumption and assignment order and other related documents.

29.    The Landlord reserves its rights to supplement this Supplemental Objection and make such other and further responses or objections as it deems necessary or appropriate,

including, but not limited to, objecting to assumption and assignment of the Joann Lease on any grounds.

**WHEREFORE**, the Landlord respectfully requests that the Court enter an order consistent with this Supplemental Objection and grant the Landlord any additional and further relief the Court deems just and proper.

Dated:  July 29, 2025
       Wilmington, Delaware

**BALLARD SPAHR LLP**

By:  */s/ Laurel D. Roglen*
Leslie C. Heilman, Esq. (DE No. 4716)
Laurel D. Roglen, Esq. (DE No. 5759)
919 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone:  (302) 252-4465
E-mail:  heilmanl@ballardspahr.com
E-mail:  roglenl@ballardspahr.com

-and-

**BARCLAY DAMON LLP**

Kevin M. Newman, Esq.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone:  (315) 413-7115
E-mail:  knewman@barclaydamon.com

Scott L. Fleischer, Esq.
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5810
E-mail:  sfleischer@barclaydamon.com

*Counsel to DLC Management Corporation, as managing agent for Spring Creek Owner, LLC*