# **<u>EXHIBIT 1</u>**

# LEASE AGREEMENT

Between

### DDR MDT FAYETTEVILLE SPRING CREEK LLC
"Landlord"

and

### Jo-Ann Stores, Inc.
"Tenant"

Dated: ~~December ___, 2009~~ January 13, 2010

## SECTION 10

## USE AND OPERATION

(a) The Demised Premises may be used for any lawful retail purpose, provided such purpose is not in violation of any existing exclusives, prohibited or restricted uses as set forth on Exhibit F.

(b) Within the five (5) month period following Landlord's delivery of the Demised Premises to Tenant, subject to an Unavoidable Delay, Tenant shall open its store for business, fully fixtured, stocked and staffed as a typical Jo-Ann Fabric and Craft store for at least one (1) day ("Operation Period"). After the Operation Period, Tenant shall have the right, in its sole discretion, to cease operations at the Demised Premises by delivering written notice thereof to Landlord, and thereafter shall be under no duty or obligation, either expressed or implied, to open, reopen, remain open, operate, or thereafter to continually conduct business from the Demised Premises at any time during the Term. After the Operation Period, Tenant's failure to open, reopen, remain open, operate, or thereafter to continually conduct business from the Demised Premises will not in any way be deemed an event of default under this Lease, nor will such failure otherwise entitle Landlord to begin or to maintain any action, suit or proceeding, whether in law or in equity, relating in any way to Tenant's failure to open, reopen, remain open, operate, or thereafter to continually conduct business from the Demised Premises.

(c) If at anytime during the Term, all or substantially all of the Demised Premises are not open for business to the public for a period of one hundred eighty (180) consecutive days for any reason other than an event of casualty or eminent domain, permitted remodeling or assigning or subletting (provided, however, in no event shall the Demised Premises be vacant for more than ninety (90) days due to remodeling or assigning/subletting), then Landlord shall have the right, but not the obligation, to recapture the Demised Premises by providing thirty (30) days' written notice to Tenant ("Notice of Recapture"). Landlord's Notice of Recapture shall set forth a date (the "Recapture Termination Date") for the termination of this Lease, and upon such date, this Lease shall be null and void and of no further force or effect, except for accrued liabilities by either party which shall survive termination of this Lease and any other obligation of either party that expressly survives the expiration or earlier termination of this Lease. Notwithstanding the foregoing, within thirty (30) days after delivery of the Notice of Recapture, Tenant shall have the right, but not the obligation, to delivery written notice to Landlord electing to re-open for business in one hundred percent (100%) of the Demised Premises, fully fixtured, stocked and staffed, in which case, such Notice of Recapture shall be null and void and of no further force and effect, provided that Tenant actually re-opens for business as set forth in this sentence within sixty (60) days after the delivery of the Notice of Recapture. On or prior to the Recapture Termination Date, Landlord shall pay to Tenant the unamortized portion of the cost of Tenant's initial leasehold improvements constructed within the Demised Premises prior to the Commencement Date (excluding the cost of any improvements constructed by or on behalf of Tenant by using the actual Tenant Allowance paid to or on behalf of Tenant by Landlord in accordance with the requirements of this Lease), the

set forth above. If space on Pylon Sign #1 is not available despite Landlord's commercially reasonable efforts, Landlord shall use commercially reasonable efforts to obtain any governmental and third party approvals necessary so that Tenant may, at Tenant's sole cost and expense, install identification panels on Pylon Sign #2 in the position designated on Exhibit D-1. Tenant shall be responsible for the fabrication, installation and replacement of its identification panels at its sole cost and expense. If Tenant shall at any time erect its identification panels on the Pylon Sign, Tenant shall have the right, at Tenant's sole cost and expense, to replace its Pylon Sign panels in the event Tenant shall change its trade name, subject to compliance with the requirements of Exhibit "D-4" and all applicable Laws. Any change and/or modification to Tenant's signage as shown in the approved sign package included in Exhibit "D" and/or as otherwise shown on Exhibit "D-1" shall require Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

## SECTION 21

## ASSIGNMENT AND SUBLETTING

Tenant has the right to assign this Lease or sublet all or any part of the Demised Premises for any lawful retail purpose that does not violate any of the then current exclusives and/or restrictions applicable to the Shopping Center with the prior written consent of Landlord, which consent must not be unreasonably conditioned, withheld or delayed, and which consent must not be denied in any event where (i) such assignment or subletting does not violate any existing exclusive or restrictions of another tenant or occupant from the Shopping Center Parcel existing at the time of the proposed assignment or sublease; (ii) Tenant remains responsible for the payment of rent, unless expressly released in writing by Landlord, as determined by Landlord in Landlord's sole discretion; and (iii) in the case of assignment, such assignee assumes in writing all the terms and provisions of this Lease to be performed or observed by Tenant, and in the case of a sublease, such sublessee acknowledges and agrees in writing to comply with all of the terms and provisions of this Lease to be performed or observed by Tenant. Notwithstanding the foregoing, Tenant may assign this Lease or sublet all or any part of the Demised Premises, in each case without the prior consent of Landlord, to: (1) a parent; subsidiary; affiliated entity; successor to Tenant; (2) or the parent of Tenant by way of merger, reorganization, consolidation, corporate restructuring, purchase of stock or assets, or the like; or (3) any entity that acquires a substantial number of Tenant's stores either generally or in the metropolitan area where the Demised Premises are located. Tenant may also sublet, without the consent of Landlord, not more than thirty percent (30%) of the Gross Leasable Area of the Demised Premises for the operation of one or more departments within the business operation of Tenant. Within 15 business days after the receipt of a written request from Tenant, Landlord must deliver to Tenant notice of any restrictions on the use of the Demised Premises enforceable by any other tenants of the Shopping Center Parcel. Failure to deliver to Tenant a list of any restrictions will constitute Landlord's covenant that there are not restrictions on the use of the Demised Premises for any use and Landlord must indemnify, defend and hold Tenant harmless if there actually is a restriction. If Tenant sublets a portion of the Demised Premises in such a way that the sublet space is separated from the rest of the Demised Premises by demising walls and/or a separate entrance, then at least sixty (60) days prior to the expiration or termination of this Lease, Tenant shall deliver written notice thereof to Landlord and Landlord shall have thirty (30) days after receipt of such notice to advise Tenant whether or not Tenant is required, at Tenant's sole cost and expense, to remove such demising walls and/or separate entrance and return the Demised