# **EXHIBIT 3**

THIS LEASE (the "Lease") is made as of the Effective Date by and between Landlord and Tenant who are designated in Section 1.2 hereof. Landlord and Tenant hereby agree as follows:

1. SALIENT LEASE TERMS

**1.1. Effective Date.**

_February 28, 2024_.

**1.2. Parties/Addresses.**

    1.2.1.  Landlord:  **Spring Creek Improvements, LLC,**
                                a Delaware limited liability company

        (a)  Address for all notices (other than invoices), including notices of default and notices pertaining to disputed invoices:

| | |
|---|---|
| Address: | c/o DLC Management Corporation |
| | 565 Taxter Road |
| City/State/Zip: | Elmsford, New York 10523-2303 |
| | Attn: General Counsel |
| Facsimile #: | (914) 631-6533 |
| Phone #: | (914) 631-3131 |

        (b)  **Address for** all payments of Rent under this Lease:

| | |
|---|---|
| Address: | c/o DLC Management Corporation |
| City/State/Zip: | P.O. Box 746482, Atlanta, Georgia 30374-6482 |
| Initial Contact Name: | Dan Nieman |

Landlord's Taxpayer I.D. #: 47-2136327

    1.2.2.  Tenant:  **ROSS DRESS FOR LESS, INC.,**
                           a Virginia corporation

        (a)  Address for all invoices for Rent and Reimbursements due under this Lease, and change of Landlord or Payee, or change of Landlord's or Payee's address:

| | |
|---|---|
| Address: | 5130 Hacienda Drive |
| City/State/Zip: | Dublin, CA  94568-7579 |
| Attention: | **Property Management Department** |
| Facsimile #: | (925) 965-4865 |
| Phone #: | (925) 965-4400 |

that is one hundred fifty (150) days following the date that the applicable Health Emergency Order is no longer in effect.

**15.3. Protection.**

(a)     Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of Landlord's Parcel (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall not permit any other tenant or occupant of Landlord's Parcel to use its premises for the Off Price Sale (as hereinafter defined) of apparel and/or home goods merchandise. For purposes of this Section 15.3, "Off Price Sale" shall mean the retail sale of apparel and/or home goods merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer's everyday price. (As of the Effective Date, examples of Off Price Sale retailers include such retailers as T.J. Maxx, Marshalls, HomeGoods, Sierra, Homesense, Fallas Paredes, Nordstrom Rack, Factory 2U, Burlington, Macy's Backstage, Burkes Outlet, Gabes, and Bealls Outlet.) If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close of each calendar month. The parties agree that the monetary damages to be suffered by Tenant as a result of a breach by Landlord (or Landlord's tenant(s)) of the provisions of this Section 15.3 are difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best estimate by the parties of the amount of such damage. If Tenant elects to terminate this Lease as provided in this Section 15.3, this Lease shall terminate on a date indicated by Tenant in its notice of termination, which in no event shall be sooner than thirty (30) nor later than ninety (90) days after the date of Tenant's notice of termination. In the event of termination, Landlord shall be obligated to pay Tenant for the Unamortized Cost of Tenant's leasehold improvements in the Store, which costs Tenant agrees to specify in its notice of termination. If Tenant elects to pay Substitute Rent, (a) such payment of Substitute Rent shall be retroactive to the date any such Protection Violation commenced, and Tenant shall deduct any overpayments of Rent from Rent coming due under this Lease, and (b) at such time as all such Protection Violations cease (the "Cure Date"), Rent shall resume at the rate which would have pertained at the Cure Date had the Protection Violation not occurred. The provisions of this Section 15.3 shall apply to any subsequent Protection Violation. Notwithstanding the foregoing, if a Protection Violation is not due to Landlord's act or omission (but is due to the act of another tenant or occupant of the Shopping Center) and provided that Landlord diligently pursues all rights and remedies available to Landlord to cause such a Protection Violation to cease (including the commencement of litigation), then in such event, Tenant shall defer exercising its right to pay Substitute Rent for a period not to exceed ninety (90) days and shall defer exercising its right to terminate this Lease for a period not to exceed one hundred eighty (180) days after the date the Protection Violation commences. If Landlord fails to cure the Protection Violation prior to the expiration of the applicable ninety (90) day period or one hundred eighty (180) day period, then Tenant shall be permitted to immediately exercise its remedies hereunder.

(b)     Exceptions. Notwithstanding the provisions of Section 15.3(a) above, the following exceptions to the Protection Violation shall be applicable:

(i) <u>Existing Leases</u>. The tenants and occupants operating in Landlord's Parcel as of the Effective Date (including TJ Maxx) under the Existing Leases (including renewals thereof) listed on **Exhibit K** shall not be subject to the use restriction set forth in Section 15.3(a) above. However, if Landlord has the right of consent to any change in use of the premises occupied by a tenant or occupant operating under an Existing Lease, Landlord shall not consent to any use in such premises in violation of the use restriction(s) set forth in Section 15.3(a) above.

(ii) <u>Single Price Point Stores/Five Below/Ollies/Big Lots</u>. The use restriction set forth in 15.3 shall not apply to any tenant or occupant in the Shopping Center operating as a (A) single price point discount retailer (as an example only, the following retailers are considered single price point discount retailers: Dollar Tree or 99 Cents) or (B) Five Below, Ollies or Big Lots.

(iii) The use restriction set forth in 15.3 shall not prohibit (A) any retailer whose primary business is the sale of shoes, (B) any retailer whose primary business is the sale of furniture such as, for example, Ashley, West Elm, Ethan Allen, La-Z-Boy Furniture Galleries, (C) general merchandise discount department stores such as Target, Walmart or similar use, (D) the operation of private label or single brand retailers, such as, by way of example, H & M, Nike Outlet, Zara, Forever 21, GAP, or Old Navy or (E) REI or its co-op or outlet.

(iv) The existing TJ Maxx may be replaced with any Off Price Sale retailer except it may not be replaced by Burlington or its affiliates.

**15.4. Exclusive Uses.**

Tenant shall not use the Store in violation of any exclusive use which is listed on **Exhibit H** (the "Exclusive Use"), so long as the Exclusive Use is in existence in the Shopping Center or in violation of the Prohibited Uses listed on **Exhibit D**. Any exclusive granted by Landlord which is not listed on **Exhibit H** (the "Unauthorized Exclusive") shall be null and void as against Tenant and any assignee or sublessee of Tenant. Landlord shall indemnify, defend and hold harmless Tenant and any assignee or sublessee against any and all claims by any other occupant of the Shopping Center that Tenant and/or an assignee or sublessee has violated an Unauthorized Exclusive.

**15.5. Other Exclusives Not Binding on Tenant.**

Except for the Landlord's Prohibited Uses listed on **Exhibit D** and those Exclusive Uses specifically set forth in **Exhibit H**, neither Tenant nor any of its subtenants or assignees or the use of the Store shall be subject to any exclusives or restrictions granted to or for the benefit of any other tenants or occupants in the Shopping Center or on any Outparcel or adjacent parcel owned by Landlord. Except for the Landlord's Prohibited Uses listed on **Exhibit D** and those Exclusive Uses specifically set forth in **Exhibit H**, Landlord agrees that it has not entered into a lease or other occupancy agreement with nor shall it lease to or permit occupancy in the Shopping Center by any tenant, subtenant, assignee or other occupant, which has imposed or proposes to impose a restriction on Tenant or Tenant's business. Landlord shall hold Tenant harmless from any claims or damages suffered or claimed to be suffered by Tenant as a result of any breach or alleged breach of Landlord's representation and warranty set forth in this Section 15.5.

# EXHIBIT K

# EXISTING TENANTS

| Tenant Name | Square Footage |
|---|---|
| Bath & Body Works | 3,000 |
| Best Buy | 50,000 |
| Bliss Cupcake Café | 1,139 |
| Buckle | 7,138 |
| Cato Fashions | 4,600 |
| Chicken Salad Chick | 3,000 |
| Cicis Pizza | 3,800 |
| Cox Communications | 3,380 |
| David's Bridal | 12,063 |
| Dollar Tree | 10,000 |
| GameStop | 1,400 |
| Good Feet Store, The | 1,687 |
| JOANN Fabric & Crafts | 19,284 |
| Lush Nail Hair Facial & Brows | 4,500 |
| Monarch Dental | 4,056 |
| Newk's Eatery | 5,275 |
| Nu Nails | 1,655 |
| Old Navy | 20,000 |
| Petland | 3,545 |
| Pho Thanh II | 2,500 |
| QDOBA Mexican Eats | 3,000 |
| Shoe Carnival | 14,915 |
| Slim Chickens | 3,051 |
| Smoothie King | 1,481 |
| Supercuts | 1,855 |
| T.J. Maxx | 28,000 |

Store No. 2674, "Fayetteville"
Spring Creek Centre
Fayetteville, AR
JMD.249

EXHIBIT K
Page 1 of 2

FINAL

| Tenant Name | Square Footage |
|---|---|
| T-Mobile | 2,880 |
| Ulta Beauty | 10,705 |