## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>JOANN, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10068 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date: August 14, 2025, at 10:00 am (ET)**<br>**Objection Deadline: August 7, 2025 at 4:00 pm (ET)** |

**MOTION OF CRAFTY (AL) LLC FOR ENTRY OF AN ORDER: (I) REQUIRING PAYMENT OF ADMINISTRATIVE CLAIM FOR UNPAID PRORATED 2025 REAL ESTATE TAXES; (II) COMPELLING PAYMENT OF CLAIM FOR REMOVAL OF IMPROPERLY "ABANDONED" PROPERTY AS EITHER AN ADMINISTRATIVE EXPENSE CLAIM AGAINST THE DEBTORS AND/OR LIABILITY OF PURCHASER; AND (III) GRANTING RELATED RELIEF**

CRAFTY (AL) LLC ("**Landlord**"), by and through its undersigned attorneys, hereby moves, pursuant to 11 U.S.C. §§ 105(a), 365(d)(3), and 503(b), for: (I) allowance and payment of an administrative claim for prorated 2025 real estate taxes; (II)(a) allowance and payment of an administrative expense against the Debtors arising out of the improper purported "abandonment" on Landlord's Leased Premises (as defined herein) of property **not owned by the Debtors** to the extent the Debtors are responsible for the related removal costs; and/or (b) a judgment imposing liability on Purchaser (as defined herein) for Landlord's losses resulting from the foregoing purported abandonment of property not owned by the Debtors to the extent Purchaser is responsible; and (III) related relief.  In further support of this motion, Landlord incorporates by

---

[1]    The debtors (the "**Debtors**") in these chapter 11 cases together with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, OH 44236.

reference the Declaration of Sam Rubenstein (the "**Landlord Declaration**"), and respectfully states:

## RELIEF REQUESTED

1.      Landlord seeks, and there can be no question Landlord is entitled to, an allowed administrative claim for and payment of the unpaid 2025 real estate taxes for the Leased Premises for the entire post-petition/pre-rejection period during which the Debtors and Purchaser occupied and used those premises.

2.      Additionally, Landlord seeks payment of property removal costs that arise because, notwithstanding express prohibitions in the Sale Order (as defined below) pursuant to which Purchaser (as defined below) bought substantially all the Debtors' assets, the Debtors and/or Purchaser abandoned at Landlord's premises substantial furniture, fixtures, equipment, and other personal property (the "**Improperly Abandoned Assets**").  As such assets were not then owned by the Debtors, the assets were ineligible for abandonment under section 554 of the Bankruptcy Code or relevant orders in these cases.  The costs to remove the Improperly Abandoned Assets total almost $900,000.  Whether the Debtors, Purchaser, or some combination of the two is responsible for paying such removal costs should be determined by their respective rights and obligations, but their collective responsibility is indisputable.

3.      To fulfill these goals, Landlord seeks entry of an order, substantially in the form attached hereto as Exhibit A: (a) allowing and requiring payment of Landlord's administrative claim for unpaid post-petition/pre-rejection real estate taxes; (b) compelling payment of the costs for removal of the Improperly Abandoned Assets, as either an allowed administrative expense claim against the Debtors under sections 365(d)(3) and/or 503(b) of the Bankruptcy Code and/or a liability of Purchaser (as defined below); and (c) granting related relief.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C §§ 157 and

1334, as well as the Sale Order.[2]

5.      This is a core matter pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware, Landlord consents to entry of a final order by this Court in connection

with this matter to the extent it is later determined that this Court, absent consent of the parties,

cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a), 365, and

503(a) and (b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6006 and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-

1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

**RELEVANT BACKGROUND**

*The Lease*

8.      Pursuant to the Lease Agreement, dated June 7, 2021 (the "**Lease**"), by and between

Landlord and Debtor Jo-Ann Stores, LLC as tenant ("**Debtor Tenant**"), the Debtor Tenant leased

real property used as a distribution center and located at 3101 Anderson Road, Opelika, Alabama

(the "**Leased Premises**").

9.      Among other things, the Lease obligates the Debtor Tenant, "upon the expiration

or earlier termination of this Lease," to "<u>remove</u> from the Leased Premises <u>all property</u> which is

---

[2]     See Order (A) Approving and Authorizing Sale of Debtors' Assets, Free and Clear of All Liens, Claims,
Encumbrances, and Other Interests, and (B) Granting Related Relief [D.I. 520] ("**Sale Order**") ¶ 60 ("The Court
shall retain jurisdiction with respect to all matters arising out of or relating to the interpretation, implementation,
or enforcement of this Approval Order, the terms and provisions of the Agency Agreement, and all other
Transaction Documents.").

owned by [the Debtor Tenant] or third parties other than Landlord and . . . repair any damage caused by such removal." Lease ¶ 26 (emphasis added).

10.     The Lease also requires the Debtor Tenant to pay the real estate taxes on the Leased Premises when due. See id. ¶ 9(a). The 2025 real estate taxes are not yet due. The Debtor Tenant is responsible (with funding from Purchaser) to pay in full as an administrative claim those 2025 real estate taxes prorated for the period January 1, 2025 – March 31, 2025.

**The Sale Process**

11.     On January 15, 2025, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code with this Court.

12.     On January 15, 2025, the Debtors sought authorization to sell their assets pursuant to the Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures, . . . , (IV) Approving the Stalking Horse Agreement, . . . , (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief [D.I. 17] (the "**Sale Motion**").

13.     On February 9, 2025, Landlord filed Limited Objections to the Sale Motion [D.I. 257] ("**Landlord's Sale Objection**"), including an objection to any relief that would enable any party to abandon property not owned by the Debtors on Landlord's Leased Premises. See id. ¶¶ 5, 15.

14.     On February 16, 2025, this Court entered the Order (I) Approving Bidding Procedures, . . . , (IV) Approving the Stalking Horse Agreement, . . . , (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief [D.I. 446], by which this Court "approved certain procedures setting forth the process by which the Debtors were authorized to conduct a marketing and auction process for the sale of substantially all of the Debtors' assets." Notice of Filing Winner Bidder Agency Agreement p. 2 [D.I. 486] (emphasis added).

15.     On February 21, 2025, the Debtors selected <u>a buyer different than</u> the original Stalking Horse bidder as the purchaser of "substantially all of the Debtors' Assets."  Notice of Winning Bidder for Certain of the Debtors' Assets [D.I. 480].  That winning bidder is GA Joann Retail Partnership LLC and Wilmington Savings Fund Society, FSB, in its capacity as Prepetition Term Loan Agent (together, "**Purchaser**").

16.     On February 24, 2025, the Debtors filed (for the first time) the proposed Agency Agreement as Exhibit A to the Notice of Filing Winning Bidder Agency Agreement.  That Notice contained <u>no summary or list of key terms of the Agency Agreement</u>.

17.     Two days later, on February 26, 2025, this Court "authoriz[ed] and approv[ed] [the Debtors'] entry into and performance under the terms and conditions of the Agency Agreement." Sale Order pp. 1–2.

***The Debtors' Transfer of Ownership of the Improperly Abandoned Assets***

18.     The Agency Agreement provides, <u>inter alia</u>, that, upon the closing of the sale to Purchaser (the "**Closing**"),[3] the Debtors' relevant Assets—defined as including, among other things, Owned FF&E[4]—were no longer the Debtors' property.  <u>See, e.g.</u>, Agency Agreement § 2(b)(viii) [D.I. 520-1] ("[F]ollowing the occurrence of the Closing . . . [the Debtors] and any trustee appointed in the Bankruptcy Cases or any other successor cases thereto shall hold the Assets (other than the Assets being sold through the GOB Sale) strictly in trust for the benefit of Purchaser and, as such, <u>the Assets shall not constitute property of [the Debtors'] bankruptcy estate</u>

---

[3]     The Closing, which occurred on February 27, 2025, constituted the "consummat[ion of] the transactions contemplated under this Agreement," subject to the satisfaction of conditions precedent and subsequent set forth in Section 10 of the Agency Agreement.  Agency Agreement § 10(a).

[4]     "**Owned FF&E**" is defined as "furniture, furnishings, trade fixtures, machinery, equipment, office supplies," "boxes, bags, paper, twine and similar sales materials", "conveyer systems, racking, rolling stock, and other tangle personal property" ("**FF&E**") "owned by [the Debtors] as of the Closing."  Agency Agreement §§ 1(b), 8.4.

pursuant to and consistent with 11 U.S.C. § 541(b)(1) at any time following the Closing . . . .")

(emphasis added).

19.    The Sale Order confirms this ownership transfer of the Improperly Abandoned

Assets by, among other things, the following:

- Regarding the "Transactions" between the Debtors and Purchaser, the Sale Order includes a finding that "Purchaser is a good faith purchaser within the meaning of [section] 363(m)" of the Bankruptcy Code, which only applies to a "sale or lease of property."  Sale Order ¶¶ L, 21; 11 U.S.C. § 363(m).

- The Sale Order finds that the "Transactions contemplated by the Agency Agreement meet the applicable provisions of section 363(f) of the Bankruptcy Code," which only applies when a debtor seeks to "sell property" free and clear of other interests.  Sale Order ¶ T, 9; 11 U.S.C. § 363(f).

- "Following the satisfaction of the Initial Purchase Price Funding and the funding of the Stub Rent Reserve and the FILO Reserve, and in accordance with the Agency Agreement and this Approval Order, and upon the purchase of Purchaser's Designation Rights, if any, all of the Sellers' rights, titles, and interests in and to, and possession of, the Assets shall be vested in the Purchaser or its designees under the Asset Designation Rights, as applicable, pursuant to sections 105(a), 363(b), 363(f) of the Bankruptcy Code.  Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Assets."  Sale Order ¶ 9 (emphasis added).

- "Purchaser shall have the exclusive right to market and sell, or otherwise designate Purchasers, licensees, and/or assignees of, any or all of the Assets . . . ." Id. (emphasis added).

- "Notwithstanding the language in [s]ection 2(b)(viii) of the Agency Agreement stating that after the Closing the Debtors shall hold the Assets in trust for the benefit of Purchaser and, as such, the Assets shall not constitute property of the Debtors' estates, all parties' rights regarding any real property lease to which a Debtor is a tenant shall be governed by the Bankruptcy Code . . . ." Id. ¶ 42 (emphasis added).

20.    Between the February 27, 2025 sale Closing and May 31, 2025, Purchaser had the

"exclusive right to market and sell, and/or otherwise designate the purchasers, transferees, and/or

assignees of . . . any or all the Assets."  Agency Agreement § 15.2.  The Agency Agreement set

May 31, 2025 as the Asset Designation Rights Termination Date (i.e., the initial deadline for

Purchaser to resell Assets).  Id. § 2(b)(xxxii).

***Express Prohibitions on Abandonment of Assets Not Owned by the Debtors***

21.     Respecting any potential abandonment of Assets not owned by the Debtors (and partly to resolve Landlord's Sale Objection), the Sale Order <u>expressly prohibits</u> abandonment of property at a landlord's premises if that property does not belong to a Debtor:

- "Notwithstanding anything to the contrary in the Agency Agreement or this Approval Order, [Purchaser] <u>may not abandon</u> any property at a Store or Distribution Center that <u>does not belong to [the Debtors]</u>."  Sale Order ¶ 20.

- "Notwithstanding anything to the contrary in the Agency Agreement or this Approval Or[d]er [sic], [Purchaser] <u>may not abandon</u> any property at a Store or Distribution Center that <u>does not belong to the Debtors</u>."  <u>Id.</u> ¶ 63.[5]

22.     The conclusion such "abandonment" of property not owned by the Debtors at a landlord's premises is prohibited by the Sale Order and section 554 is illustrated by the inclusion in earlier versions of the Debtors' chapter 11 plan of the following language attempting to <u>override</u> the Sale Order's (and section 554's) express prohibitions:

> For the avoidance of doubt, unless otherwise agreed, <u>any property remaining on the premises</u> subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection.

Second Amended Joint Chapter 11 Plan of Joann Inc. and its Debtor Affiliates, Art. V.B. [D.I. 1353] (emphasis added).  At Landlord's insistence, however, that plan language ultimately was overridden by the following language added to the proposed Confirmation Order just before the July 10 confirmation hearing:

> Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no property remaining on the premises subject

---

[5] Contrary to the Sale Order, the Agency Agreement purports to authorize Purchaser to abandon property owned by Purchaser at a landlord's property: "[Purchaser] shall be authorized to abandon <u>any and all FF&E</u> or Remaining Merchandise, <u>whether owned or not by [the Debtors]</u>, in place without any cost or liability to [Purchaser].  For the avoidance of doubt, [Purchaser] shall have no responsibility whatsoever with respect to FF&E that is not owned by [the Debtors]."  Agency Agreement § 7.1 (emphasis added).  Nonetheless, the Sale Order's terms control over any conflicting language contained in the Agency Agreement, which is merely an agreement between the Debtors and Purchaser.  <u>See</u> Sale Order ¶ 53 ("To the extent there is any conflict between the terms of this [Sale] Order and the Agency Agreement, the terms of this [Sale] Order shall control.").

to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or Wind-Down Debtors, as applicable, <u>unless owned by such Debtors or Wind-Down Debtors as of the effective date of such rejection</u>.

Notice of Filing Revised Findings of Fact, etc.  [D.I. 1376 Ex. B ¶ 95] (emphasis added).  That same language is included in the entered Confirmation Order [D.I. 1387 ¶ 95].

***Potential for Reversion of Responsibility for Certain Assets to the Debtors***

23.     The Sale Order and Agency Agreement provide that responsibility for certain Assets could revert to the Debtors' estates in two narrow circumstances: (a) if Purchaser provided the Debtors with a timely Dropout Notice (as defined below); or (b) if any Assets not designated by Purchaser by May 31, 2025 are then still owned by Purchaser, such Assets would automatically revert to the Debtors' estates.  Neither such predicate for reversion of ownership of the Assets to the Debtors is satisfied here.

24.     The first predicate under section 15.3 of the Agency Agreement enables Purchaser to send a Dropout Notice to the Debtors to return responsibility for specified Assets to the Debtors:

> At any time prior to the expiration of the Lease Designation Rights Termination Date or the Asset Designation Rights Termination Date (as applicable), [Purchaser] shall have the right, <u>upon five (5) days' written notice</u> (the "Dropout Notice Period") . . . to provide notice to [the Debtor] (each such notice, a "**Dropout Notice**") of [Purchaser's] election to discontinue its efforts to market and attempt to sell, assign, transfer, license, designate the acquirer or purchaser, or otherwise dispose of any Asset . . . . <u>Upon the effective date of any Dropout Notice, (i) [Purchaser] shall have no further obligation or liability with respect to the subject Dropout Asset</u>, and (ii) [the Debtors] shall thereafter be solely responsible for all such Dropout Asset(s) from and after the effective date of the Dropout Notice.

Agency Agreement § 15.3 (emphasis added).  Any such Dropout Notice must be, <u>inter alia</u>, in writing, sent while Purchaser owns or controls the relevant Asset(s), and sent in accordance with the Agency Agreement's notice provisions.  <u>See id.</u>

25.    Upon information and belief (based on the Debtors' failure to supply a copy of any such Dropout Notice to Landlord despite multiple requests by Landlord), at no time before or since the March 31, 2025 date on which ownership of the Improperly Abandoned Assets was relinquished to Landlord did Purchaser send the Debtors an applicable Dropout Notice pursuant to section 15.3 of the Agency Agreement.

26.    Regardless, a Dropout Notice under section 15.3 of the Agency Agreement merely would operate to allocate responsibility for the "subject Dropout Asset" as between the Debtors and Purchaser.  Nothing in Section 15.3 or otherwise in the Agency Agreement changes the fact that a "Dropout Asset" was previously sold by the Debtors to Purchaser and, therefore, was no longer the Debtors' property.  Hence, even if delivered, a Dropout Notice would not have made abandonment under section 554 possible here.

27.    The second predicate, automatic reversion on May 31, 2025,[6] has no applicability here because on that date, the Improperly Abandoned Assets were neither owned by nor held in trust for Purchaser.

### *Rejection of the Lease*

28.    On March 31, 2025, the Debtor Tenant filed a Notice of Rejection (the "**Notice of Rejection**") seeking, inter alia, to reject the Lease. [D.I. 657].  Pursuant to the Notice of Rejection, the applicable rejection date was to be March 31, 2025 (the "**Rejection Date**").  The Notice of Rejection provided that, in connection with rejecting the Lease, the Debtor Tenant would abandon "FF&E, Inventory," which only could encompass property then owned by the Debtors.  Notice of Rejection, Schedule 2.

---

6    See Sale Order ¶ 18 ("Ownership of all other Residual Assets [which include the Imrpoperly Abandoned Assets] shall revert to the Debtors' estates, each on the Asset Designation Rights Termination Date."); Agency Agreement § 15.3 ("Effective upon the occurrence o the Asset Designation Rights Termination Date, . . . [Purchaser] shall be deemed to have provided [Debtors] with a Dropout Notice [] for all remaining Assets . . . .").

29.     On April 16, 2025, the Court entered an order (the "**Rejection Order**") [D.I. 713] authorizing the Debtors' rejection of certain executory contracts and/or unexpired leases, including the Lease.  The Rejection Order provides that "[a]ny and all property located on the Debtors' leased premises on the Rejection Effective Date of the applicable Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date."  Rejection Order ¶ 2 (emphasis added).[7]  As section 554 only applies to property owned by a debtor and as the Sale Order expressly precludes [Purchaser's] abandonment of property not belonging to the Debtors, the Rejection Order language only could have applied to property then owned by the Debtors.

30.     The FF&E or other Assets that remained at the Leased Premises on the March 31, 2025 Lease Rejection Date were transferred to Landlord on that date.  Indeed, the Debtors (on notice to Purchaser) advised Landlord it could utilize and/or dispose of such property.  See, e.g., Landlord Decl., Ex. 2 (June 9, 2025 email from Debtors' counsel stating that Landlord "is free to dispose of the property as it sees fit . . . .").

### *Removal Costs for the Improperly Abandoned Assets*

31.     Landlord's counsel contacted the Debtors' and Purchaser's counsel requesting them to remove the Improperly Abandoned Assets or to pay the costs of their removal, but the Debtors asserted the Improperly Abandoned Assets had been "abandoned" to Landlord and Landlord had only an unsecured post-petition claim for damages based on such costs.  See Landlord Declaration ¶ 9.

32.     After then seeking multiple removal proposals, Landlord received a proposal to remove "all racking, existing mezzanine, and the conveyor system throughout the warehouse in

---

[7]     See also id. Exhibit 1.

its entirety, including, but not limited to, ceiling mounted conveyers, motors, framing, in-rack sprinklers, cable trays, and all ancillary components" from the Leased Premises for $890,385 ("**Removal Costs**").[8] A copy of this proposal is annexed as Exhibit 1 to the Landlord Declaration.

33.     On July 16, 2025, the Debtors filed a Notice of, among other things, an Administrative Claims Bar Date such that requests for payment of administrative claims "arising or deemed to have arisen on or after February 27, 2025, through the [Plan's] Effective Date, must be filed no later than August 6, 2025." [D.I. 1416].[9]

34.     Accordingly, Landlord files this motion seeking an order: (a) requiring the Debtors to pay in full when due the prorated 2025 real estate taxes for the Leased Premises for the period from January 1, 2025 through the March 31, 2025 Lease Rejection Date; and (b) compelling payment of the Removal Costs as either an administrative claim against the Debtors under 11 U.S.C. § 365(d)(3) and 503(b) and/or a direct liability of Purchaser.

## ARGUMENT

### I.     LANDLORD IS ENTITLED TO AN ALLOWED ADMINISTRATIVE CLAIM FOR AND PAYMENT OF ALL UNPAID POST-PETITION / PRE-REJECTION REAL ESTATE TAXES FOR THE LEASED PREMISES

35.     The Lease requires the Debtor Tenant to pay all real estate taxes on the Leased Premises as and when due.  See Lease ¶ 9(a).  The 2025 real estate taxes for the Leased Premises are not yet due and remain unpaid.  The Debtors (and Purchaser) occupied and utilized the Leased Premises from January 1, 2025 through the March 31, 2025 Lease Rejection Date.  Consequently,

---

[8]     See Landlord Decl. ¶¶ 5–8.  Landlord received other offers to remove certain FF&E from the leased premises, but the Removal Offer was the only comprehensive one because it accounted for all FF&E remaining on the Leased Premises. See id. ¶ 6.

[9]     To the extent a request for payment of administrative claims is required by Landlord and has not previously been made, this motion shall constitute such a request.

Landlord is entitled to an allowed administrative claim for and payment of the prorated real estate taxes for that period under section 503(b).

## II.    LANDLORD IS ENTITLED TO PAYMENT OF THE REMOVAL COSTS FOR THE IMPROPERLY ABANDONED ASSETS

36.    Payment for the Removal Costs is the responsibility of the Debtors and Purchaser. Immediately upon the February 27, 2025 sale Closing, the Improperly Abandoned Assets were no longer the Debtors' property and, to the extent, if any, the Debtors retained possession, custody, or control over such Assets, they still were Purchaser's property.  As the Improperly Abandoned Assets were not the Debtors' property, the Debtors could not have abandoned such Assets under section 554 of the Bankruptcy Code.  See 11 U.S.C. § 554(a) (enabling a debtor to "abandon any property of the estate that is too burdensome to the estate or that is of inconsequential value and benefit to the estate") (emphasis added).   While Purchaser "abandoned" the Improperly Abandoned Assets, such abandonment could not be pursuant to section 554 and, therefore, Purchaser and/or the Debtors would not be insulated from paying the full Removal Costs.

37.    Allocation of the Removal Costs between the Debtors and Purchaser should be determined by this Court based on those parties' input.  In no event, however, could payment of the Removal Costs be Landlord's responsibility.

### A.    The Improperly Abandoned Assets Were Not The Debtors' Property When Abandoned To Landlord

38.    As of the February 27, 2025 sale Closing, the Debtors did not own the Improperly Abandoned Assets.

39.    Initially, the Debtors' and Purchaser's relationship is governed by the Agency Agreement, which memorializes the transfer of ownership of the Assets (which included the Improperly Abandoned Assets) from the Debtors.  See Agency Agreement § 2(b)(viii) ("[The Debtors] and any trustee appointed . . . shall hold the Assets . . . strictly in trust for the benefit of

Purchaser and, as such, the Assets shall not constitute property of [the Debtors'] bankruptcy estate pursuant to and consistent with 11 U.S.C. § 541(b)(1) at any time following the Closing[.]").

40.     The Sale Order confirms the Improperly Abandoned Assets did not belong to the Debtors when the Lease was rejected by providing that the "Transactions" in the Agency Agreement "meet the applicable provisions of section 363(f) of the Bankruptcy Code" (which only applies to a <u>sale of property</u>) and that "Purchaser is a good faith purchaser within the meaning of [section] 363 of the Bankruptcy Code" (which only applies to a "<u>sale or lease of property</u>").  Sale Order ¶¶ L, T, 9, 21; 11 U.S.C. §§ 363(f), 363(m) (emphasis added).  The Sale Order also provides that "Assets shall be vested in the Purchaser or its designees," with such transfer constituting "a legal valid, enforceable and effective transfer of the Assets."  <u>Id.</u> ¶ 9; <u>see also</u> <u>id.</u> ¶ 10 ("[T]he Assets shall have been transferred to the Purchaser or its designees . . . or as otherwise set forth herein, or otherwise held strictly in trust by the Sellers for the benefit of the Purchaser.").  Correspondingly, the Sale Order expressly provides "the Assets shall <u>not</u> constitute property of the Debtors' estates." <u>Id.</u> ¶ 42.

41.     Accordingly, the Improperly Abandoned Assets were <u>not</u> the Debtors' property when the Lease was rejected.  Instead, they were either owned by or held in trust for Purchaser.

**B.**     **<u>Ownership Of The Imroperly Abandoned Assets Was Never Regained By The Debtors</u>**

42.     Ownership of the Improperly Abandoned Assets was never transferred back (or reverted) to the Debtors.  The Sale Order and Agency Agreement provide that responsibility for the Assets only reverts to the Debtors' estates if: (i) Purchaser provides the Debtors with a timely written Dropout Notice sent in accordance with the Agency Agreement's notice provisions and while the Purchaser owns or controls the relevant Asset(s); or (ii) Purchaser still owns those Assets as of May 31, 2025 (in which case those remaining Assets could revert to the Debtors' estates).  <u>See</u> Sale Order ¶ 18; Agency Agreement § 15.3.  Neither of those predicates was satisfied here.

13

43.     Purchaser never delivered the required written Dropout Notice to affirmatively transfer ownership of the Improperly Abandoned Assets to the Debtors.  Landlord has repeatedly asked the Debtors to supply a copy of any such Dropout Notice, but the Debtors have failed to do so.   Regardless, the Agency Agreement's Dropout Notice provision only would transfer responsibility for, <u>not ownership of</u>, the subject Asset and, therefore, would not make section 554 applicable to the Asset.  <u>See</u> Agency Agreement § 15.3 ("Upon the Effective Date of any Dropout Notice, (i) [Purchaser] shall have no further obligation or liability with respect to the subject Dropout Asset, . . . . .").

44.     While there was a mechanism for the Improperly Abandoned Assets to automatically revert to the Debtors' estates pursuant to section 15.3 of the Agency Agreement, the Debtors do not argue such automatic reversion of the Improperly Abandoned Assets occurred here.  Nor could they.  As of the March 31, 2025 Rejection Date, the Improperly Abandoned Assets were Assets owned by or held in trust for Purchaser.  The Improperly Abandoned Assets then were <u>transferred to Landlord</u> on the Lease's Rejection Date of March 31, 2025, well <u>prior</u> to May 31, 2025.  Accordingly, the predicate for a deemed reversion of such Assets to the Debtors upon the occurrence of the Asset Designation Rights Termination Date (<u>i.e.</u>, May 31, 2025) could never have taken place because, by that date, Purchaser no longer had any interest in the Improperly Abandoned Assets.

**C.      Neither Section 554 Nor The Relevant Orders In These Cases Permit The Debtors And/Or Purchaser To Abandon The Improperly Abandoned Assets To Landlord**

45.     The rules governing abandonment—under section 554 and the relevant orders in these cases—expressly preclude abandonment at Landlord's Leased premises of property not owned by the Debtors.

46.     Section 554 only enables debtors to "abandon any property <u>of the estate</u>."  11 U.S.C. § 554(a) (emphasis added).  The Debtors could not have abandoned the Improperly

Abandoned Assets pursuant to section 554 because, as demonstrated above, the Improperly Abandoned Assets were no longer part of the Debtors' estates. Purchaser also could not have abandoned the Improperly Abandoned Assets pursuant to section 554 because the express language of section 554 limits its scope to property of a debtor. As the Improperly Abandoned Assets did not belong to the Debtors, Purchaser had no right to abandon such assets pursuant to section 554.

47.      Correspondingly, the Sale Order limits Purchaser's abandonment abilities by providing that Purchaser "may not abandon any property" pursuant to section 554 that "does not belong to the Debtors." Sale Order ¶¶ 20, 63.[10] Thus, the Sale Order precluded Purchaser from having any right to abandon the Improperly Abandoned Assets under the Sale Order.

48.      Landlord understands the Debtors contend the Lease Rejection Order somehow enabled the Debtors and/or Purchaser to abandon property not owned by the Debtors pursuant to section 554. Yet any such result is precluded by the express language of section 554, multiple provisions of the Sale Order, and the Confirmation Order. See 11 U.S.C. § 554 ("the trustee may abandon any property of the estate") (emphasis added); Sale Order ¶ 20 ("[Purchaser] may not abandon any property at a Store or Distribution Center that does not belong to [the Debtors].") (emphasis added); id. ¶ 63 ([Purchaser] may not abandon any property at a Store or Distribution Center that does not belong to the Debtors.") (emphasis added); Confirmation Order ¶ 95 ("no property remaining on the premises subject to a rejected Unexpired Lease shall be deemed

---

[10]      While the Agency Agreement authorizes Purchaser "to abandon any and all FF&E . . . whether owned or not by [the Debtor]," Agency Agreement § 7.1, the Sale Order's terms control over any conflicting terms contained in the Agency Agreement. See Sale Order ¶ 53. Further, any ambiguities in the Sale Order or Agency Agreement must be construed against the drafters, the Debtors and Purchaser. See, e.g., In re NVF Co., 309 B.R. 698, 704 (Bankr. D. Del. 2004) (construing ambiguous provisions in chapter 11 plan against plan's drafters, the plan proponents).

abandoned by the Debtors . . . <u>unless owned by such Debtors</u> . . . as of the effective date of such rejection.") (emphasis added).

### D.   Allocation Of Liability For Payment Of Removal Costs For The Improperly Abandoned Assets Is The Debtors' And Purchaser's Responsibility

49.   Landlord has not been apprised of any allocation of liability as between the Debtors and Purchaser regarding improper abandonment of the Improperly Abandoned Assets.  Hence, that allocation should be resolved by the Debtors and Purchaser.  Regardless, Purchaser and the Debtors may not rely on an agreement governing their rights and obligations respecting one another (which they alone negotiated and drafted) to leave Landlord, a third party, holding the bill.

50.   Accordingly, Landlord is entitled to an administrative claim under section 365(d)(3), which requires the Debtors to timely perform their post-petition Lease obligations until the Lease was rejected.  <u>See</u> 11 U.S.C. § 365(d)(3).  The Debtors' Notice of Rejection for the Lease was filed March 31, 2025 and expressly references "FF&E" as "Abandoned Property" to be left on the Leased Premises.  Notice of Rejection, Schedule 2.  Thus, on March 31, 2025, <u>before</u> the Lease was rejected as of the end of that day, the Debtors breached their Lease obligation to remove all property from the Leased Premises.  <u>See</u> Lease ¶ 26 (requiring the Debtor Tenant, in connection with surrendering the Leased Premises, to remove "all property" owned by the Debtor "or third parties other than Landlord . . . .").  Notably, no benefit conferred on the Debtor Tenant's estate must be proven under section 365(d)(3) to support allowance of an administrative claim here.  <u>See</u> In re Hayes Lemmerz In'l, Inc., 340 B.R. 461, 472 (Bankr. D. Del. 2006).[11]

---

[11]   To the extent the failure to remove the Improperly Abandoned Assets constitutes a tort (such as trespass or private nuisance), damages from a Debtors' post-petition tort are entitled to administrative expense status.  <u>See, e.g.</u>, Reading Co. v. Brown, 391 U.S. 471, 477 (1968); <u>Hayes Lemmez</u>, 340 B.R. at 480; In re First Women Healthcare, Inc., 332 B.R. 115, 123 (Bankr. D. Del. 2005) (no benefit to the estate is required as long as the harm results from the debtors' "post-petition activity").

16

51.     If the "abandoned" property belonged to the Debtors at that time, then section 554(a) could have shielded the Debtors from administrative liability for that Lease breach.  Here, however, the Improperly Abandoned Property did not then belong to the Debtors.  Hence, section 554(a) does not apply and a valid administrative damage claim for the Landlord arose respecting the Removal Costs.

52.     If for some reason section 365(d)(3) is not determinative here, then Landlord still would have a valid administrative claim for Removal Costs under section 503(b)(1)(A).  Section 503(b)(1)(A) provides that, after notice and a hearing, there shall be allowed administrative expenses, including the "actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  Removing the Improperly Abandoned Assets is a necessary cost and expense of preserving the Debtors' estates (or an obligation in whole or part of Purchaser).

53.     Courts, including this Court, consistently hold that a debtor's post-petition breach of lease obligations while the debtor's estate continues to benefit from that lease gives rise to an administrative claim under section 503(b).  See, e.g., Hayes Lemmerz, 340 B.R. at 479–80 (holding that a lessor is entitled to an administrative expense claim when the debtor's post-petition breach of its lease repair obligations conferred a benefit on the debtor's estate by conserving resources for continued operations); In re United Trucking Serv., Inc., 851 F.2d 159, 162 (6th Cir. 1988) ("[The lessee's] asserted failure to maintain and repair the trailers in accord with the lease obligation allowed [the lessee], the debtor, to use the money saved and not paid for [the lessor's] benefit as contemplated under the lease, to continue its operations. . . .  Accordingly, the damages under the breached lease covenant, to the extent that they occurred post-petition, provided benefits to the bankrupt estate and were properly accorded priority under § 503 . . . ."); In re Atl. Container Corp., 133 B.R. 980, 992 (Bankr. N.D. Ill. 1991) ("By failing to repair and maintain the Premises, the [debtor] and the Trustee may have spared the estate substantial amounts of money which could

then have been used for other purposes, such as paying employees and trade vendors in an attempt to reorganize.").  The same principle supports Landlord's claim for payment of the Removal Costs as an administrative expense in these cases to the extent the Removal Costs are the Debtors' liability.

54.      Also, there is flexibility for a court to apply section 503(b)(1) to enable a landlord recover on a debtor-tenant's lease obligations.  See In re Goody's Fam. Clothing, Inc., 401 B.R. 656, 666 (D. Del. 2009), aff'd sub nom. In re Goody's Fam. Clothing Inc., 610 F.3d 812 (3d Cir. 2010) ("If the leased premises are used post-petition, and the use is necessary to preserve the estate, the landlord may recover rent, on a priority basis, for the reasonable value of the used premises.").

55.      As such, the Court should compel the Debtors to immediately pay an allowed administrative expense claim in favor of Landlord in an amount of no less than **$890,385** for the costs of removal as reflected in the Removal Proposal.

56.      Alternatively, section 105(a) of the Bankruptcy Code enables the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  If appropriate, the Court should require Purchaser to pay for the Removal Costs by ordering Purchaser to pay Landlord an amount of no less than **$890,385** for the Removal Costs as reflected in the Removal Proposal.

### NO PRIOR REQUEST

57.      No prior request for the relief sought in this motion by Landlord has been made to this Court or any other court.

### NOTICE

58.      Landlord will provide notice of this motion to the following parties or their respective counsel: (a) Kirkland & Ellis LLP, as counsel for the Debtors; (b) Lowenstein Sandler LLP, as counsel for Purchaser; (c) the U.S. Trustee for the District of Delaware; and (d) any party

that has requested notice in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other further notice need be given.

## RESERVATION OF RIGHTS

59.    Landlord reserves its rights to amend and/or supplement this motion, as circumstances might require.

## CONCLUSION

60.    WHEREFORE, Landlord respectfully requests that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and granting such other relief to Landlord as is just and proper under the circumstances.

Dated: July 30, 2025
       Wilmington, Delaware

**DORSEY WHITNEY (DELAWARE) LLP**

*/s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (No. 3553)
300 Delaware Ave, Suite 1010
Wilmington, DE 19801
Telephone: (302) 425-7165
Werkheiser.Gregory@dorsey.com

*- and -*

**CHAFFETZ LINDSEY LLP**
Alan J. Lipkin
1700 Broadway, 33rd Floor
New York, NY  10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950
alan.lipkin@chaffetzlindsey.com

*Co-Counsel to CRAFTY (AL) LLC*