# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| JOANN INC., *et al.*,[1] | ) Case No. 25-10068 (CTG) |
| Debtors. | ) (Jointly Administered) |
| | ) <u>Hearing Date</u>: August 26, 2025, at 1:00 p.m. (ET) |
| | ) <u>Re: Docket Nos. 760, 876, and 930</u> |

## BURLINGTON COAT FACTORY WAREHOUSE CORPORATION'S REPLY TO RAYZOR RANCH MARKETPLACE ASSOCIATES, LLC'S OBJECTION TO BURLINGTON'S ASSIGNMENT AND ASSUMPTION OF DENTON, TEXAS LEASE

Burlington Coat Factory Warehouse Corporation ("<u>Burlington</u>") files this Reply (this "<u>Reply</u>") in response to the Rayzor Ranch Marketplace Associates, LLC's (the "<u>Landlord</u>") *Objection to Assumption and Assignment of Unexpired Lease for the Premises Located at Rayzor Ranch Marketplace in Denton, Texas* [Docket No. 876] (the "<u>Objection</u>") regarding a certain November 17, 2010 Lease Agreement, for real property known as Joann Fabric and Crafts Store #2212 located at 2640 W. University Drive, Denton, Texas (as the same may be amended or otherwise modified from time to time, the "<u>Lease</u>") and respectfully states as follows:

### Preliminary Statement

1. Burlington—a nationally recognized off-price retailer and Fortune 500 company—is the proposed assignee of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for the Lease. Burlington was the successful bidder for forty-six (46) of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

Debtors' unexpired leases of nonresidential real property in the lease asset sale process run by GA Joann Retail Partnership, LLC ("GA"), whose purchase of the designation rights for such lease assets generated significant funds for the benefit of the Debtors' estates. As such, Burlington has been a valuable partner to the Debtors and to GA.

2. As with many of the objections to Burlington's assignment, Landlord's Objection was prompted by an indiscriminate letter campaign from Burlington's direct competitor, Ross Dress for Less, Inc. ("Ross")—a third party tenant in the shopping center—threatening retaliation if Landlord does not seek to enforce *later-in-time* exclusives to block the proposed assignment to Burlington. As a threshold matter, the "Ross Exclusive" ***does not apply*** to existing tenant Joann by its own terms, under the Lease, under section 365(b)(3)(C), or otherwise. Landlord also granted a later-in-time exclusive to Marshalls, Inc. ("Marshalls") that similarly does not prevent assignment to an off-price retailer such as Burlington.

3. The arguments raised in the Objection fall squarely within this Court's prior rulings. Specifically, this Court held a hearing on July 31, 2025 (the "July 31 Hearing") at which the Court rejected similar arguments seeking enforcement of later-in-time exclusives. *See* Transcript of July 31 Hearing [Docket No. 1525] ("July 31 Hearing Tr.").[2] The Court applied certain principles adopted by the courts in *Bed Bath & Beyond* and *Big Lots*, explaining that "the debtor isn't bound and the estate isn't bound by restrictions that weren't, wouldn't have been knowable by the debtor at the time it entered into the lease with the counterparty. And if the counterparty does some further restriction later, that can't fairly be enforceable against the estate" with respect to later-in-time exclusives. July 31 Hearing Tr. p. 28.

---

[2] A true and correct copy of the July 31 Hearing transcript is attached hereto as **Exhibit A**.

2

4. Here again, the Court should decline to enforce later-in-time exclusives and interpret the Lease in a practical, commercial manner that balances sections 365(b)(3) and 365(f) and vitiates neither. *See In re Ames Dept. Stores, Inc.*, 348 B.R. 91, 98 (Bankr. S.D.N.Y. 2006) ("[S]ubject only to statutory safeguards, the value of a debtor's leases should go to the debtor's creditors, and . . . leases can be sold to achieve that end—with or without landlord consent.").

5. For these reasons, Burlington requests that this Court overrule the Objection and approve the assumption and assignment of the Lease to Burlington.

## REPLY

**I.  *The Ross and Marshalls Exclusive Use Provisions do not Prevent Assignment to Burlington.***

**A.  The Ross Exclusive Does Not Apply to the Lease.**

6. The Debtor's Lease is dated November 17, 2010. Approximately two years later, the Landlord entered into a lease with Ross (the "Ross Lease") dated December 14, 2012. In order to permit Ross to enter into the shopping center, Joann waived its exclusive use rights under the Lease to the extent necessary to permit the operation of a typical Ross store (the "Joann Waiver").[3] The Joann Waiver did not include any acknowledgment, recognition, or agreement by the Debtor to be bound by any restrictions and/or other terms of the Ross Lease, and the Lease remained unmodified in all other respects. Joann Waiver, p. 1.

7. The Ross Lease contains an exclusive use provision that restricts the sale of off-price merchandise in the shopping center to no more than ten thousand square feet:

> Without the prior written consent of Tenant [Ross], which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of Landlord's Parcel who occupies more than ten thousand (10,000) square feet of Leasable Floor Area (other than Tenant) may use, and Landlord, if it has the capacity to do so, shall

---

[3] The May 1, 2012 Joann Waiver Letter is attached hereto as **Exhibit F**.

3

>   not permit any other tenant or occupant of the Shopping Center who occupies more than ten thousand (10,000) square feet of Leasable Floor Area to use in the premises for the sale of Off-Price merchandise.

Ross Lease § 15.3 (the "Ross Exclusive").

8. Landlord states in its Objection that the proposed assignment to Burlington would violate the Ross Exclusive; however, existing tenants are expressly carved out:

>   **Notwithstanding anything to the contrary contained in this Section 15.3, the Existing Tenants listed on Exhibit L attached hereto shall not be subject to the use restriction(s) set forth in this Section 15.3.**

Ross Lease § 15.3 (emphasis added). The Debtor is listed in Exhibit L as an existing tenant and is explicitly ***not*** subject to the use restrictions set forth in Section 15.3. Ross Lease, Exhibit L. That carveout is dispositive here. This Court has already rejected similar arguments where the Ross Exclusive expressly does not apply to the Debtor. *See also* July 31 Hearing Tr. p. 84 (ruling that to the extent the Debtor was carved out of an exclusive, so are its assignees where the Debtor had the right to assign the lease).[4] Thus, the Ross Exclusive does not prohibit assignment to Burlington.

### B. The Marshalls Exclusive Does Not Apply to the Lease.

9. The Landlord subsequently entered into a lease with Marshalls (the "Marshalls Lease") dated April 19, 2018. Schedule B of the Marshalls Lease contains a similar restriction:

---

[4] The assignment provision of the Lease states that the "Tenant has the right to assign this Lease or sublet all or any part of the Premises ***for any lawful retail purpose provided***…that such assignee or sublessee uses the Premises for a primary use that does not violate the ECR or any protected/exclusive use rights granted to other tenants in the Shopping Center that exist on the date of the assignment or sublease (subject, however, to Landlord's advising Tenant of such rights." Lease § 23(a) (emphasis added). All of the conditions to assignment under section 23 of the Lease are—by definition—anti-assignment under section 365(f); however, the Court need not reach that issue because the proposed assignment to Burlington does not violate any exclusive use rights granted to other tenants in the shopping center, as discussed *infra*. *See* July 31 Hearing Tr. p. 84. ("While the Debtor at some level did agree to future restrictions, the future restrictions at issue have a carveout for the Debtor that is controlling.").

4

> [N]o other premises in the Shopping Center shall at any time contain more than (i) fifteen thousand (15,000) square feet of floor area therein used or occupied for, or devoted to, the sale or display of apparel and related accessories on an "Off-Price" basis (defined below)[5] and/or (ii) seven thousand five hundred (7,500) square feet of floor area therein used or occupied for, or devoted to the sale or display of shoes, footwear and related accessories . . .

Marshalls Lease, Schedule B ¶ 4(B) (the "Marshalls Exclusive").  The Objection again omits the remainder of the Marshalls Exclusive provision, which states:

> **The Exclusive Use shall not apply to . . . (c) up to two (2) other Off-Price (as defined above) apparel retailers each occupying or leasing fifteen thousand (15,000) or more square feet** in a building not to exceed the height of the Demised Premises…provided Ross as tenant under an Existing Lease (as defined below) shall count as one (1) of the two (2) Off-Price apparel retailers permitted hereunder . . .

Marshalls Lease, Schedule B ¶ 4(B).  The Marshalls Lease expressly allows a third Off-Price apparel retailer tenant into the shopping center.  The premises covered by Lease are approximately 21,000 square feet.  Therefore, assignment of the Lease to Burlington falls within the carveout permitting a third Off-Price apparel retailer and does not violate the Marshalls Exclusive.

10. Paragraph 4(C) of the Marshalls Exclusive also states that, subject to item (c) quoted in the previous paragraph, "the provisions of this Paragraph 4 shall not apply with respect to rights previously granted to tenants or occupants, including their assignees and sublessees, in the Development under leases or agreements existing as of the date hereof (collectively "Existing Leases")."  Marshalls Lease, Schedule B ¶ 4(C) (emphasis added).  Thus, the Marshalls Lease contains a similar carve out for existing leases at the shopping center.

---

[5] "Off-Price" basis is defined as "the retail sale of a variety of brand name and designer apparel on an everyday basis at prices reduced from prices charged by full price department and specialty stores (as opposed to the retail sale of regularly priced apparel with traditional sales, clearances, discounts or promotions. As of the date hereof, examples of Off-Price stores include, but are not limited to, stores operated under the tradenames Nordstrom Rack, Saks Off 5th, Bloomingdale's Outlet, Last Call Studio, and Steinmart." Marshall's Lease, Exhibit B ¶ 4(B).

5

11. In conclusion, even if the Marshalls Exclusive could be enforced against the Debtor, it does not prohibit assignment to Burlington because it expressly allows a third Off-Price apparel retailer to be in the shopping center.

**II.    *Section 365(b)(3)(C) Does Not Require Burlington to Comply with Later-in-Time Exclusives or Restrictions.***

12. Because the Lease predates both the Ross Lease and the Marshalls Lease, the estate cannot be bound solely by virtue of section 365(b)(3)(C) to future exclusives granted to other tenants in the shopping center. *See* July 31 Hearing Tr. p. 78–84; Transcript of August 30, 2023 Hearing, Docket No. 2115, pp. 116–120, *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) ("*Bed Bath & Beyond* Tr.")[6] ("When [the] canons of statutory construction are applied, it becomes clear to the Court that the phrase 'any other lease' could not have been intended and was not intended to mean a subsequent lease between a landlord and a third party as to which the debtor was not a party."); Transcript of January 21, 2025 Hearing, [Docket No. 1838] p. 61, *In re Big Lots, Inc., et al.*, Case No. 24-11967 (JKS) (Bankr. D. Del.) ("*Big Lots* Tr.")[7] (agreeing with the reasoning in *Sears*[8] and *Bed, Bath, & Beyond* that the phrase "any other lease" in section 365(b)(3)(c) does not mean later-in-time leases).

**III.    *Landlord Has Failed to Prove Tenant Mix.***

13. Landlord refers to a "carefully curated" tenant mix that it seeks to protect in the Objection, but there is no evidence of a specific tenant mix curated by the Landlord. Courts agree that tenant mix and balance are determined by reference to contractual protections within the debtor's lease. *See In re Ames Dept. Stores, Inc.*, 121 B.R. 160, 165 (Bankr. S.D.N.Y. 1990) ("It

---

[6]    A true and correct copy of the *Bed Bath & Beyond* transcript is attached hereto as **Exhibit B**.

[7]    A true and correct copy of the *Big Lots* transcript is attached hereto as **Exhibit C**.

[8]    *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp).*, 613 B.R. 51 (S.D.N.Y. 2020) (referred to herein as "*Sears*").

is, nevertheless, clear that section 365(b)(3)(D) must be interpreted to refer to contractual protections and not undefined notions of tenant mix."); *see also Toys "R" Us*, 587 B.R. 304, 310–11 n.4 (Bankr. E.D. Va. 2018) (tenant mix intent must be established in reference to the lease between the debtor and landlord); *Sears*, 613 B.R. at 64–68 (same).

14. Where the terms of a lease allow assignment "regardless of impact on tenant mix," "it would be anomalous to interpret section 365(b)(3)(D) to preclude" the debtor from assigning such lease. *In re Ames Dept. Stores, Inc.*, 121 B.R. at 164.

15. Landlord has failed to meet its burden of establishing that the Lease contains specific contractual protections that create an intentional tenant mix. The *Trak Auto* case, relied upon by the *Bed Bath & Beyond* court (*see Bed Bath & Beyond* Tr. at 129–35), instructs that it is a landlord's burden to establish an intended tenant mix:

> Finally, as a predicate to finding that a Shopping Center is entitled to protection under § 365(b)(3)(D), the lessor must demonstrate that there was an intended tenant mix in the first instance. *See In re Sun TV*, 234 B.R. at 366–71. Intent to create a diverse tenant mix must be established in light of the lease terms. *In re Ames Department Stores, Inc.*, 121 B.R. 160,165 (Bankr. S.D.N.Y. 1990). In order to establish that the proposed assignment to A&E would disturb the tenant mix of the Shopping Center, LaSalle must establish that the alleged tenant mix was part of the bargained-for-exchange of its lease and the leases of the other tenants.

*LaSalle Nat'l Trust, N.A. v. Trak Auto Corp.*, 288 B.R. 114, 125 (E.D. Va. 2003). Such intent is shown by a master agreement between all shopping center tenants, a financing agreement to which the debtor's lease is explicitly made subject, other explicit lease terms regarding tenant mix, or that the landlord sought or obtained lease amendments from existing shopping center tenants when a new tenant was moving in. *See id.* at 125–26 (rejecting landlord's argument that exclusive use

provisions binding on subsequent assignees create a tenant mix);[9] s*ee also Bed Bath & Beyond* Tr. at 126–27 (noting that the landlord did not seek modification of Bed Bath & Beyond's lease with respect to tenant mix after it granted an exclusive to a later-in-time tenant). Because that level of required evidence is not present here, the Objection must be overruled.

16.     Thus, Landlord's agreements in the Lease, the Ross Lease, and the Marshalls Lease do not reflect a specific tenant mix intended at the time each of those documents were executed. Landlord cannot argue that it wants to protect a certain tenant mix when there is no discernable intent to create or preserve a particular tenant mix in any of the operative documents.

### IV.     *The Assignment to Burlington Satisfies the Requirements of Adequate Assurance.*

17.     The Landlord states, without basis, that the assignment to Burlington does not satisfy the following requirements: (i) the financial condition and operating performance of the assignee must be similar to the original tenant; (ii) any percentage rent due under a lease must not decline substantially; (iii) the assignment must comply with all lease terms, including use and exclusivity provisions; and (iv) the assignment must not disrupt the tenant mix or balance of the center.

---

[9]    The *Trak Auto* court explains in detail that leases must be specific to show a protected "tenant mix":

> LaSalle argues that the Lease contains exclusive use clauses which are binding on any subsequent assignee and, that these use provisions create a tenant mix. However, the Bankruptcy Court found that the lease contained restrictive use provisions, which as discussed *supra* at Part A., were properly excised under § 365(b)(1), because LaSalle failed to carry its burden of production on the existence of exclusive use clauses in its leases. April 24 Order, p.8. As the Bankruptcy Court noted, the "purpose of an exclusive use clause is to provide protection to a single tenant." April 24 Order (citing *In re Sun TV, supra*). The Bankruptcy Court found that it lacked "any evidence relating to the intent behind the use provisions" and, therefore, held that the "debtors lease contained only restrictive use clauses." *Id.* at 9. Appellate review of the record reveals no evidence concerning the intent of the use provisions and Appellant's brief fails to assert any.

*Trak Auto*, 288 B.R. at 125–26.

18. To the first point, Burlington's financial condition is undoubtably at least as healthy as the Debtor's financial condition when it entered into the Lease. *See* Declaration of James Jeffers [Docket No. 1468] ¶ 5; *compare* Burlington's Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ending February 1, 2025, p. 45 (showing a net income exceeding $500 million for the fiscal year and showing over $8 billion in assets and liabilities/equity), attached hereto as **Exhibit D**, *with* Jo-Ann Stores, Inc.'s Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ending January 29, 2011, p. 26 (showing a net income of $66.6 million for the fiscal year ending January 30, 2010 and $93.1 million for the fiscal year ending January 29, 2011), attached hereto as **Exhibit E**. As to factor (ii), there is no percentage rent due under the Lease. *See* Lease § 6.

19. Items (iii) and (iv) are addressed above. Regarding item (iii), Burlington's proposed use of the premises is not prohibited by the Lease, Ross Lease, or the Marshalls Lease because the Ross Exclusive and the Marshalls Exclusive do not apply to the Debtor. Regarding item (iv), the Landlord has failed to show that any intended tenant mix is actually reflected in the Lease.

## Conclusion

20. The Landlord's Objection attempts to enforce later-in-time exclusives granted to Ross and Marshalls which, per the terms contained in those leases, expressly do not apply to the Debtor. Further, the Ross Exclusive and the Marshalls Exclusive cannot be enforced against the estate under section 365(b)(3)(C) because those exclusives were granted after the Debtor's Lease was executed. Because (a) assignment of the Lease to Burlington does not violate the Lease, the Ross Lease, or the Marshalls Lease, (b) Burlington's financial condition is similar to or better than the Debtor's at the time of the Lease's execution, and (c) there is no evidence of an intended tenant

mix, Burlington has provided adequate assurance of future performance. The Objection should be overruled, and the assignment of the Lease should be approved.

Dated: August 21, 2025

/s/ *Marcy J. McLaughlin Smith*
**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward (DE Bar No. 4471)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
          marcy.smith@wbd-us.com

-and-

**JACKSON WALKER LLP**
Kristhy M. Peguero (DE Bar No. 4903; TX Bar No. 24102776)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email:   kpeguero@jw.com
            vargeroplos@jw.com


William Farmer (TX Bar No. 24127156)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5859
Email:  wfarmer@jw.com


*Co-Counsel for Burlington Coat Factory Warehouse Corporation*