

## Master Services Agreement

This Master Services and License Agreement ("Agreement""), is entered into by and between SiteTraker LLC ("SiteTraker"), having offices at 695 US Highway 46 West, Suite 103, Fairfield, NJ, and Tilson Technology Management Inc. having an office at 245 Commercial Street, Suite 203, Portland, ME ("Customer") on 26 July 2016 (the "Effective Date").

**WHEREAS**, the Parties wish to enter into this Agreement, whereby SiteTraker agrees to provide certain services to Customer and grant certain licenses to proprietary SiteTraker software to Customer as requested by Customer pursuant to proposals agreed to from time to time between Customer and SiteTraker.

**NOW, THEREFORE,** in consideration of the mutual obligations and covenants set forth herein, and for other good and valuable consideration, SiteTraker and Customer agree as follows:

**1.      Entire Agreement.**  This Agreement and each of the Exhibits attached hereto constitute the entire agreement between the Parties and except to the extent explicitly incorporated herein, supersedes any and all prior agreements between the Parties concerning the subject matter herein.

**2.      Services and Subscriptions**.

**2.1**    Applicable Subscriptions. The Customer hereby subscribes for, and SiteTraker hereby agrees to provide, (i) the SaaS-based Software (as defined herein), and (ii) the configuration, maintenance, consultation and support services as may be set forth herein and in the statement of work dated 26 July 2016 (the "SOW"), attached as Exhibit A (collectively, the "Services"). The SaaS-based services and Software is a software application that is (1) generally accessed through the internet; (2) integrated and delivered as an integrated solution with the Salesforce.com, Inc. ("Salesforce") software platform (the "SFDC Platform"); and (3) hosted on the SFDC Platform.

**2.2**    Change Requests. All mutually agreed-upon amendments or change requests made to an SOW shall be binding on the parties. Both parties must execute each SOW, amendment, or change request for it to be effective.

**3.      Subscription Terms.**

**3.1**    License of Software. Subject to Customer's payment to SiteTraker of the applicable Subscription Fees (as set forth in the SOW), SiteTraker hereby grants to Customer a limited, non-transferable, non-exclusive license to use and access the software application described in further detail in the SOW (the "Software") as hosted on the SFDC Platform and for the number of Authorized Users (as defined below) set forth in the SOW, for the conduct of Customer's own business as is necessary or required to utilize the Services during the Subscription Period (as defined in the SOW). At the termination of this Agreement, SiteTraker will terminate Customer's access to the Software and Customer will have no further rights thereto.  All right, title and interest in and to the Software, including all Intellectual Property Rights.  "Intellectual Property Rights" means all rights under the patent, copyright and trademark laws of the United States or other applicable jurisdiction. The foregoing license is subject to such additional license restrictions as may be set forth in the SOW.

**3.2** <u>SFDC Platform License</u>. The SFDC Platform is sublicensed to Customer pursuant to the terms of a separate licensing agreement between SiteTraker and SalesForce.

**3.3** <u>Limited Reliance</u>. All Software and Deliverables are provided solely for Customer's benefit, and SiteTraker does not intend for any person or entity other than Customer to rely on them. Customer shall not disclose the Software to any person or entity except to its authorized users which shall consist of any of the following who have created an account with SiteTraker for use of the Software: (i) Customer's employees, and (ii) independent contractors of Customer provided that said contractors access the Software and Deliverables solely for the purpose of their providing services to Customer relating to the subject matter of the Agreement (each, an "Authorized User"). Customer shall ensure that all Authorized Users comply with the restrictions on use and disclosure set forth in the Agreement and Customer shall be liable to SiteTraker for any non-compliance by any Authorized User. SiteTraker is entitled to immediately terminate or suspend an Authorized User's access to the Software or Deliverables if SiteTraker believes in good faith that there has been a violation of the restrictions of the Agreement. SiteTraker shall provide written notice to Customer as soon as practicable following any such termination or suspension of access.

**3.4** <u>Acceptable Use</u>.

**3.4.1** Customer shall not, as applicable: (1) sell, re-license, rent, lease, provide service bureau or timeshare access to, the Software, (2) use the Software for the provision of services to third parties; or (3) except as expressly provided in the Agreement, create derivative works from, distribute, or in any way exploit the Software in whole or in part.

**3.4.2** Customer acknowledges that the Software is confidential and proprietary to SiteTraker. Customer shall not disclose the Software to or permit access to the Software to any third party including to any person, customer, organization, governmental agency, non-profit organization, or other entity, or the employees or agents thereof, whether on a for-profit, loan, gratuitous, temporary, or other basis, whether through consulting, training, or other services provided by Customer, or in any other manner except upon the express prior written consent of SiteTraker.

**3.5** <u>Updates</u>. SiteTraker will provide Updates, modifications, or enhancements to the Software. Any such Updates, modifications or enhancements shall be provided to Customer as and when they are commercially released. "Update" means a set of procedures or new program code implemented by SiteTraker (1) to correct errors or implement bug fixes in the Software, (2) to allow the Software to continue to function under supported versions of an applicable operating system, or under a newly available operating system, or (3) that includes modifications and enhancements to improve functioning of the Software. Any updates to the SFDC Platform will be released and deployed by Salesforce. SiteTraker will make commercially reasonable efforts to provide Customer with advance notice of any updates or planned releases by Salesforce to the SFDC Platform.

**3.6** <u>Upgrades</u>.

**3.6.1** SiteTraker is entitled to produce or make available, in its discretion, Upgrades for the Software. SiteTraker is entitled to charge for Upgrades and for services required to support Upgrades. SiteTraker will provide Customer with good-faith detailed information about each proposed Upgrade, including: (1) available lists of changes to the features or performance of the Software as a result of the Upgrade; (2) known issues or warnings with respect to the deployment or operation of the Upgrade; (3) Upgrade-related fees and expenses; (4) the timing of the Upgrade's deployment; and (5) requirements to adopt the Upgrade.

**3.6.2** If technically feasible and at Customer's expense, Customer may decline to accept an Upgrade offered by SiteTraker for up to six (6) months after the release date of the Upgrade. After that period, if the Customer has not installed the Upgrade, SiteTraker is entitled to terminate the Agreement upon thirty (30) days' prior written notice to the Customer.

**3.6.3** "Upgrade" means a new version or release of the Software or a particular component of the Software provided by SiteTraker that improves the functionality of, or that adds functional capabilities to the Software. "Upgrade" includes a version or release of any successor or next-generation product to the Software that contains or performs comparable or similar functionality and performance as the Software.

**3.7** <u>Support</u>. SiteTraker shall provide Customer with maintenance support as set forth in further detail in the SOW.

**3.8** <u>Training</u>.  Training may be provided by SiteTraker to Customer as agreed to between the Parties in accordance with the applicable SOW.  Scheduled training must be cancelled or rescheduled by Customer at least forty-eight (48) hours prior to the scheduled date.  In the event of late cancellation or rescheduling, Customer shall reimburse SiteTraker for all related expenses incurred, including but not limited to, travel, and lodging expenses when such training is scheduled to take place at Customer's premises.

**3.9** <u>Availability of Software</u>.  SiteTraker shall provide Customer with access to the Software via the Internet for purposes of using the Software.  SiteTraker shall use commercially reasonable efforts to make the Software available over the Internet as set forth in the SOW.

**4.** **Operating Provisions.**

**4.1** <u>Credentials</u>.  SiteTraker shall be responsible for creating, or arranging for the issuance of, all end user accounts which shall consist of a unique user ID and password, to be assigned on a per-user basis (each, a "Credential").  Customer shall receive one Credential for each Authorized User licensed under an applicable SOW.  The Credential will permit end users to access the Software in accordance with this Agreement.  Customer shall be responsible for protecting the security and integrity of all Credentials.  In the event that (i) a Credential has become compromised or improperly disclosed; or (ii) the Customer employee assigned to a Credential is terminated then Customer shall notify SiteTraker immediately so that SiteTraker can take steps to limit unauthorized access and issue a new Credential.  In the event that any Customer employee assigned to a Credential is terminated, SiteTraker shall issue a new Credential for that Authorized User within five (5) days of receipt of written notice from Customer.

**4.2** <u>Provision of Services</u>.  SiteTraker will perform all Services remotely, unless specifically requested by Customer.  In the event Customer requests SiteTraker to perform any Services at Customer's location, Customer shall be responsible for all SiteTraker travel expenses incurred, which SiteTraker shall invoice at cost.

**4.3** <u>Customer Responsibilities</u>. Customer shall be solely responsible for, among other things (i) the performance of its personnel and agents; (ii) the accuracy and completeness of all Customer-Furnished Items; (iii) maintaining all software, hardware, and other equipment used by Customer to access and use the Software; (iv) securing and maintaining all rights required for use of any Customer-Furnished Items in connection with the Software, and (v) obtaining and providing the Customer-Furnished Items in accordance with applicable laws.  Customer acknowledges that SiteTraker's performance depends on Customer's timely performance of its obligations and responsibilities under this Agreement and that Customer shall be responsible for any additional costs associated with delays thereof.

**4.4** <u>Data Integrity</u>.  Unless otherwise agreed upon in a SOW, Customer shall assume all responsibility for the entry of all Customer-Furnished Items (as defined below) into the Software. SiteTraker shall use commercially reasonable efforts to secure the protection of the Customer-Furnished Items from loss or destruction.  SiteTraker shall use commercially reasonable efforts to maintain current data in a format that can be used with or reformatted to a commonly used database by Customer or a third party.

**4.5** <u>User Acceptance Testing</u>.

**4.5.1** <u>Delivery and Testing</u>.  Based upon the scope of the Software and Services set forth in the SOW, SiteTraker will prepare and make accessible a prototype of the configured Software in accordance with the delivery schedule set forth in the SOW.  After making the prototype of the configured Software available, SiteTraker and Customer shall jointly conduct a detailed testing of the Software to determine compliance with the agreed upon specifications (the "<u>Testing Procedure</u>"), which Testing Procedure shall be completed within five (5) business days thereafter, or upon such other period as the Parties shall agree to ("<u>Acceptance Period</u>").  Upon or before the conclusion of the Acceptance Period, Customer shall notify SiteTraker in writing of any material nonconformity in the Software.  If Customer fails to deliver any such notice, then Customer shall be deemed to have agreed to the following:  (i) Customer has reviewed, tested and inspected the Software and determined to Customer's satisfaction that the Software contains the core functionality and operability as required by the specifications set forth in the SOW; (ii) Customer accepts the Software as delivered and agrees that SiteTraker has performed its obligations with respect to the configuration and implementation of the Software and that no further modifications or development is necessary by SiteTraker for the Software to conform to the SOW; and (iii) Customer releases SiteTraker from any further obligation under the Agreement with respect to conformance of the Software with the SOW; <u>provided</u>, <u>however</u>, that the foregoing shall not release SiteTraker from any warranties set forth herein.

    **4.5.2** <u>Material Nonconformities</u>**.** In the event Customer provides written notice of any material nonconformity during the Acceptance Period, SiteTraker shall correct such nonconformity within thirty (30) days of receipt of such notice or over such period as may be reasonable under the circumstances. Upon correction of the nonconformities, the Parties shall once again perform the Testing Procedure, and the foregoing process shall be repeated until the configured Software is accepted by Customer.

    **4.5.3** <u>Cutover</u>. Upon completion of the Testing Procedure set forth above, SiteTraker will make the Software will make the Software available for Customer's use in a live production environment ("Cutover"). SiteTraker will perform the Cutover during Customer's non-business hours or during such hours as may be agreed to by the Parties in writing.

    **4.5.4** <u>Change Process</u>. Any requested changes to the Software or Services occurring after completion of the Acceptance Period shall be made via the Support Request process (as defined in the SOW). Upon the completion of the changes set forth in a Support Request, any such modifications to the Software shall be subject to the testing and approval procedure set forth in this Section.

**5.** **Third Party Providers**

**5.1** <u>Third Party Content</u>. To the extent that SiteTraker is providing Customer with any content from third party licensors ("Third Party Content"), as set forth in an SOW, If SiteTraker is required by a licensor to remove Third Party Content, or receives notice that such Third Party Content may violate applicable law or third-party rights, SiteTraker may promptly remove such Third Party Content from the Software.

**5.2** <u>Third Party Applications</u>. To the extent that Customer uses any Third Party Applications in connection with its use of the Software, then in the event SiteTraker receives information that such Third Party Application may violate an applicable law or third-party rights, SiteTraker may promptly disable such Third Party Application or, where technically feasible, modify the Third Party Application to resolve the potential violation. "Third Party Applications" shall mean any web-based or offline software application that is provided by Customer or a third party and interoperates with the Software.

**5.3** <u>Transmission of Customer Data to Third Parties</u>**.** To the extent that Customer uses any Third Party Application to export any Customer Data (as defined below), any exchange of Customer Data between Customer and such Third Party Application provider, is solely between Customer and the applicable third party. SiteTraker does not warrant or support Third Party Applications, products or services, whether or not they are designated by SiteTraker as "certified" or otherwise, except as may be specified in an SOW.

**5.4** <u>Third Party Access</u>**.** To the extent that Customer installs or enable a Third Party Application, Customer grant SiteTraker permission to allow the provider of that Third Party Application to access Customer Data as may be required for the interoperation of that Third Party Application with the Software. SiteTraker is not responsible for any disclosure, modification or deletion of Customer Data resulting from access by such Third Party Application.

**5.5** <u>Integration with Third Party Applications</u>**.** The Software may contain features designed to interoperate with Third Party Applications. In the event Customer elects to enable such features, Customer may be required to obtain a license to such Third Party Applications from the applicable third party providers after which Customer shall either (i) arrange for SiteTraker to obtain appropriate credentials for such Third Party Application; or (ii) obtain written authorization from such third party provider for SiteTraker access the Third Party Applications using Customer's credentials. If the provider of a Third Party Application ceases to make the Third Party Application interoperable with the Software, SiteTraker may, at its sole discretion, cease providing those features of the Software without entitling Customer to any refund, credit, or other compensation.

**6.** **Fees and Payment for Services**

**6.1.** <u>Invoices</u>**.** Customer shall pay SiteTraker for the subscriptions granted to the Software and for all fees for the performance of any Services as set forth in the SOW. SiteTraker is entitled to invoice Customer in accordance with the schedules set forth in each SOW, or, if no such schedules are set forth, on a monthly basis. Customer shall pay each invoice no later than thirty (30) days from the date the invoice is received.

**6.2.**     Authorized Users.  Customer agrees to license the Software for the minimum number of Authorized Users set forth in the Statement(s) of Work on during the Subscription Period.  The number of Authorized Users may not be decreased but may be increased at any time by Customer's written request.  All such written requests must be authorized by the Customer Point of Contact (as set forth in the SOW).  Upon authorization the number of Authorized Users shall be increased and Customer shall be invoiced for the increased Subscription Fees which shall the prorated for the remainder of the given year of the Subscription Period.

**6.3.**     Remedies for Non-Payment. If SiteTraker does not receive payment within thirty (30) days after the date the invoice is received, SiteTraker will be entitled to (i) assess interest at the rate of one and one half percent (1½%) per month, (ii) recover all costs of collection, including reasonable attorneys' fees and costs of suit, (iii) at SiteTraker's sole discretion, terminate this Agreement or suspend Customer's access to the Software following ten (10) days' prior written notice to Customer, (iv)  accelerate Customer's unpaid fee obligations so that all such obligations become immediately due and payable. SiteTraker will give Customer at least 10 days' prior notice that Customer account is overdue, before suspending services to Customer.

**6.4.**     Taxes. SiteTraker's fees do not include any taxes, levies, duties or similar governmental assessments of any nature, including, for example, value-added, sales, use or withholding taxes, assessable by any jurisdiction whatsoever (collectively, "Taxes"). Customer is responsible for paying all Taxes associated with Customer purchases hereunder. If SiteTraker have the legal obligation to pay or collect Taxes for which Customer is responsible under this Section, SiteTraker will invoice Customer and Customer will pay that amount unless Customer provide SiteTraker with a valid tax exemption certificate authorized by the appropriate taxing authority. For clarity, SiteTraker are solely responsible for taxes assessable against SiteTraker based on SiteTraker's income, property and employees.

**6.5.**     Future Functionality. Customer agree that Customer purchases are not contingent on the delivery of any future functionality or features, or dependent on any oral or written public comments made by SiteTraker regarding future functionality or features.

**7.    Audits**

**7.1.**     SiteTraker is entitled to audit Customer's usage of the Software from time to time to verify compliance with the terms of this Agreement. SiteTraker shall not perform any such audit more than once per year unless previous audits reveal that any of Customer's usage has exceeded the terms of this Agreement in any material respect.

**7.2.**     Subject to the confidentiality provisions set forth in this Agreement, Customer shall provide to SiteTraker and its agents access during regular business hours to Customer personnel engaged in using the Software and to the data and records relating to the Software for the purpose of performing audits and inspections of the usage of the Software and reviewing and verifying the accuracy of fees, expenses, or other items.

**7.3.**     SiteTraker shall provide reasonable advance notice to Customer of any audit. Any audit will be (1) conducted during regular business hours in a manner that does not unreasonably interfere with Customer's business; and (2) limited to reviewing that Customer information that is reasonably necessary to verify compliance with this Agreement.

**7.4.**     The parties will negotiate in good faith to resolve and address any discrepancies in Customer's usage revealed by an audit.

**7.5.**     If any audit reveals that Customer's usage for the audited period does not conform to the terms of this Agreement Customer shall promptly pay SiteTraker for the amount of any undercharges. In addition, if any such audit reveals an underpayment by Customer of five percent (5%) or more of the total amount actually owed, Customer shall reimburse SiteTraker the costs of such audit.  The parties shall meet following each audit at a mutually agreed time to review the results of each audit.

8. **Ownership**

**8.1.** <u>Ownership of Customer-Furnished Items</u>. Customer retains all rights, title, and interest in the "Customer-Furnished Items," along with all Intellectual Property Rights (as defined below) associated with any of the foregoing, and no title to or ownership of any of the foregoing is transferred, except as expressly set forth in this Agreement. SiteTraker hereby assigns to Customer all right, title and interest, and associated Intellectual Property Rights that it may have or acquire to any Customer-Furnished Items. "Customer-Furnished Items" means the non-public or proprietary information and data that (a) is owned or controlled by Customer, as the case may be, and (b) is furnished by Customer for use in connection with the subscriptions or Services. Customer hereby grants to SiteTraker a limited, worldwide, non-transferable and non-exclusive license to use the Customer-Furnished Items as may be reasonably necessary to perform its obligations under this Agreement. Upon termination of this Agreement for any reason, SiteTraker shall use reasonable efforts to delete or destroy all Customer-Furnished Items in its possession, custody, or control or, at the Customer's expense, return to the Customer all Customer-Furnished Items in SiteTraker's possession, custody, or control within thirty (30) days after the termination.

**8.2.** <u>Ownership of Inventions</u>. Customer acknowledges that the performance of Services by SiteTraker may result in SiteTraker and/or its parent or subsidiary companies developing or creating, or using pre-existing, computer programs, mobile applications, concepts, methods, interfaces, protocols, procedures, analyses, processes, adaptations and/or ideas, trademarks, trade secrets and proprietary processes, and software ("Inventions"), including any Inventions delivered to Customer prior to the date of execution of this Agreement, but not resulting from Customer's Confidential Information (as defined below). Except for the rights granted herein, all rights, title and interest in the Inventions, including but not limited to rights under copyright, trademark, patent and trade secret laws, shall remain in SiteTraker and/or its parent or subsidiary companies. Customer hereby assigns to SiteTraker all right, title and interest, and associated rights under copyright, trademark, patent and trade secret laws that it may have or acquire in and to any Inventions. To the extent that any Inventions are incorporated in or necessary to use the Software or Services, SiteTraker hereby grants Customer a limited, non-exclusive, royalty-free, right and license to use the Inventions solely in connection with the use by Customer of the Software or Services during the Term.

**8.3.** <u>Ownership of Customer Data</u>. The results, data, and reports generated by SiteTraker specifically for Customer as part of Customer's use of the Software (the "Customer Data"), shall be the sole property of the Customer. SiteTraker hereby assigns to the Customer all rights, title, and interest SiteTraker may have in the Customer Data and agrees not to use the Customer Data on behalf of any of its other clients or customers. Customer hereby grants SiteTraker a limited, worldwide, non-exclusive right and license to host, copy, transmit and display Customer Data, and any Third Party Applications and program code created by or for Customer using the Software, as necessary for SiteTraker to provide the Software and Services in accordance with this Agreement. Subject to the limited license granted herein, SiteTraker acquire no right, title or interest from Customer or Customer licensors under this Agreement in or to Customer Data or any Third Party Application or program code.

**8.4.** <u>License by Customer to Use Feedback</u>. Customer hereby grants to SiteTraker a worldwide, perpetual, irrevocable, royalty-free license to use and incorporate into the Software and/or Services any suggestion, enhancement request, recommendation, correction or other feedback provided by Customer or Authorized Users relating to the operation of the Software or Services.

9. **Confidentiality**

**9.1.** <u>Definition of Confidential Information</u>. "Confidential Information" means all information disclosed by a party ("**Disclosing Party**") to the other party ("**Receiving Party**"), whether orally or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure. Customer Confidential Information includes, without limitation, Customer Data and Customer-Furnished Items; SiteTraker's Confidential Information includes, without limitation, the Software, any applicable Content; and Confidential Information of each party includes the terms and conditions of this Agreement and all SOWs (including pricing), as well as any non-public business and marketing plans, customer information, technology and technical information, product plans and designs, tools, templates, methods, know-how and business processes disclosed by such party. However, Confidential Information does not include any information that (i) is or

becomes generally known to the public without breach of any obligation owed to the Disclosing Party, (ii) was known to the Receiving Party prior to its disclosure by the Disclosing Party without breach of any obligation owed to the Disclosing Party, (iii) is received from a third party without breach of any obligation owed to the Disclosing Party, or (iv) was independently developed by the Receiving Party.

**9.2.**    <u>Protection of Confidential Information</u>. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) (i) not to use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement, and (ii) except as otherwise authorized by the Disclosing Party in writing, to limit access to Confidential Information of the Disclosing Party to those of its employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections no less stringent than those herein. Neither party will disclose the terms of this Agreement or any SOW to any third party other than its legal counsel and accountants without the other party's prior written consent, provided that a party that makes any such disclosure to its legal counsel or accountants will remain responsible for such legal counsel's or accountant's compliance with this Section.

**9.3.**    <u>Compelled Disclosure</u>. The Receiving Party may disclose Confidential Information of the Disclosing Party to the extent compelled by law to do so, provided the Receiving Party gives the Disclosing Party prior notice of the compelled disclosure (to the extent legally permitted) and reasonable assistance, at the Disclosing Party's cost, if the Disclosing Party wishes to contest the disclosure. If the Receiving Party is compelled by law to disclose the Disclosing Party's Confidential Information as part of a civil proceeding to which the Disclosing Party is a party, and the Disclosing Party is not contesting the disclosure, the Disclosing Party will reimburse the Receiving Party for its reasonable cost of compiling and providing secure access to that Confidential Information.

**9.4.**    <u>Return of Confidential Information</u>. Upon expiration or termination of this Agreement or upon the request of the Disclosing Party, each party shall promptly return to the other party all Confidential Information and all originals and copies of documents and other materials constituting or containing Confidential Information; <u>provided</u>, <u>however</u>, that a party may retain one copy of all such information in its legal files for the sole purpose of monitoring its compliance with its obligations hereunder.

**10.**    **Representations, Warranties, Exclusive Remedies and Disclaimers**

**10.1.**    <u>Representations</u>. Each party represents that (a) it has validly entered into this Agreement and has the legal power to do so, and (b) the execution, delivery and performance of this Agreement will not conflict with, breach, or cause a default under, any material contract with any third party.

**10.2.**    <u>SiteTraker's Warranties</u>. SiteTraker warrant that (a) the Software will perform materially in accordance with the written specifications set forth herein, (b) the Services will be performed in a professional manner, consistent with the generally accepted standards of SiteTraker's industry, (c) subject to Section 5.5 (Integration with Third Party Applications), SiteTraker will not materially decrease the functionality of the Services during a subscription term, and (d) the Software will not introduce Malicious Code into Customer systems. "Malicious Code" shall mean code, files, scripts, agents or programs intended to do harm, including, for example, viruses, worms, time bombs and Trojan horses.

Customer's sole and exclusive remedy in the event of any breach of the warranties set forth in this Section will be to require SiteTraker to take reasonable efforts to cause the Services and/or Software to conform to the specifications contained in the SOW and this Agreement and in the event SiteTraker is unable to do so, then SiteTraker shall refund all fees paid by Customer for any period that the Software failed to conform to the warranties.

**10.3.**    <u>Disclaimers</u>. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. THE SOFTWARE AND SERVICES ARE PROVIDED "AS IS,"

EXCLUSIVE OF ANY WARRANTY WHATSOEVER. SITETRAKER DISCLAIMS ALL LIABILITY AND INDEMNIFICATION OBLIGATIONS FOR ANY HARM OR DAMAGES CAUSED BY THE SFDC PLATFORM.

**11.      Limitation of Liability.**  Neither party, its contractors, or their respective personnel will be liable to the other for any claims, losses, or liabilities relating to this Agreement ("Claims") for an aggregate amount in excess of the fees paid by Customer to SiteTraker under the SOW that is the subject of the breach during the 12-month period immediately preceding the date on which the initial act or omission giving rise to the liability first occurred. IN NO EVENT WILL EITHER PARTY, ITS CONTRACTORS, OR THEIR RESPECTIVE PERSONNEL BE LIABLE FOR ANY LOSS OF USE, DATA, GOODWILL, REVENUES, OR PROFITS (WHETHER OR NOT DEEMED TO CONSTITUTE A DIRECT CLAIM), OR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR EXEMPLARY LOSS, DAMAGE, OR EXPENSE RELATING TO THIS AGREEMENT. The provisions of this Section do not apply to (1) any Claim for which one party has an express obligation to indemnify the other under this Agreement, (2) a breach of Sections 8 or 9 herein, (3) any amounts owed by Customer to SiteTraker for the Software or Services provided under this Agreement, or (4) the extent resulting from a party's bad faith or intentional misconduct. In circumstances in which any limitation on damages or indemnification provision under this Agreement is unavailable, the parties shall ensure that the aggregate liability of each party, its contractors, and their respective personnel for any Claim does not exceed an amount that is proportional to the relative fault that such party's conduct bears to all other conduct giving rise to the Claim.

**12. Mutual Indemnification**

**12.1.**      <u>Indemnification by SiteTraker</u>. SiteTraker will indemnify, defend, and hold harmless Customer, its directors, officers, shareholders, employees, and agents, and any person or entity that controls any of them, against any and all claims, liabilities, demands, damages, judgments, awards, settlements, expenses, or losses, including costs of litigation and reasonable attorneys' fees, arising from any claims asserted by a third party ("Liabilities")  arising from a claim that the use of the Software in accordance with this Agreement infringes or misappropriates such third party's intellectual property rights (a "**Claim Against Customer**"), provided Customer (a) promptly give SiteTraker written notice of the Claim Against Customer, (b) give SiteTraker sole control of the defense and settlement of the Claim Against Customer (except that SiteTraker may not settle any Claim Against Customer unless it unconditionally releases Customer of all liability), and (c) give SiteTraker all reasonable assistance in the defense and settlement of the Claim Against Customer, at SiteTraker's expense. If SiteTraker receives information about an infringement or misappropriation claim related to the Software, SiteTraker may in SiteTraker's discretion and at no cost to Customer (i) modify the Service so that it no longer infringes or misappropriates, without breaching SiteTraker's warranties herein, (ii) obtain a license for Customer's continued use of the Software in accordance with this Agreement, or (iii) terminate Customer's subscriptions for the Software upon 30 days' written notice and refund Customer any prepaid fees covering the remainder of the term of the terminated subscriptions. The above defense and indemnification obligations do not apply to the extent a Claim Against Customer arises from Customer-Furnished Materials, a Third Party Application or Customer's breach of this Agreement.

**12.2.**      <u>Indemnification by Customer</u>. Customer will indemnify, defend, and hold harmless SiteTraker, its directors, officers, shareholders, employees, and agents, and any person or entity that controls any of them, against any and all Liabilities arising any third party claims alleging that Customer Data, or Customer use of the Software in breach of this Agreement, infringes or misappropriates such third party's intellectual property rights or violates applicable law (a "**Claim Against SiteTraker**"), provided SiteTraker (a) promptly gives Customer written notice of the Claim Against SiteTraker, (b) gives Customer sole control of the defense and settlement of the Claim Against SiteTraker (except that Customer may not settle any Claim Against SiteTraker unless it unconditionally releases SiteTraker of all liability), and (c) gives Customer all reasonable assistance in the defense and settlement of the Claim Against SiteTraker, at Customer's expense.

**12.3.**      <u>Exclusive Remedy</u>. This Section 12 states the indemnifying party's sole liability to, and the indemnified party's exclusive remedy against, the other party for any type of claim described in this Section 12.

## 13. Term and Termination

**13.1.**     Term of Agreement. This Agreement commences Effective Date and continues until the end of the Subscription Period.

**13.2.**     Term of Purchased Subscriptions. The term of each Subscription Period shall be as specified in the applicable SOW. Except as otherwise specified in an SOW, subscriptions will automatically renew for additional periods of one year, unless either party gives the other notice of non-renewal at least 30 days before the end of the relevant subscription term. The Subscription Fees during any automatic renewal term will be the same as that during the immediately prior term unless SiteTraker has given Customer written notice of a pricing increase at least 60 days before the end of that prior term, in which case the pricing increase will be effective upon renewal and thereafter. Any such pricing increase will not exceed seven percent (7%) of the pricing for the applicable Software in the immediately prior subscription term, unless the pricing in the prior term was designated in the relevant SOW as promotional or one-time.

**13.3.**     Termination. A party may terminate this Agreement for cause (i) upon 30 days written notice to the other party of a material breach if such breach remains uncured at the expiration of such period, or (ii) if the other party becomes the subject of a petition in bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

**13.4.**     Rights on Termination. Customer acknowledges that in order to provide the Software and Services hereunder, SiteTraker enters into commitments with third party licensors and providers of IT infrastructure, embedded technologies, and related services which cannot be cancelled.  As such, any prepaid Subscription Fees, and Customer Success Fees (as set forth in the SOW) are non-refundable. Upon termination, Customer shall be required to pay (i) any outstanding balance on any fees set forth in the SOW, and (ii) all reimbursable expenses incurred by SiteTraker. In the event of a termination by SiteTraker due to Customer's breach of this Agreement, Customer shall be required to pay any Platform Subscription Fees due for the twelve (12) month period of Customer's subscription. "Platform Subscription Fees" shall mean any fees incurred by SiteTraker in connection with Customer's access to and use of the underlying SFDC Platform.

**13.5.**     Customer Data Portability and Deletion. Upon request by Customer made within 30 days after the effective date of termination or expiration of this Agreement, SiteTraker will make the Customer Data available to Customer for export or download in a format to be agreed upon by the parties. After that 30-day period, SiteTraker will have no obligation to maintain or provide Customer Data, and may thereafter delete or destroy all copies of Customer Data in SiteTraker's systems or otherwise in SiteTraker's possession or control as provided in the Documentation, unless legally prohibited.

**13.6.**     Surviving Provisions. Sections 8, 9, 10, 11, 12, 13.4, 13.5, 14 and 15 shall survive the termination or expiration of this Agreement, as applicable.

## 14.  NOTICES

**14.1.**     General.  Whenever under this Agreement notice is required or permitted to be given, the notice must be in writing. Notice will be deemed given upon receipt when hand delivered or sent by a reputable commercial overnight courier, and three business days following mailing by registered or certified United States mail, return receipt requested, postage prepaid, and addressed to the addressee at its address set forth in this Section.

|  |  |
|---|---|
| To SiteTraker: | SiteTraker LLC |
|  | 695 US Highway 46 West, Suite 103 |
|  | Fairfield, NJ 07004 |
|  | Attn: Giuseppe Incitti, Chief Executive Officer |

| | |
|---|---|
| To Customer: | Tilson Technology Management Inc.<br>245 Commercial Street, Suite 203<br>Portland, ME 04101<br>Attn: Kevin J. Winfrey, Chief Information Officer |

A party may change its address for notice by giving prior written notice of the new address in conformity with the foregoing and the date upon which such new address will become effective.

**14.2.**     Manner of Giving Notice**.** Except as otherwise specified in this Agreement, all notices, permissions and approvals hereunder shall be in writing and shall be deemed to have been given upon: (i) personal delivery, (ii) the second business day after mailing, (iii) the second business day after sending by confirmed facsimile, or (iv) the first business day after sending by email (provided email shall not be sufficient for notices of termination or an indemnifiable claim).

**15. GENERAL PROVISIONS**

**15.1.**     Export Compliance. The Services, Content, other technology SiteTraker make available, and derivatives thereof may be subject to export laws and regulations of the United States and other jurisdictions. Each party represents that it is not named on any U.S. government denied-party list. Customer shall not permit Authorized Users to access or use any Service or Content in a U.S.-embargoed country or in violation of any U.S. export law or regulation.

**15.2.**     Anti-Corruption. Customer have not received or been offered any illegal or improper bribe, kickback, payment, gift, or thing of value from any of SiteTraker's employees or agents in connection with this Agreement. Reasonable gifts and entertainment provided in the ordinary course of business do not violate the above restriction. If Customer learn of any violation of the above restriction, Customer will use reasonable efforts to promptly notify SiteTraker at 695 US Highway 46 West, Suite 103, Fairfield, NJ 07004.

**15.3.**     Entire Agreement and Order of Precedence. This Agreement is the entire agreement between Customer and SiteTraker regarding Customer use of the Software and Services and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter. No modification, amendment, or waiver of any provision of this Agreement will be effective unless in writing and signed by the party against whom the modification, amendment or waiver is to be asserted. In the event of any conflict or inconsistency among the following documents, the order of precedence shall be: (1) the applicable SOW, (2) this Agreement.

**15.4.**     Assignment. Neither party may assign any of its rights or obligations hereunder, whether by operation of law or otherwise, without the other party's prior written consent (not to be unreasonably withheld); provided, however, either party may assign this Agreement in its entirety (including all SOWs), without the other party's consent in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets. Notwithstanding the foregoing, if a party is acquired by, sells substantially all of its assets to, or undergoes a change of control in favor of, a direct competitor of the other party, then such other party may terminate this Agreement upon written notice. In the event of such a termination, SiteTraker will refund to Customer any prepaid fees covering the remainder of the term of all subscriptions. Subject to the foregoing, this Agreement will bind and inure to the benefit of the parties, their respective successors and permitted assigns.

**15.5.**     Relationship of the Parties. The parties are independent contractors. This Agreement does not create a partnership, franchise, joint venture, agency, fiduciary or employment relationship between the parties.

**15.6.**     Third-Party Beneficiaries. SiteTraker's Content licensors shall have the benefit of SiteTraker's rights and protections hereunder with respect to the applicable Content. There are no other third-party beneficiaries under this Agreement.

**15.7.**     Waiver. No failure or delay by either party in exercising any right under this Agreement will constitute a waiver of that right.

**15.8.** <u>Severability</u>. If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, the provision will be deemed null and void, and the remaining provisions of this Agreement will remain in effect.

**15.9.** <u>Section Headings</u>. The section headings contained in this Agreement are for convenience of reference only and will not affect the meaning or interpretation of this Agreement.

**15.10.** <u>Governing Law; Jurisdiction; Venue</u>. This Agreement is governed by the laws of the state of New Jersey, without regard to its principles of choice of law. A party must bring and maintain any action arising out of this Agreement exclusively in any state or federal court located in New Jersey. Each of Customer and SiteTraker hereby expressly and irrevocably submits to the personal jurisdiction of such courts for the purposes of any such action. Each of Customer and SiteTraker hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection to the venue of any such action brought in any such court, any claim that any such action has been brought in an inconvenient forum, or any similar objection or argument.

**15.11.** <u>Force Majeure</u>. Neither party will be liable to the other party for damages arising out of delays or failures to perform under this Agreement to the extent that any such delays or failures result from any cause beyond the reasonable control of the party affected, such as fire, earthquake, explosion, casualty, strike, war, riot, civil disturbance, act of God, any reasonably unforeseeable change in state or national law, decree or ordinance, or any executive or judicial order provided that the affected party promptly informs the other of all relevant information.

[*signature page follows*]

**IN WITNESS WHEREOF**, SiteTraker and Customer have caused this Agreement to be executed and delivered by their respective duly authorized representatives effective as of the effective date set forth above.

| SITETRAKER LLC | TILSON TECHNOLOGY MANAGEMENT INC. |
|---|---|
| By: *Giuseppe Incitti* (DocuSigned, 070F8251CC0E4BA...) | By: *Kevin J Winfrey* (DocuSigned, DCC9544CB8254B3...) |
| Name: Giuseppe Incitti | Name: Kevin J. Winfrey |
| Title: Chief Executive Officer | Title: Chief Information Officer |
| 7/26/2016 | 7/26/2016 |

**EXHIBIT A**

**Statement of Work**