# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| JOANN, INC., *et al.*,[1] ) | Case No. 25-10068 (CTG) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | **Re: Docket No. 1483** |

**PLAN ADMINISTRATOR'S OBJECTION TO MOTION OF
CRAFTY (AL) LLC FOR ENTRY OF AN ORDER: (I) REQUIRING PAYMENT
OF ADMINISTRATIVE CLAIM FOR UNPAID PRORATED 2025 REAL ESTATE
TAXES; (II) COMPELLING PAYMENT OF CLAIM FOR REMOVAL OF
IMPROPERLY "ABANDONED" PROPERTY AS EITHER AN ADMINISTRATIVE
EXPENSE CLAIM AGAINST THE DEBTORS AND/OR LIABILITY OF
PURCHASER; AND (III) GRANTING RELATED RELIEF**

Ann Aber, solely in her capacity as the plan administrator (the "Plan Administrator") of the debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby file this objection (the "Objection") to the *Motion of Crafty (AL) LLC for Entry of an Order: (I) Requiring Payment of Administrative Claim for Unpaid Prorated 2025 Real Estate Taxes; (II) Compelling Payment of Claim for Removal of Improperly "Abandoned" Property as Either an Administrative Expense Claim against the Debtors and/or Liability of Purchaser; and (III) Granting Related Relief* [Doc. 1483] (the "Motion"), filed by Crafty (AL), LLC ("Crafty" or "Landlord"), on July 30, 2025. In support of this Objection, the Plan Administrator respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

**INTRODUCTION**

1. Debtor Jo-Ann Stores, LLC ("Tenant") and Crafty entered into a Lease Agreement dated June 7, 2021 (together with all amendments thereto, the "Lease") with respect to the property located at 3101 Anderson Road, Opelika, Alabama (the "Leased Premises"). A copy of the Lease is attached hereto as **Exhibit 1**.

2. Pursuant to the Court's *Third Order Authorizing the Debtors to Reject Certain Executory Contracts and/or Unexpired Leases* [Doc. 713] (the "Rejection Order"), the Lease was rejected by the Debtors effective as of March 31, 2025 (the "Rejection Date").

3. Through the Motion, the Landlord seeks (a) under Sections 365(d)(3) and 503(b)(1) of the Bankruptcy Code, to recover as an administrative expense (i) the real estate taxes relating to the Leased Premises for the period of January 1, 2025 through the Rejection Date (the "Prorated RE Taxes"); (ii) the cost of removing the fixtures, equipment, and other personal property (collectively, the "FF&E") remaining on the Leased Premises after the Rejection Date, which Landlord alleges is not less than $890,385 (the "Removal Costs"); and/or (b) a judgment against the Purchaser (as defined in the Motion) in the amount of the Removal Costs, in the event the Purchaser is determined to be responsible for such costs.[2]

4. As explained below, however, the obligations of the Debtors (if any) to pay the Prorated RE Taxes or cause the removal of the FF&E did not arise prior to the rejection of the Lease, and thus, Section 365(d)(3) does not mandate the performance of any such obligations. Moreover, the future payment of the Prorated RE Taxes and Removal Costs by Landlord

---

[2] While the Plan Administrator does not represent the interests of the Purchaser – and thus does not address any request for relief against the Purchaser in this Objection – the Plan Administrator nonetheless notes that Crafty has not pointed to any document or advanced any legal theory that would make Purchaser liable for the Removal Costs.

undoubtedly will not preserve or otherwise benefit the Debtors' bankruptcy estate and such costs are therefore not entitled to administrative expense status under 11 U.S.C. § 503(b). These costs and obligations (if any) are nothing more than a general unsecured claim for rejection damages.

## **ARGUMENT**

5. Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). The purpose of section 365(d)(3) "is to require the trustee to perform the lease in accordance with its terms." *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001). For purposes of Section 365(d)(3), an obligation arises under a lease when the lessee becomes legally obligated to perform such obligation. *Id*. (stating that "an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform").

6. Section 503(b)(1)(A), on the other hand, provides for the allowance of an administrative expense claim for the "the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). To establish an administrative expense claim under Section 503(b)(1)(A), a claimant must show that "(1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'" *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (quoting *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)). "The party seeking to recover expenses must 'carry the heavy burden of demonstrating' that such expenses qualify as an administrative expense." *Id.* (quoting *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010)). Crafty

fails to carry that burden in this case with respect to both the Prorated RE Taxes and the Removal Costs.

      **A.**     <u>**Crafty's request for allowance of an administrative expense claim for the Prorated RE Taxes must be denied.**</u>

      7.     Crafty relies on Paragraph 9(a) of the Lease to contend that it is entitled to an administrative expense claim for the Prorated RE Taxes. Such paragraph provides that the "Tenant shall, before interest or penalties are due thereon, pay and discharge all taxes[,]" including real property taxes imposed upon or assessed against the Leased Premises. Lease, ¶ 9(a). As Crafty acknowledges in the Motion, the 2025 real property taxes with respect to the Premises are not yet due. Motion, ¶ 35. *See also* Ala. Code § 40-11-4 (stating that "all taxes shall become due and payable on October 1 in each year, and shall become delinquent if not paid before January 1 succeeding[.]"). In Alabama, interest will begin to accrue on real property taxes once they become delinquent. Ala. Code § 40-5-9 ("[A]ll ad valorem taxes becoming delinquent bear interest at the rate of 12 percent per annum.").

      8.     Accordingly, under the terms of the Lease, the Tenant had no obligation to pay any portion of the 2025 real property taxes until just prior to the taxes becoming delinquent on January 1, 2026. As such obligation clearly did not arise prior to the Rejection Date, Section 365(d)(3) is not a basis for Crafty to recover the Prorated RE Taxes.

      9.     Crafty's request for an administrative expense claim for the Prorated RE Taxes is likewise defective. Crafty merely asserts that the "Debtors (and Purchaser) occupied and utilized the Leased Premises from January 1, 2025 through the March 31, 2025 Lease Rejection Date[,]" and that "[c]onsequently, Landlord is entitled to an allowed administrative claim for and payment of the prorated real estate taxes for that period under section 503(b)." Motion, ¶ 35. This conclusory statement, however, falls woefully short of demonstrating that the Prorated RE Taxes

are actual, necessary costs or expenses of preserving the estate. *See In re WCI Communities, Inc.*, No. 08-11643, 2010 WL 3523061, at *4 (Bankr. D. Del. Sept. 2, 2010) (finding that the landlord "has not demonstrated that the Debtors' occupancy of the leased premises—without more—warrants treating the ad valorem taxes as an actual and necessary cost of preserving the estate"). Moreover, because owners (and not tenants) are responsible for paying real estate taxes to the taxing authorities, payment of such taxes would not result in any benefit to the bankruptcy estate. *See id.* ("[The court] also note[s] that the real estate taxes are an obligation of the property owner, and, while the Debtors agreed in the Leases to pay the real estate taxes, there is no evidence here that payment of those taxes would provide the debtors-in-possession with any value in return.").

10. For the foregoing reasons, Crafty's request for allowance of an administrative expense claim for the Prorated RE Taxes must be denied.

### B.    Crafty's request for an administrative expense claim for the Removal Costs must also be denied.

11. Crafty's requests for an administrative expense claim for the Removal Costs under Sections 365(d)(3) and 503(b)(1) are similarly defective. Crafty contends that, because the Debtors' Notice of Rejection[3] was filed on March 31, 2025 and referenced the FF&E as "Abandoned Property," the Tenant's breach of its obligation under Paragraph 26 of the Lease to remove all FF&E from the Leased Premises occurred "<u>before</u> the Lease was rejected as of the end of that day." Motion, ¶ 50 (emphasis in original). In other words, it appears that Crafty is attempting to argue that the Tenant's obligation to remove the FF&E arose immediately upon the filing of the Notice of Rejection and that the rejection of the Lease was not effective until end of

---

[3] As used herein, "Notice of Rejection" means the *Third Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Doc. 657].

day on the date the Notice of Rejection was filed. This argument is wholly illogical and contrary to the plain language of the Lease, the spirit of the Bankruptcy Code, and prevailing case law.

12. Paragraph 26 of the Lease provides, in pertinent part:

> Upon the expiration or *earlier termination of this Lease*, Tenant shall peaceably leave and surrender the Leased Premises to Landlord in as good a condition as was maintained as of the commencement of this Lease . . . . Upon *such surrender*, Tenant shall (a) remove from the Leased Premises all property which is owned by Tenant or third parties other than Landlord and Alterations required to be removed pursuant to Paragraph 13 hereof and (b) repair any damage caused by such removal.

Lease, ¶ 26 (emphasis added). Thus, any obligation to remove the FF&E arose only upon the surrender of the Leased Premises by the Tenant after – or at least in conjunction with – the termination of the Lease.[4]

13. Rejection of a lease under 11 U.S.C. § 365(a), however, is merely deemed a breach of the lease by the debtor – it does not result in the automatic termination of the lease. *See* 11 U.S.C. § 365(g); *SubCulture, LLC v. Rogers Invs., a Nev. Ltd. P'ship (In re Culture Project)*, 571 B.R. 555, 559 (Bankr. S.D.N.Y. 2017) ("[I]t is generally well settled that a rejection is not, by itself, a termination of a lease. A debtor must surrender the leased space and the lease is deemed to have been breached, but the lease itself is not terminated by the rejection."). Thus, the filing of the Notice of Rejection – nor even the rejection itself – triggered any obligation of the Tenant under Paragraph 26 of the Lease. If any obligation of the Tenant under Paragraph 26 arose, it arose post-rejection if and when the Lease was deemed terminated.

14. In addition, assuming *arguendo* that rejection and the resulting breach of the Lease gave rise to an obligation of the Tenant to remove the FF&E, it is well settled that any claims arising from the rejection of a lease are to be treated as prepetition, general unsecured claims. *See*

---

[4] The initial term of the Lease was not scheduled to expire until June 30, 2041. Lease, ¶ 5. Thus, Paragraph 26 of the Lease could have only been implicated upon termination, if at all.

11 U.S.C. §§ 365(g) and 502(g); *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 239 n.8 (3d Cir. 1995) ("Rejection leaves the nonbankrupt with a claim against the estate just as would a breach in the nonbankruptcy context . . . he will be a general unsecured creditor of the estate."). *See also In re Old Carco LLC*, 424 B.R. 633, 640 (Bankr. S.D.N.Y. 2010) ("[A]ffording rejection claims administrative priority would effectively eliminate the purpose behind providing a debtor with the power to reject a contract.").

15. Accordingly, courts routinely hold that "clean-up costs," like the Removal Costs that Crafty seeks to recover, must be treated as prepetition, general unsecured claims. *See Lucky's Mkt. Parent Co.*, No. 20-10166, 2022 WL 843763, at *15 (D. Del. Mar. 22, 2022) ("Courts routinely hold that clean-up costs like those asserted here are pre-petition obligations."); *Doral Commerce Park, Ltd. v. Teleglobe Communs. Corp. (In re Teleglobe Communs. Corp.)*, 304 B.R. 79, 83-84 (D. Del. 2004) (finding that rejection of the lease under § 365 was deemed the exercise of a power to breach, and any claims of the creditor associated with removing improvements and alterations to the leased premises could not arise prior to the rejection and thus could not support an administrative claim for postpetition expenses); *In re Universal Bldg. Prods.*, No. 10-12453, 2011 WL 841231, at *2 (Bankr. D. Del. Mar. 7, 2011) ("[T]he respective landlords' claims for the clean-up costs would have been part of their rejection damages which are treated as pre-petition claims."); *In re M.L. Logan Precision Machining Co.*, No. 06-14625, 2007 WL 1468807, at *9-10, (Bankr. E.D. Pa. May 14, 2007) ("The Landlord is not entitled to the allowance of an administrative expense for the costs incurred in cleaning the Premises and removing items from the Premises after the Trustee surrendered possession on December 29, 2006.").

16. Crafty, however, dedicates a significant portion of the Motion to arguing that the FF&E had been sold to the Purchaser in February 2025, and that the Purchaser (as opposed to the

Debtors) owned the FF&E as of the Rejection Date. Motion, pp. 4-9; 12-15. Crafty therefore argues 11 U.S.C. § 554 was not – and could not have been – used to abandon the FF&E in conjunction with rejection of the Lease, as the FF&E was not property of the estate as of Rejection Date. Motion, ¶¶ 45-48.

17.    Whether the FF&E was owned by Debtor or Purchaser on the Rejection Date – and whether the FF&E was abandoned on the Rejection Date pursuant to 11 U.S.C. § 554 – are distinctions without a difference for purposes of determining whether Crafty is entitled to an administrative expense claim for the Removal Costs.[5]  With regard to Crafty's request under Section 365(d)(3), the only relevant question is whether the obligation to remove the FF&E from the Leased Premises arose after the Petition Date but prior to rejection of the Lease.  Since it did not, the Removal Costs, at best, are a general unsecured claim for rejection damages.

18.    Crafty's alternative argument – that it is entitled to an administrative expense for the Removal Costs under 11 U.S.C. § 503(b)(1)(A) – is likewise without merit , "as a necessary cost and expense of preserving the Debtors' estates[.]" Motion, ¶ 52.  Crafty contends that "[c]ourts, including this Court, consistently hold that a debtor's post-petition breach of lease obligations while the debtor's estate continues to benefit from that lease gives rise to an administrative claim under section 503(b)[,]" citing *In re Hayes Lemmerz Int'l, Inc.,* 340 B.R. 461 (Bankr. D. Del. 2006), *In re United Trucking Serv., Inc.,* 851 F.2d 159 (6th Cir. 1988), and *In re Atl. Container Corp.,* 133 B.R. 980 (Bankr. N.D. Ill. 1991). These cases generally stand for the proposition that postpetition but pre-rejection (or pre-surrender) breaches of repair and

---

[5]    Indeed, other than making a purely conclusory statement that abandonment under Section 554 would have shielded the Debtors from administrative expense liability (*see* Motion, ¶ 51), Crafty does not even attempt to articulate why whether the FF&E was abandoned under Section 554 is relevant to its requests for relief in the Motion.

maintenance covenants may give rise to an administrative expense because the estate saves money by not adhering to such covenants, and can use such money towards other estate obligations. *See Atl. Container*, 133 B.R. at 992; *United Trucking Serv., Inc.,* 851 F.2d at 162; *Hayes Lemmerz Int'l*, 340 B.R. at 476.

19.   In this case, however, the failure to remove the FF&E was not a postpetition, pre-rejection breach of the Lease by the Tenant; the Debtors are not still in possession of the Leased Premises; and they therefore are not continuing to benefit from the Lease while saving money by not performing the obligations thereunder. Accordingly, the cases cited by Crafty are inapposite to the issues presented in the Motion.

20.   Further, Crafty maintains that it received title to the FF&E on the Rejection Date. Motion, ¶¶ 30 and 44. Crafty is thus seeking an allowance of an administrative expense claim for the cost of removing its own assets from the Leased Premises. Undoubtedly, such removal of Crafty's own FF&E will not result in any benefit to the bankruptcy estate and the Removal Costs therefore do not qualify for administrative expense status under 11 U.S.C. § 503(b)(1)(A). *See In re Unidigital, Inc.*, 262 B.R. 283, 289 (Bankr. D. Del. 2001) (in denying a request for administrative expense claim under 11 U.S.C. § 503(b)(1), finding that the post-rejection "cost of cleaning [and removing equipment from] the landlord's premises does not benefit the estate . . . . Rather, it only benefits [the landlord]").

21.   For these reasons, Crafty has not and cannot carry the heavy burden of demonstrating its entitlement to an administrative expense for the Removal Costs under 11 U.S.C. §§ 365(d)(3) and 503(b)(1), and the Motion should therefore be denied.

**CONCLUSION**

WHEREFORE, the Plan Administrator respectfully requests that Court enter an order denying the Motion in its entirety.

Dated: August 25, 2025  
      Wilmington, DE

Respectfully submitted,

*/s/ Patrick J. Reilley*
**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Jack M. Dougherty (No. 6784)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: preilley@coleschotz.com
snewman@coleschotz.com
jdougherty@coleschotz.com
mfitzpatrick@coleschotz.com

- and –

**HAHN LOESER & PARKS LLP**

Christopher B. Wick (admitted *pro hac vice*)
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone: (216) 274-2489
Facsimile: (216) 241-2824
Email: cwick@hahnlaw.com

*Co-Counsel to the Plan Administrator*