## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 1483, 1739** |

## STATEMENT OF GA JOANN RETAIL PARTNERSHIP, LLC
## WITH RESPECT TO SUBJECT MATTER JURISDICTION REGARDING
## CRAFTY (AL) LLC'S REQUEST FOR PAYMENT OF REMOVAL COSTS

GA Joann Retail Partnership, LLC ("Agent"), by and through its undersigned counsel, hereby files this statement (this "Statement") (i) with respect to whether the Court has subject matter jurisdiction to adjudicate the *Motion of Crafty (AL) LLC for Entry of an Order: (I) Requiring Payment of Administrative Claim for Unpaid Prorated 2025 Real Estate Taxes; (II) Compelling Payment of Claim for Removal of Improperly "Abandoned" Property as Either an Administrative Expense Claim against the Debtors and/or Liability of Purchaser; and (III) Granting Related Relief* [Docket No. 1483] ("Landlord's Admin Claim Motion") to the extent it seeks to recover from GA Joann Retail Partnership LLC ("Agent") removal costs arising from the abandonment of the Debtors' furniture, fixtures, and equipment (the "Abandoned FF&E") located in a former retail store in Opelika, Alabama (the "Leased Premises") that was subject to the Lease Agreement dated June 7, 2021 (the "Lease") between Landlord and one of the Debtors, Jo-Ann Stores, LLC as tenant; and (ii) in response to Crafty (AL) LLC's ("Landlord") *Statement in Support of Subject*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

*Matter Jurisdiction* for the Landlord's Admin Claim Motion [Docket No. 1739] (the "Landlord's Statement").   Agent respectfully states as follows:

<h3 align="center">PRELIMINARY STATEMENT[2]</h3>

1.      Whether this Court has subject matter jurisdiction to decide Landlord's Admin Claim Motion turns on whether the Abandoned FF&E was property of the estate at the time of its abandonment—a core matter requiring the interpretation of a number of this Court's orders.

2.      As a threshold matter, however, and for the reasons set forth herein, Agent respectfully requests that the Court (i) deny Landlord's Admin Claim Motion insofar as it seeks relief from Agent, without prejudice to any right the Landlord may have to commence an adversary proceeding against Agent, and (ii) reserve its decision on any aspect of the purported dispute between Landlord and Agent (including the issue of subject matter jurisdiction) unless and until Landlord clearly articulates a claim against Agent in an adversary proceeding as required by Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      Landlord's attempt to recover money damages from Agent (a non-debtor third party) on account of an inchoate and continually evolving general liability theory in the context of an administrative claim motion exemplifies the prejudicial impact of Landlord's failure to properly assert its claim for money damages in an adversary proceeding, as required by the Bankruptcy Rules.   See Agent's Response[3] ¶ 2 n.2 (identifying and preserving arguments with respect to the procedural defect presented by Landlord's motion request for money damages, which must be asserted by adversary proceeding pursuant to Bankruptcy Rule 7001(a)).   In an attempt to

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them below.

[3]   The *Joinder of GA Joann Retail Partnership, LLC to Plan Administrators Objection to Motion of Crafty (AL) LLC for Entry of an Order: (I) Requiring Payment of Administrative Claim for Unpaid Prorated 2025 Real Estate Taxes; (II) Compelling Payment of Claim for Removal of Improperly Abandoned Property as Either an Administrative Expense Claim Against the Debtors and/or Liability of Purchaser; and (III) Granting Related Relief* [Docket No. 1653] is referred to herein as "Agent's Response".

streamline the confusion created by this procedural defect, the Court graciously provided the parties with the opportunity to submit supplemental jurisdictional briefing. This exercise, however, only served to underscore that Landlord's error is likely to cause procedural disorder, a lack of due process, and significant harm to Agent.[4]

4.       Critical to the analysis of subject matter jurisdiction is a full understanding of the nature of the proceeding before the Court.  In pertinent part, Landlord's Admin Claim Motion was framed as a motion compelling payment of the costs for removal arising from the "improper abandonment" of the Abandoned FF&E, in the form of an administrative claim against the Debtors and/or a judgment imposing liability on Agent pursuant to section 105(a) of the Bankruptcy Code (a source of the Court's equitable powers, but not a basis to award money damages).  See LL Mot. ¶¶ 2-3, 56.  In the Landlord Admin Claim Motion, Landlord alleges the abandonment of the Abandoned FF&E was improper because it was an abandonment of non-Debtor property in violation of section 554 of the Bankruptcy Code and both the Approval Order and Confirmation Order provisions restricting the abandonment of non-Debtor property.  Landlord is incorrect.  The Abandoned FF&E was property of the estate as of the Rejection Effective Date and the mezzanine level of the Leased Premises (the basis for the vast majority of the demolition costs in Landlord's summary estimate) was a structural component of the Leased Premises that was constructed *before* the Landlord purchased the Leased Premises, and is property of Landlord under the unequivocal terms of the Lease.[5]

---

[4]    Landlord's noncommittal identification of multiple potential state law grounds for Agent's liability in its *reply* papers and the contemplated supplemental briefing on "governing law" offer Landlord an unwarranted second and third bite at the apple in attempting to state a claim that was procedurally improper as asserted in the first instance. See LL Mot. Hr'g Tr. 60:14-23, Sept. 9, 2025 (the Court notes that if, following review of the jurisdictional briefs, it finds there is subject matter jurisdiction, both Landlord and Agent will be able to submit briefing with respect to "the question of governing law over such claim.")

[5]    A copy of the Lease was previously filed in these chapter 11 cases as Exhibit 1 to the Plan Administrator's objection to the Landlord's Admin Claim Motion [Docket No. 1651-1].  Under the terms of the lease, the mezzanine constitutes a "fixture" or "apparatus" as described on Exhibit B, which encompasses, among other things, "[a]ll fixtures . . . [and] apparatus . . .  of every kind and nature whatsoever now or hereafter affixed or attached to or installed in any of the Leased Premises." See Lease, Ex. B.  Accordingly, the mezzanine was the

5.      Complicating matters further, in subsequent pleadings (to which Agent has had no opportunity to meaningfully respond) Landlord has pivoted, now framing its claim for monetary relief against the Agent as based on the "unauthorized abandonment" of the Abandoned FF&E in violation of "*applicable non-bankruptcy law*."  See LL's Statement ¶ 2; see also LL's Reply ¶ 26 n.6 (suggesting the abandonment of the FF&E may constitute "a tort under Alabama law, such as for conversion on the case . . . or negligence."). The Landlord concedes that no such claims have yet been articulated.  See LL's Statement ¶ 6.

6.      Against this backdrop—where the Landlord has failed to clearly or consistently identify *any* cognizable claim entitling Landlord to a "judgment imposing liability" against Agent (relief that cannot, in any event, be requested by motion in a chapter 11 case), an analysis with respect to subject matter jurisdiction over any ultimate claim Landlord may have for monetary relief against Agent would be premature and speculative.  Indeed, this issue was not lost on the Court, as demonstrated by its pointed questions to Landlord's counsel regarding the absence of any asserted legal theory for imposing liability on Agent.[6]  Landlord's failure to articulate a claim, however, does not only impact the jurisdictional analysis.

7.      Particularly in these circumstances—where, in the absence of a formal adversary complaint identifying cognizable claims, the basis for those claims, and the corresponding relief sought, Agent must parse through an administrative claim motion and related pleadings to try to divine Landlord's theories of its own supposed liability—the procedural defect in Landlord's

---

Landlord's property, and the Lease imposes no obligations with respect to removal of Landlord property.  See Lease § 26.  Agent reserves all rights with respect to the interpretation of the Lease and the property rights defined thereunder.

[6]    See LL Mot. Hr'g Tr. 33:3-13, Sept. 9, 2025 ("[D]oes the briefing you've given me tell me what law, what is the law if someone else's stuff is in your -- happens to be in your space? Like, you sort of assume that there's liability for that . . . . and that may well be right, but do I have enough -- like, what law applies? It's not the Bankruptcy Code and it's not the lease, because they're not a party to the lease. So, help me with the theory under which [Agent is] on the hook and why they have to pay it.").

Admin Claim Motion has extended far beyond harmless error, and has become prejudicial to the Agent. Agent is entitled to the procedural protections offered by an adversary proceeding, including but not limited to the ability to clearly identify and understand the nature of the claims asserted in order to, among other things, formulate a defense, conduct formal discovery regarding the nature and extent of the Abandoned FF&E, and complete an informed analysis on the issue of subject matter jurisdiction with regards to Landlord's currently unarticulated claims. For these reasons, with reference to note 2 of Agent's Response, Agent respectfully submits that any claim asserted in the Landlord's Admin Claim Motion (and related pleadings) against Agent for money damages (Fed. R. Bankr. P. 7001(a)), an injunction or other equitable relief (Fed. R. Bankr. P. 7001(g)), or any other basis delineated in Bankruptcy Rule 7001, is procedurally improper and can only be asserted by adversary proceeding in accordance with Bankruptcy Rule 7001.

8.    In the event that the Court is inclined to rule on the issue of subject matter jurisdiction at this juncture, Agent submits that a determination with respect to ownership of the Abandoned FF&E would necessarily resolve Landlord's Admin Claim Motion to the extent it seeks to recover removal costs from the Debtor—an issue indisputably within this Court's subject matter jurisdiction. Because the Abandoned FF&E *was* property of the estate as of March 31, 2025 (the "Rejection Effective Date"), Landlord has at most a general unsecured rejection damage claim against the Debtors for the removal costs.  The Court has subject matter jurisdiction to liquidate and otherwise administer a claim against the estate.  However, even if the Abandoned FF&E was not property of the estate as of the Rejection Effective Date, the questions that would follow involve whether, and to what extent, Landlord could have a claim against Agent and, for purposes of this Statement, whether the Court would have subject matter jurisdiction to adjudicate that claim.

9.      Regardless of Agent's position with respect to the adjudication of any claim Landlord might attempt to assert against Agent, Agent submits that, for the reasons set forth in this Statement, the Court has subject matter jurisdiction to adjudicate the Landlord's Admin Claim Motion as it relates to Agent, but only insofar as adjudication requires a determination with respect to whether, pursuant to the terms of the Approval Order and Agency Agreement, the Abandoned FF&E was property of the estate as of the Rejection Effective Date.

## BACKGROUND

### A.      The Approval Order and the Agency Agreement

10.      Pursuant to the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Doc. No. 520] (the "Approval Order") entered by this Court on February 26, 2025 and the Agency Agreement approved thereby (the "Agency Agreement"), Agent purchased only the exclusive right to designate the purchasers, assignees, or other transferees of the Debtors' leases (the "Lease Designation Rights") and executory contracts, and to market, sell, and otherwise designate the purchasers, assignees, or other transferees of the Debtors' other assets (the "Asset Designation Rights" and together with the Lease Designation Rights, "Designation Rights"). The Approval Order and Agency Agreement are crystal clear that Agent did not purchase the Leased Premises or the Abandoned FF&E, and that the Debtors did not assume and assign the Lease to Agent, but rather, Agent purchased only the rights to market and sell Debtors' assets, subject to the continuing jurisdiction of this Court.[7] To the extent that the Court may find the Approval Order

---

[7]    Notably, an interpretation that the Agency Agreement language renders Agent the beneficial owner of the designated assets, and burdens the Agent with claims like those brought by the Landlord, is not only at odds with the express terms of the Agent's offer and the Approval Order, but is also likely to have a significant downstream impact on the market for future agency relationships in chapter 11, which are often the path to the highest recovery for bankrupt retailers and their creditors.  As this Court is aware, agency relationships between retailers and liquidation firms are common and often the best opportunity for retailers to maximize recovery on retail inventory and related assets.  Here, the Agent's offer was substantially higher than any other offers received, and the agency

and Agency Agreement did convey some beneficial interest in the Abandoned FF&E to the Agent, the terms of these agreements, when read in conjunction with the facts in the record regarding the rejection of the Lease, lead to only one possible conclusion:  any such beneficial interest in the FF&E reverted back to the Debtors prior to the Rejection Effective Date after Agent notified the Debtors that the Lease was no longer part of the sale process.

11.    <u>Reversion of Assets to the Debtors</u>. Under the Agency Agreement, and as set forth in more detail therein, Agent's Asset Designation Rights could be exercised at any time after the February 27, 2025 closing (the "<u>Closing</u>") until no later than May 31, 2025 (the "<u>Asset Designation Rights Termination Date</u>").[8]  Similarly, Agent's Lease Designation Rights extended from the period from Closing until the earlier of (i) the termination date applicable to a particular Lease, and (ii) May 31, 2025 (the "<u>Lease Designation Rights Termination Date</u>") and together with the "Asset Designation Rights Termination Date, the "<u>Designation Rights Termination Date</u>"). Notwithstanding the May 31, 2025 Designation Rights Termination Date, which was an outside date for exercising designation rights, Agent could also relinquish all obligations and responsibility for any assets at any time prior to that date by notifying the Debtors (a "<u>Dropout Notice</u>") of Agent's election to discontinue efforts to designate such assets (the "<u>Dropout Assets</u>").[9] Five days after delivery of a Dropout Notice, all Dropout Assets then revert to the Debtor, which then has "exclusive property" rights, including the right to all proceeds upon disposition.[10]  Upon the

---

aspect of the offer was fundamental to that offer.  See, e.g., *Order Approving Sale* at 50, <u>In re Big Lots, Inc., et al.</u>, No. 24-11967 (Bankr. D. Del., Jan. 2, 2025), ECF No. 1556 (approving agent's sale of "Designated Assets" pursuant to a form of agency agreement attached as Exhibit H to the asset purchase agreement); *Order Approving Sale* at 3-7, <u>In re The Bon-Ton Stores, Inc. et al.</u>, No. 18-10248 (Bankr. D. Del. Apr. 18, 2018) (approving agency agreement and authorizing agent to exercise asset and lease designation rights).

[8]    <u>See</u> Agency Agreement § 2(b) (xxxii).

[9]    <u>See</u> Agency Agreement § 15.3.

[10]    <u>Id.</u> (stating, in relevant part, that "[u]pon expiration of the Dropout Notice Period, all rights to the Dropout Assets shall revert to Merchant, and Merchant may dispose of such Dropout Asset in such manner as Merchant may

occurrence of the Asset Designation Rights Termination Date, Agent is deemed to have provided Debtors with a Dropout Notice for any remaining assets.[11]

12.      <u>Agent's Obligation to Surrender Premises to the Debtors</u>. Similarly, while the GOB Sale at each location was to end no later than May 31, 2025 (the "<u>Sale Termination Outside Date</u>"), the Agency Agreement gave Agent the ability to end any GOB Sale earlier by giving notice to the Debtor (a "<u>Vacate Notice</u>") at least five days before the end of a calendar month and vacating by that month's end (the "<u>Vacate Date</u>").[12]  The Vacate Date for any Lease is also the Lease Designation Rights Termination Date for such Lease.[13]  The Agency Agreement provides that Agent must vacate each location by the earlier of the Sale Termination Outside Date and the applicable Vacate Date, then surrender the premises to the Debtor.[14]  Where an asset subject to Designation Rights is a lease, the Vacate Notice and the Dropout Notice are the same notice.

13.      Section 7.1 authorizes the Agent to leave behind, or "abandon," any furniture, fixtures, and equipment ("<u>FF&E</u>") or any Remaining Merchandise in place at the end of the sale, without any cost or liability to the Agent.  It also states that Agent has no responsibility for FF&E that is not owned by the Debtor.  <u>See</u> Agency Agreement § 7.1.

14.      Landlord attempts to twist the terms of the Agency Agreement—an agreement to which it was not a party and under which it has no rights—to have the Court conclude that Agent was required to provide Landlord with a formal Dropout Notice satisfactory to Landlord.  But Landlord was not entitled to a Dropout Notice—or any other notification, other than of the

---

[11]  elect, and one hundred percent (100%) of all proceeds realized upon a disposition of such Dropout Asset shall be the exclusive property of Merchant (and shall not constitute Proceeds)").

[11]  <u>Id.</u>

[12]  <u>See</u> Agency Agreement § 6.1.

[13]  Approval Order ¶ 20.

[14]  <u>See</u> Agency Agreement § 6.2

Debtors' rejection of the Lease—under the Agency Agreement or Approval Order. In fact, despite receiving notice of the proposed Agency Agreement and Approval Order and filing an objection thereto,[15] Landlord did not object to the dropout procedures set forth therein, which do not entitle Landlord to receive a Dropout Notice. Now, months after the Lease was rejected, Landlord takes issue with several terms of the transaction with Agent. Moreover, Landlord has not put forth any evidence, or served any discovery, in an attempt to substantiate its conclusory assumption that Agent must have failed to abide by the dropout process. Rather, because Agent did not provide Landlord with a copy of a notice to which Landlord was not entitled, Landlord now contends that the Abandoned FF&E assets could not have possibly reverted to the Debtors (if they had ever left the Debtors' ownership) and thus, must have been property of the Agent as of the Rejection Effective Date. The Landlord is simply incorrect.[16]

15.    Indeed, the sequence of events surrounding the rejection of the Lease make clear that a Dropout Notice was given with respect to the Lease and the Leased Premises, because that is exactly how rejection of a lease prior to the Lease Termination Rights Effective Date occurs under the Agency Agreement and Approval Order. Here:

- The initial Lease Designation Rights Termination Date was May 31, 2025.

- The only way for the Debtors to reject the Lease, or any lease, before the Lease Designation Rights Termination Date was for Agent to provide a Dropout Notice to the Debtors.[17]

---

[15]    See Landlord's Objection [Docket No. 257].

[16]    Moreover, section 16.9 of the Agency Agreement restricts the ability of third parties (such as the Landlord) to employ the provisions of the Agency Agreement in the furtherance of any legal or equitable right, remedy, or claim. See Agency Agreement § 16.9 (Third Party Beneficiaries. Except as otherwise expressly provided herein, nothing expressed or referred to in this Agreement will be construed to give any Person other than . . . the Parties hereto . . .  any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement). Accordingly, Landlord cannot use its baseless assumptions with respect to the Agency Agreement to claim privity or other rights vis-à-vis Agent.

[17]    See Agency Agreement § 15.3.

- Providing the Dropout Notice would trigger Agent's obligation to vacate the Leased Premises and surrender the location to the Debtors (so the Debtors could, in turn, surrender the Leased Premises to the Landlord).

- The Debtors rejected the Lease and surrendered the Leased Premises on the March 31, 2025 Rejection Effective Date -- two full months before the initial Lease Designation Rights Termination Date.

- The Debtors did not unilaterally decide to reject the Lease before the Lease Designation Rights Termination Date. They did not have discretion to do so under the Agency Agreement or the Approval Order.

- Thus, there is no plausible conclusion the Court could draw based on the undisputed facts other than that Agent delivered a Dropout Notice to the Debtors before the March 31, 2025 Rejection Effective Date.

16.     In addition, when Agent vacated the Leased Premises, it was entitled under Sections 6.2 and 7.1 of the Agency Agreement to leave the Abandoned FF&E in place without cost or liability of any kind.  Agent did so.  Even if the Court were to find the Agent was the beneficial owner of the Abandoned FF&E at some point, the provisions of the Agency Agreement, the Approval Order, and the Rejection Order make clear that all rights, including any designation rights the Agent may have previously held, in and to the Abandoned FF&E reverted to the Debtors at some point in time prior to the Debtors' rejection of the Lease (which, by definition, could occur only after the Vacate Date, upon which Agent dropped the Lease and the Abandoned FF&E out of the GOB Sale).

**B.      Lease Rejection**

17.     On March 31, 2025, the Debtors filed the *Third Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 657] (the "Rejection Notice") seeking court approval of the rejection of leases including the Lease effective as of that same date.  In Schedule 2 attached to the Rejection Notice, the Debtors identified the Lease for rejection, and the "FF&E" and "Inventory" as the property to be abandoned (clearly acknowledging that the Abandoned FF&E was property of the estate as of that time).

18.     Notably, the procedures order governing lease rejections [Docket No. 429] (the "Lease Procedures Order") requires that any rejection notice include "any known third party having an interest in any remaining property, including personal property, consigned goods, furniture, fixtures, and equipment, located at the leased premises" (see Lease Procedures Order ¶ 2(a)), but the Debtors' Rejection Notice did not include any reference to Agent having an interest in any remaining property at the Leased Premises (as it obviously did not).

19.     The Landlord did not object to the Rejection Notice.

20.     On April 16, 2025, pursuant to the Lease Procedures Order, the Court entered an order (the "Rejection Order") approving the Rejection Notice and the rejection of the Lease as of the Rejection Effective date.  The Rejection Order provides that "**[a]ny and all property** located on the Debtors' leased premises on the Rejection Effective Date of the applicable Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date." Rejection Order ¶ 2 (emphasis added).

21.     The Landlord points out that the Confirmation Order provides that no property remaining on the premises of a rejected lease shall be deemed abandoned by the Debtors unless it is owned by the Debtors as of the effective date of such rejection.  See Confirmation Order, ¶ 95. Yet, as reflected just below, Exhibit 1 to the Rejection Order itself specifically identifies "FF&E" as the property that "shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code."

| No. | Rejection Counterparty | Debtor Party | Store Number | Store Address | Description of Contract[1] | Abandoned Property | Rejection Date |
|---|---|---|---|---|---|---|---|
| 1 | Americasmart Real Estate, LLC | Jo-Ann Stores | 4550 | 240 Peachtree Street NW, Atlanta, 30303, GA | Lease | FF&E, Inventory | 03/31/2025 |
| 2 | Crafty (AL) LLC | Jo-Ann Stores | 7039 | 3101 Anderson Road, Opelika, 36801, AL | Lease | FF&E, Inventory | 03/31/2025 |
| 3 | Exeter 2500 N. Plaza, LLC | Jo-Ann Stores | 7043 | 2500 North Plaza Drive, Visalia, 93291, CA | Lease | FF&E, Inventory | 03/31/2025 |
| 4 | BA Two REIT LLC | Jo-Ann Stores | 7130 | 1020 Enterprise Parkway, West Jefferson, 43162, OH | Lease | FF&E, Inventory | 03/31/2025 |
| 5 | Avanti Inc | Jo-Ann Stores | 7125 | 7530 W Sunnyview Ave, Visala, 92931, CA | Lease | FF&E, Inventory | 03/31/2025 |
| 6 | Floyd Pedersen | Jo-Ann Stores | 168 | 1830 E Parks Hwy Ste A122, Wasilla, 99654, AK | Lease | FF&E, Inventory | 03/31/2025 |

22.     Thus, the only logical conclusion is that the Abandoned FF&E was property of the estate as of the Rejection Date.  Landlord received the Rejection Notice reflecting the Debtors' abandonment of the Abandoned FF&E and said nothing.  Landlord received the Rejection Order approving the Debtors' abandonment of the Abandoned FF&E and said nothing.  The Rejection Order has long since become final and non-appealable and is *res judicata* as to Landlord despite Landlord's present efforts to creatively circumvent it.  Under the Landlord's interpretation, either the Rejection Order is completely meaningless or it effectuated an "unauthorized abandonment" (for which it seemingly seeks to hold Agent liable) notwithstanding that Landlord took no action whatsoever in response to the filing of the Rejection Notice or the Rejection Order and in the months that followed.

23.     The terms of the Confirmation Order, when read alongside the Rejection Order and related documents, lead only to a finding that the Abandoned FF&E was property of the estate as of the Rejection Effective Date.[18]

## C.     The Landlord's Admin Claim Motion

24.     This Court held a hearing on the Landlord's Admin Claim Motion on September 9, 2025.  After raising questions with respect to the Court's subject matter jurisdiction over the dispute between the Agent and the Landlord, the Court gave the parties the opportunity to submit briefing on the issue.

25.     On September 17, 2025, Landlord filed the Landlord's Statement, arguing that this Court has subject matter jurisdiction to adjudicate the dispute between Landlord and Agent based

---

[18]     See Confirmation Order, ¶ 95 ("Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or Wind-Down Debtors, as applicable, unless owned by such Debtors or Wind-Down Debtors as of the effective date of such rejection.").  In any event, the Rejection Order, not the Confirmation Order, governs rejection of the Lease and abandonment of the Abandoned FF&E because the Lease was rejected long before confirmation through the Rejection Notice and Rejection Order, not through the plan.

on the Court's retained jurisdiction to (i) interpret and enforce the Approval Order and the Agency Agreement to determine ownership of the Abandoned FF&E as of the March 31, 2025 Rejection Effective Date; and (ii) enforce language in the Approval Order[19] that provides that Agent may not abandon non-Debtor property and the Confirmation Order[20] that provides that no property shall be deemed abandoned by the Debtors unless owned by the Debtors on the Rejection Effective Date.

26.    As set forth in more detail below, Agent generally agrees with the Landlord's first proposition: this Court has subject matter jurisdiction to interpret and enforce the Approval Order and the Agency Agreement and to make a determination with respect to whether the Abandoned FF&E was property of the estate as of the Rejection Effective Date.  As described above, pursuant to the terms of this Court's orders, the Abandoned FF&E was never Agent's property and was properly abandoned by the Debtors upon rejection of the Lease.

27.    With respect to the Landlord's second proposition, Agent does not dispute that the Court has jurisdiction to interpret and enforce its own orders. However, Landlord's argument that the Court may interpret the provisions of the Approval Order and the Confirmation Order that "prohibit[] the abandonment of property not then owned by the Debtors" fails for the simple reason that the property in question was owned by the Debtors.  Moreover, Landlord has not even attempted to assert a claim under any cognizable legal theory against Agent, let alone one that is redressable by enforcement of the Confirmation Order or the Sale Order.[21]  Indeed, even if the property in question was non-Debtor property, the lease rejection procedures contemplate that with respect to abandoned property, "the rights of the landlord regarding such Abandoned Property,

---

[19]    See Approval Order, ¶¶ 20 & 63 ("Notwithstanding anything to the contrary in the Agency Agreement or this Approval Order, Agent may not abandon any property at a Store or Distribution Center that does not belong to [the Debtors].").

[20]    See supra n.18.

[21]    See LL Mot. Hr'g Tr. 65:6-9, Sept. 9, 2025 ("I guess I don't know why there's a claim for injunctive relief, particularly -- I don't see how it's enforcing an order because I don't see anything in the order that compels it . . . .").

will be governed by applicable non-bankruptcy law." <u>See</u> Lease Procedures Order ¶2(f). The quantum of Landlord's rejection damage claim against the estate in connection with the Abandoned FF&E, and its ownership rights in the Abandoned FF&E, are governed by Alabama state law, but nothing Landlord cites confers upon Landlord any right of action against Agent. Thus, while Landlord attempts to create a jurisdictional hook by shoehorning its removal costs claim against Agent into a cause of action requiring enforcement of this Court's Confirmation and Approval Orders, this argument simply misses the mark.

28.    Landlord has not even identified, much less asserted, any state-law claims against Agent. Indeed, any claim Landlord might have would be as a result of Agent's purchase of the Designation Rights and its disposition of those rights as they relate to the Lease.  For the reasons set forth above, the only conclusion is that Landlord has no claim against Agent.  Yet, Landlord asserts that "even to the extent Landlord asserts trespass or other claims against purchaser predicated upon Alabama or other applicable non-bankruptcy law," the Court would have subject matter jurisdiction as a result of those claims being inextricably intertwined with the Debtors' central restructuring activities in these cases.  <u>See</u> LL's Statement ¶ 6.  That assertion is, at best, premature, where Landlord has not even attempted to assert any such claims.

29.    Again, for these reasons Agent respectfully submits that the Court should reserve its decision on any aspect of the dispute between Landlord and Agent (including the issue of subject matter jurisdiction) unless and until Landlord is able to clearly articulate a claim against Agent in an adversary proceeding as required by Bankruptcy Rule 7001.  In the event the Court is so inclined to determine the issue of subject matter jurisdiction at this juncture, Agent's analysis follows.

## JURISDICTIONAL STATEMENT

**A. Applicable Law**

30.     Subject matter jurisdiction over bankruptcy cases and proceedings originates in 28 U.S.C. § 1334, which grants district courts "original and exclusive jurisdiction of all cases under title 11" and "original and not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and § 1334(b). The district courts are authorized to refer bankruptcy cases and proceedings to the bankruptcy judges for their district, and, as applicable here, the United States District Court for the District of Delaware has effectuated such a referral.  28 U.S.C. § 157(a); see also In re Touch Am. Holdings, Inc., 401 B.R. 107, 116–17 (Bankr. D. Del. 2009). Accordingly, the bankruptcy court's jurisdiction extends to four types of matters: (i) cases under title 11; (ii) proceedings *arising under* title 11; (iii) proceedings *arising in* a case under title 11; and (iv) proceedings *related to* a case under title 11.  Only the first three categories of cases are "core" matters; "related-to" are "non-core" proceedings.  See In re Touch Am, 401 B.R. at 116; see also Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 162 (3d Cir. 2004).

31.     Bankruptcy judges may hear and determine core matters, subject to appellate review by the district court.  28 U.S.C. § 157(b)(1).  In non-core proceedings that are otherwise related to a case under title 11, bankruptcy courts shall submit proposed findings of fact and conclusions of law to the district court.  28 U.S.C. § 157(c)(1).  Bankruptcy courts do not have the authority to enter final orders or judgments in non-core proceedings unless all the parties consent and the district court so refers the case.  28 U.S.C. § 157(c)(1).

**B. The Court has Subject Matter Jurisdiction to Determine whether the Abandoned FF&E was Property of the Estate as of the Rejection Effective Date.**

*1. A determination with respect to ownership of the Abandoned FF&E is a core proceeding "arising under" title 11 or "arising in" a case under title 11.*

32. "It is well established that proceedings to determine what constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code are core proceedings." In re Point Blank Solutions Inc., 449 B.R. 446, 449 (Bankr. D. Del. 2011). Similarly, a "determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction." See Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.), 273 B.R. 374, 395 (Bankr. E.D. Pa. 2002) (noting the determination of whether an asset is property of the estate as defined in section 541 of the Bankruptcy Code is an issue that "arises under" title 11). Various courts have concluded that matters requiring a declaration of whether certain property comes within the definition of "property of the estate" as set forth in Bankruptcy Code § 541 are core proceedings. See e.g., In re AGR Premier Consulting, Inc., 550 F. App'x 115, 122 (3d Cir. 2014) (finding a determination of what is property of the estate is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction); Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 105 (Bankr.D.Del.2008) citing Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 138 B.R. 442, 445 (D. Del. 1992) (a determination regarding property of the estate is a core proceeding).

33. At its core, Landlord's Admin Claim Motion presents a dispute over property of the estate that is strictly between Landlord and the Debtors. As was made clear by the record of the September 9, 2025 hearing on the Landlord's Admin Claim Motion, a determination of whether and to what extent Landlord may assert some cognizable cause of action against the Agent stemming from the abandonment of the Abandoned FF&E at the Leased Premises will first require

a determination of whether the Abandoned FF&E was property of the estate as of the Rejection Effective Date, under Bankruptcy Code § 541. <u>See</u> LL Mot. Hr'g Tr. 52:14 – 53:9, Sept. 9, 2025.

34.     Additionally, the determination of whether the Abandoned FF&E was property of the estate as of the Rejection Effective Date —an exercise which, by its nature, could only arise in the context of a bankruptcy case, and which also requires the interpretation of the Approval Order (which approved the Agency Agreement) confers "arising in" jurisdiction. <u>See</u> <u>Stoe v. Flaherty</u>, 436 F.3d 209, 218 (3d Cir. 2006) (The key to ascertaining "arising in" jurisdiction is to ask whether the proceeding by its nature, not its particular factual circumstance, could only arise in the context of a bankruptcy case) (internal citations and quotations omitted). This issue also informs whether Landlord has a rejection damages claim against the estate, concurrently impacting what is available for distribution to creditors of that estate, which is "precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction." <u>See</u> <u>Reliance Grp. Hldgs., Inc</u>, 273 B.R. at 395.

35.     Accordingly, the Court has both "arising under" and "arising in" subject matter jurisdiction to determine whether the Abandoned FF&E was property of the estate as of the Rejection Effective Date.

### 2. A determination with respect to ownership of the Abandoned FF&E is, at the very least, a "related to" proceeding.

36.     Even assuming, arguendo, that the determination with respect to ownership of the Abandoned FF&E is non-core, it is at the very least *related to* the Chapter 11 Cases. "Non-core 'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is at least 'related to' the bankruptcy." <u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154, 163 (3d Cir. 2004). Under <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), bankruptcy courts have jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." <u>See</u> <u>id.</u> ("[T]he

proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").

37.     Specifically, while in the post-confirmation context, courts have applied varying standards to determine whether ***related to*** jurisdiction exists, the essential inquiry appears to be "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." In re Resorts Int'l, Inc., 372 F.3d 154, 166–67 (3d Cir. 2004).  Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. In re Resorts Int'l, Inc., 372 F.3d 154, 167 (3d Cir. 2004); see also In re Allegheny Health Educ. & Rsch. Found., 383 F.3d 169, 174-76 (3d Cir. 2004) (court has subject matter jurisdiction over post-confirmation matter where resolution required the court to interpret and give effect to its previous sale orders").

38.     Here, the Approval Order contains a broad retention of jurisdiction provision. See Approval Order, ¶ 60 ("The Court shall retain jurisdiction with respect to all matters arising out of or relating to the interpretation, implementation, or enforcement of this Approval Order, the terms and provisions of the Agency Agreement, and all other Transaction Documents.").  Moreover, as detailed in the Background section above, the determination with respect to whether the Abandoned FF&E was property of the estate as of the Effective Rejection Date unquestionably requires the interpretation of a number of provisions of both the Approval Order and the Agency Order, each of which provide essentially all the terms relating to property ownership rights. Finally, to the extent the Abandoned FF&E is determined to be property of the estate, any claim

the Landlord may have will be against the Debtors, and shall be treated in accordance with the applicable Bankruptcy Court orders.  For these reasons, at the very least, the Court has "related to" jurisdiction with respect to ownership of the Abandoned FF&E.

## RESERVATION OF RIGHTS

39.     Agent reserves all rights as set forth herein, including but not limited to rights with respect to (i) whether and to what extent the Court has subject matter jurisdiction over any cognizable claim Landlord may try to assert against Agent, and (ii) Bankruptcy Rule 7001 and any adversary proceeding Landlord may commence against Agent.  Nothing herein shall be deemed a waiver of any right, claim, defense, or argument in connection with any claim or proceeding brought by Landlord or any other party.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, Agent respectfully requests that the Court (i) deny Landlord's Admin Claim Motion as it relates to Agent, and (ii) reserve its decision on any aspect of the purported dispute between Landlord and Agent (including the issue of subject matter jurisdiction) unless and until Landlord clearly articulates a claim against Agent in an adversary proceeding as required by Bankruptcy Rule 7001.

In the event the Court decides to decide the issue of subject matter jurisdiction, Agent submits that the Court has subject matter jurisdiction to resolve the dispute between the Landlord and the Agent insofar as it requires a determination of whether the Abandoned FF&E was property of the estate as of the Rejection Effective Date.

Dated  October 14, 2025
       Wilmington, Delaware

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
E-mail: csimon@crosslaw.com

     - and -

**LOWENSTEIN SANDLER LLP**
Andrew Behlmann, Esq.
Nicole Fulfree, Esq.
Michael Papandrea, Esq.
Carolyn Gauvin, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
E-mail: abehlmann@lowenstein.com
E-mail: nfulfree@lowenstein.com
E-mail: mpapandrea@lowenstein.com
E-mail: cgauvin@lowenstein.com

*Counsel to* GA Joann Retail Partnership, LLC