**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| | ) | (Jointly Administered) |
| Post-Confirmation Debtor. | ) | |
| | ) | **Objections due by: August 8 at 4:00 p.m.** |
| | ) | |
| | ) | **Hearing Date: January 13 at 10:00 a.m.** |
| | ) | **Re: D.I. 1521, 1884, 1931** |

**REPLY IN SUPPORT OF THE**
**MOTION OF MARIA MARGARITA AGUILAR MARTINEZ FOR RELIEF**
**FROM THE PLAN INJUNCTION**

Maria Margarita Aguilar Martinez ("Martinez" or "Movant"), by and through her undersigned counsel, submits this reply in support of the *Motion of Margarita Aguilar Martinez for Relief from the Plan Injunction* (D.I. 1521, the "Motion").

Martinez will begin with an editorial comment. In years—or perhaps now decades past—motions for relief for the automatic stay by personal injury claimants (or equivalent motions for relief from plan injunctions) were routine in the extreme. Claimants would typically give up their unsecured claim against the estate in exchange for stay relief. Claimants would be free to pursue recovery against insurance and the estates would have no interest in the outcome. This was a sensible resolution that worked for many years.

Times have changed. What was once routine has become a recurrent basis for conflict and confusion. Movant can only speculate as to the reasons. One may be that insurance policies

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

today more often include large self-insured retentions ("SIR").  Even then, however, motions of this kind could still be resolved with the understanding (explicit or implicit) that claimant's recovery would start only after the SIR was met.  By way of illustration, if you have a $500,000 judgment against a $100,000 SIR, claimant would recover $400,000 from the carrier.

Even that standard resolution is opposed by some carriers today on the theory that the insured debtor's failure to pay the SIR dollar-for-dollar excuses performance under the policy entirely.  The practical upshot of this position—to the extent it is adopted by the Courts—would be to provide carriers with an enormous windfall.  Very few bankrupt debtors—and even fewer injured plaintiffs—can afford to front large SIRs.  The net result of this position would be that the debtor's insolvency lets the carrier off Scott free even for claims that vastly exceed the SIR such as Martinez's.  She filed a claim for $2.5 million; she understands the SIR is, at most, one-tenth of that--$250,000.

Martinez filed and served the Motion back on August 1, 2025.  The objection deadline was August 8, 2025.  No party objected to the Motion.

The Motion is routine.  It requests relief from the Plan Injunction[2] to liquidate Martinez's personal injury claim in California. Counsel to the GUC Trust contacted undersigned counsel to Martinez in an effort to resolve Motion.  Without getting into the substance of settlement communications, as is typical in these situations, the focus of the parties' discussion was on the language of the proposed order, not whether the Motion should be granted or not.

As the parties appeared to be on the same page, Martinez agreed to adjourn the hearing on the Motion to September.  For whatever reason, the Motion seems to have been taken off the calendar, but the parties continued to have productive discussions.

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion or in the Plan.

Liberty Mutual Insurance Company ("Liberty Mutual") sent comments concerning the draft stipulation in late October.  Again, without getting into details of settlement communications, those comments were more directed to issues that concern the Plan Administrator and the GUC Trust rather than Martinez.  At that point, Liberty Mutual appeared to reach an impasse with the GUC Trust and the Plan Administrator.  Martinez then 're-noticed' the Motion for a hearing at the request of the GUC Trust.  *See* D.I.  1884.

Liberty Mutual filed the only objection to the Motion (the "Liberty Objection", D.I. 1931).  Liberty Mutual suggests that in settlement communications, the Plan Administrator has requested language in the stipulation stating that the Wind-Down Debtors did not assume any insurance contracts under the Plan.  Liberty Objection at ¶7.  If that is what happened, Movant is unaware of it.  Movant's proposed order attached to the Motion is plain vanilla and seeks no such determination.  And Movant can say at least for herself that she has never proposed any such language.

Movant agrees with Liberty Mutual that holdings/findings concerning plan provisions—to say nothing of provisions purporting to modify the Plan—have no place in any order granting the Motion.  She would point out,  however, that in its objection, Liberty Mutual has ignored some of the language in the Confirmation Order.

For example, the  language quoted in paragraph 86 states that the Assumed Insurance Polices are deemed assumed "solely to the extent the Insurance Policies are executory."  As far as Movant is aware, no such finding has been made.

Furthermore, paragraph 87 of the Confirmation Order states "*provided, however,* that nothing herein obligates the Plan Administrator or GUC Trust to otherwise satisfy  or pay in cash any SIR under any Insurance Policy."  And further that "[n]othing in this Plan shall be  . . . (ii) a determination that any Insurance Policy is an executory contract or is capable of assumption or

rejection."  Finally, "[i]n no event shall the Plan Administrator of the GUC Trust be required to pay any amounts within a self-insured retention, including defense costs, other than through the allowance of a General Unsecured Claim up to the amount of the applicable SIR."

This language in the Confirmation Order crucially distinguishes this case from this Court's decision in *In re Recovery Brands, LLC*, No. 20-11631, 2024 Bankr. LEXIS 1128, at *1 (Bankr. D. Del. May 13, 2024).  There, the plan provided for the assumption of all insurance policies and—critically--*further contained an express determination that those policies were executory contracts.* *In re Recovery Brands, LLC*, 2024 Bankr. LEXIS at *5 n.8 ("confirmed plan, providing that '[a]ll of the Debtor's insurance policies ... are treated as and deemed to be Executory Contracts [and] shall be deemed to [be] assumed.  . . .' Because the confirmed plan so provides, this Court need not address the question whether a standard comprehensive general liability policy is properly understood as an executory contract in bankruptcy.").  Hence, the Court held that relief from the plan injunction would ordinarily be denied in the absence of the posting of a bond.  *Id.* at **7-8.[3]

Here, by  contrast, the Confirmation Order could not be clearer that the Plan Administrator has no liability to pay any amounts under the SIR; and, moreover, in direct distinction to *Recovery Brands,* there is an explicit holding that the Plan does *not* determine whether the policies are executory or not.

Finally, liability policies of this type are generally held *not* to be executory contracts. *Am. Safety Indem. Co. v. Vanderveer Estates Hldg., LLC (In re Vanderveer Estates Hldg., LLC)*, 328 B.R. 18, 26 (Bankr. E.D.N.Y. 2005) ("It is well established that insurance policies for which the policy periods have expired and the premium has been paid are not executory contracts,

---

[3] In the end, the Court granted relief from the plan injunction because the SIR had been satisfied pre-bankruptcy. *Id.* at *8. Movant is not aware of how much remains on the SIR in this case.

despite continuing obligations on the part of the insured."). That is because—whether under the terms of the policies themselves and/or under applicable state law—the carrier's obligation to pay is not or cannot be legally conditioned on the satisfaction of the SIR by an insolvent insured. The *Vanderveer* case applied Illinois state law and a statute that prohibited the carrier from denying coverage based on the bankruptcy of the insured. *Vanderveer Estates Hldg*, 328 B.R. at 23-24 (citing to 215 Ill. Comp. Stat. Ann. 5/388). California, the site of the injury to Ms. Martinez, has a similar statute to Illinois. Cal. Ins. Code § 11580.[4]

In sum, given the terms of the Plan and Confirmation Order, this Court can and should grant Ms. Martinez relief from the Plan Injunction to pursue her right to insurance proceeds in California.

DATED: January 8, 2026

*/s/ Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:    (302) 654-0248
Email:            loizides@loizides.com

*Counsel for MARIA MARGARITA AGUILAR MARTINEZ*

---

[4] "(b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions:
(1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy"