## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC.,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Post-Effective Date Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline:** February 13, 2026 at 4:00 p.m. (ET) |
| | ) | **Hearing Date:** February 25, 2026, at 10:00 a.m. (ET) |
| | ) | **Re: Docket Nos. 1207 and 1387** |

---

## BURLINGTON COAT FACTORY WAREHOUSE CORPORATION'S (I) MOTION TO ENFORCE CONFIRMATION ORDER AND ASSIGNMENT ORDER AND (II) MOTION FOR SHOPS AT ST. JOHNS, LLC TO SHOW CAUSE WHY IT SHOULD NOT BE FOUND IN CONTEMPT

Burlington Coat Factory Warehouse Corporation ("Burlington") files this Motion (this "Motion") to enforce the Court's *Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement for, and Confirming the Second Amended Joint Chapter 11 Plan of Joann Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1387] (the "Confirmation Order") and the Court's *Order Authorizing the Debtors to Assume and Assign Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1207] (the "Assignment Order") with respect to a certain June 18, 2003 Lease Agreement (as the same may be amended or otherwise modified from time to time, the "Lease") between the Debtor and Shops at St. Johns, LLC ("Landlord") for real property known as Joann Fabric and Crafts Store #2039 located at 10261 River Marsh Drive Suite 149, Jacksonville, Florida (the "Premises") and respectfully states as follows:

---

[1] The Post-Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is JOANN Inc. (5540). The Post-Effective Date Debtor's mailing address is P.O. Box 268, Hudson, Ohio 44236.

## Preliminary Statement

1.      Burlington asks this Court to enforce its Confirmation Order and its Assignment Order and resolve a dispute over the interpretation of those Orders. Landlord has threatened to sue Burlington in Florida state court over an alleged default based on an incorrect reading of the Assignment Order. Specifically, Landlord is attempting to collect 2024 real property taxes from Burlington, when the Assignment Order states that Burlington only assumes Lease obligations that accrue and come due from and after the Closing. The Closing occurred on June 20, 2025.

2.      Burlington further asks that Landlord be required to show cause why it should not be found in contempt for violating the Assignment Order and the Confirmation Order, and that Landlord be required to pay Burlington's attorneys' fees incurred in responding to Landlord's improper attempts to collect amounts which it is expressly enjoined from collecting and asserting.

3.      Accordingly, Burlington requests that this Court enter the proposed order attached hereto as **Exhibit 5** prohibiting Landlord from attempting to collect pre-Closing amounts against Burlington or the Debtors.

## Jurisdiction & Venue

4.      This Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334. The Motion constitutes a core proceeding under 28 U.S.C. § 157(b).

5.      Further, this Court retains jurisdiction to "resolve any matters related to. . . (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party…" and to "hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Approval Order, including disputes arising under agreements, documents, or instruments in connection therewith." Plan arts. XI.3 and XI.20. *See also* Confirmation Order [Docket No. 1387] ¶ 106.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

7.      Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Burlington consents to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### **Background**

8.      As the Court is aware, Burlington was the successful bidder for over 40 of the Debtors' store leases. Burlington's bid was fixed at a specific amount and required GA Joann Retail Partnership, LLC ("GA") to cover all cure expenses.   On February 14, 2025, the Court entered its *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order").  The Procedures Order provides:

> c.      ***Objection Procedures***.  Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of a Contract must file and serve a written objection[5] so that such objection is filed with this Court and actually received by the Objection Service Parties no later than fourteen (14) days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

Procedures Order ¶ 3.c.  The Procedures Order also provides that if an objection to assumption of a contract is not timely filed, "the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes." Procedures Order ¶ 3.d.

9.      On February 26, 2025, the Court entered the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Approval Order"), which

approved the sale of the Debtors' assets to GA Joann Retail Partnership, LLC and Wilmington Savings Fund Society, FSB, in its capacity as prepetition term loan agent (collectively, "GA").

10.     The Lease at issue here is for Premises located in Jacksonville, Florida. Pursuant to the Procedures Order, the Debtors included the Lease in their April 28, 2025 *First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 760] (the "First Assignment Notice") with a cure amount of $39,476.28. Landlord was served with the First Assignment Notice. Affidavit of Service [Docket No. 841], p. 26.

11.     On April 30, 2025, Landlord reached out to the Objection Service Parties[2] to dispute the cure amount:

> **From:** Wesley Gallagher <Wesley.Gallagher@simon.com>
> **Sent:** Wednesday, April 30, 2025 11:48 AM
> **To:** Blumenthal, Lindsey <lindsey.blum@kirkland.com>; Michalik, Jeff <jeff.michalik@kirkland.com>; accountspayable@joann.com; Yenamandra, Aparna <aparna.yenamandra@kirkland.com>

---

[2]     "Objection Service Parties" is defined in the Procedures Order and includes counsel for the Debtors, certain lenders, and the UCC.

**Cc:** Robyn Woodruff <rwoodruff@simon.com>; Ronald Tucker <rtucker@simon.com>; Catherine Martin <cmartin@simon.com>
**Subject:** JOANN (Doc 760 - First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases) ST JOHNS TOWN CENTER CC

Hello. We recently received the above-mentioned notice, showing debtors intent to assume and assign our lease to Burlington Coat Factory Warehouse Corporation. Our cure amount was listed at $39,476.28.

Our records show the cure amount to be different than your listed cure. Please see the attached and let me know if we can agree to the cure of $175,373.49

Thanks

**Wesley Gallagher**
**Paralegal**
**Bankruptcy**
**◇◇**
**SIMON**
**225 West Washington Street**
**Indianapolis, IN 46204-3438 USA**
**T 317.263.3037**
**wesley.gallagher@simon.com**
**SIMON.COM**
Please understand that this is being sent to you for purposes of settlement only, and is not intended for any other purpose, and may not be used, and shall not be admissible, in any action, litigation, or otherwise, instituted by either party involving the subject matter.

**Exhibit 1**, pp. 10-11, Landlord's April 30, 2025 Email Notice of Cure Objection. Over approximately the next week, the Debtors and GA corresponded regarding the cure amount, and Landlord was granted an extension of its deadline to object to the First Assignment Notice. *Id.* at p. 1. During this period, Landlord brought up the issue of adequate assurance of future performance and sought confirmation of what business would be operated at the Premises after assignment. Landlord did not bring up the 2024 Taxes or any other issues at this time. *See id.* at pp. 3-10.

12.     On May 15, 2025, GA agreed to the Landlord's requested cure amount. **Exhibit 2**, pp. 3-4. In response, on May 15, 2025, Landlord first introduced the concept of "accrued but not yet billed":

**From:** Wesley Gallagher <Wesley.Gallagher@simon.com>
**Sent:** Thursday, May 15, 2025 12:27 PM
**To:** Christopher Draper <cdraper@gagroup.com>; Catherine Martin <cmartin@simon.com>; Farmer, William <wfarmer@jw.com>; Blumenthal, Lindsey <lindsey.blum@kirkland.com>; accountspayable@joann.com; Polnick, Veronica <vpolnick@jw.com>; Peguero, Kristhy <kpeguero@jw.com>; Steve Smith <ssmith@gagroup.com>; ABehlmann <ABehlmann@lowenstein.com>; Rebecca Hollander <rhollander@brileyfin.com>
**Cc:** Reilley, Patrick <preilley@coleschotz.com>; Robyn Woodruff <rwoodruff@simon.com>; Ronald Tucker <rtucker@simon.com>; Tsukerman, Mark <mtsukerman@coleschotz.com>
**Subject:** RE: [EXT] RE: JOANN (Doc 760 - First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases) ST JOHNS TOWN CENTER CC

> **Caution: **External Email.**

Great news! Just to confirm, our total agreed cure amount is $175,373.49, which is the total AR billed and outstanding through 4/30/25 and $2,000.00 in attorney fees.

Additionally, lease must be assumed and assigned subject to charges accrued but not yet billed pursuant to the lease.

Looking forward to your response.

**Wesley Gallagher**
**Paralegal**
**Bankruptcy**
**◇◇**
**SIMON**®
**225 West Washington Street**
**Indianapolis, IN 46204-3438 USA**
**T 317.263.3037**
wesley.gallagher@simon.com
SIMON.COM

**Exhibit 2**, pp. 2-3 (the "May 15 Offer"). This is the first time that Landlord expressed a desire that "the Lease must be taken subject to charges accrued but not yet billed." Landlord never elaborated or provided context for this statement, and did not ask for any specific language to be included in the Assignment Order. In fact, the Debtors, GA, and Burlington did not reply directly to this point *at all*.

13.     On May 16, 2025, the Debtors filed their *Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 930] (the

"<u>Amended Assignment Notice</u>"), which again included the Lease with the cure amount updated to the amount that Landlord requested.  The Amended Assignment Notice included a proposed Assignment Order that makes Burlington responsible for the payment of charges incurred under the Lease solely "from and after the Closing."   Assignment Order ¶¶ 2, 6.  Landlord was served with the Amended Assignment Notice.  *See* Affidavit of Service [Docket No. 1065], p. 18.

14.     On May 17, 2025, counsel for Burlington also emailed a copy of the Amended Assignment Notice and the proposed Assignment Order to counsel for the relevant landlords, including Landlord's counsel. **Exhibit 3**, Email from Burlington's Counsel to Multiple Landlords including Amended Assignment Notice and proposed Assignment Order. Landlord responded to this email on May 28, 2025, raising only the issues of the cure amount and the identity of the proposed assignee. **Exhibit 4**, Email Response from Landlord.

15.     Landlord, GA, and the Debtors continued to discuss the cure amount, only. During this time, Landlord (i) failed to pursue any objection other than to the cure amount and the identity of the assignee tenant and (ii) never sought specific assent from Burlington regarding the notion of "accrued but unbilled."

16.     On May 29, 2025, counsel for Burlington responded to Landlord's email containing the May 15 Offer as follows:

**From:** Farmer, William <wfarmer@jw.com>
**Sent:** Thursday, May 29, 2025 4:35 PM
**To:** Wesley Gallagher <Wesley.Gallagher@simon.com>; Catherine Martin <cmartin@simon.com>

**Cc:** Robyn Woodruff <rwoodruff@simon.com>; Ronald Tucker <rtucker@simon.com>; Polnick, Veronica <vpolnick@jw.com>; Peguero, Kristhy <kpeguero@jw.com>
**Subject:** RE: [EXT] RE: JOANN (Doc 760 - First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases) ST JOHNS TOWN CENTER CC

> **Alert:** This is an external email and may be malicious. Please **BE CAUTIOUS** when clicking links, opening attachments or scanning QR codes.

Wesley, Catherine,

Based on the below, just wanted to circle back to confirm your objection was fully resolved in light of the revised proposed order. Please let us know. Thanks.

**Will Farmer**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-5674 | F: (214) 953-5822 | wfarmer@jw.com



**Exhibit 2**, pp. 1-2. On May 30, 2025, Landlord replied to this email as follows:

| | |
|---|---|
| **From:** | Robyn Woodruff |
| **To:** | Farmer, William; Wesley Gallagher; Catherine Martin |
| **Cc:** | Ronald Tucker; Polnick, Veronica; Pequero, Kristhy |
| **Subject:** | RE: [EXT] RE: JOANN (Doc 760 - First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases) ST JOHNS TOWN CENTER CC |
| **Date:** | Friday, May 30, 2025 6:29:03 AM |
| **Attachments:** | image001.png |
| | image002.png |

**Caution: \*\*External Email.**

Hi Will: Yes, any objection related to assumption of the St. Johns lease is resolved per the email below.

Please confirm when we can expect payment of the agreed cure ($177,373.49). Also, confirm the new leaseholder entity along with State in which it was organized, legal notice address, phone number, email address and AR contact information.

Much appreciated.

**Robyn Woodruff**

Bankruptcy Manager
Legal Services

SIMON

225 West Washington Street
Indianapolis, IN 46204-3438 USA
T 317.263.8171
rwoodruff@simon.com
SIMON.COM

*Id.* at p. 1.

17.    At no time did Landlord ever advise Burlington or GA that it had received, but not billed, 2024 Taxes.

18.    On June 20, 2025, the Debtors filed their *Certification of Counsel Regarding Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1200], stating that the objections to the Amended Assignment Notice had been resolved as reflected in the attached proposed Assignment Order.

19.    On June 20, the Court entered the Assignment Order. The Assignment Order

provides:

> In accordance with section 365 of the Bankruptcy Code, effective as of the
> occurrence of a closing on the assignment of the Leases pursuant to the terms of
> the Assignment Agreement (the "Closing"), the Leases shall be assumed, assigned
> and transferred free and clear of all liens, claims, interests, and encumbrances of
> any kind or nature whatsoever (the "Interests or Claims"), other than easements,
> rights-of-way and restrictive covenants that the Leases are expressly subject to, as
> well as any reciprocal easement agreement or declaration of covenants and
> restrictions or other similar land use agreement in effect prior to the date of the
> Leases and to which the Leases are expressly subject to, except in each case to the
> extent otherwise expressly set forth in this Order or the Assignment Agreement,
> because one or more of the standards set forth in sections 363(f)(1)–(5) of the
> Bankruptcy Code have been satisfied . . . *provided, however*, in all respects,
> following the assumption and assignment of each Lease, as described by and
> governed by this Order and the Assignment Agreement, **Burlington shall, except**
> **as set forth in this Order, assume all of the terms, conditions and covenants of**
> **the Leases as tenant under the Leases, and agrees to assume and undertake to**
> **pay, perform and discharge all of the obligations and duties thereunder that**
> **accrue and come due from and after the Closing** (the "Lease Obligations").
> Those holders of Interests or Claims who did not object to the Assumption Notice,
> or who interposed and then withdrew their objections, are deemed to have
> consented to the Assignment Agreement pursuant to section 363(f)(2) of the
> Bankruptcy Code.  Those holders of Interests or Claims who did object fall within
> one or more of the other subsections of section 363(f) of the Bankruptcy Code.

Assignment Order ¶ 2 (emphasis added).

20.    On June 20, 2025, the Closing occurred.

21.    On July 8, 2025, the Debtors filed the version of the Plan[3] that was eventually

confirmed. The Court held a confirmation hearing on July 10, 2025, and entered the Confirmation

Order on that same date.

22.    The Plan provides:

> Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court
> approving, subject to and upon the occurrence of the Effective Date, the
> assumptions, assumptions and assignments, or rejections of the Executory
> Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed

---

[3]    The Debtors originally filed the Plan on February 26, 2025.

Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

Plan art. V.A.  Like the Procedures Order, the Plan also provides that a failure to timely object to the assumption of an executory contract bars a landlord from asserting their objections in the future:

> Unless otherwise agreed to in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by counsel to the Debtors no later than fourteen (14) days after service of Cure Notice on affected counterparties.  Any counterparty to an Executory Contract or Unexpired Leases that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and **any untimely request for an additional or different cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion**, and shall not be enforceable against any of the Debtors, the Wind-Down Debtors, or the GUC Trust.

Plan art. V.C (emphasis added). There is no written agreement preserving Landlord's right to seek additional cure amounts or enforce pre-Closing amounts against Burlington.

23.      On July 10, 2025, the Court entered its *Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement for, and Confirming the Second Amended Joint Chapter 11 Plan of Joann Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1387] (the "Confirmation Order").   The Confirmation Order provides: "The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases."  Confirmation Order ¶ 32.

24.     In August of 2025, Landlord billed Burlington for real property taxes for the year 2024 in the amount of $160,389.99 (the "2024 Taxes"). On September 30, 2025, Landlord sent a notice of default letter to Burlington, stating that Burlington had defaulted under the Lease by failing to pay the 2024 Taxes.

25.     The 2024 Taxes are entirely prepetition in nature—they are for the 2024 calendar year.  In Florida where the Premises are located, real property taxes are assessed as of January 1 of each year and are due to the taxing authority on November 1 of that year. Fl. Stat. § 197.133 (2025);[4] Fla. Admin. Code r. 12D-8.001(1)(a) (2025). Presumably, Landlord pays its real estate taxes on time, not later than April 1, 2025 in this instance. *Id.*  Despite knowing about the 2024 Taxes in May 2025[5] during cure negotiations, Landlord did not inform Burlington about the 2024 Taxes until August 2025 (post-Closing).

26.     On October 17, 2025, Burlington responded stating that it was not liable for the 2024 Taxes pursuant to the terms of the Assignment Order.

27.     Burlington and Landlord attempted to resolve the issue of the 2024 Taxes informally, but the parties did not reach an agreement, and Landlord threatened to default Burlington under the Lease in Florida state court.  As this Court is the proper venue to interpret

---

[4]     The full text of the statute reads:

> **When taxes due; delinquent.**—All taxes shall be due and payable on November 1 of each year or as soon thereafter as the certified tax roll is received by the tax collector. Taxes shall become delinquent on April 1 following the year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later. If the delinquency date for ad valorem taxes is later than April 1 of the year following the year in which taxes are assessed, all dates or time periods specified in this chapter relative to the collection of, or administrative procedures regarding, delinquent taxes shall be extended a like number of days.

Fl. Stat. § 197.133 (2025).

[5]     Notably, Landlord first had notice that the Lease was being assumed and assigned to Burlington on April 28, 2025 via the First Assignment Notice.

the Confirmation Order and the Assignment Order, Burlington had no choice but to file this Motion.

**Argument**

28.     The Court has authority pursuant to section 105 of the Bankruptcy Code to "enter any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes enforcing the Court's own orders. *See In re LandSource Communities Development, LLC*, 612 B.R. 484, 495 (D. Del. 2020) ("A bankruptcy court plainly has jurisdiction to enforce its own injunction."). A confirmation order that has become final cannot be collaterally attacked by parties in the case. *In re Midstate Mortgage Investors, Inc.*, 105 Fed. Appx. 420, 423 (3d Cir. 2004).

29.     Believing itself to be armed with hindsight, Landlord insists that the 2024 Taxes (i) are due under the language of the Assignment Order, or (ii) were agreed to by Burlington in the above-referenced email exchange, which Landlord alleges constituted a "side letter" that overrides the Assignment Order.  Neither is true.  The Assignment Order says in paragraphs 2, 3, and 6 that Burlington is obligated to pay amounts "that accrue and come due ***after*** Closing"—not "have accrued but are unbilled as of Closing."  Further, Burlington never agreed to pay amounts that were "accrued but unbilled" as of the Closing Date.  The "agreement" on which Landlord bases its argument was—at best—an unaccepted offer.  Burlington is not liable for the 2024 Taxes under the Assignment Order and did not enter into any agreement to the contrary.

**I.      The Assignment Order Is Unambiguous.**

30.     The Assignment Order says that Burlington is responsible for obligations under the Lease "that accrue and come due from and after the Closing." Assignment Order ¶ 2. The Assignment Order uses this language throughout:

- Upon remittance of the Cure Costs by Agent to the Landlords pursuant to the terms of this Order, **the Landlords shall be barred from asserting any additional cure amounts or other defaults under the Leases for the period prior to the Closing Date**, or any defaults arising from the assumption and assignment of the Leases that were required to be asserted as cure pursuant to section 365(b) of the Bankruptcy Code.  For the avoidance of doubt, the **Landlords shall be forever (i) barred** from objecting to the applicable Cure Costs and **from asserting any additional cure or other default amounts are due with respect to the Leases for the period prior to the Closing Date**, and the Debtors and **Burlington shall be entitled to rely solely upon the Cure Costs set forth above** and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, Agent, or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases . . .  Assignment Order ¶ 6 (emphasis added).

- "On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts that **accrue and come due** under the Leases **on or after the Closing Date**."  Assignment Order ¶ 6 (emphasis added).

31.    There is no reasonable reading of the above provisions that allows Landlord to recover the 2024 Taxes.  The 2024 Taxes indisputably accrued prior to the Closing Date.  Landlord was served with a copy of the proposed Assignment Order containing the above language yet failed to mention *at all* in assumption and assignment negotiations that the 2024 Taxes would be billed shortly after Closing.  Landlord cannot now argue that the 2024 Taxes were contemplated in the Assignment Order because (i) the text of the Assignment Order clearly excludes the 2024 Taxes, (ii) Landlord failed to object to the Debtors' assignment of the Lease without an assumption of the 2024 Taxes, and (iii) Landlord withheld the existence of the 2024 Taxes from Burlington.

## II.    Landlord and Burlington Do Not Have a Side Letter or Other Agreement Outside the Assignment Order.

32.    Grasping at straws, Landlord points to the "except as otherwise agreed in Side Letter" language and states that an email exchange between Landlord and Burlington's counsel is such a side letter.  This argument also must fail because Landlord never obtained any agreement

from Burlington on the 2024 Taxes, which were completely unknown to Burlington until September 2025.

33.     First, Landlord's vague communications within its cure negotiations with the Debtors are not a side letter.  The statements on which Landlord bases its assertion that an agreement was reached are merely unilateral statements of Landlord's counsel with zero context. Burlington entered into a handful of *actual* side letters with other landlords which are memorialized in written letter agreements signed by corporate personnel.  Here, Landlord merely made a vague statement that can (at best) only be viewed as an offer that Burlington never accepted.

34.     "A valid contract requires an offer, acceptance, and consideration, and the parties must have intended that the contract would bind them.  Additionally, a contract must contain all material terms in order to be enforceable, and those terms must be sufficiently definite." *Shilling v. Shilling*, 332 A.3d 453, 462 (Del. 2024) (internal quotations omitted).  "A response to an offer that is not on the terms set forth by the offeror constitutes a rejection of the original offer and a counteroffer." *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1015 (Del. Ch. June 22, 2004).

35.     The parties' communications containing the "accrued but unbilled" idea present a fact pattern of a first-day-of-law-school level of complexity:

| Communication | Analysis |
|---|---|
| May 15, 2025: Landlord confirms the cure amount and states that the Lease "must be assumed and assigned subject to accrued but unbilled pursuant to the lease" and "looking forward to your response" | Interpreting this statement generously to the Landlord, this statement is an offer. The statement "looking forward to your response" shows that Landlord expected an answer or confirmation of this offer. |
| May 29, 2025: Burlington's counsel asks, "just wanted to circle back to confirm your | Burlington did not mirror Landlord's May 15 Offer and therefore did not accept Landlord's May 15 Offer. This email was at most a |

| | |
|---|---|
| objection was fully resolved in light of the proposed order" | counteroffer of the terms contained in the Assignment Order. |
| May 30, 2025: Landlord says "Yes, *any objection related to assumption* of the St. Johns lease is resolved per the email below." (emphasis added) | Landlord accepts Burlington's counteroffer and accepts the terms of the Assignment Order.<br><br>The language "per the email below" ostensibly referred to the cure amount, which was resolved in the preceding correspondence. |

**Exhibit 2**, pp. 1-3.

36.     Thus, even if the email communications leading up to the resolution of Landlord's cure objection could be considered a side letter, these communications show that Landlord agreed to the terms of the Assignment Order.  They do <u>not</u> show that Burlington agreed to be obligated to pay "accrued but unbilled" charges.  There is no reasonable reading of the Assignment Order or the email communications between Landlord and Burlington's counsel that supports the Landlord's position.  And, candidly, it did not occur to Burlington's counsel that Landlord considered its request with respect to accrued but unbilled amounts a live issue.

37.     Finally, this Court is a court of equity.  Landlord knew that the 2024 Taxes would come due within a few months of the Closing Date.  Landlord knew what it was asking for when it said (once) "the lease must be assumed subject to charges accrued but not yet billed."  Burlington did not know that 2024 Taxes remained unbilled and unpaid.  To the contrary, Burlington relied on the cure process set forth in the Approval Order to ensure that it was entering into the Lease with a clean slate.  In the flurry of responding to multiple landlords with cure objections, the Debtors, GA, and Burlington did not ask Landlord to clarify.  However, when asked if its objection was resolved in light of the proposed Assignment Order, Landlord responded yes—not "subject to," not seeking confirmation of the "accrued but not yet billed" concept.  Nobody responded to Landlord's "accrued but not yet billed" request, but Landlord appeared to abandon that request on

May 30, 2025 when it agreed to the proposed Assignment Order. Landlord's position is the result of its own actions both withholding the existence of the 2024 Taxes from Burlington and GA, and in failing to clearly pursue its "accrued but unbilled" objection. Burlington should not be punished for Landlord's failure to diligently pursue its interests that Burlington was not aware of at the time.

### III.    The Assignment Order and the Confirmation Order Are *Res Judicata* as to Burlington's Obligations for Post-Closing Amounts Only.

38.    "A plan of reorganization and the accompanying confirmation order are final orders binding on all creditors." *In re Congoleum Corp.*, 149 F.4th 318, 335 (3d Cir. 2025) (citing *In re Smith*, 102 F.4th 643, 651 (3d Cir. 2024); *see also* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind ... any creditor…"). In the Third Circuit, "the application of *res judicata* to confirmation orders occupies a position of 'high importance in the bankruptcy context' because all parties must be able to rely on a confirmation order without worry that the order is subject to change following post-confirmation challenges by dissatisfied creditors." *Congoleum Corp.*, 149 F.4th at 336 (quoting *Smith*, 102 F.4th at 651).

39.    Landlord was a creditor and participated in the Debtors' bankruptcy cases. Landlord's parent, Simon Properties, was a member of the Unsecured Creditors Committee (the "UCC"). The representatives of Landlord who communicated at all times with Burlington and the Debtors regarding the First Assignment Notice and the assumption and assignment of the Lease are employees in Simon Properties' in-house legal group.

40.    Landlord further participated in the negotiation of the assumption and assignment of the Lease and participated in the proceedings that resulted in the Assignment Order. The Confirmation Order and the Assignment Order were final judgments on the merits that resolved Burlington's liability to Landlord under the Lease. *Congoleum Corp.*, 149 F.4th at 337. The

findings in the Assignment Order and in the Confirmation Order thus bind Landlord and have *res judicata* effect. *Congoleum Corp.*, 149 F.4th at 337. *Id.*

41.     Landlord is violating the Assignment Order and the Confirmation Order by seeking to collect pre-Closing amounts from Burlington. Specifically, Landlord is violating paragraphs 2 and 6 of the Assignment Order:

- "Burlington shall, except as set forth in this Order, assume all the terms conditions and covenants of the Leases as tenant under the Leases, and agrees to assume and undertake to pay, perform and discharge all of the obligations and duties thereunder **that accrue and come due from and after the Closing**." Assignment Order ¶ 2 (emphasis added).

- "On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts that accrue and come due under the Leases on or after the Closing Date." Assignment Order ¶ 6.

- Upon remittance of the Cure Costs by Agent to the Landlords pursuant to the terms of this Order, **the Landlords shall be barred from asserting any additional cure amounts or other defaults under the Leases for the period prior to the Closing Date**, or any defaults arising from the assumption and assignment of the Leases that were required to be asserted as cure pursuant to section 365(b) of the Bankruptcy Code. For the avoidance of doubt, the **Landlords shall be forever (i) barred** from objecting to the applicable Cure Costs and **from asserting any additional cure or other default amounts are due with respect to the Leases for the period prior to the Closing Date**, and the Debtors and **Burlington shall be entitled to rely solely upon the Cure Costs set forth above** and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, Agent, or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases . . . Assignment Order ¶ 6 (emphasis added).

And article V of the Plan:

- Any counterparty to an Executory Contract or Unexpired Leases that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and **any untimely request for an additional or different cure**

**amount shall be disallowed and forever barred, estopped, and enjoined from assertion** . . .  Plan art. V.C.

- Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Plan art. V.A.

And the Confirmation Order:

- The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety. Confirmation Order ¶ 93.

- Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases pursuant to the Plan.  Confirmation Order ¶ 96.

42.    "When a bankruptcy court enters a confirmation order, it renders a final judgment. That judgment, like any other judgment, is res judicata. It bars all challenges to the plan that could have been raised. Challengers must instead raise any issues beforehand and by objecting to confirmation. A plan's preclusive effect is a principle that anchors bankruptcy law: A confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018) (internal citations omitted).

43.    Landlord had a full and fair opportunity to dispute the terms of the Assignment Order and to oppose the finality of the Assignment Order through confirmation of the Plan. Landlord, knowing that it had not billed for the 2024 Taxes, should bear the burden of its failure to pursue the 2024 Taxes.

**IV.     Landlord Should Be Required to Pay Burlington's Attorneys' Fees for Landlord's Improper Conduct.**

44.     Section 105 of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) also provides bankruptcy courts with broad authority to "take any action that is necessary or appropriate to prevent an abuse of process." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (internal quotations omitted). "This equitable authority created by Section 105 gives a bankruptcy court the power to hold parties in civil contempt." *In re BYJU's Alpha, Inc.*, 661 B.R. 109, 117 (Bankr. D. Del. 2024).

45.     Civil contempt is "designed either to compensate the injured party or to coerce the defendant into complying with the court's order." *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990). "A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 422 (Bankr. D. Del. 2014).

46.     The Supreme Court has held that a court's inherent power permits it to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The Supreme Court's holding in *Chambers* permits such recovery "when a party's 'bad-faith conduct,' beyond that occurring in trial, is 'in direct defiance of'" the court. *Skyport*, 642 F. App'x at 303 (citation omitted). Good faith is not a defense to civil contempt. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

47.     Landlord had notice of the Assignment Order (both before and after its entry) and of the Confirmation Order. The Assignment Order states that Landlord is enjoined from pursuing

pre-Closing amounts. The Confirmation Order is a final judgment in the Debtors' bankruptcy cases and is *res judicata* as to any objections that could have been raised to the Plan and to the Assignment Order.

48.     Despite having knowledge of the Assignment Order and the Confirmation Order, Landlord deliberately sought to collect pre-Closing, prepetition amounts against Burlington. The parties attempted to resolve the 2024 Taxes but were unable to come to an agreement. Landlord has threatened to file suit against Burlington in Florida state court in further violation of the Assignment Order and the Confirmation Order.

49.     Landlord's violations of the Assignment Order and the Confirmation Order and its improper conduct have caused Burlington to spend considerable time and attorneys' fees protecting its rights. Therefore, Burlington seeks an order awarding Burlington its attorneys' fees and costs incurred since September 30, 2025, the date that Landlord sent its notice of default wrongfully demanding payment of the 2024 Taxes.

## **Conclusion**

50.     The Landlord is violating the Assignment Order and the Confirmation Order by attempting to collect the 2024 Taxes.  This Court ordered that Burlington took the Lease free of amounts that accrued prior to Closing.  Burlington therefore requests entry of the attached proposed order.

Dated: January 30, 2026

/s/ *Marcy J. McLaughlin Smith*

**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward (DE Bar No. 4471)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
　　　 marcy.smith@wbd-us.com

-and-

**JACKSON WALKER LLP**
Kristhy M. Peguero (DE Bar No. 4903; TX Bar No. 24102776)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email:　 kpeguero@jw.com
　　　　 vargeroplos@jw.com

William Farmer (TX Bar No. 24127156)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-5859
Email:　wfarmer@jw.com

*Co-Counsel for Burlington Coat Factory Warehouse*
*Corporation*