## Exhibit 3

| From: | Farmer, William |
|---|---|
| To: | Farmer, William; Peguero, Kristhy; Polnick, Veronica |
| Cc: | lindsey.blum@kirkland.com; Andrew D. Behlmann |
| Bcc: | Kevin Mann; Gold, Ivan; jgentile@beneschlaw.com; jmartinez@beneschlaw.com; jhoover@beneschlaw.com; Fleischer, Scott L.; Wesley Gallagher; Ronald Tucker; Catherine Martin; Frankel, Dov Y.; DiSabatino, Monique Bair; Jarrod Martin; Bill Hazeltine; Heilman, Leslie C.; Summers, Ellsworth; Falgowski, J. Cory; lahtes@burr.com; dmr@elliottgreenleaf.com; bharvey@buchalter.com; Vantine, John; Ross Guttenberg; Stephen Jaeger; Michael St. James; Klabo, Hailey W.; Ford, IV, Chip T.; brian.mclaughlin@offitkurman.com; Audrey Hornisher; Mark Florak; Kelly Webster; Tara Bush; Joseph Prestifilippo Jr.; Scott Leonhardt (scott.leonhardt@esbrook.com); katherine.welch@esbrook.com; Michael Johnson; Michael Busenkell; michael.brandess@huschblackwell.com; kgrivner@clarkhill.com; dpahl@perkinscoie.com; Danielle Mashburn-Myrick (8202); Jessica Joseph (8212); {F5376237}.JWDOCS@JWimanage.jwllp.com |
| Subject: | In re JOANN INC., et al. - Case No. 25-10068 (CTG) - Amended First Notice of Assumption and Assignment of Certain Executory Contractors and/or Unexpired Leases |
| Date: | Saturday, May 17, 2025 4:41:07 PM |
| Attachments: | ECF 930 - Joann - Amended First Notice of Assumption and Assignment of Certain Leases.pdf<br>44975857_8_Joann - Assumption Order [Burlington Form].docx<br>image001.png |

All,

Attached, please find the recently filed *Amended First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases*, along with the proposed form of order for those leases proposed to be assigned to Burlington, attached hereto for reference.

Please let me know if you have any questions or comments. Happy to discuss.

Appreciate you all's patience during this process.

Thanks,

**Will Farmer**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-5674 | F: (214) 953-5822 | wfarmer@jw.com



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 429** |

## AMENDED FIRST NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

> **PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON SCHEDULE 2 ATTACHED HERETO AND READ THE CONTENTS OF THIS NOTICE CAREFULLY.**

**PLEASE TAKE NOTICE** that on February 14, 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order on the motion (the "Motion")[2] of debtors and debtors in possession (the "Debtors") (i) authorizing and approving procedures to reject, assume, or assume and assign executory contracts and unexpired leases and (ii) granting related relief [Docket No. 429] (the "Procedures Order"), attached hereto as **Schedule 1**.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Procedures Order, the Debtors filed the *First Notice of Assumption and Assignment of Certain Executory Contract[s] and/or Unexpired Leases* [D.I. 760] (the "First Notice") on April 28, 2025.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that, with respect to the unexpired leases listed on **Schedule 2** to this Notice (the "Amended Notice Leases"), the First Notice inadvertently failed to attach the form of proposed order applicable to the Amended Notice Leases (the "Proposed Order"), which is annexed hereto as **Schedule 3**.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Procedures Order and by this written notice (this "Assumption Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Contract set forth on **Schedule 2** attached hereto is hereby assumed or assumed and assigned, as applicable, effective as of the date (the "Assumption Date") set forth in **Schedule 2**, or such other date as the Debtors and the counterparty or counterparties to any such Contract agree. Please reach out to counsel for GA Joann Retail Partnership, LLC, Lowenstein Sandler LLP, Attn.: Andrew Behlmann (abehlmann@lowenstein.com) if any questions relating to **Schedule 2**.

PLEASE TAKE FURTHER NOTICE that the deadline to object to assumption and assignment of the Amended Notice Leases has already passed. Parties seeking to object to the form of Proposed Order must file and serve a written objection with respect thereto so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and is ***actually received*** by the following parties no later than fourteen (14) days after the date that the Debtors served this Notice (the "Proposed Order Objection Deadline"): (a) the Debtors, JOANN Inc., 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (b) co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and

(ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (d) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (e) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (f) GA Joann Retail Partnership, LLC, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attn.: Andrew Behlmann (abehlmann@lowenstein.com); and (g) counsel to the Official Committee of Unsecured Creditors, (i) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com) and Connie Choe (cchoe@kelleydrye.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, Attn: Bradford Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com).  Only those responses that are timely filed, served, and received will be considered at any hearing.  **Any counterparty that already timely filed a response pursuant to the First Notice need not file a response unless objecting to the Proposed Order.**

PLEASE TAKE FURTHER NOTICE that, absent an objection to the Proposed Order being timely filed before the Proposed Order Objection Deadline or an objection on any other basis having been timely filed before the objection deadline established by the First Notice, the assumption or assumption and assignment of each Contract shall become effective on the applicable Assumption Date set forth in **Schedule 2** attached hereto, or such other date to which the Debtors and the counterparty or counterparties to such Contract agree.[3]  If the Contract is an unexpired lease of non-residential real property (a "Lease"), the Debtors shall file an Assumption Order under a certificate of no objection, and such Lease shall be assumed or assumed and assigned upon entry of the Assumption Order or such other date as the Debtors and the counterparty or counterparties to such Lease agree.

PLEASE TAKE FURTHER NOTICE that if an objection to the assumption or assumption and assignment of any Contract has been timely filed and is not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the objection for the Contract or Contracts to which such objection relates.  If such objection is overruled or withdrawn, such Contract or Contracts shall be assumed or assumed and assigned as of the Assumption Date set forth in **Schedule 2** or such other date as the Debtors and the counterparty or counterparties to such Contract agree or as ordered by the Court.

*[Remainder of page intentionally left blank]*

---

[3]    An objection to the assumption and/or assignment of any particular Contract or cure amount listed in this Assumption Notice shall not constitute an objection to the assumption and/or assignment of any other contract or lease listed in this Assumption Notice.  Any objection to the assumption and/or assignment of any particular Contract or cure amount listed in this Assumption Notice must state with specificity the Contract to which it is directed.  For each particular Contract whose assumption and/or assignment is not timely or properly objected to, such assumption and/or assignment will be effective in accordance with this Assumption Notice and the Order.

Dated: May 16, 2025
Wilmington, Delaware

/s/ Patrick J. Reilley

**COLE SCHOTZ P.C.**

Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone:     (302) 652-3131
Facsimile:      (302) 652-3117
Email:          preilley@coleschotz.com
                snewman@coleschotz.com
                mfitzpatrick@coleschotz.com
                jdougherty@coleschotz.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
Email:          aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                jeff.michalik@kirkland.com
                lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**Schedule 1**

**Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 16 and 401** |

## ORDER (I) AUTHORIZING AND APPROVING
## PROCEDURES TO REJECT OR ASSUME EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving procedures for rejecting, assuming, or assuming and assigning executory contracts and unexpired leases (including any amendments or modifications thereto, collectively, the "Contracts") and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027).  The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The following Rejection Procedures are approved in connection with rejecting Contracts:

   a. ***Rejection Notice***. The Debtors shall file a notice substantially in the form attached hereto as **Exhibit 1** (the "Rejection Notice") indicating the Debtors' intent to reject a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things: (i) the Contract or Contracts to be rejected including the store number and address; (ii) the names and addresses of the counterparties to such Contract(s) (each a "Rejection Counterparty"); (iii) the proposed effective date of rejection for each such Contract(s), (each, the "Rejection Date"); (iv) if any such Contract is an unexpired lease of non-residential real property (a "Lease"), the personal property to be abandoned (the "Abandoned Property"), if any, and an estimate of the book value of such property, if practicable; (v) with respect to any Lease, any known third party having an interest in any remaining property, including personal property, consigned goods, furniture, fixtures, and equipment, located at the leased premises; and (vi) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). The Rejection Notice may list multiple Contracts; *provided* that the number of counterparties to Contracts listed on each Rejection Notice shall be limited to no more than 100; *provided*, *further*, if any such Contract is a Lease, the Rejection Notice shall be accompanied by a proposed form of order (the "Rejection Order") approving the rejection of the Lease(s), which shall be substantially in the form of Schedule 3 to the Rejection Notice, and no Lease shall be deemed rejected absent entry of an applicable Rejection Order.

b.     ***Service of the Rejection Notice***.  The Debtors will cause each Rejection Notice to be served:  (i) by overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Contract (and upon such Rejection Counterparty's counsel by email, if known) and all parties who may have any interest in any Abandoned Property (if known); and (ii) by first class mail, email, or fax, upon (A) the Office of the United States Trustee for the District of Delaware, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (B) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (C) the agents under the Debtors' prepetition secured facilities and counsel thereto; (D) the Official Committee of Unsecured Creditors (the "Committee"); (E) the United States Attorney's Office for the District of Delaware; (F) the Internal Revenue Service; (G) the attorneys general in the states where the Debtors conduct their business operations; (H) any known parties that have an interest in abandoned property at the premises; and (I) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b) (collectively, the "Master Notice Parties").

c.     ***Objection Procedures***.  Parties objecting to a proposed rejection or the Debtors' proposed abandonment of the Abandoned Property must file and serve a written objection[3] so that such objection is filed with this Court on the docket of the Debtors' chapter 11 cases no later than fourteen (14) days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline") and promptly serve such objection on the following parties (collectively, the "Objection Service Parties"):  (i) the Debtors, 5555 Darrow Road, Hudson, Ohio 44236, Attn.: Ann Aber, EVP, Chief Legal and Human Resources Officer; (ii) proposed co-counsel to the Debtors, (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Aparna Yenamandra, P.C. (aparna.yenamandra@kirkland.com) and 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Jeffrey Michalik (jeff.michalik@kirkland.com), and Lindsey Blumenthal (lindsey.blumenthal@kirkland.com) and (b) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn.: Patrick J. Reilley (preilley@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (iii) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Malcolm M. Bates (malcolm.m.bates@usdoj.gov); (iv) counsel to the Prepetition ABL Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn.: Christopher L. Carter (christopher.carter@morganlewis.com) and Marjorie Crider

---

[3]     An objection to the rejection of any particular Contract listed on a Rejection Notice shall not constitute an objection to the rejection of any other Contract listed on such Rejection Notice.

(marjorie.crider@morganlewis.com) and (b) Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, Delaware 19801, Attn.: Kurt F. Gwynne (kgwynne@reedsmith.com) and Jason D. Angelo (jangelo@reedsmith.com); (v) counsel to the Prepetition FILO Agent, (a) Choate Hall & Stewart LLP, 2 International Place, Boston, Massachusetts 02110, Attn.: John Ventola (jventola@choate.com) and Jonathan Marshall (jmarshall@choate.com) and (b) DLA Piper LLP (US), 1201 N Market St. Suite 2100, Wilmington, Delaware 19801, Attn.: Stuart Brown, Esq. (stuart.brown@dlapiper.com); (vi) counsel to the Prepetition Term Loan Lender Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue New York, New York 10166, Attn.: Scott Greenberg (SGreenberg@gibsondunn.com), Kevin Liang (KLiang@gibsondunn.com), and Josh Brody (JBrody@gibsondunn.com); (vii) counsel to the Prepetition Term Loan Agent, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019, Attn.: Jeffrey Gleit (jeffrey.gleit@afslaw.com) and 1717 K Street NW, Washington, D.C. 20006, Attn.: Jonathan Bagg (jonathan.bagg@afslaw.com), and 233 South Wacker Drive, Suite 7100, Chicago, Illinois 60606, Attn.: Matthew Bentley (matthew.bentley@afslaw.com); (viii) counsel to Gordon Brothers Retail Partners, LLC, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, New York 10020, Attn.: Steven Reisman (sreisman@katten.com) and Cindi Giglio (cgiglio@katten.com); (ix) proposed counsel to the Official Committee of Unsecured Creditors, (a) Kelley Drye & Warren LLP, 3 World Trade Center, New York, New York 10007, Attn: Jason Adams (jadams@kelleydrye.com), Maeghan McLoughlin (mmcloughlin@kelleydrye.com) and Connie Choe (cchoe@kelleydrye.com) and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware, 19899-8705, Attn: Bradford Sandler (bsandler@pszjlaw.com) and James O'Neill (joneill@pszjlaw.com); and (x) the applicable Rejection Counterparties (and upon such Rejection Counterparty's counsel by email, if known).

d.    ***No Objection Timely Filed***. If no objection to the rejection of any Contract is timely filed, including to the proposed abandonment of any Abandoned Property, each Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the applicable Rejection Counterparty agrees; *provided* that if a Rejection Counterparty files a response to the Rejection Notice on the docket of the Court explicitly requesting entry of an order approving such Rejection, the Debtors will submit such an order to the Court prior to the proposed Rejection Date or as soon as reasonably practicable thereafter; *provided*, *further*, if the Contract is a Lease, the Debtors shall submit the Rejection Order to the Court under a certificate of no objection authorizing the rejection of each such Lease listed in the applicable Rejection Notice to be rejected as of the later of (i) the applicable Rejection Date set forth in the Rejection Notice or such other date as the

Debtors and the applicable Rejection Counterparty may agree and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises (the "Rejection Effective Date"); *provided, further,* that the Rejection Effective Date for a Lease rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

e.   ***Unresolved Timely Objections***.  If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract(s) shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.  For the avoidance of doubt, such Contract will only be deemed rejected upon the entry of a Rejection Order resolving the objection as between the Debtors and the applicable objecting party and/or Rejection Counterparty, unless the Debtors and the applicable Rejection Counterparty agree otherwise or as otherwise ordered by the court.

f.   ***Removal from Schedule***.  The Debtors reserve the right to remove any Contract from the schedule to a Rejection Notice at any time prior to the Rejection Date.

g.   ***No Application of Security Deposits***.  If the Debtors have deposited monies with a Rejection Counterparty as a security deposit or other arrangement, such Rejection Counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court, unless the Debtors and the applicable Rejection Counterparty otherwise agree.

h.   ***Abandoned Property***.  The Debtors, in consultation with the Prepetition ABL Agent and the Prepetition FILO Agent, are authorized, but not directed, at any time on or before the Rejection Effective Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to a rejected Contract.  The Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property.  Absent a timely objection, any and all property located on the Debtors' leased premises on the Rejection Effective Date of the applicable Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Effective Date.  After the Abandoned Property is deemed abandoned pursuant to section 554 of the Bankruptcy Code, the applicable Contract counterparty or counterparties may, in their sole discretion and without

further notice or further order of this Court, utilize and/or dispose of such property without further notice or liability to the Debtors or consenting third parties, and, to the extent applicable, the automatic stay is modified to allow such disposition. The Contract counterparty's rights, if any, to file a claim for the disposal of such property are reserved, as are the rights of any party in interest to object to such claims. For the avoidance of doubt, nothing in this Order is intended to affect the rights of any party other than the Debtors in such Abandoned Property. The rights of any other party in Abandoned Property, and the rights of the landlord regarding such Abandoned Property, will be governed by applicable non-bankruptcy law.

i.   ***Proofs of Claim***.  Claims arising out of the rejection of Contracts, if any, must be filed on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases, if any, and (ii) thirty (30) days after the later of (A) the Rejection Date or, in the case, of a Lease, the Rejection Effective Date, and (B) the date of entry of an order rejecting the Contract. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on account of such claim that may be made in connection with these chapter 11 cases.

3.   The following Assumption Procedures are approved in connection with assuming and assuming and assigning Contracts:

a.   ***Assumption Notice***. The Debtors shall file a notice substantially in the form attached hereto as **Exhibit 2** (the "Assumption Notice") indicating the Debtors' intent to assume a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed including the store number and address; (ii) the names and addresses of the counterparties to such Contracts (each an "Assumption Counterparty"); (iii) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (iv) the effective date of the assumption for each such Contract (the "Assumption Date"); (v) the proposed cure amount, if any for each such Contract; (vi) with respect to any Lease which the Debtors seek to assume and assign (if any), any known third party having an interest in any consigned goods subject to such assignment; and (vii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below). If any such Contract is a Lease, the Assumption Notice shall be accompanied by a proposed form of order (the "Assumption Order") approving the assumption or assumption and assignment of the Lease(s), which shall be substantially in the form of Schedule 3 to the Assumption Notice, and no Lease shall be deemed assumed absent entry of an applicable Assumption Order.

b.   ***Service of the Assumption Notice and Evidence of Adequate Assurance***. The Debtors will cause the Assumption Notice to be served (i) by first class mail upon the Assumption Counterparties affected by the Assumption

Notice and each Assignee, if applicable, at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known) and (ii) by first class mail, email, or fax upon the Master Notice Parties.[4] To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known, by electronic mail).

c.   ***Objection Procedures***.  Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of a Contract must file and serve a written objection[5] so that such objection is filed with this Court and actually received by the Objection Service Parties no later than fourteen (14) days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

d.   ***No Objection***.  If no objection to the assumption of any Contract is timely filed, each Contract shall be assumed as of the Assumption Date set forth in the applicable Assumption Notice or such other date as the Debtors and the applicable Assumption counterparties agree, and the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes; *provided, however,* if the Contract is a Lease, the Debtors shall submit the Assumption Order to the Court under a certificate of no objection authorizing the assumption of each Lease, which shall be assumed or assumed and assigned upon entry of the Assumption Order or such other date as the Debtors and the applicable Assumption Counterparties may agree, and the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes*; provided, however,* that the Assumption Date for a Lease shall not occur earlier than the date the Debtors filed and served the applicable Assumption Notice.

e.   ***Unresolved Timely Objections***.  If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least ten (10) days' notice of such hearing to the applicable Assumption Counterparty and the other Objection Service Parties.  Such Contract will only be assumed or assumed and assigned upon entry by the

---

[4]   The Debtors shall serve (by electronic mail, if requested) a counterparty to a Contract other than a lease of non-residential real property to be assumed under the Contract Procedures with evidence of adequate assurance as soon as reasonably practicable upon such counterparty's written request to the Debtors' proposed counsel.

[5]   An objection to the assumption of any particular Contract listed on an Assumption Notice shall not constitute an objection to the assumption of any other Contract listed on such Assumption Notice.

Court of a consensual form of Assumption Order resolving the objection as between the objecting party and the Debtors or, if resolution is not reached and/or the objection is overruled or withdrawn, upon further order of the Court and shall be assumed or assumed and assigned as of the applicable Assumption Date set forth in the Assumption Notice or such other date to which the Debtors and applicable Assumption Counterparty agree, or as ordered by the Court.

  f. ***Removal from Schedule***.  The Debtors reserve the right to remove any Contract from the schedule to an Assumption Notice at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

4. The Debtors' right to assert that any provisions in the Contract that expressly or effectively restrict, prohibit, condition, or limit the assignment of or the effectiveness of such Contract to an Assignee are unenforceable anti-assignment or *ipso facto* clauses is fully reserved, as are the rights of any counterparty to object to such assertion.

5. The Debtors are hereby authorized, pursuant to section 363(b) of the Bankruptcy Code, to enter into consensual amendments to the Contracts with the written consent of the applicable Assumption Counterparty to the extent such amendments are set forth in an Assumption Notice in accordance with this Order.

6. Approval of the Contract Procedures and this Order will not prevent the Debtors from seeking to reject, assume, or assume and assign a Contract by separate motion.

7. Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of cash collateral, and any budgets in connection therewith governing any such use of cash collateral.

8. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including any payment made in accordance with this Order), nothing in this Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or

8

other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

9. All rights and defenses of the Debtors are preserved, including all rights and defenses of the Debtors with respect to a claim for damages arising as a result of a Contract rejection, including any right to assert an offset, recoupment, counterclaim, or deduction. In addition, nothing in this Order or the Motion shall limit the Debtors' ability to subsequently assert that any particular Contract is expired or terminated and is no longer an executory contract or unexpired lease, respectively.

10. To the extent that the Debtors propose to abandon any personal property that may contain "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall remove the Confidential Information from such personal property before such abandonment.

11.     The Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any non-residential real property subject to a rejected Contract as, and to the extent they are, required to do so by applicable law.

12.     Notice of the Rejection as provided therein shall be deemed good and sufficient notice of such Rejection Notice and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Dated: February 14th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

[*See Exhibits to the Order at Docket No. 429*]

**<u>Schedule 2</u>**

**Assumed Contracts**

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 1 | Burlington Coat Factory Warehouse Corporation | Shops at St. Johns, LLC | Simon Property Group, Attn: Legal Department, Indianapolis, IN, 46204-3438 | 2039 | 10261 River Marsh Drive Ste 149 | June 18, 2003 Lease Agreement between Jo-Ann Stores, LLC and Shops at St. Johns, LLC | $177,373.49 | 6/1/2025 |
| 2 | Burlington Coat Factory of Texas, Inc. | Smart Cienega SPE, LLC | c/o Property Management Advisors, Inc., 1234 East 17th Street, #B, Santa Ana, CA, 92701 | 2119 | 5885 Lincoln Avenue | April 20, 2005 Lease Agreement between Jo-Ann Stores, LLC and Smart Cienega SPE, LLC | $58,234.00 | 6/1/2025 |
| 3 | Burlington Coat Factory of Texas, Inc. | Chestnut Court Darien II, LLC | c/o Mid-America Asset Management, Inc., One Parkview Plaza, 9th Floor, Oakbrook Terrace, IL, 60181 | 2176 | 7511 Lemont Rd Ste 101 | March 31, 2009 Lease Agreement between Jo-Ann Stores, LLC and CHESTNUT COURT DARIEN II, LLC | $24,092.00 | 6/1/2025 |
| 4 | Burlington Coat Factory of Texas, Inc. | Spirit Properties, Ltd. | Attn: Randy Wrage, 21070 Centre Pointe Parkway, Santa Clarita, CA, 91350 | 2452 | 26583 Carl Boyer Drive | October 15, 2014 Lease Agreement between Jo-Ann Stores, LLC and Spirit Properties, Ltd. | $35,041.13 | 6/1/2025 |
| 5 | Burlington Coat Factory Warehouse Corporation | BV Wolf Creek, LLC | 2194 Snake River Parkway, Suite 300, Attn: Thel Casper, Idaho Falls, ID, 83402 | 2456 | 10521 S. 15Th Street | November 11, 2014 Lease Agreement between Jo-Ann Stores, LLC and BV Wolf Creek, LLC | $26,004.24 | 6/1/2025 |
| 6 | Burlington Coat Factory of | DKS Investments, Inc. | c/o Knorr Management, Inc., 3736 Fallon Rd. | 1877 | 2210 Daniels St | October 30, 2009 Lease Agreement between Jo-Ann | $30,000.00 | 6/1/2025 |

[1] The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
|  | Texas, Inc. |  | #509, Dublin, CA, 94568 |  |  | Stores, LLC and DKS Investments, Inc. |  |  |
| 7 | Burlington Coat Factory of Texas, Inc. | Ming Retail Plaza LLC | c/o M.D. Atkinson Company, Inc., 1401 19th Street, Suite 400, Bakersfield, CA, 93301 | 1014 | 3010 Ming Ave | August 13, 2015 Lease Agreement between Jo-Ann Stores, LLC and Ming Retail Plaza LLC | $26,916.43 | 5/1/2025 |
| 8 | Burlington Coat Factory Warehouse Corporation | University Hills Plaza, LLC | c/o Miller Real Estate Investments, LLC, Attn: Scott Goldammer, Property Mgr., Greenwood Village, CO, 80111 | 2179 | 2580 South Colorado Blvd | February 25, 2010 Lease Agreement between Jo-Ann Stores, LLC and University Hills Plaza, LLC | $39,938.00 | 6/1/2025 |
| 9 | Burlington Coat Factory Warehouse Corporation | Lancaster Development Company LLC | c/o C.E. John Company, Inc., Attn: Director of Property Management, Vancouver, WA, 98661 | 2218 | 783 Lancaster Dr. Ne. Suite #133 | December 06, 2010 Lease Agreement between Jo-Ann Stores, LLC and Lancaster Development Company LLC | $14,665.05 | 6/1/2025 |
| 10 | Burlington Coat Factory of Texas, Inc. | Alameda Crossing Station LLC | Attn: Robert F. Myers, COO, 11501 Northlake Drive, Cincinnati, OH, 45249 | 2132 | 1717 N Dysart Road | August 11, 2005 Lease Agreement between Jo-Ann Stores, LLC and Alameda Crossing Station LLC | $30,938.24 | 6/1/2025 |
| 11 | Burlington Coat Factory of Texas, Inc. | IGI21 Katy LLC | 1140 N. Williamson Blvd, Suite 140, Attn: Steven R. Greathouse, Chief Investment Officer, | 2226 | 1219 North Fry Road | February 24, 2011 Lease Agreement between Jo-Ann Stores, LLC and IGI21 Katy LLC | $0.00 | 6/1/2025 |

2

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | | | Daytona Beach, FL, 32114 | | | | | |
| 12 | Burlington Coat Factory Warehouse Corporation | Suburban Plaza, LLC | c/o Selig Enterprises, Inc., Attn: Kenneth J. Clayman, Esq., Atlanta, GA, 30309 | 2412 | 2655 N. Decatur Road | August 12, 2014 Lease Agreement between Jo-Ann Stores, LLC and Suburban Plaza, LLC | $24,347.51 | 6/1/2025 |
| 13 | Burlington Coat Factory of Texas, L.P. | Tri Marsh Realty LLC | 4801 Harbor Dr., Attn: Bo Avery, Flower Mound, TX, 75022 | 2140 | 10515 N Mo Pac Expy Bldg 1 | May 31, 2006 Lease Agreement between Jo-Ann Stores, LLC and Tri Marsh Realty LLC | $0.00 | 6/1/2025 |
| 14 | Burlington Coat Factory of Texas, Inc. | WLPX Hesperia, LLC | c/o Lewis Operating Corp., 1152 North Mountain Avenue, Upland, CA, 91785 | 2270 | 12779 Main Street | May 20, 2011 Lease Agreement between Jo-Ann Stores, LLC and WLPX Hesperia, LLC | $29,624.01 | 6/1/2025 |
| 15 | Burlington Coat Factory Warehouse Corporation | Overlook Village Asheville, LLC | c/o Armada Hoffler Properties, Inc., 222 Central Park Avenue, Suite 2100, Virginia Beach, VA, 23462 | 2284 | 80 South Tunnel Road Suite 30 | August 26, 2011 Lease Agreement between Jo-Ann Stores, LLC and Overlook Village Asheville, LLC | $0.00 | 6/1/2025 |
| 16 | Burlington Coat Factory of Texas, L.P. | Sherman Commons, L.P. | c/o CBRE, 2100 McKinney Ave., Suite 800, Dallas, TX, 75201 | 2308 | 4127 N Hwy 75 | March 28, 2012 Lease Agreement between Jo-Ann Stores, LLC and Sherman Commons, L.P. | $0.00 | 6/1/2025 |
| 17 | Burlington Coat Factory Warehouse Corporation | SRK Lady Lake 21 SPE, LLC | c/o The Benchmark Group, 4053 Maple Road, Suite 200, Amherst, NY, 14226 | 1598 | 540 N Us Hwy 441 | June 30, 2008 Lease Agreement between Jo-Ann Stores, LLC and SRK Lady Lake 21 SPE, LLC | $33,243.25 | 6/1/2025 |

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 18 | Burlington Coat Factory Warehouse Corporation | Progress Square Partners, LP | c/o Argonaut Investments, 101 Larkspur Landing Circle, Suite 120, Larkspur, CA, 94939 | 2329 | 720 W. Telegraph | February 29, 2012 Lease Agreement between Jo-Ann Stores, LLC and Progress Square Partners, LP | $30,500.00 | 6/1/2025 |
| 19 | Burlington Coat Factory Warehouse Corporation | RPT Newnan LLC | 500 North Broadway, Suite 201, P.O. Box 9010, Jericho, NY, 11753 | 2364 | 1074 Bullsboro Drive, Unit #6 | December 20, 2012 Lease Agreement between Jo-Ann Stores, LLC and RPT Newnan LLC | $18,239.71 | 5/1/2025 |
| 20 | Burlington Coat Factory of Kentucky, Inc. | Shelbyville Road Plaza, LLC | c/o Hagan Properties, 12911 Reamers Road, Louisville, KY, 40245 | 2145 | 4600 Shelbyville Rd Ste 280 | January 18, 2008 Lease Agreement between Jo-Ann Stores, LLC and Shelbyville Road Plaza, LLC | $50,059.33 | 6/1/2025 |
| 21 | Burlington Coat Factory of Texas, L.P. | Rayzor Ranch Marketplace Associates, LLC | 8140 Walnut Lane, Suite 400, Attn: Property Manager, Dallas, TX, 75231 | 2212 | 2640 West University Dr | November 17, 2010 Lease Agreement between Jo-Ann Stores, LLC and Rayzor Ranch Marketplace Associates, LLC | $0.00 | 6/1/2025 |
| 22 | Burlington Coat Factory of Texas, Inc. | ECHO/Continental Lincoln Village, LLC | c/o Worth Capital, 2501 E. Main St. AND PO Box 9646 (Columbus, same zip), Columbus, OH, 43209 | 2054 | 4600 W Broad Street | August 22, 2003 Lease Agreement between Jo-Ann Stores, LLC and ECHO/Continental Lincoln Village, LLC | $22,548.01 | 6/1/2025 |
| 23 | Burlington Coat Factory | Myrtle Beach Farms Company, Inc. | 8820 Marina Parkway, Attn: Lease Administration, | 2566 | 1120 Seaboard St | January 28, 2022 Lease Agreement between Jo-Ann Stores, LLC and | $38,121.49 | 6/1/2025 |

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | Warehouse Corporation | | Myrtle Beach, SC, 29572 | | | Myrtle Beach Farms Company, Inc. | | |
| 24 | Burlington Coat Factory of Texas, L.P. | BVA SPM SPE LLC | c/o Big V Properties LLC, 176 North Main Street, Suite 210, Florida, NY, 10921 | 2571 | 9500 S IH 35 Frontage Rd | December 22, 2021 Lease Agreement between Jo-Ann Stores, LLC and BVA SPM SPE LLC | $0.00 | 6/1/2025 |
| 25 | Burlington Coat Factory of Texas, L.P. | 380 Younger LLC | 14643 Dallas Parkway, Suite 950, Attn: Benjamin Smith, Younger Partners, DALLAS, TX, 75254 | 2296 | 2050 West University Dr Suite 250 | September 30, 2011 Lease Agreement between Jo-Ann Stores, LLC and 380 Younger LLC | $8,420.00 | 6/1/2025 |
| 26 | Burlington Coat Factory Warehouse Corporation | Spring Creek Owner, LLC | c/o DLC Management Corp., 565 Taxter Rd., Suite 400, Elmsford, NY, 10523 | 1894 | 3835 North Mall Ave | January 13, 2010 Lease Agreement between Jo-Ann Stores, LLC and Spring Creek Owner, LLC | $8,503.52 | 6/1/2025 |
| 27 | Burlington Coat Factory Warehouse Corporation | NORTH MAIN PHASE II AND III LLC | C/O CHILDRESS KLEIN, 301 S. COLLEGE ST., SUITE 2800, CHARLOTTE, NC, 28202 | 2351 | 1215-B North Main Street | November 29, 2012 Lease Agreement between Jo-Ann Stores, LLC and NORTH MAIN PHASE II AND III LLC | $22,345.83 | 6/1/2025 |
| 28 | Burlington Coat Factory of Texas, Inc. | Regency Centers, L.P. | c/o Regency Centers Corporation, One Independent Drive, Jacksonville, FL, 32202-5019 | 2589 | 3872 C Paxton Avenue ) | January 31, 2023 Lease Agreement between Jo-Ann Stores, LLC and Regency Centers, L.P. | $0.00 | 6/1/2025 |

5

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 29 | Burlington Coat Factory of Texas, Inc. | LNN Enterprises, Inc. | 9 W. Cherry Ave., Ste. A, Attn: Giavanna Nackard Bednar, VP of Operations, Flagstaff, AZ, 86001 | 1831 | 1514 S Riordan Ranch St | April 06, 1979 Lease Agreement between Jo-Ann Stores, LLC and LNN Enterprises, Inc. | $0.00 | 6/1/2025 |
| 30 | Burlington Coat Factory Warehouse Corporation | GP Retail I, LLC - dba SRV Investors | c/o Gart Properties, LLC, 240 St. Paul Street, Suite 200, Denver, CO, 80206 | 2071 | 7360 South Gartrell Road | July 16, 2004 Lease Agreement between Jo-Ann Stores, LLC and GP Retail 1, LLC - dba SRV Investors | $32,909.74 | 6/1/2025 |
| 31 | Burlington Coat Factory Warehouse Corporation | Goodmen Big Oaks, LLC | c/o TRI Inc., 1071 Fall Springs Rd., Collierville, TN, 38017 | 2225 | 3875 North Gloster Street | January 11, 2011 Lease Agreement between Jo-Ann Stores, LLC and Goodmen Big Oaks, LLC | $15,511.67 | 5/1/2025 |
| 32 | Burlington Coat Factory of Texas, Inc. | Widewaters Roseland Center Company, LLC | c/o The Widewaters Group, Inc., 5845 Widewaters Parkway, Suite 100, East Syracuse, NY, 13057 | 2211 | 3225 State Route 364 | November 19, 2010 Lease Agreement between Jo-Ann Stores, LLC and Widewaters Roseland Center Company, LLC | $9,276.94 | 6/1/2025 |
| 33 | Burlington Coat Factory Warehouse Corporation | The Williams Family Trust | c/o Alliance Development, 230 Ohio Street, #200, Oshkosh, WI, 54902 | 2348 | 1226 Koeller St | July 26, 2012 Lease Agreement between Jo-Ann Stores, LLC and The Williams Family Trust | $18,759.49 | 6/1/2025 |
| 34 | Burlington Coat Factory | A.I. Longview LLC | dba Hedinger Group, 5440 SW Westgate Drive, | 1867 | 700 Ocean Beach Hwy Ste 100 | September 30, 2008 Lease Agreement between Jo-Ann | $19,447.21 | 6/1/2025 |

6

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | Warehouse Corporation | | Suite 250, Portland, OR, 97221 | | | Stores, LLC and A.I. Longview LLC | | |
| 35 | Burlington Coat Factory of Texas, Inc. | RCG-Bradley VII, LLC | c/o RCG Ventures, LLC, 3060 Peachtree Rd. NW, Suite 400, Atlanta, GA, 30355 | 2587 | 2056 N State Rt. 50 (Unit 15) | September 29, 2022 Lease Agreement between Jo-Ann Stores, LLC and RCG-Bradley VII, LLC | $25,032.10 | 5/1/2025 |
| 36 | Burlington Coat Factory of Texas, Inc. | T SOUTHERN TIER PIL NY, LLC, T SOUTHERN TIER NY, LLC AND | TSOUTHERN TIER PIT NY, LLC, 16600 Dallas Pkwy, Suite 300, Dallas, TX, 75248 | 1868 | 1530 County Route 64 | April 06, 2009 Lease Agreement between Jo-Ann Stores, LLC and T SOUTHERN TIER PIL NY, LLC, T SOUTHERN TIER NY, LLC AND | $24,134.10 | 6/1/2025 |
| 37 | Burlington Coat Factory Warehouse Corporation | U-Blaine Properties LLC | c/o Inland Companies Inc. dba Colliers International, 833 E. Michigan St., Suite 500, Milwaukee, WI, 53202 | 1866 | 4045 Commonwealth Ave | August 26, 2008 Lease Agreement between Jo-Ann Stores, LLC and U-Blaine Properties LLC | $25,388.94 | 6/1/2025 |
| 38 | Burlington Coat Factory Warehouse Corporation | Pompano MZL LLC | c/o KPR Centers LLC (Katz Properties Retail), 535 Fifth Avenue, 12th Floor, New York, NY, 10017 | 1023 | 1131 S Federal Hwy | August 07, 1997 Lease Agreement between Jo-Ann Stores, LLC and Pompano MZL LLC | $33,550.96 | 5/1/2025 |
| 39 | Burlington Coat Factory of Texas, Inc. | PONTIAC MALL LIMITED | C/O GERSHENSON REALTY & INVESTMENT, | 2277 | 9052 Highland Road | July 28, 2011 Lease Agreement between Jo-Ann Stores, LLC and PONTIAC MALL | $30,966.35 | 6/1/2025 |

7

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| | | PARTNERSH IP | 31500 NORTHWESTER N HWY, SUITE 100, FARMINGTON HILLS, MI, 48334 | | | LIMITED PARTNERSHIP | | |
| 40 | Burlington Coat Factory of Texas, Inc. | LCR Walpole LLC | c/o The Wilder Companies, Ltd., 800 Boylston Street - Suite 1300, Boston, MA, 02199 | 2403 | 96 Providence Highway | July 31, 2013 Lease Agreement between Jo-Ann Stores, LLC and LCR Walpole LLC | $17,755.77 | 6/1/2025 |
| 41 | Burlington Coat Factory of Texas, Inc. | RAF Investments Ltd. | 397 Churchill Hubbard Rd., Suite 2, Attn: Vince Fond, Jr., Youngstown, OH, 44505 | 2519 | 441 Boardman Poland Road | October 16, 2017 Lease Agreement between Jo-Ann Stores, LLC and RAF Investments Ltd. | $28,881.00 | 6/1/2025 |
| 42 | Burlington Coat Factory of Texas, L.P. | T Mesquite MKT WVS TX, LLC | 16600 Dallas Parkway, Suite 300, Attn: Zoe Lopez, Regional Property Manager, Dallas, TX, 75248 | 2575 | 19105 Lyndon B Johnson Fwy | February 01, 2022 Lease Agreement between Jo-Ann Stores, LLC and T Mesquite MKT WVS TX, LLC | $25,000.00 | 5/1/2025 |
| 43 | Burlington Coat Factory Warehouse Corporation | Big B1, Inc | 655 South 700 East, Attn: Bankim ("Bobby") Patel, Orem, UT, 84097 | 2576 | 3558 E Main St | May 09, 2022 Lease Agreement between Jo-Ann Stores, LLC and Big B1, Inc | $20,836.75 | 6/1/2025 |
| 44 | Burlington Coat Factory of Texas, L.P. | TXC Capital, LLC | c/o Crimson Capital LLC, 17 Elm Street, Morristown, NJ, 07960 | 2446 | 10501 Gateway Blvd W Bld 9 | June 23, 2014 Lease Agreement between Jo-Ann Stores, LLC and TX Crimson, LLC | $0.00 | 6/1/2025 |

| No. | Assignee | Landlord | Landlord Address | Store Number | Store Address | Description of Contract[1] | Cure Amount | Assumption Date |
|---|---|---|---|---|---|---|---|---|
| 45 | Burlington Coat Factory of Texas, L.P. | IA Round Rock University Oaks Limited Partnership | c/o InvenTrust Property Management, LLC, 3025 Highland Parkway, Ste. 350, Downers Grove, IL, 60515 | 2155 | 201 University Oaks Blvd | March 31, 2008 Lease Agreement between Jo-Ann Stores, LLC and IA Round Rock University Oaks Limited Partnership | $0.00 | 6/1/2025 |
| 46[2] | Burlington Coat Factory Warehouse Corporation | CAHILL ROAD PARTNERS, LLC | CAHILL ROAD PARTNERS, LLC, J2H 127 BUILDING, LLC, 2075 FORD PARKWAY, L.L.C. and EBH 127 BUILDING, LLC, c/o Lunieski & Associates (managing for Rochester Marketplace) 7645 Lyndale Ave., So., Suite 250 Attn: Robert Lunieski Richfield, MN 55423 | 2573 | 3839 Marketplace Drive NW Rochester, MN | April 18, 2022 Lease Agreement between JoAnn Stores, LLC and CAHILL ROAD PARTNERS, LLC, J2H 127 BUILDING, LLC | $33,056.83 | 6/1/2025 |

9

² This Contract was listed on the *Third Notice of Assumption and Assignment of Certain Executory Contract and/or Unexpired Leases* [D.I. 847] and the response deadline thereunder applies to all issues other than the form of the Proposed Order.

## Schedule 3

**Proposed Contract Assumption Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 25-10068 (CTG) |
| JOANN INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 760** |

### ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES
### [Burlington Stores, Inc.]

Joann Inc. and certain of its affiliates (collectively, the "Debtors"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1, and pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "Procedures Order") which, among other things, approved the Contract Procedures and authorized the Debtors to assume and assign certain unexpired leases of non-residential real property identified in **Exhibit A** hereto (each, as the same may be amended, or otherwise modified, from time to time, a "Lease", and collectively, the "Leases"), and the Leases having been designated for assumption and assignment to Burlington by GA Joann Retail Partnership, LLC ("Agent") in accordance with its Lease Designation Rights pursuant to the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of all Liens, Claims, Encumbrances,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings LLC (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

*and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Sale Order"), and the Debtors having filed and served that certain *First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 760] (the "Assumption Notice"), and the Assumption Notice satisfying the requirements set forth in the Procedures Order; and the Assumption Notice seeking, *inter alia*, (i) to assume and assign the Leases to Burlington Coat Factory Warehouse Corporation and Burlington Coat Factory of Texas, Inc., as applicable (hereinafter, "Burlington") pursuant to an *Assumption and Assignment Agreement* between and among Agent, as agent for the Debtors, and Burlington, substantially in the form annexed hereto as **Exhibit B** (the "Assignment Agreement"); and (ii) such additional and related relief as the Court deems necessary; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, THEREFORE, the Court hereby finds as follows:

A.      Good and sufficient notice of the Assumption Notice has been provided in accordance with the Procedures Order, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of each Lease has been afforded to the applicable counterparty to the unexpired non-residential real property lease (each, a "Landlord") in accordance with the Procedures Order.

B.      The assumption and assignment of the Leases to Burlington, pursuant to sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the Sale Order.

C.      Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, Burlington has provided adequate assurance of future performance under the Leases.

D.       The assumption and assignment of the Leases to Burlington is in compliance with section 365(b)(3) of the Bankruptcy Code.

E.       Burlington is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.       Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume and assign each applicable Lease to Burlington, pursuant to the terms and provisions of this Order and the Assignment Agreement, all of the terms of which are hereby approved, except as otherwise modified by agreement in writing by and between the Landlord and Burlington.

2.       In accordance with section 365 of the Bankruptcy Code, effective as of the occurrence of a closing on the assignment of the Leases pursuant to the terms of the Assignment Agreement (the "Closing"), the Leases shall be assumed, assigned and transferred free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (the "Interests or Claims"), other than easements, rights-of-way and restrictive covenants that the Leases are expressly subject to, as well as any reciprocal easement agreement or declaration of covenants and restrictions or other similar land use agreement in effect prior to the date of the Leases and to which the Leases are expressly subject to, except in each case to the extent otherwise expressly set forth in this Order or the Assignment Agreement, because one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Debtors or Agent are entitled to receive in respect of the sale of the Leases (the "Sale") to Burlington shall attach to the proceeds

3

to be received by the Debtors or Agent in the same order, priority and validity that such Interests or Claims had in such Leases or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in these cases; *provided*, *however*, in all respects, following the assumption and assignment of each Lease, as described by and governed by this Order and the Assignment Agreement, Burlington shall, except as set forth in this Order, assume all of the terms, conditions and covenants of the Leases as tenant under the Leases, and agrees to assume and undertake to pay, perform and discharge all of the obligations and duties thereunder that accrue and come due from and after the Closing (the "Lease Obligations"). Those holders of Interests or Claims who did not object to the Assumption Notice, or who interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

3.       Upon the entry of this Order and the occurrence of the Closing Date, Burlington shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenants thereunder.

4.       Upon entry of this Order and the occurrence of the Closing Date, Burlington is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code section 363(m).

5.       Pursuant to section 365(b)(l) of the Bankruptcy Code, the costs to cure all defaults under the Leases shall be fixed in the amounts set forth in **Exhibit A** attached hereto (the "Cure Costs") and shall be promptly paid by Agent within three (3) business days of the Closing Date. Any objection of the Landlords to the assumption and assignment of the Leases, any Cure Costs, or for further adequate assurance of future performance other than that provided in this Order

4

and/or the Assignment Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Assumption Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to Agent, Burlington, or the Debtors as a result of the assumption and assignment of the Leases contemplated by this Order. Upon remittance of the Cure Costs by Agent to the Landlords pursuant to the terms of this Order, the Landlords shall be barred from asserting any additional cure amounts or other defaults under the Leases for the period prior to the Closing Date, or any defaults arising from the assumption and assignment of the Leases that were required to be asserted as cure pursuant to section 365(b) of the Bankruptcy Code.  For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other default amounts are due with respect to the Leases for the period prior to the Closing Date, and the Debtors and Burlington shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, Agent, or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases.  On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts that accrue and come due under the Leases on or after the Closing Date.

6.     All personal property and furniture, fixtures and equipment ("FF&E") remaining in the stores subject to the Leases on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Burlington may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without

notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

7.      Subject to the Closing, payment of the Cure Costs as provided for in this Order and the Assignment Agreement shall be in full satisfaction and cure of any and all defaults under the Leases that are required to be cured by Bankruptcy Code §§ 365(b)(1)(A) and (B).  Upon the payment of the Cure Costs in accordance with the Assignment Agreement, Agent, the Debtors and their estates shall have no further liability to the Landlords for charges that accrue and become due and payable on or after the Closing Date.  The Landlords shall be forever barred and estopped from asserting against Agent, the Debtors or their estates or Burlington, their successors or assigns, or their property, any default existing as of Closing Date, except for as set forth in any side letter agreement entered into between Burlington and any Landlord.

8.      Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases and the satisfaction of the requirements of section 365 of the Bankruptcy Code.  The assignment of the Leases and payment of the Cure Costs, as applicable, shall relieve the Debtors from any further liability pursuant to section 365(k) of the Bankruptcy Code; *provided*, *however*, nothing in this Order or the Assignment Agreement shall prevent the Landlords from seeking indemnification from the Debtors for third party claims related to events and circumstances that occurred prior to the Closing from the Debtors' applicable insurance policies.  For the avoidance of doubt and notwithstanding anything in this Order to the contrary, with respect to any claims that the Landlords or their agents have or may have in the future against the Debtors for which the Debtors maintained insurance covering such claims (for example, for personal injury claims or indemnification claims related to events occurring from the use and occupancy of the leased premises prior to the Closing Date),

nothing in this Order shall prevent the Landlords or their agents from making claims and seeking recovery from such insurance policies and proceeds, and nothing in this Order shall be deemed to terminate such insurers' obligations under such insurance policies (regardless of whether the claims are made before or after entry of this Order or the assignment of the Leases).

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, the following provisions in the Leases shall be deemed unenforceable (the "Unenforceable Provisions"):

      a.      a provision prohibiting Burlington's intended use of the premises;

      b.      a provision prohibiting necessary alterations to the premises, including the installation of any signage required to convert the premises to Burlington's intended use, provided such alterations are necessary to operate at the premises under Burlington's trade name and consistent with its business operations and are done in a matter that is consistent with the terms of the applicable Lease;

      c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (180) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances may warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of

the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Assignment Agreement) listed in the Assignment Agreement;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlords as the price of assignment, or granting Landlords the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of the Debtors' rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Burlington's ability to place reasonable signage on the premises; *provided*, that such signage is necessary by Burlington to conform such store to Burlington's typical retail store consistent with Burlington's intended use of the premises and such placement is done in a matter consistent with the terms of the applicable Lease;

h.      a provision requiring the use of a certain tradename;

i.      a provision regarding minimum sales revenues, if any, required to be satisfied at the premises covered by the Leases; and

j.      any radius provisions set forth in the Leases to the extent applicable to any existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

For the avoidance of doubt, and except as otherwise agreed to in writing between any Landlord and Burlington, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the Unenforceable Provisions.

10.     Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Burlington in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under the Leases.

11.     Notwithstanding any term of the Leases to the contrary, any extension, renewal option, or other rights contained in any Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the applicable Burlington entity, in accordance with the terms of such Lease.

12.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Burlington are authorized to close the Sale set forth in the Assignment Agreement immediately upon entry of this Order.  Time is of the essence in closing the Sale, and the Debtors and Burlington intend to close the Sale as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

13.     Upon entry of this Order, this Order and the findings herein shall be binding upon all parties to the Leases and the Assignment Agreement.

14.     Upon the entry of this Order and the occurrence of the Closing Date, the applicable Landlord shall accept and honor the assignment of each applicable Lease to Burlington.

15.     Each Landlord shall reasonably cooperate and execute and deliver, without undue delay and upon the request of Burlington, and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the premises as contemplated under the Assignment Agreement.

16.     Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' liability insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) reasonably related to the Leases or the premises leased thereunder shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Burlington and applicable insurer and/or third-party administrator.

17.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Sale (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

18.     The Debtors and Burlington are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

19.     Burlington is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Burlington takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Burlington taking title or possession of the Leases and the subject premises, and Burlington is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement and any side letter that may be entered into by and between Burlington and Landlord.

20.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

21.     Any remaining objections to the assignment of any Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

22.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Burlington, provided that Burlington shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Burlington shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Burlington for the period prior to the Closing Date.

23.     To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

24.     To the extent that Burlington and any Landlord enter into a side letter with respect

11

to a Lease, such side letter shall govern with respect to rights and obligations of Burlington and that respective Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

26. The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

26. The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided*, *further*, that the Debtors shall provide any such modification, amendment, or supplement to the applicable Landlord no less than one (1) day prior to execution of such modification, amendment, or supplement.

# **EXHIBIT A**

*Intentionally Omitted*

*To be submitted with order for entry based on notice and resolution of objections*

**<u>EXHIBIT B</u>**

**Assumption & Assignment Agreement**

(see attached)

## ASSUMPTION AND ASSIGNMENT AGREEMENT

**THIS ASSUMPTION AND ASSIGNMENT AGREEMENT** (the "Agreement"), dated as of _____, 2025, is by and between **JOANN INC.**, a _____ corporation and certain of its affiliates (collectively, the "Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under case *In re Joann Inc., et al.,* Case No. 25-10068 (CTG) (Bankr. D. Del. 2025) (the "Chapter 11 Cases"); and

WHEREAS, **GA Joann Retail Partnership, LLC**, a subsidiary of GA Group, together with Wilmington Savings Fund Society, FSB, in its capacity as Prepetition Term Loan Agent (collectively, "GAJRP"), as buyer, and Joann Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of _____, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on _____, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. _____] (the "Sale Order"); and

WHEREAS, in accordance with Section 2.5(b) of the Purchase Agreement and Paragraph 43 of the Sale Order, Buyer designated the Lease (as defined herein) as a "Designated Asset" for assumption and assignment to Assignee as the "Designated Buyer"; and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto, with the term and address of each lease being as represented in the documents provided by Debtor's Broker of record, A&G Realty Partners, LLC, on Schedule A, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on Schedule A (the "Premises"), subject to the Court's entry of an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment of the Leases contemplated by this Agreement(the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

## AGREEMENT

1.    Assignment and Assumption. On the later of the (a) date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement; or (b) the day after the Vacate Date at the Premises, as reflected on **Schedule A**; provided, that Assignor or GAJRP (or its designee) shall give Assignee no less than

seven (7) days' advance written notice of the Vacate Date, and upon payment of the Purchase Price as set forth below (with the latest of these events being the "Closing Date"):

        (a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Assets.

        (b)    No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

        (c)    Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned from and after the Closing Date.

2.    Payment of Purchase Price. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Assets in the amount of ███ ████████████████████████████████████ (the "Purchase Price"), net of any previously paid deposits, in immediately available funds wired to the account specified by Assignor. The Parties acknowledge that if the assumption and assignment of the Assigned Assets (the "Closing") does not occur on or before the Closing Date, the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

3.    Assumption of Liabilities. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured either by Assignor, GAJRP (or its designee) or before the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to such Assigned Asset), and Assignee shall have no liability or obligation for such obligations or defaults. Assignee shall assume all obligations with respect to the Assigned Assets due from and after the Closing Date.

4.    No Further Liability of Assignor. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Assets due after the Closing Date.

5.    Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

6.    "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets; provided, however, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

8.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States

Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9.    No Reliance. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10.    Third Party Beneficiaries. This Agreement is expressly intended to confer rights and benefits upon GAJRP, and GAJRP shall have the right to enforce the provisions of this Agreement.

11.    Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.    Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

13.    Intended Use & Going Dark. Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed **one hundred and eighty (180) days** after receipt of applicable permits, subject to events of force majeure (the "Going Dark Period").

*[Signatures appear on following page]*

3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**JOANN INC.**
a _____ corporation


By: _____
Name: _____
Title: _____

Federal I.D. No.: _____

**ASSIGNEE:**
**BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION**,
a Florida corporation


By: _____
Name:  Jeffrey Morrow
Title:  Senior Vice President, Real Estate
Federal I.D. No.:  22-1970303

## Schedule A to the Assumption and Assignment Agreement

## Description of Assigned Assets – TO BE COMPLETED

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity |
|---|---|---|---|---|---|
| TBC | TBC | $ | TBC | TBC | TBC |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 25-10068 (CTG) |
| JOANN INC., *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 760** |

### ORDER AUTHORIZING THE DEBTORS TO ASSUME AND
### ASSIGN CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES
### [Burlington Stores, Inc.]

Joann Inc. and certain of its affiliates (collectively, the "<u>Debtors</u>"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1, and pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 429] (the "<u>Procedures Order</u>") which, among other things, approved the Contract Procedures and authorized the Debtors to assume and assign certain unexpired leases of non-residential real property identified in **<u>Exhibit A</u>** hereto (each, as the same may be amended, or otherwise modified, from time to time, a "<u>Lease</u>", and collectively, the "<u>Leases</u>"), and the Leases having been designated for assumption and assignment to Burlington by GA Joann Retail Partnership, LLC ("<u>Agent</u>") in accordance with its Lease Designation Rights pursuant to the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of all Liens, Claims, Encumbrances,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

*and Other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Sale Order"), and the Debtors having filed and served that certain *First Notice of Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 760] (the "Assumption Notice"), and the Assumption Notice satisfying the requirements set forth in the Procedures Order; and the Assumption Notice seeking, *inter alia*, (i) to assume and assign the Leases to Burlington Coat Factory Warehouse Corporation and Burlington Coat Factory of Texas, Inc., as applicable (hereinafter, "Burlington") pursuant to an *Assumption and Assignment Agreement* between and among Agent, as agent for the Debtors, and Burlington, substantially in the form annexed hereto as **Exhibit B** (the "Assignment Agreement"); and (ii) such additional and related relief as the Court deems necessary; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, THEREFORE, the Court hereby finds as follows:

A.     Good and sufficient notice of the Assumption Notice has been provided in accordance with the Procedures Order, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of each Lease has been afforded to the applicable counterparty to the unexpired non-residential real property lease (each, a "Landlord") in accordance with the Procedures Order.

B.     The assumption and assignment of the Leases to Burlington, pursuant to sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the Sale Order.

C.     Pursuant to sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, Burlington has provided adequate assurance of future performance under the Leases.

D.      The assumption and assignment of the Leases to Burlington is in compliance with section 365(b)(3) of the Bankruptcy Code.

E.      Burlington is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume and assign each applicable Lease to Burlington, pursuant to the terms and provisions of this Order and the Assignment Agreement, all of the terms of which are hereby approved, except as otherwise modified by agreement in writing by and between the Landlord and Burlington.

2.      In accordance with section 365 of the Bankruptcy Code, effective as of the occurrence of a closing on the assignment of the Leases pursuant to the terms of the Assignment Agreement (the "Closing"), the Leases shall be assumed, assigned and transferred free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (the "Interests or Claims"), other than easements, rights-of-way and restrictive covenants that the Leases are expressly subject to, as well as any reciprocal easement agreement or declaration of covenants and restrictions or other similar land use agreement in effect prior to the date of the Leases and to which the Leases are expressly subject to, except in each case to the extent otherwise expressly set forth in this Order or the Assignment Agreement, because one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Debtors or Agent are entitled to receive in respect of the sale of the Leases (the "Sale") to Burlington shall attach to the proceeds

3

to be received by the Debtors or Agent in the same order, priority and validity that such Interests or Claims had in such Leases or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in these cases; *provided*, *however*, in all respects, following the assumption and assignment of each Lease, as described by and governed by this Order and the Assignment Agreement, Burlington shall, except as set forth in this Order, assume all of the terms, conditions and covenants of the Leases as tenant under the Leases, and agrees to assume and undertake to pay, perform and discharge all of the obligations and duties thereunder that accrue and come due from and after the Closing (the "Lease Obligations"). Those holders of Interests or Claims who did not object to the Assumption Notice, or who interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

3.      Upon the entry of this Order and the occurrence of the Closing Date, Burlington shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenants thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Burlington is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code section 363(m).

5.      Pursuant to section 365(b)(l) of the Bankruptcy Code, the costs to cure all defaults under the Leases shall be fixed in the amounts set forth in **Exhibit A** attached hereto (the "Cure Costs") and shall be promptly paid by Agent within three (3) business days of the Closing Date. Any objection of the Landlords to the assumption and assignment of the Leases, any Cure Costs, or for further adequate assurance of future performance other than that provided in this Order

and/or the Assignment Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Assumption Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to Agent, Burlington, or the Debtors as a result of the assumption and assignment of the Leases contemplated by this Order. Upon remittance of the Cure Costs by Agent to the Landlords pursuant to the terms of this Order, the Landlords shall be barred from asserting any additional cure amounts or other defaults under the Leases for the period prior to the Closing Date, or any defaults arising from the assumption and assignment of the Leases that were required to be asserted as cure pursuant to section 365(b) of the Bankruptcy Code.  For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other default amounts are due with respect to the Leases for the period prior to the Closing Date, and the Debtors and Burlington shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, Agent, or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases.  On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts that accrue and come due under the Leases on or after the Closing Date.

6.      All personal property and furniture, fixtures and equipment ("FF&E") remaining in the stores subject to the Leases on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Burlington may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without

notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

7.    Subject to the Closing, payment of the Cure Costs as provided for in this Order and the Assignment Agreement shall be in full satisfaction and cure of any and all defaults under the Leases that are required to be cured by Bankruptcy Code §§ 365(b)(1)(A) and (B).  Upon the payment of the Cure Costs in accordance with the Assignment Agreement, Agent, the Debtors and their estates shall have no further liability to the Landlords for charges that accrue and become due and payable on or after the Closing Date.  The Landlords shall be forever barred and estopped from asserting against Agent, the Debtors or their estates or Burlington, their successors or assigns, or their property, any default existing as of Closing Date, except for as set forth in any side letter agreement entered into between Burlington and any Landlord.

8.    Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases and the satisfaction of the requirements of section 365 of the Bankruptcy Code.  The assignment of the Leases and payment of the Cure Costs, as applicable, shall relieve the Debtors from any further liability pursuant to section 365(k) of the Bankruptcy Code; *provided*, *however*, nothing in this Order or the Assignment Agreement shall prevent the Landlords from seeking indemnification from the Debtors for third party claims related to events and circumstances that occurred prior to the Closing from the Debtors' applicable insurance policies.  For the avoidance of doubt and notwithstanding anything in this Order to the contrary, with respect to any claims that the Landlords or their agents have or may have in the future against the Debtors for which the Debtors maintained insurance covering such claims (for example, for personal injury claims or indemnification claims related to events occurring from the use and occupancy of the leased premises prior to the Closing Date),

nothing in this Order shall prevent the Landlords or their agents from making claims and seeking recovery from such insurance policies and proceeds, and nothing in this Order shall be deemed to terminate such insurers' obligations under such insurance policies (regardless of whether the claims are made before or after entry of this Order or the assignment of the Leases).

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, the following provisions in the Leases shall be deemed unenforceable (the "Unenforceable Provisions"):

       a.      a provision prohibiting Burlington's intended use of the premises;

       b.      a provision prohibiting necessary alterations to the premises, including the installation of any signage required to convert the premises to Burlington's intended use, provided such alterations are necessary to operate at the premises under Burlington's trade name and consistent with its business operations and are done in a matter that is consistent with the terms of the applicable Lease;

       c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (180) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances may warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of

7

the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Assignment Agreement) listed in the Assignment Agreement;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlords as the price of assignment, or granting Landlords the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of the Debtors' rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Burlington's ability to place reasonable signage on the premises; *provided*, that such signage is necessary by Burlington to conform such store to Burlington's typical retail store consistent with Burlington's intended use of the premises and such placement is done in a matter consistent with the terms of the applicable Lease;

h.      a provision requiring the use of a certain tradename;

i.      a provision regarding minimum sales revenues, if any, required to be satisfied at the premises covered by the Leases; and

j.      any radius provisions set forth in the Leases to the extent applicable to any existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

For the avoidance of doubt, and except as otherwise agreed to in writing between any Landlord and Burlington, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the Unenforceable Provisions.

10.     Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Burlington in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under the Leases.

11.     Notwithstanding any term of the Leases to the contrary, any extension, renewal option, or other rights contained in any Lease that purports to be personal only to a Debtor or Debtors or to a named entity in such Lease or to be exercisable only by a Debtor or Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the applicable Burlington entity, in accordance with the terms of such Lease.

12.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Burlington are authorized to close the Sale set forth in the Assignment Agreement immediately upon entry of this Order.  Time is of the essence in closing the Sale, and the Debtors and Burlington intend to close the Sale as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

13.     Upon entry of this Order, this Order and the findings herein shall be binding upon all parties to the Leases and the Assignment Agreement.

14.     Upon the entry of this Order and the occurrence of the Closing Date, the applicable Landlord shall accept and honor the assignment of each applicable Lease to Burlington.

15.     Each Landlord shall reasonably cooperate and execute and deliver, without undue delay and upon the request of Burlington, and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the premises as contemplated under the Assignment Agreement.

16.     Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' liability insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) reasonably related to the Leases or the premises leased thereunder shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Burlington and applicable insurer and/or third-party administrator.

17.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Sale (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

18.     The Debtors and Burlington are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

19.     Burlington is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Burlington takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Burlington taking title or possession of the Leases and the subject premises, and Burlington is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement and any side letter that may be entered into by and between Burlington and Landlord.

20.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

21.     Any remaining objections to the assignment of any Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

22.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Burlington, provided that Burlington shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Burlington shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Burlington for the period prior to the Closing Date.

23.     To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

24.     To the extent that Burlington and any Landlord enter into a side letter with respect

to a Lease, such side letter shall govern with respect to rights and obligations of Burlington and that respective Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

25.    The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

26.    The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided*, *further*, that the Debtors shall provide any such modification, amendment, or supplement to the applicable Landlord no less than one (1) day prior to execution of such modification, amendment, or supplement.

## EXHIBIT A

*Intentionally Omitted*

*To be submitted with order for entry based on notice and resolution of objections*

## EXHIBIT B

**Assumption & Assignment Agreement**

(see attached)