**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*,[1] | Case No. 25-10068 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 2091** |

**RESPONSE OF RIBBLR, LTD. TO PLAN ADMINISTRATOR'S THIRTIETH
(SUBSTANTIVE) OBJECTION TO CERTAIN CLAIMS (RECLASSIFIED CLAIMS,
OVERSTATED CLAIMS, AND NO LIABILITY CLAIMS)**

Ribblr, Ltd. ("**Ribblr**," or the "**Claimant**"), by and through its undersigned counsel files

this response (the "**Response**") to the *Plan Administrator's Thirtieth (Substantive) Objection to

Certain Claims (Reclassified Claims, Overstated Claims, and No Liability Claims)* (the

"**Objection**") filed at D.I. 2091.  In support of this response, the Claimant respectfully states as

follows:

**JURISDICTION**

1.      The Court has jurisdiction over this Response pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference*, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue of this Response is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.  Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for

---

[1]     The Post-Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is JOANN Inc. (5540).  The Post-Effective Date Debtor's mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

the District of Delaware, the Claimant consents to the entry of a final order by this Court with respect to the relief requested in this Response.

3.       The predicates for the relief sought herein are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### A.  The Chapter 11 Cases

4.       On January 15, 2025 (the "**Petition Date**"), each of the Debtors (collectively, the "**Debtors**"), then wind-down Debtors (the "**Wind-Down Debtors**") under the Plan (as defined in the Objection), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

5.       Ribblr timely filed its proof of claim, claim number 16361 (the "**Claim**").  The Claim was filed in the total amount of $633,697.84, with a portion of the Claim ($199,257.47) asserted as an administrative expense claim. The remainder ($434,440.27) was filed as a general unsecured claim.

6.       Although the Administrative Claim was filed in the amount of $199,257.47, on further review, Ribblr believes the Administrative Claim is actually $194,039.97 (the "**Administrative Claim**").

### B.  Ribblr's Relationship with the Debtors

7.       On July 30, 2023, Ribblr and Debtor Jo-Ann Stores, LLC ("**JoAnn**") entered into an initial service agreement, establishing a foundational business relationship between the parties covering digital advertising, technology services, and promotional activities.

8.      On October 1, 2024, Ribblr and JoAnn entered into a service agreement (the "**Agreement**") that superseded the initial service agreement.  The Agreement broadened the scope of services Ribblr provided to JoAnn, incorporating the Smart Match Program (as defined below), among other items. The Agreement provided for JoAnn to pay Ribblr (i) ▮▮▮ per thousand impressions up to ▮▮▮▮▮ per month for digital advertising that drove customers to JoAnn's website, and (ii) an additional flat fee of ▮▮▮▮ per month for use of Ribblr's Smart Match Program. Under the Smart Match Program, JoAnn would send Ribblr a full extraction of its product catalog daily and Ribblr would, in turn, send JoAnn a daily electronic yarn-to-pattern matching file. These files were automatically ingested by JoAnn's servers and used on JoAnn's website to display Ribblr patterns that matched each yarn, driving customer engagement and sales online and in stores for JoAnn (the "**Smart Match Program**").  As per the logs included in **Exhibit A** annexed hereto showing this daily exchange, JoAnn used Ribblr's Smart Match Program **through at least May 8, 2025**.

9.      On December 20, 2024, Ribblr and JoAnn executed the Statement of Work No. 1 to Service Agreement (the "**SOW**").  Pursuant to the SOW, Ribblr was to provide a free premium pattern to customers who purchased $25 or more of yarn from JoAnn (either in-store or online) in a single purchase.  Ribblr was to receive a ▮▮▮ commission for each premium pattern provided.

10.     On April 30, 2025 (the "**Rejection Date**"), JoAnn rejected the Agreement, and thus the SOW that was executed pursuant to the Agreement was rejected as well. The Administrative Claim includes amounts that were incurred and are due and owing to Ribblr under the Agreement and SOW from the Petition Date up to the Rejection Date.

### C. The Objection

11.    The Plan Administrator filed the Objection, which included an objection to the Claim.  The Objection seeks to reduce the Administrative Claim to $118,260.12, with the difference between the as-filed administrative claim amount and the reduced claim amount ($80,997.35) modified to a general unsecured claim.

12.    Specifically in the Objection, the Plan Administrator seeks to modify the Claim based on the following:

> This claim relates to invoices for the Debtors' use of claimant's services and technology to push sales through the Debtors' website. Upon review and analysis of the Debtors' books and records, and additional information and documents made available to the Plan Administrator, the Plan Administrator has determined that the claimant is entitled to an administrative expense claim in the amount of $118,260.12, consisting of (a) $75,792.62 for certain services rendered from the petition date through March 5, 2025, which is the date the Debtors ceased making online sales, and (b) $42,267.50 for certain sales commissions owed to claimant for the period of the petition date through February 28, 2025.  All other post-petition services were not "actual, necessary costs and expenses of preserving the estate" within the meaning of section 502(b)(1)(A) of the Bankruptcy Code, and did not result in any benefit to the estate. Thus, the claimant is entitled to an administrative expense claim only to the extent of $118,260.12, and the remainder of its asserted administrative expense claim must be reclassified as a general unsecured claim.

13.    For the reasons set forth below, the Objection should be overruled as it relates to Ribblr's Administrative Claim.

### RESPONSE

14.    The Objection should be overruled, and the Administrative Claim should be allowed.  Under Federal Rule of Bankruptcy Procedure 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim.  *See* Fed. R. Bankr. P. 3001(f).  Only after the objecting party produces evidence equal in probative force to the prima

facie claim does the burden revert to the claimant to prove the validity of its claim by a preponderance of the evidence. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992).

15.    The Plan Administrator has not met their burden in that the Plan Administrator has not produced "evidence equal in probative force to the prima facie claim," as required by *Allegheny*, *supra*.

16.    Until a contract is assumed or assigned, the Debtor must pay the reasonable value of the services received. "The parties also agree on the extent of a debtor's obligations pending assumption or rejection of a contract: a debtor must pay the reasonable value of the services received." *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) (citing *N.L.R.B. v. Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)). Also citing *In re Continental Airlines, Inc.*, 146 B.R. 520, 526–27 (Bankr.D.Del.1992) (citing *Bildisco* and finding that aircraft lessor was entitled to immediate payment of administrative expenses because debtor retained the aircraft and used it in its business without paying rent postpetition).

17.    Here, much like the aircraft lessor in *Continental Airlines*, Ribblr is entitled to immediate payment of administrative expenses because JoAnn continued to use the digital marketing services and the Smart Match Program through at least the Rejection Date.

18.    In its basis for objecting to the Claim, the Plan Administrator attempts to reclassify the cost of any service provided by Ribblr after March 5, 2025 from an administrative expense to a general unsecured claim.  The Plan Administrator improperly states that the "other post-petition services," i.e., any services provided after March 5, 2025, "did not result in any benefit to the estate."

19.    Upon information and belief, the Plan Administrator used March 5, 2025 as a cutoff date because that is the date JoAnn ceased making online sales -- presumably making the argument

that Ribblr is not entitled to an administrative expense for the period after March 5th because they could no longer provide a "benefit to the estate" by driving online sales. However, the Plan Administrator is failing to acknowledge the very real and valuable benefit that Ribblr provided to JoAnn after March 5, 2025 by continuing to drive in-store sales with their digital advertising and Smart Match Program.  As evidenced by the screenshots attached hereto in **Exhibit B**, Ribblr, in support of the Debtors and their Going Out of Business ("**GOB**") sales, provided digital advertising driving customers to the JoAnn.com website, which advertised the in-store GOB sales, until after the April 30th Rejection Date. These screenshots are from JoAnn's website, showing JoAnn continued to use Ribblr's advertising services, which were agreed to in the SOW.  As evidenced by the Declaration of Saar Oron (the "**Declaration**"), the CEO of Ribblr, attached as **Exhibit C** hereto in support of this Response, Ribblr's digital advertising during this period generated hundreds of thousands of impressions on the JoAnn website. See Declaration ¶ 10. Ribblr should be allowed an administrative expense claim for the entire value of the digital advertising services provided to JoAnn after the Petition Date because Ribblr's digital advertising promoted the GOB sales and drove customers to JoAnn's physical store locations to purchase goods, providing a very real benefit to the estates.

20.     JoAnn and Ribblr also had an exclusivity clause in the Agreement, whereby Ribblr was to exclusively provide digital advertising services to JoAnn.  JoAnn rejected the Agreement on the Rejection Date, but in the interim, Ribblr was still bound by the Agreement.  During that interim period, JoAnn was free to enjoy the advertising services the Plan Administrator now wishes to not pay for (as stated in the Objection), but Ribblr was unable to offer their advertising services (and get paid for those services) to anyone except JoAnn.  Allowing JoAnn to benefit from the agreed-upon exclusivity stipulation for digital advertising services while also allowing JoAnn to

block those services to any competitor, and even further, allowing JoAnn to get the digital advertising services for free would be a manifest injustice to Ribblr.

21.     Advertising services, even pursuant to pre-petition contracts that are eventually rejected, can be allowed as administrative expense claims. *See In Re Lucre Inc.*, which stated "[a]nd in *Jartran* the parties also agreed that whatever Yellow Page advertising the debtor, as the estate's debtor-in-possession, had purchased postpetition was allowable as an administrative expense. Indeed, in that instance, they reached that agreement even though the postpetition purchases had been made under the very same contract as had the prepetition purchases been made and even though the debtor-in-possession eventually rejected that contract." *In re Lucre, Inc.*, 434 B.R. 807, 819 (Bankr. W.D. Mich. 2010).

22.     In *In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021),  the Third Circuit cited *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992), which stated that "[a]lthough the amount to be allowed as an administrative expense must be measured in dollars and cents… the question whether the estate has been benefited cannot be so narrowly confined."  The *Energy Future Holdings* opinion further cites *TransAmerican,* which stated "less readily calculable benefits, such as the ability to conduct business as usual," can qualify. *In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021).  *Energy Future Holdings* also cites *Pennsylvania Dep't of Envt'l Res. v.  Tri-State Clinical Labs, Inc.*, 178 F.3d 685, 689-90 (3d Cir. 1999) which stated that "usual and necessary costs should include costs ordinarily incident to operation of a business."

23.     It goes without saying that the cost of advertising is a cost that is "ordinary incident to operation of a business."  In fact, GOB advertising is typically and routinely included in GOB sales recognized and approved by this circuit.  *See, e.g., In re Brookstone Holdings Corp.*, 592

B.R. 27, 30 (Bankr. D. Del. 2018) (approving the assumption of a store closing agreement, whereby the agreement itself stated internal and external advertising was in accordance with a "store closing" themed sale). As evidenced by the attached screenshots, Ribblr was driving thousands of potential customers to the JoAnn site, which advertised the instore sales and lured customers by making customers aware of the percentage saving they would receive by coming into the stores. There is no logical argument that only online sales benefited the Debtor but that instore sales did not. The hundreds of thousands of impressions are proof that the advertisements reached interested prospective customers and drove them to the JoAnn website and the actual stores. Moreover, it is irrefutable that JoAnn continued to use Ribblr's Smart Match Program through at least May 8, 2025, which also drove in-store customer sales. See **Exhibit A**, logs showing JoAnn's daily input to Ribblr and Ribblr's daily pattern match. There simply is no logical reason for the Debtors to conclude that Ribblr did not continue to provide a benefit to the estate simply because they could no longer measure that benefit in online sales.

24.     Attached hereto as **Exhibit D** are invoices and other related support for Ribblr's administrative expense claim.

## **CONCLUSION**

**WHEREFORE**, for all the above reasons, the Claimant respectfully requests that the Court overrule the Plan Administrator's Objection and allow the administrative expense portion of the Claim in the amount of $194,039.97 and the Claimant be granted such other and further relief that may be just and proper.

- 9 -

Dated:  March 26, 2026
         Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
Aaron J. Bach (No. 7364)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email:   desgross@chipmanbrown.com
         bach@chipmanbrown.com

*Counsel for Ribblr*