**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| | § | CASE NO. 25-10068(CTG) |
| JOANN, INC., et al | § | |
| Post-Effective Date Debtors. | § | Jointly Administered |

---

**EQYINVEST OWNER II, LTD. LLP'S  RESPONSE TO PLAN ADMINISTRATOR'S THIRTY SECOND  (SUBSTANTIVE)  OBJECTION TO CERTAIN CLAIMS (RECLASSIFIED CLAIMS, OVERSTATED CLAIMS, REDUCED  AND RECLASSIFIED)**

---

EQYInvest Owner II, Ltd. LLP ("Landlord") hereby submits this Response To Plan Administrator's Thirty Second  (Substantive)  Objection to Certain Claims (Reclassified Claims, Overstated Claims, Reduced  and Reclassified) Relating to Claim # 19656 concerning Copperfield Crossing shopping center located in Houston, Texas and respectfully represents as follows:

**BACKGROUND**

1.     On April 17, 2026 Joann's Plan Administrator (sometimes herein called "Plan Administrator") filed its Thirty Second  (Substantive)  Objection to Certain Claims (Reclassified Claims, Overstated Claims, Reduced  and Reclassified) Relating to Claim # 19656 concerning Copperfield Crossing shopping center located in Houston, Texas.

2.     Under Schedule 1 "Reclassified" Debtors objected as item 2 to EQYInvest Owner II, Ltd. LLP's claim number 19656 concerning Copperfield Crossing shopping center located in Houston, Texas in the total amount of $11,766.48 to change from an Admin Claim to an Unsecured Claim.

3.      EQYInvest Owner II, Ltd. LLP responds that the objection to item 2 to EQYInvest Owner II, Ltd. LLP's claim number 19656 concerning Copperfield Crossing shopping center located in Houston, Texas in the total amount of $11,766.48 to change from an Admin Claim to an Unsecured Claim is not well taken as the $11,766.48 is properly a priority administrative claims and expense  under Section 11 U.S.C.S. Sections 503(b), 507(a)(1) and 365(d)(3) and the $11,766.48  priority administrative claims and expense should be allowed and paid in line with all of the other allowed priority administrative claims and expenses.

4.      On or about October 30, 1995 the predecessor-in-interest to creditor landlord EQYInvest Owner II, Ltd., and  the predecessor-in-interest to Debtor entered into an  October 30, 1995  Lease, as modified by First Lease Amendment dated August 2, 2004, and as further modified by Second Lease Amendment dated July 16, 2012, and as further modified by Third Lease Amendment dated July 6, 2020, and as further modified by Fourth Lease Amendment dated February 14, 2024 a copy of which is attached to the Declaration of Rafi Zitvar in Support of EQYInvest Owner II, Ltd., LLP's  Response Plan Administrator's Thirty Second (Substantive)  Objection to Certain Claims (Reclassified Claims, Overstated Claims, Reduced and Reclassified) [herein called the "Declaration of Rafi Zitvar"] as Exhibit "A" and incorporated herein by this reference (herein together called the "Lease") whereby Debtor agreed to lease from creditor landlord  EQYInvest Owner II,  Ltd., LLP approximately 14,500  square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping center located in Houston, Texas for Debtor's store. A true and correct copy of the October 30, 1995 Lease and the first three lease amendments are voluminous and exceed the 5 megabyte size requirements of this Court and are available upon request.  True and correct copies of relevant

pages numbered 1, 24, 30 and 31 of the October 30, 1995 Lease are attached to the Declaration

of Rafi Zitvar submitted herewith as Exhibit "B" and incorporated herein by this reference.

5.      The Lease was rejected by ninth notice of rejection of certain executory contracts

and/or unexpired leases dated and entered on April 30, 2025 effective on or about April 30, 2025

by docket entry number 788 entered on April 30, 2025 by this bankruptcy court.

6.      The lease language in this lease particularly specifically provides in Section 32 of

the Lease: **"Tenant shall deliver up and surrender to Landlord possession of the Premises...**

**in as good condition and repair as the same shall be at the Commencement Date** .....ordinary

wear and tear ..... only excepted....".  The language is present tense "**shall" and not past tense**

**"after".**

7.      Attached to the Declaration of Rafi Zitvar submitted herewith  as Exhibit "C" and

incorporated herein by this reference are copies of an estimate  in the amount of $1,807.78

concerning signage removal for the Debtor to comply with section 32 of the Lease for the actual

and necessary costs and expenses of operating  Debtor's store containing approximately 14,500

square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping

center located in Houston, Texas to "surrender to Landlord possession of the Premises... in as

good condition and repair as the same shall be at the Commencement Date".

8.      Attached to the Declaration of Rafi Zitvar  submitted herewith as Exhibit "D" and

incorporated herein by this reference are copies of a proposal  in the amount of $9,959.00

($9,200.00 times 1.0825% for the calculation of Texas sales tax) concerning a wall  removal and

interior painting for the Debtor to comply with section 32 of the Lease for the actual and

necessary costs and expenses of operating  Debtor's store containing approximately 14,500

square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping center located in Houston, Texas to "surrender to Landlord possession of the Premises... in as good condition and repair as the same shall be at the Commencement Date".

9.      Plan Administrator's three cases are not even remotely on point as to the facts and law at issue  here. *SubCulture, LLC v. Rogers Invs., a Nev. Ltd. P'ship (In re Culture Project)*, 571 B.R. 555, 559 (Bankr. S.D.N.Y. 2017) dealt with a sublease and an assignment of lease. *SubCulture, LLC v. Rogers Invs., a Nev. Ltd. P'ship (In re Culture Project)*  had nothing to do with an administrative claim for damages caused by the debtor's current breach of the lease by failing to return the premises to the condition required by the lease.

10.      *Lucky's Mkt. Parent Co.*, No. 20-10166, 2022  WL 843763, at *15 (D. Del. Mar. 22, 2022) dealt with the entirely opposite issue. In *Lucky's Mkt. Parent Co.*  the landlord creditor had originally paid the debtor tenant $1.8 million for a construction allowance and when the lease was rejected the debtor tenant removed hundreds of thousands of dollars worth of fixtures and improvements from the real property and caused over $386,695.00 in additional damages to the building.  The bankruptcy court ultimately held that the creditor landlord did not produce enough evidence to support the tort claim even though the *Lucky's Mkt. Parent Co.* court found:

> Under Bankruptcy Code § 503(b)(1), **a creditor is entitled to an administrative priority claim for "the actual, necessary costs and expenses of preserving the estate...." Damages resulting from post-petition torts committed by the debtor are also entitled to administrative priority under Bankruptcy Code § 503(b)(1)**. *In re Phila. Newspapers, LLC*, 690 F.3d at 173 (citing *Reading Co. v. Brown*, 391 U.S. 471, 477 (1968)). (emphasis added)

*See Lucky's Mkt. Parent Co.* No. 20-10166, 2022  WL 843763, at *22 (D. Del. Mar. 22, 2022).

11.      *Doral Commerce Park, Ltd. v. Teleglobe Communs. Corp. (In re Teleglobe*

*Communs. Corp.*), 304 B.R. 79, 83-84 (D. Del. 2004) likewise dealt with the entirely opposite issue.  In *Doral Commerce Park, Ltd. v. Teleglobe Communs. Corp. (In re Teleglobe Communs. Corp.*) after rejection the creditor landlord filed a motion to require the tenant debtor to remove $3,141,581  worth of improvements and fixtures that had been made to the building.

12.      The language in the specific lease is what controls with the bankruptcy court orders to be done. *WM Inland Adjacent LLC v. Mervyn's LLC (In re Mervyn's Holdings, LLC)*, Adv. Pro. No. 09-50920 (KG), pages 11-17 Case No. 08-11586 (KG) (Bankr. Del. Jan 08, 2013).

13.      The lease language in this lease particularly specifically provides in Section 32 of the Lease: **"Tenant shall deliver up and surrender to Landlord possession of the Premises... In as good condition and repair as the same shall be at the Commencement Date** .....ordinary wear and tear excepted....". The language is present tense "**shall" and not past tense "after".** **The law is clear however and in each case the language of the specific lease needs to be looked at.** *WM Inland Adjacent LLC v. Mervyn's LLC (In re Mervyn's Holdings, LLC)*, Adv. Pro. No. 09-50920 (KG), pages 11-17 Case No. 08-11586 (KG) (Bankr. Del. Jan 08, 2013).  **Texas law goes even further and that every provision in the lease likewise needs to be looked at if there is an ambiguity. Clearly the intent of the parties is that the premises were to be returned in the condition as of the commencement date and that was an ongoing obligation throughout the lease term.**

**14.      In particular, applicable law in this fact situation ties the obligation to the actual underlying lease document and when the obligation to pay arises under the lease.** *WM Inland Adjacent LLC v. Mervyn's LLC (In re Mervyn's Holdings, LLC)*, Adv. Pro. No. 09-50920 (KG), Case No. 08-11586 (KG) at page 12 (Bankr. Del. Jan 08, 2013) provides:

The language of section 365(d)(3) refers to an "obligation," **which is "something one is legally required to perform under the terms of the lease . . . and such an obligation arises when one becomes legally obligated to perform**."  (Emphasis added) *Centerpoint Prop. v. Montgomery Ward Holding*, 268 F.3d 205, 209 (3rd Cir. 2001)

15. *In re Flying Star Cafes, Inc.*, Case No. 15-10182 t11 at page 7 (Bankr. N.M. Dec 23, 2016) states Debtors' post-petition obligations under an unexpired lease for non-residential real property are governed by § 365(d)(3), which provides:

> **The trustee shall timely perform all the obligations of the debtor**, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, **until such lease is assumed or rejected**, notwithstanding section 503(b)(1) of this title. (Emphasis added)

16. If the debtor fails to perform its obligations, this section "gives lessors a priority claim similar to an administrative expense claim under § 503(b)(1)." *In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 65 (10th Cir. BAP 2002); *In re GCP CT Sch. Acquisition, LLC*, 429 B.R. 817, 824 (1st Cir. BAP 2010) ("§ 365(d)(3) requires the trustee to perform timely all obligations required under the lease, and gives the lessor an administrative claim for such amounts."). **A majority of courts, including the Tenth Circuit BAP, have held that landlords are not required to prove a benefit to the estate to establish the amount of their administrative claim, but are instead "entitled to current payment of the amounts required under their leases** (emphasis added) ." *Furr's Supermarkets, Inc.*, 283 B.R. at 65. *See also In re Pettingill Enterprises, Inc.*, 486 B.R. 524, 532 (Bankr. D.N.M. 2013) (citing and following Furr's); *In re Duckwall-ALCO Stores, Inc.*, 150 B.R. 965, 971 n. 10 (D. Kan. 1993) ("Lease obligations under § 365(d)(3) are not subject to requirements of § 503 for payment of administrative expenses"); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 367 n. 5 (Bankr. S.D.N.Y. 2008) (same); 3 *Collier on Bankruptcy* 365.04[1][b] (16th ed. 2011) (collecting cases).

17.     Concerning the actual interpretation of the lease language  this Bankruptcy Court needs to look at Texas law concerning the interpretation of the lease which provides as set forth in *D Design Holdings, LP v. MMP Corp.*, 339 S.W.3d 195, 201-202 (Tex. App.— Dallas 2011, *no pet*), the law is clear that **when construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument**. *See, e.g., Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). **We give contract terms their plain and ordinary meaning unless the contract indicates the parties intended a different meaning**. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex.2009). **Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another**. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1S.W.3d 96, 102 (Tex.1999). **We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement**. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex.2005). **No single provision should be given controlling effect**. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. **When the provisions of a contract appear to conflict, we will attempt to harmonize the provisions and assume the parties intended every provision to have some effect.** *United Protective Servs., Inc. v. West Village Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex.App.-Dallas 2005, *no pet*.). (emphasis added).

18.     **If contract language can be given a certain or definite meaning, then it is not ambiguous.** *See, e.g., Universal Health Servs., Inc. v. Renaissance Women's Grp.*, P.A., 121

S.W.3d 742, 746 (Tex.2003); *Coker v. Coker*, 650S.W.2d 391, 393 (Tex.1983). If we are unable to harmonize the provisions and give effect to all of a contract's clauses, the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 56; *see also Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc*., 297 S.W.3d 248, 252 (Tex.2009) (**contract is not ambiguous just because parties disagree over its meaning**). A court may conclude a contract is ambiguous even in the absence of such a pleading by either party. *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 57. When a contract is ambiguous, granting summary judgment based on the contract is improper. *Coker*, 650 S.W.2d at 394; *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979). Whether a contract is ambiguous is a question of law, which we review *de novo. Dynegy Midstream Servs., Ltd. P'ship*, 294 S.W.3d at 168; *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex.2003). Likewise, interpretation of an unambiguous contract is reviewed *de novo. See, e.g., MCI Telecomms. Corp. v. Tex. Utils.Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999). (emphasis added).

19.     The Bankruptcy Court should deny the objection to  EQYInvest Owner II, Ltd. LLP's claim number  19656 concerning Copperfield Crossing shopping center located in Houston, Texas in the total amount of $11,766.48 for a  priority administrative claims and expense and that amount should be allowed as a priority administrative claims and expense.

20.     The undersigned has authority to reconcile, settle or otherwise resolve the claims on behalf of  EQYInvest Owner II, Ltd., LLP, being:

> Timothy T. Mitchell, attorney for  EQYInvest Owner II, Ltd., LLP
> 4422 Ridgeside Drive
> Dallas, Texas 75244

Phone 972-661-9471
Cell 972-567-5322
E-mail tim@rashtiandmitchell.com
Alternate e-mail tim.rashtiandmitchell@gmail.com.

21.    EQYInvest Owner II, Ltd., LLP   reserves its rights to supplement this response and make such other and further filings as it deems necessary or appropriate.

**WHEREFORE,** the Landlord,  EQYInvest Owner II, Ltd., LLP  respectfully requests that the Court modify any proposed order to deny the objections to EQYInvest Owner II, Ltd. LLP's claim number  19656 concerning Copperfield Crossing shopping center located in Houston, Texas and allow  EQYInvest Owner II, Ltd. LLP  a priority administrative claims and expense of $11,766.48 that was objected to, as consistent with the foregoing response to objections and grant the Landlord,   EQYInvest Owner II, Ltd., LLP,  such further and additional relief as the Court may deem just and proper.

**Respectfully submitted,**
**RASHTI AND MITCHELL**
**ATTORNEYS AT LAW**

/s/ Timothy T. Mitchell
Timothy T. Mitchell
Texas State Bar Number 14223000
Donna Kaye Rashti
Texas State Bar Number 16553400
4422 Ridgeside Drive
Dallas, Texas 75244
Phone 972-661-9471
Fax (972) 503-9611
tim@rashtiandmitchell.com
donna@rashtiandmitchell.com
**Attorneys for Creditor  EQYInvest Owner II,**
**Ltd. LLP**

## CERTIFICATE OF SERVICE

I Timothy T. Mitchell do hereby certify that a true and correct copy of the above

foregoing pleading was filed with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to all persons who have registered to receive notices through

the CM/ECF system, on this 1st day of May, 2026.

/s/ Timothy T. Mitchell
Timothy T. Mitchell
**Attorneys for Creditor  EQYInvest Owner II,
Ltd. LLP**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| | § | CASE NO. 25-10068(CTG) |
| JOANN, INC., et al | § | |
| Post-Effective Date Debtors. | § | Jointly Administered |

---

### DECLARATION OF RAFI ZITVARIN SUPPORT OF EQYINVEST OWNER II, LTD. LLP'S  RESPONSE PLAN ADMINISTRATOR'S THIRTY SECOND  (SUBSTANTIVE) OBJECTION TO CERTAIN CLAIMS (RECLASSIFIED CLAIMS, OVERSTATED CLAIMS, REDUCED  AND RECLASSIFIED)

---

I, Rafi Zivar, pursuant to section 1726 of title 28 of the United States code, hereby declare as follows:

1.      My name is Rafi Zivar, I am over 18 years of age, of sound mind and fully competent to make this Declaration. I have personal knowledge of each of the facts stated therein, and they are all true and correct.

2.      I am employed Global Fund Investments, LLC, as the manager for EQYInvest Owner II, Ltd. LLP of Copperfield Crossing shopping center, a designated agent of EQYInvest Owner II, Ltd. LLP which was at the relevant times in this bankruptcy the owner of Copperfield Crossing shopping center located in Houston, Texas being through November 30, 2025, being the relevant times in this bankruptcy.

3.      I submit this declaration (the "Declaration") in support of EQYInvest Owner II, Ltd., LLP's  Response Plan Administrator's Thirty Second  (Substantive)  Objection to Certain Claims (Reclassified Claims, Overstated Claims, Reduced  and Reclassified) [ the "Copperfield

1

Crossing Response "]. Except as otherwise indicated, the statements in this Declaration are based on: (a) my personal knowledge of EQYInvest Owner II, Ltd., LLP's operations, financing arrangements, and business affairs; (b) the books and records of EQYInvest Owner II, Ltd., LLP that reflect amounts owed by Debtor Jo-Ann Stores, LLC to EQYInvest Owner II, Ltd., LLP; ( c ) my review of the Copperfield Crossing Response; (d) my review of Plan Administrator's Thirty Second (Substantive) Objection to Certain Claims (Reclassified Claims, Overstated Claims, Reduced and Reclassified) [the "Objection"]; (e) information provided to me by, or discussions with, EQYInvest Owner II, Ltd., LLP's advisors; and (f) my general experience and knowledge.

4.      I am authorized to submit this declaration in support of the Copperfield Crossing Response. If called upon to testify, I can and would testify competently as to the facts set forth herein.

5.      I assisted in the preparation of the Copperfield Crossing Response. Through my review or with the assistance of employees and professionals under my direction, I am personally and generally familiar with the amounts owed by Debtor Jo-Ann Stores, LLC to EQYInvest Owner II, Ltd., LLP. If called to testify, I could and would testify competently to the facts set forth in this declaration.

6.      I submit this declaration in support of the Copperfield Crossing Response, and state the information contained in the Copperfield Crossing Response and in the exhibits are true and correct to the best of my knowledge and belief and based upon the information and records available to me.

7.      On or about October 30, 1995 the predecessor-in-interest to creditor landlord EQYInvest Owner II, Ltd., and the predecessor-in-interest to Debtor entered into an October 30,

2

1995 Lease, as modified by First Lease Amendment dated August 2, 2004, and as further modified by Second Lease Amendment dated July 16, 2012, and as further modified by Third Lease Amendment dated July 6, 2020, and as further modified by Fourth Lease Amendment dated February 14, 2024 a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference (herein together called the "Lease") whereby Debtor agreed to lease from creditor landlord EQYInvest Owner II, Ltd. approximately 14,500 square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping center located in Houston, Texas for Debtor's store. A true and correct copy of the October 30, 1995 Lease and the first three lease amendments are voluminous and exceed the 5 megabyte size requirements of this Court and are available upon request. True and correct copies of relevant pages 1, 24, 30 and 31 of the October 30, 1995 Lease are attached hereto as Exhibit "B" and incorporated herein by this reference.

8.    The Lease was rejected by ninth notice of rejection of certain executory contracts and/or unexpired leases dated and entered on April 30, 2025 effective on or about April 30, 2025 by docket entry number 788 entered on April 30, 2025 by this bankruptcy court.

9.    The lease language in this lease particularly specifically provides in Section 32 of the Lease: **"Tenant shall deliver up and surrender to Landlord possession of the Premises... in as good condition and repair as the same shall be at the Commencement Date** .....ordinary wear and tear ..... only excepted....". In my opinion the language is present tense **"shall" and not past tense "after".**

10.    Attached hereto as Exhibit "C" and incorporated herein by this reference are copies of an estimate in the amount of $1,807.78 concerning signage removal for the Debtor to

3

comply with section 32 of the Lease for actual and necessary costs and expenses of operating Debtor's store containing approximately 14,500 square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping center located in Houston, Texas to "surrender to Landlord possession of the Premises... in as good condition and repair as the same shall be at the Commencement Date".

11.     Attached hereto as Exhibit "D" and incorporated herein by this reference are copies of a proposal in the amount of $9,959.00 ($9,200.00 times 1.0825% for the calculation of Texas sales tax) concerning a wall removal and interior painting for the Debtor to comply with section 32 of the Lease for actual and necessary costs and expenses of operating Debtor's store containing approximately 14,500 square feet of rentable floor area (the "Premises") located in Copperfield Crossing shopping center located in Houston, Texas to "surrender to Landlord possession of the Premises... in as good condition and repair as the same shall be at the Commencement Date".

Pursuant to 28 USC section 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

April 30, 2026                                       /s/Rafi Zivar

                                                     Rafi Zivar

4

DocuSign Envelope ID: F731B696-0D5A-4879-BA92-BB484796321D

## FOURTH AMENDMENT TO LEASE AGREEMENT

This Fourth Amendment to Lease Agreement ("Amendment") is made as of February 14, 2024 between **EQYInvest Owner II, Ltd., LLP, a Texas limited liability partnership** ("Landlord"), successor-in-interest to Copperfield Crossing, Inc., a Texas corporation, successor-in-interest to Friendswood Development Co., and **Jo-Ann Stores, LLC**, an Ohio limited liability company f/k/a Jo-Ann Stores, Inc. ("Tenant"), successor-by merger to FCA of Ohio, Inc.

### RECITALS:

A.   Landlord and Tenant, through their respective predecessors-in-interest, entered into a certain Lease dated October 30, 1995, which lease was modified by (a) First Lease Amendment dated August 2, 2004; (b) Second Lease Amendment dated July 26, 2012, and (c) Third Lease Amendment dated July 6, 2020 (collectively, the "Lease");

B.   The Lease relates to certain premises consisting of approximately 14,500 square feet of ground floor area ("Premises") in the shopping center known as Copperfield Crossing located in Houston, TX ("Shopping Center");

C.   The Lease expires on January 31, 2024;

D.   Landlord and Tenant desire to extend and modify the Lease as set forth below.

In consideration of the mutual covenants set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AGREEMENT:

1.   Recitals. The foregoing recitals are incorporated herein by reference. Capitalized words used in this Amendment without definition have the same meanings as those ascribed to them in the Lease. If there is any conflict between this Amendment and the Lease, this Amendment controls.

2.   Term. The Term of the Lease is extended for an additional three (3) year period commencing on February 1, 2024 and expiring on January 31, 2027 (the "Renewal Period"). The Renewal Period is part of the Term and the new Lease expiration date is January 31, 2027.

3.   Rent. Commencing on the first day of the Renewal Period, and notwithstanding anything to the contrary in the Lease:

(a)   Fixed Minimum Rent shall be as set forth in the below rent chart;

| Renewal Period | $ PSF | $ Annual Payment | % Rent | % Rent Breakpoint |
|---|---|---|---|---|
| 02/01/24 – 01/31/27 | $ 8.15 | $ 118,175.00 | 4.14% | $ 2,854,468.00 |

(b)   The charges for all common area costs, real estate taxes, insurance charges, additional rent, costs, expenses and pass-throughs payable by Tenant shall remain and be calculated and paid in accordance with the Lease.

4.   Broker. Tenant represents that no broker, finder, or other person entitled to compensation,

#1402 Copperfield Crossing (Houston, TX)

**Exhibit A**

DocuSign Envelope ID: F731B696-0D5A-4879-BA92-BB484796321D

other than The Retail Connection, L.P. ("Broker") who represented Tenant and shall be compensated by Landlord pursuant to a separate agreement, was involved in the negotiations of this Amendment, and that no conversations or prior negotiations were had with any broker, finder or other possible claimant other than Broker. Landlord and Tenant each represent and warrant to the other that there are no brokerage commissions or finders' fees of any kind due in connection with this Amendment other than to the aforementioned Broker. Each party shall defend, indemnify and hold the other party harmless against and from all liabilities, damages, costs, claims and obligations arising from a breach of such representation (including, without limitation, reasonable attorneys' fees).

5.      Notice. Notwithstanding anything contained in the Lease to the contrary, the notice addresses of Tenant and Landlord under the Lease are hereby updated to the following addresses:

| | |
|---|---|
| If to Tenant: | Jo-Ann Stores, LLC #1402<br>5555 Darrow Rd.<br>Hudson, OH 44236<br>Attn: Vice President of Real Estate |
| With a copy to: | Jo-Ann Stores, LLC #1402<br>5555 Darrow Rd.<br>Hudson, OH 44236<br>Attn: Legal Counsel |
| Estoppel and SNDA<br>Requests to: | Estoppel-SNDA@joann.com |
| If to Landlord: | EQYInvest Owner II, Ltd., LLP<br>c/o Global Realty & Management TX, Inc.<br>15866 Champion Forest Drive<br>Spring, Texas 77379<br>Attention: Property Management Department<br>(281) 840-5363 |

6.      Lender Consent. Notwithstanding anything to the contrary in the Lease or any other document to which Tenant and Landlord are parties, in the event any lender, or any other interested party, requests or requires consent before the execution of this document, (a) it is Landlord's responsibility to obtain such consent, (b) Landlord hereby represents that it has obtained such consent, if required, and (c) regardless if consent is actually obtained, this document is fully binding and effective upon signature.

7.      Binding Effect and Entire Agreement. This Amendment inures to the benefit of and binds the parties and their successors and assigns. The Lease, as herein amended, remains in full force and effect. Landlord and Tenant hereby ratify and confirm the Lease, as amended by this Amendment, and expressly acknowledge and agree that the Lease, as amended by this Amendment remains and shall continue in full force and effect upon and subject to the terms and conditions thereof. The Lease and this Amendment constitute the entire agreement between Landlord and Tenant.

8.      Counterpart and PDF Signature. This Amendment may be signed in multiple counterparts, each of which constitutes an original and all of which taken together constitute one and same agreement. Electronic signatures or signatures transmitted via e-mail in a "PDF" may be used in place of original signatures on this Amendment. Each party intends to be bound by its electronic or "PDF" signature on

#1402 Copperfield Crossing (Houston, TX)

DocuSign Envelope ID: F731B696-0D5A-4879-BA92-BB484796321D

this Amendment, is aware that the other parties are relying on its electronic or "PDF" signature, and waives any defenses to the enforcement of this Amendment based upon the form of signature.

9.      Captions. The captions and headings in this Amendment are for convenience only and not a part of this Amendment and do not in any way limit, define, construe or describe the scope or intent of the provisions of this Amendment.

10.      Severability. If any provision or the application of this Amendment to any person or circumstance shall to any extent be declared by a court to be invalid, the remainder of this Amendment shall not be affected.

11.      Entire Agreement. This Amendment contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof.

*[Remainder of Page Intentionally Left Blank – Signatures Follow on Next Page]*

#1402 Copperfield Crossing (Houston, TX)

DocuSign Envelope ID: F731B696-0D5A-4879-BA92-BB484796321D

The parties have signed this Amendment as of the date first above written.

Landlord:
**EQYInvest Owner II, Ltd., LLP,**
**a Texas limited liability partnership**
   **By: EQYInvest Owner II GP, LLC,**
   **a Delaware limited liability company, general partner**

By: _____
      Rafi Zitvar, Vice President

Tenant:
**Jo-Ann Stores, LLC**

By: _____
      Ken Douglas
      Vice President, Store Development, Facilities &
      Real Estate

KB                                    DRS for JAS

Page 4 of 4

#1402 Copperfield Crossing (Houston, TX)

L E A S E

THIS INDENTURE OF LEASE, dated as of October 30, 1995, by and between FRIENDSWOOD DEVELOPMENT, a Texas corporation, having its address located at 17001 Northchase Drive, Suite 632, Houston, Texas 77060 (hereinafter called "Landlord"), and FCA OF OHIO, INC., an Ohio corporation, having its address located at 5555 Darrow Road, Hudson, Ohio 44236 (hereinafter called "Tenant").

W-I-T-N-E-S-S-E-T-H:

EXHIBITS TO LEASE

SECTION 1.  (a)  The following exhibits are attached to and made a part of this Lease, and are incorporated herein by reference:

Exhibit "A".  The description of the lands upon which the Shopping Center is constructed.

Exhibit "B".  The site plan showing the location of the Premises (as hereinafter defined), the Shopping Center buildings, parking areas, the Protected Area, driveways and common area and containing other general information relative to the development of the Shopping Center Site (the "Site Plan").

Exhibit "C".  The plans and specifications prepared and provided by Tenant and approved by Landlord, wherein are detailed Landlord's Work (as hereinafter defined) and Tenant's Work (as hereinafter defined) in the Premises.

Exhibit "D".  The plans and specifications prepared and provided by Tenant and approved by Landlord, wherein are detailed Tenant's exterior sign(s).

DEFINITIONS

SECTION 2.  As used in this Lease, the terms listed below shall have the respective meanings as follows:

(a)  "Commencement Date" shall mean (i) the One Hundred Twentieth (120th) day after the Delivery Date or (ii) the day that Tenant opens for and conducts business in the Premises, whichever day shall first occur.

(b)  "Common Areas" shall mean the parking areas, driveways, aisles, sidewalks, malls (whether enclosed or unenclosed), truck storage areas, and other common, service and related areas and improvements within the Shopping Center, whether open to the public generally or for the "non-exclusive" use of one or more tenants, and whether or not shown on Exhibit "B".

(c)  "Delivery Date" shall mean the date that Landlord delivers the Premises to Tenant in accordance with Section 10 hereof.

(d)  "Gross Leasable Area" shall mean the number of square feet of ground floor area (including any mezzanines, basements or balconies where a tenant is paying Rent on such space), measured from the exterior face of exterior walls and of service corridor walls, the exterior building line for sidewalk or mall frontage, and the center line of party walls, with no deduction for columns, stairs, elevators, or any interior construction or equipment. With respect to the Shopping Center, the Gross Leasable Area shall be the total constructed Gross Leasable Area available for the exclusive use and occupancy within the Shopping Center, whether or not actually rented or open for business, as the same exists from

#1402 COPPERFIELD CROSSING, HOUSTON, TX                    -1-

**Exhibit B**

(c)  No change in ownership of all or any portion of the Shopping Center, or assignment of this Lease, or the rentals provided for herein, shall be binding upon Tenant for any purpose until after Tenant has been furnished with evidence, including photostat or certified copy of deed or assignment, showing change in ownership, or assignment.

(d)  In the event Tenant receives a written notice from any party claiming a collateral interest in this Lease or in the rentals hereunder and, by reason thereof, a present entitlement to collect the rentals under this Lease, Tenant shall have the right either (i) to pay such rentals to such party which payment shall satisfy any and all liabilities of Tenant to Landlord with respect to such payment without obligation on the part of Tenant to make further inquiry but subject to such party's providing to Tenant a copy of the instrument, such as set forth in 30(c) above, pursuant to which such party claims such entitlement and to such claim being plausible on the face of such instrument, or (ii) to withhold such rentals pending the determination by a court of competent jurisdiction of the entitlement thereto.

NO WAIVER OF DEFAULT

SECTION 31.  No waiver by either party of any of the terms, covenants, provisions or conditions set forth in this Lease, and no waiver of any legal or equitable relief or remedy shall be implied by the failure of either party to assert any rights, or to declare any forfeiture, or for any other reason, and no waiver of any of said terms, provisions, covenants, rules and regulations shall be valid unless it shall be in writing signed by both parties hereto.  No waiver by either party or forgiveness of performance by either party in respect to one or more tenants of the Shopping Center shall constitute a waiver or forgiveness of performance in favor of Tenant, Landlord or any other tenant, nor shall the waiver or the forgiveness of performance of any one or more of the terms, provisions, conditions, rules and regulations of this Lease be claimed or pleaded by Tenant or Landlord to excuse a subsequent failure of performance of any of the terms, provisions, conditions, covenants, rules and regulations of this Lease.

VACATION OF PREMISES

SECTION 32.  (a)  Tenant shall deliver up and surrender to Landlord possession of the Premises, including all Landlord's Work (and replacements thereof) and all improvements permanently attached to the Premises during the term, upon the expiration of this Lease, or its termination in any way, in as good condition and repair as the same shall be at the Commencement Date (damage by fire or other casualty which could be covered by a standard extended coverage insurance policy, ordinary wear and tear and decay, neglect, fault or default of Landlord and taking by eminent domain or conveyance in lieu thereof only excepted).  Once Tenant has delivered the keys to the Premises to Landlord, then Landlord agrees that the Premises are in an acceptable form and Tenant shall have no obligation whatsoever to repair the Premises, remove any fixtures or merchandise or to do any other work in or to the Premises which Tenant may have been obligated to do prior to delivering the Premises to Landlord.  Tenant agrees to deliver the keys at the office of Landlord or Landlord's agent.

(b)  Tenant shall have the right, on or before the date Tenant vacates the Premises, to place a sign at the front of the Premises, in a place visible to Tenant's customers, directing Tenant's customer's to another store of Tenant's and/or providing Tenant's customers with a telephone number.  Tenant shall be entitled to leave said sign at the front of the Premises until the earlier to occur of (i) one (1) month after Tenant vacates the Premises, or (ii) the date a new tenant opens for business in the Premises.

SHORT FORM LEASE, SUPPLEMENTAL LEASE AGREEMENT

SECTION 33.  (a)  This Lease may not be recorded, but in the event either party requests that a Short Form Lease or a Memorandum of Lease be recorded, then the other party shall execute such Agreement, which Agreement shall contain the information as set forth below. The

#1402 COPPERFIELD CROSSING, HOUSTON, TX                    -24-

EXTRA CHARGES

SECTION 49.  INTENTIONALLY DELETED.

CLAIMS LIMITATION

SECTION 50.  Landlord and Tenant agree that all actions or claims for additional or excess payments, as the case may be, of Fixed Minimum Rent, Percentage Rent, Common Area Costs, Taxes, Insurance, and any other monetary obligations shall be barred two (2) years after the close of each Lease Year or Partial Lease Year.

CAPTIONS

SECTION 51.  Any paragraph titles or captions contained in this Lease are for convenience only and shall not be deemed to define, limit or otherwise modify the scope or intent of this Lease.

VARIATION IN PRONOUNS

SECTION 52.  All the terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any paragraph or clause herein may require, the same as if such words had been fully and properly written the number and gender.

BINDING EFFECT OF AGREEMENT

SECTION 53.  This Lease and all of the covenants, conditions, provisions and restrictions herein contained shall inure to the benefit of and be binding upon the heirs, executors, administrators, devisees, legatees, personal representatives, successors and assigns, respectively, of both the Landlord and Tenant.

IN WITNESS WHEREOF, the parties hereto set their hands to four (4) counterparts hereof, each of which having the same force and effect, as of the date first hereinabove written.

Signed in the presence of:                    FRIENDSWOOD DEVELOPMENT

By: _____  JR
    T. R. Wussow
    Vice President

And: _____

                                              LANDLORD

                                              FCA OF OHIO, INC.

By: _____

And: _____

                                              TENANT

#1402 COPPERFIELD CROSSING, HOUSTON, TX              -30-

STATE OF *Texas*          )
                             )SS
COUNTY OF *Harris*       )

         BEFORE ME, a Notary Public in and for said County and
State, personally appeared FRIENDSWOOD DEVELOPMENT, by T. R. Wussow ,
its VICE PRESIDENT , and ,
who did sign the foregoing instrument on
behalf of said corporation and that the same is their free act and deed
of said corporation and of each of them personally and as such officers.

         IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal at *Houston* , *Texas* , this *1st* day of *Nov*, ,
1995.

                                   *Linda G. Patten*
                                    NOTARY PUBLIC

                                    LINDA G. PATTEN
                                    Notary Public, State of Texas
                                    My Commission Expires
                                    MARCH 9, 1997

STATE OF OHIO             )
                             )SS
COUNTY OF SUMMIT       )

         BEFORE ME, a Notary Public in and for said County and
State, personally appeared FCA OF OHIO, INC., an Ohio corporation, by
ALAN ROSSKAMM , its PRESIDENT , and FRANCIS PICCIRILLO ,
its TREASURER , respectively, who acknowledged that they did sign
the foregoing instrument on behalf of said corporation, and that the same
is the free act and deed of said corporation and their free act and deed
personally and as such officers.

         IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal at Hudson, Ohio, this *30th* day of *October* , 1995.

                                     *Patricia Heilman*
                                    NOTARY PUBLIC
                           PATRICIA HEILMANN, Notary Public
                           STATE OF OHIO - Summit County
                           My Commission Expires July 20, 1997

#1402 COPPERFIELD CROSSING, HOUSTON, TX          -31-



# PUENTE GENERAL CONSTRUCTION, INC

**4715 CAPITOL STREET, HOUSTON, TX 77011**
**Office/Fax:    (832) 437-2749**
**Mobile:        (832) 755-7620**

puentegeneralconstruction@gmail.com

# Estimate

| Date | Number |
|------|--------|
| 5/2/2025 | 1834 |

| **Bill To:** | **Ship To:** |
|--------------|--------------|
| Global Realty & Management TX, Inc.<br>15866 Champion Forest Drive<br>Spring, Texas 77379 | Audrey Curran<br>Copperfield Crossing<br>15540 Highway 529<br>Houston, TX 77095 |

| Item Description | Total |
|------------------|-------|
| JOANN STORE<br>Copperfield Crossing<br>15520 Highway 529<br>Houston, TX 77095<br>SCOPE OF WORK TO PERFORM<br>JOANN STOREFRONT SIGNAGE REMOVAL<br>To remove the existing three (3) panels of the storefront signage (fabrics JOANN crafts) from the building (attached picture provided by the landlord), apply stucco patches on facade as needed, apply one coat of exterior stucco primer paint and two coats of exterior finish paint on the three sections of facade surfaces from corner to corner matching the existing paint color as indicated by the landlord. | 1,670.00T |

| *Subtotal* | $1,670.00 | *Sales Tax Total (8.25%)* | $137.78 | *TOTAL* | $1,807.78 |
|---|---|---|---|---|---|

**THIS QUOTED PRICES VALID FOR THIRTY (30) DAYS AND WILL BE WITHDRAWN IF NOT ACCEPTED WITHIN THIRTY (30) DAYS.**
**This quote is a contract between the authorized agent and PGC, Inc.**
**SIGNATURE:              NAME:                    DATE:**

WE ACCEPT ALL MAJOR CREDIT CARDS

  

**Exhibit C**

# SDB
## Symbiosis Design & Build

# PROPOSAL

Date: 05/20/2025
Project Location:  15444 FM 529, Houston 77095
Project Name: Joann Fabric Removal

Client:  Audrey Curran
        Global Investment

Please see the proposal below for removing wall and interior paint.

**Work Scopes:**

| Work Scopes | Materials & Labor |
|---|---|
| • Remove all the movable shelves, rackets & carts. | $2,800+ Tax |
| • Remove back room storage shelves, counter desks,<br>Service desk, window shelves | $1,200+ Tax |
| • Remove all the wall rackets and shelves(none movable) | $2,200 + Tax |
| • Provide 4 dumpsters 40yds @ $750/each | $3,000+ Tax |

**TERMINATION**

In the event of termination, SDB is to receive full payment for all services performed and all project expenses incurred prior to the date that SDB written notice of termination. Upon any disagreement between SDB and the Client, both parties agree to mediation solely between SDB and the Owner. Both parties agree to the standard method of arbitration set forth by the Construction Industry Arbitration rules of the American Arbitration Association if arbitration is required. No third parties will be joined to any arbitration without written mutual agreement between SDB and the Client. SDB has the right to termination as sees fit by SDB.

Symbiosis Design Build, LLC
Spring, Texas 77379
Tel: 832 417 6983
Email: Symbiosisdesignbuild@gmail.com

**Exhibit D**

# SDB
## Symbiosis Design & Build

**APPLICABLE LAW**

The laws of Harris County, City of Houston, and the State of Texas will govern the agreement.

**FORM OF AGREEMENT**

Again, we thank you for this opportunity to submit our proposal for your consideration. We would be happy to discuss it with you and answer any questions you may have. If this Proposal meets with your approval, please sign both copies, return one executed copy to SDB and retain one for your records. Receipt of an executed copy will serve as authorization to Proceed and that both parties agree to the terms set forth in this proposal.

Sincerely                                                                Acceptance

Timothy Nguyen

_____                          _____
Symbiosis Design & Build, LLC                        Client
Spring, Texas 77379                         Date:
Tel: 832 417 6983                                          Driver's License

Symbiosis Design Build, LLC
Spring, Texas 77379
Tel: 832 417 6983
Email: Symbiosisdesignbuild@gmail.com