**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JOANN INC.,[1] | ) | Case No. 25-10068 (CTG) |
|  | ) |  |
| Post-Effective Date Debtor. | ) |  |
|  | ) |  |

**PLAN ADMINISTRATOR'S REPLY BRIEF IN SUPPORT OF ITS**
**OBJECTION TO THE ADMINISTRATIVE CLAIM OF THE CALIFORNIA**
**DEPARTMENT OF TAX AND FEE ADMINISTRATION [THIRTY-SECOND**
**(SUBSTANTIVE) OMNIBUS OBJECTION TO CERTAIN CLAIMS]**

Ann Aber, solely in her capacity as the Plan Administrator (the "Plan Administrator"), by and through her undersigned counsel, appointed pursuant to the *Second Amended Joint Chapter 11 Plan of Joann Inc. and its Debtor Affiliates (Technical Modifications)* [Docket No. 1353] (as amended, the "Plan"),[2] which was confirmed by the Order of this Bankruptcy Court on July 10, 2025 [Docket No. 1387], respectfully submits this reply (the "Reply") in support of her objection to the priority claim [Claim No. 18346] (the "Claim') filed by the California Department of Tax and Fee Administration ("CDTFA") as originally set forth in *Plan Administrator's Thirty-Second (Substantive) Omnibus Objection to Certain Claims* [Docket No. 2183-1] (the "Claim Objection") and in response to the CDTFA's opposition thereto [Docket No. 2220] (the "Opposition"). This Reply is supported by the *Declaration of Ann Aber in Support of Plan Administrator's Objection to the Administrative Claim of the California Department of Tax and Fee Administration and Reply Brief in Support Thereof* (the "Aber Decl."), a copy of which is attached hereto as **Exhibit A**, and

---

[1]  The Post-Effective Date Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is JOANN Inc. (5540). The Post-Effective Date Debtor's mailing address is P.O. Box 268, Hudson, Ohio 44236.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Order (as defined below) or Plan, as applicable.

incorporated as if set forth herein in full. In support of this Reply, the Plan Administrator respectfully states as follows:

**PRELIMINARY STATEMENT**

1. CDTFA's Opposition confirms why Claim No. 18346 should be reclassified as a general unsecured claim. CDTFA cannot identify any sale, transfer, exchange, purchase, use, disposal, importation, or other transaction on which the environmental fee was imposed. Instead, CDTFA argues that the Debtors' general business operations in California, its alleged classification as an entity conducting activities related to hazardous materials, and its employment of more than 100 employees during a calendar year together constitute a "transaction" for purposes of section 507(a)(8)(E) of the Bankruptcy Code. That position stretches the statutory text beyond recognition.

2. Bankruptcy Code Section 507(a)(8)(E) does not grant priority to every charge imposed by a governmental unit, every charge that serves a public purpose, or even every charge that could be characterized as an excise tax in the abstract. It grants priority only to an "excise tax on a transaction." 11 U.S.C. § 507(a)(8)(E). The phrase "on a transaction" cannot be ignored; CDTFA's interpretation would render that limitation effectively meaningless by converting a status-based regulatory assessment into a priority excise tax.

3. CDTFA's environmental fee is imposed on a class of entities based on regulatory status and employee count. The fee is not tied to the sale of a commodity, the transfer of property, the purchase of goods, the disposal of hazardous waste, the quantity of hazardous materials used or generated, or any other specific transaction. Indeed, CDTFA acknowledges that the annual fee is calculated based on the number of employees — not the volume, value, or occurrence of any

hazardous-materials transaction. Accordingly, that is not an excise tax "on a transaction" within the meaning of section 507(a)(8)(E). *See* Aber Decl. at ¶¶ 7, 12-13.

4.    CDTFA's reliance on the *Lorber[3]/Suburban[4]* factors does not cure this statutory defect. Even if the Court were to assume, solely for purposes of argument, that the environmental fee has certain tax-like characteristics, CDTFA still must show that the claim falls within one of the specific priority categories enumerated in section 507(a)(8). It has not done so. Priority statutes are narrowly construed because priority treatment disrupts the Bankruptcy Code's policy of equality of distribution. CDTFA bears the burden of establishing entitlement to priority, and it has failed to satisfy that burden.

5.    Accordingly, the Objection should be sustained with respect to Claim No. 18346, and the claim should be reclassified in its entirety as a general unsecured claim.

## ARGUMENT

### A.    CDTFA Bears the Burden of Establishing Priority Status

6.    CDTFA begins by invoking the general rule that a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992). The Plan Administrator does not dispute that general proposition. But it does not resolve the issue here.

*7.*    Here, the Plan Administrator's Claim Objection presents a legal challenge to the classification of the $55,056.00 environmental fee as a priority excise tax under 11 U.S.C. § 507(a)(8)(E)(i). The legal question of whether the environmental fee constitutes an "excise tax" and whether it is assessed "on a transaction" is purely a question of law that the Court must resolve independent of the *prima facie* presumption. The *prima facie* validity standard addresses the

---

[3] *In re Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir. 1982)
[4] *In re Suburban Motor Freight, Inc.* 36 F.3d 484 (6th Cir. 1994).

amount and existence of the claim, not its legal priority classification. *See In re Alewelt,* 520 B.R. 704, 710 (Bankr. C.D. Ill. 2014) ("[T]he [Bankruptcy] Rules do not create an evidentiary presumption that properly filed claims are entitled to priority or secured status simply because such status is asserted." (quoting *In re Hack*, 2009 WL 1392068, at *6 (Bankr. C.D. Ill. May 14, 2009)).

8.      The Plan Administrator is not disputing that the fee was assessed or its amount; rather, the objection is to the legal characterization of the fee as an excise tax on a transaction within the meaning of Bankruptcy Code section 507(a)(8)(E). Accordingly, the burden-shifting framework under *Allegheny* does not insulate CDTFA's priority classification from legal scrutiny, and the Court must independently evaluate whether the environmental fee qualifies for priority treatment under section 507(a)(8)(E)(i).

9.      Stated otherwise, the Objection challenges CDTFA's asserted priority classification, not merely the existence of a claim. Once the Plan Administrator identified the legal defect in CDTFA's asserted priority status — namely, that the environmental fee is not a tax described in section 507(a)(8), including because it is not an excise tax on a transaction — CDTFA bore the burden of proving its entitlement to priority treatment.

10.     The burden of persuasion remains with the claimant. *See Allegheny*, 954 F.2d at 174. That burden is especially important where, as here, a claimant seeks priority treatment. Priorities under the Bankruptcy Code are narrowly construed because they depart from the general principle of equal distribution among similarly situated creditors. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006); *In re City Sports, Inc.*, 554 B.R. 329, 333 (Bankr. D. Del. 2016) ("The priority statutes should be construed strictly and narrowly.").

11.     Thus, CDTFA must do more than show that California law authorizes the environmental fee or that the fee serves a public purpose. Aber Decl. at ¶¶ 17-18.  CDTFA must

4

show that Claim No. 18346 fits within the specific statutory priority asserted: Bankruptcy Code section 507(a)(8)(E). It has not made that showing.

**B.  The Environmental Fee is Not an Excise Tax "On a Transaction"**

12.     CDTFA devotes much of its Opposition to arguing that the environmental fee is an "excise tax" based on application of the non-exclusive factors (the "Lorber-Suburban Factors")[5] and the functional test discussed in *In re United Healthcare System, Inc.*, 396 F.3d 247 (3d Cir. 2005). *See* Opposition at 3-5.[6]  Even if that argument had merit, not all "taxes" or "excise taxes" are priority claims under Bankruptcy Code section 507(a)(8)(E).  That section only affords priority status to "an excise tax on" either

> (i) *a transaction* occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

> (ii) if a return is not required, *a transaction* occurring during the three years immediately preceding the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(E) (emphasis added).

13.     The statutory phrase "on a transaction" is dispositive. The Court need not resolve whether the environmental fee is a "tax" or "excise tax" in some broader sense because CDTFA is unable to demonstrate that the environmental fee is an exaction imposed on any transaction within the meaning of Bankruptcy Code section 507(a)(8)(E).  The record confirms this position.  The Plan Administrator's review of the Debtors' Books and Records establishes that the fee was

---

[5] The *Lorber-Suburban* Factors are derived from *In re Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir. 1982) and *In re Suburban Motor Freight, Inc.*, 36 F.3d 484 (6th Cir. 1994).

[6] Under *United Healthcare*, the *Lorber-Suburban* Factors and functional test are used to determine whether the relevant exaction is a "tax" – not whether it is an "excise tax," as CDTFA mistakenly contends. *United Healthcare*, 396 F.3d at 252 n.8 ("Because we determine that the reimbursement obligation at issue is not a tax, we need not address the Committee's argument that even if the obligation is a tax, it is not an excise tax or the kind of excise tax entitled to priority.").  As explained below, however, the environmental fee is not an exaction "on a transaction," and it is therefore immaterial whether such fee is a "tax" or "excise tax" for purposes of priority treatment under 11 U.S.C. § 507(a)(8)(E).

assessed as a flat annual charge determined solely by employee count, and was not triggered by, measured by, or imposed on account of any identified sale, purchase, transfer, exchange, use, generation, storage, disposal, or importation transaction.  Aber Decl. ¶¶12-13.

> **1.    The environmental fee is based on the regulatory classification of organizations, not on any transaction.**

14.    A "transaction" for purposes of Bankruptcy Code section 507(a)(8)(E) is "an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." *In re Szczyporski*, 531 F. Supp. 3d 934, 942 (E.D. Pa. 2021), aff'd, 34 F.4th 179 (3d Cir. 2022) (quoting *Templar v. Shamokin Area Sch. Dist. (In re Templar)*, 170 B.R. 562, 564 (Bankr. M.D. Pa. 1994)).  The term "transaction" requires an affirmative act by the taxpayer – inaction will not suffice.  *See, e.g., In re Huenerberg*, 590 B.R. 862, 871 (Bankr. E.D. Wis. 2018) ("'[T]transaction' suggests action—such as the manufacture or consumption of a commodity, which, when viewed in strict isolation at least, may be a solitary act—not inaction, deliberate or otherwise."); *In re Miller*, 634 B.R. 641, 643 (Bankr. M.D. Ga. 2021).  As discussed below, the environmental fee at issue is imposed based on an alleged regulatory status of an organization – and not any activity or action taken by an organization – and it therefore is not "on a transaction" as required for priority treatment.

15.    The environmental fee is imposed by California Health & Safety Code § 25205.6, which provides, in pertinent part:

> (b) On or before October 1 of each year, the department shall provide the California Department of Tax and Fee Administration with a schedule of codes that consists of the types of organizations that use, generate, store, or conduct activities in this state related to hazardous materials, as defined in Section 25501, including, but not limited to, hazardous waste. . . .

(c)(1) Each organization of a type identified in the schedule adopted pursuant to subdivision (a) [*sic*] shall pay an annual fee in accordance with Section 43152.9 of the Revenue and Taxation Code for the fiscal year in which it is assessed.

Cal. Health & Safety Code § 25205.6.  Subsection (c)(2) sets the amount of the fee based on employee count, with the minimum threshold for being assessed the fee set at 100 employees.[7] Cal. Health & Safety Code § 25205.6(c)(2).

16.    Consistent with this statutory framework, the Debtors' fee obligation for calendar year 2024 arose solely from the Debtors' regulatory classification under California law and the fact that the Debtors employed 100 or more employees in California during that year. Aber Decl. ¶ 12.

17.    The state of California further utilizes its regulations to ensure that nearly all large organizations are subject to the environmental fee. Section 66269.40 of Title 22 of the California Code of Regulations provides, in pertinent part, that "[t]he Department finds that every business in California with one hundred or more employees uses, generates, stores, or conducts activities in this state related to hazardous materials" – meaning that all organizations with at least 100 employees are "of the type" of organization described under California Health & Safety Code § 25205.6 and, unless exempt[8], are subject to the environmental fee.

18.    From the above, it is abundantly clear that California imposes the environmental fee not on any actions of an organization, but on the designation of an organization as being "of the types of organizations" that conduct activities related to hazardous materials.  Moreover, California has, through regulation, mandated that all large organizations (i.e., with 100 or more

---

[7] California Health & Safety Code § 25205.6(c)(2) sets the amount of the environmental fee for the 2022-23 fiscal year.  The environmental fees for subsequent years are set by regulation.  *See* 22 CCR § 66269.43.  Although the dollar amount of the environmental fees have increased since the enactment of the current version of California Health & Safety Code § 25205.6, the employee-count thresholds for charging any fee have remain unchanged. *See id.*

[8] The following entities are exempt from the environmental fee: private households; nonprofit residential care facilities; certain insurance companies and banks; U.S. government agencies; and non-profit credit unions. *See* CDTFA Pub. 90, available at https://cdtfa.ca.gov/formspubs/pub90.pdf.

employees) are within the relevant "types of organizations," effectively subjecting them, across the board, to the environmental fee. These facts do not equate to a "transaction" within the meaning of Bankruptcy Code section 507(a)(8)(E). The Debtors did not take any actions that resulted in the imposition of the environmental fee. Aber Decl. ¶¶ 6, 7, 12. Instead, California utilized its legislative and regulatory powers to impose the environmental fee upon the Debtors and other large organizations without any requirement that such organizations engage in any act involving hazardous materials or otherwise.

19. Courts that have addressed Bankruptcy Code section 507(a)(8)(E) have required an actual transaction or event, not a mere regulatory status. In *In re George*, 361 F.3d 1157 (9th Cir. 2004), the Ninth Circuit held that an obligation arising from the failure to carry workers' compensation insurance was not an excise tax on a transaction. *Id.* at 1163–64. CDTFA attempts to distinguish *George* by suggesting the case does not involve a failure to act. Opposition at 7. But the distinction misses the point; *George* is significant because it recognizes that section 507(a)(8)(E) requires an excise tax on a transaction, not simply a government-imposed obligation associated with business operations.

20. The Third Circuit's opinion in *In re Szczyporski*, 34 F.4th 179 (3d Cir. 2022) is consistent with that principle. Although *Szczyporski* involved the Affordable Care Act shared responsibility payment, the Third Circuit recognized that a failure to purchase healthcare is not a transaction because there is no overt act or occurrence giving rise to the asserted excise tax. *Id*. at 189 n.5. California's environmental fee likewise is not tied to any identifiable transaction. That conclusion is confirmed by the record. *See* Aber Decl. ¶ 12 ("fee 'was not triggered by, measured by, or imposed on account of any identified sale, purchase, transfer, exchange, use, generation, storage, disposal, or importation' transaction'").

21.     It is tied to a regulatory designation – that being the types of organizations that conduct activities related to hazardous materials.  Accordingly, the environmental fee is not an excise tax "on a transaction," as required for priority under Bankruptcy Code section 507(a)(8)(E).

**2.     CDTFA'S franchise tax and heavy-vehicle analogies are unpersuasive.**

22.     CDTFA argues for an impermissibly broad application of the phrase "on a transaction," comparing the environmental fee to franchise taxes and heavy-vehicle taxes. Neither analogy supports priority here.

23.     Franchise taxes are commonly imposed for the privilege of doing business in a particular form or jurisdiction. CDTFA has not shown that the California environmental fee is imposed for the general privilege of doing business in California. Rather, by CDTFA's own admission, the fee applies to organizations based on a hazardous-materials-related regulatory classification. That is a regulatory assessment, not a general franchise tax.

24.     Nor is the fee analogous to the heavy-vehicle tax discussed in *In re Trism, Inc.,* 311 B.R. 509 (B.A.P. 8th Cir. 2004). In *Trism*, the asserted transaction was the operation of a heavy vehicle on highways for more than a statutory mileage threshold. *Id*. at 517. The tax was tied to concrete use events: operating heavy vehicles on highways.

25.     Here, by contrast, CDTFA does not identify any concrete transaction comparable to operating a vehicle for a threshold number of miles. The environmental fee is not tied to a threshold amount of hazardous waste generated, a particular quantity of hazardous materials stored, or any identified use or disposal event.  Indeed, California's imposition of the environmental fee does not even require that the relevant organization actually conduct activities related to hazardous materials – only that the organization be deemed as being "of the types of organizations" that do so.  Thus, the environmental fee is triggered by regulatory designation and calculated on an employee count during a calendar year.  Unlike the heavy-vehicle tax discussed

in *Trism*, the environmental fee imposed by California is not on or tied to any particular activity of the organization against which it is imposed.   Aber Decl. ¶¶ 11, 13. (the fee amount is determined solely by number of employees during the calendar year, "regardless of the volume of the Debtors' operations, the quantity of any hazardous materials on the Debtors' premises, or the occurrence or non-occurrence of any specific transaction.").

26.     If CDTFA's arguments were accepted, the transaction requirement would have no meaningful limit. A state could impose an annual charge on all businesses in a regulated industry, measure the charge by headcount, and then claim priority in bankruptcy by characterizing the business's general operations as the "transaction."

27.     Even under a broad definition of the term "transaction" there must be some identifiable act, event, or dealing on which the tax is imposed. CDTFA identifies none. Standing alone, "conducting business" cannot be enough, or else virtually every business assessment would be an excise tax entitled to priority.   This would render the phrase "on a transaction" superfluous, violating the principles of statutory construction. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]") (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–186 (rev. 6th ed. 2000)).

**C.     The Environmental Fee is a Regulatory Fee, Not an Excise Tax**

28.     Even setting aside the dispositive absence of a "transaction" under §507(a)(8)(E), the California environmental fee is not an excise tax at all. It is, in substance and operation, a regulatory fee imposed on entities based on classification and headcount — the very hallmarks of a regulatory exaction rather than a tax. Courts look behind the label placed on an exaction to assess its actual character and operation. *See In re Szczyporski*, 34 F.4th 179, 185 (3d Cir. 2022); *In re*

*Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005). Here, the substance-over-label inquiry confirms that the environmental fee is a regulatory assessment, not an excise tax entitled to priority.

**1.       Excise Taxes Attach to Acts, Occurrences, and Privileges – Not to Status**

29.       An excise tax is "an obligation imposed on [the] performance of [an] act, the engaging in an occupation, or the enjoyment of [a] privilege." *In re Nat'l Steel Corp.*, 321 B.R. at 909. Classic examples include taxes on the sale of cigarettes, alcohol, or motor fuel; on the operation of a heavy vehicle on public highways *above a mileage threshold*; or on a corporation's exercise of the privilege of doing business in a particular jurisdiction. *See id.* at 909–10; *In re Trism, Inc.*, 311 B.R. 509, 517 (B.A.P. 8th Cir. 2004).  In each instance, the exaction is triggered by the taxpayer's affirmative conduct — the act of selling, operating, or exercising a corporate privilege.

30.       A regulatory fee operates differently. It is imposed because of *who the payer is —* its classification, status, size, or industry — rather than because of *what the payer did*.  Regulatory fees are typically used to defray the cost of governmental oversight, compliance monitoring, or remediation programs applicable to a particular category of regulated entities. They do not function as taxes on transactions or privileges; they function as cost-recovery or status-based assessments. Here, the environmental fee is statutorily earmarked to fund California's hazardous-waste remediation obligations under section 25173.6 of the Health & Safety Code and the federal CERCLA program. Cal. Health & Safety Code § 25205.6(f)(2). That earmarking reinforces the fee's character as a regulatory exaction tied to oversight of a particular industry — not a revenue-raising excise tax on a transaction.

**2.    The Environmental Fee is Triggered by Regulatory Classification, Not Conduct.**

31.    In fact, California's environmental fee is the archetype of a regulatory exaction. Under California Health & Safety Code § 25205.6, the fee is imposed on entities that fall within "the types of organizations that use, generate, store, or conduct activities in this state related to hazardous materials" — and that employ 100 or more individuals during a calendar year. Cal. Health & Safety Code § 25205.6(b). California has further made clear, through 22 CCR § 66269.40, that every business operating in California with 100 or more employees is deemed within those "types of organizations," whether or not the business actually engages in any hazardous-materials activity during the relevant period.

32.    The result is unmistakable: the environmental fee attaches to regulatory classification of an organization, not to any conduct undertaken by the organization.  Aber Decl. ¶¶ 6, 7, 12, 13.  A qualifying business owes the fee whether it stored a single drum of hazardous waste or none at all; whether it generated hazardous materials in commerce or merely employed enough Californians to be swept into the regulatory net. The fee is not imposed on the sale, purchase, transfer, use, generation, storage, or disposal of hazardous materials. It is imposed on a status — that of being a large California employer in a category the state has designated.

33.    That is precisely what occurred here. The Debtors operated retail fabric and craft stores in California; to the extent they fell within the regulatory classification, that classification was "incidental to the Debtors' retail operations and did not arise from any discrete transaction involving the use, generation, storage, sale, transfer, or disposal of hazardous materials." Aber Decl. ¶ 6.

### 3. The *Lorber-Suburban* Factors Do Not Convert the Fee into an Excise Tax on a Transaction

34.     As set forth in footnote 6 herein, CDTFA's reliance on the *Lorber-Suburban* factors does not change this analysis. As the Third Circuit recognized in *United Healthcare*, those factors address only whether an exaction constitutes a tax — not whether it constitutes an excise tax "on a transaction" entitled to priority under section 507(a)(8)(E). *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 252 n.8 (3d Cir. 2005).  Even were the Court to credit CDTFA's argument that the fee satisfies the six non-exclusive *Lorber-Suburban* factors, that conclusion would not transform a status-based regulatory assessment into an excise tax on a transaction. The priority categories enumerated in § 507(a)(8) are narrowly construed, *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006), and a regulatory fee that bypasses the statute's express "transaction" requirement is not entitled to priority simply because some of its features resemble those of a tax.

### 4. CDTFA's Approach Would Eviscerate the Distinction Between Regulatory Fees and Excise Taxes

35.     If CDTFA's position were accepted, any annual regulatory assessment imposed on a category of regulated businesses — calculated by reference to size, headcount, or industry classification — would qualify as an excise tax on a transaction merely because the affected businesses also "conduct business" in the regulating state. That would collapse the longstanding distinction between regulatory fees and excise taxes, and would render the phrase "on a transaction" in § 507(a)(8)(E) effectively superfluous, contrary to bedrock principles of statutory construction. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("Instead, we follow 'the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it.... The rule against superfluities complements the principle that courts are to interpret the words of a statute in context." (internal quotation marks omitted)).  It would also disrupt the Bankruptcy Code's foundational policy of equality of distribution by sweeping ordinary regulatory

13

exactions into the priority scheme reserved for true tax claims. *See In re City Sports, Inc.*, 554 B.R. 329, 333 (Bankr. D. Del. 2016).

36.     In sum, the environmental fee is what its name suggests — a fee. It is a regulatory exaction imposed on a defined class of large California employers, calculated by headcount, and earmarked to fund hazardous-waste programs. It is not an excise tax; and it is not an excise tax "on a transaction." For that reason, and the reasons set forth above, Claim No. 18346 is not entitled to priority treatment under § 507(a)(8)(E).

**D.     CDTFA Has Not Provided Sufficient Factual Support for Priority Treatment**

37.     CDTFA's evidentiary showing is also limited. The three paragraph Hossain Declaration states that CDTFA filed a timely proof of claim for $55,056, that the claim is based on an environmental fee assessed under California Health & Safety Code § 25205.6, and that the fee relates to calendar year 2024.  *See* Hossain Declaration at ¶3.

38.     The declaration does not attach the underlying assessment, any return, any calculation of the fee, the applicable employee-count tier, documentation establishing the Debtor's hazardous-materials classification, or evidence identifying the alleged transaction on which the fee was imposed.  *See* Aber Decl. ¶¶ 14-15.

39.     By contrast, the Plan Administrator has submitted evidence based on the Debtors' Books and Records and the personal knowledge of the former Executive Vice President, Chief Legal & Human Resource Officer, establishing that: (i) the fee was assessed annually based on the Debtors' regulatory classification and employee count; (ii) the fee was not calculated by reference to any sale, purchase, transfer, use, generation, storage, or disposal of hazardous materials; (iii) the Claim Summary reflects no interest, penalties, or tax liens; and (iv) the fee was imposed as a status-based regulatory charge rather than on any identified transaction. Aber Decl. ¶¶ 4, 7, 9, 12, 16.

40.    CDTFA may be entitled to assert a general unsecured claim for the unpaid amount. The Plan Administrator's Objection does not seek to disallow the claim in its entirety. But CDTFA has not carried its burden to establish that the claim is entitled to priority treatment under Bankruptcy Code section 507(a)(8)(E).

## CONCLUSION

41.    CDTFA's Claim No. 18346 is not entitled to priority treatment. The environmental fee is, at most, an exaction imposed on organizations based on a hazardous-materials-related designation and employee count. It is not an excise tax "on a transaction" within the meaning of Bankruptcy Code section 507(a)(8)(E).

42.    For the foregoing reasons, the Plan Administrator respectfully requests that the Court sustain the Objection with respect to Claim No. 18346, reclassify the claim in its entirety as a general unsecured claim, and grant such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: July 10, 2026
Wilmington, Delaware

/s/ Michael E. Fitzpatrick

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone:    (302) 652-3131
Facsimile:    (302) 652-3117
Email:    preilley@coleschotz.com
    mfitzpatrick@coleschotz.com

- and -

**HAHN LOESER & PARKS LLP**
Christopher B. Wick (admitted *pro hac vice*)
Philip K. Stovall (admitted *pro hac vice*)
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:    (216) 274-2489
Facsimile:    (216) 241-2824
Email:    cwick@hahnlaw.com
    pstovall@hahnlaw.com

*Co-Counsel to the Plan Administrator*